# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROY BANKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case Nos.  1:03CV00056 (HHK/JMF);** |
| ) | **1:03CV00686 (HHK/JMF);** |
| **OFFICE OF THE SENATE SERGEANT-** ) | **1:03CV02080 (HHK/JMF) [JOINED]** |
| **AT-ARMS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT'S MOTION FOR A PROTECTIVE ORDER
## FROM SUPERNUMERARY INTERROGATORIES

Pursuant to Rules 16(f), 26(c) and 37(b)(2) of the Federal Rules of Civil Procedure,

Defendant, the Office of the Senate Sergeant at Arms ("SAA"), moves this Court for a protective

order from answering Plaintiff's supernumerary interrogatories. Plaintiff has served

interrogatories that exceed the 25 interrogatory limit set by the Court in its October 20, 2003,

Scheduling Order. Further, certain of the interrogatories duplicate previously propounded

interrogatories and constitute harassment of the Defendant.

This motion is based on the accompanying memorandum of points and authorities, the

Declaration of Brenda J. Pence and the exhibits attached thereto, and any reply brief or oral

argument that may be presented in support of the motion.

Pursuant to Rule 7(m) of the Local Rules of Civil Procedure, counsel for the parties met

and conferred both in writing and telephonically but were unable to resolve the dispute.

Therefore, this motion is necessary.

Dated: December 18, 2003                    _____/s/ Brenda J. Pence_____
                                            Jean M. Manning
                                            D.C. Bar No. 439942
                                            Senate Chief Counsel for Employment

                                            Brenda J. Pence
                                            D.C. Bar No. 470976
                                            Senate Senior Counsel for Employment

                                            Office of the Senate Chief Counsel for Employment
                                            Senate Hart Office Building, Room 103
                                            Washington, D.C.  20510-7130
                                            Tel:  (202) 224-5424
                                            Fax:  (202) 228-2557

                                            *Attorneys for the Office of the Senate Sergeant
                                                    at Arms*

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................... 1

II.   THE SCHEDULING ORDER LIMITS THE PARTIES TO A TOTAL OF 25
      INTERROGATORIES FOR ALL THREE CASES ........................... 3

III.  PLAINTIFF HAS EXCEEDED THE NUMERICAL LIMIT FOR
      INTERROGATORIES ................................................ 4

      A.    Discrete Interrogatory Subparts Must be Counted as Separate
            Interrogatories ......................................... 4

      B.    Plaintiff's Interrogatories Contain Discrete Subparts
            that Must Be Separately Counted ......................... 6

      C.    Defendant's Obligation to Answer Interrogatories Should Be
            Limited to the First 25 Interrogatories Propounded ...... 13

CONCLUSION ............................................................ 14

i

## TABLE OF AUTHORITIES

### CASES

*Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486
(W.D.N.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

\* *Kendall v. GES Exposition Services, Inc.* 174 F.R.D. 684 (D. Nev. 1997) . . . . . . . . . . . . . 5-7, 11

\* *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246 (D.V.I. 2001) . . . . . . . . 5-7, 9, 11-13

\* *Safeco of America v. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . 5, 6, 9

*Valdez v. Ford Motor Co.*, 134 F.R.D. 296 (D. Nev. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Walker v. Lakewood Condominium Owners Association.*, 186 F.R.D. 584
(C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Board of County Commissioners of the Unified Government of
Wyandotte County and Kansas City, Kansas*, 192 F.R.D. 698
(D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

### OTHER

Federal Rules of Civil Procedure
Rule 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Rule 16(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Rule 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10
Rule 33(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13
Rule 37(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This litigation involves three related law suits, Case 1:03CV00056 ("Banks I"), Case

1:03CV00686 ("Banks II"), and Case 1:03CV02080 ("Banks III"). Each case involves Plaintiff's

allegations of employment discrimination and retaliation by his former employer, the SAA. The

main issues presented by this motion are the interpretation of the Court's Scheduling Order,

which limits the parties to 25 interrogatories, and whether Plaintiff has exceeded the limit by

serving compound interrogatories that contain discrete unnumbered subparts.

The Court consolidated discovery in all three of the law suits on October 13, 2003, when the

Court granted Defendant's Motion to Consolidate Discovery. At the Status Conference on

October 17, 2003, the Court responded to the parties' questions about its consolidation order.

The following excerpts from the transcript of the status conference are relevant to the pending

motion:

    Mr. Farley: We have already served discovery on the other side for the first case. So if we
            consolidate it, the number of interrogatories, I'm assuming would be the limit for
            each case that we've already sent out; is that correct?

    The Court: I haven't even thought about it. . . . You mentioned an issue as to the volume of
            discovery that will be permitted. We can talk about that. . . .
            . . . .

    Ms. Watkins:    The order of the Court to consolidate the cases and to stay discovery was a
            minute order that was entered in Banks 1 [sic]. It was not entered in
            Banks 2 [sic]. But we ask for the relief in both cases.

    The Court: It is the Court's intention that any order that was docketed in any one of these
            three cases operates in the same way in each case. . . .
            . . . .

1

The Court: This case will not be resolved piecemeal. . . .
. . . .

The Court: Counsel, I'm going to treat this case as if it has been joined. And when I say this case, I'm referring to all three cases. . . . So that's just the way it is. And discovery shall be completed in all three cases within 120 days of today.

Status Call Transcript, pp. 7:7-18; 8:15-9:1; 18:6-7; 20:18-22[1] (emphasis added).

On October 20, 2003, the Court issued a Scheduling Order bearing the case numbers of all three of Plaintiff's law suits. The Scheduling Order states in relevant part that "[e]ach party is limited to a maximum of five ( 5 ) depositions and 25 interrogatories." (Scheduling Order, p. 2.) Plaintiff construes the Scheduling Order to permit the serving of 25 additional interrogatories from the date of the Scheduling Order. Defendant, however, interprets the Scheduling Order to limit the parties to a total of 25 interrogatories for all three cases because the Scheduling Order was entered after discovery was consolidated and the Scheduling Order bears the case numbers of all three law suits. The parties attempted to arrange a telephonic conference call with Judge Kennedy to clarify the Scheduling Order, but were unable to do so. (Declaration of Brenda J. Pence ("Pence Decl."), ¶ 8.)

On July 30, 2003, Plaintiff served 19 enumerated interrogatories in Banks I ("First Set"). Defendant objected that Interrogatory No. 8 in the First Set contained separate questions, but answered the interrogatory in its entirety. (Pence Decl., ¶ 2.) On November 18, 2003, Plaintiff served "Plaintiff's First [sic] Set of Interrogatories to Defendant The Office of the Senate Sergeant at Arms and Doorkeeper of the Senate" ("Second Set"), using the Banks II and Banks

---

[1] True and correct copies of excerpts from the Status Call transcript are attached hereto as Exhibit 1.

2

III case numbers.[2] The Second Set includes 8 additional enumerated interrogatories. (Pence Decl., Ex. B.) When the discrete subparts are counted, however, the Second Set contains at least 35 separate interrogatories.

While the SAA timely responded to the Second Set with its objections, the SAA requests a protective order that it does not have to provide substantive answers to more than the 25 interrogatories ordered by the Court. Rule 16 of the Federal Rules of Civil Procedure provides that "[i]f a party or party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just." FED. R. CIV. P. 16(f). *See also* FED. R. CIV. P. 37(b)(2) ("[I]f a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failures as are just.") Plaintiff has refused to withdraw any of the interrogatories contained in the Second Set. (Pence Decl., 6.) Therefore, Rule 26(c) also may be invoked to protect the SAA from "annoyance, embarrassment, oppression, or undue burden or expense."

## II.    THE SCHEDULING ORDER LIMITS THE PARTIES TO A TOTAL OF 25 INTERROGATORIES FOR ALL THREE CASES

At the time the Court entered its Scheduling Order, it was aware that the parties had conducted some discovery in Banks I. The Court made it abundantly clear that it intended that discovery in all three cases would be handled together. If the Court had intended to grant the parties 25 interrogatories in addition to the discovery already propounded, it could have said so. Instead, by

---

[2] Although the Second Set is purportedly limited to Banks II and Banks III, Interrogatory 3 clearly relates to Banks I as it requests information regarding the failure to hire Plaintiff for the Branch Manager for Capitol Facilities, which is the primary issue in Banks I. (See Banks I Complaint, filed January 14, 2003, ¶ 19.) Interrogatory 4 also relates to claims made in Banks I that Plaintiff's managerial duties were taken away. (Id. ¶ 34.)

