# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG COMPANY, et al., | |
| Defendants. | |

## TATUNG COMPANY OF AMERICA'S OBJECTIONS AND ANSWERS TO LG.PHILIPS LCD CO., LTD'S FIRST SET OF INTERROGATORIES

### OBJECTIONS TO DEFINITIONS

Tatung Company of America, Inc. (hereinafter TUS) objects to definitions 1 through 20 contained in Plaintiff's First Set of Interrogatories to the extent that these definitions impose or seek to impose any obligation in excess of Federal Rules of Civil Procedure, Rules 26 and 33. TUS further objects to the definitions 1 through 20 contained in Plaintiff's First Set of Interrogatories to the extent theses definitions vary from such term's customary and ordinary meaning, as being vague and ambiguous to the extent that such definitions are not fully contained therein. TUS further objects to the extent that such definitions impose obligations in responding that are overbroad and unduly burdensome, including but not limited to where application of definition expands an interrogatory to include subparts and instructions not recognized by Plaintiff in the numeration of the interrogatories propounded.

Without limitation to the foregoing, TUS objects to the definition of "Tatung America," "you," and "your" to the extent it incorporates or seeks to incorporate any person or entity other than TUS and its employees acting within the course and scope of their employment by TUS; TUS further objects that the definition is vague and ambiguous. In response to these interrogatories according, TUS understands the terms "Tatung America", "you," and "your" to refer to TUS and TUS employees acting for TUS within the course and scope of their employment.

Without limitation to the foregoing, TUS object to the definition of Plaintiff as vague and ambiguous and understands "Plaintiff" to mean the named Plaintiff in this action.

Without limitation to the foregoing, TUS objects to the definition of "Affiliate" as being vague and ambiguous.

Without limitation to the foregoing, TUS objects to the definition of "any" as vague and ambiguous and contrary to general understanding. TUS further objects that as defined, "any" is unduly burdensome and overbroad.

Without limitation to the foregoing, TUS objects to the instructions on construction of conjunctives as vague and ambiguous and shall apply the ordinary and customary understanding of these words in considering each interrogatory and in its responses.

Without limitation to the foregoing, TUS objects to the definitions of "Communication" "concern," "concerning," "discuss," "discussing," "relate to," "relating to," "support" and "supporting" to the extent such definitions deviate from the normal and customary meaning of such words.

Without limitation to the foregoing, TUS objects to the definitions "Document" to the extent it deviates from the normal and customary meaning of such term.

Without limitation to the foregoing, TUS objects to the definitions of "make," "use," "sell," "offer to sell" to the extent that application of said definitions to any interrogatory would call for the disclosure of information exceeding the allegations contained in Plaintiff's complaint herein upon which Plaintiff service of process and jurisdictional selection is based.

Without limitation to the foregoing, TUS objects to the definition of "visual display product" to the extent that such definition incorporates any product for which Plaintiff has failed to come forward with evidence that Plaintiff contends supports the allegations of infringement as being unduly burdensome, overbroad, and not relevant.

Without limitation to the foregoing, TUS objects to each definition to the extent it contains therein an instruction either explicitly or by implication, standing on its own or when read in context of the interrogatory in which the term appears.

## OBJECTIONS TO INSTRUCTIONS

TUS objects to each instruction to the extent it imposes or seeks to impose any obligation in excess of Federal Rule of Civil Procedure, Rules 33 and 26.

Without limitation to the foregoing, TUS objects to Instruction 8 as application of said instruction would of itself incorporates 72 separate subject matters with respect to each interrogatory.

## GENERAL OBJECTIONS AND RESERVATIONS

TUS objects to each interrogatory to the extent such interrogatory incorporates more than a single subject.

TUS objects to responding to each and every interrogatory in excess of 25, construed in light of subparts, as violating Federal Rules of Civil Procedure 33 and further objects to responding to each an every interrogatory in excess of 50, construed in light of subparts, as violating the local rules of Court.

