IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG PHILIPS LCD CO., LTD., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 04-343-JJF |
| TATUNG CO., TATUNG COMPANY OF AMERICA, INC., and VIEWSONIC CORPORATION, | : |
| Defendants | : |

**OBJECTIONS BY TATUNG COMPANY AND TATUNG COMPANY OF AMERICA TO SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS QUANTIFYING SANCTIONS**

Jeffrey S. Goddess (Del. Bar. No. 630)
Rosenthal, Monhait, Gross
 & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel: 302-656-4433
Fax: 302-658-7567
jgoddess@rmgglaw.com

OF COUNSEL:

Julian M. Baum
Robert C. Weems
BAUM & WEEMS
58 Katrina Lane
San Anselmo, CA 94960
Tel: 415-460-1791
Fax: 415-457-9157

October 11, 2005

## TABLE OF CONTENTS

|   |   | PAGE: |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| NATURE AND STAGE OF PROCEEDINGS | | 1 |
| STANDARD OF REVIEW | | 3 |
| ASSIGNMENTS OF ERROR FOLLOWING AWARD | | 3 |
| DISCUSSION | | 4 |
| 1. | The Award Contravenes The Order Of Reference | 4 |
| 2. | The Recommendation And Award Raise Questions Concerning The Efficacy And Reasonableness Of The Reference | 6 |
| 3. | The Attorneys Fees And Expenses Sanctions Recommended By The Award Are Contrary To Law | 7 |
| 4. | The Interim Objections (D.I. 201) | 13 |
| CONCLUSION | | 13 |

TABLE OF CITATIONS

| **CASE:** | **PAGE:** |
|---|---|
| *Aird v. Ford Motor Co.*,<br>318 U.S. App. D.C. 142 (D.C. Cir. 1996) | 5 |
| *Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc.*,<br>387 F.3d 1241 (11th Cir. 2004) | 11 |
| *Bradley Group v. Ohio State Life Ins. Co.*,<br>1997 U.S. Dist. LEXIS 410 (E.D. Pa. 1997) | 5 |
| *Casper v. Lew Lieberbaum & Co.*,<br>182 F. Supp.2d 342 (D.N.Y. 2002) | 11 |
| *Coalition to Save our Children v. St. Board of Educ.*,<br>901 F. Supp. 824 (D.Del. 1995) | 10 |
| *In re Continental Ill. Sec. Litig.*,<br>572 F. Supp. 931 (N.D. Ill. 1983) | 9, 11 |
| *Copeland v. Marshall*,<br>205 U.S. App. D.C. 390,<br>641 F.2d 880 (D.C. Cir. 1980) | 10 |
| *In re Fine Paper Antitrust Litig.*,<br>751 F.2d 562 (3d Cir. 1984) | 10 |
| *Gary W. v. State of Louisiana*,<br>601 F.2d 240 (5th Cir. 1979) | 5 |
| *Glidden Co. v. Hellenic Lines, Ltd.*,<br>315 F.2d 162 (2d Cir. 1963) | 3, 4 |
| *Joint Stock Soc'y v. UDV N. Am., Inc.*,<br>104 F. Supp.2d 390 (D.Del. 2000) | 3 |
| *Levatino Co. v. Am. President Lines, Ltd.*,<br>359 F.2d 406 (2d Cir. 1966) | 6 |
| *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Std. Sanitary Corp.*,<br>487 F.2d 161 (3d Cir. 1973) | 8 |

*Moore v. Kaiser Foundation Hosp., Inc.*, 10
765 F. Supp. 1464 (N.D. Cal. 1991)

*Schoenberg v. Shapolsky Publishers, Inc.*, 13
971 F.2d 926 (2d Cir. 1992)

*Washington v. Philadelphia County Court of Common Pleas*, 4, 8
89 F.3d 1031 (3d Cir. 1996)

**OTHER AUTHORITIES**:

Levine, Calculating Fees of Special Masters (1985) 7

2003 Advisory Committee Notes on Fed.R.Civ.P. 53(f) 7

NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement action brought by L.G.Philips LCD Co., Ltd. ("LPL") against Viewsonic Corp. ("Viewsonic"), Tatung Company of America, ("TUS") and Tatung Company, Taiwan ("TROC").

