IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>                        Plaintiff,<br><br>    v.<br><br>TATUNG COMPANY; et al.,<br><br>                        Defendants. | C. A. No. 04-343-JJF |

## DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM THE REPORT AND RECOMMENDATIONS OF THE SPECIAL MASTER

Jeffrey S. Goddess (Del. Bar No. 630)
Rosenthal, Monhait, Gross & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Tel.: 302-656-4433
Fax: 302-658-7576
jgoddess@rmgglaw.com

OF COUNSEL:

Julian M. Baum
Robert C. Weems
BAUM & WEEMS
58 Katrina Ln
San Anselmo, CA 94960
Tel.: 415-460-1791
Fax: 415-457-9157
rcweems@comcast.net

October 25, 2005

The parties have submitted extensive briefing and supporting materials to the Court, such that the Court may undertake the requisite *de novo* review of the Special Master's recommendation that these defendants be ordered to pay over $217,000 in monetary discovery sanctions. Defendants will not repeat those arguments at length here. Rather, defendants are concerned that in the volume of evidence and argument presented to the Court, the proverbial forest may be lost for the trees. Accordingly, in response to Plaintiff's Motion to Approve and Adopt the Special Master's Report and Recommendations (D.I. 218), defendants will confine this brief to the core issues underlying the Special Master's recommendation and report.

In its essentials, the dispute between the parties was neither complicated nor particularly unusual. At issue were a single set of interrogatories, a single set of document requests, and the question of whether defendant Tatung Company's highest executives should be compelled to testify at deposition in Taiwan (so-called "apex" depositions) regarding (solely) threshold jurisdictional issues. The Special Master's extraordinary displeasure with these defendants centers on the apex depositions, and the Rule 30(b)(6) depositions of the corporate defendants. The Special Master believed that the Court had previously ruled on these matters, and that defendants thus were flagrantly defying the Court's wishes. Defendants respectfully submit that the Special Master is mistaken, and that his resulting recommendation of severe sanctions should therefore not be adopted and confirmed.

Three issues rest at the core: (1) Tatung Company of America's ("TUS") failure to appear for deposition in December, 2004 while seeking entry of a protective order to govern confidential information (which relief the Court granted);  (2) TUS and its counsel's "obstructive" conduct at depositions; and (3) Tatung Company's failure to

1

produce its two highest corporate executives for deposition in Taiwan while seeking a protective order from the Court and requesting the appointment of the Special Master to direct discovery in this action. Each of these is addressed, briefly, in turn.

1.  ***Defendants Did Not Act Improperly In Seeking A Confidentiality Order***

On January 24, 2005, the Court *granted* defendants' request for a confidentiality order to govern jurisdictional discovery in this case, and rejected plaintiff's arguments that the protections of Local Rule 26.2 should suffice instead. The Special Master disagrees with the Court on that, and imposes sanctions against defendants for having sought that relief from the Court.

In response to plaintiff's initiation of jurisdictional discovery, defendants requested that plaintiff agree, as a threshold matter, to entry of a confidentiality order similar to the one approved by Judge Jordan in *Commissariat a l'Energie Atomique v. Dell Computer Corporation*, 2004 U.S. Dist. LEXIS 12782 (May 25, 2004)(the "*CEA*" case). In the *CEA* case, Judge Jordan determined that special protection for confidential information is necessary and appropriate because McKenna, Long & Aldridge ("MLA") attorneys are involved in the prosecution of patents for plaintiff L.G. Philips LCD Co., LTD (hereafter, "LGP" or "plaintiff").[1] In light of that, Local Rule 26.2 does not provide effective protection in this case because, *inter alia*, (1) Messrs. Bailey and Anderson, both admitted for this case, are patent attorneys, see D.I. 30 and 116[2]; and (2) under any

---

[1] MLA also prosecutes patents for LG Electronics, LGP's parent corporation. LG Electronics competes with Tatung Company across many product lines, not just flat panel displays. A preliminary review of published patent applications indicates that MLA is prosecuting patents across many of these product lines and that, Mr. Bailey (admitted in this case) is involved in some of such activity. Accordingly, there is a pronounced need for discovery to be tethered to the products LG.Philips claimed are implicated by the patents in suit.

