IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>TATUNG COMPANY; et al.,<br><br>　　　　　　　　　Defendants. | Civil Action No. 04-343-JJF |

**PLAINTIFF LG.PHILIPS LCD CO., LTD.'S REPLY BRIEF IN SUPPORT OF MOTION TO APPROVE AND ADOPT SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS CONCERNING DISCOVERY SANCTIONS <u>AGAINST THE TATUNG DEFENDANTS</u>**

THE BAYARD FIRM

Richard D. Kirk (rk0922)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 429-4208

Counsel for Plaintiff LG.Philips LCD Co., Ltd

OF COUNSEL:

Daniel G. Jarcho
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W., Suite 100
Washington, D.C. 20006
(202) 496-7500


November 1, 2005


607261v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT............................................................................................................................2

    I.    THE TATUNG DEFENDANTS MISCHARACTERIZE THE BASIS FOR THE SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS ON SANCTIONS ...................................2

        A.    The Initial Confidentiality Issue Fails To Excuse or Explain the Tatung Defendants' Repeated, Subsequent Failure To Provide Discovery ......................................4

        B.    The Deposition Objections by Tatung Defendants' Counsel Did Not Account for Any Part of the Sanctions Calculation.................................................................7

        C.    Tatung's Refusal To Produce Deposition Witnesses, and Last-Minute Cancellation of Depositions, Lacked Substantial Justification ......................................7

CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

Page

Cases

*General Star Indem. Co. v. Platinum Indem. Ltd.*,
   210 F.R.D. 80 (S.D.N.Y. 2002) ................................................................................ 10

*Kendall v. GES Exposition Services, Inc.*,
   174 F.R.D. 684 (D. Nev. 1997) .................................................................................. 3

*Speadmark, Inc. v. Federated Dep't Stores, Inc.*,
   176 F.R.D. 116 (S.D.N.Y. 1997) .............................................................................. 10

*Thomas v. IBM*,
   48 F.3d 478 (10th Cir. 1995) ..................................................................................... 9

Rules

Del. L.R. 26.2 ...................................................................................................................... 6

## **INTRODUCTION**

The Court should uphold the Special Master's Reports and Recommendations for sanctions against Defendants Tatung Co. ("Tatung") and Tatung Company of America, Inc. ("Tatung America") (the "Tatung Defendants"). The Tatung Defendants failed to provide requested information concerning personal jurisdiction in the form of interrogatory answers, document production, and deposition testimony, forcing LPL to incur substantial expense in seeking jurisdictional discovery authorized by the Court. Tatung, for example, never produced a <u>single</u> <u>document</u> in response to LPL's document requests, even after Tatung's counsel represented at the January 24, 2005 hearing that the Tatung Defendants would finally "give up" documents. *See* attached Ex. 1, Jan. 24, 2005 Tr., at 50 (Court instructing Tatung's counsel: "You've got to give them up."). The Tatung Defendants' refusal to provide discovery warrants sanctions. Sanctions should be imposed for the many reasons detailed by the Special Master, which are not limited the three issues addressed in Tatung's opposition brief.

## ARGUMENT

### I. THE TATUNG DEFENDANTS MISCHARACTERIZE THE BASIS FOR THE SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS ON SANCTIONS

Attempting to escape the consequences of their actions, the Tatung Defendants limit the focus of their brief to three issues. The Tatung Defendants' opposition thus ignores much of the record supporting the Special Master's rulings. The Special Master previously criticized a similar ploy, in which the Tatung Defendants "repeatedly attempt[ed] to excuse their actions by recharacterizing the jurisdictional discovery dispute" as a venue issue (even though they never moved to transfer venue). *See* August 16, 2005 Report (D.I. 197) at 9 n.5. The Tatung Defendants delayed and refused to provide jurisdictional discovery, inviting sanctions:

> the Special Master finds it difficult to ascribe any other motive to the Tatung Defendants' recalcitrance other than their hope that the period set by Court order for jurisdictional discovery would expire and operate to deprive LPL of an opportunity to obtain evidence needed to support a finding of personal jurisdiction.

