EXHIBIT 1

# In The Matter Of:

## *LG Philips LCD, Company, LTD.  v. Tatung Company, et al.*

---

### *Hearing*
### *January 24, 2005*

---

*Hawkins Reporting Service*
*715 N. King Street, Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File 012405~1.TXT, 66 Pages
Min-U-Script® File ID: 4107502328

# Word Index included with this Min-U-Script®

```
                           1
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE
LG PHILIPS LCD COMPANY, )
LTD,                    )
         Plaintiff,     )
v                       ) C A No 04-343
TATUNG COMPANY, TATUNG  )
COMPANY OF AMERICA, INC,)
VIEWSONIC CORP ,        )
         Defendants     )
             Monday, January 24, 2005
             10:00 a.m.
             Courtroom 4B
             844 King Street
             Wilmington, Delaware
BEFORE: THE HONORABLE JOSEPH J FARNAN, JR
APPEARANCES:
     THE BAYARD FIRM
       BY: RICHARD D KIRK, ESQ
       -and-
     McKENNA, LONG & ALDRIDGE, LLP
       BY: CASS CHRISTENSON, ESQ
         Counsel for the Plaintiff
     ROSENTHAL, MONHAIT
     GROSS & GODDESS, P A
       BY: JEFFREY S GODDESS, ESQ
         Counsel for the Defendant
         Tatung Company, Tatung
         Company of America, Inc
```

Page 2

[1] **THE CLERK:** All rise.

[2] **THE COURT:** All right. Be seated, [3] please.

[4] Good morning. [5] All right. Mr. Kirk.

[6] **MR. KIRK:** Good morning, Your Honor. [7] May I make an introduction?

[8] **THE COURT:** Sure. Richard Kirk from [9] The Bayard Firm here on behalf of plaintiff, LG [10] Philips LCD Company Limited.

[11] I'd like to introduce Cass [12] Christenson from the firm of McKenna, Long & [13] Aldridge in Washington.

[14] **THE COURT:** All right. [15] Mr. Christenson.

[16] **MR. CHRISTENSON:** Your Honor, good [17] morning.

[18] **MR. GODDESS:** Your Honor.

[19] **THE COURT:** Yes.

[20] **MR. GODDESS:** Jeff Goddess from the [21] Tatung defendants. I just want to, again, [22] request something.

[23] I called your chambers about the [24] possibility of my colleague, lead counsel for the

Page 3

[1] Tatung defendants who's out in California, [2] participating by phone. I was told by your — I [3] can't remember —

[4] **THE COURT:** Case manager.

[5] **MR. GODDESS:** — case manager you're [6] disinclined. It never seems to work.

[7] I thought I'd mention it again now [8] that I see Mr. Christenson, who is here, who [9] really had the direct exchanges with Mr. Weems [10] that has led to our being here today.

[11] **THE COURT:** It never works in this [12] courtroom, because the phone — the only phone — [13] the only courtroom that has an adequate phone [14] system is my old courtroom on the sixth floor, [15] because it was specially wired.

[16] **MR. GODDESS:** Oh.

[17] **THE COURT:** And we're supposed to be [18] getting them, but we won't get them by the end of [19] this hearing.

[20] **MR. GODDESS:** Okay. Thank you, Your [21] Honor.

[22] **THE COURT:** So I apologize to you, [23] but its's really the wiring that allows the [24] microphone and the phone to work together. It's

Page 4

[1] a nightmare.

[2] So I apologize, but...

[3] **MR. GODDESS:** Well, I mean, this [4] whole matter has got nightmarish overtones.

[5] But no need to apologize. Thank [6] you, Your Honor.

[7] **MR. CHRISTENSON:** Your Honor, we're [8] before the Court this morning on — because the [9] Tatung — because defendant Tatung Company of [10] America has refused to appear for four [11] depositions in this matter on two separate [12] occasions.

[13] And as a result of that, Your Honor, [14] and as a result of their inadequate responses to [15] interrogatories and document requests, we really [16] have no jurisdictional discovery at this point [17] two months after this Court ordered Tatung [18] Company of America and Tatung Company to provide [19] jurisdictional discovery.

[20] This is a patent infringement case, [21] Your Honor. It involves technology that relates [22] to the structural assembly of flat panel display [23] products, such as LCD computer monitors.

[24] And we're talking about specifically

Page 5

[1] a mechanical type of technology related to [2] structural assembly.

[3] **THE COURT:** Now, did you get to see [4] Mr. Goddess' paper —

[5] **MR. CHRISTENSON:** Your Honor —

[6] **THE COURT:** — this morning?

[7] **MR. KIRK:** We were provided them [8] this morning — excuse me, Your Honor, for [9] jumping in, but I can explain.

[10] Mr. Goddess did serve them on us [11] electronically; however, perhaps as a result of [12] the snowstorm, my office has suffered a computer [13] breakdown. So we could not receive Emails or [14] even faxes this morning.

[15] So we did see it. Mr. Goddess was [16] good enough to come early this morning and [17] provide us with copies, which Mr. Christenson saw [18] for a few minutes.

[19] **THE COURT:** Okay. Well, I got it. [20] I took a look. [21] Now, putting Judge Jordan's case [22] aside for the moment, which Mr. Goddess talks [23] about and others have talked about, a while ago I [24] stayed a case except for jurisdictional discovery

Page 6

[1] despite the fact there's injunctive relief [2] pending.

[3] **MR. CHRISTENSON:** Yes, sir.

[4] **THE COURT:** And my thought was we [5] ought to get at whatever the jurisdictional facts [6] were, get that motion decided, and then be able [7] to expeditiously move onto substantive discovery.

[8] Having a sense where Judge Jordan's [9] case was, which was up in the Fed Circuit on that [10] motion to dismiss. And now it's back.

[11] On what? Taking a look at the [12] failure to give discovery, and the implication [13] that has the Delaware Long Arm Statute.

[14] Now, putting that as a backdrop, and [15] putting aside Judge Jordan's case, what [16] Mr. Goddess says is, these folks aren't paying [17] attention to you, Judge Farnan. They — I think [18] it's the wife of the chairman or something, who [19] got involved in embezzling money. You want to [20] talk to them.

[21] And they say that they legitimately [22] blocked you from being able to do that by filing [23] a motion — I guess it's actually permission to [24] file a motion for a protective order, because you

Page 7

[1] want to exceed what I've allowed you to do. Now, [2] that's what I've got to hear about.

[3] **MR. CHRISTENSON:** Yes, sir.

[4] **THE COURT:** Why would you do the [5] kinds of things the defendant says if you were [6] really focused and had in mind Judge Jordan's [7] case, and the language of the Federal Circuit's [8] opinion? What is it that you're going after [9] that — and the implications of the attorneys and [10] all there, that can't be resolved by a provision [11] such as proposed?

[12] Did you see the proposed protective [13] order?

[14] **MR. CHRISTENSON:** Your Honor, I [15] haven't had a chance to study the papers in [16] detail this morning. I apologize.

[17] **THE COURT:** There's something in [18] there that might solve the problem with some [19] negotiations. Tell me what

it is that causes you [20] to have 20 topics and the chairman's wife, and [21] getting into somebody who only knows about maybe [22] embezzling some money and stuff.

[23] **MR. CHRISTENSON:** Sure. Your Honor, [24] if I might, I'd like to back up briefly, so I can

### Page 8

[1] explain to the Court the context in which these [2] depositions were noticed. And, also, if I may, [3] Your Honor, I've got copies of the deposition [4] notices that are at issue for this morning as [5] well as a couple of declarations filed by Tatung [6] Company of America.

[7] If I may approach, Your Honor?

[8] **THE COURT:** You can pass them to the [9] clerk.

[10] **MR. CHRISTENSON:** Thank you.

[11] And I have a copy for Mr. Goddess as [12] well.

