## RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

Anne Shea Gaza

Direct Dial
(302) 651-7539
Gaza@RLF.COM

October 23, 2006

**BY HAND DELIVERY**
**& ELECTRONIC MAIL**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilmington, DE 19801-4226

   Re: *LG Philips LCD Co., Ltd. v. ViewSonic Corp., et al.,*
      C.A. No. 04-343-JJF

Dear Special Master Poppiti:

  Defendants Tatung Company and Tatung Company of America (collectively, "Tatung") submit this letter in response to Plaintiff LG Philips LCD Co., Ltd's ("LPL") October 6, 2006 motion to compel ("LPL's Motion") requesting the Special Master order Tatung to produce or make available for inspection all samples of Tatung's visual display products and recommend to Judge Farnan that written discovery in this case be extended to March 16, 2007.

  LPL's Motion is an attempt at pretending a discovery dispute exists. In this instance, LPL claims there is a genuine discovery dispute regarding Tatung producing or making available Tatung's visual display products, when none exists. LPL does so in the hopes that it will be able to persuade the Court to extend the written discovery deadline. In doing so, LPL has ignored Your Honor's procedures by not having a meet-and-confer with Tatung regarding producing or making available Tatung's visual display products. (*See* Letters from S. Hassid Letter to C. Conner (Oct. 12 and 16, 2006), attached as Exhibits 1 & 2, respectively.) As Tatung's October 12 and 16 letters explained, LPL's motion to compel was improper and should have been withdrawn. LPL claims that during meet-and-confer sessions on September 7, 8 and 12 with Tatung and Viewsonic, LPL raised the issues of Tatung producing or making available their visual display products. Viewsonic's counsel, who attended all three of the meet-an-confer sessions, confirmed that this issue was never raised. Accordingly, LPL's motion is improper for

RLF1-3073502-1

The Honorable Vincent J. Poppiti
October 23, 2006
Page 2

not following the Special Master's March 25, 2006 order regarding discovery dispute procedures.

Additionally, LPL's motion is frivolous and moot because prior to LPL's filing of its motion to compel on this issue, Tatung had already agreed to provide LPL a list of Tatung products which Tatung continues to have custody and control of that are available for acquisition by LPL and a list of the damaged (unsaleable) Tatung products that Tatung has possession, custody or control of. Tatung even provided LPL with a list of Tatung Company displays that it has in its custody and control that LPL can purchase or inspect (*See* letter of S. Hassid to C. Connor, (Oct. 20, 2006), attached as Exhibit 3.) and Tatung Company of America is completing its list which will be communicated to LPL as soon as possible. Despite this resolution, LPL still proceeded to file its motion.

## TATUNG HAS PRODUCED ASSEMBLY DRAWINGS AND MATERIALS FOR OVER 800 LCD DISPLAY PRODUCTS.

LPL inappropriately complains in its motion that "Tatung still has not complied with the parties' agreements. In particular, LPL claims that Tatung "has produced technical documents for *only two of the 131 monitors* identified in its response to LPL's Interrogatory 2." (*See* LPL Motion at 2 ¶ 3, Emphasis in original.) This is simply not true. On the same day LPL filed its Motion, Tatung sent LPL a letter indicating that, as of October 6, 2006, it had produced "assembly-related drawings or work instructions" **covering "96% of Tatung Company monitors" and "50% of Tatung Company of America Display Products."** (*See* Letter from M. Krietzman to C. Connor, (Oct. 6, 2006), attached as Exhibit 4, Emphasis added.) Additionally, Tatung has continued to supplement its production and notified LPL that assembly-drawings and work instructions for "about "70%" of Tatung Company of America had been produced by October 20, per the agreement of the Parties and that another "16%" of Tatung Company of America documents would be produced shortly. (*See* Letter from S. Hassid to C. Connor, (October 20, 2006), attached as Exhibit 5.) Moreover, Tatung's October 20, 2006 letter explained that "Tatung does not have responsive documents for the small percentage of remaining display products (no more than 5% for Tatung Company and 14% percent for Tatung Company of America) in its custody or control" because they are either "products with small production runs (less than 50 total units) or they are third party products resold by Tatung but which were not Tatung company products and Tatung never received assembly drawings or work instructions for them." *Id.* As of today, the remaining 16% of the Tatung Company of America documents have been produced to LPL. Accordingly, Tatung has acted diligently in satisfying its discovery obligations.

