# EXHIBIT 1

# Greenberg
# Traurig

Steve Hassid
Tel. 310.586.7700
Fax 310.586.7800
hassids@gtlaw.com

October 12, 2006

**VIA FACSIMILE & E-MAIL**

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19899
(302) 658-6395 Facsimile

Re:     *L.G. Philips LCD Co., Ltd v. ViewSonic Corp., et al.*
        **Case No. 04-343 JJF**

Dear Mr. Kirk:

        In response to your letter of October 6, 2006 to Special Master Poppiti and resulting Motion to Compel, we write this letter to request that LPL immediately withdraw its letter and Motion to Compel. This letter does not address the substantive issues and misstatements in your October 6, 2006 letter, which will be addressed in a separate letter in short order.

        In support of your letter and Motion to Compel, LPL stated that "[f]ollowing this exchange of correspondence, the parties commenced negotiations on, among many other disputes, the issues raised in LPL's Motion to Compel. These negotiations involving Tatung and LPL occurred during meet-and-confer sessions that lasted for several hours each day on September 7, 8, and 12, 2006."[1] This is simply untrue. The meet-and-confer sessions on September 7, 8, and 12th were to discuss LPL and Viewsonic discovery issues, not Tatung discovery issues. Tatung participated in those sessions primarily as an observer and, more importantly, LPL never raised either the issue of *Tatung* producing samples of its visual display products or *Tatung* agreeing to re-open the written discovery deadline during any of those meet-and-confer sessions. Viewsonic's counsel was present at the meet-and-confer sessions and has confirmed that his understanding of what transpired during those meet-and-confer sessions is consistent with ours. Clearly, Tatung is entitled to its own meet-and-confer on the issues outlined in your letter and Motion to Compel in accordance with LOCAL RULE 7.1.1. Accordingly, for this reason alone, LPL should withdraw its letter and Motion to Compel and allow the parties the opportunity to try and resolve this dispute before needlessly asking Special Master Poppiti to consider the matter.

---

[1] *See* PLAINTIFF L.G. PHILIPS' LCD CO., LTD'S LOCAL RULE 7.1.1. CERTIFICATION CONCERNING MOTION TO COMPEL TATUNG DEFENDANTS TO MAKE SAMPLES OF PRODUCTS AVAILABLE FOR INSPECTION at 3.

RLF1-3069624-1

IRENE
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES
MIAMI
MILAN
LOS ANGELES
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH

www.gtlaw.com

Moreover, as required by the Special Master's Discovery Dispute Procedures dated March 24, 2005, a copy of which is included with this letter, LPL never conferred with counsel for Tatung to first determine whether the issues in dispute could be resolved via the more informal teleconference process as opposed to the more formal motion practice that LPL unilaterally chose to proceed under. This reason alone mandates withdrawal of LPL's letter and Motion to Compel.

As Tatung has repeatedly mentioned, we are more than amenable to meeting-and-conferring regarding these and any other discovery related issues with the intent on coming to a reasonable compromise. Accordingly, please let us know whether LPL will withdraw its October 6, 2006 letter and Motion to Compel by close of business today October 12, 2006.

Sincerely,

Steve P. Hassid

Enclosure

cc:    Scott Miller, Esq. (via email) (w/ encl.)
       Richard Horwitz, Esq. (via email) (w/ encl.)
       Jeffrey Bove, Esq. (via email) (w/ encl.)
       Mark Krietzman, Esq. (via email) (w/ encl.)
       Frank Merideth, Esq. (via email) (w/ encl.)
       Frederick L. Cottrell, III, Esq. (via email) (w/ encl.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

L. G. PHILIPS LCD CO., LTD.,                 :
                                             :        C.A. No. 04-343-JJF
                    Plaintiff,               :
                                             :
        v.                                   :
                                             :
TATUNG COMPANY, et al.,                      :
                                             :
                    Defendants.              :

### SPECIAL MASTER DISCOVERY DISPUTE PROCEDURES

Pursuant to the District Court's Order dated February 25, 2005, designating Vincent J. Poppiti as Special Master in the instant matter, Special Master Poppiti convened a teleconference with counsel for the parties on March 9, 2005 for the purpose *inter alia* of establishing procedures for the presentation of discovery disputes.

