# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-343-JJF |
| TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, | |
| Defendants. | |

## PLAINTIFF'S OBJECTIONS AND ANSWERS TO
## DEFENDANT VIEWSONIC CORPORATION'S FIRST SET OF INTERROGATORIES

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), by counsel and pursuant to Fed. R. Civ.

P. 33, objects and responds as follows to Defendant ViewSonic Corporation's ("ViewSonic")

First Set of Interrogatories.

### PRELIMINARY STATEMENT

1.      LPL makes the objections and answers herein (collectively "Answers") based

solely on its current knowledge, understanding, and belief as to the facts and the information

available to it as of the date of the Answers. Additional discovery and investigation may lead to

additions to, changes in, or modifications of these Answers. LPL reserves the right to produce

subsequently discovered information and to introduce such subsequently discovered information

at the time of any hearing or trial in this action.

2.      LPL does not waive any objection made in these Answers, nor any claim of

privilege, whether expressly asserted or not, by providing any information or identifying any

document or thing in the Answers. Any inadvertent disclosure of information or inadvertent

621169v1

identification or production of any document shall not constitute waiver of any applicable privilege.

    3.    LPL incorporates by reference the following General Objections within each of the individual Objections and Answers to these Interrogatories. All Answers are made subject to each and without waiving any of such objections. LPL's specific Objections are not intended to preclude, override, or withdraw any of the General Objections to that Interrogatory.

## GENERAL OBJECTIONS

These general objections apply to each Interrogatory and thus, for convenience, are not repeated after each Interrogatory, but rather are set forth herein and are hereby incorporated into each response. By responding to any particular interrogatory with the phrase "Subject to and without waiving these objections," we are incorporating by reference not only the specific objections but also these general objections.

    1.    LPL objects to each Interrogatory to the extent it seeks information subject to the attorney-client privilege, work product doctrine, and other applicable privileges or immunities from discovery. LPL does not by these responses waive any claim of privilege or work product.

    2.    LPL objects to each Interrogatory to the extent it seeks discovery of trade secrets or other confidential research, development or commercial information and will only produce such information subject to the Protective Order entered in this action. However, to the extent that any Interrogatory calls for the disclosure or production of confidential information of third parties that are in Plaintiff's possession, Plaintiff shall attempt to obtain the consent of such third party prior to disclosure or production. If Plaintiff cannot obtain such consent, Plaintiff will not disclose or produce the information.

    3.    LPL objects to these Interrogatories to the extent that they request information that is: a) not in Plaintiff's possession; b) already in ViewSonic's possession; c) in the public

62116961

2

domain; or d) more easily obtainable from other sources by the exercise of ordinary due diligence as required by any applicable rule, as unduly burdensome, oppressive, and designed to harass.

4.    LPL objects to these Interrogatories as unduly burdensome, oppressive, and designed to harass to the extent that they request information in the possession of others, as such information is beyond the scope of LPL's "custody and control."

5.    LPL objects to these Interrogatories to the extent they request information not relevant to the claims and defenses in this case, or not reasonably calculated to lead to the discovery of admissible evidence.

6.    LPL objects to these Interrogatories to the extent that they ask Plaintiff to identify documents as overly broad and unduly burdensome, in that the interrogatory seeks numerous particulars that can be discerned from the documents themselves.

7.    LPL objects to ViewSonic's "Definitions and Instructions" to the extent that they purport to impose obligations not required under the Federal Rules of Civil Procedure.

8.    LPL objects to Special Definition B of "LPL" because it is overly broad, unduly burdensome and improperly includes a variety of persons and entities over which LPL has no control, and because it includes LPL's "attorneys" as parties, which implicates the attorney-client privilege and work product doctrine.

9.    LPL objects to Special Definition F because it is overly broad and unduly burdensome in that it is not limited to foreign counterparts of the Patents-in-Suit.

10.    LPL objects to Special Definition H because it is overly broad, vague, and ambiguous.  In addition, LPL objects to the extent that the term "prior art" in these

interrogatories is intended to suggest that any such "prior art" exists that would invalidate any claim in any of the Patents-in-Suit.

11.    LPL objects to General Definition I to the extent that it exceeds the requirements of the Federal Rules of Civil Procedure. LPL will supplement its responses if required under Fed. R. Civ. P. 26(e).

12.    LPL objects to General Definitions H, K, L, and M because they impose unreasonable burdens not required by the Federal Rules of Civil Procedure and exceed the scope of proper discovery. LPL will answer the Interrogatories pursuant to Fed. R. Civ. P. 26 and 33.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Set forth all contentions that ViewSonic infringes any patent claim asserted in this litigation, directly, indirectly, literally or under the doctrine of equivalents, including an identification of the following: (a) each allegedly infringing product sold by ViewSonic; (b) the specific sections of 35 U.S.C. section 271 that allegedly gives rise to infringement liability for each allegedly infringing product, (c) the specific claims that LPL contends are infringed with respect to each allegedly infringing product, and (d) on a claim by claim basis, where in each allegedly infringing product the claim elements can be located.

### OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from ViewSonic.

621169v1

4

Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL cannot currently identify all infringing ViewSonic products and ViewSonic has failed to provide discovery sufficient for LPL to make such an assessment. LPL is aware of products that infringe the Patents-in-Suit, including ViewSonic VX900 monitors. ViewSonic's liability, however, includes any type of unlawful conduct related to any infringing products, whether direct infringement, contributory infringement, and/or inducing infringement by others. ViewSonic, for example, has at least sold, offered for sale, and/or imported infringing products such as the VX900 monitor.

