IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, <br><br> Defendants/Counterclaim Plaintiffs. | Civil Action No. 04-343 (JJF) |

**PLAINTIFF'S OBJECTIONS TO PORTIONS OF SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON MOTION OF DEFENDANT VIEWSONIC CORPORATION TO COMPEL DISCOVERY**

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), through counsel, submits its Objections to the portions of the Special Master's Report and Recommendations on Motion of Defendant ViewSonic Corporation to Compel Discovery (the "Report") that pertain to Defendant ViewSonic Corporation's ("ViewSonic") Requests for Admission 17 and 23. LPL respectfully requests that the Court sustain LPL's Objections and that the Court disapprove of the Special Master's Report as it pertains to Requests 17 and 23.

**I.     INTRODUCTION**

On November 8, 2006, the Special Master issued his Report (D.I. 306), which recommended that the relief sought by ViewSonic's July 31, 2006 motion to compel ("ViewSonic's Motion") be granted in part and denied in part. As relevant here, the Special Master recommended that LPL be required to serve supplemental responses to ViewSonic's Requests for Admission 17 and 23 by November 16, 2006. (*See* D.I. 306, at

18-19 & 21-22, a copy of which is attached as Exhibit 1.) This Court should not adopt the Special Master's recommendations with respect to Requests for Admission 17 and 23 for several reasons. First, both Requests improperly ask LPL to affirm or deny legal conclusions, as both Requests pertain to the meaning and scope of disputed claim terms. Second, in the Report, the Special Master determined that this Court's Scheduling Order established two distinct procedures for exchanging *Markman* and discovery material such that, as the Special Master also found, it would be unfair to require any party to respond to a discovery request that pertains to claim construction until after this Court has entered its *Markman* ruling. (*See id.*, at 2-3.) Third, the provisions of the Requests are improperly vague and ambiguous, such that LPL cannot admit or deny them with only minimal explanation or qualification. Finally, Request 23 improperly requires LPL to respond to multiple and hypothetical factual scenarios.

## II.     LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 53(g), a discovery master's findings of fact and conclusions of law are subject to *de novo* review by the District Court. In acting on a discovery master's report, the Court may wholly or partly reject, adopt or modify any of the master's recommendations. *See* Fed. R. Civ. P. 53(g)(1).

Requests for admission that seek legal conclusions are not allowed under Fed. R. Civ. P. 36. *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002). "Consequently, requests directed towards applying the claims of the patent or requiring application of the claims prior to any *Markman* ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper." *Id.* Further, where a request for admission poses a hypothetical

scenario, it improperly asks the respondent to make legal conclusions about facts not at issue and, therefore, need not be answered. *See Fulhorst v. United Technologies Auto., Inc.*, 1997 WL 873548, *3 (D. Del. 1997); *Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997).

Every Rule 36 request for admission should be stated "in simple and concise terms in order that it can be denied or admitted with an ***absolute minimum of explanation or qualification.***" *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 967-68 (3rd Cir. 1988) (emphasis added) (internal citations omitted); *see Tulip Computers*, 210 F.R.D. at 107; *Fulhorst*, 1997 WL 873548, *1 (citing *United Coal*). "A party is not required to respond to a request that contains vague or ambiguous statements." *Fulhorst*, 1997 WL 873548, at *1; *see Tulip Computers*, 210 F.R.D. at 107-08.

### III.  ARGUMENT

The Special Master's Report recommends that LPL should be required to supplement its responses to ViewSonic's Requests for Admission 17 and 23. However, Requests 17 and 23 are improper because they require LPL to engage in claim construction and because the terms of the Requests themselves are improperly vague and ambiguous. Additionally, Request 23 is improper because it contains inappropriate hypothetical scenarios. LPL should not be required to further respond to Requests for Admission 17 or 23 and this Court should not adopt the portions of the Special Master's Report that pertain to those Requests.

ViewSonic moved to compel further responses to a total of 21 of its Requests for Admission. In his analysis of ViewSonic's requested relief, the Special Master properly

recognized that, consistent with the legal standards stated above, ViewSonic's Requests for Admission are improper and need not be answered if they pose hypothetical questions, are ambiguous or require the responding party to draw legal conclusions, especially when those legal conclusions or ambiguities relate to claim construction. (*See, e.g.*, Ex. 1, at 2-3 & 13-18.) Applying these standards, the Special Master correctly denied ViewSonic's requested relief concerning 14 of the 21 Requests for Admission raised in ViewSonic's Motion. (*See id.*, at 26-27.) The Special Master erred, however, in applying these same standards to Requests for Admission 17 and 23. Requests 17 and 23 are improper, just as the Special Master determined that the majority of ViewSonic's disputed Requests for Admission are improper, in that they are improperly vague and unfairly ask LPL to draw legal conclusions and evaluate hypothetical scenarios.

