IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>        Plaintiff,<br><br>     v.<br>TATUNG CO.;<br>TATUNG COMPANY OF AMERICA, INC.; AND<br>VIEWSONIC CORPORATION<br><br>        Defendants. | Civil Action No. 04-343 (JJF) |

**VIEWSONIC CORPORATION'S OBJECTIONS TO PORTIONS OF SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON VIEWSONIC CORPORATION'S MOTION TO COMPEL DISCOVERY**

Jeffrey B. Bove (#0998)
Jaclyn M. Mason (#4737)
Connolly Bove Lodge & Hutz LLP
The Nemours Building, 8th floor
1007 North Orange Street
Wilmington, DE 19801
Telephone:  (302) 658-9141
Facsimile:  (302) 658-5614
*Attorneys for Defendant*
*ViewSonic Corporation*

Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Manuel Nelson (CA Bar No. 229590)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071

Tracy R. Roman (CA Bar No. 199031)
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106

Date:  November 20, 2006

**Table Of Contents**

Page

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

III. SUMMARY OF ARGUMENT ............................................................................ 4

IV. GOVERNING LAW ............................................................................................ 5

V. VIEWSONIC'S MOTION REGARDING RFAs 5-7 SHOULD BE GRANTED AS WITHIN THE SCOPE OF PROPER DISCOVERY ......................................... 6

VI. VIEWSONIC'S MOTION REGARDING RFA 15 SHOULD BE GRANTED AS WITHIN THE PROPER SCOPE OF DISCOVERY ......................................... 8

VII. CONCLUSION ................................................................................................... 10

i

I.   **INTRODUCTION**

Pursuant to Rule 53(g)(2) of the Federal Rules of Civil Procedure ("FRCP") as modified by the parties' stipulation,[1] Defendant ViewSonic Corporation ("ViewSonic") submits these Objections to the portions of the November 8, 2006 Special Master's Report and Recommendations on ViewSonic's Motion To Compel Discovery[2] concluding that Plaintiff LG.Philips LCD Co., Ltd. ("LPL") should not be compelled to respond to ViewSonic's Requests for Admission ("RFAs") 5-7 and 15 and that RFAs 5-7 and 15 should not be deemed admitted.

RFAs 5-7 address a simple factual question regarding whether the structure of ViewSonic's VX900, a product LPL possesses and accuses of infringement (*see*, *e.g.*, D.I. 1), has the side space, as defined in the patents in suit, found in conventional prior art flat panel display structures. Additionally, because the patents in suit describe a type of conventional prior art "front mounting" as mounting a display device to the rear portion of a case, RFA 15 seeks a straightforward admission that "front mounting", as defined in the patents, is not limited solely to mounting the display device to a front case. RFAs 5-7 and 15 are not hypothetical questions, do not seek artificial comparisons or legal conclusions, and are proper pursuant to FRCP 36. Thus, ViewSonic respectfully requests that the Court decline to adopt the objected-to portion of the R&R and deem RFAs 5-7 and 15 admitted or compel LPL to properly respond to the RFAs.[3]

---

[1] The parties stipulated that any objections to the Special Master's decision on the subject motion would be due within five business days of service of the Special Master's decision, rather than 20 days as provided by FRCP 53(g). *See* D.I. 278. The Special Master's decision was served electronically on November 8, 2006. Thus, excluding weekends and holidays and adding three days to the prescribed period pursuant to FRCP 6(a) & (e), these objections are due by November 20, 2006.

[2] The November 8, 2006 Special Master's Report and Recommendations on Motion of Defendant ViewSonic Corporation To Compel Discovery (D.I. 306) is enclosed as Ex. 1, hereinafter referred to as "the R&R".

[3] A proposed Order is included as Exhibit 12.

1

## II. BACKGROUND

LPL accuses ViewSonic of infringing U.S. Patent Nos. 6,498,718 and 6,501,641.[4]
According to LPL, these patents are directed to mounting flat panel display devices in Visual Display Products in accordance with LPL's "rear mount technology."

