# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG.PHILIPS LCD CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 04-343 JJF |
| | : | |
| TATUNG CO., TATUNG COMPANY | : | |
| OF AMERICA, INC., VIEWSONIC | : | |
| CORP., | : | |
| | : | |
| Defendants. | : | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON MOTION
## OF DEFENDANT VIEWSONIC CORP. TO COMPEL DISCOVERY:

## GRANT OF RELIEF RECOMMENDED, IN PART;
## DENIAL OF RELIEF RECOMMENDED, IN PART.

This matter comes before me, as Special Master,[1] on the motion of defendant ViewSonic

Corporation ("ViewSonic") to compel responses to interrogatories and requests for admissions

from plaintiff LG.Philips LCD Co., Ltd. ("LPL").

## BACKGROUND

This is a patent infringement case brought by LPL against ViewSonic and other

defendants alleging infringement of United States Patent Nos. 6,498,718 (the '718 Patent) and

6,501,641 (the '641 Patent) that relate to assembly mountings for flat panel display monitors used

in liquid crystal displays ("LCD") for such products as plasma televisions and computer

monitors. D.I. 1.

On July 31, 2006, ViewSonic submitted to the Special Master its Motion to Compel

Responses to Interrogatories and Requests for Admissions from plaintiff LPL (the "Motion").

---

[1] The Order Appointing Special Master, dated February 25, 2005, is docketed as item 178 in the captioned case.

By papers submitted to the Special Master on August 11, 2006 (the "LPL Opposition"), LPL opposes the relief sought by ViewSonic. For the reasons set forth *infra* at page 13, ViewSonic submitted additional papers to the Special Master on September 26, 2006 renewing its request as to certain of the relief sought by the Motion and seeking the imposition of sanctions against LPL. By papers submitted October 6, 2006, LPL opposes that relief.

Having read and considered the papers submitted by the parties, and having heard and considered the oral arguments made before the Special Master at a telephonic hearing conducted on August 23, 2006, the Special Master recommends that ViewSonic's motion to compel be GRANTED in part, and DENIED in part, for the reasons set forth herein.

## DISCUSSION

By its opposition papers, LPL argues that the discovery sought is premature, would improperly require claim construction in violation of the Scheduling Order, and/or seeks disclosure of privileged information. The Special Master addresses LPL's arguments that the contention discovery sought is premature and/or impermissible under the Scheduling Order entered in this case as a threshold matter.

The Special Master notes that this litigation has been pending for over two years.[2] Under the Scheduling Order, the fact discovery phase is scheduled to be completed by November 17, 2006, followed by the *Markman* and expert discovery phases. D.I. 198. Having reviewed the Scheduling Order, the Special Master is satisfied that paragraph 4(a) therein clearly contemplates and permits contention discovery to go forward at this juncture with respect to the claims, defenses and facts asserted in the litigation. Other provisions of the Scheduling Order clearly contemplate the claim construction process to be a separate and distinct phase that will follow fact discovery. D.I. 198 at ¶¶ 5,8.

---

[2] The Complaint was filed on May 27, 2004. D.I. 1.

Accordingly, the Special Master concludes that contention discovery focused on claims, defenses and facts may go forward at this time. The Special Master also concludes that the parties need not respond to discovery focused on claim construction until the dates set by paragraphs 8 and 5 of the Scheduling Order for the claim construction and expert discovery phases, respectively. D.I. 198.

Applying this framework, the Special Master turns to the specific interrogatories and requests for admission that are the subject of ViewSonic's motion to compel.

## A. INTERROGATORIES

Discovery in the form of interrogatories is governed by Federal Rule of Civil Procedure 33. With respect to the scope of discovery, Rule 33 provides in relevant part:

> **Interrogatories may relate to any matters which can be inquired into under Rule 26(b)(1),** and the answers may be used to the extent permitted by the rules of evidence.
>
> An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pretrial conference or other later time.

Fed. R. Civ. P. 33(c) (emphasis added). Rule 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

A copy of ViewSonic's Interrogatories directed to LPL (each an "Interrogatory"), together with LPL's objections and responses thereto (each a "Response"), is attached at Exhibit A. By its Motion, ViewSonic seeks to compel LPL to respond or submit supplemental responses, as

3

applicable, to Interrogatory Nos. 1, 3, 4, 7, 8 and 12.  Motion at p. 2.  The Special Master addresses ViewSonic's request for relief as to each Interrogatory *seriatim*.

**Interrogatory No. 1**

a.     Interrogatory No. 1 reads as follows:

> Set forth all contentions that ViewSonic infringes any patent claim asserted in this litigation, directly, indirectly, literally or under the doctrine of equivalents, including an identification of the following:   (a) each allegedly infringing product sold by ViewSonic; (b) the specific sections of 35 U.S.C. Section 271 that allegedly gives rise to infringement liability for each allegedly infringing product, (c) the specific claims that LPL contends are infringed with respect to each allegedly infringing product, and (d) on a claim by claim basis, where in each allegedly infringing product the claim elements can be located.

b.     **ViewSonic's Position** – In its Motion papers, ViewSonic describes Interrogatory No. 1 as its request that LPL set forth its "infringement contentions."  ViewSonic describes LPL's approximately 5-page Response to Interrogatory 1 as "perfunctory . . . without any meaningful details," but does not identify the kinds of detail that it asserts are missing.  Motion at p. 3.

