# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) C. A. No. 04-343-JJF | |
| TATUNG CO.; ) | |
| TATUNG COMPANY OF AMERICA, INC.; ) | |
| and VIEWSONIC CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT VIEWSONIC CORPORATION'S MOTION TO COMPEL
RESPONSES TO INTERROGATORIES & REQUESTS FOR ADMISSIONS**

OF COUNSEL:

Scott R. Miller
Tracy R. Roman
BINGHAM MCCUTCHEN LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400

Dated: July 31, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
ViewSonic Corporation*

Defendant ViewSonic Corporation respectfully requests an Order requiring LG.Philips LCD Co., Ltd. ("LPL") to answer certain Interrogatories and deem admitted (or compel responses to) certain Requests for Admission as described below. As set forth in ViewSonic's Local Rule 7.1.1 Certification submitted concurrently herewith, the parties have met and conferred and exchanged various correspondence in an effort to resolve these issues informally. Unfortunately, the parties could not reach agreement on all the disputed issues, resulting in the need for this motion to compel.

LPL accuses ViewSonic's VX900 of infringing two patents LPL contends relate to mounting flat panel display devices into housings for products such as computer monitors. Interestingly, the screws that LPL argues mount the flat panel display device into the VX900 housing actually attach the stand to the VX900 – after the flat panel display device is already mounted into the housing. This point can be observed in the annotated pictures attached to LPL's interrogatory responses; *see* Exhibit 3. Given the lengths to which LPL is stretching application of the patents-in-suit, it is critical for ViewSonic's defense that it identify the scope of LPL's contentions through discovery. It is that discovery that is in dispute.

Underlying virtually all of LPL's refusals to provide discovery responses is an objection that the disputed discovery requires LPL to disclose its contentions regarding the matters on which it bears the burden of proof. Specifically, LPL objects that the disputed discovery requires LPL to construe claim terms and perform infringement analysis. As discussed below, not only is this position not well taken in many instances, it flies in the face of the Court's Scheduling Order (as well a s LPL's obligations under the Federal Rules) which *specifically provides* that contention discovery should be completed before the Markman proceedings. D.I. 198. The Markman hearing is scheduled for February 1, 2007.

Even in the absence of the Scheduling Order, LPL's objections would be improper. LPL must have facts and contentions on which it makes its infringement

claims, and it must provide those to ViewSonic now, not six months from now. *See, e.g., Whitserve LLC v. Computer Patent Annuities N.A., LLC*, 2006 WL 1273740 (D.Conn. May 9, 2006).[1] In *Whitserve*, the plaintiff objected to an interrogatory asking it to state how each claim limitation should be construed, including its construction of each term. *Id.* at *1. The court granted the defendant's motion to compel over an objection that no Markman had occurred, noting "basic fairness" required the plaintiff to first provide meaning to those claims that were allegedly infringed. *Id.* at *3. Here, ViewSonic is merely seeking what is considered standard in this District. *See, e.g.*, Form Scheduling Orders for Judge Robinson and Judge Jordan, and pages 30-31 of the hearing transcript from *Honeywell Int'l, Inc., et al. v. Audiovox Communications Corp., et al.* Case Nos. 04-1337, 04-1338, and 04-1536 KAJ, attached hereto as Exhibits 1 and 2, respectively.

ViewSonic thus seeks to compel responses to Interrogatory numbers 1, 3, 4, 7, 8, and 12, and to Requests for Admission numbers 3, 5-19, 22, 23, 28-32.[2] ViewSonic further respectfully requests that the Special Master award sanctions in the amount of its costs associated with overcoming LPL's unjustified refusal to respond to this discovery.

## I.   INTERROGATORIES

"A defendant charged with infringement of a patent is entitled to use discovery mechanisms to determine the plaintiff's contentions as to each element of the claim." *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 173 F.R.D. 367, 375 (W.D.N.Y. 1995); *see also Carver v. Velodyne Acoustics, Inc.*, 202 F.R.D. 273, 274 (W.D.Wash. 2001)("Claim charts are standard discovery requests in patent infringement cases and are both relevant and discoverable."). Contention interrogatories are a favored form of discovery, and are specifically called out in the Court's Scheduling Order to be completed long before the

---

[1] Per the Special Master's procedures, the cases and statutes/rules cited herein can be found in Appendix A, submitted concurrently herewith.
[2] The disputed discovery and responses are attached hereto as Exhibits 3 and 4, respectively.

Markman hearing. D.I. 198; *see Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 157-58 (D.Del. 1977)(interrogatories may properly inquire into a party's contentions).

