## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

        Plaintiff/Counterclaim Defendant,

        v.

TATUNG CO.; TATUNG COMPANY OF
AMERICA, INC.; and VIEWSONIC
CORPORATION,

        Defendants/Counterclaim Plaintiffs.

Civil Action No. 04-343 (JJF)

## PLAINTIFF LG.PHILIPS LCD CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT VIEWSONIC CORPORATION'S OBJECTIONS TO PORTIONS OF SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON VIEWSONIC CORPORATION'S MOTION TO COMPEL DISCOVERY

December 5, 2006

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

THE BAYARD FIRM

Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

# TABLE OF CONTENTS

I.     NATURE & STAGE OF THE PROCEEDINGS ................................................... 1

II.    SUMMARY OF ARGUMENT ............................................................................. 2

III.   STATEMENT OF FACTS .................................................................................. 3

IV.    ARGUMENT ...................................................................................................... 4

    A.    Legal Standards .......................................................................................... 5

    B.    The Court Should Overrule ViewSonic's Objections and Adopt the
        Special Master's Recommendations Concerning Improper Request
        for Admission Nos. 5, 6 and 7 .................................................................. 7

    C.    The Court Should Overrule ViewSonic's Objections and Adopt the
        Special Master's Recommendations Concerning Improper Request
        for Admission No. 15 .............................................................................. 12

    D.    The Requests for Admission Should Not Be Deemed Admitted as a
        Matter of Law .......................................................................................... 15

    E.    ViewSonic's Objections to the Report Are Untimely.............................. 16

V.     CONCLUSION ................................................................................................ 17

i

# TABLE OF AUTHORITIES

## CASES

*Abbott v. United States*,
   177 F.R.D. 92 (N.D.N.Y. 1997)................................................................................ 6

*Cybor Corp. v. FAS Techs.*,
   138 F.3d 1448 (Fed. Cir. 1998).............................................................................. 14

*Fulhorst v. United Technologies Auto., Inc.*,
   1997 WL 873548 (D. Del. 1997) ....................................................................... 6, 7, 10

*In re Carney*,
   258 F.3d 415 (5th Cir. 2001) ................................................................................. 6

*Josephs v. Harris Corp.*,
   677 F.2d 985 (3rd Cir. 1982) ............................................................................. 15, 16

*Kosta v. Connolly*,
   709 F. Supp. 592 (E.D. Pa. 1989) .......................................................................... 6

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
   210 F.R.D. 100 (D. Del. 2002) ....................................................................... 6, 7, 9, 10

*United Coal Companies v. Powell Const. Co.*,
   839 F.2d 958 (3rd Cir. 1988) ............................................................................. 6, 11

## STATUTES

Fed. R. Civ. P. 36.............................................................................................. 6

Fed. R. Civ. P. 53(g) ......................................................................................... 5

Fed. R. Civ. P. 6(e) .......................................................................................... 3

This is Plaintiff LG.Philips LCD Co., Ltd.'s ("LPL") Answering Brief in Opposition to Defendant ViewSonic Corporation's ("ViewSonic") Objections to Portions of Special Master's Report and Recommendations on ViewSonic Corporation's Motion to Compel Discovery.

## I.    NATURE & STAGE OF THE PROCEEDINGS

This is a patent infringement case. LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting techniques used in visual display products such as plasma or liquid crystal display ("LCD") computer monitors and laptop computers.

Discovery in this case is ongoing. The parties will begin briefing *Markman* issues on December 15, 2006. (D.I. 286.) This matter is set for a jury trial to begin on January 21, 2008. (D.I. 198.)

