# EXHIBIT 1

Teleconference

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG.PHILLIPS LCD CO., )
LTD., )
                                )
      Plaintiff,    ) Civil Action No.
                    ) 04-343-JJF
v.                  )
                    )
TATUNG CO.; TATUNG  )
COMPANY OF AMERICA, )
INC.; and VIEWSONIC )
CORPORATION,        )
                    )
      Defendants.   )

TELECONFERENCE
Wednesday, August 23, 2006
1:00 p.m.

BEFORE:  THE HON. VINCENT J. POPPITI

APPEARANCES:

                  RICHARD D. KIRK, ESQ.
                  The Bayard Firm
                    222 Delaware Avenue, Suite 900
                    Wilmington, Delaware  19899
                       and
                  REL S. AMBROZY, ESQ.
                  McKenna Long & Aldridge LLP
                    1900 K. Street, N.W.
                    Washington, D.C.  20006
                  For the Plaintiff

CORBETT & WILCOX
Registered Professional Reporters
The Parcels Building - 230 N. Market Street
Wilmington, DE 19801
(302) 571-0510
www.corbettreporting.com

Corbett & Wilcox

Teleconference

2 (Pages 2 to 5)

## Page 2

```
 1  APPEARANCES (CONTINUED):
 2       DAVID E. MOORE, ESQ.
           Potter Anderson & Corroon LLP
 3         Hercules Plaza, 6th Floor
           1313 N. Market Street
 4         Wilmington, Delaware 19801
             and
 5       TRACY R. ROMAN, ESQ.
           Bingham McCutchen LLP
 6         335 South Grand Avenue
           44th Floor
 7         Los Angeles, California 90071-3106
             and
 8       SCOTT R. MILLER, ESQ.
           Connolly Bove Lodge & Hutz LLP
 9         Wells Fargo Center
           South Tower, Suite 3150
10         Los Angeles, California
           90071-1560
11             For the Defendant ViewSonic
                 Corporation
12
         ANNE SHEA GAZA, ESQ.
13         Richards, Layton & Finger
           One Rodney Square
14         Wilmington, Delaware 19801
             and
15       STEPHEN B. PERKINS, ESQ.
           Greenberg Traurig, LLP
16         2450 Colorado Avenue
           Suite 400 East
17         Santa Monica, California 90404
             For the Defendant Tatung Co. And
18             Tatung Company of America, Inc
19
20         - - - - -
21       THE COURT: Let's start with a roll
22  call, please. Let's start with LPL.
23       MR. KIRK: Richard Kirk from The Bayard
24  Firm for the Plaintiff LG.Philips LCD Co., Ltd., with me
```

## Page 3

 1  on the line is Rel Ambrozy from McKenna, Long & Aldridge
 2  in Washington.
 3       MR. AMBROZY: Good afternoon, Your
 4  Honor.
 5       THE COURT: Good afternoon. Next
 6  please.
 7       MR. MOORE: Good afternoon, Your Honor.
 8  David Moore from Potter Anderson & Corroon on behalf of
 9  ViewSonic and I have on the line with me Tracy Roman from
10  Bingham McCutchen and Scott Miller from Connolly Bove in
11  California.
12       MS. GAZA: Your Honor, the Tatung
13  Defendant is Anne Gaza from Richards, Layton & Finger and
14  with me is Steve Perkins from Greenberg Traurig.
15       THE COURT: Is that everyone?
16       MR. KIRK: Yes, Your Honor.
17       THE COURT: Okay. And, please, as we
18  begin to spend part of the afternoon with each other,
19  remember that it's going to be extraordinarily important
20  for the court reporter to know who is speaking.
21       Before we get started it may be helpful
22  for me to suggest that upon reviewing the Rule 16
23  scheduling order that's in place in this matter, and
24  having looked at the portions of the scheduling order

## Page 4

 1  that deal with, in the first instance, discovery, and
 2  then focusing on those portions of the scheduling order
 3  dealing with Markman and plain construction, I am
 4  satisfied, having viewed this order, and having been
 5  familiar with the order of other judges of the court,
 6  some of whom have in large part similar orders, I know
 7  there are some differences, satisfied that the exchange
 8  and completion of contention interrogatories contemplated
 9  by that section of this order in paragraph 4, I'm
10  satisfied that those contention interrogatories focus on
11  claims, defenses and facts, and that the section of the
12  scheduling order that deals with Markman squarely focuses
13  on claim construction. They are two separate and
14  distinct parts of the order and contemplate two separate
15  and distinct processes.
16       So I am satisfied that with respect to
17  an assertion that mention interrogatories that may focus
18  and in fact in this case do focus on claim construction,
19  those interrogatories, if answered, need to be answered
20  in the context of the process dealing with Markman and
21  not before then.
22       With that general guidance, if you will,
23  I expect that we can move forward. This is ViewSonic's
24  applications.

## Page 5

 1       MS. ROMAN: Yes, good morning, Your
 2  Honor -- good afternoon your time, Your Honor. This is
 3  Tracy Roman.
 4       THE COURT: Good afternoon, Ms. Roman.
 5       MS. ROMAN: We do appreciate that
 6  clarification, as you can tell from the motion this has
 7  been underlying most of the issues raised in the
 8  interrogatories and request for admission.
 9       THE COURT: Yes.
10       MS. ROMAN: I believe, Your Honor, that
11  would effectively address the issues with regard to
12  interrogatory No. 1 seeking the infringement contention
13  from the plaintiff.
14       THE COURT: Your Honor, it may be also
15  helpful for everyone to understand, you all know that in
16  the discovery dispute procedures, the order I don't have
17  squarely in mind in terms of when I entered that some
18  time ago in this case, the procedures do contemplate from
19  time to time that I would have appropriate ex parte
20  communication with the judge that's presiding in the
21  matter. I have done that in other cases. And for
22  purposes of marching up to this issue in this case, I
23  thought it was extraordinarily important for me to have
24  conversation ex parte with Judge Farnan. I did that.

Page 6

 1    And that conversation certainly forms
 2 the basis of my guidance to you this afternoon. That may
 3 even help in terms of getting beyond -- once I enter an
 4 order -- what you all decide you may want to be doing
 5 with it. Okay?
 6    MS. ROMAN: Thank you, Your Honor. This
 7 is Tracy Roman again.
 8    I guess where I would appreciate, just
 9 to clarify so I don't waste Your Honor's time going over
10 any of the interrogatories or request for admission that
11 you believe would fall in the second category of
12 discovery that focuses on the Markman Hearing, I just
13 want to make sure I am clear on that so I can move
14 forward with the other request.
15    THE COURT: Well, certainly
16 interrogatory No. 1, the contention interrogatory. And,
17 quite frankly, there are bits and pieces of others. And
18 I don't know if that's very helpful because what I don't
19 want to do is necessarily start through my view of your
20 respective presentations because I think once we get into
21 discussing those, I will have some questions and expect
22 that you may have additional development to the positions
23 you have already taken.
24    If, as you begin to go through those, if

Page 7

 1 I think that my guidance with respect to the scheduling
 2 order implicates any particular interrogatory or any
 3 particular request for admission, I will tell you that.
 4    MS. ROMAN: Okay, Your Honor --
 5    THE COURT: Is that helpful?
 6    MS. ROMAN: Yes, it is.
 7    THE COURT: If you need a moment to
 8 regroup.
 9    MS. ROMAN: Well, Your Honor, let me
10 just start them before we go through I guess each
11 individual disputed discovery request which sounds like
12 it would be the most useful.
13    THE COURT: I think that makes sense
14 because that's what I would have to do in any event.
15    MS. ROMAN: Okay. Let me point out a
16 few things that were raised in the opposition, just so we
17 can get them off the table hopefully. That is, that the
18 plaintiff excuses a lot of its failure to provide what we
19 feel are proper responses to the discovery by pointing to
20 ViewSonic's own responses, which are the subject of this
21 motion but because it was raised in the opposition, we
22 would like to clarify two of the points there.
23    The first point there is that ViewSonic
24 did provide the plaintiff with all the information it had

Page 8

 1 in its possession, custody and control in response to the
 2 discovery request. It did not, as suggested in the
 3 opposition, refuse to provide information until after
 4 expert discovery had been completed; rather it simply
 5 reserved its right to supplement the responses with any
 6 additional discovery that came to light through expert
 7 discovery.
 8    And the second point, and perhaps more
 9 importantly, was that because contention interrogatories
10 were in dispute between the parties and both sides were
11 taking similar positions, ViewSonic offered both orally
12 and in writing, as is set forth in our motion, to be
13 bound by whatever ruling Your Honor made with respect to
14 contention interrogatories and if necessary to supplement
15 its responses in accordance with that ruling.
16    THE COURT: Yes.
17    MS. ROMAN: Just to clarify those to
18 points.
19    I suppose we should turn, then, to the
20 interrogatories. Looking directly at interrogatory No.
21 1.
22    THE COURT: Give me one moment, please.
23 And I am at your middle -- at Exhibit 3?
24    MS. ROMAN: Yes, Your Honor.

