IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, <br><br> Defendants. | Civil Action No. 04-343 (JJF) |

**PLAINTIFF'S NOTICE OF RULE 30(B)(6)
DEPOSITION OF TATUNG COMPANY**

PLEASE TAKE NOTICE that Plaintiff LG.Philips LCD Co., Ltd. ("Plaintiff" or "LPL") will take the deposition of Defendant Tatung Company ("Tatung"), pursuant to Fed. R. Civ. P. 30(b)(6), beginning on February 6, 2007 at 9:30 a.m. and continuing at 9:30 a.m. each day. The deposition will take place at the offices of The Bayard Firm, 222 Delaware Avenue, 9th Floor, Wilmington, DE 19899-5130. The deposition will be taken before a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s). The deposition will be videotaped, may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer, and will continue from day to day until completed or adjourned if authorized by the Court or stipulated by the parties. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to this Notice. Pursuant to Fed. R. Civ. P. 30(b)(6), Tatung is required to designate and prepare one or more persons to testify at the deposition as to the facts and information known or reasonably available to Tatung.

1

December 5, 2006

                      THE BAYARD FIRM

                      <u>/s/ Richard D. Kirk (rk0922)</u>
                      Richard D. Kirk
                      Ashley B. Stitzer
                      222 Delaware Avenue, Suite 900
                      P.O. Box 25130
                      Wilmington, DE  19899-5130
                      (302) 655-5000
                      rkirk@ bayardfirm.com
                      Counsel for Plaintiff
                      LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzeznski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

2

## ATTACHMENT A - DEPOSITION TOPICS AND DEFINITIONS

### Definitions Applicable to Topics to be Addressed at the Deposition

For purposes of this Attachment, you should use the following definitions for the terms used herein. These definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting LPL's position in this case regarding claim construction or any other issue. LPL specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

1. "Tatung," "you," and "your" as used herein, means Defendant Tatung Company, and all persons or entities acting or purporting to act on your behalf, and any affiliates of Tatung, including, but not limited to, Defendant Tatung Company of America, Inc.

2. "Plaintiff" refers to the Plaintiff in the above-captioned lawsuit as well as its affiliates.

3. "The '718 Patent" means United States Patent No. 6,498,718, attached as Exhibit A to the Plaintiff's Complaint in Civil Action No. 04-343-JJF.

4. "The '641 Patent" means United States Patent No. 6,501,641, attached as Exhibit B to the Plaintiff's Complaint in Civil Action No. 04-343-JJF.

5. "Patents-in-Suit" refers either individually or collectively to United States Patent No. 6,498,718 and United States Patent No. 6,501,641.

6. "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

7.  "Any" means each and every.

8.  The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories (or, if applicable, document requests) all information that might otherwise be construed to be outside of their scope.

9.  "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two or more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

10.  "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

11.  "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling, or negating.

12. "Document" means all types of documents and things embraced within Federal Rule of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, emails, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROMs, magnetic tapes and other data compilations from which information can be obtained or translated, if necessary by the defendant through detection devices into reasonably usable form. The term document also refers to any tangible object other than

a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

13. "Flat panel display," also referred to as "flat display panel" means for purposes of this deposition only, a component within the flat panel display device on which an image may be viewed; or the layer of a display device on which the image appears; and any definition adopted by the Court.

14. "Flat panel display device" means for purposes of this deposition only an apparatus having at least a flat display panel and supporting frame(s); or a sandwich of layers including a flat display panel, assembled as a device, along the edges of the layers of the first and second frame; or a sandwich of layers, including a flat display panel, held together by a first frame and a second frame to form a display device; and any definition adopted by the Court.

15. "Housing" means for purposes of this deposition only an outer casing or enclosure; or the case and body of a portable computer; or the display case/case and body of a portable computer; and any definition adopted by the Court.

