# Exhibit 1

AO 88 (Rev.11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LG.Philips LCD Co., Ltd.

     v.          **SUBPOENA IN A CIVIL CASE**

Tatung Co.; Tatung Company of America, Inc.; ViewSonic Corporation

Case Number:[1] **USDC (Delaware) CV04-343**

TO: Hewlett-Packard Company
   3000 Hanover Street
   Palo Alto, CA 94304-1185

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  | December 1, 2006 |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. See topics listed in Attachment B.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Day Casebeer Madrid & Batchelder LLP | January 19, 2007 |
| 20300 Stevens Creek Boulevard, Suite 400, Cupertino, CA 95014; (408) 873-0110 | 10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Day Casebeer Madrid & Batchelder LLP | January 04, 2007 |
| 20300 Stevens Creek Boulevard, Suite 400, Cupertino, CA 95014; (408) 873-0110 | 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for Defendant, ViewSonic Corporation | December 1, 2006 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER

Scott R. Miller, Connolly Bove Lodge & Hutz LLP, 355 South Grand Avenue, Suite 3150, Los Angeles, CA 90071; (213) 787-2510

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev.11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
            DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

## DOCUMENT REQUESTS

1.  Any and all documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) which describe, illustrate or show the physical structure of the HP s1010a and/or s1010 LCD monitor (or any Flat Panel Display Product which has the same Mounting Technology as the and/or HP s1010a) including, without limitation:

   (a) The structure by which the LCD module is secured, mounted, attached, affixed and/or assembled within the product;

   (b) The structure by which the monitor stand is connected, attached, secured, mounted, affixed or assembled to the monitor head in the product;

   (c) The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the product; and

   (d) The development of the Mounting Technology used in the HPs 1010a; and any and all structures in the product that support one or more internal components of the product including without limitation, the LCD module.

2. Any and all documents (including, without limitation, any drawings, photographs, depictions, descriptions or instructions) which describe, illustrate or show the manner or method steps by which the components of the HP s1010a and/or s1010 LCD monitor (or any product which has the same Mounting Technology as the HP s1010a and/or s1010) are assembled including, without limitation:

   (a) The manner or method steps by which the LCD module is secured, mounted, attached, affixed and/or assembled within the product;

   (b) The manner or method steps by which the stand is connected, attached, secured, mounted, affixed or assembled to the product;

   (c) The manner of method steps by which the front bezel is secured, attached, affixed or assembled to the remaining components of the product; and

   (d) The manner or method steps by which any and all support structures, which holds, supports or secures one or more internal components of the product are assembled and/or secured within the product.

3. Documents sufficient to identify and establish the dates on which the HP s1010a and/or s1010 monitor (or any other display device having the same

491626.1                                    2

Mounting Technology as the HP s1010a and/or s1010) or any group of products, including but not limited to work stations were:

    (a)    First shown at any trade show or disclosed to any third party;

    (b)    First offered for sale to any person;

    (c)    First sold and/or distributed and/or transferred to any third person; or,

    (d)    First imported into the United States.

4.    Documents sufficient to show the annual total sales of the HP s1010a and/or s1010 monitor (or any product which has the same Mounting Technology as the and/or HP s1010a) by country by year prior to October 23, 1997.

5.    Documents sufficient to identify by name, brand or other identifier any workstation or other configuration which included the HPs1010a and/or s1010 monitor or a display device having the same Mounting Technology as the s1010a and/or s1010 monitor as part of a system or larger group of components that were sold, imported into the United States, offered for sale or shown at a trade show prior to October 23, 1997, and sufficient to show the total annual number of product imported and the annual sales of any such product and/or display device.

6.  Documents sufficient to identify the brand or trade name under which the HP s1010a and/or s1010 (or any product which has the same Mounting Technology as the HP s1010a and/or s1010) was sold prior to October 23, 1997.

7.  Drawings, photographs, graphics, depictions or documents which describe, illustrate or show the sale, offer for sale or physical structure of any display device which uses a Mounting Technology with a connection or means for physically connecting the rear exterior case of the product to any internal structure that is part of or is attached to the LCD module, including, without limitation:

   (a) The structure by which the LCD module is secured and/or mounted within any enclosure of the product;

   (b) The structure by which any stand, arm or wall is connected, attached, secured, mounted, affixed or assembled to the display device;

   (c) The structure by which the front bezel is secured, attached, affixed or assembled to one or more of the remaining components of the display device;

   (d) Any and all structures within the display device to support the LCD module; and,

   (e) Documents sufficient to identify and establish the dates on which any such display device or product was first shown at any trade show or

disclosed to any third party; first offered for sale to any person; first sold and/or distributed and/or transferred to any third person; imported into the United States; and/or the annual total sales of the product by country by year.

