# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET

ANNE SHEA GAZA

WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

DIRECT DIAL NUMBER
302-651-7539
GAZA@RLF.COM

December 11, 2006

**VIA ELECTRONIC MAIL**
**& HAND DELIVERY**

The Honorable Vincent J. Poppiti
BLANK ROME LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:  *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
      **U.S. District Court Case No. 04-343 JJF**

Dear Special Master Poppiti:

Pursuant to Your Honor's December 6, 2006 letter providing that the Tatung Defendants may respond to LPL's November 14, 2006 letter, Defendants Tatung Company and Tatung Company of America (collectively "Tatung") respond to LG Philips LCD Co., Ltd.'s ("LPL") November 14, 2006 submission as follows.

LPL's November 14, 2006 letter is inaccurate in that it mischaracterizes both Tatung's diligence in producing documents responsive to LPL's discovery requests and ignores the fact that one of the two requests LPL made in its motion to compel (*i e*, that Your Honor order Tatung to produce or make available for inspection its display products) is now moot.

Tatung has been more than diligent in producing documents and things that are responsive to LPL's discovery requests. On numerous occasions, Tatung has gone out of its way to cooperate with LPL regarding discovery disputes that have arisen in this case. For example, upon LPL's request, Tatung has promptly provided high resolution color copies of requested technical documents pertaining to Tatung's products and courtesy or corrected copies of documents that had been produced by Tatung that LPL claimed it could not locate. In addition, in its letter of October 20, 2006 (*see* Exhibit A), Tatung made it clear that it had produced the requested "assembly-related drawings and/or work instructions, as promised, covering 95+% of the Tatung Company display products" and "70%" of the Tatung Company of America display products. The October 20 letter explained that documents for an additional 16% (totaling 86%) of the Tatung Company of America display products had been located and would be produced

Special Master Poppiti
December 11, 2006
Page 2

shortly. Documents pertaining to the remaining 16% of Tatung Company of America products were produced shortly after October 20, 2006. Tatung produced technical and assembly related drawings for numerous Tatung products even though these products have not been accused of infringement by LPL and are not at issue in this case. Finally, both prior to and after LPL filed its pending motion to compel, Tatung has and is continuing to supplement its production and responses to LPL's interrogatories. Tatung, on numerous occasions, has reminded counsel for LPL that it would take all reasonable steps to resolve discovery disputes without involving Your Honor. Therefore, LPL's suggestions to the contrary are simply incorrect.

Regarding LPL's request that Tatung make samples of its monitors available for inspection, on October 20, 2006, Tatung sent a letter to LPL offering all available Tatung Company monitors for inspection (*see* Exhibit B). The letter indicated that Tatung America was still compiling a list of display products that it could make available. On December 4, 2006, Tatung America provided this list to LPL (*see* Exhibit C). Accordingly, Tatung has offered to allow LPL to inspect numerous available monitors, the vast majority of which LPL has not even accused of infringement. Via e-mail, LPL recently acknowledged that Tatung was in fact offering to make available for inspection all of the monitors listed in its letters of October 20th and December 4th but, despite Tatung's clear request, has yet to indicate which of the offered display products it would like to inspect or propose suitable dates and times for the inspection (*see* Exhibit E). Tatung already has offered to make available for inspection samples of Tatung display products. Accordingly, LPL's request in its pending motion to compel that Your Honor order Tatung to produce or make available for inspection samples of Tatung's visual display products is now moot.

LPL's only remaining request in its pending motion to compel, which Tatung believes is the real reason LPL filed its unnecessary motion to compel, asks Your Honor to recommend to Judge Farnan that written discovery be extended to March 16, 2007. As detailed in our previous letters to you, especially Tatung's letter of October 23, 2006, Tatung believes LPL's request for an extension of the written discovery deadline should be denied because it is both improper and prejudicial to Tatung. Maintaining the written discovery deadline is part of this Court's case management responsibilities which if modified would, among other things, provide LPL with the unfair advantage of being able to seek additional written discovery and results in extra effort and expense for Tatung.

