IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION <br><br> Defendants. | CIVIL ACTION NO. 04-343 |

## NOTICE OF DEPOSITION OF LG.PHILIPS LCD CO., LTD. PURSUANT TO RULE 30(b)(6) TOPICS 19 - 30

TO:  Richard D. Kirk, Esquire
      The Bayard Firm
      222 Delaware Avenue #900
      Wilmington, DE 19899

      Daniel G. Jarcho, Esquire
      Cass W. Christenson, Esquire
      Lora A. Brzezynski, Esquire
      Matthew T. Bailey, Esquire
      McKenna Long & Aldridge LLP
      1900 K Street, N.W.
      Washington D.C. 20006

      Jeffrey B. Bove, Esquire
      Jaclyn M. Mason, Esquire
      Connolly Bove Lodge & Hutz LLP
      1007 North Orange Street
      P.O. Box 2207
      Wilmington, DE 19899

Tracy R. Roman, Esquire
Bingham McCutchen
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

Scott R. Miller, Esquire
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

      PLEASE TAKE NOTICE that pursuant to Rule 26 and Rule 30(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), Defendants Tatung Company and Tatung Company of America will take the deposition of LG.Philips LCD Co., Ltd. ("LPL") beginning on January 18,

2007 at 9:30 a.m. at the offices of Connolly Bove Lodge & Hutz LLP located at 1007 North Orange Street, Wilmington, Delaware 19899, or at such other time and/or place as counsel for all parties may agree in writing. The deposition will be conducted upon oral examination before a certified court reporter authorized by law to administer oaths. The deposition will continue from day to day until completed. The deposition will be recorded by videotape and stenographically, and may use technology that permits the real time display of the deposition transcript. Parties wishing to see the real time display must supply their own computer.

Pursuant to FRCP 30(b)(6), LPL shall designate one or more officers, directors, agents or other representatives who consent to testify on its behalf, to testify as to matters known or reasonably available to LPL regarding the topics listed in the attached list of topics. To the extent more than one deponent is identified, LPL shall state in advance of the deposition which portions of this notice each deponent is prepared to address.

|  |  |
|---|---|
| Of Counsel:<br>Christopher Darrow<br>Mark H. Krietzman<br>Frank E. Merideth, Jr.<br>Alan R. Maler<br>Valerie W. Ho<br>Greenberg Traurig LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, CA 90404<br>Telephone: 310-586-7700<br><br>Kathryn L. Clune<br>Greenberg Traurig LLP<br>800 Connecticut Avenue, N.W., Suite 500<br>Washington, DC 20006<br><br>Eric S. Tautfest<br>Greenberg Traurig, P.A.<br>2200 Ross Avenue, Suite 4700E<br>Dallas, Texas 75201<br><br>Dated: December 12, 2006 | Frederick L. Cottrell, III (#2555)<br>Anne Shea Gaza (#4093)<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, Delaware 19899<br>(302) 651-7700<br>cottrell@rlf.com<br>gaza@rlf.com<br>Attorneys for Defendants Tatung Co. and<br>Tatung Company of America, Inc. |

# EXHIBIT A
# DEPOSITION SUBJECT MATTERS

## I. Definitions

1. "Tatung" means Defendants Tatung Company and Tatung Company of America and includes any and all of its predecessors and successors-in-interest, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

2. "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

3. "You," "Yours," and "Your" means LPL.

4. The "'718 patent" shall mean and refer to United States Patent No. 6,498,718.

5. The "'641 patent" shall mean and refer to United States Patent No. 6,501,641.

6. The term "Asserted Patents" shall mean and refer to the '718 Patent and the '641 Patent, or any of them.

7. The term "Counterpart," when used in reference to any patent, means any parent, continuation, continuation in part, divisional or other application or patent, pending, issued or abandoned, that claims priority, directly or indirectly, on or through any of the Asserted Patents or any patent through which any of the Asserted Patents claim priority, whether it be pending, issued or abandoned.

8. The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed

as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

  9. The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-

containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

10. "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

11. "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

12. "Patent Holder" shall mean any inventor, licensee and all assignees of the rights of any invention in any of the Asserted Patents and/or any Counterpart thereof.

13. "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

14. The term "prior art" shall have the same meaning as "prior art" used in 35 U.S.C. § 103, and shall also include all of the events set forth in each and every subdivision of 35 U.S.C. § 102, including, without limitation, prior knowledge, prior publication, prior patenting, prior invention, public use, offer for sale and sale.

15. "Flat Panel Display Products" shall mean any product that uses, contains, or incorporates one or more LCDs, PDPs or FEDs, and includes by way of example flat screen computer monitors, lap top screens and flat screen televisions.

