IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| L.G. PHILLIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, <br> Defendants | Civil Action No. 04-343-JJF |

**DEFENDANTS TATUNG COMPANY'S AND TATUNG COMPANY OF AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE UNREDACTED DOCUMENTS AND REQUEST FOR HEARING**

### I.    BACKGROUND

Defendant Tatung company ("Tatung") is a Taiwanese OEM (Original Equipment Manufacturer)[1] that sells computer monitors to resellers and retailers all over the world. Defendant Tatung Company of America ("TUS") is a California corporation. TUS is an OEM as well as a reseller of computer monitors and other LCD applications in the United States. In this lawsuit, Plaintiff L.G. Phillips LCD Co., Ltd ("LPL") alleges that Tatung and TUS have infringed its "rear-mount" patents with respect to three of its products.

Both Defendants integrate hundreds of models of monitors and flat panel display products. Because they are OEMs, many of these products are branded and otherwise customer specific. In most instances, the products are made to particular customer specifications.

---

[1]    OEM entails production and assembly of products pursuant to customer specified requirements. The customer, rather than the manufacturer, is responsible for product conception, branding and sales.

1

RLF1-3093973-1

The monitor business is highly competitive[2] and the identity of Tatung's and TUS' customers and the particular product design requirements and specifications of its OEM customers are extremely valuable trade secrets.

In response to LPL's initial discovery, Tatung and TUS produced technical specifications and assembly drawings for the approximately 800 models of monitors and flat panel displays they sell. To protect the identity of their customers and their customers' particular specifications and requirements, Defendants redacted customer identifying information from these documents.

Of the 800 products, LPL has accused only three of infringing.[3]

Plaintiff's Motion to Compel Defendants to Produce Unredacted Documents and Request for Hearing (the "Motion") is not about customer-related information pertaining to the three accused products. Rather, by this motion LPL is seeking all of the Tatung Defendants' customer information, including customer information and specifications about the products that they do not contend infringe.

## II.  SUMMARY OF THE ARGUMENT

LPL's Motion is just one of a series of unnecessary motions filed by LPL.[4] In its Motion, LPL does not put forth any viable arguments for why it is entitled to Tatung Company's and Tatung Company of America's (collectively "Tatung") highly confidential customer information pertaining to hundreds of products that LPL has never accused of infringement in this case. Instead, LPL merely relies on the Protective Order, claiming that it bars Tatung from redacting any information that is not privileged, even if that information is not the proper subject of discovery. LPL is wrong.

---

[2]    LPL supplies LCD modules to Tatung's and TUS' competitors who would find the redacted customer information highly useful.

[3]    This material was produced many months ago. Initially, only one product, the L17AMTN, was accused of infringing. On November 10, 2006, LPL claimed two more models, the L17UCCT and TLM-1705 infringed.

[4]    LPL timed this Motion so that Tatung's Opposition would be due one day before the parties were scheduled to file their claim construction briefs on December 15, 2006. After LPL filed its Motion, and pursuant to Defendant Viewsonic Corporation's request, the parties agreed to postpone the deadline for submitting claim construction briefs to December 22, 2006.

2

First, as the party moving to compel, LPL has the threshold burden of establishing that the information it seeks is relevant to its claim or defenses or at least is reasonably calculated to lead to the discovery of admissible evidence. LPL has not met this burden. LPL has provided no legitimate explanation for why customer information pertaining to *unaccused* products is relevant. Contrary to LPL's suggestion, the Protective Order does not give LPL the right to demand irrelevant information. The purpose of the Protective Order is merely to protect the confidentiality of the information that is relevant and exchanged in discovery.

Second, Tatung already has produced to LPL thousands of pages of technical documents relating to hundreds of products. These documents provide sufficient information to enable LPL to determine whether Tatung's products infringe the patents-in-suit. As LPL acknowledges, no technical information relating to the structure or assembly of Tatung's products has been redacted. Only Tatung's customers' names have been redacted from some documents. Despite having had Tatung's technical documents for months, LPL has accused only three Tatung products of infringing the Patents-in-Suit. Therefore, LPL's suggestion that Tatung has not provided the information necessary for LPL's infringement analysis is a misstatement.

