**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, <br><br> Defendants/Counterclaim Plaintiffs. | Civil Action No. 04-343 (JJF) |

**PLAINTIFF LG.PHILIP'S LCD CO., LTD.'S
OPENING CLAIM CONSTRUCTION BRIEF**

December 22, 2006

THE BAYARD FIRM

Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
Counsel for Plaintiff,
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDING ........................................................... 1

II.    STATEMENT OF THE FACTS ................................................................................. 2

    A.     The Technology at Issue ............................................................................. 2

III.   ARGUMENT ......................................................................................................... 6

    A.     The Analytical Framework for Claim Construction ............................................. 6

    B.     Plaintiff's Proposed Constructions Adhere To The Federal Circuit's
        Mandated Methodology For Properly Construing Claims .................................... 8

        1.     The Only Proper Construction Of "rear mountable" Requires That
            The Fastening Parts Be Located On Or Inside The Border Of The
            Flat Display Panel ...................................................................................... 8

            a.     The Purpose Of The Invention Is The Elimination Of
                Unnecessary Side Space Around The Flat Display Panel ............. 9

            b.     Because The Disputed Preamble Term "rear mountable"
                Was Clearly Relied Upon During Prosecution So As To
                Gain Allowance, "rear mountable" Is Clearly A Claim
                Limitation ................................................................................ 11

            c.     The Intrinsic Evidence Compels The Construction Of "rear
                mountable" To Mean Locating The Fastening Parts On Or
                Inside The Border Of The Flat Display Panel ............................ 12

            d.     Defendants' Constructions Are Not Supported By The
                Intrinsic Record........................................................................ 15

            2.     Plaintiff's Proposed Construction Of "first frame having a
            fastening element / part" Is The Only Proper Construction When
            Read In Context With "rear mountable" and In Light Of The
            Intrinsic Evidence ..................................................................................... 15

            a.     The Purpose Of The Invention Is Achieved By Positioning
                The Fastening Elements On Or Inside The Border Of The
                Flat Display Panel Thereby Eliminating Unnecessary Side
                Space ...................................................................................... 16

            b.     The Specification Evidences That The Fastening Parts
                Must Be Located On Or Inside The Border Of The Flat
                Display Panel .......................................................................... 17

            c.     Defendants' Proposed Constructions Are Improperly Broad ...... 18

            3.     Plaintiff's Construction Of The Disputed Term "housing" Is The
            Proper Construction Because It Is The Only One That Is Consistent
            With The Ordinary Meaning Of That Term ............................................ 18

i

# TABLE OF CONTENTS
(continued)

Page

    a.    The Meaning Of "housing" Is Well Known To One Of Ordinary Skill .......................................................................... 19

    b.    Defendants' Constructions Improperly Restrict "Housing" To A Portable Computer ...................................................... 19

4.    Plaintiff's Construction Of The Disputed Term "data processing device" Is Consistent With The Ordinary Meaning Of That Term And Is Thus The Only Proper Construction ............................................. 21

    a.    The Meaning Of "Data Processing Device" Is Well Known To One Of Ordinary Skill ...................................... 21

    b.    Defendants' Proposed Construction Is Contrary To And Unsupported By The Intrinsic Record And Improperly Imports Limitations From The Specification ............................... 22

5.    Plaintiff's Proposed Construction Of "fastening element / part" Is Consistent With The Ordinary Meaning And Supported By The Intrinsic Evidence ......................................................................... 22

    a.    The Intrinsic Record Clearly Supports Plaintiff's Construction .................................................................... 23

    b.    Defendants' Construction Violates The Doctrine Of Claim Differentiation .................................................... 24

6.    Plaintiff's Proposed Construction Of "fastening hole" Is Consistent With The Common And Ordinary Meaning And Is Supported By The Intrinsic Evidence ................................................................................. 25

    a.    Plaintiff's Construction Is Consistent With The Common And Ordinary Meaning Of The Disputed Term ......................... 25

    b.    The Prosecution History Is Consistent With Plaintiff's Proposed Construction ................................................ 26

    c.    Defendants' Construction Is Improper Because It Fails To Consider The Term In Context .................................... 27

7.    Plaintiff's Construction Of "first frame" Is Consistent With The Common And Ordinary Meaning And Is Consistent With The Intrinsic Evidence ......................................................................... 28

    a.    Plaintiff's Construction Of "first frame" Is Consistent With The Common And Ordinary Meaning Of That Term .................. 28

    b.    Defendants' Construction of "first frame" Improperly Imports Limitations From The Specification ............................... 29

8.    Plaintiff's Construction Of "display case/case" Is Consistent With The Intrinsic Evidence ........................................... 30

# TABLE OF CONTENTS
(continued)

Page

9.    The Disputed Term "capable of" Is Only Being Briefed Because Defendants Refused To Agree To Its Commonly Understood Meaning .................................................................................. 31

10.   Plaintiff's Construction Of "backlight unit" Is Consistent With Its Common And Ordinary Meaning When Read In The Context Of The Claims At Issue ................................................................. 32

     a.   Plaintiff's Construction Is Consistent With The Common And Ordinary Meaning Of The Disputed Term "backlight unit" And Is Fully Supported By The Intrinsic Record .............. 32

     b.   Defendants' Constructions Improperly Import Unnecessary Limitations From The Specification ............................................ 33

11.   Plaintiff's Proposed Construction Of "flat panel display device" Is Clearly Supported By The Intrinsic Evidence ......................................... 34

     a.   The Intrinsic Evidence Clearly Supports Plaintiff's Proposed Construction ................................................................. 34

     b.   Defendants' Constructions Fail Because They Directly Contradict The Weight Of The Intrinsic Evidence ..................... 35

12.   The Entire Intrinsic Record Supports Plaintiff's Proposed Construction Of "second frame" ......................................................... 36

     a.   All Of The Intrinsic Evidence Clearly Supports Plaintiff's Construction ......................................................... 36

     b.   Defendants' Proposed Constructions Improperly Limit The Claims To A Single Embodiment ............................................... 37

13.   The Remaining Terms Are Easily Considered According To Their Ordinary Meaning ................................................................... 38

     a.   "stepped hole" ........................................................... 38

     b.   "peg" ....................................................................... 39

     c.   "protruding portion" .................................................. 39

IV.   CONCLUSION ................................................................................ 39

647197-1

**TABLE OF AUTHORITIES**

**CASES**

*ACTV, Inc. v. Walt Disney Co.*,
346 F.3d 1082 (Fed. Cir. 2003)...............................................................18, 23, 36

*Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*,
345 F.3d 1318 (Fed. Cir. 2003)...........................................................................7

*Beachcombers, International, Inc. v. WildeWood Creative Products, Inc.*,
31 F.3d 1154 (Fed. Cir. 1994)...........................................................................24

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*,
262 F.3d 1258 (Fed. Cir. 2001)............................................................................8

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
55 F.3d 615 (Fed. Cir. 1995)........................................................................12, 17

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)...........................................................................11

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002)....................................................................20, 22, 33

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
No. Civ.A. 04-1278-KAJ, 2006 WL 956599 (D. Del. Apr. 13, 2006) ......................7

*CVI/Beta Ventures, Inc. v. Tura LP*,
112 F.3d 1146 (Fed. Cir. 1997).....................................................................7, 9, 16

*Elektra Instrument S.A. v. O.U.R. Scientific International, Inc.*,
214 F.3d 1302 (Fed. Cir. 2000)...........................................................................32

*Enzo Life Sciences, Inc. v. Digene Corp.*,
No. 02-212 JJF, 2004 WL 1368841 (D. Del. June 10, 2004) ...........................20, 22

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
802 F.2d 1367 (Fed. Cir. 1986)......................................................................19, 21

*In re Paulsen*,
30 F.3d 1475 (Fed. Cir. 1994)...........................................................................12

*Innova/Pure Water v. Safari Water Filtration Systems, Inc.*,
381 F.3d 1111 (Fed. Cir. 2004)................................................................... *passim*

iv

## TABLE OF AUTHORITIES
continued

**Page**

*Intel Corp. v. Broadcom Corp.,*
172 F. Supp. 2d 478 (D. Del. 2001)........................................................................33

*Intermatic Inc. v. Lamson & Sessions Co.,*
273 F.3d 1355 (Fed. Cir. 2001), *vacated*, 537 U.S. 1016 (2002) ...........................24

*Invitrogen Corp. v. Clonetech Laboratories, Inc.,*
429 F.3d 1052 (Fed. Cir. 2005)..............................................................................6

*Johnson Worldwide Associates, Inc. v. Zebco Corp.,*
175 F.3d 985 (Fed. Cir. 1999)................................................................................6

*JVW Enterprises, Inc. v. Interact Accessories, Inc.,*
424 F.3d 1324 (Fed. Cir. 2005)............................................................................38

