IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TATUNG CO.; <br> TATUNG COMPANY OF AMERICA, INC.; AND <br> VIEWSONIC CORPORATION <br><br> Defendants. | CIVIL ACTION NO. 04-343 |

## DECLARATION OF VALERIE HO

I, Valerie Ho, declare:

1. I am an attorney at Greenberg Traurig LLP, counsel for Tatung Company and Tatung Company of America, Inc. ("Tatung") in the present case. I am admitted to practice before the Courts of the State of California and am admitted *pro hac vice* in connection with this case. I have personal knowledge of the matters set forth below, and if called as a witness, could and would competently testify regarding such matters. I make this Declaration in support of Tatung's Oppositions to Plaintiff LG. Philips LCD Co., Ltd.'s ("LPL") Motion to Compel Technical and Mounting-Related Discovery, Motion to Compel Discovery Regarding Advice of Counsel, and Motion to Compel Discovery Regarding Indirect Infringement and Damages.

2. With respect to LPL's claim that the Tatung Defendants did not identify all responsive products in response to LPL's Interrogatories 2 and 3, the truth is that the Tatung Defendants have identified hundreds of products in their interrogatory responses.

Attached as Exhibits A - C are true and correct copies of the Tatung Defendants' Responses to LPL's Interrogatories, including Nos. 2 and 3. LPL recently informed the Tatung Defendants that there were a few products that were not included in the interrogatory responses. We agreed to investigate and to supplement the responses to the extent that the products identified by LPL are responsive.

    3.    On December 14 and 18, 2006, my colleague Steve Hassid and I met and conferred with Cormac Connor, counsel for LPL regarding the issues raised in LPL's Motions. During the parties' meet and confers, Mr. Connor clarified LPL's request for an identification of products that have been "marketed or sold under a trademark or brand name" belonging to Tatung, and based on this clarification, we agreed to supplement the interrogatory responses.

    4.    LPL repeatedly was told during the parties' December 2006 meet and confer that the Tatung Defendants have produced more documents that those that are "representative" of mounting systems used for their products. They have produced technical documents for numerous products. These documents provide sufficient information to allow LPL to "i) determine the structural components and assembly of Tatung's visual display products (including, for example, the screw hole locations used in mounting); and ii) determine how the LCD module is attached, mounted, and/or fixed . . . ." In addition, we agreed that if the Tatung Defendants have exploded drawings and assembly instructions for the products at issue, we will supplement the productions to include both types of documents to the extent those documents have not been produced already. We also explained that the assembly and mounting features of products within a product series are the same and may be covered by the same technical documents (the

differences between the products within a series are minor and are not mounting related, e.g., one product may include a touch screen component while another does not). We agreed to provide LPL with a list identifying which groups of products have mounting systems that are covered by the technical documents produced.

5. During the meet and confer, Mr. Connor insisted that the Tatung Defendants produce every single technical-related document for the hundreds of products identified even though LPL thus far has accused only three products of infringement. We explained that while we are willing to produce, pursuant to the parties' previous agreement, technical documents that are sufficient to show the manner in which the flat panel display module is mounted in the products - documents that would allow LPL to determine which products allegedly infringe the patents-in-suit - it was unreasonable and extremely burdensome for LPL to demand every single piece of paper or electronic document that may be remotely considered to be "technical related." Producing every technical-related document potentially would require the Tatung Defendants to search the files of hundreds of employees. We assured LPL that once it has narrowed the list of products at issue by identifying all of the accused products (based on the drawings and assembly instructions provided by the Tatung Defendants), we would be willing to produce additional information regarding the accused products.

6. We repeatedly have informed LPL that the Tatung Defendants have not yet decided whether to assert the advice of counsel defense. At the parties' December 2006 meet and confer, LPL stated that it needed this information because of the upcoming March 2007 fact discovery cut-off. We proposed that the parties agree to a date by which the Tatung Defendants will inform LPL as to whether it is relying on the

advice of counsel and agree to extend the fact discovery cutoff relating to advice of counsel issues. Mr. Connor stated that LPL was willing to consider this proposal.

7. During the parties' December 2006 meet and confers, we also agreed to produce summary sales data, including quarterly or monthly quantity and average price for each identified product that is destined for North America. We also agreed to supplement numerous interrogatories and document requests to include information pertaining to the two additional Tatung products recently accused by LPL. Specifically, the Tatung Defendants agreed to supplement Interrogatories Nos. 1, 8, 9, 10, 11, 12 and Document Requests Nos. 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 25, 26, 31, 32, 33, 34, 35, 38, 41, 48, 51, 52, 55, 57, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 73, 74, 75, 79, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98 and 99.

8. We repeatedly asked LPL what specific technical information it claims it still needs it order to develop its infringement allegations with respect to all of the identified products. LPL merely responded that it is entitled to every single Tatung document.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of January 2007 in Santa Monica, California.

_____
Valerie Ho