# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,   )
                                )
        Plaintiffs,             )  C.A. No. 04-343(JJF)
                                )
v.                              )
                                )
TATUNG CO., TATUNG COMPANY OF   )
AMERICA, INC., and VIEWSONIC    )
CORPORATION,                    )
                                )
        Defendants.             )

        Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Thursday, December 28, 2006, beginning at
approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

         THE BAYARD FIRM
         RICHARD D. KIRK, ESQ.
            222 Delaware Avenue, Suite 900
            Wilmington, Delaware  19899
            for Plaintiffs




                    CORBETT & WILCOX
           Registered Professional Reporters
       230 North Market Street    Wilmington, DE 19899
                    (302) 571-0510
                www.corbettreporting.com
          Corbett & Wilcox is not affiliated
        with Wilcox & Fetzer, Court Reporters

Page 118

1  MR. CHRISTENSON: All right.
2  SPECIAL MASTER POPPITI: You know,
3  Mr. Miller is saying --
4  MR. MILLER: Your Honor, I think we
5  start at 82 on these.
6  SPECIAL MASTER POPPITI: Just give me a
7  second.
8  MR. CHRISTENSON: Your Honor, I believe
9  that you could turn to Exhibit 4 to LPL's opposition, and
10 that should set forth the requests and the responses.
11 SPECIAL MASTER POPPITI: It does. And
12 which one? 82?
13 MR. MILLER: 82, that's where we start.
14 SPECIAL MASTER POPPITI: Mr. Miller,
15 it's your request, so have at it.
16 MR. MILLER: And this seeks information
17 that our bills and materials for an LCD module made by
18 LPL from the date prior -- one year prior to the priority
19 date to understand what these components are and how --
20 whether or not they were -- what functions they have.
21 You will see there is bill of materials requests for
22 different components.
23 SPECIAL MASTER POPPITI: I see that.
24 MR. MILLER: So that we can ascertain,

Page 119

1  because the patent merely describes these components as
2  part of a first embodiment of the invention, and what we
3  need to do is to be able to, very clearly, understand and
4  know, to be able to point out to the Court and the jury,
5  what's the difference between the structure described in
6  the first embodiment of the invention and what is truly
7  the prior art? And, so, we felt these bill of materials
8  was the least intrusive kind of thing we could ask for
9  that would relate to these products as opposed to asking
10 for every document that shows every component of the
11 module.
12 SPECIAL MASTER POPPITI: Well, you are
13 certainly not asking for every document that shows every
14 component of the module. You are asking for something
15 more narrow than that. It's -- you made an effort to
16 restrict the request and reduce the universe.
17 Mr. Christenson.
18 MR. MILLER: Then if you go down to,
19 like, No. 84, for example, we ask for documents
20 sufficient to identify --
21 MR. CHRISTENSON: Are we going to go in
22 order, or are some of these now off the table?
23 SPECIAL MASTER POPPITI: No, they are
24 not off the table.

Page 120

1  MR. CHRISTENSON: 82 and 83 are bill of
2  material requests.
3  SPECIAL MASTER POPPITI: Right.
4  MR. CHRISTENSON: May I respond?
5  SPECIAL MASTER POPPITI: Yes.
6  MR. CHRISTENSON: On No. 82, if we are
7  talking prior art, the priority date in this case would
8  be October 1998. So, you go -- that's the conception
9  date. If you go back the year before that, it's October
10 1997. So, they would need to show that something
11 happened to invalidate the patent, they would have to
12 show something related to that time period of before
13 October of 1997, and, yet, the unrestricted time period
14 for the request is January 1, 1997, to the present.
15 SPECIAL MASTER POPPITI: Mr. Miller.
16 MR. MILLER: That's certainly a
17 fundamental issue that we have that relates, I think,
18 generally to these requests.
19 SPECIAL MASTER POPPITI: Well, let's
20 talk about the date, then.
21 MR. MILLER: We picked January 1 because
22 it was a date that was, you know, several months prior to
23 the one year prior to the foreign priority date because
24 we are trying to ascertain what is the knowledge of one

Page 121

1  ordinary skilled in the art. And we are happy to agree
2  to some reasonable cutoff date. If -- if LPL believes
3  that we should have a cutoff date, you know, of the
4  patent issuance date, or we can pick some other date that
5  would make sense, you know, we are happy to do that. But
6  that, of course, has never been proffered.
7  SPECIAL MASTER POPPITI: Because
8  Mr. Christenson wanted to focus on the date, let's do
9  that, and why don't you propose or discuss an appropriate
10 date expecting that I am going to -- I am going to order
11 the production. Or perhaps by virtue of agreeing on the
12 date, you will agree to the production.
13 MR. CHRISTENSON: I think that would be
14 -- we may be able to resolve some of these issues. I
15 don't expect we will resolve all the issues, Your Honor.
16 SPECIAL MASTER POPPITI: I understand
17 that.
18 MR. CHRISTENSON: We can resolve the
19 date issue, but I think that would make substantial
20 progress.
21 SPECIAL MASTER POPPITI: Let's take the
22 time to -- do you want to take the time to do that now
23 because it makes sense? Mr. Miller?
24 MR. MILLER: The patent issuance date

