# EXHIBIT 5

Hearing

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHILLIPS, L.G., LCD CO., LTD, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 04-343(JJF) |
| | ) | |
| v. | ) | |
| | ) | |
| TATUNG CO., TATUNG COMPANY OF | ) | |
| AMERICA, INC., and VIEWSONIC | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

Hearing of above matter taken pursuant to notice before Renee A. Meyers, Registered Professional Reporter and Notary Public, in the law offices of BLANK ROME, LLP, 1201 North Market Street, Wilmington, Delaware, on Thursday, December 28, 2006, beginning at approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

          THE BAYARD FIRM
          RICHARD D. KIRK, ESQ.
            222 Delaware Avenue, Suite 900
            Wilmington, Delaware  19899
            for Plaintiffs

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street     Wilmington, DE 19899
(302) 571-0510
www.corbettreporting.com
Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

Hearing

2 (Pages 2 to 5)

Page 2

APPEARANCES (Continued):
    MCKENNA, LONG & ALDRIDGE, LLP
    CASS W. CHRISTENSON, ESQ.
    REL S. AMBROZY, ESQ.
    JESSE KOKRDA, ESQ.
    CORMAC CONNOR, ESQ.
    1900 K Street, N.W.
    Washington, D.C. 20006
    for Plaintiffs

    RICHARDS LAYTON & FINGER
    FREDERICK L. COTTRELL, III
    One Rodney Square
    Wilmington, Delaware 19801
    for Defendant Tatung Co.

    GREENBERG TRAURIG LLP
    FRANK MERIDETH, ESQ.
    2450 Colorado Avenue, Suite 400E
    Santa Monica, California 90404
    for Defendant Tatung Company of America, Inc.

    CONNOLLY BOVE LODGE & HUTZ LLP
    JEFFREY B. BOVE, ESQ.
    JACQUELINE MASON, ESQ.
    1007 North Orange Street
    Wilmington, Delaware 19899
    for Defendant Viewsonic Corporation
    BINGHAM McCUTCHEN LLP
    SCOTT R. MILLER, ESQ.
    355 South Grand Avenue
    Los Angeles, California 90071-3106
    for Defendant Viewsonic Corporation

Page 3

1    MR. BOVE: Your Honor, this is Jeff Bove
2  from Connolly Bove representing Viewsonic, along with
3  Jacqueline Mason and my partner Scott Miller from
4  Los Angeles.
5    MR. COTTRELL: And, your Honor, Fred
6  Cottrell at Richards Layton in Wilmington for Tatung, and
7  on the phone from Greenberg Traurig, Frank Merideth.
8    SPECIAL MASTER POPPITI: Next, please.
9    MR. KIRK: Dick Kirk from The Bayard
10  Firm here in Wilmington for the plaintiff LG Phillips LCD
11  Company, Ltd., and with me on the line from Washington,
12  and perhaps elsewhere, from McKenna Long & Aldridge are
13  Cass Christenson, Rel, R-e-l, Ambrozy, Derek Auito, and
14  Jesse Kokrda, K-o-k-r-d-a, and Cormac Connor,
15  C-o-r-m-a-c.
16    SPECIAL MASTER POPPITI: Thank you,
17  Mr. Kirk.
18    Then thank you, counsel, and good
19  morning as we come up shortly to noon.
20    Let's do some housekeeping first, if you
21  will, with respect to today's proceeding.
22    I would propose that, for purposes of
23  making sense of what I expect is going to be a fairly
24  healthy workday with you all, that we go for a period of

Page 4

1  approximately two hours so that we can take a break and
2  make sure that anyone who needs to refresh themselves can
3  do that.  And that break, I would expect a half hour,
4  unless someone suggests that we are going to need more
5  time than a half hour.  So I would be looking to break
6  around 1:30.
7    Does anyone have any problem with that?
8    MR. BOVE: Jeff Bove for Viewsonic.
9  That's fine, your Honor.
10    MR. COTTRELL: Fred Cottrell.  I have
11  another call at 2:00, which won't go very long, so I can
12  just jump back in, hopefully, only a few minutes after
13  our break.
14    SPECIAL MASTER POPPITI: Thank you.
15  That's fine.
16    MR. BOVE: Jeff Bove.  Also, since I
17  have Jacqueline Mason with me, with the Court's
18  permission, once we got started, I was going to request
19  your Honor's permission to be excused.  I am next door
20  and am available, but I will not be arguing today.  Scott
21  Miller will be.
22    SPECIAL MASTER POPPITI: I have no
23  problem with that at all.
24    MR. BOVE: Your Honor, one --

Page 5

1    SPECIAL MASTER POPPITI: Please identify
2  yourselves each time.
3    MR. BOVE: Jeff Bove again.
4    SPECIAL MASTER POPPITI: Thank you,
5  Mr. Bove.
6    MR. BOVE: One other point of
7  housekeeping, and I am sure everyone will want to weigh
8  in on this, particularly your Honor, which is the manner
9  in which the Court would propose to tackle these motions
10  today.
11    Obviously, from Viewsonic's standpoint,
12  we have been thinking about it, and would toss the
13  proposal out for your Honor's consideration, obviously
14  for comment by all on the phone, which is to go, frankly,
15  motion by motion, request by request.
16    As I understand, the Court does have
17  rather extensive written submissions of the parties, and
18  we were thinking, again, obviously, subject to your
19  Honor's views, that perhaps some reasonable closure on
20  oral argument, per discovery requests, might be
21  appropriate in order to give hope of completing the task
22  today.
23    I simply offer that as a suggestion,
24  and, obviously, defer completely to your Honor's view.

