# EXHIBIT 10

# CONNOLLY BOVE LODGE & HUTZ LLP

## ATTORNEYS AT LAW

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

Manuel Nelson

TEL (213) 787-2515
FAX (213) 687-0498
EMAIL mnelson@cblh.com
REPLY TO Los Angeles Office

The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington  DE 19899
· (302) 658 9141
· (302) 656 8911

1990 M Street  N.W. Suite 800
Washington, DC  20036
202  331 7111
202 293 6229

WEB www.cblh.com

*Via Email*

January 18, 2007

Cass W  Christenson
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC  20006

Re:     *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al*
        USDC, Delaware, C A  No  04-343-JJF

Dear Mr  Christenson:

Thank you for your January 17, 2007 letter regarding depositions.  This letter responds to some of the issues identified in your letter.

We are still waiting to hear Tatung's position regarding meeting and conferring via letters or with a court reporter.  Unless we are convinced otherwise by Tatung or the Special Master, at this time, ViewSonic believes the parties would be best served and efficiencies improved by implementing our suggested meet and confer procedure.  Thus, we have addressed below deposition issues raised in your letter and will promptly send you correspondence on other issues.  Please provide us with any further correspondence regarding the below issues or any other issues you believe need to be addressed.

Contrary to the suggestion in your letter, ViewSonic has not refused to produce any witnesses for depositions.  LPL, not ViewSonic, has refused to participate in deposition discovery   LPL still refuses to set a single deposition date.  LPL's refusal to provide a witness within a reasonable time forced ViewSonic to file a motion to compel LPL to participate in deposition discovery, and for a protective order, which motion is held in abeyance and remains pending.  ViewSonic is not obligated to produce any witness for a deposition until its motion for a protective order is ruled upon.

Notwithstanding ViewSonic's motion for a protective order, and without waiving its right to invoke the protection provided by that motion, ViewSonic will take the lead, once again, to try and move things forward in this case   Regarding LPL's request to take the depositions of ViewSonic witnesses in an order similar to the order the witnesses were noticed by LPL, ViewSonic anticipates LPL will be flexible with this request.  ViewSonic expects to identify, by Tuesday, January 23, 2007, available dates for Sally Wang and Vivian Liu, two of the first three ViewSonic witnesses noticed by LPL for depositions.  As the parties previously discussed, Michael Zapka, no longer works for ViewSonic.  ViewSonic is trying to determine Mr. Zapka's current contact information   ViewSonic will provide dates for Robert Ranucci and Jeff Volpe after the dates for the intervening Tatung witnesses have been set, which will accommodate LPL's request to take the depositions in the order originally noticed by LPL.

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

January 18, 2007
Page 2

As we have indicated, Tommy Jue is in Taiwan. ViewSonic anticipates that Mr. Jue likely will be designated as a 30(b)(6) witness. Thus, we will produce Mr. Jue closer in time to the 30(b)(6) depositions of ViewSonic. If Mr. Jue is selected as a ViewSonic 30(b)(6) designee, he will be produced in that capacity immediately after his individual deposition. With respect to the remaining ViewSonic 30(b)(6) designees, in accordance with your suggestion that depositions of the defendants be taken in the order noticed by LPL, ViewSonic will preliminarily designate corporate representatives for the 30(b)(6) topics after the depositions of ViewSonic's witnesses have been completed. To the extent this requires local witnesses to be produced a second time, ViewSonic will bear that burden to accommodate LPL's request to depose the defendants' witnesses in the order noticed.

While on the subject of scheduling 30(b)(6) depositions, as indicated above, LPL still refuses to set any date for a 30(b)(6) deposition. LPL cannot reasonably expect to obtain all of the 30(b)(6) testimony LPL seeks without producing LPL 30(b)(6) designees at fair and reasonable times. Please provide a firm date when LPL is willing to produce at least its first 30(b)(6) witness to be deposed.

Your letter summarized some of the prior discussions regarding time limits for 30(b)(6) depositions. We understand that LPL does not agree with any suggestion offered thus far by ViewSonic regarding time limits for deposing 30(b)(6) designees. What is not clear is LPL's view regarding time limits for deposing 30(b)(6) designees. Please clarify LPL's proposal regarding time limits for deposing 30(b)(6) designees.

As indicated in your letter, during our January 8 conference, LPL suggested that the parties might be able to agree that certain 30(b)(6) topics could be more suitable for expert witness discovery. Before pursuing this further, ViewSonic needs to know whether LPL will agree not to present any employee, officer or director of LPL (including any inventor) at trial to testify about any 30(b)(6) topic that the parties agree at this stage is more suitable for an expert witness. Without such an agreement, ViewSonic is unlikely to forego any 30(b)(6) topics it noticed.

LPL suggested that the noticed time frames could be uniformly narrowed for 30(b)(6) topics concerning financial information and/or damages related issues. ViewSonic has considered LPL's suggestion. ViewSonic is entitled to discovery it seeks regarding obviousness of the alleged invention claimed in the patents in suit, including evidence related to satisfaction of any long-felt need(s) in the industry related to different mounting techniques, which implicates LPL's sales of flat panel products prior the date of the invention of the patents in suit. Consequently, ViewSonic cannot presently agree to LPL's proposed date restriction.

With respect to the discussion in your January 17, 2007 letter regarding Topic 11 in ViewSonic's 30(b)(6) deposition notice of LPL, there are several points that warrant clarification. First, Topic 11 encompasses various issues, including the knowledge of the inventors and the patent attorneys of the scope and content of certain prior art references. These issues are related not only to inequitable conduct, but also invalidity, unclean hands, patent misuse, as well as other issues. ViewSonic's Third Defense pleads invalidity. ViewSonic's Fifth Defense pleads unclean hands, which includes patent misuse. ViewSonic's Eighth Defense clearly implicates the possibility that the evidence may give rise to other defenses, including inequitable conduct. Moreover, the more lenient Rule 8 of the Federal Rules of Civil Procedure, not Rule 9, applies to pleading requirements for the defenses of invalidity, unclean hands and patent misuse. Thus, ViewSonic cannot agree not to pursue Topic 11 as requested in your letter.



