222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Zip Code For Deliveries: 19801

# THE BAYARD FIRM

A   T   T   O   R   N   E   Y   S

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(Fax) 302-658-6395

Writer's Direct Access

(302) 429-4208
rkirk@bayardfirm.com

BY HAND AND BY EMAIL

January 31, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

       **Re:**    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;
           **U.S. District Court Case No. 04-343 JJF**

Dear Special Master Poppiti:

       This is Plaintiff LG.Philips LCD Co., Ltd.'s ("LPL") response to Defendants Tatung Company's and Tatung Company of America, Inc.'s (collectively, "Tatung") January 26, 2007 submission concerning LPL's December 22, 2006 motion to compel discovery regarding advice of counsel and due care. The Special Master permitted Tatung to brief whether Tatung has preserved an advice of counsel defense in this case. As explained below, Tatung has not asserted an advice of counsel defense by pleading or otherwise, and it would be unfair and prejudicial for Tatung to do so now (or, worse, at some indefinite future time after the close of discovery). The Special Master should therefore reject Tatung's request to postpone indefinitely – until after resolution of dispositive motions and the close of discovery – the time for Tatung to decide whether to assert an advice of counsel defense, waive privilege, and produce discovery. Tatung's refusal to provide discovery already has severely prejudiced LPL and Tatung has not filed any motion to bifurcate or stay discovery. In any event, bifurcation or a stay would be inappropriate and unfair.

       Advice of counsel is a defense to willful infringement that must be ***asserted***. Tatung argues that it need not formally plead advice of counsel as an affirmative defense, but this argument fails for two reasons. First, courts in this Circuit characterize advice of counsel as an affirmative defense, which therefore should be pled. *See, e.g., Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995); *see also Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 34 (D. Del. 1995) (alleged infringer's answer "asserts good faith reliance on advice of counsel as an affirmative defense"). Second, regardless of whether the defense must be pled, Tatung has never ***affirmatively asserted*** an advice of counsel defense ***in any way***, including in response to interrogatory answers or otherwise.[1] Tatung instead has consciously

---

[1] Tatung concedes that it has never affirmatively asserted an advice of counsel defense. (*See* Tatung's Jan. 8, 2007 Resp. at 2 ("The Tatung Defendants repeatedly have informed LPL that they have not yet decided whether to assert the advice of counsel defense.").) Tatung's failure to assert the defense is dispositive. Tatung cannot, moreover, suggest now that a bare, general denial of LPL's willfulness allegations somehow put LPL on notice that an advice of counsel defense is "an issue." (Tatung's Supp. Subm. at 3.) *See SmithKline Beecham Corp. v. Apotex Corp.*, No.

THE BAYARD FIRM

refused to assert an advice of counsel defense. Tatung's focus on the technical applicability of Rule 8(c), therefore, is misplaced. By failing to assert the defense in any way, and refusing to assert advice of counsel during fact discovery, Tatung has waived the right to assert such a defense. *See Edward Lowe Indus., Inc. v. Oil-Dri Corp. of Am.,* No. 94C 7568, 1995 WL 609231,\*\*5-6 (N.D. Ill. Oct. 13, 1995) (finding that "defendants elected to waive their advice of counsel defense" by asserting privilege throughout fact discovery, "even in opposition to [patent-holder's] motion to compel").

Tatung failed to plead an advice of counsel defense. (D.I. 186 & 187.) Tatung also failed to amend its pleadings by January 17, 2006, the deadline set forth in the Scheduling Order. Compounding this inaction, Tatung has refused for more than one year to state in response to LPL's interrogatories inquiring whether or not Tatung is asserting an advice of counsel defense. In November 2005, LPL served interrogatories asking whether Tatung was asserting any advice of counsel defense. (*See* Exs. 3 & 4 to LPL's December 22, 2006 L.R. 7.1.1 Certification [hereinafter "Cert."] at Interrogs. 5 & 6.) Tatung has dodged the issue by responding only that it has not yet decided whether to assert the defense. (*See id.*) Tatung maintained its deliberate indecision in the face of LPL's repeated written requests for information and during the parties' negotiations in December 2006.[2] (*See* Ex. 34 at 3 & Ex. 35 to Cert.) Tatung has had more than enough time to assert a defense had it chosen to do so. Even now, Tatung does not attempt to assert this new defense, requesting instead an unreasonable and unwarranted postponement of time and bifurcation of discovery.

