# CASE 1

Westlaw.

56 F.3d 476                                                                                                                Page 1
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

▷

United States Court of Appeals,
Third Circuit.
GLENMEDE TRUST COMPANY; Pepper,
Hamilton & Scheetz, Petitioners,
v.
B. Ray THOMPSON, Jr.; Juanne J. Thompson;
Catherine V. Thompson; Adella S.
Thompson; B. Ray Thompson, III; Sarah Thompson
Tarver; Rebekah L. Thompson;
B. Ray Thompson, Jr., as Trustee of Five Thompson
Family Trusts; Juanne J.
Thompson, as Trustee of Five Thompson Family
Trusts; Dale A. Keasling, as
Trustee of Five Thompson Family Trusts,
Respondents,
v.
The Honorable Herbert J. HUTTON, United States
District Judge, Nominal
Respondent.
No. 94-2189.

Argued March 29, 1995.
Decided May 23, 1995.

In action against trust company, the United States District Court for the Eastern District of Pennsylvania, Herbert J. Hutton, J., 1993 WL 524836, 1994 WL 121035, 1994 WL 689046, required company's law firm to disclose documents, denied motion for protective order, and rejected company's motion for reconsideration. Law firm and trust company petitioned for writ of mandamus. The Court of Appeals, Mansmann, Circuit Judge, held that: (1) law firm and trust company failed to satisfy "good cause" requirement for issuance of umbrella protective order concerning documents disclosed in discovery in reliance on confidentiality agreement, and (2) attorney-client privilege was waived as to all communications.

Petition denied.

West Headnotes

**[1] Federal Courts** 🔑524
170Bk524 Most Cited Cases
Issuance of writ under All Writs Act must aid some present or potential exercise of appellate jurisdiction. 28 U.S.C.A. § 1651(a).

**[2] Mandamus** 🔑141
250k141 Most Cited Cases
Court of Appeals had jurisdiction to consider petition for writ of mandamus in diversity action potentially within appellate jurisdiction. 28 U.S.C.A. § 1651(a).

**[3] Mandamus** 🔑1
250k1 Most Cited Cases
Court of Appeals' writ power should be invoked only in extraordinary situations, i.e., only in limited circumstances where party seeking issuance has no other adequate means to attain desired relief and establishes that right to writ is clear and indisputable. 28 U.S.C.A. § 1651(a).

**[4] Mandamus** 🔑7
250k7 Most Cited Cases
Issuance of writ of mandamus is matter of discretion once party seeking issuance satisfies prerequisites of showing lack of other adequate means to attain desired relief and establishes clear and indisputable right to writ. 28 U.S.C.A. § 1651(a).

**[5] Mandamus** 🔑4(4)
250k4(4) Most Cited Cases
Law firm and client seeking writ of mandamus to protect confidentiality of documents disclosed in discovery lacked all means of appellate review except post-production mandamus petition to remedy potential damage from public disclosure.

**[6] Mandamus** 🔑28
250k28 Most Cited Cases

**[6] Mandamus** 🔑32
250k32 Most Cited Cases
Mandamus is not available for abuse of discretion, but Court of Appeals may exercise mandamus jurisdiction regarding denial of protective order if it finds that district court committed clear error of law. 28 U.S.C.A. § 1651(a).

**[7] Records** 🔑32
326k32 Most Cited Cases
General allegations by law firm and trust company client that injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents after they were disclosed in litigation in reliance on confidentiality agreement did not satisfy "good cause" for issuance of umbrella

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

56 F.3d 476 Page 2
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

protective order; law firm and client were unable to articulate any specific, cognizable injury from dissemination. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[8] Records** 32
326k32 Most Cited Cases
"Good cause" for protective order with regard to discovery materials is established when it is specifically demonstrated that disclosure will cause clearly defined and serious injury; broad allegations of harm, unsubstantiated by specific examples, will not suffice. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[9] Records** 32
326k32 Most Cited Cases
Party seeking protective order had burden of establishing good cause to protect umbrella of confidentiality established by confidentiality agreement. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[10] Records** 32
326k32 Most Cited Cases
District court was not required to enter protective order merely to preserve for appellate review determinations that exception to attorney-client privilege applied. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[11] Records** 32
326k32 Most Cited Cases
Requiring issuance of protective order in all circumstances where district court has determined that exception to attorney-client privilege applies thwarts policy of open proceedings absent showing of good cause to close them. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[12] Witnesses** 219(3)
410k219(3) Most Cited Cases
Attorney-client privilege may be waived by client who asserts reliance on advice of counsel as affirmative defense.

