# CASE 4

Westlaw.

362 F.Supp.2d 487
362 F.Supp.2d 487
(Cite as: 362 F.Supp.2d 487)

**H**

Motions, Pleadings and Filings

United States District Court,
D. Delaware.
TRACINDA CORPORATION, a Nevada
Corporation, Plaintiff,
v.
DAIMLERCHRYSLER AG, a Federal Republic of
Germany corporation; Daimler-Benz
AG, a Federal Republic of Germany corporation;
Jüergen Schrempp, a citizen of
the Federal Republic of Germany; and Manfred
Gentz, a citizen of the Federal
Republic of Germany, Defendants.
**No. CIV.A.00-993-JJF.**

March 30, 2005.

**Background:** Actions were brought against German automobile manufacturer, alleging securities violations in connection with acquisition of American manufacturer. During bench trial, judgment on several evidentiary objections raised by the parties was reserved.

**Holdings:** Following trial, the District Court, Farnan, J., held that:

(1) expert testimony regarding appropriate premium to be paid in merger transaction was not based on flawed methodology;

(2) statements made by chief executive officer (CEO) of German manufacturer that were printed in newspaper article were not hearsay;

(3) evidence related to a production dispute between plaintiffs and newspaper was irrelevant;

(4) investment banker documents discussing possible business combination between the manufacturers were admissible;

(5) documents prepared by third-party public relations and research firm were admissible;

(6) notes of meeting discussing merger were admissible;

(7) failure to include charts in expert report did not require exclusion of expert testimony; and

(8) plaintiff opened door to testimony concerning advice given by attorney to American manufacturer's board.

Ordered accordingly.

West Headnotes

**[1] Evidence** ⟜555.6(1)
157k555.6(1) Most Cited Cases
Expert testimony regarding appropriate premium to be paid in merger transaction was not based on flawed methodology, and thus was admissible in securities action challenging merger of German automobile manufacturer with American manufacturer; methodology and analysis used by expert was a standard regression analysis that had been used by other academic studies, and German manufacturer's investment banker employed a similar analysis in part of its valuation analyses of the merger. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[2] Evidence** ⟜555.6(1)
157k555.6(1) Most Cited Cases
Expert's failure to consider other relevant factors and the prediction value of his methods used to determine appropriate premium to be paid in merger transaction went to weight to be afforded to expert's opinion in securities action challenging merger, rather than its admissibility. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[3] Evidence** ⟜555.6(1)
157k555.6(1) Most Cited Cases
Expert's fairness opinion with regard to merger transaction was admissible in securities action challenging merger of German automobile manufacturer with American manufacturer; expert used standard discounted cash flow analysis according to same procedures he followed in his practice, and his conclusions fell within the range of values produced by investment banks' analysis prepared prior to litigation. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[4] Evidence** ⟜220(6)
157k220(6) Most Cited Cases

**[4] Evidence** ⟜244(7)
157k244(7) Most Cited Cases
Statements made by chief executive officer (CEO) of German automobile manufacturer that were printed in newspaper article were not hearsay and were admissible in securities action challenging merger of German manufacturer with American manufacturer as statements of party opponent, where the CEO adopted the statements. Fed.Rules Evid.Rule

362 F.Supp.2d 487
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

Page 2

801(d)(2)(B), 28 U.S.C.A.

**[5] Evidence** ⟳**318(1)**
157k318(1) Most Cited Cases
Although commentary about proposed merger in newspaper article was hearsay in securities action challenging merger of German automobile manufacturer with American manufacturer, article was admissible for the non-hearsay purpose of demonstrating that defendants were aware of the matters reported in it.

**[6] Evidence** ⟳**161.3**
157k161.3 Most Cited Cases
Newspaper article containing statements of chief executive officer (CEO) of German automobile manufacturer and commentary about manufacturer's proposed merger with American manufacturer was best evidence of article's contents in action challenging the merger; contents of the article, not recording on which it was based, were at issue. Fed.Rules Evid.Rule 1002, 28 U.S.C.A.

**[7] Evidence** ⟳**355(6)**
157k355(6) Most Cited Cases
Newspaper article quoting chief executive officer (CEO) of German automobile manufacturer was admissible in securities action challenging German manufacturer's merger with American manufacturer as a recorded recollection; interviewer and author of the article testified that he had no independent recollection of the article, but that it was written while the interview was fresh in his mind, that he had no incentive to misrepresent anything CEO said to him, and that consistent with his general practice, he checked his quotes against tape recording of the interview. Fed.Rules Evid.Rule 803(5), 28 U.S.C.A.

**[8] Evidence** ⟳**355(6)**
157k355(6) Most Cited Cases
For evidence to be admissible as a recorded recollection, the party offering the evidence must show that (1) the witness now has insufficient recollection to enable him to testify fully and accurately, and (2) the statement was made or adopted at a time when the subject matter was fresh in the witness's memory. Fed.Rules Evid.Rule 803(5), 28 U.S.C.A.

**[9] Evidence** ⟳**355(6)**
157k355(6) Most Cited Cases
Rationale behind recorded recollection rule's requirement that record be read into evidence rather than admitted as an exhibit is to prevent the trier of

fact from being overly impressed by the writing. Fed.Rules Evid.Rule 803(5), 28 U.S.C.A.

**[10] Evidence** ⟳**146**
157k146 Most Cited Cases
In the context of a bench trial, evidence should not be excluded on the grounds that it is unfairly prejudicial, because the Court is capable of assessing the probative value of the article and excluding any arguably improper inferences. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[11] Securities Regulation** ⟳**60.61**
349Bk60.61 Most Cited Cases
Evidence related to a production dispute between plaintiffs and newspaper concerning production of the audio tapes made in connection with interview of chief executive officer (CEO) of German automobile manufacturer was irrelevant in securities action challenging merger of German manufacturer with American manufacturer; CEO's consent to production of the audiotape only after being ordered by court to do so was not probative of defendants' scienter. Fed.Rules Evid.Rule 401, 28 U.S.C.A.

**[12] Evidence** ⟳**318(8)**
157k318(8) Most Cited Cases
Pleading of a party unrelated to securities action challenging merger was inadmissible hearsay in the securities action.

**[13] Evidence** ⟳**318(1)**
157k318(1) Most Cited Cases
Investment banker documents discussing possible business combination between German automobile manufacturer and American manufacturer had sufficient guarantees of trustworthiness to be admissible under the residual hearsay exception in action challenging the manufacturers' merger; documents were prepared as a result of discussions between defendants and various investment bankers, and German manufacturer's executives shared and discussed the documents. Fed.Rules Evid.Rule 807, 28 U.S.C.A.

**[14] Evidence** ⟳**373(1)**
157k373(1) Most Cited Cases
Investment banker document discussing possible business combination between German automobile manufacturer and American manufacturer was authenticated when defendants produced it in securities action challenging manufacturers' merger.

**[15] Evidence** ⟳**220(6)**

362 F.Supp.2d 487
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

Page 3

157k220(6) Most Cited Cases
Using a document supplied by another represents the party's intended assertion of the truth contained in that document.   Fed.Rules Evid.Rule 801(d)(2)(B), 28 U.S.C.A.

**[16] Evidence** ☜220(6)
157k220(6) Most Cited Cases
"Adoptive admission" can be found in the circumstances where a party forwards a document to another in response to a request for information contained in the document.   Fed.Rules Evid.Rule 801(d)(2)(B), 28 U.S.C.A.

**[17] Evidence** ☜220(6)
157k220(6) Most Cited Cases
Document prepared by third-party public relations and research firm was adoptive admission in securities action challenging merger of German automobile manufacturer with American manufacturer; document was passed on to the German manufacturer's communications department, which produced a proposed action program which incorporated many of the ideas and issues outlined in the document.   Fed.Rules Evid.Rule 801(d)(2)(B), 28 U.S.C.A.

**[18] Evidence** ☜318(1)
157k318(1) Most Cited Cases
Documents prepared by third-party public relations and research firm, offered to show public's state of mind after the announcement of merger between German automobile manufacturer and American manufacturer, and to demonstrate that defendants were aware of the public's perceptions, were not hearsay in securities action challenging the merger.

**[19] Evidence** ☜123(2)
157k123(2) Most Cited Cases

**[19] Evidence** ☜268
157k268 Most Cited Cases
Even if documents prepared by third-party public relations and research firm, offered to show public's state of mind after the announcement of merger between German automobile manufacturer and American manufacturer were hearsay in securities action challenging the merger, they were admissible to demonstrate the present sense impressions or state of mind of the surveyed participants.

**[20] Evidence** ☜244(7)
157k244(7) Most Cited Cases
Meeting notes containing statements made by

employees or agents of American automobile manufacturer and German manufacturer prior to merger were non-hearsay party admissions in action challenging merger.

**[21] Evidence** ☜121(1)
157k121(1) Most Cited Cases
Three requirements must be met to establish admissibility under present sense impression exception to the hearsay rule: (1) the declarant must have personally perceived the event described, (2) the declaration must be a factual description, and (3) the declaration and the event described must be contemporaneous.   Fed.Rules Evid.Rule 803(1), 28 U.S.C.A.

**[22] Evidence** ☜123(2)
157k123(2) Most Cited Cases
Notes of what transpired at corporate meeting were admissible under the present sense impression exception to the hearsay rule in securities action challenging merger of German automobile manufacturer with American manufacturer, although note-taker testified that the notes were "filtered" through his thinking; note-taker testified extensively as to his independent recollection of the meetings and conversations reflected in his notes, and did not suggest that his notes were inaccurate, untrustworthy or non-factual.   Fed.Rules Evid.Rule 803(1), 28 U.S.C.A.

**[23] Evidence** ☜318(1)
157k318(1) Most Cited Cases
Notes of what transpired at corporate meeting were sufficiently trustworthy to be admissible under the residual hearsay exception in securities action challenging merger of German automobile manufacturer with American manufacturer; notes were produced by American manufacturer's working groups in connection with meetings held by German manufacturer, and note-taker testified that he maintained these notes in his own work record and would have sent them to general corporate files if he had not been concerned with maintaining the secrecy of the merger negotiations.

