222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

# THE BAYARD FIRM
### A   T   T   O   R   N   E   Y   S

ᵐ MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395

WRITER'S DIRECT ACCESS

(302) 429-4208
rkirk@bayardfirm.com

BY HAND AND BY EMAIL

February 2, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

> **Re:**   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.;*
> **U.S. District Court Case No. 04-343 JJF**

Dear Special Master Poppiti:

LG.Philips LCD Co., Ltd., ("LPL") respectfully submits this Response and Opposition to ViewSonic Corporation's ("ViewSonic") Motion to Compel LPL to produce certain documents and/or a privilege log.

LPL has initiated and engaged in discussions regarding privilege logs in good faith throughout this case. On August 20, 2004, LPL produced a privilege log regarding the declaration of LPL's expert witness, William Bohannon.[1] Given the recent and continuing document productions, LPL proposed exchanging supplemental privilege logs in August 2006. (Ex. 1.) After Defendants failed to respond, LPL's counsel followed up with opposing counsel. (E-mail from C. Connor to S. Miller (Sept. 14, 2006) (Ex. 2).) ViewSonic's counsel then demanded that LPL log post-filing documents, without any corresponding obligations to do so by Defendants. ViewSonic's position was unfair and contrary to ViewSonic's prior position and agreement to log only pre-filing documents. During the December 28 hearing before Your Honor, LPL suggested the parties agree to a date certain to exchange updated privilege logs. (*See* Dec. 28, 2006 Hearing Tr. at 160:18-161:21 (Ex. 3).) On January 9, 2007, LPL's counsel further attempted to agree on a deadline for exchanging privilege logs, and to discuss the appropriate scope for logging post-filing documents.[2] (*See* Ex. 4.)

---

[1] We are not aware of any privilege logs produced by Tatung Company or Tatung Company of America, Inc. (collectively, "Tatung"). Any privilege log that Viewsonic has produced has not been updated since 2004.

[2] LPL's counsel also has attempted to discuss depositions and privilege logs by phone, but ViewSonic's counsel has avoided such discussions.

THE BAYARD FIRM

LPL has been working diligently on a privilege log while also addressing numerous other discovery-related issues on a daily basis. LPL's privilege log will include many documents in foreign languages such as Japanese and Korean, complicating the process of preparing the log. LPL will produce its updated privilege log on February 16, the date that ViewSonic proposes in its privilege log motion.

Regarding the scope of the privilege log, all parties should have reciprocal obligations and the onus should not fall solely on LPL to log post-filing privileged documents. ViewSonic has changed position on the scope of the privilege log multiple times, and each time it has become more burdensome only for LPL. Since the beginning of this case, the parties have had an agreement that only pre-filing documents would be logged. Indeed, ViewSonic long ago insisted that "privileged documents generated after the filing of the litigation, such as those created by counsel, need not be set forth on a privilege log as the burden to both parties to do otherwise would be extraordinary." (Letter from T. Roman to C. Christenson (Dec. 29, 2004) (Ex. 5).) Nearly two years later, ViewSonic cited two categories of post-filing documents that ViewSonic contends should be logged by LPL. (E-mail from S. Miller to C. Connor (Sept. 14, 2006) (Ex. 2).) Now, ViewSonic expands its demand to include eight categories of post-filing documents for LPL to log. (*See* Appendix A.) The eight categories listed in Appendix A apply uniquely to LPL and do not require ViewSonic to log any additional documents.

Although LPL is amenable to providing a complete privilege log, the scope and burden should be reciprocal. For example, in ViewSonic's January 16 letter to LPL (Ex. 6), ViewSonic conceded that documents concerning the advice of counsel defense were a category requiring logging.[3] If Defendants are withholding documents under some sort of "joint defense" basis or are withholding documents involving attorneys from firms not defending ViewSonic or Tatung in this case, such documents should be logged. Assuming that the Special Master allows Defendants to repudiate their agreement not to log post-filing documents, LPL agrees to log documents identified by ViewSonic in their motion to the extent described below and respectfully requests that the Special Master conclude that LPL need not log any other documents:

- For category 1 in Appendix A, which generally requests the logging of documents concerning patent applications related to the patents-in-suit, LPL will log all documents withheld as privileged from McKenna Long & Aldridge LLP's ("MLA") patent prosecution files concerning the patents-in-suit. LPL has produced documents from MLA's patent prosecution files concerning the patents-in-suit and any related continuations or continuations-in-part.

Logging all post-filing document related to continuations and continuations-in-part would be burdensome and unnecessary. It would be burdensome because there are six files and it would take significant time with no resulting benefit to the parties or the Special Master. In any event,

---

[3] The full text of the category in the letter reads: "To the extent called for by discovery, documents relating to advice of counsel, if asserted, should be produced or identified on a privilege log if withheld on the basis of privilege, regardless of the date of the documents." LPL's position is that no such defense has been properly asserted by any Defendant in this case. If advice of counsel becomes a part of this case, the Defendants should be required to log any post-filing documents related to this defense.

THE BAYARD FIRM

logging those documents should not be necessary because LPL's privilege log will include attorney/client communications from LPL's own patent files, and therefore should cover correspondence between MLA and LPL concerning continuations and continuations-in-part.

- For category 2 in Appendix A, requesting logging of documents related to foreign counterparts, LPL's log will include all documents withheld as privileged from LPL's patent files concerning the patents and foreign counterparts.

- Concerning category 3 in Appendix A, which requests that documents be logged that are related to any decision to file for a patent and/or assert prior art, LPL's log will include any such documents to the extent such documents are responsive to a document request, exist, and are withheld on privilege grounds.

- For category 4 in Appendix A, seeking logging of documents concerning LPL's evaluation of products other than the Defendants' products, LPL has produced certain responsive documents, and will log anything withheld as privileged to the extent such documents exist, and were requested in discovery.

- For categories 5 and 6 in Appendix A requesting logging of documents regarding the decision to assert the patents-in-suit, and ownership or title to the patents-in-suit, respectively, LPL will log such documents to the extent these documents exist, were requested, and have been withheld on privilege grounds.

- Category 7 in Appendix A requests the logging of documents for any joint venture related to the subject matter of the patents-in-suit. LPL is not aware of any such documents. Similarly, for category 8 requesting logging of documents related to licensing of the patents-in-suit or counterpart patents, LPL is not aware of any such documents. Therefore, these categories are moot.

