IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>Plaintiff,<br><br>v.<br>TATUNG CO.;<br>TATUNG COMPANY OF AMERICA, INC.; AND<br>VIEWSONIC CORPORATION<br><br>Defendants. | Civil Action No. 04-343 (JJF) |

APPENDIX OF AUTHORITIES CITED IN
VIEWSONIC'S OPPOSITION TO
LPL'S MOTION TO COMPEL VIEWSONIC
TO CATEGORIZE ITS PRODUCTS

SUBMITTED TO SPECIAL MASTER POPPITI ON FEBRUARY 2, 2007


*LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*
USDC, Delaware, C.A. No. 04-343-JJF

**Cases** <span style="float:right">Separator Sheet</span>

*Ingram v. Home Depot, U.S.A., Inc.,* No. Civ. A. 97-8060,
    1999 WL 88939 (E.D. Pa. Feb. 19, 1999) ........................................................... Appendix 1

*Rockwell Int'l Corp. v. H. Wolfe Iron and Metal Co.,*
    576 F. Supp. 511 (W.D. Pa. 1983) .................................................................... Appendix 2

*Soetaert v. Kansas City Coca Cola Bottling Co.,* 16 F.R.D. 1 (W.D. Mo. 1954) ........... Appendix 3

# APPENDIX 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 88939 (E.D.Pa.)
(Cite as: 1999 WL 88939 (E.D.Pa.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Terrance S. INGRAM and Zarry R. Ponder,
v.
THE HOME DEPOT, U.S.A., INC. and Royce Howe.
No. Civ.A. 97-8060.

Feb. 19, 1999.

*MEMORANDUM AND ORDER*

HUTTON.

*1 Presently before the Court are Plaintiffs Terrance S. Ingram and Zarry R. Ponder's Amended Motion to Compel (Docket No. 13) and the Defendants Home Depot and Royce Howe's response thereto (Docket No. 17). For the following reasons, the Motion is granted in part and denied in part.

I. *BACKGROUND*
On April 23, 1990, Defendant Home Depot, U.S.A., Inc. ("Home Depot") hired Plaintiff Zarry Ponder. Ponder, an African-American, worked as a sales associate in the Lakewood, New Jersey Home Depot store. On July 26, 1993, Home Depot promoted Ponder to assistant store manager at the Lakewood store. After two transfers to other stores, Home Depot transferred Ponder to the Cheltenham store on August 18, 1995. Ponder continued to serve as assistant store manager at the Cheltenham store. On March 31, 1996, however, Home Depot demoted him to sales associate and transferred him to the King of Prussia store. There, Ponder worked until August 12, 1996 when Home Depot terminated his employment for alleged job abandonment.

On October 11, 1995, Home Depot hired Plaintiff Ingram to work as a sales associate in the Cheltenham store. Ingram, an African-American, worked at the Cheltenham store until January 12, 1997 when Home Depot transferred him to the Willow Grove store. On June 27, 1997, Home Depot discharged Ingram for alleged poor performance.

On December 29, 1997, Plaintiffs filed a complaint against Home Depot and Royce Howe, the Plaintiffs' supervisor at the Cheltenham store. Eventually, they filed an amended complaint asserting the following claims: (1) employment discrimination under Title VII; (2) employment discrimination under the Pennsylvania Human Relations Act; (3) violations of the Civil Rights Act of 1871 (§ 1981 and § 1985); (4) intentional infliction of emotional distress; and (5) assault and battery. Plaintiffs allege that they were subjected to a hostile work environment and disparate treatment because of their race while employed at the Cheltenham store. Plaintiffs also allege that Home Depot and Royce Howe conspired to deprive them of employment opportunities because of their race.

On November 30, 1998, Plaintiffs served the Defendants with numerous requests for document production. On January 6, 1999, Plaintiffs filed a motion to compel because Defendants had only identified the documents for inspection and not provided copies of the documents to the Plaintiffs. On January 25, 1999, this Court denied that motion as moot because the parties filed a stipulation indicating that the Defendants had complied with some of their discovery requests and that the Plaintiff would file an amended motion narrowing the issues for the Court. On January 25, 1999, the Plaintiffs filed the amended motion to compel. According to the parties, there are six categories of documents in dispute.

