# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                Plaintiff,

        v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

                Defendants.

Civil Action No. 04-343 (JJF)

## VIEWSONIC CORPORATION'S OPPOSITION
## TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY
## ON ADVICE OF COUNSEL AND DUTY OF CARE

## I.    INTRODUCTION

Defendant ViewSonic Corporation ("ViewSonic") hereby opposes *Plaintiff LG.Philips LCD Co., Ltd.'s Motion to Compel ViewSonic to Provide Discovery on Advice of Counsel and Duty of Care* ("Motion").  Alternatively, ViewSonic requests that the Special Master order that any discovery in response to the Requests identified in Plaintiff's Motion be deferred until after claim construction and Expert discovery, subject to the attorney-client and work-product privileges.

## II.    THE REQUESTED DISCOVERY IS PREMATURE AS IT REQUIRES CLAIM CONSTRUCTION

### a.    This Court Has Determined That Discovery Is Subordinate To Claim Construction.

This Court has made clear that issues involving claim construction should be considered in the context of a Markman hearing, which has been scheduled by the Court.[1]  Moreover, in the August 23, 2006 hearing regarding discovery disputes, Special Master Poppiti began the discussion by indicating that certain interrogatories, for example, that involve claim construction, "if answered, need to be answered in the process dealing with Markman and not before then." *See* Transcript of teleconference before Hon. Vincent J. Poppiti, August 23, 2006.  (Ex. 5 to ViewSonic Corporation's Motion to Compel re: Requests for Admission propounded to plaintiff ("Transcript Ex. 5") p. 4 ll 16-21) (emphasis added).  The discovery in dispute in this Motion similarly requires claim construction and/or the premature disclosure of ViewSonic's contentions regarding claim construction, and should therefore be postponed until that process is concluded.

As LG.Philips LCD Co., Ltd. ("LPL") points out in its Motion, the Requests and Interrogatories at issue all relate to actions taken by ViewSonic to "design around", or "to avoid"

---

[1] In its Stipulation and Order Modifying the Scheduling Order, dated September 18, 2006 ("September 18' 2006 Order," Exhibit "Ex." 1 hereto), this Court set the Markman hearing and related procedures for March 7, 2007.

494314_1.DOC

infringement, and opinion(s) of counsel and/or analysis of litigation strategy -- each of which could only have occurred *after* LPL filed the Complaint as it is uncontroverted that ViewSonic did not have notice of the patents before that time. (Motion at 3, 4 and 6-7). Thus, the underlying issues that form the bases for the discovery sought by this Motion clearly all require claim construction and/or the disclosure of the construction of the claims made by ViewSonic.

The "opinion of counsel" that LPL addresses throughout its Motion as a defense to a charge of willfulness, expressly consists of analysis of invalidity and/or non-infringement.[2]   It is undisputed that the first step in determining invalidity or non-infringement is claim construction:

> An infringement analysis entails two steps.   The first step is determining the meaning and scope of the patent claims asserted to be infringed.   The second step is comparing the properly construed claims to the device accused of infringing.

[internal citations omitted]). *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996*). See also Carrol Touch, Inc., v. Electro Mechanical System Inc.,* 15 F.3d 1573, 1576 (Fed. Cir. 1993).  ViewSonic's decision as to whether to submit an opinion of counsel or to rely on other evidence to refute willfulness or demonstrate exercise of duty of care reasonably should await the claim construction rulings. The same analysis applies to LPL's discovery on steps taken to "avoid the patents" or to "design around" the claims of the patents.  Beyond the problems posed by the vagaries of the request concerning actions to "avoid the patents," it cannot be denied that any steps ViewSonic has taken to "avoid" the patents or design around the claims are necessarily determined by, and based solely upon, an interpretation of the patent claims.  Indeed, the Court has declined to require LPL to provide a complete statement of the basis on which it charges ViewSonic with infringement on the basis that doing

---

[2] Litigation strategy, which LPL seeks to discover, also depends on claim construction, but in any event remains protected by the attorney–client and work product privileges.

so would require the premature disclosure of claim interpretations. Having received this shield

from discovery, LPL boldly seeks the details of claim constructions formulated by or on behalf

of ViewSonic; fundamental fairness requires that ViewSonic be granted the same protections

against premature disclosure as LPL.[3]

**b.    LPL Is Not Prejudiced By Waiting For The Markman Hearing.**

Nothing in LPL's Motion suggests that any prejudice will result from waiting for claim

construction. LPL has asserted many times on its own behalf the need to delay discovery from

LPL on matters that LPL believes depend upon claim construction. For example, LPL has asked

to postpone LPL's response to ViewSonic's Request for Admission Nos. 11- 18 pending claim

construction, and similarly postpone production of certain discovery requested by ViewSonic

including ViewSonic's Request for Production Nos. 63-66, 79-81 and 87-98. (*See* Transcript Ex.

