# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,       )
                                    )
        Plaintiffs,                 )   C.A. No. 04-343(JJF)
                                    )
v.                                  )
                                    )
TATUNG CO., TATUNG COMPANY OF       )
AMERICA, INC., and VIEWSONIC        )
CORPORATION,                        )
                                    )
        Defendants.                 )

Hearing of above matter taken pursuant to notice before Renee A. Meyers, Registered Professional Reporter and Notary Public, in the law offices of BLANK ROME, LLP, 1201 North Market Street, Wilmington, Delaware, on Thursday, December 28, 2006, beginning at approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        RICHARD D. KIRK, ESQ.
          222 Delaware Avenue, Suite 900
          Wilmington, Delaware  19899
          for Plaintiffs

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street    Wilmington, DE 19899
(302) 571-0510
www.corbettreporting.com
Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

Page 86

1  happy to raise that with my client, and if there are
2  materials, to make them available.
3       MR. AMBROZY: And just to clarify, we
4  have had this discussion multiple times, Scott, and, as
5  you have told us in the past, all you know is that the
6  monitors show up in a box and that's all you know. We
7  have had this discussion before.
8       But you did parse your sentence to say
9  that monitors sold by Viewsonic. Our point is monitors
10 that Viewsonic ships to a third party, such as Dell or
11 HP, and then make their way into the United States under
12 the Dell label, that's what we are concerned with.
13      SPECIAL MASTER POPPITI: With that fine
14 tuning, I would like some representation as to when you
15 can learn from your clients, Mr. Miller?
16      MR. MILLER: I guess what I would like
17 is, and we have not had this discussion, Rel, about Dell
18 products or HP products or something like that, you
19 obviously have something specific, if you can give that
20 to me, I will attempt to get a response from my client
21 within two weeks.
22      MR. AMBROZY: We will do that.
23      MR. MILLER: Send me something and I
24 will talk to them and we will investigate it and give the

Page 87

1  report back within two weeks of when we get it.
2       MR. AMBROZY: We will work with you.
3       SPECIAL MASTER POPPITI: And what I
4  would like to do is I would simply like to be advised,
5  not with respect to the detail, unless you think it's
6  important for me to have the detail, that you have made
7  the request and that the request has been responded to
8  within two weeks. If I don't need to know the detail,
9  you will know whether or not to share it with me or not
10 to share it with me.
11      MR. MILLER: Your Honor, I guess the,
12 you know, the point I also want to make is I want to make
13 sure that what I get from Mr. Ambrozy, that I can put it
14 into the context of a request for production of
15 documents. If they didn't ask for it, I don't believe I
16 am obligated to produce it.
17      MR. AMBROZY: We all can agree with
18 that.
19      SPECIAL MASTER POPPITI: I certainly
20 understand that. Mr. Ambrozy, do you agree?
21      MR. AMBROZY: Absolutely, Your Honor.
22      SPECIAL MASTER POPPITI: With that, my
23 watch isn't necessarily the best indicator, I have 1:35,
24 about. Let's break until, since I asked you to pull

Page 88

1  together some authority over the lunch break, let's do
2  2:15.
3       (Recess taken.)
4       SPECIAL MASTER POPPITI: Counsel, we are
5  back on record. I did receive an email from Ms. Mason,
6  and that contained, as she suggested, a summary of the
7  cases and attached the cases. And I received -- I don't
8  know whether this came by fax, there is no email cover to
9  it, excerpts from the OEM agreements produced by
10 Viewsonic.
11      MR. KIRK: I did send an email to Your
12 Honor. That was a Word document that was attached to my
13 email with nothing else. We had understood the Court
14 wanted case citations and not argument, so we didn't
15 furnish descriptions or arguments.
16      SPECIAL MASTER POPPITI: And that was a
17 two-page document behind the email; is that correct,
18 Mr. Kirk?
19      MR. KIRK: Yes, your Honor.
20      SPECIAL MASTER POPPITI: Thank you.
21 Let's go back to where we left off with respect to the
22 submittals, and I don't know whether we finished with
23 technical and mounting related discovery.
24      MR. AMBROZY: We did, your Honor.

