# EXHIBIT 6

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Atlanta
Denver
Los Angeles
Philadelphia

San Diego
San Francisco
Washington, DC
Brussels

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

REL S. AMBROZY
(202) 496-7693

EMAIL ADDRESS
rambrozy@mckennalong.com

June 30, 2006

BY MAIL AND FACSIMILE

Tracy R. Roman, Esq.
Bingham McCutchen LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106

    Re:    L.G.Philips LCD v. Tatung Co., et al.

Dear Tracy:

    I am writing regarding ViewSonic Corporation's ("ViewSonic") responses to LPL's Second Set of Interrogatories and Second Set of Requests for Production of Documents, which are deficient in several respects as outlined below. Because we attempted to address the most pressing deficiencies now, we reserve the right to address other deficiencies in the future.

    We would like to schedule a meet and confer to discuss these issues. Please advise us as to your availability.

### ViewSonic's Responses to LPL's Second Set of Interrogatories

### ViewSonic's General Objections

    ViewSonic incorporated numerous general objections into its responses. To the extent that ViewSonic is withholding information pursuant to these general objections, it is obliged to state what, if anything, is being withheld from production, and on what grounds. ViewSonic can identify the documents withheld by category, if necessary. For example, if it is ViewSonic's position that LPL's requests oblige ViewSonic to search for and produce documents that are not in ViewSonic's possession and ViewSonic is refusing to search for and/or produce such documents, then ViewSonic should so state. LPL is not asking ViewSonic to identify each and every document withheld. If ViewSonic identifies the categories of documents withheld, however, LPL can determine which documents it believes should be produced and whether to raise those issues with the Court. ViewSonic cannot hide behind its general objections to obscure the relevant issues.

Tracy R. Roman, Esq.
June 30, 2006
Page 2

In addition, with regard to general objections 1 and 2, please advise whether ViewSonic is withholding any information and/or documents pursuant to those general objections.

Finally, in general objection number 3, ViewSonic objects to each interrogatory to the extent that the interrogatories seek information protected by "attorney-client privilege, work product doctrine, or other applicable privileges." If ViewSonic is withholding documents pursuant to this general objection, it is obliged to inform LPL what, if anything, is being withheld, and on what grounds, and to produce a privilege log to LPL.

### ViewSonic's Responses To LPL's Interrogatories

LPL's Interrogatory No. 1 asks ViewSonic to identify each person who prepared or assisted in the preparation of your responses to these interrogatories. In response, ViewSonic identified the counsel involved, but has failed to identify its corporate representative(s) who provided responsive information -- in other words, the person(s) at ViewSonic (or its agents) who assisted in the preparation of the responses. Thus, ViewSonic's response is deficient and requires supplementation. Please provide the name of "each person" at ViewSonic who aided Mr. Miller and Ms. Roman in responding to LPL's interrogatories.

LPL's Interrogatory No. 2 asks ViewSonic to identify each type of visual display product manufactured, shipped, imported, sold and/or offered for sale by ViewSonic, and it asks that ViewSonic specify which products have been marketed or sold under a trademark or brand name that belongs to ViewSonic Corporation or its affiliated entities. In response, ViewSonic attempted to limit the request to "ViewSonic LCD computer monitors [that] have been shipped, imported, sold, or offered for sale in the United States." This limitation is completely without merit. LPL is entitled to all information that is reasonably calculated to lead to the discovery of admissible evidence -- the requested information clearly falls under this rule. Specifically, the requested information relates to sales outside the United States, and is therefore relevant to the issues of extra-territorial inducement and extra-territorial contributory infringement. We also note that the matrix in ViewSonic's response lists products by brand name, but fails to state whether that brand name belongs to ViewSonic Corporation. Please supplement ViewSonic's response to include the requested information, or state whether ViewSonic will stand on its response.

LPL's Interrogatory No. 5 asks ViewSonic to describe in detail all efforts made to avoid infringing the Patents-in-Suit since the time ViewSonic first learned of either of the Patents-in-Suit. Although ViewSonic's response states that it does not infringe the Patents-in-Suit, that response does not address the call of the Interrogatory. The Interrogatory asks about efforts made to avoid infringing, such as designing around the Patents-in-Suit, and does not focus on whether ViewSonic infringes. Please supplement ViewSonic's response to state whether ViewSonic has taken any actions to avoid infringing the Patents-in-Suit since it learned of those Patents, and detail what those actions are, or state whether ViewSonic will stand on its response.

