AO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

LG.PHILIPS LCD CO., LTD.

**SUBPOENA IN A CIVIL CASE**

V.

TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION

Case Number:[1] 04-343
USDC, District of Delaware

TO: ADVANTECH CORPORATION
380 Fairview Way
Milpitas, CA 95035

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

✓ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Greenberg Traurig, LLP, 1900 University Avenue, 5th Floor, East Palo Alto, California 94303 | 3/13/2007 10:00 am |

✓ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment B.

| PLACE | DATE AND TIME |
|---|---|
| IKON Enterprise Services, 152 North 3rd Street, Suite 100, San Jose, California 95112 | 2/27/2007 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for Defendant ViewSonic Corporation | 2/13/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Scott R. Miller, Esq., Connolly Bove Lodge & Hutz LLP, 355 South Grand Avenue, Suite 3150, Los Angeles, CA 90071; telephone (213) 787-2510

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
             DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS FOR

## ATTACHMENTS A & B

1. The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

2. The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books;

laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

3. "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

4. "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

5. "Flat Panel Display Product" shall mean any product that uses, contains, or incorporates one or more LCD modules, plasma display panels or field

emission devices, and includes by way of example flat screen computer monitors, lap top screens or computers, and flat screen televisions.

6.  "Mounting Technology" shall mean the structure, devices and/or methods used to affix, secure, mount, or attach an LCD module or plasma display panel or field emission device within, on or to a Flat Panel Display Product.

7.  "LCD Product" shall mean the following products: Advantech PPC 140T LCD monitor.

8.  The term "Alternative Products" shall mean those Flat Panel Display Products that employ a Mounting Technology that has the same design and function as the Mounting Technology in the LCD Product.

9.  The term "Products of Interest" shall mean the LCD Products and any Alternative Products. To the extent that there are multiple Flat Panel Display Products within the definition of Products of Interest, the requests seek documents for only one of those products together with an identification of all other products within the definition of Products of Interest.

10. The term "Rear Fastener Products" shall mean any Flat Panel Display Product that uses a Mounting Technology that includes a connection or means for physically connecting the rear exterior case of the product to any internal structure that is either part of or is attached to the LCD module. To the extent that there are multiple Flat Panel Display Products within the definition of Rear Fastener

Products, the requests seek documents for only one of those products together with an identification of all other products within the definition of Rear Fastener Products.

11. "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

12. The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

13. Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

## ATTACHMENT A

## DEPOSITION TOPICS

1. The Documents produced in response to the subpoena.

2. The physical structure of each Product of Interest including, without limitation:

    (a) The structure by which the LCD module is secured, mounted, attached, affixed and/or assembled within the Product of Interest;

    (b) The structure by which a stand is or can be connected, attached, secured, mounted, affixed or assembled to the Product of Interest and/or the structure by which the Product of Interest is connected, attached, secured, mounted, affixed or assembled to the Product of Interest;

    (c) The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest; and,

    (d) The structures in the Product of Interest that support one or more internal components of the Product of Interest including without limitation, the LCD module.

3. The development of the Mounting Technology used in the Products of Interest.

4.  The manner or method by which the components of each Product of Interest are assembled including, without limitation:

   (a) The manner or method by which the LCD module is secured, mounted, attached, affixed and/or assembled within the Product of Interest;

   (b) The manner or method by which a stand is connected, attached, secured, mounted, affixed or assembled to the Product of Interest;

   (c) The manner or method by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest; and

   (d) The manner or method by which any and all support structures, (by way of illustration chassis, brackets, metal trays, or frames) which holds, supports or secures one or more internal components of the Product of Interest are assembled and/or secured within the Product of Interest.

5.  The earliest date on which each Product of Interest (either alone or as part of a product incorporating a Product of Interest, e.g., workstations), was:

   (a) First shown and/or published at any trade show or disclosed to any third party in the United States;

   (b) First offered for sale in or from the United States;

    (c)    First sold, distributed, and/or transferred to any third person in or from the United States;

    (d)    First imported into or exported from the United States; and

    (e)    First made in the United States.

6.    The (i) total annual US sales of each Product of Interest prior to December 31, 1999; and (ii) total annual number of each Product of Interest imported into or exported from the US prior to December 31, 1999.

7.    The name, brand or other identifier of each Product of Interest, and any workstation or other configuration which included a Product of Interest as part of a system or larger group of components that were sold in or from, imported into, exported from, offered for sale or shown at a trade show in the United States prior to December 31, 1999.

