AO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

LG.PHILIPS LCD CO., LTD.

**SUBPOENA IN A CIVIL CASE**

V.

TATUNG CO.; TATUNG COMPANY OF AMERICA,
INC.; and VIEWSONIC CORPORATION

Case Number:[1] 04-343
USDC, District of Delaware

TO: FUJITSU AMERICA, INC.
    1250 East Arques Avenue, M/S 124
    Sunnyvale, CA 94085

YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

✓   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Greenberg Traurig, LLP, 1900 University Avenue, 5th Floor, East Palo Alto, California 94303 | 3/15/2007 10:00 am |

✓   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

See Attachment B.

| PLACE | DATE AND TIME |
|---|---|
| IKON Enterprise Services, 152 North 3rd Street, Suite 100, San Jose, California 95112 | 2/27/2007 10:00 am |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant ViewSonic Corporation | February 13, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Tracy R. Roman, Esq., Raskin Peter Rubin & Simon LLP, 1801 Century Park East, Suite 2300, Los Angeles, CA 90067;
telephone (310) 277-0010

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENTS A & B

## INSTRUCTIONS

1.    If you object to any part of a request and refuse to answer that part, state your objection and answer the remaining portion of that request.  If you object to the scope or time period of a request and refuse to answer for that scope or time period, state your objection and answer the request for the scope or time period you believe is appropriate (including in your answer a specific statement as to why you believe the scope or time period is inappropriate).

2.    If any of the following requests cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information you have concerning the unanswered portions.  If your answer is qualified in any particular manner, set forth the details of such qualification.

3.    You must produce all documents responsive to these requests which are in your actual or constructive possession, custody or control, including all documents within the actual or constructive possession, custody or control of any representative, agent, employee, attorney, accountant, investigator or any person acting for you or on your behalf.

491626.1                                          1

4.    All documents are to be produced as they are kept in the usual course of business, in the files in which such documents have been maintained, and in the order within each file in which such documents have been maintained; or all documents shall be organized and labeled to correspond with the requests below. All documents are to be produced along with copies of the file folders in which they are kept.

5.    If, in responding to the requests, you claim that there is any ambiguity in either a particular request or in a definition or an instruction applicable thereto, such claim shall not be used by you as a basis for refusing to respond, but you shall set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the particular request.

6.    Electronic records and computerized information are to be produced in an intelligible format together with a description of the system from which it is derived sufficient to permit rendering the material intelligible.

## DEFINITIONS

1.    For purposes of interpreting or construing the following requests, the terms used are to be given their most expansive and inclusive interpretations unless otherwise specifically limited in the document request.  This includes, without limitation, the following:  the singular of a term includes the plural form and vice

versa, except as the context may otherwise require; the words "and" and "or" shall

be construed as either conjunctive or disjunctive in such manner as will broaden as

widely as possible the scope of any request for production; the word "any" means

"any and all;" the word "including" means "including without limitation."

    2.    The term "document" is used in its customarily broad sense pursuant

to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001

and includes, without limitation, the following items, whether handwritten, printed,

recorded, filmed or produced by any other mechanical, digital, or electronic

process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD,

videotape or any other data storage media (whether or not in machine-readable

form), whether or not asserted to be privileged or immune from discovery and

whether master or original copy:  agreements; communications (including intra-

company communications and communications between individual corporate

respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and

telecopier; notes and memoranda, summaries and minutes of conferences;

summaries and records of personal conversations or interviews; books, manuals,

publications, brochures and diaries; time logs, daily planners, and log books;

laboratory and engineering reports and notebooks; specifications or bills of

materials; charts; plans; sketches; diagrams and drawings; blueprints and other

engineering drawings; foils; slides; negatives; promotional proposals; photographs;

reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium.  A draft or non-identical copy is a separate document within the meaning of this term.

    3.    "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

    4.    "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

    5.    "Flat Panel Display Product" shall mean any product that uses, contains, or incorporates one or more Display Modules, and includes by way of example flat screen computer monitors, lap top screens or computers, and flat screen televisions.

