# EXHIBIT 9

Westlaw.

462 F Supp 2d 897                                                Page 1
462 F Supp 2d 897
**(Cite as: 462 F.Supp.2d 897)**

**C**
Briefs and Other Related Documents
Reis Robotics USA, Inc v Concept Industries, Inc N D Ill ,2006
  United States District Court,N D Illinois,Eastern Division
  REIS ROBOTICS USA, INC , an Illinois corporation, Plaintiff,
                              v
  CONCEPT INDUSTRIES, INC , a Michigan corporation, Defendant
                     **No. 06 CV 1430.**

                   Nov 6, 2006

**Background:** Seller of industrial robotics equipment sued buyer for alleged breach of contract, and buyer asserted counterclaims for fraudulent inducement, misrepresentation, unjust enrichment, promissory estoppel, breach of contract, breach of express warranty, and overpayment Seller moved to strike affirmative defenses, to strike portions of answer, and to dismiss counterclaims

**Holdings:** The District Court, Castillo, J , held that:

(1) buyer did not adequately plead affirmative defense of failure to state claim upon which relief could be granted;

(2) portions of answer containing equivocal language did not comply with pleading rule, warranting striking of paragraphs with leave to amend;

(3) whether attorney fees and costs were wholly unavailable to buyer could not be determined at motion-to-dismiss stage of action;

(4) agreement's non-reliance clause did not preclude buyer's claims for fraudulent inducement, misrepresentation, and promissory estoppel;

(5) Illinois's mend the hold doctrine did not warrant dismissal of buyer's fraudulent inducement claim;

(6) Illinois's *Moorman* doctrine barred negligent misrepresentation claim; and

(7) buyer did not state valid claim for overpayment under Illinois law

Motions granted in part and denied in part
West Headnotes
[1] Federal Civil Procedure 170A ☜1104

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(N) Striking Pleading or Matter Therein
            170Ak1104 k Motion Not Favored  Most Cited Cases
Motions to strike are generally disfavored because of their potential to delay proceedings  Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A

[2] Federal Civil Procedure 170A ☜751

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
            170AVII(C)2 Affirmative Defense or Avoidance
                170Ak751 k In General  Most Cited Cases
Affirmative defenses are pleadings and are subject to all the same pleading requirements applicable to complaints, and therefore affirmative defenses must set forth a "short and plain statement" of the basis for the defense  Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A

[3] Federal Civil Procedure 170A ☜751

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
            170AVII(C)2 Affirmative Defense or Avoidance
                170Ak751 k In General  Most Cited Cases
An affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted; bare-bone conclusory allegations are not sufficient  Fed.Rules Civ.Proc.Rule 8(a), 28

© 2007 Thomson/West No Claim to Orig U S Govt Works

U.S.C.A

**[4] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
   170AVII(C) Answer
    170AVII(C)2 Affirmative Defense or
Avoidance
     170Ak751 k In General Most Cited
Cases
Under three-part test used to examine the sufficiency
of an affirmative defense, court first determines
whether the matter is appropriately pleaded as an af-
firmative defense, then determines whether the de-
fense is adequately pleaded, and finally evaluates the
sufficiency of the defense pursuant to a standard
identical to that governing motions to dismiss for
failure to state claim upon which relief may be gran-
ted Fed.Rules Civ.Proc.Rules 8, 9, 12(b)(6), 28
U.S.C.A

**[5] Federal Civil Procedure 170A ☞1108.1**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
   170AVII(N) Striking Pleading or Matter
Therein
    170Ak1108 Affirmative Defense or Avoid-
ance
     170Ak1108.1 k In General Most Cited
Cases
Before granting a motion to strike an affirmative de-
fense, court must be convinced that there are no unre-
solved questions of fact, that any questions of law are
clear, and that under no set of circumstances could
the defense succeed Fed.Rules Civ.Proc.Rule 12(f),
28 U.S.C.A

**[6] Federal Courts 170B ☞433**

170B Federal Courts
  170BVI State Laws as Rules of Decision
   170BVI(C) Application to Particular Matters
    170Bk433 k Other Particular Matters Most
Cited Cases
In a case premised on diversity jurisdiction, the legal
and factual sufficiency of an affirmative defense is
examined with reference to state law

**[7] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
   170AVII(C) Answer
    170AVII(C)2 Affirmative Defense or
Avoidance
     170Ak751 k In General Most Cited
Cases
Allegation that complaint failed to state claim upon
which relief could be granted provided basis for as-
serting affirmative defense Fed.Rules Civ.Proc.Rule
84, 28 U.S.C.A

**[8] Federal Civil Procedure 170A ☞1108.1**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
   170AVII(N) Striking Pleading or Matter
Therein
    170Ak1108 Affirmative Defense or Avoid-
ance
     170Ak1108.1 k In General Most Cited
Cases

**Federal Civil Procedure 170A ☞1149.1**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
   170AVII(N) Striking Pleading or Matter
Therein
    170Ak1149 Effect of Determination
     170Ak1149.1 k In General Most Cited
Cases
Buyer of industrial robotics equipment did not ad-
equately plead affirmative defense of failure to state
claim upon which relief could be granted in seller's
action for breach of contract, warranting striking of
defense without prejudice, given that defense
provided no explanation as to how and in what por-
tion of complaint seller failed to state claim, and did
not mention or incorporate by reference detailed fac-
tual allegations contained in buyer's counterclaim
Fed.Rules Civ.Proc.Rules 8, 12(b)(6), (f), 28
U.S.C.A

**[9] Federal Civil Procedure 170A ☞1108.1**

170A Federal Civil Procedure

462 F Supp 2d 897                                                                                          Page 3
462 F Supp 2d 897
**(Cite as: 462 F.Supp.2d 897)**

<u>170AVII</u> Pleadings and Motions
      <u>170AVII(N)</u> Striking Pleading or Matter
Therein
        <u>170Ak1108</u> Affirmative Defense or Avoid-
ance
          <u>170Ak1108.1</u> k In General  <u>Most Cited</u>
<u>Cases</u>

**Federal Civil Procedure 170A ☞1110**

<u>170A</u> Federal Civil Procedure
   <u>170AVII</u> Pleadings and Motions
     <u>170AVII(N)</u> Striking Pleading or Matter
Therein
      <u>170Ak1108</u> Affirmative Defense or Avoid-
ance
        <u>170Ak1110</u> k Fraud  <u>Most Cited Cases</u>

**Federal Civil Procedure 170A ☞1149.1**

<u>170A</u> Federal Civil Procedure
   <u>170AVII</u> Pleadings and Motions
     <u>170AVII(N)</u> Striking Pleading or Matter
Therein
    <u>170Ak1149</u> Effect of Determination
     <u>170Ak1149.1</u> k In General  <u>Most Cited</u>
<u>Cases</u>
Buyer of industrial robotics equipment did not ad-
equately plead, in seller's breach of contract action,
affirmative defense alleging that seller breached con-
tract and that contract could be void for fraud or fail-
ure of consideration, warranting striking of defense
without prejudice, given that defense did not make
reference to any elements of breach of contract claim,
and buyer did not plead with requisite heightened
particularity circumstances constituting alleged fraud
<u>Fed.Rules Civ.Proc.Rules 8(a, e), 9(b), 12(f), 28</u>
<u>U.S.C.A</u>

**[10] Federal Civil Procedure 170A ☞751**

<u>170A</u> Federal Civil Procedure
   <u>170AVII</u> Pleadings and Motions
    <u>170AVII(C)</u> Answer
      <u>170AVII(C)2</u> Affirmative Defense or
Avoidance
       <u>170Ak751</u> k In General  <u>Most Cited</u>
<u>Cases</u>

**Federal Civil Procedure 170A ☞753**

<u>170A</u> Federal Civil Procedure
   <u>170AVII</u> Pleadings and Motions
    <u>170AVII(C)</u> Answer
      <u>170AVII(C)2</u> Affirmative Defense or
Avoidance
       <u>170Ak753</u> k Fraud  <u>Most Cited Cases</u>
Breach of contract, fraud, and failure of consideration
are all matters that may be pled as affirmative de-
fenses  <u>Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A</u>

**[11] Federal Civil Procedure 170A ☞751**

<u>170A</u> Federal Civil Procedure
   <u>170AVII</u> Pleadings and Motions
    <u>170AVII(C)</u> Answer
      <u>170AVII(C)2</u> Affirmative Defense or
Avoidance
       <u>170Ak751</u> k In General  <u>Most Cited</u>
<u>Cases</u>
Affirmative defense in which buyer of industrial ro-
botics equipment alleged that seller's payment claims
respecting fixture were barred because buyer did not
authorize seller to begin manufacturing fixture
merely restated denials in buyer's answer, rather than
setting forth legal reason why buyer was excused
from liability notwithstanding its admissions as to al-
legations of complaint, and thus was not proper af-
firmative defense  <u>Fed.Rules Civ.Proc.Rule 8(c), 28</u>
<u>U.S.C.A</u>

**[12] Federal Civil Procedure 170A ☞751**

<u>170A</u> Federal Civil Procedure
   <u>170AVII</u> Pleadings and Motions
    <u>170AVII(C)</u> Answer
      <u>170AVII(C)2</u> Affirmative Defense or
Avoidance
       <u>170Ak751</u> k In General  <u>Most Cited</u>
<u>Cases</u>
Concept of an affirmative defense requires a respond-
ing party to admit a complaint's allegations but then
permits the responding party to assert that, for some
legal reason, it is nonetheless excused from liability
<u>Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A</u>

**[13] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
     170AVII(C)2 Affirmative Defense or Avoidance
      170Ak751 k In General  Most Cited Cases

Affirmative defense in which buyer of industrial robotics equipment alleged that seller's breach of contract claims were subsumed by buyer's right of setoff or recoupment, and that amount of buyer's claims against seller exceeded amount of seller's claims against buyer, merely restated denials in buyer's answer and thus was not valid affirmative defense Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A

**[14] Federal Civil Procedure 170A ⟷1108.1**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(N) Striking Pleading or Matter Therein
     170Ak1108 Affirmative Defense or Avoidance
      170Ak1108.1 k In General  Most Cited Cases

**Federal Civil Procedure 170A ⟷1149.1**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(N) Striking Pleading or Matter Therein
     170Ak1149 Effect of Determination
      170Ak1149.1 k In General  Most Cited Cases

Affirmative defense in which buyer of industrial robotics equipment merely alleged that seller's breach of contract claims were "barred or limited by laches, waiver, estoppel, unclean hands, or similar legal or equitable doctrines" did not satisfy pleading rule, warranting striking of affirmative defense without prejudice  Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A

**[15] Federal Civil Procedure 170A ⟷751**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
     170AVII(C)2 Affirmative Defense or Avoidance
      170Ak751 k In General  Most Cited Cases

**Federal Civil Procedure 170A ⟷755**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
     170AVII(C)2 Affirmative Defense or Avoidance
      170Ak755 k Limitations and Laches Most Cited Cases

**Federal Civil Procedure 170A ⟷759**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
     170AVII(C)2 Affirmative Defense or Avoidance
      170Ak759 k Waiver and Estoppel Most Cited Cases

Laches, waiver, estoppel, and unclean hands are equitable defenses that must be pled with the specific elements required to establish the defense.

**[16] Federal Civil Procedure 170A ⟷751**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
     170AVII(C)2 Affirmative Defense or Avoidance
      170Ak751 k In General  Most Cited Cases

Merely stringing together a long list of legal defenses is insufficient to satisfy pleading rule  Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A

**[17] Federal Civil Procedure 170A ⟷751**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
     170AVII(C)2 Affirmative Defense or Avoidance
      170Ak751 k In General  Most Cited

462 F Supp 2d 897
462 F Supp 2d 897
(Cite as: 462 F.Supp.2d 897)

Cases
Affirmative defense stating that defendant reserved right to add additional affirmative defenses as they became known through discovery did not assert valid defense Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A

**[18] Federal Civil Procedure 170A ☞1125.1**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
       170AVII(N) Striking Pleading or Matter Therein
       170Ak1125 Immaterial, Irrelevant or Unresponsive Matter
         170Ak1125.1 k In General Most Cited Cases

**Federal Civil Procedure 170A ☞1150**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
       170AVII(N) Striking Pleading or Matter Therein
       170Ak1149 Effect of Determination
         170Ak1150 k Pleading Over Most Cited Cases
Paragraphs of answer in which buyer of industrial robotics equipment included equivocal language that did not admit or deny allegations in seller's complaint alleging breach of contract, and instead served to confuse issues that were in dispute, did not comply with pleading rule, warranting striking of paragraphs with leave to amend Fed.Rules Civ.Proc.Rule 8(b), 28 U.S.C.A

**[19] Federal Civil Procedure 170A ☞1137**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
       170AVII(N) Striking Pleading or Matter Therein
       170Ak1137 k Prayer or Allegation of Damages Most Cited Cases
Whether, under Illinois law and American rule, attorney fees and costs were wholly unavailable to buyer of industrial robotics equipment could not be determined at motion-to-dismiss stage of seller's action for breach of contract, and therefore striking of buyer's request for fees and costs was not warranted

Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A

**[20] Costs 102 ☞194.16**

102 Costs
   102VIII Attorney Fees
       102k194.16 k American Rule; Necessity of Contractual or Statutory Authorization or Grounds in Equity Most Cited Cases
As a general matter, Illinois follows the "American rule," such that attorney fees and costs are ordinarily not awarded to the prevailing party unless authorized by statute or provided for by contract

**[21] Federal Civil Procedure 170A ☞782.1**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
    170AVII(C) Answer
       170AVII(C)3 Set-Offs, Counterclaims and Cross-Claims
        170Ak782 Sufficiency of Counterclaims
         170Ak782.1 k In General Most Cited Cases

**Federal Civil Procedure 170A ☞1122**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
       170AVII(N) Striking Pleading or Matter Therein
       170Ak1122 k Counterclaims Most Cited Cases
Counterclaim of buyer of industrial robotics equipment adequately performed its required function of giving notice to seller of the relevant facts and legal basis of buyer's claims, and therefore striking of counterclaim, on grounds that it failed to comport with rule's directive that averments be simple, concise, and direct, was not warranted Fed.Rules Civ.Proc.Rule 8(e), 28 U.S.C.A

**[22] Estoppel 156 ☞85**

156 Estoppel
   156III Equitable Estoppel
    156III(B) Grounds of Estoppel
      156k82 Representations
       156k85 k Future Events; Promissory Es-

toppel  Most Cited Cases

**Fraud 184 ☜36**

184 Fraud
   184II Actions
     184II(A) Rights of Action and Defenses
      184k36 k. Defenses  Most Cited Cases
Under Illinois law, existence of non-reliance clause in agreement between seller and buyer of industrial robotics equipment, which warranted that buyer did not rely upon any affirmation, agreement, representation, or warranty concerning goods sold not documented in agreement, did not preclude buyer's claims for fraudulent inducement, misrepresentation, and promissory estoppel based on pre-agreement misrepresentations allegedly made by seller's sales manager about laser's cutting speed, given absence of anything in agreement directly contradicting statements attributed to sales manager

**[23] Fraud 184 ☜64(5)**

184 Fraud
   184II Actions
     184II(F) Trial
      184k64 Questions for Jury
        184k64(5) k. Reliance on Representations and Inducement to Act  Most Cited Cases
Under Illinois law, whether fraud plaintiff's reliance on false statements was justified is a question of fact, although issue may be determined by court as a matter of law when, under the circumstances, no trier of fact could find that reliance was reasonable

**[24] Federal Civil Procedure 170A ☜1831**

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1827 Determination
          170Ak1831 k. Fact Issues  Most Cited Cases
Buyer's counterclaims under Illinois law for fraudulent inducement, misrepresentation, and promissory estoppel could not be dismissed at motion-to-dismiss stage of seller's action for breach of contract arising out of sale of industrial robotics equipment, given

factual dispute as to whether buyer justifiably relied upon alleged misrepresentations by seller's sales manager respecting equipment's cycle times. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[25] Estoppel 156 ☜85**

156 Estoppel
   156III Equitable Estoppel
     156III(B) Grounds of Estoppel
      156k82 Representations
        156k85 k. Future Events; Promissory Estoppel  Most Cited Cases

**Fraud 184 ☜11(1)**

184 Fraud
   184I Deception Constituting Fraud, and Liability Therefor
     184k8 Fraudulent Representations
      184k11 Matters of Fact or of Opinion
        184k11(1) k. In General  Most Cited Cases
Alleged misrepresentations by sales manager for seller of industrial robotics equipment respecting equipment's cycle times could be construed as factual statements or could reasonably have been understood by buyer to be statements of fact in light of circumstances in which they were made, even if they were intended as opinion, and therefore allegations supported buyer's counterclaims for fraudulent inducement, misrepresentation, and promissory estoppel under Illinois law

**[26] Fraud 184 ☜11(1)**

184 Fraud
   184I Deception Constituting Fraud, and Liability Therefor
     184k8 Fraudulent Representations
      184k11 Matters of Fact or of Opinion
        184k11(1) k. In General  Most Cited Cases
Under Illinois law, statements of opinion will not support a fraud claim; instead, a misrepresentation must be considered a statement of fact to be actionable

**[27] Fraud 184 ☜11(1)**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
      184k8 Fraudulent Representations
        184k11 Matters of Fact or of Opinion
          184k11(1) k In General  Most Cited
Cases

**Fraud 184 &#x21DD;20**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
      184k19 Reliance on Representations and In-
ducement to Act
        184k20 k In General  Most Cited Cases
Under Illinois law, statements of opinion are treated
as statements of fact when, under the circumstances,
plaintiff justifiably relied on the opinion as though it
were a statement of fact

**[28] Fraud 184 &#x21DD;11(1)**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
      184k8 Fraudulent Representations
        184k11 Matters of Fact or of Opinion
          184k11(1) k In General  Most Cited
Cases
When defendant states as an affirmative fact a matter
that might otherwise be considered an opinion, the
statement becomes an affirmation of fact within the
meaning of Illinois's rule against fraudulent misrep-
resentation

**[29] Estoppel 156 &#x21DD;68(3)**

156 Estoppel
    156III Equitable Estoppel
      156III(B) Grounds of Estoppel
        156k68 Claim or Position in Judicial Pro-
ceedings
          156k68(3) k Claim Inconsistent with
Contract or Title Previously Asserted  Most Cited
Cases
Illinois's mend the hold doctrine prohibiting party
from changing grounds for refusing to perform con-
tract once party asserted a defense did not apply at

pleading stage of case, and thus did not warrant dis-
missal of buyer's fraudulent inducement claim against
seller of industrial robotics equipment on motion to
dismiss on grounds that buyer also sought breach of
contract remedies and thus effectively conceded con-
tract's validity  Fed.Rules Civ.Proc.Rule 12(b)(6), 28
U.S.C.A

