# EXHIBIT 4

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

LOS ANGELES, CA

355 S. Grand Ave.
Suite 3150
Los Angeles, CA 90071
TEL: (213) 787 2500
FAX: (213) 687 0498
WEB: www.cblh.com

Scott R. Miller
Partner

TEL (213) 787-2510
EMAIL smiller@cblh.com

*Via Email and U.S. Mail*

February 7, 2007

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
      **USDC Case No. 04-343 JJF**

Dear Cass:

Beginning at least in September 2006, LPL represented that it did not make any products that are rear mountable or capable of being rear mounted, or that otherwise practice the invention disclosed and claimed in the patents in suit. This representation was first made during the parties' September 2006 meet and confers, and was memorialized in a September 11, 2006 letter to me. *See* Sep. 11, 2006 letter from C. Connor to S. Miller, at 2 ("LPL does not make products covered by the technology taught by the Patents-in-Suit"; LPL does not "use technology taught by the Patents-in-Suit."). As we have since discovered, this representation was not true.

LPL not only failed to correct this misrepresentation in a timely fashion, but LPL perpetuated it. During the December 28, 2006 hearing before the Special Master, LPL stated on the record that it did not make any products that are rear mountable or capable of being rear mounted, or that otherwise practice the invention disclosed and claimed in the patents in suit. See Transcript of December 28, 2006 Hearing ("Tr."), p. 109, l. 24 - p. 110, l. 4; p. 116, ll. 10-12; p. 167, l. 11 - p. 168, l. 7; p. 168, l. 20 - p. 169, l. 1; p. 170, ll. 6-13. Further, LPL allowed ViewSonic and the Special Master to rely on, and be misled by, LPL's repeated false statements. *See* Tr., p. 107, ll. 20-24; p. 109, l. 24 - p. 110, l. 4; p. 165, l. 24 - p. 166, l. 3; p. 166, ll. 18-22; p. 167, ll. 11-24; p. 168, ll. 9-19; p. 169, ll. 13-22; p. 170, ll. 6-13.

As reflected in the transcript, LPL's misrepresentations tainted all of the December 28, 2006 hearing, including the portions of the hearing related to ViewSonic's Request for Production ("RFP") Nos. 63-66, 77-81, 82-85 and 87-99, and 101-103, which were the subjects of ViewSonic's October 2, 2006 Motion to Compel.

10674.1



**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Cass W. Christenson, Esq.
February 7, 2007
Page 2

LPL's misrepresentations have outright obstructed discovery regarding LPL's products that should have been provided long ago. Moreover, LPL's misrepresentations were relied upon by ViewSonic and the Special Master during the December 28, 2006 hearing to form compromises, such as limiting certain discovery regarding LPL products to dates prior to December 31, 1998. Had LPL been forthright, this date limitation would not have been agreed to, and the temporal scope of the discovery regarding LPL's products would have extended until the present.

The following examples illustrate LPL's deception during the December 28 hearing.

During the discussion regarding ViewSonic's RFPs 63-66, 77-81, 99, 102-103 and 119, LPL counsel allowed ViewSonic and the Special Master to rely on LPL's past misrepresentations. *See* Tr., p. 107, ll. 20-24; p. 109, l. 24 - p. 110, l. 4. As a result, there remained no need to argue points regarding damages and obviousness considerations. Had counsel for LPL instead corrected the record, these issues could have been properly vetted.

LPL repeated its misrepresentation during the discussions regarding ViewSonic's RFPs 82-85 and 87-98. *See* Tr., p. 116, ll. 10-12. Based upon its misrepresentation, LPL was able to negotiate a cut-off date of December 31, 1998 for this set of ViewSonic RFPs. *See* Tr., p. 120, l. 6- p. 123, l. 2. Thus, ViewSonic could not contend that there should be no cut-off date to address damages and invalidity considerations.

With respect to ViewSonic's RFP 101, LPL stated to the Special Master:

> MR. CHRISTENSON: Yes, Your Honor. This is a request that relates to a reference in the ,641 [sic] Patent to a reduction in side space, and we have investigated this and we have informed ViewSonic that we don't have any responsive documents.

Tr., p. 142, l. 21 - p. 143, l. 1. This representation is defective in two respects. First, LPL unilaterally limited RFP 101 to the technology taught by the patents in suit. *See* Sep. 11, 2006 letter from C. Connor to S. Miller, at 2. RFP 101 seeks evidence regarding reduction of side space, whether or not that reduction is achieved by an embodiment covered by the patents in suit. Second, LPL's statement on the record that it had "informed ViewSonic that we don't have any responsive documents" refers to an earlier communication from LPL which relied on the misrepresentation that it does not use the technology taught by the patents in suit. *See id.*, at 2. Thus, although LPL informed ViewSonic that LPL did not have responsive documents, that representation was based on an improper unilateral limitation of RFP 101, and LPL's false statement that it does not use the technology taught

10674.1

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Cass W. Christenson, Esq.
February 7, 2007
Page 3

by the patents-in-suit. LPL's misrepresentation denied ViewSonic any realistic opportunity to correct the record.

Another example arises with respect to ViewSonic's RFPs 71-74 and 118. LPL falsely represented that its visual display products "do[] not have [a] first frame, therefore, it doesn't have the fastening parts, therefore, it's not capable of being mounted." *See* Tr., p. 168, l. 20 - p. 169, l. 1; *see also* Tr. p. 169, l. 24 - p. 170, l. 13; Tr. p. 171, l. 14 - p. 172, l. 5.

Please advise us by 5 pm EST tomorrow whether (i) LPL agrees that the date limitations referenced above are no longer applicable; (ii) LPL will produce by February 15, 2007 the full scope of documents responsive to ViewSonic's RFPs 63-66, 77-81, 82-85 and 87-99, and 101-103; and (iii) LPL will supplement its response to ViewSonic's Interrogatory Nos. 9 and 25. Otherwise, ViewSonic has no choice but to seek assistance from the Special Master on this issue as well.

It bears repeating that ViewSonic detrimentally relied on these perpetual misrepresentations. Although the reason the false statements ever occurred is unclear, what is clear is that it is the responsibility and duty of LPL's counsel to rectify the problems these false statements have created. We seek to resolve these issues promptly so that the prejudice ViewSonic has suffered can be lessened.

Sincerely,

Scott R. Miller

cc: Rel S. Ambrozy, Esq.
Lora A. Brzezynski, Esq.
Cormac T. Connor, Esq.
Richard D. Kirk, Esq.
Mark H. Krietzman, Esq.
Valerie W. Ho, Esq.
Steve P. Hassid, Esq.
Anne Shea Gaza, Esq.
Frederick L. Cottrell III, Esq.
Tracy R. Roman, Esq.
Jeffrey B. Bove, Esq.

10674.1