# EXHIBIT 6

| Atlanta | **McKenna Long** | San Diego |
| Denver | **& Aldridge**LLP | San Francisco |
| Los Angeles | Attorneys at Law | Washington, DC |
| Philadelphia | 1900 K Street, NW • Washington, DC 20006 | Brussels |
|  | 202.496.7500 • Fax: 202.496.7756 |  |
|  | www.mckennalong.com |  |

CASS W. CHRISTENSON  
(202) 496-7218

EMAIL ADDRESS  
cchristenson@mckennalong.com

February 12, 2007

**VIA E-MAIL AND U.S. MAIL**

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz, LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

    Re:    LG.Philips LCD Co., Ltd. v. Tatung, et al.; Civil Action No. 04-343 (JJF)

Dear Scott:

    I write in response to your letters sent the evenings of February 7 and February 8, 2007. You demand in your letters supplemental discovery due to a purported "extended misrepresentation regarding [LPL's] commercialization of products that practice the supposed invention of the patents in suit." Because your premise for seeking this additional discovery is false, your accusations and requests for additional discovery are moot, and we oppose ViewSonic's attempt to inflict unnecessary burdens on LPL by making unfounded accusations for strategic purposes. Even if LPL practiced the invention, which it does not, the discovery that ViewSonic seeks is burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

    Your February 7 and 8 letters reflect several misconceptions and incorrect statements. In your February 7 letter, for example, you incorrectly state that since September 2006, LPL "represented that it did not make any products that are rear mountable or capable of being rearmounted, or that otherwise practice the invention disclosed and claimed in the patents in suit." This statement is doubly inaccurate because: (1) it mischaracterizes "any products that are rearmountable or capable of being rearmounted" as practicing the invention claimed in the patents; and (2) since September 2006, we have correctly informed you that LPL does not practice the invention. The specific issue of whether LPL makes products that are "rear mountable or capable of being rearmounted" was raised by you during the December 28, 2006 hearing and was addressed by us promptly and in good faith. Your February 8 letter likewise suggests incorrectly that LPL made a "false assertion that it did not make products that practice any of the supposed inventions of the patents in suit . . . ." LPL does not practice the claimed invention. Rather, as we stated in Mr. Kirk's January 8, 2007 letter to Special Master Poppiti, LPL sells certain modules "that could be used by third party assemblers in a way that practices LPL's rearmounting technology claimed in the Patents-in-Suit, depending on the construction of

Scott R. Miller, Esq.
February 12, 2007
Page 2

the claims and how third parties assemble finished products that incorporate LPL's modules." You thus are wrongly and unfairly accusing LPL of misrepresentations.

We have correctly and consistently informed you, including at the December 28 hearing, that LPL does not practice the asserted claims. In order for a product to be covered by a given claim, the device in question must contain an element that corresponds to *each and every* limitation recited in that claim, either literally or under the doctrine of equivalents. LPL sells modules. LPL's modules do not contain an element that corresponds to a rear housing, which is a limitation of every asserted claim. Thus, at best the modules that LPL sells contain elements that correspond to *only some* of the limitations of the asserted claims. Indeed, ViewSonic has expressly agreed that the claimed invention requires more than a module. For example, ViewSonic's Opening Claim Construction Brief states on page 19 that "Independent claims 35 and 55 of the '641 Patent each require the rear mountable flat panel display device be mounted to the housing of a data processing device."

You now attempt to manufacture a misrepresentation by twisting our good faith efforts to address confusion that you created, or at least fostered, by your misleading statements in the December 28 hearing. You sought certain discovery based on whether LPL practices its invention, but you then incorrectly conflated the separate issues of whether LPL practices its Patents-in-Suit and whether LPL's modules are capable of being rearmounted -- two different things. Specifically, you stated in the December 28 hearing that ViewSonic's document requests number 71 through 74 seek "documents that relate to the use of products or practices of any of the inventions in the patents-in-suit." Dec. 28 Tr. at 165. Shortly thereafter, you twice mischaracterized the inventions. First, you misleadingly stated that "the patents talk about, and certain of the claims within it talk about a module that is, quote, capable of being rear mounted." Dec. 28 Tr. at 166. You then characterized "certain of the patent claims" as "speak[ing] of a flat panel display device which is, quote, capable of, closed quote, being mounted, and I would presume that all of their products are capable of being mounted," incorrectly suggesting that discovery on products that practice the various inventions claimed by the Patents-in-Suit applies to all modules that can be mounted. Dec. 28 Tr. at 168. Whether intentionally or not, you have confused the issue of what the claims actually cover.

