IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

Plaintiff,

v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

Defendants.

CIVIL ACTION NO. 04-343

**NOTICE OF DEPOSITION OF SHARP ELECTRONICS CORPORATION**

PLEASE TAKE NOTICE that, pursuant to the attached subpoena, Defendant ViewSonic Corporation will take the deposition *duces tecum* of Sharp Electronics Corporation ("Sharp") pursuant to Fed. R. Civ. P. 30(b)(6). The deposition will take place on March 7, 2007 at 10:00 a.m., or at such other time and/or place as counsel for all parties and deponents may agree. The deposition will continue from day to day until completed. The deposition will be conducted upon oral examination before a certified court reporter, notary public, or other person authorized by law to administer oaths. The deposition will be recorded by videotape and stenographically and may use technology that permits the real time display of the deposition transcript. Parties wishing to see the real time display must supply their own computer.

The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Sharp is required to designate one or more persons to testify at the deposition as to matters known or reasonably available to Sharp concerning all topics listed in Attachment A to the Subpoena. In addition, the

Subpoena requires Sharp to produce in advance of the deposition, documents listed in Attachment B to the Subpoena.

Counsel for all parties are invited to attend and cross examine.

RASKIN PETER RUBIN & SIMON LLP

Dated: February 16, 2007

By: ______________________
Tracy R. Roman, Esq.
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 277-0010
Facsimile: (310) 277-1980

*Attorneys for ViewSonic Corporation*

CONNOLLY BOVE LODGE &
HUTZ LLP

Jeffrey B. Bove, Esq. (#998)
James D. Heisman (#2746)
Jaclyn M. Mason, Esq. (#4737)
The Nemours Building, 8th Floor
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

Scott R. Miller, Esq.
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071
Telephone: (213) 787-2500
Facsimile: (213) 687-0498

*Attorneys for ViewSonic Corporation*

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

LG.PHILIPS LCD CO., LTD.

V.

TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 03-343
USDC, District of Delaware

TO: SHARP ELECTRONICS CORPORATION
Sharp Plaza
Mahwah, NJ 07430

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Greenberg Traurig, LLP<br>200 Park Avenue, Florham Park, New Jersey 07932 | 3/7/2007 10:00 am |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment B.

| PLACE | DATE AND TIME |
|---|---|
| IKON Enterprise Services<br>810 Seventh Avenue, 1oth Floor, New York, New York 10019 | 3/2/2007 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant ViewSonic Corporation | 2/16/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Tracy R. Roman, Esq., Raskin Peter Rubin & Simon LLP, 1801 Century Park East, Suite 2300, Los Angeles, CA 90067; telephone (310) 277-0010

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________ DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENTS A & B**

**INSTRUCTIONS**

1.      If you object to any part of a request and refuse to answer that part, state your objection and answer the remaining portion of that request.  If you object to the scope or time period of a request and refuse to answer for that scope or time period, state your objection and answer the request for the scope or time period you believe is appropriate (including in your answer a specific statement as to why you believe the scope or time period is inappropriate).

2.      If any of the following requests cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information you have concerning the unanswered portions.  If your answer is qualified in any particular manner, set forth the details of such qualification.

3.      You must produce all documents responsive to these requests which are in your actual or constructive possession, custody or control, including all documents within the actual or constructive possession, custody or control of any representative, agent, employee, attorney, accountant, investigator or any person acting for you or on your behalf.

4. All documents are to be produced as they are kept in the usual course of business, in the files in which such documents have been maintained, and in the order within each file in which such documents have been maintained; or all documents shall be organized and labeled to correspond with the requests below. All documents are to be produced along with copies of the file folders in which they are kept.

5. If, in responding to the requests, you claim that there is any ambiguity in either a particular request or in a definition or an instruction applicable thereto, such claim shall not be used by you as a basis for refusing to respond, but you shall set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the particular request.

6. Electronic records and computerized information are to be produced in an intelligible format together with a description of the system from which it is derived sufficient to permit rendering the material intelligible.

