AO 88 (Rev 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LG PHILIPS LCD CO , LTD

V.

TATUNG CO ;TATUNG COMPANY OF AMERICA,
INC.; and VIEWSONIC CORPORATION

## SUBPOENA IN A CIVIL CASE

Case Number:[1] 03-343
USDC, District of Delaware

TO: TOSHIBA AMERICA INFORMATION SYSTEMS, INC.
C T CORPORATION SYSTEM
818 WEST SEVENTH ST
LOS ANGELES, CA 90017

☐    YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION  Greenberg Traurig LLP<br>650 Town Center Drive, Suite 1700, Costa Mesa, CA 92626 | DATE AND TIME<br>March 7 , 2007 10:00 am |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE   Greenberg Traurig LLP<br>650 Town Center Drive, Suite 1700, Costa Mesa, CA 92626 | DATE AND TIME<br>March 5, 2007 10:00 am |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>              Attorney for Defendants Tatung Co , and Tatung Co. of America | DATE<br>February 22, 2007 |
|---|---|

ISSUING OFFICER'S NAME. ADDRESS AND PHONE NUMBER
Anne Shea Gaza, Esquire, Richards, Layton & Finger, One Rodney Square, P. O. Box 551, Wilmington, DE   19899 (302)651-7539

(See Rule 45. Federal Rules of Civil Procedure. Subdivisions (c). (d), and (e). on next page)

[1] If action is pending in district other than district of issuance, state district under case number

American LegalNet, Inc
www.FormsWorkflow.com

AO 88 (Rev 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED: | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(D) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved

(e) CONTEMPT Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc
www.FormsWorkflow.com

## Attachment A

### Instructions

1.      If you object to any part of a request and refuse to answer that part, state your objection and answer the remaining portion of that request. If you object to the scope or time period of a request and refuse to answer for that scope or time period, state your objection and answer the request for the scope or time period you believe is appropriate (including in your answer a specific statement as to why you believe the scope or time period is inappropriate).

2.      If any of the following requests cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information you have concerning the unanswered portions.  If your answer is qualified in any particular, set forth the details of such qualification.

3.      You must produce all documents responsive to these requests which are in your actual or constructive possession, custody or control, including all documents within the actual or constructive possession, custody or control of any representative, agent, employee, attorney, accountant, investigator or any person acting for you or on your behalf.

1

4.    All documents are to be produced as they are kept in the usual course of business, in the files in which such documents have been maintained, and in the order within each file in which such documents have been maintained; or all documents shall be organized and labeled to correspond with the requests below. All documents are to be produced along with copies of the file folders in which they are kept.

5.    If, in responding to the requests, you claim that there is any ambiguity in either a particular request or in a definition or an instruction applicable thereto, such claim shall not be used by you as a basis for refusing to respond, but you shall set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the particular request.

6.    For purposes of interpreting or construing the following requests, the terms used are to be given their most expansive and inclusive interpretation unless otherwise specifically limited in the document request itself. This includes, without limitation, the following:

      a.    Construing the words "and" and "or" used in any document request in the disjunctive or conjunctive as necessary, to make the document request more inclusive;

2

b.    Construing the words "any" and "all" used in any document request to mean "any and all" as necessary to make the document request more inclusive;

c.    Construing the singular form of any word to include the plural and the plural form to include the singular; and

d.    Construing the masculine form to include the feminine and/or the gender neutral form.

7.    Electronic records and computerized information are to be produced in an intelligible format together with a description of the system from which it is derived sufficient to permit rendering the material intelligible.

## Definitions

1.    The term "relating to" means referring to, regarding, evidencing, describing, supporting, refuting, and/or constituting.

2.    The term "document" or "documents" means and includes any kind of written, typewritten or printed materials; any tangible recording of any form of statement, communication or representation; and all other data compilation from which information can be obtained (translated, if necessary, by you through detection devices into reasonably usable form) including, but not limited to, writings and all non-identical copies and drafts

3

thereof, notes, memoranda, letters, calendars, appointment books, diaries, notes or minutes of meetings or conversations, catalogs, written agreements, microfilm, graphs, charts, drawings, plans, computer discs, computer tapes, computer cards, computer printouts, tape and sound records, photo records, inter-office communications, reports, photographs, cables, telegrams, telexes, account books, ledger sheets, canceled checks, invoices, bills, receipts, financial statements or any other form of "writing" as defined in Federal Rule of Evidence 1001.