3

including all three case numbers on its order and issuing the order after consolidation, the only reasonable interpretation is that the Court intended the 25 interrogatory limit to be applied to the three cases combined.

Plaintiff's interpretation that the Court intended to grant 25 additional interrogatories would give Plaintiff an unfair advantage. At the time of the Scheduling Order, Plaintiff had propounded 19 enumerated interrogatories, but the Defendant had propounded only ten interrogatories. (Pence Decl., ¶¶ 2, 5.) Defendant's potential need for interrogatories is just as great as Plaintiff's potential need. (Pence Decl., ¶ 10.) There is nothing in the record that reflects that the Court intended to give Plaintiff greater discovery rights than Defendant. The Court's Order should be interpreted according to its plain meaning, and Plaintiff's tortuous construction of the Court's Order should be rejected.

## III.    PLAINTIFF HAS EXCEEDED THE NUMERICAL LIMIT FOR INTERROGATORIES

There is no question that Plaintiff has served more than 25 interrogatories. The First Set contains 19 enumerated interrogatories, and the Second Set contains eight enumerated interrogatories. The question to be answered is by how much Plaintiff has exceeded the 25 interrogatory limit and how many more questions the SAA is obligated to answer.

### A.    Discrete Interrogatory Subparts Must be Counted as Separate Interrogatories

Rule 33(a) of the Federal Rules of Civil Procedure provides the starting point for the analysis. It states in relevant part, "Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts. . . ." Subparts need not be "separately numbered or lettered to count as multiple

4

interrogatories . . . or any party could easily circumvent the rule simply by eliminating the

separate numbering or lettering of the subparts." *Safeco of Am. v. Rawstron*, 181 F.R.D. 441,

444-46 (C.D. Cal. 1998). Although no cases in the D.C. Circuit have addressed the methodology

for ascertaining whether a subpart is discrete and should be counted separately, the prevailing

rule in other districts is to count the subpart as a separate interrogatory if the subpart is not

"logically or factually subsumed within and necessarily related to the primary question." *Kendall*

*v. GES Exposition Servs., Inc.,* 174 F.R.D. 684, 685 (D. Nev. 1997). *Accord Safeco,* 181 F.R.D.

at 444-45; *Williams v. Bd. of County Comm'rs of the Unified Gov't of Wyandotte County and*

*Kansas City, Kan.*, 192 F.R.D. 698, 701-02 (D. Kan. 2000); *Nyfield v. Virgin Islands Tel. Corp.*,

200 F.R.D. 246, 247-48 (D.V.I. 2001).[3]

The court in *Kendall* further explained when a subpart constitutes a discrete and separate

question. It stated:

> Probably the best test of whether subsequent questions, within a single
> interrogatory, are subsumed and related, is to examine whether the first question is
> primary and subsequent questions are secondary to the primary question. Or, can
> the subsequent question stand alone? Is it independent of the first question?
> Genuine subparts should not be counted as separate interrogatories. However,
> discrete or separate questions should be counted as separate interrogatories,
> notwithstanding [that] they are joined by a conjunctive word and may be related.

---

[3]The minority view is to count every part of an interrogatory as a separate question. *See*
*Valdez v. Ford Motor Co.*, 134 F.R.D. 296, 298 (D. Nev. 1991) (holding that the local rule
limiting interrogatories to "40 including subparts" "requires that every part of an interrogatory be
counted and subject to the limitation of 40 . . . even when a subpart relates to the main
interrogatory."). While this approach has the benefit of providing a bright line test for counting
interrogatories, it may punish parties who use subparts as a method of illustrating the information
sought by the primary question.

*Kendall*, 174 F.R.D. at 685. Perhaps the best way to understand this guidance is to review how these standards were applied to particular questions. In *Kendall,* the court held that an interrogatory that asked the opposing party to identify the qualifications of an employee to be hired into a particular position and identification of documents in which the qualifications were articulated constituted two separate questions. *Id.* at 686. The court reasoned that the first question could be "answered fully without answering [the] second question;" therefore, the second question was not "necessarily related to the primary question." *Id.* Another example is that an interrogatory that inquired about the reason for eliminating a plaintiff's position and who was involved in the decision making process constituted two separate questions. *Nyfield*, 200 F.R.D. at 248. Similarly, an interrogatory that requested disclosure of all information upon which a party denied requests for admission counted not as one interrogatory, but the number was the same as the number of requests for admission that were denied. *Safeco*, 181 F.R.D. at 445-46.

## B. Plaintiff's Interrogatories Contain Discrete Subparts that Must Be Separately Counted

Although Plaintiff's counsel acknowledges that he served more than 25 interrogatories, he has refused to withdraw or otherwise limit the interrogatories contained in the Second Set. (Pence Decl., ¶ 6.) Therefore, the Court must determine how many interrogatories have been served and what interrogatories the SAA must answer.

1.    Interrogatory 8 of the First Set

The SAA timely objected that Interrogatory 8 of the First Set was compound and interpreted

the questions as asking two separate interrogatories. (Pence Decl., ¶ 2.)[4] That interrogatory reads

as follows:

> State whether defendant has ever been the subject of an employment
> discrimination complaint filed in any federal, state, or local, court or
> administrative agency for actions alleging occurring by defendant's employees. If
> so, provide all details, including court or agency, date of complaint, name and
> address of complainant, substance of complaint, identity of persons alleged to
> have been discriminated against, description of resolution, if any, and
> identification of any documents related to such complaints.

Applying the rationale of *Kendall* and the other cases cited above, Defendant now believes the

interrogatory contains three discrete questions: (1) the identification of employment

discrimination complaints; (2) a description of how those complaints were resolved; and

(3) identification of documents related to the complaints. *Kendall* clearly supports construing the

request to identify documents as a separate and independent question. *Kendall*, 174 F.R.D. at

686. Further, the question of how particular complaints were resolved is independent from the

nature of the complaint being made. For these reasons, Interrogatory 8 of the First Set should

count as three separate interrogatories.

---

[4]Applying the case law cited herein, it is now apparent that other interrogatories in the
First Set contain discrete subparts. Specifically, Interrogatory 11 asks for the reasons why
Plaintiff was not promoted and who made that decision. Under *Nyfield*, that constitutes two
separate questions. *Nyfield*, 200 F.R.D. at 248. Interrogatory 19 asks what is the process for
determining salaries and what the salaries are for individual managers, two separate questions.
Although it seems unnecessary to object to compound interrogatories until they become
supernumerary, the SAA will leave it to the Court's determination whether these discrete
subparts should be included in the count of interrogatories absent an objection made at the time
of the response.

       2.     Interrogatory 1 of the Second Set

Defendant construes Interrogatory 1 of the Second Set as containing two separate questions:

(1) a description of meetings in which a particular subject was discussed; and (2) a description of

documents that may have been created as a result of those meetings. Interrogatory 1 of the

Second Set is set forth below, with indicators of what Defendant believes are separate questions

set forth in brackets:

> [1] Describe in detail all meetings held with Mr. Banks in which evaluations of
> Defendant's employees were discussed with any legal counsel of the defendant in
> attendance, including all such meetings held on or about December of 2001 and
> including, but not limited to, the persons at those meetings, the dates of those
> meetings, the purpose of those meetings, and the sum and substance of any
> conversations at those meetings, [2] and whether any notes or other documents
> were made to memorialize any portion of any meeting and if such documents
> were created a complete description of those documents including, but not limited
> to, the number of pages, the sum and substance and where such documents are
> located.

Therefore, this interrogatory should count as two separate questions.