TUS objects to each interrogatory to the extent that it seeks the information protected by the attorney-client privilege, the work product doctrine, joint defense privilege, rights to privacy conferred under state or federal law, or the privilege for tax return information or disclosure of which would violate obligations of confidentially imposed by court order, operation of law, or contract, whether such obligations are foreign or domestic, and such further and other privileges, immunities or doctrines as may apply.

TUS objects to each interrogatory to the extent that that it seeks trade secret, or other confidential research, development, or commercial information that Plaintiff has failed to establish is relevant and necessary for proof of the allegations upon which personal jurisdiction is premised in the Complaint on file herein.

TUS object to each interrogatory in light of five pages of definitions and four pages of instructions and incorporation by reference to matters external to the interrogatories as imposing undue burden and expense on TUS in light of the limited purpose for which the Court has authorized discovery.

In providing any response herein, TUS does not admit the relevancy of any information provided and specifically reserves the right to object to the use or introduction of any answer, in whole or part, upon such grounds as may exist under the Federal Rules of Evidence or otherwise at law or equity.

In providing any response herein, TUS does not admit the accuracy of, existence of or its concurrence with any assertion contained within the interrogatory to which a response is provided either directly, by implication, by negative pregnant or any other construction.

In providing any response herein, TUS notes that it has not fully completed its investigation of the facts relating to this action, its discovery or its preparation for trail. TUS responses and objections are based upon only such information as TUS has acquired upon the exercise of reasonable diligence in light of the time within which demand for

responses has been made by Plaintiff, Plaintiff's other simultaneous discovery demands, the exigencies of this litigation and seasonal demands upon its business and personnel. Upon further discovery, independent investigation, legal research and analysis may reveal additional information and/or add meaning to known facts and/or support new factual and legal conclusions all of which may lead to additions to, changes in and variations from the responses herein.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

INTERROGATORY 1:

Identify each person who prepared or otherwise assisted in the preparation of your responses to these interrogatories and/or your responses to Plaintiff's first set of requests for production of documents:

RESPONSE TO INTERROGATORY 1:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory, as follows:

[1][1] Identify each person who prepared or otherwise assisted in the preparation of your responses to these interrogatories;

[2] Identify each person who prepared or otherwise assisted in the preparation of your responses to Plaintiff's first set of requests for production of documents.

TUS further objects to each of these interrogatories [1] and [2] as not reasonably calculated to lead to the discovery of admissible evidence concerning Plaintiff's allegations of personal jurisdiction as set forth in the Complaint, as seeking attorney-client privileged information and as protected under the attorney-work product doctrine for which no exception applies.

INTERROGATORY 2:

For each month or quarter since January 1, 2000, identify all products (including how many of each product) that your directly or indirectly: make (or have made) in Delaware; import (or have imported) to Delaware; cause (or have caused) to be imported to Delaware; purchase (or purchased) in Delaware; offered (or have offered) for sale in Delaware; and sell (or have sold) in Delaware.

RESPONSE TO INTERROGATORY 2:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound

---

[1] Due to Plaintiff's repeated use of compound interrogatories containing unrelated, unnumbered subparts, TUS applies the following convention in response to the interrogatories propounded by Plaintiff. Each interrogatory is reproduced as stated by Plaintiff, each interrogatory is then re-stated and re-numbered in brackets [##] in TUS's responses to provide an accurate running tally of the number of interrogatories propounded based upon each separate subject matter inquired into by Plaintiff.

and seeking information on 12 separate, topics each of which stands on its own as a separate interrogatory, as follows:

[3] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you directly make (or have made) in Delaware;

[4] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you directly import (or have imported) to Delaware;

[5] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you directly cause (or have caused) to be imported to Delaware;

[6] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you directly purchase (or purchased) in Delaware;

[7] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you directly offered (or have offered) for sale in Delaware;

[8] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you directly sell (or have sold) in Delaware

[9] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you indirectly make (or have made) in Delaware;

[10] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you indirectly import (or have imported) to Delaware;

[11] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you indirectly cause (or have caused) to be imported to Delaware;

[12] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you indirectly purchase (or purchased) in Delaware;

[13] For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you indirectly offered (or have offered) for sale in Delaware;