A Special Master was appointed February 25, 2005 during the course of disputes over jurisdictional discovery. (D.I. 174). On March 20, a 7-hour hearing was held before the Special Master and on April 4, a 25-minute teleconference was held. On April 20, a 40-minute hearing was held. The Special Master presided at no further hearing, as the underlying jurisdictional dispute was resolved through stipulated consent to jurisdiction. (D.I. 188.)

Four months later, on August 16, the Special Master issued the Special Master's Report and Recommendations On Motion of L.G.Philips LCD Co., Ltd. for Discovery Sanctions Against the Tatung Defendants (D.I. 197) (the "Report"). On September 6, 2005, TROC and TUS filed interim objections to the Report and moved that it not be adopted by this Court. (D.I. 201).

On September 14, the Special Master sent a $88,123.26 two-line invoice for services and disbursements June 1 through August 16, -- in other words, for the aforementioned Report.[1] Then, on September 20, 2005, the Special Master finalized his Report by issuing the Special Master's Report And Recommendations Quantifying Certain Attorney Fees and Costs and Special Master's Fees and Costs Among Sanctions Assessed Against the Tatung Defendants. (D.I. 208) (the "Award").

---

[1] To that point, the parties had been sent (and had paid) two statements by the Special Master, totaling $40,929.08.

1

The Award recommends that LPL be awarded $153,768.73 in "attorneys fees and expenses." The Award further recommends that TUS and TROC pay $125,723.85 of the total $129,052.35 for the fees and expenses of the Special Master.

TROC and TUS hereby object to the Report as modified by the Award and move that the Report and Award be rejected (alone and in concert). Each requests that the Award's recommendation to reallocate the entire cost of the Special Master be rejected, as the Court in its discretion may award such expenses as costs under Fed.R.Civ.P. 54, at the conclusion of this litigation. Furthermore, each requests that the Award's recommendation to award "attorney fees and related expenses" in the amount of $153,768.73 to LPL be rejected. As set forth below, the fees and expenses were neither reasonable nor adequately reviewed and, in fact, resulted in unnecessary and improper multiplication of the costs of the proceedings before the special master.

## STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 53(e), *as amended* 2003, the applicable standard of review concerning the Report and Award is, as follows:

> (3)　Fact Findings. The court *must decide de novo all objections to findings of fact made or recommended* by a master unless the parties stipulate with the court's consent that:
>
> > (A)　the master's findings will be reviewed for clear error, or
> >
> > (B)　the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.
>
> (4)　Legal Conclusions. The court *must decide de novo all objections to conclusions of law made or recommended* by a master.
>
> (5)　Procedural Matters. Unless the order of appointment establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.[2]

## ASSIGNMENTS OF ERROR FOLLOWING AWARD

1.　The Award's assessment of $125,732.85 in Special Master fees against TUS and TROC for just over a day of hearings contradicts this Court's Order of Reference. The Order of Reference authorizes cost shifting only where "a party engages in behavior that hinders the efficient resolution of matters before the Special Master." (D.I. 174, para. 10). There was no such conduct before the Special Master.

2.　The Award's imposition, on TUS and TROC only, of $125,732.85 for the Special Master's fees and expenses raises concerns regarding the efficacy of the terms of reference worthy of this Court's consideration. *Glidden Co. v. Hellenic Lines, Ltd.*, 315

---

[2] TUS and TROC erroneously cited to *Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 394 (D. Del. 2000) (Sleet, J.) in their interim objections, a decision issued prior to amendment of Fed.R.Civ.P. 53, which now expressly sets for the standard of review to be applied concerning objections to a special master's report.