[2] Additionally, Mr. Song Jung, a patent attorney specified in the *CEA* case as prosecuting LG.Phillips patents appeared to defended LG.Philip's expert at deposition although he has not

2

interpretation of L.R. 26.2, additional MLA-LGP patent attorneys can access the defendants' confidential information by merely appearing.[3]

On December 20, 2004, these defendants sought relief from the Court, by way of a request for permission to bring a motion for a protective order. At the hearing on January 24, 2005, plaintiff adhered, for a time, to its absolutist position that a confidentiality order should *not* issue to govern jurisdictional discovery, and that the protections of Local Rule 26.2 should suffice. Hearing Transcript at 13:20-14:3. The Court rejected that argument, and the Court ordered entry of the confidentiality order proposed by defendants. 14:6-15:20; 18:1-19:24.

The Special Master's view is that Tatung Company and TUS should have provided documents and information *without* a confidentiality order, that their concerns would have been adequately protected by Local Rule 26.2, and that defendants acted improperly in seeking the confidentiality order:

> In the Special Master's view, the provisions of Local Rule 26.2 adequately address this [Tatung's] concern prior to the entry of a tailored protective order, especially given the narrow focus of jurisdictional discovery. Local Rule 26.2 provides as follows:
>
>> If any documents are deemed confidential by the producing party and the parties have not been able to agree on an appropriate protective order, until a protective order is in effect, disclosure should be limited to members and employees of the firm of trial counsel who have entered an appearance, and, where appropriate, have been admitted pro hac vice. **Such persons are under an obligation to keep such documents confidential and to use them only for purposes of litigating the case.**

---

been admitted in this case *pro hac vice*. See, TUS's letter request to file a motion for protective order dated December 20, 2004 and related correspondence. D.I. 105, 107 and 108.

[3] Local Rule 26.2 is quoted in full below.

3

>Simply stated, jurisdictional discovery should not have been delayed in order to await the entry of a tailored protective order.

Special Master's Report and Recommendations ("Report"), dated August 16, 2005 at 4 n.1 (emphasis added by the Special Master). The Special Master also found sanctionable defendants' refusal to produce deponents to testify prior to and without obtaining the court-ordered confidentiality order. Report at pp 10-11. In the Special Master's view, it was the Court's intent that discovery proceed without either side having any ability to seek relief from the Court in the event of a discovery dispute, and that Local Rule 30.2 is therefore inoperative in this case, by order of the Court. Report at p.11.

As both this Court and Judge Jordan have recognized, Local Rule 26.2 was *not* adequate to prevent plaintiff from using defendants' business information outside of this litigation, since plaintiff's business-side lawyers could satisfy Local Rule 26.2 simply by appearing in this case. They could not thereafter be expected to purge their knowledge from their memories when working on plaintiff's business and intellectual property matters. Accordingly, this Court granted defendants' request for entry of a confidentiality order to govern jurisdictional discovery. Defendants' seeking that order cannot properly be deemed improper and sanctionable.

2.   **Counsel's Conduct at Deposition was Not Obstructive and Improper**

The Special Master's supplemental Report dated September 19, 2005 concludes that these defendants and their counsel should *not* be sanctioned for what the Special Master views as obstructive conduct at the depositions of defendants' executives: "including that Tatung America's 30(b)(6) witness[4] was unable to respond to certain information within the noticed deposition topics, and that Tatung counsel attempted to

---

[4] That witness was Andrew L. Sun, the Chief Executive Officer of TUS, who does not hold any position with or conduct business for the parent company, Tatung Co. (Taiwan).