*Id.*

Tatung America refused to produce witnesses for deposition until after this Court compelled discovery at the January 24 hearing, and Tatung never produced a deposition witness, even after the January 24, 2005 hearing. Remarkably, Tatung refused to produce a single document in response to document requests (even withholding the documents that Tatung's declarant reviewed for purposes of his declaration regarding jurisdictional contacts). After the Court ordered document production, Tatung America finally produced only forty-six pages.

The Tatung Defendants also abusively renumbered LPL's interrogatories to avoid providing information. *See* August 16, 2005 Report (D.I. 197) at 21-28. As the Special Master explained, the Tatung Defendants' interrogatory responses "are noteworthy in their similarities and by their stunning lack of response." *Id.* at 21. Further, the Tatung Defendants' renumbering tactics were inconsistent with the case that they cited to the Special Master. *See id.* at 22-23 (discussing *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997)). Yet, Tatung and Tatung America stood firm on their position even after this Court had warned that sanctions would follow if "they're really playing games with you." Ex. 1, p. 52.

The Tatung Defendants incorrectly suggest that this is not a "particularly unusual" dispute. *See* Tatung Defs.' Opp'n Br. (D.I. 222) at 1 ("In its essentials, the dispute between the parties was neither complicated nor particularly unusual."). Unlike the Tatung Defendants, however, most parties do not routinely refuse to comply with proper deposition notices, interrogatories, and document requests. As the Special Master concluded, the Tatung Defendants' failures to provide discovery rose to rare heights:

> . . . throughout the jurisdictional discovery period LPL exercised good faith and extraordinary effort in attempting to "meet and confer" to resolve Tatung's objections to the discovery sought. In this regard, the record before the Special Master discloses numerous efforts by LPL to support its positions to Tatung with relevant authority, and to address Tatung's objections -- including, at times, with offers of compromise and to narrow the discovery sought -- each and all vain attempts to persuade Tatung that discovery should go forward.
>
> The record also discloses that, in contrast, the Tatung Defendants demanded capitulation instead of compromise. Tatung unilaterally blocked discovery by asserting layers of objections not supportable under relevant law. Notwithstanding the Court's express findings and prior orders, the Tatung Defendants continued to obstruct LPL

> from taking jurisdictional discovery through the March 30, 2005 hearing before the Special Master. Specifically, Tatung [Defendants] failed to appear for depositions on multiple occasions, failed to produce witnesses prepared to testify on noticed and relevant topics, and failed to respond to interrogatories and requests for production of documents on the same and/or similar topics.

August 16, 2005 Report (D.I. 197) at 9.

Because the Tatung Defendants so fiercely resisted discovery, LPL was forced to seek information from third parties. LPL's third-party discovery proved invaluable. LPL served a subpoena on Best Buy, for example, after Tatung America filed a declaration swearing that Tatung America "*does not sell LCD monitors to Best Buy*, Wal-Mart, Sam's Club, or Tweeter . . . ." Declaration of Edward Chen dated June 14, 2004 (D.I. 21) at p. 2 (emphasis added). Discovery from Best Buy confirmed that dozens of accused Tatung LCD monitors were sold in the State of Delaware shortly before this suit was filed. After provoking this third-party discovery, and after forcing LPL to incur tremendous effort and expense in discovery efforts, Tatung and Tatung America conceded personal jurisdiction. *See* D.I. 188.

### A. The Initial Confidentiality Issue Fails To Excuse or Explain the Tatung Defendants' Repeated, Subsequent Failure To Provide Discovery

The Tatung Defendants first incorrectly suggest that the sanctions recommendations disregarded the initial need for a protective order. But, the sanctions relate to the Tatung Defendants' ongoing failure to provide discovery *long after the entry of the protective order*. By twice failing to appear for properly noticed depositions, and seeking a protective order, Tatung America disregarded this Court's Order directing the parties not to file any motions. *See* D.I. 93. Although the filing of the motion was

improper and did <u>not</u> excuse Tatung America's repeated failure to appear for depositions, this misconduct cannot be viewed in isolation. The subheadings of the Special Master's forty-two page report show that sanctions are warranted based on the widespread lack of discovery from the Tatung Defendants:

> A. Failure to Appear for Depositions (p. 10)
>> 2. Tatung America's Failure to Appear (p. 10)
>>
>> 3. Tatung Taiwan's Failure to Appear (p. 17)
>
> B. Failure to Respond to Interrogatories (p. 20)
>> 2. The Tatung Defendants' Failure to Respond (p. 21)
>
> C. Failure to Produce Requested Documents (p. 28)
>> 2. The Tatung Defendants' Failure to Produce (p. 29)
>
> D. Sanctions are Warranted (p. 36)

*See* D.I. 197 at 10, 17, 20, 21, 28, 29, 36.