[13] Your Honor, we confirmed specific [14] sales in this jurisdiction of infringing [15] products. We requested jurisdictional discovery. [16] The Court granted jurisdictional discovery.

[17] At the time that Tatung Company of [18] America and Tatung filed their motion to dismiss [19] for lack of jurisdiction, they submitted [20] declarations. Your Honor, specifically as I've [21] provided to the Court, they submitted a [22] declaration of Edward Chen, who is the executive [23] vice president of sales and marketing for Tatung [24] Company of America.

### Page 9

[1] Your Honor, they also submitted [2] attached as Exhibit 3 to a declaration of [3] Mr. Weems, Tatung's counsel, a declaration of [4] Robin Tsou, T-S-O-U, who is the sales manager of [5] the video display department of Tatung Company of [6] America.

[7] And, Your Honor, we, therefore, [8] noticed depositions of Mr. Chen individually and [9] Mr. Tsou individually to ask about the [10] jurisdictional facts reflected in their [11] declarations. And we've noticed a 30(b)6 [12] deposition of the company, Tatung Company of [13] America.

[14] We set the deposition of Tatung [15] Company of America for December 22nd, Your Honor. [16] We attempted to discuss with Mr. Weems and [17] Viewsonic's counsel a protective order in August [18] of last year.

[19] Your Honor, we proposed a protective [20] order to the defendants. The defendants [21] initially refused to even discuss with us the [22] protective order.

[23] In September, I sent a copy of [24] another protective order to Mr. Weems.

### Page 10

[1] **THE COURT:** Is it incorrect that all [2] they wanted was the same protective order that [3] Judge Jordan had already approved?

[4] **MR. CHRISTENSON:** Your Honor, [5] initially they wouldn't discuss it. In [6] September, I sent a proposed protective order.

[7] **THE COURT:** Well, today is January [8] something. 24th.

[9] **MR. CHRISTENSON:** Yes, sir.

[10] **THE COURT:** Are we beyond [11] understanding that question? I mean, it — won't [12] the protective order that Judge Jordan entered, [13] won't that work?

[14] **MR. CHRISTENSON:** Your Honor, the [15] protective order is improper for this case. It [16] was fashioned for the specific technology and [17] scope of technology in the CEA case.

[18] **THE COURT:** No. No. No. [19] I'm — but I'm only talking about [20] jurisdictional discovery.

[21] **MR. CHRISTENSON:** Yes, sir.

[22] **THE COURT:** Why wouldn't Judge [23] Jordan's approved order work for that limited [24] discovery?

### Page 11

[1] **MR. CHRISTENSON:** Your Honor —

[2] **THE COURT:** Because it addresses the [3] concern.

[4] **MR. CHRISTENSON:** Well —

[5] **THE COURT:** And that's the only [6] concern I've heard and understand, both in the [7] December papers and now, to be. Am I wrong, [8] Mr. Goddess?

[9] **MR. GODDESS:** That is the concern [10] with respect to their — that's all that stands, [11] their ability to take depositions of the two [12] declarants.

[13] **THE COURT:** Okay. Why isn't that a [14] real simple solution?

[15] Mr. Kirk's going to help you.

[16] **MR. KIRK:** May I?

[17] **THE COURT:** Because I want to focus [18] on — we're just on jurisdictional discovery [19] here, because I've stayed everything else.

[20] **MR. CHRISTENSON:** Your Honor —

[21] **THE COURT:** I'm not trying to give [22] you a hard time. I'm just trying to really get [23] to the —

[24] **MR. CHRISTENSON:** I understand. I

### Page 12

[1] understand.

[2] It's good case management. We are [3] entitled to that. It's reasonable.

[4] We're happy to enter into a [5] protective order. The concern we have is if we [6] enter in a protective order now, it could become [7] a protective order for the entire case.

[8] And it's not — really not an [9] appropriate protective order for this case.

[10] What the protective order does —

[11] **THE COURT:** Okay. See, that's the [12] point.

[13] Foreseeing all of that —

[14] **MR. CHRISTENSON:** Yes, Your Honor.

[15] **THE COURT:** — and trying to move [16] the case effectively, I put in place an order [17] that said, Don't do anything else here until [18] February 22nd, I think, when I want you to have [19] jurisdictional discovery complete.

[20] All your response had to be to [21] Mr. Goddess' friends was that, Well, okay. We'll [22] get over this by putting that order in place for [23] the purposes of jurisdictional discovery, and [24] then we'll both go back to the Court once that

### Page 13

[1] motion is decided.

[2] And if they had refused that, then [3] they'd be unreasonable. Isn't that the solution [4] here?

[5] Because all you can talk about is [6] jurisdictional discovery.

[7] **MR. CHRISTENSON:** That's correct, [8] Your Honor. So really we're talking about no [9] technical information.

[10] We're just talking about their [11] distribution of products.

[12] **THE COURT:** That's what I'm [13] thinking. It's like — so you agree to the order [14] that's been proposed and approved by Judge [15] Jordan.

[16] You limit the duration to the [17] February 22nd jurisdictional cut-off date, [18] discovery cut-off date.

[19] And you're on your way.

[20] **MR. CHRISTENSON:** Your Honor, our [21] thinking was, obviously, that because local Rule [22] 26.2 is sort of a standing protective order and [23] provides full protection to them without a [24] detailed protective order, that we were going to

### Page 14

[1] try to work out. It was really unnecessary to do [2] a separate protective order to do the [3] jurisdictional discovery.

[4] In fact, we've had depositions with [5] Viewsonic Corporation, the other defendants.

[6] **THE COURT:** See, that's a default [7] provision in the local rule —

[8] **MR. CHRISTENSON:** Yes, sir.

[9] **THE COURT:** — for full fact [10] discovery. And so you have something that

[11] distinguishes your circumstances here. The [12] context of your disagreement, which is my [13] December or whatever it was, November order [14] saying, The way I want this case to proceed is [15] let's get through this.

[16] Because what — you were already [17] going back and forth with all this kind of stuff. [18] And I felt you had to have discovery based on the [19] Federal Circuit's jurisprudence.

[20] So I wanted to get you into that [21] with the defendants and out of that with a [22] decision. And then we can look at whatever else [23] needs to be done.

[24] We can schedule a conference if you

Page 15

[1] can't agree to a full protective order. But for [2] your problem you brought to me, doesn't that [3] solve it?

[4] Just tell Mr. Goddess, We agree to [5] your protective order. We're going to move [6] forward on the declarants, but we wanted to limit [7] it to February 22nd.

[8] You'd be in the stronger position if [9] you came here this morning and said, Judge, we [10] agree to do that until February 22nd. They [11] wouldn't agree to limit it.

[12] And we don't want to be bound by [13] that order, because we don't know where our [14] strategies are going to be as we commence full [15] fact discovery if you keep these defendants in.

[16] MR. CHRISTENSON: Your Honor —

[17] THE COURT: Doesn't that solve your [18] problem?

[19] MR. CHRISTENSON: Yes, Your Honor. [20] It would solve the problem.

[21] It would only potentially create [22] other problems. What I'd like to do, if I could, [23] is submit to the Court the proposed order that we [24] sent to them on December 23rd.

Page 16

[1] Your Honor went back and prepared a [2] new protective order based on the exact format in [3] the CEA case, which is what Mr. Weems wanted to [4] do.

[5] To accommodate Mr. Weems, I sent him [6] the exact same order that they used in the CEA [7] case with modifications that were appropriate for [8] this case.

[9] THE COURT: Did I look at that [10] order?

[11] MR. CHRISTENSON: Yes, sir.

[12] THE COURT: And, for instance, some [13] of the provisions like about being prohibited, I [14] mean, I'm not going to get that provision, [15] because I don't want to address that yet.

[16] MR. CHRISTENSON: Yes, sir.