The Honorable Vincent J. Poppiti
October 23, 2006
Page 3

## THE WRITTEN DISCOVERY CUT-OFF PASSED
## AND LPL DID NOT SEEK ANY EXTENSION BEFORE IT CLOSED.

LPL also argues that Tatung's objection to LPL's Third Set of Requests, which it admits were filed after the close of written discovery, somehow justifies extension of the written discovery deadline through March 16, 2007. LPL, however, has had more than two years to propound written discovery. It's decision to wait until after the close of fact discovery to complete its factual record is not a basis for extending the written discovery deadline. Requiring the parties to abide by the scheduling order will not prejudice LPL since it is still permitted to take non-written discovery to develop its case. Against this backdrop, LPL's claim that it needs additional time to complete written discovery "based on existing disputes, scheduling issues, and other reasons" rings hollow. (*See* LPL's Motion at 3 ¶2). LPL's fiction regarding "disputes" that have no support in the record before Your Honor provide no basis for extending written discovery. In addition, Tatung is not aware of any scheduling issues between the parties that would otherwise support such a request.

In order to persuade the Special Master that extension of the written discovery deadline is somehow appropriate, LPL claims that "[w]hile Tatung has remained silent, Defendant ViewSonic has agreed in principal with LPL that any extension of the written discovery deadline would benefit all parties." LPL's statements are simply not accurate and are a distortion of the facts and record, Tatung respectfully refers the Special Master to counsel for ViewSonic's letter of October 6, 2006, which states:

> "First, let me correct the record. At no time during our discussion did ViewSonic state a belief that an extension of written discovery cut-off deadline between the parties would benefit everyone...."

## CONCLUSION

Tatung has provided assembly drawings and has expedited its productions to LPL, Tatung has gone the extra mile and produced full color pdf work instructions to assure that LPL has the best quality records. *Id.* To date LPL has only made infringement allegations against a single Tatung product - the L17AMTN.

LPL received what it sought, a massive amount of material on Tatung display products, LPL now has assembly drawings from Tatung for over 800 display products which encompass about 96% of all Tatung Company display products sold or offered for sale in the United States and assembly drawings or work instructions for about 86% of all Tatung Company of America display products. It is not additional time to generate new discovery that LPL needs to focus on, but rather LPL needs to refrain from filing discovery motions and instead complete its review of the over 800 products and supplement its infringement allegations. It is incumbent upon LPL to

The Honorable Vincent J. Poppiti
October 23, 2006
Page 4

either provide a colorable claim of infringement against a product or put that product on a list of non-infringing products.

Tatung opposes any extension of the written discovery deadline. As the Court in *Finch v. Hercules* stated, "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." *See Finch v Hercules Inc.*, 1995 WL 785100 at *9 (D.Del.1995). Accordingly, the Special Master should deny LPL's motion to compel in its entirety and should require LPL to seek and participate in a meet-and-confer in accordance with Your Honor's established procedures.

Respectfully,

Anne Shea Gaza (#4093)

ASG/afg

cc: Clerk of the Court (By Electronic Filing)
Richard D. Kirk, Esquire
Cormac T. Connor, Esquire
Richard L. Horwitz, Esquire
Jeffrey B. Bove, Esquire
Lora A. Brzezynski, Esquire
Tracy Roman
Mark Krietzman, Esquire
Scott R. Miller, Esquire

RLF1-3073502-1