Except for discovery disputes governed by the Special Master's Order of March 11, 2005, the following procedures shall govern all further discovery disputes:

1. <u>Special Master</u>. All discovery disputes in this action shall be submitted to the Special Master. Before any such dispute is submitted to the Special Master, it is expected that the parties shall first meet and confer for the purpose of attempting to resolve the dispute. No matter should be submitted to Special Master unless the application of the moving party is accompanied by a certification detailing the dates, time spent, and method(s) of communication in attempting to reach agreement on the subject of the application with the other party or parties and the results, if any, of such communications.

2. <u>Submission of Disputes Via Teleconference and Abbreviated Written Submissions</u>. Whenever a discovery dispute is ripe for submittal to the Special Master, the parties shall first

meet and confer and determine whether the issue can be presented to the Special Master by way of teleconference rather than written submissions. If the parties agree to present the issue by teleconference, the party first raising the dispute shall: (a) contact all parties and determine several mutually agreeable dates and times for the teleconference; and (b) call the Special Master's assistant, Robin Twiss (302) 435-6400, to schedule a time for the teleconference. The Special Master will retain a Court Reporter to transcribe the teleconference. The Special Master will hear argument and may issue an oral ruling on the dispute, or request written submissions and rule as promptly as possible at a later time. If it is important to contact the Special Master before 8:00 a.m. or after 5:00 p.m. during a weekday, or on holidays and weekends, the parties may place a joint telephone conference call directly to the Special Master at (302) 426-1161 (H); (302) 374-5755 (cell) – in such a circumstance, the party first raising the dispute shall retain a Court Reporter to transcribe the teleconference.

Written submittals by the parties shall describe the nature of the dispute, the nature of the relief requested, any supporting case law and a proposed form of order setting forth the requested relief. The submittals shall not exceed three (3) pages, single-spaced, excluding the form of order. Any documents which are the subject of the discovery dispute and/or which will assist the Special Master in deciding the dispute, may be submitted along with the primary submission.

The opening submittal shall be filed with the Special Master at least seven (7) calendar days prior to the date of the Teleconference. A responsive submittal shall be filed two (2) business days after service of the opening submittal. The Special Master may direct the parties to file additional submittals.

3. <u>Submission of Disputes in Writing</u>. If the parties do not agree to a teleconference, the following procedure will be followed. On a document bearing the case caption and a title, the

2

party raising the dispute shall submit to the Special Master a concise statement of the dispute, any supporting case law, a proposed form of order setting forth the requested relief, and a statement whether oral argument is requested. The submission shall not exceed ten (10) pages, double-spaced, excluding the form of order. Any documents which are the subject of the discovery dispute and/or which will assist the Special Master in deciding the dispute, may be submitted along with the primary submission. An appendix containing the complete text of all cited cases and statutes shall accompany the primary submission.

On a document bearing the case caption and a title, the opposing party or parties shall submit a response to the Special Master within five (5) business days from the date the initial submission is served on the opposing party. The response should contain a concise statement of the opposition to the dispute, any supporting case law, a form of order setting forth the proposed disposition of the dispute, and a statement whether oral argument is requested. The response shall not exceed ten (10) pages, double-spaced, excluding the form of order. Any documents which are the subject of the discovery dispute and which will assist the Special Master in deciding the dispute, may be submitted along with the response. An appendix containing the complete text of all cited cases and statutes shall accompany the response.

4. Submittals and documents filed with the Special Master shall be in hard copy, by hand delivery or facsimile.

5. All written submittals and documents shall be filed with the Special Master in unbound format with labeled divider pages (rather than tabs) separating any attached exhibits, to facilitate scanning. Filing and service shall be accomplished not later than 5:00 p.m. eastern time.