With respect to the VX900, the infringed claims include, at least, claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. The following charts show infringement by comparing the claims of the Patents-in-Suit with the ViewSonic VX900 monitor (*see* corresponding Exhibit A, which is attached to these Interrogatory answers):

| Claims in the '641 Patent | ViewSonic VX900 Monitor |
|---|---|
| **35**. A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The ViewSonic VX900 monitor contains a Fujitsu FLC48SC8V flat panel TFT LCD module H. The Fujitsu module H, in conjunction with the first support frame C, is rear mounted within the monitor.<br><br>The monitor is a data processing device as it contains a video processor for processing video data. The monitor is also part of (i.e., a component of) a computer system, where a computer system constitutes a data processing device or system. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | The Fujitsu module H contains a backlight unit and an LCD panel. The LCD panel is a flat display panel that is located immediately in front of the backlight unit.<br><br>The Fujitsu module H and, therefore, the backlight unit in the Fujitsu module H, are supported by the first |

621169v1

| Claims in the '641 Patent | ViewSonic VX900 Monitor |
|---|---|
| | support frame C. The first support frame C has screw holes D through its rear surface. Each of the two screw holes D through the rear surface of the support frame C constitutes a fastening part, or at least a portion of a fastening part at the rear surface of a first frame. |
| a second frame; | The ViewSonic monitor has a front or second support frame K. |
| Wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | Because the flat LCD panel is contained in the Fujitsu module H, the flat LCD panel must, therefore, be positioned between the first support frame C and the second support frame K.\n\nThe two screw holes D through the rear surface of the first support frame C, together with the two corresponding screws, fix the first support frame C to the rear housing A.\n\nThe rear housing A protects the monitor, and in particular, the components located behind or to the rear of the first support frame C, including the data processing circuitry. As the ViewSonic monitor is a data processing device, or a component of a computer (i.e., a data processing device), the housing associated with the monitor constitutes a housing of a data processing device. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | Each of the two screw holes D through the rear surface of the first support frame C constitutes a fastening hole. |
| 55. A rear mountable flat panel display device comprising: | The ViewSonic VX900 monitor contains a Fujitsu FLC48SC8V flat panel TFT LCD module H. The Fujitsu module H, in conjunction with the first support frame C, is rear mounted within the monitor. Thus, the ViewSonic monitor contains a rear mountable flat panel display device. |
| a first frame having a fastening part at a rear surface of the first frame; | The first support frame C has two screw holes D through its rear surface. Each of the two screw holes D constitutes a fastening part, or at least a portion of a fastening part at the rear surface of a first frame. |
| a second frame; and | The ViewSonic monitor employs a front frame K located at the front of the Fujitsu module H. This front frame K constitutes a second support frame. |
| a flat display panel between the first | The Fujitsu module H contains a flat LCD panel. |

| Claims in the '641 Patent | ViewSonic VX900 Monitor |
|---|---|
| and second frames; | Because the flat LCD panel is contained in the Fujitsu module H, the flat LCD panel must be positioned between the first support frame C and the second support frame K. |
| Wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The two screw holes D, together with the two corresponding screws, fix the first support frame C to the rear housing A.

The rear housing A protects the monitor, and in particular, the components located behind or to the rear of the first support frame C, including the data processing circuitry. As the ViewSonic monitor is a data processing device, or a component of a computer (i.e., a data processing device), the housing associated with the monitor constitutes a housing of a data processing device. |

| Claims in the '718 Patent | ViewSonic VX900 Monitor |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The ViewSonic VX900 monitor includes a Fujitsu FLC48SC8V flat panel TFT LCD module H, a first support frame C and a rear housing A. The Fujitsu module H and the support frame C are rear mounted to the rear housing A. The ViewSonic monitor was therefore assembled in accordance with a method of rear mounting a flat panel display device to a housing. |
| Placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The Fujitsu module H contains a flat LCD panel and a backlight unit. It is understood that the LCD panel is in front of (i.e., on top of) the backlight unit. It can thus be said that the Fujitsu module H is assembled by placing a flat LCD panel on top of a backlight unit.

Just behind and providing support for the Fujitsu module H is the first support frame C. The first support frame C has two fastening elements that at least partially involve the two screw holes D. The screw holes D are used in fastening the first frame C to the rear housing A.