### A. The Court Should Not Adopt the Special Master's Recommendations Concerning Request for Admission 17

ViewSonic's Request for Admission 17 asks LPL to:

> Admit that the two top screws and two screw holes in the ViewSonic VX900 identified as "B" and "D" respectively in exhibit 6 to the Bohannon Declaration (DI 5; *see* Exhibit B hereto) attach the stand to the VX900 monitor.

(Def. ViewSonic Corp.'s 1st Set of Reqs. for Admis., at 5 (including Ex. B thereto), a copy of which is attached as Exhibit 2.)

LPL objected to Request 17 because it contains vague and ambiguous terms and because it asks LPL to prematurely engage in claim construction and draw legal conclusions. (*See* Pl.'s Objecs. & Resps. to Def. ViewSonic Corp.'s 1st Set of Reqs. for Admis., at 10, a copy of which is attached as Exhibit 3.) For example, as they are used in Request 17, the terms "attach" and "screw holes" are ambiguous and require a *Markman* analysis before they can be understood in the context of this case. ViewSonic has never

provided definitions for either term. Because of these ambiguities and the need for claim construction, LPL cannot respond to Request 17 with an absolute minimum of qualification or explanation. *Cf. United Coal*, 839 F.2d at 967-68.

Additionally, requiring LPL to respond to Request 17 would unfairly require LPL to construe claim terms. In its preliminary list of patent claim terms that it believes will require construction, ViewSonic identified the term "attaching." (Letter from S. Miller to C. Christenson, et al., at 1 (Sept. 22, 2006), a copy of which is attached as Exhibit 5.) Furthermore, LPL has identified the term "screw hole" as requiring construction. (*See* Letter from R. Ambrozy to S. Miller, *et al.*, 1-2 (Sept. 22, 2006), a copy of which is attached as Exhibit 6.) These designations of claim terms requiring construction show that Request 17's terms "screw hole" and "attach" either directly implicate claim terms that have been identified as requiring construction (*e.g.* "attaching" and "screw hole") or, at least, are closely related to claim terms requiring construction.

Because the terms "attach" and "screw holes" require claim construction before their meanings can be properly determined, LPL should not be required to respond to Request 17 until after this Court has issued its claim construction order. The Special Master has found that the Scheduling Order contemplates distinct procedures for *Markman* and discovery. (*See* Ex. 1, at 2-3; Rule 16 Sched. Order (D.I. 198); Modified Sched. Order (D.I. 291).) During the hearing on this matter (the "Hearing"), the Special Master advised the parties that he had previously conferred with this Court and, based in part on those discussions, concluded that the Scheduling Order in this case provides for separate *Markman* and discovery processes. (*See id.*, at 5-7; Hr'g Tr., at 3-6, a copy of which is attached as Exhibit 4.) The Special Master also found that, because the

643419v1

Scheduling Order established distinct processes, it would be improper and unfair to allow parties to use Rule 36 requests or other discovery devices to prematurely obtain the responding party's constructions of disputed claim terms. (*See id.*, at 2-3.) In fact, the Special Master denied much of ViewSonic's requested relief precisely because the requests at issue infringed on the *Markman* process. (*See, e.g.,* Ex. 1, at 11-18 (denying relief requested for Requests for Admission 8-16).) Contrary to the recommendation in the Report, ViewSonic's Request 17 is improper because it is ambiguous and unfairly requires LPL to prematurely construe terms and phrases that must first be construed through the *Markman* process.

For these reasons, the Court should not compel LPL to further respond to ViewSonic's Request for Admission 17. The Court should not adopt of the Special Master's recommendations as they apply to Request 17.

### B. The Court Should Not Adopt the Special Master's Recommendations Concerning Request for Admission 23

ViewSonic's Request for Admission 23 asks LPL to:

> Admit that the part in the ViewSonic VX900 identified as "C" in exhibit 6 to the Bohannon Declaration (DI 5; *see* Exhibit B hereto) is not part of the LCD module identified as "H."

(Ex. 2, at 6.)

Request 23 is so vague and ambiguous that LPL should not be required to respond. The markers "C" and "H," as referenced in Request 23, correspond to labels used in pictures of a disassembled VX900 product, (*see* Ex. 2, at Exhibit B thereto), which was analyzed by LPL's expert witness, William Bohannon, in conjunction with LPL's Motion for Preliminary Injunction. Based on the wording of Request 23,

particularly the phrase "part of," ViewSonic does provide a specific fact that can be readily admitted or denied.