The patents in suit describe prior art "front mounting" as follows:

> Referring to FIG. 2 which shows conventional assembly structure of the LCD device applied to a conventional portable computer, the display case 122 has a ***rear case 123*** and a ***front case*** or frame ***121*** for mounting the LCD device 130. ***The rear case*** or frame ***123 has ... connecting ribs 123a*** ... at the corners.



(PRIOR ART) FIG. 2

> The LCD device 130 has an LCD panel 132, a backlight device 134 fixed to the back of the LCD panel 132, and a supporting frame 136 for assembling the LCD panel 132 and the backlight device 134 along the edge.
>
> At the corners of the supporting frame 136, corresponding to the positions of the ribs 123a of the rear case 123, a plurality of protrusions 136a having holes are formed.
>
> ***For mounting the LCD device 130*** to the display case 122, ***the LCD device 130 is placed on the rear case 123 and the holes of the supporting frame 136 and the ribs 123a are fastened together preferably by screws 138***. The front case 121 is coupled to the rear case 123.
>
> ***Hereinafter, the way in which the LCD device is mounted to the case from the front toward the rear direction is defined as the front mounting method, and the assembled structure of the LCD device and the case formed through the front mounting method is defined as the front mounting structure***.
>
> In the front mounting structure of the LCD device, since the protrusions 136a require *additional space corresponding to the protruded width d*, the display area of the LCD device is reduced in comparison to the fixed size of the display case 122.

['641 patent, col. 1, ll. 35-64 (emphasis added).][5]

---

[4] A copy of U.S. Patent No. 6,501,641 is provided at Exhibit 2 (hereinafter "the '641 patent") and a copy of U.S. Patent No. 6,498,718 is provided at Exhibit 3 (hereinafter "the '718 patent").

2

The patents in suit describe a second, similar, prior art front mounting structure in connection with Figures 3A and 3B:

> The front mounting structure may also include an additional feature to further support the LCD device panel, as shown in FIGS. 3A and 3B.
>
> Referring to FIGS. 3A and 3B, a conventional LCD device assembly 110 includes an LCD panel 112 ... and display case 122 supporting the LCD device 111. ...
>
> Two opposite sides of the supporting frame 114 include *flanges 114a* for assembling the LCD device 111 to the display case 122, and corners include *flanges 114b* for assembling the LCD device 111 to the hinge arm 126. Hereinafter, the former is referred as a fixing flange and the latter is referred as a mounting flange in this specification for distinction purposes. *As shown in FIG. 3B, the fixing flanges 114a have a protruding width d2 and the mounting flanges 114b have a protruding width d1.* A screw hole is formed in each of the flanges. [sic] 114a and 114b. On the inner surface of the display case 122, ribs 122a are formed corresponding to the holes of the fixing flange 114a.
>
> To mount the LCD device 111, the hinge arm 126 and the mounting flanges 114b are screwed together, and the fixing flanges 114a and the ribs 122a are screwed together by bolts 128.
>
> In the mounting structure shown in FIG. 3B, the supporting frame 114 requires *side spaces for the flanges 114a and 114b*. Therefore, *the side space D (d1+d2)* results in a reduction of the display area of the LCD panel 112 relative to the display case 122.



(PRIOR ART)
FIG. 3A

(PRIOR ART)
FIG. 3B

['641 patent, col. 1, l. 65-col. 2, l. 34 (emphasis added).]

---

[5] The specifications for the '641 patent and '718 patent are materially the same. For convenience, specific references herein will be made only to the '641 patent.

3

Figures 2, 3A and 3B and their corresponding descriptions illustrate the prior art mounting structures, not the alleged invention covered by the patents. The side spaces "d1", "d2" and "D" (D=d1+d2) shown in Figure 3B (as well as "d" shown in Figure 2) illustrate the smaller size of the LCD display area relative to the size of the exterior case that results from using the prior art front mounting method.

## III.  SUMMARY OF THE ARGUMENT

The Special Master recommended that ViewSonic's motion related to RFAs 5-7 and 15 be denied. [R&R, at 11-14 & 16-18.] The Special Master's ruling classifies the subject RFAs as seeking an improper comparison and/or a legal conclusion. In fact, these RFAs merely seek factual admissions regarding LPL's observations about the structure of the accused ViewSonic product, and regarding the patents' statements about the prior art mounting method.