c.     **LPL's Position** –LPL argues first that Interrogatory 1 was not raised during the parties' "meet and confer" process.  LPL also states that it has responded to Interrogatory No. 1 to the best of its ability but, because it has not received responses to discovery it previously sought from ViewSonic, it is unable to identify all infringing ViewSonic products.  Additionally, LPL states that it offered to supplement its response to Interrogatory No. 1 if ViewSonic identified the alleged deficiencies, but that ViewSonic has refused to do so.  LPL Opposition at pp. 5-6.

d.     **Special Master's Conclusion** – During oral argument, ViewSonic conceded that LPL's Response to Interrogatory No. 1 was adequate with respect to the VX900 product, but that

4

LPL's Response did not mention two other products that ViewSonic suspects are also accused of infringement. ViewSonic stated that its motion to compel could be resolved as to Interrogatory No. 1 by LPL supplementing its Response to provide information on the VX2000 and VE155B, in detail similar to that provided by LPL for the VX900. LPL agreed to provide the requested supplementation by September 6, 2006 to resolve this issue. Transcript of August 23, 2006 Teleconference with Special Master ("August 23, 2006 Transcript") at 9:9-13:17.

Accordingly, the Special Master concludes that ViewSonic's request to compel with respect to Interrogatory No. 1 should be GRANTED.


## Interrogatory Nos. 3-4

a.   **Interrogatory No. 3** reads as follows:

> Identify each and every ViewSonic product that you had in your possession, custody, or control when you filed this lawsuit against ViewSonic.

b.   **Interrogatory No. 4** reads as follows:

> Identify each and every ViewSonic Product that you currently have in your possession, custody, or control.

c.   **ViewSonic's Position** – In seeking to compel, ViewSonic argues that Interrogatory Nos. 3-4 simply ask LPL to identify – as factual information – the ViewSonic products in LPL's possession before and since the filing of the Complaint. ViewSonic also argues that these Interrogatories do not seek legal analysis, opinions or communications, and the information sought is not protected under the work product doctrine. Motion at pp. 4-5.

d.   **LPL's Position** – LPL asserts that the information sought is protected by both attorney/client privilege and the work product doctrine, and that ViewSonic has failed to make the required showing of hardship that might entitle ViewSonic access to such information.

5

Notwithstanding its objections, LPL identified the VX900 in its Responses to Interrogatory Nos. 3-4 as being in the possession of its attorneys. <u>LPL Opposition</u> at pp. 7-8.

     **e.**     **<u>Special Master's Conclusion</u>** – The Special Master notes that these Interrogatories ask only that LPL identify certain factual information. The Special Master also notes that LPL has at least partially responded to these Interrogatories by identifying the VX900. The Special Master concludes that, because LPL has not as yet identified all of the ViewSonic products accused of infringement, the partial identification of information responsive to Interrogatory Nos. 3-4 could be misleading and prejudicial to ViewSonic's preparation of its defense by making it appear that the VX900 is the only product responsive to the request and, therefore, possibly the only accused product. The Special Master also concludes that to the extent, if any, that the factual information sought could be considered privileged, LPL has waived any asserted privilege by virtue of its partial response to these Interrogatories and that it would be inequitable at this juncture to permit LPL to rest on a partial identification if there are other responsive products that can be identified.

     Accordingly, the Special Master concludes that ViewSonic's motion to compel a complete Response to Interrogatory Nos. 3-4 should be GRANTED.

**<u>Interrogatory No. 7</u>**

     **a.**     Interrogatory No. 7 reads as follows:

> If you contend that there is a nexus between the claimed inventions of either or both of the Patents-in-Suit and the commercial success of any ViewSonic product that incorporates an LCD display that allegedly infringes that patent, identify on a claim-by-claim basis all factual bases for that contention and all documents that support that contention.

6

    **b.**   **ViewSonic's Position** – ViewSonic describes Interrogatory No. 7 as seeking the basis for LPL's contention that ViewSonic's products have enjoyed commercial success because they practice the inventions disclosed in the patents-in-suit. August 23, 2006 Transcript at 13:24-14:3. ViewSonic states LPL's Response to Interrogatory 7, including its supplemental response, is inadequate because it omits supporting facts. ViewSonic states that if LPL cannot respond without discovery from ViewSonic, it should simply state it has no evidence. Motion at p. 3.

    **c.**   **LPL's Position** – LPL argues that Interrogatory 7 is premature in light of the Scheduling Order. LPL has already supplemented its Response to Interrogatory 7 once, and agrees to further supplement its Response after ViewSonic, Tatung and third parties produce information sought in discovery. August 23, 2006 Transcript at 16:8-23.

    **d.**   **Special Master's Conclusion** – In its Supplemental Response to Interrogatory No. 7, LPL states, in part, that "to LPL's knowledge . . . users of the technology include competitors of both Tatung and ViewSonic." Because LPL's Response, as supplemented, purports to be based upon its knowledge, the Special Master concludes that LPL must further supplement its Response at this juncture to identify the facts that underpin LPL's asserted knowledge. As further information becomes available through discovery, LPL is obligated by Fed. R. Civ. P. 26(e) to then further supplement its Response. August 23, 2006 Transcript at 18:19-19:16.