Interrogatory 1 asks LPL to set forth its infringement contentions. It is harder to imagine a more proper contention interrogatory to ask of a plaintiff-patentee. *See Bausch & Lomb*, 173 F.R.D. at 375. Yet, LPL merely provides a perfunctory response without any meaningful details. The instant case was filed by LPL in May, 2004. LPL unsuccessfully sought a preliminary injunction. LPL's objection that it cannot provide a detailed response prior to claim construction is gamesmanship at its worst.[3] *See, e.g., Medtronic, Inc. v. Guidant Corp*, 2003 WL 23864972 *1, *3 (D.Minn. 2003)(rejecting argument that party need not answer contention interrogatory until after Court issues claim construction order).

Interrogatory 7 asks the basis for LPL's contention ViewSonic products have enjoyed commercial success due to the Patents-in-Suit. LPL says it cannot respond without discovery from ViewSonic; but if LPL has no evidence, it should simply so state. *Medtronic*, 2003 WL 23864972 at *4. Moreover, ViewSonic has already provided LPL with this information for the lone accused ViewSonic product, the VX900. This issue is critical since commercial success can be totally unrelated to the alleged incorporation of the Patents-in-Suit, and rather, can be based on a variety of factors including brand loyalty and advertising. LPL's offer to supplement this response to say "evidence of commercial success includes the fact that the technology protected by the Patents-in-Suit is, to LPL's knowledge, widely employed in the industry. . ." is inadequate. It omits many key details, such as: *who* is "employing" the technology, in *what products*, in *what markets*, and *what are the facts* that establish sales and public acclaim.

---

[3] LPL also objected to this Interrogatory as prematurely requiring claim construction. ViewSonic explained that this objection was unfounded as to each interrogatory. The Local Rule 7.1.1 Certification details the parties' efforts to resolve their dispute regarding exchanging infringement and invalidity contentions, but LPL has forestalled those efforts. Thus, ViewSonic is moving to compel a complete response to this Interrogatory as well.

3

Interrogatory 8 seeks the facts supporting LPL's contention of willful infringement. LPL responded merely that "ViewSonic ... has infringed the Patents-in-Suit, by, for example, importing ... products known to infringe the Patents-in-Suit, and continuing to do so including after LPL filed this lawsuit." Again, LPL wrongly provides no facts, only a conclusion. See *Fresenius Medical Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 652 (N.D.Cal. 2004). LPL refuses to state what must be true – that it presently has no facts to support this contention. The discovery rules require more from LPL. See *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 515-16 (D.Minn. 1992)(rejecting argument that parties wait until they know exactly what supportive facts they intend to rely on before answering interrogatory).

Interrogatory 12 seeks facts supporting LPL's contention that specific references do not qualify as prior art. LPL responds in rote that each reference fails to teach "at least one of the following elements" and then lists the 3 main elements of each asserted claim. For example:

> The PixelVision SGT15P fails to anticipate claim 35 of the '641 patent because the device of the PixelVision SGT15P fails to teach at least the following limitations: 1) a rear mountable flat panel display device; 2) a first frame having a fastening part at a rear surface of the first frame; and 3) the first frame...capable of being fixed to a housing...through the fastening part at the rear surface of the first frame.

This improper response requires ViewSonic to guess at which of the enumerated elements LPL is contending are absent from the prior art. Nor does the response suggest any reason LPL has for distinguishing between the allegedly infringing components of the accused VX900 and components in the PixelVision. The response is simply incomplete. See *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).

Finally, Interrogatories 3 and 4 ask LPL to identify the ViewSonic products it had before and after filing the complaint. Neither asks for legal analysis, opinions, or communications. Thus, LPL's attorney client/work product privilege objection is without

4

merit. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 118 F.R.D. 420, 421-22 (E.D. Pa. 1987) (compelling response to interrogatory that only sought identification of documents and individuals).

## II.   REQUESTS FOR ADMISSION

A party may request admission of the truth of any discoverable matters that relate to (1) statements or opinions of fact; (2) the application of law to fact; and (3) the genuineness of any documents. *See* FRCP 36(a). Contrary to LPL's assertions, the disputed RFAs seek nothing more than what this rule allows.

A.   **Claim Construction Objection:** In response to each disputed RFA LPL objected on the grounds that each is "premature and improper because it addresses infringement and/or patent/claim term meaning and interpretation." This objection is not well taken as discussed above. In its post meet and confer letter, LPL seeks to misconstrue Magistrate Thynge's opinion in *Tulip v. Dell*.[4] After noting that any party can find a favorable case on each side of any issue, the Court concluded that the requests for admission at issue *in that case* were not proper because they sought to compel the patentee to admit what the invention was or was not. *Id. at* 108. The Court differentiated the requests there from what it considered proper requests – *i.e.*, those directed to facts about an invention. *Cf. Fulhorst v. United Techs. Automotive, Inc.*, 1997 WL 873548 *1, *2-*3 (D.Del. 1997)(an example of an RFA seeking legal conclusion is one that asks whether certain structure would not infringe patents-in-suit).