Pursuant to this Court's Orders, the parties have presented all discovery disputes arising in this case to Special Master Vincent J. Poppiti (the "Special Master"). (D.I. 174 and 178.) As applicable here, on August 23, 2006, the Special Master heard oral argument (the "Hearing") from ViewSonic and LPL concerning disputes raised in ViewSonic's July 31, 2006 motion to compel (the "Motion"). Prior to the Hearing, the parties stipulated that any objections to the Special Master's recommendations concerning ViewSonic's Motion would be submitted to the Court within five business days of the date that the Special Master's Report and Recommendations issued. (*See* Hr'g Tr. at 33-34 (Aug. 23, 2006), cited portions of which are attached as Exhibit 1.) The Special Master issued his Report and Recommendations (the "Report") on November 8,

2006. (*See* Report (D.I. 306), a copy of which is attached as Exhibit 2.) In his Report, the Special Master properly recommended that LPL should not be required to further respond to ViewSonic's Request for Admission Nos. 5-7 and 15. (*See id.* at 11-18.) In its Objections to Portions of Special Master's Report and Recommendations on ViewSonic Corporation's Motion to Compel Discovery (the "Objections") (D.I. 316), ViewSonic challenges the Special Master's recommendations concerning Requests 5-7 and 15.

## II.    SUMMARY OF ARGUMENT

The Special Master correctly determined that ViewSonic's Request for Admission Nos. 5-7 are improper because they require LPL to engage in an artificial comparison of an accused product (the ViewSonic VX900, a desktop computer monitor) to a different type of product (a laptop computer identified in the '641 Patent as prior art). Further, ViewSonic *admits* that Requests 5-7 relate to comparisons with alleged prior art, and not to the inventions recited by the Patents-in-Suit. As a result, the Special Master concluded that Requests 5-7 "are improperly calculated to seek legal conclusions that the accused product practices the prior art instead of the invention covered by the Patents-in-Suit." (Ex. 2 at 13-14.) In its briefing to the Special Master, both before and after the Hearing, ViewSonic *admitted* that Requests 5-7 require LPL to compare ViewSonic's VX900 to the prior art, which, in turn, requires LPL to draw legal conclusions. (*See* ViewSonic's Mot. to Compel Resps. to Discovery Reqs. from LPL (July 31, 2006), a copy of which is attached (without exhibits) as Exhibit 3; ViewSonic's Supp. to Mot. to Compel (Sept. 26, 2006), a copy of which is attached (without exhibits) as Exhibit 4.) In his Report, the Special Master identified those admissions as bases for his recommendation that LPL

2

should not be required to respond to Requests 5-7. (*See* Ex. 2 at 13-14.) Additionally, Requests 5-7 are ambiguous, such that LPL is unable to answer with a minimum of qualification or explanation.

Similarly, ViewSonic's Request for Admission No. 15 is improper because it seeks LPL's position on a legal conclusion that is central to the issues in this case. Request 15 also requires LPL to engage in premature claim construction. (*See id.* at 17-18.) Further, Request 15 is so ambiguous that LPL cannot fairly answer and cannot respond with a minimum of qualification or explanation. (*See id.*)

Among its requests for relief, ViewSonic asks the Court to deem its Requests 5-7 and 15 to have been admitted by LPL. (*See* Objecs. at 1.) However, because LPL properly and timely submitted objections to each of Requests 5-7 and 15 and because those objections were later sustained by the Special Master's Report, ViewSonic has no basis to ask that any of its Requests for Admission be deemed admitted.

Finally, ViewSonic's Objections are untimely. Prior to the Hearing, the parties agreed by stipulation that any objections to the Special Master's recommendations were to be filed within five business days after the Special Master issued his Report. Because the timetable was set by the parties' stipulation, the provisions of Fed. R. Civ. P. 6(e) do not apply and ViewSonic's Objections, which were filed late, should be disregarded.

## III.  STATEMENT OF FACTS

The facts identified below are relevant to this dispute:

1.    Filed on July 31, 2006, ViewSonic's Motion raised disputes with numerous of ViewSonic's Interrogatories and Requests for Admission. (*See generally* Ex. 3.)

3

2.    During the Hearing on August 23, 2006, the Special Master heard argument on each of these disputed discovery requests. (*See generally* Ex. 2.)