Page 9

 1    THE COURT: Okay.
 2    MS. ROMAN: With the understanding that
 3 Your Honor has set forth, with regard to contention
 4 discovery, I would say that I think that there is still
 5 room for a response to interrogatory No. 1 that
 6 contemplates setting forth the plaintiff's claims and
 7 facts supporting those claims regarding what it believes
 8 are the infringing components of the product.
 9    Now, they have set forth that
10 information with respect to the VX900 but lacking from
11 the response is two other products that we know plaintiff
12 has in its possession and has evaluated, at least in the
13 context and purpose of other cases: The VX2000 and the
14 VE155B, as in boy. And neither of those products are set
15 forth in here and it's unclear to ViewSonic whether
16 plaintiff is going to contend that those products
17 similarly infringe the patents in suit so that we can
18 begin preparing defenses.
19    MR. AMBROZY: If I may respond, Your
20 Honor.
21    THE COURT: Please.
22    MR. AMBROZY: This is Rel Ambrozy.
23    As we've laid out in both our response
24 to the certification under Rule 7.1.1, as well laid out

Teleconference

4 (Pages 10 to 13)

Page 10

1  in our brief, it's our position that any discussion of
2  interrogatory No. 1 is improper for the simple reason
3  that in none of the written communication or in any of
4  the oral communication were there any deficiencies raised
5  in regard to LPL's response to ViewSonic's interrogatory
6  No. 1.
7           The first and only time it came up was,
8  as we noted in our footnote in our brief, was in the
9  context of exchanging claim constructions. And there was
10 no pointing out of what and where it was deficient. The
11 day before we actually filed our opposition to
12 ViewSonic's motion we tried to raise this point with
13 opposing counsel and were basically shut down, as we
14 pointed in our brief, simply because claim constructions
15 were not going to be provided.
16          THE COURT: You did say that with
17 respect to interrogatory No. 1, and I guess my question
18 is this: Subsequent to the briefing having been closed,
19 if you will.
20          MR. AMBROZY: Yes.
21          THE COURT: And my having to jockey
22 everyone on a hearing date from last week until today --
23 and I do appreciate your professional courtesy with
24 respect to that -- has there been any further discussion

Page 11

1  in a meet-and-confer context? And if there hasn't been,
2  what additional meet and confer would be beneficial for
3  purposes of your having it and then for my having an
4  opportunity to look at what remains in dispute after
5  that?
6           MR. AMBROZY: I think it would be very
7  beneficial, Your Honor, because, quite honestly, this is
8  the first meat on the bones that we have heard of in
9  regard to their objections to our interrogatory 1
10 response. Page 3 of their brief lays out just basically
11 very thin objections to our answer, but doesn't give any
12 meat on the bone to what they were looking for in a
13 response. So, quite honestly, I think a meet and confer
14 would be beneficial.
15          THE COURT: And with respect to
16 interrogatory No. 1 and meet and confer, that really was
17 a discrete assertion that there was a failure to meet and
18 confer. Am I fair in stating it that way?
19          MR. AMBROZY: I think it's correct, Your
20 Honor.
21          THE COURT: May I have a response to
22 that with respect to interrogatory No. 1.
23          MS. ROMAN: Yes, Your Honor. This is
24 Tracy Roman.

Page 12

1           We disagree that there was a failure to
2  meet and confer. We do admit that interrogatory No. 1
3  itself was not specifically identified in our request for
4  a meet and confer letter, but the fact is that it deals
5  with -- the request specifically deals with plaintiff's
6  position on infringement contentions. And that issue was
7  discussed at length in multiple conversations and in
8  exchange of multiple correspondence.
9           While the number itself might have not
10 been specifically called out, plaintiffs were well aware
11 that that contention interrogatory was at issue. And we
12 were trying to come up with a schedule that would
13 accommodate a supplementation of that interrogatory.
14          That said, Your Honor, I'm not certain
15 that a further meet and confer on the issue is really
16 necessary. I mean, if plaintiffs are willing to accept
17 that they would supplement similar to the response that
18 they already provided with regard to the VX900 for these
19 two products, that really could resolve the issue and we
20 could give them a couple of weeks in which to do that.
21          THE COURT: Would that answer the
22 question, Mr. Ambrozy?
23          MR. AMBROZY: I think it would, Your
24 Honor. I would have to check with our client, but I

Page 13

1  think we could have that answer to you in a day.
2           THE COURT: Let's proceed in that
3  fashion, I think it will save you further discussion
4  today, it will certainly save me from focusing squarely
5  on interrogatory No. 1. And I would like the answer
6  tomorrow so that you can fairly meet Ms. Roman's proposal
7  that you be given -- is it two weeks that you said?
8           MS. ROMAN: Yes, Your Honor.
9           THE COURT: Yes. You are all hopefully
10 in front of a calendar, I am not.
11          MR. AMBROZY: Thank you, Your Honor.
12          THE COURT: I realize I could just add
13 14 to 23...
14          MS. ROMAN: Dave, can you please pull
15 that up, I don't have one in front of me.
16          MR. AMBROZY: Two weeks from now would
17 be the 6th of September.
18          THE COURT: That's fine.
19          MS. ROMAN: Your Honor, I will follow
20 along in the motions, if that's what you have in front of
21 you, rather than necessarily in numerical order of the
22 interrogatories that are in dispute.
23          The next on the motion is interrogatory
24 No. 7. This interrogatory seeks plaintiff's contention

Page 14

that ViewSonic's products have enjoyed commercial success due to practicing the inventions disclosed in the patents in suit.

THE COURT: Yes.

MS. ROMAN: We do acknowledge that plaintiff supplemented its response to this interrogatory, but they simply supplemented it to say exactly what we set forth in our motion, which is that evidence of commercial success includes the fact that the technology protected by the patents in suit is, through LPL's knowledge, widely employed in the industry. It provides no facts as to who is employing it, what the products are in which it's being employed, in what market, and any facts that establish actual sales and public acclaim.

As one of the largest manufacturers of LCD modules, LPL certainly has access to market industry information. And that's the kind of information that could have been presented in response to this interrogatory, including an identification of those parties in the marketplace that are supposedly practicing the invention which makes it a commercial success.

MR. AMBROZY: If I may respond, Your Honor.

Page 15

THE COURT: Please.

MR. AMBROZY: Your Honor, at this point in the discovery process what we have found is exactly what we put in our response to the interrogatory. We understand that it's widely employed in the industry, but as far as giving them a detailed matrix as to who makes it, how many they have sold and so forth, we are of the opinion that, first of all, we need to conduct additional discovery. I believe that ViewSonic and/or Tatung has issued in at least in 10 to 13 third-party subpoenas. We haven't received all the documents back from that nor have we analyzed that.

And in regard to ViewSonic's document production, we have served on ViewSonic document request Nos. 2 through 5, 18, 20 to 32 and 46 to 48 asking for specifics as to modules or monitors that were listed in a chart that they provided in response to LPL's interrogatory No. 2. And once we obtain all that information, we can better formulate our response to that commercial success interrogatory.

THE COURT: If what I understand you are telling me correctly, if you have provided what you have and obviously you can't provide what you don't have, if you are also saying that in order for you to supplement

Page 16

what you have already provided, you are waiting for ViewSonic to be responsive in its own right, I'm not sure I can measure that other than accept you at your word because there is no motion to compel ViewSonic's responses to discovery that I expect has been closed.

Is that a fair characterization of what I think I'm hearing?

MR. AMBROZY: Well, our response is not solely based on what we have or have not received from ViewSonic. It's also in regard to, as I said, these third-party subpoenas have gone to all types of monitor manufacturers, either OEMs or the original manufacturers themselves. And we have not had the opportunity to study all those documents in response to all the subpoenas, simply because not all the documents have been produced yet.

In addition to that, some of our commercial success evidence will come from both Tatung and from ViewSonic. And in regard to your last point as to whether you have or have not seen a motion to compel the defendants' production, that is, we have already had a meet and confer and we are in the process of getting ready to file with Your Honor to force that issue.

THE COURT: I understand.

Page 17

Ms. Roman do you want to respond to that? I think what I hear them saying is they have given you what they have. They are in a process of evaluating additional information and, of course, they have an obligation to supplement once that additional information is evaluated and understood.