16. "Identify" used in respect to a company or corporate entity means to set forth:

    (a)    the full name of the company;

    (b)    the full name of the division or office involved, if applicable; and

    (c)    the address of the company and of the division or office involved, if applicable.

17. "Identify" used in respect to a document or thing means:

    (a) to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    (b) to identify the custodian of the document or thing;

    (c) to identify the place where the document or thing may be inspected; and

    (d) if a copy of the document has been supplied to Plaintiff, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

  18. "Identify" used with respect to a natural person means to state:

    (a) the full name;

    (b) the present or last known business and residence addresses;

    (c) the last known employer or job affiliation; and

    (d) the last known occupation and business position or title held.

As to present or former government employees, state the government employer for each position held, the starting and ending date for each position, and the job description and title for each position held. Also, state the person's responsibilities with regard to any contract specified in the interrogatory.

  19. "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

  20. "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

  21. "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

22. "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

23. "Prior art" has the same meaning as defined in U.S. patent law, including in 35 U.S.C. §§ 102 and 103, and applicable case law.

24. "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

25. "Type of visual display product" means the name or alpha numeric identifier by which a given visual display product can be identified. The Tatung L17AMTN is an example of a type of Tatung visual display product.

26. "Visual display product" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

27. The use of the singular form of any word includes the plural and vice versa.

**Topics to be Addressed at the Deposition**

1. The structure of the visual display products and the method of assembling the visual display products, manufactured by or for you, and shipped, imported, sold and/or offered for sale in or to the United States since January 1, 2000, including the structure and method of assembling the flat panel display and flat panel display device contained in each of those visual display products, as well as the use, placement, location, function, and purpose of fastening part(s), fastening hole(s), and frames associated with that structure and method of assembling each of those visual display products.

2. The conception, design, and development of your visual display products including for example, the determination of which structures, methods of assembling, components and/or parts to use in the manufacture and/or assembly of visual display products manufactured or assembled by or for you, including but not limited to: i) all specifications, drawings, and instructions related to the mounting technologies, methods, components, parts, structures, and/or processes; and ii) the identity of the individuals that were responsible for and/or involved in making those determinations (*e.g.*, you, your customers, your suppliers, or others); and iii) at what point in the conception, design and development process such determinations are made (product design, procurement, assembly, etc.)

3. The evolution of the mounting technology used in the visual display products manufactured or assembled by or for you, and shipped, imported, sold and/or offered for sale in or to the United States since January 1, 2000, including: i) any attempts by you or by your manufacturers or your assemblers, to design around the Patents-in-Suit; ii) the reasons why you selected, developed and/or approved any particular

9

mounting technology or method for assembling for use in any particular visual display product; and iii) all methods for assembly and/or technologies that you rejected or modified related to mounting or assembly of visual display products, including how and why you rejected or modified each such method or technology.

4.  Any infringement analyses, inspections, investigations or testing, whether performed or authored by you or for you, including, but not limited to, infringement analyses, inspections, investigations, or testing involving the mounting technologies, methods of assembly or processes employed in your visual display products with respect to the Patents-in-Suit, and including, but not limited to, claim charts, reverse engineering reports, and conclusions reached for any such infringement analyses, inspections, investigations, or testing.

5.  Any and all technical, economic, or other advantages, benefits, or disadvantages, concerning the use of mounting structures and methods of assembly claimed in the Patents-in-Suit, and any comparisons or analysis conducted by you or for you concerning the mounting of flat panel displays or flat panel display devices used in visual display products manufactured by or for you, and shipped, imported, sold and/or offered for sale in or to the United States since January 1, 2000.

6.  All communications and documents involving you and concerning the assembly of visual display products shipped, imported, offered for sale or sold in or to the United States since January 1, 2000, including with respect to the mounting of LCD or plasma modules or panels.

7.  All documents reflecting Tatung's knowledge or approval of the assembly and/or mounting technologies or specifications concerning any visual display products imported, offered for sale or sold in or into the United States since January 1, 2000.