8. All physical specimen of a HP s1010a and s1010 LCD monitor.

### Definitions

1. The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

2. The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-

company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

3.    "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

4. "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

5. "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

6. "Flat Panel Display Product" shall mean any product that uses, contains, or incorporates one or more LCD modules, plasma display panels or field emission devices, and includes by way of example flat screen computer monitors, lap top screens and flat screen televisions.

7. "Mounting Technology" shall mean the structure, devices and/or methods used to affix or secure or mount or attach an LCD module or plasma display panel or field emission device within a Flat Panel Display Product.

8. The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

9. Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

## ATTACHMENT B

## DEPOSITION TOPICS

1. The physical structure of the HP s1010a and/or s1010 LCD monitor (or any Flat Panel Display Product which has the same Mounting Technology as the HP s1010a and/or s1010) including, without limitation:

    (a) The structure by which the LCD module is secured, mounted, attached, affixed and/or assembled within the product;

    (b) The structure by which the monitor stand is connected, attached, secured, mounted, affixed or assembled to the monitor head in the product;

    (c) The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the product;

    (d) The development of the Mounting Technology used in the HPs1010a and/or s1010; and,

    (e) Any and all structures in the product that support one or more internal components of the product including without limitation, the LCD module.

2. The manner or method steps by which the components of the HP s1010a and/or s1010 LCD monitor (or any product which has the same Mounting

Technology as the HP s1010a and/or s1010) are assembled including, without limitation:

    (a)    The manner or method steps by which the LCD module is secured, mounted, attached, affixed and/or assembled within the product;

    (b)    The manner or method steps by which the stand is connected, attached, secured, mounted, affixed or assembled to the product;

    (c)    The manner of method steps by which the front bezel is secured, attached, affixed or assembled to the remaining components of the product; and,

    (d)    The manner or method steps by which any and all support structures, which holds, supports or secures one or more internal components of the product, are assembled and/or secured within the product.

3.    The dates on which the and/or HP s1010a and/or s1010 monitor (or any other display device having the same Mounting Technology as the HP s1010a and/or s1010), including but not limited to work stations were:

    (a)    First shown at any trade show or disclosed to any third party;

    (b)    First offered for sale to any person;

    (c)    First sold and/or distributed and/or transferred to any third person; or,

    (d)    First imported into the United States.

4. The annual total sales of the HP s1010a and/or s1010 monitor (or any product which has the same Mounting Technology as the HP s1010a and/or s1010) by country by year prior to October 23, 1997.

5. The identity by name, brand or other identifier any workstation or other configuration which included the HPs1010a and/or s1010 monitor or a display device having the same Mounting Technology as the s1010a and/or s1010 monitor as part of a system or larger group of components that were sold, imported into the United States, offered for sale or shown at a trade show prior to October 23, 1997, and the total annual number of product imported and the annual sales of any such product and/or display device.

6. The identity by brand or trade name under which the HP s1010a and/or s1010 (or any product which has the same Mounting Technology as the HP s1010a and/or s1010) was sold prior to October 23, 1997.

7. The sale, offer for sale or physical structure of any display device which uses a Mounting Technology with a connection or means for physically connecting the rear exterior case of the product to any internal structure that is part of or is attached to the LCD module, including, without limitation:

52144799.1                                3

(a) The structure by which the LCD module is secured and/or mounted within any enclosure of the product;

(b) The structure by which any stand, arm or wall is connected, attached, secured, mounted, affixed or assembled to the display device;

(c) The structure by which the front bezel is secured, attached, affixed or assembled to one or more of the remaining components of the display device;

(d) Any and all structures within the display device to support the LCD module; and,

(e) The dates on which any such display device or product was first shown at any trade show or disclosed to any third party; first offered for sale to any person; first sold and/or distributed and/or transferred to any third person; imported into the United States; and/or the annual total sales of the product by country by year.

8. The documents requested in attachment A to this subpoena and/or all documents produced in response to this subpoena.

## Definitions

1.  The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

2.  The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of

materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

3. "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

4. "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

5. "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

6. "Flat Panel Display Product" shall mean any product that uses, contains, or incorporates one or more LCD modules, plasma display panels or field emission devices, and includes by way of example flat screen computer monitors, lap top screens and flat screen televisions.

7. "Mounting Technology" shall mean the structure, devices and/or methods used to affix or secure or mount or attach an LCD module or plasma display panel or field emission device within a Flat Panel Display Product.

8. The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

9. Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.