In addition to the substantive deficiencies outlined above, LPL's November 14, 2006 letter was just another example of LPL's attempts to ignore the detailed procedures your Honor has outlined to cover discovery disputes in the present case. In identifying what LPL did to satisfy its meet and confer obligations, its November 14 letter vaguely refers to "negotiation efforts as they pertain to the disputes giving rise to LPL's motion to compel" and attached letters. LPL claims that the issues of the pending motion were discussed during the meet-and-confer sessions of September 7th, 8th and 12th, 2006. This is simply not correct. Tatung provided Your Honor with a declaration from ViewSonic's counsel, Scott Miller, on November 20, 2006, in which Mr. Miller confirmed that he "attended telephonic meet-and-confers on September 7th, 8[th] and 12th, 2006" and that "[t]hese meet and confers were scheduled primarily to address

Special Master Poppiti
December 11, 2006
Page 3

various discovery disputes between ViewSonic and ...LPL" and that "the only issues discussed
during these calls that did not apply solely to LPL/ViewSonic discovery issues were certain
limited scheduling issues which were discussed by counsel for all three parties." Mr. Miller also
confirmed that "[e]xcept for matters of scheduling, it was my understanding that counsel for
Tatung was present only as an observer for all the meet and confers in which ViewSonic
participated. During these meet and confers, LPL's discovery requests related to Tatung were
never substantively discussed" (*see* Declaration of S. Miller, Exhibit E). In its November 14
letter, LPL never challenged any of the statements in Mr. Miller's declaration and failed to
provide a counter-declaration refuting any of the statements he made. Accordingly, the record is
clear that LPL never satisfied its meet and confer obligations and improperly filed the pending
motion to compel.

For all of the reasons mentioned above and in Tatung's previous submission to Your
Honor, Tatung respectfully requests that Your Honor deny LPL's motion to compel in its
entirety and require LPL to hold meet-and-confers in accordance with Your Honor's established
procedures and the Local Rules for any remaining issues.

Respectfully submitted,

Anne Shea Gaza
(#4093)

ASG:csi
Enclosures
cc:    Clerk of Court (CM/ECF filing)
       Richard D. Kirk, Esquire (hand delivery & e-mail)(w/encl.)
       Jeffrey B. Bove, Esquire (hand delivery & e-mail)(w/encl.)
       Daniel G. Jarcho, Esquire (e-mail)(w/encl.)
       Traacy R. Roman, Esquire (e-mail)(w/encl.)
       Scott R. Miller, Esquire (e-mail)(w/encl.)

# EXHIBIT A

Steve Hassid
Tel  310 586 7700
Fax 310.586 7800
hassids@gtlaw com

October 20, 2006

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:     *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
        **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

        In accordance with our agreement of October 12, 2006, please note that as of this
date Tatung has produced assembly-related drawings and/or work instructions, as promised,
covering 95+% of the Tatung Company display products. Similarly, as of this assembly-
related drawings and/or work instructions covering 86% of the Tatung Company of America
display products have been located . Of that 86%, per our agreement, we are advising you
that as of today work instruction and/or assembly-related drawings covering about 70% of
the products identified have been produced (this includes today's productions) and the
remaining 16% is being complied now. Because of your complaints and accusations
regarding the alleged poor quality of the Tatung Company of America work instructions and
"grainy" photographs, we have gone the extra mile and produced color PDF files which are
the highest quality available. Providing these high quality images is both costly and very
time consuming. We trust you will have no further complaints regarding the "quality" of the
images and you will respond in kind with LPL productions in the future. Meaning you will
endeavor to provide the highest quality color documents whenever possible.

        Tatung does not have responsive documents for the small percentage of remaining
display products (no more than 5% for Tatung Company and 14% percent for Tatung
Company of America) in its custody or control. Most if not all of the of the remaining
display products not having responsive documents fall into one of two categories. Either
they are products with small production runs (less than 50 total units) or they are third party
products resold by Tatung but which were not Tatung company products and Tatung never
received assembly drawings or work instructions for them. Accordingly, Tatung has
produced or is about to produce every responsive document in its custody or control.