16. The term "LCD" shall mean any display which uses liquid crystals to form or create an image (regardless of the technology, e.g. active vs. passive matrix; MVA; IPS; TN, etc.). The terms "PDP" and "FED" shall be interpreted as the terms PDP and FED are used in the specifications of the Asserted Patents and/or any Counterpart thereof.

17.  "LPL Product" shall mean any product marketed, sold, distributed and/or offered for sale which includes an LCD, PDP and/or FED and includes, without limitation, products referred to by LPL in its press release dated July 11, 2006 entitled "LG Philips LCD Reports Second Quarter Results" and/or the LPL press release dated July 25, 2006 entitled "LG Philips Wins Side-Mounting Patent Arbitration" and/or the depiction attached as Exhibit 1 hereto, each of which are or were posted on the LPL website and including any sample, prototype or developmental version of any of the foregoing.

18.  "Mounting Technology" shall mean the structures, devices and/or methods used to affix, assemble or secure an LCD, PDP, FED and/or an LPL Product within, on or to another structure including, without limitation, a Flat Panel Display Product.

19.  "Accused Products" shall mean any product, including without limitation, all products sold, offered for sale, imported, used, or made, by or on behalf of, any defendant which LPL asserts infringes or may infringe any of the Asserted Patents or any Counterpart thereof and also including those products identified by LPL in response to Tatung's Interrogatory No. 1.

20.  The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

21.  Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

## TOPICS FOR EXAMINATION

**Topic No. 19**

    a.    LPL's record retention policies and procedures and the adherence or suspension of such policies in connection with this litigation; and

    b.    The storage of, access to and searchability and/or retrieval of electronic information including any and all electronic mail or messaging systems used by LPL.

**Topic No. 20**

    a.    All research and development, design and/or engineering that relates and/or bears upon in any way any invention(s) disclosed and/or claimed in the Asserted Patents and/or any Counterpart thereof;

    b.    All research and development, design and/or engineering that relates and/or bears in any way upon any Mounting Technology developed, owned and/or claimed to be owned by you and/or someone other than you; and

    c.    Any advantages, disadvantages, benefits or detriments, whether technical, financial or legal pertaining to any: (i) invention(s) disclosed and/or claimed in any of the Asserted Patents or any Counterpart thereof; (ii) any prior art cited during the prosecution of the Asserted Patents or any Counterpart thereof; and/or (iii) any Mounting Technology developed, owned and/or claimed to be owned by you and/or someone other than you.

**Topic No. 21**

    a.    All specifications relating to affixing, attaching and/or securing any LCD, PDP, FED and/or LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display; and

b.   The structure, operation, and functionality of any LCD, PDP, FED, LPL Product and/or Flat Panel Display Products manufactured, sold or offered for sale by you, including but not limited to the following:

1. The physical properties of each LPL Product and the components thereof, including but not limited to any "support main frame" as it is depicted in Exhibit 1 hereto from the LPL website and/or any component which serves the purpose and/or function of such "support main frame";

2. The structures provided by you for affixing, attaching and/or securing such product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product. Such structures may include, without limitation, any "support main frame" as it is depicted in Exhibit 1 hereto from the LPL website and/or any component which serves the purpose and/or function of such "support main frame";

3. Any simulations, analyses, research and/or test results that in any way concern, relate or bear upon the design, actual or proposed, of the Mounting Technology of any LCD, PDP, FED, LPL Product and/or a Flat Panel Display Product, or the components thereof, including but not limited to any "support main frame" as it is depicted in Exhibit 1 hereto from the LPL website and/or any component which serves the purpose and/or function of such "support main frame", and the manner and/or method of affixing, attaching and/or securing an LCD, PDP, FED and/or LPL Product within, on or to another structure including, without limitation, a Flat Panel Display Product; and

4. The performance and function, and cost(s) (actual, projected and/or estimated) associated with each design of any manner and/or method to affix, attach and/or secure an LCD, PDP, FED and/or LPL Product within,

on or to another structure including, without limitation, a Flat Panel Display Product.

**Topic No. 22**

a.  Any long felt but unmet need for the subject matter and/or inventions disclosed and/or claimed in each of the Asserted Patents and/or any Counterpart thereof or unexpected result achieved by such subject matter and/or inventions;

b.  Any "commercial success" of the subject matter and/or inventions disclosed and/or claimed in each of the Asserted Patents and/or any Counterpart thereof by such subject matter and/or inventions including without limitation, the availability of each LCD, PDP, FED and/or any LPL Product using, arranged to use, capable of employing and/or embodying the subject matter disclosed in the Asserted Patents and/or any Counterpart thereof and/or any patent or technology of which you are aware relating to Mounting Technology;

c.  Any "failure of others" to arrive at the subject matter and/or inventions disclosed and/or claimed in each of the Asserted Patents and/or any Counterpart thereof by such subject matter and/or inventions; and

d.  Secondary considerations or other objective evidence of nonobviousness for subject matter and/or inventions disclosed and/or claimed in each of the Asserted Patents and/or any Counterpart thereof by such subject matter and/or inventions.