Third, at the parties' meet and confer, Tatung told LPL it was willing to consider producing documents with unredacted customer names to the extent that the documents pertain to products that have been accused in this case. In fact, Tatung has now produced unredacted documents for the three accused products identified by LPL.

Yet, LPL still insists on obtaining all of Tatung's customer information, even for the hundreds of products that are not at issue in this case. Because this information is not relevant and is not needed by LPL to prepare its case, Tatung respectfully requests that the Court deny LPL's Motion in its entirety and award Tatung reasonable attorneys' fees incurred in filing this Opposition, as permitted by Federal Rule of Civil Procedure 37.

## III. STATEMENT OF FACTS

**A.   Tatung Has Produced Technical Documents Relating To Over 800 Products And These Documents Provide More Than Sufficient Information For LPL To Determine Whether The Products Infringe The Patents-In-Suit.**

In response to LPL's various discovery requests, Tatung has produced, among other things, thousands of pages of technical and assembly-related documents for over 800 products. Tatung agreed to produce the technical and assembly-related documents for these products even though at the time LPL had accused *only one Tatung product* of infringing the patents at issue and even though Tatung believes that none of the products infringe. These documents depict the components that make up each Tatung product and describe in detail how the components are assembled into finished products. Many of the documents also contain photographs of the products at various stages of the assembly process. There is no question (and LPL has not suggested otherwise) that these technical documents sufficiently show how the flat panel display devices are mounted and/or assembled in the Tatung products. It is the manner in which the display devices are mounted that is at issue in this case as the patents asserted by LPL purport to cover "rear mounting" of certain display devices. Because the technical documents produced by Tatung depict how each Tatung product is assembled, they provide more than sufficient information for LPL to determine whether the products infringe the patents-in-suit. (Declaration of Steve Hassid ("Hassid Decl."), ¶ 2.)

**B.   Thus Far, LPL Has Accused Only Three Tatung Products.**

Although LPL has had Tatung's technical documents for many months (and in some instances, for more than a year), it has accused only three products of infringement. When LPL filed its Complaint on May 27, 2004, it originally accused only one Tatung product - the L17AMTN. LPL waited more than two years (and after the parties already had exchanged proposed claim constructions) to supplement its interrogatory responses on November 10, 2006 to include two additional accused products - the TLM-1705 and L17UCCT. (Hassid Decl., ¶ 3; LPL's Third Supplemental Objections

4

and Answers to Tatung's First Set of Interrogatories at Exh. A thereto.) Therefore, only three Tatung products are currently at issue in this case.

C. **Tatung Only Redacted Confidential Customer Information.**

Some of the technical documents produced by Tatung contain the names of the customers for whom the products were made. The identity of Tatung's customers constitutes highly confidential, commercially sensitive information. Only customer names were redacted from the technical documents. None of the structural or assembly features of Tatung's products was redacted. Therefore, notwithstanding the redactions, LPL is able to determine from the documents how the Tatung products are assembled and whether they infringe the patents at issue.

D. **During The Parties' Meet And Confer, Tatung Informed LPL That It Would Consider Providing Unredacted Documents Pertaining To Products That Are Accused.**

During the parties' meet and confer on November 20, 2006, LPL claimed that it was entitled to customer information for all of the Tatung products, including the hundreds of products that LPL has never accused of infringement. Tatung asked LPL why it believed customer information for unaccused products is relevant or discoverable. LPL could not articulate why such information was relevant and merely argued that it was entitled to this information under the Protective Order in this case. Tatung then informed LPL that if and when LPL accuses any additional Tatung products of infringement, Tatung would consider producing unredacted technical documents that would include the identity of Tatung's customers. (Hassid Decl., ¶ 6.)

On December 14, 2006, Tatung produced unredacted technical documents for the three accused products identified by LPL - the L17AMTN, L17UCCT and TLM-1705. The unredacted documents identify the customers for whom these products were made. (*Id.* at ¶ 7; December 14, 2006 Letter at Exh. D thereto.)