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ....................6, 7

*Microstrategy Inc. v. Business Objects Americas,*
410 F. Supp. 2d 348 (D. Del. 2006)......................................................................11

*NTP, Inc. v. Research In Motion, Ltd.,*
418 F.3d 1282 (Fed. Cir. 2005)............................................................................33

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1332 (2006) ........................... *passim*

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.,*
422 F. Supp. 2d 446 (D. Del. 2006)......................................................................12

*RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.,*
326 F.3d 1255 (Fed. Cir. 2003).......................................................................31, 35

*Safas Corp. v. Etura Premier, L.L.C.,*
293 F. Supp. 2d 436 (D. Del. 2003)......................................................................31

*Vas-Cath Inc. v. Mahurkar,*
935 F.2d 1555 (Fed. Cir. 1991)...............................................................12, 17, 30

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996)........................................................................ *passim*

v

**TABLE OF AUTHORITIES**
continued

**Page**

**OTHER**

American Heritage Dictionary (3d ed. 1994) ...............................................................19, 26, 31, 39

McGraw-Hill Dictionary of Engineering (5th ed. 1997) .........................................................19, 32

McGraw-Hill Dictionary of Scientific & Technical Terms (5th ed. 1994) ...................................21

Webster's Third New International Dictionary (3d ed. 1993) .......................................................28

vi

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), through counsel, hereby submits this brief in support of its constructions of certain disputed claim terms recited in LPL's U.S. Patent No. 6,501,641 ("the '641 Patent") and U.S. Patent No. 6,498,718 ("the '718 Patent") which are at issue in this litigation.

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff LG.Philips LCD Co., Ltd. ("LPL") sued ViewSonic Corporation ("ViewSonic"), Tatung Co. ("Tatung"), and Tatung Company of America, Inc. ("Tatung America") (collectively "Defendants") on May 27, 2004, alleging infringement of the '718 Patent and the '641 Patent (collectively the "Patents-in-Suit"). LPL's Patents-in-Suit protect LPL's valuable rear mount technology employed in flat panel display devices. In particular, the '718 Patent, issued on December 24, 2002, contains claims covering methods for assembling flat panel display devices, wherein either the method or device are categorized as rear mountable. (J.A. at B, the '718 Patent). The '641 Patent, which issued on December 31, 2002, contains claims covering, *inter alia*, rear mountable flat panel display devices. (J.A. at A, the '641 Patent).

LPL's rear mount technology is of mushrooming significance in the computer industry, as flat panel display monitors (*e.g.*, liquid crystal displays ("LCDs")) increasingly displace the larger and heavier computer monitors that utilize older cathode ray tube ("CRT") technology. Because LPL's rear mount technology reduces the width of the interior frame that surrounds the front of the flat display panel, thereby decreasing the width of the front housing that covers the flat display panel, it maximizes the monitor's viewing area relative to the overall size of the monitor.

During the exchange of claim terms and meet and confer process, the parties collectively identified 30 terms for construction. The parties presented their respective constructions in the

Joint Claim Construction Chart ("JCCC") on a term-by-term basis rather than a claim-by-claim basis because these terms often appear in multiple claims of the Patents-in-Suit. (D.I. 312.) Since filing the JCCC, the parties conducted several additional meet and confers, and narrowed the list to 15 terms requiring construction by this Court.

Reply briefs to the opening claim construction briefs are due on January 31, 2007, and this Court will conduct the claim construction hearing on March 7, 2007. Trial in this case will begin on January 21, 2008.

## II.    STATEMENT OF THE FACTS

### A.    The Technology at Issue

The Patents-in-Suit pertain to the flat panel display devices commonly found in modern day flat screen computer monitors, flat screen televisions and portable computers. Flat panel display devices are comprised of at least: i) the flat display panel (for example, the glass, electronic circuitry and liquid crystal that make up an LCD display); and ii) the frame or frames that allow the flat display panel to be mounted to the housing. Generally, the mounting of the flat panel display device to the housing is accomplished via fastening parts. For example, inside every flat screen computer monitor, the flat panel display device is mounted to the housing of that monitor via the fastening parts.

The prior art mounting technologies, shown in Figure 1 and Figure 2 below, typically employ flanges (colored red in Figure 1) or through holes (colored red in Figure 2) that are positioned outside the border of the flat display panel. Because of the "side space" required by the flanges or through holes located outside the border of the flat display panel, the flat panel display device mounted with the prior art mounting technology is much wider than what is now necessary given the inventions claimed by the Patents-in-Suit.

647197-1



Figure 1                    Figure 2

The prior art mounting technology in Figure 1 above (which is prior art Figure 3B from the '641 Patent) is referred to as "front mounting" because the mounting bolts (128) pass through the "front" of the flanges (114a and 114b) and into the rear housing. The extra side space (labeled "unnecessary side space" by the Patents-in-Suit, *see e.g.*, the '641 Patent at 7:32-3 is denoted by "D" (highlighted in red in the upper right corner) in Figure 1.[1]

Similarly, the prior art mounting technology in Figure 2 above (which is Figure 2 from the Fujimori, et al. Patent, U.S. Patent No. 5,379,182, which was considered by the Examiner on July 30, 2002, during the prosecution of the '641 Patent, Ex. LPL10), is another type of prior art mounting that also employs screws (15), which travel through the holes in the extra side space of the LCD panel. (J.A. at A, Fig. 2.) This prior art mounting technology also employs brackets (14a and 14b), which are positioned outside the border of the flat display panel and are mounted to the front housing (12) via screws (16). Notably, both sets of screws (15 and 16) in the Fujitsu

---

[1] Plaintiffs point out that the term "unnecessary side space" should not be confused with necessary side space. One skilled in the art would understand that the display panel itself does not and cannot exist without the assistance of some other structural component, such as a frame or frames, which hold the flat display panel in place. This structural component inherently adds some side space, for example, to accommodate the width of the structure, however minimal.

3

prior art travel from the rear of the flat display panel to the front of the monitor.

Thus, the problem with the prior art mounting technology is the necessity of using flanges or through holes, <u>positioned outside the border of the flat display panel,</u> because such positioning results in the creation of unnecessary side space. Thus, one novel aspect of the inventions claimed in the Patents-in-Suit results from positioning the fastening parts on the rear of the flat panel display device -- thus allowing the flat panel display device to be "rear mountable." This rear-mounting capability significantly increases the viewing area relative to the total monitor area by eliminating the "unnecessary side space" caused by the prior art flanges. Thus, the advantage of eliminating the unnecessary side space is clearly evident when the prior art embodiment containing side flanges (Figure 3 below) is juxtaposed with an embodiment of the invention of the Patents-in-Suit in which the unnecessary side space has been eliminated (*see* Figure 4 below - which is Figure 10 from the '641 Patent).



Figure 3                              Figure 4

As can be seen in the above Figures, narrowing or eliminating the unnecessary side space "D" (which is equal to the sum of area created by "d1" and "d2") results in an increase of the viewable area of the flat display panel without any increase in the size of the monitor.

4

It is the positioning of the fastening parts on the rear side of the flat panel display device, and positioning those fastening parts <u>within the border of the flat display panel</u>, that offers not only the capability to be rear mounted, but minimizes or even eliminates the unnecessary side space. For example, Figure 5 below shows the rear surface of the first frame (14g) (colored green) upon which are positioned the four fastening parts (15) (colored red). These fastening parts (15) correspond to the fastening parts shown in red in Figure 6 below, which are visible via the cut away at each corner of the flat display panel.



Figure 5                                  Figure 6

It should be noted that, not only are the fastening parts positioned on the rear surface of the first frame (colored green in both Figure 5 and Figure 6), they are positioned on or inside the border of the flat display panel (colored blue in both Figures). Any other positioning of these fastening parts, for example positioning the fastening parts outside the border of the blue colored flat display panel, would create unnecessary side space and cut against the very purpose of the invention - eliminating unnecessary side space. Thus, positioning the fastening parts <u>on or inside the border of the flat display panel</u> is a necessary component of the claimed invention of the Patents-in-Suit.

5

III.    **ARGUMENT**

A.    <u>**The Analytical Framework for Claim Construction**</u>

In determining patent infringement, the court must first construe the scope of the patent claim as a matter of law before the fact-finder addresses the question of infringement. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Proper claim construction entails an analysis of a patent's intrinsic evidence -- *i.e.*, the claim language, the written description, and the file history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-83 (Fed. Cir. 1996). The appropriate starting point, however, is necessarily with the language of the asserted claim itself. *Invitrogen Corp. v. Clonetech Labs., Inc.*, 429 F.3d 1052, 1076 (Fed. Cir. 2005). As the Federal Circuit recently confirmed, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation omitted), *cert. denied*, 126 S. Ct. 1332 (2006).