Page 122

1  was December 22, 2002, was it, Cass?
2           MR. CHRISTENSON: Yeah. I think that's
3  -- I don't think that has any bearing on prior art. For
4  art to be prior and to be evidence that would support
5  invalidation, we would have to be talking about something
6  back in the time period of the critical date. So, again,
7  that's going back to October '97.
8           MR. MILLER: Well, there is a question
9  of the filing date in the U.S. was October of '98, so, I
10 mean, I am happy to go to -- I just tried to pick a date
11 that would have some significance in the case.
12          MR. CHRISTENSON: The end of 1998, is
13 that appropriate?
14          SPECIAL MASTER POPPITI: What did you
15 just say, December of 1998?
16          MR. CHRISTENSON: Yes.
17          SPECIAL MASTER POPPITI: Mr. Miller?
18          MR. MILLER: That's fine, Your Honor.
19          SPECIAL MASTER POPPITI: And that would
20 be with respect to request for production No. 82 and 83.
21          MR. CHRISTENSON: I assume that would
22 apply to this set?
23          SPECIAL MASTER POPPITI: The entire set,
24 yes.

Page 123

1  Mr. Miller, is that agreeable?
2           MR. MILLER: Yes.
3           SPECIAL MASTER POPPITI: So, then let me
4  re-ask the question: Your having agreed on the date, may
5  I have your agreement with respect to the production?
6           MR. CHRISTENSON: Your Honor, we will
7  agree to produce, in response to No. 82, subject to that
8  date limitation.
9           SPECIAL MASTER POPPITI: Okay.
10          MR. CHRISTENSON: To the extent there is
11 documents. I have to check on the availability.
12          SPECIAL MASTER POPPITI: Sure. I
13 understand that. And would it make sense to do with, and
14 I realize we are only on 82, but would it make sense to
15 do with LPL what we have done with Viewsonic and focus on
16 a date for that production?
17          MR. CHRISTENSON: I think that's only
18 fair, Your Honor, and I think what we would -- what we
19 should try to do is to try to meet the date that
20 Viewsonic has selected for its production, supplemental
21 productions.
22          SPECIAL MASTER POPPITI: That would be
23 the 19th?
24          MR. CHRISTENSON: Was that the 19th, did

Page 124

1  you say?
2           SPECIAL MASTER POPPITI: Yes. Wasn't
3  it?
4           MR. CHRISTENSON: Right.
5           MR. MILLER: Yes, January 19th.
6           SPECIAL MASTER POPPITI: January 19th is
7  a Friday.
8           MR. CHRISTENSON: We will put that date
9  down and respond by that date, and if there is some
10 extenuating circumstances, of which I am not aware, I am
11 confident we can work that out among counsel. We will
12 expect to investigate and produce the documents by
13 January 19th, Your Honor.
14          MR. MILLER: Cass, let me ask one
15 question, if I might, please.
16          SPECIAL MASTER POPPITI: Please do.
17          MR. MILLER: When was -- LPL is a
18 continuation of the business of LG Electronics when it
19 did a joint venture with Phillips Electronics. Are we at
20 a date and point here where you are going to take the
21 position that LPL doesn't have any documents because it
22 was LG Electronics' documents if we pick a December 1998
23 date?
24          MR. CHRISTENSON: I am not picking any

Page 125

1  date with any intent of avoiding discovery. I don't know
2  what the facts are on that, Scott. I just don't know the
3  answer to that. But, you know, if the company has
4  documents that are responsive, then we have agreed to
5  produce those documents.
6           MR. MILLER: I guess my only point is
7  that if there are documents -- I guess if you don't have
8  any documents that relate to products that were sold
9  during this time period, and I guess I want to be clear
10 that if you took over the business from LG Electronics
11 and continued to sell products but those sales took place
12 outside the scope of this but they are the same products,
13 I would expect those documents, the technical documents
14 to be produced with regard to that even if you didn't
15 sell them during this time period if the products were
16 the same; do you understand that to be -- is that
17 consistent with your understanding, Cass?
18          MR. CHRISTENSON: My understanding is
19 that we are going to respond to your request 82, which is
20 bills and materials for the modules, and if LPL has those
21 documents, then we will produce those documents.
22          MR. MILLER: Your Honor, I guess -- I
23 don't want to backtrack, but I am very concerned about a
24 December 1998 date as opposed to some date when I know

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, <br><br> Defendants. | Civil Action No. 04-343-JJF |

**PLAINTIFF'S THIRD SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT TATUNG COMPANY'S FIRST SET OF INTERROGATORIES**

Plaintiff LG.Philips LCD Co., Ltd. ("LPL" or "Plaintiff," also referred to in Interrogatories as "LGP"), pursuant to Fed. R. Civ. P. 33, objects and responds as follows to Defendant Tatung Company's ("Tatung") First Set of Interrogatories.