Hearing

Page 86

1  happy to raise that with my client, and if there are
2  materials, to make them available.
3        MR. AMBROZY: And just to clarify, we
4  have had this discussion multiple times, Scott, and, as
5  you have told us in the past, all you know is that the
6  monitors show up in a box and that's all you know. We
7  have had this discussion before.
8        But you did parse your sentence to say
9  that monitors sold by Viewsonic. Our point is monitors
10  that Viewsonic ships to a third party, such as Dell or
11  HP, and then make their way into the United States under
12  the Dell label, that's what we are concerned with.
13        SPECIAL MASTER POPPITI: With that fine
14  tuning, I would like some representation as to when you
15  can learn from your clients, Mr. Miller?
16        MR. MILLER: I guess what I would like
17  is, and we have not had this discussion, Rel, about Dell
18  products or HP products or something like that, you
19  obviously have something specific, if you can give that
20  to me, I will attempt to get a response from my client
21  within two weeks.
22        MR. AMBROZY: We will do that.
23        MR. MILLER: Send me something and I
24  will talk to them and we will investigate it and give the

Page 87

1  report back within two weeks of when we get it.
2        MR. AMBROZY: We will work with you.
3        SPECIAL MASTER POPPITI: And what I
4  would like to do is I would simply like to be advised,
5  not with respect to the detail, unless you think it's
6  important for me to have the detail, that you have made
7  the request and that the request has been responded to
8  within two weeks. If I don't need to know the detail,
9  you will know whether or not to share it with me or not
10  to share it with me.
11        MR. MILLER: Your Honor, I guess the,
12  you know, the point I also want to make is I want to make
13  sure that what I get from Mr. Ambrozy, that I can put it
14  into the context of a request for production of
15  documents. If they didn't ask for it, I don't believe I
16  am obligated to produce it.
17        MR. AMBROZY: We all can agree with
18  that.
19        SPECIAL MASTER POPPITI: I certainly
20  understand that. Mr. Ambrozy, do you agree?
21        MR. AMBROZY: Absolutely, Your Honor.
22        SPECIAL MASTER POPPITI: With that, my
23  watch isn't necessarily the best indicator, I have 1:35,
24  about. Let's break until, since I asked you to pull

Page 88

1  together some authority over the lunch break, let's do
2  2:15.
3        (Recess taken.)
4        SPECIAL MASTER POPPITI: Counsel, we are
5  back on record. I did receive an email from Ms. Mason,
6  and that contained, as she suggested, a summary of the
7  cases and attached the cases. And I received -- I don't
8  know whether this came by fax, there is no email cover to
9  it, excerpts from the OEM agreements produced by
10  Viewsonic.
11        MR. KIRK: I did send an email to Your
12  Honor. That was a Word document that was attached to my
13  email with nothing else. We had understood the Court
14  wanted case citations and not argument, so we didn't
15  furnish descriptions or arguments.
16        SPECIAL MASTER POPPITI: And that was a
17  two-page document behind the email; is that correct,
18  Mr. Kirk?
19        MR. KIRK: Yes, your Honor.
20        SPECIAL MASTER POPPITI: Thank you.
21  Let's go back to where we left off with respect to the
22  submittals, and I don't know whether we finished with
23  technical and mounting related discovery.
24        MR. AMBROZY: We did, your Honor.

Page 89

1        SPECIAL MASTER POPPITI: The next would
2  be L.G. Phillips' Motion to Compel Viewsonic Re: Advice
3  of Counsel, Duty of Care. That is by submittal date of
4  9/27, and a response of 10/18.
5        MR. CHRISTENSON: Thank you, Your Honor.
6  I will be directing this application.
7        SPECIAL MASTER POPPITI: Thank you.
8        MR. CHRISTENSON: Your Honor, I think
9  this application presents a fairly focused and narrow
10  issue for you. The background on this application is
11  that one of the allegations of the plaintiff in this case
12  is that the defendants have failed to exercise due care
13  since the time that they learned of the patent in suit,
14  so we are alleging willful infringement which would allow
15  the Court, in its discretion, to award enhanced damages
16  and attorney's fees if proven.
17        As we say in our papers, when a party
18  learns of a patent, a party has a duty, an affirmative
19  duty, to avoid infringing that patent, and, so that is
20  certainly an issue in the case. We are seeking discovery
21  in that issue.
22        There has not been any bifurcation in
23  the case. Viewsonic confirms, in its papers, that it's
24  not seeking to bifurcate discovery. So, effectively,

Hearing

24 (Pages 90 to 93)

Page 90

1  Viewsonic is seeking to stay discovery on the issue of
2  willfulness.
3       However, as you may recall, Your Honor,
4  we have had prior motion practice in which Viewsonic has
5  compelled LPL to provide a supplemental response to an
6  interrogatory propounded by Viewsonic on the issue of
7  willfulness, specifically, LPL was required to supplement
8  its response to interrogatory No. 8 regarding the factual
9  basis for LPL's allegations.
10      So, obviously, we contend that there
11  shouldn't be a one way stay of discovery on willfulness.
12  It's -- it's part of the case. It's the subject of
13  affirmative discovery sought and compelled by Viewsonic,
14  and, likewise, we are entitled to obtain discovery that's
15  directly relevant to the defense.
16      We are seeking to know what, if
17  anything, Viewsonic has done to exercise due care and we
18  are seeking discovery regarding any advice of counsel or
19  legal opinions that Viewsonic is relying on and that it
20  contends shows that it acted reasonably in -- after
21  learning of the patents.
22      So, the question is not what might
23  happen in the future. Viewsonic talks about postponing
24  indefinitely the decision whether to invoke advice of