**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

January 18, 2007
Page 3

On a matter related to these defenses, during our January 8, 2007 teleconference, LPL agreed that it would provide the bates number of the agreement with DEC, provided this agreement was produced in this case. Have you been able to determine whether the DEC agreement was produced in this case? If not, please produce a copy of the agreement with DEC.

With respect to LPL's position that the Scheduling Order permits the two inventor of the patents in suit to be deposed for 10.5 hours each for a combined total of 21 hours for both inventors, that is not consistent with the most reasonable reading of ¶ 4(d) of the Court's Scheduling Order, which provides that no fact witness or 30(b)(6) designee "for whom English is [sic, not] their first language shall be deposed for more than 10.5 hours." This sentence limits depositions of non-English speakers to 10.5 hours. If the deposition of each inventor were to be limited to 10.5 hours, there would be no need for the next sentence in the Scheduling Order: "Notwithstanding the foregoing limitations, the inventors of the patents in suit may be deposed for up to 21 hours total, which shall be consecutive." The most reasonable interpretation of these provisions permits each inventor to be deposed for up to 21 hours during 3 consecutive days. This interpretation is consistent with the position advocated by ViewSonic in connection with the 26(f) report submitted to the Court. Paragraph 4(d) of the Scheduling Order incorporates ViewSonic's position.

With respect to LPL's desire to incorporate deposition testimony from another Delaware case (no. 05-292), which in turn incorporates eight cases, that proposal was addressed in Scott Miller's January 16, 2007 letter to you.

We will respond separately to the remaining issues related to specific noticed topics identified in your letter.

Sincerely,

Manuel Nelson

cc:     Rel S. Ambrozy, Esq. (via email)
        Lora A. Brzezynski, Esq. (via email)
        Richard D. Kirk, Esq. (via email)
        Mark H. Krietzman, Esq. (via email)
        Frank E. Merideth, Jr., Esq. (via email)
        Valerie W. Ho, Esq. (via email)
        Jong P. Hong, Esq. (via email)
        Steve P. Hassid, Esq. (via email)
        Anne Shea Gaza, Esq. (via email)
        Frederick L. Cottrell III, Esq. (via email)
        Scott R. Miller, Esq. (via email)
        Tracy R. Roman, Esq. (via email)
        Jeffrey B. Bove, Esq. (via email)
        Jaclyn M. Mason, Esq. (via email)

# EXHIBIT 11

Connor, Cormac
_____

**From:**   Christenson, Cass
**Sent:**   Friday, January 26, 2007 12:47 PM
**To:**     Connor, Cormac
**Subject:** FW: Monday's hearing

_____

**From:** Christenson, Cass
**Sent:** Friday, January 19, 2007 7:25 PM
**To:** 'Jaclyn M. Mason'; rkirk@bayardfirm.com
**Cc:** Scott Miller; Manuel C. Nelson; Ambrozy, Rel
**Subject:** RE: Monday's hearing

Jaclyn, I do not think that it will be necessary for ViewSonic to attend on Monday   However, when can we discuss
deposition issues?  Thanks   Cass

_____

**From:** Jaclyn M. Mason [mailto:JMason@cblh.com]
**Sent:** Friday, January 19, 2007 6:47 PM
**To:** Christenson, Cass; rkirk@bayardfirm.com
**Cc:** Scott Miller; Manuel C. Nelson
**Subject:** Monday's hearing

Cass - I just reviewed the transcript from today's hearing   What issues would you like to discuss with ViewSonic on
Monday?  We were under the impression that we discussed all outstanding issues on the agenda

Thanks,
Jaclyn

Jaclyn Mason
Connolly Bove Lodge and Hutz LLP
1007 N  Orange Avenue
Wilmington DE 19801
302 888 6433
302 255.4275 (fax)
jmason@cblh.com

# EXHIBIT 12

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
# & Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202 496 7500 • Fax: 202 496 7756
www mckennalong com

New York
Philadelphia
San Diego
San Francisco
Washington, D C

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong com

January 23, 2007

**VIA E-MAIL AND U.S. MAIL**

Manuel Nelson, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

Frank E. Merideth, Jr., Esq.
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404

Re:    LG Philips LCD Co , Ltd  v  Tatung, et al ; Civil Action No  04-343 (JJF)

Dear Manuel and Frank:

I write in response to your January 18, 2007 letters. First, ViewSonic and Tatung just last week have proposed for the first time that the parties incorporate into this case materials from a prior case in the United Kingdom, apparently including "all of the testimony and exhibits" from that case. (Mr. Merideth's Jan. 18, 2007 ltr , 2.)  Although LPL would need clarification to understand the specifics of this new proposal, LPL has several concerns regarding this proposal, which seems inappropriate in general  We will address this matter more fully by separate letter, and we look forward to discussing this issue with you further.