Tatung has severely prejudiced LPL by using privilege claims to block critical discovery that LPL would have needed by now to prepare for and complete all fact depositions of Tatung's witnesses (and legal counsel who authored any opinions). At the same time, Tatung wants the ability to use this withheld discovery as a sword in the future against willful infringement. Tatung cannot use the attorney-client privilege as both a shield and a sword. *See, e.g., Oil-Dri Corp. of Am.,* 1995 WL 609231 at \*5; *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005). Timely disclosure of discovery is essential because, as the Third Circuit has explained, LPL must be able to test and explore relevant facts, such as: "what information had been conveyed by the client to counsel and vice-versa"; "whether counsel was provided with all material facts in rendering their advice"; "whether counsel gave a well-informed opinion"; and "whether that advice was heeded by the client." *Thompson*, 56 F.3d at 486.

Tatung should not be permitted to stay or bifurcate discovery, moreover, at this late date and without filing a proper motion. *See Computer Assocs. Int'l, Inc. v. Simple.Com, Inc.*, No. 02 Civ. 2748 DRH MLO, 2006 WL 3050883, \*5 (E.D.N.Y. Oct. 23, 2006) (bifurcation considered only upon a properly presented motion). LPL will begin taking Defendants' depositions in this case as soon as possible. LPL should be able to complete its depositions of the Defendants' witnesses on all claims and defenses without having to return to California to re-depose witnesses solely on the advice of counsel issue. In addition, there is substantial overlap between facts and discovery relevant to willful infringement and other issues on which discovery is proceeding. Indeed, Defendants have obtained

---

99-CV-4304 et al., 2005 WL 2436662, \*4 (E.D. Pa. 2005) (finding that a party's general denial of bad faith allegations did not inherently assert an advice of counsel defense).

[2] LPL disagrees with Tatung's new assertion that, at some unspecified time, Tatung previously disclosed that it (unlike ViewSonic) has obtained an opinion of counsel on which Tatung could attempt to rely. Tatung did not even raise this argument in its January 8 response brief. Instead, LPL's counsel first learned that such an opinion may exist during the January 19 hearing before the Special Master. (*See* Hr'g Tr. at 70-81, attached as Ex. A.) In any event, the existence of any opinion of counsel does not excuse Tatung's failure to act.

THE BAYARD FIRM

discovery from LPL concerning willfulness, and LPL is likewise entitled to complete discovery on willfulness issues.

Tatung acknowledges, moreover, that the so-called "adverse inference rule" pertaining to advice of counsel was recently abolished.[3] (*See* Tatung Supp. Subm. at 2 (citing *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004).) In *Knorr-Bremse*, the Federal Circuit held that "no adverse inference shall arise from invocation of the attorney-client privilege." *Knorr-Bremse*, 383 F.3d at 1344-45. "Given that the decision whether or not to assert the advice of counsel defense is no longer tainted by the possibility of an adverse inference, any intrusion into the attorney-client relationship is not undue." *Computer Assocs.*, 2006 WL 3050883 at *5. Accordingly, the decision whether to assert an advice of counsel defense and waive privilege does not warrant bifurcation of discovery or trial. *See, e.g., Trading Techs. Intern'l v. Espeed, Inc.*, 431 F. Supp. 2d 834, 839-41 (N.D. Ill. 2006).