**[13] Witnesses** 219(3)
410k219(3) Most Cited Cases
Trustee for charitable trust waived attorney-client privilege as to all communications, both written and oral, to or from counsel as to entire transaction which involved corporation's repurchase of stock from charitable trust and for which trustee's investment clients sued trustee; trustee placed at issue advice related to structure of transaction--identity of parties and number of shares to be repurchased--and testing advice of counsel defense regarding why only certain charitable trusts were included in transaction necessarily encompassed more than tax advice.

**[14] Witnesses** 219(3)
410k219(3) Most Cited Cases
Party asserting defense of reliance on advice of counsel should not be permitted to define selectively subject matter of advice of counsel on which it relied in order to limit scope of waiver of attorney-client privilege and therefore scope of discovery.

**[15] Records** 32
326k32 Most Cited Cases
Defendant and its law firm were not entitled to sealing of district court opinions and hearing transcript and removal from public access all opinions and pleadings that referenced law firm's documents disclosed in discovery, since attorney-client privilege was waived as to all communications and defendant and law firm were not entitled to protective order.

**[16] Records** 32
326k32 Most Cited Cases
Right of access to judicial records is beyond dispute.
**478** William A. Slaughter, Alan J. Davis, Esquire (argued), Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for petitioner Glenmede Trust Co.

William T. Hangley, (argued), Sara M. Staman, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, for petitioner Pepper, Hamilton & Scheetz.

Michael C. Spencer, (argued), Milberg, Weiss, Bershad, Hynes & Lerach, New York City, James J. Binns, James J. Binns, P.A., Philadelphia, PA, for respondents.

Before: MANSMANN, COWEN and LEWIS, Circuit Judges.

### OPINION OF THE COURT

MANSMANN, Circuit Judge.

Before us is a Petition for Writ of Mandamus filed by a law firm and its client, a trust company which is a defendant in the underlying diversity action involving claims for breach of fiduciary duty, fraud, breach of contract and negligence, arising from the trust company's role in a stock repurchase

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

56 F.3d 476                                                                                                            Page 3
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

transaction. They jointly seek a writ directing the district court to vacate and reverse its orders compelling the law firm to comply with a subpoena duces tecum requesting its file relating to all work it performed for the client regarding the repurchase transaction.

They also seek a writ directing the district court to vacate and reverse its order denying their request for a protective order to enforce the umbrella of confidentiality established by a confidentiality agreement stipulated to by the parties to the underlying dispute, but which was never embodied in an order of the district court. In that regard, the specific issue we must decide is whether general allegations of embarrassment and injury to professional reputations and client relationships satisfies the "good cause" requirement for the issuance of an umbrella protective order pursuant to our recent decision in *Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir.1994)*. The law firm and its client assert that they will be unable to rectify the harm to their reputations and client relationships if the law firm's privileged documents are publicly disseminated.

We find that although they have established that there are no alternative avenues of appeal for these discovery orders, the law firm and the client trust company have failed to establish their clear and indisputable right to the writ. They failed to establish "good cause" for the protection of all of the law firm's file documents pursuant to the confidentiality *479 agreement. Nor have they demonstrated that the district court erred in determining that the scope of the client's waiver of the attorney-client privilege, by injecting the client's reliance on advice of counsel as an issue in the underlying action, extended to the entire transaction, including back-up documents.

Accordingly, we decline to issue the requested writs.

I.

Glenmede Trust Company ("Glenmede") is a Pennsylvania trust company that serves as the trustee for several charitable trusts, including the Pew Charitable Trusts. [FN1] Glenmede also serves as a trustee for a number of private trusts and acts as an investment advisor pursuant to a written contract for other clients. B. Ray Thompson, Jr., several members of his family [FN2] and the trustees [FN3] of five trusts established by B. Ray Thompson, Sr. for the benefit of his five grandchildren (collectively "the Thompson Family") were investment advisory clients of Glenmede. Prior to September 11, 1990, both the Pew Charitable Trusts and the Thompson family held substantial shares of Oryx Energy Company stock; the Pew family's Oryx holdings totalled in excess of 25 million shares and the Thompson family's Oryx holdings totalled approximately 2.9 million shares. In mid-1990, Glenmede broached, with Oryx management, the subject of a direct buy-back of Oryx shares held by the Pew Charitable Trusts. Oryx was willing to repurchase a maximum of 18 million shares at a premium price per share but requested that buy-back discussions be kept confidential. Given the limitations on the buy-back, Glenmede consulted its counsel, Pepper, Hamilton & Scheetz, as to whether the Oryx transaction could be extended to include Glenmede's private trust and investment advisory clients. [FN4]