**[24] Evidence** ☜244(7)
157k244(7) Most Cited Cases
Alleged statement made by chief executive officer (CEO) of German automobile manufacturer to third party was nonhearsay admission of party opponent in securities action challenging merger of German manufacturer with American manufacturer. Fed.Rules Evid.Rule 801(d)(2)(A), 28 U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487                                                                                     Page 4
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

**[25] Evidence** 🔑**244(7)**
157k244(7) Most Cited Cases
Automobile manufacturer's former employment of
declarant, and separation agreement that prohibited
declarant from speaking negatively about the
manufacturer, made declarant an agent of the
manufacturer for purposes of hearsay exception for
statements made by a party's agent.  Fed.Rules
Evid.Rule 801(d)(2)(D), 28 U.S.C.A.

**[26] Evidence** 🔑**575**
157k575 Most Cited Cases
Unavailable witness' deposition testimony was
sufficiently reliable to be admissible as former
testimony in securities action challenging merger of
German automobile manufacturer with American
manufacturer; testimony was given under oath, and
defendants had opportunity to challenge the
testimony.  Fed.Rules Evid.Rule 804(b)(1), 28
U.S.C.A.

**[27] Witnesses** 🔑**37(2)**
410k37(2) Most Cited Cases
Witness' 34 years of working with shareholder, his
testimony that he knew shareholder's working style
and business practices, and his personal awareness of
shareholder's views about automobile manufacturer's
management as a result of his discussions with him
provided adequate foundation for witness' statement
that shareholder was happy with manufacturer's
management.

**[28] Evidence** 🔑**244(7)**
157k244(7) Most Cited Cases
Statements made by chief executive officer (CEO) of
American automobile manufacturer prior to its
merger with German manufacturer qualified as
admissions of successor corporation formed as result
of merger.  Fed.Rules Evid.Rule 801(d)(2), 28
U.S.C.A.

**[29] Federal Civil Procedure** 🔑**1278**
170Ak1278 Most Cited Cases
Plaintiff's failure to include book on its exhibit list
did not preclude book's admission at trial, where
plaintiff amended its exhibit list prior to the filing of
opening briefs, and defendants suffered no undue
prejudice as a result of plaintiff's delay in adding the
book to its final exhibit list.

**[30] Witnesses** 🔑**379(4.1)**
410k379(4.1) Most Cited Cases
Excerpts of book authored by witness were

admissible as prior inconsistent statements, and could
be used to impeach witness' testimony at trial.
Fed.Rules Evid.Rule 613(b), 28 U.S.C.A.

**[31] Federal Civil Procedure** 🔑**1274**
170Ak1274 Most Cited Cases
The purpose of the initial disclosures provided for in
expert report is to prevent a party from being unfairly
surprised by the presentation of new evidence.
Fed.Rules Civ.Proc.Rule 26, 28 U.S.C.A.

**[32] Federal Civil Procedure** 🔑**1278**
170Ak1278 Most Cited Cases
In determining whether to exclude evidence as
sanction for failing to disclose witness, the court
should consider such factors as: (1) the prejudice or
surprise in fact of the party against whom the
excluded witnesses would have testified, (2) the
ability of that party to cure the prejudice, (3) the
extent to which waiver of the rule against calling
unlisted witnesses would disrupt the orderly and
efficient trial of the case or of other cases in the
court, and (4) bad faith or willfulness in failing to
comply with the court's order.  Fed.Rules
Civ.Proc.Rule 37, 28 U.S.C.A.

**[33] Federal Civil Procedure** 🔑**1278**
170Ak1278 Most Cited Cases
Defendants' failure to disclose chart including recent
transactions used by expert witness to conclude that
merger transaction was not unfair to shareholders did
not require exclusion of expert's testimony as
sanction in securities action challenging merger of
German automobile manufacturer with American
manufacturer; expert's report was not materially
changed by use of additional, newer transactions,
because those additions changed nothing regarding
his underlying analysis and only served to make the
report more current.  Fed.Rules Civ.Proc.Rule 37, 28
U.S.C.A.

**[34] Federal Civil Procedure** 🔑**1278**
170Ak1278 Most Cited Cases
Plaintiff in action challenging merger was not
prejudiced by use of undisclosed chart by defendants'
expert to explain flaws in share value calculation of
plaintiff's expert; prior to expert's testimony, plaintiff
produced exhibit that compared numbers generated
by expert's correct share value calculations with the
alternative numbers plaintiff calculated.

**[35] Federal Civil Procedure** 🔑**1278**
170Ak1278 Most Cited Cases
Testimony by defense expert regarding three

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

previously undisclosed tests he ran on data of plaintiff's expert to demonstrate its inaccuracy did not unduly surprise or prejudice plaintiff in action challenging merger; data underlying defense expert's testimony was either produced to plaintiff before trial or included in report of plaintiff's expert.

**[36] Federal Civil Procedure** 🔑1278
170Ak1278 Most Cited Cases
Charts prepared by defense expert during recess containing data from regression analysis performed by plaintiff's expert were within scope of opinions made in expert's report regarding lack of predictive value of regression model used by plaintiff's expert; defense expert did not have the idea to make the charts until he reviewed testimony of plaintiff's expert, and charts were not created in bad faith to impede plaintiff's ability to confirm the analysis they contained.

**[37] Federal Civil Procedure** 🔑1278
170Ak1278 Most Cited Cases
Chart of changes in corporation's board of directors following merger prepared by defense expert in action challenging merger were consistent with the opinions contained in expert report and did not reflect a material change in expert's opinion; although chart was not based on same data that expert used in his report, he did not change his conclusion that changes in the board after the merger were consistent with characterization of the merger as a "merger of equals."

**[38] Federal Civil Procedure** 🔑1451
170Ak1451 Most Cited Cases
Failure of defendants to designate deposition testimony of plaintiff's expert did not preclude them from using the deposition at trial, where plaintiff did not inform defendants of its intention not to call the expert until after the deposition deadline passed.

**[39] Evidence** 🔑268
157k268 Most Cited Cases
Shareholder's statement to third-party about acceptable merger premium was admissible under state of mind exception to hearsay rule in action challenging the merger. Fed.Rules Evid.Rule 803(3), 28 U.S.C.A.

**[40] Evidence** 🔑268
157k268 Most Cited Cases
Testimony about what declarant said about shareholder's views on size of acceptable merger premium in connection with proposed merger was

not hearsay in action challenging the merger; testimony was offered to show plaintiff's enthusiasm for the merger before learning about any corporate governance terms and its potential fear that too high a premium would preclude the transaction from being completed.

**[41] Witnesses** 🔑198(1)
410k198(1) Most Cited Cases
The attorney client privilege should not be used as both a sword and a shield.

**[42] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
Plaintiff in action challenging merger opened door to testimony concerning advice given by attorney to corporation's board, permitting defendants to use attorney's testimony about that advice defensively to complete the record after they invoked attorney-client privilege, where plaintiff's use of attorney's opinion when questioning two witnesses was incomplete and misleading, because it did not include her reasons for her statement that the transaction did not involve a change of control.

*492 A. Glichrist Sparks, III, Esquire, Alan J. Stone, Esquire, and Natalie J. Watson, *493 Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Of Counsel: Terry N. Christensen, Esquire, Mark G. Krum, Esquire and Eric P. Early of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, CA, William G. McGuinness, Esquire and Julie E. Kamps, Esquire of Fried, Frank, Harris, Shriver & Jacobson, New York, NY, for Plaintiff Tracinda Corporation.

Thomas J. Allingham II, Esquire, and Robert S. Saunders, Esquire, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE. Of Counsel: Jonathan L. Lerner, Esquire, Lea Haber Kuck, Esquire and Joseph N. Sacca, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants DaimlerChrysler AG, Daimler-Benz AG, Jüergen Schrempp and Manfred Gentz.

## MEMORANDUM OPINION ON EVIDENTIARY ISSUES

FARNAN, District Judge.

During the course of the bench trial in the above-captioned action, the Court reserved judgment on several evidentiary objections raised by the parties. The parties have briefed their respective positions, and this Memorandum Opinion constitutes the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487                                                                                                              Page 6
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

Court's rulings with regard to the pending evidentiary matters.

## I.      DEFENDANTS'      POST-TRIAL EVIDENTIARY OBJECTIONS

A. *Motion To Exclude Testimony And Reports Of Tracinda's Experts, Professor William L. Silber And H. Conrad Meyer, III,*

Defendants contend that the testimony of Tracinda's expert witnesses, Professor William L. Silber and H. Conrad Meyer, III, should be excluded under Federal Rule of Evidence 702. With regard to Silber, Defendants contend that Silber's opinion and underlying methodology are flawed. Defendants contend that Silber's methodology of using the allocation of board seats to determine the appropriate premium to be paid violates the basic statistical principle that correlation is not tantamount to causation and ignores other factors that go into the negotiation of a premium in a business combination. Defendants contend that Silber's methodology is demonstrably unreliable, because it failed to accurately predict the premiums paid in sample transactions to which his methodology is applied. Defendants also point out that Silber himself testified that his model could only predict a premium within 20% of the actual premium and that it could only be that accurate two-thirds of the time, meaning that one-third of the time actual results would vary by more than 20% from a predication made based on Silber's model. Silber Tr. Vol. E 1120:15-24.

As for the opinion of H. Conrad Meyer, III, Defendants contend that Meyer's fairness opinion is flawed, because it (1) ignored the analysis of Credit Suisse First Boston ("CSFB"), (2) ignored the alternative discounted cash flow ("DCF") analysis of CSFB which included consideration of adverse risk factors like a downturn in the automotive industry, (3) included transactions which were not comparable to the Chrysler/Daimler-Benz Merger, and (4) failed to include other factors like whether Daimler-Benz was willing to pay more than it actually paid. Defendants also point out that Meyer never spoke with Tracinda's Jim Aljian or Jerry York to find out if they believed the risks identified in the CSFB analysis were likely to materialize. Defendants further point out that Meyer's analysis was prepared for litigation, and thus inherently more unreliable than CSFB's fairness opinion.