　　　　LPL will provide its updated privilege log by the Defendant's suggested deadline of February 16, 2007. Based on the foregoing, LPL respectfully requests that Your Honor order that Defendants also produce an updated privilege log by February 16, 2007.[4]

　　　　Respectfully submitted,

_Richard D. Kirk_

Richard D. Kirk (rk0922)

cc: Counsel as shown on the attached certificate

---

[4] As an alternative remedy, ViewSonic requested that all of Plaintiff's objections based on the attorney-client privilege or work product doctrine be waived, and that LPL be compelled to immediately produce those materials. Any such sanction would also apply to Defendants, who have not provided updated (ViewSonic) or any (Tatung) privilege logs. LPL submits that this would be inappropriate under the circumstances of this case. *See In re Omega Protein, Inc.*, No. 2:04-cv-2071, 2007 WL 165494, at *1 (W.D. La. Jan. 17, 2007) (delay in sending privilege log did not support "draconian remedy" of waiver where party had promised to produce a log).

# APPENDIX A

| Category No. | Document Requests |
|---|---|
| 1. | Documents concerning any patent application related to the patents-in-suit, including continuations or continuations-in-part, reexamination requests, and any other communications with the [sic] with the U.S. Patent and Trademark Office. |
| 2. | Documents related to any foreign counterpart(s), including any opposition or related foreign practice, of any of the patents-in-suit. |
| 3. | All documents related to any decision to file for a patent, and any decision regarding what to submit as prior art in any communication with a patent office, as well as communications with any agents or draftsperson. |
| 4. | Documents concerning LPL's evaluation of products, other than the Defendants' products, for possible infringement of either of the patents-in-suit or any foreign counterpart(s). |
| 5. | Documents related to any decision regarding whether to assert either of the patents-in-suit or any foreign counterpart(s). |
| 6. | Documents related to ownership or title of the patents-in-suit or any foreign counterpart(s), or transfer of any kind related to the ownership of the patents-in-suit or any foreign counterpart(s). |
| 7. | Documents regarding any joint venture related to the subject matter of the patents-in-suit, included all documents related to the joint venture with Digital Equipment Corporation ("DEC"). |
| 8. | Documents related to the licensing of the patents-in-suit or any related counterpart patent. |

# EXHIBIT 1

# McKenna Long
## & Aldridge LLP
Attorneys at Law

| | | |
|---|---|---|
| Atlanta | | San Diego |
| Denver | | San Francisco |
| Los Angeles | 1900 K Street, NW • Washington, DC 20006 | Washington, DC |
| | 202.496.7500 • Fax: 202.496.7756 | |
| Philadelphia | www.mckennalong.com | Brussels |

NICOLE A. BALACI
(202) 496-7207

EMAIL ADDRESS
nbalaci@mckennalong.com

August 25, 2006

**BY E-MAIL**

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071-1560
smiller@cblh.com

Mark H. Krietzman, Esq.
Greenberg Traurig, LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
KrietzmanM@GTLAW.com

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.;*
U.S. District Court Case No. 04-343 JJF

Dear Counsel:

We would like to revisit the content and exchange of privilege logs in this case. As we have discussed in the past, privileged information generated after the date of the complaint (May 27, 2004) need not be logged. In addition, we propose that all parties exchange privilege logs on September 15, 2006.

Please let us know if you are amenable to our proposal.

Sincerely,

Nicole A. Balaci

DC:50429634 1

# EXHIBIT 2

**Manuel C. Nelson**

| | |
|---|---|
| **From:** | Scott Miller |
| **Sent:** | Thursday, September 14, 2006 2:48 PM |
| **To:** | 'Connor, Cormac'; HongJ@gtlaw.com; Mark H. Krietzman (KrietzmanM@GTLAW.com); perkinsst@gtlaw.com; HoV@GTLAW.com |
| **Cc:** | Manuel C. Nelson; tracy.roman@bingham.com |
| **Subject:** | RE: Privilege Logs |

Cormac:
Thank you for the reminder. Unfortunately, even though the issue was raised briefly during one of our recent plethora of meet and confer calls, apparently no one recalled the need to discuss the matter in detail.

ViewSonic is amenable to exchanging the privilege logs on a mutual basis on September 29 as you suggest.

While your email is silent on this issue, I recall that LPL also proposed that the parties adopt a blanket cut off date for logging materials withheld from production corresponding to the filing date of the Complaint. We are willing to agree that privileged documents specifically pertain to the claims for relief being asserted in this case and which post-date the Complaint need not be logged. We are not, however, willing to agree that all documents which post-date the filing of the Complaint can be withheld and not logged. Indeed, we believe that documents not directly pertaining to the claims for relief of this case, and which are within the scope of propounded discovery, must be listed if they are being withheld on the basis of privilege regardless of their date. For example, documents concerning the continuation applications that relate to the inventions disclosed in the patents in suit must be produced or logged. It is clear that they cannot be related to the claims in this action since no patent has issued and no claims of any such patent have been asserted. Likewise, documents concerning LPL's evaluation for infringement of the patents in suit of products from persons other than the defendants must also be logged. These examples are not meant to be comprehensive statements of exclusions but rather illustrative of why ViewSonic does not believe that a blanket cut-off date corresponding to the filing date of the Complaint is proper in this case.

Please advise if you feel a different scope of log is needed.

Scott

Scott R. Miller
Connolly Bove Lodge & Hutz LLP
355 South Grand Ave.
Suite 3150
Los Angeles, CA 90071

DID: 213-787-2510
Fax: 213-687-0498
Cell: 562-618-7771

smiller@cblh.com

www.cblh.com

---

**From:** Connor, Cormac [mailto:cconnor@mckennalong.com]
**Sent:** Thursday, September 14, 2006 12:54 PM
**To:** HongJ@gtlaw.com; Manuel C. Nelson; Mark H. Krietzman (KrietzmanM@GTLAW.com); Scott Miller; perkinsst@gtlaw.com; tracy.roman@bingham.com; HoV@GTLAW.com
**Subject:** Privilege Logs

On August 25, 2006, we sent you a letter asking if Defendants would agree to set September 15 as the date on which the parties would exchange privilege logs. We have not heard from any of you on this proposal and, as a result, September 15 is no longer a workable deadline.