II. *STANDARD OF REVIEW*
A. *Relevance*

Under the Federal Rules of Civil Procedure and in the United States Court of Appeals for the Third Circuit, district courts have broad discretion to manage discovery. See *Sempier v. Johnson,* 45 F.3d 724, 734 (3d Cir.1995). Pursuant to Rule 26(b)(1), a party is entitled to discovery of "any matter, not privileged, which is relevant to the subject matter in the pending action." Fed.R.Civ.P. 26(b)(1). "The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

*2 As this Court has noted, "[r]elevance is broadly construed and determined in relation to the facts and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 88939 (E.D.Pa.)
(Cite as: 1999 WL 88939 (E.D.Pa.))

Page 2

circumstances of each case." *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 406, 407 (E.D.Pa.1996). Once the party opposing discovery raises its objection, the party seeking discovery must demonstrate the relevancy of the requested information. *See Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D.Pa.1996). The burden then shifts back to the objecting party, once this showing is made, to show why the discovery should not be permitted. *See id.* Relevancy and burdensomeness are the principal inquiries in ruling upon objections to interrogatories and requests for production. *See McCain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 57 (E.D.Pa.1979).

B. *Vagueness*

The Third Circuit has stated that the mere statement by a party that the interrogatory was overly broad, burdensome, oppressive, vague, and irrelevant is "not adequate to voice a successful objection to an interrogatory." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir.1982). A showing of how each interrogatory is not relevant or how each question is overly broad, burdensome, vague, or oppressive is required. *See id.* The standards governing responses to production requests have been held to be identical to those governing responses to interrogatories. *See Albert Einstein Med. Care Found. v. National Ben. Fund for Hosp. & Health Care Employees*, No. CIV.A.89-5931, 1990 WL 186975, at *3 (E.D.Pa. Nov.27, 1990).

III. *DISCUSSION*
A. *Market Studies--Document Request 59*

Defendants first object to producing market studies because it is irrelevant to Plaintiffs' claims of hostile working environment and disparate treatment. Plaintiffs contends that these studies are essential to their case because their complaint alleges that Home Depot has a discriminatory practice of hiring, transferring, and promoting based upon the racial demographics of the community where the store is located. Defendants respond that this is not discrimination because they simply hire from the community where the store is located.

This Court finds that the market studies are relevant. First, these studies are essential to the Plaintiffs because they seek to prove that Home Depot does not allow non-white individuals in certain stores and positions because the white customer base wants white employees. The Defendants objection, that they are not discriminating because they are simply hiring from within the community which happens to be white, is not really an objection but a legitimate, non-discriminatory reasons to be proven at trial. Thus, because the market studies may be reasonably calculated to lead to the discovery of admissible evidence, the Court finds that Request for Production of Documents 59 is relevant. Accordingly, the Defendants shall provide full and complete responses to Plaintiffs' Request for Production of Documents 59 within thirty (30) days of the date of this Order.

B. *Thomas Gisondi Documents--Document Requests 17-26 and 28*

*3 Defendants next object to producing any documents relating to Thomas Gisondi. Gisondi worked at the Cheltenham Home Depot store. In 1998, Home Depot conducted investigations concerning whether he engaged in racist behavior. Defendants object to producing any personnel documents on Gisondi because the Plaintiffs were terminated before 1998.

This Court rejects Defendants' relevancy objection. As Plaintiffs' correctly point out, Gisondi worked with them at the Cheltenham store. Plaintiffs allege that Defendants failed to remedy a hostile working environment. Even though Gisondi was not a decision maker during this period, he may have been involved in creating this alleged hostile working environment that Home Depot failed to remedy. Thus, the Court finds that these files may reasonably lead to the discovery of admissible evidence concerning Gisondi's behavior towards the Plaintiffs while at the Cheltenham store. Accordingly, the Defendants shall provide a full and complete response to Requests for Production of Documents 17-26 and 28.

C. *Discharge, Promotion and Demotion of Non-Whites Documents--Document Requests 60-62*

Defendants object to producing documents relating to the discharge, promotion, and demotion of non-whites at their stores. Defendants maintain that these document requests are irrelevant and overbroad. Plaintiffs respond that this evidence is relevant to their theory that different reasons were used for terminating white employees and African-American employees.

This Court rejects the Defendants' objections to Request for Production of Documents 60-62. These requests are relevant because Plaintiffs allege that their demotions and ultimate terminations were racially motivated. This evidence may be reasonably

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 88939 (E.D.Pa.)
(Cite as: 1999 WL 88939 (E.D.Pa.))

calculated to lead to the discovery of admissible evidence, i.e., evidence of similarly treated employees at Home Depot. Therefore, the Defendants shall provide a full and complete response to Request for Production of Documents 60-62 within thirty (30) days of the date of this Order.