5 at p. 37 l. 16—p. 47 l. 21.) While ViewSonic disputes that those Requests require claim

construction, surely LPL, in asking for such delay, intended to allow ViewSonic adequate

discovery after claim construction.[4] LPL can hardly assert prejudice from the interpretation of

the Scheduling Order that LPL itself first proposed to shield itself from ViewSonic's discovery.

---

[3] LPL spuriously suggests that the Court disregard ViewSonic's objection that the discovery is premature because ViewSonic raised the claim only after the Court clarified its intent regarding the Scheduling Order on this point. LPL's protestation ignores that LPL similarly raised this very same objection "after the fact" in regards to ViewSonic's Request Nos. 87-98 during the most recent Meet and Confer on September 25, 2006. (*See e.g.* Motion Of ViewSonic Corporation To Compel Plaintiff To Provide Discovery Regarding Components, Assemblies And Structures, Including Mounting Methods And Structures, Of Flat Panel Display Devices at p. 8.) Moreover, no party can unilaterally change the Court's Scheduling Order – the predicate that makes the discovery sought by LPL premature.

[4] As it indicated it would do at the August 23, 2006 hearing, ViewSonic has reached out to LPL to try to arrive at an agreement on the supplementation of discovery after the Court's Markman ruling. (*See* Transcript Ex. 5 at p. 26 ll. 13-15; see also, Ex. 2 Letter from Scott Miller dated October 11, 2006.) True to form, LPL has yet to respond to this proposal.

3

494314_1.DOC

### III. THE REQUESTED DISCOVERY IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR WORK PRODUCT PRIVILEGES

#### a. The Discovery Sought Clearly Is Privileged.

In framing its motion, LPL recognizes that the information it seeks relates to issues protected by the attorney-client and work-product privileges, with very limited exception in certain circumstances which may not be present in this case. LPL introduces its Argument as follows:

> *If* ViewSonic is relying on any legal opinion or advice of counsel, *then* LPL is entitled to discovery regarding all such advice and opinions in order to prepare for depositions and trial. [case citation]....*Specifically*, LPL needs discovery responsive to LPL's Interrogatories 5-7 and Document requests 19-24, 49, 50, 55, and 72....

Motion at p.2 (emphasis added). Moreover, LPL's use of *"If.....then"*, also demonstrates that it recognizes that conversely, *if* ViewSonic does *not* rely on opinion or advice of counsel, *then* LPL would *not* be entitled to this discovery. Thus, the Interrogatories and Requests for Production at issue admittedly are premature.

The discovery sought also asks for information that LPL knows does not exist or knows is privileged. LPL does not dispute ViewSonic's explanation in its responses to the subject Requests, that ViewSonic was not aware of the patents before the filing of this lawsuit. Therefore, any analysis of the patents and/or non-infringement necessarily was done only after the litigation commenced and in the course of defending this action. All requests that call for such analysis clearly invade attorney-client and/or work product privileges.[5]

---

[5] At present, the parties have not exchanged privilege logs and have no agreement regarding the scope of the privilege log for documents created post filing. (*See* Ex. 3 Letter from Nicole Balaci dated August 25, 2006.) ViewSonic made a proposal to address this matter on September 14, 2006 which proposal it reiterated on September 21, 2006 (*See* Ex. 4 E-mail correspondence dated September 14, 2006- September 21, 2006.) LPL remains silent on the proposal. As ViewSonic had no notice of the patents prior to the filing of the Complaint, it has no privileged documents prior to that time. LPL has produced no privilege log for any of the pre-litigation documents it has withheld.