Page 89

1       SPECIAL MASTER POPPITI: The next would
2  be L.G. Phillips' Motion to Compel Viewsonic Re: Advice
3  of Counsel, Duty of Care. That is by submittal date of
4  9/27, and a response of 10/18.
5       MR. CHRISTENSON: Thank you, Your Honor.
6  I will be directing this application.
7       SPECIAL MASTER POPPITI: Thank you.
8       MR. CHRISTENSON: Your Honor, I think
9  this application presents a fairly focused and narrow
10 issue for you. The background on this application is
11 that one of the allegations of the plaintiff in this case
12 is that the defendants have failed to exercise due care
13 since the time that they learned of the patent in suit,
14 so we are alleging willful infringement which would allow
15 the Court, in its discretion, to award enhanced damages
16 and attorney's fees if proven.
17      As we say in our papers, when a party
18 learns of a patent, a party has a duty, an affirmative
19 duty, to avoid infringing that patent, and, so that is
20 certainly an issue in the case. We are seeking discovery
21 in that issue.
22      There has not been any bifurcation in
23 the case. Viewsonic confirms, in its papers, that it's
24 not seeking to bifurcate discovery. So, effectively,

Page 90

1  Viewsonic is seeking to stay discovery on the issue of
2  willfulness.
3        However, as you may recall, Your Honor,
4  we have had prior motion practice in which Viewsonic has
5  compelled LPL to provide a supplemental response to an
6  interrogatory propounded by Viewsonic on the issue of
7  willfulness, specifically, LPL was required to supplement
8  its response to interrogatory No. 8 regarding the factual
9  basis for LPL's allegations.
10        So, obviously, we contend that there
11  shouldn't be a one way stay of discovery on willfulness.
12  It's -- it's part of the case. It's the subject of
13  affirmative discovery sought and compelled by Viewsonic,
14  and, likewise, we are entitled to obtain discovery that's
15  directly relevant to the defense.
16        We are seeking to know what, if
17  anything, Viewsonic has done to exercise due care and we
18  are seeking discovery regarding any advice of counsel or
19  legal opinions that Viewsonic is relying on and that it
20  contends shows that it acted reasonably in -- after
21  learning of the patents.
22        So, the question is not what might
23  happen in the future. Viewsonic talks about postponing
24  indefinitely the decision whether to invoke advice of

Page 91

1  counsel until after claim construction is concluded, but
2  we are not talking about what might happen in the future
3  with respect to the Court. We are talking about right
4  now and in the past: Has Viewsonic been relying on any
5  advice of counsel? And, if so, we are entitled to
6  discovery on that advice. Similarly, have they taken any
7  steps, since they learned of the patents, to exercise due
8  care? If so, we are entitled to that discovery.
9        SPECIAL MASTER POPPITI: Who is arguing,
10  please?
11        MR. MILLER: Scott Miller.
12        SPECIAL MASTER POPPITI: Mr. Miller.
13        MR. MILLER: Well, let's put the
14  background into the proper perspective so Your Honor
15  knows where we stand.
16        We have advised LPL that we were not
17  aware of these patents prior to the date on which they
18  served the complaint on Viewsonic, so there is not a
19  wealth of information that lead up to the initiation of
20  Viewsonic's response to the litigation that would deal
21  with any kind of opportunity to get advice of counsel or
22  opinions to rely on.
23        We have also advised LPL of various
24  actions that Viewsonic has taken that are not within the

Page 92

1  scope of the attorney/client privilege, that they have
2  communicated with their suppliers, that they have
3  retained counsel to evaluate the matter and defend the
4  litigation, that they have consulted with technical
5  experts and presented his declaration, they successfully
6  opposed the preliminary injunction motion that was
7  brought by LPL, they were able to ascertain and develop
8  evidence in the proceeding in the United Kingdom that
9  dealt with the sister patent to the patents in suit here
10  that dealt with the exact same technology, and, in large
11  part, some of the same products that are accused of
12  infringement here, that that evidence and admissions from
13  the experts employed by LPL are applicable to matters
14  that are being relied upon by Viewsonic as well as the
15  Court's decision there, which was recently affirmed of
16  mild infringement and invalidity of the patent.
17        The real issue here is what is the scope
18  of advice they received from counsel post initiation of
19  the litigation, which is all clearly privileged material.
20  And they are trying to obtain that information from
21  Viewsonic at a time when the Court has indicated that
22  discovery that relates to claim construction issues is
23  properly deferred until after the Markman ruling.
24        SPECIAL MASTER POPPITI: How does it

Page 93

1  have to do with claim construction?
2        MR. MILLER: Well, the advice of counsel
3  would clearly construe the claims and apply them to the
4  products. And I can't imagine something more directly
5  applicable to the issues involving our analysis and
6  strategy and thinking regarding the claim construction
7  process than -- and what is -- that process is involved
8  than getting into the advice and analysis of counsel with
9  regard to the patents in suit and how they might apply
10  to, at that time, only product that had been identified
11  as infringement.
12        It just seems to us, you know, matter of
13  factly unfair to compel Viewsonic to provide information
14  from, you know, to make a decision about whether it's
15  going to waive the privilege of activities and advice
16  that may have been given to them from litigation counsel
17  relating to the patents in suit and the scope of the
18  claims and how they might be applied to products in the
19  -- prior to the Court telling us what the claims mean.
20  It clearly will give them an undue advantage during the
21  claim construction process, and will, you know, is not
22  fair to Viewsonic to put them at the situation of
23  identifying that information and Viewsonic having to
24  waive that information prior to the date on at least