Tracy R. Roman, Esq.
June 30, 2006
Page 3

LPL's Interrogatory No. 6 asks ViewSonic to state whether it intends "to rely on any legal opinion or advice as part of [its] defense concerning the scope, validity, enforceability or infringement of any of the Patents-in-Suit . . . ." ViewSonic's response, drafted on January 13, 2006, states that it "has not yet finally determined which defenses it will pursue, including without limitation, whether it will rely on advice of counsel as a defense to Plaintiff's claims." More than five months have passed since ViewSonic served that response. Accordingly, please supplement ViewSonic's response to Interrogatory No. 6 immediately to state whether ViewSonic will rely on such opinions or advice. If ViewSonic does rely on any legal opinion or advice as part of its defense, we expect that the corresponding opinions or advice will be produced immediately (*e.g.*, see Request No. 24).

LPL's Interrogatory No. 7 asks ViewSonic to identify each investigation concerning the Patents-in-Suit undertaken by you or on your behalf (including, for example, prior art searches, tests, or analysis related to patent scope, validity, and/or infringement) and describe in detail each such investigation, including the date(s), the person(s) involved, the scope of the investigation, the results and conclusions of the investigation . . . ." Although ViewSonic's response points out its prior art production as of January 13[th], and the Declarations of Mark Brinkerhoff, it is unclear how ViewSonic's response actually responds to this Interrogatory and it is unclear whether each investigation has been identified. Specifically, it does not state whether or not other investigations exist. Please supplement ViewSonic's response to Interrogatory No. 7 with at least a statement that other investigations were conducted, the dates of those investigations, and the conclusions of those investigations, or state that no additional investigations were conducted.

Interrogatory No. 8 asks ViewSonic to set forth in detail the entire basis for its contention that any claim of the Patents-in-Suit is invalid for any reason, including under 35 U.S.C. §§ 101, 102, 103 and 112. Although ViewSonic's response to No. 8 lists various witnesses and documents, it fails to respond to the call of the Interrogatory. Moreover, ViewSonic attempts to dodge providing "a complete response" by stating it will do so in conjunction with its expert reports in accordance with the schedule set by the Court. Such a representation is ineffectual in light of the actual Order which requires "Exchange and completion of contention interrogatories . . . commenced so as to be completed by **June 30, 2006**." Moreover, the Order requires that depositions "shall be completed by **November 17, 2006**." Because expert reports are to be served within thirty days of the Court's Markman ruling, such expert reports will not be served until after February 1, 2007 -- this date is well after the close of fact discovery. This is precisely why the Court requires that contention interrogatories be completed by June 30th. Please supplement ViewSonic's response to Interrogatory No. 8, or state that ViewSonic intends to stand on its response.

Interrogatory No. 9 asks that for each claim of the Patents-in-Suit that ViewSonic contends would have been obvious in response to Interrogatory No. 8, ViewSonic must identify each portion of each prior art item that provides an incentive, suggestion and/or motivation to combine or modify the prior art to achieve the claimed invention. In response, ViewSonic simply states the following: "See response to Interrogatory Number 8 above." Please

Tracy R. Roman, Esq.
June 30, 2006
Page 4

supplement ViewSonic's response to Interrogatory No. 9 to fully respond to Interrogatory No. 9, especially in light of the needed supplementation required for No. 8, or state that ViewSonic intends to stand on its response.

Interrogatory No. 10 asks ViewSonic to identify each prior art reference or item that ViewSonic contends is relevant, including prior use and product(s). ViewSonic objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. Given that it has been over five months since ViewSonic served its responses, and given the "expert discovery" objection is meritless because expert discovery will not occur until well after the close of fact discovery, please supplement ViewSonic's response to Interrogatory No. 10, or state that ViewSonic intends to stand on its response.

Interrogatory No. 11 asks for each prior art reference or item that ViewSonic relies upon, and to describe in detail how the alleged prior art reference or item qualifies as prior art under every section of Title 35 on which you rely. ViewSonic objects to this Interrogatory on the grounds that it prematurely seeks expert discovery, merely provides dates for the references listed in its response to Interrogatory No. 10, and fails to address all the products listed in that same response. For example, it failed to address the Tatung L4KAS (directing LPL to Tatung's Answer is not proper) and failed to address the Hewlett-Packard S1010 and/or S1010a. Please state whether ViewSonic will, for each reference and item listed in its response, supplement its response to provide the information requested by Interrogatory No. 11, or state that ViewSonic intends to stand on its response.