8.    The physical structure of any Rear Fastener Product, including, without limitation:

    (a)    The structure by which the LCD module is secured and/or mounted within any enclosure of the Rear Fastener Product;

    (b)    The structure by which any stand, arm or wall mount is connected, attached, secured, mounted, affixed or assembled to the Rear Fastener Product;

(c) The structure by which the front bezel is secured, attached, affixed or assembled to one or more of the remaining components of the Rear Fastener Product; and

(d) The structures in the Rear Fastener Product that support one or more internal components of the Rear Fastener Product including without limitation, the LCD module.

9. The dates on which the Rear Fastener Product was:

(a) First shown and/or published at any trade show or disclosed to any third party in the United States;

(b) First offered for sale in or from the United States;

(c) First sold, distributed, and/or transferred to any third person;

(d) First imported into or exported from the United States;

(e) First made in the United States; and

(f) The total annual US sales of the Rear Fastener Product by year prior to December 31, 1999.

## ATTACHMENT B

## DOCUMENT REQUESTS

10. Documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to illustrate or show the physical structure of each Product of Interest including, without limitation:

   (a) The structure by which the LCD module is secured, mounted, attached, affixed and/or assembled within the Product of Interest;

   (b) The structure by which a stand is or can be connected, attached, secured, mounted, affixed or assembled to the Product of Interest and/or the structure by which the Product of Interest is connected, attached, secured, mounted, affixed or assembled to the Product of Interest;

   (c) The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest; and,

   (d) The structures in the Product of Interest that support one or more internal components of the Product of Interest including without limitation, the LCD module.

11. Documents sufficient to show the development of the Mounting Technology used in the Products of Interest.

12. Documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to describe, illustrate or show the manner or method by which the components of each Product of Interest are assembled including, without limitation:

  (a) The manner or method by which the LCD module is secured, mounted, attached, affixed and/or assembled within the Product of Interest;

  (b) The manner or method by which a stand is connected, attached, secured, mounted, affixed or assembled to the Product of Interest;

  (c) The manner or method by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest; and

  (d) The manner or method by which any and all support structures, (by way of illustration chassis, brackets, metal trays, or frames) which holds, supports or secures one or more internal components of the Product of Interest are assembled and/or secured within the Product of Interest.

13. Documents sufficient to identify and establish the earliest date on which each Product of Interest (either alone or as part of a product incorporating a Product of Interest, e.g., workstations), was:

(a)  First shown and/or published at any trade show or disclosed to any third party in the United States;

(b)  First offered for sale in or from the United States;

(c)  First sold, distributed, and/or transferred to any third person in or from the United States;

(d)  First imported into or exported from the United States; and

(e)  First made in the United States.

14.  Documents sufficient to show the (i) total annual US sales of each Product of Interest prior to December 31, 1999; and (ii) total annual number of each Product of Interest imported into or exported from the US prior to December 31, 1999.

15.  Documents sufficient to identify by name, brand or other identifier of each Product of Interest, and any workstation or other configuration which included a Product of Interest as part of a system or larger group of components that were sold in or from, imported into, exported from, offered for sale or shown at a trade show in the United States prior to December 31, 1999.

16.  Except to the extent not otherwise produced in response to previous requests, documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to illustrate or show the physical structure of any Rear Fastener Product, including, without limitation:

(a) The structure by which the LCD module is secured and/or mounted within any enclosure of the Rear Fastener Product;

(b) The structure by which any stand, arm or wall mount is connected, attached, secured, mounted, affixed or assembled to the Rear Fastener Product;

(c) The structure by which the front bezel is secured, attached, affixed or assembled to one or more of the remaining components of the Rear Fastener Product; and

(d) The structures in the Rear Fastener Product that support one or more internal components of the Rear Fastener Product including without limitation, the LCD module.

17. Documents sufficient to identify and establish the dates on which the Rear Fastener Product was:

(a) First shown and/or published at any trade show or disclosed to any third party in the United States;

(b) First offered for sale in or from the United States;

(c) First sold, distributed, and/or transferred to any third person;

(d) First imported into or exported from the United States;

(e) First made in the United States; and

(f) The total annual US sales of the Rear Fastener Product by year prior to December 31, 1999.

18. A physical specimen of: (i) each Product of Interest; and, (ii) each Rear Fastener Product.