6.    "Display Module" shall mean any LCD Module, plasma display panel or field emission device.

7.    "Mounting Technology" means "Module Mounting Technology" and/or "Component Mounting Technology." "Module Mounting Technology" means the structure and/or devices provided, and any methods identified or recommended, by you to affix, secure, mount, or attach a Display Module within, on or to a Flat Panel Display Product. "Component Mounting Technology" means the structure and/or devices provided, and any methods identified or recommended, by you to affix, secure, mount, or attach any component of a Flat Panel Display Product to a Display Module prior to December 31, 1999.

8.    The term "Products of Interest" shall mean: (i) the following product(s) Fujitsu Siemens 51 1OFA monitor, Fujitsu Monitor VL1700SS, module model number FLC48SXC8V-11A, and any Flat Panel Display Products or Display Modules that employ a Module Mounting Technology and/or Component Mounting Technology that has the same design and function as that used in the above listed products; and (ii) any Flat Panel Display Products and/or Display Modules that use, provide or include Mounting Technology on the back of any Display Module. To the extent there are groups of products within the definition of Products of Interest that employ a Module Mounting Technology having the same design and function, the requests seek documents or specimens for only one

such Flat Panel Display Product and/or Display Module from each particular

group, together with an identification of all remaining products in each particular

group. To the extent there are groups of products within the definition of Products

of Interest that employ a Component Mounting Technology having the same

design and function, the requests seek documents or specimens for only one such

Flat Panel Display Product and/or Display Module from each particular group,

together with an identification of all remaining products in each particular group.

     9.    "Relate to" shall mean anything that constitutes, contains, embodies,

reflects, identifies, states, refers to, deals with, or is in any manner whatsoever

pertinent to that subject.

     10.    The terms "concern" and "concerning" are used in their broadest

sense and embrace all matter relating to, referring to, pertaining to, describing,

evidencing, constituting, comprising, supporting, refuting or contradicting the

referenced subject.

     11.    Regardless of the tense employed, all verbs shall be read as applying

to past, present and future as is necessary to make the phrase more, rather than less

inclusive.

# ATTACHMENT A

# DEPOSITION TOPICS

1.   The Documents produced in response to the subpoena.

2.   The physical structure of each Product of Interest including, without

limitation:

    (a)   The structure by which the Display Module is secured, mounted,

    attached, affixed and/or assembled within a Flat Panel Display

    Product;

    (b)   The structure by which a Flat Panel Display Product is or can be

    connected, attached, secured, mounted, affixed or assembled to a

    stand, support or device;

    (c)   The structure by which the Product of Interest is connected, attached,

    secured, mounted, affixed or assembled to the product;

    (d)   The structure by which the front bezel is secured, attached, affixed or

    assembled to the remaining components of the Product of Interest;

    and,

    (e)   The structures in the Product of Interest that support one or more

    internal components of the Product of Interest including without

    limitation, the Display Module.

3.     The development of the Mounting Technology used in the Products of Interest.

4.     The manner or method by which the components of each Product of Interest are assembled including, without limitation:

(a)    The manner or method by which the Display Module is secured, mounted, attached, affixed and/or assembled within a Flat Panel Display Product;

(b)    The manner or method by which a Flat Panel Display Product is connected, attached, secured, mounted, affixed or assembled to a stand, support or device;

(c)    The manner or method by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest; and

(d)    The manner or method by which any and all support structures, (by way of illustration chassis, brackets, metal trays, or frames) which holds, supports or secures one or more internal components of the Product of Interest are assembled and/or secured within the Product of Interest.

5.    The earliest date on which each Product of Interest (either alone or as part of a product incorporating a Flat Panel Display Product, e.g., workstations), was:

    (a)    First shown and/or published at any trade show or disclosed to any third party in the United States;

    (b)    First offered for sale in or from the United States;

    (c)    First sold, distributed, and/or transferred to any third person in or from the United States;

    (d)    First imported into or exported from the United States; and

    (e)    First made in the United States.