**[30] Estoppel 156 &#x21DD;68(2)**

156 Estoppel
    156III Equitable Estoppel
      156III(B) Grounds of Estoppel
        156k68 Claim or Position in Judicial Pro-
ceedings
          156k68(2) k Claim Inconsistent with
Previous Claim or Position in General  Most Cited
Cases
The "mend the hold doctrine" is a rule of Illinois con-
tract law providing that, under certain circumstances,
a party may not change the grounds for refusing to
perform a contract once he has asserted a defense

**[31] Estoppel 156 &#x21DD;68(2)**

156 Estoppel
    156III Equitable Estoppel
      156III(B) Grounds of Estoppel
        156k68 Claim or Position in Judicial Pro-
ceedings
          156k68(2) k Claim Inconsistent with
Previous Claim or Position in General  Most Cited
Cases
Illinois's mend the hold doctrine, which prohibits
party from changing grounds for refusing to perform
contract once he has asserted a defense, does not pre-
clude a party from asserting a position different from
that asserted in a separate lawsuit

**[32] Negligence 272 &#x21DD;463**

272 Negligence
    272XIV Necessity and Existence of Injury
      272k463 k Economic Loss Doctrine  Most
Cited Cases
Illinois law prohibits plaintiff from recovering under
a negligence theory for purely "economic damages";
that is, damages not based on personal injury or prop-
erty damage

462 F Supp 2d 897                                                              Page 8
462 F Supp 2d 897
(Cite as: 462 F.Supp.2d 897)

[33] Fraud 184 ⚖==25

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k25 k  Injury and Causation  Most Cited
Cases
Exception to Illinois's *Moorman* doctrine barring
plaintiff's recovery under negligence theory for
purely economic damages applies when plaintiff's
damages are caused by the negligent misrepresenta-
tion of defendant who is in the business of supplying
information for the guidance of others in their busi-
ness transactions

[34] Fraud 184 ⚖==25

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k25 k  Injury and Causation  Most Cited
Cases
True purpose of agreement between buyer and seller
was sale of industrial robotics equipment, and any in-
formation supplied by seller was incidental to equip-
ment sale, and therefore exception to Illinois's *Moor-
man* doctrine, which applied to those in business of
supplying information for guidance of others in their
business transactions, was not triggered and doctrine,
barring recovery under negligence theory for purely
economic damages, barred buyer's negligent misrep-
resentation claim

[35] Implied and Constructive Contracts 205H
⚖==3

205H Implied and Constructive Contracts
    205HI Nature and Grounds of Obligation
        205HI(A) In General
            205Hk2 Constructive or Quasi Contracts
                205Hk3 k  Unjust Enrichment  Most
Cited Cases
To state a claim for unjust enrichment under Illinois
law, plaintiff must establish that defendant received a
benefit to plaintiff's detriment, and that defendant's
retention of the benefit would be unjust

[36] Estoppel 156 ⚖==85

156 Estoppel
    156III Equitable Estoppel
        156III(B) Grounds of Estoppel
            156k82 Representations
                156k85 k  Future Events; Promissory Es-
toppel  Most Cited Cases
To state a claim for promissory estoppel under
Illinois law, plaintiff must allege that defendant made
an unambiguous promise to plaintiff, plaintiff relied
on such promise, plaintiff's reliance was expected and
foreseeable by defendants, and plaintiff relied on the
promise to its detriment

[37] Federal Civil Procedure 170A ⚖==675.1

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(B) Complaint
            170AVII(B)1 In General
                170Ak675 Alternate, Hypothetical and
Inconsistent Claims
                    170Ak675.1 k  In General  Most
Cited Cases
At motion-to-dismiss stage of action, buyer could
plead in the alternative claims alleging breach of con-
tract and equitable theories premised on lack of bind-
ing contract, even though it could not recover under
both its contract-based and equitable theories
Fed.Rules Civ.Proc.Rule 8(e)(2), 28 U.S.C.A

[38] Estoppel 156 ⚖==85

156 Estoppel
    156III Equitable Estoppel
        156III(B) Grounds of Estoppel
            156k82 Representations
                156k85 k  Future Events; Promissory Es-
toppel  Most Cited Cases

Implied and Constructive Contracts 205H ⚖==3

205H Implied and Constructive Contracts
    205HI Nature and Grounds of Obligation
        205HI(A) In General
            205Hk2 Constructive or Quasi Contracts
                205Hk3 k  Unjust Enrichment  Most
Cited Cases
Under Illinois law, claims for both promissory estop-
pel and unjust enrichment presume the absence of a

462 F Supp 2d 897
462 F Supp 2d 897
**(Cite as: 462 F.Supp.2d 897)**

valid contract

**[39] Contracts 95 🔗98**

95 Contracts
    95I Requisites and Validity
        95I(E) Validity of Assent
            95k98 k Effect of Invalidity  Most Cited
Cases
Under Illinois law, a contract procured by fraud is
merely voidable, as opposed to automatically void,
which would require the party alleging fraud to have
taken action to rescind the contract

**[40] Sales 343 🔗434**

343 Sales
    343VIII Remedies of Buyer
        343VIII(D) Actions and Counterclaims for
Breach of Warranty
            343k433 Pleading
                343k434 k Allegations of Breach as
Cause of Action  Most Cited Cases
Allegations regarding existence and breach of ex-
press warranty in contract for purchase of industrial
robotics equipment that laser would be free from de-
fects in material and workmanship supported buyer's
claim for breach of warranty under Illinois law

**[41] Payment 294 🔗80**

294 Payment
    294V Recovery of Payments
        294k80 k Nature and Grounds of Right Most
Cited Cases
Allegations in which buyer of industrial robotics
equipment alleged that it made payments under con-
tract which exceeded work authorized by buyer and
performed by seller, such that seller was liable for
overpayment, did not state valid claim under Illinois
law

***902** John Reid Malkinson, Seth Robert Halpern,
Malkinson & Halpern, P C , Chicago, IL, for
Plaintiff
Brian D. Saucier, Jeffrey Edward Schiller, Deutsch,
Levy & Engel, Chtd , Chicago, IL, for Defendant

*MEMORANDUM OPINION AND ORDER*

CASTILLO, District Court
This is a diversity action governed by Illinois law in
which Plaintiff Reis Robotics USA, Inc ("Reis")
filed a complaint against Defendant Concept Indus-
tries, Inc ("Concept"), seeking redress for breach of
contract Concept has answered the complaint, asser-
ted six affirmative defenses, and brought seven coun-
terclaims against Reis Reis now moves to strike and
dismiss Concept's affirmative defenses (R 13); strike
portions of Concept's answer (R 17); and dismiss
Concept's counterclaims (R 21) For the reasons set
forth below, Reis's motions are granted in part and
denied in part

**BACKGROUND**

*1. Reis's Allegations*

The following facts are taken from Reis's complaint
Reis, an Illinois corporation, manufactures and sup-
plies industrial robotics equipment (R 1, Compl ¶
1 ) Concept, a Michigan corporation, manufactures
and supplies automotive parts (*Id* ¶ 2 ) On or about
February 24, 2005, the parties entered into a contrac-
tual arrangement for Concept to purchase from Reis a
robotic laser cutting machine (the "Laser") and asso-
ciated fixtures for trimming three separate automot-
ive parts: the Hush Panel, JS Dash Silencer, and JS
Dash Close Out Panel (*Id* ¶¶ 5, 9 ) The pertinent
contract documents are an "Order Acknowledgment"
executed by Reis (R 1, Compl ¶ 6 & Ex 1 (Order
Acknowledgment)) and an "Amended Purchase Or-
der" executed by Concept (R 1, Ex 2 (Purchase Or-
der))[FN1] For ease of reference, we refer to these
documents collectively as "the Agreement "

> FN1. The Court notes that both parties have
> attached copies of these documents to their
> pleadings (*See* R 1, Ex 1 & 2; R 11, Ex B
> & C )

While Reis was in the process of manufacturing the
Laser and fixtures pursuant to the Agreement,
Concept informed Reis that Concept had terminated
the Hush Panel program and that the associated fix-
tures were no longer needed (*Id* ¶ 10 ) The parties
agreed to amend the purchase price of the Agreement
to reflect the cancellation of the Hush Panel fixtures

© 2007 Thomson/West No Claim to Orig U S Govt Works

462 F Supp 2d 897
462 F Supp 2d 897
**(Cite as: 462 F.Supp.2d 897)**

but to include payment for work performed (*Id* ¶ 11 ) Following the cancellation of the Hush Panel fixtures, the amended purchase price of the Agreement was $911,000 (*Id* ¶ 8 )

In July 2005, Reis presented and demonstrated the Laser to Concept (*Id* ¶ 14 ) In August 2005, Concept informed Reis of changes to the JS Dash Silencer part (*Id* ¶ 16 ) Concept's changes to the JS Dash Silencer part required Reis to redesign the associated fixtures (*Id* ¶ 16 ) Reis alleges that Concept ordered these modifications under the Agreement, but Concept denies this allegation (*Id* *903 ¶ 17 ) Reis asserts that it is entitled to the original purchase price of the JS Dash Silencer fixtures and for work performed on their redesign and remanufacture (*Id* ¶¶ 18-19 )

In October 2005, Reis again presented and demonstrated the Laser to Concept (*Id* ¶ 14 ) On October 3, 2005, Concept acknowledged receipt of the Laser at its Michigan facility by executing an Acceptance Test Certificate (*Id* ¶ 15 )

In November 2005, Concept informed Reis that Concept had terminated the JS Dash Close Out Panel program and that the associated fixtures, which Reis was still working on, were no longer needed (*Id* ¶ 12 ) Reis alleges that it was entitled to payment for work already performed on the JS Dash Close Out Panel fixtures prior to cancellation, a total of $6,900 (*Id* ¶ 13 ) Concept denies that Reis is entitled to payment of this amount (R 11, Answer ¶ 13 )

The parties agree that Concept has paid Reis $588,600 to date (R 1, Compl ¶ 21; R 11, Answer ¶ 21 ) Reis asserts that Concept has breached the Agreement by failing to pay a remaining balance of $264,300 plus interest (R 1, Compl ¶¶ 22-24 ) Concept denies that it owes Reis any additional money under the Agreement (R 11, Answer ¶¶ 22-24 )

### 2. Concept's Allegations

The following additional facts are gleaned from Concept's "Answer, Affirmative Defenses and Counterclaim " (R 11 ) Concept alleges that prior to entering the Agreement, the parties engaged in extensive

negotiations regarding the specifications of the Laser, particularly the Laser's cutting speed, also called "cycle time," meaning the time required to complete one part (R 11, Countercl ¶ 1 ) Throughout the negotiations, Reis, through its sales manager Dino Chece, allegedly made various oral and written promises to Concept indicating that the Laser would trim the JS Dash Silencer parts at a cycle time of 60-70 seconds per part or faster (*Id* ¶¶ 1, 5-10 ) Relying on these promises by Reis, Concept entered into the Agreement (*Id* ¶ 11 )

The Agreement stated that the "Application" of the Laser was for the cutting of parts "described as Hush Panel/Panels Close/Silencer " (*Id* ¶ 11; Ex B (Order Acknowledgment) at 3 ) The Agreement did not mention the 60-70 seconds cycle time, but did provide as follows:

Necessary cycle time per component is indicated from Concept Industries with 23 7 sec per part including loading/ unloading and inspection. During our test in Chicago we were able to cut the parts in 17-20 sec The table rotating time is 3 sec The loading/unloading as well as inspection is done during [sic] the robot is cutting the part, therefore this time does not need to be added to the overall cycle Reis Robotics is NOT responsible for the Operator related cycle times

(*Id* ¶ 11; Ex B at 6 ) The Agreement also contained an express warranty that the Laser would be free from defects in material and workmanship (*Id* ¶ 12; Ex B at 31 )

According to Concept, at a demonstration of the Laser conducted by Reis on May 26, 2005, Concept personnel questioned Mr Chece and Dr Wenzel, Reis's general manager, about the Laser's apparent slow cutting speed of JS Dash Silencer parts during the demonstration (*Id* ¶ 13 ) In response to Concept's concerns, Mr Chece and Dr Wenzel responded that the Laser was not yet optimized and that Concept had "nothing to worry about " (*Id* ¶ 13 ) When Concept accepted possession of the Laser at its facility, the certificate of acceptance indicated that cycle times "[c]annot be checked without the production fixture " (*Id* ¶ 16 ) Following *904 the installation of the Laser at Concept's facility, Concept repeatedly ex-

462 F Supp 2d 897                                                    Page 11
462 F Supp 2d 897
**(Cite as: 462 F.Supp.2d 897)**

pressed to Reis concerns regarding the cutting speed of the Laser (*Id* ¶¶ 15-26 ) Concept repeatedly requested assurances from Reis that the cycle time for the JS Dash Silencer would be 60-70 seconds per part, as promised earlier by Mr. Checc (*Id* ¶¶ 15-26 ) After it became clear to Concept that the Laser would be unable to achieve the promised cycle time, on December 21, 2005, a representative of Concept sent Reis an email informing Reis that "Concept is pursuing the implementation of an alternate production process" and requesting that Reis "place all production fixtures design work that is currently in-process on the LHD and RHD JS Dash Silencers on hold " (*Id* ¶ 25 )

On January 6, 2006, Reis informed Concept in writing that the Laser's cycle time for the JS Dash Silencer would be between 150-195 seconds per part, far longer than what was originally promised (*Id* ¶ 26 ) According to Concept, to date the Laser has failed to come close to achieving the initially promised cycle time of 60-70 seconds per part, a defect that was "fatal" to Concept's ability to manufacture parts in the volumes required by its customers (*Id* ¶¶ 1, 26-27 )

As for the JS Dash Silencer fixtures, Concept alleges that it only authorized Reis to design the JS Dash Silencer fixtures and never authorized Reis to begin manufacturing the fixtures (*Id* ¶¶ 28-45 ) According to Concept, between April and October 2005, the parties exchanged numerous communications through which both parties indicated that Reis would wait for Concept's final design approval prior to initiating any production of the JS Dash Silencer fixtures (*Id* ¶¶ 29-33 ) Concept alleges that it never gave Reis final design approval and therefore is not responsible for any charges related to the production of the JS Dash Silencer fixtures (*Id* ¶ 28, 45 )

Concept also raises counterclaims against Reis for: (1) fraudulent inducement; (2) misrepresentation; (3) unjust enrichment; (4) promissory estoppel; (5) breach of contract; (6) breach of express warranty; and (7) overpayment (*Id* ¶¶ 46-81 ) All of the claims are premised on the Laser's inability to achieve the cycle time allegedly discussed by the parties (*See id* )

## MOTION TO STRIKE AND DISMISS AFFIRMATIVE DEFENSES

We turn first to Reis's motion to strike and dismiss various portions of Concept's affirmative defenses

### I. Legal Standard

[1] Federal Rule of Civil Procedure 12(f) permits the Court to strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter " Fed.R.Civ.P. 12(f) Motions to strike are generally disfavored because of their potential to delay proceedings *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir.1989) Nonetheless, a motion to strike can be a useful means of removing "unnecessary clutter" from a case, which will in effect expedite the proceedings *Id.*

[2][3] Affirmative defenses are pleadings and, as such, are subject to all the same pleading requirements applicable to complaints *Id.* Thus, affirmative defenses must set forth a "short and plain statement" of the basis for the defense Fed.R.Civ.P. 8(a); *Heller,* 883 F.2d at 1294. Even under the liberal notice pleading standards of the Federal Rules, an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted **\*905***Renalds v. S.R.G. Rest. Group,* 119 F.Supp.2d 800, 802 (N.D.Ill.2000) "[B]are bones conclusory allegations" are not sufficient *Heller,* 883 F.2d at 1295; *Surface Shields, Inc. v. Poly-Tak Prot. Sys. Inc.,* 213 F.R.D. 307, 308 (N.D.Ill.2003)

[4][5][6] This Court applies a three-part test for examining the sufficiency of an affirmative defense *Surface Shields,* 213 F.R.D. at 308; *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737 (N.D.Ill.1982) First, we determine whether the matter is appropriately pled as an affirmative defense *Surface Shields,* 213 F.R.D. at 308. Second, we determine whether the defense is adequately pled under Federal Rules of Civil Procedure 8 and 9 *Id.* Third, we evaluate the sufficiency of the defense pursuant to a standard identical to Federal Rule of Civil Procedure 12(b)(6) *Id.* Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any

questions of law are clear, and that under no set of circumstances could the defense succeed. _Codest Eng'g v. Hyatt Int'l Corp., 954 F.Supp. 1224, 1228 (N.D.Ill.1996)_ Additionally, in a case premised on diversity jurisdiction, "the legal and factual sufficiency of an affirmative defense is examined with reference to state law." _Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir.1991)_ With these principles in mind, we turn to the specific arguments raised in the motion

## II. Analysis

[7] For its first affirmative defense Concept asserts: "The complaint fails to state a claim upon which relief can be granted." (R 11, Aff Def ¶ 1) Reis argues that this is not a proper affirmative defense (R 14-1, Mem In Supp of Mot to Strike at 2-3 ) There is some debate in this District regarding whether "failure to state a claim" may be raised as an affirmative defense or instead must be raised by separate motion. Compare. e g. _Instituto Nacional de Comercialización Agrícola v. Cont'l Ill. Nat'l Bank & Trust Co., 576 F.Supp. 985, 991 (N.D.Ill.1983)_ (striking the affirmative defense of failure to state a claim because a true affirmative defense raises matters outside the plaintiff's complaint) _with Codest Eng'g, 954 F.Supp. at 1231_ (concluding that failure to state a claim may properly be asserted as an affirmative defense) and _Fleet Bus. Credit Corp. v. Nat'l City Leasing Corp., 191 F.R.D. 568, 569 (N.D.Ill.1999)_ (same) Notably, as one court in this District has observed, although failure to state a claim may not meet the technical definition of an affirmative defense, Form 20 of the Federal Rules of Civil Procedure's Appendix of Forms lists "failure to state a claim" as a model defense See _Builders Bank v. First Bank & Tr. Co. of Ill.,_ No. 03 C 4959, 2004 WL 626827 at *2 (N.D.Ill. Mar.25, 2004) Rule 84 specifically authorizes the use of the model defenses contained in the Forms Fed.R.Civ.P. 84 In light of Rule 84 and Form 20, we find authority under the Federal Rules to permit an affirmative defense based on failure to state a claim