Whether LPL sells modules with holes at the rear surface has no bearing on whether Defendants infringe the Patents-in-Suit, whether the claims are valid, or the amount of damages to which LPL is entitled in this case. When Mr. Ambrozy commented during the December 28 hearing that LPL's products do not include fastening parts at the rear surface of a frame or tray, moreover, he stated that he wanted to confirm with LPL and would then promptly report back to the Special Master. After further investigation, it was determined that some of LPL's products contain holes at the rear surface of the module. On January 8, 2007, as agreed, we promptly reported to the Special Master on the existence of LPL modules with rear surface holes. Such products are, however, not covered by the Patents-in-Suit.

Further, the agreement made during the December 28, 2006 hearing to limit certain discovery from LPL to the time period ending December 1998 had nothing to do with whether

Scott R. Miller, Esq.
February 12, 2007
Page 3

LPL made products that could be rearmounted. Rather, this time period was agreed to based on your contention that the discovery sought was relevant to validity issues. See Dec. 28 Tr. at pp. 120-23. Your attempt to manufacture an argument now that you were misled is undermined by the record. You initially raised the idea of LPL's discovery running to the time that the Patents-in-Suit issued in December 2002, but after some discussion you expressly agreed to limit discovery to the end of 1998. *See* Dec. 28 Tr. at 121-23. Inexplicably, you now seek to disavow your agreement and seek irrelevant discovery, much like you have objected to the Special Master's Report concerning advice of counsel discovery after specifically agreeing during the hearing that ViewSonic needed to seek leave to plead any advice of counsel defense. ViewSonic's motion to compel further confirms that the disputed discovery was not related to damages issues. Your attempt to repackage this technical discovery now as "damages discovery" is improper and harassing.

ViewSonic's intent to use discovery as a tactical weapon is evident from your practice of continuously demanding more and more discovery. On January 8, we reported to the Special Master regarding LPL's products. In response, at the January 19, 2007 hearing, you demanded broader discovery concerning document requests 71-74 and 118, because of what you described as LPL's "behavior in the use of products and the sale of products or offering for sale of products *that utilized the inventions here*." Jan. 19 Tr. at 40 (emphasis added). On January 24, ViewSonic filed its supplemental brief characterizing Requests 71-74 and 118 as related to "Flat Panel Display Products" that "use any invention disclosed in the patents-in-suit or Foreign counterparts to the patents in suit" and any LPL product "that incorporates any invention disclosed in the patents-in-suit." Jan. 24, 2007 Ltr. To Special Master at 1. On February 5, we submitted a joint status report to the Special Master. In that status report, ViewSonic made a last-minute revision to argue that LPL practices the invention with rearmountable modules, and therefore LPL should supplement discovery concerning document requests 71-74 as previously briefed, and also *four* additional requests (numbers 82, 84, 85, and 102). In response, LPL pointed out that ViewSonic had failed to ever discuss this issue with LPL before adding it to the status report. Then, in your February 7 letter, you demanded supplemental discovery for *twenty-nine (29)* document requests (numbers 63, 64, 65, 66, 77, 78, 79, 80, 81, 82, 83, 84, 85, 87, 88, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 101, 102, 103) and two interrogatories (numbers 9 and 25). You demanded that LPL respond in less than twenty-four (24) hours. The next day, in your February 8 letter, you demanded supplemental discovery for an additional ten (10) document requests (numbers 12, 13, 15, 28, 29, 33, 67, 68, 69, 70), for a total of *thirty-nine (39)* document requests. You further demanded that LPL produce this new discovery "immediately" and by February 12, in two business days. If these impossible demands are not met, you threatened to repudiate the schedule for LPL's depositions that we have worked with you on for two months. ViewSonic clearly is engaged in an improper pattern of harassment. Further, this discovery purportedly arises based on LPL's alleged use of one or more inventions claimed in the Patents-in-Suit, but, as discussed above, LPL does not practice any of the claims asserted in this case.