**DEFINITIONS**

1. For purposes of interpreting or construing the following requests, the terms used are to be given their most expansive and inclusive interpretations unless otherwise specifically limited in the document request. This includes, without limitation, the following: the singular of a term includes the plural form and vice

versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

2.    The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs;

reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

    3.    "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

    4.    "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

    5.    "Flat Panel Display Product" shall mean any product that uses, contains, or incorporates one or more Display Modules, and includes by way of example flat screen computer monitors, lap top screens or computers, and flat screen televisions.

6.    "Display Module" shall mean any LCD Module, plasma display panel or field emission device.

7.    "Mounting Technology" means "Module Mounting Technology" and/or "Component Mounting Technology." "Module Mounting Technology" means the structure and/or devices provided, and any methods identified or recommended, by you to affix, secure, mount, or attach a Display Module within, on or to a Flat Panel Display Product. "Component Mounting Technology" means the structure and/or devices provided, and any methods identified or recommended, by you to affix, secure, mount, or attach any component of a Flat Panel Display Product to a Display Module prior to December 31, 1999.

8.    The term "Product(s) of Interest" shall mean: (i) the following product(s): the LL-T1620-H and the LC-20B4U-S; the following Display Modules - LQ150X1LGN2C, LQ14X03, LQ181E1DG11, M150X3-T05, LQ15X14, LQ150X1LGN2 and LQ150X1DG81; and, any Flat Panel Display Products or Display Modules that employ a Module Mounting Technology and/or Component Mounting Technology that has the same design and function as that used in the above listed products; and (ii) any Flat Panel Display Products and/or Display Modules that use, provide or include Mounting Technology on the back of any Display Module. To the extent there are groups of products within the definition of Products of Interest that employ a Module Mounting Technology having the

same design and function, the requests seek documents or specimens for only one such Flat Panel Display Product and/or Display Module from each particular group, together with an identification of all remaining products in each particular group. To the extent there are groups of products within the definition of Products of Interest that employ a Component Mounting Technology having the same design and function, the requests seek documents or specimens for only one such Flat Panel Display Product and/or Display Module from each particular group, together with an identification of all remaining products in each particular group.

9.    The term "Patents of Interest" means the following patents and publications, and any patent or patent publication that claims priority from any of the following: Japan Patent No. 1991-097458 for "Information Processing Device", 04/26/1991; Japan Patent Application 03-097466 for "Information Processing Device", 04/26/1991; US Patent No. Des.343,168; and, US Patent No. 5,329,289. "Patents of Interest Products" are any product practicing any invention disclosed in, including without limitation, any products marked with, one or more of the Patents of Interest.

10.    "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

11.    The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

12.    Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

**ATTACHMENT A**

**DEPOSITION TOPICS**

1. The Documents produced in response to the subpoena.

2. The physical structure of each Product of Interest and/or each Patent of Interest Product including, without limitation:

(a) The structure by which the Display Module is secured, mounted, attached, affixed and/or assembled within a Flat Panel Display Product;

(b) The structure by which a Flat Panel Display Product is or can be connected, attached, secured, mounted, affixed or assembled to a stand, support or device;

(c) The structure by which the Product of Interest and/or each Patent of Interest Product is connected, attached, secured, mounted, affixed or assembled to the product;

(d) The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest and/or each Patent of Interest Product; and,

(e) The structures in the Product of Interest and/or each Patent of Interest Product that support one or more internal components of the Product

of Interest and/or each Patent of Interest Product including without limitation, the Display Module.