3.    The term "TFT-LCD module" means thin film transistor liquid crystal display module.

4.    The term "mounting hole" means a hole, such as a screw hole, used for mounting or attaching the TFT-LCD module to equipment or to another component, such as a housing.

5.    The term "PDP" means plasma display panel.

6.    The term "the MD480T640PG series" means the Matsushita MD480T640PG1, MD480T640PG2, MD480T640PG3, MD480T640PG4 and/or all other PDPs which contain the MD480T640PG model number.

7.    The term "communications" means every manner of disclosure, transfer or exchange of information, whether person to person, in a group, orally, in writing, by telephone, by electronic transmission, or otherwise,

4

including letter or other correspondence, electronic mail, telephone message, memorandum, or telegram.

8.    The term "Toshiba" means Toshiba America Electronics Corp., Toshiba America, Inc., Toshiba America Information Systems, Inc., their parents, subsidiaries, affiliated companies, officers, directors, employees, agents, consultants, and all those acting on their behalf.

**Documents to be Produced**

1.    Assembly drawings, technical specifications, diagrams, and/or manuals for the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686).

2.    Documents sufficient to show the mechanical structure and components of the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686).

3.    Documents relating to Toshiba's purchase or use of the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686) that occurred prior to April 2, 1998, including sales agreements, purchase orders, and shipping and delivery records.

4.    Documents relating to offers to sell, offers to buy, sales solicitation, sales inquiry, quotations, requests for quote, or requests for proposal that were created, dated, published or disseminated prior to April 2,

5

1998 regarding the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686).

5.     Catalogs, brochures, circulars, advertisements, marketing materials, and articles that were created, dated, published, or disseminated prior to April 2, 1998 regarding the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686).

6.     Documents that describe, identify, or depict the Toshiba equipment or products in which the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686) were used.

7.     Assembly drawings, technical specifications, diagrams, and/or manuals for the Toshiba T3100 series and T5200/100 computers (see Exhibit A and C).

8.     Documents sufficient to show the mechanical structure and components of the Toshiba T3100 series and T5200/100 computers.

9.     Documents sufficient to identify the flat display panel or module used in the Toshiba T3100 series and T5200/100 computers.

10.     Documents sufficient to show sales of the Toshiba T3100 series and T5200/100 computers in the United States that occurred prior to April 2, 1998, including sales agreements, purchase orders, and shipping and delivery records.

11.    Documents relating to offers to sell, offers to buy, sales solicitation, sales inquiry, quotations, requests for quote, or requests for proposal that were created, dated, published or disseminated prior to April 2, 1998 regarding the Toshiba T3100 series and T5200/100 computers.

12.    Catalogs, brochures, circulars, advertisements, marketing materials, and articles that were created, dated, published, or disseminated prior to April 2, 1998 regarding the Toshiba T3100 series and T5200/100 computers. (see Exhibit B)

13.    Documents relating to public display or advertisement, including at trade shows, of the Toshiba T3100 series and T5200/100 computers.

14.    Documents sufficient to show when the Toshiba T3100 series and T5200/100 computers were first manufactured, assembled or ready for sale.

**Deposition Topics**

1.    The mechanical structure of each of the products within the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686), including the location of mounting holes on the products.

7

2.    The components that make up each product within the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686) and the functions of each component.

3.    The purchase or use by Toshiba in the United States of the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686) prior to April 2, 1998.

4.    The manners in which the products within the MD480T640PG series (including but not limited to P.N. 38F4744 & 38F4686) were used.

5.    The mechanical structure of the Toshiba T3100 series and T5200/100 computers.

6.    The components that make up the Toshiba T3100 series and T5200/100 computers and the functions of each component.

7.    The flat display panel or module used in the Toshiba T3100 series and T5200/100 computers.

8.    Sales or offers for sale of the Toshiba T3100 series and T5200/100 computers in the United States prior to April 2, 1998.

9.    Advertisement or public display of the Toshiba T3100 series and T5200/100 computers in the United States prior to April 2, 1998.

10.    The dates on which the Toshiba T3100 series and T5200/100 computers were first manufactured, assembled or ready for sale.