       3.     Interrogatory 2 of the Second Set

Defendant construes Interrogatory 2 of the Second Set as containing at least nine separate

questions, and arguably 13 separate questions. Interrogatory 2 of the Second Set is set forth

below, with indicators of what Defendant believes are separate questions set forth in brackets:

> [1] Describe in detail all information used to evaluate Mr. Banks' performance for
> the past five years, including but not limited to, [2] the identity of the persons
> involved in making each evaluation, [3] why those persons were chosen to make
> such evaluations, [4] the date(s) the evaluation was prepared, [5] the date Mr.
> Banks was provided with the evaluation, [6] and the purpose of each such
> evaluation, [7] and whether any duties were taken away from or given to Mr.
> Banks after each such evaluation. [8] Completely identify any written documents

8

used in the evaluation [1][5] and any conversations or input, including formal or informal conversations, considered from any person, [9] and identify each person partaking in or hearing any such conversation.

The primary question of this interrogatory is what information was used to evaluate Plaintiff's performance for a five year period. Who prepared the evaluations is akin to the who were the decision makers in *Nyfield*, and this should count as a separate question. The other indicated subparts all are discrete and independent from what information was used to evaluate Plaintiff; therefore, they should be separately counted.

To the extent the interrogatory seeks information about what was used to prepare each of Plaintiff's annual evaluations over a five-year period, this is akin to the question in *Safeco* where the party was asked to provide information for each request for admission that was denied. Therefore, the primary question actually constitutes five separate questions, one for each evaluation about which Plaintiff inquires.[6]

Based on this analysis, the Court should count this interrogatory as containing 13 separate questions.

        4.     Interrogatory 3 of the Second Set

Defendant construes Interrogatory 3 of the Second Set as containing ten separate questions. Interrogatory 3 of the Second Set is set forth below, with indicators of what Defendant believes are separate questions set forth in brackets:

[1] Describe in detail the Defendant's hiring practices and procedures in use for the past five years, including but not limited to, the exact process and procedure

---

[5]Where subparts appear to relate properly to each other, Defendant has used the same bracketed number and treats those subparts as being part of one question.

[6]It is the SAA's practice to provide annual written performance evaluations.

9

used to hire for the position of Manager for the Capitol Facilities, **[2]** the dates the position became available, **[3]** the number of applications for the position, **[4]** the persons choosing which candidates to interview, **[5]** the race and gender of each candidate chosen to be interviewed, **[6]** the date the successful candidate applied for the position, **[7]** the identity of any person giving references, whether formal or informal, for the successful candidate, **[8]** where the information was obtained which identified the date the successful candidate applied, **[9]** and the date the successful candidate was chosen for the position, **[10]** the specific reasons why the successful candidate was chosen over Mr. Banks.

The primary question relates to the SAA's hiring practices and procedures. The subparts, however, do not ask for procedural information but ask for discrete bits of information related to the hiring of the Capitol Facilities Branch Manager that is at issue in Banks I. These discrete questions are independent from one another and should be counted separately. Therefore, this interrogatory should be construed as asking ten separate questions.

This interrogatory also duplicates interrogatories served in Plaintiff's First Set. Specifically, Interrogatory 4 of the First Set inquired about who applied for the position – in response, Plaintiff was provided with the number of applicants; Interrogatory 6 of the First Set asked for the applicants' race; Interrogatory 7 of the First Set inquired about hiring procedures; and Interrogatory 11 of the First Set inquired why the successful candidate was chosen over Plaintiff. The repetitive nature of Interrogatory 2 of the Second Set was discussed with Plaintiff's counsel, but he refused to limit his questioning in any way. Pursuant to Rule 26(c), a protective order is necessary to protect the SAA from the annoyance and oppression of having to respond to duplicative discovery.

10

5.    Interrogatory 4 of the Second Set

Defendant construes Interrogatory 4 of the Second Set as containing two separate questions.

Interrogatory 4 of the Second Set is set forth below, with indicators of what Defendant believes

are separate questions set forth in brackets:

> [1] Describe in detail Mr. Banks' duties with the Defendant for the past five years,
> including but not limited to, the dates any new duties were given to Mr. Banks,
> the dates any duties were removed from Mr. Banks' responsibilities, [2] and the
> person's name and title adding to, or taking away from Mr. Banks' duties.

Under the analysis of *Nyfield*, the action taken is a separate question from who was the

decision maker. Therefore, this interrogatory should count as two questions.

6.    Interrogatory 5 of the Second Set

Defendant construes Interrogatory 5 of the Second Set as containing two separate questions.

Interrogatory 5 of the Second Set is set forth below, with indicators of what Defendant believes

are separate questions set forth in brackets:

> [1] Describe in detail all reports that Defendant received concerning Mr. Banks'
> health, including but not limited to, the date that any information was provided to
> Defendant, the name of the person providing such information, a complete
> description of the information provided, whether the information was written or
> oral and whether the information was requested by defendant. [2] If any
> documents are in Defendant's control or possession concerning Mr. Banks'
> health, please describe the documents in full and their locations.

As stated above, *Kendall* clearly supports construing the request to identify documents as a

separate and independent question. *Kendall*, 174 F.R.D. at 686. Therefore, this interrogatory

should count as two separate questions.

11

### 7.   Interrogatory 6 of the Second Set

Defendant construes Interrogatory 6 of the Second Set as containing seven separate questions.

Interrogatory 6 of the Second Set is set forth below, with indicators of what Defendant believes

are separate questions set forth in brackets:

> [1] Describe in detail Defendant's determination that Mr. Banks was not entitled
> to disability leave in the spring of 2003, including but not limited to, [2] the
> identity of each person involved in making the determination that Mr. Banks was
> not entitled to leave, [3] the documents relied upon, [1] the sum and substance of
> any oral communications, [2] the identity of the person that determined Mr. Banks
> was not entitled to further leave, [4] the date the determination was made that Mr.
> Banks was not entitled to further leave, [5] the number of weeks Mr. Banks had
> "on the books" for disability leave, [6] the number of employees in the past 10
> years that Defendant denied disability leave to [7] and whether Doug Fertig was
> consulted [2] and the extent of Doug Fertig's involvement in making the
> determination concerning Mr. Banks' request for disability leave.

The primary question is the reason for denying Plaintiff's disability leave request. Under

*Nyfield*, the identity of the decision makers is a separate question. The other subparts indicated

are each discrete and independent questions from the *reason* for denying Plaintiff's disability

leave request and should be counted as separate questions. Therefore, this interrogatory should

count as seven different questions.

### 8.   Interrogatory 8 of the Second Set

Defendant construes Interrogatory 8 of the Second Set as containing three separate questions.

Interrogatory 8 of the Second Set is set forth below, with indicators of what Defendant believes

are separate questions set forth in brackets:

> [1] Describe in detail any investigation conducted to determine whether Skip
> Rouse made any statement comparing African-American workers with Hispanic
> workers, including but not limited to, [2] the complete identity of the person who
> made the determination to conduct an investigation, [1] the complete identity of
> any person involved in any investigation, the date that the investigation

12

> commenced, the date the investigation ended, [3] and completely identify all
> documents, including email, which were part of the investigation or viewed by
> any investigator.

The primary question is a description of any investigation that was conducted. Under *Nyfield*,

the identity of who decided whether to conduct an investigation is a separate question.

Therefore, this interrogatory should count as three separate questions.

## C. Defendant's Obligation to Answer Interrogatories Should Be Limited to the First 25 Interrogatories Propounded

Pursuant to Rule 33(a), every interrogatory that is served counts against the numeric limit.

*Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 586 (C.D. Cal. 1999). After

serving interrogatories that exceed the numeric limit, Plaintiff cannot unilaterally withdraw them

in the hopes of refocusing his discovery requests to what is truly needed. *Id*. at 588-89. To the

extent Plaintiff did not exhaust his 25 interrogatory limit with the First Set, the SAA's obligation

to answer interrogatories in the Second Set should be limited to answering the interrogatories, in

the order propounded, up to the 25 interrogatory limit.

Answering interrogatories in the order propounded is supported by *Capacchione v. Charlotte-

Mecklenburg Schools*, 182 F.R.D. 486, 492 (W.D.N.C. 1998). In that case, the court held that a

responding party is not entitled to select at random which interrogatories will be answered when

the propounding party exceeds the numeric limit. *Id*. Similarly, a propounding party that

exceeds the numeric limit cannot subsequently choose which of its interrogatories it wants

answered. *Id. Accord Walker*, 186 F.R.D. at 589. For these reasons, once the Court determines

whether Plaintiff's interrogatories contain discrete subparts that should be counted separately, the

Court should limit Defendant's obligation to respond to the first 25 propounded.