[14]  For each month or quarter since January 1, 2000, identify all products (including how many of each product) that you indirectly sell (or have sold) in Delaware

TUS further objects to the interrogatory in its entirety ([3]-[14]) as overbroad, unduly burdensome and seeking information that is not relevant to nor within the limited jurisdictional scope of discovery permitted by the Court in that, *inter alia*, these interrogatories seek information pertaining to a time period before the patents-in-suit issued and after the date of the filing of suit. TUS, therefore, limits its responses to the period from issuance of the patents to the time of filing suit. TUS further objects as to [9]-[14] that the interrogatory is vague and ambiguous as to "indirectly" and understands it to refer to actions taken by third parties at the request of TUS for its benefit. Subject to and without waiving each such objection, states that it has sold to Delaware various small appliances and appliance parts, as follows: Comfort Inn-Dover on 3/20/03 40 microwave ovens; 10/16/03 20 clock radios; 4/15/04 35 microwave ovens and 35 compact refrigerators; and 5/19/04 85 microwave ovens and 85 compact refrigerators.

INTERROGATORY 3.

For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly or indirectly: make (or have made) in the United States; import (or have imported) to the United States; cause (or have caused to be imported) to the United States; purchase (or have purchased) in the United States; offer (or have offered) for sale in the United States; and sell (or have sold) in the United States.

RESPONSE TO INTERROGATORY 3:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on 12 separate, unrelated topics each of which stands on its own as a separate interrogatory, as follows:

[15]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly make (or have made) in the United States;

[16]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly import (or have imported) to the United States;

[17]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly cause (or have caused) to be imported to the United States;

[18]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly purchase (or purchased) in the United States;

[19]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly offered (or have offered) for sale in the Untied States;

[20]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you directly sell (or have sold) in the Untied States;

[21]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you indirectly: make (or have made) in the Untied States;

[22]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you indirectly: import (or have imported) to the United States;

[23]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you indirectly: cause (or have caused) to be imported to the United States;

[24]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you indirectly: purchase (or purchased) in United States;

[25]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you indirectly: offered (or have offered) for sale in the United States;

[26]  For each month or quarter since January 1, 2000, identify each type of visual display product (including how many of each product) that you indirectly: sell (or have sold) in the United States;

TUS further objects to the interrogatory in its entirety and each subpart thereof [15]-[26] as overbroad, unduly burdensome and seeking information that is not relevant to nor within the limited jurisdictional scope of discovery permitted by the Court in that, *inter alia*, these interrogatories seek information pertaining to a time period before the patents-in-suit issued and after the date of the filing of suit and TUS is a California company and subject to personal jurisdiction in at least one jurisdiction other than Delaware. TUS further objects that the interrogatory subparts [21] – [26] are vague and ambiguous as to "indirectly" and understands it to refer to actions taken by third parties at the request of TUS for its benefit.

INTERROGATORY 4.

For each month or quarter since January 1, 2000, state the amount of revenue and profit that you derived, directly or indirectly, from products and services delivered or sold in Delaware or ultimately used or purchased by persons in Delaware.

RESPONSE TO INTERROGATORY 4:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on numerous separate topics each of which stands on its own as a separate interrogatory, as follows:

[27] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly from products delivered in Delaware.

[28] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly from products delivered in Delaware.

[29] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from products delivered in Delaware.

[30] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from products delivered in Delaware.

[31] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly, from services delivered in Delaware.

[32] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly, from services delivered in Delaware.

[33] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from services delivered in Delaware.

[34] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from services delivered in Delaware.

[35] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly, from products sold in Delaware.

[36] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly, from products sold in Delaware.

[37] For each month or quarter since January 1, 2000, state the amount of revenue you derived, indirectly, from products sold in Delaware.

[38] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from products sold in Delaware.

[39] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly, from services sold in Delaware.

[40] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly, from services sold in Delaware.

[41] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from services sold in Delaware.

[42] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from services sold in Delaware.

[43] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly from products ultimately used by persons in Delaware.