F.2d 162, at 164 n. 1 (2d Cir. 1963). The body of the Special Master's work concerned ten document requests, supernumerosity interrogatory objections, and a motion to compel depositions (which motion was not heard). Yet, thereafter over twice as much of the Special Master's time and expense, an additional $88,123.26, was spent on his sanctions report four months later.

      3.    The Award's imposition of sanctions for the attorneys fees claimed by LPL is excessive, unsupported and contrary to law. As an initial matter, LPL failed (contrary to the Special Master's April 20 directive) to adequately support its request in its initial submission. This failure called for a denial of its request. *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996). Moreover, as detailed below, the record contradicts the Special Master's finding (on LPL's second bite at the apple) that the fess and expenses where either reasonable or necessary.

## DISCUSSION

1. <u>The Award Contravenes the Order of Reference</u>

The Order of Reference to the Special Master sets the limits of his authority and sets forth this Court's order on the allocation between the parties for payment of the Special Master's compensation. Among other limitations, this Court restricted the Special Master from reallocating the equal apportionment of fess to circumstances in which "a party engages in behavior that *hinders efficient resolution* of matters before the Special Master." (D.I. 174, para. 10, emphasis added). Specifically, Paragraph 10 provides:

> 10.    The compensation and expenses of the Special Master shall, unless otherwise ordered by the Special Master, be shared equally be the

>           parties. In this regard, if in the Special Master's opinion, a party
>           engages in behavior that hinders the efficient resolution of matters
>           before the Special Master, that party may be apportioned all or a
>           larger portion of the Special Master's compensation, costs and
>           expenses.

*Id.*

Such a limitation is within the sound discretion of the Court and appropriate. The Special Master serves the Court and parties equally by bringing discovery disputes to a timely conclusion. The value of this service has been recognized by this Court's reappointment of the Special Master to continue serving in this action. (D.I. 198). The efficacy of this reappointment, however, would be dampened by the introduction of uncertainty over the ongoing allocation of the Special Master's fees and expenses in disputes brought before him. Accordingly, the nature of the conduct for which the Court has authorized the Special Master to reallocate fess and costs is carefully circumscribed. It is limited to those circumstances in which conduct interferes with the Special Master's discharge of his duties, a power appropriate to the Special Master's need to regulate the maters before him.

Because the Special Master serves the interest of the Court and of each of the parties in the efficient resolution of discovery disputes, any reallocation of the costs properly awaits resolution on the merits, and the Court's "broad discretion to tax a Special Master's fee on behalf of a prevailing party under F.R.C.P. 54(d)." *Bradley Group v. Ohio State Life Ins. Co.*, 1997 U.S. Dist. LEXIS 410 (E.D. Pa. 1997) (citing *Gary W. v. State of Louisiana*, 601 F.2d 240, 246 (5th Cir. 1979)); *Aird v. Ford Motor Co.*, 318 U.S. App. D.C. 142 (D.C. Cir. 1996) ("once the district court exercised its

5

discretion under Rule 53(a), [a party's] share of the special master's costs was properly treated as taxable costs.").

Under the Court's reference, the reallocation of the Special Master's costs and fees is limited to circumstances in which a party's conduct interferes with the Special Mater's discharge of his duties. Neither TUS nor TROC engaged in conduct that in any way interfered with or hindered the efficient resolution of the issues brought before the Special Master. Moreover, nothing in the Special Master's interim Report nor the Award even suggests such improper conduct. Accordingly, the court should not adopt the Special Master's $125,723.85, reassessment against TUS and TROC.

> 2. The Recommendation and Award Raise Questions Concerning the Efficacy and Reasonableness of The Reference

While it is fundamentally improper to allocate to one side of a dispute all of the Special Master's $125,732.85 in fees and expenses, the excessiveness of this fee, for one hearing on the afternoon of March 20, one teleconference on April 4, and a 40-minute hearing on April 20, undermines the efficacy of the Court's Special Master appointment, a critical tool for the prompt and efficient resolution of discovery disputes and other matters.