4

interrupt the flow of depositions with requests for recess and the frequent assertion of improper objections." Special Master's Report and Recommendations Quantifying Certain Attorneys Fees and Costs and Special Master's Fees and Costs Among Sanctions Assessed Against the Tatung Defendants, dated September 19, 2005 ("Supplemental Report") at p.3. The Special Master concludes that plaintiff waived objection to such conduct, and therefore reduces the requested sanctions by $4,680. Supplemental Report at p. 4. Nonetheless, the Special Master's extraordinary displeasure with these defendants and their counsel animates the entirety of his Report and recommendations to the Court.

Defendants respectfully but emphatically disagree with the Special Master. The Court may judge for itself from the examples cited by the Special Master, which presumably are the very worst examples of what he viewed as obstruction. In no case did TUS's counsel instruct the witness not to answer, even though the Court's orders specifically permitted them to do so. (D.I. 133)(Court Order). The stated objections were brief and succinct (e.g. "Objection. Vague."). Counsel's request for bathroom breaks were made an average of 155 questions apart, and no break was ever requested while a question was pending. *See* Interim Objections by Tatung Company and Tatung America to Report and Recommendations of Special Master, dated September 6, 2005 at p. 14 n.9.

Defendants respectfully submit that their counsel was not obligated merely to attend the depositions and to waive any objections by silence, especially given the wide latitude plaintiff was given to conduct discovery to seek support for the jurisdictional allegations of the Complaint, subject explicitly to defendants' ability to object and even to refuse to answer. Although the Special Master declined to award monetary sanctions

in this respect, his view that defendants and their counsel acted egregiously at depositions is an integral part of his recommendations to the Court. Defendants respectfully request that the Court decline to confirm and adopt the Special Master's view and conclusions that were so obviously suffused by his displeasure.

3.  **Tatung Company Did Not Act Improperly in Seeking a Protective Order Barring the "Apex" Depositions Of Its Highest Executives In Taiwan, Pending Completion of Other Discovery**

The third source of the Special Master's extraordinary displeasure with defendants, and his resulting recommendations for extraordinary sanctions, is defendants' seeking a protective order staying the depositions of Tatung Company's highest executives in Taiwan, and the appointment of a Special Master to govern further discovery.

Those depositions included Tatung Company's two highest corporate executives in Taiwan, W.S. Lin and W.Y.K. Lin, neither of whom had any personal involvement with this case. When the parties could not agree (despite extensive and even face-to-face efforts) as to whether and when such "apex" depositions should be taken (for example, after and only if a Rule 30(b)(6) deposition in the United States proved inadequate), Tatung Company sought a protective order and appointment of a Special Master to oversee and regulate further discovery. The Special Master's Report concludes that defendant's objection to those depositions was "nothing short of specious," (Report p.12) and that defendant acted egregiously in seeking such relief from the Court.[5]

Defendants respectfully submit that the Special Master's report gives inadequate consideration to the governing law, including a ruling of the Supreme Court. The Special

---

[5] Defendants did not make a blanket objection to the deposition of any and all high-ranking executives. Indeed, TUS voluntarily produced its highest executive, Andrew L. Sun, for a Rule 30(b)(6) deposition in Los Angeles, California.

6

Master's Report states that an order barring apex depositions "would constitute extraordinary relief" and that "the party seeking such a protective order bears the burden of proving that the proposed deponent has nothing to contribute." Report at 12. Defendants respectfully disagree.

In *Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987), the Supreme Court counseled district courts to exercise special caution and concern for objections by foreign defendants complaining of abusive discovery. In a passage which has direct application here with respect to the depositions of Tatung Company's senior-most executives in Taiwan, the court directed that:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. **When it is necessary to seek evidence abroad, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses.** For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. **Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. . . . American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations.**

*Id.* at 546 (emphasis added).

Moreover, it has been well settled that even with respect to domestic corporations, the depositions of senior executives should not be permitted absent a showing of unique knowledge that cannot be obtained from other personnel or through a corporate designee. *E.g. Baine v. General Motors Corp.*, 141 F.R.D. 332, 334-335 (D.C. Ala. 1991); *Halderman v. Pennhurst State Schl. & Hosp.*, 96 F.R.D. 60, 64 (E.D. PA 1982)("high

7

ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and unavailable from a lesser ranking officer"); *See also Thomas v. IBM*, 48 F.3d 478, 482-84 (10th Cir. 1995); *First Fidelity Bancorp. V. Nat'l Union Fire Ins. Co.*, 1992 WL 46881 at *4 (E.D. PA 1992).