The Special Master thus did not sanction the Tatung Defendants simply for seeking a protective order, but for the multitude of conduct addressed in LPL's submissions to this Court and later submissions to the Special Master. *See, e.g.,* Declaration of Richard Kirk dated Sept. 20, 2005 (D.I. 207), Exs. A-F. In any event, the protective order was not necessary for jurisdictional discovery to proceed. Both LPL and ViewSonic, another defendant in this case, provided discovery without a protective order, based on the protection provided under the local rules.[1] Prior to the January 24 hearing,

---

[1] Experience appears to confirm that the Tatung Defendants have greatly exaggerated the need for confidentiality protection. As the Special Master noted in filing his report, the Tatung Defendants have over-designated information as "highly sensitive confidential" even when such information is not sensitive or confidential. *See* D.I. 197 at 13 n.6.

LPL's counsel repeatedly had confirmed in writing that any information designated as confidential under the local rule would not be disclosed to counsel not of record in this case.[2] Further, LPL had offered to enter into a confidentiality stipulation very similar to the one later entered by the Court. LPL was the first party to propose a protective order in this case and did so long before Tatung or Tatung America raised any concern about confidentiality. Tatung America first objected to depositions based solely on the topics set forth in the Rule 30(b)(6) notice, which this Court approved at the January 24 hearing. This Court rejected Tatung America's position and allowed LPL to proceed with the deposition on the noticed topics. *See* Ex. 1 at 41-42, 62.

At the January 24 hearing, moreover, the Court entered the confidentiality order not based on any finding that the local rule offered insufficient protection, but with the stated hope that entering the defendants' version of the order would expedite jurisdictional discovery. *See* Ex. 1 at 19 ("I'm just trying to get you on your way, so you're not wasting time."). Accordingly, the Tatung Defendants are incorrect in arguing that this Court addressed the adequacy of Local Rule 26.2. In any event, the confidentiality issue cannot possibly excuse Tatung America's failure to provide discovery for months <u>after</u> entry of the protective order. The Special Master's rulings are well-supported and should be affirmed.

---

[2] Specifically, for example, LPL's counsel confirmed that Mr. Song Jung would not have access to information designated confidential under the local rule. Tatung's purported concerns about Mr. Jung were meritless, especially since he is not admitted as counsel in this case (regardless of whether he appeared at one deposition taken and defended by other counsel). Even without the assurances provided by LPL's counsel, the local rule clearly barred access or disclosure to Mr. Jung, who is not counsel of record. *See* Del. L.R. 26.2 ("disclosure should be limited to members and employees of the firm of trial counsel who have entered an appearance, and, where appropriate, have been admitted <u>pro hac vice</u>.").

607261v1

### B. The Deposition Objections by Tatung Defendants' Counsel Did Not Account for Any Part of the Sanctions Calculation

The Tatung Defendants next attempt to argue that proper deposition objections should not be the basis for sanctions. Again, however, the Tatung Defendants ignore their misconduct and misconstrue the basis for sanctions. LPL's motion for sanctions did not address deposition objections and LPL ultimately sought only $4,680 for deposition misconduct, which the Special Master declined to award.[3] *See* September 19, 2005 Report (D.I. 208) at 3-4. The depositions were indeed hampered by defense counsel's speaking objections or instructions. Because the this conduct did not add to the recommended sanctions, however, the Court does not need to resolve the extent of improper deposition conduct.