[17] THE COURT: But it's a prohibitive [18] order, and it's unique. Would you agree with [19] that?

[20] What Judge Jordan entered, it's [21] unique to the facts of the case?

[22] MR. CHRISTENSON: Yes.

[23] THE COURT: Because it's prosecution [24] of intellectual property rights by certain of

Page 17

[1] counsel.

[2] MR. CHRISTENSON: Yes, Your Honor. [3] That case, it was a unique order tailored to that [4] case, and addressed the merit that was in the [5] context of addressing merit discovery related to [6] the technology.

[7] As the Court has noted correctly, [8] we're not into the merits or the technology. So [9] December 23rd — I don't think the Court probably [10] has seen my proposed order to Mr. Weems from [11] December 23rd, which I think does uniquely what [12] you are saying, which is to say, Here's a [13] protective order.

[14] That's essentially this protective [15] order in CEA, but with very minor modifications. [16] And we agree to be bound by this order and [17] proceed with the discovery.

[18] That's exactly what I did, Your [19] Honor. If I may, I'd like to provide you with [20] the order, so you can see what I did.

[21] THE COURT: I believe you. This is [22] Wilmington, Delaware.

[23] I believe lawyers when they say [24] things.

Page 18

[1] All right. So you have a solution [2] here.

[3] MR. CHRISTENSON: But they won't [4] agree to that order. They won't agree to the [5] order until February 27.

[6] THE COURT: No. They won't agree to [7] the order. You could agree to their order until [8] February 22nd, you told me before, on [9] jurisdictional discovery only.

[10] You told me before you could agree [11] to their order. In other words, we have two [12] issues this morning, the protective order issue [13] that they say caused them to try and get [14] permission to file for a protective order.

[15] You can resolve the protective [16] order, because you don't disagree with their [17] order if it's limited to February 22nd. Your [18] concern was that it would go on and be implicated [19] in the fact discovery.

[20] So if you agree to the — if they [21] agree to limit their order to February 22nd that [22] they proposed, you agree that it works for you. [23] Conduct jurisdictional discovery.

[24] So we're out of the protective order

Page 19

[1] problem. Now, we're into the topics problem.

[2] They say — you say all 20 of your [3] topics were related to jurisdictional discovery. [4] They say they've got some problems with that.

[5] MR. CHRISTENSON: Your Honor, I [6] guess —

[7] THE COURT: Are we over the [8] protective order problem? Tell me why we're not, [9] other than you'd like to have your order instead [10] of their order.

[11] But their order works as long as [12] it's limited to February 22nd, so to speak. [13] We'll just take their order, and I'll make them [14] limit it to February 22nd.

[15] MR. CHRISTENSON: Your Honor —

[16] THE COURT: Mr. Kirk wants to get [17] out of that seat again.

[18] MR. CHRISTENSON: If that's the [19] Court's inclination, I do not want to argue with [20] the Court.

[21] THE COURT: I'm just trying to get [22] you on your way, so you're not wasting time.

[23] MR. KIRK: Yes. Very well, Your [24] Honor.

Page 20

[1] THE COURT: So we have the [2] protective order limited to February 22nd.

[3] Now —

[4] MR. CHRISTENSON: I'm sorry. I [5] apologize for interrupting.

[6] Just so I am clear, because I [7] haven't seen what he submitted to the Court [8] today. Are we talking about the protective order [9] that was proposed prior to today by Mr. Weems, [10] the most recent protective order that he [11] proposed?

[12] MR. GODDESS: Yeah. And what I've [13] handed to the Court is one that Mr. Weems had [14] previously.

[15] THE COURT: That is what you said.

[16] MR. GODDESS: Yeah. I appreciate [17] your taking lawyers at their word.

[18] I can't vouch for every line. There [19] was even correspondence back and forth about —

[20] THE COURT: Well, let —

[21] MR. GODDESS: — how one paragraph [22] is different than another paragraph.

[23] THE COURT: Let's just say that's [24] our understanding that that's what it is. It's

### Page 21

[1] not something new that Mr. Goddess got done over [2] the weekend.

[3] **MR. GODDESS:** Absolutely not.

[4] **THE COURT:** So we're dealing with [5] what you had seen before. But we're going to put [6] it February 22nd is the extent of its validity.

[7] **MR. CHRISTENSON:** And, Your Honor, [8] we can then revisit that issue going forward, and [9] we won't be prejudiced?

[10] **THE COURT:** Once we decide if [11] they're in, —

[12] **MR. CHRISTENSON:** Yes, sir.

[13] **THE COURT:** — then all these issues [14] that Judge Jordan had become ripe in this case, [15] and then we'll talk about it.

[16] **MR. CHRISTENSON:** What about with [17] respect —

[18] **THE COURT:** So we can fight over the [19] protective order at that point that will be in [20] place going forward on fact discovery.

[21] **MR. CHRISTENSON:** All right. And am [22] I correct to understand, Your Honor, this [23] protective order will apply just to the [24] jurisdictional discovery related to the Tatung

### Page 22

[1] Company and not the Viewsonic Corporation, —

[2] **THE COURT:** Well, which —

[3] **MR. CHRISTENSON:** — which is [4] different?

[5] **THE COURT:** For now, the only person [6] that you talked about that got me here this [7] morning was them. So...

[8] **MR. CHRISTENSON:** Very well.

[9] **THE COURT:** And that would be the [10] answer.

[11] **MR. CHRISTENSON:** Thank you, sir.

[12] **THE COURT:** Unless I'm — did I [13] misunderstand, Mr. Kirk, when I read your papers, [14] or Mr. Goddess?

[15] **MR. GODDESS:** No, Your Honor. It [16] relates only to the Tatung.

[17] **THE COURT:** So protective order is [18] done. Now, and, you know, again, I understand [19] that, you know, the papers are coming in fast and [20] furious, but essentially what they say is you're [21] trying to get — you're trying to inch into [22] something more than jurisdictional discovery by [23] the topics you noticed in your 30(b)6.

[24] So tell me about that.

### Page 23

[1] **MR. CHRISTENSON:** Your Honor, I'd be [2] glad to, and I appreciate the opportunity to do [3] so.

[4] The deposition notice, which the [5] Court may have reviewed, specifically goes [6] through, and instead of using three or four [7] catchall categories that were very generic and [8] broad, tried to use specific areas of [9] jurisdictional fact, and separate those into 20 [10] categories.

[11] And they essentially fall under two [12] general categories, either specific — the [13] specific type of contacts, Your Honor, that are [14] reflected and address Mr. Chen's declaration and [15] Mr. Tsou's declaration that Tatung Company of [16] America filed in this case.

[17] That's the first area. The second [18] general area of topics, that relates to [19] distribution channel discovery, so we can [20] understand where the distribution channel starts [21] and how the products ultimately arrive in [22] Delaware.

[23] Because, of course, there's a long [24] line of cases in the Federal Circuit and this

### Page 24

[1] case that says if you distribute products that [2] infringe into Delaware through a purposeful [3] distribution channel, that subjects the defendant [4] to jurisdiction in this Court.

[5] So we need to connect the dots, Your [6] Honor, from the time of manufacture to the time [7] that Tatung Company presumably sent their product [8] to Tatung Company of America in California. [9] Tatung America then sends it to a distributor, or [10] the distributor perhaps gives it to a reseller. [11] And it's in a sales store in Delaware.

[12] We've confirmed sales at a Best Buy [13] store, for example, in Wilmington. We've [14] confirmed sales from a direct shipment where [15] Tatung Company of America sent the product to a [16] Delaware customer.

[17] So we know the products get to [18] Delaware through distributors and retailers, but [19] we need to understand the network and how that [20] occurs. Because the declarations only address [21] the first area of we don't have offices in [22] Delaware. We don't have operations. We don't [23] have employees.