3

6. <u>Oral Argument</u>. If, after requested by either party or *sua sponte*, the Special Master concludes that oral argument would be helpful, the Special Master will direct the party raising the dispute to (a) contact all parties and determine several mutually agreeable dates and times for a teleconference or in-person oral argument; and (b) call the Special Master's assistant, Robin Twiss, at (302) 425-6400 to schedule a time for the teleconference or in-person oral argument. The Special Master will retain a Court Reporter to transcribe the teleconference or an in-person oral argument.

7. <u>Decisions of the Special Master</u>. The Special Master's Order, report or recommendation will be issued orally on the record or by written decision.

8. <u>Time to Object or Move</u>. Subsequent to a decision by the Special Master, the parties shall confer about whether the time to object or move pursuant to Federal Rules of Civil Procedure 53(g)(2) should be shortened.

9. <u>Discovery Schedule</u>. The parties shall provide the Special Master with a joint discovery status report on a monthly basis throughout the discovery process. Said report shall be submitted by the first business day of each month. The parties shall also serve on the Special Master all discovery requests, including all notices of depositions.

10. <u>Depositions</u>. It is the Special Master's expectation that discovery disputes arising out of deposition questioning will be handled according to the teleconference procedure of Paragraph 2, except that the Special Master, if available at the time of the deposition, will hear the dispute during the deposition.

11. <u>Privilege Log</u>. It is the Special Master's expectation that that parties will agree on the format for a privilege log in accordance with Fed. R. Civ. P. 26(b)(5) and Delaware District

4

Court case law. To the extent there are disputes as to the format of a privilege log, these disputes should be brought to the Special Master's attention as soon as possible.

Dated: March 24, 2005

Vincent J. Poppiti (DSBA No. 100614)
Special Master

5

# EXHIBIT 2

# Greenberg
# Traurig

Steve P. Hassid
Tel. 310.586.7700
Fax 310.586.7800
Hassids@gtlaw.com

October 16, 2006

**VIA FACSIMILE & E-MAIL**

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:    *L.G. Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*
       Case No. 04-343 JJF

Dear Cormac:

This letter is in response to your letter of October 13, 2006.

First, there is apparently no dispute that you did not follow the Special Master's procedures for properly initiating a discovery dispute hearing. *See* Special Master's March 24, 2005 Order at Paragraph 2. To end this gamesmanship, we will write to the Special Master and request that a substantive response not be due until next week should the meet and confer process, which you have failed to participate in, fail to resolve any issues which were not already mooted by prior agreements between the parties.

Second, you continue your letter writing campaigns to re-write and/or create a spun, flawed and inaccurate record. We again urge you to please pick up the telephone and call us to discuss an issue you may have rather than posture in such letters.

We believe it is not in our client's best interest to waste resources responding to each misstatement in your letters. The record, which is clear, speaks for itself. Accordingly, if at any point Tatung fails to respond to or point out one of your numerous misstatements, it should not be misunderstood as an acquiescence by Tatung to anything you may have pontificated in one of your many letters. Additionally, we have never agreed to and continue to object to your attempts to garner Tatung's acquiescence through your letters. Accordingly, please stop including language in your letters advising us that you will assume that we agree unless we respond. A decision to decline to participate in needless gamesmanship is not acceptance or acquiescence.

Your statement that "LPL tried to negotiate with the Tatung Defendants ("Tatung") concerning their insufficient responses to the Document Requests listed in the motion" is noticeably vague and far from stating, so much as evidencing, that LPL raised the issues of

Cormac T. Connor
October 16, 2006
Page 2

---

Tatung providing sample displays or extending the written discovery deadline, which is the subject of LPL's motion to compel. Despite your vague assertions, the simple fact remains that neither of these issues was brought up during the September 7, 8 and 12, 2006 sessions (or any other meet-and-confer) with Tatung. It may have been discussed with Viewsonic, but Tatung and Viewsonic are not the same. Further, counsel for Viewsonic, who also attended the indicated meet-and-confer sessions, has confirmed this simple fact. This fact alone should cause LPL to withdrawal its Motion to Compel against Tatung immediately.