The screw holes D go through the rear surface of the first support frame C and, therefore, it can be said that they are located on a rear surface of the first support frame C opposite the top surfaced (i.e., the front |

| Claims in the '718 Patent | ViewSonic VX900 Monitor |
|---|---|
| | surface) of the backlight unit. |
| Placing a second frame on the flat display panel; and | The ViewSonic monitor includes a front or second support frame K. It is located at the front of the Fujitsu module H. It can therefore be said that the second frame K is placed on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | Because the flat LCD panel is contained in the Fujitsu module H, the flat LCD panel must be positioned between the first support frame C and the second support frame K. Thus, it can be said that the ViewSonic monitor was assembled in accordance with a method that involved fixing the flat LCD panel, contained in the Fujitsu module H, between a first support frame C and a second support frame K. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | Each of the two screw holes D are fastening holes that constitute a fastening element, or at least a portion of a fastening element. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | Each of the two screw holes D constitutes a fastening element, or at least a portion of a fastening element. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The ViewSonic VX900 monitor includes a Fujitsu FLC48SC8V flat panel TFT LCD module H, a first support frame C and a rear housing A. The Fujitsu module H and the support frame C are rear mounted to the rear housing A. Accordingly, the ViewSonic monitor was assembled in accordance with a rear mountable method of assembling a LCD device. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The Fujitsu module H and the first support frame C are located just in front of the rear housing A. Therefore, the Fujitsu module H and the first support frame C are arranged on an inner surface of the rear housing A, where the rear housing A constitutes a display case. |
| attaching the LCD device to the display case from the back of the display case. | The Fujitsu module H and the first support frame C are attached to the rear housing A from the back of the rear housing A, in that the Fujitsu module H is supported by the first frame C, which is rear mounted to the rear housing A by the two screws passing through the rear surface of the rear housing A and through the screw holes D at the rear surface of the first support frame C. |

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for

example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 2:

For each allegedly infringing ViewSonic product identified by you in response to Interrogatory No. 1, identify the circumstances under which LPL first considered that the ViewSonic product might infringe any claim of one or more of the Patents-in Suit, including the dates LPL first learned of the product, any efforts to verify whether or not the product infringes, the names of LPL employees who learned of or investigated the alleged infringement, and the date, place and reasons that any of these events occurred.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "first considered" and "first learned" because, for example, it cannot be determined when each and every employee of LPL first became aware of and/or purchased for any purpose a ViewSonic VX900 monitor. Subject to and without waiving these objections and the general objections, LPL states as follows:

As stated in response to Interrogatory No. 1, LPL cannot currently identify all ViewSonic products that infringe, and LPL is seeking discovery from ViewSonic relevant to this issue. LPL first considered that the ViewSonic VX900 monitor infringed in December 2003, based on analysis by counsel, which is protected by attorney-client privilege and the work product doctrine. LPL retained an expert, Mr. William Bohannon, to analyze the ViewSonic VX900 for infringement. Mr. Bohannon first analyzed a ViewSonic VX900 in January 2004. Mr. Bohannon

621169v.1

9

continued to analyze the ViewSonic VX900 and he completed his declaration in May 2004. Also in May 2004, Mr. Bohannon analyzed a second ViewSonic VX900 monitor before LPL filed its complaint in this action. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 3:**

Identify each and every ViewSonic product that you had in your possession, custody, or control when you filed this lawsuit against ViewSonic.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. For example, the scope of LPL's counsel's work in preparing for this case, including any product purchases and/or analysis, is not discoverable. LPL further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because it does not have any limit as to initial time frame, purpose, or context concerning any possession, custody, or control of ViewSonic products. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL, through its counsel, had purchased ViewSonic VX900 monitors before the filing of LPL's complaint in this case. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 4:**

Identify each and every ViewSonic product that you currently have in your possession, custody, or control.

621169v1

10

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. For example, the scope of LPL's counsel's work in preparing for this case, including any product purchases and/or analysis, is not discoverable. LPL further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because it does not have any limit as to initial time frame, purpose, or context concerning any possession, custody, or control of ViewSonic products. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL, through its counsel, has possession of ViewSonic VX900 monitors. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 5:

Identify each third party and their respective product(s) that LPL has identified as an unlicensed user and/or infringer of one or more of the Patents-in-Suit.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL's positions concerning any third parties and third party products in anticipation of litigation, and or any related attorney work or communication, for example, are not relevant or discoverable. LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit negotiations and settlement discussions are not reasonably calculated to lead to discovery of admissible evidence and are not discoverable. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL has identified Fujitsu and Sharp Corporation (and any affiliated entities, distributors, and resellers that import, offer to sell, or sell their infringing products) as third parties that may infringe the Patents-in-Suit. LPL reserves the right to assert infringement claims against additional defendants in this or other cases. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 6:**

State all material facts relating to your contention that you are entitled to damages from ViewSonic for the alleged infringement of the Patents-in-Suit, including identifying the first date upon which you allege infringement damages against ViewSonic began to accrue; identifying the amount of damages that you contend you are entitled to receive from ViewSonic, including a specific identification of the amount of reasonable royalties sought; stating the bases for LPL's calculation of damages; and identifying by production number of all documents that support or refute any of LPL's contentions concerning damages.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. Also, LPL objects to this Interrogatory as seeking information on damages that is premature and unavailable, including because LPL is awaiting discovery from ViewSonic. LPL also objects to the term "accrue" to the extent this Interrogatory calls for a legal conclusion. Further, LPL objects to the extent that ViewSonic seeks identification of documents produced by LPL, which ViewSonic can just as easily identify by its own review. Subject to and without waiving these objections and the general objections, LPL states as follows:

621169v1

12

Pursuant to 35 U.S.C. § 284, LPL seeks all damages and relief to which it is entitled, including, but not limited to, compensatory damages, enhanced damages, and a reasonable royalty sufficient to compensate LPL for ViewSonic's infringement, together with interest and costs, and attorneys' fees. LPL is aware of sales of infringing products imported, made, sold, and offered for sale by or for ViewSonic, and/or by others whose infringing conduct was induced or contributed to by ViewSonic, for all of which ViewSonic is liable. LPL does not yet know all infringing products, the full scope of infringing conduct, or the earliest dates on which ViewSonic infringed the Patents-in-Suit. Further, LPL cannot currently state the total amount of damages and other sums for which ViewSonic is liable. LPL will provide more detailed information regarding infringing products and damages at the appropriate time and based on further discovery, possibly including, for example, in expert reports. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 7:

If you contend that there is a nexus between the claimed inventions of either or both of the Patents-in-Suit and the commercial success of any ViewSonic product that incorporates an LCD display that allegedly infringes that patent, identify on a claim-by-claim basis all factual bases for that contention and all documents that support that contention.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL is awaiting discovery from ViewSonic and reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 8:**

State all material facts that support your contention that ViewSonic's alleged infringement has been willful.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as premature and seeking information in ViewSonic's possession and that is the subject of LPL's discovery requests. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

ViewSonic is and/or has infringed the Patents-in-Suit, by, for example, importing, offering, marketing, and/or selling products known to infringe the Patents-in-Suit, and continuing to do so, including after LPL filed this lawsuit. ViewSonic's conduct, in disregard of LPL's allegations and patent rights, is willful, and the totality of ViewSonic's conduct, which is the subject of ongoing investigation and discovery, warrants enhanced damages, attorneys' fees, and other appropriate relief. LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 9:**

State in detail the circumstances concerning the conception and reduction to practice for the inventions in the Patents-in-Suit, including without limitation the date(s), location(s), facts regarding, and each individual involved in the conception and reduction to practice and state all facts which support any conclusions.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as

overly broad, unduly burdensome, and ambiguous, including, for example, in seeking "all facts which support any conclusions." LPL further objects to this Interrogatory as calling for a legal conclusion concerning what constitutes conception and reduction to practice. Subject to and without waiving these objections and the general objections, LPL states as follows:

The inventors, Jong Hwan Kim and Young Woo Cho, conceived of the rear mount invention(s) in Korea in or about early October 1998. In October 1998, Mr. Kim and Mr. Cho discussed the invention(s), worked on drawings related to the invention(s), and prepared invention forms. On October 23 and 27, 1998, two Korean patent applications were filed. The rear mount invention(s) were at least constructively reduced to practice on April 2, 1999, when a patent application was filed in the United States regarding the rear mount invention(s). LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 10:**

Identify all Prior Art and all alleged Prior Art known to LPL that is relevant, or has been asserted by anyone (other than the parties to this litigation) to be relevant, to one or more of the Patents-in-Suit, and separately state as to each item of Prior Art the date that LPL became aware thereof and the circumstances surrounding that awareness including an identification of the person or entity asserting the relevance of such Prior Art.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory on the ground that the phrase "is relevant, or has been asserted by anyone (other than the parties to this litigation) to be relevant" is vague and ambiguous. LPL further objects to this Interrogatory as overly broad and unduly burdensome to the extent that it calls for a legal conclusion

621169v1

15

concerning what constitutes or may constitute alleged "prior art" and what "prior art" is or may

be "relevant." Subject to and without waiving these objections and the general objections, LPL

states as follows:

LPL is not aware of any alleged prior art regarding the Patents-in-Suit that LPL received

from a third party after the Patents-in-Suit issued, other than alleged prior art identified in the

U.K. case regarding LPL's foreign counterpart patent to the Patents-in-Suit. LPL cannot state

the specific date that it first learned of each alleged prior art item, but can state for most items a

date by which it was known to LPL. Below is a list of such documents and products known to

LPL as other art, dates when LPL had knowledge, and the source or circumstances regarding

LPL's knowledge, to the extent currently known:

| Description | Date | Source / Circumstances |
| --- | --- | --- |
| KR 006055 | December 5, 2000 | Filed in IDS |
| KR 027408 | December 5, 2000 | Filed in IDS |
| KR 026831 | December 5, 2000 | Filed in IDS |
| US 5,268,816 | October 10, 2000 | USPTO |
| US 5,835,139 | October 10, 2000 | USPTO |
| US 5,423,605 | October 10, 2000 | USPTO |
| US 5,946,061 | October 10, 2000 | USPTO |
| GB 170035A | May 31, 2000 | UK Patent Office |
| GB 2319110 | May 31, 2000 | UK Patent Office |
| KR 96-11617 | January 25, 2001 | Korean Patent Office |
| US 5,379,182 | July 3, 2002 | Filed in IDS |
| GB 2319110 | May 31, 2000 | UK Patent Office |
| JP-60-91386 | February 13, 2002 | Japanese Patent Office |
| JP 11-85319 | February 13, 2002 | Japanese Patent Office |
| JP 11-6998 | February 13, 2002 | Japanese Patent Office |
| JP 10-133181 | February 13, 2002 | Japanese Patent Office |
| JP 4-134900 | February 13, 2002 | Japanese Patent Office |
| JP 8-76886 | February 13, 2002 | Japanese Patent Office |
| JP 9-91059 | February 13, 2002 | Japanese Patent Office |
| JP 8-28545 | February 13, 2002 | Japanese Patent Office |
| JP 8-211964 | February 13, 2002 | Japanese Patent Office |

| Vtech Powerpad | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
|---|---|---|
| IBM 39H7116 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 5,001,468 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 5,805,117 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 4,614,406 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 5,363,276 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 5,128,662 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 5,119,204 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| US 5,570,267 | August 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| JP 09-190156 | May 2005 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| JP 09-171358 | May 2005 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |

| PixelVision SGT15P | May 2005 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
|---|---|---|
| Tatung L4KAS | May 2005 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| IBM 9516 | October 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| ViewSonic VP140 | October 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| ViewSonic VPA138 | October 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |
| "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE - The International Society for Optical Engineering | October 2004 | Foreign litigation involving Tatung UK Limited, Viewsonic Europe Limited, Number One Services Limited |

None of the above documents or items, either standing alone or in combination, teaches or suggests each and every element of any asserted claim in the '641 patent or the '718 patent.

LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 11:**

Identify each document, search, investigation, communication or opinion (written or oral) made by LPL, or on LPL's behalf, or by any third party, concerning the validity or invalidity, enforceability or unenforceability, infringement or non-infringement, or scope of any of the claims, or Prior Art concerning the subject matter of one or more of the Patents-in-Suit, including a description of each person(s) who participated in those acts.

621169v1

18

## OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit negotiations and settlement discussions are not reasonably calculated to lead to discovery of admissible evidence and are not discoverable. LPL also objects to this Interrogatory on the ground that it is overbroad and unduly burdensome because, among other reasons, it seeks "each document, search, investigation, communication or opinion (written or oral)." To the extent this Interrogatory seeks expert discovery, LPL further objects to this Interrogatory as premature. Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

LPL's representatives have had confidential meetings with representatives of Fujitsu, and representatives of Sharp Corporation, regarding infringement of the Patents-in-Suit. During their meetings, LPL's representatives made an electronic presentation. LPL does not have any written communications or materials from Fujitsu or Sharp, nor did they cite any alleged prior art. LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 12:

For each reference listed below that you contend does not qualify as prior art under any provision of 35 U.S.C. §§ 102 and/or 103, set forth in detail the entire basis for your contention as to each reference, including stating all relevant facts, identifying all documents on which you

rely to support your contention, and identifying all persons with information or knowledge relevant to your contention, summarizing each person's knowledge:

    (a)    PixelVision SGT15P

    (b)    IBM 9052

    (c)    IBM 9516

    (d)    Tatung L4KAS

    (e)    Hewlett-Packard S1010 and/or S1010a

    (f)    ViewSonic VP140

    (g)    ViewSonic VPA138

    (h)    "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE – The International Society for Optical Engineering

    (i)    U.S. Pat. No. 5,041,965

    (j)    U.S. Pat. No. 5, 119,204

    (k)    U.S. Pat. No. 5,570,267

    (l)    U.S. Pat. No. 5,831,816

    (m)    U.S. Pat. No. 6,068,227

    (n)    JP 09-190156

    (o)    JP 09-171358

**OBJECTIONS AND ANSWER:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Further, LPL objects to this Interrogatory as calling for a legal conclusion concerning the interpretation and

621169v1

20

application of 35 U.S.C. §§ 102 and/or 103. LPL also objects to this Interrogatory as overly broad, unduly burdensome, and ambiguous, including because it seeks the "entire basis" regarding numerous issues and requests the identification of "all documents" and "all persons with information or knowledge." LPL further objects to this Interrogatory as premature because ViewSonic has not provided a basis to qualify these alleged references as "prior art" and the Patents-in-Suit are presumed valid. Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

The References Do Not Anticipate Any Of The Claims

    (a)    PixelVision SGT15P

The PixelVision SGT15P fails to anticipate claim 35 of the '641 patent because the device of the PixelVision SGT15P fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the PixelVision SGT15P fails to anticipate claim 35 of the '641 patent, the PixelVision SGT15P also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the device of the PixelVision SGT15P fails to teach that the "fastening part on the first frame includes a fastening hole."

The PixelVision SGT15P also fails to anticipate claim 55 of the '641 patent because the PixelVision SGT15P fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The PixelVision SGT15P also fails to anticipate claim 33 of the '718 patent because the PixelVision SGT15P fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the PixelVision SGT15P fails to anticipate claim 33 of the '718 patent, the PixelVision SGT15P also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, the PixelVision SGT15P fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The PixelVision SGT15P also fails to anticipate claim 40 of the '718 patent because the PixelVision fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

(b)     IBM 9052

Currently, LPL is unfamiliar with this product, and, therefore, unable to respond. LPL reserves the right to supplement this response.

(c)     IBM 9516

The IBM 9516 fails to anticipate claim 35 of the '641 patent because the device of the IBM 9516 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first

frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the IBM 9516 fails to anticipate claim 35 of the '641 patent, the IBM 9516 also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35.  Moreover, the IBM 9516 fails to teach that the "fastening part on the first frame includes a fastening hole."

The IBM 9516 also fails to anticipate claim 55 of the '641 patent because the IBM 9516 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The IBM 9516 also fails to anticipate claim 33 of the '718 patent because the IBM 9516 fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the IBM 9516 fails to anticipate claim 33 of the '718 patent, the IBM 9516 also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33.  Moreover, the IBM 9516 fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The IBM 9516 also fails to anticipate claim 40 of the '718 patent because the IBM 9516 fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid

crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

    (d)    Tatung L4KAS

The Tatung L4KAS fails to anticipate claim 35 of the '641 patent because the Tatung L4KAS fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame…capable of being fixed to a housing…through the fastening part at the rear surface of the first frame.