As stated in LPL's objections, in its opposition to ViewSonic's Motion and during the Hearing, the Request as worded does not tell LPL whether ViewSonic is referring to the pre-assembly or post-assembly state of the VX900 product or what ViewSonic means by the phrase "part of." (*See* Ex. 3, at 13; LPL's Oppo. to Def. ViewSonic Corp.'s Mot. to Compel Resps. to Interrogs. and Reqs. for Admis., at 9, a copy of which is attached as Exhibit 7; Ex. 4, at 54-56.) Thus, LPL cannot respond with a minimum of explanation or qualification. Even when given opportunities to do so, ViewSonic would not clarify whether Request 23 inquires about the relationship between "C" and "H" before or after assembly. (*Cf.* Ex. 4, at 55-56.) In fact, LPL's counsel and the Special Master directly addressed this issue during the Hearing. (*See id.*) ViewSonic's counsel acknowledged that Request 23, as worded, lends itself to the same ambiguities about which LPL is concerned, but argued that *it is up to LPL to carve out distinctions within the ambiguous language of the Request* and qualify its response accordingly. (*See id.*)

The following exchange is illustrative:

> MS. ROMAN [ViewSonic's counsel]: [...] Particularly if they could respond that they deny that – or admit that the component identified as C is not part of the LCD module post assembly, but admit that it is part – or preassembly, but it is part of it post assembly.
>
> [SPECIAL MASTER]: *And are you suggesting that even though you didn't ask it that way that they should be in a position to do both, if you will.*
>
> MS. ROMAN: Yes, Your Honor. I believe that the Federal Rules of Civil Procedure contemplates a responding party to respond to an RFA in as best a way as they can, admitting as much of it as they can, and

643419v1

7

> qualifying their answer if necessary. And this is a good example of that.
>
> MR. AMBROZY [LPL's counsel]: And obviously we take the contrary view, Your Honor, that *if it was meant to be stated that way, it should have been stated that way. We can't be expected to guess as to what answer ViewSonic would like to see and then tailor our response to that.*
>
> [SPECIAL MASTER]: I understand your positions and I will advise.

(*Id.* (emphasis added).)

The Special Master erred in adopting ViewSonic's approach in his Report. Courts in this Circuit have repeatedly held that "[a] party is not required to respond to a request that contains vague or ambiguous statements." *Fulhorst*, 1997 WL 873548, at *1; *see Tulip Computers*, 210 F.R.D. at 107-08. Further, the party responding to a request for admission must be able to do so with an "absolute minimum of explanation or qualification." *United Coal*, 839 F.2d at 967-68; *see Tulip Computers*, 210 F.R.D. at 107. ViewSonic admitted that its Request was unclear and declined to give LPL guidance as to the meaning or intent of Request 23. LPL should not be required to speculate as to what Request 23 really means and should not be required to craft complicated equivocations as would be necessary in order to respond to Request 23.

In addition to being vague and ambiguous, Request 23 improperly forces LPL to engage in claim construction. *Cf. Fulhorst*, 1997 WL 873548, *3. By asking LPL to state whether C is or is not "part of" H, Request 23 improperly would require LPL to anticipate hypothetical scenarios that may depend on the Court's construction of disputed terms, perhaps including "attaching," "fixing," "fixed" and/or "fastening." (*See, e.g.*, Ex. 5, at 1.) As counsel for LPL explained during the Hearing:

643419v1

8

> Again, it's not the LCD module that's in dispute here, it's the VX900 of which the LCD module is a part of and which obviously is – the frames that attach or don't attach to that and at what point they are attached, whether it's preassembly or post assembly, again, that's ambiguous. But also just the fact that we are discussing the LCD module and whether the frames are attached or not implies claim construction again.

(Ex. 4, at 55.)

Counsel for ViewSonic responded to the statement above by suggesting that LPL should qualify its answer to address multiple scenarios or meanings. (*See id.*, at 55-56.) However, using ViewSonic's cumbersome and confusing approach, Request 23 effectively forces LPL to decide, hypothetically, how C and H *might* be attached or not attached before, during and/or after the assembly process and then whether C and H *might* then become "part of" each other.

Essentially, the Request seems to be asking LPL to declare whether or not the VX900 infringes the Patents-in-Suit. However, it is well settled that Rule 36 does not permit requests for legal conclusions. *See Tulip Computers*, 210 F.R.D. at 108. Because any response that LPL provides would have to be extensively and exhaustively qualified and explained, the value of such a response in limiting issues for trial would be minimal. *Cf. United Coal*, 839 F.2d at 967 ("The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested.").

For these reasons, the Court should not compel LPL to further respond to ViewSonic's Request for Admission 23. The Court should not adopt the Special Master's recommendations as they apply to Request 23.

## IV.  CONCLUSION

For the reasons stated above, the Court should not adopt the portions of the Special Master's Report that pertain to ViewSonic's Requests for Admissions 17 and 23 and LPL should not, therefore, be compelled to further respond to either Request.

November 16, 2006                                   THE BAYARD FIRM

/s/ Richard D. Kirk (0922)
Ashley B. Stitzer (as 3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on November 16, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
1313 N. Market St., 6th Fl.
Wilmington, DE 19801

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document were sent by hand to the above counsel and by email and first class mail to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Bingham McCutchen LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

571447v1