In denying ViewSonic's request for relief with respect to RFAs 5-7, the Special Master concluded that they seek (1) an artificial comparison of the accused product, which is a standalone monitor, to a dissimilar type of product, *i.e.*, a laptop computer, (2) a comparison of the accused product to something that is not the alleged invention, and (3) legal conclusions that the accused product practices the prior art instead of the invention covered by the patents-in-suit. On the contrary, RFAs 5-7 respectively seek admissions that the mounting structure or assembly actually used in ViewSonic's VX900 includes spaces corresponding to the spaces identified as "d1", "d2", and "D" caused by flanges or tabs as illustrated in Figure 3B and the corresponding description of the '641 patent. Thus, RFAs 5-7 are properly directed to plainly observable facts about the accused device without resort to any claim terms. A legal conclusion need not be reached in order to respond to these RFAs.

In denying ViewSonic's request for relief with respect to RFA 15, the Special Master concluded that it prematurely seeks to have LPL admit or deny claim constructions prior to the Court's claim construction. Again, on the contrary, RFA 15 merely seeks an admission that the prior art "front mounting" method specifically defined in the patents-in-suit (which is not the claimed invention, nor present in the language of any claim) does not require the LCD device to

4

be mounted to the front case (item 121 in Figure 2). RFA 15 is directed to the specific example illustrated in Figure 2 which expressly shows that in the prior art front mounting the LCD device is mounted to the rear case, not the front case. Thus, RFA 15 is properly directed to a plainly observable <u>fact</u> about the prior art that is expressly shown in the patents.

## IV. GOVERNING LAW

FRCP 36(a) provides, in pertinent part:

> A party may serve upon any other party a written request for the admission ... of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact ....

FRCP 26(b)(1) provides a broad scope of discovery:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001). One of the policies underlying FRCP 36 is to help "litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *Id.*; *see also* FRCP 36 Advisory Committee Notes, 1970 Amendment (Rule 36 helps eliminate those issues that can be eliminated from the case).

When ruling on a party's objections to the Special Master's report and recommendation, the Court may adopt, affirm, modify, wholly or partly reject, or reverse the report and recommendations of the Special Master, or resubmit the matter to the Special Master. FRCP 53(g)(1). The Court's review of the issues herein is *de novo*. FRCP 53(g)(3) & (4).

## V. VIEWSONIC'S MOTION REGARDING RFAs 5-7 SHOULD BE GRANTED AS WITHIN THE SCOPE OF PROPER DISCOVERY

ViewSonic's RFAs 5-7 each ask LPL to admit whether – based on its observation – the accused device includes certain side space that the patent discloses when discussing the prior art:

### REQUEST FOR ADMISSION NO. 5.

Admit that the ViewSonic VX900 includes the space identified as "d1" in Figure 3B of the '641 patent.

### REQUEST FOR ADMISSION NO. 6.

Admit that the ViewSonic VX900 includes the space identified as "d2" in Figure 3B of the '641 patent.

### REQUEST FOR ADMISSION NO. 7.

Admit that the ViewSonic VX900 includes the space identified as "D" in Figure 3B of the '641 patent.

[*See* Ex. 4, at 3.] For convenience, each RFA points LPL to the Figure in which an example of side space is shown. According to the patents, these side spaces identified as "d1", "d2," and "D" are caused by "flanges" or tabs 114a and 114b that protrude laterally. [Col. 2:13-34; Figs. 3A, 3B.] Thus, in order for LPL to admit or deny these RFAs, it must do nothing more than look at the accused VX900 – which it has already done to allege infringement – to see whether it includes similar side space. It bears noting that LPL had no difficulty identifying the parts of the VX900 necessary to accuse it of infringement. Certainly ViewSonic is entitled to ask LPL what other features it observed about the product.