    Accordingly, the Special Master concludes that ViewSonic's request to compel further response to Interrogatory No. 7 should be GRANTED.

062038.00612/40164235v.1

## Interrogatory No. 8

    **a.**    Interrogatory No. 8 reads as follows:

        State all material facts that support your contention that ViewSonic's alleged infringement has been willful.

    **b.**    **ViewSonic's Position** – ViewSonic argues that Interrogatory No. 8 seeks the facts supporting LPL's contention of willful infringement by ViewSonic, and that LPL's Response to Interrogatory No. 8 is inadequate because it provides conclusory allegations instead of facts. Motion at p. 4.

    **c.**    **LPL's Position** – LPL disputes that its Response to Interrogatory 8 – that ViewSonic is and/or has infringed the Patents-in-Suit by importing, offering, marketing and/or selling products known to infringe the Patents-in-Suit, and continuing to do so after the Complaint was filed – is incomplete. LPL also states that it will supplement its Response as it learns additional information. LPL Opposition at p. 7.

    **d.**    **Special Master's Conclusion** – In its Response to Interrogatory No. 8, LPL asserts, *inter alia*, that ViewSonic has infringed by importing products known to infringe the patents-in-suit, both before and after the filing of this action. Because Interrogatory No. 8 requires LPL to "State all material facts that support [its] contention that ViewSonic's alleged infringement has been willful," the Special Master concludes that LPL must supplement its Response at this time to identify the facts that LPL has relied upon to support its assertions. August 23, 2006 Transcript at 21:22-24. If further information becomes available through discovery, LPL is obligated by Fed. R. Civ. P. 26(e) to then further supplement its Response.

    Accordingly, the Special Master concludes that ViewSonic's request to compel further response to Interrogatory No. 8 should be GRANTED.

8

## Interrogatory No. 12

**a.**     Interrogatory No. 12 reads as follows:

For each reference listed below that you contend does not qualify as prior art under any provision of 35 U.S.C. §§ 102 and/or 103, set forth in detail the entire basis for your contention as to each reference, including stating all relevant facts, identifying all documents on which you rely to support your contention, and identifying all persons with information or knowledge relevant to your contention, summarizing each person's knowledge:

(a)     PixelVision SGT15P
(b)     IBM 9052
(c)     IBM 9516
(d)     Tatung L4KAS
(e)     Hewlett-Packard S1010 and/or S1010a
(f)     ViewSonic VP140
(g)     ViewSonic VPA138
(h)     "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE – The International Society for Optical Engineering
(i)     U.S. Pat. No. 5,041,965
(j)     U.S. Pat. No. 5,119,204
(k)     U.S. Pat. No. 5,570,267
(l)     U.S. Pat. No. 5,831,816
(m)     U.S. Pat. No. 6,068,227
(n)     JP 09-190156
(o)     JP 09-171358

**b.**     **ViewSonic's Position** – ViewSonic's position is that Interrogatory No. 12 seeks

facts supporting LPL's contentions that specific references do not qualify as prior art. ViewSonic

argues that LPL's approximately 18-page Response to Interrogatory No. 12 is incomplete

because it fails to enumerate the elements LPL contends are absent from the prior art and fails to

"suggest any reason LPL has for distinguishing between the allegedly infringing components of

the accused VX900 and components in the PixelVision." Motion at p. 4.

**c.**     **LPL's Position** – LPL argues that its Response to Interrogatory 12 provides even

more information than was actually requested, but that it is willing to supplement its Response to

provide "qualification" information. LPL Opposition at p. 7.  At oral argument LPL described

9

the "qualification" information that it is willing to provide to be whether the reference qualified as prior art, based on such criteria as whether the filing date, if a patent, preceded the filing date of the patents-in-suit; whether, if a publication, it was published to a significant number of people; whether it was enabling, and so forth. August 23, 2006 Transcript at 23:12-24:2. LPL, however, argues that it should not be required to identify "what limitations in the claims are anticipated by the various elements in the publications themselves." *Id.* at 24:2-6.

    **d.**    **Special Master's Conclusion** – Because LPL has agreed to provide certain qualification information, the Special Master concludes that LPL's Response to Interrogatory No. 12 should be supplemented to provide such information. The Special Master also concludes that LPL is not required, at this time, to distinguish between the prior art references and the accused VX900 or to identify any limitations in the claims that are anticipated by the various elements in the prior art, as they would relate to and prematurely require claim construction.

    Accordingly, the Special Master concludes that ViewSonic's request to compel further response to Interrogatory 12 is GRANTED IN PART, but only to the extent of the qualification information that LPL has agreed to provide.

## B. REQUESTS FOR ADMISSION

    Discovery in the form of requests for admission are governed by Federal Rule of Civil Procedure 36. With respect to the scope of discovery, Rule 36 provides in relevant part:

> A party may serve upon any other party a written request for the admission, for the purposes of the pending action only, of the truth of **any matters within the scope of Rule 26(b)(1)** set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.

10

Fed. R. Civ. P. 36(a) (emphasis added). As previously stated, Rule 26 permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

A copy of ViewSonic's requests for admission directed to LPL (each a "RFA" or "Request"), together with LPL's objections and responses thereto (each a "Response"), is attached at Exhibit B. By its Motion, ViewSonic seeks to compel LPL to respond or submit supplemental responses, as applicable, to Request for Admission Nos. 3, 5-19, 22, 23, and 28-32. Motion at p. 2. The Special Master now considers ViewSonic's request for relief as to each Request for Admission *seriatim*.