Here the disputed RFAs do not ask LPL to admit what the invention is, nor to apply the patent claims. Rather, they properly seek admissions as to underlying facts, such as the existence of an express statement or description in the patents-in-suit, or of certain observable components in products or references, or the relationship between components. *Compare, e.g., P.R.S. Int'l, Inc. v. Shred Pax Corp.*, 703 N.E.2d 71, 77-80

---

[4] 210 F.R.D. 100 (D.Del. 2002).

5

(D.Del. 1997) (distinguishing between RFAs seeking facts and those seeking legal conclusions). While these underlying facts may eventually form the basis for legal conclusions, nothing in *Tulip* suggests that these facts are not discoverable before the Markman. Indeed, it is this Court's practice for the parties to set forth their claim interpretations and contentions before, not after Markman, as reflected in the Scheduling Order. D.I. 198.

Importantly, LPL has already twice proffered its own construction of claim terms. LPL's expert William Bohannon first defined the terms housing, frame, case, and data processing device in his declaration supporting LPL's Motion for Preliminary Injunction. D.I. 5. Using this claim construction, ViewSonic proffered numerous prior art references in its opposition. Evidently concerned about those references, Mr. Bohannon submitted another declaration proffering different, narrower constructions for housing and frame, and offering first-time constructions for the terms rear mountable and fastening part. D.I. 171. *See* attached Exhibit 5 setting forth LPL's various claim constructions. These are the same terms used in the disputed RFAs that LPL now says it cannot answer without the Court's claim construction. LPL is using claim construction as both a sword and a shield – freely construing terms when it helps its case and refusing to when it hurts its case. The Special Master should not indulge LPL's improper double standard, and instead, should overrule this objection for each RFA.

**B.    Identifying The Patent Objects:** RFA 3 asks LPL to admit what the patent discloses as the objects of the invention. Either the information is stated in the patent or it is not. This requires no more claim construction than if the RFA had instead asked how many claims were in the patent, or whether it claims priority to a Korean patent.

**C.    Achieving The Objects (RFAs 5-10):** According to the patents, the problem with the prior art is that it requires side space identified as "D" and comprised of "d1" and "d2." The stated object of the patents-in-suit, therefore, is to eliminate the side

space "D" in order to maximize the size of the display area in relation to the product's housing. To determine whether a product does or does not have this side space simply requires looking at the product. No claim construction is required. Thus, LPL should respond to RFAs 5-7, each of which ask LPL to admit or deny that the accused VX900 contains those identified side spaces. Indeed, LPL had no difficulty saying in its Complaint and its unsuccessful preliminary injunction motion that the VX900 contains various features of the patent claims.

LPL similarly tries to avoid RFAs 8-10 which ask LPL to admit or deny that practicing the disclosed inventions solves the stated side space problem. It is absurd that LPL cannot admit or deny whether its invention achieves its stated object until after claim construction.

LPL's objection that these RFAs present hypotheticals is equally baseless. They ask for real facts, not the application of concepts or assumed facts *Contrast Fulhorst*, 1997 WL 873548 at *2 (RFA asked Plaintiff to admit a hypothetical use of its device would infringe.) LPL should be required to respond to these RFAs.

    **D.**    **Ascertaining Scope Of Invention (RFAs 11-18):** LPL's expert Mr. Bohannon proffered constructions for the terms "rear mountable" and "fastening part." *See* Exhibit 5. Using the language from Mr. Bohannon's own declarations, ViewSonic asked RFAs that sought to determine the scope of the invention, particularly as LPL distinguishes it from the prior art "front mounting." For example, RFA 11 asks:

> Admit that, as disclosed in the '641 Patent, the rear housing substantially supports the flat panel display device, when the flat panel display device is mounted to the rear housing via the fastening part at the rear surface of the first frame.

This language is taken directly from Mr. Bohannon's construction of "rear mountable" and therefore, presents no ambiguity, no need for claim construction, or hypothetical. *See Hercules*, 434 F.Supp. at 158 (overruling vague objection where

disputed terms were taken from document plaintiff prepared). Indeed, LPL, through Mr. Bohannon, distinguished 10 different references cited in ViewSonic's preliminary injunction opposition by arguing, among other things that each reference:

> is not rear mounted because the flat panel display is not mounted via fastening elements on the rear surface of the frame ... to a rear housing such that the rear housing substantially supports the flat panel display device.