3.    Following the Hearing, on September 26, 2006, ViewSonic filed a supplement to the Motion, in which it reasserted disputes concerning, among others, Requests 5-7 (the "Supplemental Submission"). (*See generally* Ex. 4.) The Supplemental Submission did not address Request 15.

4.    In his November 8, 2006 Report, the Special Master found that many of the discovery requests addressed by ViewSonic's Motion were improper for variety of reasons, including that they improperly sought legal conclusions and/or premature claim construction. (*See generally* Ex. 2.) Accordingly, the Special Master recommended that LPL should ***not*** be required to serve responses or supplemental responses to ViewSonic's Request for Admission Nos. 5-16, 18 and 19. (*See id.* at 26-27.)

5.    ViewSonic has objected to the Report only as the Special Master's recommendations pertain to Request for Admission Nos. 5-7 and 15.

6.    The parties agreed to submit any objections to the Special Master's Report within five business days after the Report was filed. (*See* Ex. 1 at 33-34.)

## IV.    ARGUMENT

The Court should adopt and uphold the Special Master's conclusions that Requests 5-7 and 15 are not appropriate under Rule 36. ViewSonic failed to challenge the Special Master's Report within the five (5) business day time limit agreed to by the parties. (*Cf.* Ex. 1 at 33-34 (noting parties' stipulation to five-day limit).) Therefore, the Court should disregard ViewSonic's untimely challenge to the Special Master's Report.

Even if the Court considers ViewSonic's Objections, Requests 5-7 and 15 contravene the settled scope of Rule 36 in patent cases. Rule 36 cannot be used to force an opposing party to provide legal conclusions concerning infringement, validity, or claim construction, as ViewSonic is trying to do. Requests 5-7 and 15 are objectionable not only because they present questions of law, but also because they do so using ambiguous and unclear terms that cannot be fairly and succinctly denied or admitted.

Rule 36 is intended to resolve discrete factual issues that are not in dispute, yet ViewSonic improperly uses Requests 5-7 and 15 to seek broad-brush concessions on disputed legal issues that lie at the heart of this case. ViewSonic presumably recognizes that others of its Requests for Admission are improper as ViewSonic does not challenge the Special Master's rulings regarding those other Requests, including Request for Admission Nos. 8-14, 16, 18 and 19, all of which the Special Master found to improperly require legal conclusions or premature claim construction. As the Special Master concluded, Requests 5-7 and 15 are equally improper. Therefore, if the Court opts to address the merits of ViewSonic's untimely objections, then the Court should overrule each and every one of ViewSonic's objections to the Special Master's Report.

## A.    Legal Standards

Pursuant to Fed. R. Civ. P. 53(g), a discovery master's findings of fact and conclusions of law are subject to *de novo* review by the District Court. In reviewing a discovery master's report, the Court may wholly or partly reject, adopt or modify any of the master's recommendations. *See* Fed. R. Civ. P. 53(g)(1).

A party cannot use requests for admission to seek legal conclusions.[1] *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002); *Kosta v. Connolly*, 709 F. Supp. 592, 594 (E.D. Pa. 1989); Fed. R. Civ. P. 36. For example, "requests directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper." *Tulip Computers*, 210 F.R.D. at 108. Further, where a request for admission poses a hypothetical scenario, it improperly asks the respondent to make legal conclusions about facts not at issue and, therefore, need not be answered. *See Fulhorst v. United Technologies Auto., Inc.*, 1997 WL 873548, *3 (D. Del. 1997), a copy of which is attached as Exhibit 6; *Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997).