MS. ROMAN: Yes, Your Honor. And we understand those reasons. I guess the difficulty we have with the response currently provided for interrogatory No. 7 is that it states an understanding and knowledge that LPL purports to have and then provides no basis for that knowledge or understanding.

As I think I'm hearing Mr. Ambrozy today say that LPL simply has no facts to support that understanding, and is waiting for further discovery. We would like a response that states that as opposed to a response that makes it unclear whether or not they have actual facts that they are choosing not to share at this time versus not having any facts at all and rather a simple contention without any underlying basis.

THE COURT: Of the interrogatories -- just give me one moment, please, while I refresh my own recollection of this.

"LPL objects to this interrogatory to

Teleconference

6 (Pages 18 to 21)

Page 18

1  the extent that it seeks information protected by the
2  attorney-client privilege of the work product doctrine.
3  LPL is awaiting discovery from ViewSonic and reserves a
4  right to supplement this interrogatory answer, if
5  appropriate, when and if additional information becomes
6  available or otherwise."
7      MR. AMBROZY: That was the previous
8  answer, Your Honor; it has since been supplemented. I
9  can basically give you the outline.
10     THE COURT: I think you did, in
11 Exhibit 15?
12     MS. ROMAN: I believe it's 14, Your
13 Honor. Exhibit 14 to plaintiff's opposition.
14     MR. AMBROZY: Page 3 to 4.
15     THE COURT: In which one again, please?
16     MR. AMBROZY: LPL's Exhibit 14.
17     THE COURT: I have it. Thank you for
18 redirecting me because I certainly had the paper here.
19 LPL's response, in part, reads "to LPL's knowledge,
20 widely employed in the industry, that users of the
21 technology include competitors of both Tatung and
22 ViewSonic."
23     Apparently, it is fair comment to
24 suggest if you are acknowledging some underpinning to it,

Page 19

1  even at this stage, it may be that the knowledge, the
2  ViewSonic universe of knowledge will be greater as you
3  examine whatever information you have, but you did
4  respond by saying that "to LPL's, widely employed in the
5  industry," and I do think it's fair comment to say: What
6  are the facts that underpin that knowledge?
7      Ms. Roman, is the time frame you
8  outlined with respect to No. 1 acceptable with respect to
9  anything that I order today?
10     MS. ROMAN: Yes, Your Honor, it is.
11     THE COURT: I understand, Mr. Ambrozy,
12 that there will be some supplement. And I understand
13 that you may still be receiving information as a result
14 of third-party subpoenas, but I will require at this
15 juncture that you provide the facts that support the
16 claimed knowledge of your client.
17     MR. AMBROZY: That's fine, Your Honor.
18     THE COURT: Thank you.
19     Let's go on to 8, please.
20     MS. ROMAN: Yes, Your Honor. Again, for
21 the court reporter, this is Tracy Roman.
22     Interrogatory No. 8 is similar to the
23 circumstance we just discussed with interrogatory No. 7.
24 This seeks plaintiff's contention that ViewSonic

Page 20

1  willfully infringes the patents in that suit. And the
2  distinct issue with this interrogatory is that plaintiff
3  responded that ViewSonic has infringed by, for example,
4  importing products known to infringe the patents in suit,
5  not only since after the filing of the lawsuit, but the
6  response alleges that it has continued to do so including
7  after filing the lawsuit.
8      What's absent from this response is the
9  facts supporting LPL's contention apparently that
10 ViewSonic was willfully, knowingly importing products
11 that infringed the patents in suit before the filing of
12 the lawsuit. And the reason that this is causing
13 confusion for ViewSonic is that plaintiff has admitted,
14 in response to request for admission, that it did not
15 provide any see cease and desist or notification to
16 ViewSonic of the alleged infringement prior to filing the
17 lawsuit.
18     So we would like the facts that support
19 its contention that ViewSonic was knowingly importing and
20 infringing products prior to the filing of the lawsuit.
21     THE COURT: Okay.
22     MR. AMBROZY: Our response to that is,
23 Your Honor, that willful infringement occurs both before
24 and after the filing of a lawsuit. And as we laid out in

Page 21

1  our response to interrogatory No. 8, that that
2  infringement has continued since the complaint was filed.
3  And as we read the call of the interrogatory, there was
4  no specific request as to what was the basis for our
5  prelitigation contention of willful infringement. So we
6  basically provided the answer that was, in our mind, a
7  complete response.
8      THE COURT: Well, the interrogatory, and
9  I am working off the original filing, there has been no
10 supplement to it; correct?
11     MR. AMBROZY: Correct, Your Honor.
12     THE COURT: "State all material facts
13 that support your contention that ViewSonic's alleged
14 infringement has been willful."
15     And if I understand Ms. Roman correctly,
16 she believes that the interrogatory encompasses pre,
17 post; correct?
18     MS. ROMAN: That's correct, Your Honor.
19 To the extent that that is in their contention.
20     THE COURT: Any other comments, please?
21     MR. AMBROZY: No, Your Honor.
22     THE COURT: I am satisfied that
23 additional response needs to be made to interrogatory No.
24 8.

Page 22

1  MS. ROMAN: Thank you, Your Honor.
2  Moving on to interrogatory No. 12.
3  THE COURT: Just a second. Okay. No.
4  12, please.
5  MS. ROMAN: Keeping in mind and being
6  sensitive to Your Honor's point at the beginning of this
7  hearing that there is a distinction between Markman
8  construction discovery and contention discovery that
9  focuses on the claim defenses and facts of the case. We
10  again think there is room, similar to interrogatory No.
11  1, for some response both factual and based on claims to
12  respond to interrogatory No. 12.
13  LPL did provide responses to this
14  interrogatory, but as noted in the motion, the response
15  is effectively the same with regard to each cited
16  reference. And that is, that they say that the cited
17  reference fails to teach at least one of the following
18  elements. And then it sets forth the same three verbatim
19  elements which are directly pulled from the claim. So
20  ViewSonic is left to question which element, if 1, 2 or
21  all 3 are purportedly missing from the cited reference.
22  And why, if that reference has what we believe is a
23  corollary element similar to one cited in the accused
24  product, why is a distinction being made between them?

Page 23

1  And most notably, the information that
2  was provided in response to this interrogatory is
3  substantially less than information than LPL set forth in
4  a declaration by its expert during the preliminary
5  injunction briefing. And at the very least, we would
6  have expected to have that level of detail provided in
7  response to this interrogatory, which could be done
8  without any claim construction. Similar to how they set
9  forth their infringement contention in response to
10  interrogatory No. 1.
11  THE COURT: Mr. Ambrozy.
12  MR. AMBROZY: Your Honor, we feel
13  that -- first of all, if you look at the call of the
14  interrogatory, it asks for each reference listed below
15  that you contend does not qualify as prior art. And as
16  we stated in our brief, the request as to whether it
17  qualifies as prior art, we also understand it to mean
18  whether it, if it's a patent, was it before the filing
19  date of the patents in suit or if it was a publication
20  such as the pixel vision SGT15T. Whether it qualifies as
21  prior art because it was published to a significant
22  number of people, whether it was enabling and so forth.
23  So, as we stated in our brief, we would
24  supplement to provide the qualification information that

Page 24

1  is requested by the interrogatory as to whether it
2  qualifies as prior art, but we feel that there is really
3  no need to give any additional information as to what
4  aspects anticipate or what elements -- what limitations
5  in the claim are anticipated by the various elements in
6  the publications themselves.
7  And we take the position that we
8  actually went above and beyond providing the information
9  that was requested in the interrogatory.
10  THE COURT: And you may have done that
11  in part because you -- maybe what the response was was
12  titillating in a sense by giving some and not continuing
13  down the road.
14  I am satisfied that the supplementation
15  of this interrogatory should be of a qualification
16  information as you've just described; but beyond that, I
17  believe it is getting into the, falling under the
18  umbrella of the process as it relates to claim
19  construction, and will not require that at this point in
20  time.
21  MR. AMBROZY: Thank you, Your Honor.
22  MS. ROMAN: Your Honor, this is Tracy
23  Roman.
24  This raises a question that we would

Page 25

1  appreciate some clarification on with regard to the
2  scheduling order. It doesn't seem to contemplate the
3  written discovery continuing through the Markman Hearing.
4  To the extent that these, any of these disputed discovery
5  requests are going to be held until after claim
6  construction, is Your Honor going to include in his order
7  something to the effect of a timing for responding to
8  this discovery so we don't have to reissue it and have
9  the process started all over?
10  THE COURT: Well, there is a requirement
11  for supplementation and it just seems to me, not having
12  crafted this scheduling order, and understanding now that
13  perhaps the parties -- well, not having crafted the
14  scheduling order -- let me just leave it at that -- that
15  the process leading to Markman does not contemplate, if
16  you will, segregated Markman discovery; but what it does
17  contemplate is that you will supplement the discovery
18  that is already out there.
19  And I really haven't, Ms. Roman, given
20  any thought to the question you just asked. In light of
21  the guidance that I have given you, I think it's
22  important for me to consider your request.
23  MS. ROMAN: Thank you, Your Honor.
24  THE COURT: I will leave it at that for