8.  Your contentions regarding the validity of the Patents-in-Suit, as well as any specific facts, opinions, prior art, and documents that support those contentions, including for each prior art product or reference that you rely on, the facts relevant to whether that asserted prior art qualifies as prior art and/or supports any defenses, including, for example, facts regarding the dates, conception, design, development, manufacture and distribution of all prior art products and references.

9.  The bases for each of the Affirmative Defenses and any other defenses asserted by you in relation to this lawsuit, and each of your counterclaim allegations, including, for example, the facts and documents concerning each of your Affirmative defenses and counterclaim allegations.

10. Your position and contentions concerning whether or not the Patents-in-Suit are infringed by one or more of your visual display products, literally and/or under the doctrine of equivalents, as well as the factual basis, responses to LPL's Interrogatories, and documents concerning such position.

11. Your position and contentions concerning whether the Patents-in-Suit are unenforceable for any reason, as well as the factual basis, responses to LPL's Interrogatories, and documents concerning such position.

12. All imports, shipments, sales and/or offers for sale in or to the United States by or for you or your customers, directly or indirectly, including, by model, the products sold to each customer or importer, and corresponding revenue, cost, profit, and

gross margin information for each product, and the brand name(s) associated with all such products, since January 1, 2000.

13.   Each type of visual display product manufactured by you or for you, and the customers, importers, shippers, distributors, and retailers that bought, sold, imported, and transported such products in or to the U.S., directly or indirectly, since January 1, 2000.

14.   The product brand(s), description(s), designation(s), naming conventions, and model number(s) associated with each visual display product made, shipped, imported, and/or sold by or for you or your customers, in or to the U.S., since 2000, including both internal information and information used to describe or market products to consumers and end users, and how the naming conventions pertain to the components and/or structure of a given visual display product.

15.   The identity of the persons that have manufactured, sold, purchased, imported, shipped, distributed, and serviced or repaired in or to the U.S. visual display products manufactured by or for you, and the extent to which you have the ability and legal right to obtain documents relevant to this case from each such person.

16.   The identity of the manufacturers, systems integrator(s), suppliers, and customers that have made, manufactured and/or assembled each type of visual display product manufactured, imported, sold, and/or offered for sale, in or to the United States by or for you since January 1, 2000.

17.   For each month and year since January 1, 2000, your estimated, projected / forecast, and actual sales, revenues, profitability, gross profit, operating profit and profit

12

margins related to all of your visual display products, and the way(s) that you have calculated, accounted for, and reported all such amounts, and to whom reported.

18. Since January 1, 2000, the extent to which you have, or that you have encouraged others to, purchase, import, distribute, sell, offer to sell, market, and/or advertise visual display products that have entered the U.S. market, as well as all documents concerning such matters, including, but not limited to, correspondence, product samples, sales summaries, database information, brochures, marketing plans, sales literature, advertisements, and product road maps, timelines, descriptions, and specifications.

19. The extent and ways in which the visual display products made by you or for you, including outside of the U.S., are or have been marketed, sold, offered for sale, and/or imported into the U.S., directly or indirectly, and by whom, since January 1, 2000.

20. Communications and documents concerning you or visual display products made by you or for you, and any customer or company that sells visual display products in the U.S. or any brand of visual display products sold in the U.S., including, for example, meetings, visits, conferences, teleconferences, memoranda, and product road maps, since January 1, 2000.

21. Communications and documents concerning the U.S. market, and consumer demands and preferences in the U.S. market, related to visual display products, since January 1, 2000, including your employees, offices, and visits in or concerning the U.S.

22. All licenses, royalties, and/or technology transfer agreements that pertain to visual display products and/or mounting technologies used in visual display products to which you are a party, assignor, assignee, or beneficiary.

23. The value to you of the Patents-in-Suit and the technology reflected in those Patents, assuming that the Patents are valid and infringed, and the methods by which you would determine such value, including all policies, practices and/or relevant factors you have used or deem relevant when negotiating the terms of any licenses, royalties and/or technology transfer agreements concerning visual display products and/or mounting technologies, since January 1, 2000.