        Additionally, today, Tatung Company and Tatung Company of America also served
its supplemented responses to LPL's Interrogatories 2 and 3 of LPL's second requests. to

*LA 126646759v1 10/20/2006*

Cormac T. Connor
October 20, 2006
Page 2
_____

include the additional display products - the assembly drawings or work instructions which have
already been produced.

Sincerely,

Steve P. Hassid

cc:     Scott Miller (via e-mail)
        Frank Merideth (via e-mail)
        Richard Kirk, Esq. (via email)
        Richard Horwitz, Esq. (via email)
        Jeffrey Bove, Esq. (via email)
        Mark Krietzman, Esq. (via email)
        Frederick L. Cottrell, III, Esq. (via email)

# EXHIBIT B

# Greenberg
# Traurig

Steve Hassid
Tel 310 586 7700
Fax 310.586 7800
hasslds@gtlaw com

October 20, 2006

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
       **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

In accordance with our agreement of October 12, 2006, Tatung Company has in its custody and control the L19FCBT-U12, L22YMTT-U09, V37ALAH-U15 and/or V32NCJI-U34 display products. Please let me know if LPL would like purchase or inspect (depending on its condition and availability) any of these products.

Unfortunately, we are still compiling the corresponding list of display products for Tatung Company of America.   We will do everything we can to provide it to you as soon as possible.

Sincerely,

Steve P. Hassid

cc:    Scott Miller (via e-mail)
       Frank Merideth (via e-mail)
       Richard Kirk, Esq. (via email)
       Richard Horwitz, Esq. (via email)
       Jeffrey Bove, Esq. (via email)
       Mark Krietzman, Esq. (via email)
       Frederick L. Cottrell, III, Esq. (via email)

# EXHIBIT C

# Greenberg Traurig

Steve Hassid
Tel 310 586 7700
Fax 310 586 7800
hassids@gtlaw.com

December 4, 2006

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:     *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
        **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

In accordance with our agreement of October 12, 2006, Tatung Company of America has in its custody and control the ADMNC1LCD15, ADMNM1LCD17, L15CA25E, L17CA25M01LB, L5CDSKM21LD, L5CES, L5CTS-KM21L, LD23HL01, LS64PA30A1, P42BSMT, P46T, PD42E, POS86-BK01, TLM-1505, TLM-1703T, V23CLTT, V27CMTT, V30CMTT, VT15S, VT15SRI, LD30HL and/or L17ACTN-UD2 display products. As previously mentioned, all display products purchased from Tatung, including those listed above, are provided "as is" and without any warranties or assurance, including but not limited to, the units working. Please let me know if LPL would like purchase or inspect (depending on its condition and availability) any of these products.

We are still obtaining cost, payment and shipping information for these monitors. We will provide that information to you as soon as possible.

Sincerely,

Steve P. Hassid

cc:     Scott Miller (via e-mail)
        Frank Merideth (via e-mail)
        Richard Kirk, Esq. (via email)
        Richard Horwitz, Esq. (via email)
        Jeffrey Bove, Esq. (via email)
        Mark Krietzman, Esq. (via email)
        Frederick L. Cottrell, III, Esq. (via email)

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES
MIAMI
MILAN
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON D.C.
WEST PALM BEACH
ZURICH

LA 1266572v1 12/4/2006     Attorneys at Law | Los Angeles Office | 2450 Colorado Avenue | Suite 400E | Santa Monica, CA 90404
Tel 310 586 7700 | Fax 310 586 7800

www.gtlaw.com

# EXHIBIT D

## Hassid, Steve (Assoc-LA-IP)

| | |
|---|---|
| **From:** | Hassid, Steve (Assoc-LA-IP) |
| **Sent:** | Wednesday, December 06, 2006 6:56 PM |
| **To:** | 'Connor, Cormac' |
| **Cc:** | Hong, Jong P. (Assoc-SV-IP); Krietzman, Mark H. (Shld-LA-IP); Ho, Valerie W. (Assoc-LA-LT) |
| **Subject:** | RE: scan (2).pdf |

Yes Cormac. We are offering all the display products for inspection. Confirmed.