**Topic No. 23**

a.  The identity, structure, function, operation, design and development of any LCD, PDP, FED, LPL Product and/or any Flat Panel Display Product made, sold, offered for sale, imported or distributed by LPL or its customers (including

LG Electronics) that LPL contends is disclosed and/or claimed in the Asserted Patents and/or any Counterpart thereof;

    b.    All research and development, design and/or engineering of any LCD, PDP, FED and/or any LPL Product as it relates and/or bears upon in any way, the means or method by which such LCD, PDP, FED and/or LPL Product is affixed, attached and/or secured within, on or to another structure of any type including, without limitation, a Flat Panel Display Product, and all documentation (*e.g.*, blueprints, assembly drawings, engineering change orders, file version histories, configuration management logs) associated therewith or related thereto;

    c.    All steps that you have taken to evaluate and/or develop structures and/or methods for affixing, securing and/or attaching an LCD, PDP, FED and/or LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product;

    d.    All specifications relating to affixing, securing and/or attaching an LCD, PDP, FED and/or LPL Product manufactured, sold and/or distributed by anyone within, on or to a Flat Panel Display Product;

    e.    The structure, operation, and functionality of your LPL Products, including but not limited to the following:

        1.    The physical properties for each LCD, PDP, FED and/or LPL Product and the components of any of the foregoing, including but not limited to any "support main frame" as it is depicted in Exhibit 1 hereto from the LPL website and/or any component which serves the purpose and/or function of such "support main frame";

        2.    The structures provided by and/or methods identified by you for affixing, attaching and/or securing an LCD, PDP, FED and/or any LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product;

     3.    The simulations, analyses, research and/or test results that in any way concern, relate or bear upon the design, actual or proposed, of the Mounting Technology of any LCD, PDP, FED and/or LPL Product and/or the components thereof, and the manner and/or method of affixing or securing an LCD, PDP, FED and/or an LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product; and

     4.    The performance and function, and cost(s), actual, projected or estimated, associated with each design of any manner and/or method to attach or secure an LCD, PDP, FED and/or LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product.

**Topic No. 24**

     a.    LPL's first notice and/or awareness of, and its knowledge of, the identity, structure, function, operation, or design of a Flat Panel Display Product and/or Counterpart thereof other than the Accused Products which use any Mounting Technology held, claimed to be held and/or licensed by you; your notice and knowledge of any possible infringement by such products of any of the Asserted Patents and/or any Counterpart thereof and/or any LPL technology or patents relating to Mounting Technology; the structure and/or method used to affix, attach and/or secure the LCD, PDP, FED and/or LPL Product within, on or to such product; any actions you took upon becoming aware of each such product; the date of your first actual notice of each such product; the form of such notice; the source of such notice; and the LPL representatives(s) or employee(s) who first received notice and any discussion internal to you regarding any such products;

     b.    All communications with third parties (including vendors, customers,

and others) regarding any structure and/or method for affixing, attaching and/or securing an LCD, PDP, FED and/or any LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product, including any such structure or method which you contend or believe may constitute an infringement of the Asserted Patents and/or any Counterpart thereof and/or any patent you hold or license that relates to Mounting Technology;

    c.    LPL's discussions and/or communications with any defendant or third party regarding each of the Accused Products;

    d.    LPL's decision to file this action;

    e.    All analyses, studies, testing, and/or investigations of each and any of the Accused Products;

    f.    LPL's contentions concerning the validity, scope, enforceability and patentability of the claims of the Asserted Patents and/or any Counterpart thereof and any patents you hold, claim to hold and/or license that relate to Mounting Technology;

    g.    LPL's contentions concerning the infringement of the claims of the Asserted Patents and/or any Counterpart thereof by the Flat Panel Display Products of any defendant or any other party;

    h.    Any LPL policy, strategy, plan, or practice, whether formal or informal, regarding patents, including filing patent applications, acquiring patents or patent applications from other persons, exploiting patents or patented technology, charging other persons with patent infringement, enforcing patents, licensing patents or patented technology, cross-licensing patents or patented technology, or marking products with patent numbers, including but not limited to patents relating to Mounting Technology and/or the Asserted Patents and/or any Counterpart thereof;

    i.    Any compensation or other consideration received by the inventors of

the Asserted Patents and/or any Counterpart thereof and/or any Mounting Technology patents in connection with procuring the Asserted Patents and/or any Counterpart thereof and/or any Mounting Technology patents, or this lawsuit and/or any other action taken by LPL to enforce or license any such patent;