## IV. ARGUMENT

**A. LPL Has Not Met Its Burden Of Showing That Tatung's Customer Information For Unaccused Products Is Relevant Or Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

It is well-established that a party is entitled only to discovery that is relevant to its claims or defenses or that is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. Proc. 26(b); *see also* Adv. Comm. Notes regarding 2000 Amendment ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."). LPL bears the burden of establishing that the redacted customer information is relevant and discoverable. *Echostar Commc'n Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

Knowing that it cannot put forward a serious argument for why customer information pertaining to unaccused products is relevant, LPL instead relies on the Protective Order in this case by arguing that it bars Tatung from redacting information that is not privileged. LPL's reliance on the Protective Order is misplaced. First, the purpose of any protective order is to ensure that relevant confidential information produced in discovery would be protected from public disclosure. The existence of a protective order does not give a party the right to demand information that will not lead to the discovery of relevant information. The Protective Order in this case in no way entitles LPL to irrelevant confidential information pertaining to unaccused products. Therefore, notwithstanding the Protective Order, LPL must meet its threshold burden of showing that the information it seeks is relevant or reasonably calculated to lead to the discovery of admissible evidence. Second, Paragraph 5 of the Protective Order primarily addresses the redaction of privileged information, which is not at issue here. Third, Paragraph 5 further recognizes that other types of redactions may be permitted "on a case by case basis."

Here, LPL has failed to meet its burden of establishing that it is entitled to Tatung's customer information for the hundreds of unaccused products. LPL does not need to know the names of Tatung's customers to determine whether Tatung's products infringe. It is well-established that determining whether a patent claim has been infringed involves a two step analysis. First, the claim must be properly construed by the Court to determine its scope and meaning. Second, the claim, as construed, must be compared to the accused device or process. *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). Therefore, infringement analysis focuses on the products or processes and the claims of the patents. The analysis does not involve the identity of an accused infringer's customers. As explained above, Tatung already has produced technical documents that depict the components that make up its products as well as the assembly methods used. As LPL acknowledges, Tatung has not redacted any structural or assembly features from the documents. Therefore, LPL has all of the technical information needed to compare Tatung's products to the asserted claims. Tatung's customer information is simply not needed for this analysis. Indeed, LPL did not have Tatung's customer information for the three accused products (*i.e.*, the L17AMTN that was identified in LPL's Complaint and the L17UCCT and TLM-1705 that were identified recently), and yet it was able to determine that these products supposedly infringe the patents-in-suit. Therefore, LPL's suggestion that Tatung has not provided information that LPL needs to determine whether Tatung's products infringe the patents-in-suit is simply false. LPL already has the information it needs.

In a perfunctory attempt to show why the customer information sought is relevant, LPL states in its Motion that "[k]nowing the identity of Tatung's customers . . . would likely enable LPL, through Counsel, to determine whether those customers are located in the United States and whether those customers have been parties to transactions involving Tatung's *infringing products*." (LPL's Motion at 5 (emphasis added).) LPL further states that "[i]f LPL can show that Tatung's products contain the inventions taught by the Patents-in-Suit, then any commercial success that those products have enjoyed

7

is presumed to be a result of Tatung's unauthorized use of LPL's invention." (*Id.* at 5-6.) LPL's arguments are circular and do not support the conclusion that it is entitled to customer information for products not accused of infringement. Based on LPL's own argument, it would only be entitled to customer information for "Tatung's infringing products" and "products [that] contain the inventions taught by the Patents-in-Suit." Tatung already has produced unredacted documents pertaining to the three products that LPL has accused of infringement in this case. These unredacted documents identify the customers to whom these products have been sold. Customer information for the hundreds of unaccused products is simply irrelevant - even under LPL's own theory.

LPL's suggestion that it is entitled to Tatung's customer information in order to determine whether Tatung has actively induced others to infringe the patents in the United States also has no merit. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, . . . and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Mining and Manufacturing Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002). In other words, in order for there to be active inducement, there must be direct infringement and an infringing product. Here, there is no allegation of direct infringement with respect to the hundreds of products for which LPL seeks customer information. Because these products have not been accused, Tatung cannot be liable for inducing infringement with respect to these products.