Nevertheless, it is not proper to "construe" a patent claim by changing its plain and ordinary meaning. To the contrary, construction of a claim starts with its plain language and, in the absence of some compelling reason not to, courts "must presume that the terms in the claim[s] mean what they say, and . . . give full effect to the ordinary and accustomed meaning of claim terms." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *See Phillips*, 415 F.3d at 1313.

Additionally, claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). Importantly, in *Phillips*, the Federal Circuit reiterated the well-known claim construction canon that, although claims are read

6

in light of the specification, it is improper to import limitations from the specification into the claims. *Phillips*, 415 F.3d at 1323. It is also well-established that mere citation to a preferred embodiment is insufficient to effect a disavowal of claim scope. *Innova/Pure Water v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("even where a patent describes only a single embodiment, claims will not be 'read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction'").

Interpretation of patent claims will also rely upon drawings in the patents. Drawings in a specification may be used in a manner similar to the written specification to provide evidence that is highly relevant to claim interpretation. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997). In addition to the specification and drawings, a court may also consider a patent's prosecution history. *Phillips*, 415 F.3d at 1317. Moreover, prior art references that are "of record in the prosecution history … may be consulted in the process of claim construction for what they indicate about the state of the prior art." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318 (Fed. Cir. 2003).

Finally, claims are typically interpreted solely in view of publicly available sources (i.e., the intrinsic evidence), and consideration of extrinsic evidence during claim construction is generally disfavored. *Vitronics*, 90 F.3d at 1583. When construing art specific terms, however, the law recognizes that the meaning of a claim term as understood by persons of ordinary skill in the art is often not "immediately apparent" to those outside the field of art and authorizes the court to consult extrinsic sources, such as technical dictionaries, learned treatises, and expert testimony. *Phillips*, 415 F.3d at 1314-15); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, No. Civ. A. 04-1278-KAJ, 2006 WL 956599, at *2 (D. Del. April 13, 2006) (quoting *Phillips* in

7

holding that "dictionaries, and especially technical dictionaries, . . . have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology").

### B.    Plaintiff's Proposed Constructions Adhere To The Federal Circuit's Mandated Methodology For Properly Construing Claims

For the reasons discussed below, Plaintiff respectfully requests that this Court construe the disputed claim terms in accordance with either:  i) their ordinary meaning, given the "heavy presumption" that exists in the law mandating a claim term be given its ordinary and customary meaning; or ii) constructions compelled by a review of the intrinsic evidence.

### 1.    The Only Proper Construction Of "rear mountable" Requires That The Fastening Parts Be Located On Or Inside The Border Of The Flat Display Panel

Once this Court considers all the applicable intrinsic evidence in regard to the disputed term "rear mountable,"[2] the only proper construction is "a flat panel display device that is capable of being mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel," for the simple reason that the entire intrinsic record is consistent with this single meaning.  *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (noting that "when a patentee uses a claim term throughout the entire patent specification in a manner consistent with only a single meaning, he has defined that term 'by implication.'" (citing *Vitronics*, 90 F.3d at 1582)).

---

[2] The Parties agree that the term "rear mounted" does not need to be briefed because rear mountable is simply the capability of being rear mounted.  LPL reserves the right to brief the term "rear mounted" as required.

### a.    The Purpose Of The Invention Is The Elimination Of Unnecessary Side Space Around The Flat Display Panel

As the Federal Circuit pointed out in *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d at 1160, the purpose of the invention at issue may guide claim construction because <u>the problem being solved</u> "as discerned from the specification and prosecution history, is a relevant consideration" in construing claims.  It is important to note that The Background of the Invention section of each of the Patents-in-Suit clearly sets forth that the problem being solved relates to the mounting of flat panel display devices to the housings of computer monitors.  Specifically, the Patents-in-Suit point out that the recognized problem with the prior art mounting embodiments is that they require the use of flanges on the side(s) of the frames of the flat panel display device.  These flanges are used to mount the flat panel display device to a housing or other components and, because these flanges extend outside the border of the flat display panel, they create <u>unnecessary side space</u> in a monitor.  (*See* J.A. at A, the '641 Patent at 1: 60-64 and 2:29-36; *see* J.A. at B, the '718 Patent at 1:62-66 and 2:33-39.)  This unnecessary side space is shown in Figure 7 below as the side flanges (colored red) and denoted as "d1" and "d2" and "D" (also colored red).



Figure 7

The inventions recited in the Patents-in-Suit solve this problem by employing mounting technology or a mounting method that *"does not require unnecessary side space for mounting the LCD device . . . ."* (J.A. at A, the '641 Patent at 2:37-39 and 7:31-35 and Figs. 4-16. *See also* J.A. at B, the '718 Patent at 2:40-43 and 7:35-40 and Figs. 4-16.) (Emphasis added.)

Consequently, because the "problem being solved" is the elimination of "unnecessary side space," the fastening elements/parts located on the rear surface of the first frame of the recited embodiments must be positioned on or inside the border of the flat display panel.



Figure 8

For example, as shown above in Figure 8 (which is Fig. 10 from the '641 Patent),[3] the fastening elements (colored red) are positioned:  i) on the rear surface of the first frame (colored green); and ii) inside the border of the flat display panel (colored blue).  The flat display panel is in turn bordered by the yellow frame (also referred to herein and in the Patents as the "second frame").  It is clear that this positioning of the fastening parts on or inside the border of the flat display panel eliminates the unnecessary side space, whereas positioning the fastening parts outside the border of the blue colored flat display panel (*e.g.,* on the outside edge of the yellow

---

[3] Note the blow-up of the right corner is not in the original Fig. 10, but is provided for this Court's convenience.

colored second frame) would create the same unnecessary side space created by the flanges.

> **b.      Because The Disputed Preamble Term "rear mountable" Was Clearly Relied Upon During Prosecution So As To Gain Allowance, "rear mountable" Is Clearly A Claim Limitation**

All the claims at issue recite the disputed term "rear mountable" in their respective preamble. Nevertheless, where there is "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art," such reliance "transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002); *see also Microstrategy Inc. v. Business Objects Americas*, 410 F. Supp. 2d 348, 357 (D. Del 2006).

Clear reliance on the preamble, so as to gain allowance of the pending claims in view of the cited art, is exactly what occurred in this case. In fact, the Patents-in-Suit were only allowed after they were amended to recite "rear mountable." For example, with respect to the '641 Patent, Applicants conducted an Interview with the Examiner on February 19, 2002, and the Interview Summary states: "The independent claims are to be amended with limitation 'back mounted display' or the equivalent and pending for approval." (J.A. at G, Bates No. VS5005609, Interview Summary, dated 2/19/02.) On March 12, 2002, Applicant filed a Preliminary Amendment amending the preamble of the claims at issue to recite "rear mountable." (J.A. at G, Preliminary Amendment, dated 3/12/02, VS5005618-VS5005640.) On April 5, 2002, the Examiner allowed the amended claims of the '641 Patent. Specifically, in the Notice of Allowance, the Examiner's stated reasons for allowing the then-pending claims of the '641 Patent were as follows: "The best prior art of record . . . fails to teach or suggest . . . a rear mountable display device having a fastening element at a rear surface of the rear mountable display device attached to a case through the fastening element . . . ." (J.A. at G, Notice of

Allowability, dated 4/12/02 at page 2, paragraph 2.) (emphasis added.)  The claims at issue in the '718 Patent were similarly allowed.  (J.A. at H, Interview Summary, dated 2/1902, VS14994, Preliminary Amendment, dated 3/12/02, VS15004, Notice of Allowance, dated 4/23/02, VS15029, 15043).

Thus, because the "rear mountable" preamble language gives meaning and properly defines the invention claimed in the Patents-in-Suit, this Court should deem it a limitation of all the claims in which it appears.  *See In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994) (concluding that because the term "computer" gave life and meaning to the claims when it was used in the preamble, it rose to a claim limitation) (cited by *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 422 F. Supp. 2d 446, 454-55 (D. Del. 2006) (Farnan, J.) (stating that a preamble term must limit the claim to achieve the express purpose of the invention)).

       **c.**      **The Intrinsic Evidence Compels The Construction Of "rear mountable" To Mean Locating The Fastening Parts On Or Inside The Border Of The Flat Display Panel**

When construing the disputed term "rear mountable," the Court must refer to the written description of the invention so as to understand the intended meaning of the claims.  *See, e.g.*, *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 621 (Fed. Cir. 1995) (cautioning "it is legal error to construe a claim by considering it in isolation.  A claim must be read in view of the specification of which it is a part.").  Moreover, as the Federal Circuit advised, "drawings alone may provide the 'written description' of an invention as required by § 112."  *See*, *e.g.*, *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed. Cir. 1991).  In this case, both the written description and the drawings evidence that the fastening parts must be located on or inside the border of the flat display panel.