**PRELIMINARY STATEMENT & GENERAL OBJECTIONS**

LPL hereby incorporates its Preliminary Statement and its General Objections from Plaintiff's Objections and Answers to Defendant Tatung Company's First Set of Interrogatories. Those general objections apply to each Interrogatory herein and thus, for convenience, are not repeated after each Interrogatory, and are hereby incorporated into each response.

This set of Objections and Responses incorporates into this single document all of LPL's previously-submitted supplemental objections and responses to Defendant Tatung Company's First Set of Interrogatories as well as any of LPL's previous supplemental responses. Through this set of supplemental objections and responses, LPL supplements its objections and responses to Interrogatory No. 1.

1

### INTERROGATORY NO. 25:

Identify each and every Visual Display Product that is made or sold by LGP, by model number and/or other LGP designation which have a rear mounting hole(s) like those shown in Figures 4A-5 and 8-16 of the Patents-in-Suit.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. LPL further objects to this Interrogatory as calling for legal conclusions. LPL also objects to this Interrogatory as premature and prior to the time for *Markman* definitions or briefing. LPL further objects to this Interrogatory because it is vague and ambiguous, including, for example, with respect to the term "rear mounting hole(s)". LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 26:

Identify each and every Visual Display Product by model number and/or other designation of which LGP is aware, which is or has been marked with any of the Patents-in-Suit and state the date on which each such product was first marked and the patent number(s) with which it was marked.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to

the discovery of admissible evidence. Subject to and without waiving those objections, and based on LPL's current knowledge, LPL states as follows:

LPL is not aware of any products marked with the numbers of the Patents-in-Suit. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

November 10, 2006

                                      THE BAYARD FIRM

                                      /s/ Richard D. Kirk (rk0922)
                                      222 Delaware Avenue, Suite 900
                                      P.O. Box 25130
                                      Wilmington, DE 19899-2306
                                      (302) 655-5000
                                      rkirk@bayardfirm.com
                                      Attorneys for Plaintiff
                                      LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Lora Brzezynski
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

# EXHIBIT 3

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

November 6, 2006

VIA E-MAIL AND U.S. MAIL

Manuel Nelson, Esq.
Connolly Bove Lodge & Hutz LLP
Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles, CA 90071
mnelson@cblh.com

Re: *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;
U.S. District Court Case No. 04-343 JJF

Dear Manuel:

Thank you for your two October 31, 2006 letters. I called you on October 31 to discuss your first letter. I write to respond to your second letter, regarding my telephone call to you.

During our call, you expressed some concern regarding whether LG.Philips LCD Co., Ltd. ("LPL") is withholding documents responsive to ViewSonic's Document Request 113 based on LPL's objections to that request. As we discussed, LPL is not withholding any documents based on its objections to Request 113. LPL maintains its objections and its right to supplement its response, if appropriate, in the future. LPL, however, is not aware of any documents evidencing lost sales that LPL "believes were lost as a result of" ViewSonic's infringement of the Patents-in-Suit. This should, as you say, "finish this particular issue."

LPL understands that, if ViewSonic has any further concerns about the sufficiency of LPL's document production in response to ViewSonic's Document Requests 104-109, or 111-113, then ViewSonic will contact LPL regarding those concerns prior to filing any motion. Doing so is not only, as you suggest, a "courtesy," it is a necessary step. As I informed you when I called you last week, LPL remains willing to discuss any concerns regarding ViewSonic's Requests 104-109 and 111-113. It would be premature for ViewSonic to attempt to litigate a non-existent dispute regarding these Requests. Currently, LPL believes that it has provided more than sufficient responsive information and ViewSonic has not requested any specific additional information. To the extent that ViewSonic seeks any additional discovery, we look forward to discussing such issues with you in an effort to avoid disputes.

Manuel Nelson, Esq.
November 6, 2006
Page 2

      We appreciate your anticipated cooperation.

                                                  Sincerely,

                                                  Cass W. Christenson

CWC:vvk

cc:  Tracy R. Roman, Esq. (via email)
      Scott R. Miller, Esq.  (via email)

DC:50442650.1