Page 91

1  counsel until after claim construction is concluded, but
2  we are not talking about what might happen in the future
3  with respect to the Court. We are talking about right
4  now and in the past: Has Viewsonic been relying on any
5  advice of counsel? And, if so, we are entitled to
6  discovery on that advice. Similarly, have they taken any
7  steps, since they learned of the patents, to exercise due
8  care? If so, we are entitled to that discovery.
9       SPECIAL MASTER POPPITI: Who is arguing,
10  please?
11      MR. MILLER: Scott Miller.
12      SPECIAL MASTER POPPITI: Mr. Miller.
13      MR. MILLER: Well, let's put the
14  background into the proper perspective so Your Honor
15  knows where we stand.
16      We have advised LPL that we were not
17  aware of these patents prior to the date on which they
18  served the complaint on Viewsonic, so there is not a
19  wealth of information that lead up to the initiation of
20  Viewsonic's response to the litigation that would deal
21  with any kind of opportunity to get advice of counsel or
22  opinions to rely on.
23      We have also advised LPL of various
24  actions that Viewsonic has taken that are not within the

Page 92

1  scope of the attorney/client privilege, that they have
2  communicated with their suppliers, that they have
3  retained counsel to evaluate the matter and defend the
4  litigation, that they have consulted with technical
5  experts and presented his declaration, they successfully
6  opposed the preliminary injunction motion that was
7  brought by LPL, they were able to ascertain and develop
8  evidence in the proceeding in the United Kingdom that
9  dealt with the sister patent to the patents in suit here
10  that dealt with the exact same technology, and, in large
11  part, some of the same products that are accused of
12  infringement here, that that evidence and admissions from
13  the experts employed by LPL are applicable to matters
14  that are being relied upon by Viewsonic as well as the
15  Court's decision there, which was recently affirmed of
16  mild infringement and invalidity of the patent.
17      The real issue here is what is the scope
18  of advice they received from counsel post initiation of
19  the litigation, which is all clearly privileged material.
20  And they are trying to obtain that information from
21  Viewsonic at a time when the Court has indicated that
22  discovery that relates to claim construction issues is
23  properly deferred until after the Markman ruling.
24      SPECIAL MASTER POPPITI: How does it

Page 93

1  have to do with claim construction?
2       MR. MILLER: Well, the advice of counsel
3  would clearly construe the claims and apply them to the
4  products. And I can't imagine something more directly
5  applicable to the issues involving our analysis and
6  strategy and thinking regarding the claim construction
7  process than -- and what is -- that process is involved
8  than getting into the advice and analysis of counsel with
9  regard to the patents in suit and how they might apply
10  to, at that time, only product that had been identified
11  as infringement.
12      It just seems to us, you know, matter of
13  factly unfair to compel Viewsonic to provide information
14  from, you know, to make a decision about whether it's
15  going to waive the privilege of activities and advice
16  that may have been given to them from litigation counsel
17  relating to the patents in suit and the scope of the
18  claims and how they might be applied to products in the
19  -- prior to the Court telling us what the claims mean.
20  It clearly will give them an undue advantage during the
21  claim construction process, and will, you know, is not
22  fair to Viewsonic to put them at the situation of
23  identifying that information and Viewsonic having to
24  waive that information prior to the date on at least

Hearing

Page 94

1  which get some assertion as to what products are at
2  issue.
3        SPECIAL MASTER POPPITI:  I guess what I
4  don't have the benefit of is a log that describes the
5  nature of the communication, and, if important beyond the
6  log, the actual documents, themselves, which you say have
7  been generated by litigation counsel after suit was
8  filed.  You know, that certainly gets my attention.
9        MR. MILLER:  The parties has never
10  exchanged privilege log.  I think the one thing they were
11  in agreement on was, I believe, that they weren't going
12  to log litigation oriented communications post filing of
13  the complaint, and, so, you know, we can -- it's never
14  been requested.
15        I don't think that, you know, I don't --
16  if it's necessary to prepare that kind of a log, you
17  know, we could do so, but we have advised them that
18  Viewsonic does not have an independent opinion of counsel
19  directed to the -- the issues of infringement or validity
20  other than what advice they received from counsel of
21  record.  And that's in our interrogatory response.
22        SPECIAL MASTER POPPITI:  Right.
23        MR. MILLER:  And, so, the real question
24  here is:  You know, is it fair to put Viewsonic in the

Page 95

1  position of having to decide to waive advice it may have
2  received from its litigation counsel on these issues
3  after the litigation was filed?
4        And it doesn't seem that, you know,
5  there is ever a need to prepare that log of post filing
6  communications between the, you know, post filing of the
7  complaint communications based on the discussions the
8  parties have had, and it's certainly been my experience
9  that -- you know, in fact, I can't remember a case where
10  we ever were compiling a log of communications post
11  filing.
12        SPECIAL MASTER POPPITI:  Post filing,
13  and I understand that.
14        What's the interrogatory answer again,
15  please?
16        MR. CHRISTENSON:  Your Honor, the
17  interrogatory answer that LPL was compelled to
18  supplement, with respect to this issue of willfulness
19  was, I believe, interrogatory No. 8.  The interrogatories
20  that are implicated by LPL's motion here are
21  interrogatories 5, 6, and 7.
22        SPECIAL MASTER POPPITI:  Right.
23        MR. CHRISTENSON:  And then we have a
24  handful of document requests implicated as well.