The remainder of your letters address deposition issues. On January 16, ViewSonic inexplicably cancelled our January 17 teleconference to discuss these issues.  Since that time, Defendants have not agreed to any of our requests to reschedule the depositions teleconference. Indeed, ViewSonic now will only communicate by letter and refuses to speak with us  Despite several prior telephone calls and letters, we remain unable to agree on certain issues. Because we need the Special Master's guidance as soon as possible, we have no choice but to submit the disputed issues to the Special Master. Nonetheless, of course, we remain available to discuss these issues and we summarize the issues below in the hope that defendants may be willing to speak with us again before Friday

Manuel Nelson, Esq.
Frank E. Merideth, Jr., Esq.
January 23, 2007
Page 2

I     LPL's Objections to Rule 30(b)(6) Topics as More Appropriately Deferred to Expert
      Discovery, or Vague, Overly Broad, and/or Duplicative

        As we previously discussed, LPL is concerned that several of the Rule 30(b)(6) topics in
Defendants' deposition notices to LPL are not appropriate for party depositions and should be
either dropped or deferred to expert witness discovery. We discussed on January 8 some of these
issues and we have attempted to discuss this further with you, to no avail. Generally, we believe
that topics concerning claim scope, claim construction, infringement or validity analysis and
contentions, and damages issues are more appropriately addressed by experts. We propose that
topics on those issues be deferred to expert discovery in this case, including, for example,
Defendants' Rule 30(b)(6) topics 1(a), 1(e), 1(f), 13(a), 13(e), 22, 24(f), 24(g), 25, and 27(b).
Because of the wording of certain topics in Defendants' deposition notices to LPL, additional
topics could also implicate certain of these expert witness issues. See, e.g., Topic 13. LPL's
position remains that such topics should not be included in the Rule 30(b)(6) depositions. We
understand, however, that the Defendants do not agree.

        In addition, we have notified you that we have concerns regarding the specificity of
several topics. We specifically have discussed, for example, LPL's request for more specificity
concerning at least topics 4, 5(b), 8(a), 8(b), 13(i), 13(q), 13(v), 15(a), 24(d), 24(h), 25(d), and
27(c). During our January 8, 2007 teleconference, you agreed to review these topics and respond
to our concerns. Unfortunately, however, neither ViewSonic nor Tatung has clarified any of
these topics or responded substantively to our concerns. Therefore, LPL cannot fairly
understand and address the topics and believes that a protective order should be entered as to
these topics.

        On a related note, we discussed on January 8 that some topics are duplicative and that
Defendants' topics concerning financial information are overly broad in time. Although counsel
agreed to review these topics and work together to resolve LPL's concerns, we unfortunately
have not received any favorable response from you. If your positions change, and you are
willing to drop duplicative topics or narrow the time period for topics regarding financial
information, please let us know.

II    LPL's Objections to Defendants' Topic 11 Concerning Inequitable Conduct

        We also discussed on January 8 LPL's concerns about Topic 11, which ViewSonic's
counsel confirmed is a topic addressing inequitable conduct. As we discussed, and I restated in
my January 17 letter, we do not belief that there is any legitimate basis for deposition testimony
on this topic. Without such a basis, moreover, Topic 11 threatens to harass LPL's witnesses and
serve no useful purpose in this case. We repeat our request for any factual basis you believe
exists to pursue Topic 11. Given the lack of any such basis, we continue to object to Topic 11 as
improper.

Manuel Nelson, Esq.
Frank E. Merideth, Jr., Esq.
January 23, 2007
Page 3

III.    Amount of Time for Depositions of Inventors and Hours Limits for Depositions

We have discussed each of our respective positions concerning the amount of time that the Scheduling Order permits for the depositions of the two inventors in this case. Our position remains that the two inventors may be deposed for a combined total of no more than twenty-one (21) hours, on consecutive days. Given our impasse on this issue, we will seek appropriate relief. We will also seek clarification from the Special Master concerning the amount of time permitted under the Scheduling Order for depositions of English speaking and non-English speaking witnesses. Our understanding is that the Court intended to adopt the Defendants' original scheduling proposal, which appears to permit up to 7 hours for English speaking witnesses and up to 10.5 hours for other witnesses, but this provision may have been inadvertently omitted in part in the Scheduling Order.

As we have discussed, we anticipate that the two inventors, Mr. YoungWoo Cho and Mr. Jong Hwan Kim, will testify on many topics (likely including topics concerning the patents, prior art, mounting technologies and structures / methods of assembly; R&D, VESA, and meetings with third parties concerning the rearmount patents). We anticipate that another witness, possibly Mr. Joo Sup Kim, will testify concerning LPL's licenses and licensing strategy, the flat panel display market, and business issues. LPL may also produce a separate witness to address a few remaining topics, such as document production.

With respect to LPL's witnesses, we agreed on January 8 to work together to schedule depositions so as not to interfere with witness schedules due to the New Year period observed during part of February in Korea and Taiwan. As I mentioned, LPL's witnesses may be visiting with family during the week of February 19. As we discussed on January 8, therefore, if necessary we will adjust the deposition schedule and any adjustment would be minor (1 or 2 business days' postponement of the February 22 date).

IV.    Deposition Dates for Defendants' Witnesses

Defendants have not provided proposed dates for their witnesses. In response to Mr. Nelson's January 18 letter, we continue to object to ViewSonic's intentional withholding of deposition dates for witnesses until a future, unspecified time. We also object to ViewSonic's intent, contrary to prior discussions, to attempt to force LPL's counsel to make multiple trips to California to depose the same witnesses in different capacities. Our position continues to be that if a ViewSonic or Tatung witness will be deposed individually and as a corporate designee, that deposition should occur simultaneously or on consecutive dates. If Mr. Jue will be a corporate designee, for example, we will depose him after taking any other ViewSonic witnesses that we may need to depose. We need to know now which of ViewSonic's witnesses will testify as designees, so that we can decide which individual ViewSonic witnesses to depose before we take ViewSonic's Rule 30()(6) deposition.

Manuel Nelson, Esq.
Frank E. Merideth, Jr., Esq
January 23, 2007
Page 4


Mr. Meredith's January 18 letter likewise provides no deposition dates, and, instead, asks LPL to propose more dates. LPL previously proposed dates when it noticed depositions. Tatung knows which dates its witnesses and counsel are available, and LPL can pick from those proposed dates, but needs Tatung's cooperation.

Finally, Mr. Nelson's letter requests a copy of a DEC agreement, which was addressed in my January 22, 2007 letter to Mr. Miller. If you would like to discuss the DEC agreement or related issues further, please do not hesitate to call me.