Similar to the situation in *Trading Technologies*, bifurcating discovery or trial in this is inefficient and would be disproportionately burdensome to LPL because issues pertaining to liability, damages and willfulness are interrelated. *Id.* Even before *Knorr-Bremse*, courts recognized the inefficiency of staying willfulness discovery. *See, e.g., Cellpro*, 160 F.R.D. at 36 ("The stop-and-start of a stay of discovery and separate trials undermines our goal of working to apply the Rules of Civil Procedure to obtain a just, speedy and inexpensive resolution of every action."). Tatung should not be permitted to derail discovery and trial schedules, impose disproportionate burdens on LPL, and benefit from its unreasonable delay.

Consistent with Your Honor's prior rulings concerning ViewSonic and with comments made at the January 19 hearing concerning Tatung, LPL respectfully submits that Tatung has failed to assert an advice of counsel defense, has waived any such defense, and that allowing any advice of counsel defense to be asserted now or in the future would be unfair and prejudicial, as would be any motion to bifurcate discovery or trial.

Respectfully submitted,

Richard D. Kirk (rk0922)

cc:  Counsel as shown on the attached certificate

---

[3] In its January 8, 2007 response to LPL's motion to compel advice of counsel discovery, Tatung *failed to acknowledge Knorr-Bremse*, but still relied on pre-*Knorr-Bremse* law to contend unpersuasively that the decision whether to assert advice of counsel poses an unfair dilemma to Tatung. (*See* Tatung's Jan. 8, 2007 Resp. at 1-2 (citing *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991).)

# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,  )
                               )
          Plaintiffs,          )    C.A. No. 04-343(JJF)
                               )
     v.                        )
                               )
TATUNG CO., TATUNG COMPANY OF  )
AMERICA, INC., and VIEWSONIC   )
CORPORATION,                   )
                               )
          Defendants.          )

          Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Friday, January 19, 2007, beginning at
approximately 11:45 a.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

          THE BAYARD FIRM
          RICHARD D. KIRK, ESQ.
            222 Delaware Avenue, Suite 900
            Wilmington, Delaware  19899
            for Plaintiffs

                  CORBETT & WILCOX
            Registered Professional Reporters
     230 North Market Street    Wilmington, DE 19899
                  (302) 571-0510
              www.corbettreporting.com
            Corbett & Wilcox is not affiliated
          with Wilcox & Fetzer, Court Reporters

Page 70

1    the plaintiff, LG Phillips, LCD Company, Ltd.  With me on
2    the line in Washington are my colleagues from McKenna,
3    Long & Aldridge.  I believe that we have Cass
4    Christenson, Rel Ambrozy, and Cormac Connor.
5          MR. AMBROZY:  And that's all, Dick.
6          MR. KIRK:  Thank you.
7          MS. GAZA:  Your Honor, Anne Gaza for
8    Richards, Layton & Finger on behalf of the Tatung
9    defendants.  With me, I believe, are Frank Merideth and
10   Valerie Ho from Greenberg Traurig.
11         MR. MERIDETH:  Yes.  This is Frank
12   Merideth.  I think Valerie Ho will join us in a moment
13   but we need not wait for her.
14         SPECIAL MASTER POPPITI:  Thank you.
15         We are turning, then, to the Tatung
16   motions that were filed on December 22, and as we begin
17   to focus on that, I guess my first question with respect
18   to the motion addressing the issue of advice of counsel
19   is, quite simply, as a practical matter, I expect that I
20   have already addressed that in the matter that raises the
21   same issue as it relates to Viewsonic, have I not?
22         MR. MERIDETH:  With respect to the
23   opinion of counsel, Your Honor?
24         SPECIAL MASTER POPPITI:  Yes.