> FN1. The Pew Charitable Trusts are comprised of the Pew Memorial Trust, the J. Howard Pew Freedom Trust, the Mabel Pew Myrin Trust, the Trust under Paragraph 9 of the Will of J.N. Pew, Jr., and the Trust under the Will of Ethel Pew.
>
> FN2. These include B. Ray Thompson's wife, Juanne J. Thompson, and his five children, Adella S. Thompson, Sarah Thompson Tarver, Rebekah L. Thompson, Catherine V. Thompson and B. Ray Thompson, III.
>
> FN3. The trustees are B. Ray Thompson, Jr., Juanne J. Thompson and Dale A. Keasling.
>
> FN4. Pepper Hamilton had a long-standing relationship with Glenmede and the Pew family. It incorporated Glenmede in 1956, drafted the trust instruments for the Pew charitable trusts administered by Glenmede, and attended all meetings of Glenmede's Board of Directors. A partner of Pepper Hamilton always served as the secretary and a board member of Glenmede.

Pepper Hamilton issued an Opinion Letter dated September 6, 1990 advising Glenmede that the buy-back transaction could not be structured to include private clients of Glenmede as to do so may violate Internal Revenue Code prohibitions on private foundations. [FN5] Pepper Hamilton further advised Glenmede that it could not notify its private clients of the buy-back negotiations between Oryx and Glenmede acting in its capacity as trustee of the Pew

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

56 F.3d 476                                                                                                              Page 4
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

Charitable Trusts. On September 11, 1990, Oryx repurchased through Glenmede 18 million of its common shares held by the Pew Charitable Trusts and converted the remaining 7.3 million common shares held by the Pew Charitable Trusts to convertible preferred shares. Allegedly, based on the Opinion Letter from Pepper Hamilton, Glenmede excluded its private clients with holdings of Oryx stock from the buy-back transaction.

> FN5. The Opinion Letter contained Pepper Hamilton's legal "opinion concerning the inclusion of certain private trusts and estates in transactions which may be undertaken by the Glenmede Trust Company on behalf of the charitable trusts for which it is trustee."

In September of 1992, the Thompson family brought an action against Glenmede, its parent Glenmede Corporation, a number of Glenmede officers and directors and the Chairman and CEO of Oryx, who was dismissed from this action, asserting, *inter alia,* claims for breach of fiduciary duty, fraud, breach of contract, and negligence, all allegedly arising from Glenmede's role in the September 11, 1990 buy-back transaction, in which Oryx repurchased 18 million of its shares from Glenmede as trustee of the Pew Charitable Trusts. Glenmede raised as its **\*480** Fourteenth affirmative defense to these charges that it "was advised by counsel that it was legally precluded by Internal Revenue Code prohibitions from including Oryx shares held by other accounts in the repurchase transaction."

Glenmede concedes that the impact of placing at issue its reliance on advice of counsel was a waiver of the attorney-client privilege limited to the subject matter placed at issue. Glenmede admitted only to a waiver of the attorney-client privilege relating to the subject matter of the Opinion Letter, which it submits is broader than tax advice which is the primary subject of the Opinion Letter, but narrower than the totality of the advice rendered regarding the buy-back transaction. [FN6] In accordance with its position, Glenmede produced the Pepper Hamilton Opinion Letter and a draft Opinion Letter in response to discovery requests served by the Thompson family.

> FN6. Glenmede admitted at oral argument that the waiver was broader than tax advice but narrower than the entire transaction. Glenmede, however, did not offer further specificity regarding the scope of its waiver of the attorney-client privilege.

In response to the Thompson family's concern regarding the production of financial records, the parties stipulated to a "Confidentiality Order" restricting the disclosure of documents to be produced and establishing measures to maintain confidentiality pending an appeal from final judgment. As evidenced by the terms of the confidentiality agreement, the parties contemplated the wholesale adoption of that agreement by the district court. Although it was filed with the district court for approval, it was never endorsed in an order of court. Nevertheless, the parties complied with its terms, including the filing of pleadings under seal.

On July 30, 1993, the Thompson family served a subpoena duces tecum on Pepper Hamilton, requesting its entire file concerning services performed for Glenmede in connection with the buy-back transaction. Pepper Hamilton and Glenmede objected to the production of Pepper Hamilton's file on the basis of the attorney-client privilege. On October 18, 1993, the Thompson family filed a motion to compel the production of the file, arguing that Glenmede waived the attorney-client privilege because it raised reliance on advice of counsel pertaining to the buy-back transaction as an affirmative defense to the Thompson family's claims. The Thompson family further contended that Glenmede's concern regarding the production of Pepper Hamilton's file was unwarranted given the protection afforded by the confidentiality agreement to which the parties stipulated.