**\*494** The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which

provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court directed the district courts to perform a "gatekeeping" function in determining the reliability of expert testimony. In this regard, courts should flexibly consider a number of factors, including but not limited to: (1) whether the theory or technique has been tested; (2) whether the technique or theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the general acceptance of the theory; (5) whether the method consists of a testable hypothesis; (6) the existence and maintenance of standards controlling the technique's operation; (7) the relationship of the technique to methods which have been established to be reliable; (8) the qualifications of the expert witness testifying based on the methodology; and (9) the non-judicial uses to which the methodology has been put. *Daubert,* 509 U.S. at 593-594, 113 S.Ct. 2786 (setting forth first four factors listed above); *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 n. 8 (3d Cir.1994) (identifying other relevant factors). In applying these factors, the court must "solely focus on the principles and methodology, not on the conclusions they generate." *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786.

[1] Considering these factors in light of the testimony of Silber and Meyer, the Court concludes that the testimony of Silber and Meyer is admissible. Silber's qualifications have not been challenged, and the methodology and analysis used by Silber is a standard regression analysis that has been used by other academic studies. Silber Tr. Vol. E 1115:21-1116:19. In addition, Defendants' investment banker, Goldman Sachs, employed a similar analysis in part of its valuation analyses of the Merger. PX 845. As such, this analysis was used in negotiating the Merger, prior to any talk of litigation. Thus, Silber's analysis has been used by others outside the context of litigation, and his methods have been subject to publication.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487                                                          Page 7
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

[2] Defendants' arguments concerning Silber's failure to consider other relevant factors and the prediction value of his methods in light of these other factors were appropriately discussed on cross-examination and go to the weight to be afforded to Silber's opinion. *See Matlin v. Langkow,* 65 Fed.Appx. 373, 384 (3d Cir.2003) (unpublished opinion) (admitting expert testimony where defendant's arguments concerned weight of the testimony rather than admissibility). Accordingly, the Court will deny Defendants' motion to exclude Silber's expert testimony.

[3] Similarly, the Court concludes that Defendants have not raised a valid challenge to the admissibility of Meyer's testimony. Defendants have not challenged Meyer's qualifications, and Meyer's analysis employed a standard DCF analyses according to the same procedures he follows in his practice. Meyer Tr. 919:18-920:2; PX 715 at 2,3. Meyer's conclusions also fell within the range of values produced by the CSFB and Goldman Sachs **495** analysis, both of which were prepared prior to any litigation. *Compare* PX 715 at Exh. II, 15 *with* PX 141 at CSFB-DC001612 and PX 277 at SC0000666. Whether Meyer's analysis appropriately considered certain factors like the analysis of CSFB, the risk of a downturn in the automotive industry, Daimler-Benz's willingness to pay more, and the views of Tracinda's executives, Jim Aljian and Jerry York, all go to the weight to be afforded to Meyer's opinions. Similarly, Defendants other criticisms that Meyer did not use comparable precedent transactions and improperly combined his comparable company analysis with his precedent transaction analysis also go to the weight to be afforded to Meyer's testimony. *See, e.g., Matlin,* 65 Fed.Appx. at 384. Accordingly, the Court will deny Defendant's motion to exclude the testimony of Meyer.

B. *The Financial Times Article Dated October 30, 2000 (PXs 601, 605)*

Defendants next contend that *The Financial Times* article dated October 30, 2000, is inadmissible hearsay, and does not fall within an exception to the hearsay rule. In addition, Defendants contend that the article violates the best evidence rule. In this regard, Defendants contend that the audio tape of Schremp's interview with *The Financial Times* is the best evidence.

Tracinda contends that *The Financial Times* article is not hearsay, because it constitutes an adoptive admission of a party-opponent under Federal Rule of Evidence 801(d)(2)(B), and apart from being offered for the truth of the matter asserted, the article was also offered to show (1) its affect on those who read it, and (2) that Defendants were aware of the article, but took no action to clarify it. Tracinda also contends that Federal Rule of Evidence 803(3) applies, because Schremp's out-of-court statements to *The Financial Times* interviewer are admissible evidence of his state of mind.

[4][5] Schremp adopted the statements he made during the interview that were printed in *The Financial Times* article. Schremp Tr. Vol. G 1374:12-20. As such, those statements are not hearsay, but are admissions of a party opponent under Rule 801(d)(2)(B). [FN1] However, the article itself contains commentary beyond Schremp's actual statements, and therefore, the article itself is hearsay. *See, e.g., Wright v. Montgomery County,* 2002 WL 1060528, *1 (E.D.Pa. May 20, 2002). The Court is not persuaded that Defendants adopted the commentary in the article or the conclusions reached by the reporter, and therefore, the remaining text of the article itself does not constitute an admission of a party opponent. The article is **496** admissible, however, for the non-hearsay purpose of demonstrating that Defendants were aware of the matters reported therein. *See, e.g., Parham v. Johnson,* 126 F.3d 454, 460 (3d Cir.1997); *Blue Cross v. SmithKline Beecham Clinical Labs., Inc.,* 108 F.Supp.2d 116, 123 (D.Conn.2000).

> FN1. In pertinent part Rule 801(d) provides: (d) Statements which are not hearsay. A statement is not hearsay if--
>
>                    * * * * * *
>
> (2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the

362 F.Supp.2d 487                                                      Page 8
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Fed.R.Evid. 801(d)(2).

[6] The Court is also not persuaded that the best evidence rule precludes admissibility of the article. Federal Rule of Evidence 1002 provides that "to prove the content of a writing, recording or photograph the original writing, recording or photograph is required, except as otherwise provided in these rules or by Act of Congress." In this case, the contents of the article, not the recording, are at issue, and therefore, the article itself is the best evidence of its contents. *See United States v. Gonzales-Benitez,* 537 F.2d 1051, 1053 (9th Cir.1976) (holding that best evidence rule did not preclude use of witness testimony relating substance of conversation despite existence of tape-recording); *see also United States v. Howard,* 953 F.2d 610, 612 (11th Cir.1992) ("Since the proffered testimony was offered not to prove the content of the tapes, but rather, the content of the conversations, the best evidence rule does not apply, and [witness'] testimonial recollection of the conversation was properly admitted.' ") (citing *Gonzales-Benitez,* 537 F.2d at 1051). Accordingly, the Court will overrule Defendants' objections to the admissibility of *The Financial Times* article.

*C. Barron's Article (PX 615) Dated November 6, 2000*

[7] Defendants object to the admissibility of the *Barron's* article on the same grounds advanced with respect to *The Financial Times* article. Defendants point out that unlike *The Financial Times* article which Schrempp admitted accurately quoted him, Schrempp was unable to recall whether he made the statements attributed to him in the *Barron's* article.

Tracinda contends that this article is not hearsay, but an admission of a party-opponent. Tracinda contends that even if the article is hearsay, it is admissible under Rule 803(3) as evidence of Schrempp's state of mind and under Rule 803(5) as a recorded recollection.

The Court concludes that the *Barron's* article is admissible to prove Schrempp's statements as a recorded recollection under Federal Rule of Evidence

803(5). In pertinent part, Rule 803(5) provides:

Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

[8] To satisfy the requirements of Rule 803(5), the party offering the evidence must show that (1) the witness now has insufficient recollection to enable him to testify fully and accurately; and (2) the statement was made or adopted at a time when the subject matter was fresh in the witness's memory. *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 505 F.Supp. 1190, 1228-1229 n. 48 (E.D.Pa.1980).

During his deposition, the interviewer and author of the *Barron's* article, Jay D. Palmer, testified that he had no independent recollection of the article, but that the article was written while the interview was fresh in his mind. Palmer also testified that he had no incentive to misrepresent anything Schrempp said to him and that **\*497** consistent with his general practice, he checked his quotes against a tape recording of the interview so that it correctly reflected Schrempp's statements. [FN2] Palmer Dep. 41:22-42:25; 58:11-59:15; 61:5-17, 66:4-23, 79:20-80:4.

> FN2. The tape recording of this interview was lost when the *Barron's* offices were abandoned after the September 11, 2001 terrorist attacks on the World Trade Center. Palmer Dep. 71:11-72:10.

Defendants direct the Court to several cases for the proposition that media articles are hearsay when they are used to prove the truth of their contents. In those cases, however, the courts specifically noted that the articles' authors were unavailable for cross-examination, and no exception to the hearsay rule applied. *Wright v. Montgomery County,* 2002 WL 1060528 (E.D.Pa. May 20, 2002); *Barnes Found. v. Township of Lower Merion,* 982 F.Supp. 970, 995-996 (E.D.Pa.1997). In this case, however, the article's author was deposed and subject to cross-examination, and the requirements of the recorded recollection exception to the hearsay rule have been satisfied.

362 F.Supp.2d 487
362 F.Supp.2d 487
(Cite as: 362 F.Supp.2d 487)

Defendants also contend that the recorded recollection exception does not apply, because there is no evidence that Schrempp "made or adopted" the article. That Schrempp made or adopted the article is not a requirement for the recorded recollection exception. The article is Palmer's statement and it is his recorded recollection of what Schrempp said to him.

[9] Defendants further contend that the article cannot be admitted into evidence, because it was not "offered by an adverse party." Defendants construe this to mean that Tracinda is not an adverse party to the declarant, Palmer. However, Defendants cite no case law to support their position that the reference to "adverse party" means adverse to the declarant, and the Court has not been able to locate any case law substantiating Defendants' argument. Further, the rationale behind the rule's requirement that the article be read into evidence rather than admitted as an exhibit is to prevent the trier of fact from being overly impressed by the writing. *See, e.g., U.S. v. Judon, 567 F.2d 1289, 1294 (5th Cir.1978)* (citing 11 J. Moore, *Federal Practice* § 803(5)(5) (1976)). Because this action was tried as a bench trial, the Court is persuaded that this rationale is inapplicable. Accordingly, in these circumstances, the Court concludes that the article is properly admitted as a recorded recollection of Schrempp's statements, and therefore Defendants' hearsay objection to the admissibility of the *Barron* 's article to prove Schrempp's statements will be overruled. [FN3]

> FN3. Tracinda does not offer the Barron's article for any non-hearsay purposes as it did with the *Financial Times* article. Accordingly, the article is only admitted as a recorded recollection of Schrempp's statements, and to the extent that the article contains any out-of-court commentary by Palmer, it is inadmissible hearsay.