As an alternative, would Defendants agree to exchange privilege logs on September 30? Please advise as soon as possible.

Cormac T. Connor

*(Admitted only in Colorado. Supervised by Lora A. Brzezynski, a member of the D.C. Bar.)*

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202-496-7439
fax 202-496-7756

email: cconnor@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

1/26/2007

# EXHIBIT 3

Hearing

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


PHILLIPS, L.G., LCD CO., LTD,    )
                                 )
          Plaintiffs,            )    C.A. No. 04-343(JJF)
                                 )
v.                               )
                                 )
TATUNG CO., TATUNG COMPANY OF    )
AMERICA, INC., and VIEWSONIC     )
CORPORATION,                     )
                                 )
          Defendants.            )

          Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Thursday, December 28, 2006, beginning at
approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

             THE BAYARD FIRM
             RICHARD D. KIRK, ESQ.
               222 Delaware Avenue, Suite 900
               Wilmington, Delaware  19899
               for Plaintiffs




                   CORBETT & WILCOX
            Registered Professional Reporters
      230 North Market Street     Wilmington, DE 19899
                   (302) 571-0510
                www.corbettreporting.com
           Corbett & Wilcox is not affiliated
          with Wilcox & Fetzer, Court Reporters

Page 154

1  being a common element of every LCD product that's sold
2  out there and they have not taken the position that
3  infringes elsewhere, that's evidence that should go
4  before a jury.
5          To the extent that they make this
6  product themselves, that they have identified this
7  component, or others have identified this component as
8  something other than the first frame, which they tried to
9  shoehorn it in this case as being, that would be relevant
10  to the trier of fact as well.
11          It's just a plethora of issues where the
12  structure of the product and the equivalent structure in
13  other components would be relevant to. And this request
14  seeks to get their -- information they have in their
15  possession, custody, or control that relates to the use
16  of a particular component that they have identified as
17  component C in the VX 900 in other flat panel display
18  products.
19          SPECIAL MASTER POPPITI:
20  Mr Christenson, I certainly understand the request and
21  the strength of it. Any --
22          MR. CHRISTENSON: Your Honor, Cass
23  Christenson. Given that comment, I think it's now more
24  clear what they are after. And it's disconcerting

Page 155

1  because it sounds like what they want is any documents
2  that exist related to or analyzing products that may
3  infringe, and there are really two categories of
4  documents.
5          One category are the documents that LPL
6  has that are not privileged, and those documents have
7  already been produced, including documents regarding
8  third-party products.
9          The other category are documents that,
10  you know, relate to any analysis done by outside counsel
11  for LPL, which we would deem privileged and work product
12          SPECIAL MASTER POPPITI: Well, I
13  understand -- now that you understand the request, and
14  you are responding to the request as you now understand
15  it, I don't have that response in writing for purposes of
16  protecting your record, but if the --
17          MR. CHRISTENSON: Perhaps one way to
18  clarify this is: Are they talking about the same time
19  period that we were talking about earlier?
20          SPECIAL MASTER POPPITI: Mr. Miller?
21          MR MILLER: No.
22          SPECIAL MASTER POPPITI: I understood it
23  was longer.
24          MR. AMBROZY: Okay. Then going back to

Page 156

1  the point about infringement, Your Honor, whether the
2  frames are important and whether we have asserted
3  infringement against another party that sells similar
4  frames, that's irrelevant. There is multiple defendants,
5  we will get to them as we get to them, but just because
6  someone else or we know of someone else that might be
7  selling a product that has this frame labeled as "C,"
8  it's irrelevant to the production.
9          We are willing to produce documents
10  pertaining to the critical date, but anything after that,
11  as it pertains to infringement, is irrelevant for the
12  purposes of Viewsonic's case.
13          MR. MILLER: Your Honor, I would
14  disagree. I mean, Mr. Ambrozy takes upon himself the
15  rights of the jury to decide what is or isn't important
16  in terms of the construction that's being offered here
17  and whether or not there's infringement.
18          SPECIAL MASTER POPPITI: I understand
19  the argument with respect to relevance and what the jury
20  may be entitled to listen to and what they may have to do
21  with it. But I am concerned about -- or I am struck by
22  the claim of privilege, and I understand that the -- that
23  the practice in the case has been not to develop a
24  privilege log, and I am not sure what that means for

Page 157

1  purposes of my dealing with 119 and a claim of privilege
2  with respect to dates up to the current time.
3          MR. MILLER: I don't think that this
4  request was structured to try to get at memos they have
5  written about infringement or not. It was structured to
6  get at, you know, products that they are -- that they --
7  that use these components and the underlying products.
8          I am not asking them to, through this
9  request, to admit or deny that they infringed. To me, it
10  doesn't seem like it implicates a privilege, if read so
11  broadly, that it would pick up documents that are their
12  analyses, then, you know, that's not something that we
13  are seeking to compel here.
14          SPECIAL MASTER POPPITI: Well, certainly
15  if there are documents that don't implicate the
16  privilege, then unless there is an agreement, I expect
17  that I would rule that these should be produced
18          If there is a claim of privilege with
19  respect to certain documents, Mr. Miller, are you
20  suggesting that given the practice in this case, that you
21  will -- well, how do you intend that that be dealt with?
22          MR MILLER: Well, one problem we have
23  in that regard is that, previously, LPL took the position
24  that the mere fact that they had a product was

Hearing

Page 158

1  privileged, and Your Honor overruled that.
2       SPECIAL MASTER POPPITI: I did.
3       MR. MILLER: If we are going to get the
4  documents that show, you know, the use of this structure
5  in other products, that's what we are looking for. I
6  mean, in terms of memos and those sorts of things --
7       SPECIAL MASTER POPPITI: You are not
8  interested?
9       MR. MILLER: I am not interested. In
10 the normal case, I'd be inclined to just accept my
11 opposing counsel's representation that they have not
12 produced, you know, particular memos that were done post
13 filing of the litigation that relate to infringement
14 analyses so long as I had confidence I was getting the
15 underlying materials, whether it be the inspection of the
16 product or photographs or whatever or brochures or
17 whatever it is they have that relate to those products.
18      I, unfortunately, don't have that sense
19 of warm and fuzzy in this case, and, so, you know, I
20 would look for your guidance in terms of --
21      SPECIAL MASTER POPPITI: Well, the
22 guidance is easy. I mean, if there is a claim of
23 privilege, the burden is on the party that claims
24 privilege to, No. 1, assert it, which I think has been