D. *Lists of Names and Addresses of Employees Discharged for Job Abandonment or Poor Performance--Document Requests 65 and 66*

Defendant further object to producing lists of the names and addresses of employees discharged for job abandonment or poor performance. The Defendants concede that evidence of similarly situated employees may be relevant. Nevertheless, Defendants object to this request because they do not maintain these lists in the ordinary course of business and, therefore, cannot be required to produce this information under Federal Rule of Civil Procedure 34.

This Court agrees. A defendant in a civil action cannot be compelled to create, upon the request of the plaintiff, documentary evidence which is not already in existence in some form. See *Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co., 576 F.Supp. 511, 513 (W.D.Pa.1983)*. Rule 34(a) of the Federal Rules of Civil Procedure is limited in its scope to documents "which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). " 'Rule 34 cannot be used to require the adverse party to prepare, or cause to be prepared, a writing to be produced for inspection, but can be used only to require the production of things in existence.' " *Rockwell Int'l Corp., 576 F.Supp. at 513* (quoting *Soetaert v. Kansas City Coca Cola Bottling Co., 16 F.R.D. 1, 2 (W.D.Mo.1954)*).

*4 In this case, the Plaintiffs cannot require the Defendants to produce lists which they do not maintain in the ordinary course of business. Use of interrogatories under Rule 33 of the Federal Rules of Civil Procedure would be the better avenue for pursuing this information. Accordingly, the Court denies this aspect of the Plaintiffs' motion.

E. *Demographic Information--Document Requests 67 and 68*

Defendants also object to producing any further information under Requests for Production of Documents 67 and 68 because these requests were vague. These requests seek demographic information gathered by Home Depot with respect to employees at the numerous stores in the Pennsylvania area. Despite their objection due to vagueness, the Defendants produced Form EEO-1 reports for several stores which contain a breakdown of the race and gender of employees at those stores. Defendants state that it is unclear what other documents the Plaintiffs seek by these requests.

The Court finds that the Defendants' responses to these requests were proper. These requests were indeed vague. Furthermore, in their motion, the Plaintiffs fail to state what other documents they seek in these requests. Therefore, the Court denies the Plaintiffs' motion in this respect.

F. *Lists of Names and Addresses of Employees Under Michael McCabe's Supervision--Document Requests 75-78*

Lastly, Defendants object to producing a list of the names and addresses of white and non-white employees with a job title of store manager or higher under Michael McCabe's supervision in Requests for Production of Documents 75-78. McCabe is the Regional Vice President of Home Depot. Defendants argue that these requests are irrelevant because Plaintiffs do not allege any wrongdoing by McCabe.

This Court must agree. The Plaintiffs do not state in their motion how this information is at all relevant to the instant action. Rather, Plaintiffs discuss McCabe's involvement in a termination of a white assistant manager which is totally unrelated to this case. The Court cannot understand how this information could be reasonably calculated to lead to the discovery of admissible evidence even under the liberal standards of the Federal Rules of Civil Procedure. Therefore, the Court denies the Plaintiffs' motion in this respect.

An appropriate Order follows.

ORDER

AND NOW, this 18th day of February, 1999, upon consideration of the Plaintiffs' Amended Motion to Compel (Docket No. 13), IT IS HEREBY ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that:

(1) The Defendants SHALL provide a full and complete response to Plaintiffs' Request for Production of Documents 59 within thirty (30) days of the date of this Order;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 88939 (E.D.Pa.)
**(Cite as: 1999 WL 88939 (E.D.Pa.))**

Page 4

(2) The Defendants SHALL provide a full and complete response to Plaintiffs' Requests for Production of Documents 17-26 and 28; and

(3) The Defendants SHALL provide a full and complete response to Request for Production of Documents 60-62 within thirty (30) days of the date of this Order.

Not Reported in F.Supp.2d, 1999 WL 88939 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:97cv08060 (Docket) (Dec. 29, 1997)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX 2

Westlaw.

576 F.Supp. 511
576 F.Supp. 511, 1984-1 Trade Cases P 65,836
(Cite as: 576 F.Supp. 511)

Page 1

C
Rockwell Intern. Corp. v. H. Wolfe Iron and Metal Co.D.C.Pa.,1983.
United States District Court,W.D. Pennsylvania.
ROCKWELL INTERNATIONAL CORP., Plaintiff,
v.
H. WOLFE IRON AND METAL CO., New Castle Junk Company, Inc., Wilkoff Company, Lee Wilkoff, Phyllis Wilkoff, Randall Wilkoff, Arthur Epstein, Roland Levine, Steven Levine and Bruce Pickel, Defendants.
**Civ. A. No. 82-2161.**

Dec. 15, 1983.