494314_1.DOC

The only possible limited exception to the privilege might be relating to a defense to a claim of willfulness. Even if ViewSonic were to rely on opinion of counsel as part of the basis of a defense to a claim of willfulness, such an opinion would be of little value until the claims are construed. Because both invalidity and non-infringement depend upon claim construction, ViewSonic must be permitted to defer its decision until after the Markman hearing. ViewSonic may choose not to offer opinion of counsel, in which case all LPL's arguments would be moot.

It is undisputed that ViewSonic can oppose a claim of willfulness without an opinion of counsel. "The Willfulness inquiry requires 'consideration of the totality of the circumstances.'" *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1379 (Fed. Cir. 2005), *citing Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) (*en banc*). The Delaware Court has consistently followed this principle. *See, e.g., Tenneco Automotive Operating Co., Inc. v. Visteon Corp.*, 375 F. Supp.2d 360, 365 (D. Del. 2005). The Federal Circuit, in expressly overruling all contrary precedent, made it abundantly clear that defendants can assert a defense to a charge of willfulness without an opinion of counsel. *See Knorr-Bremse* 383 F.3d at 1341. ("We now hold that no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel.")

Even if ViewSonic were to rely on advice of counsel, the work product privilege would not be waived. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006) *reh'g denied.* ("The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." The Court noted that there is no waiver of work product that is not communicated to the client. *Id. at 1305*); *Affinion Net Patents, Inc. v. Maritz, Inc.*, 440 F.Supp.2d 354, 356 (D. Del. 2006). ("The work-

product privilege is waived only to the extent it is relevant to the alleged infringer's state of mind...."); *Thorn EMI North America Inc. v. Micron Technology Inc.*, 837 F. Supp. 616, 622 (D. Del. 1993) ("[T]his Court does not believe a party's assertion of good faith reliance on advice of Counsel necessarily puts counsel's work product at issue.").

As ViewSonic had no notice of the patents until after LPL filed the Complaint in this action, all of the information that LPL is seeking constitutes protected work product arising directly from this litigation. For example, LPL identifies in its Motion, Interrogatory 7 (LPL Ex. 2) and Requests 24, 49 & 50 (LPL Ex. 3) as "...investigations of the Patents-in-Suit." Since any such investigations would have taken place in the course of defense of this litigation, these clearly are privileged. This Court should deny LPL's Motion to compel responses to these discovery requests, even if ViewSonic introduces an opinion of counsel to refute willfulness.

If ViewSonic does not assert opinion of counsel to support a defense to willfulness, then there would be no basis on which LPL could invade either of the privileges. LPL does not dispute this point. In light of the premier significance of the work product and attorney-client privileges, as discussed below, the equities lie in favor of deferring the requirement of a response until after the claims have been construed and a meaningful analysis can take place.

      **b.**    **The Equities Strongly Favor Respect For The Privileges Until The Markman Process Is Completed.**

If there were any doubt as to which way this Court should rule on this Motion, the equities weigh in favor of protecting the venerated attorney-client and work product privileges. The Federal Circuit has honored the Supreme Court's respect for such privilege:

> The Supreme Court describes the attorney-client privilege as 'the oldest of the privileges for confidential communications known to common law,' and has stressed the public purpose." Citing *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

*Knorr-Bremse* at 1344. In patent cases, like others, care and deference should be paid to these important rights:

> There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney. As Professor McCormick has explained, the attorney-client privilege protects "interests and relationships which ... are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice." 1 *McCormick on Evidence* § 72, 299 (5th ed. 1999)."

*Id.* The District Court in Delaware, recently re-affirmed this important principle. *See, e.g., Ampex Corp. v. Eastman Kodak Co.,* 2006 WL 1995140, at *3 (D. Del. July 17, 2006).

Furthermore, LPL's Motion attempts to create issues for the Court that may not exist if ViewSonic postpones its decision until claim construction. The cases cited by LPL in its Motion all relate to waiver of privilege when a defendant is already relying on opinion of counsel to refute a charge of willfulness. The cases are inapposite because ViewSonic has not yet indicated that it will rely on opinion of counsel, and has advised LPL that it does not presently have an opinion of counsel not arising from the litigation between the parties other than the judgment on the corresponding patent in the UK that the patent is invalid and not infringed. Moreover, were such cases apposite, the Court should rely on the cases that explain why the apparent broad discovery language that LPL cites is a misreading of the legal principle and is not the intention of the cases cited. *See, e.g., Id.* at *2-*4. In fact, a much more narrow scope of waiver of privilege is appropriate. *Id.*

Were this issue to be addressed now, then the Court would become embroiled in an additional debate over the scope of waiver that may not need to be addressed. If after claim construction, ViewSonic determines that it does not need an opinion of counsel, then this debate over scope of waiver need not be decided. Clearly, waiting for claim construction when

ViewSonic can make an informed and rational decision is the most appropriate and efficient course of action.