Page 94

1  which get some assertion as to what products are at
2  issue.
3       SPECIAL MASTER POPPITI: I guess what I
4  don't have the benefit of is a log that describes the
5  nature of the communication, and, if important beyond the
6  log, the actual documents, themselves, which you say have
7  been generated by litigation counsel after suit was
8  filed. You know, that certainly gets my attention.
9       MR. MILLER: The parties has never
10 exchanged privilege log. I think the one thing they were
11 in agreement on was, I believe, that they weren't going
12 to log litigation oriented communications post filing of
13 the complaint, and, so, you know, we can -- it's never
14 been requested.
15      I don't think that, you know, I don't --
16 if it's necessary to prepare that kind of a log, you
17 know, we could do so, but we have advised them that
18 Viewsonic does not have an independent opinion of counsel
19 directed to the -- the issues of infringement or validity
20 other than what advice they received from counsel of
21 record. And that's in our interrogatory response.
22      SPECIAL MASTER POPPITI: Right.
23      MR. MILLER: And, so, the real question
24 here is: You know, is it fair to put Viewsonic in the

Page 95

1  position of having to decide to waive advice it may have
2  received from its litigation counsel on these issues
3  after the litigation was filed?
4       And it doesn't seem that, you know,
5  there was ever a need to prepare that log of post filing
6  communications between the, you know, post filing of the
7  complaint communications based on the discussions the
8  parties have had, and it's certainly been my experience
9  that -- you know, in fact, I can't remember a case where
10 we ever were compiling a log of communications post
11 filing.
12      SPECIAL MASTER POPPITI: Post filing,
13 and I understand that.
14      What's the interrogatory answer again,
15 please?
16      MR. CHRISTENSON: Your Honor, the
17 interrogatory answer that LPL was compelled to
18 supplement, with respect to this issue of willfulness
19 was, I believe, interrogatory No. 8. The interrogatories
20 that are implicated by LPL's motion here are
21 interrogatories 5, 6, and 7.
22      SPECIAL MASTER POPPITI: Right.
23      MR. CHRISTENSON: And then we have a
24 handful of document requests implicated as well.

Page 96

1       SPECIAL MASTER POPPITI: Just give me a
2  moment. I want to pull those. I am going to put you on
3  hold.
4       MR. CHRISTENSON: Thank you.
5       (Off the record.)
6       SPECIAL MASTER POPPITI: Counsel, I am
7  back on. Let me ask this question: In looking at the
8  Viewsonic's answer, and I don't know whether the answer
9  has been amended, the affirmative defense has not been
10 raised in the answer; that's correct, is it not?
11      MR. MILLER: That's correct.
12      SPECIAL MASTER POPPITI: Has it been
13 raised at all?
14      MR. MILLER: Not at this point.
15      SPECIAL MASTER POPPITI: Well, when you
16 say "not at this point," at this juncture, why isn't it
17 waived?
18      MR. MILLER: I think we would -- I
19 think, at this point, we would need to go back to Judge
20 Farnan and ask for permission to do so. We have
21 responded to the interrogatories, discussing how we have
22 acted reasonably in the face of the charge of
23 infringement that came to our notice first with the
24 complaint, and because we do not have a separate opinion

Page 97

1  of counsel at the time the answer was filed, we didn't
2  allege the defense. If Judge Farnan would allow that to
3  come into the case at that point in time --
4       SPECIAL MASTER POPPITI: Therein lies my
5  concern. I have the obligation to manage discovery,
6  which I haven't done up to this point, which I will do in
7  the future. I have got the obligation to deal with
8  discovery disputes, but I certainly don't have the
9  authority to, outside the context of discovery disputes
10 and outside the context of Rule 37 sanctions, I don't
11 have the authority to impact on issues that are
12 ultimately tried.
13      And it seems to me that if there is a
14 question, and I think there is a question of waiver, and
15 the flip side of that question is whether or not
16 Viewsonic can convince the Court to permit the
17 affirmative defense to be pled at this point or any later
18 point, I think that's got to be brought to the attention
19 of Judge Farnan before I begin to wade into the water and
20 permit access to this information.
21      I just don't think it is, I will use the
22 word "ripe," I may back off of that, but I don't think
23 it's ripe for my consideration given the state of the
24 pleadings.