Interrogatory No. 12 asks ViewSonic whether it contends that it previously conceived, reduced to practice, or otherwise invented the subject matter recited in the Patents-in-Suit, and if so to set forth in detail the entire basis for that contention. In its response, ViewSonic feigns ignorance as to the call of the Interrogatory, even though ViewSonic served a nearly identical interrogatory on LPL in 2004. Please state whether ViewSonic will supplement its response to provide the information requested by Interrogatory No. 12, or state that ViewSonic intends to stand on its response.

Interrogatory No. 13 asks ViewSonic to set forth in detail the entire basis for its First Defense of Failure to State a Claim. In its response, ViewSonic claims the "information necessary to respond to this Interrogatory is in Plaintiff's possession . . . ." This is an improper response -- when ViewSonic filed its Answer, either it had grounds to allege the Complaint failed to state a claim or it did not. Please state whether ViewSonic will supplement its response to provide the information requested by Interrogatory No. 13, or state that ViewSonic intends to stand on its response.

Interrogatory No. 14 asks ViewSonic to set forth in detail the entire basis for its Second Defense of Non-Infringement. In its response, ViewSonic merely lists various documents that may contain information relevant to LPL's Interrogatory No. 14. Simply pointing to documents and telling the requesting party to find the answer itself is not responsive. Please state whether

Tracy R. Roman, Esq.
June 30, 2006
Page 5

ViewSonic will supplement its response to provide the information requested by Interrogatory No. 14, or state that ViewSonic intends to stand on its response.

Interrogatory No. 15 asks ViewSonic to set forth in detail the entire basis for its Fourth Defense of Laches and Estoppel. In its response, ViewSonic claims the "information necessary to respond to this Interrogatory is in Plaintiff's possession . . . ." Although ViewSonic's response points out that LPL was aware of certain ViewSonic monitors in 2003, the response fails to set forth how that knowledge impacts a laches and estoppel defense. ViewSonic's response is improper because when ViewSonic filed its Answer, either it had grounds to assert a defense of laches and estoppel or it did not. Please state whether ViewSonic will supplement its response to provide the information requested by Interrogatory No. 15, or state that ViewSonic intends to stand on its response. Moreover, if ViewSonic is relying on the products referenced in its response, it needs to supplement its response to state how such knowledge impacts the laches and estoppel analysis.

Interrogatory No. 16 asks ViewSonic to set forth in detail the entire basis for its Fifth Defense of Unclean Hands. In its response, ViewSonic claims the "information necessary to respond to this Interrogatory is in Plaintiff's possession . . . ." ViewSonic's response is improper for the very reasons that the Federal Circuit has labeled such assertions a plague on patent law. Again, when ViewSonic filed its Answer, either it had grounds to allege unclean hands or it did not. Please state whether ViewSonic will supplement its response to provide the information requested by Interrogatory No. 16, or state that ViewSonic intends to stand on its response.

Interrogatory No. 17 asks ViewSonic to set forth in detail the entire basis for its Sixth Defense of Marking. In its response, ViewSonic asserted its belief that "Plaintiff has sold products which practice the Patents-in-Suit but which have not been marked in accordance with 35 U.S.C. § 287." ViewSonic's response further states that "[a]dditional information necessary to respond to this Interrogatory is in Plaintiff's possession . . . ." As LPL recently informed ViewSonic, it does not sell products which practice the Patents-in-Suit. Accordingly, please state whether ViewSonic will withdraw its Sixth Defense and supplement its response to Interrogatory No. 17, or state that ViewSonic intends to stand on its response.

Interrogatory No. 18 asks ViewSonic to set forth in detail the entire basis for its Seventh Defense of Prosecution History Estoppel. In its response, ViewSonic simply directed LPL "to the prosecution histories already produced in this case." Again, simply pointing to documents and telling the requesting party to find the answer itself is not responsive because it fails to detail the basis for ViewSonic's belief that the claims of the Patents-in-Suit have a limited scope due to statements made during prosecution. ViewSonic's response further states that "[a]dditional information necessary to respond to this Interrogatory is in Plaintiff's possession . . . ." Because the prosecution history for the Patents-in-Suit is public knowledge, there is nothing ViewSonic can obtain from LPL that will help it to answer Interrogatory No. 18. Please state whether ViewSonic will supplement its response to provide the information requested by Interrogatory No. 18, or state that ViewSonic intends to stand on its response.