6.    The (i) total annual US sales of each Product of Interest prior to December 31, 1999; and (ii) total annual number of each Product of Interest imported into or exported from the US prior to December 31, 1999.

7.    The name, brand or other identifier of each Product of Interest, and any workstation or other configuration which included a Product of Interest as part of a system or larger group of components that were sold in or from, imported into, exported from, offered for sale or shown at a trade show in the United States prior to December 31, 1999.

8.   All correspondence between You and LG.Philips LCD Co., Ltd. or LG Electronics, Inc. regarding or relating to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718.

9.   All communications relating to licensing discussions with LG Electronics, Inc. or LG Philips LCD Co., Ltd. including, without limitation, all such documents that relate to a meeting on or about May 20, 2003, at LG.Philips LCD's Japan office in Tokyo, between representatives of Fujitsu's licensing department, Patent Department IV, and Technology Alliance Department 1. These meetings were attended by the following people: Jong Hwan Lee (LPL), Ho Lee (LPL), Youngwoo Cho (LPL), Won Jun Choi (LPL), Myeong Jo Seo (LPL), Kakegawa (Fujitsu), Koyasu (Fujitsu), Miyake (Fujitsu), Ozawa (Fujitsu), Nakamura (Fujitsu), Yamaguchi (Fujitsu), Sato (Fujitsu), Ohashi (Fujitsu), Sakoda (Fujitsu), and Hoshino (Fujitsu) and the Fujitsu Siemens 51 1OFA monitor and the Fujitsu Monitor VL1700SS were discussed.

10.   All documents that constitute or evidence prior art as defined under 35 U.S.C. §§ 102 and/or 103 to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718 (copies of which are attached hereto as Exhibit 1).

## ATTACHMENT B

## DOCUMENT REQUESTS

1.    Documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to illustrate or show the physical structure of each Product of Interest including, without limitation:

(a)    The structure by which the Display Module is secured, mounted, attached, affixed and/or assembled within a Flat Panel Display Product;

(b)    The structure by which a Flat Panel Display Product is or can be connected, attached, secured, mounted, affixed or assembled to a stand, support or device;

(c)    The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest;

(d)    The structures in the Product of Interest that support one or more internal components of the Product of Interest including without limitation, the Display Module; and,

(e)    The Component Mounting structures on or attached to any Display Module.

2.    Documents sufficient to show the development of the Mounting Technology used in the Products of Interest.

491626.1                                11

3.     Documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to describe, illustrate or show the manner or method by which the components of each Product of Interest are assembled including, without limitation:

(a)     The manner or method by which the Display Module is secured, mounted, attached, affixed and/or assembled within a Flat Panel Display Product;

(b)     The manner or method by which a Flat Panel Display Product is connected, attached, secured, mounted, affixed or assembled a stand, support or device;

(c)     The manner or method by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest;

(d)     The manner or method by which any and all support structures, (by way of illustration chassis, brackets, metal trays, or frames) which holds, supports or secures one or more internal components of the Product of Interest are assembled and/or secured within the Product of Interest; and,

(e)     The Component Mounting structures on or attached to any Display Module.

491626.1                              12

4.    Documents sufficient to identify and establish the earliest date on which each Product of Interest (either alone or as part of a product incorporating a Product of Interest, e.g., workstations), was:

(a)    First shown and/or published at any trade show or disclosed to any third party in the United States;

(b)    First offered for sale in or from the United States;

(c)    First sold, distributed, and/or transferred to any third person in or from the United States;

(d)    First imported into or exported from the United States; and

(e)    First made in the United States.

5.    Documents sufficient to show the (i) total annual US sales of each Product of Interest prior to December 31, 1999; and (ii) total annual number of each Product of Interest imported into or exported from the US prior to December 31, 1999.