[8] Nonetheless, Concept has failed to adequately plead the defense in accordance with Rule 8 Concept's first affirmative defense is nothing more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6) As alleged, the defense provides no explanation as to how and in what portion of the complaint Reis has failed to state a claim See _Renalds, 119 F.Supp.2d at 803-04_ (striking failure to state a claim defense because it did not identify specific infirmities in the complaint); _Codest Eng'g, 954 F.Supp. at 1231_ (striking failure to state a claim defense that did not refer to any particular count of complaint and did not notify plaintiff of any specific infirmities in complaint) Although Concept's counterclaim contains *906 detailed factual allegations, these allegations are not mentioned or incorporated by reference in the affirmative defenses (See R 11 ) Additionally, it is not clear what portion of the lengthy counterclaim allegations are intended to support Concept's failure to state a claim defense The Court agrees that clarity is needed as to the basis of this defense, and accordingly, the first affirmative defense is stricken without prejudice

[9][10] As its second affirmative defense Concept states: "Reis breached the contract on which it purports to rely, and that contract may be void for fraud and/or failure of consideration." (R 11, Aff Def ¶ 2 ) Breach of contract, fraud, and failure of consideration are all matters that may be pled as affirmative defenses See Fed.R.Civ.P. 8(c) However, the Court agrees with Reis that Concept's defenses, as pled, do not satisfy the pleading requirements of Rule 8(a) The breach of contract defense fails to make reference to any of the elements of a breach of contract claim, and additionally, Concept fails to plead with heightened particularity the alleged circumstances constituting fraud as required by Rule 9(b) See _Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins., 412 F.3d 745, 748-49 (7th Cir.2005)_ Again, although Concept has included detailed allegations in its counterclaim, it does not link these allegations in any way to the affirmative defenses, nor is it clear what particular paragraphs of the counterclaim allegations would apply to this affirmative defense Accordingly, the Court strikes Concept's second affirmative defense without prejudice

[11][12] As its third affirmative defense, Concept alleges: "Reis's payment claims for the silencer fixture are barred because Concept never authorized Reis to

462 F Supp 2d 897
462 F Supp 2d 897
(Cite as: 462 F.Supp.2d 897)

begin manufacturing the fixture, as Reis itself has acknowledged " (R  11, Aff Def ¶ 3 ) Reis argues that this affirmative defense is legally inadequate  (R 14-1, Mem in Supp of Mot to Strike at 7-8 ) The concept of an affirmative defense under *Rule 8(c)* "requires a responding party to *admit* a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability (or perhaps from full liability) " *Menchaca v. Am. Med. Resp. of Ill.*, 6 F.Supp.2d 971, 972 (N.D.Ill.1998) (emphasis in original)  Concept's third affirmative defense does not meet this criteria, but instead is merely a restatement of the denials contained in its answer  As such, the affirmative defense is not only unnecessary but also improper  *Renalds*, 119 F.Supp.2d at 804; *Menchaca*, 6 F.Supp.2d at 972. However, to the extent Concept intended to raise some affirmative matter here, the Court will give Concept an opportunity to replead  Accordingly, the third affirmative defense is stricken without prejudice

[13] As its fourth affirmative defense, Concept alleges: "Reis's claims are subsumed by Concept's right of set-off and/or recoupment  Alternatively, the amount of Concept's claims against Reis exceeds the amount of Reis's claim against Concept " (R  11, Aff Def ¶ 4 ) Reis argues that the affirmative defense is nothing more than a recapitulation of Concept's denial of the amount of damages claimed to be owed in the complaint  (R  14-1, Mem in Supp of Mot to Strike at 9 ) In its response brief, Concept fails to offer any analysis refuting Reis's argument  (*See* R  27, Concept Industries' Consolidated Resp  To Reis Robotics' Mots  To Strike Portions of the Answer and Aff  Defenses, and To Dismiss ("Consolid Resp ") at 5-6 ) The Court agrees that this affirmative defense appears to be simply a restatement of the denials contained in Concept's answer, which is improper  *See Renalds*, 119 F.Supp.2d at 804; *907Menchaca*, 6 F.Supp.2d at 972. However, to the extent Concept intended to raise some affirmative matter here, the Court will give Concept an opportunity to replead  The fourth affirmative defense is therefore stricken without prejudice

[14][15][16] Concept's fifth affirmative defense states: "Reis's claims are barred or limited by laches,

waiver, estoppel, unclean hands, or similar legal or equitable doctrines " (R  11, Aff Def ¶ 5 ) Laches, waiver, estoppel, and unclean hands are equitable defenses that must be pled with the specific elements required to establish the defense  *See State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D.Ill.2001)  Merely stringing together a long list of legal defenses is insufficient to satisfy *Rule 8(a)* "It is unacceptable for a party's attorney simply to mouth [affirmative defenses] in formula-like fashion ('laches,' 'estoppel,' 'statute of limitations' or what have you), for that does not do the job of apprising opposing counsel and this Court of the predicate for the claimed defense-which after all is the goal of notice pleading " *Id.* This is precisely what Concept has done here  Indeed, in asserting "similar legal or equitable doctrines," Concept fails to put Reis on notice as to even the legal bases for its defenses  Thus, the Court strikes Concept's fifth affirmative defense without prejudice

[17] Concept's sixth affirmative defense states: "Concept reserves the right to add additional affirmative defenses as they become known through discovery " (R  11, Aff Def ¶ 6 ) This is not a proper affirmative defense  If at some later point in the litigation Concept believes that the addition of another affirmative defense is warranted, it may seek leave to amend its pleadings pursuant to Rule 15(a); such a request will be judged by the appropriate standards, including the limitations set forth in *Rule 12(b) and (h)* Accordingly, Concept's sixth affirmative defense is stricken with prejudice

## MOTION TO STRIKE PORTIONS OF DEFENDANT'S ANSWER

[18] Reis next moves to strike various portions of Concept's answer for failing to comply with *Rule 8* (R  18, Mem in Supp of R  12(f) Mot at 2-5 ) *Rule 8* provides in relevant part:
A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies  If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial  Denials shall fairly meet the substance of

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

the averments denied  When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder

Fed.R.Civ.P. 8(b)  Reis argues that Concept has violated Rule 8 by including improper qualifying language in Paragraphs 5, 6, and 7  Specifically, Reis objects to the following language, which is contained in each of the aforementioned Paragraphs: "To the extent the alleged 'contract' created by issuance of this purchase order failed to warrant the trim speed and cycle time that Concept required, it was procured by fraud and was of no validity; accordingly, the remaining allegations in this paragraph are denied as true " (R  11, Answer ¶¶ 5-7 )  Upon review, the Court concludes that the above language does not constitute an admission or denial of Reis's allegations as required by Rule 8; instead the language is equivocal and serves to confuse the issues that are in dispute

Similarly, Reis argues that Paragraphs 15, 16, 20 each contain language that does **\*908** not comport with Rule 8 (R  18, Pl Mem  in Supp  of Rule 12(f) Mot at 2-4 )  Upon review, the Court finds that the last sentence of Paragraph 15, the last two sentences of Paragraph 16, and in Paragraph 20, all of the language following the statement, "Concept denies these allegations as untrue," renders the answers equivocal and improper under Rule 8  Accordingly, Paragraphs 5, 6, 7, 15, 16, and 20 are stricken with leave to amend  In repleading, Concept shall follow Rule 8(b)'s directive that it admit, deny, or state that it is without sufficient knowledge to admit or deny  To the extent Concept must give a qualified answer, Concept must "specify so much of it as is true and material and shall deny only the remainder " See Fed.R.Civ.P. 8(b)

[19][20] Reis also seeks to strike Concept's prayer for attorneys fees and costs (R  18, Mem in Supp of Rule 12(f) Mot at 4-5 )  As a general matter, Illinois follows the "American rule," such that attorneys fees and costs are ordinarily not awarded to the prevailing party unless authorized by statute or provided for by contract  McCormick v. McCormick, 180 Ill.App.3d 184, 129 Ill.Dec. 579, 536 N.E.2d 419, 437 (1988);

Quick & Reilly, Inc. v. Zielinski, 306 Ill.App.3d 93, 239 Ill.Dec. 208, 713 N.E.2d 739, 744 (1999)  Concept responds that it is merely attempting to preserve its ability to obtain fees should it later be determined that it is entitled to do so (R  27, Consolid Resp at 4 )  At this early stage of the litigation, the Court cannot determine as a definitive matter that fees and costs are wholly unavailable to Concept  Thus, the Court declines to strike the request for attorneys fees and costs

## MOTION TO DISMISS COUNTERCLAIMS

### I. Legal Standard

Reis next moves to dismiss each of Concept's seven counterclaims pursuant to Rule 12(b)(6) (R  22-1, Mem  in Supp  of Mot  to Dismiss)  This Court will only dismiss a claim if it appears "beyond doubt that the plaintiff cannot prove any set of facts that would entitle it to relief " Tobin for Governor v. Ill. State Bd. of Elections, 268 F.3d 517, 521 (7th Cir.2001)  In considering a Rule 12(b)(6) motion, we draw all reasonable inferences in favor of the plaintiff, or in this case the counterplaintiff, and accept as true all well-pleaded factual allegations  Id.  Further, the purpose of a Rule 12(b)(6) motion is solely to "test the sufficiency of the complaint, not to decide the merits " Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990)  The Seventh Circuit has repeatedly emphasized the liberal notice pleading requirements that apply in federal court  See. e g . Kolupa v. Roselle Park Dist., 438 F.3d 713, 714 (7th Cir.2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate  A full narrative is unnecessary "); Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir.1998) (explaining that "I was turned down for a job because of my race" is sufficient to state a claim for racial discrimination and survive a 12(b)(6) motion)

Additionally, in deciding a Rule 12(b)(6) motion, the Court is bound by the allegations within the complaint  However, a copy of a written instrument attached as an exhibit to a complaint, such as the operative contract documents in this case, may be considered  Fed.R.Civ.P. 10(c); Moranski v. Gen. Motors

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

*Corp.*, 433 F.3d 537, 539 (7th Cir.2005)

**II. Analysis**

[21] As an initial matter, Reis argues that much of Concept's counterclaim pleading is "highly verbose" and "argumentative," and should be stricken for failing to comport with Rule 8(e)'s directive that "[e]ach averment of a pleading shall ***909** be simple, concise and direct " (R 22-1, Mem in Supp of Mot to Dismiss at 15 ) The Seventh Circuit has held, however, that when a pleading adequately performs the notice function prescribed by the Federal Rules, the presence of extraneous material does not warrant dismissal under Rule 8(e) *Davis v. Ruby Foods*, 269 F.3d 818, 820-21 (7th Cir.2001) Dismissing claims merely because of the presence of superfluous material "would cast district judges in the role of editors, screening complaints for brevity and focus; they have better things to do with their time " *Id.* at 820. While the Court agrees that Concept's pleading is not necessarily a model of legal draftsmanship, it adequately performs its required function of giving notice to Reis of the relevant facts and legal basis of Concept's claims Accordingly, we decline to strike the counterclaims on this ground

***A. Whether Concept's Fraud-Based Claims Are Barred By The Seventh Circuit's Opinion In Rissman.***

[22] Reis first argues that Concept's claims for fraudulent inducement, misrepresentation and promissory estoppel do not state valid causes of action (R 22-1, Mem in Supp of Mot to Dismiss at 4-5 ) All three of these claims are premised on alleged misrepresentations by Mr Chece regarding the Laser's cutting speed Reis points to a non-reliance clause contained in the Agreement, which states:

AUTHORITY: No agent, employee or representative of [Reis] has any authority to bind [Reis] to any affirmation, agreement, representation or warranty concerning, and Buyer represents that it is not relying on any such affirmation, agreement, representation or warranty concerning, the Goods unless it is specifically stated on this written agreement and is executed in advance by two managers or officers of [Reis]

(Countercl , Ex B at 32 ) Reis argues that the Seventh Circuit's opinion in *Rissman v. Rissman*, 213 F.3d 381 (7th Cir.2000), automatically bars fraud claims based on pre-contractual statements where the contract contains a non-reliance provision (R 22-1, Mem in Supp of Mot to Dismiss at 4 ) We do not find this argument persuasive

In *Rissman*, the plaintiff sold his shares of a business to the defendant, who was a co-owner in the business, in alleged reliance on the defendant's oral representation that he would never sell the business to a third-party *Rissman*, 213 F.3d at 382. The oral promise was not included in the written stock purchase agreement *Id.* at 383. To the contrary, the stock purchase agreement specifically provided for accelerated payments of the purchase price in the event that the business was sold *Id.* The stock purchase agreement also included a non-reliance provision *Id.* After the defendant sold the business, the plaintiff sued for federal securities fraud and also raised related state law claims *Id.* at 382. In concluding that the plaintiff could not have reasonably relied on the defendant's representation that he would not sell, the Seventh Circuit pointed to both the non-reliance provision and the contract provision specifically discussing the possibility of a sale *Id.* at 383.

Contrary to Reis's argument, the Seventh Circuit's rejection of the fraud claim in *Rissman* was based, not on the mere presence of the non-reliance clause, but on the presence of the non-reliance clause in conjunction with a provision that clearly contradicted the plaintiff's prior statement *Id.* at 383 ("Having signed an agreement providing for acceleration as a consequence of sale, [plaintiff] is no position to contend that he relied on the impossibility of sale ") Accordingly, at least one District Court in this Circuit has read ***910***Rissman* to hold only that parties to a contract cannot rely on pre-contractual statements that directly contradict the express terms of the written agreement *See Hartmarx Corp. v. JBA Int'l, Inc.*, No. 99 C 4874, 2002 WL 406973, at *4 (N.D.Ill. Mar.15, 2002) (rejecting argument that *Rissman* creates automatic bar to fraud claim whenever contract contains non-reliance clause. because underlying rationale of *Rissman* is solely that "a person who has received written disclosure of the truth may not claim to rely

on oral falsehoods") Because we find nothing in the Agreement directly contradicting the statements attributed to Mr Chece, we decline to apply *Rissman* as requiring dismissal of Concept's fraud claims at the pleading stage

[23][24] Moreover, under Illinois law, whether a plaintiff's reliance on false statements was justified is a question of fact *Cozzi Iron & Metal, Inc. v. U.S. Office Equip.*, 250 F.3d 570, 574 (7th Cir.2001); *see also Schrager v. N. Cnty. Bank*, 328 Ill.App.3d 696, 262 Ill.Dec. 916, 767 N.E.2d 376, 386 (2002) ("[J]ustifiable reliance   is a question of fact   to be determined by the finder of fact and not by the trial court as a matter of law ") The issue may be determined by the Court as a matter of law when, under the circumstances, no trier of fact could find that the reliance was reasonable *Cozzi, 250 F.3d at 574.* Based on Concept's allegations regarding the statements about cycle time, and the manner in which these statements were alleged to have been made, the Court does not find this standard to be met here and therefore declines to dismiss the fraud-based claims

### B. Whether The Fraud-Based Claims Are Barred Because Reis's Statements Regarding Cycle Time Were Not Promises.

[25][26] Reis next argues that Concept's claims for fraudulent inducement, misrepresentation, warranty, and promissory estoppel are barred because the alleged misrepresentations regarding cycle time constituted statements of opinion that were "ambiguous and not promises " (R 22-1, Memo In Supp of Mot to Dismiss at 5-6 ) Under Illinois law, statements of opinion will not support a fraud claim; instead, a misrepresentation must be considered a statement of fact to be actionable *Prime Leasing, Inc. v. Kendig,* 332 Ill.App.3d 300, 265 Ill.Dec. 722, 773 N.E.2d 84, 92 (2002) Drawing all reasonable inferences in favor of Concept and accepting its allegations as true, we find that Concept has alleged misrepresentations by Reis that could be construed as factual statements For instance, Concept has alleged: "Concept's personnel asked Mr Chece how long it would take to cut a part similar to the P221 Dash Silencer on Reis's Laser, and Mr Chece said '60 seconds ' " (R 11, Counter-cl ¶ 5 ) Additionally, Concept alleges that Mr Chece

twice stated that the cycle time would be 60-70 seconds, with even "better" times expected once Reis had an opportunity to engineer the system (*Id* ¶¶ 9-10 ) The Court does not find these statements patently "vague" or "equivocal," as Reis suggests (*See* R 22-1, Mem In Supp of Mot to Dismiss at 6 )

[27][28] Moreover, under Illinois law, statements of opinion are treated as statements of fact when, under the circumstances, the plaintiff justifiably relied on the opinion as though it were a statement of fact *West v. W. Cas. & Sur. Co.,* 846 F.2d 387, 393-94 (7th Cir .1988); *Schrager,* 262 Ill.Dec. 916, 767 N.E.2d at 382. In other words, when the defendant states as an affirmative fact a matter that might otherwise be considered an opinion, the statement becomes an affirmation of fact within the meaning of the rule against fraudulent misrepresentation *911Schrager, 262 Ill.Dec. 916, 767 N.E.2d at 382.* If Concept can show it reasonably understood Mr Chece's statements about cycle times to be statements of fact in light of the circumstances in which they were made, his assertions will be treated as statements of fact, regardless of whether they were intended as an opinion Because we cannot conclude beyond doubt that Concept can prove no set of facts supporting its claims based on Mr Chece's alleged misstatements, we decline to dismiss these claims at the pleading stage

Additionally, Concept argues, and we agree, that its breach of warranty claim is premised on specific provisions of the contract, not on pre-purchase statements made by Mr Chece (*See* R 27, Consolid Resp at 13-14; R 11, Countercl ¶ 11 ) Thus, any ambiguity in the statements made by Mr Chece would be irrelevant to the breach of warranty claim We therefore decline to dismiss this claim as well

### C. Whether Illinois' "Mend The Hold" Doctrine Bars Concept's Fraudulent Inducement Claim.

[29][30] Next Reis argues that Concept's fraudulent inducement claim is barred because the "mend the hold" doctrine precludes Concept from changing the grounds on which it refused to perform the contract (R 22-1, Mem in Supp of Mot to Dismiss at 8-9 ) The mend the hold doctrine is a rule of Illinois con-

© 2007 Thomson/West No Claim to Orig U S Govt Works

462 F Supp 2d 897
462 F Supp 2d 897
(Cite as: 462 F.Supp.2d 897)

tract law providing that, under certain circumstances, a party may not change the grounds for refusing to perform a contract once he has asserted a defense *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 363-64 (7th Cir.1990) (citing *Larson v. Johnson*, 1 Ill.App.2d 36, 116 N.E.2d 187 (1953))