LPL has diligently provided discovery and responded to ViewSonic's discovery requests throughout this case. With respect to your complaints about Mr. Ambrozy's statements during

Scott R. Miller, Esq.
February 12, 2007
Page 4

the December 28 hearing, those statements were made after we had agreed on the time period for LPL's production concerning various document requests, and, as discussed above, the agreement to limit the time period for certain requests was unrelated to whether LPL's products could be rearmounted. You also mischaracterize my accurate comments at pages 109-110 and 116 of the December 28 transcript. I correctly stated that LPL does not assemble the finished visual display products that use LPL's modules. I did not, as you imply, "perpetuate" a "misrepresentation." Your new arguments appear to attempt to rewrite several of ViewSonic's document requests, which focus on discovery regarding assembled visual display products such as LCD monitors and televisions. ViewSonic cannot now expand the scope of those requests to seek broader discovery than is actually requested in ViewSonic's Document Requests. Further, you also mischaracterize LPL's position concerning ViewSonic's Document Request 101. LPL is not attempting to limit Request 101, but rather is not aware of any responsive documents.

With respect to the reference in your February 8 letter to LPL's deposition dates, as I stated in my February 9 email to you, we will object to any attempt to repudiate the existing schedule for LPL's depositions. As you know, we have reserved deposition dates based on your insistence to take LPL's depositions as soon as possible, and we have worked to overcome numerous scheduling and logistical obstacles to secure the existing deposition dates starting February 26 in Washington, D.C. We assume that you will proceed with these depositions.

ViewSonic, not LPL, has avoided discovery in this case. We produced documents from LPL's patent files and our firm's own prosecution files in April 2006, long before ViewSonic was willing to provide any discovery, except limited information specifically related to the VX900 product. We provided LPL's sales information and license agreements long before we had to move to compel that same discovery from ViewSonic. We agreed to provide bill of sale information during the December 28 hearing and we then provided a 300 page document with complete detail for LPL's products, which exceeded the scope of what we agreed to provide. We produced this document on January 22, and you never complained about it until a few days ago. Last week, we voluntarily produced additional documents from LPL as potentially responsive to ViewSonic's document requests, even though we are forced to resort to the Special Master to obtain technical discovery from Defendants.

Despite this history, we remain willing to discuss with you specific discovery issues, if any, that you would like to discuss. We continue to believe that teleconferences are the most efficient and effective way to communicate. Although you repeatedly have refused to speak with us or to take our telephone calls, we remain willing to speak with you.

Very truly yours,

Cass W. Christenson

CWC:ea

Scott R. Miller, Esq.
February 12, 2007
Page 5

cc:    Rel S. Ambrozy, Esq. (via e-mail)
       Lora A. Brzezynski, Esq. (via e-mail)
       Cormac T. Connor, Esq. (via e-mail)
       Richard D. Kirk, Esq. (via e-mail)
       Mark Krietzman, Esq. (via e-mail)
       Valerie W. Ho, Esq. (via e-mail)
       Steve P. Hassid, Esq. (via e-mail)
       Anne Shea Gaza, Esq. (via e-mail)
       Frederick L. Cottrell, III, Esq. (via e-mail)
       Tracy R. Roman, Esq. (via e-mail)
       Jeffrey B. Bove, Esq. (via e-mail)
       Jaclyn M. Mason, Esq. (via e-mail)
       Manuel C. Nelson, Esq. (via e-mail)
       James D. Heisman, Esq. (via e-mail)