3. The development of the Mounting Technology used in the Products of Interest and/or each Patent of Interest Product.

4. The manner or method by which the components of each Product of Interest and/or each Patent of Interest Product are assembled including, without limitation:

(a) The manner or method by which the Display Module is secured, mounted, attached, affixed and/or assembled within a Flat Panel Display Product;

(b) The manner or method by which a Flat Panel Display Product is connected, attached, secured, mounted, affixed or assembled to a stand, support or device;

(c) The manner or method by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest and/or each Patent of Interest Product; and

(d) The manner or method by which any and all support structures, (by way of illustration chassis, brackets, metal trays, or frames) which holds, supports or secures one or more internal components of the Product of Interest and/or each Patent of Interest Product are

assembled and/or secured within the Product of Interest and/or each
Patent of Interest Product.

5.      The earliest date on which each Product of Interest and/or each Patent
of Interest Product (either alone or as part of a product incorporating a Flat Panel
Display Product, e.g., workstations), was:

(a)     First shown and/or published at any trade show or disclosed to any
        third party in the United States;

(b)     First offered for sale in or from the United States;

(c)     First sold, distributed, and/or transferred to any third person in or from
        the United States;

(d)     First imported into or exported from the United States; and

(e)     First made in the United States.

6.      The (i) total annual US sales of each Product of Interest and/or each
Patent of Interest Product prior to December 31, 1999; and (ii) total annual number
of each Product of Interest and/or each Patent of Interest Product imported into or
exported from the US prior to December 31, 1999.

7.      The name, brand or other identifier of each Product of Interest and/or
each Patent of Interest Product, and any workstation or other configuration which
included a Product of Interest and/or each Patent of Interest Product as part of a
system or larger group of components that were sold in or from, imported into,

exported from, offered for sale or shown at a trade show in the United States prior to December 31, 1999.

8.    All correspondence between You and LG.Philips LCD Co., Ltd. or LG Electronics, Inc. regarding or relating to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718.

9.    All communications relating to licensing discussions with LG Electronics, Inc. or LG Philips LCD Co., Ltd. including, without limitation, all such documents that relate to a meeting on or about LPL's representatives attended confidential meetings with representatives of Sharp on November 7, 2003, at LG.Philips LCD in Anyank, Korea where LPL and representatives of Sharp's Licensing department and Patent department met, including the following people: Ho Lee (LPL), Jong Hwan Kim (LPL), Young Woo Cho (LPL), Won Jun Choi (LPL), Kubota (Sharp), Himeno (Sharp), Masanori (Sharp), and Hirashi (Sharp). The parties discussed at least the Sharp LL-T1620-H and the LC-20B4U-S products.

10.    All documents that constitute or evidence prior art as defined under 35 U.S.C. §§ 102 and/or 103 to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718 (copies of which are attached hereto as Exhibit 1).

**ATTACHMENT B**

**DOCUMENT REQUESTS**

1. Documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to illustrate or show the physical structure of each Product of Interest and/or each Patent of Interest Product including, without limitation:

(a) The structure by which the Display Module is secured, mounted, attached, affixed and/or assembled within a Flat Panel Display Product;

(b) The structure by which a Flat Panel Display Product is or can be connected, attached, secured, mounted, affixed or assembled to a stand, support or device;

(c) The structure by which the front bezel is secured, attached, affixed or assembled to the remaining components of the Product of Interest and/or each Patent of Interest Product;

(d) The structures in the Product of Interest and/or each Patent of Interest Product that support one or more internal components of the Product of Interest and/or each Patent of Interest Product including without limitation, the Display Module; and,

(e)    The Component Mounting structures on or attached to any Display

Module.

2.    Documents sufficient to show the development of the Mounting

Technology used in the Products of Interest and/or each Patent of Interest Product.

3.    Documents (including, without limitation, any drawings, graphics,

photographs, depictions or descriptions) sufficient to describe, illustrate or show

the manner or method by which the components of each Product of Interest and/or

each Patent of Interest Product are assembled including, without limitation:

(a)    The manner or method by which the Display Module is secured,

mounted, attached, affixed and/or assembled within a Flat Panel

Display Product;

(b)    The manner or method by which a Flat Panel Display Product is

connected, attached, secured, mounted, affixed or assembled a stand,

support or device;

(c)    The manner or method by which the front bezel is secured, attached,

affixed or assembled to the remaining components of the Product of

Interest and/or each Patent of Interest Product;

(d)    The manner or method by which any and all support structures, (by

way of illustration chassis, brackets, metal trays, or frames) which

holds, supports or secures one or more internal components of the

Product of Interest and/or each Patent of Interest Product are assembled and/or secured within the Product of Interest and/or each Patent of Interest Product; and,

    (e)    The Component Mounting structures on or attached to any Display Module.