8

11.    The documents produced in this case.

# EXHIBIT A

OLD-COMPUTERS COM Museum ~ Toshiba PC compatible laptops additional information                    02/22/2007 09:58 AM



THE COMPUTER OF THE DAY IS

T > TOSHIBA > PC compatible laptops

## TOSHIBA
## PC compatible laptops

Yeno

MX-64





### T3100 series

Thanks to **Torin Darkflight** for this complete information and pictures:

Of all the early portable computers manufactured by Toshiba, the T3100 series is, by far, my favorite of them all. The T3100 series were a perfect combination of computing power, durability and portability (All of these in late 80s terms, of course). I am such a loyal fan of the T3100 series that I currently own one, and just purchased a second
There were five models (That I am aware of) in the T3100 series: The base **T3100** (Which I shall discuss here), the **T3100/20**, the **T3100e**, The **T3100e/40** and the **T3100SX**

The base T3100, released in 1986, consisted of an 80286 CPU running at 8MHz, but could be slowed to 4 77MHz using a keyboard shortcut It also had 640KB system memory, which could be upgraded to 2 6MB It shipped with MS-DOS 3 2

Storage included a standard 3 5" 720KB floppy diskette drive, and an internal 10MB hard disk drive. An optional external 5 25" floppy diskette drive could also be connected through the parallel/printer port. The T3100 also had a special optional "floppy link" cable, which allowed the T3100 to connect to and use the floppy drive on an IBM desktop system

The T3100 had an interesting display adapter It was fully CGA compatible, however it also had a special high-resolution (For the time) 640x400 display mode which is similar to and partially compatible with the Olivetti/AT&T 6300 graphics. The T3100 display was a 9 6" monochrome orange gas plasma panel capable of displaying this special hi-res mode, and other low-res modes. An external monitor could also be connected via a 9-pin RGB port



The T3100 included a single proprietary expansion slot Upon initial release, there were two expansion accessories available One was an internal 1200 baud modem, the second an expansion card and chassis that housed five standard 8-bit ISA slots, thus allowing greater expandability Eventually, other third-party compatible accessories were made available, such as an ethernet NIC, a faster (2400 baud) modem, even a 1MB memory card that further extended the system RAM beyond the original 2 6MB limit (Thus, 3 6MB is

SHOW RANDOM SYSTEM

BROWSE COMPUTERS

BY NAME

1 2 3 4 5 6 7 8 9 0
Q W E R T Y U I O P
A S D F G H J K L
Z X C V B N M

BY COMPANY

1 2 3 4 5 6 7 8 9 0
Q W E R T Y U I O P
A S D F G H J K L
Z X C V B N M

BY YEAR

1950 51 52 53 54 55 56 57 58 59
1960 61 62 63 64 65 66 67 68 69
1970 71 72 73 74 75 76 77 78 79
1980 81 82 83 84 85 86 87 88 89
1990 91 92 93 94 95 96 97 98 99

POWER SEARCH

OLD-COMPUTERS COM Museum ~ Toshiba PC compatible laptops additional information

02/22/2007 09:58 AM





the actual maximum system RAM) Other miscellaneous peripherals included an external numberpad (Which was actually a reversed left-handed version of the standard numberpad) and an ExpressWriter 201 portable printer.

Although portable for the time, the T3100 is a beast in comparison to today's portability standards. It was 12 2" wide, 14 2" long and 3 1" thick, and it weighed a hefty 15 pounds, quite a burden to carry around Luckily it has a built-in handle (Which doubles as a stand when the system is in use) to help make it easier to carry, a plus if one had neglected to purchase the padded carrying case Although classified as portable and regardless of the "clamshell" design of current notebooks/laptops, the T3100 was simply just a luggable computer Except for the T3100SX, it had no internal battery, thus it required access to an AC outlet to operate.