13

## CONCLUSION

For the reasons set forth above, the SAA requests the entry of a protective order so that it is

not required to answer more than 25 interrogatories as set forth in the Court's October 20, 2003,

Scheduling Order and that Defendant is obligated to answer only the first 25 interrogatories

propounded by Plaintiff.

Dated: December 18, 2003                 /s/ Brenda J. Pence
                                        Jean M. Manning
                                        D.C. Bar No. 439942
                                        Senate Chief Counsel for Employment

                                        Brenda J. Pence
                                        D.C. Bar No. 470976
                                        Senate Senior Counsel for Employment

                                        Office of the Senate Chief Counsel for Employment
                                        Senate Hart Building, Room 103
                                        Washington, D.C. 20510-7130
                                        Tel: (202) 224-5424
                                        Fax: (202) 228-2557
                                        *Attorneys for the Office of the Senate Sergeant at Arms*

14

# EXHIBIT B

**AMERICAN CHIROPRACTIC ASSOCIATION, ET AL., Plaintiffs, v. TRIGON HEALTHCARE, INC., ET AL., Defendants.**

**Case No. 1:00CV00113**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA, ABINGDON DIVISION**

*2002 U.S. Dist. LEXIS 6199*

**March 18, 2002, Decided**

**NOTICE:** [*1]  NOT FOR PUBLICATION

**DISPOSITION:** Plaintiffs' motion to compel granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** George P. McAndrews, McAndrews, Held & Malloy, Ltd., Chicago, Illinois, for Plaintiffs.

Howard Feller, McGuireWoods LLP, Richmond, Virginia, for Defendants.

**JUDGES:** By: James P. Jones, United States District Judge.

**OPINIONBY:** James P. Jones

**OPINION:**

### OPINION AND ORDER

By: James P. Jones

United States District Judge

The question before me is whether the defendants should be compelled to answer certain interrogatories propounded by the plaintiffs. Because I find that the plaintiffs have exceeded the allowed number of interrogatories, I will deny their motion to compel in part. However, because I find that the plaintiffs have established good cause for one of the disputed interrogatories, I will grant the plaintiffs' motion to compel in part.

I

American Chiropractic Association, Inc., Virginia Chiropractic Association, Inc., and certain individual doctors and patients of chiropractic medicine filed this action against health insurer Trigon Healthcare, Inc., and affiliated companies ("Trigon") claiming anticompetitive activities harmful to chiropractic medicine.

As part of discovery [*2] in this case, the plaintiffs have served requests for admission. The plaintiffs' requests for admission consisted of eight separate requests. Trigon admitted outright one request, but gave qualified denials of the remainder. The requests all relate to a statement made by a Trigon representative quoted in a newspaper concerning the payments by Trigon to "limited-license providers" as contrasted to medical doctors. Request number one and Trigon's answer were as follows:

> Please admit that the following statement, attributed to Brooke Taylor in the Richmond Times-Dispatch article dated August 19, 2000 (a copy of which is attached hereto as Exhibit A), is true: "we [defendants] often pay limited-license providers less than we pay medical doctors for the same procedure."

ANSWER:

> Defendants deny Request for Admission No. 1, as it is drafted. To clarify, Defendants admit that Brooke Taylor stated the following to the Richmond Times-Dispatch, which appeared in an article dated August 19, 2000: "We often pay limited-license providers less than we pay medical doctors for the same procedure." This Request is denied because Defendants Trigon Healthcare, Inc. and Trigon Health and [*3] Life Insurance Company do not make payments to providers. On the other hand, the applicable Defendants admit that they pay limited-license providers less than they pay medical doctors

2002 U.S. Dist. LEXIS 6199, *

for some procedures that are billed under the same CPT code. n1 Some of the payments made to limited-license providers are less than the payments made to medical doctors for procedures billed under the same CPT code for several reasons: market forces factor into the determination of how much providers are paid and market demand has justified making some lower payments to limited-license providers than to medical doctors for procedures that are billed under the same CPT code; the procedure performed by a medical doctor under a particular CPT code often is not identical to the procedure performed by a limited-license provider under the same CPT code because the medical doctor has a higher degree of education, expertise, training, skill and medical knowledge; the conditions treated by medical doctors can be different and can be more severe than the conditions treated by limited-license providers; and the applicable Defendants pay limited-license providers, such as chiropractors, in accordance with the terms [*4] and conditions of the Professional Provider Agreements, which the limited-license providers have voluntarily accepted and agreed to in order to participate in the Defendants' networks.

n1 CPT codes are numerical codes that correspond to verbal descriptions of medical services or procedures as set forth in Physicians' Current Procedural Terminology, a manual produced by the American Medical Association. *See United States v. Pedrick, 181 F.3d 1264, 1268 n.7 (11th Cir. 1999).*

In answer to request two, Trigon admitted that it considered doctors of chiropractic to be limited license providers as referenced in the statement attributed to Ms. Taylor. In the remaining requests, the plaintiffs explored further Trigon's views as to the differential services and payment between medical doctors and doctors of chiropractic, and Trigon gave answers qualified somewhat in the manner of its response to request numbered one.

The plaintiffs then propounded an initial set of interrogatories numbered one through [*5] five and thereafter another interrogatory numbered six, all of which related to the requests for admission denied by Trigon.

Thereafter, the plaintiffs served another set of interrogatories numbered seven through twelve. Trigon responded to questions seven through part "a" of question nine, but have refused to answer the remaining interrogatories, claiming that the plaintiffs have exceeded the number of interrogatories allowed under the rules and the scheduling order.

The plaintiffs have filed a motion to compel the defendants to answer these remaining interrogatories. The motion has been briefed and argued and is ripe for decision.

II

*Federal Rule of Civil Procedure 33(a)* governs the availability of written interrogatories to be served on parties. The rule provides in pertinent part that "without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts . . . . Leave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 26(b)(2)." *Fed. R. Civ. P. 33(a)*. In the scheduling order agreed upon by the parties and entered on September 4, 2001, it [*6] was provided that "the parties (all plaintiffs are deemed to be one party, all defendants are deemed to be one party) may serve 25 interrogatories, including discrete subparts, pursuant to *Rule 33 Fed. R. Civ. P.* . . . without agreement of the opposing party or leave of Court for good cause shown."

Rule 33(a) was amended in 1993 to limit the number of interrogatories to twenty-five. The advisory committee's notes explain that litigants are not allowed to circumvent this limitation by the use of subparts to an interrogatory that concern "discrete separate subjects." *See id.* advisory committee's note. However, the rule does not define "discrete."

Federal courts have analyzed the question of what constitutes a discrete subpart of an interrogatory and two divergent views have arisen. One view holds that all subparts should count as separate questions toward the interrogatory limit. *See Valdez v. Ford Motor Co., 134 F.R.D. 296, 298 (D. Nev. 1991).* A differing view is that the court should determine whether "a subpart is logically or factually subsumed within and necessarily related to the primary question." *Kendall v. GES Exposition Servs., 174 F.R.D. 684, 685 (D. Nev. 1997)* [*7] (quoting *Ginn v. Gemini, Inc., 137 F.R.D. 320, 322 (D. Nev. 1991)).*

Both sides here have parsed the plaintiffs' twelve interrogatories and reach different sums of "discrete" subparts. Trigon argues that even if the court applies the more lenient *Kendall* standard that the plaintiffs' twelve interrogatories total forty-seven separate questions,

rather than twenty-four as the plaintiffs contend. The parties substantially agree to the number of discrete subparts contained in interrogatories one through five, but differ as to the remaining interrogatories.

Interrogatory six asks, "For each of the plaintiffs' requests for admissions that defendants do not unqualifiedly admit, please explain in detail all of the reasons for defendants' denial or partial denial of the admission request." The plaintiffs made eight requests for admission and Trigon unqualifiedly admitted only request numbered two.