[44] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly from products ultimately used by persons in Delaware.

[45] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from products ultimately used by persons in Delaware.

[46] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from products ultimately used by persons in Delaware.

[47] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly, from services ultimately used by persons in Delaware.

[48] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly, from services ultimately used by persons in Delaware.

[49] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from services ultimately used by persons in Delaware.

[50] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from services ultimately used by persons in Delaware.

[51] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly from products ultimately purchased by persons in Delaware.

[52] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly from products ultimately purchased by persons in Delaware.

[53] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from products ultimately purchased by persons in Delaware.

[54] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from products ultimately purchased by persons in Delaware.

[55] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, directly, from services ultimately purchased by persons in Delaware.

[56] For each month or quarter since January 1, 2000, state the amount of profit that you derived, directly, from services ultimately purchased by persons in Delaware.

[57] For each month or quarter since January 1, 2000, state the amount of revenue that you derived, indirectly, from services ultimately purchased by persons in Delaware.

[58] For each month or quarter since January 1, 2000, state the amount of profit that you derived, indirectly, from services ultimately purchased by persons in Delaware.

TUS further objects to the interrogatory in its entirety and each subpart thereof [27] – [58] as vague and ambiguous as to the terms "directly" and "indirectly" as used therein. TUS further objects to the interrogatory in its entirety and each subpart thereof [27]-[58] as overbroad, unduly burdensome and seeking information that is not relevant to nor within the limited jurisdictional scope of discovery permitted by the Court in that, *inter alia*, these interrogatories seek information pertaining to a time period before the patents-in-suit issued and after the date of the filing of suit. TUS further objects as overbroad, unduly burdensome and as seeking information in excess of the discovery permitted by the Court to interrogatories [28], [30], [32], [34], [36], [38], [40], [42], [44], [46], [48], [50], [52], [54], [56] and [58]. TUS further objects to interrogatories [29], [30], [33], [34], 37]. [38], [41], [42], [45], [46], [49], [50], [53], [54], [57], and [58] as calling for speculation and, upon separate grounds interrogatories [43] – [58]. Subject to and without waiving the foregoing, TUS states in response to interrogatory [27] total revenue for all products believed by TUS to have been shipped to Delaware after the patents-in-suit issued and prior to the date of filing suit is about USD 57,000 including shipping and handling charges; in response to interrogatory [31] TUS in not currently aware of any revenue from services in the un-objected to time frame; in response to interrogatory [35]

total revenue for all products sold to Delaware in the relevant time frame is about USD 24,500 including shipping and handling in the un-objected to time frame; in response to interrogatory [39] ] TUS in not currently aware of any revenue from services in the un-objected to time frame.

As to interrogatories [51] – [58] TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 5.

For each month or quarter since January 1, 2000, state the amount of revenue and profit that you derived, directly or indirectly, from imports, sales and/or shipments of products ultimately intended or expected to be purchased and/or used by persons in the United States.

RESPONSE TO INTERROGATORY 5:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1

INTERROGATORY 6.

Identify each and every location in the United States where any person hired or employed by you has worked since January 1, 2000 (including, but not limited to, persons and locations involved in making, marketing, selling, importing, distributing, and/or storing visual display products).

RESPONSE TO INTERROGATORY 6:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1

INTERROGATORY 7.

As to each location identified in the preceding interrogatory, describe briefly the type of business or activities at that location, the number of persons who work there, the annual

revenue generated at or from that location, and the date(s) when you first and last conducted any business at that location.

RESPONSE TO INTERROGATORY 7:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 8.

For the period January 1, 2000 to the present, state the amount of your total monthly, quarterly, and annual revenue from all of your locations and operations related to the United States (including, but not limited to, all sums that you have reported, treated, or characterized as U.S. income, for any purpose).

RESPONSE TO INTERROGATORY 8:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 9.

Identify all persons in the U.S. to which you have sold or shipped visual display products since January 1, 2000, stating each person's contact information and the quantity and type of visual display products purchased by each customer annually since January 1, 2000.