> Although neither party appealed from the amount of the fee awarded the Commissioner, the taxation of the fee to one of the parties is one of the issues before us. As a Commissioner is a specially appointed officer of the court, we will not order a party to pay compensation which does not appear to be reasonable. *Glidden Co. v. Hellenic Lines, Ltd.*, 315 F.2d 162, at 164 n. 1 (2d Cir. 1963); cf., *Petition of the City of New York*, 332 F.2d 1006, at 1009 (2d Cir.) *certiorari denied sub nom. City of New York v. Bernstein*, 379 U.S. 922, 85 S. Ct. 277, 13 L. Ed. 2d 335 (1964).

*Levatino Co. v. Am. President Lines, Ltd.*, 359 F.2d 406, 408 (2d Cir. 1966).[3]

---

[3] The factors considered by Courts reviewing compensation have varied widely, although application of factors similar to those used in consideration of attorneys fees awards

6

3. The Attorneys Fees and Expenses Sanctions Recommended By The Award Are Contrary To Law.

In the interim objections, TUS and TROC have already highlighted some areas in which the Special Master's Report findings of fact and conclusions of law call for rejection of the Report on this Court's *de novo* review.[4]

In connection with the Special Master's consideration of awarding attorneys fees to LPL, the Special Master took up, disposed of and set a schedule for briefing such requests for discovery sanctions on April 20, as follows:

```
11                                    . . . What
12   I want you to be doing is focusing on -- in order to do
13   it, it seems to me that plaintiffs need to serve up what
14   you're actually requesting, and by that I mean I want to
15   see your positions with respect to each of those discrete
16   boxes, if you will, on the page that I just drew that you
17   haven't seen and that is Judge Farnan's reservation of
18   issues involving sanction, expenses related to cancelled
19   depositions, things of that nature, attorneys' fees and
20   other related costs. I'd like to see the numbers in your
21   submittal. There's no reason not to have them. I need
22   to have them for purposes of making an ultimate judgment.
23      Whatever expense is related to my
24   responsibility is what it is and you will get that at
1    some point. If there's a request to wrap that into the
2    sanctions, you just state that. It's not important for
3    you all to have those numbers for purposes of making your
4    positions known.
```

---

seems to have approval. *See generally* Levine, Calculating Fees of Special Masters. (1985).

[4] These include but are not limited to the Special Master's misunderstanding of such basic facts as the identify of witnesses LPL sought to depose. Interim Obj., fn. 6. No less disturbing, however, is that the Special Master appears to have come to his conclusions not on the record before him but by having accepted *allegations* in another case as *facts* appropriate for "judicial notice." *See*, Report pp. 40-41. TUS and TROC do not think a mini-trial on allegations from another case is desirable. However, should the Court wish to examine the conduct in the *Safer* case, TUS and TROC request permission to supplement the record with additional evidentiary materials related to that case. *See* 2003 Advisory Committee Notes on Fed.R.Civ.P. 53(f).

7

(4/20/05 Tr. 223-224) (emphasis added).

The Special Master's directive required complete submissions from the parties. It was contemplated (and it turned out to be the case at least for TUS and TROC) that this was the parties' only opportunity to present their arguments for and against any amount of fees and costs requested.

In the briefing that that followed, however, LPL abjectly failed to support its request. (Goddess Letter dated May 20, 2005).[5] Because the request provided no details and identified work only as being "primarily related" to the discovery issues, it should have been denied. Within this Circuit, it is well settled such a description is insufficient. *Lindy Bros. Builders, Inc of Phila. v. Am. Radiator & Std. Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973). The moving party must produce evidence "sufficient enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996).

Although the Special Master should have denied LPL's request outright for its failure to adequately support its request, he did not. Rather, the Report allowed LPL to supplement its submission while at the same time providing TUS and TROC no right to respond. Due to the Award's failure to provide any more than the cursory statement that the approved fees and expenses were weighed against the rules of professional conduct,

---

[5] The Court should have the benefit of the entire record before the Special Master, including (1) documents filed by LPL; (2) documents filed by TUS and TROC; (3) transcripts of proceedings; and (4) communications received from the Special Master (including invoices). Because TUS and TROC do not have all of these papers in unredacted form, it seems appropriate that the Court request them from the Special Master in the first instance.

there is no evidence that the Special Master considered any of the relevant federal authority that should have been applied.