For example, in *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991), plaintiff sought the deposition of a vice-president of a General Motors, a domestic corporation whose jurisdictional contacts with the forum were unquestioned. The asserted basis for the deposition was that the vice-president had authored a memorandum regarding his personal observations and experience in driving a prototype automobile, including his observations concerning the performance of the safety restraints relevant to the case. The court quashed the deposition notice, pending further discovery, noting that the information sought by plaintiff could readily be obtained from other sources and depositions. *Id.* at 335-336. *See also Community Federal Sav. & Loan Ass'n v. FHLBB, 96 F.R.D. 619 (D.D.C. 1983)*, a case in which plaintiffs sought deposition testimony of several high-level agency administrators. The court held that when a party seeks to depose high-level decision makers who are removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has "unique personal knowledge" of the matter in issue. 96 F.R.D. at 621-622. Moreover, the court held that the unique personal knowledge must be truly unique -- the deposition would not be allowed where the information could be had through interrogatories, deposition of a designated spokesperson, or deposition testimony of other persons. *Id.*

In this case, plaintiff made no showing that the depositions of Tatung Company's senior executives were necessary, nor that any of these executives had any special

8

knowledge. Plaintiff sought to depose W.S. Lin, Tatung Company's president and highest executive, and W.Y.K. Lin, who is its executive vice president, among others. With respect to these individuals, the Special Master's report says only that "Wen Yen K. Lin, President of Tatung Taiwan and an officer of Tatung America [ ] had spoken publicly about Tatung's global operations." Report at 17-18.[6] This, of course, would be true of almost any senior corporate executive in almost any international corporation.

The course of plaintiff's discovery is telling, and led to defendants' request for the appointment of a Special Master to govern discovery and to consider whether, and when, plaintiff should be permitted to take apex depositions. Among plaintiff's 30-plus separate deposition notices and third party subpoenas (FRCP 30 limits each side to 10 depositions), plaintiff subpoenaed for deposition, in Texas, an executive of TXU, the utility company that supplies electricity to a Tatung Company facility in Arlington, Texas, on the same day (February 9, 2005) that plaintiff was taking the Rule 30(b)(6) deposition of TUSA in Los Angeles, California. TXU's attorneys notified plaintiff that its employees had no knowledge of TUS or Tatung Company operations. Plaintiff refused to disclose why this deposition was being taken, but nonetheless insisted on proceeding in person (rather than by telephone) in Texas. The deposition revealed that the deponent

---

[6] The Special Master mistakenly understood W.Y.K. Lin to be president of Tatung Company and an executive of TUS (Report at 18.) As previously noted in the Interim Objections (at 12 n.6), she is neither. She is the executive vice president of Tatung Company and has no position with TUS. David Shan-Juhn Chang, whose declaration the Special Master's report cites, is Tatung Company's Manager of Personnel in Taiwan. As to Mr. Chang, Tatung Company urged that LGP should first proceed with a 30(b)(6) deposition in the U.S., as the 30(b)(6) topics included all subjects contained in his declaration and would therefore almost certainly obviate the need for the parties to travel to Taiwan.