### C. Tatung's Refusal To Produce Deposition Witnesses, and Last-Minute Cancellation of Depositions, Lacked Substantial Justification

The Court also should reject Tatung's unconvincing spin on its last-minute refusal to appear for depositions in Taiwan. As the Special Master summarized, LPL properly scheduled one 30(b)(6) deposition and other individual depositions of Tatung employees. One such witness, Mr. Chang, had submitted the declaration in support of Tatung's motion to dismiss for lack of personal jurisdiction. Other witnesses were also identified in good faith, including witnesses that Tatung had identified in a similar personal jurisdiction dispute in a Virginia case (*Safer Display*). *See* Kirk Decl. dated Sept. 20, 2005 (D.I. 207) at Ex. C, p. 2. Although Tatung denied that Wen-Yen K. Lin had

---

[3] LPL sought sanctions for the depositions only after the Special Master's August 16 report, discussing attempts "to disrupt, obfuscate, and avoid proper discovery," and recommending payment of "LPL's reasonable expenses caused by its failure to appear for *and its obstruction of depositions*." D.I. 197 at 20 (emphasis added).

relevant personal knowledge, third party discovery revealed that Ms. Lin regularly signed contracts with U.S. companies on behalf of Tatung regarding products made, sold, and/or distributed by Tatung Defendants for the U.S. market. *See* Kirk Decl. at Ex. F, p. 5. The topics in the Rule 30(b)(6) deposition for Tatung mirrored the topics for the Rule 30(b)(6) deposition of Tatung America. The depositions were all scheduled to be completed within four days, minimizing any burden on Tatung.

Surprisingly, shortly before the depositions, Tatung's counsel suggested postponing every deposition of Tatung's witnesses. In a last-minute shift, Tatung's counsel suggested, but could not confirm, that one witness might be made available in California in exchange for unreasonable concessions from LPL.[4] LPL's counsel made a good faith counterproposal calculated to avoid any unnecessary depositions. *See* August 16, 2005 Report (D.I. 197) at 18-19. Tatung responded by filing a motion for protective order (contrary to this Court's order prohibiting motion practice). Tatung also refused to produce any documents or a single witness for deposition as noticed. *See id.*; *see also* Kirk Decl. (D.I. 207) at Ex. C.

Tatung communicated this refusal on a Friday afternoon before a Saturday departure for Taiwan by LPL's attorneys. After refusing to appear, Tatung also contested the 30(b)(6) deposition topics, even though the Court had approved the same topics for

---

[4] LPL's counsel originally had proposed scheduling depositions of Tatung witnesses in the U.S., but Tatung's counsel refused to produce any witness in the U.S. As a result, LPL's counsel noticed the depositions in Taiwan and confirmed with Tatung's counsel the need for an interpreter. The unconfirmed possible option of a U.S. deposition was conditioned on unreasonable concessions and related only to one of the several depositions and came after LPL had made all arrangements and commitments to travel to Taiwan with necessary support personnel.

607261v1

8

the Tatung America deposition. Tatung's "tactical weapons of delay" caused LPL to incur substantial travel expense and attorneys' fees, for which Tatung should pay:

> The Special Master finds that, against this backdrop, the claims by the Tatung Defendants of good cause and substantial justification ring hollow, and the Special Master concludes that, pursuant to Fed. R. Civ. P. 37(d), sanctions are appropriate for the repeated failure of the Tatung Defendants to appear for depositions . . . *In this regard, the Special Master finds that Tatung wielded its unilateral last-minute refusals to appear at depositions like the tactical weapons of delay the Special Master determines them to be.*

August 16, 2005 Report (D.I. 197) at 20 (emphasis added).

Citing cases that are factually distinguishable, Tatung fails to justify its total failure to submit to noticed depositions. *See, e.g.*, Tatung Defs.' Opp'n at 8, citing *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995) (holding that court did not abuse its discretion granting protective order against deposition of IBM's Chairman when deposition was not properly noticed, there was no attempt to depose any other IBM employee, and Chairman signed affidavit testifying to lack of any personal knowledge). **First**, Tatung did not and could not show that the depositions were inappropriate. The witnesses are not simply a list of "Tatung Company's senior-most executives in Taiwan," as Tatung appears to suggest. D.I. 222 at 7. Indeed, Tatung ultimately argued that some witnesses are unknown or not employed by Tatung (a fact not disclosed until after Tatung refused to appear for depositions).

**Second**, Tatung failed to carry its burden to show that any of the witnesses lacked relevant knowledge. The record before the Special Master showed that the witnesses were properly identified as having personal knowledge, for example based on documents in the *Safer Display* case and contracts signed by Ms. Wen-Yen K. Lin. *See* Kirk Decl.