[24] And what they're really saying is we

### Page 25

[1] don't have a direct physical presence in [2] Delaware. We don't have direct sales in [3] Delaware.

[4] And, of course, that's not the [5] question. The question is whether they're [6] subjected to discovery based upon the products, [7] which is the distribution channel.

[8] We need that discovery. The initial [9] notice was just a notice of Tatung Company of [10] America under Rule 30(b)6.

[11] That was the deposition notice that [12] was on December 2nd. I served that notice on [13] December 10th.

[14] I served a notice individually for [15] Mr. Chen and a deposition notice for Mr. Tsou, [16] again, the two people who submitted declarations [17] saying there are no offices or operations in [18] Delaware, and went through a litany of generic [19] contacts and non-events in Delaware.

[20] So I set them individually for [21] deposition.

[22] Those depositions — the first [23] deposition didn't go forward because Tatung [24] Company of America, on the eve of the deposition

### Page 26

[1] unilaterally decided it was "stayed" and refused [2] to appear. So I renoticed that deposition to [3] coincide with the two individual depositions.

[4] So what was supposed to happen was [5] last week, Your Honor, after they first failed to [6] appear on December 22nd, last week I had the [7] deposition notice for Mr. Chen on January 18th. [8] And I had a deposition noticed for Mr. Tsou on [9] January 19th.

[10] And I had renoticed the 30(b)6 [11] deposition for January 20th, last week. And I [12] agreed to do all these depositions at Tatung [13] America headquarters in Long Beach at their [14] request.

[15] Also, Your Honor, on December 6th, I [16] had sent a letter to Mr. Weems. I submitted that [17] to the Court earlier in December with some [18] letters, and I have another copy here if the [19] Court would like to see it.

[20] But in that letter — may I provide [21] it to the Court, Your Honor?

[22] **THE COURT:** Sure.

[23] **MR. CHRISTENSON:** Thank you.

[24] Mr. Goddess, would you like a copy?

### Page 27

[1] **MR. GODDESS:** Sure. Thank you.

[2] **MR. CHRISTENSON:** Your Honor, this [3] is just one of many letters exchanged between [4] counsel. But I wanted to provide this to the [5] Court, because it shows that on Page 2, Your [6] Honor, I specifically went through and made an [7] attempt to facilitate the deposition.

[8] And without narrowing the scope of [9] the deposition, the focus is likely to include [10] the following. And I set forth, specifically as [11] I could, the types of things that I was going to [12] focus on at this deposition.

[13] And I think Your Honor will see that [14] they're all specifically things that are

[15] calculated to show jurisdictional facts, and [16] including the chain of distribution, Your Honor.

[17] **THE COURT:** So this is — this is [18] what was in the notice, most of these?

[19] **MR. CHRISTENSON:** Yes, Your Honor. [20] The notice covers those areas, but I tried to [21] give him also what I'm going to focus on, because [22] he kept telling me, Your Honor, that it was — he [23] couldn't understand what this deposition was [24] about.

Page 28

[1] He couldn't even designate somebody [2] — someone under Rule 30(b)6, which is an issue I [3] haven't encountered before.

[4] And I kept telling him — he, by the [5] way, never could say to me, Your Honor, any one [6] of those specifically, why the 20 topics weren't [7] very specific enough. He couldn't tell me a [8] reason why any of those was insufficient.

[9] And so, you know, I'm essentially [10] negotiating with myself. I went back to him and [11] said, Here's what I'm going to focus on, [12] Mr. Weems.

[13] Then I told him, obviously, if he [14] designated someone who is prepared under Rule [15] 30(b)6, which is his obligation, and he objected [16] to some question at the deposition, then either [17] the witness wouldn't know the answer, if I didn't [18] put that in my notice, or he could object if it [19] was an improper question.

[20] It would be on the record and we, [21] too, would take the answer, subject to the [22] objection, which is standard deposition practice.

[23] So their obligation, Your Honor, was [24] to designate one or more witnesses, to prepare

Page 29

[1] them to testify on these topics, and then to do [2] the deposition, as appropriate at the deposition.

[3] **THE COURT:** All right. Let me hear [4] from Mr. Goddess about the topic issue.

[5] Thank you.

[6] **MR. CHRISTENSON:** Yes, sir.

[7] **MR. GODDESS:** Your Honor, so far as [8] the topics, one overriding problem with them is [9] that they are not — are not focused on Delaware. [10] They are talking about all operations in the [11] United States.

[12] And it is my understanding that [13] plaintiff is aware the jurisdiction can be [14] obtained on Tatung elsewhere in the — the Tatung [15] defendants, elsewhere in the United States. And [16] so our standing position, and I've seen that in [17] the correspondence that Mr. Christenson's [18] referred to, although I just really see it

going [19] back and forth.

[20] I'm not an active participant. But [21] our position is that the question should be [22] focused on Delaware.

[23] And so questions such as Topic [24] Number 4, sales and marketing related to the U.S.

Page 30

[1] concerning products made by or for Tatung, all [2] their product lines, those two companies are [3] competitors. And what they're trying to do is [4] put that — put Tatung here in the Court in [5] Delaware.

[6] And those questions, though the [7] narrowing is appreciated, and obviously, I, in [8] some fashion, did along the lines over the phone [9] with Mr. Weems what Mr. Kirk just did here this [10] morning on the other issue.

[11] I said, Are you sure? You know, [12] it's our style in Delaware to not take an [13] unreasonable stance.

[14] And it was absolutely persuaded [15] through me to provide people that are going to [16] say more than I don't know to the list of — [17] either the 20 topics in the 30(b)6 or the [18] slightly pared version here, which still is not a [19] total limitation.

[20] You're asking about soup to nuts [21] about Tatung Company, and you're either going to [22] have to get people who are totally on the top as [23] to specifics like what's your travel policy, who [24] are going to have to say I don't know, or you're

Page 31

[1] talking about lining up whole batches of people [2] that — for topics that are way too broad of [3] what's going on in Delaware.

[4] If he started with the declarants or [5] said the sorts of things that he said right here [6] in this courtroom, there's a way to write up what [7] Mr. Christenson said in this courtroom. I'm [8] trying to — the subject of the deposition will [9] be — and I'm doing this off the cuff. Obviously, [10] it will be more elaborate than this — how goods [11] get to Delaware.

[12] And I'm tracing backwards in the [13] distribution tree. You don't come out with the [14] questions that you've got here.

[15] And, again, I'm just talking about [16] the 30(b)6, not the other ones that came in the [17] wake. I mean, you look at those depo notices.

[18] They want to take the deposition. [19] This is at Page 75 of 90 in the appendix of an [20] electronics distributing outfit called TXU.

[21] All documents that refer or relate [22] to Tatung or Tatung Companies, Tatung

America [23] facilities, or operations in Texas, any other [24] files concerning Tatung or Tatung America.

Page 32

[1] There may be a measure of [2] frustration in what Mr. Christenson did, and I've [3] been there myself. But what our basic stance is [4] is that we do not want to stand in the way of [5] properly drawn discovery and preparing deponents [6] for that discovery.

[7] **THE COURT:** All right.

[8] **MR. CHRISTENSON:** Your Honor, may I [9] respond briefly?

[10] **THE COURT:** Sure.

[11] **MR. CHRISTENSON:** Thank you. Your [12] Honor, I just want to make sure, because [13] there's — I want to make sure it's clear, with [14] all these facts being thrown at the Court [15] together and with the lengthy response that was [16] served today by the Tatung defendants, I just [17] want to make it clear to Your Honor on the record [18] that the — several of these other deposition [19] notices, in fact all the other ones besides the [20] three that I've been talking about are [21] third-party deposition notices.