Your comment that Tatung produced "technical documents and drawings" as part of an agreement between the parties is irrelevant. Tatung preserved its objections to LPL's vastly overbroad requests and the record is clear. Rather than waste time and allow LPL to create further delay, Tatung has provided a massive amount of assembly drawings and work instructions, all subject to its objections, on its products. Tatung maintains its objections and the burden is now on LPL to make a colorable claim of infringement or exclude the products to which it has assembly drawings or work instructions.

As indicated in my letter of October 13, 2006, LPL should withdrawal its motion to compel for these and the other reasons mentioned in that letter. Further, we did not agree to engage in the short-form process delineated in § 2 of the Special Master's procedural order - and we could not agree since it was never discussed with us.

Sincerely,

Steve P. Hassid

cc:     Richard Kirk, Esq. (via email)
        Scott Miller, Esq. (via email)
        Richard Horwitz, Esq. (via email)
        Jeffrey Bove, Esq. (via email)
        Mark Krietzman, Esq. (via email)
        Frank Merideth, Esq. (via email)
        Frederick L. Cottrell, III, Esq. (via email)

# EXHIBIT 3

# Greenberg
# Traurig

Steve Hassid
Tel 310.586.7700
Fax 310.586.7800
hassids@gtlaw.com

October 20, 2006

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
       **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

In accordance with our agreement of October 12, 2006, Tatung Company has in its custody and control the L19FCBT-U12, L22YMTT-U09, V37ALAH-U15 and/or V32NCJI-U34 display products. Please let me know if LPL would like purchase or inspect (depending on its condition and availability) any of these products.

Unfortunately, we are still compiling the corresponding list of display products for Tatung Company of America. We will do everything we can to provide it to you as soon as possible.

Sincerely,

Steve P. Hassid

cc:    Scott Miller (via e-mail)
       Frank Merideth (via e-mail)
       Richard Kirk, Esq. (via email)
       Richard Horwitz, Esq. (via email)
       Jeffrey Bove, Esq. (via email)
       Mark Krietzman, Esq. (via email)
       Frederick L. Cottrell, III, Esq. (via email)

# EXHIBIT 4

# Greenberg Traurig

Mark H. Krietzman
Tel. 310 586.7788
Fax 310 586.7800
KrietzmanM@gtlaw.com

October 6, 2006

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:     *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
        U.S. District Court Case No. 04-343 JJF

Dear Cormac:

In further response to your letter of October 3, 2006, please note that as of this date Tatung has produced its assembly-related drawings and/or work instructions, as promised, which cover 96% of the Tatung Company monitors. Tatung is supplementing its responses to Interrogatories 2 and 3 to include the additional display products - the assembly drawings or work instructions which have already been produced. The productions also cover about 50% of the Tatung Company of America display products. We are in contact with Tatung Company of America and are attempting to ascertain if further assembly drawings or work instructions exist. I have some hope that for newer products we will find documents.

You also indicate that some of the productions are "grainy" photographs that lack clarity or detail. If there are specific documents you are referring to, please provide bates numbers and we will work with you to see if a better copy can be had.

Sincerely,

*Mark Krietzman / vb*

Mark H. Krietzman

cc:     Scott Miller (via e-mail)
        Frank Merideth (via e-mail)

# EXHIBIT 5

# Greenberg
# Traurig

Steve Hassid
Tel. 310.586.7700
Fax 310.586.7800
hassids@gtlaw.com

October 20, 2006

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
       **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

    In accordance with our agreement of October 12, 2006, please note that as of this
date Tatung has produced assembly-related drawings and/or work instructions, as promised,
covering 95+% of the Tatung Company display products. Similarly, as of this assembly-
related drawings and/or work instructions covering 86% of the Tatung Company of America
display products have been located . Of that 86%, per our agreement, we are advising you
that as of today work instruction and/or assembly-related drawings covering about 70% of
the products identified have been produced (this includes today's productions) and the
remaining 16% is being complied now. Because of your complaints and accusations
regarding the alleged poor quality of the Tatung Company of America work instructions and
"grainy" photographs, we have gone the extra mile and produced color PDF files which are
the highest quality available. Providing these high quality images is both costly and very
time consuming. We trust you will have no further complaints regarding the "quality" of the
images and you will respond in kind with LPL productions in the future. Meaning you will
endeavor to provide the highest quality color documents whenever possible.