Because the Tatung L4KAS fails to anticipate claim 35 of the '641 patent, the Tatung L4KAS also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the Tatung L4KAS fails to teach that the "fastening part on the first frame includes a fastening hole."

The Tatung L4KAS also fails to anticipate claim 55 of the '641 patent because the Tatung L4KAS fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame…capable of being fixed to a housing…through the fastening part at the rear surface of the first frame.

The Tatung L4KAS also fails to anticipate claim 33 of the '718 patent because the Tatung L4KAS fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the Tatung L4KAS fails to anticipate claim 33 of the '718 patent, the Tatung L4KAS also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, as to claim 34, the Tatung L4KAS fails to teach that the "fastening element on the first frame includes a fastening hole."

The Tatung L4KAS also fails to anticipate claim 40 of the '718 patent because the Tatung L4KAS fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

     (e)    Hewlett-Packard S1010 and/or S101a

Currently, LPL is unfamiliar with this product, and, therefore, unable to respond. LPL reserves the right to supplement this response.

     (f)    ViewSonic VP140

The VP140 fails to anticipate claim 35 of the '641 patent because the VP140 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the VP140 fails to anticipate claim 35 of the '641 patent, the VP140 also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the VP140 fails to teach that the "fastening part on the first frame includes a fastening hole."

The VP140 also fails to anticipate claim 55 of the '641 patent because the VP140 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first

621169v1

25

frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable

of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The VP140 also fails to anticipate claim 33 of the '718 patent because the VP140 fails to

teach at least the following limitations: 1) a method of assembling a rear mountable flat panel

display device; 2) a first frame having a fastening element for fastening the first frame to the

housing; and 3) said fastening element being located on a rear surface opposite the top surface of

the backlight unit where the flat display panel is placed.

Because the VP140 fails to anticipate claim 33 of the '718 patent, the VP140 also fails to

anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims

that depend on claim 33.  Moreover, the VP140 fails to teach that the fastening element on the

first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The VP140 also fails to anticipate claim 40 of the '718 patent because the VP140 fails to

teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal

display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3)

attaching the LCD device to the display case from the back of the display case.

     (g)    ViewSonic VPA138

The VPA138 fails to anticipate claim 35 of the '641 patent because the VPA138 fails to

teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first

frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable

of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the VPA138 fails to anticipate claim 35 of the '641 patent, the VPA138 also

fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends

on claim 35. Moreover, the VPA138 fails to teach that the "fastening part on the first frame includes a fastening hole."

The VPA138 also fails to anticipate claim 55 of the '641 patent because the VPA138 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame…capable of being fixed to a housing…through the fastening part at the rear surface of the first frame.

The VPA138 also fails to anticipate claim 33 of the '718 patent because the VPA138 fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the VPA138 fails to anticipate claim 33 of the '718 patent, the VPA138 also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, the VPA138 fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The VPA138 also fails to anticipate claim 40 of the '718 patent because the VPA138 fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

(h)    "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE -- The International Society for Optical Engineering ("Cockpit Display")

The Cockpit Display fails to anticipate claim 35 of the '641 patent because the Cockpit Display fails to teach at least the following limitations: 1) a rear mountable flat panel display

device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the Cockpit Display fails to anticipate claim 35 of the '641 patent, the Cockpit Display also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35.

The Cockpit Display also fails to anticipate claim 55 of the '641 patent because the Cockpit Display fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The Cockpit Display also fails to anticipate claim 33 of the '718 patent because the Cockpit Display fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the Cockpit Display fails to anticipate claim 33 of the '718 patent, the Cockpit Display also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33.

The Cockpit Display also fails to anticipate claim 40 of the '718 patent because the Cockpit Display fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner

surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

      (i)    U.S. Patent No. 5,041,965 ("the Chen patent")

The Chen patent fails to anticipate claim 35 of the '641 patent because the device of the Chen patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a backlight unit; 3) a first frame having a fastening part at a rear surface of the first frame; 4) a flat display panel adjacent to the backlight unit; and 5) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the Chen patent fails to anticipate claim 35 of the '641 patent, the Chen patent also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the device of the Chen patent fails to teach that the "fastening part on the first frame includes a fastening hole."

The Chen patent also fails to anticipate claim 55 of the '641 patent because the Chen patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The Chen patent also fails to anticipate claim 33 of the '718 patent because the Chen patent fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the Chen patent fails to anticipate claim 33 of the '718 patent, the Chen patent also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, the Chen patent fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The Chen patent also fails to anticipate claim 40 of the '718 patent because the Chen patent fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

  (j)  U.S. Patent No. 5,119,204 ("the Hashimoto patent")

The Hashimoto patent fails to anticipate claim 35 of the '641 patent because the device of the Hashimoto patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the Hashimoto patent fails to anticipate claim 35 of the '641 patent, the Hashimoto patent also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the device of the Hashimoto patent fails to teach that the "fastening part on the first frame includes a fastening hole."