LPL argued that Figure 3B shows a laptop monitor with a hinge, and that the VX900 is a desktop monitor, and thus has no hinge. [R&R, at 14.] Although not a point made in LPL's original response to the RFA, the Special Master nevertheless agreed that these RFAs sought to compare the accused product to a dissimilar product and one that was not the alleged invention. According to LPL, the alleged invention is *rear mounting*, regardless of whether it is to a portable computer or desktop monitor. The discussion of the prior art *front mounting* method does not depend upon – and is not restricted to – the type of product into which the display device is being mounted. It is ViewSonic's understanding that LPL will vigorously contest any

6

assertion that its patents are limited to a certain type of product as opposed to a type of mounting. Thus, if LPL is to be permitted to assert these patents against stand alone desk top products rather than only against laptop computers, then these differences must not be the basis to refuse discovery such as RFAs 5-7. Furthermore, RFAs 5-7 do not ask whether the VX900 has a hinge, whether the VX900 can be fastened to a laptop computer, or any other question remotely related to a laptop computer.[6]

Similarly, RFAs 5-7 do not ask whether the VX900 *practices* the prior art or the claimed invention, do not ask whether the VX900 is infringing or non-infringing, and do not seek a legal conclusion. Instead, RFAs 5-7 seek solely admissions of fact -- namely whether the ViewSonic VX900, a product LPL identified in the Complaint as an infringing product, exhibits side spaces, akin to those identified as "d1", "d2," and "D" in Figure 3B of the patents. *In re Carney*, 258 F.3d at 418 ("Rule 36 allows litigants to request admissions as to ... ultimate facts").

It is worth noting that LPL has submitted three different responses to RFAs 5-7, all of which are evasive rather than responsive. [See Ex. 5, at 4-5; Ex. 6, at 2-4; Ex. 7, at 3-7.] For example, one of LPL's responses challenged that items "d1," "d2," and "D" depicted a dimension, not a space. After ViewSonic pointed out that the patents in fact call these items "side space," LPL resorted to these newer – and equally incorrect – arguments. Thus, RFAs 5-7 should be deemed admitted as ViewSonic requested in its motion. Ex. 10, at 1. If, however, the Court is inclined to give LPL a fourth opportunity to respond to RFAs 5-7, LPL should be admonished not to provide another evasive response.

---

[6] The entire description provided by the patents in suit is directed to laptop (portable) computers. *See*, *e.g.*, '641 patent, col. 2, ll. 42-44 ("Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon ...."). Yet, LPL contends that these patents can be asserted against stand alone monitor products. Conveniently, LPL points to this distinction only when it seeks to avoid discovery. If, as ViewSonic believes the claim construction process will establish, LPL is prepared to limit the patents in suit to personal computers, the resources of the defendants and the Court should not be wasted further, and this suit should be dismissed. Until either LPL admits this result, or the Court reaches this conclusion based on the patents and the prosecution history, LPL's argument is misguided. ViewSonic's RFAs are directed to the structure of a ViewSonic product in LPL's possession and identified in the Complaint as an infringing product.

7

## VI. VIEWSONIC'S MOTION REGARDING RFA 15 SHOULD BE GRANTED AS WITHIN THE PROPER SCOPE OF DISCOVERY

RFA 15 asks LPL to admit whether the prior art shown in the patent does or does not include a certain feature:

**REQUEST FOR ADMISSION NO. 15.**

> Admit that, as defined by the '641 Patent, the front mounting method does not require that the LCD device be mounted to the front case (identified as element 121 in Figure 2 of the '641 patent).

[Ex. 4, at 5.] LPL need only look at Figure 2, and/or read the text of Column 1, to ascertain whether the patent says the front mounting method does or does not require the LCD device to be mounted to the front case. It requires no more construction of claim terms than would an RFA asking LPL to admit that the title of the patent is "Portable Computer Having A Flat Panel Display Device."