### Request for Admission Nos. 3 and 5-10

    **a.**    **Request for Admission No. 3** reads as follows:

        Admit that the express objects of the invention disclosed in the '641 Patent are all directed to minimizing side space identified as dimension "D" in Figure 3B of the '641 Patent.

    **b.**    **Request for Admission No. 5** reads as follows:

        Admit that the ViewSonic VX900 includes the space identified as "d1" in Figure 3B of the '641 Patent.

    **c.**    **Request for Admission No. 6** reads as follows:

        Admit that the ViewSonic VX900 includes the space identified as "d2" in Figure 3B of the '641 Patent.

    **d.**    **Request for Admission No. 7** reads as follows:

        Admit that the ViewSonic VX900 includes the space identified as "D" in Figure 3B of the '641 Patent.

e.   **Request for Admission No. 8** reads as follows:

Admit that using a rear mountable flat panel display device as claimed in the '641 Patent reduces the space identified as "d1" in Figure 3B of the '641 Patent when compared to using a flat panel display device that is not rear mountable.

f.   **Request for Admission No. 9** reads as follows:

Admit that using a rear mountable flat panel display device as claimed in the '641 Patent reduces the space identified as "d2" in Figure 3B of the '641 Patent when compared to using a flat panel display device that is not rear mountable.

g.   **Request for Admission No. 10** reads as follows:

Admit that using a rear mountable flat panel display device as claimed in the '641 Patent reduces the space identified as "D" in Figure 3B of the '641 Patent when compared to using a flat panel display device that is not rear mountable.

h.   **ViewSonic's Position** – ViewSonic argues that RFA 3 and 5-10 seek factual information concerning LPL's contentions with respect to the patents-in-suit. Specifically, ViewSonic argues that RFA 3 "asks LPL to admit what the patent discloses as the objects of the invention." Motion p. 6. ViewSonic notes that RFA 5-7 ask LPL to admit or deny that the accused VX900 contains certain "side spaces" that correspond to "d1," "d2," and "D" as illustrated in Figure 3B of the '641 patent, and argues that these determinations "simply require looking at the product. No claim construction is required." Id. at pp. 6-7. Finally, ViewSonic argues that RFA 8-10 ask LPL "to admit or deny that practicing the disclosed inventions solves the stated side space problem."

i.   **LPL's Position** – By its original opposition papers, LPL stated it had "reconsidered" ViewSonic's Request and it agreed to "supplement its responses as to why it is denying" these Requests. LPL Opposition at p. 8.

12

**j.    Special Master's Conclusion** – At oral argument, the Special Master learned that LPL had completed supplementation of its Responses to RFA 3 and 5-10.  August 23, 2006 Transcript at 34:16-24.  ViewSonic's position is that the Responses, as supplemented, are still inadequate.  *Id.* at 35:1-3.  However, at the time of oral argument, the supplementations had not been submitted to the Special Master for review.  *Id.* at 35:4-6.  Additionally, the parties had not had an opportunity to "meet and confer" on the remaining alleged deficiencies in the supplemented Responses.  *Id.* at 35:9-13.  The parties were therefore directed to conduct a "meet and confer" and, if that process proved unsuccessful, to submit abbreviated letter briefing on RFA 3 and 5-10 to the Special Master.  *Id.* at 35:18-36:23.

On September 26, 2006, ViewSonic submitted papers to the Special Master (the "September 26 Submission") that seek an order deeming that LPL has admitted RFA 5-10 or, in the alternative, compelling LPL to properly respond to RFA 5-10.  ViewSonic also seeks the imposition of monetary sanctions against LPL.  By responsive papers submitted October 6, 2006, LPL opposes the relief sought on the grounds that RFA 5-10 are improper, and, thus, no further response is required by LPL (the "October 6 Opposition").

**RFA 3** – The Special Master notes that both the September 26 Submission and the October 6 Opposition papers are silent as to RFA 3.  The Special Master declines to address, on this record, LPL's supplemented Response to RFA 3, which has not been brought before the Special Master and which the parties have not addressed in their latest submissions.  Accordingly, the Special Master can neither recommend the grant nor denial of ViewSonic's motion with respect to RFA 3 at this time.

**RFA 5-7** – The Special Master declines to recommend the grant of ViewSonic's motion with respect to RFA 5-7, each of which request that ViewSonic make admissions based on

13

comparisons of accused product VX900 to various aspects of Figure 3B of the '641 Patent. As admitted by ViewSonic, Figure 3B "illustrate[s] conventional (prior art) products, not the alleged invention covered by the '641 or '718 Patents-in-suit." September 26 Submission at p. 2. Moreover, as pointed out by LPL, the prior art product illustrated in Figure 3B is that of an LCD panel mounted in a laptop computer, and not a stand alone monitor like the VX900. The Special Master therefore concludes that RFA 5-7 as worded seek not only an artificial comparison of the accused product to a dissimilar type of product, but also seek comparison of the accused product to something that is admittedly not the alleged invention covered by the patents-in-suit. The Special Master concludes that RFA 5-7 are improperly calculated to seek legal conclusions that the accused product practices the prior art instead of the invention covered by the patents-in-suit. *Fulhorst v. United Technologies Automotive, Inc.*, C.A. 96-577, memo op. at *2 (D. Del. Nov. 17, 1997) (Farnan, C.J.) [available as 1997 WL 873548] ("requests that seek legal conclusions are not appropriate under Rule 36").