D.I. 171. Despite the ease with which LPL distinguished ViewSonic's prior art references, LPL now complains it would be premature to make such assessments. That is plainly disingenuous.

Equally disturbing is LPL's refusal to respond to RFA 17, which asks LPL to admit that in the accused VX900, the two screws LPL identifies as the infringing "fastening parts" attach the stand to the VX900 monitor. Aside from the baseless claim construction and ambiguity objections, LPL objects that this Request poses "a question hypothetically and/or in the abstract, precluding a response without clarification and/or explanation." This objection makes no sense. The construction or assemblage of the VX900 is a fact, not a hypothetical assumption. *See, e.g., Lamoreux v. Genesis Pharmacy Servs., Inc.*, 226 F.R.D. 154, 162-63 (D.Conn. 2004)(finding RFA seeking identification of features of accused trade dress infringement product proper).

RFAs 11-18 each simply seek LPL's contentions about the scope of the inventions, using LPL's own expert's terminology, and are critical to ViewSonic's ability to conduct depositions, research prior art, and prepare experts – all of which the Court scheduled to happen before claim construction. ViewSonic should not be forced to defend itself with blinders on.

E.   **VX900 Features (RFAs 19, 23, 31, 32):** Each of these RFAs ask LPL to admit or deny whether the accused VX900 has certain features. For example, RFA 19 asks LPL to admit that the VX900 uses the prior art front mounting method. The front

8

mounting method is expressly defined in the patents-in-suit, and therefore requires no explanation, or construction. It merely requires LPL to admit or deny whether the features of the VX900 meet that express definition of front mounting. This should be an easy one for LPL to deny. After all, if the VX900 infringes the patents-in-suit because it practices rear mounting, it cannot possibly practice the prior art front mounting.

RFA 31 and 32 are also easy for LPL to admit or deny. These ask LPL to admit that the VX900 uses the same method of mounting as another monitor, the VX2000. LPL accused the VX2000 of infringing its UK patent, No. 04022, which is the foreign counterpart to the patents-in-suit. At least one lawyer involved in this case from McKenna Long & Aldridge attended and observed the UK trial. As the Special Master may be aware, LPL lost that case at trial and is now appealing various issues, but not the issue of infringement by ViewSonic. LPL is thoroughly familiar with the manner in which the LCD device is mounted to the housing of the VX2000, just as it is the VX900. These RFAs present no ambiguity or hypothetical, seek no legal conclusion, and do not require claim construction. Rather, they are basic questions of fact: either the LCD device in the VX900 is mechanically mounted to the housing in the same way as the VX2000 or it is not. LPL's refusal to respond to these RFAs is intolerable gamesmanship.

LPL's excuse for not answering RFA 23 is likewise derisory. It asks LPL to admit that the part of the VX900 that LPL has identified as the infringing first frame is not actually part of the LCD module. LPL manufactures and sells LCD modules. On its website under the heading, "What is a TFT-LCD," LPL has posted a description of the "TFT-LCD Module Layers" (*see* Exhibit 6). Despite its wealth of expertise on LCD modules, however, LPL objects that it is unclear whether in this RFA the phrase "part of" refers to "pre-assembly, post-assembly, or both" and that responding requires clarification or explanation. As much as LPL would like to avoid it, this is the time for truthfulness.

F.  **Other Potential Infringers (RFAs 28-30).** In response to Interrogatories, LPL indicated that it has identified certain Fujitsu and Sharp products as possibly infringing the patents-in-suit. LPL has even had discussions with both companies about this issue. These RFAs simply ask LPL to admit that *it believes* those products infringe the patents-in-suit; it does not seek the legal conclusion that they actually infringe. It is baffling that LPL agrees to provide the information in one form of discovery and objects to providing it in a different form.

### III.  SANCTIONS

LPL lacked substantial justification for its refusal to respond to this discovery. Thus, pursuant to FRCP 37(a)(4)(A), ViewSonic respectfully requests that LPL be required to reimburse ViewSonic for the costs it has incurred in compelling responses to this discovery.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Scott R. Miller
Tracy R. Roman
BINGHAM MCCUTCHEN LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400

Dated: July 31, 2006

By: _____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
ViewSonic Corporation*

743379

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 31, 2006, a true and correct copy of the within document was caused to be served on the attorney of record at the following addresses as indicated:

**VIA HAND DELIVERY**

**SPECIAL MASTER**
The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

**VIA ELECTRONIC MAIL**

Daniel G. Jarcho
Cass W. Christenson
Andrew J. Park
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
djarcho@mckennalong.com
cchristenson@mckennalong.com

Mark H. Krietzman
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404
krietzmanm@gtlaw.com

_____
David E. Moore

743404