Every Rule 36 request for admission should be stated "in simple and concise terms in order that it can be denied or admitted with an ***absolute minimum of explanation or qualification***." *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 967-68 (3rd Cir. 1988) (emphasis added) (internal citations omitted); *see Tulip Computers*, 210 F.R.D. at 107; *Fulhorst*, 1997 WL 873548, *1 (citing *United Coal*). Further, "[a] party is not required to respond to a request that contains vague or

---

[1] In its Objections, ViewSonic cites to the decision in *In re Carney* 258 F.3d 415, 419 (5th Cir. 2001) to support its assertion that requests for admission under Rule 36 *may* address legal conclusions at issue in the case. (*See* Objecs. at 5.) The *In re Carney* case is inapposite here particularly because it conflicts with precedent from within the Third Circuit and the decisions of this Court. *See Tulip Computers*, 210 F.R.D. at 108 (D. Del. 2002); *Kosta*, 709 F. Supp. at 594. Indeed, the court in *In re Carney* acknowledged a split of authority on this issue and specifically references the *Kosta* decision, from the Eastern District of Pennsylvania, as "suggesting that Rule 36 should ***not*** be employed to establish facts that are obviously in dispute." *In re Carney* 258 F.3d at 419 (citing *Kosta* as an example of authority differing from the view adopted by the *In re Carney* court) (emphasis added). The determinations in *Kosta* and in *Tulip Computers* provide the better interpretation of Rule 36's scope and, more importantly, reflect the law in this Circuit.

ambiguous statements." *Fulhorst*, 1997 WL 873548, at *1; *see Tulip Computers*, 210

F.R.D. at 107-08.

### B.    The Court Should Overrule ViewSonic's Objections and Adopt the Special Master's Recommendations Concerning Improper Request for Admission Nos. 5, 6 and 7

Request for Admission Nos. 5, 6 and 7 state as follows:

> *Request for Admission No. 5:* Admit that the ViewSonic VX900 includes the space identified as "d1" in Figure 3B of the '641 Patent.
>
> *Request for Admission No. 6:* Admit that the ViewSonic VX900 includes the space identified as "d2" in Figure 3B of the '641 Patent.
>
> *Request for Admission No. 7:* Admit that the ViewSonic VX900 includes the space identified as "D" in Figure 3B of the '641 Patent.

(Objecs. at 6 (quoting requests verbatim).)

In its Motion, ViewSonic characterized Request for Admission Nos. 5-10 as

related to "Achieving the Objects" of the Patents-in-Suit. (*See* Mot. at 6.) ViewSonic

argued that Requests 5-7 each ask LPL "to admit or deny that the accused VX900

contains those identified side spaces" referred to in the patents as "D," "d1," and "d2".

(*Id.* at 6-7.) The Special Master sustained LPL's objections and ruled that Requests 5-7

are inappropriate for several reasons. Overall, the Special Master correctly determined

that Requests 5-7 are improper because they are "calculated to seek legal conclusions"

concerning whether or not the accused VX900 infringes the Patents-in-Suit. (Ex. 2 at

14.) As examples of the types of improper legal conclusions that Requests 5-7 ask LPL

to draw, the Special Master noted that Requests 5-7: (1) seek "an artificial comparison of

the accused product to a dissimilar type of product;" and (2) "seek comparison of the

accused product to something that is ***admittedly not*** the alleged invention." (*Id.* (emphasis added).)

To reach his conclusions, the Special Master relied in part on ViewSonic's own statements concerning the information ViewSonic seeks through Requests 5-7. (*Id.*) In its Supplemental Submission, for example, ViewSonic argued that "Figures 3A and 3B of the '641 patent illustrate conventional (prior art) products, <u>not</u> the alleged invention covered by the '641 or '718 Patents-in-Suit." (Ex. 4, at 2 (emphasis original).) All three of ViewSonic's Requests 5-7 incorporate "Figure 3B" of the '641 Patent and ask LPL to admit that the accused ViewSonic VX900 includes elements identified in Figure 3B. Figure 3B, however, refers to a laptop computer. (*See* Ex. 2 at 14.) The Special Master correctly noted that ViewSonic had ***admitted*** that Requests 5-7 ask LPL to compare the VX900 to something that is ***not*** the invention taught by the Patents-in-Suit and, thus, found Requests 5-7 to be improper. (*See id.*) Furthermore, the Special Master correctly recognized that the VX900 is a desktop monitor, while the product in Figure 3B is a laptop. (*Id.*) Thus, the Special Master correctly determined that Requests 5-7 are also improper because they ask LPL to compare the VX900 to a "dissimilar type of product."[2] (*Id.*)