Page 26

1  the moment.
2      MS. ROMAN: Thank you, Your Honor. And
3  we were certainly thinking something appropriate of
4  20 days after the service of the Court's Markman ruling
5  is a possibility.
6      THE COURT: Yes. Well, that may make
7  some sense. And maybe what would be helpful once we
8  conclude today, expecting that I will be issuing a
9  written follow-up so Judge Farnan understands what I did
10 in the next four to five days, if you will perhaps make a
11 proposal, very brief proposal in writing, that may make
12 some sense.
13     MS. ROMAN: Certainly, Your Honor. And
14 we will talk with plaintiff's counsel in that regard as
15 well and try to come to an agreed position.
16     THE COURT: Good. I certainly don't
17 want to be doing anything that appends this order or that
18 complicates the scheduling order.
19     MS. ROMAN: We understand, Your Honor.
20     THE COURT: Good. Thank you.
21     MS. ROMAN: Finishing then with
22 interrogatories No. 3 and 4, taking them in tandem as
23 they seek similar information and have a similar
24 objection raised.

Page 27

1      The 3 and 4 ask for plaintiff to
2  identify those ViewSonic products that it had in its
3  possession both before and then after the filing of the
4  complaint.
5      THE COURT: Yes.
6      MS. ROMAN: We have tried to be very
7  clear that we weren't seeking any legal analysis,
8  opinions or communication, merely an identification of
9  things which we perceived to be no different than an
10 identification of documents which, as we have cited to
11 Manville, has been held not to be attorney work product
12 or privileged information. And the position, as I
13 understand it, by LPL is that these interrogatories still
14 seek attorney work product and privileged information and
15 that's where the impasse lies.
16     THE COURT: And we are going to hear why
17 in a moment. Mr. Ambrozy.
18     MR. AMBROZY: Yes, Your Honor. It's
19 very simple. The documents and individuals thought in
20 the cited Manville Sales Corp. did not reveal any
21 attorney-client communications and/or reveal any attorney
22 work product and mental impressions. What ViewSonic is
23 seeking is what were all the monitors that you had in
24 your possession prior to filing the complaint? And if we

Page 28

1  were to list all the ones that were in our possession
2  because, as you may know, there are at least three
3  litigations going on involving monitors and modules
4  inside the monitors, that might give a misleading answer.
5  But moreover, if we were to list just one or two and then
6  some are left out that were in our possession, that
7  reveals whether -- perhaps reveals whether we thought
8  the ones that were left out of the complaint infringe or
9  not.
10     THE COURT: Well, they are not asking
11 for you to be selective, they are asking for all.
12     MR. AMBROZY: They ask for all, but by a
13 process of elimination --
14     THE COURT: They have asked the
15 question, if you will.
16     MR. AMBROZY: Yes.
17     THE COURT: I don't see that responding
18 to it abrogates or even steps anywhere close to
19 attorney-client privilege or work product. So you have
20 got to talk to me a little bit more about that because I
21 just don't see that. If they are going to be confused by
22 what you say because you think you are giving them too
23 much, quite frankly, that's their dilemma to have to
24 unravel.

Page 29

1      MR. AMBROZY: Well, respectfully, Your
2  Honor, we don't think they will be confused. What we
3  think they will try to make the case, well, you had three
4  in your possession but you only but put one in your
5  complaint. Therefore it reveals to them and the world
6  that obviously the other two didn't infringe and
7  therefore that's where they start to narrow in on picking
8  away at attorney-client communications and/or picking
9  away at mental impressions.
10     THE COURT: You already identified one.
11     MR. AMBROZY: We did, Your Honor.
12     THE COURT: And isn't that the point?
13     MR. AMBROZY: We identified the one in
14 our complaint that we believed infringed. Whether we
15 analyze others and believe they infringe or don't
16 infringe, that's where the mental impression comes in.
17 And if by reviewing the ones we had in our possession,
18 then when they take depositions of witnesses, they will
19 say: Well, you had this one in your possession, why
20 didn't you put this in your complaint, didn't you think
21 it infringed? That's where they start to pick away at
22 the attorney-client communications and/or attorney work
23 product, and that's why we think they are improper.
24     It doesn't rise to the level of

Teleconference

9 (Pages 30 to 33)

### Page 30

1  innocuous information that were the documents and the
2  witnesses identified in the Manville Sales case. They
3  are two totally separate identifications, if you will.
4       THE COURT: Thank you, Ms. Roman.
5       MS. ROMAN: Yes, Your Honor, we disagree
6  that it would reveal the mental impressions. Quite
7  simply, if they have products in their possession that
8  haven't been accused of infringement, it certainly would
9  show us potential noninfringing alternative information,
10 to which ViewSonic is entitled discovery, and to
11 understand the scope of their contentions regarding what
12 the inventions disclosed in the patents in suit truly
13 are. This is -- it's no different than, for example,
14 Your Honor, they say in the complaint that there is a
15 myriad of products that could potentially be infringing.
16 They've argued -- in other meet and confers, they
17 identified one of those products but that there could be
18 others; but we are not entitled to know what those
19 potential others are until they actually accuse them of
20 infringement.
21      It's making it very difficult for us to
22 proceed with preparing our defenses and getting proper
23 discovery. I would add that Manville wasn't actually so
24 limited. It sought discovery regarding prior art

### Page 31

1  searches and opinions of validity. Certainly things that
2  if you reveal the results of prior art, using
3  Mr. Ambrozy's argument, also eventually under clever
4  thinking revealed the impressions of the attorney.
5       THE COURT: Or the identification of
6  witnesses or the identification of statements.
7       MR. AMBROZY: Your Honor, if I may
8  clarify. I think in Manville Sales what the Court
9  actually said was -- let me pull it up if I can find it.
10      THE COURT: While you are doing that,
11 let me pull out the reference in your -- it's tab 9.
12      MR. AMBROZY: Correct.
13      THE COURT: Just a second.
14      MR. AMBROZY: It's on page 2, the second
15 column, Your Honor. Starting with the cite "two more."
16      THE COURT: I see it.
17      MR. AMBROZY: And just read through that
18 paragraph. What the Court actually says the
19 identification of the prior art search is not privileged,
20 but when you get into, and I think it's a cite to Ballard
21 vs. Allegheny, the Court ruled that no work product
22 objection could be sustained until the contents of the
23 documents are sought. So although the identification of
24 the documents is not privileged, any inquiry into their

### Page 32

1  content is what's privileged and is what's protected.
2       And we feel that's where the
3  interrogatories 3 and 4 crossed over the line from
4  documents and witnesses into mental impressions.
5       THE COURT: Just give me a moment. And,
6  Ms. Roman, I don't know if you are refamiliarizing
7  yourself with the language as well.
8       MS. ROMAN: Yes, Your Honor.
9       THE COURT: Just a moment, please.
10      MR. AMBROZY: We feel it's the last
11 column paragraph in the column, Your Honor, that seals
12 it. Where it starts up: "Since the interrogatory
13 request at issue seeks only the identification of
14 individuals and documents, not the contents of the
15 documents or mental impression of attorneys." That's why
16 those documents were ordered produced.
17      THE COURT: I see that. In fact, I have
18 it interlined, but I'm not sure how this court saying
19 that "the interrogatory request at issue seeks only the
20 identification of the individuals and documents and not
21 the contents of the documents," I'm not sure I see that
22 distinction. I see the identification of an item to be
23 an identification of an item. What you intend to do with
24 that item or what you have done with the item or what you

### Page 33

1  think about the item is not being asked.
2       MR. AMBROZY: But it's our position that
3  for the process of looking at what was identified, what
4  was examined.
5       THE COURT: When do you call out your
6  witnesses? When do you identify your witnesses?
7       MR. AMBROZY: In revealing the monitors,
8  Your Honor?
9       THE COURT: No. Just witnesses in
10 general.
11      MR. AMBROZY: I don't understand your
12 question, Your Honor.
13      THE COURT: When you identify witnesses,
14 does that not disclose a mental impression of an
15 attorney?
16      MR. AMBROZY: It can and cannot. Some
17 can be innocuous and some may not.
18      THE COURT: Well, I appreciate the
19 dialog, I'm satisfied that the teaching of Manville
20 doesn't preclude the identification as requested. I will
21 require that there be a response in the two-week time
22 frame. What I may do is I may, with respect to this
23 particular matter, require it to be provided sooner.
24 Although, please someone remind me, I think there was an

## Page 34

1 agreement, was there not, that exceptions taken from
2 anything I do here today -- by today I mean when I issue
3 the order finally -- I think you agreed that there would
4 be a shorter time frame than contemplated by the rule.
5         MR. AMBROZY: It's five days, Your
6 Honor.
7         MR. KIRK: That's correct, Your Honor.
8         THE COURT: I may leave the schedule to
9 be the same.
10        Okay. Thank you. Next one, please.
11        MS. ROMAN: Tracy Roman, Your Honor.
12        I believe now we are through the
13 interrogatories and are turning to the request for
14 admission.
15        THE COURT: Okay.
16        MS. ROMAN: Your Honor, I'm not sure,
17 and, Rel, please interject if necessary, but there was a
18 supplementation provided. It was noted in the opposition
19 that plaintiffs would be supplementing certain of the
20 requests for admission. Those requests were No. 3 and
21 numbers Nos. 5 through 10.
22        THE COURT: That's my understanding.
23 Has that, in fact, occurred?
24        MS. ROMAN: It has occurred, Your Honor.