24. All types of customer and product support that you have offered, provided, or contracted for concerning visual display products made, imported, or sold in the U.S., including, for example, product warranties and authorized service and repair providers, as well as any documents related to such customer and product support.

25. All conduct by you, and documents, concerning or encouraging the importation, sale, and/or offer for sale of visual display products made by or for you, by any customer or company that has imported or sold visual display products made by or for you since January 1, 2000, including, for example, contracts, negotiations, meetings, transactions, business relationships, rebates, subsidies for product advertising or promotion, and/or information sharing, between you and such customers and companies.

26. When and how you first became aware of each of the Patents-in-Suit, including, but not limited to, the date of your first actual notice or awareness of each of the Patents-in-Suit and from what source(s), and any patent searches by or for you that included or listed either of the Patents-in-Suit.

27.  Your efforts to avoid infringing the Patents-in-Suit since the time that you first learned of the Patents-in-Suit, including, but not limited to, all attempts by or for you to obtain and rely on any advice of counsel, undertake any investigation or analysis, change or consider changing the design, mounting, or assembly concerning any visual display products including the flat panel display and/or flat panel display device and/or housing contained in the visual display products, or take any steps to exercise due care not to infringe.

28.  Your efforts to gather and search for information and documents responsive to each of the discovery requests propounded on you by Plaintiff, including: the locations and sources searched; the persons interviewed and responsible; what was done to preserve and produce electronically stored information, documents, data, and visual display products, including, for example, discovery in the possession or control of Tatung, Tatung America, Andrew Sun, Renita Hill, Edward Chen, Mike Lee, Wen-Yen Kuo Lin, Kuo-Yen Chen, Oliver Shih, Bryan Lin, David Wang, Hang Hui Hu, Huang Chin-Min, Kevin Ho, Tsyr-Huey ("Vincent") Liu, His-Ling ("Jamie") Yang, and S.Y. Tsai.

29.  The persons knowledgeable and/or responsible regarding the assembly of your visual display products, including the methods used to mount and/or assemble flat panel displays and flat panel display devices with respect to such products; your relationships with customers and suppliers regarding visual display products; and the importation, sale, or offers to sell visual display products made by or for you in or to the United States since January 1, 2000, and documents concerning your organizational and departmental structure, hierarchy, and chain of command.

30. Your communications, including submissions from you, as well as to, from or with industry or market research firms since January 1, 2000, such as, for example, DisplaySearch, and/or your use of information or data compiled or disclosed by those industry research firms, concerning visual display products or any markets for visual display products.

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on December 5, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Jeffrey B Bove, Esq.  
Jaclyn M. Mason, Esq.  
Connolly Bove Lodge & Hutz LLP  
1007 North Orange Street  
P.O. Box 2207  
Wilmington, Delaware 19899-2207  

Frederick L. Cottrell, III, Esq.  
Anne Shea Gaza, Esq.  
Richards, Layton & Finger  
One Rodney Sqare  
P.O. Box 551  
Wilmington, DE 19899  

The undersigned counsel further certifies that copies of the foregoing document were sent by hand to the above counsel and by email and first class mail to the following non-registered participants:

Scott R. Miller, Esq.  
Connolly Bove Lodge & Hutz LLP  
355 South Grand Avenue  
Suite 3150  
Los Angeles, CA 90071  

Valerie Ho, Esq.  
Mark H. Krietzman, Esq.  
Frank C. Merideth, Jr., Esq.  
Greenberg Traurig LLP  
2450 Colorado Avenue, Suite 400E  
Santa Monica, CA 90404  

Tracy Roman, Esq.  
Bingham McCutchen LLP  
355 South Grand Ave., 44th Floor  
Los Angeles, CA 90071-3106  

/s/ Richard D. Kirk (rk0922)  
Richard D. Kirk  

571447-1