---

**From:** Connor, Cormac [mailto:cconnor@mckennalong.com]
**Sent:** Wednesday, December 06, 2006 6:50 PM
**To:** Hassid, Steve (Assoc-LA-IP)
**Cc:** Hong, Jong P. (Assoc-SV-IP); Krietzman, Mark H. (Shld-LA-IP); Ho, Valerie W. (Assoc-LA-LT)
**Subject:** RE: scan (2).pdf

In response to the emails that I have just received from you and Valerie, I think you are overlooking your first Dec
5 email. In that email, you said: "We have learned that at least **some** of the display products Tatung has offered
to LPL are quite rare (we have not determined their condition). Therefore, we can **only** offer **them** for inspection
and not for sale." This initial email did not lead us to believe that you were going to make anywhere near **all** of
the 26 products you identified available for inspection. However, maybe we were mistaken.

If your emails of Dec. 5 really meant that Tatung is offering to make **all 26 of the products identified in your
Oct. 20 and Dec. 4 letters available to LPL for inspection**, then we are again moving forward.

Are you offering **all 26** of the monitors that you identified in your letters to us for inspection? Please confirm

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202-496-7439
fax 202-496-7756

email: cconnor@mckennalong.com

---

**From:** HassidS@gtlaw.com [mailto:HassidS@gtlaw.com]
**Sent:** Wednesday, December 06, 2006 9:00 PM
**To:** Connor, Cormac
**Cc:** HongJ@gtlaw.com; KrietzmanM@GTLAW.com; HoV@GTLAW.com
**Subject:** RE: scan (2).pdf

Cormac,

In relevant part, my email to you yesterday stated "LPL will be able to view all of the products in our
offices located in Santa Monica, California...we will arrange to have them all sent here. **All of the
products are only available for inspection**." (Emphasis added). Despite your assertion that Tatung
offered to sell those monitors, both of my letters of October 20th and December 4th made it clear that

sales of the display products was contingent on determining their "condition and availability."

In case my email and letters were not clear, Tatung is offering to let LPL inspect all of the display products listed in my letters of October 20th and December 4th in our Santa Monica Office at a mutually convenient time. To proceed with arranging the inspection, we ask that LPL identify which of the display products it wants to inspect and propose a few suitable dates and times for the inspection.

Steve

---

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

---

**From:** Connor, Cormac [mailto:cconnor@mckennalong.com]
**Sent:** Wednesday, December 06, 2006 4:46 PM
**To:** Hassid, Steve (Assoc-LA-IP)
**Cc:** Hong, Jong P. (Assoc-SV-IP); Krietzman, Mark H. (Shld-LA-IP); Ho, Valerie W. (Assoc-LA-LT)
**Subject:** RE: scan (2).pdf

I am at a total loss here. You identified products almost seven weeks ago that you said Tatung would sell to LPL. We asked you for purchase information. You still have not provided even that. Then you identified 22 more products this week but, surely knowing that LPL would ask for purchase information, you have not provided that either. Moreover, you have given us no indication as to when you might provide any purchase information for any of the products you are supposedly offering for sale. All that you have given us is a vague offering to make some undisclosed number of your products available for inspection because now, as it turns out, you apparently will not sell those products to us. Yet, despite my express request, you will not identify which product is or products are being made available for inspection. Further, despite my express request, you will not clarify whether the products you are making available for inspection or sale consist of new products or consist only of old damaged products. You will not even agree to have the products that you may someday sell to us - assuming you can figure out how much you want to charge us for them - sent to us, even though we have repeatedly assured you that we will pay for both the products and for shipping.

To borrow the characterization from your email, please endeavor to work with us a little harder. Your amorphous offerings are meaningless until we have some actual facts. When will you provide the basic information we seek?