      j.    Your communications with anyone other than Tatung concerning any of the Asserted Patents and/or any Counterpart thereof and/or any patents relating to Mounting Technology, excluding communications relating to the prosecution of the Asserted Patents and/or any Counterpart; and

      k.    LPL's first notice and/or awareness of, and its knowledge of, the identity, structure, function, operation, design and/or method of manufacture or assembly of each of the Accused Products, and any possible infringement by such products of any of the Asserted Patents and/or any Counterpart thereof and/or any LPL patents relating to Mounting Technology including, without limitation, your awareness of the structure and/or method used to affix, attach and/or secure the LCD, PDP, FED and/or any LPL Product within, on or to another structure of any type including, without limitation, any Flat Panel Display Product; any actions you took upon becoming aware of each such product; the date of your first actual notice of each such product; the form of such notice; the source of such notice; the LPL representatives(s) or employee(s) who first received notice; and any discussion internal to you regarding any such products and all communications with third parties (including vendors, customers, and others) regarding any such products.

**Topic No. 25**

      a.    The identification of each study, search, investigation or opinion concerning any of the Asserted Patents and/or any Counterpart thereof and/or any patent relating to Mounting Technology, and the content and results of any such

study, search, investigation or opinion;

b. All opinion(s) of counsel and pre-filing investigations regarding infringement, validity, and/or enforceability of any of the Asserted Patents and/or any Counterpart thereof;

c. LPL's interpretations of each claim term of the asserted claims of the Asserted Patents and/or any Counterpart thereof;

d. Communications between LPL or its public relations agents and any third party regarding any claim or potential claim of infringement of any of the Asserted Patents and/or any Counterpart thereof; and

e. All allegations by LPL of infringement of any of the Asserted Patents and/or any Counterpart thereof.

**Topic No. 26**

a. LPL's involvement in any proposed, emerging or adopted standard or specification that relates to or impacts upon in any way any Mounting Technology and/or the affixing, attaching and/or securing of an LCD, PDP, FED and/or any LPL Product to another structure including, without limitation, any Flat Panel Display Product;

b. LPL's communications or submissions to any standards body or group, including without limitation, VESA, Display Search and/or the Standards Panels Working Group, concerning any proposed, emerging or adopted standard or specification that relates to or impacts upon in any way any Mounting Technology and/or the affixing, attaching and/or securing of the display of any Flat Panel Display Product to another structure including, without limitation, a stand or a wall; and

c. All meetings, communications and agreements that relate in any way to the affixing, attaching and/or securing of the display of any Flat Panel Display

Product to another structure including without limitation a stand or a wall of any of LCD, PDP, FED, LPL Products and/or Flat Panel Display Products.

**Topic No. 27**

a. The actual or potential liability by any third party, in whole or in part, for infringement of any of the Asserted Patents and/or any Counterpart thereof, including but not limited to agreements, licenses, correspondence, and contracts, whether or not the document mentions the Asserted Patents and/or any Counterpart thereof;

b. Any products alleged or believed by LPL to fall within the scope of any claim of any of the Asserted Patents and/or any Counterpart thereof;

c. Any products alleged or believed by LPL to, or which any person has advised LPL does or may, fall within the scope of any claim of any of any patent relating to Mounting Technology excluding the Asserted Patents and/or any Counterpart thereof; and

d. Any and all meetings, correspondence, agreements or communications with third parties including without limitation, CPT, Sharp or Fujitsu (e.g., as reflected in document nos. LPL 00001-00038) regarding Mounting Technology and/or the Asserted Patents (and/or any Counterpart thereof).

**Topic No. 28**

The Mounting Technology associated with each LCD, PDP, FED, LPL Product and/or Flat Panel Display Product of which you are aware, whether held, owned, licensed, manufactured, sold or offered for sale by you or any other person.

**Topic No. 29**

Any and all product modification(s), design around efforts, non-infringement or invalidity investigation(s), and/or seeking advice of counsel regarding the Asserted Patents or any Counterpart thereof of which you are aware.

**Topic No. 30**

All documents relating to any topic in this Notice; the present and/or last known custody and location of all such documents; the destruction of any such documents; and the facts and circumstances surrounding any said destruction.



EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2006 I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
Wilmington, DE 19899

Jeffrey B. Bove, Esquire
Jaclyn M. Mason, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on December 12, 2006 I caused to be sent by Federal Express the foregoing document to the following non-registered participants:

Daniel G. Jarcho, Esquire
Cass W. Christenson, Esquire
Lora A. Brzezynski, Esquire
Matthew T. Bailey, Esquire
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington D.C. 20006

Tracy R. Roman, Esquire
Bingham McCutchen
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

Scott R. Miller, Esquire
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Anne Shea Gaza (#4093)
Gaza@rlf.com

RLF1-2967131-1