*Medtronic Ave Inc. v. Advanced Cardiovascular Sys., Inc.*, No. 98-0080-SLR, 2004 WL 115594, at *2 (D. Del. Jan. 13, 2004)), cited by LPL, is not on point. In that case, the Court found that the "trade secret" information sought by Medtronic was both relevant and discoverable, a finding that cannot be made here. The Court noted "[a]ssuming, *arguendo*, that disclosure would be harmful, the court, nevertheless, finds that the manufacturing process documents are relevant and necessary to enable ACS to prepare for trial. ACS must be able to understand Medtronic's manufacturing details, especially

8

the annealing, welding, and electropolishing steps, to access whether the products produced fall within the scope of its balloon expandable stent patents." *Id.* at *3 (emphasis in original). Here, Tatung already has produced its confidential technical documents which would enable LPL to determine whether Tatung's products fall within the scope of the asserted claims. The customer information sought by LPL will play absolutely no role in the determination of whether Tatung's products are covered by the patents-in-suit.

Finally, LPL's reliance on this Court's ruling in *In Commissariat a L 'Energie Atomique v. Samsung Electronics Co Ltd., et al.* is improper and prejudicial. First, this opinion is unpublished. Second, unlike the McKenna law firm which represents LPL, counsel for the Tatung Defendants were not involved in the *Samsung* case and are not familiar with the facts that led to the Court's ruling relied on by LPL. Third, LPL did not attach the Court's entire opinion from that case, but instead, only provided a few pages of excerpts (pages 1, 20-21 and 36). As a result, the Tatung Defendants have no way of determining whether this ruling is remotely on point and therefore cannot meaningfully address the relevance of this ruling. In any event, based on the excerpts provided by LPL, it appears that this ruling is not on point because it addressed the production of "sales figures . . . relevant at least to the issue of commercial success." The production of sales information is not at issue here. Moreover, it is unclear whether the sales information required to be produced in that case pertained to accused products.

B.   **The Identity Of Tatung's Customers Is Highly Confidential, Commercially Sensitive Information.**

The identity of Tatung's customers and information pertaining to which customers bought which Tatung products are highly confidential. This information is kept confidential by the Tatung Defendants and is not generally available to the public. If the Tatung Defendants' competitors (LPL's customers) gain access to this information, they will obtain a competitive advantage because they will not only have a convenient customer list and information regarding customers' requirements that they did not have to

expend resources to compile, but they also will know the product specifications and features required by each Tatung customer. (*See Nucar Consulting Inc., v. Doyle*, 76 U.S.P.Q.2d 1087 (Del. Ch. 2005) and *Dickinson Medical Group, P.A. v. Foote*, 1984 WL 8208 (Del. Ch. 1984)). Because the Tatung Defendants' customer information relating to unaccused products is not relevant and disclosure of such information would cause them to suffer competitive injury, there is simply no basis to compel the production of such information.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

For the reasons stated above, Tatung respectfully requests that the Court deny LPL's Motion to Compel in its entirety.

Of Counsel:
Christopher Darrow
Mark H. Krietzman
Frank E. Merideth, Jr.
Alan R. Maler
Valerie W. Ho
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Telephone: 310-586-7700

Kathryn L. Clune
Greenberg Traurig LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, DC 20006

Eric S. Tautfest
Greenberg Traurig, P.A.
2200 Ross Avenue, Suite 4700E
Dallas, Texas 75201

Dated: December 14, 2006

/s/ Anne Shea Gaza / Gregory E. Stuhlman (#4765)
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
Attorneys for Defendants Tatung Co. and Tatung Company of America, Inc.

10

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2006 I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
Wilmington, DE 19899

Jeffrey B. Bove, Esquire
Jaclyn M. Mason, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on December 14, 2006 I caused to be sent by Federal Express the foregoing document to the following non-registered participants:

Daniel G. Jarcho, Esquire
Cass W. Christenson, Esquire
Lora A. Brzezynski, Esquire
Matthew T. Bailey, Esquire
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington D.C. 20006

Tracy R. Roman, Esquire
Bingham McCutchen
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

Scott R. Miller, Esquire
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Gregory Stuhlman (#4765)
Stuhlman@rlf.com

RLF1-2967131-1