For example, Figure 4C of the Patents-in-Suit (shown below as Figure 9) depicts an exploded-view diagram of a flat panel display device.

12



Figure 9

Specifically, Figure 9 shows that the fastening elements (15) (colored red) on the rear surface of the first frame (14g) (colored green) are positioned <u>on or inside the border</u> of the flat display panel (12) (colored blue). Because the dashed vertical reference line (which extends from a corner of the first frame (14g) and tangentially touches all the corners of (14f) through (12) so as to end up in an internal corner of the second frame (16)) makes clear that the flat display panel (12) fits snugly within the second frame (16) and is covered by the first frame (14g), the fastening elements (15) located on the rear surface of the first frame (14g) must be positioned <u>on or inside the border</u> of the blue colored flat display panel (12).

Similarly, Fig. 10 of the Patents-in-Suit (shown below as Figure 10) also clearly shows that the fastening elements (colored red and positioned in the four corners of the flat panel display device) are all located <u>on or inside the border</u> of the blue colored flat display panel.

13



Figure 10

Specifically, the flat display panel (colored blue) is contained inside and extends to the vertical wall of the second frame (colored yellow). Because the fastening parts (colored red, and visible because the blue colored flat display panel is cut away) barely reach the horizontal border of the second frame (colored yellow), the fastening parts are clearly <u>inside the border</u> of the blue colored flat display panel. Thus, positioning those fastening parts on or inside the border of the flat display panel achieves the purpose of the invention -- eliminating the side flanges and thus the unnecessary side space.

Further, as discussed above, the prosecution history is consistent with Plaintiff's proposed construction. Thus, all of the intrinsic record clearly sets forth the qualifications for the flat panel display device to be "rear mountable;" *e.g.*, the fastening elements that mount the flat panel display device to the rear housing must not only be on the rear side of the flat display panel, but they must be <u>on or inside the border of the flat display panel</u>. Nothing in the intrinsic record necessitates a deviation from this construction. For all of these reasons, the term "rear mountable" is properly construed as "a flat panel display device that is capable of being mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and

14

positioned on or inside the border of the flat display panel."

**d.      Defendants' Constructions Are Not Supported By The Intrinsic Record**

All <u>three</u> of Defendants' proposed constructions are transparent in their attempt to add limitations to the claim without support in the intrinsic record.  Namely, Defendants' proposed constructions explicitly exclude, fastening elements that protrude beyond the edges of the device. In other words, all three proposed constructions improperly read a negative limitation into the asserted claims by requiring that the first frame have: i) "no front or side fastening elements;" (ViewSonic's first construction) ii) "no fastening element that extends through, from or protrudes beyond any of the four side edges of the device;" (ViewSonic's second construction) or iii) no fastening elements for front or side mounting" (Tatung's construction).

Taking the intrinsic evidence in turn, none of these negative limitations are supported by the claim language recited in the Patents-in-Suit.  Specifically, the only time the claims mention fastening elements is in regard to the fastening parts located on the rear surface of the first frame. Thus, there is no specific prohibition in the claims against having other or additional fastening parts positioned outside the border of the first frame of the flat display panel.  (*See* J.A. at A, '641 Patent, Claims 35 at 9:62-10:6, 47 at 10:45-10:61, 55 at 12:1-12:8, and 56 at 12:9-12:18; J.A. at B, '718 Patent, Claim 33 at 10:20-31.)  Thus, because the claim language does not require the absence of any other types of fastening elements on the back of the first frame or rear of the flat panel display device, it is improper to read such a restriction into the claims.

**2.      Plaintiff's Proposed Construction Of "first frame having a fastening element / part" Is The Only Proper Construction When Read In Context With "rear mountable" and In Light Of The Intrinsic Evidence**

Plaintiff construes the term "first frame having a fastening element / part" as "a first frame having a fastening part(s) / element(s) positioned on or inside the border of the flat display

panel." This Court should adopt Plaintiff's construction as it is the only proper construction

when read in context with "rear mountable" and in view of the intrinsic evidence.

> **a.      The Purpose Of The Invention Is Achieved By Positioning The Fastening Elements On Or Inside The Border Of The Flat Display Panel Thereby Eliminating Unnecessary Side Space**

The purpose of the inventions claimed in the Patents-in-Suit -- the elimination of

unnecessary side space -- may guide this Court's constructions because the problem being solved

"as discerned from the specification and the prosecution history, is a relevant consideration" in

construing claims. *See CVI/Beta Ventures, Inc.*, 112 F.3d at 1160. As discussed above, The

Background of the Invention section of each of the Patents-in-Suit clearly discusses the problem

of "unnecessary side space" as it pertains to the mounting of flat panel display devices into the

housings of computer monitors. (*See* J.A. at A, the '641 Patent at 1:60-64 and 2:29-36; see

J.A. at B, the '718 Patent at 1:63-7 and 33-9.) This unnecessary side space is shown in Figure 11

below, as the side flanges (colored red) and denoted as "d1" and "d2" and "D" (also colored red).



Figure 11

The inventions recited in the Patents-in-Suit solve this problem by employing mounting

technology or a mounting method that "<u>does not require unnecessary side space for mounting the</u>

<u>LCD device</u> . . . ." (J.A. at A, the '641 Patent at 2:37-39 and 7:31-35 and Figs. 4-16. See also

16

J.A. at B, the '718 Patent at 2:40-3 and 7:35-9 and Figs.4-16.)  The only way a rear mounted flat

panel display device can thus eliminate the unnecessary side space is to position the fastening

elements/parts on or inside the border of the flat display panel.

> **b.**     **The Specification Evidences That The Fastening Parts Must Be Located On Or Inside The Border Of The Flat Display Panel**

Another part of the specification also clearly supports Plaintiff's construction of "first

frame having a fastening element / part" as "a first frame having a fastening part(s) / element(s)

positioned on or inside the border of the flat display panel."  *See, e.g.*, *Bell Commc'ns Research,*

*Inc.*, 55 F.3d at 621 (cautioning "it is legal error to construe a claim by considering it in isolation.

A claim must be read in view of the specification of which it is a part."); *Vas-Cath Inc.*, 935 F.2d

at 1565 (advising "drawings alone may provide the 'written description' of an invention as

required by § 112").

As discussed above, Figure 4C of the Patents-in-Suit (shown below as Figure 12) clearly

teaches the fastening parts (15) (colored red) as located on a rear surface of the first frame (14g)

and positioned <u>on or inside the border</u> of the flat display panel (12).  Similarly, Figure 10 of the

Patents-in-Suit (shown below as Figure 13) also



Figure 12                                      Figure 13

clearly shows that the fastening elements (colored red and positioned in the four corners of the flat panel display device), which are located on the rear surface of the first frame (colored green), are positioned on or inside the border of the blue colored flat display panel.  Thus, positioning those fastening parts on or inside the border of the flat display panel achieves the purpose of the invention -- eliminating the side flanges and thus the unnecessary side space.

### c.     Defendants' Proposed Constructions Are Improperly Broad

This Court must reject Defendants' proposed constructions because they are inherently vague and confusing.  Specifically, Tatung proposes that this Court construe the disputed term "first frame having a fastening element / part" as "[h]aving a fastening part (or element) integral to a first frame."  ViewSonic's proposed construction contains only minor variations.

By simply requiring that the fastening element be "integral" to the first frame, Defendants' proposed constructions are not consistent with the context of the claims, *e.g.*, "rear mountable".  See *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").  It is understood that the "first frame" that has the "fastening element" must be read in context with the term "rear mountable," which necessarily requires that the "fastening part(s) / element(s) [is] positioned on or inside the border of the flat display panel."

### 3.     Plaintiff's Construction Of The Disputed Term "housing" Is The Proper Construction Because It Is The Only One That Is Consistent With The Ordinary Meaning Of That Term

Plaintiff proposes that this Court construe the disputed term "housing" consistent with and according to its ordinary meaning of "an outer casing or enclosure."  This is the only proper construction because all of the intrinsic evidence is consistent with this ordinary meaning.

### a.   The Meaning Of "housing" Is Well Known To One Of Ordinary Skill

Another canon of proper claim construction is the recognition that when a recited term is well-known in the art, there is no need to explicitly define the term in the intrinsic record because a skilled artisan would readily understand the term to have its ordinary and customary meaning. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) (recognizing that what is known in the art need not be included and is preferably omitted from the specification).  The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question, at the time of the invention. *See Innova/Pure Water*, 381 F.3d at 1116.  Because the disputed term "housing" is well known in the mechanical art of mounting flat panel display devices, Plaintiff's proposed construction is not only consistent with, but essentially mirrors the plain and ordinary meaning of "housing."