Page 96

1        SPECIAL MASTER POPPITI:  Just give me a
2  moment.  I want to pull those.  I am going to put you on
3  hold.
4        MR. CHRISTENSON:  Thank you.
5        (Off the record.)
6        SPECIAL MASTER POPPITI:  Counsel, I am
7  back on.  Let me ask this question:  In looking at the
8  Viewsonic's answer, and I don't know whether the answer
9  has been amended, the affirmative defense has not been
10  raised in the answer; that's correct, is it not?
11        MR. MILLER:  That's correct.
12        SPECIAL MASTER POPPITI:  Has it been
13  raised at all?
14        MR. MILLER:  Not at this point.
15        SPECIAL MASTER POPPITI:  Well, when you
16  say "not at this point," at this juncture, why isn't it
17  waived?
18        MR. MILLER:  I think we would -- I
19  think, at this point, we would need to go back to Judge
20  Farnan and ask for permission to do so.  We have
21  responded to the interrogatories, discussing how we have
22  acted reasonably in the face of the charge of
23  infringement that came to our notice first with the
24  complaint, and because we do not have a separate opinion

Page 97

1  of counsel at the time the answer was filed, we didn't
2  allege the defense.  If Judge Farnan would allow that to
3  come into the case at that point in time --
4        SPECIAL MASTER POPPITI:  Therein lies my
5  concern.  I have the obligation to manage discovery,
6  which I haven't done up to this point, which I will do in
7  the future.  I have got the obligation to deal with
8  discovery disputes, but I certainly don't have the
9  authority to, outside the context of discovery disputes
10  and outside the context of Rule 37 sanctions, I don't
11  have the authority to impact on issues that are
12  ultimately tried.
13        And it seems to me that if there is a
14  question, and I think there is a question of waiver, and
15  the flip side of that question is whether or not
16  Viewsonic can convince the Court to permit the
17  affirmative defense to be pled at this point or any later
18  point, I think that's got to be brought to the attention
19  of Judge Farnan before I begin to wade into the water and
20  permit access to this information.
21        I just don't think it is, I will use the
22  word "ripe," I may back off of that, but I don't think
23  it's ripe for my consideration given the state of the
24  pleadings.

Hearing

26 (Pages 98 to 101)

Page 98

1    Mr. Christenson.
2    MR. CHRISTENSON:  Your Honor, it's
3  correct to say that they have not alleged it, I don't
4  believe, as an affirmative defense, and the time to --
5  things have expired under the scheduling order.
6    SPECIAL MASTER POPPITI:  I understand
7  that.
8    MR. CHRISTENSON:  And I guess, you know,
9  from our standpoint, we had expected to obtain prompt
10  discovery to the extent this was an issue in the case,
11  but to the extent it's not an issue in the case, then I
12  think the appropriate way to approach it would be to, if
13  and when there is any attempt to bring it into the case
14  in the future, given where we are and given our upcoming
15  deposition schedule, etcetera, we would, obviously,
16  oppose it based, in part, on the pressures resulting from
17  where we are in the case.
18    SPECIAL MASTER POPPITI:  Well, there is
19  no question that I have the authority to draw the
20  parameter around what is appropriate discovery going
21  forward.  And given the state of this record, without
22  making a determination on this issue, it seems to me it
23  would be an uphill climb for Viewsonic to -- for there to
24  be any discovery on this issue if it's not properly pled.

Page 99

1    I am looking at the scheduling order,
2  Mr. Christenson.  Let me -- and I know it's been
3  modified.  Let me just look here.
4    What paragraph are you referring to with
5  respect to amending the pleadings?
6    MR. CHRISTENSON:  I apologize, Your
7  Honor.  I do not have that at my fingertips, but it was
8  in the -- the date is in the original --
9    SPECIAL MASTER POPPITI:  It's in the
10  original?
11    MR. CHRISTENSON:  Yes, sir.
12    MR. MILLER:  It's in paragraph seven,
13  Your Honor.
14    SPECIAL MASTER POPPITI:  I am getting
15  there.  I see it.  Thank you, Mr. Miller.
16    Yeah, it says, "All motions to amend the
17  pleadings shall be filed on or before January 17th,
18  2006."  We are coming up to an anniversary.
19    I mean, I -- this matter is not ripe for
20  consideration because the -- the pleadings do not join
21  the issue, and if it needs to be raised with Judge
22  Farnan, my sense is you better do it -- you better do it
23  quickly.  But my ruling will be that it is not ripe for
24  consideration given the parameters of the issues that