Very truly yours,

Cass W. Christenson

CWC:ea

cc:    Richard D. Kirk, Esq (via e-mail)
       Mark Krietzman, Esq (via e-mail)
       Valerie W. Ho, Esq. (via e-mail)
       Jong P. Hong, Esq. (via e-mail)
       Steve P. Hassid, Esq. (via e-mail)
       Anne Shea Gaza, Esq (via e-mail)
       Frederick L. Cottrell, III, Esq. (via e-mail)
       Scott R. Miller, Esq. (via e-mail)
       Tracy R. Roman, Esq. (via e-mail)
       Jeffrey B. Bove, Esq. (via e-mail)
       Jaclyn M. Mason, Esq. (via e-mail)

# EXHIBIT 13

## Connor, Cormac

| | |
|---|---|
| **From:** | Christenson, Cass |
| **Sent:** | Friday, January 26, 2007 1:21 PM |
| **To:** | Connor, Cormac |
| **Subject:** | FW: deposition scheduling |

**From:** Scott Miller [mailto:SMiller@cblh.com]
**Sent:** Thursday, January 25, 2007 8:49 PM
**To:** Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com;
HoV@GTLAW.com
**Cc:** Manuel C. Nelson; Tracy Roman; Jaclyn M. Mason; Nancy Phillips
**Subject:** deposition scheduling

Counsel:
I have been able to confirm the following dates for depositions of the following ViewSonic witnesses at the McKenna Long
office in Los Angeles:

Tommy Jue - February 20
Sally Wang - March 2
Vivian Liu - March 22

We are checking on dates for the 2 other individual ViewSonic employees noticed by LPL, namely, Robert Ranucci
and Jeff Volpe  As we advised you long ago, Mr. Zapka is no longer a ViewSonic employee.

Please let me know ASAP if you wish to reserve these dates for these depositions as schedules can change  As for Mr
Jue, my understanding that he is assigned to Taiwan was erroneous

Regards,

Scott


Scott R. Miller
Connolly Bove Lodge & Hutz LLP
355 South Grand Ave
Suite 3150
Los Angeles, CA  90071

DID: 213-787-2510
Fax: 213-687-0498
Cell: 562-618-7771

smiller@cblh com

www cblh com

# EXHIBIT 14

**Connor, Cormac**

| | |
|---|---|
| **From:** | Christenson, Cass |
| **Sent:** | Friday, January 26, 2007 3:02 PM |
| **To:** | Connor, Cormac |
| **Subject:** | FW: deposition scheduling |

---

**From:** Christenson, Cass
**Sent:** Friday, January 26, 2007 3:01 PM
**To:** 'Scott Miller'; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HoV@GTLAW.com
**Cc:** Manuel C. Nelson; Tracy Roman; Jaclyn M. Mason; Nancy Phillips
**Subject:** RE: deposition scheduling

Scott:

Thank you for your email last night  We cannot agree to your proposed dates  Your proposed dates ignore our prior discussions about avoiding substantial time gaps between depositions, as we will be traveling to California for these depositions  In addition, as we have discussed, we intend to depose Rule 30(b)(6) witnesses after individual depositions  Further, we understand that Mr  Jue will testify as a Rule 30(b)(6) designee, and, therefore, as we have stated before, we would like to take his individual deposition when we depose him as a Rule 30(b)(6) designee  Indeed, you previously agreed and took the position that individual and designee depositions should not be separate events for the same witness

We appreciate that you have finally responded to our many requests to set a deposition schedule  Unfortunately, your proposal is incomplete as it does not account for other depositions of ViewSonic witnesses, nor has Tatung provided deposition dates  Further, as stated above, your proposal is not workable  Although we have no choice but to file a motion to compel, we hope that your email signals a new willingness to finally discuss these issues with us  If so, please let me know what times next week you (and counsel for Tatung) are available to talk

Regards,
Cass

---

**From:** Scott Miller [mailto:SMiller@cblh.com]
**Sent:** Thursday, January 25, 2007 8:49 PM
**To:** Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com; KrietzmanM@GTLAW.com; HoV@GTLAW.com
**Cc:** Manuel C. Nelson; Tracy Roman; Jaclyn M. Mason; Nancy Phillips
**Subject:** deposition scheduling

Counsel:
I have been able to confirm the following dates for depositions of the following ViewSonic witnesses at the McKenna Long office in Los Angeles:

Tommy Jue - February 20
Sally Wang - March 2
Vivian Liu - March 22

We are checking on dates for the 2 other individual ViewSonic employees noticed by LPL, namely, Robert Ranucci and Jeff Volpe  As we advised you long ago, Mr  Zapka is no longer a ViewSonic employee

Please let me know ASAP if you wish to reserve these dates for these depositions as schedules can change  As for Mr  Jue, my understanding that he is assigned to Taiwan was erroneous

Regards,

Scott


Scott R. Miller
Connolly Bove Lodge & Hutz LLP
355 South Grand Ave
Suite 3150
Los Angeles, CA  90071

DID:  213-787-2510
Fax:  213-687-0498
Cell: 562-618-7771

smiller@cblh.com

www.cblh.com

# EXHIBIT 15

222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Zip Code for Deliveries 19801

# THE BAYARD FIRM
### A    T    T    O    R    N    E    Y    S

⫛ MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395

WRITER'S DIRECT ACCESS
302-429-4242
astitzer@bayardfirm.com

BY HAND AND BY EMAIL

January 11, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, Delaware 19801

     Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;
           **U.S. District Court Case No. 04-343 JJF**

Dear Special Master Poppiti:

     I write on behalf of all parties in the above-referenced litigation to report to Your Honor regarding the agreements reached by counsel on the deposition locations and the status of on-going discussions addressing the subject matters of Rule 30(b)(6) depositions.