Page 71

1          MR. MERIDETH:  You did address it with
2    respect to Viewsonic; however, we, I think, at Tatung,
3    are in a little bit of a different position in the
4    following respect.
5          SPECIAL MASTER POPPITI:  Has it been
6    pled?
7          MR. MERIDETH:  No, sir.
8          MR. CHRISTENSON:  Your Honor, our
9    position is that this is clearly in the same posture as
10   Your Honor determined with respect to Viewsonic.
11         SPECIAL MASTER POPPITI:  I will
12   certainly hear why there is an expectation that it is
13   different.
14         MR. MERIDETH:  The reason that I believe
15   it is different in this case, which I think is -- or in
16   our instance, which I think is unlike the Viewsonic
17   instance, we have notified LPL that we have an opinion of
18   counsel.  We have been discussing with LPL when the
19   election would be made or when the decision would be made
20   by us as to when -- as to whether we are going to assert
21   that opinion of counsel, and, consequently, waive
22   whatever privileges may result.
23         That is different, I think, in terms of
24   posture than the Viewsonic situation was in.

Page 72

1    Unfortunately, those discussions have ceased because LPL
2    views, based upon your ruling with Viewsonic, that they
3    need no longer address that issue with us.
4          It is our view that the problem that we
5    confront is one of timing because of the seriousness of
6    the waiver issues that arise with respect to the
7    assertion of this defense.
8          In our case, the only discussions that
9    we have had have been related to timing, not related to
10   the issue of whether or not we have an opinion.
11         With all due respect, we have looked at
12   this issue of whether or not advice of counsel must be
13   alleged as an affirmative defense and the law is not very
14   clear.  However, what we have discovered, in the course
15   of researching the issue, is that the courts seem to take
16   the approach, because of the seriousness of the waiver
17   issue, that the timing of the decision to pursue an
18   opinion or to rely on the advice of counsel is important
19   and should be, and, in many cases, is deferred until the
20   later stages of the litigation when the issues are much
21   clearer and the ramifications of the waiver that would
22   ensue are much more understandable.
23         SPECIAL MASTER POPPITI:  Well, let me
24   ask this, and I don't take anything you have said

Page 73

1    lightly.  I mean, we are, in fact, dealing with the most
2    significant, most respected privilege under our system of
3    jurisprudence.
4          At the same time, isn't it fair to say
5    that the conversation you are wanting to have is one that
6    should be had with Judge Farnan in the first instance and
7    not with me?
8          I mean, if what you are saying is that
9    you have some law or some guidance that suggests that
10   advice of counsel does not have to be pled, then what you
11   may be saying is you want to bring that to my attention.
12   I don't think you have unless I have missed something
13   here.
14         MR. MERIDETH:  Yes, we can bring that to
15   your attention.  But what I am suggesting is that we may
16   not need to address that issue, necessarily, if we can
17   reach an agreement with respect to timing.
18         SPECIAL MASTER POPPITI:  Oh, I don't
19   disagree.  I mean, if --
20         MR. MERIDETH:  We can go through that
21   step, and if your view ultimately is that an affirmative
22   defense needs to be asserted, then we would amend and
23   assert it and then we'd come back to the issue of timing.
24   I'd just as soon skip that intervening step, but we can

20 (Pages 74 to 77)

Page 74

1  do that if LPL insists that we do it.
2       SPECIAL MASTER POPPITI:
3  Mr. Christenson.
4       MR. CHRISTENSON: Your Honor, to respond
5  to the argument, first of all, the argument being made, I
6  believe, is very similar, if not identical, to
7  Viewsonic's argument. Tatung's position is that they
8  should have more time and be able to defer their decision
9  because the issue of whether to waive privilege is a
10 significant issue. Viewsonic made that same argument.
11      SPECIAL MASTER POPPITI: It did.
12      MR. CHRISTENSON: However, as Your Honor
13 concluded, there was nothing in the pleadings asserted by
14 Viewsonic, and, similarly, there has been nothing in the
15 pleadings asserted by Tatung.
16      In addition, Your Honor, there has been
17 no motion filed by any defendant to extend the time
18 either to make it an election on this issue or to
19 bifurcate discovery or to extend the time to amend
20 defenses.
21      Discovery in this case is about to close
22 under the current schedule. Our position, as set forth
23 in our papers, was that, to the extent this is an issue
24 in the case, we would need to obtain immediately all