By Memorandum and Order dated December 14, 1993, the district court granted the Thompson family's motion to compel, concluding that Glenmede waived its attorney-client privilege concerning all communications, whether written or oral, to or from counsel, regarding the buy-back transaction. The district court ordered that Pepper Hamilton produce its entire file for services performed on behalf of Glenmede pertaining to the buy-back transaction, including all back-up documents to the Opinion Letter. Glenmede and Pepper Hamilton moved for reconsideration of that Memorandum and Order, challenging the district court's conclusion that their invocation of the defense of reliance on advice of counsel resulted in a waiver of the attorney-client privilege encompassing all services Pepper Hamilton performed in connection with the buy-back transaction. [FN7] Glenmede asserted that its waiver was limited to tax advice embodied in the Opinion Letter. By Memorandum and Order dated April 8, 1994, the district court rejected Glenmede's motion for reconsideration on the basis that the Opinion

Letter discussed a number of issues in addition to tax advice, including insider trading and the financial ramifications of the transaction. The district court also concluded that Pepper Hamilton's involvement in structuring and closing the transaction required the production of back-up documents to the Opinion Letter to permit the Thompson family to analyze the reasonableness of Glenmede's reliance on the advice of counsel.

> FN7. At no time did Pepper Hamilton and/or Glenmede seek an in camera inspection of the file documents they sought to preclude from discovery.

**\*481** Glenmede and Pepper Hamilton did not seek a writ of mandamus for immediate relief from the district court's orders compelling the production of documents; they opted to defer appellate review of the district court's rulings until final judgment. Instead, Pepper Hamilton produced in excess of 13,000 documents in compliance with the district court's orders.

On June 20, 1994, Glenmede and the other defendants filed a motion for summary judgment under seal, attaching several Pepper Hamilton file documents for which the attorney-client privilege had been asserted but deemed waived by the district court. On June 27, 1994, the Thompson family challenged the "confidential" designation of the Pepper Hamilton file documents and notified Glenmede of their intent to treat them as non-confidential. [FN8] On July 18, 1994, Glenmede and Pepper Hamilton moved for a Protective Order objecting to the Thompson family's wholesale challenge to the confidentiality of the documents. The Thompson family cross-moved to unseal the summary judgment documents filed under seal by Glenmede and the other defendants.

> FN8. The confidentiality agreement provided a mechanism for challenging the designation of documents as "confidential"-- provide notification to the producing party of challenge to confidentiality, the parties confer in an attempt to resolve the challenge and, if no agreement can be reached, seek court intervention. The Thompson family mounted this challenge despite their representations to the district court that Glenmede and Pepper Hamilton's concerns regarding public disclosure were unwarranted in light of the protection afforded by the stipulated confidentiality agreement. Given our expectation that parties operate in good faith during discovery, we note that this challenge closely followed our decision in *Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir.1994)*, regarding the impropriety of the issuance of broad confidentiality orders, which signaled a shift from the previous practice of judicial endorsement of such stipulations.

On October 21, 1994, the district court heard arguments on the pending motions. [FN9] It directed the parties to negotiate the issues raised in the motion for protective order and to present a motion for the confidential treatment of particular documents or categories of documents. Glenmede, Pepper Hamilton and the Thompson family, however, were unable to reach an agreement regarding the confidential status of the Pepper Hamilton file documents. By Memorandum and Order dated November 22, 1994, the district court granted the Thompson family's motion to amend the complaint to assert claims against individual Pepper Hamilton attorneys, quoting from a number of the Pepper Hamilton file documents. By Memorandum and Order dated November 29, 1994, the district court denied Glenmede and the other defendants' motion for summary judgment.

> FN9. The motions included Glenmede and the other defendants' motion for summary judgment, Glenmede's motion for protective order and the Thompson family's motion to add Pepper Hamilton attorneys as defendants on the basis of information culled from the Pepper Hamilton file documents, a motion to compel the production of documents and a motion to unseal the record.

On November 30, 1994, Glenmede and Pepper Hamilton filed an emergency motion to seal court records and for protective order, seeking to seal both the district court's November 22, 1994 Memorandum and Order and the October 21, 1994 hearing transcript, pending consideration of their motion for protective order to keep the Pepper Hamilton documents confidential and for use only in these proceedings. By Memorandum and Order dated December 2, 1994, the district court denied Glenmede and Pepper Hamilton's initial motion for protective order and granted the Thompson family's motion to unseal the record. [FN10] The district court determined that the confidentiality agreement

56 F.3d 476    Page 6
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

did not satisfy *Pansy*'s "good cause" requirement nor did Glenmede and Pepper Hamilton establish that disclosure of the Pepper Hamilton documents would cause them a defined and serious harm.