[10] Likewise, the Court will overrule Defendant's Rule 403 objection that the article is unduly prejudicial. Courts have recognized that in the context of a bench trial, evidence should not be excluded under Rule 403 on the grounds that it is unfairly prejudicial, because the Court is capable of assessing the probative value of the article and excluding any arguably improper inferences. *See, e.g., Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir.1994); Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir.1981); see also Bic Corp. v. Far Eastern Source Corp., 23 Fed.Appx. 36, 39 (2d Cir.2001).* Accordingly, the Court will overrule

Defendants' *498 Rule 403 objection to the admissibility of the *Barron* 's article.

D. *Documents Relating To The Production Dispute Between Plaintiffs And The Financial Times Over Production Of The October 2000 Financial Times Interview Audiotape*

[11] Defendants object to the admission of evidence related to a production dispute between Plaintiffs and *The Financial Times* concerning the production of the audio tapes made in connection with Schrempp's October 2000 interview. Specifically, the evidence referred to consists of the opinion of the British court regarding that dispute and the letter from Defendants' counsel to counsel for *The Financial Times* regarding its production of an off-the-record portion of the taped interview. Defendants contend that this evidence pertains to a collateral dispute and is irrelevant. Defendants also contend that the opinion of Master Yoxall stating that Defendants' behavior was "repugnant" in refusing to consent to the production of unredacted audiotapes is hearsay.

Tracinda contends that this evidence is relevant under Rule 401, because "Defendants' resistance to the production of the unredacted *Financial Times* audiotape has a tendency to make more probable the fact of Defendants' scienter and the fact of the reckless or malicious nature of Defendants' behavior." D.I. 1058 at 30. Tracinda contends that Master Yoxall's opinion is not hearsay, because it is not offered for the truth of the matter asserted, i.e. that Defendants' behavior was in fact repugnant, but "for the limited purpose of establishing the fact that it was said, i.e. that Master Yoxall found Defendants' behavior repugnant." *Id.* at 31.

Reviewing the evidence in question under the standards for admissibility, the Court concludes that this evidence is irrelevant to the issues presented in this case. Production disputes are a common part of litigation, and it is not extraordinary for a party to resist the production of documents it believes to be unwarranted. In this case, the Special Master ordered Schrempp to consent to the production of the interview's audiotape and Schrempp did so, but his lawyers reserved the right to proceed against *The Financial Times*. The Court does not believe this reservation of rights is evidence probative of Defendants' scienter insofar as it pertains to the claims raised in this litigation.

Similarly, the Court does not find the opinion of the British court as to Defendants' conduct with respect

362 F.Supp.2d 487
362 F.Supp.2d 487
(Cite as: 362 F.Supp.2d 487)

to this collateral evidentiary dispute to be probative or relevant with respect to the issues in this case. Further, as Defendants point out, they were not made a party to the dispute in the British court and did not have an opportunity to be heard there. Accordingly, the Court concludes that the connection Tracinda seeks to draw between the proffered evidence and Defendants' scienter is tangential and irrelevant. Accordingly, the Court will sustain Defendants' objection to the admissibility of this evidence.

E. *Complaint in Glickenhaus v. DaimlerChrysler AG (PX 669)*

[12] Defendants next contend that the complaint in *Glickenhaus v. DaimlerChrysler AG,* Civ. Act. No. 01-004 (D. Del. Filed Jan. 3, 2001) should not be admitted into evidence, because it is irrelevant. In addition, Defendants contend that the *Glickenhaus* complaint constitutes inadmissible hearsay.

Tracinda contends that paragraph 22 of the *Glickenhaus* complaint, which states that Gentz was in New York on business on April 22, 1998, is relevant to establish Gentz's contacts with the United States for purposes of proving that the Court has **\*499** personal jurisdiction over Defendant Gentz. Tracinda also contends that the complaint is not hearsay, because Paragraph 22 was adopted under oath by James Glickenhaus who testified that he and his father were responsible for drafting the complaint and that Paragraph 22 was accurate.

Evaluating the admissibility of the *Glickenhaus* complaint in light of the parties' arguments and the applicable law, the Court concludes that the complaint is irrelevant and inadmissible hearsay. *United States v. Pelullo,* 964 F.2d 193, 199 (3d Cir.1992). The *Glickenhaus* and class actions were consolidated with this action for pre-trial and discovery purposes, but not for trial. The *Glickenhaus* action was settled and dismissed by the parties on September 4, 2003. Because the allegations in the complaint are a pleading of a party unrelated to the instant litigation, the Court cannot accept them for the truth of the matters they assert. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* 1997 WL 201614, \*4 (N.D.Ill. Apr.8, 1997) (declining to accept as true allegations in complaint made in separate case); *T.I. Const. Co. v. Kiewit Eastern Co.,* 1992 WL 382306, \*4 (E.D.Pa. Dec.10, 1992) ("Complaints, and the charges and allegations they contain, are hearsay under the Federal Rules of Evidence."). Accordingly, the Court will sustain Defendants' objection to the admissibility

of the *Glickenhaus* complaint.

F. *Documents Authored By Third-Parties Regarding A Possible Business Combination Between Chrysler And Daimler-Benz*

Defendants next challenge the admissibility of certain investment banker documents, specifically, the Lehman Brothers analysis (PXs 35, 37), the Project Dutch Boy analysis by TransAtlantic Consulting (PX 26-32, 34, 36) and the Goldman Sachs "Project Blitz" Analysis (PXs 4, 33, 544, 45). Defendants contend that all three of these documents are irrelevant, because they do not pertain to the Merger at issue. Defendants also contend that these documents are hearsay, because they are offered by Tracinda to prove the truth of the matters discussed in the documents, i.e. that Defendants considered an acquisition of Chrysler. Defendants further contend that no hearsay exception applies. Specifically, Defendants contend that the documents are not admissions, because (1) they were prepared by third parties over whom Defendants exercised no control, (2) some of the documents like those prepared by Lehman Brothers and TransAtlantic were unsolicited, and (3) Defendants never adopted the documents. Defendants also contend that Tracinda has not established any of the requirements of demonstrating the business records exception, and the documents are not relevant under the state of mind exception, because they were prepared by a third party and not adopted by Defendants. In addition to their hearsay objection, Defendants also object to the Project Dutch Boy analysis on the grounds that the document has never been authenticated.

Tracinda contends that these documents are admissible as vicarious admissions under Rule 801(d)(2)(D), authorized admissions under Rule 801(d)(2)(C) and adoptive admissions under Rule 801(d)(2)(B). Tracinda also contends that the residual hearsay exception under Rule 807 applies.

1. Whether the Investment Banker documents are hearsay

[13] The Court will admit the Investment Banker Documents under the residual hearsay exception provided in Rule 807. The Investment Banker Documents have sufficient guarantees of trustworthiness. In many instances, they were prepared, if **\*500** not by the express request of Defendants, as a result of discussions between Defendants and various investment bankers. In addition, Tracinda has advanced evidence that executives at Daimler-Benz shared and discussed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487                                                    Page 11
362 F.Supp.2d 487
(Cite as: 362 F.Supp.2d 487)

these documents, which also supports their trustworthiness. The Court finds that these documents are also more probative on the point for which they are offered than any other evidence readily procurable by Tracinda, and the Court is persuaded that the interests of justice are served by the admission of these documents. Accordingly, the Court will overrule Defendants' hearsay objection to the Investment Banker Documents.

### 2. Whether the Investment Banker documents have been authenticated

[14] As for the authentication question raised by Defendants in connection with PX 26, 27, 28, the Court will overrule that objection, as well. With respect to PX 26, the Court is persuaded that authentication has been established by the fact that Defendants produced the document. *See, e.g., McQueeney v. Wilmington Trust Co., 779 F.2d 916, 929 (3d Cir.1985)* (holding that documents were authenticated when they were produced by the party against whom they were offered, even though testimonial evidence did not provide necessary foundation for authentication); *John Paul Mitchell Systems v. Quality King Distributors, 106 F.Supp.2d 462, 472 (S.D.N.Y.2000)* (recognizing that the act of production implicitly authenticated the documents). Defendants admit PX 27 is identical to PX 26, and therefore, that document is also authenticated. *See, e.g., Richardson Greenshields Sec., Inc. v. Lau, 651 F.Supp. 929, 931 (S.D.N.Y.1986)* (admitting documents that were nearly identical to those already authenticated). Lastly, PX 28 is a chart form summary of the contents of PX 26 and 27, and therefore, that document can also be authenticated by comparison to PX 26 and 27. *Id.* Accordingly, the Court will overrule Defendants' objection to PX 26-28 on authentication grounds.

### G. Materials From Third-Party Public Relations/Research Firms (PXs 202, 265, 409, 425, 818, 880)

Defendants next object to materials from third-party public relations and research firms. PXs 202, 265, 409 and 818 are materials provided to Chrysler from Peter D. Hart Research Associates, Inc. ("Hart"), and PXs 425 and 880 are identical documents provided to DaimlerChrysler by Bell Pottinger International ("Bell Pottinger"). Defendants contend that these documents are hearsay, and there is no evidence that Defendants authorized Hart or Bell Pottinger to speak for them as to the matters discussed in these documents.

[15][16][17] The Court concludes that the Bell Pottinger documents are admissible as an adoptive admission under Rule 801(d)(2)(B). "Adoption can be manifested by any appropriate means, such as language, conduct, or silence." *Horvath v. Rimtec Corp., 102 F.Supp.2d 219, 223 n. 3 (D.N.J.2000)*. Using a document supplied by another represents the party's intended assertion of the truth contained in that document. *Penguin Books U.S.A. Inc. v. New Christian Church of Full Endeavor, 262 F.Supp.2d 251, 259 (S.D.N.Y.2003)*. An adoptive admission can be found in the circumstances where a party forwards a document to another in response to a request for information contained in that document. *Id.* In this case, Schrempp testified that PX 425 was passed on to the DaimlerChrysler communications department. Schrempp Dep. 353:2-11. The communications department then produced **501** a Proposed Action Program which incorporated many of the ideas and issues outlined in the Bell Pottinger document. *Compare* PX 425 *with* PX 439. Because Defendants adopted the statements in the Bell Pottinger document, the Court will overrule Defendants' hearsay objection to the admissibility of that document.