Page 159

1  asserted, not in writing, but certainly on the record,
2  and, No. 2, carry the burden forward to prevail on the
3  privilege.
4       In order to do that, I am going to need,
5  to the extent the documents exist, a log of those
6  documents. You will be entitled to see the log,
7  obviously, and then I will have to take those documents
8  and review them in camera.
9       I don't see -- I don't see any other way
10 that I can come at that.
11      MR. MILLER: I don't either, Your Honor.
12      SPECIAL MASTER POPPITI:
13 Mr. Christenson, any suggestions different from what I
14 think I am required to do?
15      MR. CHRISTENSON: I think what you have
16 said is clear, Your Honor. In the -- up to this point,
17 counsel have been relying on each other, you know, to not
18 have to log documents created since the inception of the
19 case, but it sounds like we are now retreating from that,
20 so I assume that's going to apply to everyone.
21      SPECIAL MASTER POPPITI: I don't see --
22 and I understand what you just said. I don't see any
23 other way to handle it other than to ask, now that you
24 understand the scope of 119, if you agree to 119, with

Page 160

1  the understanding that you will be, consistent with the
2  practice in the case, permitted to represent that there
3  are privileged documents that you are not going to give
4  up.
5       Mr. Miller just said he is not
6  comfortable with that, but maybe, Mr. Miller, you would
7  be more comfortable if you knew that the 119 was not
8  going to be contested, I was not going to have to enter a
9  finding and recommendation, and you would be getting the
10 documents by agreement in due course?
11      MR. MILLER: I would agree to accept
12 that, you know, with my understanding that the privilege
13 is not so broad as to where you overruled it previously
14 in terms of the existence of the products or the products
15 themselves is privileged, but, obviously, their analyses
16 is, I'd be -- I would be willing to accept that by
17 agreement.
18      MR. CHRISTENSON: Your Honor, I am just
19 concerned about the posture in this and all the
20 discussion that we had about privilege and how it's
21 potentially implicated here. I think our preference
22 would be -- we will certainly go back and look at this
23 again and see if we can try to work through it now that
24 we have a better understanding of what is involved --

Page 161

1  but, at the same time, I do think we need to preserve our
2  objections and our privileges, and maybe this is a good
3  time to just briefly discuss the issue of privilege logs.
4       It's an issue we have discussed among
5  counsel several times, and it sort of fell by the way
6  side given all the other activity in the case, and I
7  think, to protect everyone's interests, it might be
8  helpful to agree that -- and there have been privilege
9  logs changed in the case, but they are somewhat stale at
10 this point.
11      I think everyone should agree on a date
12 where we submit new privilege logs addressing the
13 documents that are being withheld on a privileged basis
14 since before suit was filed, and then, as we understand
15 it, we should also address documents specifically
16 responsive to the requests that are being -- that we are
17 being required to further produce under. And I think
18 that would be in everyone's best interest.
19      Certainly, it would meet with your
20 expectations that you would need a record on which to
21 rule to the extent that becomes necessary.
22      SPECIAL MASTER POPPITI: Well, if I
23 understood you correctly, then let's do -- let me propose
24 this without focusing on the date until you suggest a

Hearing

42 (Pages 162 to 165)

## Page 162

1  date.
2       It seems to me, perhaps, an efficient
3  way to deal with 119, and those following requests that
4  are similar to 119, it may be that I should forestall
5  entering any order with respect to that -- by "order," I
6  mean finding and recommendations -- and permit you to
7  have brief, a brief opportunity to further discuss it.
8       If you can reach agreement with respect
9  to 119 and those similar to 119, then I don't need to
10  deal with a privilege log in the context of 119 and begin
11  that process of you logging them, you exchanging the log,
12  and me going into an in camera review as it relates to
13  119. That's my first observation.
14       The second is: Please make a note that
15  we should go back and discuss the issue of privilege logs
16  at the end of our business either today, or if we have to
17  reconvene briefly tomorrow or in the new week, but my
18  thought is rather than cloud what could be done with 119,
19  if you can reach agreement and I don't have to deal with
20  privilege issues, that may be a wise thing to do.
21       Does that make sense or does it not?
22       MR. CHRISTENSON: I think it does make
23  sense. I think it sort of ultimately comes down to
24  Mr. Miller's position because --

## Page 163

1       SPECIAL MASTER POPPITI: Well, his
2  comfort level, as I understand it.
3       MR. CHRISTENSON: Correct.
4       SPECIAL MASTER POPPITI: Mr. Miller.
5       MR. MILLER: I guess I wouldn't mind a
6  forbearance, but I guess I'd like to have, you know, a
7  date by which, if there is no resolution of this by
8  agreement, that we -- we proceed forward.
9       SPECIAL MASTER POPPITI: I agree.
10       MR. MILLER: And I'd like that to be a
11  fairly short order date, something like the 10th of
12  January, at the latest, perhaps.
13       SPECIAL MASTER POPPITI: I was even
14  thinking of a time sooner than that.
15       MR. MILLER: I was, too, originally, but
16  I was trying to be kind.
17       SPECIAL MASTER POPPITI: No. I don't --
18  I don't see why we can't look at a date sometime next
19  week when, with respect to 119 and others that are
20  similar to 119, you advise me not later than -- didn't we
21  pick a date next week for something, or was it the 8th?
22  We used the 8th for something. I am going to have to go
23  back and look through the transcript.
24       MR. CHRISTENSON: We can work off of the

## Page 164

1  8th.
2       SPECIAL MASTER POPPITI: So, not later
3  than the 8th, advise me as to whether or not you have
4  reached agreement on 119 and those similar to that.
5       MS. MASON: Your Honor, you set January
6  8th as the date for us to report to you regarding the
7  meet and confer on inspection of the bills of lading.
8       SPECIAL MASTER POPPITI: That's perfect,
9  then. Then this would be -- thank you for doing that.
10  This would be using the same date for purposes of this
11  meet and confer on 119 and others similarly situated.
12       MR. MILLER: That would be fine, Your
13  Honor.
14       MR. CHRISTENSON: Just as a point of
15  clarification, Scott, are there others that you would
16  like us to group under this when we say, "others similar
17  to 119"? Just to help us understand if there are any
18  others that fall in here?
19       MR. MILLER: I don't know of any others
20  that are the subject of that yet, but we have a couple of
21  upcoming ones that may -- we will have to see.
22       SPECIAL MASTER POPPITI: That's why I
23  reserved on "others."
24       Next.