Antitrust action plaintiff moved to compel responses from named defendants. The District Court, Mencer, J., held that: (1) interrogatories requesting identification of corporation's officers, directors, stockholders, employees, bank accounts and office employees would not tend to incriminate either defendant and, therefore, defendants would be ordered to answer them; and (2) information sought by interrogatories was of type that would be contained in corporate, rather than personal records; therefore, defendants, as corporate officers, would be compelled to answer them, notwithstanding that their doing so might ultimately lead to release of material incriminating as to defendants.

Ordered accordingly.
West Headnotes
[1] Federal Civil Procedure 170A ⇐1574

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
           170AX(E)2 Subject Matter in General
                170Ak1574 k. Existence, Possession, Custody, Control and Location. Most Cited Cases
Civil defendant could not be compelled to create, upon request of plaintiff, documentary evidence not already in existence in some form. Fed.Rules Civ.Proc.Rule 34(a), 28 U.S.C.A.

[2] Witnesses 410 ⇐297(1)

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k297 Self-Incrimination
                410k297(1) k. In General. Most Cited Cases
Validity of a witness' invocation of Fifth Amendment privilege is tested by two-step procedure: first, district court must determine whether there appears to be conceivable possibility that witness could be linked to a crime against the United States; and second, if this initial inquiry is answered affirmatively, court must determine whether facts sought to be elicited by questions could form a link in chain of evidence necessary to convict witness. U.S.C.A. Const.Amend. 5.

[3] Witnesses 410 ⇐297(1)

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k297 Self-Incrimination
                410k297(1) k. In General. Most Cited Cases
Application of Fifth Amendment privilege should not be denied unless it is perfectly clear, from careful consideration of all circumstances in case, that witness is mistaken, and that answers cannot possibly have a tendency to incriminate. U.S.C.A. Const.Amend. 5.

[4] Witnesses 410 ⇐297(1)

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k297 Self-Incrimination
                410k297(1) k. In General. Most Cited Cases
Privilege against self-incrimination may be invoked by a compelled witness in any proceeding when his answers to questions might incriminate him in future criminal proceedings. U.S.C.A. Const.Amend. 5.

[5] Witnesses 410 ⇐308

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k308 k. Determination of Right to Privilege. Most Cited Cases
A witness cannot be required to prove hazard involved in his answering contested questions in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

order to invoke privilege against self-incrimination, as to do so would compel him to surrender very protection which privilege is designed to guarantee. U.S.C.A. Const.Amend. 5.

[6] Witnesses 410 ⚷297(12)

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k297 Self-Incrimination
                410k297(8) Particular Subjects of Inquiry
                410k297(12) k. Personal Identity and Associations. Most Cited Cases

Answers to antitrust action plaintiff's interrogatories requesting, from named defendants, who were also corporate officers, identification of corporation's officers, directors, stockholders, employees, bank accounts and office employees would not tend to criminally incriminate either defendant and, therefore, defendants could not assert Fifth Amendment privilege against answering. U.S.C.A. Const.Amend. 5.

[7] Witnesses 410 ⚷306

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k306 k. Persons Entitled to Claim Privilege. Most Cited Cases

Corporations are not protected by privilege against self-incrimination, and a corporate agent has a duty to produce corporation's records, even where records might incriminate him personally. U.S.C.A. Const.Amend. 5.

[8] Witnesses 410 ⚷306

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k306 k. Persons Entitled to Claim Privilege. Most Cited Cases

Corporate agents retain their personal privilege against self-incrimination. U.S.C.A. Const.Amend. 5.

[9] Witnesses 410 ⚷306

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k306 k. Persons Entitled to Claim Privilege. Most Cited Cases

Privilege against self-incrimination is purely personal, protecting individual from any disclosure, in form of oral testimony, documents or chattels, sought by legal process against him as witness. U.S.C.A. Const.Amend. 5.