It is not unreasonable for ViewSonic to be deliberate about its decision. The Federal Circuit has long acknowledged the dilemma an accused infringer may face in choosing between offering an opinion of counsel and risking certain limited waiver of the attorney-client privilege. *See, e.g., Electro Medical Systems, S.A. v. Cooper Life Sciences Inc.*, 34 F.3d 1048, 1056-57 (Fed. Cir. 1994). The Federal Circuit has even recommended separate trials on willfulness to avoid this dilemma. *See, e.g., Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991). ViewSonic is not asking the Court to go that far, ViewSonic merely is indicating that it can make a more informed and relevant decision on this very important issue by first understanding this Court's claim construction—a procedure this Court has already put into place.

## IV. THE REQUESTS ARE PREMATURE IN SEEKING EXPERT DISCOVERY PRIOR TO THE DEADLINES

As the Requests at issue require analysis of the claims, of prior art and comparison of the claims with the accused device(s) and/or possible changes to the device(s), Expert analysis is implicated. The Rule 16 Scheduling Order dated August 18, 2005 ("Rule 16 Order") requires that Expert discovery will not take place until 30 days after the Markman hearing. (Ex. 5 hereto, Rule 16 Order at 3.) As ViewSonic pointed out in its Responses and/or Supplemental Responses to each of the subject Requests, discovery should be postponed until after ViewSonic's Expert Reports are due. LPL will not be prejudiced by respecting this schedule.

## V. WHERE APPROPRIATE, VIEWSONIC HAS PROVIDED SUBSTANTIAL RESPONSIVE DISCOVERY

In presenting its Motion, LPL has failed to mention the extensive discovery and identification of documents that ViewSonic has, in fact, provided and continues to provide in response to these Requests, to the extent that ViewSonic is not asserting privilege nor finds a

494314_1.DOC

8

need for claim construction.  ViewSonic has been diligent and reasonable in producing such

discovery as is appropriate.

## CONCLUSION

Based upon the foregoing, ViewSonic respectfully requests that the Special Master deny

LPL's Motion to Compel ViewSonic to Provide Discovery on Advice of Counsel and Duty of

Care.  Alternatively, ViewSonic requests that the Special Master Order that any discovery in

response to the Requests identified in LPL's Motion be deferred until after claim construction,

and after Expert discovery, subject to the attorney-client and work-product privileges.


Date:  October 18, 2006

Respectfully submitted,

Connolly Bove Lodge & Hutz LLP


Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Manuel Nelson (CA Bar No. 229590)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071

Tracy R. Roman (CA Bar No. 199031)
Bingham McCutchen LLP
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106

By:  _/s/  Jeffrey B. Bove_____
     Jeffrey B. Bove (#0998)
     Jaclyn M. Mason (#4737)
     The Nemours Building, 8th floor
     1007 North Orange Street
     Wilmington, DE 19801
     Telephone:  (302) 658-9141
     Facsimile:  (302) 658-5614

*Attorneys for Defendant*
*ViewSonic Corporation*

# CERTIFICATE OF SERVICE

I, Jeffrey B. Bove, hereby certify that on the 18th day of October, 2006, a true copy of the

foregoing document was served as follows:

**By Email:**

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
920 King Street
Wilmington, DE 19801

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon, LLP
1313 N. Market St., 6th Flr.
Wilmington, DE 19899-0951

Cass W. Christenson
Lora A. Brzezynski
Rel Ambrozy
McKenna Long & Aldridge LLP
1900 K Street NW
Washington, DC 20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy R. Roman
Bingham McCutchen LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106

Jong P. Hong
Greenberg Traurig, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303

By: /s/ Jeffrey B. Bove
Jeffrey B. Bove (#998)
jbove@cblh.com

494421_1.DOC