Page 98

1  Mr. Christenson.
2  MR. CHRISTENSON: Your Honor, it's
3  correct to say that they have not alleged it, I don't
4  believe, as an affirmative defense, and the time to --
5  things have expired under the scheduling order.
6  SPECIAL MASTER POPPITI: I understand
7  that.
8  MR. CHRISTENSON: And I guess, you know,
9  from our standpoint, we had expected to obtain prompt
10 discovery to the extent this was an issue in the case,
11 but to the extent it's not an issue in the case, then I
12 think the appropriate way to approach it would be to, if
13 and when there is any attempt to bring it into the case
14 in the future, given where we are and given our upcoming
15 deposition schedule, etcetera, we would, obviously,
16 oppose it based, in part, on the pressures resulting from
17 where we are in the case.
18 SPECIAL MASTER POPPITI: Well, there is
19 no question that I have the authority to draw the
20 parameter around what is appropriate discovery going
21 forward. And given the state of this record, without
22 making a determination on this issue, it seems to me it
23 would be an uphill climb for Viewsonic to -- for there to
24 be any discovery on this issue if it's not properly pled.

Page 99

1  I am looking at the scheduling order,
2  Mr. Christenson. Let me -- and I know it's been
3  modified. Let me just look here.
4  What paragraph are you referring to with
5  respect to amending the pleadings?
6  MR. CHRISTENSON: I apologize, Your
7  Honor. I do not have that at my fingertips, but it was
8  in the -- the date is in the original --
9  SPECIAL MASTER POPPITI: It's in the
10 original?
11 MR. CHRISTENSON: Yes, sir.
12 MR. MILLER: It's in paragraph seven,
13 Your Honor.
14 SPECIAL MASTER POPPITI: I am getting
15 there. I see it. Thank you, Mr. Miller.
16 Yeah, it says, "All motions to amend the
17 pleadings shall be filed on or before January 17th,
18 2006." We are coming up to an anniversary.
19 I mean, I -- this matter is not ripe for
20 consideration because the -- the pleadings do not join
21 the issue, and if it needs to be raised with Judge
22 Farnan, my sense is you better do it -- you better do it
23 quickly. But my ruling will be that it is not ripe for
24 consideration given the parameters of the issues that

Page 100

1  have been pled.
2  MR. MILLER: Thank you, Your Honor.
3  SPECIAL MASTER POPPITI: Thank you, sir.
4  Let me just get some papers out of my way. Thank you.
5  Next. I promised the court reporter we'd be out of here
6  by midnight and she was very skeptical until we just
7  dealt with that last issue.
8  MR. CHRISTENSON: I am glad we are
9  making progress.
10 MR. MILLER: That's a joke, too, Your
11 Honor.
12 SPECIAL MASTER POPPITI: That's a joke
13 as well, yes. Thank you.
14 MR. MILLER: Your Honor, I think --
15 SPECIAL MASTER POPPITI: Yes,
16 Mr. Miller.
17 MR. MILLER: The next chronological
18 motions would be those filed by Viewsonic, I believe.
19 SPECIAL MASTER POPPITI: That is
20 correct. The next motion would be Viewsonic's Motion to
21 Compel LG, Re: Components, etcetera. It's dated 10/3,
22 2006, and the response was 10/25, 2006.
23 MR. MILLER: Let me -- we have been
24 discussing a lot of the requests kind of in categories

Page 101

1  and I will do the same here to see if we can at least
2  focus the issues.
3  These first set of requests deal with
4  mounting methods and structures that are -- that
5  Viewsonic seeks to discover vis-a-vis LPL.
6  SPECIAL MASTER POPPITI: Mr. Miller,
7  before you -- before you launch here, let me just remind
8  myself of something that I made a note on. Just one
9  moment, please. Just give me one -- give me the courtesy
10 of putting you on hold again. I have got to find the
11 document. I made the note but I can't find the document.
12 Hold one sec.
13 (Off the record.)
14 SPECIAL MASTER POPPITI: Counsel, I am
15 not having the kind of success that I should have, but I
16 do recall it was either correspondence or it was in the
17 submittal that Miss Mason filed. My note reads, to
18 myself, at page 10, I had some impression that LPL was --
19 well, that would make sense -- was willing to produce the
20 documents. So wait a minute. I am looking -- I am
21 looking at the wrong document. Hold one sec. Actually,
22 this is Mr. Kirk's, but it was in response to
23 Ms. Mason's.
24 If, counsel, you will look at Plaintiff