Tracy R. Roman, Esq.
June 30, 2006
Page 6

### ViewSonic's Responses to LPL's Requests for Production

### ViewSonic's General Objections

As discussed above in regard to ViewSonic's General Objections to LPL's Interrogatories, to the extent that ViewSonic is withholding documents and things pursuant to the same or similar general objections, ViewSonic is obliged to inform LPL what, if anything, is being withheld, and on what grounds.

### ViewSonic's Responses To LPL's Requests

In response to Request Nos. 1, 12-13, 19-20, 29-31, 35, 46-47, 61, and 66, ViewSonic qualified its production by stating "[t]o the extent ViewSonic understands this Request, ViewSonic will produce . . . ." In order to ensure that LPL and ViewSonic both understand the Request to mean the same thing, ViewSonic must state what it understands Request Nos. 1, 12-13, 19-20, 29-31, 35, 46-47, 61, and 66 to be seeking. This will allow LPL to determine if supplementation is necessary.

In response to Request Nos. 2-18, 22, 24-28, 30-35, 38-41, 43, 46-49, 51, 56-70, 72-74, 76-77, and 79-88, ViewSonic objects on the grounds that the Request "seeks information which is not relevant to the claims or defenses of this lawsuit, and which is not reasonably calculated to lead to the discovery of admissible evidence . . . ." For each such Request, ViewSonic must supplement its response to: i) state whether any information was withheld on the basis of that objection; ii) explain how the requested information is not relevant or would not lead to the discovery of admissible evidence; and/or iii) produce all information for those responses that ViewSonic will withdraw the relevance objection.

In response to Request Nos. 18, 28-31, 46-48, 63 and 65, ViewSonic qualified its production by limiting it to "the stated advantages in the Patents-in-Suit . . . ." This qualification is improper at least because it is self-serving -- if ViewSonic takes the position that there are no advantages in regard to the Patents-in-Suit, then it need not produce anything. Moreover, most of these Requests are narrowed to seeking only those products identified by ViewSonic in response to LPL's Interrogatory No. 2. ViewSonic must supplement its response to these Requests so as to remove that qualification, and produce the requested information.

In response to Request Nos. 2-12, 14-18, 20, 26, 28-33, 46-48, 51, 56-57, 59-60, 62-63, 65-69, and 84, ViewSonic refused to produce any of the requested information on the grounds that the ViewSonic VX900 was the only product mentioned by LPL in its Complaint. ViewSonic has apparently taken the position that it does not have to produce discovery relating to all of its VA LCD modules even though all are at issue in this case. This limitation is completely without merit. LPL is entitled to all information that is reasonably calculated to lead to the discovery of admissible evidence. Moreover, the Complaint states: i) that the technology at issue involves flat panel display devices, see ¶ 2; and ii) that the infringing products include at least the VX900. The ViewSonic VX900 was never singled out as the only accused product.

Tracy R. Roman, Esq.
June 30, 2006
Page 7

Please state whether ViewSonic will withdraw this objection and supplement its response to produce the requested information, or state that ViewSonic will stand on that objection.

In response to Request Nos. 1-7, 11-12, 14-15, 17, 20-21, 23, 26, 30-34, 36-37, 45-49, 51, 53-57, 59-60, 63, 65, 67-69, 71-75, 89-99, ViewSonic states that it "will produce those non-privileged, responsive documents not previously produced, if any, in its possession . . . ." (emphasis added). Given this response, it is impossible to tell whether ViewSonic actually produced any responsive information or not, and LPL has been unable to identify documents responsive to those Requests. Accordingly, please supplement ViewSonic's responses to the above requests to state that: i) nothing responsive exists; ii) responsive documents have been produced; and/or iii) responsive production will be forthcoming.

In response to Request Nos. 25, 27, 42, 44, 58, 64, 70, 76, and 78-88, ViewSonic relied on its objections in refusing to produce anything. Such a stance is improper for these particular Requests. Specifically, the indemnification agreements sought per Request No. 25 are not privileged, and pertain to information reasonably calculated to lead to the discovery of admissible evidence because if LPL needs to collect its damages from a third party (i.e., if a third party is indemnifying ViewSonic for its infringement), LPL is entitled to know that information now. Similarly, Request Nos. 27, 42, 44, 58, 64, 70 and 76 all seek information pertaining to damages. As such, all the requested information is relevant and reasonably calculated to lead to the discovery of admissible evidence because such information will allow LPL to properly determine its damages calculations. Request Nos. 78-88 all pertain to highly relevant topics. For example, Request Nos. 78 and 87-88 pertain to ViewSonic's Initial Disclosures, and Request Nos. 79-86 pertain to individuals either identified in ViewSonic's production or on its website as officers and/or executives. Thus, Request Nos. 78-88 are proper because they seek information that is not only relevant but that is reasonably calculated to lead to the discovery of admissible evidence. Accordingly, ViewSonic must supplement its responses to Request Nos. 25, 27, 42, 44, 58, 64, 70, 76, and 78-88 so as to state that: i) nothing responsive exists; ii) responsive documents have been produced; and/or iii) responsive production will be forthcoming.