6.    Documents sufficient to identify by name, brand or other identifier of each Product of Interest, and any workstation or other configuration which included a Product of Interest as part of a system or larger group of components that were sold in or from, imported into, exported from, offered for sale or shown at a trade show in the United States prior to December 31, 1999.

7.    Except to the extent not otherwise produced in response to previous requests, documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to illustrate or show the physical structure of any Rear Fastener Product, including, without limitation:

(a)    The structure by which the Display Module is secured and/or mounted within any enclosure of a Flat Panel Display Product;

(b)    The structure by which a Flat Panel Display Product that is a Rear Fastener Product is connected, attached, secured, mounted, affixed or assembled to a stand, support, or device;

(c)    The structure by which the front bezel is secured, attached, affixed or assembled to one or more of the remaining components of the Rear Fastener Product;

(d)    The structures in the Rear Fastener Product that support one or more internal components of the Rear Fastener Product including without limitation, the Display Module; and,

(e)    The Component Mounting structures on or attached to any Display Module.

8.    A physical specimen of each Product of Interest.

9.    Documents sufficient to identify any product practicing the invention disclosed in, including without limitation, any products marked with, one or more

of the following patents: (i) Japan Patent Publication No. JP 09 190156 (Exh. 2 hereto) or any other patent claiming priority from that patent (hereinafter, "'156 Products"); (ii) Japan Patent Publication No. JP 09 171358 (Exh. 3 hereto) or any other patent claiming priority from that patent (hereinafter, "'358 Products"); and/or (iii) Japan Patent Publication No. JP 10-117313 (Exh. 4 hereto) or any other patent claiming priority from that patent (hereinafter, "'313 Products").

10.    Documents sufficient to show the assembly of any '156 Products, '358 Products and/or '313 Products including, without limitation, assembly drawings, technical specifications, diagrams, and/or manuals.

11.    A sample of any '156 Products, 358 Products and/or '313 Products (for inspection).

12.    Documents sufficient to show sales of any '156 Product, 358 Products and/or '313 Products that occurred prior to December 31, 1999, including sales agreements, purchase orders, and shipping and delivery records.

13.    All Documents relating to offers to sell, offers to buy, sales solicitations, sales inquiries, quotations, requests for quote, requests for proposals, or trade show activities that were created, dated, published, disseminated or displayed prior to December 31, 1999 regarding any '156 Products, 358 Products and/or '313 Products.

14.    Documents sufficient to show the structure, assembly, and parts of any Fujitsu Products of Interests that has a fastening component located on its back or rear, and that was sold, offered for sale, or displayed prior to December 31, 1999, including without limitation any assembly drawings, specifications, diagrams, mounting instructions, and/or manuals. (By way of clarification, an illustration of a fastening component located on the back or rear of a Display Module is shown as component 5 in Figure 1 (A) and (B) of the '358 Patent attached hereto as Exhibit 2.)

15.    Documents sufficient to show the structure, assembly, and parts of any Flat Panel Display Product and/or Display Module that has a fastening component located on the back or rear of the product, which extends through the product case and connects into any interior support, bracket, or component of the product, and that was sold, offered for sale, or displayed prior to December 31, 1999, including without limitation any assembly drawings, specifications, diagrams, mounting instructions, and/or manuals. (By way of example only, this would also include any product having a screw used to mount a stand or base to the back of a Flat Panel Display Product.)

16.    A sample of any Rear-Fastener Products made by, on behalf of, or for Fujitsu (for inspection).

17.    Documents sufficient to show sales of any Fujitsu Rear-Fastener Products that occurred prior to December 31, 1999, including sales agreements, purchase orders, and shipping and delivery records.

18.    Documents relating to offers to sell, offers to buy, sales solicitation, sales inquiry, quotations, requests for quote, or requests for proposal that were created, dated, published or disseminated prior to December 31, 1999 regarding any Fujitsu Rear-Fastener Products.

19.    Catalogs, brochures, circulars, advertisements, marketing materials, and articles that were created, dated, published, or disseminated prior to December 31, 1999 regarding any Fujitsu Rear-Fastener Products.