[31] Reis argues that Concept is barred from claiming fraud in the inducement because Concept also seeks breach of contract remedies, which effectively concedes the validity of the contract (R 22-1, Mem in Supp of Mot to Dismiss at 8 ) However, we find this argument unavailing because the Seventh Circuit has held that the mend the hold doctrine does not apply at the pleading stage [FN2] *See Harbor Ins. Co.*, 922 F.2d at 364 (observing that mend the hold doctrine does not make sense at the pleading stage because "Rule 8(e)(2) permits a party to state as many separate claims or defenses as the party has regardless of consistency"); *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1252 (7th Cir.1996) (observing that under mend the hold doctrine party may not repudiate a position taken in the course of the litigation once the pleadings are complete) Because this case is at the pleading stage, we do not believe dismissal to be appropriate on this ground Moreover, the purpose of the doctrine is to prevent a party from prejudicing its opponent by repudiating a position taken earlier in the litigation; the rule is meant to afford the opposing party a reasonable opportunity to formulate its defenses *Horwitz-Matthews*, 78 F.3d at 1252. We find no such danger of prejudice to Reis at *912 this stage of the proceedings For these reasons, we decline to dismiss the fraudulent inducement claim

> FN2. To the extent Reis is arguing Concept may not raise a fraud claim in light of the claims raised in an earlier filed case in Michigan state court, we do not believe the mend the hold doctrine precludes a party from asserting a position different from that asserted in a separate lawsuit *See Harbor Ins.*, 922 F.2d at 364. Concept argues that it did not assert a fraud claim in the Michigan suit because such a claim would have been barred by Michigan law (R 27, Consolid Resp at 10 ) Although it is not clear based on the documents before the Court, it may

be that Concept is barred from relitigating issues resolved on the merits in the Michigan state court case based on the related doctrine of *res judicata See Harbor Ins.*, 922 F.2d at 364. Reis does not raise a *res judicata* argument here, and we have not been appprised of the status of the Michigan case

### D. Whether Concept's Negligent Misrepresentation Claim is Barred By The Moorman Doctrine

[32][33][34] Reis next argues that Concept's claim for negligent misrepresentation is barred by the Illinois Supreme Court's holding in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) *Moorman* prohibits a plaintiff from recovering under a negligence theory for purely economic damages, that is, damages not based on personal injury or property damage *Id. at* 450-51; *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill.App.3d 18, 241 Ill.Dec. 427, 719 N.E.2d 288, 294 (1999) There is no dispute here that Concept is seeking solely economic damages; nonetheless, there is an exception to the *Moorman* doctrine where the plaintiff's damages are caused by the negligent misrepresentation of a defendant who is "in the business of supplying information" for the guidance of others in their business transactions *First Midwest Bank N.A. v. Stewart Title & Guar. Co.*, 218 Ill.2d 326, 300 Ill.Dec. 69, 843 N.E.2d 327, 335 (2006); *Tolan*, 241 Ill.Dec. 427, 719 N.E.2d at 294. Concept argues that there is "at least a fact question as to whether Reis was in the business of supplying information," such that the Court should permit the negligent misrepresentation claim to proceed (R 27, Consolid Resp at 12 ) We do not agree

Illinois cases hold that when information supplied by the defendant is merely ancillary to the sale of a product or service, the defendant is not in the business of supplying information for purposes of *Moorman*, 2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, 350-52 (1990); *Tolan*, 241 Ill.Dec. 427, 719 N.E.2d at 296. Indeed, "a great many businesses involve an exchange of information as well as of tangible products;" however, if the true

462 F Supp 2d 897
462 F Supp 2d 897
(Cite as: 462 F.Supp.2d 897)

purpose of the parties' agreement is for the defendant to create a product, then the defendant is not in the business of supplying information *2314 Lincoln Park W.,* 144 Ill.Dec. 227, 555 N.E.2d at 351. Concept's citation to *2314 Lincoln Park West* is unavailing, since in that case the Illinois Supreme Court held that an architect's provision of information regarding a building's design and construction was simply incidental to the architect's provision of a tangible object, namely, the building As such, the Court concluded that the architect was not in the business of providing information and could not be sued for negligent misrepresentation *Id.*

Although Concept is correct that the Court must make a case-specific analysis to determine whether the defendant was in the business of supplying information, see *Tolan,* 241 Ill.Dec. 427, 719 N.E.2d at 296, based upon the pleadings it is apparent that the true purpose of the parties' agreement in this case was the sale of the robotic equipment manufactured by Reis Even liberally construing Concept's allegations, it is apparent that Reis is in the business of manufacturing and supplying robotic equipment, not in the business of providing information for the guidance of others in their business transactions See *2314 Lincoln Park W.,* 144 Ill.Dec. 227, 555 N.E.2d at 351; see also *Rankow v. First Chicago Corp.,* 870 F.2d 356, 361 (7th Cir.1989) (collecting cases holding that under Illinois law manufacturers of products are not in business of providing information) To the extent Reis supplied information about the robotic equipment to Concept, this information was simply incidental to the sale of the Laser Accordingly, we dismiss the negligent misrepresentation claim with prejudice pursuant to *Moorman.*

### *913 E. Whether Concept's Claims For Unjust Enrichment And Promissory Estoppel Are Barred By The Existence Of The Contract.

[35][36][37] Reis next argues that the existence of a contract between the parties bars Concept's counterclaims for unjust enrichment and promissory estoppel (R 22-1, Mem in Supp of Mot to Dismiss at 9-12 ) To state a claim for unjust enrichment under Illinois law, the plaintiff must establish that the defendant received a benefit to the plaintiff's detriment,

and that the defendant's retention of the benefit would be unjust *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.,* 153 F.3d 822, 828 (7th Cir.1998) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989)) To state a claim for promissory estoppel, the plaintiff must allege that the defendant made an unambiguous promise to the plaintiff, the plaintiff relied on such promise, the plaintiff's reliance was expected and foreseeable by defendants, and the plaintiff relied on the promise to its detriment *Quake Constr., Inc. v. Am. Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990, 1004 (1990)

[38] Reis is correct that both theories presume the absence of a valid contract See *People ex rel. Hartigan v. E & E Hauling, Inc.,* 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165, 177 (1992); *Prentice v. UDC Advisory Serv.,* 271 Ill.App.3d 505, 207 Ill.Dec. 690, 648 N.E.2d 146, 150 (1995) However, at this stage Concept is permitted to plead in the alternative claims of breach of contract and equitable theories premised on the lack of a binding contract See Rule 8(e)(2); *Hawthorne Partners v. AT&T Tech.,* 831 F.Supp. 1398, 1406 (N.D.Ill.1993) If the contract is held to be invalid due to fraud or for some other reason, Concept may be able to recover under one of its equitable theories Of course, Concept may not recover under both its contract-based and equitable theories, see *Hawthorne Partners,* 831 F.Supp. at 1406, but that is not a concern at this stage of the proceedings

[39] Reis appears to argue that the unjust enrichment and promissory estoppel claims nevertheless fail because Concept's claim that the contract is void due to fraud lacks merit (R 22-1, Mem in Supp of Mot to Dismiss at 10 ) Under Illinois law, a contract procured by fraud is merely voidable, as opposed to automatically void, which would require the party alleging fraud to have taken action to rescind the contract *City of Chicago v. Mich. Beach Hous. Coop.,* 297 Ill.App.3d 317, 231 Ill.Dec. 508, 696 N.E.2d 804, 809 (1998) Reis argues that Concept failed to take adequate steps to rescind the contract such that the contract is now binding (R 22-1, Mem in Supp of Mot to Dismiss at 10 ) This argument presumes that Concept's fraudulent inducement and related

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

462 F Supp 2d 897
462 F Supp 2d 897
(Cite as: 462 F.Supp.2d 897)

Page 19

claims fail on the merits, which is not a determination to be made by the Court at this stage in the proceedings As discussed above, the Court is permitting the fraudulent inducement claim to proceed Further, whether Concept took action to rescind the contract is a matter in dispute (*See* R 27, Consolid Resp at 4-6, 12-13 (citing R 11, Countercl ¶¶ 15-25) ) The sole issue at this stage is whether Concept has adequately alleged claims for unjust enrichment and promissory estoppel; the Court may not dismiss these claims unless it is beyond doubt Concept can prove no set of facts entitling it to relief *Tobin,* 268 F.3d at 521. The Court does not find this standard to be met, and therefore will allow these claims to proceed

### F. Whether Concept's Contract-Based Claims Fail As A Matter Of Law.

[40] Reis next argues that Concept's counterclaims for breach of contract, *914 breach of express warranty, and overpayment fail as a matter of law (R 22-1, Mem in Supp of Mot to Dismiss at 12-14 ) First, Reis argues that Concept's claim for breach of contract fails because the alleged breach is based solely on pre-purchase promises regarding cycle time which are negated by the Agreement's integration clause Upon review, the Court concludes Concept is not relying solely on pre-purchase statements in support of its breach of contract claim Construing the allegations in the light most favorable to Concept, Concept has alleged the existence and breach of express provisions contained in the Agreement (*See* R 11, Countercl ¶¶ 11-12, 73-77 ) Similarly, as to the warranty claim, Concept has alleged the existence and breach of an express warranty in the contract that the Laser would be free from defects in material and workmanship (R 11, Countercl ¶¶ 12, 73-77 ) At this stage, the Court finds these allegations sufficient

[41] As to the overpayment claim, Concept asserts: "Concept has made payments under the purported contract totaling $588,600 The work Reis performed and Concept authorized totals approximately $504,300 Reis is liable to Concept for the Concept overpayment " (Countercl ¶¶ 79-81 ) Reis argues that Concept's claim for overpayment fails to state a viable claim under state law (R 22-1, Mem in Supp of Mot to Dismiss at 14 ) In its response brief

Concept fails to explain the legal basis for this claim, nor is the legal basis apparent to the Court (See R 27, Consolid Resp at 14 ) Concept suggests its recovery for "overpayment" is warranted based on a subsequent oral modification that was made to the Agreement (*Id* ) However, there are no allegations within Concept's counterclaim that an oral modification occurred *See Harrell v. United States,* 13 F.3d 232, 236 (7th Cir.1993) (brief in opposition to a motion to dismiss may not amend complaint) Even drawing all inferences in favor of Concept, we find that Concept has failed to state a claim for overpayment Thus, the overpayment counterclaim is dismissed without prejudice

### CONCLUSION

For the reasons set forth above, Reis's motion to strike affirmative defenses (R 13), motion to strike portions of Concept's answer (R 17), and motion to dismiss Concept's counterclaim (R 21) are granted to the extent that:

1 Concept's first, second, third, fourth, and fifth affirmative defenses are stricken without prejudice;

2 Concept's sixth affirmative defense is stricken with prejudice;

3 Paragraphs 5, 6, 7, 15, 16, and 20 of Concept's answer are stricken without prejudice;

4 Concept's negligent misrepresentation counterclaim is dismissed with prejudice;

5 Concept's overpayment counterclaim is dismissed without prejudice

Reis's motions are denied in all other respects Concept shall file and serve an amended pleading that conforms to this order within 30 days of the date of this order

N D Ill ,2006
Reis Robotics USA, Inc v Concept Industries, Inc 462 F Supp 2d 897

Briefs and Other Related Documents (Back to top)

• 2006 WL 1773799 (Trial Pleading) Answer, Af-

© 2007 Thomson/West No Claim to Orig U S Govt Works

462 F Supp 2d 897
462 F Supp 2d 897
**(Cite as: 462 F.Supp.2d 897)**

firmative Defenses, Counterclaim and Jury Demand (May 15, 2006) Original Image of this Document (PDF)

• 1:06cv01430 (Docket) (Mar. 15, 2006)

• 2006 WL 2188203 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of Motion to Strike and Dismiss the Affirmative Defenses (2006) Original Image of this Document (PDF)

• 2006 WL 2188204 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of its Rule 12(f) Motion to Strike Portions of Defendant's Answer (2006) Original Image of this Document (PDF)

• 2006 WL 2188205 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Reis Robotics USA, Inc 's Motion to Dismiss Counterclaim (2006) Original Image of this Document (PDF)

• 2006 WL 2310421 (Trial Motion, Memorandum and Affidavit) Concept Industries' Consolidated Response to Reis Robotics' Motions to Strike Portions of the Answer and Affirmative Defenses, and to Dismiss (2006) Original Image of this Document (PDF)

• 2006 WL 2445478 (Trial Motion, Memorandum and Affidavit) Reis Robotics, USA, Inc 's Consolidated Reply in Support of its Motions to Strike Counterclaims, Affirmative Defenses and Portions of Defendant's Answer (2006) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West  No Claim to Orig  U S  Govt  Works

# EXHIBIT 10

Westlaw.

800 F 2d 1101                                                                                      Page 1
800 F 2d 1101, 231 U S P Q 185
**(Cite as: 800 F.2d 1101)**

▷
Rolls-Royce    Limited    v    GTE    Valeron
Corp C A Fed (Mich ),1986
     United States Court of Appeals,Federal Circuit
    ROLLS-ROYCE LIMITED and Renishaw, plc, Ap-
                          pellees,
                            v
    GTE VALERON CORPORATION, Appellant
            Appeal No. 86-761.FN*

          FN* On January 31, 1986, this court ordered
          consolidation of Rolls-Royce's cross-appeal,
          No 86-818, with No 86-761.

                      Sept 8, 1986

Action was brought seeking injunction and damages
for alleged infringement of four patents, in which al-
leged infringer claimed invalidity and counterclaimed
for unfair competition  The United States District
Court for the Eastern District of Michigan, 625
F.Supp. 343, Horace W Gilmore, J, entered judg-
ment for patent holders  Appeal and cross appeals
were taken  The Court of Appeals, Markey, Chief
Judge, held that: (1) claim 15 of patent for device to
mount stylus in position-determining apparatus was
not invalid for anticipation or obviousness in view of
two references; (2) claims of chain patents for six-
way probe were infringed by five-way probe; and (3)
alleged infringer did not willfully infringe stylus pat-
ent when it attempted to design around claims and
failed to seek advice of counsel as to infringement

Affirmed
West Headnotes
[1] Patents 291 ☞51(1)

291 Patents
    291II Patentability
        291II(D) Anticipation
            291k50 Prior Knowledge or Use
                291k51 Nature and Extent in General
                    291k51(1) k In General  Most Cited
Cases
Test to determine whether patent was invalid for anti-
cipation was disclosure in a single, prior art reference

of each element of claim under consideration  35
U.S.C.A. § 102

[2] Patents 291 ☞312(6)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(6) k  Particular Matters, Suf-
ficiency as To  Most Cited Cases
District court's findings that prior art references did
not disclose three points of mechanical contact to
achieve positively defined rest position and that prior
art references for that reason did not anticipate claim
15 of patent for device to mount stylus in position-
determining apparatus were not clearly erroneous  35
U.S.C.A. § 102

[3] Patents 291 ☞312(5)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(5) k  Particular Patents
Most Cited Cases
District court's findings that prior art references did
not teach transverse constraint of stylus due to gap
between movable member and housing and that for
that reason did not anticipate claim 15 of patent for
device to mount stylus in position-determining appar-
atus were not clearly erroneous  35 U.S.C.A. § 102

[4] Patents 291 ☞312(6)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(6) k  Particular Matters, Suf-
ficiency as To  Most Cited Cases
Alleged infringer which merely cited contrary view
advocated at trial by alleged infringer's expert could

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

not establish clear error in district court's findings that prior art references did not anticipate patent. 35 U.S.C.A. § 102.

**[5] Patents 291 ⚖16.17**

291 Patents
   291II Patentability
     291II(A) Invention; Obviousness
      291k16.17 k  Mechanical Devices  Most Cited Cases

Claim 15 of patent for device to mount stylus in position-determining apparatus, which was different in five respects from cited prior art references, which enjoyed extraordinary commercial success, and which satisfied long-felt, but unfilled common needs in industry, was not invalid for obviousness 35 U.S.C.A. § 103.