    4.    Documents sufficient to identify and establish the earliest date on which each Product of Interest and/or each Patent of Interest Product (either alone or as part of a product incorporating a Product of Interest and/or each Patent of Interest Product, e.g., workstations), was:

    (a)    First shown and/or published at any trade show or disclosed to any third party in the United States;

    (b)    First offered for sale in or from the United States;

    (c)    First sold, distributed, and/or transferred to any third person in or from the United States;

    (d)    First imported into or exported from the United States; and

    (e)    First made in the United States.

    5.    Documents sufficient to show the (i) total annual US sales of each Product of Interest and/or each Patent of Interest Product prior to December 31, 1999; and (ii) total annual number of each Product of Interest and/or each Patent of

Interest Product imported into or exported from the US prior to December 31, 1999.

6. Documents sufficient to identify by name, brand or other identifier of each Product of Interest and/or each Patent of Interest Product, and any workstation or other configuration which included a Product of Interest and/or each Patent of Interest Product as part of a system or larger group of components that were sold in or from, imported into, exported from, offered for sale or shown at a trade show in the United States prior to December 31, 1999.

7. Except to the extent not otherwise produced in response to previous requests, documents (including, without limitation, any drawings, graphics, photographs, depictions or descriptions) sufficient to illustrate or show the physical structure of any Rear Fastener Product, including, without limitation:

(a) The structure by which the Display Module is secured and/or mounted within any enclosure of a Flat Panel Display Product;

(b) The structure by which a Flat Panel Display Product that is a Rear Fastener Product is connected, attached, secured, mounted, affixed or assembled to a stand, support, or device;

(c) The structure by which the front bezel is secured, attached, affixed or assembled to one or more of the remaining components of the Rear Fastener Product;

(d)     The structures in the Rear Fastener Product that support one or more internal components of the Rear Fastener Product including without limitation, the Display Module; and,

(e)     The Component Mounting structures on or attached to any Display Module.

8.     A physical specimen of each Product of Interest and/or each Patent of Interest Product.

9.     Documents sufficient to show the structure, assembly, and parts of any Sharp Products of Interests that has a fastening component located on its back or rear, and that was sold, offered for sale, or displayed prior to December 31, 1999, including without limitation any assembly drawings, specifications, diagrams, mounting instructions, and/or manuals.

10.     Documents sufficient to show the structure, assembly, and parts of any Flat Panel Display Product and/or Display Module that has a fastening component located on the back or rear of the product, which extends through the product case and connects into any interior support, bracket, or component of the product, and that was sold, offered for sale, or displayed prior to December 31, 1999, including without limitation any assembly drawings, specifications, diagrams, mounting instructions, and/or manuals.  (By way of example only, this

would also include any product having a screw used to mount a stand or base to the back of a Flat Panel Display Product.)

11.    A sample of any Rear-Fastener Products made by, on behalf of, or for Sharp (for inspection).

12.    Documents sufficient to show sales of any Sharp Rear-Fastener Products that occurred prior to December 31, 1999, including sales agreements, purchase orders, and shipping and delivery records.

13.    Documents relating to offers to sell, offers to buy, sales solicitation, sales inquiry, quotations, requests for quote, or requests for proposal that were created, dated, published or disseminated prior to December 31, 1999 regarding any Sharp Rear-Fastener Products.

14.    Catalogs, brochures, circulars, advertisements, marketing materials, and articles that were created, dated, published, or disseminated prior to December 31, 1999 regarding any Sharp Rear-Fastener Products.