Quick info about the other T3100 models:
• The **T3100/20** was essentially the same as the base T3100, except it had a larger hard disk drive (20MB instead of 10MB).
• The **T3100e** had a 12MHz 80286 CPU, 1MB RAM and a 20MB hard disk drive.
• The **T3100e/40** was the same as the T3100e, but with a larger 40MB hard disk drive.
• The **T3100SX** had a 16MHz i386SX CPU, 1MB RAM and a 40MB or 80MB hard disk drive, and also included an
internal rechargeable battery for true portability



Contact us | members | about old-computers com | donate old-systems | FAQ
OLD-COMPUTERS COM is hosted by - NYI (New York Internet) -

# EXHIBIT B

The New York Times

September 28, 1987

# INTERNATIONAL REPORT; Toshiba Plans Powerful PC

LEAD: Toshiba America announced plans Friday to sell a portable computer based on the Intel 80386 microprocessor, the most powerful chip available in personal computers. The machine, the T5100, will be assembled in Irvine, Calif., and will reach stores in January, said Tom Sherrard, Toshiba America's manager of

Toshiba America announced plans Friday to sell a portable computer based on the Intel 80386 microprocessor, the most powerful chip available in personal computers. The machine, the T5100, will be assembled in Irvine, Calif., and will reach stores in January, said Tom Sherrard, Toshiba America's manager of PC products marketing.

Although Toshiba's T5100 is the first announced portable based on the 80386 chip, it is not likely to be the first to reach the market. The Compaq Computer Corporation of Houston has scheduled a Tuesday news conference in New York, where it is expected to introduce its own 80386-based portable with a faster, more powerful version of the chip.

If Compaq does indeed show an 80386-based portable, it would set the stage for a head-to-head clash between the makers of this year's most popular new computers.

Copyright 2007 The New York Times Company  |  Home  |  Privacy Policy  |  Search  |  Corrections  |  XML  |  Help  |  Contact Us  |  Work for Us  |  Back to Top

# EXHIBIT C

# Toshiba T5200/100

## Toshiba's Second Generation of Gas Plasma Portables

Toshiba had great success with its original line of gas plasma portables, and followed up with faster machines with newer processors, better video, and more memory and disk space. The T5200/100 features a '386-20 processor, VGA video, a minimum of 2MB of RAM, and a 100MB hard disk.

| Resources |
| --- |
| • Toshiba's Corporate web site |

Like the earlier models, these computers were built to last. Interestingly, one of the new features in the 5200 series is a briefcase-style combination lock. I'm not sure it would do much in terms of protecting one's data from serious thieves, but I suppose it would keep out the casually curious.

All text and images are copyright © 1998-2002 Roger Sinasohn.
Unauthorized use or duplication is strictly prohibited.



The Toshiba T5200/100

**Mfr:** Toshiba
**Location:**
**Model:** PA8052U
**Processor:** i80386; optional i80387
**Speed:** 20mhz
**Op. Sys:** MS-DOS 3.30 or 4.01
**Bits:**
Internal: 16
Data: 16
**RAM:**
Min: 2MB
Max: 14MB
**ROM:**
**Input:** 91-key QWERTY keyboard
**Display:** 640x480 Orange Gas Plasma
**Storage:**

Uncle Roger's Computers -- Toshiba T5200/100                                          02/21/2007 11:09 PM



Detail of the lock and logo



The T5200's Gas Plasma Display



Right side view, with floppy drive

Cassette:
Floppy Disk:  1 3.5" 1.44MB
Hard Disk:    Conner CP-3104 100MB 3.5"
**Ports:**
Serial:       Two RS232C
Parallel:     Combination Parallel and External
              Disk Drive

Keyboard:
Joystick:
Other:        VGA Video Port, 3 Proprietary
              memory slots

**Expansion:**  1 full length 16 bit ISA slot; 1 half
              length 8-bit ISA slot

**Introduced:**
**Discontinued:**
**Cost:**
**Physical:**
Size:         14.6" x 15.6" x 3.9"
Weight:       18.7lbs
**Power:**
Voltage:      115vac, 1.8A or 220vac, 1.2A
              Autosensing
Connector:    IEC Line Cord
Polarity:
**Peripherals:**

**Notes:**

A/B/PRT switch on left side controls the use of the
parallel/FDD port. A indicates an external floppy
drive is drive A:; B indicates the external drive is
B:, and PRT indicates the port is to be used for
parallel printer output. Computer must be re-booted
for switch change to take effect.

Uncle Roger's Computers -- Toshiba T5200/100                                                                02/21/2007 11:09 PM


Detail of the keyboard

---

| **Uncle Roger's Classic Computers** |
| Computers - Wanted - Add Info - Conduct - Awards - Resources |