The defendants argue that under the holding of *Safeco of America v. Rawstron, 181 F.R.D. 441 (C.D. Cal. 1998),* this interrogatory counts as seven separate interrogatories because each request concerns a discrete matter. In *Safeco,* the court applied the [*8] *Kendall* standard to calculate the number of interrogatories. *See id. at 445.* Under that framework, the court noted that interrogatories based on responses to requests for admission generally will concern separate subjects and should be counted as discrete subparts. *See id. at 446 n.3.*

I agree that interrogatory six counts as seven interrogatories. Although all of the requests for admission are related to the statement of Trigon's representative, each request involves a discrete subject. For example, request numbered one requests an admission that Ms. Taylor's statement is true. On the other hand, request three asks Trigon to "admit that defendants recognize that certain types of healthcare treatments can be provided by either medical doctors or doctors of chiropractic."

Even under the *Kendall* standard these requests involve discrete questions. Request numbered one may be answered without reference to request numbered three, or in other words, request three is not "logically or factually subsumed" within request one. *See Kendall, 174 F.R.D. at 686.*

The same reasoning follows for the remaining requests for admission. Although [*9] the theme of the requests is similar, each may be fully and completely answered without reference to the others.

I therefore agree with Trigon's calculation and find that the plaintiffs have exceeded the number of allowable interrogatories even under the more lenient *Kendall* standard.

In the alternative, the plaintiffs argue that good cause exists for the court to grant leave for interrogatories to be propounded in excess of the limitation under rule 33(a). I find that good cause exists to compel the defendants to answer parts "b" and "c" of interrogatory nine, but not as to the remaining interrogatories.

Under rule 33(a), the court determines whether the interrogatory limit may be exceeded by examining the circumstances of the case under the factors listed in rule 26(b)(2). That rule provides that additional discovery should be allowed unless:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed [*10] discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Fed. R. Civ. P. 26(b)(2).* Frequently, the issue becomes whether the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party. *See Capacchione v. Charlotte-Mecklenburg Sch., 182 F.R.D. 486, 492 (W.D.N.C. 1998).*

The plaintiffs contend that the additional interrogatories relate to questions raised by Trigon's responses to requests for admission and would not have been propounded otherwise. Trigon counters that discrimination in payment is not a new issue in the case and the plaintiffs can obtain this information through other discovery methods such as by oral deposition.

I do not find that good cause exists to compel the defendants to respond to interrogatories ten, eleven and twelve at the present time. Interrogatories eleven and twelve request detailed information of past payments to medical doctors and doctors of chiropractic for [*11] certain services. This information may be relevant to the plaintiffs' damages and while I may require production of information of this nature in the future, I find that these requests are premature at this stage of the case. n2 Interrogatory ten quotes from nine studies purporting to show that doctors of chiropractic are more effective and have more training than medical doctors in treating the musculoskeletal system. The interrogatory then asks Trigon, in light of these studies, to provide any studies or information that it relied upon in making its decision to pay doctors of chiropractic differently than medical doctors for the same services performed.

2002 U.S. Dist. LEXIS 6199, *

n2 There is a difference of opinion as to the degree of burden on Trigon in finding and producing the requested information. The plaintiffs believe that Trigon may obtain this information by "pushing a button." Trigon contends that the information is not readily available and that a special computer program would have to be written to obtain the data.

Good cause [*12] does not exist for this interrogatory. Interrogatories six, seven, eight and nine request similar information. In particular, interrogatory numbered 9(b) requires Trigon to disclose any study "and/or other information" supporting greater payments to medi-cal doctors than to doctors of chiropractic. The answer to that interrogatory ought to supply the plaintiffs with any relevant information needed to prevent surprise in the preparation of the case for trial, particularly in conjunction with other discovery methods that the plaintiffs may utilize.

III

For these reasons, the plaintiffs' motion to compel (Doc. No. 72) is granted in part and denied in part. The defendants are directed to respond to parts "b" and "c" of interrogatory nine within twenty days of the date of entry of this order. Otherwise, the motion to compel is denied.

It is so **ORDERED**.

ENTER: March 18, 2002

# EXHIBIT C

.

LEXSEE 1999 US DIST LEXIS 6964

**BOLAND MARINE & MANUFACTURING COMPANY, INC. VERSUS M/V BRIGHT FIELD, ETC., ET AL.**

**CIVIL ACTION NO. 97-3097 SECTION "T" (2)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*1999 U.S. Dist. LEXIS 6964*

**May 3, 1999, Decided**
**May 3, 1999, Filed; May 4, 1999, Entered**

**DISPOSITION:** [*1] Motion GRANTED IN PART AND DENIED IN PART.

**LexisNexis(R) Headnotes**

**COUNSEL:** For BOLAND MARINE & MANUFACTURING COMPANY INC., plaintiff: Daphne P. McNutt, McGlinchey, Stafford & Lang, New Orleans, LA.

For BOLAND MARINE & MANUFACTURING COMPANY INC., plaintiff: Stuart E. DesRoches, Odom & DesRoches, LLP, New Orleans, LA.

For BOLAND MARINE & MANUFACTURING COMPANY INC., plaintiff: John Harold Clegg, McGlinchey Stafford, PLLC, New Orleans, LA.

For BOLAND MARINE & MANUFACTURING COMPANY INC., plaintiff: Cary Alan DesRoches, Law Offices of Cary A. DesRoches, PLC, New Orleans, LA.

For CLEARSKY SHIPPING CORP., COSCO (H.K.) SHIPPING CO., LTD., defendants: Cynthia J. Thomas, Christopher Ogilvie Davis, Dawei Zhang, Rebecca Y. Cooper, Phelps Dunbar, LLP, New Orleans, LA.

For MINIT GROUP INC, defendant: Daniel Andrew Webb, Sutterfield & Webb, LLC, New Orleans, LA.

For WORK FORCE UNLIMITED, INC., defendant: Robert Emmett Kerrigan, Jr., George Alexander Weller, Deutsch, Kerrigan & Stiles, New Orleans, LA.

For CLEARSKY SHIPPING CORP., COSCO (H.K.) SHIPPING CO., LTD., third-party plaintiffs: Cynthia J. Thomas, Christopher Ogilvie Davis, Dawei Zhang, Rebecca Y. Cooper, Phelps Dunbar, LLP, New Orleans, [*2] LA.

For WORK FORCE UNLIMITED, L.L.C., third-party defendant: Robert Emmett Kerrigan, Jr., George Alexander Weller, Deutsch, Kerrigan & Stiles, New Orleans, LA.

**JUDGES:** JOSEPH C. WILKINSON, JR., UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JOSEPH C. WILKINSON, JR.

**OPINION:**

**ORDER AND REASONS**

Plaintiff Boland Marine & Manufacturing Co., Inc. ("Boland") and third-party defendant Work Force Unlimited, Inc., L.L.C. ("Work Force") have moved to bar defendants Clearsky Shipping Corp. and COSCO (H.K.) Shipping Co., Ltd. (the "COSCO defendants") from presenting evidence or, alternatively, to compel designation of another witness with knowledge and to extend their expert report deadline. Record Doc. No. 68. The COSCO defendants filed a timely opposition memorandum, Record Doc. No. 77, and the movants received leave to file a reply memorandum. Record Doc. Nos. 79, 80.

Having carefully reviewed the memoranda of the parties, the deposition transcript excerpts that they have submitted (Plaintiff's Exh. B), the topics listed in the deposition notice and the applicable law, and for the following reasons, the motion is GRANTED IN PART AND DENIED IN PART as follows.

I. BACKGROUND

The COSCO [*3] defendants hired Boland to repair the M/V BRIGHT FIELD. The ship sustained substantial

Case 1:04-cv-00343-JJF    Document 201-2    Filed 09/06/2005    Page 27 of 35

Page 2
1999 U.S. Dist. LEXIS 6964, *

damage when a fire broke out on board while it was being repaired at Boland's facility.

In this action, Boland seeks compensation from the COSCO defendants for the amount Boland incurred in repairing the fire damage to the ship, which defendants refused to pay. The COSCO defendants counterclaimed against Boland and filed a third-party demand against Work Force (the company that provided Boland with temporary workers), contending that the fire was caused by the negligence of Boland and/or Work Force.

Work Force noticed the deposition of the COSCO defendants pursuant to *Fed. R. Civ. P. 30(b)(6)*. The COSCO defendants, who are headquartered in Hong Kong, moved to quash because of insufficient notice. This Court granted the motion on December 15, 1998. However, I ordered that the deposition would proceed by telephone or video-conference on Monday, February 22, 1999 at 8:00 p.m. New Orleans time (Tuesday, February 23, 1999 at 9:00 a.m. Hong Kong time), unless Work Force determined, after receiving responses from the COSCO defendants to its written discovery requests, that there was no need for the deposition. [*4] Record Doc. No. 39.