RESPONSE TO INTERROGATORY 9:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 10.

Identify each and every person and location in the U.S. to which you have shipped or delivered visual display products since January 1, 2000, stating the quantity and type of visual display products for each shipment or delivery.

RESPONSE TO INTERROGATORY 10:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 11.

Identify each and every person and location in Delaware to which you have shipped or delivered products or at which you have performed services since January 1, 2000, stating as to each shipment or delivery the recipient and the type of product (including how many products were shipped/delivered and as to each service the type of service performed).

RESPONSE TO INTERROGATORY 11:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 12.

Identify all persons that have distributed or sold your visual display products in or to the United States since January 1, 2000, and describe in detail your relationship (whether direct or through intermediaries) with each such person (including, by way of example and not limitation, Avnet Applied Computing, Wal Mart, Best Buy, Tweeters and Sam's Club).

RESPONSE TO INTERROGATORY 12:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 13.

Identify all networks and channels through which your visual display products are
distributed for ultimate sale and use in the United States or Delaware, including but not
limited to the persons and facilities involved in marketing, shipping, importing, selling,
and/or distributing your products.

RESPONSE TO INTERROGATORY 13:

TUS incorporates herein its reservations, general objections and objections to definitions
and instructions set forth above. TUS further objects that the interrogatory is compound
and seeking information on separate, unrelated topics each of which stands on its own as
a separate interrogatory. TUS further objects that the number of interrogatories
propounded exceeds 25, the maximum number permitted under Federal Rule of Civil
Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 14.

Identify each and every company that participated in the manufacture, sale, importation,
and/or distribution of each of the following products:
     (a) the Tatung L17AMTN LCD monitor (serial no. 6SA322680010; UPC no. 0
25517 43231 1) that Lewis G. Hines, III purchased through Avnet Applied Computing on
September 4, 2003 (See D. I. 38);
     (b) the Tatung L17AMTN LCD monitor (serial no. 6SA402002609) that Gary
Gray purchased at Best Buy in Delaware on May 27, 2004 (See D. I. 37);
     (c) the Tatung V17AFTW LCD television (serial no. 6ZA242AV0302; UPC no.
0 25517 01001 4) that Lewis G. Hines, III purchased through Amazon.com on November
13, 2003 (See D. I. 38); and
     (d) the Tatung P42BSMT plasma television that William Glanz found offered for
sale at Tweeters in Delaware on July 12, 2004 (See D. I. 36).

RESPONSE TO INTERROGATORY 14:

TUS incorporates herein its reservations, general objections and objections to definitions
and instructions set forth above. TUS further objects that the interrogatory is compound
and seeking information on separate, unrelated topics each of which stands on its own as
a separate interrogatory. TUS further objects that the number of interrogatories
propounded exceeds 25, the maximum number permitted under Federal Rule of Civil
Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 15.

For each of the following products, describe specifically and in chronological order, each
step in the chain of distribution by which the product arrived in Delaware:

(a) the Tatung L17AMTN LCD monitor (serial no. 6SA322680010; UPC no. 0 25517 43231 1) that Lewis G. Hines, III purchased through Avnet Applied Computing on September 4, 2003 (See D. I. 38);

(b) the Tatung L17AMTN LCD monitor (serial no. 6SA402002609) that Gary Gray purchased at Best Buy in Delaware on May 27, 2004 (See D. I. 37);

(c) the Tatung V17AFTW LCD television (serial no. 6ZA242AV0302; UPC no. 0 25517 01001 4) that Lewis G. Hines, III purchased through Amazon.com on November 13, 2003 (See D. I. 38); and

(d) the Tatung P42BSMT plasma television that William Glanz found offered for sale at Tweeters in Delaware on July 12, 2004 (See D. I. 36).

RESPONSE TO INTERROGATORY 15:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 16.

Identify all of your products that persons in Delaware can order or purchase from an internet website and identify all website vendors authorized to sell your visual display products.

RESPONSE TO INTERROGATORY 16:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 17.