The record contradicts the Special Master's finding (on LPL's second bite at the apple) that the fess and expenses were either reasonable or necessary or that the Special Master properly assessed the reasonableness of the fee request.

For example, the Special Master previously observed there was a lack of necessity for a large part of the materials submitted (which were nearly all submitted by LPL). The tables submitted by LPL, however, demonstrate that over half of the time requested and awarded was devoted to preparing such papers. (*See* August 25 Declaration of Cass Christenson.) It defies logic and experience that, on the one hand, the Special Master has indicated (albeit obliquely) that LPL's submissions were redundant and immaterial resulting in an unnecessary inflation of his time and expenses (Report at 7 n.3) and then, on the other hand, the Special Master failed to reduce LPL's requested compensation for submitting this plethora of materials.

Even though TUS and TROC have not been allowed sufficient information to provide a detailed criticism of the underlying LPL request for fees, even with what is known it is clear that the Special Master failed to cast an appropriately critical eye over the requests made by LPL abound. For example, in the 152.7 hours LPL claims was spent "preparing papers submitted" (Category E) a significant portion of the time was spent by partners rather than associates. There is no evidence that the Special Master considered whether reductions where appropriate. *In re Continental Ill. Sec. Litig.*, 572 F. Supp. 931, 933 (N.D. Ill. 1983) (work that could be done by more junior people, such as routinely reviewing documents or doing basic research, would be compensated at

9

appropriately lower rates, regardless of who actually performed it); *see also In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 591-93 (3d Cir. 1984).

Likewise, there is no evidence that the Special Master gave consideration to the apparent overstaffing of the case by LPL's lawyers. In a classic example, the submission by LPL demonstrates that LPL sent two partners (in addition to local counsel) to the hearing on March 30. Awarding fees for such duplication, typically is not condoned. *Copeland v. Marshall*, 205 U.S. App. D.C. 390, 641 F.2d 880, 891 (D.C. Cir. 1980) ("where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time"). Similarly, the tables provided by LPL are replete with time entries in which attorneys are charging well over 7.5 hours a day, a practice unacceptable to knowledgeable clients. *Moore v. Kaiser Foundation Hosp., Inc.*, 765 F. Supp. 1464, 1467 (N.D. Cal. 1991) ("knowledgeable clients do not compensate any lawyer for more than seven and one half hours per day, except possibly for trials. The temptation for churning hours is otherwise unavoidable.").

So too, in connection with this same March 20 entry (11 hours each for two out-of-state partners), there is no evidence that the Special Master considered whether fees and expenses should have been discounted due to LPL's selection of out-of-state counsel, as required in this District:

> [T]he court will not order Red Clay to pay for the travel expenses (train fare, hotel, etc,) which would not otherwise have been incurred if counsel had been from this jurisdiction. See id. 721 F. Supp. at 614. Therefore, no compensation for travel costs shall be awarded.

*Coalition to Save our Children v. State Bd. of Educ.*, 901 F. Supp. 824, 834 (D. Del. 1995). Likewise in another area Court's routinely recognize as ripe for abuse, there is no evidence that the Special Master considered the many entries suggesting that two

attorneys were assigned to a matter when one would suffice. In LPL's chronological listing of work said to be performed, over half show multiple attorneys working on categories identically identified. "Generally, attorneys should work independently." *In re Continental Ill. Sec. Litig.*, 572 F. Supp. at 933.