9

had once played golf with W.S. Lin.[7] Similarly, as the Court may recall, plaintiff had subpoenaed Dr. C.S. Sun, the ex-husband of TUS's chairman, for deposition in Los Angeles, California. Dr. Sun offered to provide a sworn declaration, in a form to be acceptable to plaintiff, that he had not worked at the company for over a decade, has no business relationship with the company, and knew nothing about its current or recent operations. Nonetheless, LGP insisted on proceeding with his declaration in Los Angeles to hear the same thing.[8]

Given this backdrop, when plaintiff also insisted that the parties needed to travel to Taiwan to take the depositions of Tatung Company's highest executives, yet failed to articulate any reason whatsoever why those depositions were necessary, Tatung Company sought a protective order from this Court, and the appointment of a Special Master to govern further discovery in this case. (D.I. 168.) It was, and is, defendants' view that plaintiff had abused the latitude it had been given by the Court at the January 24, 2005 hearing, and that plaintiff had given scant attention to the Court's comments and directions that the parties proceed with discovery in an ordered and common-sense fashion.

The Special Master's view is that Tatung Company had no right to seek relief from the Court, in that the Court had previously ordered that no motions shall be made

---

[7] LGP subpoenaed Michael McKinney, an individual who works for TXU, a local utility which supplies electricity to a TUS facility in Arlington, Texas. Mr. McKinney was ill and unable to attend. LGP issued a substitute subpoena two days before the deposition for Mr. Pat Jamison, who testified his only contact with TROC was a game of golf with its President, W.S. Lin. The deposition revealed that Mr. Lin did not discuss business with Mr. Jamison, but that Mr. Jamison did tell Mr. Lin that Arlington was a good place to do business. TXU had suggested the deposition proceed by telephone. LGP refused.

[8] Dr. Sun is Pastor of the Ling Dong Chinese Hope Baptist Church. He was served with his subpoena as he prepared to address his congregation. Unsurprisingly, he was unable to provide any information concerning TUS operations after 1994.

10

prior to the Court's ruling on jurisdiction. The Special Master's view is also that defendant's request for such relief was specious. However, and for the reasons discussed above, defendant respectfully submits that defendant's request was squarely within the applicable federal law, and that Tatung Company did nothing wrong in seeking a judicial determination (by the Court or a Special Master) before producing, at great trouble and expense, its senior most executives for deposition in Taiwan.

## CONCLUSION

For the reasons discussed above, defendants did not act improperly in seeking relief from the Court, and the appointment of a Special Master, in response to plaintiff's indiscriminate discovery, nationwide deposition subpoenas, and its efforts to take apex depositions of Tatung Company's highest executives, on no greater basis than that they would have knowledge of Tatung Company global operations. The Court directed plaintiff to conduct its discovery in a manner calculated to focus on defendants' contacts with Delaware, rather than to require defendants to disclose all of their worldwide operations (to a business competitor) in the hope of finding something related to Delaware. Plaintiff did not do that. Defendants respectfully submit that the Court should not confirm and adopt the Report of the Special Master, which concludes that defendants should be severely sanctioned for seeking relief from the Court rather than capitulating to

plaintiff's discovery demands, and for interposing objections at the depositions of defendants' executives.

Dated: October 25, 2005

Respectfully submitted,

Rosenthal, Monhait, Gross & Goddess, P.A.

_____
Jeffrey S. Goddess  (Del. Bar No. 630)
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, Delaware 19899-1070
Tel.: 302-656-4433
Fax:  302-658-7576
jgoddess@rmgglaw.com

Of Counsel:
Julian M. Baum
Robert C. Weems
Baum & Weems
58 Katrina Ln
San Anselmo, CA 94960

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on the 25th day of October, 2005, I electronically filed DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM THE REPORT AND RECOMMENDATIONS OF THE SPECIAL MASTER with the Clerk of the Court using CM/ECF which will send notification of such filing to the registered participant(s).

I further certify that the foregoing document was also served on the individuals named below in the manner indicated:

(VIA E-MAIL)  Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
P. O. Box 25130
Wilmington, DE 19899

(VIA E-MAIL)  Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899

(VIA E-MAIL)  Cass W. Christenson, Esquire
Daniel Jarcho, Esquire
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

(VIA E-MAIL)  Tracy Roman, Esquire
Bingham McCutchen
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071

JEFFREY S. GODDESS (No. 630)
Rosenthal, Monhait, Gross & Goddess, P.A.
(302) 656-4433
jgoddess@rmgglaw.com