607261v1

9

dated Sept. 20, 2005 (D.I. 207) at Ex. C, p. 2 & Ex. F, p. 5. Tatung America designated its president as its 30(b)(6) witness because, according to Tatung's counsel, the president was the person qualified to testify on the jurisdictional topics. *See* Kirk Decl., D.I. 207, at Ex. G, p. 37 (conceding that "we felt compelled to put forward the president of Tatung Company of America because that was the only person who would have that broad knowledge" regarding the 30(b)(6) jurisdictional discovery topics). Yet, Tatung refused to produce more junior executives and even refused to produce the witness (Mr. Chang) who had signed the declaration contending that Tatung lacks jurisdictional contacts.

Courts have noted that executives are subject to deposition, particularly assuming personal knowledge of relevant facts. *See, e.g., Speadmark, Inc. v. Federated Dep't Stores, Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997); Kirk Decl. dated Sept. 20, 2005 (D.I. 207) at Ex. F, p. 5. At a minimum, a party seeking to avoid a deposition has the burden to submit an affidavit confirming a lack of personal knowledge and/or provide information through other sources. *See, e.g., General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 84 (S.D.N.Y. 2002). Tatung failed to carry its burden.

**Third**, The Tatung Defendants' discussion of other depositions taken by LPL in this case is both factually inaccurate and legally irrelevant. *See* D.I. 222 at 9-10. LPL's third-party depositions cannot justify Tatung's refusal to appear for any of the properly noticed depositions of Tatung's witnesses. Indeed, this Court allowed LPL to take such third-party depositions at the January 24 hearing.[5] *See* Ex. 1 at 38. Further, LPL took

---

[5] Tatung had asked this Court to quash all depositions except for one 30(b)(6) deposition on artificially limited topics for each of the Tatung Defendants. *See* Tatung America's Brief in Response to LPL's E-mails to Court Requesting Teleconference (Jan. 24, 2005), D.I. 128 at 4-5. The Court did not grant this request after hearing discussion of counsel regarding, for example, the deposition of Mr. Sun.

only four third-party depositions, all of which were appropriate.[6] The Tatung Defendants cannot escape sanctions by complaining about third-party discovery necessitated by the Tatung Defendants' own refusal to provide information.

---

[6] LPL deposed: (1) Mr. Sun, the former Chairman and President of Tatung America for many years, who provided insight into Tatung America's business and historic relationship with Tatung; (2) a representative of Avnet, Inc., a national distributor of products made and/or sold by Tatung and/or Tatung America (including at least one accused product shipped to Delaware); (3) a representative of Wal-Mart, which is a national retailer of products made and/or sold by Tatung and/or Tatung America; and (4) a brief deposition of a representative of TXU, a utility company involved in recruiting Tatung to open facilities in Texas involved in shipping products for nationwide distribution and sale.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in LPL's motion, declarations, and exhibits, LPL respectfully requests that the Court grant its motion and approve and adopt in all respects the Special Master's Reports, as well as award LPL additional expenses incurred for the Special Master, and LPL's fees and expenses concerning this motion and the defendants' opposition.

November 1, 2005

                                        THE BAYARD FIRM

                                        /s/ Richard D. Kirk (rk0922
                                        222 Delaware Avenue, 9th Floor
                                        P.O. Box 25130
                                        Wilmington, DE 19899-5130
                                        (302) 429-4208

                                        Counsel For Plaintiff
                                        LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Daniel G. Jarcho
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

607261v1

12

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 1, 2005, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
1313 N. Market St., 6th Fl.
Wilmington, DE 19801

Jeffrey S. Goddess, Esq.
Jessica Zeldin, Esquire
Rosenthal, Monhait, Gross & Goddess
Mellon Bank Center, Suite 1401
Wilmington, DE 19801

The undersigned counsel further certifies that copies of the foregoing document were sent by hand to the above counsel and by email and first class mail to the following non-registered participants:

Julian M. Baum, Esq.
Robert C. Weems, Esq.
Baum & Weems
58 Katrina Lane
San Anselmo, CA 94960

Scott Miller, Esq.
Tracy Roman, Esq.
Bingham McCutchen LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

571447v1