[22] And we didn't — we're not doing [23] this to harass anyone. We served these notices [24] on former, the two former employees of Tatung

Page 33

[1] Company of America that I was able to find myself [2] just through investigation to try to get some [3] factual information when they wouldn't appear for [4] deposition. And I don't know why it would be [5] inappropriate for me to take a deposition to try [6] to find some of these facts out from third-party [7] witnesses, Your Honor, when I couldn't get them [8] directly from the party.

[9] The TXU deposition, not that [10] Mr. Goddess just referred to, is a notice that — [11] that's a subpoena directed to someone in Texas [12] who went out — it's a gas and utility company [13] who went out to Tatung Company in Taipei, is my [14] understanding, and persuaded Tatung Company to [15] set up a distribution facility in Arlington, [16] Texas outside of Dallas for distribution of [17] products in the East Coast.

[18] So they weren't just distributing [19] solely out of Tatung America in California. They [20] had another distribution and production facility [21] in Texas.

[22] I wanted to find out information, [23] Your Honor, about that facility, so I can, again, [24] draw the — connect the dots. Your Honor, what

Page 34

[1] they really want to do is they want to

limit my [2] inquiry and the Court's attention to sales and [3] operations physically in Delaware. And it simply [4] isn't appropriate, Your Honor. There's the [5] Brennan case and numerous other cases.

[6] And, Your Honor, the recent Federal [7] Circuit decision in the CEA case, that makes very [8] clear that although it's not clear what the [9] standard is in Delaware for distribution, chain [10] jurisdiction, or rather — or rather it's not [11] clear what the — specifically whether it's the [12] Brennan or the O'Connor standard that applies, [13] what is very clear is that that is a valid [14] doctrine.

[15] And if you distribute products [16] through an established distribution channel, [17] you're subject to jurisdiction hearings.

[18] THE COURT: Well, do you both agree [19] that one of the legal standards that I will be [20] measuring defendants' conduct against is the [21] Delaware Long Arm Statute?

[22] MR. CHRISTENSON: Your Honor, yes. [23] The Delaware Long Arm Statute applies.

[24] THE COURT: And there's a — the

Page 35

[1] Delaware Supreme Court has cases, which I've [2] become familiar with over the years. They may [3] not use the exact same language, they may use [4] language like stream of commerce and other — you [5] know, it depends who's writing.

[6] But it's pretty clear what our [7] Delaware Supreme Court thinks that statute [8] involves.

[9] MR. CHRISTENSON: I may have [10] misspoke. I was recharacterizing what the [11] Federal Circuit had said.

[12] I apologize.

[13] THE COURT: Right. Well, yeah.

[14] And, again, we have to do a lot of [15] reading. I only got to read that decision very [16] quickly last week.

[17] But as I understand it, they want to [18] understand what that statute allows. And, of [19] course, everybody is going to look at what the [20] Delaware Supreme Court has said.

[21] MR. CHRISTENSON: Yes.

[22] THE COURT: That's done [23] historically. Then we will go to the other [24] prong, —

Page 36

[1] MR. CHRISTENSON: Yes.

[2] THE COURT: — which is the [3] constitutional test that will be applied in this [4] case.

[5] What you've said in Court here, in [6] my view, all is designed to reach what the case [7] law already is, both in this district and in the [8] State Supreme Court, except what Mr. Goddess has [9] pointed out and what I saw when I was reviewing [10] this over the weekend: Sales, volume, marketing [11] information.

[12] But if the defendant truly finds [13] that objectionable, you have offered a solution. [14] They can object.

[15] And they can try and get me on the [16] phone, which would be very difficult given the [17] trial schedule and others in this Court.

[18] But you — they can pass without an [19] answer. You know, they can note their objection. [20] You can pass without an answer, and then bring it [21] on a motion to compel.

[22] Then I'll have the specific question [23] you were asking; right?

[24] MR. CHRISTENSON: Yes.

Page 37

[1] THE COURT: And what you were [2] looking for. And I'll have their defense of the [3] objection.

[4] And as Mr. Goddess has said, you [5] know, in this jurisdiction, we look for people to [6] be reasonable. If they've interposed objections [7] unreasonably, then they'll be hurt by that [8] conduct.

[9] If they properly interpose an [10] objection and I make a ruling, then it means that [11] no harm's been done. You asked the question, and [12] you're not going to get an answer.

[13] So, but I can tell you at the [14] outset, when I looked at some of the sales [15] information, it seemed to me that you were [16] directing it, by the literal reading of the topic [17] as it was put forth in paper, volume and product [18] as opposed to stream of commerce information. [19] But maybe — you know, we all try to write [20] precisely.

[21] And maybe I'm reading too literally [22] or Mr. Goddess is reading too literally. But the [23] solution to that is for Mr. Goddess's clients to [24] get to the deposition, interpose an objection.

Page 38

[1] You pass on the question then, and bring it as a [2] motion to compel. That is — and that's the [3] solution.

[4] But I think the other questions that [5] you've set forth on a 30(b)6 witness are [6] appropriate to try and determine. Again, I'm [7] looking towards the Delaware Supreme Court case [8] law initially —

[9] MR. CHRISTENSON: Yes, sir.

[10] THE COURT: — to meet what they [11] find is the facts that support their standing, or [12] the interpretation of their understanding.

[13] MR. CHRISTENSON: That is — I [14] intend to obtain, obviously, the information that [15] relates to those issues. That's my intention as [16] well.

[17] THE COURT: Now, on a third-party [18] basis, that is always the interesting part of [19] these cases. I — I think that you're able to [20] have at that, and it's up to the third party in [21] their jurisdiction to bring a motion to quash.

[22] And I assume Mr. Goddess' client is [23] astute enough to talk with the third party once [24] they see the notice, if they want, and devise

Page 39

[1] some strategy to avoidance to your efforts.

[2] MR. CHRISTENSON: Your Honor, don't [3] give them any ideas.

[4] THE COURT: Well, no.

[5] MR. CHRISTENSON: I'm sorry. I'm [6] just joking.

[7] THE COURT: I get the idea. I see [8] lawyers do it all the time.

[9] I'm a purist. I always think [10] everybody just comes and talks.

[11] But, no. So I think that that's the [12] framework of the solution here.

[13] They're right about you shouldn't be [14] asking about sales volume, and marketing [15] techniques, and product information in a specific [16] way like how many 1937 BADs are you selling [17] through your New York distribution into Delaware [18] Best Buys.

[19] It should be: Are you selling [20] product through your New York distribution into [21] Delaware? And, yeah, there can be some general [22] identification, but you don't need to know that [23] they're doing 2,000 a day.

[24] Now, you're going to tell me — go

Page 40

[1] ahead, Mr. Kirk.

[2] MR. KIRK: Just to point out that [3] the Long Arm Statute speaks about deriving [4] substantial revenue.

[5] MR. CHRISTENSON: Right. So —

[6] MR. KIRK: So there's a volumetric [7] component to this.

[8] THE COURT: Exactly. That's why I'm [9] saying in a specific way.

[10] MR. CHRISTENSON: Okay.

[11] THE COURT: You can generally find [12] out that they're doing two truckloads. That's [13] permissible.

[14] I think their objection is they [15] don't want to give up the proprietary [16] information, and I'm sure everybody in this [17] courtroom understands the distinction between the [18] general information about volume and proprietary [19] information that gets into more specific detail [20] that would be — would disadvantage them and [21] ad-

Case 1:04-cv-00343-JJF   Document 224-2   Filed 11/01/2005   Page 9 of 12

LG Philips LCD, Company, LTD. v.
Tatung Company, et al.
Hearing
January 24, 2005

vantage you.

[22] But the solution, if your question [23] is properly tailored, is to let them interpose [24] their objection, and come to me with your

---

Page 41

[1] specific question. And I'll determine whether it [2] was general enough or too specific that it was [3] invading the boundaries of discovery designed to [4] meet the case law and the statute.