    Tatung does not have responsive documents for the small percentage of remaining
display products (no more than 5% for Tatung Company and 14% percent for Tatung
Company of America) in its custody or control. Most if not all of the of the remaining
display products not having responsive documents fall into one of two categories. Either
they are products with small production runs (less than 50 total units) or they are third party
products resold by Tatung but which were not Tatung company products and Tatung never
received assembly drawings or work instructions for them. Accordingly, Tatung has
produced or is about to produce every responsive document in its custody or control.

    Additionally, today, Tatung Company and Tatung Company of America also served
its supplemented responses to LPL's Interrogatories 2 and 3 of LPL's second requests. to

Cormac T. Connor
October 20, 2006
Page 2

include the additional display products - the assembly drawings or work instructions which have already been produced.

Sincerely,

Steve P. Hassid

cc:     Scott Miller (via e-mail)
        Frank Merideth (via e-mail)
        Richard Kirk, Esq. (via email)
        Richard Horwitz, Esq. (via email)
        Jeffrey Bove, Esq. (via email)
        Mark Krietzman, Esq. (via email)
        Frederick L. Cottrell, III, Esq. (via email)

# EXHIBIT 6

OCT. 6 2006  4:2 PM                                    NO. 1663   P. 2

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Scott R. Miller
Partner

TEL (213) 787-2510
FAX (213) 687-0498
EMAIL smiller@cblh.com
REPLY TO Los Angeles Office

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2600
FAX (213) 687 0498

The Nemours Building
1007 North Orange Street
PO Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

WEB www.cblh.com

*Via Fax and U.S. Mail*

October 6, 2006

Cormac T. Connor, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006-1108

      Re:  *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
           **USDC Case No. 04-343 JJF**

Dear Cormac:

      I am in receipt of your letter dated October 2, 2006 proposing an extension of the written discovery, from the Court's original scheduling order.

      First, let me correct the record. At no time during our discussion did ViewSonic state a belief that an extension of the written discovery cut-off deadline between the parties would benefit everyone. Instead, what was said was that if after reviewing the matter with Tatung there was some reason to believe that an extension of the written discovery deadline between the parties would benefit each of us, then ViewSonic would entertain the possibility of a stipulation to extend the written discovery cut-off between the parties. After receipt of your letter, we have now had the opportunity to discuss this matter with counsel for Tatung, and I have no reason to believe that an extension of the written discovery cut-off between the parties would benefit ViewSonic. Accordingly, ViewSonic is not prepared to stipulate an extension of this deadline.

      With regard to your proposal concerning third party discovery, please advise whether a cut-off ninety days before trial would require that any motions to compel filed with regard to such discovery also be fully concluded by that date. ViewSonic does not wish to be in a position where the parties are fighting over motions to compel third party discovery within the ninety-day period of time prior to trial. Accordingly, if your proposal is that all third party discovery as well as the hearing on any motions to compel relating to any third party discovery, must be completed and decided ninety days before the trial date, we would be willing to broach this proposal with Tatung to see whether an agreement can

OCT  6. 2006  4:26PM                                              NO 1863   P 3

 CONNOLLY BOVE LODGE & HUTZ LLP
                     ATTORNEYS AT LAW

Cormac T. Connor, Esq.
October 6, 2006
Page 2

be reached in this regard.  I look forward to receiving any clarification of your proposal that you wish to make.

Sincerely,

Scott R. Miller

SRM:ds