The Hashimoto patent also fails to anticipate claim 55 of the '641 patent because the Hashimoto patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3)

the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The Hashimoto patent also fails to anticipate claim 33 of the '718 patent because the Hashimoto patent fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the Hashimoto patent fails to anticipate claim 33 of the '718 patent, the Hashimoto patent also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, the Hashimoto patent fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The Hashimoto patent also fails to anticipate claim 40 of the '718 patent because the Hashimoto patent fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

  (k) U.S. Patent No. 5,572,267 ("the Ma patent")

The Ma patent fails to anticipate claim 35 of the '641 patent because the Ma patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a backlight unit; 3) a first frame having a fastening part at a rear surface of the first frame; 4) a flat display panel adjacent to the backlight unit; and 5) the first frame...capable of being fixed to a

housing of a data processing device through the fastening part at the rear surface of the first frame.

Because the Ma patent fails to anticipate claim 35 of the '641 patent, the Ma patent also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the device of the Ma patent fails to teach that the "fastening part on the first frame includes a fastening hole."

The Ma patent also fails to anticipate claim 55 of the '641 patent because the Ma patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame.

The Ma patent also fails to anticipate claim 33 of the '718 patent because the Ma patent fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the Ma patent fails to anticipate claim 33 of the '718 patent, the Ma patent also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, the Ma patent fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The Ma patent also fails to anticipate claim 40 of the '718 patent because the Ma patent fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid

crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

        (l)     U.S. Patent No. 5,831,816 ("the Johns patent")

The Johns patent fails to anticipate claim 35 of the '641 patent because the device of the Johns patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a backlight unit; 3) a first frame having a fastening part at a rear surface of the first frame; 4) a flat display panel adjacent to the backlight unit; and 5) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because the Johns patent fails to anticipate claim 35 of the '641 patent, the Johns patent also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the device of the Johns patent fails to teach that the "fastening part on the first frame includes a fastening hole."

The Johns patent also fails to anticipate claim 55 of the '641 patent because the Johns patent fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

The Johns patent also fails to anticipate claim 33 of the '718 patent because the Johns patent fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because the Johns patent fails to anticipate claim 33 of the '718 patent, the Johns patent also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, the Johns patent fails to teach that the fastening element on the first frame includes a "fastening hole" (claim 34) and/or a "screw hole" (claim 35).

The Johns patent also fails to anticipate claim 40 of the '718 patent because the Johns patent fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

        (m)    U.S. Patent No. 6,068,227 ("the Morgan patent")

The Morgan patent reflects the same mounting as the PixelVision SGT15P monitor. Therefore, the statements above regarding the PixelVision SGT15P also apply to the Morgan patent and show lack of anticipation regarding claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent.

        (n)    JP 09-190156 ("Fujitsu '156")

Fujitsu '156 fails to anticipate claim 35 of the '641 patent because the device of Fujitsu '156 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a backlight unit; 3) a first frame having a fastening part at a rear surface of the first frame; 4) a flat display panel adjacent to the backlight unit; and 5) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because Fujitsu '156 fails to anticipate claim 35 of the '641 patent, Fujitsu '156 also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on

621169v1

34

claim 35. Moreover, the device of Fujitsu '156 fails to teach that the "fastening part on the first frame includes a fastening hole."

Fujitsu '156 also fails to anticipate claim 55 of the '641 patent because Fujitsu '156 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Fujitsu '156 also fails to anticipate claim 33 of the '718 patent because Fujitsu '156 fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because Fujitsu '156 fails to anticipate claim 33 of the '718 patent, Fujitsu '156 also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, as to claim 34, Fujitsu '156 fails to teach that the "fastening element on the first frame includes a fastening hole."

Fujitsu '156 also fails to anticipate claim 40 of the '718 patent because Fujitsu '156 fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

(o)    JP 09-171358 ("Fujitsu '358")

Fujitsu '358 fails to anticipate claim 35 of the '641 patent because the device of Fujitsu '358 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a backlight unit; 3) a first frame having a fastening part at a rear surface of the first

frame; 4) a flat display panel adjacent to the backlight unit; and 5) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Because Fujitsu '358 fails to anticipate claim 35 of the '641 patent, Fujitsu '358 also fails to anticipate claim 36 of the '641 patent because claim 36 is a dependent claim that depends on claim 35. Moreover, the device of Fujitsu '358 fails to teach that the "fastening part on the first frame includes a fastening hole."

Fujitsu '358 also fails to anticipate claim 55 of the '641 patent because Fujitsu '358 fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

Fujitsu '358 also fails to anticipate claim 33 of the '718 patent because Fujitsu '358 fails to teach at least the following limitations: 1) a method of assembling a rear mountable flat panel display device; 2) a first frame having a fastening element for fastening the first frame to the housing; and 3) said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.

Because Fujitsu '358 fails to anticipate claim 33 of the '718 patent, Fujitsu '358 also fails to anticipate claims 34 and 35 of the '718 patent because claims 34 and 35 are dependent claims that depend on claim 33. Moreover, as to claim 34, Fujitsu '358 fails to teach that the "fastening element on the first frame includes a fastening hole."

Fujitsu '358 also fails to anticipate claim 40 of the '718 patent because Fujitsu '358 fails to teach at least the following limitations: 1) a rear mountable method of assembling a liquid crystal display (LCD) device; 2) arranging the LCD device on an inner surface of a display case; and 3) attaching the LCD device to the display case from the back of the display case.