For the purposes of evaluating RFA 15, it is notable that the patent specifications and drawings indicate that front mounting can be accomplished by mounting the LCD device to a rear case, or a portion of the case that covers the back of the display device. For example, as indicated above, the '641 patent provides:

> Hereinafter, the way in which the LCD device is mounted to the case *from the front toward the rear direction <u>is defined</u> as the front mounting method*, and the assembled structure of the LCD device and the case formed through the front mounting method is defined as the front mounting structure.
>
> In the front mounting structure of the LCD device, since the protrusions 136a [of FIG. 2] require additional space corresponding to the protruded width d, the display area of the LCD device is reduced in comparison to the fixed size of the display case 122.
>
> The *front mounting* structure may also include an additional feature to further support the LCD device panel, as shown in FIGS. 3A and 3B.

['641 patent, col. 55-67 (emphasis added)]. Figures 2, 3A and 3B further demonstrate that the admitted prior art method of "front mounting" as defined in the patent includes mounting to a rear case or the rear portion of the case, as illustrated in Figures 2, 3A and 3B.

RFA 15 seeks an admission that the prior art "front mounting" method and structures disclosed in the patent do not require mounting to the front case. The patent illustrates prior art conventional "front mounting" to include mounting an LCD device to the rear case, or the rear

8

potion of a case. The plain disclosure of the patents in suit does not require that an LCD device be mounted to the front case. ViewSonic is entitled to a full response to RFA 15 regarding the conventional prior art "front mounting" structures disclosed in the patents in suit. *Cf. S.A. Healy Co./Lodigiani USA Ltd. v. United States*, 37 Fed.Cl. 204, 205 (Fed. Cl. 1997) (admissions of the contents or interpretation of a contract at most involve the application of law to facts and must be answered); *Kutner Buick, Inc. v. Crum & Foster Corp.*, No. Civ.A. 95-1268, 1995 WL 508175, at *2 (E.D. Pa. Aug. 24, 1995) (admissions required as to contents of insurance policies); *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) ("A statement of a party's understanding of the meaning or intent of a document is therefore a statement of fact, and where the question of the meaning of the document is at issue in the case, a request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement [of] fact, and is authorized by Rule 36.").

      Although it is used in the specification of the patent, "front mounting" is <u>not</u> recited in any claim. Rather, "front mounting" is admitted prior art in the patents in suit, which, in turn, are an alleged improvement over the prior art. *See* Figs 2, 3A and 3B (each indicating "(PRIOR ART)"). Thus, RFA 15 is not premature as requiring claim construction. RFA 15 seeks an admission about whether the patents in suit define the prior art method of mounting to include a particular feature. It does not require a legal conclusion regarding infringement, noninfringement, validity, or invalidity.

      Given that RFA 15 is proper under FRCP 36 and that LPL has failed to admit or deny it, the Court should deem RFA 15 admitted, or order LPL to admit or deny this request.

## VII. CONCLUSION

Based upon the foregoing, ViewSonic respectfully requests that the Court decline to accept the Special Master's R&R as to Requests for Admission 5-7 and 15, and deem these RFAs admitted. Alternatively, ViewSonic respectfully requests that the Court Order LPL to properly respond to RFAs 5-7 and 15 within five days of service of the Court's decision on this objection.

Date: November 20, 2006

Respectfully submitted,

Connolly Bove Lodge & Hutz LLP

Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Manuel Nelson (CA Bar No. 229590)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071

Tracy R. Roman (CA Bar No. 199031)
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106

By:  /s/  Jeffrey B. Bove
Jeffrey B. Bove (#0998)
Jaclyn M. Mason (#4737)
The Nemours Building, 8th floor
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

*Attorneys for Defendant
ViewSonic Corporation*

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of November, 2006, a true copy of the foregoing **ViewSonic Corporation's Objections To Portions Of Special Master's Report And Recommendations On ViewSonic Corporation's Motion To Compel Discovery** was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19801

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon, LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19899-0951

I hereby certify that on the 20th day of November, 2006, I have sent by email the foregoing document to the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA  90404

Tracy R. Roman
Bingham McCutchen LLP
355 South Grand Avenue, 44th Floor
Los Angeles, CA  90071-3106

Jong P. Hong
Greenberg Traurig, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA  94303

By: */s/   Jeffrey B. Bove*
Jeffrey B. Bove (#998)
jbove@cblh.com