**RFA 8-10** – The Special Master also recommends the denial of ViewSonic's request to compel LPL to further respond to RFA 8-10, each of which seek admissions that the use of a rear mountable flat display device as claimed in the '641 patent reduces the spaces identified as "d1", "d2", and "D" in Figure 3B of the '641 Patent, when compared to using a flat panel display device that is not rear mountable. September 26, 2006 Submission at p. 2. The Special Master concludes that, on their face, RFA 8-10 pose impermissible hypotheticals by seeking comparisons to an undefined and unspecified "flat panel device that is not rear mountable." *Fulhorst*, 1997 WL 873548 at *1 ("a party is not required to respond to a request that contains vague or ambiguous statements") and *3 (finding request for admission of infringement [or non-infringement] in the context of a hypothetical use to be improper). The Special Master

14

additionally concludes the use of the terms "rear mountable" and "flat panel display device," which have yet to be construed, is premature in light of the Scheduling Order and improper in that it seeks a legal conclusion. *Tulip Computers International BV v. Dell Computer Corp.*, 210 F. R. D. 100, 108 (D. Del. 2002) ("requests directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

In sum, the Special Master concludes that ViewSonic's motion with respect to RFA 3 can neither be granted nor denied at this time, and that ViewSonic's motion with respect to RFA 5-10 should be denied. Accordingly, the Special Master also concludes that ViewSonic's motion for sanctions should also be denied because LPL has properly refused to respond to Requests that the Special Master concludes are impermissible.

### Request for Admission Nos. 11-16

a.   **Request for Admission No. 11** reads as follows:

Admit that, as disclosed in the '641 Patent, the rear housing substantially supports the flat panel display device, when the flat panel display device is mounted to the rear housing via the fastening part at the rear surface of the first frame.

b.   **Request for Admission No. 12** reads as follows:

Admit that, as disclosed in the '641 Patent, the fastening part at the rear surface of the first frame must securely fix, firmly attach, or make fast the rear housing to the flat panel display device when fastened as claimed in the '641 Patent.

c.   **Request for Admission No. 13** reads as follows:

Admit that a flat panel display device that is not substantially supported by the rear housing when mounted via the fastening part at the rear surface of the first frame does not practice the invention as

claimed in the '641 Patent.

d.  **Request for Admission No. 14** reads as follows:

Admit that when practicing the prior art front mounting method as referenced in the '641 Patent, the housing provides substantial support for the flat panel display device when mounted through the front mounted fastening part(s).

e.  **Request for Admission No. 15** reads as follows:

Admit that, as defined by the '641 Patent, the front mounting method does not require that the LCD device be mounted to the front case (identified as element **121** in figure 2 of the '641 Patent).

f.  **Request for Admission No. 16** reads as follows:

Admit that when assembled, the rear center screw "B5" and the threaded post "D5" of the PixelVision SGT15P, as identified in exhibit L to the Supplemental Brinkerhoff Declaration (DI 100; *see* Exhibit A hereto), do not in and of themselves securely fix, firmly attach, or make fast the flat panel display device to the rear housing such that the rear housing provides substantial support for the flat panel display device.

g.  **ViewSonic's Position** – ViewSonic argues that RFA 11-16 simply seek LPL's contentions about the scope of its inventions, using the terminology supplied by LPL's own expert (Mr. Bohannon) during preliminary injunction briefing.  ViewSonic argues that it must understand how LPL defines the scope of its inventions in order for ViewSonic to be able to conduct depositions, research prior art, and prepare experts.  ViewSonic further argues that, because it is using the construction preferred by LPL's own expert for certain terms, there is no ambiguity or need for claim construction.  Motion at pp. 7-8.

h.  **LPL's Position** – LPL argues in opposition that RFA 11-16 contain wording that either quotes or paraphrases the claim language of the '641 Patent.  In order to properly respond, LPL argues that it would be required to construe that claim language, which would be premature and impermissible under Scheduling Order.  Additionally, LPL argues that, because the claim

16

language has not yet been construed, RFA 11-16 are vague and ambiguous and cannot be admitted or denied without explanation. LPL Opposition at pp. 8-9.

      **i.**      **Special Master's Conclusion** – As a starting point, the Special Master is persuaded that claim construction proffered by LPL's expert witness – for purposes of an earlier preliminary injunction motion – should not be considered in seeking admissions from LPL at this stage of the litigation. *See Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F. 3d 1364 (Fed. Cir. 2005). In *Pfizer*, the Federal Circuit noted:

> We also recognize that "district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." Indeed, **a conclusion of law such as claim construction is subject to change upon the development of the record after a district court's decision on a motion for preliminary injunction.**

429 F. 3d at 1377 (internal citations omitted) (emphasis added).

      Accordingly, the Special Master concludes that, to the extent that RFA 11-16 contain claim construction wording used by LPL's expert for purposes of the preliminary injunction phase of this litigation, those RFAs are vague and ambiguous because they do not contain meaningful interpretations of claim language for purposes of the discovery sought. LPL does not have to respond to RFA 11-16 to the extent they contain such vague and/or ambiguous language. *Fulhorst*, 1997 WL 873548 at *1.