Requests 5-7 unfairly seek a concession that the VX900 uses a method more analogous to the prior art "front mounting" method, rather than the rear mounting

---

[2] In its Objections, ViewSonic claims that LPL failed to raise the "dissimilar product" issue in LPL's original responses to Requests 5-7. (*See* Objecs. at 6.) This is not true. LPL objected to each of Requests 5-7 because, among other reasons, each Request sought improper legal conclusions and would require LPL to evaluate improper hypothetical scenarios, which addresses the "dissimilar product" issue that the Special Master identified in his Report. (*Compare* Pl.'s Objecs. & Resps. to Def. ViewSonic Corp.'s 1st Set of Reqs. for Admissions (D.I. 245), a copy of which is attached as Exhibit 5, *with* Ex. 2 at 13-14.)

structure and method of assembly recited in the Patents-in-Suit. These Requests implicate questions of law. Whether a given structure or method of assembling falls within the scope of prior art or falls within the scope of a certain patent claim raises a question of law. As such, Requests 5-7 are improper because, under Rule 36, requests for admission cannot require the respondent to evaluate questions of law. *See Tulip Computers*, 210 F.R.D. at 108.

In its Objections, ViewSonic reasserts the same arguments it made to the Special Master, but which were rejected by the Special Master.[3]  In doing so, ViewSonic repeatedly admits that Requests 5-7 ask LPL to compare the VX900 to prior art. For example, ViewSonic asserts that "Figures 2, 3A and 3B and their corresponding descriptions illustrate the prior art mounting structures, not the alleged invention covered by the patents." (Objecs. at 4 (emphasis original); *compare id. with* Ex. 2 at 14 (quoting ViewSonic's similar argument from its Supplemental Submission).) ViewSonic similarly concedes that Requests 5-7 ask LPL to compare the VX900 to *aspects of prior art* when ViewSonic states that "RFAs 5-7 seek solely admissions of fact – namely whether the ViewSonic VX900, … exhibits side spaces, akin to those identified as "d1", "d2" and "D" in Figure 3B of the patents." (Objecs. at 7.) ViewSonic again admits that Requests 5-7 are calculated to seek concessions that ViewSonic's accused VX900 is practicing a

---

[3] Through its Objections, ViewSonic is now arguing for the third time that LPL should be ordered to respond to ViewSonic's improper Requests 5-7. First, ViewSonic filed a motion to compel with the Special Master on July 31, 2006, arguing that LPL must be compelled to respond to Requests 5-7. (*See* Ex. 3.) Second, more than one month after the Hearing, on September 26, 2006, ViewSonic filed its Supplemental Submission with the Special Master, in which it again asked that the Special Master order LPL to respond to Requests 5-7 or, in the alternative, deem them to be admitted. (*See* Ex. 4.) After considering all of ViewSonic's submissions and LPL's counter-arguments, the Special Master found that Requests 5-7 are improper because they would require LPL to draw legal conclusions. (*See* Ex. 2 at 12-14.) *See also Tulip Computers*, 210 F.R.D. at 108 (Rule 36 requests for admission may not seek legal conclusions).

prior art method: "RFAs 5-7 address a simple factual question regarding whether the structure of ViewSonic's VX900 . . . has the side space, as defined in the patents in suit, *found in conventional prior art* flat panel display structures." (Objecs. at 1 (emphasis added).)

ViewSonic's argument that the Requests do not literally "ask whether the VX900 *practices* the prior art" is unavailing. (Objecs. at 7 (emphasis original).) As the Special Master recognized, by asking LPL to admit that the VX900 contains aspects of the prior art identified in the Patents-in-Suit, Requests 5-7 are effectively asking LPL to admit that the VX900 does not infringe the Patents-in-Suit. (*See* Ex. 2 at 13-14.) *See Tulip Computers*, 210 F.R.D. at 108 (requests for admissions cannot seek legal conclusions). Further, as the Special Master recognized, by asking LPL to admit that the VX900, a desktop monitor, is similar to the prior art identified in Figure 3B, which is a laptop, Requests 5-7 improperly ask LPL to evaluate a hypothetical scenario. (*See* Ex. 2 at 13-14.) *See Fulhorst*, 1997 WL 873548 at *3 (requests for admission cannot require the respondent to evaluate hypothetical factual scenarios). Thus, as the Special Master noted, Requests 5-7 improperly require LPL to compare dissimilar products and then make an admission that goes to ultimate legal issues in this case. (*See* Ex. 2 at 14.)