## Page 35

1 Unfortunately, we still feel that the responses that have
2 been provided and the supplementation don't resolve our
3 concerns.
4         THE COURT: I don't have those.
5 Correct?
6         MS. ROMAN: I believe that's correct.
7 And that's why I am hesitating, Your Honor, because I'm
8 not certain how best to proceed with going through these.
9         THE COURT: I don't think it would be
10 very efficient for any of us to be talking about
11 something that I haven't seen and I gather you have not
12 had in any event a meet and confer, if you will, about
13 the supplementation.
14        MR. AMBROZY: That's correct, Your
15 Honor.
16        THE COURT: And I would certainly -- the
17 rules contemplate it, the local rules mandate it and I
18 expect it. So there is going to have to be a meet and
19 confer with respect to those if they are still, if
20 Ms. Roman still asserts that they are deficient.
21        MS. ROMAN: Okay, Your Honor.
22        THE COURT: Do you want to propose a
23 time frame now or would you prefer to do that offline?
24        MS. ROMAN: We can propose it now, Your

## Page 36

1 Honor.
2         THE COURT: We have availability for the
3 rest of the week, as early as possible.
4         MR. AMBROZY: Our only problem, Your
5 Honor, is we don't know who will be available to meet and
6 confer with them, but we will make our best efforts to
7 get it down by early next week.
8         THE COURT: Okay.
9         At least I understand that that's going
10 to move forward and the only thing I would request is if
11 you are looking for additional time with me that,
12 perhaps, make some effort to reserve some time as soon as
13 you can.
14        MR. MILLER: Your Honor, this is Scott
15 Miller.
16        Do we need to go through another full
17 briefing operation after the meet and confer or is it
18 possible that we could just do the three-page letter on
19 this, do you think, and try to expedite the process?
20        THE COURT: I would certainly prefer,
21 given the timelines that you are working with now, that
22 expediting is the way to go, and if you can do it in the
23 three pages, that's good.
24        MR. MILLER: Thank you.

## Page 37

1         THE COURT: And what I expect you are
2 going to be doing is you are going to be identifying what
3 you view to be as still deficient. So if it's a matter
4 of your saying, please, use what we have, what you
5 already have and supplement it with the three pages,
6 that's fine.
7         MS. ROMAN: Thank you, Your Honor.
8         THE COURT: Thank you.
9         MS. ROMAN: That would take us, then, to
10 request for admission No. 11 and our motion that appears
11 on page 7.
12        THE COURT: Okay. Just a second.
13        MS. ROMAN: And it's Exhibit 4 to our
14 motion.
15        THE COURT: Thank you, I'm there, 11.
16        MS. ROMAN: Yes, Your Honor. The next
17 group that we are dealing with, and starting with RAF No.
18 11, seeks really to identify the scope of the invention.
19 And we focus, particularly when we requested these
20 admissions, on using LPL's own words so that there would
21 be no concern over ambiguity or even a need for claim
22 construction. This RFA asks for LPL to admit that, as
23 disclosed in the '641 patent, which is one of the patents
24 in suit, your housing substantially supports the flat

Page 38

1  panel display device, when the flat panel display device
2  is mounted to the rear housing via the fastening part at
3  the rear surface of the first frame. As we note in our
4  motion, this language was taken directly from plaintiff's
5  expert's declaration.
6       And we believe we are entitled to an
7  admission on whether or not that truly is their position,
8  as stated in that declaration. We don't believe that
9  this calls out a requirement for claim construction.
10      MR. AMBROZY: If I may respond, Your
11 Honor.
12      THE COURT: Yes, please.
13      MR. AMBROZY: It is our position that it
14 absolutely requires claim construction for all of these
15 11 through 18 because they either specifically recite the
16 claim language or they paraphrase the claim language.
17 And ViewSonic's position that our expert might have
18 construed claims in the past is irrelevant.
19      First of all, that was done in a
20 preliminary conjunction context and as the Federal
21 Circuit has stated in Pfizer at 429 F 3rd 1364 and the
22 pinpoint is 1377. Claim construction in a preliminary
23 injunction context is done on a rolling basis.
24 Therefore, once the preliminary injunction aspect is

Page 39

1  done, claim construction can still occur at a later date
2  and they can be revised. And that's exactly the position
3  we are in at this point in time.
4       THE COURT: That's what happens, doesn't
5  it?
6       MR. AMBROZY: It does, Your Honor. And
7  that's why we feel that 11 through 18 all require claim
8  construction and as set forth in Judge Farnan's
9  scheduling order, Your Honor, there is a time and a place
10 for that. And until that time arises, it's impossible to
11 admit or deny this request as well as the others.
12      THE COURT: Well, I am just focusing on
13 11 for a moment and then we will figure out what the
14 sweep is. I am satisfied that it does relate to the
15 claim construction process. I am certainly mindful of
16 what happens at the preliminary injunction stage. I am
17 mindful of how the view of the expert can change, be
18 modified, be refined over time. And I'm satisfied,
19 therefore, that there need be no further answer with
20 respect to 11.
21      And maybe to make it easy, I don't see
22 any difference with respect to 12, and I'm happy to hear
23 you discuss with me if you see that there is a
24 difference, with respect to 13, with respect to 14, with

Page 40

1  respect to 16, and I do pause over 17. And I want you to
2  pause with me here. Maybe it's being too simple for me
3  to say that in looking at 17 -- I think what I see here
4  is a request to admit a simple fact that does not require
5  claim construction.
6       MR. AMBROZY: Your Honor, it's our
7  position that attached to the stand absolutely implies or
8  brings in the claim construction issue, because of the
9  claims at issue, for example, 35, in the '641 patent
10 recite "a rear mountable flat panel display capable of
11 being mounted to a data processing device" and then it
12 goes on to talk about the mounting of the first frame and
13 the second frame of the display panel. So attaching to
14 the stand necessarily implicates all those claim terms
15 and falls within, falls under Judge Farnan's Rule 16
16 scheduling order.
17      MS. ROMAN: Your Honor, this is Tracy
18 Roman.
19      We disagree. The dilemma that
20 plaintiff's position is putting us in is that they can
21 say the VX900 has these features. These features
22 infringe the patents in suit because, for example, it has
23 two screws that enter from the rear and attach to the
24 component we are going to call a frame. But then when we

Page 41

1  ask them to admit that those screws attach to something
2  else as well, they can't admit it because it requires
3  claim construction.
4       THE COURT: But maybe this would be
5  helpful. Where is the claim that includes the language
6  "attach the stand to"?
7       MS. ROMAN: It doesn't exist in the
8  claims, Your Honor.
9       MR. AMBROZY: That was my point earlier,
10 Your Honor, that ViewSonic either uses the claim exactly
11 or paraphrases them. And in claim 35 in the second
12 paragraph it starts out "wherein the flat panel" --
13      THE COURT: Just give me a second, will
14 you?
15      MR. AMBROZY: Yes. Okay.
16      THE COURT: I don't know that I have --
17 keep going.
18      MR. AMBROZY: It states: "Wherein the
19 flat display panel is between the first frame and the
20 second frame, the first frame of the back light unit
21 capable of being fixed," capable of being fixed is
22 essentially what they are asking for when they ask about
23 attaching, using the screws to attach to the stand. And
24 I will continue reading the claim language: "capable of

Teleconference

12 (Pages 42 to 45)