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW

Washington, DC 20006
tel 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong com

---

**From:** HassidS@gtlaw.com [mailto:HassidS@gtlaw.com]
**Sent:** Wednesday, December 06, 2006 6:09 PM
**To:** Connor, Cormac
**Cc:** HongJ@gtlaw.com; KrietzmanM@GTLAW.com; HoV@GTLAW.com
**Subject:** RE: scan (2).pdf

Cormac,

We will review our interrogatory responses, and to the extent that there are products that should be included in the interrogatory responses, we will supplement accordingly. My email to you yesterday already addressed the other issues raised in your email below. We await your response. Finally, we disagree with your characterization below that we have refused to provide certain information. Contrary to your mischaracterization, we have endeavored to work with LPL on this issue. Let us know how you would like to proceed with respect to the inspection of certain monitors

Steve

---

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein

    The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

---

**From:** Connor, Cormac [mailto:cconnor@mckennalong.com]
**Sent:** Tuesday, December 05, 2006 2:27 PM
**To:** Hassid, Steve (Assoc-LA-IP)
**Cc:** Hong, Jong P. (Assoc-SV-IP); Krietzman, Mark H. (Shld-LA-IP); Ho, Valerie W. (Assoc-LA-LT)
**Subject:** scan (2).pdf

<<scan (2) pdf>>
We have received and reviewed your letter of December 4. Comparing that letter to your letter of October 20, we understand from those letters that Tatung Company is offering to sell only four products, while Tatung America is offering to sell 22 products.

Having now received both letters, we compared the products that you are offering to sell to your responses to Interrogatories 2 and 3. We note that from your October 20, 2006 letter, the following Tatung products are not identified in your responses: L22YMTT-U09 and V32NCJI-U34. Looking at your December 4 letter, six of the 22 Tatung of America products are not identified in your responses to Interrogatories 2 and 3: ADMNC1LCD15; ADMNM1LCD17; L15CA25E; POS86-BK01; TLM-1505;

and L17ACTN-UD2. Also, in your December 4 letter, Tatung offers to sell a TLM-1703T, but Tatung only lists TLM-1703T-1 in its response to Interrogatories 2 and 3; thus it is not clear to us whether this product has been identified in your interrogatory responses. Please explain all of these discrepancies.

While LPL appreciates Tatung's newest offer to sell, we still are waiting for purchase information for the products identified in your October 20 letter. Now, as you confirm in your letter, we are also waiting for purchase information for the 22 products identified in your December 4 letter. We do not see why you would continue to refuse to provide this fundamental information for more than six weeks. Further, based on our discussions prior to your October 20 letter and in our email correspondence during the past week, it seems that Tatung is not offering to sell any new products to LPL, only products that are malfunctioning. I have asked about this before, but have not received a response. Is Tatung offering to sell any new products to LPL? It seems that this would alleviate any of Tatung's purported warranty concerns. Further, if Tatung is not selling new products to LPL, why not? We assume that Tatung will give LPL an appropriately discounted price if it is selling products that are not marketable or do not function properly.

To be clear, LPL is interested in purchasing all of the products identified in your letters, but we need to know how much each will cost and how much we should expect to pay to get them shipped to the United States. Please respond to the questions raised in this email promptly.

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

CONFIDENIIALIIY NOIICE:
Ihis e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. Ihis e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

# EXHIBIT E

RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL III
DIRECTOR

DIRECT DIAL
(302) 651-7509
COTTRELL@RLF.COM

November 20, 2006

**BY E-MAIL & HAND DELIVERY**

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre, Suite 800
Wilmington, DE 19801-4226

> **Re:** *LG Philips LCD Co., Ltd. v. ViewSonic Corp., et al.,*
> C.A. No. 04-343-JJF

Dear Special Master Poppiti:

Pursuant to Your Honor's letter order of November 13, 2006, enclosed please find the Affidavit of Scott Miller, counsel for ViewSonic Corporation.

Counsel is available at Your Honor's convenience.

Respectfully,

Frederick L. Cottrell, III
(#2555)

FLC,III/afg
Enclosure
cc:    Clerk of the Court (By Electronic Filing)
       Richard Kirk, Esquire
       Cormac T. Connor, Esquire
       Lora Brzezynski, Esquire

RLF1-3084206-1

The Honorable Vincent J Poppiti
November 20, 2006
Page 2

      Mark Krietzman, Esquire
      Scott R. Miller, Esquire
      Jeffrey B. Bove, Esquire
      Richard Horwitz, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-343 (JJF) |
| | ) |
| TATUNG CO.; | ) |
| TATUNG COMPANY OF AMERICA, INC ; | ) |
| AND VIEWSONIC CORPORATION | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF SCOTT R. MILLER

I, Scott R. Miller, declare as follow:

1.    I am a partner of the law firm of Connolly Bove Lodge & Hutz LLP,
counsel for Defendant ViewSonic Corporation ("ViewSonic")   I provide this Declaration
in response to Tatung Company's and Tatung Company of America's (collectively
"Tatung's") request following a November 13, 2006 letter from the Honorable Vincent J.
Poppiti, Special Master.