For example, the McGraw-Hill Dictionary of Engineering defines "housing" as "[a] case or enclosure to cover and protect a structure . . . ."  (Ex. LPL1, McGraw-Hill Dictionary of Engineering at p. 957 (5th ed. 1997).)  The American Heritage Dictionary similarly defines "housing" as "[s]omething that covers, protects, or supports . . . ."  (Ex. LPL2, American Heritage Dictionary 406 (3d ed. 1994).)  Thus, Plaintiff's proposed construction of "housing" as "[a]n outer casing or enclosure" is consistent with the ordinary meaning of the disputed term, which is clear to one of ordinary skill in the art.

### b.   Defendants' Constructions Improperly Restrict "Housing" To A Portable Computer

Defendants' propose that this Court ignore the common and ordinary meaning of "housing" and construe it to mean "[t]he display case/case and body of a portable computer." But "in order to prevail on its proposed construction, which is contrary to the ordinary and customary meaning of the claim term at issue, [Defendants] must establish that [Plaintiff]

19

prescribed a [construction contradictory to the common and ordinary meaning] in the intrinsic record." *Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212 JJF, 2004 WL 1368841, at *2 (D. Del. June 10, 2004) (Farnan, J.) (mem. order construing disputed terms).

Unfortunately for Defendants, the only support for their narrow construction of "housing" is a preferred embodiment, *i.e.*, "portable computer." (*See* J.A. at A, the '641 Patent, 4:49-50 ("[t]ogether, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term.")) It is well-established, however, that mere citation to a preferred embodiment in the Patents-in-Suit is insufficient to effect a disavowal of claim scope. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (warning that the "'heavy presumption' that a claim term carries its ordinary meaning" may be overcome, but it cannot be done "simply by pointing to the preferred embodiment . . . in the specification or prosecution history"). In fact, Defendants' construction would only be proper if applicants expressly restricted its embodiments. *See Innova/Pure Water*, 381 F.3d at 1117 (advising that "even where a patent describes only a single embodiment, claims will not be 'read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction."'"). In fact just the opposite is true -- the specification clearly states "the present invention will be discussed with respect to the LCD device as an example of the flat screen type display devices . . . . [a]s a flat panel type display device 111, the LCD is widely used in portable computers and flat screen monitors." (J.A. at A, the '641 Patent at 1:32-4). Accordingly, the structure of the housing is clearly not limited to a "portable computer," "case" or "body". In fact, the words "portable computer," "case" and "body" do not appear anywhere in the claims at issue. Indeed, none of the claims at issue even recite a "portable computer." Because the Applicants did not act as a lexicographer to specially

20

define the term "housing," this Court cannot properly ignore the ordinary meaning in performing

its construction.  *See Vitronics Corp.*, 90 F.3d at 1582.

> **4.    Plaintiff's Construction Of The Disputed Term "data processing device" Is Consistent With The Ordinary Meaning Of That Term And Is Thus The Only Proper Construction**

As with the disputed term "housing," Plaintiff proposes that this Court construe the

disputed term "data processing device" consistent with and according to its ordinary meaning of

"[a]n apparatus that performs an operation or combination of operations on any type of data,"

because all of the intrinsic evidence supports this ordinary meaning.

> **a.    The Meaning Of "Data Processing Device" Is Well Known To One Of Ordinary Skill**

Because the disputed term "data processing device" is well known in the art of mounting

flat panel display devices, a skilled artisan would readily understand the term to have its ordinary

and customary meaning.  Thus, there was no need to explicitly define "data processing device"

in the intrinsic record.  *Hybritech Inc.*, 802 F.2d at 1384 (recognizing the guiding principle of the

written description requirement is that what is known in the art need not be included and is

preferably omitted from the specification).  Neither the specification nor production history

contradicts the ordinary meaning.

For example, the McGraw-Hill Dictionary of Scientific and Technical Terms defines the

word "data processing" as "any operation or combination of operations on data," (Ex. LPL3,

McGraw-Hill Dictionary of Scientific & Technical Terms at p. 519 (5th ed. 1994)), and the word

"device" as "a mechanism, tool, or other piece of equipment designed for specific uses."  (Ex.

LPL4, McGraw-Hill Dictionary of Scientific & Technical Terms at p. 553 (5th ed. 1994).)  Thus,

Plaintiff's proposed construction of "data processing device" is consistent with the ordinary

meaning of the disputed term, which is clear to one of ordinary skill in the art.

      **b.**    **Defendants' Proposed Construction Is Contrary To And Unsupported By The Intrinsic Record And Improperly Imports Limitations From The Specification**

Defendants proposed construction of "data processing device" is "[t]he central processing unit of a computer."  Notably, Defendants' construction is not only contrary to the ordinary and customary meaning of "data processing device," but it improperly imports structural limitations ("central processing unit" and "computer") from the specification.  As this Court recently held, in order to prevail on its proposed construction which is contrary to the ordinary and customary meaning of the claim term at issue, [Defendants] must establish that [Plaintiff] prescribed a [construction contradictory to the common and ordinary meaning] in the intrinsic record."  *Enzo Life Scis., Inc.*, 2004 WL 1368841, at *2.

Defendants fail to meet their burden for any number of reasons.  First, there is no discussion in the intrinsic record that contradicts the ordinary meaning of "data processing device."  Moreover, Defendants' proposed construction is impermissibly narrow as it improperly contains structural limitations that were imported from a preferred embodiment discussed in the Patents-in-Suit.  *See CCS Fitness,* 288 F.3d at 1366 (warning that the "'heavy presumption' that a claim term carries its ordinary meaning" may be overcome, but it cannot be done "simply by pointing to the preferred embodiment . . . in the specification or prosecution history"); *see also Innova/Pure Water*, 381 F.3d at 1117.  Because the Applicants did not act as a lexicographer to specially define the term "data processing device," this Court cannot properly ignore the ordinary meaning in performing its construction.  *See Vitronics Corp.*, 90 F.3d at 1582.

      **5.**    **Plaintiff's Proposed Construction Of "fastening element / part" Is Consistent With The Ordinary Meaning And Supported By The Intrinsic Evidence**

Plaintiff proposes that the term "fastening element / part" be construed as "a part(s) / element(s) that provides the capability for mounting one component to another component(s)".

Because all the intrinsic evidence supports this ordinary meaning, Plaintiff's construction should be adopted by this Court.

> ### a.     The Intrinsic Record Clearly Supports Plaintiff's Construction

The disputed terms must always be construed in the context of the claim language in which they appear. *See ACTV, Inc.*, 346 F.3d at 1088 (finding "the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). In regard to the disputed term "fastening element / part", Claim 35 of the '641 Patent recites "a first frame having a fastening part at a rear surface of the first frame . . . ." (J.A. at A, 'the '641 Patent, Claim 35 at 9:65-67, Claim 47 at 10:59-61, Claim 55 at 12:8-9, and Claim 56 at 12:7-8; see also J.A. at B, the '718 Patent, Claim 33 at 10:24-8). Thus, when construing the term "fastening element / part," it must be understood that the claimed "fastening elements" that provide the capability for rear mounting are only those fastening element(s) or parts(s) located on a rear surface of a first frame. Although the specification, drawings, and prosecution history discuss many types of fastening elements located on various structural features of different preferred embodiments, it is only the those fastening elements located on the rear surface of the first frame that are relevant to claim construction.

Thus, when the term "fastening element / part" is read in context of the claims, a person of ordinary skill would have understood the term to mean a part(s) / element(s) that provides the capability for mounting (or fastening) one component to another component or components. *See Phillips*, 415 F.3d at 1313 (holding "the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the particular claim in which the disputed term appears"). As is evident from the claim language, the fastening element located at the rear surface of the first frame provides the capability for the backlight unit to be fixed to the housing, which provides the capability for the flat panel display device to be <u>mounted</u> to the housing. (*See e.g.*, J.A. at A, the

23

'641 Patent, Claim 35 at 10:3-6, Claim 47 at 10:57-61, Claim 55 at 12:7-9, and 56 at 12:16-9;

J.A. at B, the '718 Patent, Claim 33 at 12:25-8.)

> **b.     Defendants' Construction Violates The Doctrine Of Claim Differentiation**

Defendants' proposed construction of "fastening element / part" is "[f]astening holes together with the material defining the hole pegs, screws, hooks, bolts, ribs, nails, adhesive tape or other similar fasteners including a fastener with a compressible head."  Such a construction is improper, however, because it violates the doctrine of claim differentiation, which provides that because each claim is presumed to have a different scope, it is presumptively unreasonable to construe one claim so as to render another claim superfluous.  *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1162 (Fed. Cir. 1994).  The <u>presumption that it is unreasonable</u> to construe one claim so as to render another claim superfluous (doctrine of claim differentiation) is <u>strengthened</u> when there is a dispute over whether "a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims."  *Intermatic Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1364 (Fed. Cir. 2001), *vacated on other grounds*, 537 U.S. 1016 (2002).