Page 100

1  have been pled.
2    MR. MILLER:  Thank you, Your Honor.
3    SPECIAL MASTER POPPITI:  Thank you, sir.
4  Let me just get some papers out of my way.  Thank you.
5  Next.  I promised the court reporter we'd be out of here
6  by midnight and she was very skeptical until we just
7  dealt with that last issue.
8    MR. CHRISTENSON:  I am glad we are
9  making progress.
10    MR. MILLER:  That's a joke, too, Your
11  Honor.
12    SPECIAL MASTER POPPITI:  That's a joke
13  as well, yes.  Thank you.
14    MR. MILLER:  Your Honor, I think --
15    SPECIAL MASTER POPPITI:  Yes,
16  Mr. Miller.
17    MR. MILLER:  The next chronological
18  motions would be those filed by Viewsonic, I believe.
19    SPECIAL MASTER POPPITI:  That is
20  correct.  The next motion would be Viewsonic's Motion to
21  Compel LG, Re:  Components, etcetera.  It's dated 10/3,
22  2006, and the response was 10/25, 2006.
23    MR. MILLER:  Let me -- we have been
24  discussing a lot of the requests kind of in categories

Page 101

1  and I will do the same here to see if we can at least
2  focus the issues.
3    These first set of requests deal with
4  mounting methods and structures that are -- that
5  Viewsonic seeks to discover vis-a-vis LPL.
6    SPECIAL MASTER POPPITI:  Mr. Miller,
7  before you -- before you launch here, let me just remind
8  myself of something that I made a note on.  Just one
9  moment, please.  Just give me one -- give me the courtesy
10  of putting you on hold again.  I have got to find the
11  document.  I made the note but I can't find the document.
12  Hold one sec.
13    (Off the record.)
14    SPECIAL MASTER POPPITI:  Counsel, I am
15  not having the kind of success that I should have, but I
16  do recall it was either correspondence or it was in the
17  submittal that Miss Mason filed.  My note reads, to
18  myself, at page 10, I had some impression that LPL was --
19  well, that would make sense -- was willing to produce the
20  documents.  So wait a minute.  I am looking -- I am
21  looking at the wrong document.  Hold one sec.  Actually,
22  this is Mr. Kirk's, but it was in response to
23  Ms. Mason's.
24    If, counsel, you will look at Plaintiff

Hearing

62 (Pages 242 to 244)

Page 242

1  inducement motion that you had -- that you had, as you
2  had stated earlier, we would circle back to later.
3        SPECIAL MASTER POPPITI:  That's correct.
4        MR. KIRK:  Not to impose more work on
5  you, I know that when we supplied things this afternoon
6  at our break, we just supplied a case citation.  I know
7  Miss Mason supplied citations and a little bit of text
8  arguing the cases.
9        SPECIAL MASTER POPPITI:  Yes.
10        MR. KIRK:  Might we have just a short
11  amount where we could at least annotate our ideas in
12  about the same length that she did.
13        SPECIAL MASTER POPPITI:  Yes.
14        MR. KIRK:  And we could do that
15  tomorrow?
16        SPECIAL MASTER POPPITI:  Yes.
17        MR. KIRK:  Thank you, Your Honor.
18        SPECIAL MASTER POPPITI:  I really
19  appreciate everyone's time and enduring attention for
20  what we had to do today.
21        I wish you all the best of the beginning
22  of a new year.  Stay safe and healthy and I look forward
23  to working with you again on Wednesday of the new week.
24        MR. CHRISTENSON:  Thank you, Your Honor.

Page 243

1        MR. MILLER:  Thank you, Your Honor.
2        MS. MASON:  Thank you.
3        (The hearing was concluded at 6:17 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 244

1            C E R T I F I C A T E.
2  STATE OF DELAWARE:
                    :
3  NEW CASTLE COUNTY:
4        I, Renee A. Meyers, a Registered Professional
5  Reporter, within and for the County and State aforesaid,
6  do hereby certify that the foregoing hearing was taken
7  before me, pursuant to notice, at the time and place
8  indicated; that the hearing was correctly recorded in
9  machine shorthand by me and thereafter transcribed under
10  my supervision with computer-aided transcription; that
11  the foregoing hearing is a true record of the hearing;
12  and that I am neither of counsel nor kin to any party in
13  said action, nor interested in the outcome thereof.
14        WITNESS my hand this 29th day of December A.D.
15  2006.
16
17

18        RENEE A. MEYERS
        REGISTERED PROFESSIONAL REPORTER
19        CERTIFICATION NO. 106-RPR
        (Expires January 31, 2008)
20
21
22
23
24

# EXHIBIT 6



# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

Manuel Nelson

TEL (213) 787-2515
FAX (213) 687-0498
EMAIL mnelson@cblh.com
REPLY TO Los Angeles Office

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

*Via Email and First Class Mail*

January 22, 2007

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC 20006

WEB www.cblh.com

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*
      USDC, Delaware, C.A. No. 04-343-JJF

Dear Mr. Christenson:

We understand that the issue regarding whether advice of counsel needs to be pled as an affirmative defense has been raised again in connection with LPL's motions to compel Tatung to produce documents related to advice of counsel on which Tatung may rely in defense to willfulness charges.

This is the same issue that was raised *sua sponte* by the Special Master during the December 28, 2006 hearing in connection with LPL's motion to compel ViewSonic to produce documents related to advice of counsel on which ViewSonic may rely in defense to willfulness charges. In making his January 5, 2007 Report and Recommendation ("R&R") on this issue, the Special Master did not have the benefit of any briefing from the parties on the issue of whether advice of counsel needs to be expressly pled as an affirmative defense. We believe that the Special Master would have benefited from such briefing.