     First, counsel for all parties are agreeable to having the depositions of LPL's witnesses take place in Washington, D.C., at the offices of either Connolly Bove Lodge & Hutz LLP or Greenberg Traurig, LLP and the depositions of ViewSonic's and Tatung's witnesses take place in Los Angeles, CA at the offices of McKenna Long & Aldridge LLP.  Counsel hope to avoid the need to seek assistance from the Special Master during depositions.  If necessary, however, counsel will follow the Special Master's telephonic dispute resolution process for deposition disputes set forth in paragraph 10 of the Special Master's Discovery Dispute Procedures, recognizing that the Special Master may grant appropriate relief to remedy any deposition misconduct.  One issue remains unresolved to make this a complete agreement.[1]

---

[1] Defendants propose that, the parties acknowledge that, should Your Honor deem it necessary, the deposition will be moved to Wilmington, DE so that Your Honor may personally oversee the deposition.  ViewSonic's agreement to the location of LPL depositions is expressly conditioned on the understanding that the agreement as to deposition location does not prevent a party from requesting the Special Master relocate the deposition, if needed, as outlined above.  Defendants also propose that the parties acknowledge that Your Honor is empowered to order whomever

*(footnote continued on next page)*

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
January 11, 2007
Page 2

Second, counsel have engaged in a meet and confer regarding the Rule 30(b)(6)
deposition notices and objections thereto filed by each party. Plaintiff served objections to
Defendants' Rule 30(b)(6) topics on December 13 and December 21. ViewSonic and Tatung
served objections to LPL's Rule 30(b)(6) topics on January 5. Counsel are in the process of
exchanging and considering proposals to limit certain topics based on the requested subject
matter and to address other topics during expert discovery. The parties have agreed to reconvene
to further discuss the Rule 30(b)(6) deposition topics and objections thereto on January 17, 2007
at 3:00 p.m. EST and will report to Your Honor promptly thereafter. The parties are also
discussing and attempting to agree on the meaning of the Scheduling Order regarding the time
limits applicable to these depositions and deposition scheduling. Deposition dates remain to be
confirmed, but Defendants will not refuse to produce all witnesses until after LPL's
depositions.[2]

Third, counsel have discussed certain of Defendants' witnesses for which depositions may
be partially or wholly unnecessary if a deposition of that witness from a prior recent case can be
used in this case. Counsel for LPL will identify depositions of specific witnesses from other
cases for use in this case and counsel for Defendants will then consider whether to agree to allow

---

*(footnote continued from previous page)*

Your Honor believes is engaging in improper conduct to bear the costs of moving the deposition to Wilmington.
LPL has not agreed to any of these proposals, which were made in an effort to reach compromise regarding the
location of depositions. The proposal for where to conduct depositions was made by LPL, and Tatung has agreed to
LPL's proposal on deposition location. ViewSonic's attempt to condition the location on an agreed remedy is
premature. Originally, ViewSonic insisted that the Special Master should attend each deposition of LPL's
witnesses. Now, ViewSonic insists that the parties agree to a remedy on the unwarranted assumption that LPL will
engage in deposition misconduct. ViewSonic proposes that "should the Special Master deem it necessary, the
deposition will be moved to Wilmington, DE so that Your Honor may personally oversee the deposition. The
parties propose that whomever Your Honor believes is engaging in improper conduct be ordered to bear the costs of
moving the deposition to Wilmington." LPL has always maintained that any party can seek any desired relief for
deposition misconduct and that the choice of remedy is for the Special Master. LPL informed ViewSonic that there
is no need now, when no disputes even exist, to agree to a specific remedy that should apply, which is an issue for
the Special Master to decide if and when necessary. These issues can be addressed at the appropriate time based on
specific facts. Tatung has previously agreed to LPL's proposal on location.

[2] The defendants' agreement to extend the March 2, 2006 deposition deadline reported to Your Honor on January
10, 2007, was based on the express understanding that the defendants would voluntarily produce only one or two
witnesses before the February 22, 2007 deposition of LPL witnesses. LPL never indicated that this condition was
unacceptable and in fact expressly asked defendants to make the agreement to extend based on the assumption that
only one or two defendant depositions would take place before the February 22 LPL depositions. No agreement has
been reached concerning the number or identity of witnesses that Defendants will produce before LPL's depositions.
LPL disputes that Defendants may withhold all but 1-2 deposition witnesses and will seek relief from the Special
Master, if necessary. LPL intends to proceed with Defendants' depositions as soon as possible, but Defendant have
refused to ever provide a <u>single</u> proposed deposition date for any of their witnesses.

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
January 11, 2007
Page 3

such depositions to be used in this case, to the extent it has the necessary access to the deposition transcripts. In the event that the parties are unable to agree, LPL reserves the right to file an appropriate motion with the Court.[3]

Respectfully submitted,

Ashley B. Stitzer

cc: Counsel as shown on the attached certificate

---

[3] It is Defendants position that LPL should identify the efficiencies LPL expects to result from using such deposition testimony. ViewSonic will not waive its right to examine the witness in a deposition in this case even if the testimony comes in as LPL proposes, and ViewSonic will not stipulate to allowing the testimony to be used here without the right to fully examine the testimony. To do that, ViewSonic needs full access to the testimony of all witnesses. Presently, ViewSonic does not have access to the Tatung testimony, the LPL testimony, or the testimony of CPT or Jean Co. that would even permit further conversations to proceed among counsel. This situation requires the Protective Order in the other cases to be modified and that burden is on LPL, as noted by Your Honor during the December 28, 2006 teleconference. LPL disputes that Defendants lack access to their own clients' depositions in prior cases. The protective order allows the Defendants' counsel to have access to their depositions. Accordingly, there is nothing to prevent Defendants' counsel from engaging in good faith discussions regarding the use of their respective clients' prior depositions in this case.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on January 11, 2007, copies of the

foregoing document were served as follows:

BY EMAIL AND BY HAND:

Jeffrey B Bove, Esq
Jaclyn M. Mason, Esq
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


BY EMAIL AND BY U.S. MAIL:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


/s/ Ashley B. Stitzer (as3891)
Ashley B Stitzer

632604-1

# EXHIBIT 16

# Greenberg
# Traurig

Valerie W Ho
Tel 310 586 7700
Fax 310 586 7800
hov@gtlaw com

January 24, 2007

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

**Re:**   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
       **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

      I write in regard to LPL's Cross-Notice of Deposition and Subpoena of Hewlett-Packard Company (the "HP subpoena"). As you know, one of the issues currently pending before Special Master Poppiti is whether the Tatung Defendants are required to produce documents, including agreements and communications with their customers, that do not pertain to the products LPL has accused in this case. While the Special Master has not yet rendered a decision on this issue, we do expect a decision from him shortly.