Page 75

1  relevant discovery on this issue so that we could close
2  our discovery under the schedule. But, again, I believe
3  that the same rationale and analysis that you have
4  discussed with respect to Viewsonic applies to Tatung.
5       And another thing I would note is, in
6  Interrogatory No. 6, LPL had asked Tatung to state
7  whether it intended to rely on any legal opinions for
8  advice as part of its defense, and if so, to identify
9  each such legal opinion. And they responded by stating
10 that they have not yet determined which defenses they
11 will pursue, including whether they will rely on any
12 advice of counsel as a defense.
13      SPECIAL MASTER POPPITI: Well, you
14 brought -- and you have advised me of that.
15      MR. CHRISTENSON: And, so, we think
16 that, by not making a decision, essentially, they have
17 made their decision and that you should reach the same
18 conclusion that you reached with respect to Viewsonic.
19      SPECIAL MASTER POPPITI: Let me ask this
20 question: The authority that you are suggesting you are
21 aware of, Mr. Merideth, is that from this District's
22 Court or from the Third Circuit?
23      MR. MERIDETH: I am not familiar with
24 all of the authorities. There is one case that is not

Page 76

1  from the Third Circuit that I would like to bring to your
2  attention that has to do with the timing of the
3  disclosure which I think --
4       SPECIAL MASTER POPPITI: I understand
5  the sensitivity with respect to timing, and, again, you
6  can expect that, although I certainly have the
7  opportunity to have input to the Court with respect to
8  scheduling prior to trial, that is usually focused on
9  issues involving discovery, not on issues involving
10 substance.
11      MR. MERIDETH: Well, I understand,
12 although I think the recent scheduling order indicated
13 that substantive motions should first be brought to your
14 attention.
15      SPECIAL MASTER POPPITI: Well, that's
16 correct. The way I view that, the language in that
17 scheduling order, I expect, and let me turn to it
18 again -- although I have put it aside for purposes of
19 moving on in our business -- that refers squarely to
20 paragraph nine and it assigns to me initial decision
21 regarding any case dispositive motions.
22      MR. MERIDETH: Okay. Well, then we can
23 -- I mean, the problem that I have, frankly, is that we
24 were in the midst of a meet and confer about the timing

Page 77

1  with respect to disclosure and the election to rely on
2  the opinion of counsel, the decision that you made with
3  respect to Viewsonic, which I think is in a different
4  category for the reasons that I have previously
5  explained, came down, and those discussions have ceased.
6       If what we have to do is now file a
7  motion --
8       SPECIAL MASTER POPPITI: Well, again --
9       MR. MERIDETH: -- we will do it. It's
10 not a problem. And if it has to be filed with Judge
11 Farnan, we will do it.
12      SPECIAL MASTER POPPITI: It's not a
13 motion before me, is it? Again, as I read the language
14 in the scheduling order, which still stands, at paragraph
15 seven of that order, "All motions to amend the pleadings
16 shall be filed on or before January 17, 2006," and I
17 think what you are telling me is that you don't view this
18 to be -- you don't -- you don't believe that an amended
19 pleading is necessary here?
20      MR. MERIDETH: That's correct. And we
21 will brief that issue and request the Court to establish
22 the dates. And I don't think there is any necessity to
23 meet and confer because we have met and conferred and
24 they have terminated those discussions.

Page 78

1      MR. CHRISTENSON: That's not a fair
2  characterization. But, in any event --
3      MR. MERIDETH: They have specifically
4  denied --
5      MR. CHRISTENSON: If I may finish? In
6  any event, it sounds like there is some contention as to
7  file a motion to bifurcate discovery with respect to
8  willfulness at this point. There are a lot of reasons we
9  would oppose that, but I guess it doesn't serve any
10  purpose to go into that at this point.
11      It sounds, just listening to the
12  discussion today, it sounds to me like Tatung's intent is
13  not to seek to extend the time to amend defenses because
14  they feel that this is not an appropriate defense. It
15  sounds to me like they feel that the motion they would
16  bring is a motion to bifurcate discovery with respect to
17  advice of counsel, which, of course, the defendants have
18  sought affirmatively discovery related to willfulness
19  from LPL, and for them to now seek to bifurcate discovery
20  from them seems unworkable to me but it doesn't sound
21  like an issue that's pending that we would be dealing
22  substantively with today.
23      SPECIAL MASTER POPPITI: We wouldn't be
24  dealing with it substantively today, and I think it would