> FN10. The district court did not dispose of Glenmede and Pepper Hamilton's emergency motion to seal court records and for protective order until January 12, 1995 when it issued a Memorandum and Order denying the unopposed motion.

On December 13, 1994, Glenmede and Pepper Hamilton filed this petition for a writ of mandamus directing the district court to vacate and reverse its December 14, 1993 and April 8, 1994 Memoranda and Orders compelling the production of the Pepper Hamilton file documents and its December 2, 1994 **\*482** order denying confidentiality protection for those file documents. In addition, they seek a writ directing the district court: to place under seal its November 22 and 29, 1994 Memoranda and Orders, the October 21, 1994 hearing transcript and all briefs and pleadings that reference the Pepper Hamilton file documents; to remove all references to those Memoranda and Orders from all public access computer databases and district court records; and to order that the Memoranda and Orders not be published in any reporter. Glenmede and Pepper Hamilton contend that the district court's denial of the protective order has revealed the Pepper Hamilton file documents to the public, which cannot be remedied on appeal from final judgment. The public dissemination of the Pepper Hamilton documents is the harm sought to be averted via this mandamus petition.

II.

[1][2] This is an appeal from discovery orders which are not appealable as final decisions within the meaning of 28 U.S.C. § 1291. See Haines v. Liggett Group Inc., 975 F.2d 81 (3d Cir.1992). Our jurisdiction is premised upon the All Writs Act, which provides that the federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.A. § 1651(a) (West 1994). The issuance of the writ must aid some present or potential exercise of appellate jurisdiction. See Westinghouse v. Republic of the Philippines, 951 F.2d 1414, 1422 (3d Cir.1991). Since this diversity action is potentially within our appellate jurisdiction, we have jurisdiction to consider the petition for a writ of mandamus.

[3][4] Nonetheless, our writ power should be invoked only in extraordinary situations, *see* Kerr v. United States Dist. Court for Northern Dist. of California, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123-24, 48 L.Ed.2d 725 (1976), *i.e.*, only in limited circumstances where a party seeking issuance has no other adequate means to attain the desired relief and establishes that the right to the writ is clear and indisputable. Haines, 975 F.2d at 89. Once these prerequisites are met, the issuance of the writ is a matter of discretion. *Id.*

[5] Although mandamus is an appropriate means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other confidentiality interest, Glenmede and Pepper Hamilton chose not to seek a writ of mandamus to prevent the production of the privileged Pepper Hamilton documents, instead relying on the protection afforded by the stipulated confidentiality agreement. See Bogosian v. Gulf Oil Corp., 738 F.2d 587, 591 (3d Cir.1985). We must ascertain whether mandamus is an appropriate means of immediate appellate review of an order compelling the production of privileged documents after those documents have been produced to the discovering party.

Glenmede and Pepper Hamilton properly exercised their right to oppose the production of the privileged documents; however, when faced with the choice of seeking immediate relief through mandamus or producing the documents pursuant to the stipulated confidentiality agreement, Glenmede and Pepper Hamilton opted to produce the privileged documents. They relied on the fact that the Thompson family had adhered to the terms of the confidentiality agreement through the time of production and the Thompson's representation to the district court that Glenmede and Pepper Hamilton's concerns regarding public disclosure were unwarranted in light of the protection afforded by that agreement. [FN11] The district court's subsequent denial of Glenmede and Pepper Hamilton's request for a protective order to enforce the umbrella of the confidentiality agreement stripped Glenmede and Pepper Hamilton of all means of appellate review, except this post-production mandamus petition, **\*483** to remedy potential damage from the public disclosure of the Pepper Hamilton documents. [FN12] Hence, there are no other avenues of appellate review available to Glenmede and Pepper Hamilton to attempt to protect the privileged documents, which they produced in reliance on the confidentiality agreement, from widespread dissemination. It is in recognition of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

56 F.3d 476                                                                                                                       Page 7
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

these unique circumstances that we proceed to review whether there is a clear and indisputable right to the writ regarding both the protective order and the order compelling the production of the Pepper Hamilton files. See *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1118 (3rd Cir.1986).

> FN11. We appreciate that our decision in *Pansy*, decided shortly after the production occurred, surprised many by our questioning the judicial endorsement of broad confidentiality agreements:
> Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders.
> 23 F.3d at 785.

> FN12. The protective order sought by Glenmede and Pepper Hamilton and denied by the district court was to protect the umbrella of confidentiality established by the confidentiality agreement. The district court has not ruled on the confidentiality of individual documents or categories of documents. Thus, Glenmede and Pepper Hamilton may still seek a protective order to maintain the confidentiality of specific categories of documents or individual documents.