[18][19] With regard to the Hart studies, the Court concludes that those studies are not hearsay, because they are not offered for the truth of the matters asserted in them. Tracinda offers the Hart studies to show the public's state of mind after the announcement of the Merger and to demonstrate that Defendants were aware of the public's perceptions. *See, e.g., Pittsburgh Press Club v. United States, 579 F.2d 751, 757-758 (3d Cir.1978)* (recognizing that some polls are not hearsay because they are admitted to show the beliefs or attitudes of the respondent, or they fall within hearsay exceptions). Further, even if the Hart studies are considered hearsay, they are admissible to demonstrate the present sense impressions or state of mind of the surveyed participants. *Id.* at 757-758; *see also Schering Corp. v. Pfizer Inc., 189 F.3d 218, 225 (2d Cir.1999); Zippo Mfg. Co. v. Rogers Imports, Inc., 216 F.Supp. 670, 683-684 (S.D.N.Y.1963)*. Accordingly, the Court will overrule Defendants' objection to the materials from the third-party public relations and research firms.

### H. Notes Authored By Gary Valade (PXs 980-982, 984-988, 990, 992-998, 1004- 1005, 1012, DX 828)

Defendants next object to certain portions of the notes authored by Gary Valade. Defendants contend that the notes are hearsay, and they do not fall within

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

any of the hearsay exceptions. Because Valade testified that he was not an official secretary at the meeting and his notes were "filtered through his thinking," Defendants contend that the notes do not qualify as a present sense impression. Defendants also contend that certain documents containing Valade's notes are not admissible, because the underlying text which Tracinda seeks to admit was not created by Valade. Defendants contend that these documents do not satisfy the business record exception, because Valade did not author or participate in the discussions reflected in the type written documents. Defendants also contend that other portions of the Valade notes are inadmissible, because Plaintiffs did not question any witnesses about those notes, and thus laid no foundation for their admissibility.

Tracinda contends that it is inappropriate for Defendants to challenge the admissibility of the notes on the basis of whether they were discussed by any witnesses at trial, because Defendants produced the notes the night before the last day of trial. As a result, Tracinda was unable to redepose Valade or any of the other witnesses implicated by the notes, and therefore, Tracinda could not test the statements in the notes and Valade's explanation of the meaning of the notes offered on direct examination.

[20] The Court concludes that the Valade notes are admissible. First, the statements in the notes made by Defendants, Valade and/or other employees or agents of Chrysler Corporation and Defendants constitute non-hearsay party admissions of Defendants. *See Sherif v. AstraZeneca*, 2002 WL 32350023, at * 2-*3 (E.D.Pa. May 9, 2002) (holding that statements of employees/agents of predecessor company that were merged into defendant corporation prior to the merger were admissible as non-hearsay party admissions of defendant corporation).

**\*502** [21][22] In addition, the Court concludes that the notes are admissible under the present sense impression exception to the hearsay rule. Three requirements must be met to establish admissibility under Rule 803(1): (1) the declarant must have personally perceived the event described, (2) the declaration must be a factual description, and (3) the declaration and the event described must be contemporaneous. *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir.1998). Valade was present at these meetings and discussions, and while he was not asked to be a stenographer for the meeting, he contemporaneously recorded what transpired.

Defendants contend that the Valade notes do not fall within this exception because Valade testified that the notes were "filtered" through his thinking. In support of their position, Defendants cite to two cases, *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 791 F.2d 288, 293 (4th Cir.1986) and *In re Cirrus Logic Sec. Litig.*, 946 F.Supp. 1446, 1469 (N.D.Cal.1996). In those cases, the respective courts declined to apply the present sense impression exception to notes taken during meetings. However, the Court finds the circumstances of those cases distinguishable from the circumstances here. In *Hospital Building Co.*, the note-taker testified that he could not recall the meetings or conversations during which he took the notes and had no independent memory of the meetings and conversations, and in *Cirrus*, the note-taker testified at his deposition that the notes were subjective and inaccurate. In this case, Valade testified extensively as to his independent recollection of the meetings and conversations reflected in his notes, and Valade did not suggest that his notes were inaccurate, untrustworthy or non-factual. Accordingly, the Court is persuaded that the notes are admissible under the present sense impression exception to the hearsay rule.

[23] Further, the Court is mindful that the documents were produced on the eve of the last day of trial and Tracinda has not fully met the rigid requirements of the business record exception. However, the Court is persuaded that these notes are admissible, in the alternative, pursuant to the residual hearsay exception. Valade testified that the notes which were not prepared by him were produced by Chrysler working groups in connection with meetings held by Daimler Benz. Valade testified that he maintained these notes in his own work record and would have sent them to the general Chrysler corporate files if he had not been concerned with maintaining the secrecy of the merger negotiations. As such, the Court is persuaded that all the notes produced by Valade have the indicia of trustworthiness required by Rule 807. Because the notes have indicia of trustworthiness, are probative and the interests of justice will be served by their admissibility, the Court also concludes that they are admissible under Rule 807.

### I. Deposition Testimony Of Kathleen Oswald

Defendants contend that the deposition testimony of Kathleen Oswald offered by Tracinda is inadmissible. The testimony at issue is Ms. Oswald's statement that Eaton told her that he and Schrempp had a separate conversation in which Schrempp allegedly told Eaton that "it was time to retire." Defendants contend that

this testimony is inadmissible triple hearsay. Defendants also contend that this testimony is not admissible as an admission by a party opponent, because Oswald had no personal knowledge of the statement allegedly made by Schrempp to Eaton. Defendants also contend that Oswald's testimony is inherently unreliable, **503** because it conflicts with Eaton's testimony that he decided to retire voluntarily.

Tracinda contends that each out-of-court statement contained in Oswald's testimony constitutes an admission by a party opponent. Tracinda also contends that Ms. Oswald's deposition testimony is admissible under the former testimony exception of the hearsay rule, because her deposition was taken in compliance with the law, and Defendants had an opportunity to develop the testimony by producing Oswald at trial, but did not.

[24] To be admissible, Tracinda must demonstrate that each out-of-court statement is not hearsay or falls within an exception to the hearsay rule. *See* Fed.R.Evid. 805; *Leung v. SHK Mgmt., Inc.,* 1999 WL 1240961, *8 (E.D.Pa. Dec.21, 1999). The first statement, which is Schrempp's alleged statement to Eaton is not hearsay, because it is an admission of a party opponent, being offered against that party opponent, under Rule 801(d)(2)(A). *See Blackburn v. UPS, Inc.,* 179 F.3d 81, 96 (3d Cir.1999) ( "Under Rule 801(d)(2)(A), a statement offered against a party is not hearsay if it is the party's own statement").

[25] The second statement which is Eaton's statement to Oswald regarding what Schrempp told him is also not hearsay under Rule 801(d)(2)(D), because Eaton is properly considered an agent of DaimlerChrysler as a result of his employment with DaimlerChrysler, and later through his Separation Agreement which prohibits him from speaking negatively about DaimlerChrysler. In addition, Eaton's statements were made during the existence of his agency or employment relationship and concern a matter within the scope of his agency or employment relationship. [FN4] *See, e.g., Nekolny v. Painter,* 653 F.2d 1164, 1172 (7th Cir.1981).

> FN4. The Court observes that Defendants made no argument concerning the level of hearsay constituting Eaton's statement to Oswald. Defendants' only argument against the admissibility of this testimony pertained to the level of hearsay involving Oswald's statements.

[26] As for the third out of court statement, which is Oswald's deposition testimony, the Court concludes that statement is admissible under Rule 804(b)(1) as former testimony. Oswald is unavailable, because she is resident of Michigan and thus, outside of the subpoena power of the Court. *See, e.g., AEL Industries, Inc. v. Alvarez,* 1989 WL 97394, *2 (E.D.Pa. Aug.17, 1989). Oswald's testimony was taken at a deposition and Defendants had the opportunity to challenge her testimony if they so chose. In these circumstances, the Court is also persuaded that Oswald's testimony has guarantees of trustworthiness, because it was given under oath and Defendants had the opportunity to test the accuracy of her statements. 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.04[1][a] (Joseph M. McLaughlin, ed., 2d ed. 2004) ("The proffer of a deposition or testimony given at another trial raises a hearsay question .... However, the statement was given under oath, is usually in writing, was given under the circumstances suggesting the need for care and accuracy, and was subject to an adequate opportunity for cross-examination. Only the absence of an opportunity for the trier to observe the witness's demeanor detracts from the ideal conditions for giving testimony.") In these circumstances, Defendants' argument that Oswald's testimony is not reliable in light of Eaton's contradictory statements goes to the weight to be afforded to the evidence and not to its admissibility. Accordingly, the Court will overrule Defendants' objection to the admissibility of Oswald's testimony.

**504** *J. Portions Of Trial Testimony Of Anthony Mandekic*

Defendants object to the admissibility of portions of Mandekic's testimony including his statement that "Kirk was very happy with Chrysler management," and his testimony regarding other statements made by Kerkorian about what Eaton said to him. Defendants contend that Tracinda laid no foundation demonstrating that Mandekic had personal knowledge of Kerkorian's views, and Defendants contend that the statements concerning Kerkorian's conversations with Eaton are inadmissible hearsay.

Tracinda contends that ample testimony was offered to establish that Mandekic had personal knowledge of Kerkorian's views. Tracinda also contends that Mandekic's testimony about what Eaton told Kerkorian is admissible under Rule 801(d)(2) as an admission of a party opponent by virtue of the fact that Eaton was the Chief Executive Officer of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

Chrysler, the predecessor company that was merged into DaimlerChrysler. Tracinda also contends that the rationale for the hearsay rule does not apply to Mandekic's testimony, because both Eaton and Kerkorian testified after Mandekic and were adequately subject to cross-examination regarding the statements attributed to them by Mandekic.

[27] The Court concludes that the Mandekic testimony is admissible. Adequate foundation was established for Mandekic's personal knowledge of Kerkorian's views, including his 34 years of working with Kerkorian, his testimony that he knows Kerkorian's working style and business practices, and his personal awareness of Kerkorian's views about Chrysler's management as a result of his discussions with Kerkorian. Mandekic Tr. Vol. A 114:10-115:1, 120:5-9, 132:8-133:13; *see, e.g., Williams v. Borough of West Chester,* 891 F.2d 458, 466 n. 12 (3d Cir.1990) (recognizing that foundation was established when witness testified that he learned what others knew by discussing the matter with them).