## Page 165

1       MR. MILLER: Next, I think, is the group
2  that is from 71 to 74, and these are -- I am sorry
3       (Discussion off the record.)
4       SPECIAL MASTER POPPITI: Counsel, are
5  you there?
6       MR. MILLER: Yes.
7       SPECIAL MASTER POPPITI: I was just
8  looking at the clock and talking to the court reporter.
9  We should take maybe a ten- or 15-minute break, not now
10  but perhaps at 4:30, and hopefully we can get everything
11  wrapped up not later than 6:00 unless someone proposes
12  that we should cut it off sooner than that and reconvene
13  for purposes of dealing with matters that are left to be
14  dealt with.
15       MR. CHRISTENSON: Your Honor, I am
16  cautiously optimistic we can get -- that we can complete
17  our work or get very close to completing it.
18       SPECIAL MASTER POPPITI: Then let's
19  push.
20       MR. MILLER: Okay. 71 through 74 are
21  documents that relate to the use of products or practices
22  of any of the inventions claimed in the patents in suit,
23  and this is where I alluded to earlier a sort of catch 22
24  that's out there and that LPL contends that they don't

# EXHIBIT 4

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
## &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CORMAC T CONNOR
(202) 496-7439

EMAIL ADDRESS
cconnor@mckennalong com

January 9, 2007

**VIA E-MAIL AND US MAIL**

Scott R. Miller
Connolly Bove Lodge & Hutz LLP
Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles, CA 90071
smiller@cblh.com

Mark H. Krietzman
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
krietzmanm@GTLAW.com

> **Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;**
> **U.S. District Court Case No. 04-343 JJF**

Dear Counsel:

This letter responds to the portions of Mr. Miller's January 5 and 8, 2007 e-mails to Cass Christenson concerning privilege logs. Because these issues relate to all of the parties, I am addressing this letter to both of you.

In a December 29, 2004 letter, ViewSonic advised LPL that "privileged documents generated after the filing of the litigation, such as those created by counsel, need not be set forth on a privilege log as the burden to both parties to do otherwise would be extraordinary." (Letter from T. Roman to C. Christenson (Dec. 29, 2004).) Since that time, LPL has understood that the parties would exchange privilege logs that were to include only documents generated before the Complaint was filed and that the parties only needed to agree upon a date by which the logs would be exchanged. Tatung's prior counsel also confirmed agreement with Cass Christenson long ago that post-filing documents need not be logged.

During the December 28, 2006 discovery hearing, Mr. Miller suggested that it might be necessary for LPL to log post-filing documents responsive to ViewSonic's document request 119 withheld as privileged or work product. In the same hearing, however, Mr. Miller agreed that if LPL would agree to produce documents responsive to Request 119, logging documents would not be necessary and, moreover, ViewSonic was not seeking privileged documents in the first place. As LPL has agreed to produce documents responsive to Request 119, there is no need to

Scott R. Miller
Mark H. Krietzman
January 9, 2007
Page 2

log post-filing documents that are responsive to Request 119, as agreed during the December 28 hearing.

More generally, we have attempted to discuss with you in August and September 2006 the timing for an exchange of privilege logs. Despite our communications, Defendants have not confirmed any date. In addition, ViewSonic has suggested that certain of LPL's post-filing documents should be logged, without any reciprocal obligation for Defendants to log any post-filing documents. Specifically, ViewSonic proposed in September 2006 that LPL should log documents that do not pertain directly to the claims for relief, such as continuation applications or LPL's evaluation of other non-parties' products for possible infringement of the Patents-in-Suit, as "illustrative" examples. Counsel for ViewSonic and LPL discussed ViewSonic's proposal during a meet-and-confer on September 22, 2006. (Counsel for Tatung did not join this meeting.) Because ViewSonic's proposal only provided "illustrative" examples, LPL asked ViewSonic to provide greater detail about the types of post-filing documents that it wanted to be logged. LPL also asked ViewSonic to clarify the types of post-filing documents that *Defendants* would be willing to log, as the illustrative categories seemed to apply only to LPL. ViewSonic has never done so. Instead, ViewSonic proposed that it should not have to log certain documents, including: (1) notes regarding evaluations sent to clients; (2) any of the Defendants' attorneys' evaluations of validity; (3) normal work product generated for this case; and, (4) any documents that are part of the "normal prosecution or defense of a case." ViewSonic's position is unclear, including the extent to which these limitations apply to all parties and to pre-filing documents. Defendants have not resolved LPL's concerns that privilege logs should be mutually inclusive in scope.

Mr. Miller's January 5 and 8, 2007 emails incorrectly suggest that LPL's position is unclear. LPL's position has been and remains that the parties should exchange privilege logs for pre-filing documents, as agreed long ago. If ViewSonic or Tatung want to change the prior agreement, we need to know specifically what type of post-filing documents would need to be logged under your proposal and whether, in practice, your proposal would impose unilateral, unfair burdens on LPL alone. For now, we repeat our request that the parties agree to a deadline to exchange privilege logs for pre-filing documents. Counsel can then negotiate about the scope of any post-filing documents that need to be logged and supplement their privilege logs with any additional documents, depending on the outcome of our discussions.

Scott R. Miller
Mark H. Krietzman
January 9, 2007
Page 3

We look forward to discussing this matter further with you.