[10] Witnesses 410 ⚷297(13.1)

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k297 Self-Incrimination
                410k297(13) Particular Circumstances Affecting Danger of Prosecution
                410k297(13.1) k. In General. Most Cited Cases
      (Formerly 410k297(13))

Information sought by antitrust action plaintiff's interrogatories from named defendants, were also corporate officers, including corporation's involvement in interstate commerce, quality of plaintiff's scrap, corporation's purchase of scrap from plaintiff and corporation's sales of scrap, was of type that would be contained in corporate, rather than personal records, and therefore defendants could not assert Fifth Amendment privilege against answering, notwithstanding that their answering might ultimately lead to release of material incriminating as to defendants. U.S.C.A. Const.Amend. 5.

[11] Witnesses 410 ⚷308

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k308 k. Determination of Right to Privilege. Most Cited Cases

Where defendants, in antitrust action in which plaintiff sought to have court compel their testimony, offered only blanket application of privilege against self-incrimination and did not offer any support for contention that privilege was applicable, they would be directed to answer questions going to their assertion. U.S.C.A. Const.Amend. 5.

[12] Witnesses 410 ⚷306

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
           410k306 k. Persons Entitled to Claim Privilege. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

576 F.Supp. 511
576 F.Supp. 511, 1984-1 Trade Cases P 65,836
(Cite as: 576 F.Supp. 511)

Page 3

Privilege against self-incrimination is personal to the witness; he cannot invoke privilege of third party in order to avoid answering questions or producing documents which may incriminate that third party. U.S.C.A. Const.Amend. 5.

*512 Joseph A. Katarincic, David A. Borkovic, Pittsburgh, Pa., for plaintiff.
John D. Leech, John J. Eklund, Cleveland, Ohio, Stanley Greenfield, Richard H. Martin, Joan P. Feldman, William M. Wycoff, Carl L. Lopresti, James M. Plasynski, Pittsburgh, Pa., for defendants.

MEMORANDUM AND ORDER
MENCER, District Judge.
This memorandum and order will address Rockwell International Corporation's motions to compel responses from Lee and Randall Wilkoff. Those areas of inquiry governed by this ruling are the plaintiff's deposition of Lee Wilkoff, the plaintiff's first set of interrogatories to Lee Wilkoff, the plaintiff's deposition of Randall Wilkoff, the plaintiff's first set of interrogatories to Randall Wilkoff and the plaintiff's request that Randall Wilkoff produce handwriting exemplars. *513
*Handwriting exemplars of Randall Wilkoff*

[1] Initially, we find that Randall Wilkoff, a defendant in this civil action, cannot be compelled to create, upon the request of the plaintiff, documentary evidence which is not already in existence in some form. Rule 34(a), Fed.R.Civ.P., the rule under which the request for exemplars was implicitly made, is limited in its scope to documents "which are in the possession, custody or control of the party upon whom the request is served." "Rule 34 cannot be used to require the adverse party to prepare, or cause to be prepared, a writing to be produced for inspection, but can be used only to require the production of things in existence." *Soetaert v. Kansas City Coca Cola Bottling Co.,* 16 F.R.D. 1, 2 (W.D.Mo.1954) (citations omitted).

[2][3] The defendants' refusal to answer interrogatories and deposition questions put to them is based on a claimed Fifth Amendment privilege against self-incrimination. In this circuit, the validity of a witness' invocation of his Fifth Amendment privilege is tested by a two-step procedure. First, the district court must determine whether "there appears to be a conceivable possibility that the witness could be linked to a crime against the United States." *American Cyanamid Company v. Sharff,* 309 F.2d 790, 794 (3d Cir.1962). If this initial inquiry is answered affirmatively, the court must determine whether the facts sought to be elicited by the questions could "form a link in the chain of evidence necessary to convict [the witness] ...." *Id.* at 797. Application of the privilege should not be denied unless it is " '*perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answers *cannot possibly* have such a tendency' " to incriminate. *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951), citing *Temple v. Commonwealth,* 75 Va. 892, 898 (1881).

[4][5] The privilege against self-incrimination may be invoked by a compelled witness "in any proceeding when his answers to questions 'might incriminate him in future criminal proceedings.' " *United States v. Mahady & Mahady,* 512 F.2d 521, 525 (3d Cir.1975), citing *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). And, the Supreme Court has cautioned that a witness cannot be required to prove the hazard involved in his answering the contested questions. To do so would compel him "to surrender the very protection which the privilege is designed to guarantee." *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87, 71 S.Ct. at 818-19.

*Plaintiff's first set of interrogatories*

The interrogatories served by the plaintiff on both Lee and Randall Wilkoff are exactly the same in number and content. This portion of our ruling will apply to both defendants.