Regarding Request No. 1, LPL sought "[a]ll documents that you relied upon, identified, and/or agreed to produce in answering Plaintiff's Second Set of Interrogatories to you." ViewSonic raised numerous objections and limitations in response to this request, including the statement that it would produce only those documents "which it agreed to produce or identified in any interrogatory response." This limitation is improper because Request No. 1 specifically asks for all documents ViewSonic "relied upon . . . in answering Plaintiff's Second Set of Interrogatories" to ViewSonic. Accordingly, please state whether any documents were relied upon by ViewSonic in responding to the Interrogatories, but not produced. Also, because ViewSonic will need to supplement its responses to various Interrogatories, ViewSonic should also supplement its response to Request For Production No. 1.

As to Request No. 2, LPL sought documents sufficient to determine the structural components and assembly thereof (including, for example, the screw and hole locations used in mounting) concerning ViewSonic's visual display products. Inexplicably, ViewSonic asserts a

Tracy R. Roman, Esq.
June 30, 2006
Page 8

"possession, custody, or control" objection to providing responsive documents to produce. LPL is entitled to whatever documents exist. It is noteworthy that ViewSonic has actually asserted that certain products, which fall within the range of requested documents and things, do not infringe and/or constitute prior art. Indeed, ViewSonic has submitted diagrams to the Court as exhibits purportedly relating to the structural assembly of ViewSonic products. ViewSonic thus has access to the requested documents and things, and cannot self-servingly limit discovery. ViewSonic must produce the requested documents. Please state whether ViewSonic will supplement its response, or stand on its response.

As to Request Nos. 9-12, 17, 34, 51 and 67 ViewSonic either limited its response to documents pertaining only to shipments made to the United States, or objected to the Request because it was not limited to manufacturing in the United States. In regard to the former, this is an improper qualification as: i) the Request was not so limited (*e.g.*, see Request No. 8); and ii) the requested information relates to sales outside the United States, and is therefore relevant to the issues of extra-territorial inducement and extra-territorial contributory infringement. In regard to the latter, it is an improper objection because the requested information is important for inducement and contributory infringement analyses. ViewSonic must either: i) withdraw these qualifications and objections and supplement its response to produce the requested information; or ii) state that no responsive information exists.

As to Request No. 15, ViewSonic states that it will produce documents sufficient to identify the quantity of monitors that were imported, sold, etc. This is not responsive because the Request seeks "documents sufficient to identify each person that imported, received," etc. Please state whether ViewSonic will supplement its response to this Request to include documents sufficient to identify "each person."

As to Document Request 39, ViewSonic objects to producing information that is confidential. This is an improper objection in light of the Protective Order entered in this case. ViewSonic therefore can and should produce its responsive information subject to the Protective Order. Moreover, if ViewSonic received from a third party responsive information that it is withholding because such information is allegedly confidential, those documents must be produced pursuant to the Protective Order in this case. Please state whether ViewSonic will supplement its response to this Request to include documents previously withheld on grounds of confidentiality.

As to Request Nos. 53-55 and 71, ViewSonic improperly limits its production to coincide with the its production of its expert reports. For the reasons explained above, this is improper because the requested information will be produced too late in the discovery process. Please state whether ViewSonic will supplement the corresponding responses to withdraw this limitation and produce the requested information, or stand on its response.

As to Request No. 69, ViewSonic limited its response to "each U.S. subsidiary or affiliate of ViewSonic . . . ." This limitation is improper because: i) the Request was not so limited (*e.g.*, see Request No. 68); and ii) the requested information relates to sales outside the United States,

Tracy R. Roman, Esq.
June 30, 2006
Page 9

and is therefore relevant to the issues of extra-territorial inducement and extra-territorial contributory infringement. ViewSonic must either: i) withdraw this limitation and supplement its response to produce the requested information; or ii) state that no responsive information exists.

We look forward to discussing these issues with ViewSonic during a meet and confer conference call.

Sincerely,

Rel Ambrozy /nab

Rel S. Ambrozy

DC:50389597.1