20.    Documents relating to the advertisement, promotion, display or demonstration of any Rear-Fastener Products at tradeshows prior to December 31, 1999.

21.    Documents that describe, identify, or depict the equipment in which any Fujitsu Rear-Fastener Product was or could have been used or mounted.

22.    Documents sufficient to show the model number of all Fujitsu Display Modules that were sold or offered for sale in the United States for the period of January 1991 through December 31, 1999, such as sell sheets and product lists.

23.    Documents sufficient to show the location and structure of any kind of fastener (screw, hole, boss) on the back or rear of any Display Module that were

made, sold, offered for sale, or displayed (through photograph or descriptive means) between January 1991 and December 31, 1999, such as specifications and dimensional drawings.

24.    All documents that were created, dated, published, or disseminated prior to December 31, 1999 referring to, relating to, or evidencing instructions, directions, warnings, or information relating to (i) mounting a Display Module on, to, or into the rear or back external case of a Flat Panel Display Product; and/or (ii) mounting a Display Module on, to, or into any other component of a Flat Panel Display Product, in each case including without limitation manuals, instructions, specifications, drawings, and service documents.

25.    Documents sufficient to show offers to sell or sales of any Rear-Fastener Products to the LG Group, LG Electronics, Inc., Lucky Goldstar, Goldstar, LG Philips LCD Co., Ltd., or Royal Philips Electronics.

26.    Assembly drawings, technical specifications, diagrams, and/or manuals for any liquid crystal display modules made by, for, or on behalf of Fujitsu that were advertised, designated, or designed for use in "thin bezel" products (e.g., the Fujitsu model number FLC48SXC8V-11A) that were made in the United States, sold or offered for sale in the United States, displayed in the United States, or for which designs or specifications were disseminated or made available to persons in the United States prior to December 31, 1999.

27.    Documents sufficient to show the assembly of the Fujitsu Siemens 5110FA computer monitor product, including without limitation assembly drawings, technical specifications, diagrams, and/or manuals.

28.    All documents relating to any attempts to maximize display area size of a flat display panel or FPD module within the area of the housing or casing of a Flat Panel Display Product.

29.    A sample of a Fujitsu Siemens 5110FA product (for inspection).

30.    Documents sufficient to show the assembly of the Fujitsu Siemens 5110FA product, including without limitation assembly drawings, technical specifications, diagrams, and/or manuals.

31.    A sample of a Fujitsu VL171-0SS product (for inspection).

32.    Documents sufficient to show the assembly of the Fujitsu VL171-0SS product, including without limitation assembly drawings, technical specifications, diagrams, and/or manuals.

33.    All correspondence between You and LG.Philips LCD Co., Ltd. or LG Electronics, Inc. regarding or relating to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718.

34.    All documents, notes and/or communications relating to licensing discussions with LG Electronics, Inc. or LG Philips LCD Co., Ltd. including, without limitation, all such documents that relate to a meeting on or about May 20,

2003, at LG.Philips LCD's Japan office in Tokyo, between representatives of Fujitsu's licensing department, Patent Department IV, and Technology Alliance Department 1. These meetings were attended by the following people: Jong Hwan Lee (LPL), Ho Lee (LPL), Youngwoo Cho (LPL), Won Jun Choi (LPL), Myeong Jo Seo (LPL), Kakegawa (Fujitsu), Koyasu (Fujitsu), Miyake (Fujitsu), Ozawa (Fujitsu), Nakamura (Fujitsu), Yamaguchi (Fujitsu), Sato (Fujitsu), Ohashi (Fujitsu), Sakoda (Fujitsu), and Hoshino (Fujitsu) and the Fujitsu Siemens 51 1OFA monitor and the Fujitsu Monitor VL1700SS were discussed.

35.    To the extent not previously called for, all documents that constitute or evidence prior art as defined under 35 U.S.C. §§ 102 and/or 103 to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718 (copies of which are attached hereto as Exhibit 1).

491626.1                                    20