**[6] Patents 291 ⚖97**

291 Patents
   291IV Applications and Proceedings Thereon
     291k97 k  Patent Office and Proceedings Therein in General  Most Cited Cases

Prior art reference which was not cited to examiner and prior art reference which was cited to examiner only after some time were not material and were merely cumulative with art before examiner and, therefore, did not make patent for device to mount stylus in position-determining apparatus unenforceable

**[7] Patents 291 ⚖97**

291 Patents
   291IV Applications and Proceedings Thereon
     291k97 k  Patent Office and Proceedings Therein in General  Most Cited Cases

Patent holder which failed to cite prior art reference to examiner and which delayed citing of different prior art reference to examiner could not have reasonably believed that references were material and, therefore, was not required to disclose them to examiner to uphold enforceability of patent for device to mount stylus in position-determining apparatus

**[8] Patents 291 ⚖324.1**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k324 Appeal
       291k324.1 k  In General  Most Cited Cases

Alleged patent infringer which raised reverse doctrine of equivalents in opposition to motion for summary judgment, in pretrial and posttrial briefs, but which did not adduce evidence at trial in support of requested finding that accused device was so changed in principle that it performed in substantially different way, was not entitled to raise claim on appeal

**[9] Patents 291 ⚖235(2)**

291 Patents
   291XII Infringement
     291XII(A) What Constitutes Infringement
      291k233 Patents for Machines or Manufactures
       291k235 Identity of Principle or Mode of Operation
        291k235(2) k  Particular Patents or Devices  Most Cited Cases

Claims for chain patents and specification of chain patents for six-way probes, which referred to known probe that did not permit stylus displacement in direction opposite that faced by seat and which stated that object of invention was to overcome difficulty in known probe, did not exclusively direct invention to six-way probe head embodiment, and, thus, claims of chain patents covered both five-way and six-way embodiments and were infringed by patent for five-way probe

**[10] Patents 291 ⚖312(6)**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k312 Evidence
       291k312(3) Weight and Sufficiency
        291k312(6) k  Particular Matters, Sufficiency as To  Most Cited Cases

Evidence supported trial court's conclusions that alleged infringer, which attempted to design around claims of patent and which did not obtain advice of

counsel as to whether accused reed probe infringed patent, despite obtaining counsel's opinion whether earlier device infringed patent, did not willfully infringe patent

**[11] Federal Civil Procedure 170A ⚖═2773**

170A Federal Civil Procedure
   170AXX Sanctions
      170AXX(B) Grounds for Imposition
         170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
           170Ak2773 k  Defensive Pleadings; Answers and Replies  Most Cited Cases
    (Formerly 170Ak2721)
Filing of numerous unfounded defenses, followed by failure to press them in trial, is abuse of judicial process at trial level

**[12] Patents 291 ⚖═325.11(2.1)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k325 Costs
           291k325.11 Disbursements in General
              291k325.11(2) Attorney Fees
                 291k325.11(2.1) k  In General
Most Cited Cases
    (Formerly 291k325 11(2))
Patent holder failed to establish that actions of alleged infringer in advancing allegedly baseless defenses and then abandoning them at trial constituted bad faith, fraud, malice, or exceptional case requiring award of attorney fees  35 U.S.C.A. § 285

**Patents 291 ⚖═328(2)**

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k  Original Utility  Most Cited Cases
3,541,924  Cited as prior art

**Patents 291 ⚖═328(2)**

291 Patents

   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k  Original Utility  Most Cited Cases
4,153,998  Claim 15 valid, infringed, and enforceable

**Patents 291 ⚖═328(2)**

291 Patents
   291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
      291k328 Patents Enumerated
         291k328(2) k  Original Utility  Most Cited Cases
4,397,093, 4,451,988, 4,473,955  Infringed

**\*1102** James A  Oliff of Parkhurst & Oliff, Alexandria, Va , argued for appellees  Of counsel were William P  Berridge & Lawrence**\*1103** J  Gotts of Parkhurst & Oliff, Alexandria, Va

David Francescani, of Darby & Darby, New York City, argued for appellant  With him on brief was Beverly B  Goodwin, of Darby & Darby, New York City  Of counsel were Don K  Harness and G  Gregory Schivley, of Harness, Dickey & Pierce, Birmingham, Mich

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and RE, Chief Judge [FN**]

      FN** The Honorable Edward D  Re, Chief Judge, United States Court of International Trade, sitting by designation

MARKEY, Chief Judge
GTE Valeron Corporation (GTE) appeals from a December 6, 1985 judgment of the United States District Court for the Eastern District of Michigan: (1) that it had not established invalidity or unenforceability of four patents [FN1] jointly owned by Rolls-Royce Limited and Renishaw plc (collectively, Rolls-Royce), (2) that it had infringed claims of those patents,[FN2] and (3) permanently enjoining it from direct or contributory infringement

      FN1. U.S. Patent No. 4,153,998 (issued May 15, 1979) ('998 patent); and U.S. Patents

© 2007 Thomson/West  No Claim to Orig  U S  Govt  Works

800 F 2d 1101
800 F 2d 1101, 231 U S P Q 185
(Cite as: 800 F.2d 1101)

Page 4

Nos. 4,397,093 (issued August 9, 1983), 4,451,988 (issued June 5, 1984), and 4,473,955 (issued October 2, 1984) ('093, '988, and '955 patents; collectively referred to as the '093 chain patents)

FN2. Specifically: claim 15 of the '998 patent; claims 1 and 3 of the '093 patent; claims 1, 3, 5, 7, and 8 of the '988 patent; and claim 2 of the '955 patent

Rolls-Royce cross-appeals from that portion of the judgment refusing to find willful infringement and denying it increased damages and attorney fees

We affirm the judgment in all respects

*Background*

A thorough description of the inventions claimed in Rolls-Royce's four patents may be found in the district court's opinion 625 F.Supp. 343, 228 USPQ 489 (E.D.Mich.1985) Familiarity with that opinion will be presumed

The patents in suit are directed to what the parties describe as "touch-trigger probe heads," i e , devices used in measuring apparatus for determining at what point in space contact is established between a stylus carried by the probe head and an object When the stylus contacts the object, a signal is triggered and, from the known location of the probe head, the location of the surface may be determined The probe head is then moved to another target surface and the procedure is repeated until all necessary measurements are obtained. As stated by the district court, it is essential that such measurements be exceedingly accurate, and those obtained with Rolls-Royce's probe-head are accurate to within 5 millionths of an inch

GTE's accused touch-trigger probe embodies subject matter claimed in GTE's U.S. Patent No. 4,451,987 (Cusack '987), issued June 5, 1984

*Issues Presented*

(1) Whether the district court erred in holding that GTE had not proven facts requiring a conclusion that

Claim 15 of the '998 patent is invalid FN3

FN3. GTE does not on appeal contest validity of the asserted claims of the '093 chain patents or infringement of claim 15 of the '998 patent

(2) Whether the district court erred in holding that GTE had not shown unenforceability of the patents in suit

(3) Whether the district court clearly erred in finding infringement of the asserted claims of the '093 chain patents

(4) Whether the district court clearly erred in refusing to find GTE's infringement willful

(5) Whether the district court abused its discretion in refusing to award attorney fees to Rolls-Royce

OPINION

A  *The Parties' Burdens on Appeal*

To carry its burden on appeal, GTE must show that the district court's ultimate fact *1104 findings in respect of anticipation and infringement were clearly erroneous, or that the district court's legal conclusions in respect of non-obviousness and unenforceability were erroneous, or that the fact findings underlying the ultimate findings or conclusions were clearly erroneous See *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir.1984)

To carry its burden as cross-appellant, Rolls-Royce must show that the district court's fact findings on willful infringement were clearly erroneous, and that it abused its discretion in refusing to award attorney fees

The "clearly erroneous" standard is satisfied "when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

800 F 2d 1101                                                                                    Page 5
800 F 2d 1101, 231 U S P Q  185
(Cite as: 800 F.2d 1101)

B  *Validity of the '998 patent*

On appeal, GTE asserts invalidity of asserted claim 15 of the '998 patent for anticipation (35 U.S.C. § 102) and obviousness (35 U.S.C. § 103) in view of two references: (1) W Schmidt, *Automatologie* (1952), (*Automatologie* ) and (2) W Schmidt & F Olk, *Fuhlergesteuerte Maschinen* (1939) (*Maschinen* )

Claim 15 reads:
15  A device for mounting a stylus in position-determining apparatus wherein said device and an object are movable relative to each other for engaging the stylus with the object and by such engagement sense the position thereof, said device comprising:
a fixed member having an axis,
a movable member to which a stylus is connectable,
first electric contact elements connected to said fixed member at three locations spaced around said axis,
second electric contact elements connected to said movable member in positions confronting said first elements in the direction of said axis,
bias means for urging said movable member into engagement with said fixed member at all said first and second electric contact elements thereby positively defining a rest position for said movable member,
means acting directly on said movable member for constraining said movable member against movement in a direction transverse to said axis when said movable member is in said rest position, said movable member being removable from said rest position in opposition to said bias means by a force applied to said movable member thereby to break engagement between said elements at at least one of said locations, said bias means and said constraining means cooperating to return said movable member to said rest position on cessation of said force, and
an electric circuit connected to said contact elements to change state responsive to engagement between said elements at at least one of said locations being broken

The district court found the following differences between the invention of claim 15 of the '998 patent and the disclosures of the *Automatologie* and *Maschinen* references (prior art) relied on by GTE: (1) though able to "sense engagement," the devices of

the prior art did not sense and measure the position of an object in space; they were designed for milling rather than for coordinate measuring; (2) the prior art neither expected nor required great accuracy (being accurate to no more than a thousandth of an inch); (3) the prior art taught that electrical switching at the seats [FN4] was undesirable because of sparking (directly *1105 contrary to the teachings of the '998 patent); (4) the prior art did not teach 3 points of mechanical contact to achieve a positively defined rest position; and (5) the prior art did not teach transverse constraint of a stylus  625 F.Supp. at 348-49, 228 USPQ at 491-92.

> FN4.  The '998 specification teaches that measurements may be derived from an "input pulse" generated when a rod-like member is deflected, or "seated," at the electrical contact elements to break a circuit. The parties refer to this as "switching at the seats."

The district court also pointed to "extraordinary commercial success" of the invention of the '998 patent, said the invention "filled long-felt but unfulfilled needs," and further pointed to "industry acquiescence" in Rolls-Royce's patent right.

*(1) Anticipation*

The district court found that neither the *Maschinen* nor the *Automatologie* reference anticipated claim 15 because neither "disclose[d] each element" of the claim  625 F.Supp. at 352, 228 USPQ at 494

[1] Urging reversal as a matter of law, GTE says the district court applied an improper test for anticipation  The contention is meritless  The district court correctly defined the test for anticipation as "disclosure in a single prior art reference of each element of the claim under consideration," *id* . and then correctly applied that test  Nor does the record offer a scintilla of support for GTE's assertion that the district court improperly "looked beyond a single reference" in considering the anticipation issue

GTE next contends that: (i) Claim 15 is not limited to "three-point" contact; (ii) *Maschinen* discloses three point contact; (iii) *Maschinen* discloses switching at

800 F 2d 1101
800 F 2d 1101, 231 U S P Q 185
**(Cite as: 800 F.2d 1101)**

the seats; and (iv) *Maschinen* discloses a lateral constraining means

#### (i) *Three point contact*

[2] GTE presents a convoluted argument focused on specific elements in claim 15, ignoring the rule that the *elements* are not claimed, the *combination* is  The district court twice found that the prior art references did not disclose "3 points of mechanical contact *to achieve a positively defined rest position*" 625 F.Supp. at 349, 228 USPQ at 492 (emphasis added)  It noted that GTE's expert Fisher admitted that Rolls-Royce's expert Duffie's interpretation was reasonable, and that nothing in the references disclosed turning pairs of surfaces into convergent surfaces

GTE has not persuaded us that the district court clearly erred  Before the district court, GTE unsuccessfully argued that claim 15 was limited to "convergent surfaces"  *See* 625 F.Supp. at 348, 228 USPQ at 491  Before this court, GTE argues that claim 15 is directed to "nonconvergent surfaces"  Whatever may be said of GTE's volte-face, its assertion that claim 15 must include at least two points of mechanical contact at each of the three locations is unsupported by any reference to undisputed testimony of record

#### ii *Disclosure of three point contact*

GTE contends that even if claim 15 were limited to one point of contact at three locations, it would nonetheless read directly on the *Maschinen* reference, pointing to testimony of its experts Barker and Fisher, which it says was not disputed  GTE ignores the district court's contrary finding that Maschinen did not disclose three point contact "to achieve a positively defined rest position"  GTE also ignores the testimony of Rolls-Royce's experts about the "positively defined rest position"  No clear error has been shown

#### iii *Switching at the seats*

GTE says the district court clearly erred in finding, for purposes of anticipation, that *Maschinen* did not teach switching at the seats  No reference to switching at the seats as such is made in the district court's opinion on anticipation  GTE imports the reference

from the court's findings in relation to obviousness, in light of the court's statement about the "same reasons"  The argument is unavailing, *Maschinen* having clearly failed to disclose each element in Claim 15

#### iv *Lateral Constraint*

[3] GTE repeats testimony of its expert Fisher that "Maschinen clearly discloses a lateral constraining means in the close fit **\*1106** of the stylus against the housing "  Rolls-Royce points to expert testimony supporting the district court's finding that the prior art references "do not teach transverse constraint of the stylus because there is a gap between the movable member and the housing," 625 F.Supp. at 349, 228 USPQ at 492

GTE's arguments on this point, as on so many others in this appeal, reflect a misperception of the appellate process and the role of this court  "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous "  *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *see also Polaroid Corp. v. Eastman Kodak Co.,* 789 F.2d 1556, 1558, 229 USPQ 561, 563 (Fed.Cir.1986).

[4] Nothing whatever of record indicates that the district court's finding was in any manner impermissible  Moreover, if an appellant could establish clear error in a district court's findings, i e , in the court's view of apparently conflicting evidence, by merely citing a contrary view advocated at trial by appellant's expert, the fact finding role of the district court would be rendered meaningless  *See Polaroid, supra,* 789 F.2d at 1573, 229 USPQ at 574

#### 2 *Obviousness*

[5] The district court correctly framed and conducted the obviousness inquiry in light of *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966)  As above indicated, the court set forth five findings in respect of the differences between the prior art and the invention of claim 15, and found "extraordinary commercial success" of that invention, long-felt but unfilled needs in the industry, and industry acquiescence  625 F.Supp. at

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

800 F 2d 1101                                                          Page 7
800 F 2d 1101, 231 U S P Q 185
(Cite as: 800 F.2d 1101)

349-50, 228 USPQ at 492 FN5 GTE's arguments on appeal in respect of obviousness are without merit Relying on a publication ("Principles of Design") not set forth in its § 282 notice and not raised until after trial, GTE asserts that the "concept" of kinematic design and its implementation was old In constructing the argument on obviousness here, GTE assumes the existence of findings never made by the district court and blithely ignores the findings it did make The district court's findings were not clearly erroneous and those findings support its conclusion obviousness No useful purpose would be served, therefore, in further discussion of GTE's arguments on obviousness

> FN5. GTE attacks only the commercial success finding in its main brief In so doing, GTE continues to ignore the claimed invention and the coverage by claim 15 of all embodiments disclosed in the '998 patent, arguing that only a few of Rolls-Royce's sales were of one embodiment and most sales were of another embodiment GTE stipulated the commercial success of the accused probe

Because GTE fails utterly to sustain its burden on appeal, we affirm the district court's determination that GTE failed to prove facts requiring a holding that claim 15 is invalid

### III Enforceability of the '998 patent

GTE contends that Rolls-Royce improperly failed to cite Maschinen to the Examiner, and improperly delayed citing Automatologie FN6 The district court found that Automatologie and Maschinen (1) were merely cumulative with prior art cited by Rolls-Royce and considered by the examiner (U.S. Patent No. 3,541,924 to Gambin); (2) disclose substantially the same device; and (3) have the same relative lack of materiality with respect to the invention set forth in claim 15 625 F.Supp. at 354, 228 USPQ at 496

> FN6. The parties devote substantial space to the timing of the citation of Automatologie In view of our agreement with the district court's determination that the reference was

merely cumulative, and thus not material, we need not and do not discuss the parties' contentions on timing of the citation

### 1 Materiality

[6] No clear error has been shown in the district court's findings that Maschinen and Automatologie shared the same "lack of materiality" and were merely cumulative*1107 with the art before the Examiner Id

GTE's assertion that Maschinen is more material than Automatologie is implausible in view of its anticipation assertions that claim 15 "literally reads on" both references If that were true, it would be difficult to argue any substantial difference in materiality GTE's argument that Maschinen discloses some structural differences from Automatologie does not establish that those differences render it more material in relation to claim 15, nor do those differences change Maschinen's cumulative relationship with the considered art

### 2 Intent

[7] The district court heard testimony that Rolls-Royce had an honest belief that neither Maschinen nor Automatologie was material Rolls-Royce's assertion of subjective "good faith" would not alone suffice if "an actor in applicant's position would have reasonably known that the reference was material," J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1564, 223 USPQ 1089, 1096 (Fed.Cir.1984), cert denied. --- U.S. ----, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985), see also Argus Chemical Corp. v. Fibre Glass-Evercoat Co., 759 F.2d 10, 14, 225 USPQ 1100, 1103 (Fed.Cir.1985), cert denied. - -- U.S. ----, 106 S.Ct. 231, 88 L.Ed.2d 230 (1986) Nothing in law or logic, however, requires an applicant to submit non-material, merely cumulative references for PTO review, and nothing of record would support a finding in this case that Rolls-Royce should "have reasonably known the reference[s] [were] material" in the context of the disclosure requirement

GTE's intent arguments on appeal rely on inferences rejected by the district court, and ignore testimony credited by the district court in arriving at its determ-

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

800 F 2d 1101
800 F 2d 1101, 231 U S P Q 185
(Cite as: 800 F.2d 1101)

ination

The district court properly considered the balanced concepts of materiality and intent enroute to its conclusion that Rolls-Royce's conduct was not inequitable Having been shown nothing in the record that compels reversal, we affirm that part of the district court's judgment relating to unenforceability

### IV  *Infringement of the Claims of the '093 Chain Patents*

GTE concedes literal infringement, i e , that the asserted claims of the '093 chain patent "read on" its accused Cusack device GTE contends, however, that the claims must be read as limited to "a 6-way probe", and, because the Cusack device is a "five-way probe", there can be no infringement GTE simply disregards the readability of the claims on both types of probes

In responding to GTE's argument, the district court said "a claim for a 6-way probe inherently includes the capability of a 5-way probe " 625 F.Supp. at 350, 228 USPQ at 493  The court went on, however, to find that Figure 6 of the '093 chain patents discloses a 5-way probe "because the ball stylus tip shown cannot be used in a 6-way operation " *Id*  Though its "inherently" phrasing may have been infelicitous, it is clear on the entire record that the district court interpreted the claims as covering both five and six-way probes  GTE has not on appeal shown that interpretation to have been erroneous as a matter of law

Seizing on the district court's single phrase, GTE says "a claim that is *in fact* limited to [a] six-way probe does not 'inherently' cover a five-way only probe " (Emphasis GTE's)  That correct statement of legal principle is, however, inapplicable here, where the claims are not "limited in fact" to six-way probes FN7 GTE bases its appeal from this portion of the judgment on (a) the reverse doctrine of equivalents; (b) what it calls "the authority" of *Foster Wheeler Corp. v. Babcock & Wilcox Co.*, 512 F.Supp. 792, 210 USPQ 232 (S.D.N.Y.1981); and (c) principles of proper claim construction

> FN7. When the application that matured into the patent on its Cusack probe was rejected

under § 102(b) on the '093 chain patents, GTE did *not* argue that its probe distinguished because it was a five-way probe

#### *1108 (a) The Reverse Doctrine of Equivalents

[8] The district court's decision does not mention the reverse doctrine of equivalents Rolls-Royce says GTE "*never* mentioned the doctrine in the '093 chain pleadings or testimony, and presented no evidence on the factual issue of equivalency (or lack thereof) " (Emphasis Rolls-Royce's) GTE's response, that it raised the reverse doctrine of equivalents in its opposition to Rolls-Royce's motion for summary judgment, and in its pretrial and post-trial briefs, is unavailing Judgments rendered after trial are based on what transpired at trial Oppositions to motions and briefs are not themselves evidence at trial, and GTE's effort to rely on those papers here is inappropriate An appeal is not a means for counsel to cure mistakes and omissions made at trial <u>FN8</u> In sum, GTE never contended before the district court that its accused Cusack device "has been so far changed in principle that it performs the same or similar function in a substantially different way " *SRI International v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1124, 227 USPQ 577, 587 (Fed.Cir.1985) (in banc) It cannot be heard to make that argument here, and its attack on the district court for not discussing what was never presented at trial is not only bold and reckless, as Rolls-Royce points out, it is improper *See Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1243-44, 222 USPQ 649, 654 (Fed.Cir.1984)