15.    Documents relating to the advertisement, promotion, display or demonstration of any Rear-Fastener Products at tradeshows prior to December 31, 1999.

16.    Documents that describe, identify, or depict the equipment in which any Sharp Rear-Fastener Product was or could have been used or mounted.

17.    Documents sufficient to show the model number of all Sharp Display Modules that were sold or offered for sale in the United States for the period of January 1991 through December 31, 1999, such as sell sheets and product lists.

18.    Documents sufficient to show the location and structure of any kind of fastener (screw, hole, boss) on the back or rear of any Display Module that were made, sold, offered for sale, or displayed (through photograph or descriptive means) between January 1991 and December 31, 1999, such as specifications and dimensional drawings.

19.    All documents that were created, dated, published, or disseminated prior to December 31, 1999 referring to, relating to, or evidencing instructions, directions, warnings, or information relating to (i) mounting a Display Module on, to, or into the rear or back external case of a Flat Panel Display Product; and/or (ii) mounting a Display Module on, to, or into any other component of a Flat Panel Display Product, in each case including without limitation manuals, instructions, specifications, drawings, and service documents.

20.    Documents sufficient to show offers to sell or sales of any Rear-Fastener Products to the LG Group, LG Electronics, Inc., Lucky Goldstar, Goldstar, LG Philips LCD Co., Ltd., or Royal Philips Electronics.

21.    Assembly drawings, technical specifications, diagrams, and/or manuals for any liquid crystal display modules made by, for, or on behalf of Sharp

that were advertised, designated, or designed for use in "thin bezel" products that were made in the United States, sold or offered for sale in the United States, displayed in the United States, or for which designs or specifications were disseminated or made available to persons in the United States prior to December 31, 1999.

22.    Documents sufficient to show the assembly of the SharpLL-T1620-H and/or the LC-20B4U-S product, including without limitation assembly drawings, technical specifications, diagrams, and/or manuals.

23.    All documents relating to any attempts to maximize the size of the display area screen of a Flat Panel Display Product within the area of the overall display.

24.    A sample of a SharpLL-T1620-H and/or a LC-20B4U-S product, or products which use the same Mounting Technology as such products (for inspection).

25.    All correspondence between You and LG.Philips LCD Co., Ltd. or LG Electronics, Inc. regarding or relating to U.S. Patent No. 6,501,641 and/or U.S. Patent No. 6,498,718.

26.    All documents, notes and/or communications relating to licensing discussions with LG Electronics, Inc. or LG Philips LCD Co., Ltd. including, without limitation, all such documents that relate to a meeting on or about

November 7, 2003, at LG.Philips LCD in Anyank, Korea where LPL and

representatives of Sharp's Licensing department and Patent department met,

including the following people: Ho Lee (LPL), Jong Hwan Kim (LPL), Young

Woo Cho (LPL), Won Jun Choi (LPL), Kubota (Sharp), Himeno (Sharp),

Masanori (Sharp), and Hirashi (Sharp). The parties discussed at least the Sharp

LL-T1620-H and the LC-20B4U-S products.

27.    Documents sufficient to show the structure, assembly, and parts of

any Flat Panel Display Product and/or Display Module that has a fastening

component located on the back or rear of the product, which extends through the

product case and connects into any interior support, bracket, or component of the

product, and that was sold, offered for sale, or displayed prior to December 31,

1999, including without limitation any assembly drawings, specifications,

diagrams, mounting instructions, and/or manuals. (By way of example only, this

would also include any product having a screw used to mount a stand or base to the

back of a Flat Panel Display Product such as illustrated in one or more of the

Patents of Interest.)

28.    To the extent not previously called for, all documents that constitute

or evidence prior art as defined under 35 U.S.C. §§ 102 and/or 103 to U.S. Patent

No. 6,501,641 and/or U.S. Patent No. 6,498,718 (copies of which are attached

hereto as Exhibit 1).