On February 8, 1999, Work Force re-noticed the deposition for the court-ordered date and time and designated seven topics of inquiry. Plaintiff's Exh. A. The COSCO defendants appointed as their corporate representative Mr. Pau Hok Leung, a senior marine superintendent with twenty-five years of experience, who had spent four months attending to the repairs of the BRIGHT FIELD in New Orleans and who had boarded the vessel shortly after the fire began. The deposition proceeded by telephone as scheduled. However, Mr. Pau was not in Hong Kong at the time, but was on vacation in California.

## II. THE ARGUMENTS OF THE PARTIES

In their motion, Boland and Work Force allege that defense counsel deliberately concealed Mr. Pau's whereabouts before and during the initial portion of the deposition in an effort to hamper discovery, inasmuch as the deponent was unable to refer to documents located in Hong Kong. They also aver that, had they known in advance of Mr. Pau's presence in California, they would have insisted on deposing him in person.

Mr. Pau testified that he did not refer to any documents in preparation for his deposition. Plaintiff's Exh. B, deposition transcript [*5] at 7, 79, 81. Therefore, Boland and Work Force argue that he was so unprepared and had such inadequate personal knowledge concerning the designated topics that his appearance amounted to no appearance at all under *Fed. R. Civ. P. 30(b)(6)*, for which the COSCO defendants should be sanctioned un-

der *Fed. R. Civ. P. 37(d)* by being barred from presenting evidence regarding any issue about which Mr. Pau could not fully testify at the deposition. See *Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197 (5th Cir. 1993)* ("RTC") (When a corporation designates an agent to testify on its behalf and that agent is not knowledgeable about the designated topics, "then the appearance is, for all practical purposes, no appearance at all."). Alternatively, Boland and Work Force ask that the COSCO defendants be compelled to produce another corporate representative for an additional Rule 30(b)(6) deposition to address those issues about which Mr. Pau's testimony was inadequate, and that defendants pay the costs incurred by both Boland and Work Force in attending the first deposition and filing the instant motion. Finally, they request an extension of their deadline to submit rebuttal [*6] expert reports, contending that their experts have been unable to prepare an adequate report about the fire because of defendants' discovery tactics.

Defense counsel denies any deception concerning Mr. Pau's whereabouts, although he concedes, in hindsight, that he should have placed that information on the record at the beginning of the deposition. COSCO defendants' opposition memorandum, Record Doc. No. 77, at 6 n.11. The COSCO defendants assert that they did not know who their corporate designee would be when the Court quashed the initial deposition notice and ordered a deposition time that would accommodate a witness located in Hong Kong. Moreover, they state that they were uncertain in the weeks before the deposition whether Work Force would proceed with it because they continued to provide documents responsive to Work Force's written discovery requests until February 10, 1999 in an attempt to stave off the need for the deposition. The COSCO defendants aver that they did not know Mr. Pau was going to be in California until "shortly before" the deposition date and that, because he travels extensively to attend ships around the world, they could not "anticipate or guarantee" his [*7] travel schedule after he returned to Hong Kong on February 26th. Id. at 5. They contend that, based on that uncertainty and to avoid inconveniencing Mr. Pau and his family, they elected to proceed with the deposition as scheduled on February 22nd.

The COSCO defendants maintain that Mr. Pau was an appropriate representative to testify about the matters described in the notice of deposition, he was adequately prepared and he testified completely about the designated topics, with the exception of a few questions about which he either had no personal knowledge or could not testify without looking at certain documents that were not in front of him. They assert that these few documents either have been produced since the deposition or can be pro-

duced if Work Force or Boland propounds an appropriate interrogatory or request for production.

III. ANALYSIS

A. The Adequacy of the Deponent's Testimony

A corporate designee must be prepared to address the topics listed in the deposition notice and must be able to give complete, knowledgeable and binding answers on behalf of the corporation. *United States v. Taylor, 166 F.R.D. 356, 360-61 (M.D.N.C. 1996)*. If it becomes apparent [*8] during the deposition that the witness does not possess the requisite knowledge to testify about the matters specified in the notice, the corporation is required to designate an additional witness who has such knowledge. 8A C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure ß 2103, at 32 (1994) (citing *RTC, 985 F.2d at 197*).

I find that Mr. Pau was adequately prepared and testified fully over the course of a six-hour deposition. On behalf of the COSCO defendants, Mr. Pau gave his opinion concerning the cause of the fire and explained his reasons for that opinion. Plaintiff's Exh. B, at 58-61. As to his preparation, defense counsel had faxed to him on the morning of the deposition the documents that movants' counsel wanted him to have before him during the deposition, and movants have cited no instances when he was unable to testify about those documents. His inability to answer completely every one of movants' questions was not tantamount to a complete failure to appear and does not demonstrate any willfulness or bad faith on defendants' part. *United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995); Zappia Middle E.* [*9] *Constr. Co. v. Emirate of Abu Dhabi, 1995 U.S. Dist. LEXIS 17187, No. 94 CIV1942, 1995 WL 686715, at *5, *8 (S.D.N.Y. Nov. 17, 1995)*. "In order for the court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." Id. at *8 (citing *RTC, 985 F.2d at 197; Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78 (S.D.N.Y. 1991); Thomas v. Hoffman-Laroche, Inc., 126 F.R.D. 522, 524 (N.D. Miss. 1989)*). Some memory loss by a witness can be expected when he is deposed two years after an incident.

The alleged inadequacies in Mr. Pau's testimony are not egregious. The instant case is unlike RTC, in which the Fifth Circuit approved sanctions because the two deponents designated as corporate representatives by the plaintiff were unable to answer a single question, while the person who had knowledge was easily ascertainable from the plaintiff's own documents. *RTC, 985 F.2d at 197-98*. If the COSCO defendants attempt at trial to introduce evidence that contradicts or alters the statements

and opinions expressed by Mr. Pau, the movants are free to try to exclude the evidence at that time on whatever grounds they [*10] deem appropriate or, if the evidence is admitted, to explore through cross-examination and impeachment why the opinion or statement was altered. *Taylor, 166 F.R.D. at 362 n.6* (citation omitted).

The few questions that Mr. Pau was unable to answer would either be better addressed to individually identified and deposed fact witnesses or can be more easily determined by submitting an interrogatory or by reference to particular documents. In the first category are questions about what items were removed from the boatswain's storeroom before the fire, Plaintiff's Exh. B, at 22; the items in the same area that were damaged by the fire, id. at 26, 30-31; and the whereabouts of the crew when the fire broke out. Id. at 107; see *Zappia Middle E. Constr., 1995 U.S. Dist. LEXIS 17187, 1995 WL 686715*, at *6 (when deponent lacked information about all entities on a certain list, better course was to obtain production of document rather than depose another witness who would merely testify to contents of list after reviewing it). In the second category are the name of the foreman at Boland to whom Mr. Pau had complained about workers smoking in designated nonsmoking areas, whose business card Mr. Pau had at his [*11] office in Hong Kong, Plaintiff's Exh. B, at 40; and the names of the crew members assigned to particular duties in responding to fires, which Mr. Pau testified were listed on the station bill. Id. at 112. The station bill was subsequently provided to movants' counsel. Record Doc. No. 77, COSCO defendants' opposition memorandum, at 8. n1

> n1 The parties dispute whether the ship's electrical drawings and station bill had been previously requested in requests for production or were requested for the first time at the deposition. The Court does not address this dispute, as the COSCO defendants state in their opposition memorandum that they provided the documents on March 24 and April 12, 1999, respectively. See Defendants' Exhs. H, I. The parties' "dispute over . . . the scope of discovery does not alter the fact that Mr. [Pau] provided the information required of him." *Zappia Middle E. Constr. Co., 1995 WL 686715, at 5*.

Finally, movants' allegation that Mr. Pau "resisted answering questions" about the [*12] fire investigation because it had been conducted by counsel, Record Doc. No. 68, at 4, is unsupported by the deposition transcript. Mr. Pau answered the question asked and did not decline to answer any follow-up questions. Plaintiff's Exh. B, at 109.