Identify all documents that you use in the ordinary course of business reflecting the distribution, shipment, and/or sale of your visual display products in or to the U.S., including, but not limited to, how often you generate or receive each type of report and other documents.

RESPONSE TO INTERROGATORY 17:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound

and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 18.

Describe in detail all contacts that you have or have had with Delaware, including but not limited to, contacts concerning any property leasing or ownership, transacting business, hiring employees or others, borrowing or depositing funds, and/or participating in proceedings before any court, administrative tribunal, and/or arbitrator(s).

RESPONSE TO INTERROGATORY 18:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 19.

Identify any steps that you have taken to limit or prevent the sale or purchase of your visual display products by or to persons in Delaware, including the timing of and persons responsible for any such steps.

RESPONSE TO INTERROGATORY 19:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

INTERROGATORY 20.

Since January 1, 2000, identify all brand names by or under which your visual display products have been manufactured, marketed, imported, distributed, and/or sold, by or for you, in or to the United States, stating the types of visual display products that correspond to each brand name.

RESPONSE TO INTERROGATORY 20:

TUS incorporates herein its reservations, general objections and objections to definitions and instructions set forth above. TUS further objects that the interrogatory is compound and seeking information on separate, unrelated topics each of which stands on its own as a separate interrogatory. TUS further objects that the number of interrogatories propounded exceeds 25, the maximum number permitted under Federal Rule of Civil Procedure 33(a) and exceeds 50, the maximum number permitted under Local Rule 26.1.

DATED: January 4, 2005                    BAUM & WEEMS

                                          Robert C. Weems

## VERIFICATION

I am an officer or agent of Tatung Co. of America, Inc., have read its Objections and Answers to Plaintiff's First Set of Interrogatories and know the contents thereof, am authorized to respond on its behalf, and certify I am informed and believe that the same are true, based on a reasonable and good faith effort to obtain responsive information. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this ⁴ᵗʰ day of January, 2005, at Long Beach, California

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on January 5, 2005, he caused the following to be served in the manner indicated:

(1) TATUNG COMPANY OF AMERICA'S OBJECTIONS AND ANSWERS TO LG.PHILIPS LCD CO., LTD'S FIRST SET OF INTERROGATORIES; (2) TATUNG COMPANY OF AMERICA'S OBJECTIONS AND RESPONSES TO LG.PHILIPS LCD CO., LTD'S FIRST SET OF DOCUMENT REQUESTS; (3) TATUNG COMPANY'S OBJECTIONS AND ANSWERS TO LG.PHILIPS LCD CO., LTD.'S FIRST SET OF INTERROGATORIES; and (4) TATUNG CO.'S OBJECTIONS AND RESPONSES TO LG.PHILIPS LCD CO., LTD.'S FIRST SET OF DOCUMENT REQUESTS

Original By Mail:                              Counsel for Plaintiff, LG.Philips LCD
Mr. Cass W. Christenson, Esq.                  Co., Ltd.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006

Copy By Mail:
Mr. Mr. Richard Kirk, Esq.
Morris, James, Hitchens & Williams LLP
222 Delaware Ave., 10th Floor
Wilmington, DE 19801

Copy By Mail:                                  Counsel for Defendant, Viewsonic
Tracey Roman, Esq.                             Corp.
Bingham McCuthen
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071

Copy By Mail:
Richard L. Horwitz, Esq
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801

Robert C. Weems

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on September 6, 2005, I caused a

copy of the foregoing document to be served as follows:


(VIA E-FILE AND E-MAIL)      Richard D. Kirk, Esquire
                             The Bayard Firm
                             222 Delaware Avenue #900
                             P. O. Box 25130
                             Wilmington, DE 19899


(VIA E-FILE AND E-MAIL)      Richard L. Horwitz, Esquire
                             Potter Anderson & Corroon, LLP
                             1313 N. Market Street
                             Hercules Plaza, 6th Floor
                             P. O. Box 951
                             Wilmington, DE 19899


JEFFREY S. GODDESS (No. 630)
Rosenthal, Monhait, Gross &
   Goddess, P.A.
(302) 656-4433
jgoddess@rmgglaw.com