Indeed, the Award presents no evidence that any necessary or appropriate criteria under Federal law were considered or applied, nor does it provide any guidance into how the Special Master reached his conclusion. Although the award of attorneys fees by a Special Master must be reviewed de novo, the basic requirements are not less than those imposed upon Magistrate Judges:

> We review a [magistrate's] order awarding attorney fees for an abuse of discretion. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). The magistrate's order "'must articulate the decisions it made, give principled reasons for those decisions, and show its calculations.'" Id. (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988)). Otherwise we are left with no basis on which to review the magistrate's decision. See *Davis v. Fletcher, Jr.*, 598 F.2d 469, 470 (5th Cir. 1979).

*Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc.*, 387 F.3d 1241, 1243 (11th Cir. 2004).

In short, the Special Master appears to have made no determination (nor critically analyze) whether time was efficiently spent, a common inquiry by the Courts.[6] The

---

[6] The following passage from *Casper v. Lew Lieberbaum & Co.*, 182 F. Supp. 2d 342 (D.N.Y. 2002), is illustrative: "The Court also finds that, notwithstanding the investment of time necessitated by discovery, the magnitude of Chan's excess, combined with her failure to adequately detail all of her activities, warrant a significant reduction of 50% of her hours. For reduction for excessive hours, see, e.g., *Hensley v. Eckerhart*, 461 U.S. 424, 438, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) (stating that District Court properly reduced hours of one attorney by 30% for inexperience and failure to keep contemporaneous time records); *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) (affirming disallowance of half of counsel's hours for time unreasonably expended because number of hours reported by attorney was excessive); *Jones v. Kreisel Co.*, 1995

11

Award fails to set forth any basis for the Special Master's nearly wholesale adoption of the overreaching fees request of LPL; does not set forth any of the criteria applied; and demonstrates no adherence to the federal standards for determining the reasonable of claimed fees and expenses.[7] Accordingly, the Award of the Special Master should not be

---

U.S. Dist. LEXIS 17044, 1995 WL 681095, at *3-4 (S.D.N.Y. Nov. 16, 1995) (reducing hours from 751.6 to 250 after finding that at least 75% of the hours spent were excessive, redundant or unnecessary); *Anderson v. YARP Rest., Inc.*, 1997 U.S. Dist. LEXIS 1106, 1997 WL 47785, at *5 (S.D.N.Y. Feb. 6, 1997) (reducing overall requested number of hours by 20% because of excessive hours spent on certain tasks); *Bick v. City of New York*, 1998 U.S. Dist. LEXIS 5543, 1998 WL 190283, at *34 (S.D.N.Y. Apr. 21, 1998) (reducing lodestar by $ 10,650 from a proposed total fee award of $ 169,987.50 to reflect excessive and unnecessary work); *TM Park Ave. Associates*, 44 F. Supp. 2d at 169 (reducing hours by 10% to account for excessive hours); *Marisol A.*, 111 F. Supp. 2d at 396-97, 401 (reducing fees across the board by 15% because of a number of factors such as excessive hours spent on tasks such as learning about the case and preparing proposed findings of fact); for reduction for inadequate documentation, see, e.g., *People ex rel. Vacco*, 135 F. Supp. 2d at 364-65 (listing cases in which courts in the Second Circuit have repeatedly reduced fee requests by 10% to 20%); *TM Park Ave. Associates*, 44 F. Supp. 2d at 169 (reducing hours by 10% because of insufficient entries); *Local 32 B-32J, Service Employees Int'l Union, AFL-CIO v. Port Auth. of New York and New Jersey*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998)(reducing fees by 20% because of lack of specificity for such items as "research" and "meetings"); *Mr. X v. New York State Educ. Dep't*, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) (reducing fee by 20% because of vague and duplicative time records); *Williams*, 975 F. Supp. at 328 (reducing fee by 10% because of vague and inadequate entries which do not identify the topic discussed or the subject matter); *Wilder v. Bernstein*, 975 F. Supp. 276, 286 (S.D.N.Y. 1997) (reducing lodestar calculation by 10% because of cryptic and vague time entries); *Greenway*, 951 F. Supp. at 1069-70 (reducing fee by 10% because time entries did not "always accurately identify the nature or subject of the work performed"); *Walker v. Coughlin*, 909 F. Supp. 872, 881 (W.D.N.Y. 1995) (reducing fee by 15% for failure to identify "with precision what the nature or subject was of the work performed"); *Valmonte v. Bane*, 895 F. Supp. 593, 602 (S.D.N.Y. 1995) (reducing fee by 20% because of incomplete entries); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 520 (S.D.N.Y. 1994) (reducing fee by 30% for lack of specificity, duplicative claims, and failure to provide contemporaneous records); *S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (affirming district court's 20% reduction in addition to a 10% reduction that had previously been imposed for vagueness).