[5] **MR. CHRISTENSON:** Your Honor, it's a [6] reasonable approach. I would just point out the [7] last point that you made, that since we've now [8] talked about a temporary protective order, that [9] would seem to address any concerns they had about [10] disclosing of proprietary information, because [11] they can keep that attorneys' eyes only for [12] purposes of this case.

[13] **THE COURT:** I don't want to get into [14] that detail, because I have attention deficit [15] disorder.

[16] You keep talking about my attention. [17] You're getting me nervous here.

[18] So I think we have solutions to the [19] two problems presented in this dispute. We have [20] a protective order.

[21] You should go forward with your 20 [22] topics of Mr. Goddess' client on any one of these [23] topics, the 30(b)6. And I don't think it's going [24] to be difficult to find the people to bring to

---

Page 42

[1] the depositions and line them up.

[2] I think the topics are specific [3] enough that it should be readily apparent what or [4] the type of person that has to come as a [5] designee.

[6] But that will flush out, as you ask [7] your questions, if the person says I don't know.

[8] **MR. CHRISTENSON:** Right.

[9] **THE COURT:** But the 30(b)6 practice [10] is an important part of these cases, even [11] jurisdictionally. So I'm going to allow you to [12] ask the topics, and Mr. Goddess, you're going to [13] be asked to object.

[14] I'm not going to pare it down to [15] begin with at the beginning.

[16] **MR. GODDESS:** Your Honor, I [17] appreciate that, but I — can you hear me from [18] here?

[19] **THE COURT:** Sure.

[20] **MR. GODDESS:** One broad brush [21] question. In other words, it is not a basis for [22] objection that some of these questions are about [23] overall in America, rather than about the stream [24] of commerce that would be getting to Delaware?

---

Page 43

[1] **THE COURT:** Well, again, my [2] understanding, and it could be warped by not [3] having paid attention to it in the last year or [4] so, is that what they have to establish under the [5] standard allows them to do some tracking.

[6] But I think your point is well [7] taken. You have to be tracking to the goal of [8] finding out what lops into Delaware.

[9] **MR. GODDESS:** In the direction, at [10] least, that goes.

[11] **THE COURT:** Yeah. Exactly.

[12] **MR. GODDESS:** I guess you can start [13] on the product on the boat, sure. But —

[14] **THE COURT:** Well, I think the way [15] I've seen it done is they start from Delaware [16] back. And that's what controls the concern you [17] have.

[18] I haven't seen them start with the [19] boat and then tell us where it all goes in the [20] United States much. I mean, when we've had these [21] motions to dismiss on jurisdiction, it's — the [22] standard requires you to show the stream of [23] commerce and the ultimate destination in [24] Delaware.

---

Page 44

[1] And so they start asking about: [2] What do you put in Delaware? And then they —

[3] **MR. GODDESS:** Thank you.

[4] **THE COURT:** — take it back.

[5] **MR. GODDESS:** And related to that, I [6] made three notes. That's one of them.

[7] Your Honor's comments, which I don't [8] know if they were meant to be soothing, but I [9] jumped to them immediately and found them to be [10] soothing.

[11] You seem to contemplate a further [12] process if Mr. Kirk and I aren't fortunate to be [13] flown out to Los Angeles for these depositions, [14] and Mr. Weems and Mr. Christenson are just facing [15] each other.

[16] What would be the process that Your [17] Honor — I mean, it would be very unlikely — [18] that it boils over?

[19] **THE COURT:** They bring a motion to [20] compel the answer.

[21] **MR. GODDESS:** Like on short papers?

[22] **THE COURT:** Right.

[23] **MR. GODDESS:** Okay.

[24] **THE COURT:** Because you have that

---

Page 45

[1] other order.

[2] I have an order that says no more [3] motions. They'd have to do what you tried to do, [4] which is write me a motion for leave. You wrote [5] a letter, but — not you, somebody on —

[6] **MR. GODDESS:** I did have a big hand [7] in that one.

[8] **THE COURT:** It would be a motion for [9] leave to file a motion to compel. And then [10] typically what happens, like a motion to amend, [11] your motion to leave says, This is why we need [12] it. And you attach your motion to compel.

[13] I get a chance to see the whole [14] picture, and then we get it resolved in Court or [15] on the papers.

[16] **MR. GODDESS:** And last, Your Honor.

[17] **THE COURT:** In this case, I'm [18] becoming too familiar with the case. I may be [19] able to do it on the papers, which would be ugly.

[20] **MR. GODDESS:** Lastly, Your Honor, [21] you are absolutely correct. My understanding of [22] how third-party objections could be made, or — [23] but in my experience, those outlining states may [24] say, well, do I deal with it or send it back home

---

Page 46

[1] to Delaware?

[2] And since Your Honor has already [3] expressed what I would take to be — well, it [4] caught Your Honor's attention that they're trying [5] to take the deposition of the ex-spouse that [6] hadn't worked there in 14 years, or 12 years. [7] Would you want to give us any guidance about the [8] scope of what those third-party depos could be?

[9] **THE COURT:** I think you're correct. [10] My experience is if it's an intellectual property [11] case, and on a complex issue, the District Court [12] in that jurisdiction typically will get it back [13] here somehow.

[14] **MR. GODDESS:** Stay for a moment and [15] get it back here?

[16] **THE COURT:** I mean, sometimes they [17] resolve them, too. I've resolved them by calling [18] the district judge, getting some background, and [19] then making a decision.

[20] But, you know, it varies so much. [21] But you can come back through Delaware on that [22] motion to quash.

[23] **MR. GODDESS:** That's the only [24] guidance, Your Honor?

---

Page 47

[1] **THE COURT:** I don't know enough [2] about how it all works.

[3] **MR. CHRISTENSON:** Your Honor, I can [4] represent to the Court, I'm not going to be [5] asking about extramarital affairs. If I depose [6] the former president of the company, I'll be [7] asking him things he knows about jurisdiction.

[8] **THE COURT:** The only reason I used [9] that as an example, I thought it was put

in the [10] papers as a drastic example of what they were [11] trying to do. And I thought I'd use it as a [12] drastic example of the question.

[13] But if you hit the standard in this [14] Court, we're going to take a reasonable approach. [15] And so you won't be able to ask that kind of [16] stuff.

[17] You don't intend to ask that kind of [18] stuff. And if you get bogged down in a [19] third-party practice, you're probably going to [20] somehow wind up back here. But, normally — [21] again, my understanding is normally when you go [22] after third parties, you're not looking for [23] testimony really.

[24] You're looking for a little bit of

### Page 48

[1] testimony, but documents. And so the question is [2] very narrow, and sometimes even resolved by the [3] production of the documents.

[4] But if you need to come back here, [5] you can come back here if that's soothing.

[6] MR. CHRISTENSON: And Your Honor, [7] your last point is a good lead in for — I just [8] had a couple points I wanted to raise before we [9] conclude.

[10] And one is that we have served [11] interrogatories, and we also served document [12] requests in early December. And as of today, [13] Your Honor, we haven't received a single [14] document.

[15] Obviously, it would facilitate the [16] deposition if I had in advance some of the [17] documents. For example, Your Honor, one of the [18] reasons I gave you Mr. Chen's declaration and [19] Mr. Tsou's declaration is that they refer in [20] their declarations to records that they relied [21] upon to put forth the facts, which include things [22] like they are selling $132 million of product in [23] the U.S.

[24] Mr. Goddess thinks that's apparently

### Page 49

[1] not relevant. But that's in their own papers.

[2] So they've put those numbers in the [3] papers. They have also said those are based on [4] specific records that they've reviewed, yet I [5] don't have those records.

[6] Your Honor, I would like to have [7] those records before I take these depositions.

[8] MR. GODDESS: Sounds like it's [9] something he should have. And I just don't [10] remember what component of the dispute that [11] was — I think that had to do with the protective [12] order issue, too.