621169v1

36

## The References Do Not Render Obvious Any Of The Claims

As stated above, each of the cited references fails to disclose one or more claim elements or features concerning claims 35, 36, and 55 of the '641 patent, and claims 33, 34, 35, and 40 of the '718 patent. Further, no combination of any of the above references teaches all of the required elements of any of the claims. This Interrogatory does not argue any specific combination of references. Until ViewSonic asserts an argument to combine specific references, LPL is unable to respond further, and LPL reserves the right to dispute any and all such issues raised by ViewSonic.

LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise. LPL also reserves the right to offer other and additional evidence, including, but not limited to, expert testimony, to respond to any prior art and invalidity defenses alleged by Defendants.

### INTERROGATORY NO. 13:

Identify all persons who presently hold, or at any time in the past have held, any interest, including, but not limited to, a full or partial ownership or equity interest, a security interest, other collateral interest, contingency interest or license rights, in one or more of the Patents-in-Suit and/or any patent from which the Patents-in-Suit claim priority, including their names and addresses, their relationship with LPL, a detailed explanation of their interests held (past, present and future), when that person(s) first obtained an interest and when that person(s) gave up their interest if it has been given up.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the

621169v1

37

discovery of admissible evidence, in that LPL's ownership and standing is not in contention, and, moreover, foreign patent ownership and interests are not relevant. Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

On or about February 22, 1999, the inventors, Jong Hwan Kim and Young Woo Cho, assigned their rights and interests in the invention covered by the '641 patent, and any related reissue, divisional, and continuing U.S. and non-U.S. applications and/or patents, to LG LCD Inc., now known as LG.Philips LCD Co., Ltd. LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 14:

Describe the circumstances under which LPL obtained title to the Patents-in-Suit and/or any patents from which the Patents-in-Suit claim priority, including without limitation the terms of the transfer of title, identify all documents concerning the transfer of title and any transactions related thereto and identify the three persons most knowledgeable about the transfer of title and any related transactions.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because LPL's ownership and standing is not in contention, and, moreover, foreign patent ownership and interest are not relevant. Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

621169v1

38

On or about February 22, 1999, the inventors, Jong Hwan Kim and Young Woo Cho, assigned their rights and interests in the invention covered by the '641 patent, and any related reissue, divisional, and continuing U.S. and non-U.S. applications and/or patents, to LG LCD Inc., now known as LG.Philips LCD Co., Ltd. Persons with knowledge include Jong Hwan Kim and Young Woo Cho. LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 15:

Identify, by serial or application number, title, inventor(s) filing date, issue date (if applicable) and country, all pending, issued or abandoned patent applications, both United States and foreign, which are continuations, divisional applications, continuations-in-part, reissues or reexaminations of, or that otherwise resulted from, claim any benefit of priority based on, or describe subject matter related to any of the patent applications that issued as any of the Patents-in-Suit, and identity all persons having knowledge thereof.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, in seeking the identity of "all persons" with "knowledge thereof". Subject to and without waiving those objections, and based on LPL's current knowledge, LPL states as follows:

| Patent / Application Number | Filing Date | Issued / Published | Country |
|---|---|---|---|
| 6,501,641 | April 2, 1999 | December 31, 2002 | US |
| 6,498,718 | November 22, 1999 | December 24, 2002 | US |
| 10/294,548 | November 15, 2002 | April 10, 2003 (publication, abandoned) | US |
| 10/787,933 | February 27, 2004 | August 26, 2004 | US |

| | | (publication) | |
|---|---|---|---|
| 11/096,080 | April 1, 2005 | September 8, 2005 (publication) | US |
| 11/096,079 | April 1, 2005 | August 4, 2005 (publication) | US |
| 10/294/753 | November 15, 2002 | April 10, 2003 (publication, abandoned) | US |
| 10/799,662 | March 15, 2004 | N/A | US |
| 11-298916 | October 20, 1999 | May 12, 2000 | Japan |
| 3749516 | December 20, 2002 | December 9, 2005 | Japan |
| 0303067 | October 23, 1998 | July 9, 2001 | Korea |
| 0424936 | October 27, 1998 | March 17, 2004 | Korea |
| 2346464 | October 22, 1999 | January 3, 2001 | Great Britain |

LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 16:**

To the extent that any of your responses to any of ViewSonic's Requests for Admissions was anything other than an unqualified admission, list all material facts on which you based any part of your response that was not an unqualified admission, identify all documents memorializing each such fact, and identify all persons with knowledge of each such fact.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. LPL further objects to this Interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects. Also, LPL objects that this is an improper interrogatory, not directed to a single subject, and addressing categorically an entire set of Requests for Admissions (many of which, in turn, are objectionable

for the reasons stated in LPL's responses to those Requests for Admissions). LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

## VERIFICATION

The facts stated in the foregoing interrogatory answers are true to the best of my

information, knowledge, and belief.

_General Manager_ (Title)

LG.Philips LCD Co., Ltd.

District of Columbia.

Subscribed and sworn to before me this 22nd day of March, 2006.

Notary Public

ROSALIND CASSELL
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2007

March 24, 2006

THE BAYARD FIRM

/s/ Richard D. Kirk
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-2306
(302) 655-5000
rkirk@bayardfirm.com
Attorneys For Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Lora Brzezynski
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

6211691

# EXHIBIT A