      Additionally, the Special Master concludes that RFA 11-16 would improperly require LPL to construe the claim language of the patents-in-suit in order to respond. Specifically, RFA 11-12 and 15 request that LPL admit or deny whether certain assemblies conform to claims of the patents-in-suit. *See* RFA 11 ("as disclosed in the '641 Patent"), RFA 12 ("as disclosed in the '641 Patent" and "as claimed in the '641 Patent") and RFA 15 ("as defined by the '641 Patent"). RFA 11-16 all seek to have LPL admit or deny constructions based upon the actual claim language of

17

the patents-in-suit, or based upon paraphrases of claim language that utilize the constructions proposed by LPL's expert for purposes of the preliminary injunction phase. The Special Master concludes that, in light of the separate phase contemplated by the Scheduling Order for claim construction, it would be premature and impermissible at this juncture to require LPL to admit or deny certain claim constructions. *Tulip Computers*, 210 F.R.D. at 108 ("requests . . . requiring application of the claims prior to any Markman ruling . . . are requests for legal conclusions and therefore, improper.").

Accordingly, the Special Master concludes that ViewSonic's motion to compel LPL to respond to RFA 11-16 should be DENIED.

## Request for Admission No. 17

    **a.**    Request for Admission No. 17 reads as follows:

> Admit that the two top screws and two screw holes in the ViewSonic VX900 identified as "B" and "D" respectively in exhibit 6 to the Bohannon Declaration (DI 5; *see* Exhibit B hereto) attach the stand to the VX900 monitor.

    **b.**    **ViewSonic's Position** – ViewSonic argues that RFA 17 simply asks LPL to "admit that in the accused VX900, the two screws LPL identifies as the infringing 'fastening parts' attach the stand to the VX900 monitor." Motion at p. 8. ViewSonic notes that this Request relates to a fact concerning the construction or assemblage of the VX900. *Id.*

    **c.**    **LPL's Position** – LPL argues in opposition that this RFA contains language that either quotes or paraphrases the claim language of the '641 Patent. In order to properly respond, LPL is required to construe that language. This would be premature and impermissible under Scheduling Order. Additionally, LPL argues that RFA 17 poses a hypothetical in asking whether

18

certain elements "attach to the stand," and is vague and ambiguous and cannot be admitted or denied with minimal explanation. LPL Opposition at pp. 8-9.

    **d.**    **Special Master's Conclusion** – The Special Master does not agree that RFA 17 poses a hypothetical or that it requires claim construction. RFA appears to be properly calculated to test LPL's contentions as to the scope of its own inventions by asking LPL's understanding of an observable *fact* with respect to the accused product VX900.

    Accordingly, the Special Master concludes that ViewSonic's request to compel a response to RFA 17 should be GRANTED.

## Request for Admission No. 18

    **a.**    Request for Admission No. 18 reads as follows:

> As shown in exhibit 6 to the Bohannon Declaration (DI 5; *see* Exhibit B hereto), admit that when assembled, the two top screws identified as "B" and two screw holes identified as "D" do not in and of themselves securely fix, firmly attach, or make fast the VX900 LCD device to the rear housing identified as "A" such that the rear housing provides substantial support for the LCD device.

    **b.**    **ViewSonic's Position** – ViewSonic argues that RFA 18 simply seeks LPL's contentions about the scope of the inventions, using LPL's own expert's terminology. ViewSonic argues that it must understand LPL's contentions in order for it to be able to conduct depositions, research prior art, and prepare experts. Motion at p. 8.

    **c.**    **LPL's Position** – LPL argues in opposition that RFA 18 contains language that either quotes or paraphrases the claim language of the '641 Patent. In order to properly respond, LPL is required to construe that language. This would be premature and impermissible under Scheduling Order. LPL Opposition at p. 8. Additionally, LPL argues that RFA 18 poses a hypothetical in stating that the housing provides "substantial support," and its "fix, firmly attach,

or make fast" vague and ambiguous and cannot be admitted or denied with minimal explanation. *Id.* at pp. 8-9.

**d.** **Special Master's Conclusion** – The Special Master concludes that RFA 18 improperly requests that LPL conduct an infringement analysis of the accused product VX900 that assumes the claim construction proposed by LPL's expert for purposes of the preliminary infringement phase. *See Tulip Computers*, 210 F.R.D. at 108, as discussed *supra* at p. 15.

Because RFA 18 seeks an ultimate conclusion of law with respect to non-infringement, the Special Master concludes ViewSonic's motion to compel should be DENIED with respect to RFA 18.


## Request for Admission No. 19

**a.** Request for Admission No. 19 reads as follows:

Admit that the ViewSonic VX900 uses the prior art front mounting method disclosed in the '641 Patent.

**b.** **ViewSonic's Position** – ViewSonic argues that RFA 19 asks LPL to admit or deny whether the accused VX900 uses the prior art front mounting method. ViewSonic argues that, because the front mounting method is expressly defined in the patents-in-suit, LPL is requested to merely "admit or deny whether the features of the VX900 meet that express definition of front mounting." Motion at pp. 8-9.