In addition to seeking legal conclusions, Requests 5-7 do not raise "simple factual" issues, as ViewSonic suggests. (*Cf.* Objecs. at 1 (applying quoted language to description of Requests).) Rather, Requests 5-7 are plagued by inherent ambiguity that precludes a specific and accurate response. Requests 5-7 each refer to "the space identified" in Figure 3B of the '641 Patent as either "d1" (RFA 5), "d2" (RFA 6), or "D" (RFA 7). Each Request seeks a comparison of "the space" identified as "d1," "d2", and

10

"D" with an unspecified part, component, or space in the ViewSonic VX900. However, Figure 3B depicts a laptop computer, while ViewSonic's VX900 is a desktop monitor. (*See* Ex. 2 at 14.) LPL cannot fairly compare a specified dimension labeled in an example of a laptop computer depicted in the '641 Patent with an unspecified and unknown area, dimension, or space in the VX900. (*See id.*)

Indeed, the impossibility of the comparison that ViewSonic seeks is indicated by the arguments in ViewSonic's Objections, in which ViewSonic avoids using the actual language of Requests 5-7. At one point, for example, ViewSonic incorrectly argues that Requests 5-7 ask whether the VX900 "includes *similar side* space." (Objecs. at 6 (emphasis added).) Requests 5-7, however, refer to "the space" identified in the patent figure. Subsequently, ViewSonic contends that Requests 5-7 are directed to whether the VX900 generally "*exhibits* side spaces, *akin to* those identified as 'd1', 'd2,' and 'D' in Figure 3B." (Objecs. at 7 (emphasis added).) However, as noted above, Requests 5-7 refer to "the space" at "d1", "d2" and "D" in Figure 3B, *not* a general comparison regarding "similar" side space or side space "akin to" those in Figure 3B as ViewSonic now argues.

Regardless of ViewSonic's intent, the Requests improperly seek a comparison between an exemplary dimension in a laptop product and an unspecified dimension or aspect of the VX900, a desktop monitor product. (*See* Ex. 2 at 14.) ViewSonic can argue that its product is analogous to asserted prior art methods, but cannot use Requests 5-7 to force LPL into ambiguous and, thus, improper concessions. Because of these ambiguities, LPL cannot respond to Requests 5-7 with minimal or no qualifications or explanations, as intended by Rule 36. *See United Coal*, 839 F.2d at 967-68 (requests

11

must be phrased such that they can be answered with an "absolute minimum of qualification or explanation").

As ViewSonic acknowledges, the practical purpose of Rule 36 is to eliminate undisputed facts from trial so that the parties can focus on disputed matters. (*See* Objecs. at 5.) Requests 5-7, however, do not serve this goal as they seek concessions on critical, contested issues regarding non-infringement and/or invalidity. Because Requests 5-7 improperly seek legal conclusions, are vague and ambiguous, and are not directed to narrow factual issues, the Court should adopt the Special Master's recommendations concerning these Requests.

> **C.     The Court Should Overrule ViewSonic's Objections and Adopt the Special Master's Recommendations Concerning Improper Request for Admission No. 15**

Request for Admission No. 15 states as follows:

> Admit that, as defined by the '641 Patent, the front mounting method does not require that the LCD device be mounted to the front case (identified as element 121 & figure 2 of the '641 Patent).

(Objecs. at 8 (quoting request verbatim).)