Page 42

1  being fixed to a housing of the data processing device
2  through the fastening part at the rear surface of the
3  first frame."
4       So it may look innocuous, the statement
5  attaches the stand to the VX900 monitor, but it
6  necessarily implicates all the claim language.
7       THE COURT: Ms. Roman.
8       MS. ROMAN: Yes, Your Honor. The claim
9  language doesn't include the word stand and attach is not
10 some nefarious work-around by ViewSonic to try to pull in
11 claim language that doesn't exist. It's simply: Here is
12 the product, this is the feature as we observed it, and
13 the structure. The request doesn't ask them to admit
14 that those screws only attach the stand, which might in
15 some distant way reach to Mr. Ambrozy's argument. But if
16 we can't ask by discovery, about the features of the
17 product that can be observed and don't require any claim
18 construction, I'm afraid we are not going to be able to
19 have any depositions because we are always going to be
20 running into this dilemma before claim construction is
21 completed.
22      THE COURT: I understand your respective
23 positions with respect to 17. I said that I paused over
24 it. And what I intend to do is think about it further

Page 43

1  and when we issue a decision by Monday or Tuesday of next
2  week you will have my view with respect to that.
3       MR. AMBROZY: Your Honor, if I may just
4  point out one more claim term. In claim 36 it also asks
5  "wherein the fastening part includes a fastening hole."
6  And if you look at the request for admission No. 17, it
7  asks about the two top screws and the two screw holes
8  which obviously implicate the claim 36 and the fastening
9  part and includes the fastening hole.
10      THE COURT: Thank you, Your Honor.
11      MR. AMBROZY: Thank you.
12      THE COURT: Just one moment. I am going
13 to just put you all on hold for just a moment, please.
14      Are you all back on?
15      MS. ROMAN: Yes, Your Honor.
16      THE COURT: I'm sorry, I was talking to
17 a phone that kept blinking. Thank you.
18      We are up to 18.
19      MS. ROMAN: Your Honor, may I interject
20 for a moment?
21      THE COURT: Sure.
22      MS. ROMAN: Just on 17, because it
23 raises an issue that I think is going to be a problem for
24 all of the parties moving forward through the rest of

Page 44

1  discovery until after a claim construction order is
2  issued.
3       THE COURT: 17?
4       MS. ROMAN: Yes. Looking back at 17,
5  and it stems from Mr. Ambrozy's comment regarding
6  fastening holes, and pointing out the fact that
7  underlying most of their objections to these requests for
8  admission that any time a word is used in the discovery
9  request that is a word included either in the claim of
10 the patent or in the specification of the patent or a
11 word that can be interpreted to be similar to those
12 words, we are precluded from doing discovery on it. It's
13 going to make it almost impossible for us to conduct any
14 depositions of inventors. We would appreciate your
15 guidance when you are considering this request No. 17 how
16 we can proceed forward and get around this potential land
17 mine.
18      THE COURT: I think you can both hear
19 what I am inclined to do by virtue of the way I posed the
20 questions I asked. I just want to give it some
21 additional thought. And I appreciate what you have just
22 said.
23      MS. ROMAN: Thank you, Your Honor.
24      And if I may step backwards, then, to

Page 45

1  request for admission No. 16.
2       THE COURT: Yes. Because I did ask if
3  you had any view as to why they were different, and I
4  need to hear that.
5       MS. ROMAN: Yes, Your Honor. And I
6  don't want you jumping around too much, but I will just
7  state for the record at the moment that 16 and 18, which
8  are in this group of requests that we are sort of dealing
9  with all at once, are similar. I think 16 is a hybrid
10 for Your Honor to consider, a hybrid between request 17,
11 which requests for them to admit something about the
12 structure of the accused monitor, and potentially Your
13 Honor's ruling on 13, 14, 11 and 12, combining in
14 language that LPL argues requires construction of the
15 claim.
16      So we would like consideration, at
17 least, on request for admission No. 16, which asks them
18 to admit -- and it's really a matter of admitting their
19 observation of the product from their analysis of the
20 product, that when assembled those screws at issue -- I'm
21 sorry, Your Honor, I misspoke. 16 actually dealings with
22 one of the prior art references that has been evaluated
23 in the case.
24      THE COURT: It does.

Page 46

1       MS. ROMAN: That the screw that's in the
2  center back of that product and the post do not securely
3  fix, firmly attach or make fast the device to the rear
4  housing.
5       MR. AMBROZY: Your Honor, if I may, in
6  regard to 16 and 18, as we set forth in our brief on page
7  8 and 9, we also take the position that the whole idea of
8  asking LPL to admit as to whether something that's in
9  paper form -- this pixel vision reference, the screws
10 that are shown in there, whether they securely fix,
11 firmly attach or make fast a flat panel display is also,
12 as we stated in our brief, is posing a hypothetical,
13 first of all. And it's also vague and ambiguous because
14 how can we admit or deny something that is only in paper
15 form.
16      MS. ROMAN: Your Honor, if I may. It
17 was a product that was evaluated by them and their
18 expert, not in paper form, but in tangible form. And the
19 statement that we are requesting them to admit is the
20 statement made by their expert witness that in fact that
21 screw to that threaded post does not securely fix, firmly
22 attach or make fast the device. This is the language
23 that was used by their expert so there should be no
24 ambiguity in it either.

Page 47

1       And it really is not asking for them to
2  construe any claim terms. It's asking whether or not the
3  product structure is this or is not this. Whether the
4  claim construction turns out to be that rear mountable
5  means something entirely different this has no bearing on
6  whether this is the reality of this structure of this
7  product.
8       THE COURT: I understand the distinction
9  you are wanting to draw and I will take 16 under
10 advisement along with 17.
11      MS. ROMAN: And, Your Honor, as I had
12 mentioned, 18, it's the same request, only 18 is the one
13 that deals with the accused monitor, the X900.
14      THE COURT: Yes.
15      MR. AMBROZY: Your Honor, if I may.
16 Just pointing out that in 18 as well, we take the
17 position that it's vague and ambiguous in that it asks
18 for whether the rear housing provides substantial
19 support. Again, to force a request for admission on that
20 point we think -- it's a hypothetical pose and it becomes
21 vague and ambiguous when we try to answer it.
22      THE COURT: I understand that.
23      That I will also deal with when I issue
24 a written decision.

Page 48

1       MR. AMBROZY: Thank you, Your Honor.
2       THE COURT: 19, please.
3       MS. ROMAN: I do apologize again, Your
4  Honor, but I have to take us backwards one more time to
5  requests 14 and 15. These requests actually deal with
6  the prior art front mounting method, which is called out
7  specifically and designed specifically in the
8  specification to the patents in suit. It doesn't deal
9  with the actual claims or the invention disclosed.
10      And in that regard we believe that it
11 does not require any claim construction because the
12 definition of the method is set forth clearly in the
13 specifications.
14      THE COURT: This is 14 and --
15      MS. ROMAN: And 15, Your Honor.
16      14 seeking the plaintiff to admit that
17 when practicing the prior art front mounting method, as
18 referenced in the '641 patent, the housing provides
19 substantial support for the flat panel display device
20 when mounted.
21      THE COURT: Right.
22      MS. ROMAN: And then 15 asking the
23 plaintiff admit that the front mounting method does not
24 require that the LCD device be mounted to the front case.

Page 49

1  We would simply ask, Your Honor, to consider those in
2  conjunction with the additional considerations that you
3  are giving to these other group of requests.
4       MR. AMBROZY: If I may, Your Honor.
5       THE COURT: Yes, please.
6       MR. AMBROZY: With regard to 14 and 15,
7  we reiterate the fact that it is dependent on claim
8  construction, first of all. But also 14 and 15, as we
9  spelled out in our brief, were vague and ambiguous. And
10 in addition to that, as we stated in regard to the
11 Fulhorst case, which relies on Golden Valley, we believe
12 that it's improper to ask for a comparison between prior
13 art methods or devices in comparing it to the patent in
14 suit and asking for a bald legal conclusion, which is
15 what requests 14 and 15 are doing.
16      THE COURT: Just give me one moment,
17 please.
18      I understand your positions with respect
19 to 14 and 15. And although I gave you -- I intend to
20 also consider that an issue when I issue a written
21 decision.
22      MR. AMBROZY: Thank you, Your Honor.
23      MS. ROMAN: Thank you, Your Honor.
24      I believe that the next request at issue

Page 50

1  is 19.
2  THE COURT: Yes.
3  MS. ROMAN: This request, again, seeks
4  for an admission about the structure that the DX 900 and
5  in this regard it's asking in the context of practicing
6  the prior art front mounting method as that method is
7  disclosed expressly in the patents in suit.
8      Again, it underscores and highlights for
9  Your Honor the difficulty we are having in drawing the
10 distinction between when something does and doesn't
11 require a claim construction and how much discovery we
12 can take on prior art.
13 THE COURT: Right.
14 MR. AMBROZY: If I may, Your Honor, in
15 our brief we don't point out that claim 19 is dependent
16 on claim construction. What we did make the argument on
17 is the fact that it's asking for whether the prior art is
18 disclosed in -- admit that the DX900 uses the prior art
19 front mounting method disclosed in the patent. And
20 again, it's asking for a bald legal conclusion. Judge
21 Farnan has actually looked at this issue and found it
22 improper.
23 THE COURT: Does it not ask for an
24 ultimate legal conclusion?