2.    As counsel of ViewSonic, I attended telephonic meet-and-confers on
September 7th, 8th and 12th, 2006, which Steve Hassid refers to in an October 12, 2006
letter to Richard D. Kirk, a copy of which is attached as Exhibit A, and which Special
Master Poppiti refers to in his letter of November 13, 2006.  These meet and confers were
scheduled primarily to address various discovery disputes between ViewSonic and LG
Philips LCD Co., Ltd's ("LPL")   To the best of my recollection, the only issues
discussed during these calls that did not apply solely to LPL/ViewSonic discovery issues

1

were certain limited scheduling issues which were discussed by counsel for all three parties.

3.    Except for matters of scheduling, it was my understanding that counsel for Tatung was present only as an observer at all meet and confers in which ViewSonic participated. During these meet and confers, LPL's discovery requests related to Tatung were never substantively discussed.

4.    According to my recollection, counsel for Tatung was present during only two of the above-referenced meet-and-confers. During one of the two meet and confer calls that I recall Tatung being on the line, counsel for Tatung excused himself early.

5.    The question of extending the time within which the parties would exchange claim terms and proposed constructions was discussed by all the parties. During these discussions, as part of a compromise, ViewSonic agreed to produce certain documents (referred to by LPL as "configuration documents") within its possession, custody and control, for various products that had not been accused of infringement by LPL. Tatung also agreed to produce "configuration documents" within its possession, custody and control. These discussions were limited to the scheduled events concerning claim construction, and to a compromise between the parties regarding production of these "configuration" documents to accommodate LPL's concerns.

6.    LPL raised the topic of extending the discovery period in the case. To the best of my recollection, counsel for Tatung was not present for that discussion. At no time during the discussions did ViewSonic agree to any modification of the discovery schedule. In fact, after LPL's counsel sent an email misrepresenting that ViewSonic was inclined to agree to modify the discovery schedule, Tatung's counsel immediately

2

contacted me to ascertain whether I had made such a representation. I confirmed to him that I did not.

This declaration is submitted pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of November, 2006, at Los Angeles, California.

_____
Scott R. Miller

3

# EXHIBIT A

# Greenberg Traurig

Steve Hassid
Tel. 310.586.7700
Fax 310.586.7800
hassids@gtlaw.com

October 12, 2006

**VIA FACSIMILE & E-MAIL**

Richard D Kirk, Esquire
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, DE 19899
(302) 658-6395 Facsimile

Re:     *L.G. Philips LCD Co., Ltd v. ViewSonic Corp., et al.*
        Case No. 04-343 JJF

Dear Mr. Kirk:

      In response to your letter of October 6, 2006 to Special Master Poppiti and resulting Motion to Compel, we write this letter to request that LPL immediately withdraw its letter and Motion to Compel. This letter does not address the substantive issues and misstatements in your October 6, 2006 letter, which will be addressed in a separate letter in short order.

      In support of your letter and Motion to Compel, LPL stated that "[f]ollowing this exchange of correspondence, the parties commenced negotiations on, among many other disputes, the issues raised in LPL's Motion to Compel. These negotiations involving Tatung and LPL occurred during meet-and-confer sessions that lasted for several hours each day on September 7, 8, and 12, 2006."[1] This is simply untrue. The meet-and-confer sessions on September 7, 8, and 12th were to discuss LPL and Viewsonic discovery issues, not Tatung discovery issues. Tatung participated in those sessions primarily as an observer and, more importantly, LPL never raised either the issue of *Tatung* producing samples of its visual display products or *Tatung* agreeing to re-open the written discovery deadline during any of those meet-and-confer sessions. Viewsonic's counsel was present at the meet-and-confer sessions and has confirmed that his understanding of what transpired during those meet-and-confer sessions is consistent with ours. Clearly, Tatung is entitled to its own meet-and-confer on the issues outlined in your letter and Motion to Compel in accordance with LOCAL RULE 7.1.1. Accordingly, for this reason alone, LPL should withdraw its letter and Motion to Compel and allow the parties the opportunity to try and resolve this dispute before needlessly asking Special Master Poppiti to consider the matter.