Importantly, this "strengthened presumption" necessitates the rejection of Defendants' proposed construction.  For example, Defendants proposed construction of "fastening element / part" includes *inter alia* "[f]astening holes together with the material defining the hole pegs, screws, hooks, bolts, ribs, nails . . . ."  But the limitation: i) "fastening hole" is the only limitation found in dependent Claim 34 of the '718 Patent and dependent Claim 36 of the '641 Patent, which recite: "wherein the fastening element comprises a fastening hole"; ii) "compressible head" is the only limitation found in dependent Claim 37 of the '718 Patent, which recites: "wherein the fastening element comprises a compressible head"; iii) "hook" is the only limitation

24

found in dependent Claim 38 of the '718 Patent, which recites: "wherein the fastening element comprises a hook"; iv) "screw" is found in dependent Claim 5 of the '718 Patent, and the limitation "bolt" is found in Claim 41 of the '718 Patent; and v) "peg" is found in dependent Claim 45 of the '641 patent, which recites; "wherein the protruding portion includes a peg having a fastening hole."  Therefore, in accordance with the doctrine of claim differentiation, the term "fastening element / part" is not limited to each of the above terms, alone or in combination.

> **6.**  **Plaintiff's Proposed Construction Of "fastening hole" Is Consistent With The Common And Ordinary Meaning And Is Supported By The Intrinsic Evidence**

Plaintiff's proposed construction of the disputed term "fastening hole" is "[a]n opening, together with the material defining the opening, that provides one component with the capability of being mounted to another component(s)."  Because all of the intrinsic evidence supports this ordinary meaning, Plaintiff's construction is the only proper one before this Court.

> **a.**  **Plaintiff's Construction Is Consistent With The Common And Ordinary Meaning Of The Disputed Term**

Plaintiff's construction is proper because it conforms to the meaning a person of ordinary skill in the art would attribute to the disputed term "fastening hole" after reading it in the context of the particular claim in which it appears.  *See Phillips*, 415 F.3d at 1313.  For example, independent Claim 35 of the '641 Patent recites "the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame."  Then dependent Claim 36 recites the disputed term as "wherein the fastening part includes a fastening hole."  Thus, the context of the claim in which the disputed term appears is as follows: "the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the <u>fastening hole</u> at the rear surface of the first frame."

Taking each word of the disputed term in turn, and in context with the claim language, the common and ordinary meaning of a "hole" is an opening, together with the material defining the opening. This is fully supported by the dictionary definition which states that a hole is "an opening or perforation: gap." (Ex. LPL5, American Heritage Dictionary, 400 (3d ed. 1994).) In regard to the word "fastening," the parties agreed in the Revised Joint Claim Construction Statement that it means "attaching firmly or fixing securely so as to be supported." This meaning of "fastening" is consistent with Plaintiffs construction when read in the context of the claim language because the word "fastening" modifies the word "hole." Thus, it is clear that the "hole" recited in the claims is not simply <u>any</u> hole. Rather, the fastening hole must "fasten" one component to another.

Accordingly, when the disputed term "fastening hole" is read in context of the claims, a person of ordinary skill would have understood the term to mean that the fastening hole is a portion of the fastening part, which provides the capability for mounting one component (*e.g.*, the first frame of the backlight unit) to another component or components (*e.g.* the housing). (*See also* J.A. at A, the '641 Patent, Claims 36 at 10:8-9 and 54 at 11:17-18 ("fastening part includes a fastening hole"), and Claims 44 at 10:35-36 and 52 at 11:11-12 ("the fastening part includes a protruding portion" . . . "the protruding portion includes a peg having a fastening hole."); J.A. at B, the '718 Patent, Claim 34 at 10:32-33 ("fastening part includes a fastening hole").)

### b.    The Prosecution History Is Consistent With Plaintiff's Proposed Construction

The prosecution history is also consistent with the Plaintiff's proposed construction. Specifically, on April 25, 2001, Plaintiff filed an Amendment which, *inter alia*, asserted that because a hole is technically the absence of something and therefore nothing, the fastening

26

element is not simply a hole, but rather "material defining and including a hole."  (J.A. at G, Amendment, dated 4/25/01, VS5005538.)  Thus, when viewed in context of the claims, the prosecution history supports Plaintiff's proposed construction that the fastening hole provides the capability for one component (*e.g.*, a rear mountable flat panel display device) to be mounted to another component (housing).

### c. Defendants' Construction Is Improper Because It Fails To Consider The Term In Context

Defendants' construction of a fastening hole as "[a]ny hole, including a through-hole . . ." is overly broad, not supported by the intrinsic record, and should be rejected.  As discussed above, the claimed fastening hole is a specific type of hole located on the first frame that provides the capability for one component (*e.g.*, a flat panel display device) to be mounted to another component (*e.g.*, a housing).  Although the specification teaches that a through-hole may be referred to as a "fastening hole," this does not mean that all through holes are necessarily fastening holes.  The fastening holes located on the rear surface of the first frame would clearly not be understood by one of ordinary skill to be a through-hole -- primarily because that "hole" is described in the claims as a <u>fastening</u> hole.

In fact, the specification only describes a through-hole as a fastening hole with respect to the through-holes formed on the display case (J.A. at A, the '641 Patent at 4:50-5) and hinge arm (*Id.* at 5:52-7), not as a fastening part on the rear surface of the first frame, as recited in the claim language.  Because a through-hole lacks any "fastening" ability (note that the Defendants agreed to construe "fastening" as meaning "attaching firmly or fixing securely so as to be supported"), a through-hole cannot be a fastening hole, and Defendants' construction fails accordingly.

27

**7.     Plaintiff's Construction Of "first frame" Is Consistent With The Common And Ordinary Meaning And Is Consistent With The Intrinsic Evidence**

Plaintiff's proposed construction of the disputed term "first frame" is "[a] structure enclosed by the housing for firmly supporting the flat display panel."  Because Plaintiff's construction is consistent with the common and ordinary meaning of "first frame" when read in context of the claims at issue, Plaintiff's construction should be adopted.

**a.     Plaintiff's Construction Of "first frame" Is Consistent With The Common And Ordinary Meaning Of That Term**

Plaintiff's construction of "first frame" is proper because it conforms to the meaning a person of ordinary skill in the art would attribute to that disputed term after reading it in the context of the particular claim in which the disputed term appears.  *See Phillips*, 415 F.3d at 1313.  For example, independent Claim 35 of the '641 Patent recites "the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame."  (J.A. at A, 'the '641 Patent, Claim 35 at 10:3-6, Claim 47 at 10:59-61, Claim 55 at 12:7-9, and Claim 56 at 12:15-17; *see also* J.A. at B, the '718 Patent, Claim 33 at 10:24-8).

From reading the disputed term in the context of the claims, a person of ordinary skill in the art would understand that the "first frame" is enclosed by the "housing" to which it is fixed. Moreover, the plain and ordinary meaning of "frame" is "a case or enclosure made for admitting, enclosing, or <u>supporting something</u>."  (Ex. LPL6, Webster's Third New International Dictionary 902 (3d 1993) (emphasis added).)  Thus, when viewed in context with the claim language in which it appears, the "first frame" <u>supports</u> the flat panel display device.  Thus, the common and ordinary meaning of the disputed term "first frame" is consistent with Plaintiff's construction of "a structure enclosed by the housing for firmly supporting the flat display panel."

28

Plaintiff's construction is further supported by the specification of the Patents-in-Suit. For example, the specification expressly recites:  "[a]lthough FIG. 4C shows the first frame 14g as part of the backlight unit 14, the first frame 14g can act as the supporting frame 16."  (J.A. at A, the '641 Patent at 4:23-25).  Thus, consistent with its ordinary meaning, the specification teaches that the first frame <u>supports</u> the flat display panel.  Moreover, Figure 14 (which is Fig. 10 in the Patents-in-Suit) shown below,



Figure 14

discloses: i) that the first frame (colored green) is enclosed by the housing (colored purple); and ii) that the first frame (colored green) supports the flat display panel (colored blue) via the fastening elements (colored red).

**b.    Defendants' Construction of "first frame" Improperly Imports Limitations From The Specification**

In contrast to Plaintiff's construction, which is supported by the common and ordinary meaning of the terms and by the intrinsic evidence, Defendants' proposed constructions of "first frame" are belied by the intrinsic record.  Tellingly, Defendants ViewSonic and Tatung could not reach agreement among themselves as to the definition of "first frame."  Defendant ViewSonic's construction impermissibly adds structural limitations to this claim by requiring that the first

29

frame and the second frame " sandwich[es] and assemble[s] the layers along the edges to form the device." There is no support in the intrinsic record for this structural limitation. Moreover, both Defendants improperly require without support that the flat panel display device have "layers." Accordingly, Defendant's proposed constructions should be rejected.