We note that Tatung and LPL will be briefing this issue shortly for the Special Master. We think it would make most sense to have this issue before the Special Master, and, ultimately, the Court once, rather than piecemeal. Consequently, we propose that LPL and ViewSonic stipulate to extend the time within which either must file an objection to the Special Master's January 5, 2007 R&R to 10 days after the Special has ruled on this issue with the benefit of the briefing from Tatung and LPL in connection with the pending motions. This proposal ultimately will give the Court the benefit of all the briefing from all the parties at one time.

As the parties' objections to the Special Master's January 5, 2007 R&R are due January 25, 2007, we look forward to hearing from you promptly regarding our proposal.

 **CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

January 22, 2007
Page 2

Sincerely,

*Manuel Nelson*

Manuel Nelson

cc:     Rel S. Ambrozy, Esq. (via email)
        Lora A. Brzezynski, Esq. (via email)
        Richard D. Kirk, Esq. (via email)
        Mark H. Krietzman, Esq. (via email)
        Frank E. Merideth, Jr., Esq. (via email)
        Valerie W. Ho, Esq. (via email)
        Steve P. Hassid, Esq. (via email)
        Anne Shea Gaza, Esq. (via email)
        Frederick L. Cottrell III, Esq. (via email)
        Scott R. Miller, Esq. (via email)
        Tracy R. Roman, Esq. (via email)
        Jeffrey B. Bove, Esq. (via email)
        Jaclyn M. Mason, Esq. (via email)

# EXHIBIT 7

# McKenna Long
# & Aldridge LLP
### Attorneys at Law

Albany

Atlanta

Brussels

Denver

Los Angeles

New York

Philadelphia

San Diego

San Francisco

Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

January 23, 2007

**VIA E-MAIL AND U.S. MAIL**

Manuel Nelson, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

> Re:  LG. Philips LCD Co., Ltd. v. ViewSonic Corp, et. al;
>       U.S. District Court Case No. 04-343 JJF

Dear Manuel:

In response to your January 22 letter, which we received today, LPL sees no reason to agree to extend the time for objections to Special Master Poppiti's January 5, 2007 Report and Recommendation ("R&R").

During the December 28 hearing, ViewSonic *conceded* that it would need to seek leave of court in order to assert any advice of counsel defense. Further, ViewSonic has specifically opted not to seek bifurcation of willfulness discovery as stated in its October 18, 2006 opposition to LPL's motion to compel discovery on advice of counsel and duty of care. Therefore, the only remaining issue concerning ViewSonic appears to be whether ViewSonic intends to file a motion to amend. If ViewSonic wanted to brief this issue, ViewSonic should have said so during the December 28 hearing. Instead, ViewSonic expressly agreed that it would need to seek leave to amend its defenses if so desired. 12/28 Hearing Tr. at 96:6-97:3. ViewSonic cannot take a different, inconsistent position at this stage.

LPL believes, and the Special Master appears to believe, that the decision rendered against ViewSonic applies equally to Tatung. The purpose of Tatung's briefing is to seek to distinguish Tatung's position from ViewSonic's position. In any event, because Tatung argues that it is not in the same posture as ViewSonic, any decision regarding Tatung should not apply to ViewSonic.

LPL believes that any motion by ViewSonic to amend its answer to include an advice of counsel defense would be untimely. LPL is already prejudiced by ViewSonic's refusal to produce advice of counsel discovery. If ViewSonic wanted to assert an advice of counsel defense, ViewSonic should have done so and provided discovery long ago.

Manuel Nelson, Esq.
January 23, 2007
Page 2

As the March 30 close of discovery approaches, any further delay by ViewSonic in seeking to amend its answer would prejudice LPL.  Therefore, LPL does not agree that ViewSonic should have more time to object to the Special Master's January 5 R&R.  Notably, on January 19, the parties agreed to shorten the time to appeal the Special Master's rulings to 10 court days.  Seeking an extension to more than 20 days is not consistent with this agreement and is unfair to LPL.

Sincerely,

Cass W. Christenson

CWC:jmk

cc:    Frank E. Merideth, Jr., Esq. (via e-mail)
       Richard D. Kirk, Esq. (via e-mail)
       Mark Krietzman, Esq. (via e-mail)
       Valerie W. Ho, Esq. (via e-mail)
       Jong P. Hong, Esq. (via e-mail)
       Steve P. Hassid, Esq. (via e-mail)
       Anne Shea Gaza, Esq. (via e-mail)
       Frederick L. Cottrell, III, Esq. (via e-mail)
       Scott R. Miller, Esq. (via e-mail)
       Tracy R. Roman, Esq. (via e-mail)
       Jeffrey B. Bove, Esq. (via e-mail)
       Jaclyn M. Mason, Esq. (via e-mail)

DC:50457387.1

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION,<br><br>Defendants. | Civil Action No. 04-343-JJF |

## PLAINTIFF'S THIRD SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT VIEWSONIC CORPORATION'S FIRST SET OF INTERROGATORIES

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), pursuant to Fed. R. Civ. P. 33, supplements its objections and responses to Defendant ViewSonic Corporation's ("ViewSonic") First Set of Interrogatories for the third time, as follows.

## PRELIMINARY STATEMENT & GENERAL OBJECTIONS

LPL hereby incorporates its Preliminary Statements and its General Objections from Plaintiff's previous Objections and Answers to Defendant ViewSonic Corporation's First Set of Interrogatories. Those general objections apply to each Interrogatory herein and thus, for convenience, are not repeated after each Interrogatory, and are hereby incorporated into each response.