      The HP subpoena served by LPL is an attempt to circumvent a potential ruling that may be favorable to the Tatung Defendants. LPL has subpoenaed HP for broad categories of confidential, commercially sensitive documents relating to the Tatung Defendants' business relationship with HP and has made no attempt to limit the information sought to the accused products at issued. Please be advised that the Tatung Defendants object to Topics 1-7 and Document Requests 1-8 on the grounds that they are not limited to the accused products. As such, the deposition topics and document requests are overly broad and seek information that is not relevant to any claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence. The topics and document requests are also overly broad because they are not limited as to time.

Cormac T. Connor
January 24, 2007
Page 2

---

Unless the parties can reach an immediate agreement regarding the scope of the HP subpoena, we intend to file a motion for protective order. Please advise regarding your availability for a meet and confer. We are generally available on January 25 or 26, 2007.

Very truly yours,

Valerie W. Ho

cc:    Scott Miller, Esq. (via e-mail)
       Richard Kirk, Esq. (via email)
       Jeffrey Bove, Esq. (via email)
       Frederick L. Cottrell, III, Esq (via email)
       Mark Krietzman, Esq. (via email)
       Frank Merideth, Esq. (via e-mail)

# EXHIBIT 17

**Connor, Cormac**

From:        Connor, Cormac
Sent:        Friday, January 26, 2007 11:21 AM
To:          'HoV@GTLAW com'
Cc:          rkirk@bayardfirm com: gaza@RLF com; smiller@cblh com; mnelson@cblh com;
             jbove@cblh com
Subject:     RE: LG  Philips LCD Co , Ltd  v  Tatung Company, et al  - Letter to Cormac Connor


We disagree with the contentions in your Jan. 24 letter, attached to your email below.
Among other things, we find that the discovery requested of third-party HP is entirely
proper and, in any case, we do not see how Tatung has standing to object to LPL's
subpoena.  We are willing, however, to discuss this matter with you on Tuesday   Please
propose a time.


Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel  202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

-----Original Message-----
From: HoV@GTLAW.com [mailto:HoV@GTLAW.com]
Sent: Wednesday, January 24, 2007 9:21 PM
To: Connor, Cormac
Cc: rkirk@bayardfirm.com; gaza@RLF.com; smiller@cblh.com; mnelson@cblh.com; jbove@cblh.com
Subject: LG. Philips LCD Co., Ltd. v. Tatung Company, et al. - Letter to Cormac Connor

Please see attached letter.  Thank you.
---------------------------------------------------------

     Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS
under Circular 230, we inform you that any U.S. federal tax advice contained in this
communication (including any attachments), unless otherwise specifically stated, was not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding
penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.


     The information contained in this transmission may contain privileged and
confidential information.  It is intended only for the use of the person(s) named above.
If you are not the intended recipient,  you are hereby notified that any review,
dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message. To reply to our email administrator directly,
please send an email to postmaster@gtlaw com.

---------------------------------------------------------

# EXHIBIT 18

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,    )
                                 )
          Plaintiffs,            )    C.A. No. 04-343(JJF)
                                 )
v.                               )
                                 )
TATUNG CO., TATUNG COMPANY OF    )
AMERICA, INC., and VIEWSONIC     )
CORPORATION,                     )
                                 )
          Defendants.            )

        Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Thursday, December 28, 2006, beginning at
approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

          THE BAYARD FIRM
          RICHARD D. KIRK, ESQ.
            222 Delaware Avenue, Suite 900
            Wilmington, Delaware  19899
            for Plaintiffs

                CORBETT & WILCOX
          Registered Professional Reporters
     230 North Market Street    Wilmington, DE 19899
                  (302) 571-0510
               www.corbettreporting.com
          Corbett & Wilcox is not affiliated
        with Wilcox & Fetzer, Court Reporters

Hearing

Page 198

1 look at some of them, that's fine. You may want me to
2 establish a date. If you are going to request that
3 others be shipped, I am going to expect that you are
4 going to pay for the shipment.
5      MR. AMBROZY: Correct, Your Honor.
6      SPECIAL MASTER POPPITI: And I further
7 expect that they will be inspected in Tatung's counsel's
8 office or designation -- a designated place of your
9 choice; correct?
10      MR. AMBROZY: That's correct, Your
11 Honor.
12      SPECIAL MASTER POPPITI: Do we want
13 dates when you either tell me you have made arrangements
14 and/or you tell me outside dates for inspection of those
15 26 that are presently available?
16      MR. MERIDETH: I think we can do it
17 within a week from tomorrow, Your Honor.
18      SPECIAL MASTER POPPITI: The inspection
19 or the representation?
20      MR. MERIDETH: The representation, if
21 not the inspection as well. It depends when they are
22 shipped.
23      MR. AMBROZY: If they are here in
24 California, we are talking about doing the inspection