Page 79

1  be inappropriate for me to provide any other view than
2  the view that I took in the Viewsonic matter in terms of
3  whether or not this defense is one that should be pled.
4      I am happy to be informed on that issue,
5  if that's what you choose to do, and, at the same time,
6  you may be wanting to measure whether you should be
7  seeking Judge Farnan's attention in terms of an
8  amendment. But I leave that to you.
9      MR. MERIDETH: I understand. But I am
10  not sure that, even if I were able to persuade you, which
11  I feel reasonably confident we could, that an affirmative
12  defense of advice of counsel is not required, I think you
13  have said you are not in a position to address that issue
14  in any event.
15      SPECIAL MASTER POPPITI: No, I didn't
16  say that. I want you to, if you believe that you -- if
17  you have authority that you want me to be made aware of
18  which suggests that you are in a position to ask that I
19  do something with respect to the discovery and that I am
20  in a position to do something with respect to when you
21  identify whether or not you intend to assert advice of
22  counsel, then I want to be aware of that.
23      MR. MERIDETH: Okay. I would be happy
24  to brief that issue.

Page 80

1      SPECIAL MASTER POPPITI: And I need a
2  time frame and I want it to be a short time frame
3  because, certainly, at least with respect to Viewsonic,
4  and you say you are postured differently than them, but
5  with respect to that, that record is closed, it's sitting
6  on a desk waiting for some attention, and I expect it may
7  be moving its way up to Judge Farnan.
8      MR. MERIDETH: We could file our brief
9  on that next week.
10      SPECIAL MASTER POPPITI: By when,
11  please?
12      MR. MERIDETH: Friday.
13      SPECIAL MASTER POPPITI: Okay.
14  Mr. Christenson, when do you need?
15      MR. CHRISTENSON: Your Honor, as a
16  preliminary matter, obviously, as I mentioned, we feel
17  that it's far too late in the day for them to be seeking
18  now to bifurcate.
19      SPECIAL MASTER POPPITI: I understand
20  your position.
21      MR. CHRISTENSON: But in terms of a
22  response date, Your Honor, if you are permitting them to
23  file a motion next Friday --
24      SPECIAL MASTER POPPITI: It's really

Page 81

1  supplementing what I already have.
2      MR. CHRISTENSON: I may have
3  misunderstood. Just so I am clear, I guess is it your
4  intention, then, to receive supplemental submissions on
5  this pending motion with respect to providing case law
6  and related arguments?
7      SPECIAL MASTER POPPITI: Yes. And if I
8  am persuaded by the case law, then, clearly, we have to
9  have some further discussion.
10      MR. CHRISTENSON: If they file their
11  submission on next Friday, Your Honor, we should be able
12  to respond by the following Wednesday.
13      SPECIAL MASTER POPPITI: Okay. Pages,
14  please?
15      MR. CHRISTENSON: I would propose two
16  pages at the most, each side.
17      MR. MERIDETH: Three might be better.
18      SPECIAL MASTER POPPITI: I can live with
19  three.
20      MR. MERIDETH: Thank you, Your Honor.
21      SPECIAL MASTER POPPITI: Mr. Kirk, since
22  you are on the line with this, would you do the courtesy
23  of memorializing this section of our work today?
24      MR. KIRK: Yes, I will, Your Honor.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on January 31, 2007, copies of the

foregoing document were served as follows:

BY EMAIL AND BY HAND:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

BY EMAIL AND BY U.S. MAIL:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

632604-1