### III.

[6][7] The district court's denial of Glenmede and Pepper Hamilton's request for a protective order was an exercise of the district court's discretion. Mandamus is not available for abuse of discretion but we may exercise mandamus jurisdiction regarding the denial of a protective order if we find that the district court committed a clear error of law. *Cipollone*, 785 F.2d at 1118. The district court applied *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir.1994), and concluded that public policy considerations strongly militated against judicial sanctioning of the broad pre-*Pansy* confidentiality agreement proffered by the parties. The district court did not commit a clear error of law requiring our issuing a writ of mandamus.

[8][9] A party seeking a protective order over discovery materials must demonstrate that "good cause" exists for the protection of that material. Fed.R.Civ.P. 26(c); *Pansy*, 23 F.3d at 786. "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. *Id.* Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice. *Id.* Glenmede and Pepper Hamilton bore the burden of establishing "good cause" to protect the umbrella of confidentiality established by the confidentiality agreement.

In *Pansy*, we recognized several factors, which are neither mandatory nor exhaustive, that may be considered in evaluating whether "good cause" exists:
1) whether disclosure will violate any privacy interests;
2) whether the information is being sought for a legitimate purpose or for an improper purpose;
3) whether disclosure of the information will cause a party embarrassment;
4) whether confidentiality is being sought over information important to public health and safety;
5) whether the sharing of information among litigants will promote fairness and efficiency;
6) whether a party benefitting from the order of confidentiality is a public entity or official; and
7) whether the case involves issues important to the public.
23 F.3d at 787-91. Although we have recognized that the district court is best situated to determine what factors are relevant to the dispute, we have cautioned that the analysis should always reflect a balancing of private versus public interests--
> Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it....

*Id.* at 789 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 492 (1991)).

We recognize the distinguishable factual context of *Pansy* from the facts of this appeal. In *Pansy*, a newspaper sought access ***484** to a settlement agreement entered into between the Borough of Stroudsburg and its former police chief, who had sued the Borough after being demoted and suspended for allegedly mishandling parking meter money. 23 F.3d at 776. The public interest in *Pansy* was "particularly legitimate" given that one of the parties to the action was a public entity. *Id.* at 786. The public interest in access to information under freedom of information laws was the overriding factor that tipped the balance in favor of not granting a confidentiality order which would prevent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

56 F.3d 476                                                                                                                Page 8
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

disclosure pursuant to freedom of information laws. *Id.* at 791-92. Here, Glenmede and Pepper Hamilton assert that there is no legitimate public interest to be served by widespread dissemination of the Pepper Hamilton documents. See *Pansy,* 23 F.3d at 788 ("[I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."). They contend they will be harmed by the Thompson family's disclosure of the privileged documents to other Glenmede clients who were excluded from the transaction and to the media. They are unable, however, to articulate any specific, cognizable injury from that dissemination.

Under *Pansy,* " '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning' do not support a good cause showing." *Id.* at 786. Glenmede and Pepper Hamilton do not describe their harm other than in generalized allegations of injury to reputation and to relationships with clients. For instance, Glenmede and Pepper Hamilton assert that the Thompsons' primary goal in reversing their position on confidentiality "is to publicize their allegations of a scheme between Glenmede and [Pepper Hamilton] in order to maximize the embarrassment and potential economic damage which such averments could generate to those institutions' relationships with their clients and the public." Petition at 30. General allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents is insufficient to justify judicial endorsement of an umbrella confidentiality agreement. [FN13] We have typically viewed the "embarrassment" factor in terms of non-pecuniary harm to individuals; however, the primary measure of the well-being of a business is pecuniary. See *Cipollone,* 785 F.2d at 1121. Glenmede and Pepper Hamilton have failed to sustain their burden of demonstrating they will sustain a specific injury from the public dissemination of the privileged documents sufficient to warrant the entry of an umbrella protective order.

> FN13. Moreover, the record of this case compels us to deny the requested writ despite our recognition of the importance of protecting the attorney-client privilege. See *Haines v. Liggett Group Inc.,* 975 F.2d 81, 90 (3d Cir.1992). We reiterate that the district court was never asked to perform an in camera inspection of any of the documents in conjunction with the request for protective order. In fact, when the district court requested that the parties segregate the documents into separate categories for consideration of confidentiality, the parties were unable to agree. Nor did Glenmede and Pepper Hamilton seek a protective order for specific documents that may prove harmful to their client relationships and/or reputations. As the district court noted:

[Glenmede and Pepper Hamilton] do not seek a Confidentiality Order. Rather they seek to protect the confidentiality agreement stipulated to by the parties. An "umbrella" of confidentiality already exists, but now the defendants must show good cause for protecting that confidentiality agreement. December 2, 1994 Memorandum and Order at 5.