[28] In addition, the Court concludes that Mandekic's testimony about Eaton's statement is not hearsay. Eaton's statements qualify as an admission under Rule 801(d)(2) given his role as Chief Executive Officer of Chrysler, one of the predecessors of DaimlerChrysler. *See, e.g., Sherif,* 2002 WL 32350023, at *2-3. In the alternative, even if Mandekic's testimony about Eaton's conversations with Kerkorian are hearsay, the Court concludes that they are admissible under Rule 803(3) as evidence of Tracinda's state of mind, which is relevant to Tracinda's reliance on Defendants' alleged oral and written representations. *See, e.g., Lo Bosco v. Kure Engineering, Ltd.,* 891 F.Supp. 1020, 1029 (D.N.J.1995) (concluding that testimony was admissible under Rule 803(3), "because it is evidence of the state of mind on one side of the transaction at the time of the alleged contracting" and is relevant to reliance). Accordingly, the Court will overrule Defendants' objection to the admissibility of certain portions of Mandekic's testimony.

K. *Book Entitled Getting Bigger By Growing Smaller And Testimony Regarding The Book*

Defendants next contend that the book, *Getting Bigger by Growing Smaller,* which contained the contributions of Thomas Stallkamp is inadmissible hearsay. Defendants contend that Tracinda circumvented the "ground rules" laid by the Court concerning the recall of Stallkamp to discuss Valade's

notes by going outside of those notes and trying to impeach Stallkamp's prior testimony using excerpts of the book. Defendants also contend that the book is not admissible, because Tracinda did not **505 include it in its exhibit list following trial despite the Court's instructions at the close of trial to meet with its courtroom deputy to "be sure that [the Court] recorded ... the exhibits that you believe are in evidence in this case ... and then that will be the exhibit list ... that will form the exhibit record for your post-trial briefing." Tr. Vol. M 2859:5-16. Tracinda submitted its final Exhibit List on February 13, 2004, and did not seek to amend that list until two months later on April 19, 2004, to include the book. In addition, Defendants object to the admissibility of the book on hearsay grounds and contend that the book is not admissible as a prior inconsistent statement of Stallkamp, because Stallkamp's testimony was consistent with the book.

Tracinda contends that the rationale behind the inadmissibility of hearsay is not present with regard to the Stallkamp book, because Stallkamp was available to Defendants for further examination. In addition, Tracinda contends that the book is admissible under the residual hearsay exception, and that the book was properly used as a prior inconsistent statement to impeach Stallkamp.

[29] As a threshold matter, the Court concludes that Tracinda is not precluded from seeking to admit the book because it failed to include it on its exhibit list. Tracinda amended its exhibit list prior to the filing of the Opening Briefs, and the Court finds that Defendants suffered no undue prejudice as a result of Tracinda's delay in adding the book to its final exhibit list. Accordingly, the Court will not preclude the book's admissibility on this procedural ground. [FN5]

> FN5. Further, for the reasons discussed *supra,* the Court concludes that the Stallkamp book is properly considered impeachment evidence, and impeachment evidence is not required to be disclosed pre-trial. Fed.R.Civ.P. 26(a)(3) (stating that "a party shall provide to other parties ... the following information regarding the evidence that it may present at trial other than solely for impeachment"); *see, e.g., DeBiasio v. Illinois Cent. R.R.,* 52 F.3d 678, 686 (7th Cir.1995) (holding that trial court abused its discretion in excluding impeachment evidence on grounds that evidence was not disclosed before trial).

[30] As for Defendants' hearsay objection, the Court will overrule the objection and admit the evidence as a prior inconsistent statement. In pertinent part, Rule 613(b) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interest of justice otherwise require.

Stallkamp's book can be viewed as a prior inconsistent statement, and at trial, Stallkamp was afforded an opportunity to explain the views he espoused in the book. Whether Stallkamp effectively explained his prior views and whether Tracinda was effective in its attempt to impeach his testimony has no bearing on the ultimate question of the book's admissibility. Accordingly, the Court will overrule Defendants' objection to the admissibility of the excerpts of the book *Getting Bigger By Growing Smaller.*

## II.     PLAINTIFFS'     EVIDENTIARY OBJECTIONS

### A. *Expert Testimony Of Daniel R. Fischel*

Tracinda contends that the testimony of Defendants' expert witness, Daniel R. Fischel, should be excluded because his testimony exceeds the scope of his report and included opinions not mentioned in his report or in his deposition. Tracinda also *506 contends that this "new" testimony was based on exhibits that were not part of his original report, not disclosed during discovery and only shown to Tracinda immediately prior to Fischel's testimony.

In response, Defendants contend that Fischel's testimony was consistent with his report and that the only "new" testimony by Fischel was in response to a claim made by Tracinda's expert, Silber, that was not contained in Silber's report. To the extent that Fischel's testimony differed from what was in his expert report, Defendants contend that those differences were either immaterial or in the form of demonstrative charts and graphics which summarized the opinions expressed in his report.

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), an expert report shall contain, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions ...."

Expert reports must also be supplemented when required in accordance with the provisions of Rule 26(e)(1), which provides, in pertinent part that:

[a] party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in *some material respect the information disclosed is incomplete or incorrect* and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

[31][32] The purpose of the initial disclosures provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence. *Astrazeneca AB v. Mutual Pharmaceutical Co.,* 278 F.Supp.2d 491, 510 (E.D.Pa.2003). Failure to comply with the disclosures required by Rule 26 may result in the exclusion of evidence pursuant to Rule 37. Rule 37 provides that unless the failure to disclose is harmless, a party who fails to disclose without substantial justification is not permitted to use the undisclosed evidence at trial. Fed.R.Civ.P. 37. In determining whether to exclude evidence under Rule 37, the court should consider such factors as: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order." *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904-905 (3d Cir.1977). Courts must also be mindful that the "exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Borden v. Ingersoll-Rand Co.,* 2003 WL 21488511, *2 (E.D.Pa. Jan.17, 2003) (quoting *Pennypack,* 559 F.2d at 905). With these standards in mind, the Court will turn to a discussion of each piece of evidence sought to be excluded by Tracinda.

### 1. DX 849 & Fischel Tr. 2653:4-2661:11

[33] DX 849 is a chart that was appended as Exhibit K to his report, but *507 modified as of February 9,

2005, to include more recent transactions that were announced after the date of Fischel's report on January 9, 2003. Using this exhibit, Fischel testified, among other things,

> that Chrysler shareholders received how a very substantial premium, regardless of how the ... transaction is characterized, even if one accepts plaintiff's claim that the transaction should not have been characterized as a merger of equals.... And secondly, their claim that if the transaction were characterized in some other way that you add some fixed premium onto the pre-transaction price. That simply and fundamentally is inconsistent with the data. There is no such thing as a set control premium, whether or not the transaction is characterized as a merger of equals.
> Fischel Tr. Vol. M 2660:21-2661:11.

Reviewing the substance of Fischel's report, the Court concludes that Fischel's testimony and the use of DX 849 did not constitute a material change from his expert report. Fischel opined in his report that Tracinda's claim that "the purported fraud caused Chrysler shareholders to forsake an additional premium is speculative and implausible." D.I. 547, Fischel report ¶ 7. Fischel went on to opine that the way in which the merger was characterized did not affect the premium that Chrysler shareholder were paid, and that Tracinda had not demonstrated that Chrysler shareholders would have obtained a higher premium if the characterization had been characterized differently. Id. The exhibit attached to Fischel's report showed the premiums paid in comparable transactions that were stock-financed, had a single bidder, were larger than $10 billion and were labeled as "change of control" transactions. Id. at ¶ 35 & Exh. K. Commenting on this exhibit in his report, Fischel noted that many of these transactions had premiums lower than the actual premium received by Chrysler shareholders. Id. at ¶ 35. Because Fischel's trial testimony was consistent with and not materially different from the opinions contained in his expert report, the Court finds no justification for excluding his testimony. Further, the updates made to DX 849 were from public sources and were consistent with the types of examples contained in the original exhibit to the Fischel report. D.I. 547, Fischel report, Exh. K. In this regard, the Court concludes that the report was not materially changed by the use of additional, newer transactions, because those additions changed nothing regarding the underlying analysis and only served to make the report more current. [FN6] Accordingly, the Court will overrule Tracinda's objection to DX 849 and Fischel's related testimony.

FN6. See Stein v. Foamex Int'l, Inc., 2001 WL 936566, *6-*7 (E.D.Pa. Aug.15, 2001) (striking expert affidavit only where opinions contradicted those in expert's report and "materially alter[ed] his intended expert testimony at trial"); Point Prods. A.G. v. Sony Music Entm't, Inc., 2004 WL 345551, *9-*10 (S.D.N.Y. Feb.23, 2004) (striking expert affidavit as untimely where affidavit "expound[ed] a wholly new and complex approach designed to fill a significant and logical gap in the first [expert] report").

2. DX 847 and Fischel Tr. Vol. M 2270:17-2772:4
[34] DX 847 was sent to Tracinda on December 15, 2003, and is a chart entitled Corrected Share Value Calculation which was used by Fischel during his testimony to explain the flaws in Meyer's "Share Value Calculation." Tracinda contends that Fischel's chart and testimony went beyond the bounds of his expert report by claiming that Meyer's calculations were incorrect. Although DX 847 was prepared based on Meyer's Trial Graphic 6, Tracinda contends that it was not based on new information, because Meyer's trial graphic *508 was based on data contained in Exhibit 5 to Meyer's report. Tracinda also contends that Fischel provided no explanation as to why Meyer's calculations were incorrect or how he arrived at his corrected figures.

Although DX 847 was not part of Fischel's original report, the Court concludes that DX 847 and Fischel's testimony is within the scope of issues discussed in Fischel's report. In his report, Fischel discusses Silber's attempt to convert the premium he contends should have been paid in the Merger to a dollar value. The assumptions Silber used in his analysis were similar, if not identical, to the assumptions Meyer made in his calculations. Explaining the error in these assumptions, Fischel stated:

> In a stock financed merger, a higher premium would have been obtained by having a higher Chrysler exchange ratio, thereby providing Chrysler shareholders with more DaimlerChrysler shares upon consummation of the Merger. Professor Silber's calculation represents the value of the assumed additional shares when the Merger was announced. But, the assumed additional shares could not have been issued until [the] merger was consummated. On November 12, 1998, the day the Merger was actually consummated, the value of the assumed additional shares would have been substantially less. And the value of these hypothetical additional shares would

have been even lower on November 27, 2000, the day that Professor Silber's client, Tracinda, filed its suit.