Sincerely,

Cormac T. Connor

cc:     Tracy R. Roman     (via email)
        Valerie W. Ho      (via email)
        Jong P. Hong       (via email)
        Manuel Nelson      (via email)
        Steve Hassid       (via email)

DC:50454958 1

# EXHIBIT 5

BINGHAM McCUTCHEN

Tracy R. Roman
Direct Phone: (213) 229-5020
tracy.roman@bingham.com

December 29, 2004

Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA
90071-3106

213 680 6400
213 680 6499 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

Cass Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108

Re:  *LG. Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
     **USDC Case No. 04-343 JJF**

Dear Mr. Christenson:

Enclosed please find documents bearing Bates numbers VS-MB 00426–VS-MB 00453 produced in response to the revised subpoena to Mr. Brinkerhoff. We are providing the enclosed copies free of charge as a courtesy given the small volume of documents. Please note that we still await payment of our outstanding costs of $285.60 relating to ViewSonic's production of documents bearing Bates numbers VS00001-VS01428.

Regarding the privilege log, it is our understanding that privileged documents generated after the filing of the litigation, such as those created by counsel, need not be set forth on a privilege log as the burden to both parties to do otherwise would be extraordinary. Based on our review of the materials produced by LPL, this appears to also be your understanding. ViewSonic did not withhold any privilege documents that fall outside that category. If you have a different understanding as to how you prefer to address post-filing privilege documents, please let me know.

Very truly yours,

Tracy R. Roman

Enclosures

cc:  Richard L. Horwitz, Esq. (w/o enclosure)

LA/40280200.1/3223058-0000309103

# EXHIBIT 6



# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

Scott R. Miller
Partner

TEL (213) 787-2510
FAX (213) 687-0498
EMAIL smiller@cblh.com
REPLY TO Los Angeles Office

The Nemours Building
1007 North Orange Street
P O. Box 2207
Wilmington, DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

*Via Email and First Class Mail*

January 16, 2007

1990 M Street NW Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC  20006

WEB www.cblh.com

Re:     *LG Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*
          USDC, Delaware, C.A. No. 04-343-JJF

Dear Cormac:

I write in response to your January 9 letter regarding privilege logs.

We agree that the parties need to move things along with respect to privilege logs. Thus, ViewSonic is prepared to agree to a deadline to exchange preliminary privilege logs that are temporally limited to documents generated on or before May 27, 2004 that are withheld on the basis of privilege. Subject to the approval of all parties, we suggest February 2, 2007 as the date when such logs should be exchanged. However, this proposal does not eliminate the need to finalize an agreement (or obtain the directions of the Special Master if no agreement can be reached) regarding privilege logs identifying documents created after the filing date of the Complaint that fall within certain categories and are withheld by any party on the basis of attorney-client privilege or work-product doctrines (collectively "privilege").

We understand that all parties wish to limit the duty to identify on a privilege log documents withheld from production to documents dated after May 27, 2004, the filing of the above-referenced action. The idea that certain post-Complaint documents would not need to be listed on privilege log was to exempt the kinds of documents ordinarily associated with the prosecution or defense of litigation. It is not intended, however, as a shield to allow parties to hide documents from production that are otherwise called for in discovery. As ViewSonic indicated at least back in September 2006, we believe that there are a limited number of categories for which any document withheld by LPL on the basis of privilege should be listed on a privilege log, regardless of the date of the document. The following is an illustrative list of some categories:

- As I indicated in September 2006, documents concerning any patent application related to the patents in suit (including continuations or continuations in part, reexamination requests, and any other communications with the USPTO) or otherwise related to the inventions disclosed in the patents in suit must be produced. Similarly, documents related to any foreign counterpart (including any oppositions or related foreign practice) of any of these U.S. patents or patent applications should be produced. These documents include all documents related to any decision to file for a patent, and any decision regarding what to submit as prior art in any communication with a patent office, as well as communications with any agents or draftsperson. If any of these documents are withheld by LPL



**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

January 16, 2007
Page 2

> on the basis of privilege, they should be identified on a privilege log, regardless of the date of the document.

- Documents concerning any LPL evaluation of products (other than the defendants' products) for possible infringement of either of the patents in suit or any foreign counterpart, and documents related to any decision regarding whether to assert either of the patents in suit or any foreign counterpart, should be produced, or logged on a privilege log if withheld on the basis of privilege, regardless of dates.

So that there is no misunderstanding, these categories are merely illustrative, and ViewSonic's proposal has always been that documents generated during this case prosecuting or defending against the claims made in this litigation need not be listed. However, ViewSonic has also always maintained that documents other than those ordinarily created as part of the prosecution or defense of this case need to be produced (if requested) or listed on a privilege log. This includes, by way of example:

> To the extent called for by discovery, documents related to ownership or title of the patents in suit or any foreign counterpart(s), or transfer of any kind related to the ownership of the patents in suit or any foreign counterpart(s), should be produced or identified on a privilege log if withheld on the basis of privilege, regardless of the date of the documents.

> To the extent called for by discovery, documents regarding any joint venture related to the subject matter of the patents in suit, including all documents related to the joint venture with Digital Equipment Corporation should be produced, or logged on a privilege log if withheld on the basis of privilege, regardless of dates.

> To the extent called for by discovery, documents related to licensing of the patents in suit or any related or counterpart patent should be produced or identified on a privilege log if withheld on the basis of privilege, regardless of the date of the documents.

> To the extent called for by discovery, documents relating to advice of counsel, if asserted, should be produced or identified on a privilege log if withheld on the basis of privilege, regardless of the date of the documents.

This proposal is not intended to impose any unfair burden on any party and does not single out LPL. On the contrary, as suggested in September of 2006, the difference in scope of the discovery requests lodged by the defendants compared to those lodged by LPL, as well as the different conduct at issue for patent holders compared to that of accused infringers, necessitates a slightly different scope of privilege logs for LPL, the patent holder, as compared to the defendants, the accused infringers. Despite the passage of substantial time, LPL has never suggested any category of documents or materials that it believes the defendants should log, without any temporal limitation, if withheld on the basis of privilege.

 **CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

January 16, 2007
Page 3

> We look forward to you early response to this proposal so that the parties can bring the Special Master up to date regarding privilege logs during the upcoming January 19, 2006 status conference.

Sincerely,

Scott R. Miller

cc:     Cass W. Christenson
Rel S. Ambrozy, Esq.
Lora A. Brzezynski, Esq.
Richard D. Kirk, Esq.
Mark H. Krietzman, Esq.
Frank E. Merideth, Jr., Esq.
Valerie W. Ho, Esq.
Frederick L. Cottrell III, Esq.
Tracy R. Roman, Esq.
Jeffrey B. Bove, Esq.
Jaclyn M. Mason, Esq.