Our starting point is Rule 33, Fed.R.Civ.P., the rule of civil procedure governing interrogatories to parties. Rule 33(a) requires that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer." Fed.R.Civ.P. 33(a). We note that the defendants have failed to file any type of formal response to the interrogatories. We will require them to file either their answers or objections, along with the reason for each objection.

This action is being pursued within the context of federal antitrust laws. The plaintiff has alleged,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

576 F.Supp. 511
576 F.Supp. 511, 1984-1 Trade Cases P 65,836
(Cite as: 576 F.Supp. 511)

Page 4

among other things, a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, the thrust of which is that the defendants involved in these motions, "and others not named herein, combined or conspired to fix maximum prices that would be paid for scrap produced *514 at the Axle Plant and the Spring Plant, to allocate purchases from certain scrap producers among themselves and to unreasonably restrain trade." Complaint ¶ 18. The complaint alleges that the Wilkoff Company or those individuals in control of it engaged in activities that substantially affected interstate commerce, that they conspired or combined with others, and that the purpose of the alleged conspiracy and combination was to restrain trade. The specific allegation against the Wilkoffs is that they received a commission from other scrap dealers as a result of their agreement to underbid these other dealers for the purchase of plaintiff's scrap metal. It is clear that proof of facts that support these allegations could result in criminal liability on the part of the defendants. 15 U.S.C. § 1.

[6] The forty interrogatories propounded to defendants Lee and Randall Wilkoff fall into four categories. Interrogatories Nos. 1-17 and 24 concern the Wilkoff Company's involvement in interstate commerce. Interrogatories Nos. 18-23 concern the quality of plaintiff's scrap. Interrogatories Nos. 25-34 concern the Wilkoff Company's purchase of scrap from the plaintiff and the company's sales of scrap. Interrogatories Nos. 35-40 request the identification of the Wilkoff Company's officers, directors, stockholders, employees, bank accounts and office employees. We do not believe that answers to Interrogatories Nos. 35-40 could tend to incriminate either Lee or Randall Wilkoff and, therefore, will order them to answer those interrogatories. The information sought in Interrogatories Nos. 1-34 is of the type that could conceivably operate as a link in the chain of evidence necessary to convict an individual of Sherman Act violations, and for that reason, presents the Court with troubling questions regarding the responsibility of the defendants to answer these interrogatories.

[7][8][9] Lee and Randall Wilkoff are in the unenviable position of being both individual named defendants and corporate officers of the Wilkoff Company. Corporations are not protected by the privilege against self-incrimination and a corporate agent has a duty to produce the corporation's records, even where the records might incriminate him personally. *Wilson v. United States,* 221 U.S. 361, 384, 31 S.Ct. 538, 545, 55 L.Ed. 771 (1911). Corporate agents do, however, retain their personal privilege against self-incrimination. *Curcio v. United States,* 354 U.S. 118, 124, 77 S.Ct. 1145, 1149, 1 L.Ed.2d 1225 (1957). It is well-settled that the privilege is purely personal, *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944), and that "[i]t protects the individual from any disclosure, in the form of oral testimony, documents or chattels, sought by legal process against him as a witness." *Id.* The *White* court succinctly explained the theory behind this limitation in the scope of the privilege.

Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.

*White,* 322 U.S. at 700-01, 64 S.Ct. at 1251-52.

[10] The information sought by the interrogatories is of the type that would, in all likelihood, be contained in corporate, rather than personal, records. Lee and Randall Wilkoff, as president and vice-president of the Wilkoff Company, are the corporate officers most likely to have control of the information sought. Although their doing so may ultimately lead to the release of material which is incriminating as to them, the defendants must answer those portions of the interrogatories the answers to which are contained in Wilkoff Company records. If we were to rule otherwise the result would be the creation of a safe zone within which representatives of corporations could conceal the activities of the corporation and its agents from public *515 scrutiny simply by claiming the Fifth Amendment privilege the representatives enjoy in their personal capacity. The outcome here would be to block from the discovery of the plaintiff any substantive information regarding the Wilkoff Company operations because of the potential incrimination of Lee and Randall Wilkoff. This would, in effect, create a privilege where none exists. *See Bellis v. United States,* 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974). Our ruling on this point should not be construed as requiring the defendants to reveal information contained in their personal records which might tend to incriminate them.