> FN8. GTE's statement in those papers (that it had not appropriated "any technological advancement" or "the essence of any invention") is similar to its argument on appeal that it did not "appropriate the real invention or contribution" of the '093 chain patents

There being no evidence adduced at trial in support of a requested finding that the accused device was so changed in principle that it performs in a substantially different way, GTE's argument based on the reverse doctrine of equivalents is rejected

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

(b) *'Authority'' of Foster Wheeler*

In relying on *Foster Wheeler*, GTE argues that the narrow disclosure of the '093 chain patent's specification does not support the broad claims asserted and that its probe does not infringe the claims as properly limited Citing no claim language that must be limited by the specification, GTE says the specification limits what *it* views as "the very invention itself"

In *Foster Wheeler*, the specification of the patent in suit expressly identified *the allegedly infringing device* and stated that its operation presented problems that were solved by the invention claimed in the patent No such scenario is present here Moreover, nothing of record supports GTE's present assertions relating to the provisions of 35 U.S.C. § 112

(c) *Claim Construction*

[9] GTE argues that the specification compels a construction of the claims of the '093 chain patents that would exclude its five-way only probe heads, citing from the specification a reference to a "known" probe which did not permit stylus displacement in a direction opposite that faced by the seat and a statement that "an object of this invention is to overcome this difficulty "

GTE's arguments are unavailing As Rolls-Royce notes, nothing in the '093 specification or claims exclusively directs the invention to a six-way probe head embodiment Reference to an object does not constitute in itself a limitation in the claims In all events, nothing of record renders erroneous the district court's determination that the '093 probe head operates as, and the claims cover, both a five-way and a six-way embodiment 625 F.Supp. at 347, 228 USPQ at 490 Moreover, though the probe head of Figure 6 may be capable of sensing engagement in both directions along the z-axis, GTE has not shown clearly erroneous the district court's finding, based on the evidence before it, that the ball-tipped stylus of Figure 6 (being rounded) cannot be pulled downward, i e , does not sense engagement in the negative direction, and thus functions only as a five-way probe head

*1109 The district court's finding of infringement has

not been shown to have been clearly erroneous Accordingly, we affirm that portion of the judgment based on GTE's infringement of the asserted claims of the '093 chain patents

V *Willful Infringement*

[10] The district court found that GTE did not willfully infringe, stating, in reference to the '998 patent, that "[GTE] did not intentionally copy plaintiff's patent [sic, invention], but tried to design around [the patent claims] " 625 F.Supp. at 355, 228 USPQ at 497 Rolls-Royce's expert Sears twice said precisely that at trial

Rolls-Royce asks this court to accept as fact its characterization of the record as showing that GTE "with full knowledge of '998, and after unsuccessful design around attempts, surrendered to market pressures and commercialized its infringing products " It urges this court to reverse as clearly erroneous the district court's refusal to find willful infringement based on that characterization and in light of what it calls "the undisputed facts of record " Upon review of the district court's finding in light of the record, we do not conclude that the court clearly erred

It is undisputed that GTE did not obtain advice of counsel on whether the accused Cusack reed probe infringed However, the district court heard Murray's testimony on cross-examination that "[GTE] was very conscious of the need not to infringe any patents with its probe head," and that GTE believed "with respect to Cusack's reed probe that there wouldn't be any patent problem because [the probe] was different " On redirect, Murray further testified about Cusack's "heightened sensitivity to the [Rolls-Royce] patents " GTE engineer Miller stated that, following the invention of the Cusack reed probe, he and Cusack discussed whether it avoided infringement of Rolls-Royce's patents because that was "absolutely what we had to do," but that he was not aware of any opinion of counsel to that effect

Rolls-Royce's reliance on *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 227 USPQ 497 (Fed.Cir.1985), as requiring reversal here, is misplaced In that case, the district court *found* that de-

© 2007 Thomson/West No Claim to Orig U S Govt Works

800 F 2d 1101                                                                    Page 10
800 F 2d 1101, 231 U S P Q 185
(Cite as: 800 F.2d 1101)

fendant, after being warned of infringement by the patentee, made no infringement or validity inquiries and intentionally "disregard[ed]" the warning The finding of non-willfulness in *CPG* was in direct conflict with that finding of intentional disregard, and thus with the infringer's affirmative duty "to exercise due care to determine whether or not he is infringing," *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.,* 717 F.2d 1380, 1389-90, 219 USPQ 569, 576 (Fed.Cir.1983) Because a contrary ultimate finding of willfulness was compelled by the court's unchallengeable underlying findings. we reversed *See Kloster Speedsteel. AB v Crucible Inc.* 793 F 2d 1565, 1579-80, 230 USPQ 81, 88-89 (Fed Cir 1986) *CPG* is simply inapplicable here, where the district court's underlying finding, supported by Rolls-Royce's own expert Sears, was that GTE made bona-fide efforts to avoid infringement by attempting to "design around" the claimed invention

It is by now well settled that where a potential infringer has actual notice of another's patent rights he has an affirmative duty of due care *Underwater Devices, supra. CPG. supra* That affirmative duty will normally entail the obtaining of competent legal advice of counsel before infringing or continuing to infringe; that does not mean, however, that absence of an opinion of counsel alone *requires* in every case a finding of willful infringement As this court stated in *Kloster Speedsteel AB.* 793 F 2d at 1579, 230 USPQ at 90-91: "Though it is an important consideration, not every failure to seek an opinion of competent counsel will mandate an ultimate finding of willfulness " *See King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 867, 226 USPQ 402, 412 (Fed.Cir.1985) (court "should always look at the totality of the circumstances"), *cert denied. --- U.S. ----, 106 S.Ct. 1197, 86 L Ed 2d 312 (1986); *see also* *1110*Central Soya Co., Inc. v. George A. Hormel & Co.,* 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983)

In respect of willfulness, there cannot be hard and fast *per se* rules The district court, considering the evidence before it and the testimony and demeanor of the witnesses, must in each case determine whether an infringer has discharged its affirmative duty of exercising due care Here, the district court found, in

light of the totality of the circumstances, that GTE had recognized and discharged that duty *See also* *Radio Steel & Manufacturing Co. v. MTD Products, Inc.,* 788 F.2d 1554, 1558-59, 229 USPQ 431, 434-35 (Fed.Cir.1986) Though the question is not totally free of doubt, that finding has not been shown to have been clearly erroneous [FN9] Rolls-Royce urges this court to draw an adverse inference from GTE's obtaining of counsel's opinion that an earlier (Miller) device infringed the '998 patent, abandoning that device in light of that advice, and then *not* obtaining counsel's opinion in respect of the Cusack reedprobe, particularly in light of its claimed "concern" over avoidance of infringement The argument is not without some merit. Infringers should not escape a finding of willfulness by merely denying themselves counsel's advice while relying on opinions of lay-employees

> FN9. GTE attempts to bring itself within the parameters of *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 226 USPQ 402 (Fed.Cir.1985), saying the district court "could" have inferred that GTE reasonably believed it was not infringing in view of its patent on the accused device That patent, however, did not issue until almost two years *after* GTE's infringement began In any event, that someone has a patent right to exclude others from making the invention claimed in his patent does not mean that his invention cannot infringe claims of another's patent broad enough to encompass, i e , to "dominate", his invention

Whether this court, if sitting at trial, would have drawn the inference sought by Rolls-Royce is of no moment The district court heard Sears' firm testimony, unshaken on re-direct, that GTE did not "copy" and was attempting to design around the patent That Rolls-Royce failed to establish willfulness in GTE's failure to obtain counsel's advice on whether its attempt was successful cannot be cured on appeal

This court does not sit to reweigh the evidence presented to the district court, nor will it draw its own inferences, nor make its own fact findings It will not

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

800 F 2d 1101                                                              Page 11
800 F 2d 1101, 231 U S P Q  185
**(Cite as: 800 F.2d 1101)**

reverse unless the inferences drawn and facts found by the trial court are on the full record so unsupported as to have been the result of clear error  The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses  Lastly, as above indicated, where two interpretations or inferences are permissible, this court must not substitute its evaluation of testimony for that of the district court  *See Anderson v. City of Bessemer City, N.C., 470 U.S. at 573-74, 105 S.Ct. at 1512*  Rolls-Royce's contentions were fully presented to the district court, which declined to draw the inference sought  Nothing in this record compels us to do so

Accordingly, the portion of the judgment based on the finding of non-willfulness is affirmed

## VI  *Exceptional Case*

[11][12] Rolls-Royce asserts that allegedly baseless defenses and contentions raised by GTE required a finding of exceptional case and an award of attorney fees FN10  The district court, in the best position to view and adjudge the conduct of the parties,*1111 and the most injured by misconduct at the pretrial and trial stages, said "the Court cannot find that the actions of defense counsel added up to bad faith, fraud, malice, or other similar concepts," and that "it is clear that attorney fees may not be awarded "  Though bad faith, fraud, and malice are not required, and misconduct (e g , frivolity; harassing tactics) may suffice, the district court presumably included the latter in "other similar concepts "  Rolls-Royce has not shown the district court's findings on the nature of defense counsel's actions to have been clearly erroneous, thus we need not reach whether the district court abused its discretion in declining to award attorney fees  *See Porter v. Farmers Supply Service, Inc., 790 F.2d 882, 886-87, 229 USPQ 814, 817 (Fed.Cir.1986)*  The refusal to find this an exceptional case under 35 U.S.C. § 285, and the consequent denial of attorney fees, are accordingly affirmed

> FN10. Rolls-Royce cites instances in which it says GTE filed allegations without adequate investigation, and defenses aban-

doned at trial  The record does not reflect that Rolls-Royce moved the district court for application of sanctions under Rule 11, Fed.R.Civ.P  In all events, the conduct attributed to GTE's counsel would be an affront to the district court, whose findings indicate that it did not consider that conduct sufficiently an affront to make the case before it exceptional  In declining to find abuse of discretion on the part of the district court, we do not thereby condone the conduct described in ten pages of Rolls-Royce's brief  GTE ignored all but two of the listed instances of litigation misconduct, responding to those two disingenuously  The filing of numerous unfounded defenses, followed by a failure to press them at trial, is an abuse of the judicial process at the trial level

The parties to this appeal and cross-appeal will pay their own costs

AFFIRMED

C A Fed (Mich ),1986
Rolls-Royce Ltd  v  GTE Valeron Corp
800 F 2d 1101, 231 U S P Q  185

END OF DOCUMENT

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

# EXHIBIT 11

Westlaw.

316 F.3d 337                                                                                           Page 1
316 F.3d 337, 90 Fair Empl.Prac.Cas. (BNA) 1266, 83 Empl. Prac. Dec. P 41,309, 29 Employee Benefits Cas. 2185
**(Cite as: 316 F.3d 337)**

▷
Briefs and Other Related Documents
Saks v. Franklin Covey Co C.A.2 (N.Y.),2003.
    United States Court of Appeals,Second Circuit
        Rochelle SAKS, Plaintiff-Appellant,
                        v.
FRANKLIN COVEY CO. and Franklin Covey Client
    Sales, Inc., Defendants-Appellees
            **Docket No. 00-9598.**

            Argued Jan. 10, 2002
            Decided Jan. 15, 2003

Infertile female employee brought action against em-
ployer under Americans with Disabilities Act (ADA),
Title VII, Pregnancy Discrimination Act, and state
law following denial of her claim for benefits under
employer's self-insured employee health benefits plan
for expenses related to surgical impregnation proced-
ures. On cross-motions for summary judgment, the
United States District Court for the Southern District
of New York, Colleen McMahon, J., 117 F.Supp.2d
318, granted summary judgment in favor of employ-
er, and employee appealed. The Court of Appeals,
John M. Walker, Jr., Chief Judge, held that: (1) plan's
exclusion of surgical impregnation procedures did
not violate the Pregnancy Discrimination Act's pro-
hibition of discrimination on basis of pregnancy and
"related medical conditions," or Title VII's prohibi-
tion of discrimination on basis of sex, and (2) em-
ployer did not sufficiently plead affirmative defense
of ERISA preemption, and thus ERISA preemption
defense was untimely and subject to waiver.

Affirmed in part, and remanded in part.
West Headnotes
**[1] Federal Courts 170B ☞776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited
Cases
The Court of Appeals reviews a district court's grant
of summary judgment de novo.

**[2] Civil Rights 78 ☞1136**

78 Civil Rights
    78II Employment Practices
        78k1136 k. Compensation and Benefits. Most
Cited Cases
    (Formerly 78k152)
Title VII's prohibition of employment practices that
"discriminate against any individual with respect to
his compensation, terms, conditions, or privileges of
employment" extends to discrimination in providing
health insurance and other fringe benefits. Civil
Rights Act of 1964, § 703(a)(1), as amended, 42
U.S.C.A. § 2000e-2(a)(1).

**[3] Civil Rights 78 ☞1176**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1176 k. Pregnancy; Maternity. Most
Cited Cases
    (Formerly 78k162)
Under the Pregnancy Discrimination Act, an other-
wise inclusive benefits plan that singles out preg-
nancy-related benefits for exclusion is discriminatory
on its face. Civil Rights Act of 1964, § 701(k), as
amended, 42 U.S.C.A. § 2000e(k).

**[4] Civil Rights 78 ☞1175**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1175 k. Compensation; Comparable
Worth. Most Cited Cases
    (Formerly 78k161)
The equal access standard of review applicable in
disability discrimination cases under the ADA does
not apply to Title VII claims involving sex discrimin-
ation in the provision of employee benefits packages;
rather, the proper inquiry in reviewing such a chal-
lenge is whether sex-specific conditions exist, and if
so, whether exclusion of benefits for those conditions
results in a plan that provides inferior coverage to one
sex. Americans with Disabilities Act of 1990, § 2 et

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

316 F 3d 337                                                                                   Page 2
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

seq , 42 U.S.C.A. § 12101 et seq ; Civil Rights Act of 1964, § 701 et seq , as amended, 42 U.S.C.A. § 2000e et seq

**[5] Civil Rights 78 ⟐1175**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1175 k  Compensation; Comparable Worth  Most Cited Cases
        (Formerly 78k161)
In reviewing Title VII claims involving sex discrimination in the provision of employee benefits packages, Court of appeals would not endorse "couple analysis," under which a female-specific exclusion would not constitute sex discrimination so long as male and female employees and their respective partners received the same health benefits when considered as a couple  Civil Rights Act of 1964, § 701 et seq , as amended, 42 U.S.C.A. § 2000e et seq

**[6] Civil Rights 78 ⟐1176**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1176 k  Pregnancy; Maternity  Most Cited Cases
        (Formerly 78k162)
Health benefits plan's exclusion of surgical impregnation procedures did not violate the Pregnancy Discrimination Act's prohibition of discrimination on basis of pregnancy and "related medical conditions," where infertility was not a condition unique to women, but rather, was a medical condition that afflicted men and women with equal frequency  Civil Rights Act of 1964, § 701(k), as amended, 42 U.S.C.A. § 2000e(k)

**[7] Statutes 361 ⟐188**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k187 Meaning of Language
                361k188 k  In General  Most Cited Cases
Every exercise in statutory construction must begin with the words of the text

**[8] Statutes 361 ⟐205**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k204 Statute as a Whole, and Intrinsic Aids to Construction
                361k205 k  In General  Most Cited Cases

**Statutes 361 ⟐208**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k204 Statute as a Whole, and Intrinsic Aids to Construction
                361k208 k  Context and Related Clauses  Most Cited Cases
For purposes of statutory construction, the text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute

**[9] Civil Rights 78 ⟐1176**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1176 k  Pregnancy; Maternity  Most Cited Cases
        (Formerly 78k162)
For a condition to fall within the Pregnancy Discrimination Act's inclusion of pregnancy and "related medical conditions" as sex-based characteristics, that condition must be unique to women  Civil Rights Act of 1964, § 701(k), as amended, 42 U.S.C.A. § 2000e(k)

**[10] Civil Rights 78 ⟐1176**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1176 k  Pregnancy; Maternity  Most Cited Cases
        (Formerly 78k162)
Health benefits plan's exclusion of surgical impregnation procedures did not violate Title VII's prohibition of discrimination on basis of sex, although the surgic-

© 2007 Thomson/West  No Claim to Orig  U S Govt  Works

316 F 3d 337                                                           Page 3
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

al procedures were performed only on women, where the surgical procedures were used to treat both male and female infertility with equal frequency Civil Rights Act of 1964, § 701 et seq , as amended, 42 U.S.C.A. § 2000e et seq

## [11] Civil Rights 78 ⟐1176

78 Civil Rights
   78II Employment Practices
      78k1164 Sex Discrimination in General
         78k1176 k Pregnancy; Maternity Most Cited Cases
      (Formerly 78k162)
Infertile female employee's argument that since health benefits plan implicitly would not cover procedures performed on an infertile male employee's healthy wife, the explicit exclusion of coverage for surgical impregnation procedures limited only coverage for treatment of a female employee's infertility was too speculative to defeat employer's motion for summary judgment on employee's sex discrimination claim under Title VII; employee failed to offer any data showing that insurance companies that do cover surgical impregnation procedures did so only for female infertility, and not when procedures must be performed on a healthy woman because of her partner's infertility Civil Rights Act of 1964, § 701 et seq , as amended, 42 U.S.C.A. § 2000e et seq

## [12] Labor and Employment 231H ⟐407

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(A) In General
         231Hk407 k Preemption Most Cited Cases
      (Formerly 296k22)

## Labor and Employment 231H ⟐677

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)5 Actions to Recover Benefits
            231Hk677 k Jurisdiction and Venue Most Cited Cases
      (Formerly 296k139)

## States 360 ⟐18.51

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.45 Labor and Employment
            360k18.51 k Pensions and Benefits Most Cited Cases
ERISA preemption in a benefits-due action is a waivable defense, since ERISA's jurisdictional provision governing benefits-due actions and providing concurrent jurisdiction in state and federal district courts prescribes the choice of law, not jurisdiction Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), (e)(1), 29 U.S.C.A. § 1132(a)(1)(B), (e)(1)

## [13] Federal Civil Procedure 170A ⟐751

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(C) Answer
         170AVII(C)2 Affirmative Defense or Avoidance
            170Ak751 k In General Most Cited Cases
For purposes of procedural rule requiring that a responsive pleading set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense," an "affirmative defense" is a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A

## [14] Labor and Employment 231H ⟐407

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(A) In General
         231Hk407 k Preemption Most Cited Cases
      (Formerly 296k22)

## States 360 ⟐18.51

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.45 Labor and Employment
            360k18.51 k Pensions and Benefits

316 F 3d 337                                                                            Page 4
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
(Cite as: 316 F.3d 337)

Most Cited Cases

Absent an express exception in ERISA, ERISA's preemption provision extinguishes a plaintiff's state contract claims if those claims "relate to" an employee benefit plan Employee Retirement Income Security Act of 1974, § 2 et seq , 29 U.S.C.A. § 1001 et seq.