1999 U.S. Dist. LEXIS 6964, *

Accordingly, the motion of Boland and Work Force to prohibit the COSCO defendants from presenting evidence or to compel an additional *Fed. R. Civ. P. 30(b)(6)* deposition is DENIED. However, Boland and/or Work Force are GRANTED LEAVE to submit an additional interrogatory and request for production to the COSCO defendants, requesting the name and a copy of the business card of the Boland foreman to whom Mr. Pau complained about the workers who were smoking. Movants must submit such discovery requests by May 10 and defendants must respond by May 21, 1999.

Boland and Work Force deposed Mr. Pau on February 22nd. Their expert report deadline was April 16 but they did not file the instant motion until April 20, 1999. They have not offered any explanation for the delay in filing their motion, when they knew at the time of the deposition of their complaints about its adequacy. In addition, I cannot conclude that their experts could not have obtained [*13] information sufficient to prepare their reports before the April 16th deadline. Accordingly, their motion for an extension of time to submit rebuttal expert reports is DENIED.

B. The Location of the Deponent

Nothing in the deposition transcript or other exhibits submitted indicates that counsel for the COSCO defendants deliberately deceived movants' counsel about Mr. Pau's location. However, the transcript reflects that counsel did not correct the references to "morning" made by counsel for Work Force when he initially addressed the witness (whom counsel assumed was in Hong Kong), Plaintiff's Exh. B at 6-7, and that Mr. Pau's presence in California was not revealed on the record until midnight New Orleans time. Id. at 94-95.

Given the difficulties of arranging this deposition, which has already required prior Court involvement, and the COSCO defendants' carefully worded admission in their opposition memorandum that they knew "shortly before" the deposition date that Mr. Pau would be in California, n2 it seems disingenuous of their counsel not to have informed opposing counsel of his location at least by Friday, February 19th, by which time they clearly knew where he would [*14] be, n3 so that

movants' counsel could have elected to depose him in person.

> n2 Mr. Pau testified that he received the deposition notice on February 15th, one week before the scheduled deposition date. Plaintiff's Exh. B, at 81.

> n3 See Defendants' Exh. F, faxed letter from counsel for Work Force to counsel for the COSCO defendants, confirming that COSCO counsel preferred to keep the February 22nd date and time for the deposition of Mr. Pau.

On the other hand, it appears from defendants' memorandum and the colloquy between the attorneys at the deposition that the motivations of COSCO's counsel for maintaining the scheduled date and time were to minimize disturbance of the witness's vacation and the already crowded schedules of the attorneys. See Plaintiff's Exh. B, at 95-104. Trying to reschedule the deposition "shortly before" February 22nd may have been difficult, given the schedule and preferences of the witness and the schedules of the attorneys.

In these circumstances, I cannot conclude that [*15] counsel for the COSCO defendants engaged in deliberate deception or abusive discovery practices. Accordingly, the motion for sanctions based on this alleged conduct is DENIED. Neither do I agree with defense counsel's characterization of the movants' allegations as "scandalous and impertinent," and I DENY their request to strike the memorandum of Boland and Work Force from the record. *Fed. R. Civ. P. 12*(f.). However, counsel for all parties in this case are cautioned that they must cooperate in the discovery process, that the Court is both surprised and disappointed that counsel of their caliber and reputation have engaged in this kind of exchange, and that verifiably abusive discovery tactics will not be tolerated.

New Orleans, Louisiana, this 3rd day of May, 1999.

JOSEPH C. WILKINSON, JR.

UNITED STATES MAGISTRATE JUDGE

# EXHIBIT D

LEXSEE 2004 US DIST LEXIS 12782

## COMMISSARIAT A L'ENERGIE ATOMIQUE, Plaintiff, v. DELL COMPUTER CORPORATION; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CANADA, INC.; SAMSUNG INTERNATIONAL, INC.; SUN MICROSYSTEMS, INC.; and VIEWSONIC CORPORATION, Defendants.

### Civil Action No. 03-484-KAJ

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

### *2004 U.S. Dist. LEXIS 12782*

### May 25, 2004, Decided

**PRIOR HISTORY:** *Commissariat a L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 9107 (D. Del., May 13, 2004)*

**DISPOSITION:** [*1] Plaintiff's motion for expedited entry of protective order denied.

### LexisNexis(R) Headnotes

**COUNSEL:** For COMMISSARIAT -A L'ENERGIE ATOMIQUE, plaintiff: Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, DE.

For DELL COMPUTER CORP, SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA INC., SAMSUNG ELECTRONICS CANADA INC., SAMSUNG INTERNATIONAL INC., SUN MICROSYSTEMS INC, VIEWSONIC CORP., defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For FUJITSU DISPLAY TECHNOLOGIES CORPORATION, defendant: Robert H. Richards, III, Richards, Layton & Finger, Wilmington, DE.

For TOTTORI SANYO ELECTRIC CO. LTD., defendant: M. Duncan Grant, Pepper Hamilton LLP, Wilmington, DE.

For SHARP CORPORATION, defendant: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For SUN MICROSYSTEMS INC, counter-claimant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For COMMISSARIAT [*2]     -A L' ENERGIE ATOMIQUE, counter-defendant: Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

### MEMORANDUM ORDER

This is a patent infringement case. Jurisdiction is proper under *28 U.S.C. β 1331*. Presently before me is a Motion for Expedited Entry of Protective Order filed, on April 13, 2004, by plaintiff Commissariat a L'Energie Atomique ("CEA"). (Docket Item ["D.I."] 172; the "Motion".) For the reasons that follow, CEA's Motion will be denied.

CEA alleges that Defendants n1 are infringing its *U.S. Patent No. 4,701,028* (issued October 20, 1987) ("the '028 patent") and *U.S. Patent No. 4,889,412* (issued December 26, 1989) ("the '412 patent"), both of which claim certain liquid crystal display ("LCD") technology. (*See* D.I. 1.) CEA filed a motion for a preliminary injunction against Samsung on October 28, 2003 (D.I. 58, 59) and, on March 3, 2004, I granted CEA's request for limited expedited discovery in connection with that motion (D.I. 138). Samsung provided some responsive information to CEA's expedited discovery requests, and both sides want some form [*3] of protective order in place to protect confidential information, but CEA and

2004 U.S. Dist. LEXIS 12782, *

the Defendants have reached an impasse in their negotiations over the scope of the protective order that should be entered. n2 (*See* D.I. 173 at 1; D.I. 199 at 2.)

> n1 On May 13, 2004, I issued a Memorandum Order granting in part and denying in part CEA's Motions to Consolidate this case with several others. (D.I. 209.) Any reference herein to the "Defendants" means the module manufacturers against whom this action is now proceeding, namely, Samsung Electronics ("Samsung"), Fujitsu Display Technologies Corporation ("Fujitsu"), and Tottori Sanyo Electric Co., Ltd. ("Tottori Sanyo"). (*Id.* at 8.) The Defendants have each submitted formal or letter briefing in response to CEA's Motion. (*See* D.I. 182, 183, 196, 198, 199.)

> n2 The Defendants, recognizing that these protective order issues will impact them equally as this case moves forward, share a common position in response to CEA's proposed protective order. (*See* D.I. 182 at 1 n.2; D.I. 183; D.I. 196.)

[*4]

The parties disagree over whether three of the attorneys who are on CEA's trial team and also prosecute patents for CEA - namely, Song Jung, Rebecca Rudich, and Yonggyu Kim (collectively referred to as "CEA's patent prosecution attorneys") - should have access to discovery designated as "highly confidential." (D.I. 173 at 1; D.I. 198 at 3; D.I. 199 at 2.) CEA argues that Mr. Jung, CEA's lead attorney in this case, and his colleagues, Ms. Rudich and Mr. Kim, need access to all discovery in order to continue to represent CEA effectively. n3 (D.I. 173 at 2, 12.) The Defendants are seeking entry of a protective order that bars CEA's patent attorneys from accessing the Defendants' highly confidential information. (D.I. 199 at 9-10.) The Defendants argue that giving CEA's patent prosecution attorneys access creates an unacceptable risk of inadvertent disclosure or misuse of their highly confidential research, technical, and proprietary information, especially since Mr. Jung and his colleagues prosecute patents for LG.Philips LCD Co., Ltd. ("LG.Philips"), one of the Defendants' major competitors. (D.I. 198 at 4; D.I. 199 at 3.) CEA responds that, just because their patent prosecution attorneys [*5] render legal advice with respect to patent prosecution, does not necessarily mean that they are involved in competitive decision making and thus warrant denying them access to highly confidential information. (D.I. 203 at 1.) The Defendants say, in the alternative, that if the patent prosecution attorneys are given access to confidential information, they should be barred from prosecuting patents in the LCD field for a minimum of one year. (D.I. 198 at 3; D.I. 199 at 21.) CEA asserts that any restriction on those attorneys' patent prosecution should be more narrow, and, specifically, "should be limited to the VA-mode birefringence compensation technology at issue or, at most, VA-mode LCD technology generally." (*Id.* at 1-2.)