[7] The expenses claimed by LPL (aside from its pro-rata share of the Special Master's fees) also are excessive and here also there is no evidence the Special Master looked at the claims critically. For example, LPL claims expenses for "non refundable" airfare. In

12

adopted and fees should not be awarded and any further consideration of an award of fees should be differed until the conclusion of this action when the Court considers the parties requests that the case be declared "exceptional" under the patent laws.

4.  The Interim Objections (D.I. 201).

In addition to the above objections to the Award, TUS and TROC incorporate herein their prior objections to the Report. Briefly restated, those objections highlight legal and factual errors of the Report. Such errors include misapplication of this Court's November 18, 2004 Order to violate a parties' right to bring motions authorized under the Federal Rules. *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926 (2d Cir. 1992); misconstruction of this Court's guidance at the January 21, 2005 Hearing (D.I. 132) and subsequent Order (D.I. 133); and application of erroneous factual findings and unsubstantiated characterizations of the parties' conduct.

## CONCLUSION

For the reasons set forth herein and in the interim objections and upon such further argument and evidence as the Court may consider at the time hearing, TUS and TROC respectfully request that this Court not adopt the Report or the Award. The Award and the Report are subject to *de novo* review and upon such review each should be rejected by this Court. TUS and TROC request that this Court give due consideration to its Order of Reference of the Special Master and take such steps as it deems may be necessary or appropriate to preserve the efficacy of such reference. TUS and TROC

---

common experience, the airfare is not lost. Rather, the purchaser is given a credit and merely charged a change fee at a latter time when the fare is used. Again, TUS and TROC are left to speculate to the inadequacies of the LPL submission and the Special Master's analysis.

further request that LPL take nothing by its request for sanctions and that there be no reapportionment between the parties of the Special Master's fees and expenses.

                                                ROSENTHAL, MONHAIT, GROSS
                                                & GODDESS, P.A.

                                                /s/ Jeffrey S. Goddess

                                                Jeffrey S. Goddess (Del. Bar. No. 630)
                                                919 Market Street, Suite 1401
                                                P.O. Box 1070
                                                Wilmington, Delaware 19899-1070
                                                (302) 656-4433
                                                jgoddess@rmgglaw.com

OF COUNSEL:

Julian M. Baum
Robert C. Weems
BAUM & WEEMS
58 Katrina Lane
San Anselmo, CA 94960
(415) 460-1791

October 11, 2005

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on the 11th day of October, 2005, I electronically filed the Objections By Tatung Company And Tatung Company Of America To Special Master's Reports And Recommendations with the Clerk of the Court using CM/ECF which will send notification of such filing to the registered participant(s).

I further certify that the foregoing document was also served on the individuals named below in the manner indicated:

(VIA E-MAIL)        Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
P. O. Box 25130
Wilmington, DE 19899
 Attorneys for Plaintiff L.G. Philips LCD Co., Ltd.

(VIA E-MAIL)        Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899

(VIA E-MAIL)        Cass W. Christenson, Esquire
Daniel Jarcho, Esquire
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

(VIA E-MAIL)        Tracy Roman, Esquire
Bingham McCutchen
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071

JEFFREY S. GODDESS (No. 630)
Rosenthal, Monhait, Gross & Goddess, P.A.
(302) 656-4433
jgoddess@rmgglaw.com