[13] He should have those documents.

[14] THE COURT: All right. [15] Interrogatories and documents, you're absol-

utely [16] correct, should be resolved before deposition [17] practice occurs.

[18] And we're focused on February 22nd.

[19] MR. GODDESS: Your Honor —

[20] MR. CHRISTENSON: That was my second [21] point, Your Honor.

[22] MR. GODDESS: Your Honor, I was just [23] speaking to the documents. Interrogatories, [24] there's a dispute as to the number of them and

### Page 50

[1] that sort of thing.

[2] THE COURT: Well, I'm just saying as [3] a general matter.

[4] MR. GODDESS: Oh, okay. I have not [5] committed to filing supplemental answers to that.

[6] THE COURT: That's material that the [7] party seeking deposition wants to have before [8] they start the deposition. So as a general [9] matter, if there's interrogatories that are [10] properly served, they need to be responded to, [11] and the same with documents.

[12] And we all agree.

[13] MR. GODDESS: I absolutely agree on [14] the documents. Mr. Christenson was alluding to [15] documents that our declarants refer to.

[16] THE COURT: You've got to give them [17] up.

[18] MR. GODDESS: We'll absolutely give [19] them up.

[20] MR. CHRISTENSON: With respect to [21] interrogatories, we served — I have it was 20, [22] approximately 20 interrogatories. By the, I [23] think, third — it was the fourth interrogatory [24] they renumbered interrogatories.

### Page 51

[1] So by the fourth one, I believe it [2] was they had me over the 50 interrogatory limit [3] for subparts.

[4] And we're, obviously, going to need [5] some, I think, unfortunately, additional [6] assistance from the Court.

[7] THE COURT: I don't do that kind of [8] work at $30 an hour. That's the kind of thing [9] you wind up in front of a special master paying [10] for. Because the lawyers ought to be able to — [11] that rule has been around so long, lawyers ought [12] to be able to count.

[13] And in my world, with my case load, [14] I don't count interrogatories. And if you've [15] been abused, you better make a serious decision [16] you've been abused.

[17] And it's without a doubt. You know, [18] it's beyond a reasonable doubt standard.

[19] And then bring the other party in. [20]

But on a general basis, I mean, we — the [21] district, we don't have magistrate judges here.

[22] We can't get into that kind of thing [23] unless you want to go to a special master, which [24] I'm happy to send you for that discrete issue or

### Page 52

[1] other issues. But, I mean, I just can't count [2] interrogatories.

[3] MR. CHRISTENSON: I guess if I [4] understand the Court, then, what we would need to [5] do is if we can't resolve that issue, we would [6] need to respectfully request that it be referred [7] to a special master?

[8] THE COURT: Well, yeah. Just ask to [9] be — request that it go to a special master. If [10] the interrogatories — but if it's a counting [11] problem, you better be sure you're going to win [12] it by a standard beyond a reasonable doubt, [13] because if you're getting documents in a [14] deposition and you've gotten — and if you're [15] arguing over whether there-'s — subparts are [16] really questions, just think about that for a [17] minute.

[18] That's even kind of a waste of a [19] special master's time, unless they're really [20] playing with you. And then they're going to get [21] sanctioned.

[22] Not Mr. Goddess' client, but anybody [23] that's fighting that kind of a thing on that kind [24] of a basis, you know, they're not going to do

### Page 53

[1] well.

[2] MR. CHRISTENSON: Your Honor, would [3] it be possible to get a deadline for them to [4] start producing some of these documents, so we [5] can prepare?

[6] THE COURT: I wanted to talk about [7] deadlines.

[8] MR. GODDESS: Your Honor, on — [9] excuse me. On the matter of the special master, [10] I am hopeful that that will not be needed.

[11] But that does — I mean, the notion [12] for special master for jurisdictional discovery [13] is kind of sad.

[14] THE COURT: Well, I don't think this [15] case — this case is at the point where I would [16] send it to a special master panel.

[17] MR. GODDESS: But if —

[18] THE COURT: But —

[19] MR. GODDESS: If it's going to work [20] out away from Your Honor, the good will that's [21] prevailing in this courtroom, when these people [22] get back on the Court phone with each other, what [23] would be the process for getting a special [24] master?

###### Page 54

[1] THE COURT: You write me a letter [2] and we have Mr. Kirk's — and I think there's — [3] it's on the web site. There's an order.

[4] But you basically write me, and I [5] refer you to the panel. And the coordinator of [6] the personnel — it's random assignment.

[7] MR. GODDESS: Is that Vince Poppiti, [8] that thing with Vince?

[9] THE COURT: It's Poppiti. Seitz.

[10] MR. KIRK: The judge from [11] Philadelphia, I think.

[12] THE COURT: Bechtel. James.

[13] And we're going to add somebody in [14] about 30 days. We're going to have a panel of [15] five standing masters, and to keep the Court out [16] of all that appointment and everything.

[17] You go to the panel. They [18] essentially have a wheel. They check conflicts.

[19] And then you are assigned a special [20] master, and they all have their rate. And you [21] can litigate there to your heart's content.

[22] MR. GODDESS: Thank you.

[23] THE COURT: It's — it's — we've [24] been involved in trying to resolve that, and how

###### Page 55

[1] it stagnates cases with 380 cases and 60 to 70 [2] patent cases, and one Magistrate Judge who [3] doesn't do discovery.

[4] We were at an end to try to figure [5] out how to handle this. And we've come up with [6] the idea of this panel.

[7] And it's kind of like a grafting [8] onto the court system. That way you can stay in [9] the public court system, have all your rights to [10] appeal, but you get to go — get dispositions in [11] a very timely way.

[12] And I think in the Chrysler case and [13] other cases, it's been proven to be helpful. [14] This case doesn't seem like you're at that point.

[15] But you're right, if everybody gets [16] back on the phone and you're still kind of like [17] rubbing against each other, and you're not able [18] to bring some sort of a healing to the [19] discussion, all you've got to do is write me a [20] letter, and I send you there.

[21] MR. GODDESS: Thank you.

[22] MR. CHRISTENSON: Your Honor, we [23] were discussing perhaps a deadline, if one would [24] be appropriate for production of documents and

###### Page 56

[1] jurisdictional discovery.

[2] THE COURT: Excuse me. You had [3] these depositions scheduled for last week?

[4] MR. CHRISTENSON: Originally, [5] December 22nd, Your Honor.

[6] THE COURT: Well, yeah.

[7] MR. CHRISTENSON: But, again, last [8] week.

[9] THE COURT: When Mr. Kirk kept [10] burning up my computer Email.

[11] MR. CHRISTENSON: Yes, sir.

[12] THE COURT: Last week. [13] Now, February 22nd is the outside [14] date.

[15] MR. CHRISTENSON: Yes, sir.

[16] THE COURT: Today's January 24th. [17] It seems to me that all the documents relative to [18] the declarations that you've cited and answers to [19] interrogatories that are incomplete ought to be [20] able to be given over by the end of this week, [21] the very first part of next week.

[22] And then these depositions ought to [23] be rescheduled for that — any time after that [24] first week, full week in February. And then you

###### Page 57

[1] should be able to complete them by February 22nd.

[2] And then I can stay on the February [3] 22nd cut-off date. We can get your briefing [4] done, and we can get you a decision on the motion [5] to dismiss, which will really decide the future [6] course of the case.

[7] MR. CHRISTENSON: Your Honor, that [8] would be the most efficient way to proceed. [9] Unfortunately, because we've got some third-party [10] depositions that are now set, I think, for each [11] of the weeks in different parts of the country [12] leading up to February, we also have in February, [13] the 16th, 17th and 18th, they have depositions [14] set in Taipei, Taiwan.

[15] THE COURT: This is my favorite [16] question. Let me ask you a question.