**c.** **LPL's Position** – In opposition, LPL argues that RFA 19 seeks a legal conclusion by requesting LPL "to admit that the prior art is found in the accused device. Thus, if the accused device practices the prior art, the '641 Patent must be invalid." LPL Opposition at p. 9.

**d.** **Special Master's Conclusion** – The Special Master does not agree that RFA 19 seeks a legal conclusion with respect to validity. The '641 Patent may be valid irrespective of

20

whether the VX900 is found to be an infringing product.  However, the Special Master does conclude that RFA 19 seeks a legal conclusion with respect to infringement by the VX900.  RFA 19 "requires LPL to admit or deny whether the features of the VX900 meet [the] express definition of front mounting."  Because the patents-in-suit relate to rear mounting assemblies, ViewSonic improperly seeks an admission that the VX900 does not infringe because it practices the prior art, thereby seeking a legal conclusion of non-infringement.  *Fulhorst*, 1997 WL 873548 at *2 ("requests that seek legal conclusions are not appropriate under Rule 36").

Accordingly, the Special Master concludes that ViewSonic's motion to compel LPL to respond to RFA 19 should be DENIED.

## Request for Admission No. 22

ViewSonic's Motion papers identify Request for Admission 22 as a subject of the motion to compel.  Motion at p.2.  However, Request for Admission No. 22 is not further addressed in either ViewSonic's motion papers or LPL's opposition papers.  When questioned by the Special Master during oral argument, the parties agreed that Request for Admission No. 22 is no longer in dispute.  August 23, 2006 Transcript at 54:2-8.

## Request for Admission No. 23

a.       Request for Admission No. 23 reads as follows:

Admit that the part in the ViewSonic VX900 identified as "C" in exhibit 6 to the Bohannon Declaration (DI 5; *see* Exhibit B hereto) is not part of the LCD module identified as "H."

b.       **ViewSonic's Position** – ViewSonic argues that RFA 23 asks LPL to admit only that a component of the VX900 that LPL has identified as the infringing first frame is not actually part of the LCD module.  Motion at p. 9.  ViewSonic argues that the term "LCD

21

module" is not vague or ambiguous because it is a term that has been used by LPL in responding to other discovery. August 23, 2006 Transcript at 54:11-55:8.

  **c.**  **LPL's Position** – LPL argues that the phase "is not part of" is vague and ambiguous in the context of "LCD module," because it is not clear what ViewSonic considers to be the "LCD module" and whether that reference relates to its pre-assembly state, its post-assembly state, or both. <u>LPL Opposition</u> at p. 9. Additionally, LPL argues that it would have to construe the term "LCD device" as it pertains to the "LCD module" and that because RFA 23 requires claim construction, it is therefore premature and improper. *Id.*

  **d.**  **Special Master's Conclusion** – The Special Master concludes that RFA 23 appears to be properly calculated to test LPL's contentions as to the scope of its own inventions, by asking LPL's understanding of an observable fact with respect to the accused product VX900. To the extent that LPL's response would differ based upon whether the VX900 is observed pre-assembly or post-assembly, LPL should admit or deny the request for admission with an appropriate qualification that would appear to require only a minimal explanation. *Fulhorst*, 1997 WL 873548 at \*1-2 (requests for admission may relate to statements or opinions of fact and "should be phrased so that they can be admitted or denied with minimal explanation").

  The Special Master therefore concludes that ViewSonic's Motion to compel LPL to respond to RFA 23 should be GRANTED.


**<u>Request for Admission Nos. 28-30</u>**

  **a.**  **Request for Admission No. 28** reads as follows:

> Admit that LPL believes the Sharp TV LC-20B4U-S (shown in LPL-00030) infringes at least one claim of either of the Patents-in-Suit.

  **b.**  **Request for Admission No. 29** reads as follows:

Admit that LPL believes the Sharp monitor LN-T1620-H (shown
in LPL-00006) infringes at least one claim of either of the
Patents-in-Suit.

c.   **Request for Admission No. 30** reads as follows:

Admit that LPL believes the Fujitsu-Siemens 5110 FA (shown in
LPL-00031) infringes at least one claim of either of the Patents-
in-Suit.

d.   <u>**ViewSonic's Position**</u> – ViewSonic states that RFA 28-30 simply ask LPL to
admit whether or not it believes that certain Fujitsu and Sharp products – identified by LPL in
response to interrogatories as products that possibly infringe the patents-in-suit – infringe the
patents-in-suit. ViewSonic states it does not seek a legal conclusion as to whether or not the
identified products actually infringe, only whether LPL subjectively believes that those products
infringe. <u>Motion</u> at p. 10.

e.   <u>**LPL's Position**</u> – Relying on *Fulhorst*, LPL argues in opposition that RFA 28-30
impermissibly seeks ultimate legal conclusions as to whether the identified products infringe.
Because a determination of whether a product infringes requires claim construction and the
Scheduling Order controls the claim construction process, LPL argues that these Requests are
also premature and impermissible under the Scheduling Order. <u>LPL Opposition</u> at pp. 9-10.

f.   <u>**Special Master's Conclusion**</u> –The Special Master concludes, as an initial matter,
that LPL's reliance on *Fulhorst* is misplaced. Although *Fulhorst* holds that requests for
admission that seek legal conclusions are not appropriate under Fed. R. Civ. P. 36, 1997 WL
873548 at *2-3, that issue is not raised by RFA 28-30. Rather, the Special Master concludes that
RFA 28-30, as worded, seek admissions as to LPL's subjective *beliefs* regarding infringement,
not legal conclusions that the subject products actually infringe. *Fulhorst* makes clear that
seeking such opinion is permissible under Fed. R. Civ. P. 36. 1997 WL 873548 at 2 ("requests
for admission may relate to statements or opinions of fact . . . ").