In his Report, the Special Master grouped Request 15 with several other Requests for Admission that he deemed to be analytically similar. (*See* Ex. 2 at 17.) As relevant here, the Report analyzed Request 15 as one of a series of six similar requests for admission that were ***all*** deemed to be improper because all six, including Request 15, were vague and ambiguous. (*Id.* (reviewing Requests 11-16).) The Special Master also found those same six requests for admission to be improper because ***all six*** asked LPL to "construe the claim language of the patents-in-suit in order to respond." (*Id.*) Finally, the Report analyzed Request 15 as one of three separate requests for admission that were all

found to be improper because *all three*, including Request 15, asked LPL to "admit or deny whether certain assemblies conform to claims of the patents-in-suit." (*Id.* (reviewing Requests 11, 12 and 15).) ViewSonic, however, only challenges the Special Master's recommendations pertaining to Request 15. In doing so, ViewSonic concedes that the Special Master's blanket determinations for the other similar Requests were generally correct, but were somehow incorrect only when applied to Request 15.

As the Special Master determined, Request 15 is another ambiguous and argumentative request seeking a legal concession from LPL. ViewSonic now admits that Request 15 is intended to establish ViewSonic's legal non-infringement and/or invalidity argument "that in the prior art front mounting the LCD device is mounted to the rear case, not the front case." (Objecs. at 5.) Request 15 thus goes directly to whether the VX900 infringes the Patents-in-Suit. In addition, Request 15 depends on the scope and meaning of several disputed claim terms. Thus, requiring LPL to reply to Request 15 would not only require LPL to construe those terms prematurely, but would also unfairly force LPL to prepare a complex response that necessarily takes into account all possible constructions of those disputed terms in order to account for all of the possible constructions potentially handed down by the Court next year.

ViewSonic expressly asks for LPL's interpretation of the '641 Patent, specifically asking that LPL "look at Figure 2, and/or read the text of Column 1, to ascertain whether the patent says the front mounting method *does or does not require* the LCD device to be mounted to the front case." (Objecs. at 8 (emphasis added).) By ViewSonic's own admission and as the Special Master correctly found, Request 15 requires LPL to interpret at least that one term in the Patents-in-Suit. (*See* Ex. 2 at 17-18.) Because

13

construing or interpreting the terms used in a patent claim requires the Court to make a legal determination, Request 15 is improper and LPL should not be required to respond to it. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).

In reaching his determination, the Special Master focused, in part, on the "as defined by the '641 Patent" language of Request 15. (*See id.*) The Special Master's determination is consistent with arguments that LPL raised during the Hearing, in which LPL pointed out that Request 15 is improper because, in addition to being vague and ambiguous, the Request improperly seeks a legal conclusion by asking LPL to compare prior art methods or devices to the inventions taught by the Patents-in-Suit. (*See* Ex. 1 at 48-49.) As the Special Master concluded, therefore, Request 15 intrudes on claim scope and construction and is improper both because it calls for a legal conclusion and because it improperly advances the claim construction process only for LPL. (*See* Ex. 2 at 17-18.)

Further, the terms used in Request 15 are rife with complexity and ambiguity inherent in whether front mounting requires "that the LCD device be mounted to the front case." According to ViewSonic, the patent "specifications and drawings indicate that front mounting can be accomplished by mounting the LCD device" to a "***rear case, or a portion of the case that covers the back of the display device***." (Objecs. at 8 (emphasis added).) What does ViewSonic mean when it refers to a "rear case" and what does it mean to be "mounted" to a "rear case"? What does ViewSonic mean by "a portion of the case that covers the back of the display device"? What is the apparent difference, according to ViewSonic, between a "rear case" and "a portion of the case that covers the back of the display device"? These are examples of the questions inherent in Request 15

14

that ViewSonic unfairly expects LPL to attempt to answer or interpret in order to

respond. Because of these inherent ambiguities, Request 15 is improper.

For these reasons, the Court should not compel LPL to further respond to

ViewSonic's Request 15. The Court should adopt the Special Master's recommendations

concerning Request 15.