Page 51

1  MS. ROMAN: Your Honor, it does not seek
2  an admission that the product does not infringe. And
3  there is nothing in here to indicate that if it practices
4  the prior art front mounting method that it cannot also
5  practice the rear mounting method. In fact, that's one
6  of the issues regarding the scope of the claims of the
7  patents that we are trying to understand through
8  discovery.
9      It's been unclear to us since the
10 beginning of this case whether or not the contention is
11 that the patent can include both the rear mounting and
12 devices that incorporate other forms of mounting in
13 addition to that. We need to get some clarification on
14 that, and this discovery is the only way we can do that.
15 MR. AMBROZY: Again, Your Honor, asking
16 for legal conclusions is not the proper way to do it.
17 THE COURT: It seems to me it does
18 require that LPL admit or deny whether the features of
19 the VX900 meet the express definition of front mounting,
20 doesn't it?
21 MR. AMBROZY: We believe it does, Your
22 Honor.
23 THE COURT: I mean, I expect that that's
24 what -- it seems to me that that is what it is doing.

Page 52

1  And if that is what it's doing, it is seeking a legal
2  conclusion.
3  MR. MILLER: Your Honor, this is Scott
4  Miller.
5      I don't think -- maybe this is part of
6  the point Ms. Roman was making. It doesn't say admit
7  that the VX900 does not infringe the patent claims. In
8  the patent itself it articulates the prior art method of
9  how an attachment can be made.
10 THE COURT: Right.
11 MR. MILLER: What we are asking is for
12 them to admit that what they admit is the prior art is
13 also what is found in our product. They can take the
14 position that our product also practices the invention,
15 and therefore there is an infringement. And the prior
16 art method is not articulated in a way that says front
17 mounting means screws from the front and no screws from
18 the rear. At least, we don't read it that way.
19     But we certainly need to be able to
20 understand whether or not the prior art methodology is
21 employed in this product. And they are also contending
22 that additional methodologies infringe the patents.
23     So we are not asking it in a manner that
24 is exclusive as to the infringement contention. And

Page 53

1  therefore we didn't believe it was seeking the ultimate
2  conclusion of noninfringement.
3  MR. AMBROZY: But it does seek the
4  conclusion as to prior art and whether that goes to the
5  invalidity of the patent.
6  THE COURT: Yes. Okay.
7  MR. MILLER: I don't think so.
8  THE COURT: I do understand your
9  respective positions and I will advise you of my rulings
10 when I write about it.
11 MR. AMBROZY: Okay.
12 MR. MILLER: If I could ask Mr. Ambrozy
13 for a little clarification. I'm not sure how it relates
14 to the validity of the patent at all, if it practices
15 what you admit. If the patent admits what the prior art
16 is, and we are not asking you to admit that the prior art
17 invalidates the patent, I don't see how this request gets
18 to that. Maybe I am misreading it. I'm not trying to be
19 argumentative, but I was very confused by Mr. Ambrozy's
20 statement regarding the validity of the patent and how
21 this request brings that into issue.
22 THE COURT: Mr. Ambrozy, do you want to
23 respond?
24 MR. AMBROZY: We are going to stand on

Page 54

1  our answers, Your Honor. We will stand on our answers.
2      THE COURT: Thank you. No. 22, please.
3      MS. ROMAN: Just a moment, Your Honor.
4  I am turning to it.
5      THE COURT: Is that in dispute?
6      MS. ROMAN: Actually, Your Honor, I
7  don't believe it is that's why I was having a little
8  difficulty here. No. I think we were moving on to 23,
9  Your Honor.
10     THE COURT: Thank you.
11     MS. ROMAN: Request No. 23 asks
12 plaintiff to admit that a component in the VX900, which
13 they have identified as letter C for identification
14 purposes, is not part of an LCD module, which was also
15 identified by letter H by their expert, and we attach the
16 expert's description for this to their RFA.
17     The objection argues that LPL doesn't
18 understand what is meant by the term part of the LCD
19 module.
20     THE COURT: Right.
21     MS. ROMAN: Whether it requires
22 preassembly or post assembly. ViewSonic believes that
23 this is a classic case of responding to an admission and
24 qualifying your answer. To the extent that you can admit

Page 55

1  for preassembly purposes or post-assembly purposes, they
2  should do so and then qualify their answer.
3      They are certainly familiar with what an
4  LCD module is, as we noted in our brief, and it's also
5  been used, that term has been used in their response to
6  other discovery including in their supplemental responses
7  to discovery. So there shouldn't be any ambiguity as to
8  what an LCD module is.
9      MR. AMBROZY: Again, it's not the LCD
10 module that's in dispute here, it's the VX900 of which
11 the LCD module is a part of and which obviously is -- the
12 frames that attach or don't attach to that and at what
13 point they are attached, whether it's preassembly or post
14 assembly, again, that's ambiguous. But also just the
15 fact that we are discussing the LCD module and whether
16 the frames are attached or not implies claim construction
17 again.
18     THE COURT: And I guess my question is,
19 why doesn't it implicate claim construction?
20     MS. ROMAN: Your Honor, it doesn't use
21 any of the terms of the claim. It simply asks whether a
22 component is part of another component as they understand
23 it from their observation of the product. Particularly
24 if they could respond that they deny that -- or admit

Page 56

1  that the component identified as C is not part of the LCD
2  module post assembly, but admit that it is part -- or
3  preassembly, but it is part of it post assembly.
4      THE COURT: And you are just suggesting
5  that even though you didn't ask it that way that they
6  should be in a position to do both, if you will.
7      MS. ROMAN: Yes, Your Honor. I believe
8  that the Federal Rules of Civil Procedure contemplates a
9  responding party to respond to an RFA in as best a way as
10 they can, admitting as much of it as they can, and
11 qualifying their answer if necessary. And this is a good
12 example of that.
13     MR. AMBROZY: And obviously we take the
14 contrary view, Your Honor, that if it was meant to be
15 stated that way, it should have been stated that way. We
16 can't be expected to guess as to what answer ViewSonic
17 would like to see and then tailor our response to that.
18     THE COURT: I understand your positions
19 and I will advise.
20     MR. AMBROZY: Thank you, Your Honor.
21     THE COURT: 28.
22     MS. ROMAN: Yes, Your Honor.
23     THE COURT: Grouping of 28 -- just a
24 moment. 28 through 30. Okay.

Page 57

1      MS. ROMAN: Your Honor, 28 through 30, I
2  believe the issue is whether or not it seeks ultimate
3  conclusion of infringement. Our position is that it does
4  not because it actually seeks LPL's contention, not a
5  declaration or an admission of actual infringement. Each
6  request includes the words that LPL believes the
7  identified product infringes.
8      We are looking for whether or not they
9  believe that that product infringes so we can again
10 further start to understand what the scope of the
11 invention disclosed in the patents in suit includes and
12 what products and manners of mounting could be considered
13 noninfringing alternatives.
14     MR. AMBROZY: If I need to respond, Your
15 Honor, I will.
16     THE COURT: Maybe it's important, and I
17 think it's important for me to understand why LPL's
18 subjective beliefs about products that are not relevant
19 to the claims or defenses in the litigation -- so it
20 really is a Rule 26(b)1 inquiry, is it not?
21     MS. ROMAN: I'm sorry, Your Honor, you
22 are asking?
23     THE COURT: 26(b) inquiry? Why is it
24 related? How is it relevant?

Page 58

1    MS. ROMAN: Well, as I mentioned, Your
2 Honor, it goes to, besides the ability to discover
3 noninfringing alternatives, structures that contemplate
4 noninfringing alternatives. In addition, Your Honor, we
5 are dealing with patents that involve flat panel display
6 devices that it's unclear, and hopefully we will get to
7 it in claim construction what scope that entails.
8 ViewSonic puts products in the marketplace that include
9 various types of, for example, LCD modules. And if we
10 can identify modules that are noninfringing alternatives,
11 that's important for us to do through the course of
12 discovery.
13    In addition, in regards to the
14 commercial success interrogatory that we discussed
15 earlier, they responded that the patents said, the
16 inventions disclosed in the patents ensued are wildly
17 used in the industry by various competitors of both
18 ViewSonic and Tatung. This would be a classic example of
19 us trying to identify whether or not this is one such
20 device that showed commercial success of the invention.
21    THE COURT: Okay.
22    MR. AMBROZY: Do I need to respond, Your
23 Honor?
24    THE COURT: Please.