---

[1] *See* PLAINTIFF LG.PHILIPS' LCD CO., LTD'S LOCAL RULE 7 1.1. CERTIFICATION CONCERNING MOTION TO COMPEL TATUNG DEFENDANTS TO MAKE SAMPLES OF PRODUCTS AVAILABLE FOR INSPECTION at 3.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES
MIAMI
MILAN
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH

www.gtlaw.com

Moreover, as required by the Special Master's Discovery Dispute Procedures dated March 24, 2005, a copy of which is included with this letter, LPL never conferred with counsel for Tatung to first determine whether the issues in dispute could be resolved via the more informal teleconference process as opposed to the more formal motion practice that LPL unilaterally chose to proceed under. This reason alone mandates withdrawal of LPL's letter and Motion to Compel.

As Tatung has repeatedly mentioned, we are more than amenable to meeting-and-conferring regarding these and any other discovery related issues with the intent on coming to a reasonable compromise. Accordingly, please let us know whether LPL will withdraw its October 6, 2006 letter and Motion to Compel by close of business today October 12, 2006.

Sincerely,

Steve P. Hassid

Enclosure

cc:    Scott Miller, Esq. (via email) (w/ encl.)
       Richard Horwitz, Esq. (via email) (w/ encl.)
       Jeffrey Bove, Esq. (via email) (w/ encl.)
       Mark Krietzman, Esq. (via email) (w/ encl.)
       Frank Merideth, Esq. (via email) (w/ encl.)
       Frederick L. Cottrell, III, Esq. (via email) (w/ encl.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

L. G. PHILIPS LCD CO., LTD.,                    :
                                                :    C.A. No. 04-343-JJF
                    Plaintiff,                  :
                                                :
        v.                                      :
                                                :
TATUNG COMPANY, et al.,                         :
                                                :
                    Defendants.                 :

## SPECIAL MASTER DISCOVERY DISPUTE PROCEDURES

Pursuant to the District Court's Order dated February 25, 2005, designating Vincent J. Poppiti as Special Master in the instant matter, Special Master Poppiti convened a teleconference with counsel for the parties on March 9, 2005 for the purpose *inter alia* of establishing procedures for the presentation of discovery disputes.

Except for discovery disputes governed by the Special Master's Order of March 11, 2005, the following procedures shall govern all further discovery disputes:

1.   Special Master. All discovery disputes in this action shall be submitted to the Special Master. Before any such dispute is submitted to the Special Master, it is expected that the parties shall first meet and confer for the purpose of attempting to resolve the dispute. No matter should be submitted to Special Master unless the application of the moving party is accompanied by a certification detailing the dates, time spent, and method(s) of communication in attempting to reach agreement on the subject of the application with the other party or parties and the results, if any, of such communications.

2.   Submission of Disputes Via Teleconference and Abbreviated Written Submissions. Whenever a discovery dispute is ripe for submittal to the Special Master, the parties shall first

meet and confer and determine whether the issue can be presented to the Special Master by way of teleconference rather than written submissions. If the parties agree to present the issue by teleconference, the party first raising the dispute shall: (a) contact all parties and determine several mutually agreeable dates and times for the teleconference; and (b) call the Special Master's assistant, Robin Twiss (302) 435-6400, to schedule a time for the teleconference. The Special Master will retain a Court Reporter to transcribe the teleconference. The Special Master will hear argument and may issue an oral ruling on the dispute, or request written submissions and rule as promptly as possible at a later time. If it is important to contact the Special Master before 8:00 a.m. or after 5:00 p.m. during a weekday, or on holidays and weekends, the parties may place a joint telephone conference call directly to the Special Master at (302) 426-1161 (H); (302) 374-5755 (cell) – in such a circumstance, the party first raising the dispute shall retain a Court Reporter to transcribe the teleconference.