> **8.     Plaintiff's Construction Of "display case/case" Is Consistent With The Intrinsic Evidence**

Plaintiff proposes that the disputed term "display case / case" be construed as "[a] rear housing," which is consistent with the claim language and the context in which this limitation appears. For example, all of the figures of the '718 Patent show the display case as <u>a portion</u> of the housing that is positioned at the rear of the flat panel display device. (J.A. at B, Figs. 5-16; *see also Vas-Cath Inc.*, 935 F.2d at 1565 (finding "under proper circumstances, drawings alone may provide a 'written description' of an invention as required by § 112").) Thus, the specification makes it abundantly clear that the display case / case is the rear housing. Nothing in the prosecution history compels deviation from Plaintiff's definition of display case/case.

Although the parties' proposed constructions are similar, Defendants' proposed construction: "[t]he portions of the housing that enclose the flat panel display device," broadens the disputed term "display case" to any portion (or portions) of the housing that encloses the display device. Defendants' broadening language renders their proposed construction inconsistent with the intrinsic record. For example, the specification of the '718 Patent describes the display case 21 as a (second) <u>portion</u> of the housing. (J.A. at B, the '718 Patent at 6:12-15, Figs. 5 and 6). Defendants' proposed limitations are also improper because they limit the scope of the term to a preferred embodiment.

> **9.     The Disputed Term "capable of" Is Only Being Briefed Because Defendants Refused To Agree To Its Commonly Understood Meaning**

This Court is forced to construe the common term "capable of" because Defendants

ViewSonic and Tatung refused to stipulate to its plain and ordinary meaning of "having the ability." The context of the disputed term as it appears in the claims makes clear that one of ordinary skill would understand "capable of" to mean (as proposed by Plaintiff): "having the ability." *See RF Del., Inc. v. Pac. Keystone Techs., Inc*., 326 F.3d 1255, 1263-64 (Fed. Cir. 2003) (finding the usage of the disputed claim terms in the context of the claims as a whole also informs the proper construction of the terms). For example, Claim 35 of the '641 Patent recites: "A rear mountable flat panel display device <u>capable of</u> being mounted to a data processing device . . . wherein . . . the first frame of the backlight unit <u>capable of</u> being fixed to a housing . . . ." (J.A. at A, 'the '641 Patent, claim 35 at 9:62-3, 10:3-4; *see also* Claim 47 at 10:45-6, 10:59-60, Claim 55 at 12:7-8 and Claim 56 at 12:15-16 of the '641 Patent; *see also* J.A. at B, the '718 Patent, Claim 33 at 10:20-1.)

Plaintiff's construction is confirmed by the dictionary definition of "capable," which means: "1. Having ability; competent. 2. Having the potential." (*See* Ex. LPL7, American Heritage Dictionary 130 (3d ed. 1994).) As this Court has held previously, it is proper to rely on a dictionary definition in construing a disputed term when that term has an ordinary and non-technical meaning. S*ee Safas Corp. v. Etura Premier, L.L.C*., 293 F. Supp. 2d 436, 440 (D. Del. 2003) (Jordan, J.).

Accordingly, the phrases "capable of being fixed" and "capable of being mounted" should both be construed as "[a]n ability to be attached firmly or fixed securely so as to be supported." This meaning is supported by not only the intrinsic record, but by the fact that the parties stipulated to the construction of the terms "fixed" and "mounted." Nothing in the prosecution history necessitates a deviation from Plaintiff's proposed definition.

**10.    Plaintiff's Construction Of "backlight unit" Is Consistent With Its Common And Ordinary Meaning When Read In The Context Of The Claims At Issue**

Plaintiff's proposed construction of the disputed term "backlight unit" is "[a]n assembly that includes at least a backlight."  Plaintiff's proposed construction conforms to the disputed terms common and ordinary meaning when read in the context of the claims, and therefore should be adopted.

**a.    Plaintiff's Construction Is Consistent With The Common And Ordinary Meaning Of The Disputed Term "backlight unit" And Is Fully Supported By The Intrinsic Record**

In accordance with the Federal Circuit's mandate, Plaintiff's proposed construction is consistent with the meaning derived from the language of the claims.  *See Vitronics Corp.*, 90 F.3d at 1582 ("we look to the words of the claims themselves . . . to define the scope of the patented invention"); *see also Phillips*, 415 F.3d at 1314 (finding the context in which a term is used in the claim at issue can be highly instructive).  Specifically, the claim language makes clear that the "backlight <u>unit</u>" consists of <u>at least</u> the backlight.  For example, Claim 35 of the '641 Patent recites in relevant part "a backlight unit including a first frame . . . ."  Thus, the term "backlight unit" should not be construed to include a first frame because it would create redundancy in the claims.  *See Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

Plaintiff's construction of "backlight unit" as "an assembly that includes at least a backlight" is consistent with the plain and ordinary meaning of the terms "backlight" (*i.e.*, a light from the back) and "unit" (assembly), taken together.  If any doubt remains as to the proper construction, the dictionary definition of "unit" conforms with Plaintiff's proposed construction: a "unit" is an "an <u>assembly</u> or device capable of independent operation . . . ."  (Ex. LPL8, McGraw-Hill Dictionary of Engineering 2101 (5th ed. 1997) (emphasis added).)  The term

32

backlight (*i.e.*, a light from the back) simply modifies "unit," and thus the term "backlight unit" is simply an assembly that includes at least a backlight.

### b. Defendants' Constructions Improperly Import Unnecessary Limitations From The Specification

As the Federal Circuit cautioned in *Innova/Pure Water*, 381 F.3d at 1117, "even where a patent describes only a single embodiment, claims will not be 'read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction"'" (citation omitted). Defendant ViewSonic's proposed construction includes "at least a reflector, a light guide film, a diffuser or protecting film, a prism sheet . . . ." By including these limitations, ViewSonic has "demonstrated a clear intention to limit the claim scope" to a preferred embodiment, as shown in Fig. 4C of the '641 Patent. (*See* Figure 15 herein at page 38.)

It is well established that a more narrow construction than the ordinary meaning (and in the case of Defendants' construction, a more narrow structure), is appropriate <u>only</u> where the evidence intrinsic to the patent includes an express "disavowal." *See, e.g., NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1308-09 (Fed. Cir. 2005). Thus, mere citation to a preferred embodiment is insufficient to effect a disavowal of claim scope. *See CCS Fitness*, 288 F.3d at 1366 (finding the "'heavy presumption' that a claim term carries its ordinary meaning" may be overcome, but it cannot be done "simply by pointing to the preferred embodiment . . . in the specification or prosecution history"). Moreover, Defendant ViewSonic's construction violates the doctrine of claim differentiation, which mandates that this term (recited in independent Claim 35 of the '641 Patent) should not be construed to include the identical limitations (*e.g.*, "light guide film", "diffuser or protecting film", "prism sheet", and "first frame") found in Claims 40 and 41, which are dependent there from. *See Intel Corp. v. Broadcom Corp.*, 172 F. Supp. 2d

33

478, 496 (D. Del. 2001) (holding that "[i]n interpreting claims, it is improper for courts to read into an independent claim a limitation that is explicitly set forth in another [dependent] claim").

Defendant Tatung's construction of "[l]ayers of an LCD module from the first (rear) frame to the back of the LCD panel" improperly imports a limitation that is nowhere in the Patents-in-Suit, let alone the claims. For example, Tatung improperly seeks to include the term "LCD module" as part of the definition, yet neither the specification nor the claims disclose anything about an "LCD module." Moreover, as with Defendant ViewSonic's construction, Tatung's construction improperly limits the scope of the term to a preferred embodiment.

### 11.    Plaintiff's Proposed Construction Of "flat panel display device" Is Clearly Supported By The Intrinsic Evidence

Plaintiff proposes that the term "flat panel display device" [4] be construed to mean "[a]n apparatus having at least a flat display panel, and supporting frame(s)." As explained below, all of the intrinsic sources of claim construction support this meaning, and the term should be so construed.