This set of Objections and Responses incorporates into this single document all of LPL's previously-submitted supplemental objections and responses to Defendant ViewSonic Corporation's First Set of Interrogatories as well as any of LPL's previous supplemental

responses. Through this set of supplemental objections and responses, LPL supplements its objections and responses to Interrogatory 1.[1]

## INTERROGATORIES

### INTERROGATORY NO. 1:

Set forth all contentions that ViewSonic infringes any patent claim asserted in this litigation, directly, indirectly, literally or under the doctrine of equivalents, including an identification of the following: (a) each allegedly infringing product sold by ViewSonic; (b) the specific sections of 35 U.S.C. section 271 that allegedly gives rise to infringement liability for each allegedly infringing product, (c) the specific claims that LPL contends are infringed with respect to each allegedly infringing product, and (d) on a claim by claim basis, where in each allegedly infringing product the claim elements can be located.

### OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from ViewSonic. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL cannot currently identify all infringing ViewSonic products and ViewSonic has failed to provide discovery sufficient for LPL to make such an assessment. LPL is aware of

---

[1] On November 8, 2006, Special Master Poppiti entered a Report and Recommendation (the "Recommendation") (D.I. 306) suggesting to the Court that LPL be compelled, *inter alia*, to supplement its responses to Interrogatories 1, 3, 4, 7, 8 and 12 within five business days. LPL is providing a supplemental response only to Interrogatory 1 at this time because it had previously represented to ViewSonic that it would do so. Supplements to the remainder of the Interrogatories addressed by the Recommendation, to the extent that LPL does not object to the relevant provisions of the Recommendation, will be provided within the time required by the Recommendation.

2

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## SUPPLEMENTAL RESPONSE & OBJECTION:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from ViewSonic. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

ViewSonic has refused and/or failed to provide discovery for LPL to fully respond to this Interrogatory. The ViewSonic products that LPL is currently aware of that infringe the Patents-in-Suit include the: ViewSonic VX900 ("VX900"); ViewSonic VX2000 ("VX2000"); ViewSonic VA503b ("VA503b"); ViewSonic VG2021m ("VG2021m"); ViewSonic N2000 ("N2000"); ViewSonic VP2030b ("VP2030b"); ViewSonic VX700 ("VX700"); ViewSonic VX924 ("VX924"); ViewSonic VG920 ("VG920"); ViewSonic VP230mb ("VP230mb"); and ViewSonic VP930b ("VP930b") monitors. ViewSonic's liability, however, includes any type of improper conduct related to any infringing products, whether by direct infringement, contributory infringement, and/or inducing infringement by others. ViewSonic, for example, has at least sold, offered for sale, and/or imported infringing products such as the VX900, VX2000,

11

VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b monitors.

Although LPL's attorneys previously identified the ViewSonic VX500 and ViewSonic VP150M as previously within LPL's possession, custody, or control, those monitors were obtained for use in other litigations. Accordingly, they were destroyed during evaluation of technologies different than the mounting technologies at issue in this litigation, and are thus no longer available for LPL's inspection in this litigation. LPL reserves the right to supplement this Response to include those monitors if appropriate in the future.

With respect to the VX900 monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-36 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the VX2000 monitors, the infringed claims include, at least, claims 35, 36, 40-45, 55-56 of the '641 Patent and claims 33-36 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the VA503b monitors, the infringed claims include, at least, claims 35, 36, 38-45, and 55-56 of the '641 Patent and claims 33-36 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the VG2021m monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-36 and 38-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the N2000 monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-36 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the

VP2030b monitors, the infringed claims include, at least, claims 35, 36, 38-43, and 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the VX700 monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the VX924 monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the VG920 monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the VP930b monitors, the infringed claims include, at least, claims 35, 36, 38-45, and 55-56 of the '641 Patent and claims 33-36 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the VP230mb monitors, the infringed claims include, at least, claims 35, 36, 40-45, and 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

The following charts show infringement by comparing the claims of the Patents-in-Suit with the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb and VP930b monitors:

| Claims in the '641 Patent | ViewSonic Monitors |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The ViewSonic VX900 ("VX900"), ViewSonic VX2000 ("VX2000"), Viewsonic VA503b ("VA503b"), ViewSonic VG2021m ("VG2021m"), ViewSonic N2000 ("N2000"), ViewSonic VP2030b ("VP2030b"), ViewSonic VX700 ("VX700"), ViewSonic VX924 ("VX924"), ViewSonic VG920 ("VG920"), ViewSonic VP230mb ("VP230mb"), and ViewSonic VP930b ("VP930b") are each a rear mountable flat panel display device capable of being mounted to a data processing device. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit. |
| a second frame; | The VX900, VX2000, VA503b, VA2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb and VP930b each have a second frame. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 35, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a fastening part that includes a fastening hole. |
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the VA503b, VP2030b, and VP930b each have fastening parts that include at least two fastening holes at two corners of the first frame. |
| 39. The rear mountable flat panel display device according to claim 36, | In addition to the elements listed above that pertain to the limitations of claim 36, the VA503b, VP2030b, and |

14

| Claims in the '641 Patent | ViewSonic Monitors |
|---|---|
| wherein the fastening part includes four fastening holes at four corners of the first frame. | VP930b each have fastening parts that include four fastening holes at four corners of the first frame. |
| 40. The rear mountable flat panel display device according to claim 35, wherein the backlight unit comprises: a reflector unit adjacent the first frame; | In addition to the elements listed above that pertain to the limitations of claim 35, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a backlight unit comprising a reflector unit adjacent the first frame. |
| a light source unit adjacent the reflector unit; and | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a backlight unit comprising a light source unit adjacent the reflector unit. |
| a light guide unit adjacent the light source unit. | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a backlight unit comprising a light guide unit adjacent the light source unit. |
| 41. The rear mountable flat panel display device according to claim 40, further comprising a diffuser unit and a prism unit. | In addition to the elements listed above that pertain to the limitations of claim 40, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a diffuser unit and a prism unit. |
| 42. The rear mountable flat panel display device according to claim 35, wherein the fastening part is not visible from a viewing direction of the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a fastening part that is not visible from a viewing direction of the flat display panel. |
| 43. The rear mountable flat panel display device according to claim 35, wherein the flat panel display device only shows the flat display panel and the second frame when viewed from a viewing direction of the display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a flat panel display device that only shows the flat display panel and the second frame when viewed from a viewing direction of the display panel. |
| 44. The rear mountable flat panel | In addition to the elements listed above that pertain to |

15

| Claims in the '641 Patent | ViewSonic Monitors |
|---|---|
| display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | the limitations of claim 35, VX900, VX2000, VA503b, VG2021m, N2000, VX700, VX924, VG920, VP230mb, and VP930b each have a fastening part that includes a protruding portion protruding away from the flat display panel. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 44, the VX900, VX2000, VA503b, VG2021m, N2000, VX700, VX924, VG920, VP230mb, and VP930b each have a protruding portion that includes a peg having a fastening hole. |
| 55. A rear mountable flat panel display device comprising: | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b are each a rear mountable flat panel display device. |
| a first frame having a fastening part at a rear surface of the first frame; | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; and | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a second frame. |
| a flat display panel between the first and second frames; | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. |
| 56. A rear mountable flat panel display device comprising: | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b are each a rear mountable flat panel display device. |
| a first frame having a fastening part at | The VX900, VX2000, VA503b, VG2021m, N2000, |

16

| Claims in the '641 Patent | ViewSonic Monitors |
|---|---|
| a rear surface of the first frame; | VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a second frame. |
| and a flat display panel between the first and second frames; | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |

| Claims in the '718 Patent | ViewSonic Monitors |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed. |
| placing a second frame on the flat display panel; and | The method of assembling each of the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b includes placing a second frame on the flat display panel. |

17

| Claims in the '718 Patent | ViewSonic Monitors |
|---|---|
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b includes fixing the flat display panel between the first frame of the backlight unit and the second frame. |
| **34.** The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 33, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a fastening element that comprises a fastening hole. |
| **35.** The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the elements listed above that pertain to the limitations of claim 33, the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b each have a fastening element that comprises a screw hole. |
| **36.** The method of claim 33, wherein the fastening element comprises a stepped hole. | In addition to the elements listed above that pertain to the limitations of claim 33, the VX900, VX2000, VA503b, VG2021m, N2000, and VP930b each have a fastening element that comprises a stepped hole. |
| **38.** The method of claim 33, wherein the fastening element comprises a hook. | In addition to the elements listed above that pertain to the limitations of claim 33, the VG2021m has a fastening element that comprises a hook. |
| **39.** A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device. |
| arranging a first frame on a light guide, the first frame having holes for coupling a LCD panel to a supporting frame, the supporting frame having a front surface and a rear surface; and | The method of assembling each of the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb and VP930b includes arranging a first frame on a light guide, the first frame having holes for coupling an LCD panel to a supporting frame, the supporting frame having a front surface and a rear surface. |
| coupling the LCD panel, the light | The method of assembling each of the VX900, |

| Claims in the '718 Patent | ViewSonic Monitors |
|---|---|
| guide to the first frame from the rear surface of the supporting frame. | VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b includes coupling the LCD panel, the light guide to the first frame from the rear surface of the supporting frame. |
| **40**. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the VX900, VX2000, VA503b, VG2021m, N2000, VP2030b, VX700, VX924, VG920, VP230mb, and VP930b includes attaching the LCD device to the display case from the back of the display case. |

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 2:

For each allegedly infringing ViewSonic product identified by you in response to Interrogatory No. 1, identify the circumstances under which LPL first considered that the ViewSonic product might infringe any claim of one or more of the Patents-in-Suit, including the dates LPL first learned of the product, any efforts to verify whether or not the product infringes,

**INTERROGATORY NO. 16:**

To the extent that any of your responses to any of ViewSonic's Requests for Admissions was anything other than an unqualified admission, list all material facts on which you based any part of your response that was not an unqualified admission, identify all documents memorializing each such fact, and identify all persons with knowledge of each such fact.

**OBJECTIONS AND ANSWER:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. LPL further objects to this Interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects. Also, LPL objects that this is an improper interrogatory, not directed to a single subject, and addressing categorically an entire set of Requests for Admissions (many of which, in turn, are objectionable for the reasons stated in LPL's responses to those Requests for Admissions). LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

November 8, 2006

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-2306
(302) 655-5000
Attorneys For Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Lora Brzezynski
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500