Page 199

1 here, not --
2      SPECIAL MASTER POPPITI: We are talking
3 about doing the inspection of -- and I will take you at
4 your word, there are some that are too expensive to ship
5 unless they want to ship something expensive, and there
6 are some that would have to be trucked. I am concerned
7 about that in terms of the time frame unless --
8      MR. MERIDETH: They could be shipped air
9 freight, but they are just very large and they are not
10 properly packed.
11      MR. AMBROZY: That's what we can talk
12 about off-line. I think, going forward, we need an
13 agreement that anything of --
14      SPECIAL MASTER POPPITI: We will get to
15 that. Do go off-line and tell me what your agreement is,
16 and you will do that by when, the -- we will use the
17 same, the 8th? I just moved my calendar. Yeah, the 8th;
18 okay?
19      MR. AMBROZY: To be clear, Your Honor,
20 just for X size, we would be willing to go to California,
21 but going forward, anything under that X size would be
22 shipped to the East Coast?
23      SPECIAL MASTER POPPITI: Going forward,
24 I am just about to talk about. It seems to me if there

Page 200

1 are additional monitors that have yet to be shipped by
2 Tatung to your California offices, that they are just as
3 easily shipped to Delaware Tatung counsel's offices; is
4 that a fair statement?
5      MR. MERIDETH: Yes, sir.
6      But that may not be exactly true for
7 Tatung USA because their facilities are in Long Beach,
8 but I don't think we are talking about that many
9 situations, so I don't think it's going to be a big
10 problem going forward.
11      SPECIAL MASTER POPPITI: And with
12 respect to those arrangements, I'd like complete
13 definitions with respect to that by the 8th.
14      MR. AMBROZY: Yes, Your Honor.
15      MR. MERIDETH: Yes, Your Honor.
16      SPECIAL MASTER POPPITI: Now, what do
17 have to do with respect to other issues that you talked
18 about surrounding the inspection of monitors?
19      MR. AMBROZY: Your Honor, I want to be
20 clear that we are no longer limited to inspecting, and I
21 think, from the past half hour, it's obvious that we are
22 not limited to inspecting just accused monitors?
23      SPECIAL MASTER POPPITI: That's correct.
24      MR. AMBROZY: The other thing is, then,

Page 201

1 whether the 26 that have been produced, and if I could
2 refer Your Honor to the supplemental submission exhibit.
3      SPECIAL MASTER POPPITI: Just one
4 second. Exhibit No.
5      MR. AMBROZY: It is in the Tatung
6 Exhibit 14.
7      SPECIAL MASTER POPPITI: Exhibit 14,
8 correspondence dated December the 15th, 2006.
9      MR. AMBROZY: That's correct, Your
10 Honor. Going to page two, second full paragraph.
11      SPECIAL MASTER POPPITI: Yes.
12      MR. AMBROZY: It goes on to talk about
13 the Tatung has produced documents related to types of
14 mounting systems, and this is basically a -- letter
15 memorializing the meet and confer that occurred either
16 that day or the day before.
17      So, what we were looking for Your Honor
18 to do is give us some guidance on the mounting systems
19 because that was how -- it was a category used by Tatung
20 when they produced their documents in, I believe in
21 regard to the monitors as well.
22      MR. MERIDETH: I am not sure what you
23 need, what you want -- what it is that you want to know.
24      MR. AMBROZY: What we want to know is

Hearing

52 (Pages 202 to 205)

Page 202

1  Tatung, in its production -- and, Mr. Connor, please feel
2  free to jump in -- but I understand that Tatung, in its
3  production, did so according to mounting systems. And,
4  Cormae, I will let you jump in here.
5          SPECIAL MASTER POPPITI: If I understand
6  what you are saying in this paragraph is, although
7  mounting systems have been identified and product has
8  been identified, there is no marriage between the product
9  and the mounting systems?
10         MR. AMBROZY: That's correct, Your
11 Honor. And, so, if the mounting systems are going to be
12 representative, we would like to know what those
13 characteristics are and link those to either bates
14 numbers or --
15         SPECIAL MASTER POPPITI: Or product.
16         MR. AMBROZY: -- or model numbers or
17 something.
18         SPECIAL MASTER POPPITI: Model numbers,
19 yeah.
20         MR. MERIDETH: Well, assuming that we
21 were able to do that, which I suspect that we can,
22 although I don't know that anyone has yet done it, are
23 you going to be satisfied if we produce representatives
24 of the various mounting methods?

Page 203

1          MR. AMBROZY: If we understand the
2  representative mounting methods and then we have a
3  monitor for each representative model type or monitor
4  type, that would be perfect. Right.
5          To be clear, we would want to know what
6  the mounting system is, we would like to know what
7  monitor that we can actually inspect pertains to that
8  mounting system, and then what all other mount -- all the
9  other monitors that fall within that specific mounting
10 system.
11         MR. MERIDETH: I think we can do that
12 for Tatung Company products.
13         SPECIAL MASTER POPPITI: Okay.
14         MR. MERIDETH: I believe it will be more
15 complicated with regard to Tatung America products
16 because they are much more of a custom product, and,
17 also, Tatung America buys product from third parties who
18 don't necessarily share all of the working drawings,
19 etcetera, with us. But for Tatung Company, I think it
20 can be done and I will just have to see -- I will just
21 have to confirm that and see how quickly it can be
22 accomplished. I think it may be more complicated with
23 regard to Tatung America, but I need to confirm that.
24         MR. AMBROZY: Do you want to work on the

Page 204

1  date of January 19th?
2          MR. MERIDETH: Well, I thought maybe
3  what we could do is I can tell you, by January 8, whether
4  we can do it or not, and if we can do it, then we will do
5  it by the 19th.
6          SPECIAL MASTER POPPITI: That's good.
7  That's great. And if you can't and if we have to revisit
8  an issue, we can do that rather quickly.
9          MR. MERIDETH: Thank you, Your Honor.
10         MR. AMBROZY: Okay.
11         SPECIAL MASTER POPPITI: Does that deal
12 with all the issues involving products? Yes?
13         MR. AMBROZY: In regard to that motion,
14 I believe yes.
15         SPECIAL MASTER POPPITI: Thank you, sir.
16         MR. AMBROZY: Your Honor, one other
17 point of clarification.
18         SPECIAL MASTER POPPITI: Yeah.
19         MR. AMBROZY: I know that we already
20 closed on Viewsonic, but I am wondering if, just
21 depending on how all their monitor productions shaped
22 out, if we could have the opportunity to revisit with you
23 the Viewsonic monitors and have the same grouping of
24 representative monitor types?

Page 205

1          I guess what I am saying is I'd like
2  this to be the pending motion against the Viewsonic for
3  production of their monitors and technical documents.
4  Depending on what they find and what they are going to
5  report back to the Court on, I'd like to be able to
6  revisit this to get to representative monitor types for
7  that as well.
8          SPECIAL MASTER POPPITI: Well, it's
9  certainly something that I expect Viewsonic has been
10 paying very close attention to over the last 40 minutes.
11 It's something that is not before me, but I would
12 encourage that there be some discussion about it, and it
13 makes sense to land on the same solution.
14         MR. AMBROZY: Thank you, Your Honor.
15         MR. MILLER: Your Honor, I clearly have
16 been paying attention.
17         SPECIAL MASTER POPPITI: I am not
18 surprised.
19         MR. MILLER: The only issue I would
20 raise is that we have not -- I mean, that would be a work
21 product task we'd have to undertake. We haven't done
22 that to date, but if there is a natural grouping,
23 obviously, we will be prepared to work with them on that,
24 but we are not --

Hearing

Page 206

1      SPECIAL MASTER POPPITI: I understand.
2  I am not asking you to represent that there is a
3  commitment to do that.
4      MR. MILLER: Right. I just wanted to
5  make sure that you weren't --
6      SPECIAL MASTER POPPITI: No. Not at
7  all.
8      November 17th, 2006, Viewsonic's Motion
9  Regarding LPL's Assertion of New Claims. It was filed
10 11/17/06; answer was 11/22 and 11/30.
11     MR. MERIDETH: I believe that Tatung
12 also joined in that motion.
13     SPECIAL MASTER POPPITI: That's correct.
14 And that was the 11/30 response, I believe.
15     MR. MILLER: Your Honor, do you want me
16 to proceed?
17     SPECIAL MASTER POPPITI: Yes, please.
18     MR. MILLER: Well, I was struck by the
19 last colloquy about how, when they get a monitor, LPL is
20 in a position to be able to make an accusation.
21     The thrust of this motion is that LPL
22 has had monitors in its possession and chose not to make
23 an accusation of infringement of approximately 12 claims
24 until after the Markman process was well underway, after

Page 207

1  the parties had, pursuant to the scheduling order,
2  identified claim terms, after, pursuant to the scheduling
3  order, the parties had exchanged proposed construction.
4      And coming this late in the game to
5  significantly expand the scope of the claims to be
6  litigated, based on products, including the VX 900, which
7  was attached in the -- as a representative sample
8  according to LPL of Viewsonic products that were accused
9  of infringement, this is just a real problem in terms of
10 trying to be able to adequately defend this case and
11 efficiently utilize the Court's time for the claim
12 construction process.
13     We are not aware and they have not
14 submitted any justification that I can determine as to
15 why they were unable to make these assertions at the time
16 they did their original interrogatory responses as to the
17 VX 900 or as to other products that they had prior to the
18 case being filed.
19     So, we have a situation where we are
20 being -- we have been, you know, I hate to use the term
21 negatively, but we have been sandbagged with regards to a
22 lot of information and critical information about the
23 claims that are asserted to be infringed in this case and
24 dumped on us in the middle of the Markman process, and

Page 208

1  just categorically and fundamentally seems unfair to us
2  to allow this to happen.
3      It just threatens to massively drive up
4  the cost of litigation if we are going to go back and
5  redo the entire Markman process as to 12 new claims. I
6  think it's totally unfair.
7      SPECIAL MASTER POPPITI: Let me ask
8  this, and I certainly didn't -- I think I actually have
9  them sitting -- just a second. And I have not -- I have
10 not reviewed these. I only asked that they were pulled
11 from the docket as we began to work today. Perhaps I
12 should have done it sooner, but I didn't. Wait just a
13 second.
14     Your opening brief, or opening briefs,
15 if you will, were filed -- it looks like LG filed opening
16 brief on December 22nd, Viewsonic filed an opening brief
17 on the 26th, and Tatung was on the 22nd.
18     What did you do in this briefing with
19 respect to those newly asserted claims?
20     MR. AMBROZY: We briefed those terms as
21 did Viewsonic and Tatung.
22     MR. MILLER: Your Honor, what happened
23 is that during the claim construction process, the
24 disclosure claims, LPL identified four terms that were

Page 209

1  not in any of the claims they had asserted. We had asked
2  them to explain the basis for this and why it was
3  appropriate, and they did not come back and say, Well, we
4  intend to assert claims five, six, and seven or whatever
5  the claims that they now seek to put into play through
6  their November disclosure.
7      Instead, they sent us a letter saying,
8  We may assert claims somewhere within this broad range.
9  And, so, we have asked the Court to strike those as being
10 improperly presented to the Court as part of this
11 process.
12     It only adds, in my mind, to the
13 sandbagging that went on here by LPL in that they chose
14 to identify claim terms that they wanted construed out of
15 these new claims and didn't give us the ability, much
16 less the courtesy, of identifying those claims, even
17 informally, so that we could likewise identify terms, and
18 there are terms in those claims that Viewsonic, for one,
19 would believe need to be construed.
20     MR. AMBROZY: If I may respond?
21     SPECIAL MASTER POPPITI: Just a moment.
22     So, Mr. Miller, tell me, very precisely,
23 how you are prejudiced and tell me if there is, in your
24 view, any way that that prejudice can be cured?