At oral argument, we questioned whether Glenmede and Pepper Hamilton may seek relief through an independent breach of contract action stemming from the Thompson family's public dissemination of the file documents. (The only disclosure to date by the Thompson family of which we are aware was to aid the filing of a separate action by a similarly-situated plaintiff.) Pepper Hamilton, however, conceded at oral argument that the Thompson family's challenge to the confidential designation affixed to the file documents comported with the literal terms of the agreement, if not with the spirit of the agreement. The agreement contemplated challenges to the confidential designation of documents; however, neither Pepper Hamilton nor Glenmede anticipated a wholesale challenge to confidentiality of the Pepper Hamilton file.

In *Pansy,* we emphasized the strong public interest in open proceedings. See 23 F.3d 772. See also *Miller v. Indiana Hosp.,* 16 F.3d 549, 551 (3d Cir.1994) ("While we have recognized that there are certain delineated areas where openness is not the norm ... [citations omitted], these cases are the exception."). **\*485** The allegations lodged against Glenmede stemming from its involvement in the buy-back transaction impact the claims or potential claims of other Glenmede clients who were excluded from the transaction. Federal courts should not provide a shield to potential claims by entering broad protective orders that prevent public disclosure of relevant information. The sharing of information among

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

56 F.3d 476                                                                                                                Page 9
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

current and potential litigants is furthered by open proceedings. See *Pansy*, 23 F.3d at 787 ("Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety [citation omitted], and when the sharing of information among litigants would promote fairness and efficiency [citation omitted]."). Absent a showing that a defined and serious injury will result from open proceedings, a protective order should not issue. [FN14]

> FN14. Because it is unnecessary to our decision, we do not comment as to whether Glenmede and Pepper Hamilton would succeed in obtaining a protective order regarding specific documents contained in the Pepper Hamilton file.

[10][11] Despite Glenmede and Pepper Hamilton's arguments to the contrary, the district court was not required to enter a protective order merely to preserve for appellate review its determinations that an exception to the attorney-client privilege applied. We have previously recognized the importance of preserving the right to appeal a determination that an exception to the attorney-client privilege applies prior to public disclosure of the privileged information. In *Haines* we stated:

> Because of the sensitivity surrounding the attorney-client privilege, care must be taken that, following any determination that an exception applies, the matters covered by the exception be kept under seal or appropriate court-imposed privacy procedures until all avenues of appeal are exhausted.

975 F.2d at 97. We did not intend, however, to establish a steadfast rule that protective orders must always issue to protect the privileged character of the materials sought in discovery until all avenues of appeal, including appeal from a final judgment, are exhausted. Requiring the issuance of a protective order in all circumstances where a district court has determined that an exception to the attorney-client privilege applies thwarts our policy of open proceedings absent a showing of good cause to close them. See *Pansy*, 23 F.3d 772; *Miller*, 16 F.3d 549. Such a rule would be tantamount to permitting the parties to control the use of protective orders. [FN15] This is especially evident where, as here, the party asserting the privilege chooses to forego, until final judgment, appellate review of the district court's determination that an exception to the attorney-client privilege applies.

> FN15. On March 14, 1995, the Judicial Conference of the United States rejected a proposed amendment to Federal Rule of Civil Procedure 26(c) that provides in part that: "the court ... may, *for good cause shown or on stipulation of the parties,* make any order *that* justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." (Emphasis in original). In addition, the proposed rule would add a new section 26(c)(3) that provides a means for modification or dissolution of a protective order on motion of a party, a person bound by it or a person who has been permitted to intervene to seek modification or dissolution. The Judicial Conference recommitted the proposed amendments to Rule 26(c) to the Rules Committee for further study. Judicial Conference of the United States, *Preliminary Report Judicial Conference Actions,* March 14, 1995; Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Report of Advisory Committee on Civil Rules,* December 13, 1994.

The unique evolution of events in this case, however, bids us to review the district court's determination as to the scope of Glenmede's waiver of the attorney-client privilege. We recognize that the district court's denial of the protective order subsequent to the production of the Pepper Hamilton file jeopardized Glenmede and Pepper Hamilton's ability to remedy on appeal from final judgment the harm, if any, they may suffer as a result of the public dissemination of the privileged materials. This turn of events places Glenmede and Pepper Hamilton in the unfortunate and unforeseeable position of seeking post-production mandamus relief from the disclosure of privileged information.

### *486 IV.

[12][13] The attorney-client privilege [FN16] may be waived by a client who asserts reliance on the advice of counsel as an affirmative defense. See *Rhone-Poulenc Rorer v. Home Indem. Co.,* 32 F.3d 851, 863 (3rd Cir.1994). Under such circumstances, the client has made a conscious decision to inject the advice of counsel as an issue in the litigation. *Id.* Although we recognized these propositions in *Rhone-Poulenc,* our holding in that case--that a party does not lose the privilege to protect attorney-client communications from disclosure in discovery when his or her state of mind is placed at issue--was

premised upon the unique facts of that case. 32 F.3d at 864. In *Rhone-Poulenc,* advice of counsel was not raised as an affirmative defense nor were there any acts evincing a clear intent to waive the attorney-client privilege by placing at issue reliance on the advice of counsel. Here, Glenmede raised reliance on the advice of counsel regarding what parties should be included in the buy-back transaction as an affirmative defense to the Thompson family's claims and voluntarily produced the Opinion Letter and a draft of it in response to discovery requests.

> FN16. Communications that may be protected from disclosure during discovery because of the attorney-client privilege possess the following characteristics:
> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
> *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d Cir.1994).

Glenmede and Pepper Hamilton concede that Glenmede waived the attorney-client privilege regarding the Opinion Letter and any communications between itself and Pepper Hamilton pertaining to that letter. They object, however, to the district court's conclusion that Glenmede's waiver of the attorney-client privilege encompassed the entire buy-back transaction, including internal Pepper Hamilton back-up documents to the Opinion Letter that were never communicated to Glenmede. They submit that it was clear error for the district court to expand the waiver beyond the confines of the issue addressed in the Opinion Letter to all communications, whether written or oral, to or from counsel concerning the buy-back transaction. [FN17]

> FN17. We note that Glenmede and Pepper Hamilton base their argument for our finding a limited waiver of the attorney-client privilege exclusively on the confines

of the attorney-client privilege; they do not rely on the separate attorney work product doctrine to prevent the disclosure of Pepper Hamilton's internal file documents. *See, e.g., Sporck v. Peil,* 759 F.2d 312 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984).

[14] There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here--fairness.

The party opposing the defense of reliance on advice of counsel must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice--whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client. *See In re ML-Lee Acquisition Fund II, L.P.,* 859 F.Supp. 765, 767 (1994). Here, the advice that Glenmede placed at issue related to the structure of the transaction--the identity of the parties and how many of their shares would be repurchased by Oryx. In fact, the Opinion Letter indicates that Glenmede requested advice "concerning ***487** the inclusion of certain private trusts and estates in transactions." Testing the advice of counsel defense regarding why only the Pew Charitable Trusts were included in the transaction necessarily encompasses, as Glenmede acknowledges, more than tax advice. We agree with the district court that Glenmede waived the attorney-client privilege as to all communications, both written and oral, to or from counsel as to the entire transaction.

We also agree that Glenmede's waiver encompasses the back-up documents to the Opinion Letter, which include Pepper Hamilton's internal research and other file memoranda. [FN18] A review of these internal documents may lead to the discovery of admissible evidence regarding what information had been conveyed to Glenmede about the structure of the buy-back transaction and the advice of counsel in that regard. Because it is unnecessary to our holding, we do not determine whether such documents are

56 F.3d 476                                                                                               Page 11
56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036
**(Cite as: 56 F.3d 476)**

relevant for any purpose other than the fact that they may lead to the discovery of admissible evidence. [FN19]

> FN18. We again note that Pepper Hamilton has not asserted that these internal file memoranda are protected by the work product doctrine, which would have required a different analysis by the district court.
>
> FN19. We again note that Pepper Hamilton and Glenmede may possess other means to protect the confidentiality of some of these internal documents. They have never sought a protective order respecting specific internal memoranda that, though relevant for discovery purposes, may reveal information, such as clients of Glenmede and Pepper Hamilton or financial information not relevant to the dispute, that is not of public import.

### V.

[15][16] We also deny Glenmede and Pepper Hamilton's request for a writ sealing district court opinions and a hearing transcript and removing all opinions and pleadings referencing the Pepper Hamilton documents from public access. As we have previously recognized, the right of access to judicial records is beyond dispute. See Miller, 16 F.3d at 551; Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir.1993). As we held above, we find that the district court did not err in its rulings as to the scope of Glenmede's waiver of the attorney client privilege and the denial of a protective order requesting an umbrella of confidentiality for the Pepper Hamilton documents. Thus, we must also deny Glenmede and Pepper Hamilton's request for mandamus relief from the dissemination of the Pepper Hamilton file documents through public access to judicial records.

### VI.

For the foregoing reasons, we will deny the requested writs of mandamus.

56 F.3d 476, 32 Fed.R.Serv.3d 889, 23 Media L. Rep. 2036

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.