D.I. 547, Fischel report ¶ 25 n. 20. Fischel used similar reasoning in describing the alleged errors in Meyer's calculation at trial, and the Court cannot conclude that the use of DX 847 as a demonstrative to respond to Meyer's trial graphic evidenced bad faith on the part of Defendants. [FN7] *See Fitz, Inc. v. Ralph Wilson Plastics Co.,* 184 F.R.D. 532, 538 (D.N.J.1999) (finding expert provided sufficient basis for opinion when he testified that he relied on established scientific principles and the opposing party's data, which "allow[ed] one to comprehend how he arrived [at] his opinion"). Further, just before Fischel was scheduled to testify, Tracinda produced PX 1025 entitled "Summary of Share Value Calculations" which compares the numbers generated by Fischel's correct share value calculations with the alternative numbers Tracinda calculated. The use of PX 1025 demonstrates that Tracinda understood Fischel's analysis, and also demonstrates that Tracinda was not prejudiced by the introduction of DX 847 and Fischel's related testimony. Because DX 847 and Fischel's related testimony was not presented in bad faith and was consistent with his opinions contained in his expert report and Tracinda was not prejudiced, the Court will overrule Tracinda's objection to DX 847 and Fischel's related testimony.

> FN7. The Court further notes that the parties agreed to exchange demonstrative exhibits the day before a witness testified. DX 847 was given to Tracinda on December 15, 2003 as DX 827. Trial then recessed because of the discovery production problem, and Defendants provided Tracinda with the same exhibit, marked as DX 847, on February 9, 2003. While it is true that the discovery problem was precipitated by Defendants, Tracinda did have several weeks to review the exhibit prior to its use which further supports the finding that Tracinda was not unduly prejudiced or unfairly surprised by Defendants' use of the exhibit and Tracinda had ample time to formulate a cross-examination in response to DX 847.

### 3. Fischel Tr. Vol. M 2732:6-2739:11

[35] During trial Fischel testified regarding five separate tests he ran on Silber's **509** data to demonstrate its inaccuracy. Tracinda contends that this testimony exceeded Fischel's report, because only two tests were disclosed in his report. Tracinda

contends that these tests were available and could have been performed earlier and appended to Fischel's report, but for Defendants' desire to avoid the scrutiny of Tracinda's experts.

In response, Defendants contend that Fischel's testimony was a response to claims made by Tracinda's expert at trial which were not made in his report. As such, Defendants contend that Fischel did not have the opportunity to assess Silber's claim until after Silber testified. Defendants also contend that Tracinda improperly seeks to exclude Fischel's testimony regarding the two tests that were disclosed in his expert report.

Reviewing the subject testimony in light of the applicable legal standards and the testimony of Tracinda's expert witness Silber, the Court concludes that Fischel's testimony is admissible as a response to Silber's trial testimony. Further, the data underlying Fischel's testimony was either produced to Tracinda before trial or included in Silber's own report. In these circumstances, the Court cannot conclude that Fischel's testimony unfairly surprised or prejudiced Tracinda. *Cf. Stich v. United States,* 730 F.2d 115, 118 (3d Cir.1984) (holding that district court did not abuse its discretion in allowing expert to rely on new article produced one week before trial testimony, because plaintiffs could adequately prepare for cross-examination of expert based on already available data). Accordingly, the Court will overrule Tracinda's objection to Fischel's trial testimony at Vol. M 2732:6-2739:11.

### 4. Fischel Tr. Vol. M 2723:24-2728:13; DX 842 & DX 843

[36] DX 842 and DX 843 are charts prepared by Fischel during the December recess of this case. DX 842 is a chart entitled "Application of Dr. Silber's Regression Analysis to Other Firms in His Sample: Predicted Premiums Using Board Composition Data at the Time of the Merger." In this chart, Fischel ran Silber's regression analysis on the sample of companies selected by Silber. DX 843 is a chart entitled "Application of Dr. Silber's Regression Analysis to Other Firms in His Sample: Predicted Premiums Using Board Composition Data Three Years After Completion of the Merger." This chart is similar to DX 843, except that it examines board composition data three years after completion of the merger.

Tracinda contends that these charts should have been excluded, because they contained data from Silber's regression analysis which was contained in Silber's

362 F.Supp.2d 487                                                           Page 18
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

report, and thus, should have been made available to Tracinda earlier. Because these charts were not contained in Fischel's report or in any supplements, Tracinda contends that it had no opportunity to check Fischel's findings.

The Court concludes that DX 842 and 843 and the related testimony of Fischel are within the scope of the opinions made in Fischel's report regarding the lack of predictive value of Silber's regression model. Cf. *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1432-1433 (9th Cir.1991) (holding that even if court erred in permitting use of demonstrative exhibits, error was harmless, because demonstratives "did not introduce new evidence; they were simply a more graphic version of what [the expert] had said already"). Fischel testified that he did not have the idea to make these charts until he reviewed Silber's testimony, and the Court is persuaded that the charts were not created in bad faith to impede Tracinda's ability to confirm the analysis they contained. Further, the type of analysis performed by **\*510** Fischel in these charts was the type of analysis that Tracinda could have expected from its own expert. In these circumstances, the Court is not persuaded that Tracinda was prejudiced by Fischel's use of these demonstrative exhibits. Accordingly, the Court will overrule Tracinda's objection to DX 842 and 843 and Fischel's related testimony.

5. Fischel Tr. Vol. M 2715:12-2717:10; DX 840 & DX 841

[37] DX 840 is a chart entitled "Change in Composition of Board of Directors Subsequent to Mergers Analyzed by Professor Silber." This chart looks at the transactions shown in Exhibit 1 of Professor Silber's report to assess change in board composition after three years. DX 841 is entitled "Change in Composition of Inside Directors on Boards of Directors Subsequent to Mergers Analyzed by Professor Silber." This exhibit is similar to DX 840, but looks at the composition of inside directors on the boards of the sample companies and assesses change in the inside director board representation after three years.

Tracinda contends that these exhibits went beyond the scope of Fischel's report, because Fischel did not opine on Silber's sample of transactions and board composition. Tracinda contends that Silber's data was available since the date of his report, December 2, 2002, and Tracinda was unable to test Fischel's analysis because of its belated presentation.

In response, Defendants contend that Fischel

discussed an identical analysis in his report using sample transactions relied upon by Tracinda's expert, Robert Stobaugh. Defendants point out that many of the transactions Stobaugh used overlapped with those used by Silber. Thus, Defendants contend that Tracinda was not surprised or prejudiced by Fischel's testimony and his use of DXs 840 and 841.

The Court concludes the exhibits are consistent with the opinions contained in Fischel's expert report and do not reflect a material change in Fischel's opinion. In his report, Fischel noted that, in every transaction, there was a change in the relative representation of predecessor company management on the Board of Directors. D.I. 547, Fischel report ¶ 21. However, Fischel opined that "[t]he disaggregate data demonstrate that changes in board representation after the completion of a merger are consistent with the characterization of the merger as a 'merger of equals.' " *Id.* With respect to DX 840 and 841, Fischel testified at trial that he "performed the exact same analysis with Professor Silber's sample that [he] did with Professor Stobaugh's sample, particularly once [he] learned that Professor Silber was going to testify at the trial and Professor Stobaugh was not." Fischel also testified that he received the same results from the analysis he performed. Further, several of the transactions Fischel used in his initial analysis of Stobaugh's transactions were repeated in Fischel's analysis of Silber's data. [FN8] In these circumstances, the Court is persuaded that Tracinda had sufficient notice of Fischel's opinion and the analysis he used such that Tracinda was not prejudiced by Fischel's use of DX 840 and 841. [FN9] *See, e.g.,* **\*511** *DiPirro v. United States*, 43 F.Supp.2d 327, 341 (W.D.N.Y.1999). Because the demonstrative exhibits and Fischel's related testimony were consistent with Fischel's opinion and Tracinda was not unfairly prejudiced by the use of these demonstrative exhibits, the Court will overrule Tracinda's objection to DX 840 and 841 and Fischel's related testimony.

FN8. Specifically, four of the ten transactions used by Silber were used by Stobaugh and contained in Fischel's initial expert report. *Compare* D.I. 547, Fischel report, Exh. G *with* DXs 840, 841.

FN9. The Court further notes that, in accordance with the parties' agreement, these exhibits were produced as demonstrative exhibits on December 15, 2003, marked as DX 823 and DX 824. Trial then recessed and the exhibits were

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487
362 F.Supp.2d 487
(Cite as: 362 F.Supp.2d 487)

Page 19

produced again on February 9, marked as DX 841 and 840. Thus, as the Court noted in the context of DX 847, Tracinda had ample time to formulate its cross-examination to respond to these materials.

**B.** *Deposition Testimony Of Tracinda's Expert Robert Stobaugh*

[38] Tracinda also objects to Defendants' use of the deposition testimony of an expert, Robert Stobaugh, who was hired by Tracinda, but whose testimony Tracinda decided not to use. Tracinda contends that Defendants failed to designate any portion of Stobaugh's deposition testimony in either their Designations, Counter-Designations, or Counter-Counter Designations. Tracinda contends that Defendants mischaracterize Stobaugh's deposition testimony, and that had Tracinda known that Defendants' would use Stobaugh's testimony, it would have designated lines 27:14-28:10 and 28:22-29:7 to complete the record and prevent Stobaugh's testimony from being used in a misleading manner. Because it was not properly designated by Defendants, Tracinda contends that Stobaugh's testimony should not be considered part of the record in this case and should be stricken.

In response, Defendants contend that Stobaugh is an expert witness and not a fact witness, and therefore, Stobaugh was not unavailable under the rules such that Defendants would have been required to designate his deposition testimony. Defendants further contend that Tracinda's own conduct of concealing its intention not to call Stobaugh until after the deadline for deposition designations had passed contributed to Defendants' failure to include Stobaugh in its designations. Defendants also contend that if Stobaugh's testimony is excluded, then the Court should exclude some 20 citations to undesignated deposition testimony offered by Tracinda. D.I. 1061, Exh. A (list of undesignated deposition testimony cited by Tracinda).

Deposition testimony may be admitted into evidence through the use of a deposition designation, and courts have precluded the use of deposition testimony which is not properly designated by a party. In this case, Defendants did not designate the deposition testimony of Stobaugh; however, Tracinda also did not inform Defendants of its intention not to call Stobaugh until after the deposition deadline passed. Stobaugh was included on Tracinda's list of trial witnesses in the parties' November 3, 2003 Joint Pre-Trial Order, and in a letter dated November 21, 2003

from its counsel, Tracinda listed the witnesses it planned to call at trial. However, Tracinda did not list its expert witnesses individually in its November 21, 2003 letter, but instead listed "Tracinda's damage experts." By letter dated November 24, 2003, Defendants asked Tracinda which experts would be testifying and specifically asked whether Stobaugh would be called. In a reply the same day, Tracinda informed Defendants that Stobaugh would not testify at trial. In these circumstances, the Court is reluctant to preclude Defendants from using Stobaugh's deposition; however, the Court will, in fairness to Tracinda, admit into evidence that portion of Stobaugh's testimony which Tracinda identified in its Opening Evidentiary Brief to complete the record and prevent any mischaracterization of Stobaugh's testimony. Accordingly, **\*512** Tracinda's objection to Defendant's use of Stobaugh's deposition testimony will be overruled.

**C.** *Portion Of Testimony Of Gary Valade And Valade's Notes (Valade Tr. Vol. L at 2389:1-15; PX 991 at 243267)*

Tracinda next objects to a portion of Valade's testimony and one of his notes used by Defendants in their Post-Trial Brief. Specifically, Valade's note reads: "Aljian--send anything he had on MB, boss interested @ 20%." PX 991 at 243267. Explaining the meaning of this note, Valade testified that Steve Koch told him that he spoke to Aljian that morning and that "Aljian had volunteered to send him anything that he had on the Mercedes-Benz in terms of analysis. And assured him that his boss [whom Valade understood to be Kerkorian] was interested at anything above 20 percent in terms of a premium." Valade Tr. Vol. L 2389:1-15. Tracinda contends that Valade's note and testimony is inadmissible triple hearsay as to what Kerkorian allegedly said and inadmissible double hearsay as to what Aljian allegedly said. Tracinda contends that Koch's statements are not admissible as an admission, because Koch was an investment banker employed by CSFB, and did not act or represent Tracinda. Tracinda also contends that the statements made by Kerkorian to Aljian and Aljian to Koch are also not admissions against interest, because Tracinda has consistently maintained that "if the Transaction had been as promised, a 'merger of equals' with shared, joint management control, the premium that was paid would have been acceptable." D.I. 1048 at 25. Tracinda further contends that these statements should be excluded under Rule 403 as confusing and misleading, because Defendants neglect to mention the context of Aljian's alleged statement, which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

included discussions of joint management of the new company.

Defendants contend that the aforementioned testimony and note of Valade are admissible, because they are not offered for the truth of the matter asserted. Rather, Defendants contend that Valade's testimony and note are offered to show Tracinda's state of mind, and therefore fall within the hearsay exception provided in Rule 803(3). Specifically, Defendants contend that the Valade notes and testimony demonstrate that "Tracinda was so enthusiastic about the Merger (before learning anything about its corporate governance aspects) that it feared that Chrysler would bargain for too high a price, causing Daimler-Benz shareholders to reject the transaction." D.I. 1061 at 27.

[39][40] Pursuant to Federal Rule of Evidence 805, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Kerkorian's statement to Aljian and Aljian's repetition of that statement to Koch is admissible under the exception provided for in Rule 803(3) as a "statement of the declarant's then existing state of mind." As for Koch's statement to Valde about what Aljian said about Kerkorian's views, the Court concludes that statement is admissible because it is not hearsay. Defendants have not offered the statement to prove the truth of the matter asserted as required by the definition of hearsay in Rule 801(c), i.e. that Tracinda was interested at a 20% premium, but only to show Tracinda's enthusiasm for the merger before learning about any corporate governance terms and its potential fear that too high a premium would preclude the transaction from being completed. Accordingly, *513 the Court will overrule Tracinda's objection to Valade's notes and testimony.

D. *Evidence Concerning Meredith Brown's Advice*

Tracinda also objects to certain testimony concerning the advice of Meredith Brown. Specifically, Tracinda contends that Defendants invoked the attorney-client privilege with respect to Ms. Brown's advice to the Chrysler Board, yet Defendants questioned two witnesses, Lanigan and Stallkamp, about that advice. Lanigan Tr. Vol. I 2076:25-2078:2; Stallkamp Tr. Vol. K 2289:23-2292:6. Tracinda contends that, as a result of this line of questioning, Defendants improperly used the attorney-client privilege as a shield and a sword, and that if Defendants wished to waive the attorney-client

privilege they should have done so during discovery.

Defendants contend that its invocation of the privilege did not shield Brown's advice from Tracinda, because Tracinda's Aljian heard Brown's advice directly at the Chrysler Board's meeting. Although Defendants produced a redacted version of the minutes of that meeting to claim the privilege with respect to Brown's advice, Tracinda produced from its own files an unredacted version of the meeting's minutes, which included the substance of Brown's advice. Defendants also contend that Tracinda first introduced Brown's advice at trial and that it used Brown's advice in a misleading way. Defendants contend that they put into evidence the complete advice of Brown through their questioning of Stallkamp and Lanigan in order to correct the misleading impression Tracinda created by its initial use of Brown's advice.

[41] The attorney client privilege should not be used as both a sword and a shield. *See United States v. Rylander*, 460 U.S. 752, 758, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The rationale behind this rule is one of fairness. As courts in this district have explained, it is unfair to allow a party to "disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position ...." *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977). Similarly, a party should not be permitted to use the privilege to shield information which it has deliberately chosen to use offensively.

[42] In this case, Defendants asserted the privilege with respect to Brown's advice. However, Defendants did not introduce Brown's testimony offensively. Rather, Tracinda used Brown's testimony in an offensive manner by questioning Stallkamp and Lanigan regarding Brown's opinion that the subject transaction did not involve a change of control. However, Tracinda's use of Brown's opinion was incomplete and misleading, because it did not include Brown's reasons for her statement that the transaction did not involve a change of control. As Defendants pointed out, Brown went on to say in her opinion that no change of control was present in the contemplated transaction, because there was no controlling shareholder or shareholder group and no person or group would be in a position to block the sale of DaimlerChrysler. In this regard, Defendants used Browns' advice to complete the record and prevent it from being possibly misleading. Because Tracinda opened the door to Brown's testimony and Defendants used it defensively to complete the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

record, the Court will overrule Tracinda's objection to the evidence related to Brown's advice.

## CONCLUSION

For the reason's discussed, the Court will overrule and/or sustain the various *514 objections lodged by Tracinda and Defendants.

An appropriate Order detailing the Court's rulings on these evidentiary matters will be entered.

## ORDER

At Wilmington, this 30th day of March 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants' Motion To Exclude The Testimony And Reports Of Tracinda's Experts, Professor William L. Silber And H. Conrad Meyer, III, is DENIED.

2. Defendants' objection to the admissibility of *The Financial Times* article dated October 30, 2000 is OVERRULED.

3. Defendants' objection to the admissibility of the *Barron's* article is OVERRULED.

4. Defendants' objection to the admissibility of documents relating to the production dispute between Plaintiffs and *The Financial Times* over production of the October 2000 *Financial Times* interview is SUSTAINED.

5. Defendants' objection to the admissibility of the complaint in *Glickenhaus v. DaimlerChrysler AG* is SUSTAINED.

6. Defendants' objection to the admissibility of documents authored by third-parties regarding a possible business combination between Chrysler and Daimler-Benz is OVERRULED.

7. Defendants' objection to the admissibility of materials from third-party public relations/research firms (PXs 202, 265, 409, 425, 818, 880) is OVERRULED.

8. Defendants' objection to the admissibility of notes authored by Gary Valade (PXs 980-982, 984-988, 990, 992-998, 1004-1005, 1012, DX 828) is OVERRULED.

9. Defendants' objection to the admissibility of the testimony of Kathleen Oswald is OVERRULED.

10. Defendants' objection to the admissibility of the testimony of Anthony Mandekic is OVERRULED.

11. Defendants' objection to the admissibility of the book, *Getting Bigger By Growing Smaller* is OVERRULED.

12. Plaintiff's objection to the admissibility of certain portions of the expert testimony of Daniel R. Fischel is OVERRULED.

13. Plaintiff's objection to the deposition testimony of Robert Stobaugh is OVERRULED.

14. Plaintiff's objection to portions of the testimony of Gary Valade and Valade's notes (Valade Tr. Vol. L 2389:1-15; PX 991 at 243267) is OVERRULED.

15. Plaintiff's objection to the evidence concerning Meridith Brown's advice is OVERRULED.

362 F.Supp.2d 487

**Motions, Pleadings and Filings** (Back to top)

• 2004 WL 1224637 (Trial Motion, Memorandum and Affidavit) Defendants' Responsive Post-Trial Brief (May 14, 2004)

• 2004 WL 1224635 (Trial Motion, Memorandum and Affidavit) Defendants' Post-Trial Memorandum of Law and Memorandum in Support of Their Motion for Judgment as a Matter of Law (Apr. 23, 2004)

• 2003 WL 24282958 (Expert Report and Affidavit) Consolidated Action (Feb. 10, 2003) Original Image of this Document (PDF)

• 2003 WL 24282959 (Expert Report and Affidavit) Expert Report of Frederick C. Dunbar (Jan. 10, 2003) Original Image of this Document (PDF)

• 2003 WL 24282957 (Expert Report and Affidavit) Report of Expert Witness Richard A. Wines (Jan. 9, 2003) Original Image of this Document (PDF)

• 2002 WL 32991956 (Expert Report and Affidavit) Daimlerchrysler Ag Securities Litigation Preliminary Report of Anticipated Testimony (Dec. 2, 2002) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

362 F.Supp.2d 487
362 F.Supp.2d 487
**(Cite as: 362 F.Supp.2d 487)**

• <u>1:00CV00993</u> (Docket) (Nov. 28, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.