# CASE 1

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 165494 (W.D.La.)
**(Cite as: 2007 WL 165494 (W.D.La.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, W.D. Louisiana,
Lake Charles Division.
In the Matter of the Complaint of OMEGA
PROTEIN INC. as Owner of F/V Gulf
Shores for Exoneration from or Limitation of
Liability.
**No. 2:04-cv-2071.**

Jan. 17, 2007.

Alan K. Breaud, Timothy W. Basden, Breaud &
Meyers, Lafayette, LA, for Omega Protein Inc.

Charles R. Talley, Jamie Domilise Henry, Karen
Waters Shipman, Kelly B. Green, Kean Miller, New
Orleans, LA, for Samson Contour Energy E & PLLC.

Lawrence N. Curtis, Office of Lawrence N. Curtis,
Lafayette, LA, for Roszell Bland, Kerry Matthews,
Margaret Walters.

*MEMORANDUM RULING*

ALONZO P. WILSON, United States Magistrate
Judge.

**\*1** Currently before the court is a "Motion to
Compel" [doc. 37] filed by Samson Contour Energy
E & P L L C ("Samson"). By this motion, Samson
seeks to have the court compel Omega Protein, Inc.
("Omega") to produce witness statements taken on or
shortly after October 4, 2004, the date of the allision
which forms the basis of this civil action. [FN1]
Omega claims that these witness statements are not
subject to discovery because they were taken by
agents and attorneys of Omega in anticipation of
litigation and are therefore protected from discovery
by the attorney-client privilege and work-product
doctrine. Samson counters that Omega has waived
any privilege which may have been attached to these
statements because of its failure to respond to
discovery in a timely manner. Additionally, Samson
asserts that "good cause" exists for the production of
the crewmember's statements.

FN1. Samson's First Set of Requests for
Production included the following:
Request for Production No. 1
Please provide any and all statements or
reports obtained and/or prepared in
connection with any interview conducted by
Omega or on Omega's behalf concerning
circumstances of the allision referred to in
the Limitation of Liability.
Omega's response to this Request for
Production was as follows: *OBJECTION.*
Any statements or reports obtained and/or
prepared in connection with any interview
conducted by or on behalf of Omega were
taken and/or prepared in anticipation of
litigation and are further protected under the
attorney-client privilege. In further objection
and response, a Privilege Log is being
prepared referable to the requested
statements and will be provided in a
supplement hereto.

The issues before the court are whether Omega has
waived the asserted privileges by failing to respond
in a timely manner, and if not, whether the asserted
privileges are valid.

**I. Waiver by Untimeliness**

Samson argues that any objections Omega may have
to the Request for Production have been waived by
its failure to file timely objections and by its failure
to timely comply with the court's July 7, 2006 order
wherein Samson's first Motion to Compel was
granted, and Omega was ordered to respond to all
outstanding discovery and/or provide a privilege log
for any responsive information withheld within 10
calendar days of the order. [doc. 28]. Omega
apparently provided discovery responses on July 14,
2006 but did not provide Samson with a Privilege
Log until August 28, 2006. Samson claims that this
delay results in a waiver of Omega's claimed
privileges.

"District courts have considerable discretion in
managing discovery." *Munoz v Orr,* 200 F.3 d 291,
305 (5th Cir.2000), citing *Geiserman v. MacDonald,
893 F.2d 787, 789 (5th Cir.1990).* Courts considering
similar arguments have noted that imposing the
sanction of waiver of a privilege for the failure of a
party to timely produce a privilege log is a "draconian

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 165494 (W.D.La.)
**(Cite as: 2007 WL 165494 (W.D.La.))**

Page 2

remedy" and must be warranted under the specific facts of the case. *See Stevens v. Omega Protein, Inc.,* 2002 WL 1022507 (E.D.La.2002); *Woodland v. Nalco Chemical Co.,* 2003 WL 22928808 (E.D.La.2003); *Greer v. Lowes Home Centers, Inc.,* 2006 WL 220823, *2 (W.D.La.2006).* The facts of this case reveal that Omega complied with the court's July 7, 2006 order by providing discovery responses to Samson on July 14, 2006 and that in those responses, Omega indicated that a privilege log would be forthcoming. Although Omega offers no explanation for its delay in producing the privilege log, Samson has failed to demonstrate that it suffered prejudice as a result of this delay. *See Greer, supra.* Under the facts of this case, the court does not find that Omega's delay resulted in a waiver of its asserted privileges.

## II. Attorney-Client Privilege and Work-Product Doctrine

*2 Shortly after the allision on October 4, 2004, a total of 19 witness statements were taken of Omega employees who were crewmembers of the F/V GULF SHORE at the time of the allision. Omega claims that 14 of these statements were taken by Joseph Sarkies of Livaudais Claims Service, at the request of counsel for Omega, and that 5 were taken by Michael Lemoine, former counsel for Omega, in anticipation of litigation and in furtherance of the defense of Omega. Omega claims that all of these witness statements fall within the protection of the work-product doctrine and that the statements taken by Mr. Lemoine are also insulated from discovery by the attorney-client privilege.

The attorney-client privilege generally protects confidential communications made by a client to his lawyer for the purpose of obtaining legal advice. *Conoco, Inc. v. Boh Bros. Construction, Co.,* 191 F.R.D. 107, 115 (W.D.La), citing *Guzzino v. Felterman,* 174 F.R.D. 59, 60-61 (W.D.La.1997); *Hodges, Grant, & Kaufman v. United States,* 768 F.2d 719, 720 (5th Cir.1985); *Shields v. Sturm, Ruger, & Company,* 864 F.2d 379, 382 (5th Cir.1989). The attorney-client privilege can extend to communications between corporate employees and counsel if the communication is made at the direction of corporate superiors in order to secure legal advice and the employees are aware that they are being questioned so that the corporation can obtain legal advice. *Upjohn Co. v. United States,* 101 S.Ct. 677, 685 (1981); *In re Bank of Louisiana/Kenwin Shops Inc.,* 1998 WL 788776 (E.D.La.1998). "The work-product doctrine is a judicially created immunity to

prevent a party to a lawsuit from receiving the benefits of an opposing counsel's preparation for trial." This doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Boh Bros.,* 191 F.R.D. at 117-18; *Dunn v. State Farm,* 927 F.2d 869, 875 (5th Cir.1991). The work-product doctrine protects from discovery documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators in anticipation of litigation. *Boh Bros.,* 191 F.R.D. at 118; *Hickman v. Taylor,* 67 S.Ct. 385, 393-94 (1947). The burden of establishing the either discovery privilege rests with the party who invokes it. *Boh Bros.,* 191 F.R.D. at 115; *Guzzino,* 174 F.R.D. at 60-61; *Hodges, Grant, & Kaufman,* 768 F.2d at 720.

In this case, Omega has not established that the statements given to corporate counsel by corporate employees were confidential communications made for the purpose of obtaining legal advice. Accordingly, the court finds that Omega has failed to establish the existence of the attorney-client privilege with respect to the 5 statements taken by Mr. Lemoine.

However, there appears to be little dispute by the parties that the statements at issue were taken in anticipation of litigation and are protected by the work-product doctrine codified in Rule 26(b)(3). This does not end the inquiry, though, as the protection offered by the work-product doctrine is not absolute. Samson may still be entitled to production of these documents if it can establish that it "has a substantial need for the materials in preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P 26(b)(3). [FN2]

> FN2. In arguing that it is entitled to the documents at issue, Samson relies on *Southern Railway Co. V. Lanham,* 403 F.2d 119 (5th Cir.1969) and argues that there is "good cause" for production of these documents. However, the court notes that the "good cause" standard used in *Southern Railway Co.* was abolished by the 1970 amendments to Rule 26 and replaced by the "substantial need" standard set forth therein. *American River Transportation Co. V. M/V Bow Lion,* 2005 WL 144777 (E.D.La.2005).

*3 In support of its need for the documents, Samson states that the contemporaneous nature of the statements given by the crewmembers involved in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 165494 (W.D.La.)
**(Cite as: 2007 WL 165494 (W.D.La.))**

Page 3

allision on October 4, 2004 make the information contained therein essential to its trial preparation. Additionally, Samson points out that although it has been able to depose Captain Stewart, Captain Stewart admitted in his deposition that his memory of the event was not as good as it would have been two years ago. *See* Samson's Exhibit D. Moreover, Samson asserts that despite its investigative efforts, it has been unable to locate certain witnesses, including the chief engineer who was on watch at the time of the allision.

In response to Samson's arguments, Omega states that "equivalent evidence may be obtained by taking depositions of the persons whose statements were taken." Doc. 41, p. 3.

In determining whether Samson has shown a substantial need for the witness statements, the court must consider the reasons advanced by Samson in light of Rule 26's policy that one side should not automatically benefit from the preparatory work of the other side. *Hamilton v. Canal Barge Co.*, 395 F.Supp. 975, 977 (D.C.La.1974). The mere passage of time does not necessarily require the production of witness statements taken after an accident. However, the passage of time is more relevant when the statements at issue were taken within hours of the accident since they are likely to contain information that no deposition could bring out. *Id.*; *American River Transportation*, 2005 WL 144777, *2 (E.D.La.2005). Further, when a witness to an accident gives a contemporaneous account in a written statement and is later either unavailable to be deposed or provides deposition testimony that is not the substantial equivalent of his statement, such factors weigh in favor of production.

As to Captain Stewart, the court finds that Samson has demonstrated that due to the passage of time, Captain Stewart's deposition is not the substantial equivalent of the contemporaneous statement given by him. *Hamilton*, 395 F.Supp. at 978; *American River Transportation*, 2005 WL 144777, *2. Specifically Samson has pointed out deposition testimony from Captain Stewart which establishes that Captain Stewart did not have complete recollection of the events surrounding the allision. [FN3]

> FN3. In support of its position, Samson pointed out the following exchange that took place during Captain Stewart's deposition:
> Q. How would you describe the weather on that day as they give you here on this form?

A. Clear.
Q. So you did not think it was hazy?
A. No.
Q. Did you ever tell anybody it was hazy?
A. I couldn't tell you. That's two years ago.
Q. You've testified that the platform that--
A. That could have been why they checked "hazy" off on this. Maybe I did say it was hazy.
Q. So in this instance, your memory would have been better two years ago than it is today?
A. Yeah, I guess. A lot happened at that one point.

With respect to the other crewmembers of the F/V GULF SHORE, Samson asserts that it has been unable to locate them for deposition. In support of this assertion, Samson has provided an affidavit from Jamie Henry, its attorney of record, which outlines the investigative efforts which have been undertaken to locate these crewmembers. Three separate investigators have been hired to locate the crewmembers. The first investigator, A & B Inspection Services, Inc. was unable to locate any of the crewmembers. The second investigator, Aucoin Claims Services, was able to locate Captain Stewart, and Samson was able to depose him. The third investigator, TMI Investigations, Inc. was able to locate Corey Shaner, Ernest Rush, and Arthur Roane. However, no meaningful information about the accident at issue in this case was obtained from these individuals, and Samson was unsuccessful in contacting them again. *See* Doc. 64-4, Exhibit 3, ¶¶ 4-8. Not including attorney fees, Samson has spent over $4,800 on its investigative efforts to locate the F/V GULF SHORE crewmembers. The court finds that Samson has made reasonable efforts to locate the crewmembers of the F/V GULF SHORE but has been unable to do so. The unavailability of these key witnesses prevents Samson from being able to obtain the substantial equivalent of the witness statements through other means such as a deposition.

**\*4** For these reasons, it is

ORDERED that the motion to compel be GRANTED and that Omega produce the 19 witness statements at issue.

Slip Copy, 2007 WL 165494 (W.D.La.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2626618 (Trial Pleading) Complaint for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 165494 (W.D.La.)
**(Cite as: 2007 WL 165494 (W.D.La.))**

Exoneration from or Limitation of Liability (Oct. 6, 2004)Original Image of this Document (PDF)

• 2004 WL 2891424 (Trial Pleading) Complaint for Exoneration from or Limitation of Liability (Oct. 6, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 2, 2007, copies of the foregoing document were served as follows:

BY EMAIL AND BY HAND:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

BY EMAIL AND BY U.S. MAIL:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

632604-1