*Deposition testimony*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[11] The first area of inquiry for which the plaintiff seeks to have the Court compel the testimony of the defendants is "the facts claimed to support the affirmative defenses set forth in [the defendants' Answers] to Plaintiff's Complaint." The defendants forward, as justification for their refusal to answer inquiries into this area, a blanket application of the privilege against self-incrimination. They do not, however, offer any support for their contention that the privilege is applicable, *Sharff,* 309 F.2d at 794, and the Court is unable to determine how inquiry into such affirmative defenses, which are directed to the activities of the plaintiffs and other defendants, threatens the defendants. We will direct the defendants to answer questions going to their assertion of affirmative defenses.

[12] The privilege against self-incrimination is personal to the witness; he cannot invoke the privilege of a third party in order to avoid answering questions or producing documents which may incriminate that third party. *White,* 322 U.S. at 704, 64 S.Ct. at 1254. The defendants will be directed to answer those portions of the deposition questions which relate to the activities of third parties. This ruling extends to cover members of the defendants' families. *In re Matthews,* 714 F.2d 223, 224 (2nd Cir.1983).

Finally, as regards those areas of inquiry which relate to activities of the Wilkoff Company, our discussion in the portion of this memorandum which dealt with the plaintiff's interrogatories to the defendants is equally applicable here. We will direct the defendants to answer questions related to the operation of the company based on information available through company records. Our order will set out those specific sub-paragraphs of the plaintiff's motions which the defendants must address.

ORDER

AND NOW, this 15th day of December, 1983, for the reasons set forth in the accompanying memorandum, the plaintiff Rockwell International Corporation's Motions to Compel Answers and Responses from defendant[s] Lee Wilkoff and Randall Wilkoff are GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that:
1. plaintiff's motion to compel handwriting exemplars of defendant Randall Wilkoff is DENIED;
2. defendants Lee Wilkoff and Randall Wilkoff shall file either answers or objections, along with reasons for the objections, to each of the plaintiff's interrogatories, consistent with our ruling in the accompanying memorandum;
3. defendants Lee Wilkoff and Randall Wilkoff shall testify to facts claimed to support their assertion of the affirmative defenses set forth in their respective Answers;
4. defendants Lee Wilkoff and Randall Wilkoff shall testify to subject areas regarding the activities of third parties, where such testimony will not violate the witness' personal privilege against self-incrimination;
5. defendant Lee Wilkoff shall testify to the subject areas identified in the following subparagraphs of the plaintiff's motion to compel Lee Wilkoff-1(b), (i), (m), (n), (o), (p);
6. defendant Randall Wilkoff shall testify to the subject areas identified in the following sub-paragraphs of the *516 plaintiff's motion to compel Randall Wilkoff-1(b), (h), (i).

D.C.Pa.,1983.
Rockwell Intern. Corp. v. H. Wolfe Iron and Metal Co.
576 F.Supp. 511, 1984-1 Trade Cases P 65,836

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX 3

Westlaw.

16 F.R.D. 1                          Page 1
16 F.R.D. 1
(Cite as: 16 F.R.D. 1)

C
United States District Court, W.D. Missouri, Western Division.
SOETAERT
v.
KANSAS CITY COCA COLA BOTTLING CO.
No. 8747.

July 28, 1954.

Action for personal injuries sustained when bottle containing carbonated beverage allegedly exploded. Plaintiff moved for order requiring defendant to produce, for inspection and copying, report of examination made by defendant's expert witness of broken bottle and its fragments. The District Court, Charles E. Whittaker, J., held that, where defendant's expert witness had examined broken bottle and its fragments, but defendant denied that such witness had ever made any report to defendant, defendant could not be ordered to produce such a report in absence of showing that such report existed, but plaintiff could take such witness' deposition upon oral examination.

Motion denied without prejudice.

West Headnotes

[1] Federal Civil Procedure 1574
170Ak1574 Most Cited Cases
Rule, which pertains to discovery and production of documents and things for inspection, copying, or photographing cannot be used to require adverse party to prepare, or cause to be prepared, a writing to be produced for inspection but can only be used to require production of things in existence. Fed.Rules Civ.Proc. rule 34, 28 U.S.C.A.

[2] Federal Civil Procedure 1415
170Ak1415 Most Cited Cases

[2] Federal Civil Procedure 1574
170Ak1574 Most Cited Cases
Where, in action for injuries sustained when bottle containing carbonated beverage allegedly exploded, defendant's expert witness had examined broken bottle and its fragments, and defendant denied that such witness had ever made any report to defendant, defendant could not be ordered to produce such a report in absence of showing that such a report existed, but plaintiff could take such witness's deposition upon oral examination. Fed.Rules Civ.Proc. rule 34, 28 U.S.C.A.

*1 James P. Aylward, George V. Aylward, James P. Aylward, Jr., Kansas City, Mo., for plaintiff.

Ilus W. Davis, William J. Burrell, Kansas City, Mo., for defendant.

WHITTAKER, District Judge.

Plaintiff, an eight-year-old girl, brings this action, by next friend, for damages for a bodily injury sustained by her when a bottle of Coca-Cola, which she was placing in the refrigerator in her home, is alleged to have 'exploded' and a fragment *2 or fragments of the glass bottle pierced the cornea of her left eye.

After answering, defendant moved, under Rule 34 of Federal Rules of Civil Procedure, 28 U.S.C.A., for an order requiring plaintiff to produce said bottle and all fragments thereof and to permit defendant to submit the same to Dr. Oscar G. Fryer, of Drury College, at Springfield, Missouri, for his examination and photographing. Plaintiff resisted the motion upon the grounds (1) that good cause for production was not shown, and (2) that she should not be required to surrender possession of the bottle and fragments, nor suffer their being taken out of her possession and sent to Springfield, Missouri for inspection and photographing. The then judge of this court sustained the motion, but on terms that the inspection be made in Kansas City and in the presence of representatives of the plaintiff, but nothing was said in the order concerning the preparation by the examiner of the bottle and fragments of a report of findings, nor concerning the delivery of a copy to the plaintiff.

It appears that Dr. Fryer examined the broken bottle and its fragments at the office of plaintiff's attorneys in Kansas City on February 6, 1954.

Plaintiff has now moved, under Rule 34 of Federal Rules of Civil Procedure, for an order requiring defendant to produce for inspection and copying 'a copy of the report of the examination made * * * by Dr. Oscar G. Fryer * * * at the office of plaintiff's attorneys on or about February 6, 1954', and contends that 'good cause' exists and is shown for such production of such report, and that it is not

16 F.R.D. 1                                                                                              Page 2
16 F.R.D. 1
**(Cite as: 16 F.R.D. 1)**

privileged. Defendant objects to the motion upon the ground that Rule 34, unlike Rule 35 respecting physical and mental examinations of persons, does not provide for the preparation of a written report of inspection of a *physical object*, produced for inspection under said rule, nor for delivery of a copy to the adverse party, and that Rule 34 is exclusive upon the subject, and absent, as here, any direction in that rule for the preparation or delivery to the adverse party of a written report, in such circumstances, the court would be without lawful power to order production of such a report even if it be in, or hereafter come into, existence and into defendant's custody. But defendant also says in its objections-- and this presents the crucial matter--that 'Defendant does not have in its possession, custody or control any report of any such examination, and to the best of this defendant's knowledge and belief no such report has even been made', and that statement is supported by an affidavit of defendant's counsel.

This presents the matter now before me for decision.

Great as is the temptation to decide the issue of whether the court has power, under Rule 34, to require the examining party to produce, for inspection and copying, a copy of a written report of the findings of his expert employed to examine a physical object, in these circumstances, I am precluded from doing so because I am met at the threshhold with an affidavit saying that the defendant does not have any such report in its possession, custody or control and that no such report has ever been prepared or made.

[1][2] Rule 34 cannot be used to require the adverse party to prepare, or cause to be prepared, a writing to be produced for inspection, but can be used only to require the production of things in existence. United States v. United States Alkali Export Ass'n, D.C.S.D.N.Y., 7 F.R.D. 256; Tobin v. WKRZ, Inc., D.C.W.D.P.A., 1952, 12 F.R.D. 200; Mullen v. Mullen, D.C.Alaska 1953, 14 F.R.D. 142. Inasmuch as there is no showing by the plaintiff of the existence of a report by Dr. Fryer, and the defendant affirms, and its counsel swears, that defendant does not have such a report, nor any knowledge that such a report has ever been made by Dr. Fryer, it follows that I cannot, in the present state of affairs, sustain plaintiff's motion, for I cannot *3 order produced something not shown to exist.

Plaintiff's remedy, in my view, at least preliminarily, is to take Dr. Fryer's deposition upon oral examination under Rule 30.

It follows that plaintiff's motion to require defendant to produce a report of Dr. Fryer, not shown to exist, should be denied, but without prejudice.

It is therefore Ordered and Adjudged by the Court that plaintiff's motion to require defendant to produce is hereby denied, but without prejudice.

16 F.R.D. 1

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.