**[15] Labor and Employment 231H ☞680**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
           231HVII(K)5 Actions to Recover Benefits
                231Hk680 k. Pleading Most Cited Cases
(Formerly 296k139)

ERISA preemption of state contract claims in a benefits-due action is an affirmative defense that is untimely, and therefore subject to waiver, if not pleaded in the defendant's answer Employee Retirement Income Security Act of 1974, § 2 et seq , 29 U.S.C.A. § 1001 et seq ; Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A.

**[16] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
           170AVII(C)2 Affirmative Defense or Avoidance
                170Ak751 k. In General Most Cited Cases

Employer did not sufficiently plead affirmative defense of ERISA preemption by asserting in its answer the general defense of failure to state a claim upon which relief could be granted, and thus ERISA preemption defense was untimely and subject to waiver, where general defense did not place employee on notice that ERISA preemption defense would be pursued, so as to prevent surprise or unfair prejudice; rather, employee was left in the dark about ERISA preemption defense until employer's motion for summary judgment Employee Retirement Income Security Act of 1974, § 2 et seq , 29 U.S.C.A. § 1001 et seq ; Fed.Rules Civ.Proc.Rules 8(c), 12(h)(6) 28 U.S.C.A.

**[17] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
           170AVII(C)2 Affirmative Defense or Avoidance
                170Ak751 k. In General Most Cited Cases

A general assertion that the plaintiff's complaint fails to state a claim is insufficient to protect the plaintiff from being ambushed with an affirmative defense

**[18] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
           170AVII(C)2 Affirmative Defense or Avoidance
                170Ak751 k. In General Most Cited Cases

Employer did not sufficiently plead affirmative defense of ERISA preemption by stating in its answer that health benefits plan's exclusions challenged by employee were within safe harbor provision of the ADA, and thus ERISA preemption defense was untimely and subject to waiver, since safe harbor provision of the ADA provided that ERISA plans were generally not covered by provisions of the ADA. Employee Retirement Income Security Act of 1974, § 2 et seq , 29 U.S.C.A. § 1001 et seq ; Americans with Disabilities Act of 1990, § 501(c)(3), 42 U.S.C.A. § 12201(c)(3); Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A.

**[19] Federal Civil Procedure 170A ☞751**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
           170AVII(C)2 Affirmative Defense or Avoidance
                170Ak751 k. In General Most Cited Cases

Notwithstanding a defendant's failure to timely plead an affirmative defense, a district court may still entertain affirmative defenses at the summary judgment

© 2007 Thomson/West No Claim to Orig U S Govt Works

316 F 3d 337                                                                              Page 5
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
(Cite as: 316 F.3d 337)

stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings; in such circumstances, the district court may construe the motion for summary judgment as a motion to amend the defendant's answer

*340 Darnley D. Stewart,Bernstein Litowitz Berger & Grossmann, LLP, (Daniel L. Berger, Leah Guggenheimer, on the brief), New York, NY, for Plaintiff-Appellant

Steven C. BednarManning Curtis Bradshaw & Bednar LLC, Salt Lake City, UT, for Defendants-Appellees

Jonathan S. Franklin, Hogan & Hartson LLP, Washington, DC (Catherine E. Stetson, on the brief), for Amicus Curiae American Society for Reproductive Medicine, in Support of Plaintiff-Appellant

Before: WALKER, Chief Judge, F I PARKER and SOTOMAYOR, Circuit Judges

JOHN M. WALKER, JR., Chief Judge
This case raises the question of whether unlawful discrimination occurs when a woman is denied coverage for infertility treatments that can only be performed on women After plaintiff-appellant Rochelle Saks was denied coverage for certain infertility procedures under her employee health benefits plan, she sued her employer, Franklin Covey Client Sales, Inc , and its parent company, Franklin Covey Co. (collectively, "Franklin Covey"), claiming that the denial of coverage constituted a breach of her contractual rights and violated her civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq , the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq . and the New York Human Rights Law, N.Y. Exec. Law § 290, et seq The United States District Court for the Southern District of New York (Colleen McMahon, District*341 Judge ) granted Franklin Covey's motion for summary judgment on the grounds that (1) the lack of coverage for the contested infertility procedures-specifically, artificial insemination, in vitro fertilization, and in utero insemination-does not violate any of the federal statutes and (2) Saks's state law claims were pre-empted by ERISA See Saks v. Franklin Covey Co., 117 F.Supp.2d 318, 327-28, 329, 330 (S.D.N.Y 2000)

With respect to Saks's Title VII and PDA claims, although we differ with the district court's analysis in several important respects, we affirm the grant of summary judgment in favor of Franklin Covey As to the preemption of Saks's state law claims by ERISA, we remand to the district court for further proceedings

BACKGROUND

I Relevant Facts

Franklin Covey employed Saks as a store manager from March 1995 until she resigned in October 1999 During her tenure of employment, Saks was a member of Franklin Covey's self-insured health benefits plan ("the Plan"), which provided coverage to full-time employees and their dependents Claims under the Plan were handled through The TPA, Inc ("TPA"), a third-party processing agent hired by Franklin Covey

Under the Plan, an employee is entitled to benefits for "medically necessary" procedures, which are defined as "[a]ny service required for the diagnosis or treatment of an active illness or injury that is rendered by or under the direct supervision of the attending physician " Franklin Covey Medical/Dental Plan 78 (1998) ("Franklin Covey Plan") The Plan defines an active illness as '[a]ny bodily sickness, disease, mental/nervous disorder or pregnancy " Id at 77

Under the Plan, Franklin Covey employees may claim benefits for a variety of infertility products and procedures, such as ovulation kits, oral fertility drugs, penile prosthetic implants (when certified by a physician to be medically necessary), and nearly all surgical infertility treatments See id at 46, 49, 52 Examples of covered surgical infertility treatments include procedures to remedy conditions such as variococeles (varicose veins in the testicles causing low sperm count), blockages of the vas deferens, endometriosis, and tubal occlusions The Plan expressly excludes coverage for "[s]urgical impregnation procedures, including artificial insemination, in-vitro fertilization or embryo and fetal implants" (collectively,

© 2007 Thomson/West No Claim to Orig U S Govt Works

316 F.3d 337                                                                                      Page 6
316 F.3d 337, 90 Fair Empl Prac Cas. (BNA) 1266, 83 Empl. Prac. Dec. P 41,309, 29 Employee Benefits Cas. 2185
(Cite as: 316 F.3d 337)

"surgical impregnation procedures"), even if medically necessary. *Id.* at 49, 52. However, once pregnancy is achieved, whether by covered or uncovered means, all pregnancy-related costs are covered. *See Saks*, 117 F.Supp.2d at 329.

During her employment with Franklin Covey, Saks attempted unsuccessfully to have a child with her husband. Under the care of several reproductive endocrinologists, Saks followed various courses of action, including (1) the use of ovulation kits, (2) the administration of the drug Clomid in order to induce and regulate ovulation, (3) intrauterine inseminations ("IUIs"), (4) *in vitro* fertilization ("IVFs"), (5) the use of progesterone and estrogen, (6) the administration of several injectable fertility drugs, such as Humagon, and (7) blood tests and ultrasounds in order to monitor the potentially harmful side effects of the drugs prescribed to her. *See id.* at 321-23. Saks achieved pregnancy in September 1997 and again in August 1999, but unfortunately each pregnancy ended in a miscarriage *See id.* at 322-23. In April 1999, Saks also had a chemical pregnancy (one marked by a hormonal change but not confirmed by an ultrasound) that was not sustained. *See id.* at 323.

**\*342** Saks sought reimbursement from the TPA for all of the costs associated with her infertility treatments. For the purposes of the summary judgment motion, Franklin Covey did not dispute that infertility is an illness as defined by the Plan or that surgical impregnation procedures were "medically necessary" to treat Saks's infertility problems. *See id.* at 320 & n. 1. The TPA refused to reimburse Saks for a great many of the costs, including all of the IUIs, IVFs, injectable fertility drugs, and tests necessary to monitor the potential side effects of the drugs.[FN1] *See id.* at 322-23. Compensation for the IUIs and IVFs was denied based on the Plan's express exclusion of coverage for surgical impregnation techniques. Although the costs of non-insulin injectable drugs are generally covered under the Plan, the TPA rejected Saks's claims for the injectable fertility drugs and the drug-related monitoring because they were used in conjunction with the surgical impregnation procedures. *See* Franklin Covey Plan 49; Clarke Dep. 140-43, 161, 166-67. After filing a charge against Franklin Covey with the EEOC, Saks initiated the instant action.

FN1. The TPA also initially denied her coverage for expenses related to her September pregnancy and subsequent miscarriage. In October 1998, Saks successfully appealed this denial and was reimbursed for her expenses. *See Saks*, 117 F.Supp.2d at 322.

II. District Court Decision

In the district court, Saks alleged that Franklin Covey breached its contractual obligations and that the Plan's exclusion of coverage for surgical impregnation procedures violates the ADA, Title VII, the PDA, and the New York Human Rights Law. Of specific relevance to this appeal, Saks argued that the Plan violates the PDA, which prohibits discrimination on the basis of pregnancy and "related medical conditions," because the Plan's benefits for infertility treatments are inferior to its coverage for non-pregnancy-related illnesses. Saks also argued that the Plan discriminates on the basis of sex, in violation of Title VII, because it provides incomplete coverage for surgical treatments that address female infertility but provides complete coverage for surgical procedures that remedy male infertility. In moving for summary judgment, Franklin Covey argued that the Plan does not discriminate against infertility or women, and that, in any event, the PDA does not prohibit discrimination based on infertility. In addition, Franklin Covey moved to dismiss Saks's state law claims on the basis that they are preempted by ERISA.

In granting summary judgment for Franklin Covey, the district court determined that the Plan's exclusions affect male and female employees equally and thus did not violate Title VII. *See Saks*, 117 F.Supp.2d at 328. Addressing the PDA claim, the district court first concluded that the PDA prohibits discrimination on the basis of infertility because infertility is a "pregnancy-related" condition. *See id.* at 328-29. The district court nevertheless found that the Plan does not violate the PDA because it provides equal coverage for male and female employees who suffer from infertility. The district court dismissed Saks's state law claims as preempted by ERISA and rejected Saks's argument that defendants had waived the pree-

316 F 3d 337                                                          Page 7
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

mption defense by failing to raise it in their answer. *See id.* at 329-30. Finally, the district court dismissed Saks's claims based on disability discrimination. *See id.* at 326-28. Saks has appealed from all of these rulings except the last one.

## DISCUSSION

[1] We review the district court's grant of summary judgment *de novo See* *343*Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir.2002). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### I Title VII and the Pregnancy Discrimination Act

#### A Background

[2] Title VII prohibits employment practices that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This prohibition extends to discrimination in providing health insurance and other fringe benefits. *See* Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 682, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983).

[3] The Pregnancy Discrimination Act amends Title VII's definition of discrimination "because of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The PDA further mandates that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." *Id.* Under the PDA, "an otherwise inclusive plan that single[s] out pregnancy-related benefits for exclusion" is discriminatory on its face. Newport News, 462 U.S. at 684, 103 S.Ct. 2622.

In challenging the district court's analysis of her PDA

and Title VII claims, Saks argues that (1) the district court applied incorrect standards in evaluating her claims and (2) the Plan discriminates on the basis of sex under Title VII because it provides fewer benefits for infertile female employees than it does for infertile male employees. We agree that the district court applied incorrect standards in analyzing both the PDA claim and the Title VII sex-discrimination claim. Nevertheless, for the reasons explained below, we find that the Plan's exclusion of surgical impregnation procedures does not fall within the purview of the PDA and, because it is gender neutral, does not violate Title VII.

### B Standards for PDA and Title VII claims

#### 1 Equal access standard

In analyzing whether the Plan violates Title VII, the district court adopted the equal access standard used by this court in construing the scope of the ADA's prohibition of discrimination based on disability. *See* Saks, 117 F.Supp.2d at 328-29. In EEOC v. Staten Island Savings Bank, we held that an employee disabilities benefits plan that provided more benefits for physical disabilities than for mental disorders did not violate the ADA, so long as mentally disabled employees had equal access to the physical disability benefits provided to their coworkers. *See* 207 F.3d 144, 149-50 (2d Cir.2000). Extending this analysis to the Title VII context, the district court found that "as long as both men and women receive the same benefits and are subject to the same exclusions under an employer's insurance policy, the policy does not discriminate on the basis of sex." Saks, 117 F.Supp.2d at 328.

The district court erred in applying the equal access standard to Saks's Title VII claim. In *General Electric v. Gilbert*, the Supreme Court applied the equal access standard to an employee disability benefits plan that provided compensation during *344 periods of all disabilities except pregnancy. The Court found that the plan did not violate Title VII because men and women had equal access to the same benefits, even if certain sex-specific benefits were excluded. The Court reasoned that "pregnancy-related disabilities constitute an *additional risk*, unique to women,

© 2007 Thomson/West No Claim to Orig U S Govt Works

316 F 3d 337                                                                                      Page 8
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

and the failure to compensate them for this risk does not destroy the presumed parity of the benefits, accruing to men and women alike, which results from the facially evenhanded *inclusion* of risks " 429 U.S. 125, 139, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (emphasis added) Shortly after the *Gilbert* decision, Congress enacted the PDA, and, in so doing, "not only overturned the specific holding in *General Electric v Gilbert,* but also rejected the test of discrimination employed by the Court in that case " *Newport News,* 462 U.S. at 676, 103 S.Ct. 2622; *accord id.* at 678, 103 S.Ct. 2622 (the PDA "unambiguously expressed [Congress's] disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision"); *see also Cal. Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 277 & n. 6, 284, 288, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987); *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 483 (2d Cir.1985), *aff'd modified and remanded on other grounds,* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)

[4] In light of Congress's repudiation of the equal access standard as applied in *Gilbert,* we conclude that this test is inapplicable to Title VII claims involving sex discrimination in the provision of employee benefits packages Under Title VII the proper inquiry in reviewing a sex discrimination challenge to a health benefits plan is whether sex-specific conditions exist, and if so, whether exclusion of benefits for those conditions results in a plan that provides inferior coverage to one sex *See Newport News,* 462 U.S. at 676, 103 S.Ct. 2622 (stating that equality in employment health benefits plans is measured by the relative comprehensiveness of coverage for men and women)

#### a Couple Analysis

[5] Saks further contends that the district court improperly endorsed a "couple analysis," defined by the parties as a finding that a female-specific exclusion does not constitute sex discrimination so long as male and female employees and their respective partners receive the same health benefits when considered as a couple Franklin Covey, on the other hand, maintains that the couple analysis is used regularly by courts in determining whether an employer's benefits plan constitutes sex discrimination under Title VII We reject Saks's contention that the district court relied on the

couple analysis, and find that Judge McMahon properly focused on the effect of the exclusion on employees, male and female, not on the benefits offered to the couple (*i e* the employee and his or her spouse, considered together) *See Saks,* 117 F.Supp.2d at 328 Contrary to Franklin Covey's suggestion, moreover, we find that the Supreme Court's decision in *Newport News* gives us no reason to adopt the couple analysis, as defined above, as part of this Circuit's PDA or Title VII jurisprudence

In *Newport News,* the Supreme Court held that an employee health benefits plan violated Title VII by covering pregnancy-related costs for employees but excluding such costs for the spouses of employees Reasoning that this exclusion would necessarily affect only the coverage offered to the female spouses of male employees, the Court found that the exclusion discriminated against male employees *See* 462 U.S. at 684-85, 103 S.Ct. 2622 The Court, therefore, focused on whether male and female employees received equal coverage under their health benefits packages It did not hold, as Franklin Covey seems to suggest, that an across-the-board female-*345 specific exclusion would pass muster under Title VII or the PDA, so long as all couples received the same benefits Under Franklin Covey's couple analysis, exclusions based on pregnancy would not violate Title VII, a conclusion that has been squarely rejected by Congress and the Supreme Court *See* 42 U.S.C. § 2000e(k); *Newport News,* 462 U.S. at 684, 103 S.Ct. 2622 FN2

> FN2. Although one might characterize the Court's analysis in *Newport News* as a type of "couple analysis," it differs from the couple analysis described by the parties The Court evaluated the parity of benefits offered to male and female employees, which in that case included an assessment of the benefits offered to the employees' spouses *See Newport News,* 462 U.S. at 683-84, 103 S.Ct. 2622 Likewise, in the instant case, we engage in a couple analysis to the extent that we evaluate whether the exclusion of surgical impregnation procedures results in less comprehensive benefits package for female employees For the reasons

316 F 3d 337                                                                    Page 9
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

stated *infra,* we conclude that it does not

### C. Saks's Infertility Discrimination Claim

[6] Saks claims that the Plan violates the PDA because it provides fewer benefits for infertility procedures than for treatment of other types of illnesses The central issue with respect to this claim is a threshold one of coverage: Whether the PDA's prohibition of discrimination on the basis of pregnancy and "related medical conditions" extends to discrimination on the basis of infertility We have no doubt that by including the phrase "related medical conditions," the statutory language clearly embraces more than pregnancy itself *See Carney v. Martin Luther Home, Inc.,* 824 F.2d 643, 647-48 (8th Cir.1987) The question is how much more

[7][8] Every exercise in statutory construction must begin with the words of the text *See Mallard v. United States Dist. Court,* 490 U.S. 296, 300-01, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Auburn Hous. Auth. v. Martinez,* 277 F.3d 138, 143 (2d Cir.2002) The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole "); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.") We have stated that "the preferred meaning of a statutory provision is one that is consonant with the rest of the statute " *Auburn Hous. Auth.,* 277 F.3d at 144; *accord United States v. Interlink Sys., Inc.,* 984 F.2d 79, 82 (2d Cir.1993)

Title VII is, at its core, a statute that prohibits discrimination "because of," *inter alia,* an individual's sex The PDA modified Title VII by requiring that discrimination on the basis of "pregnancy, childbirth, or related medical conditions" be considered discrim-

ination "because of sex " 42 U.S.C. § 2000e(k) Because reproductive capacity is common to both men and women, we do not read the PDA as introducing a completely new classification of prohibited discrimination based solely on reproductive capacity Rather, the PDA requires that pregnancy, and related conditions, be properly recognized as sex-based characteristics of women

[9] This understanding of the PDA comports with the Supreme Court's reasoning in *International Union v Johnson Controls, Inc .,* in which the Court indicated that, although discrimination based on ***346** "childbearing capacity" violates Title VII as modified by the PDA, discrimination based on "fertility alone" would not *See* 499 U.S. 187, 198, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) We conclude that under this reasoning, for a condition to fall within the PDA's inclusion of "pregnancy and related medical conditions" as sex-based characteristics, that condition must be unique to women.[FN3]

> FN3. In so concluding, we do not hold that a male employee cannot state a claim under the PDA *See Newport News,* 462 U.S. at 678 & n. 14, 103 S.Ct. 2622; *see also id. at 682,* 103 S.Ct. 2622 (noting that both male and female employees are protected under Title VII) In *Newport News,* the Supreme Court recognized that male employees may state a claim under the PDA for limitations of the pregnancy-related benefits afforded their wives *See id. at 683-85,* 103 S.Ct. 2622 However, in that opinion, the Court focused on the parity of benefits offered to male and female employees Thus, where the insurance plan in question "provide[d] limited pregnancy-related benefits for [male] employees' wives, and afford [ed] more extensive coverage for employees' spouses for all other medical conditions requiring hospitalization," the Court concluded that "the plan unlawfully [gave] married male employees a benefit package for their dependents that [was] less inclusive than the dependency coverage provided to married female employees " *Id. at 683-84,* 103 S.Ct. 2622

316 F 3d 337                                                                                                        Page 10
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
(Cite as: 316 F.3d 337)

In addition, we do not preclude the possibility that a medical condition that is caused by pregnancy, but that also can occur independently in both men and non-pregnant women, such as diabetes, could be considered a "medical condition related to pregnancy."

Infertility is a medical condition that afflicts men and women with equal frequency. *See* Joint App. Ex. 10 at FC 6 (stating that approximately one third of infertility problems are due to male factors, one third due to female factors, and one third due to couple factors); *see also* Cintra D. Bentley, *A Pregnant Pause, Are Women Who Undergo Fertility Treatment to Achieve Pregnancy Within the Scope of Title VII's Pregnancy Discrimination Act?*, 73 Chi.-Kent L.Rev. 391, 394-95 (1998). Including infertility within the PDA's protection as a "related medical condition[ ]" would result in the anomaly of defining a class that simultaneously includes equal numbers of both sexes and yet is somehow vulnerable to sex discrimination Because such a result is incompatible with the PDA's purpose of clarifying the definition of "because of sex" and the Supreme Court's interpretation of the PDA in *Johnson Controls*, we hold that infertility standing alone does not fall within the meaning of the phrase "related medical conditions" under the PDA. Thus, even if we were to agree with Saks that the Plan provided inferior coverage for infertility, such inferior coverage would not violate the PDA [FN4]

> FN4. We expressly decline to consider whether an infertile female employee would be able to state a claim under the PDA or Title VII for adverse employment action taken against her because she has taken numerous sick days in order to undergo surgical impregnation procedures *See, e g , Cleese v. Hewlett-Packard Co.,* 911 F.Supp. 1312, 1317-18 (D.Or.1995); *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1401-02 (N.D.Ill.1994)

In sum, we find that, because the exclusion of surgical impregnation procedures disadvantages infertile male and female employees equally, Saks's claim does not fall within the purview of the PDA

**D  Saks's Sex-Discrimination Claim**

[10] Having concluded discrimination based on infertility alone is not cognizable under the PDA, we now consider whether Saks has stated a claim for sex discrimination under Title VII on any other ground Saks contends that the exclusion of coverage for surgical impregnation procedures violates Title VII because the actual procedure is performed on women and, therefore, the exclusion affects only female employees Thus, according to Saks, the *347 Plan violates Title VII by offering complete coverage for surgical infertility treatments for male employees but incomplete coverage for female employees

In a different context the exclusion of surgeries that are performed solely on women from an otherwise comprehensive plan might arguably constitute a violation of Title VII, but here we are faced with the unique circumstance of surgical impregnation procedures performed for the treatment of infertility Although the surgical procedures are performed only on women, the need for the procedures may be traced to male, female, or couple infertility with equal frequency Thus, surgical impregnation procedures may be recommended regardless of the gender of the ill patient For example, where a male suffers from poor sperm motility or low sperm count, resulting in his infertility, his healthy female partner must undergo the surgical procedure In addition, treatment by surgical impregnation procedures requires the participation of both the male and the female partners Because male and female employees afflicted by infertility are equally disadvantaged by the exclusion of surgical impregnation procedures, we conclude that the Plan does not discriminate on the basis of sex

The Supreme Court's reasoning in *Newport News* supports this conclusion In that case, the Supreme Court recognized that, although a policy that excluded maternity benefits for dependent children discriminates on the basis of pregnancy, "the exclusion affects male and female *employees* equally since both may have pregnant dependent daughters " *See Newport News,* 462 U.S. at 684 n. 25, 103 S.Ct. 2622 Similarly, in this case, the Plan's exclusion of surgical impregnation procedures does not provide male employees with more comprehensive coverage of infer-

© 2007 Thomson/West  No Claim to Orig  U S  Govt  Works

316 F 3d 337                                                                                        Page 11
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

tility treatments than female employees because the surgical procedures in question are used to treat both male and female infertility.[FN5]

> FN5. As noted previously, Saks has not offered any evidence from which a reasonable jury could conclude that the surgical impregnation procedures required for the treatment of male infertility differ from those required for the treatment of female infertility, or, more importantly, that male infertility is more frequently treated by other (Plan-covered) means than is female infertility

[11] Saks contends that, regardless of the gender-neutral origin of the problem necessitating the procedures, the Plan's exclusion effectively targets only infertile women. In support of this contention, Saks makes a two-part argument. First, she maintains that the Plan implicitly restricts coverage to procedures performed directly on the ill patient. Under that implicit restriction, an infertile man who sought surgical impregnation of his healthy wife as a remedy for *his* infertility would be denied coverage. Second, Saks reasons that, because, under the implicit restriction, the Plan would not cover procedures performed on the infertile male employee's healthy wife, the explicit exclusion of coverage for surgical impregnation procedures limits only the Plan's coverage for treatment of a female employee's infertility.[FN6]

> FN6. Plaintiff does not argue, and we do not decide today, whether the Plan's exclusion of surgical impregnation procedures as applied to infertile female employees who are unmarried violates Title VII or the PDA With respect to unmarried employees, the Plan would appear to cover only those infertility treatments that are required to treat the infertility of the employee, not the employee's partner, and that are performed directly on the employee himself or herself Hence, in these circumstances, by excluding certain infertility treatments that are performed on women only, an argument can be made that the Plan denies coverage for a subset of infertility treatments available to unmarried

female employees while covering all infertility treatments available to unmarried male employees

*348 Without some evidence to support Saks's reading of the Plan to contain the implicit restriction, her argument is simply too speculative to defeat a motion for summary judgment See *Kulak v. City of New York,* 88 F 3d 63, 71 (2d Cir 1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, conclusory statements, conjecture or speculation by the [non-moving party] will not defeat summary judgment ") Saks has adduced no such evidence

Saks's argument requires the Court to assume that, if the Plan did provide coverage for surgical impregnation procedures, it would refuse to cover surgical impregnation procedures to treat male infertility There is nothing in the language of the Plan to support this interpretation. The Plan covers all "medically necessary" procedures unless specifically exempted "Medically necessary" procedures are defined as "any service" required to treat an active illness Thus, to the extent that Franklin Covey would consider surgical impregnation "medically necessary" to treat female infertility, the plain language of the Plan suggests that such procedures would also be considered "medically necessary" to treat male infertility[FN7] Moreover, she does not offer any data suggesting that insurance companies that do cover surgical impregnation procedures do so only for female infertility, and not when the procedure must be performed on a healthy woman because of her partner's infertility Without some evidence, Saks's argument is wholly speculative and, as such, is insufficient to defeat Franklin Covey's motion for summary judgment

> FN7. Saks relies heavily on the Plan's exclusion of coverage for the expenses of an organ donor to support her claim that only costs for ill patients are covered This exclusion, however, is found only in the provision describing the specific coverage for organ transplants and thus is limited to that procedure We do not interpret this particular exclusion as an expression of a general Plan policy of only covering procedures per-

© 2007 Thomson/West No Claim to Orig U S Govt Works

316 F 3d 337                                                                                                Page 12
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309. 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

formed on ill patients

Because the exclusion affects a procedure that is used to treat both male and female infertility (which occurs at similar rates across genders), this case is distinguishable from the authorities upon which Saks relies, namely, *Johnson Controls,* and a decision by the EEOC In *Johnson Controls,* the Supreme Court held that Title VII was violated by an employer's fetal protection policy that required women to prove their inability to become pregnant as a prerequisite to job assignments involving actual or potential exposure to lead. *See* 499 U.S. at 190-92, 197, 111 S.Ct. 1196 In 2000, the EEOC concluded that an exclusion of prescription contraceptive drugs and devices in an otherwise comprehensive health care plan violated Title VII because prescription contraceptives, which are prescribed as birth control and for other medical purposes, are used solely by women *See* Decision of the Equal Employment Opportunity Commission 1-2, 4-5 (Dec 14, 2000) <www eeoc gov/docs/decision-contraception html>. Whereas these cases involved a distinction based on the capacity to become pregnant and on the exclusion of oral contraceptives, both of which disadvantage women only, the exclusion of surgical impregnation techniques limits the coverage available to infertile men and infertile women and, thus does not violate Title VII *See Johnson Controls,* 499 U.S. at 198, 111 S.Ct. 1196 (finding gender discrimination in fetal protection policy because it "classifies on the basis of gender \*349 and childbearing capacity, rather than fertility alone").

Because the Plan's exclusion of coverage for surgical impregnation procedures limits the infertility procedures covered for male and female employees equally, that exclusion does not violate Title VII [FN8]

> **FN8.** Appellant also appeals the district court's decision on her New York Human Rights Law claim Because, as she acknowledges, this claim is co-extensive with her Title VII and PDA claims, it must likewise fail

II ERISA Preemption

Finally, Saks contends that the district court erred in finding that Franklin Covey had not waived the defense that ERISA preempts Saks's state contract claims where that defense was raised for the first time in Franklin Covey's motion for summary judgment She also argues that it would be an abuse of discretion for the district court to allow defendants to amend their answer to include the ERISA preemption defense after she filed a motion for summary judgment In the alternative, for the first time on appeal, she requests leave to amend her complaint to add ERISA claims

A Waivability of ERISA Preemption

Four circuits, as well as numerous state courts, have concluded that the defense of ERISA preemption in a benefits-due action may be waived if not timely raised *See. e g , Wolf v. Reliance Standard Life Ins. Co.,* 71 F.3d 444, 448-49 (1st Cir.1995) (citing state and federal cases); *Dueringer v. Gen. Am. Life Ins. Co.,* 842 F.2d 127, 129-30 (5th Cir.1988); *Gilchrist v. Jim Slemons Imps., Inc.,* 803 F.2d 1488, 1497 (9th Cir.1986); *Rehab Rehabilitation Inst. of Pittsburgh v. Equitable Life Assurance Soc'y of the United States,* 131 F.R.D. 99, 101 (W.D.Pa 1990), *aff'd without op ,* 937 F.2d 598 (3d Cir.1991) In *International Longshoremen's Association v Davis,* the Supreme Court made clear that preemption issues that dictate the choice of forum are jurisdictional and therefore may not be waived, but expressly stated that this rule does not extend to preemption issues that affect the parties' choice of law *See Davis,* 476 U.S. 380, 390 & n. 9, 398-99, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986); *see also Wolf,* 71 F.3d at 448; *Gilchrist,* 803 F.2d at 1496-97 The circuits that have addressed the waiver issue have agreed that the converse of the *Davis* rule also holds: Where federal preemption affects only the choice of law, the defense may be waived if not timely raised *See Wolf,* 71 F.3d at 448; *Piekarski v. Home Owners Sav. Bank, F.S.B.,* 956 F.2d 1484, 1489 (8th Cir.1992); *HECI Exploration Co. v. Holloway (In re HECI Exploration Co.),* 862 F.2d 513, 521 & n. 13 (5th Cir.1988); *Dueringer,* 842 F.2d at 130; *Gilchrist,* 803 F.2d at 1497; *see also Mauldin v. WorldCom, Inc.,* 263 F.3d 1205, 1211 (10th Cir.2001) (declining to decide whether ERISA or state contract law governs dispute because neither

© 2007 Thomson/West No Claim to Orig U S Govt Works

316 F 3d 337                                                                Page 13
316 F 3d 337, 90 Fair Empl Prac Cas (BNA) 1266, 83 Empl Prac Dec P 41,309, 29 Employee Benefits Cas 2185
**(Cite as: 316 F.3d 337)**

party briefed issue); *Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir.1999)* (stating that ERISA preemption can constitute an affirmative defense to certain state law claims) We join our sister circuits in reaching the same conclusion

[12] ERISA's jurisdictional provision governing benefits-due actions provides concurrent jurisdiction in state and federal district courts, *see* 29 U.S.C. § 1132(a)(1)(B), (e)(1), and thus ERISA prescribes the choice of law, not jurisdiction As a result, we find that ERISA preemption in a benefits-due action is a waivable defense *See Wolf, 71 F.3d at 448-49; Dueringer, 842 F.2d at 130; Gilchrist, 803 F.2d at 1497; Rehab. Inst., 131 F.R.D. at 101* We note that other types of actions under ERISA are subject to the **\*350** exclusive jurisdiction of federal courts; thus, our analysis here is limited to ERISA preemption of benefits-due actions *See* 29 U.S.C. § 1132(e)(1)

[13][14][15] We next turn to the question of when an ERISA preemption defense must be raised in order to be timely Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses as well as "any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c) An affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true" Black's Law Dictionary 430 (7th ed 1999); *see also Wolf, 71 F.3d at 449* It is well-established that, absent an express exception in ERISA, ERISA's preemption provision extinguishes a plaintiff's state contract claims if those claims "relate to" an employee benefit plan *See Devlin v. Trans. Communications Int'l Union, 173 F.3d 94, 101 (2d Cir.1999)* Thus, we hold that ERISA preemption of state contract claims in a benefits-due action is an affirmative defense that is untimely, and therefore subject to waiver, if not pleaded in the defendant's answer *See Wolf, 71 F.3d at 449; Dueringer, 842 F.2d at 130; Rehab. Inst., 131 F.R.D. at 101-02; 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure,* § 1271 (1990)

[16][17] Appellees argue that they sufficiently

pleaded the ERISA preemption defense by asserting in their answer the general defense of failure to state a claim under Fed.R.Civ.P. 12(b)(6) We disagree One of the core purposes of Rule 8(c) is to place the opposing parties on notice that a particular defense will be pursued so as to prevent surprise or unfair prejudice *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)* A general assertion that the plaintiff's complaint fails to state a claim is insufficient to protect the plaintiff from being ambushed with an affirmative defense *See Wolf, 71 F.3d at 450; Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan, 11 F.3d 1567, 1571 (10th Cir.1993); see also Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir.1984)* (holding that a general denial of allegations is insufficient to plead an affirmative defense) Indeed, here Saks was left in the dark that the ERISA preemption defense was in the offing until the motion for summary judgment

[18] Franklin Covey also argues that an ERISA preemption defense was invoked in their answer by the statement that "[t]he exclusions ... challenged by Saks are within the Safe Harbor provision of Section 501(c) of the ADA " The safe harbor provision of the ADA provides, in part, that ERISA plans are generally not covered by the provisions of the ADA *See* 42 U.S.C. § 12201(c)(3) Therefore, Franklin Covey's citation to the safe harbor provision is reasonably understood as a defense only against Saks's ADA claim and not her other claims Thus, we find no basis to conclude that Franklin Covey raised the ERISA preemption defense against the state law claims in its answer

[19] Notwithstanding a defendant's failure to timely plead the preemption defense, a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings *See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 283 (2d Cir.2000), cert. denied, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993)* In such circumstances, the district court **\*351** may construe the motion for summary

© 2007 Thomson/West No Claim to Orig U S Govt Works

316 F.3d 337                                                                                           Page 14
316 F.3d 337, 90 Fair Empl Prac Cas  (BNA) 1266, 83 Empl  Prac  Dec  P 41,309, 29 Employee Benefits Cas  2185
(Cite as: 316 F.3d 337)

judgment as a motion to amend the defendant's an-
swer  *See Monahan,* 214 F.3d at 283; *Wolf,* 71 F.3d at
449  In this case, the district court stated that, "[w]ere
it necessary,    this Court would, in an exercise of its
discretion, permit the defendants to amend their an-
swer to assert ERISA preemption," but the district
court never ruled on that issue  *See Saks,* 117
F.Supp.2d at 330  Saks has asked us to hold that al-
lowing such an amendment would be an abuse of dis-
cretion  However, we think it would be inappropriate
to reach that question in the absence of a definitive
ruling  Accordingly, we remand to the district court
to determine whether defendants' motion for sum-
mary judgment should be construed as a motion to
amend the answer, and, if so, to rule on that motion
In light of the fact that we are remanding this issue to
the district court, we decline to reach Saks's further
request to amend her complaint in order to raise an
ERISA claim  That request should be directed to the
district court in the first instance

We have carefully considered appellant's other argu-
ments and find them to lack merit

                       CONCLUSION

For these reasons, the district court's judgment grant-
ing summary judgment in favor of Franklin Covey is
affirmed in part and remanded in part  Costs shall be
born by each party

C.A 2 (N Y ),2003
Saks v  Franklin Covey Co
316 F 3d 337, 90 Fair Empl Prac Cas  (BNA) 1266,
83 Empl  Prac  Dec  P 41,309, 29 Employee Benefits
Cas  2185

Briefs and Other Related Documents (Back to top)

• 2001 WL 34113555 (Appellate Brief) Amicus Curi-
ae Brief of the American Society for Reproductive
Medicine in Support of Reversal (May  29, 2001)
Original Image of this Document (PDF)
• 00-9598 (Docket) (Dec  28, 2000)

END OF DOCUMENT

© 2007 Thomson/West  No Claim to Orig  U S  Govt  Works