> n3 CEA also argues that it need not identify its non-testifying experts and consultants who may have access to confidential information prior to the end of this case. (D.I. 173 at 3.) I heard argument from CEA and the Defendants on this point during an April 21, 2004 teleconference, and ruled that, if CEA wanted to show "confidential and what's asserted to be highly sensitive information" to non-testifying experts and consultants, CEA had to "tell [the Defendants] who they are before ... divulging it." (D.I. 197 at 16:5-11.)

[*6]

*Federal Rule of Civil Procedure 26(c)* provides that, "for good cause shown, ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ...." *Fed. R. Civ. P. 26(c)(7)* (2004). This court has routinely recognized the importance of protecting technical information, particularly in patent cases. *See Motorola, Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. LEXIS 20714 at \*6 (D. Del. Dec. 19, 1994)* ("In a patent case, maintaining the integrity of the protective order is an especially serious concern."); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 22 (D. Del 1988)* ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."). Access to confidential information "should be [*7] denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented ... " *U.S. Steel Corp. v. U.S., 730 F.2d 1465, 1469 (Fed. Cir. 1984)*. "The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure" of highly confidential information. *Motorola, 1994 U.S. Dist. LEXIS 20714 at \*10*.

I think it is appropriate to deny CEA's patent prosecution attorneys access to the Defendants' highly confidential information or, if they are permitted to have access to such information, to prevent them from prosecuting patents in the field of LCD technology for one year

2004 U.S. Dist. LEXIS 12782, *

after the conclusion of this litigation, including appeals. Central to my determination is the Defendants' assertion, unrebutted by CEA, that CEA's patent prosecution attorneys - and Mr. Jung, in particular - prosecute patents in the field of LCD technology for LG.Philips, one of the Defendants' major competitors. (D.I. 198 at 3; D.I. 199 at 4.) I disagree with CEA's assertion that those attorneys' activities do not rise to the level of "competitive decision making" that is necessary to [*8] restrict their access to highly confidential information. (D.I. 173 at 2 (citing *U.S. Steel, 730 F.2d at 1468*).) Prosecuting patent applications "involves decisions of scope and emphasis" that implicate competitive decision making, as claims may be drafted to "read on new products and new directions where [a party] project[s] sales to be most critical." *Motorola, 1994 U.S. Dist. LEXIS 20714 at *11*. In this case, as in *Motorola*, "there can be no question" that CEA attorneys who receive highly confidential information and then later prosecute patents in the field of LCD technology "will have to distill and compartmentalize the confidential knowledge they have gained." *1994 U.S. Dist. LEXIS 20714 at *12*. This creates a high risk of inadvertent disclosure of the Defendants' highly confidential information. *See Motorola, 1994 U.S. Dist. LEXIS 20714 at *13*. CEA's patent prosecution attorneys are currently prosecuting patent applications related to the subject matter of the patents-in-suit. (*See* D.I. 198, Ex. A (U.S. Patent Application No. 10/437,982 entitled "Liquid Crystal Display Device With Wide Viewing Angle, [*9] " listing Mr. Jung as the corresponding attorney).) Those CEA patent prosecution attorneys who, if given access,

> were to view [the Defendants'] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be.

*Motorola, 1994 U.S. Dist. LEXIS at *14-*15*. In sum, I am persuaded that CEA's patent prosecution attorneys should not have unfettered access to the Defendants' highly confidential information. There is a substantial risk of inadvertent disclosure of such information, given that CEA's patent attorneys are prosecuting and will continue to prosecute patents in the field of LCD technology, including patents for the Defendants' competitors.

As previously noted, CEA argues that there are many different categories of LCD technology, n4 and that, because the subject matter of the patents-in-suit pertains to the [*10] field of VA-mode birefringence compensation, any restriction on its patent prosecution attorneys' prosecution activities should be limited to that narrow area. (D.I. 203 at 2.) However, I will not pick and choose which categories of LCD technology are fair game for CEA's patent prosecution attorneys and those which are not. If CEA's patent prosecution attorneys have access to the Defendant's highly confidential information, they will be barred from prosecuting patents "relating to the broad subject matter of the patents in suit," that is, LCD technology, for one year after the conclusion of this lawsuit, including all appeals. n5 *See Motorola, 1994 U.S. Dist. LEXIS 20714 at *8-*9*.

> n4 *E.g.*, vertical alignment ("VA"), in plane switching, twisted nematic, and ferroelectric liquid crystal LCD technologies.

> n5 CEA also argues that it will be unduly prejudiced in prosecuting this case if its patent prosecution attorneys are not allowed access to the Defendants' highly confidential information. (D.I. 173 at 12-13.) While this is "a factor to be balanced against [the Defendants'] need to protect [their] confidential information ... it is just one factor." *Motorola, 1994 U.S. Dist. LEXIS 20714 at *16*. As the Defendants point out, CEA fails to explain why Mr. Jung cannot continue to direct this litigation without access to the Defendants' highly confidential information, or why the many other attorneys on CEA's litigation team are incapable of handling this case as it moves forward. (D.I. 198 at 11.)

[*11]

If CEA wants Mr. Jung, Ms. Rudich, and Mr. Kim to continue in their current roles as litigation counsel, and to have access to the Defendants' highly confidential information, then either these three individuals, who also prosecute patents in the field of LCD technology, must be barred from having access to the Defendants' highly confidential information, or they must be prohibited from prosecuting patents in the field of LCD technology for one year following the conclusion of this litigation, including all appeals. This, I think, strikes the proper balance between "the goals of full disclosure of relevant information and reasonable protection against economic injury" that are implicated in patent infringement cases generally, and certainly in this one. *Safe Flight, 682 F. Supp. at 23*.

2004 U.S. Dist. LEXIS 12782, *

For these reasons, I will adopt the Defendant's proposed section 4.1(a) of the draft Stipulated Protective Order submitted as Exhibit D to Docket Item 174. n6 The parties are ORDERED to submit a Stipulated Protective Order containing this language to the court within five days of the date of this Memorandum Order.

n6 This language provides, in relevant part, that "attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys ... currently participate in, direct or supervise any patent prosecution activity involving (i) LCD technology or (ii) technology directed to increasing the wide-angle viewing of LCD products (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of this litigation, including all appeals, those attorneys ... who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity ... involving the Subject Matter ...." (D.I. 174, Ex. D at 5.) This provision gives CEA the option of deciding whether to give their patent prosecution attorneys access to the Defendants' highly confidential information, while also giving effect to the restrictions described herein, if CEA does decide to continue using their patent prosecution attorneys as litigation counsel in this case.

[*12]

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

May 25, 2004
Wilmington, Delaware

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on September 6, 2005, I caused a copy of the foregoing document to be served as follows:

(VIA E-FILE AND E-MAIL)    Richard D. Kirk, Esquire
                           The Bayard Firm
                           222 Delaware Avenue #900
                           P. O. Box 25130
                           Wilmington, DE 19899

(VIA E-FILE AND E-MAIL)    Richard L. Horwitz, Esquire
                           Potter Anderson & Corroon, LLP
                           1313 N. Market Street
                           Hercules Plaza, 6th Floor
                           P. O. Box 951
                           Wilmington, DE 19899

JEFFREY S. GODDESS (No. 630)
Rosenthal, Monhait, Gross &
   Goddess, P.A.
(302) 656-4433
jgoddess@rmgglaw.com