[17] How many lawyers are in your law [18] firm?

[19] MR. CHRISTENSON: Several, Your [20] Honor.

[21] THE COURT: Give me a guess.

[22] MR. CHRISTENSON: Your Honor, firm [23] wide, we have, approximately, 350 lawyers.

[24] THE COURT: That's what I was

###### Page 58

[1] thinking. And in your world, how many cases are [2] you working on that are active to you today?

[3] MR. CHRISTENSON: Probably primarily [4] three, Your Honor.

[5] THE COURT: Now, my law firm is me [6] with two first-year associates and close to 400 [7] cases. You're telling me that you may not be [8] able to get this done by February 22nd [9] essentially.

[10] My sympathy level is absent on that. [11] You know, you've got to get it done.

[12] MR. CHRISTENSON: Very well.

[13] THE COURT: You've got a lot of [14] lawyers. You've got three cases.

[15] And I'm not belittling that, because [16] the work is intense. But you've got to get it [17] done.

[18] Now, if you both agree, because I [19] want to move this case.

[20] MR. CHRISTENSON: Yes, sir.

[21] THE COURT: This has the potential, [22] particularly after I read the Federal Circuit's [23] decision, to become one of those cases that I'll [24] lose sight of, and it will become four years old.

###### Page 59

[1] I don't want to do that, if I can [2] help it. I don't mind doing that, but I don't [3] want to do it if I can help it.

[4] So if I start moving deadlines. No. [5] But if you both agree that February [6] 22nd doesn't work for both of you, because you [7] have family lives, and you may want to go to a [8] Washington Bullets game, whoever plays down there [9] or something, then reasonably extend it [10] yourselves.

[11] MR. CHRISTENSON: Okay.

[12] THE COURT: If you agree, I've got [13] no problem.

[14] MR. CHRISTENSON: But, otherwise, if [15] either one of us wants to go forward and stick to [16] the deadline, I think you're indicating we stick [17] to the 22nd?

[18] THE COURT: You stick to it. I only [19] got to that decision after all the papers that I [20] read that were coming in in August and September. [21] So I'm trying to give the attention you're asking [22] for.

[23] If I start moving your deadlines [24] out, then other people are going to come over

###### Page 60

[1] your back, and you're going to get lost in the [2] back wash.

[3] I mean, that's the facts. And we're [4] trying to keep, at any given time, 65 to 70, 60 [5] patent cases moving to a trial within, what is [6] it, 20 months, with two first-year associates.

[7] February 22nd.

[8] MR. CHRISTENSON: Understood, Your [9] Honor.

[10] THE COURT: 350 lawyers. How many [11] lawyers in your firm, Mr. Kirk?

[12] MR. KIRK: 33.

[13] THE COURT: 33, okay. [14] Mr. Goddess?

[15] MR. GODDESS: Eight. No, seven, [16] Your Honor.

[17] THE COURT: Seven. But I think you [18] can all get done.

[19] Your corresponding counsel, you [20] know, has enough. But if you want to extend it [21] out.

[22] MR. CHRISTENSON: Your Honor, the [23] last point is I think your order asked us to [24] submit a statement of costs and fees.

Page 61

[1] THE COURT: I'm going to see that. [2] This is your first time in front of me.

[3] MR. CHRISTENSON: Yes, sir.

[4] THE COURT: So I wanted your [5] statement in bringing this motion. And now, I'm [6] going to monitor what we have to do to keep this [7] case moving.

[8] And at some point if I make a [9] judgment that one side is recalcitrant and the [10] other is acting in good faith, and then I go all [11] the way back and award fees and costs.

[12] So if you'll present that as you're [13] asked to do — I'm not going to award it today.[14] But I want it as of today, so I can take a look [15] at it, and then I'll have it historically.

[16] MR. CHRISTENSON: Very well, Your [17] Honor. We had a computer issue this morning.

[18] THE COURT: You can send it later.

[19] MR. KIRK: It will be later today, [20] Your Honor.

[21] THE COURT: I understand. That's [22] fine.

[23] All right. Mr. Christenson? [24] Mr. Goddess, anything further?

Page 62

[1] MR. GODDESS: I think, Your Honor, [2] the matter of those documents and the like by the [3] end of this week and early next, that's premised [4] on this confidentiality stip either being signed [5] or there's a hand shake deal that what we talked [6] about will stand as a confidentiality stip?

[7] THE COURT: Well, I'm ordering your [8] protective order with an amendment that it's good [9] through the close of jurisdictional discovery.

[10] MR. GODDESS: Thank you.

[11] THE COURT: So —

[12] MR. CHRISTENSON: That resolves the [13] issue, I believe.

[14] THE COURT: So that resolves it. [15] And my second order will be that I'm not [16] modifying the topics as suggested by plaintiff [17] for the 30(b)6 depositions.

[18] And you understand what I've said, [19] the practice will be your side can interpose [20] objections to questions that when framed in the [21] context of deposition you believe seek more than [22] is due under the 30(b)6 notice or are improper.

[23] And then your remedy is to move for [24] leave for — to file a motion to compel with the

Page 63

[1] motion to compels attached. And we'll get to it [2] quickly.

[3] MR. CHRISTENSON: Your Honor, my — [4] the one final concern, there's a difference in [5] courts as to whether or not a party can ask [6] questions outside the specific issues that are [7] set forth in the 30(b)6 notice.

[8] I believe most courts have said if [9] you go outside that, you do so at your own peril, [10] because the witness may not be able to answer the [11] question. But what happens is if you go outside [12] the Rule 30(b)6 topics, you're under Rule 26(b). [13] The general scope is broad.

[14] You can ask the question. There's [15] no basis for someone to instruct not to answer, [16] but you just may not get the information.

[17] So if your Court follows that [18] majority view, then that may help us avoid some [19] of the wrangling at the deposition if someone [20] thinks — someone goes outside the specific [21] topics set forth in the notice.

[22] THE COURT: Well, I've looked at [23] those 20 topics.

[24] MR. CHRISTENSON: Yes, sir.

Page 64

[1] THE COURT: There shouldn't be any [2] questions outside those 20 topics.

[3] MR. CHRISTENSON: I don't intend to [4] ask any. Just if they think I am, then the [5] question is: Could they instruct the witness not [6] to answer that question?

[7] THE COURT: Yes. That was my remedy [8] to get you beyond the deposition.

[9] MR. CHRISTENSON: I see.

[10] THE COURT: So I can deal with [11] specific, because now I'm dealing with proposals.

[12] MR. CHRISTENSON: Okay.

[13] THE COURT: So you understand, [14] Mr. Goddess, I'm allowing your side to interpose [15] an objection, instruct your client not to answer [16] with the understanding that they're going to come [17] on a motion to compel.

[18] And I'm going to measure the [19] objection against the question and make a [20] decision. And that's when we'll start to get [21] into the Court, —

[22] MR. CHRISTENSON: Very well.

[23] THE COURT: — which you have the [24] authority in this case to instruct the witness

Page 65

[1] not to answer on your objection.

[2] MR. GODDESS: Thank you, Your Honor.

[3] THE COURT: Okay? All right. [4] Thank you. We'll be in recess.

[5] MR. KIRK: Thank you, Your Honor for [6] your time.

[7] THE CLERK: All rise.

[8] (Hearing concluded at 9:56 a.m.)

Page 66

State of Delaware    )  
New Castle County    )  

CERTIFICATE OF REPORTER

I, Heather M Triozzi, Registered Professional Reporter, Certified Shorthand Reporter, and Notary Public, do hereby certify that the foregoing record, Pages 1 to 66 inclusive, is a true and accurate transcript of my stenographic notes taken on January 24, 2005, in the above-captioned matter

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 25th day of January, 2005, at Wilmington

Heather M Triozzi, RPR, CSR