23

Although Rule 36 permits ViewSonic to elicit opinion testimony, Rule 26(b)(1) requires that ViewSonic show that the admissions sought relate to matters relevant to the claims or defenses in this action. When questioned in this regard during oral argument, ViewSonic explained that RFA 28-30 are calculated to seek admissions related to noninfringing alternatives, as well as with respect to commercial success. August 23, 2006 Transcript at 57:16-58:20.

The Special Master therefore concludes that RFA 28-30 relate to matters that are relevant to defenses in this action. Accordingly, the Special Master concludes that ViewSonic's motion to compel responses to RFA 28-30 should be GRANTED.

## Request for Admission Nos. 31-32

a. **Request for Admission No. 31** reads as follows:

> Admit that LPL is aware of the manner or method by which the LCD device in the ViewSonic VX2000 monitor is mounted to the housing.

b. **Request for Admission No. 32** reads as follows:

> Admit that the VX900 uses the same manner or method of mounting the LCD device to the housing as is used in the VX2000.

c. **ViewSonic's Position** – ViewSonic argues that RFA 31-32 merely seek to establish the basic facts of (i) whether or not LPL is familiar with the manner in which the LCD device is mounted to the housing of the VX2000 (RFA 31), and (ii) whether or not the LCD device in the VX900 is mechanically mounted to the housing in the same way as the VX2000 (RFA 32). ViewSonic explains that, although the VX2000 has not been identified as an accused product in this case, LPL previously accused the VX2000 of infringing an LPL foreign patent (allegedly, the counterpart to the patents-in-suit) in an infringement action brought in the UK, and that an attorney from McKenna Long & Aldridge – the law firm representing LPL in the instant case – attended the UK infringement trial. Motion at p. 9.

24

**d**   <u>**LPL's Position**</u> – LPL argues that responding to RFA 31-32 would require that LPL first construe the applicable claims of the '718 Patent and, therefore, RFA 31-32 are premature and improper under the Scheduling Order. LPL additionally argues that RAF 31-32 pose hypothetical situations that cannot be admitted or denied with minimal explanation and, therefore, are improper. <u>LPL Opposition</u> at p. 10.

**e.**   <u>**Special Master's Conclusion**</u> – The Special Master concludes that RFA 31 is a permissible request for admission under Rule 36 in that it seeks an admission only of the *fact* of whether LPL is or is not *aware* of the method of mounting utilized by the VX2000. The Special Master concludes that RFA No. 32 is also a permissible request for admission under Rule 36 in that it seeks an admission of an observable *fact* with respect to the similarity of mounting between an accused device in the instant action and that of the accused device in an earlier infringement action brought by LPL in the UK.

Accordingly, the Special Master concludes that ViewSonic's motion to compel LPL to respond to RFA 31-32 should be GRANTED.

## CONCLUSION

For the foregoing reasons, the Special Master concludes that ViewSonic's motion to compel should be GRANTED in part, and DENIED in part, as follows:

**1.**   <u>**Grant of Relief Recommended**</u> – The Special Master concludes that, to the extent LPL has not already done so, LPL should be required to serve responses or supplemental responses, as applicable, to ViewSonic within five (5) business days of the date of this Report and Recommendations for the following Interrogatories and Requests for Admission:

- Interrogatory No. 1;

25

- Interrogatory No. 3;

- Interrogatory No. 4;

- Interrogatory No. 7;

- Interrogatory No. 8;

- Interrogatory No. 12 (qualification information only);

- Request for Admission No. 17;

- Request for Admission No. 23;

- Request for Admission No. 28;

- Request for Admission No. 29;

- Request for Admission No. 30;

- Request for Admission No. 31; and

- Request for Admission No. 32.

2.     **<u>Denial of Relief Recommended</u>** – The Special Master concludes that LPL should

**not** required to serve responses or supplemental responses to ViewSonic with respect to the

following Requests for Admission:

- Request for Admission No. 5;

- Request for Admission No. 6;

- Request for Admission No. 7;

- Request for Admission No. 8;

- Request for Admission No. 9;

- Request for Admission No. 10;

- Request for Admission No. 11;

- Request for Admission No. 12;

26

- Request for Admission No. 13;

- Request for Admission No. 14;

- Request for Admission No. 15;

- Request for Admission No. 16;

- Request for Admission No. 18; and

- Request for Admission No. 19.


      **The Special Master's Report and Recommendation will become a final order of the Court unless objection is timely taken in accordance with the provisions of Fed. R. Civ. P. 53(g).**

ENTERED this
8th day of November, 2006

                                          Vincent J. Poppiti  (DSBA No. 100614)
                                          Special Master

062038.00612/40164235v.1