### D. The Requests for Admission Should Not Be Deemed Admitted as a Matter of Law

In its Objections, ViewSonic asks the Court to "deem [Requests] 5-7 and 15

admitted or compel LPL to properly respond to the [Requests.]" (Objecs. at 1.) There is

no basis whatsoever to deem any of ViewSonic's Requests for Admission to be admitted.

Rule 36(a) allows a party to object to a request for admission without further

responding. The Rule further states that, "[u]nless the court determines that an objection

is justified, it shall order that an answer be served." Fed. R. Civ. P. 36(a). Accordingly,

when faced with an objection to a request for admission, the requesting party's remedy is

to ask the court to rule on the objection. *See id.*; *see generally Josephs v. Harris Corp.*,

677 F.2d 985, 991-92 (3rd Cir. 1982) (discussing burdens of proof pertaining to

discovery objections). Only if the objection is overruled will the responding party be

required to respond. *See* Rule 36(a). Furthermore, only *after* the court determines that

*an answer* to a request for admission (as opposed to an objection) fails to comply with

the Rules may a court then decide whether to order an amended answer *or* deem the

request to be admitted. *See id.*

LPL complied with Rule 36(a) by timely objecting to ViewSonic's Requests 5-7

and 15 on March 24, 2006. (*See* Ex. 5.) LPL objected to Requests 5-7 and 15 because,

among other reasons, they were vague and ambiguous, required premature claim

15

construction and asked LPL to draw legal conclusions. (*See id.*) By moving to compel responses to Requests 5-7 and 15, ViewSonic asked the Special Master to overturn LPL's objections. (*See generally* Exs. 3 & 4.) However, after reviewing the briefs submitted by the parties and conducting a Hearing, the Special Master ***sustained LPL's objections*** to Requests 5-7 and 15, and determined that, because the Requests themselves were flawed, LPL was not required to respond. (*See* Ex. 2 at 13-14 & 17-18.) *Cf., e.g. Josephs*, 677 F.2d at 991-92 (finding that, when an objection to discovery is challenged, the party resisting discovery must demonstrate the specific bases for its objections).

LPL properly and timely objected to Requests 5-7 and 15. As the Special Master concluded, LPL's objections are proper and should be sustained. (*See* Ex. 2 at 13-14 and 17-18.) LPL respectfully urges this Court to adopt the Special Master's recommendations and find that no further responses to Requests 5-7 and 15 are required.

### E.    ViewSonic's Objections to the Report Are Untimely

Prior to the Hearing, the parties agreed that any objections to the Special Master's recommendations would be due within five business days after the Report issued. (*See* Ex. 1 at 33-34 (recognizing stipulation of the parties).) The Special Master issued and electronically filed his Report on November 8, 2006. Any objections were, therefore, due five business days later, on November 16, 2006.[4] Consistent with the parties' agreement, on November 16, LPL filed its own Objections to certain portions of the Special Master's Report. (D.I. 313.) ViewSonic did not file its Objections until four days later, on November 20, 2006. (D.I. 316.)

---

[4] The Court was closed on November 10, 2006 to observe Veteran's Day, so the fifth business day fell on November 16, 2006.

ViewSonic tries to justify its delay by claiming that, because the Report was served on the parties electronically, Fed. R. Civ. P. 6(e) provided ViewSonic with three additional days to submit its Objections to the Report.  Rule 6, however, *only* applies to "any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute."  Fed. R. Civ. P. 6(a).  As relevant here and by its own terms, ***Rule 6 does not apply*** to stipulated time periods fixed by the parties.  Therefore, this Court should disregard and/or deny any relief sought by ViewSonic's Objections because they were not timely filed.

## V.    **CONCLUSION**

The Court should adopt the Special Master's recommendations as they apply to ViewSonic's Request for Admission Nos. 5-7 and 15 and, in doing so, sustain the objections that LPL asserted against those Requests.

December 5, 2006

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@ bayardfirm.com
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

17

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on December 5, 2006, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and first class mail to the following

non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Bingham McCutchen LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

571447-1