Page 59

1    MR. AMBROZY: First of all, it's not
2 relevant, as you pointed out, whether or not these
3 infringe. Second of all, in order to make that
4 determination requires claim construction. But more
5 importantly, and I think in regard to not only relevance
6 but it's just basically a bald legal conclusion asking
7 whether these monitors infringe or not. That's a problem
8 for the Court.
9    MS. ROMAN: Your Honor, if I might also
10 point out as we did in the motion, LPL did provide this
11 information of its own accord in response to
12 interrogatories. It said that it had had discussions, it
13 had identified these products as potentially infringing
14 and has had discussions with those parties regarding that
15 potential infringement.
16    THE COURT: So, I mean, I gather you
17 don't see a distinction between -- I don't remember
18 whether the word was potential or possible. Maybe you
19 can help me as we are sitting here. The possibility or
20 potential of infringement as opposed to a belief, I mean
21 is a belief a drill-down through more information?
22    MS. ROMAN: I don't believe so, Your
23 Honor. It's simply seeking THAT this is a contention of
24 theirs so we can proceed forward with whatever necessary

Page 60

1 discovery we have to conduct on these products, as I
2 mentioned, to go to commercial success, to damages, to
3 noninfringing alternatives.
4    THE COURT: Okay.
5    MR. AMBROZY: Do you need a response,
6 Your Honor?
7    THE COURT: Yes. Go ahead.
8    MR. AMBROZY: I was going to say whether
9 it's a contention or not, it's ViewSonic's job to ask for
10 those contentions and seek them properly whether they be
11 in interrogatories or not. But to have LPL admit or deny
12 whether something infringes is clearly not within what's
13 called for by the discovery process.
14    THE COURT: All right. I understand
15 your respective positions, and I will advise in writing.
16    MR. AMBROZY: Thank you, Your Honor.
17    MS. ROMAN: Your Honor, the last RFA at
18 issue are 31 and 32, and that actually moves backward in
19 our motion, if you are looking at it, to page 9.
20    THE COURT: I have it. Thank you.
21    MS. ROMAN: These two requests for
22 admission deal with correlations between structures of
23 the VX900, which is an accused product, and the VX2000
24 which as Your Honor may recall we already mentioned is a

Page 61

1 product that's in their possession. It's also a product
2 that was the subject of the trial in the U.K., and which
3 was found to be noninfringing. So to try and identify
4 the corollary features between those and whether LPL's
5 contention that the structure of the VX900 differs from
6 that would help, again, ViewSonic understand the scope of
7 the claims at issue in the case.
8    So request 31 asks LPL to first admit
9 from a foundational standpoint that it is aware of the
10 structure of the VX2000 and in particular the mounting of
11 the LCD device in that structure.
12    And then request 32 asks them to admit
13 that the VX900 uses the same mounting of the LCD device
14 to the housing as is used in the VX2000.
15    If I understand correctly from their
16 opposition, they take issue with the fact that we use the
17 words "manner" or "method" of mounting as opposed to
18 saying that it is mounted the same way. Certainly the
19 use of manner or method was not intended to try and sweep
20 in any claim construction of the method patent that's at
21 issue in this case, the '718. It was simply a choice of
22 phrasing to get to the structure of the mounting of the
23 LCD device of the VX2000, and can be read that way.
24    THE COURT: And your device.

Teleconference

17 (Pages 62 to 65)

Page 62

1  MS. ROMAN: And our device, yes.
2  THE COURT: What does this request for
3  admission have to do with claim construction? If I
4  understand both 31 and 32, the view or the request, "do
5  you know," what does that have to do with the patent in
6  suit?
7  MR. AMBROZY: First of all, Your Honor,
8  the '718 patent is a method patent.
9  THE COURT: I understand that. But I'm
10 talking -- let's go to 31. Admit that LPL is aware of
11 the manner or method by which the LCD device in the
12 ViewSonic VX2000 monitor is mounted to the housing.
13 MR. AMBROZY: Also, as we stated in our
14 objections and answers, we take the position that aware,
15 manner or method and mounted to the housing are all
16 ambiguous in the sense that there are probably several
17 ways in which to mount something. I don't know if Your
18 Honor is aware, but a lot of these modules and monitors
19 have various screw holes so it's not particular as to --
20 THE COURT: I have learned a little bit
21 about them over the past few months.
22 MR. AMBROZY: Okay. It's our position
23 that it basically poses a hypothetical and that it cannot
24 be answered in a short --

Page 63

1  THE COURT: How is it hypothetical? If
2  you are looking at -- they are asking you to, if you are
3  aware of ViewSonic VX2000, and I expect you are aware of
4  the device, they are asking whether you are aware of the
5  method by which the LCD device is mounted?
6  MR. AMBROZY: And I think that's the key
7  phrase, Your Honor, mounted to the housing.
8  THE COURT: What's difficult about that
9  phrase?
10 MR. AMBROZY: Because whether we admit
11 or deny necessarily implicates whether the '718 patent
12 and the method taught in there for mounting, or as the
13 claim recites, fixing the flat panel display between the
14 first and second frames, comes into play.
15 THE COURT: Ms. Roman.
16 MS. ROMAN: Yes, Your Honor.
17 Request 31 simply asks them to admit
18 whether they are aware of the mounting. It doesn't ask
19 for anything further than that. That should be an easy
20 one for them to admit or deny whether they are aware of
21 it. It doesn't disclose by either admitting or denying
22 it any claim within the '718 patent or even the nature of
23 the '718 patent.
24 THE COURT: 31, I am going to require

Page 64

1  that they either admit or deny.
2  MS. ROMAN: Thank you, Your Honor.
3  32 asks them to admit that one product
4  uses the same structure as another product, both of which
5  they have thoroughly evaluated. Again, it doesn't call
6  out a specific method or manner that's called out in the
7  '718 patent. It doesn't say that it uses the
8  front-mounting method or the rear-mounting method, just
9  that the structures are or are not the same. They can
10 deny it. If they think there is a myriad method of
11 mounting for LCD devices, they can deny it because they
12 believe it's different.
13 THE COURT: Right. Mr. Ambrozy.
14 MR. AMBROZY: Your Honor, we stand on
15 our objections that, first of all, it's ambiguous and
16 that it also would require the construction of the '718
17 patent.
18 THE COURT: I am not satisfied that it
19 would require the construction of the '718 patent, and I
20 am also not satisfied that it is ambiguous, and will
21 require that you admit or deny.
22 MR. AMBROZY: That's fine, Your Honor.
23 THE COURT: That gets us through what we
24 needed to get through today. I did anticipate and had

Page 65

1  hoped that I would have been in a position to give you a
2  ruling with respect to each. I'm sorry I'm not in a
3  position to do that, but I do want to give some of the
4  ones that I reserved further consideration. I would like
5  a transcript if I can have it -- does tomorrow afternoon
6  work?
7  COURT REPORTER: Of course, Your Honor.
8  That will be fine.
9  THE COURT: I don't know how many others
10 will be ordering transcripts. Do you all want to advise
11 her.
12 MR. MILLER: ViewSonic will be, Your
13 Honor.
14 MR. AMBROZY: As well as LPL.
15 THE COURT: Any other matters?
16 MR. AMBROZY: Not from LPL.
17 MS. ROMAN: Not from ViewSonic. Your
18 Honor, we will meet and confer on those responses that
19 have been supplemented as early as possible.
20 THE COURT: Thank you all very much.
21 (The teleconference ended at 2:37 p.m.)
22
23
24

Teleconference

18 (Page 66)

Page 66

1      CERTIFICATE
2
3  STATE OF DELAWARE:
4  NEW CASTLE COUNTY:
5      I, Ellen Corbett Hannum, a Notary Public within and
6  for the County and State aforesaid, do hereby certify
7  that the foregoing teleconference was taken before me,
8  pursuant to notice, at the time and place indicated; that
9  the discussion was correctly recorded in machine
10 shorthand by me and thereafter transcribed under my
11 supervision with computer-aided transcription; that the
12 transcript is a true record of the statements given by
13 the participants; and that I am neither of counsel nor
14 kin to any party in said action, nor interested in the
15 outcome thereof.
16
17      WITNESS my hand and official seal this 23rd day
18 of August A.D. 2006.
19
        _____
20      Ellen Corbett Hannum, RMR, CMRS
        Notary Public - Reporter
21      Delaware Certified Shorthand Reporter
        Certification No. 118-RPR
22
23
24