Written submittals by the parties shall describe the nature of the dispute, the nature of the relief requested, any supporting case law and a proposed form of order setting forth the requested relief. The submittals shall not exceed three (3) pages, single-spaced, excluding the form of order. Any documents which are the subject of the discovery dispute and/or which will assist the Special Master in deciding the dispute, may be submitted along with the primary submission.

The opening submittal shall be filed with the Special Master at least seven (7) calendar days prior to the date of the Teleconference. A responsive submittal shall be filed two (2) business days after service of the opening submittal. The Special Master may direct the parties to file additional submittals.

3. Submission of Disputes in Writing. If the parties do not agree to a teleconference, the following procedure will be followed. On a document bearing the case caption and a title, the

2

party raising the dispute shall submit to the Special Master a concise statement of the dispute, any supporting case law, a proposed form of order setting forth the requested relief, and a statement whether oral argument is requested. The submission shall not exceed ten (10) pages, double-spaced, excluding the form of order. Any documents which are the subject of the discovery dispute and/or which will assist the Special Master in deciding the dispute, may be submitted along with the primary submission. An appendix containing the complete text of all cited cases and statutes shall accompany the primary submission.

On a document bearing the case caption and a title, the opposing party or parties shall submit a response to the Special Master within five (5) business days from the date the initial submission is served on the opposing party. The response should contain a concise statement of the opposition to the dispute, any supporting case law, a form of order setting forth the proposed disposition of the dispute, and a statement whether oral argument is requested. The response shall not exceed ten (10) pages, double-spaced, excluding the form of order. Any documents which are the subject of the discovery dispute and which will assist the Special Master in deciding the dispute, may be submitted along with the response. An appendix containing the complete text of all cited cases and statutes shall accompany the response.

4. Submittals and documents filed with the Special Master shall be in hard copy, by hand delivery or facsimile.

5. All written submittals and documents shall be filed with the Special Master in unbound format with labeled divider pages (rather than tabs) separating any attached exhibits, to facilitate scanning. Filing and service shall be accomplished not later than 5:00 p.m. eastern time.

6. <u>Oral Argument</u>. If, after requested by either party or *sua sponte*, the Special Master concludes that oral argument would be helpful, the Special Master will direct the party raising the dispute to (a) contact all parties and determine several mutually agreeable dates and times for a teleconference or in-person oral argument; and (b) call the Special Master's assistant, Robin Twiss, at (302) 425-6400 to schedule a time for the teleconference or in-person oral argument. The Special Master will retain a Court Reporter to transcribe the teleconference or an in-person oral argument.

7. <u>Decisions of the Special Master</u>. The Special Master's Order, report or recommendation will be issued orally on the record or by written decision.

8. <u>Time to Object or Move</u>. Subsequent to a decision by the Special Master, the parties shall confer about whether the time to object or move pursuant to Federal Rules of Civil Procedure 53(g)(2) should be shortened.

9. <u>Discovery Schedule</u>. The parties shall provide the Special Master with a joint discovery status report on a monthly basis throughout the discovery process. Said report shall be submitted by the first business day of each month. The parties shall also serve on the Special Master all discovery requests, including all notices of depositions.

10. <u>Depositions</u>. It is the Special Master's expectation that discovery disputes arising out of deposition questioning will be handled according to the teleconference procedure of Paragraph 2, except that the Special Master, if available at the time of the deposition, will hear the dispute during the deposition.

11. <u>Privilege Log</u>. It is the Special Master's expectation that that parties will agree on the format for a privilege log in accordance with Fed. R. Civ. P. 26(b)(5) and Delaware District

057038.00612/40151622v1

Court case law. To the extent there are disputes as to the format of a privilege log, these disputes should be brought to the Special Master's attention as soon as possible.

Dated: March 24, 2005

Vincent J. Poppiti (DSBA No. 100614)
Special Master

06203B-00612/40151622v1