### a.    The Intrinsic Evidence Clearly Supports Plaintiff's Proposed Construction

Even a cursory review of the disputed term "flat panel display device" in context with the relevant claim language evidences that Plaintiff's construction is consistent with the meaning derived from the language of the claims. *See Vitronics Corp.*, 90 F.3d at 1582 (instructing courts to "look to the words of the claims themselves . . . to define the scope of the patented invention"). The usage of the disputed claim terms in the context of the claims as a whole also

---

[4] Independent Claims 39 and 40 of the '718 Patent include the term "liquid crystal display (LCD) device. (J.A. at. B, the '718 Patent, Claim 39 at 10:43-4, and Claim 40 at 10:59-9.) An LCD device is a species of the genus flat panel display device; therefore, Plaintiff's propose that the disputed term "liquid crystal display (LCD) device" be construed to mean "an apparatus having at least a liquid crystal display panel and supporting frame(s)" for the same reasons applied to Plaintiff's construction of "flat panel display device."

informs the proper construction of the terms. S*ee RF Del., Inc.*, 326 F.3d at 1263-64.  Here, the

language of the asserted claims necessitates that the phrase "flat panel display device" be

construed to mean an apparatus having at least a flat display panel and supporting frame(s).  For

example, Claim 56 of the '641 Patent recites: "[a] rear mountable flat panel display device

comprising: a first frame . . . ; a second frame; and a flat display panel between the first and

second frames . . . ."  (J.A. at A, the '641 Patent, Claim 56 at 12:9-14; *see also* J.A. at A, the '641

Patent, Claim 47 at 10:45-61, 55 at 12:1-8 and Claim 56 at 12:9-18; J.A. at B, the '718 Patent,

Claim 33 at 10:20-32.)  Importantly, Claim 56 does not recite the "backlight unit" limitation.

Therefore, the term "flat panel display device" cannot be construed to include a backlight unit.

Similarly, independent Claims 35, 47 and 55 of the '641 Patent and Claim 33 of the '718 Patent

require that the flat panel display device comprise a "first frame," a "second frame," and a "flat

display panel."

Furthermore, the specification clearly supports this ordinary meaning.  Indeed, the

specification discloses that either the first frame and/or the second frame can act as supporting

frame(s) to support the flat display panel.  (*See* J.A. at A, the '641 Patent at 4:25-6) ("the first

frame 14g can act as the supporting frame 16"), and 4:22 ("a second frame or supporting frame

16").)  Moreover, the specification makes clear that the "[f]lat panel display device includes

liquid crystal display (LCD) devices, plasma display panels (PDP), and field emission displays

(FED)".  (J.A. at A, the '641 Patent at 1:16-18).  Each of these types of flat panel display

technologies employs a related type of flat display panel.

### b. Defendants' Constructions Fail Because They Directly Contradict The Weight Of The Intrinsic Evidence

In direct contrast to Plaintiff's clear and simple construction, Defendants' proposed

constructions are again belied by the intrinsic record.  For example, Defendant ViewSonic's

construction of "[a] stack of components, including a flat display panel, assembled as a device along the edges by the first and second frames" impermissibly adds structural limitations to this disputed term by requiring that "the stack of components be assembled as a device along the edges by the first and second frames." There is no support for this structural limitation. Moreover, the limitation "device" is unclear and ambiguous since it is not found anywhere in the claims or specification.

Defendant Tatung's construction of "[a] stack or sandwich of layers, including a flat display panel, fixed together by at least a first frame to assemble a module" improperly imports vague and ambiguous limitations that are nowhere in the Patents-in-Suit, let alone the claims. For example, Tatung improperly seeks to include the term "LCD module" as part of its proposed construction, yet neither the claims nor the specification teach anything about an "LCD module."

### 12. The Entire Intrinsic Record Supports Plaintiff's Proposed Construction Of "second frame"

Plaintiff proposes that this Court construe the disputed term "second frame" to be "a structure disposed in relation to the first frame such that the flat display panel is between the first frame and the structure," for the simple reason that this construction conforms with all of the intrinsic evidence.

### a. All Of The Intrinsic Evidence Clearly Supports Plaintiff's Construction

The context in which the disputed term "second frame" is used in the asserted claims is highly instructive to this Court's analysis. *See Vitronics Corp.,* 90 F.3d at 1582; *see also ACTV, Inc.*, 346 F.3d at 1088 (finding "the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). For example, Claim 35 of the '641 Patent recites "wherein the flat display panel is between the first frame and the second frame . . . ." (J.A. at A, the '641 Patent, Claim 35 at 10:2-3.) As evidenced in Claim

35, the flat display panel is located between the first frame and the second frame. Moreover, as shown below in both Figure 15 and Figure 16, the second



Figure 15                                    Figure 16

frame (colored yellow) is disposed in relation to the first frame (colored green) such that the blue colored flat display panel is between the first frame and the second frame. Accordingly, the intrinsic evidence supports Plaintiff's construction that the "second frame" is a structure disposed in relation to the first frame such that the flat display panel is between the first frame and that structure.

> **b.    Defendants' Proposed Constructions Improperly Limit The Claims To A Single Embodiment**

Both Defendants ViewSonic and Tatung's constructions improperly attempt to limit the disputed term "second frame" to a single embodiment of an LCD device as shown in FIG. 4C of the Patents-in-Suit. Defendants' constructions, however, are contrary to recent Federal Circuit direction that courts should "not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes . . . only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the

37

claims and the embodiments in the specification to be strictly coextensive.'"  *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (quoting *Phillips*, 415 F.3d at 1323).

Indeed, although the specification of the Patents-in-Suit describes Fig. 4C as an "LCD device" (J.A. at A, the '641 Patent at 4:16-18), certain of the claims at issue are much broader. For example, Claim 55 of the '641 Patent recites "A rear mountable flat panel display device comprising: a first frame having a fastening part at a rear surface of the first frame; a second frame; and a flat display panel between the first and second frames . . ." and never recites a backlight unit.  (J.A. at A, the '641 Patent, Claim 55 at 12:1-5.)  Because the specification teaches that a "[f]lat panel display device includes liquid crystal display devices (LCD) which are being widely used, plasma display panels (PDP), and field emission displays (FED)," (*See* J.A. at A, the '641 Patent at 1:16-18), Defendants' constructions lack support for limiting the disputed term "second frame" to an LCD device.

### 13. The Remaining Terms Are Easily Considered According To Their Ordinary Meaning

During the exchange of proposed constructions among the parties, there were various constructions proposed for the following terms: "stepped hole," "peg," and "protruding portion." In an effort to streamline the claim construction process, Plaintiff was willing to accept, with perhaps minor variations, the constructions proposed by the Defendants.  Defendants, however, refused to accept their own proposals as agreed-upon constructions, and thus these terms are now before this Court.  Because of their simplicity, Plaintiff has kept the respective discussion short.

#### a.    "stepped hole"

Plaintiff proposes that the disputed term "stepped hole" be construed as "[a] hole where the fastening surface is on a different plane than the component being secured, or a countersunk

hole." This construction is not only consistent with the intrinsic record, but includes both of Defendant's constructions.

### b.    "peg"

Plaintiff proposes that the term "peg" be construed as "[a] raised portion of a fastening element that extends rearward away from the flat display panel." This construction should be adopted because it is consistent with the claim language ("away from the flat display panel", J.A. at A, Claim 45 in view of Claim 44), unlike Defendant Tatung's construction of ("rearward from the display"). Moreover, Defendant ViewSonic's construction "boss" is vague and ambiguous.

### c.    "protruding portion"

Plaintiff proposes that the term "protruding portion" be construed as "[a] projected aspect of the fastening part(s)." As the following definition evidences "protruding" means "to push or jut outward; project" (Ex. LPL9, American Heritage Dictionary 665 (3d ed. 1994)), thus evidencing the accuracy of Plaintiff's construction.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff submits that the Court construe the above disputed claim terms in accordance with its proposed constructions.


December 22, 2006                              THE BAYARD FIRM


                                              /s/ Richard D. Kirk (rk0922)
                                              Richard D. Kirk
                                              Ashley B. Stitzer
                                              222 Delaware Avenue, Suite 900
                                              P.O. Box 25130
                                              Wilmington, DE  19899-5130
                                              (302) 655-5000
                                              Counsel for Plaintiff,
                                              LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

40

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on December 22, 2006, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

| | |
|---|---|
| Jeffrey B Bove, Esq. | Frederick L. Cottrell, III, Esq. |
| Jaclyn M. Mason, Esq. | Anne Shea Gaza, Esq. |
| Connolly Bove Lodge & Hutz LLP | Richards, Layton & Finger |
| 1007 North Orange Street | One Rodney Square |
| P.O. Box 2207 | P.O. Box 551 |
| Wilmington, Delaware 19899-2207 | Wilmington, DE 19899 |

The undersigned counsel further certifies that copies of the foregoing document

were sent by hand to the above counsel and by email and will be sent by first class mail

to the following non-registered participants:

| | |
|---|---|
| Scott R. Miller, Esq. | Valerie Ho, Esq. |
| Connolly Bove Lodge & Hutz LLP | Mark H. Krietzman, Esq. |
| 355 South Grand Avenue | Frank C. Merideth, Jr., Esq. |
| Suite 3150 | Greenberg Traurig LLP |
| Los Angeles, CA 90071 | 2450 Colorado Avenue, Suite 400E |
| | Santa Monica, CA 90404 |

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk