RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ANNE SHEA GAZA

DIRECT DIAL
(302) 651-7539
GAZA@RLF.COM

March 6, 2007

**BY E-MAIL & HAND DELIVERY**

The Honorable Vincent J. Poppiti
BLANK ROME LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

   **Re:** *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*, C.A. No. 04-343-JJF

Dear Special Master Poppiti:

   Tatung Company and Tatung Company of America, Inc. (collectively, the "Tatung Defendants") submit this letter brief in further support of their request that Your Honor compel LG.Philips LCD Co., Ltd. ("LPL") and Mr. Cho to provide a detailed listing of the documents Mr. Cho reviewed in preparation for his individual deposition that Mr. Cho testified refreshed his recollection. To be clear, the Tatung Defendants are not seeking disclosure of every document Mr. Cho reviewed in preparation for his deposition. The Tatung Defendants simply seek identification of the specific documents that Mr. Cho testified refreshed his recollection of the factual events for which he was and is providing testimony in this case.

   By way of background, during the first day of Mr. Cho's deposition, he testified that he reviewed the `641 patent "[b]ecause this patent was filed for application a long time ago, [and he] need[ed] to refresh [his] recollection of it." Cho Dep. at 5:10 - 12. When asked whether he did anything else to prepare for the deposition, Mr. Cho testified that he had some discussions with his attorneys at McKenna, Long & Aldridge and that he reviewed some documents. When asked whether any of the documents he reviewed refreshed his recollection about the matters related to the '718 and '641 patents, Mr. Cho replied in the affirmative. When asked what documents assisted him in refreshing his recollection, however, Mr. Cho' s attorney instructed him not to answer. Despite repeated requests for this information, Mr. Cho was consistently instructed not to answer. The basis for the instruction was that the disclosure of the documents that refreshed his recollection would violate the attorney-client privilege. Notably, LPL' s attorney never instructed Mr. Cho not to answer on the basis of the work product doctrine.

The Honorable Vincent J. Poppiti
March 6, 2007
Page 2

Delaware courts have long recognized the protections afforded a person or entity and its legal counsel. To that end, courts have protected from disclosure legal advice provided in the context of or in anticipation of litigation. The Tatung Defendants have neither requested nor sought to obtain information related to any legal advice provided to LPL. Instead, consistent with the District Court's decision in *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D 138 (D. Del. 1982) (Ex. A hereto), the Tatung Defendants have merely sought identification of the documents Mr. Cho testified refreshed his recollection. The Tatung Defendants did not ask who decided upon or collected the documents for Mr. Cho's review nor did they ask what information was provided by LPL's counsel in connection with the documents. All the Tatung Defendants have asked for is sufficient information to identify what documents Mr. Cho reviewed that refreshed his recollection so that they can assess, through further inquiry at the deposition, what may have shaped Mr. Cho's testimony.

The Tatung Defendants' request is consistent with controlling legal authority. Federal Rule of Evidence 612, made applicable to depositions by Federal Rule of Civil Procedure 30(c), provides that, if a witness uses a writing to refresh his memory for the purposes of testifying, either at or prior to the deposition, then the adverse party is entitled to, among other things, have the writing produced at the deposition. In the *James Julian* case, the District Court recognized that "[t]here is no doubt that Rule 612(2) constituted a major departure from the settled rule that the use of a privileged document to refresh a witness' memory only constituted a waiver of the privilege if it occurred at the time of testimony." 93 F.R.D. at 144. Once Mr. Cho testified that he reviewed documents in preparation for his deposition that refreshed his recollection, the Tatung Defendants were entitled to know what those documents were and to have the documents produced at the deposition.

The issue before Your Honor is very similar to the issue that confronted the District Court in the *James Julian* case. In that case, the District Court considered whether a binder of documents selected and arranged by plaintiff's counsel and given to various witnesses prior to their deposition was afforded protection from disclosure. After considering the impact of Rule 612, the Court ruled in favor of defendants finding that "[w]ithout reviewing those binders defendants' counsel cannot know or inquire into the extent to which the witnesses' testimony has been shaded by counsel's presentation of the factual background." *Id.* at 146. The District Court went on to note that "[t]he instant request constitutes neither a fishing expedition into plaintiff's files nor an invasion of counsel's 'zone of privacy.' Plaintiff's counsel made a decision to educate their witnesses by supplying them with the binders, and the Raytheon defendants are entitled to know the content of that education." *Id*

In a similar case arising out of the Western District of Pennsylvania, Judge Ziegler looked to Rule 612 to determine whether 24 pages of handwritten notes prepared by the witness prior to his deposition, but at the request of counsel, setting forth events relevant to the litigation,

The Honorable Vincent J. Poppiti
March 6, 2007
Page 3

were protected from disclosure. *S & A Painting Co. v. O.W.B. Corp.*, 103 F.R.D. 407 (W.D. Pa. 1984) (Ex. B hereto). Ultimately finding that plaintiff was required to turn over only the portions of the notes referred to by the witness during the deposition, the district court referenced Rule 612, the *James Julian* case and other, similar cases as requiring disclosure of materials used by a witness to refresh his recollection. *Id.* at 408-410. Notably, neither the case law nor Rule 612 condition disclosure of documents used to refresh recollection on whether the documents were consulted at the deposition or prior to the deposition.

Disclosure of the documents Mr. Cho reviewed that he testified also refreshed his memory of the events for which he was providing testimony at the deposition is consistent with Third Circuit precedent. In *Sporck v. Peil*, the defendant moved to compel all documents used to prepare the witness for his deposition. 759 F.2d 312, 314 (3d Cir. 1985) (Ex. C hereto). In stark contrast to the present situation with Mr. Cho and the facts in *James Julian* and *S & A Painting*, the defendant in *Sporck* sought identification and production of all documents consulted by the deponent, but without any attempt to first determine whether the documents actually refreshed the witness' memory of the events giving rise to his testimony. Reversing the district court's grant of the motion to compel, the Third Circuit held that "the trial court did not properly condition its application of Rule 612 on a showing that petitioner relied upon the requested documents for his testimony and that those documents impacted on his testimony". *Id.* at 318. Thus, *Sporck* stands for the proposition that a movant must establish either that the deponent relied on the sought-after documents in giving his testimony or that the documents influenced his testimony in order for Rule 612 to mandate disclosure. *Id.* at 318. Here, the Tatung Defendants have established through Mr. Cho's own testimony that he reviewed various documents specifically in preparation for testifying at this deposition and that certain of those documents refreshed his memory. Having established the threshold requirements under *James Julian*, *S & A Painting* and *Sporck* for application of Rule 612, the Tatung Defendants respectfully submit that they should be permitted to obtain answers to their questions seeking identification of the specific documents consulted by Mr. Cho that refreshed his recollection. Such a conclusion is entirely consistent with binding precedent from this District and the Third Circuit.

Respectfully,

Anne Shea Gaza
(#4093)

Enclosures

cc:     Clerk of Court (via CM/ECF)
        Richard Kirk, Esquire (via electronic mail)
        Cormac T. Connor, Esquire (via electronic mail)

The Honorable Vincent J. Poppiti
March 6, 2007
Page 4

      Mark Krietzman, Esquire (via electronic mail)
      Scott R. Miller, Esquire (via electronic mail)
      Jeffrey B. Bove, Esquire (via electronic mail)

# EXHIBIT A

93 F.R.D. 138                                                                                                    Page 1

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

**(Cite as: 93 F.R.D. 138)**

United States District Court, D. Delaware.
JAMES JULIAN, INC., Plaintiff,
v.
RAYTHEON COMPANY, Raytheon Service
Company, Dean E. Bensley, Building and
Construction Trades Council of Delaware, Frank
DiMauro, Operating Engineers
Local 542, Albert W. Spanich, Iron Workers No.
451, Edward F. Peterson,
Metropolitan District Council of Philadelphia and
Vicinity, United Brotherhood
of Carpenters and Joiners of America, and Wharf
and Dock Builders and Pile
Drivers Local Union No. 454 of the United
Brotherhood of Carpenters and Joiners
of America, Defendants.
**Civ. A. No. 80-30.**

Jan. 20, 1982.

Proceeding was instituted on motions of defendants
to compel return of certain allegedly privileged
documents and to compel production of materials
reviewed by certain of plaintiff's witnesses prior to
their oral depositions. The District Court, Murray
M. Schwartz, J., held that: (1) documents consisting
of memoranda wherein assistant general counsel for
the defendant expressed legal opinions as to
obligations arising out of a letter agreement
between parties were protected from disclosure
under either the attorney-client privilege or the
work product doctrine, and (2) conduct of plaintiff's
counsel when, in preparing a witness for deposition,
he used a binder containing a small percentage of
extensive documents reviewed prior to depositions
amounted to waiver of protection accorded those
documents as work product since, without
reviewing binders, counsel for defendants could not
know or inquire into extent to which witnesses'
testimony had been shaded by counsel's
presentation of factual background.

Motions granted.

West Headnotes

**[1] Witnesses** 🔑**198(1)**
410k198(1) Most Cited Cases
The attorney-client privilege is intended to promote
full and open communication between attorney and
client by protecting confidential communications
and its availability must be left for case-by-case
determination.

**[2] Witnesses** 🔑**199(2)**
410k199(2) Most Cited Cases
Communications by employees to corporate
counsel, acting as such, at direction of corporate
superiors in order to secure legal advice are
privileged.

**[3] Witnesses** 🔑**205**
410k205 Most Cited Cases
The attorney-client privilege is limited to
communications intended to be confidential.

**[4] Witnesses** 🔑**206**
410k206 Most Cited Cases
The presence of nonessential third parties not
needed for the transmittal of the information will
negate the attorney-client privilege.

**[5] Federal Civil Procedure** 🔑**1600(2)**
170Ak1600(2) Most Cited Cases
    (Formerly 170Ak1600.1)
Memoranda wherein assistant general counsel for
defendant expressed legal opinions as to obligations
arising out of a letter agreement between parties, as
well as memorandum of a telephone conversation
between counsel and a construction consultant for
defendant, were protected from disclosure under
attorney-client privilege inasmuch as counsel were
consulted in their legal capacities, memoranda were
afforded required confidentiality both at time of
their composition and thereafter and, though their
placement in general program file made it more
likely that some corporate personnel other than

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

**(Cite as: 93 F.R.D. 138)**

those who needed to know would discover their contents, memoranda were not broadly circulated or used as training materials.

**[6] Federal Civil Procedure** ⌖**1600(3)**
170Ak1600(3) Most Cited Cases
   (Formerly 170Ak1600.2)
In contrast to the attorney-client privilege, the work product doctrine provides an attorney with a "zone of privacy" within which to think, plan, weigh facts and legal theories, and prepare a case. Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.

**[7] Federal Civil Procedure** ⌖**1600(3)**
170Ak1600(3) Most Cited Cases
   (Formerly 170Ak1600.2)
Rule protecting from discovery documents and intangible things prepared in anticipation of litigation was not intended to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process by limiting its scope to materials prepared or collected by an attorney in preparation for litigation. Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.

**[8] Federal Civil Procedure** ⌖**1600(3)**
170Ak1600(3) Most Cited Cases
   (Formerly 170Ak1600.2)
Mere fact that a document is prepared before litigation actually commences does not preclude a finding that it constitutes work product, but litigation must at least be a real possibility at time of preparation or, in other words, document must be prepared with an eye to some specific litigation. Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.

**[9] Federal Civil Procedure** ⌖**1600(3)**
170Ak1600(3) Most Cited Cases
   (Formerly 170Ak1600.2)
Fact that corporation could not know who would sue based on what theory did not preclude application of work product document to discovery in case as long as prospect of litigation was sufficiently strong. Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.

**[10] Federal Civil Procedure** ⌖**1600(3)**
170Ak1600(3) Most Cited Cases
   (Formerly 170Ak1600.2)
Memoranda containing opinions of counsel with regard to prospect of present litigation, clearly identified plaintiff as potential adversary, and containing several legal and factual points at issue were privileged under work product doctrine. Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.

**[11] Federal Civil Procedure** ⌖**1600(3)**
170Ak1600(3) Most Cited Cases
   (Formerly 170Ak1600.2)
Binder containing a small percentage of documents received by defendant's general counsel prior to depositions was entitled to protection as work product inasmuch as counsel, in selecting and ordering a few documents out of thousands, could not help but reveal important aspects of his understanding of case. Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.

**[12] Federal Civil Procedure** ⌖**1600(5)**
170Ak1600(5) Most Cited Cases
   (Formerly 170Ak1600.4)
Conduct of plaintiff's counsel when, in preparing a witness for deposition, he used a binder containing a small percentage of extensive documents reviewed prior to depositions amounted to waiver of protection accorded those documents as work product since, without reviewing binders, counsel for defendants could not know or inquire into extent to which witnesses' testimony had been shaded by counsel's presentation of factual background. Fed.Rules Evid.Rules 612, 612(2), 28 U.S.C.A.; Fed.Rules Civ.Proc. Rule 26(b)(3), 28 U.S.C.A.
**\*139** John Van Brunt, Jr., Wilmington, Del., John W. Pelino, Edward J. O'Malley, and Howard A. Rosenthal, Pelino & Lentz, P.C., of counsel, Philadelphia, Pa., for plaintiff.

Edmund N. Carpenter, II, Richard G. Elliott, Jr., and Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, Del., **\*140** for defendants Raytheon Co., Raytheon Service Co. and Dean E. Bensley.

Joseph W. Benson, Brandt & Benson, Wilmington,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

**(Cite as: 93 F.R.D. 138)**

Del., Richard B. Sigmond, Meranze, Katz, Spear & Wilderman, of counsel, Philadelphia, Pa., for defendants Building Trades Council of Delaware and Frank DiMauro.

Robert B. Coonin, Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, Del., Jack J. Bernstein, Adler, Barrish, Daniels, Levin & Creskoff, of counsel, Philadelphia, Pa., for defendants Operating Engineers Local 542 and Albert W. Spanich.

Harvey B. Rubenstein, Wilmington, Del., for defendants Iron Workers Local 451 and Edward F. Peterson.

Clifford B. Hearn, Balick & Hearn, P.A., Wilmington, Del., Thomas W. Jennings, of counsel, Philadelphia, Pa., for defendants Metropolitan District Council of Philadelphia and Vicinity and Wharf & Dock Builders Local 454.

### OPINION

MURRAY M. SCHWARTZ, District Judge.

In this action, plaintiff James Julian, Inc. ("Julian") seeks injunctive relief and damages against several labor organizations, individual union officers, Raytheon Company, and Raytheon Service Company ("RSC") under sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. ss 1, 2, section 303 of the Labor Management Relations Act, 29 U.S.C. s 187, and state tort law. The parties are currently engaged in discovery. Presently before the Court are defendants Raytheon Company and RSC's ("the Raytheon defendants") motions to compel the return of certain allegedly privileged documents and to compel production of materials reviewed by certain of plaintiff's witnesses prior to their oral depositions. Each of the Raytheon defendants' motions will be addressed in turn.

### Return of Documents

During the course of document discovery the Raytheon defendants produced certain documents now claimed to be privileged. The documents in question were produced pursuant to a court-approved protective order which provided that production would not constitute a waiver of any privilege which might apply to such documents. [FN1] Plaintiff does not contend that the Raytheon defendants waived any privilege by producing the documents in question. Rather, Julian argues that the documents neither were treated as confidential or privileged prior to production nor prepared in anticipation of litigation and were therefore not privileged in the first instance.

> FN1. The order approved May 21, 1980, provides in part: 9. Protected Documents and the information contained therein or derived therefrom may be used at any hearing in this case, subject to any further Protective Order which this Court might, for good cause, then enter, and provided that any use or filing of the Protected Documents shall not constitute a waiver by the using or filing party of any attorney-client privilege, work product privilege, confidentiality or other applicable privilege. By making available any such protected documents, or information contained therein or derived therefrom, the parties will not have waived, and do not waive, the right to assert any such privilege or to object to the admissibility of any such Protected Documents into evidence in any other hearing or proceeding in this litigation.

The first document, Exhibit P-5, is a memorandum prepared by R. C. Austin, general counsel for defendant RSC, dated September 26, 1978, to which a memorandum prepared by R. J. D'Avignon, assistant general counsel for defendant RSC, is attached. Both memoranda express legal opinions as to the obligations arising out of a letter agreement between RSC and Julian. The second document, Exhibit P-39, is a memorandum of a telephone conversation involving Mr. Philbrick, a former subcontracts manager for RSC, Mr. Robbins, a construction consultant for RSC, and Mr. D'Avignon, assistant general counsel to RSC. The memorandum reflects that the parties discussed the possibility of litigation with Julian and that Mr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

(Cite as: 93 F.R.D. 138)

D'Avignon rendered legal advice on that subject.

**\*141** (1)(2) Defendants contend that the memoranda are protected by both the attorney-client and attorney work product privileges. At the outset it must be recognized that the two privileges, though related, are distinct. Any discussion of attorney-client privilege must begin with the Supreme Court's recent decision in Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In Upjohn the Supreme Court rejected the so-called "control group test" for use in cases involving corporate claims of attorney-client privilege. Recognizing that the privilege is intended to promote full and open communication between attorney and client by protecting confidential communications, the Court held that its availability must be left for case-by-case determination. On the facts presented, the Court held that communications by employees to corporate counsel, acting as such, at the direction of corporate superiors in order to secure legal advice were privileged. 449 U.S. at 394-95, 101 S.Ct. at 685.

Plaintiff does not seriously contest that the individuals involved in the preparation of the two documents were employees of a corporation (RSC). Although there was some claim that the attorneys involved were acting as business rather than legal advisors, the Court has inspected the memoranda and finds that on the occasions reflected in those documents both Mr. Hensleigh and Mr. D'Avignon were consulted in their legal capacities. See Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136 (D.Del.1977); Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.Del.1954).

(3)(4) Somewhat more troubling is plaintiff's argument that the Raytheon defendants have failed to establish that the memoranda were afforded the required confidentiality both at the time of their composition and since then. It is well established that the attorney-client privilege is limited to communications intended to be confidential. Indeed, the highly confidential treatment of the communications involved was a key factor in Upjohn, where the Court stressed that they were

"considered 'highly confidential' when made ... and have been kept confidential by the company." 449 U.S. at 395, 101 S.Ct. at 685. The presence of nonessential third parties not needed for the transmittal of the information will negate the privilege. Pitney-Bowes, Inc. v. Mestre, 86 F.R.D. 444, 446 (S.D.Fla.1980).

(5) The requirement of confidentiality at the time of composition presents little difficulty in this case. As noted, P-39, the telephone memorandum, reflects a conversation involving Mr. D'Avignon, assistant general counsel for RSC, Mr. Robbins and Mr. Philbrick. Having reviewed the memorandum, the Court finds that both Mr. Robbins and Mr. Philbrick were essential participants in that conversation. P-5, the Hensleigh memorandum with attachment, was circulated to seven individuals: Mr. Bensley, president of RSC; Mr. Austin, RSC contracts manager; Mr. Storella, RSC contracts administrator; Dr. Spencer, Delaware Reclamation Project Program Manager; [FN2] Mr. Schroeder, resource recovery manager; and Mr. Philbrick, former RSC subcontracts manager. Raytheon Defendants' Reply Brief at 6. Although distribution to as few as thirteen persons has been held to negate the privilege, Pitney Bowes, Inc. v. Mestre, 86 F.R.D. at 448, the Court finds, based on its review of the document in question, that on the facts of this case the distribution was both reasonable and necessary; the status of each of the seven named individuals was such that it was essential that they know the contents of the memorandum. See Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (circulation of questionnaire to "All Foreign General and Area Managers" did not destroy confidentiality).

> FN2. The Delaware Reclamation Project is the construction project out of which this litigation arose.

A more difficult issue is raised by the subsequent handling of the two memoranda. P-5, the Hensleigh memorandum, as well as the attached D'Avignon memorandum, **\*142** is stamped "company private," yet both documents, along with P-39, the telephone

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

93 F.R.D. 138, 33 Fed. R. Serv. 2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

(Cite as: 93 F.R.D. 138)

memorandum, were indexed and filed in the general program file. Virtually anyone working on the Delaware Reclamation Project could have reviewed the documents. Plaintiff argues that by placing them in the general file the Raytheon defendants, in effect, published the documents waiving any privilege to which they might previously have been entitled. The Raytheon defendants argue that the project files were open only to corporate employees and that distribution within the corporation does not constitute a waiver. They further assert that the placement of such documents in the project file where they can be reviewed by project personnel who need to know their content is essential to the corporation's efficient operation. It would be impossible, or at least difficult, they argue, to conduct day-to-day business if they were forced to pull essential project documents out of their logical file sequence to place them in special, locked, confidential files.

Although it is well established that publication of privileged documents can constitute waiver, Coastal States Gas Corp. v. Department of Energy, 644 F.2d 969 (3d Cir. 1981); Byrnes v. IDS Realty Trust, 85 F.R.D. 679 (S.D.N.Y.1980) (applying Eighth Circuit law), there is little authority on the precise issue presented. In Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C.Cir.1980) , the Department of Energy ("DOE") opposed disclosure of certain documents under the Freedom of Information Act, claiming that they were within the scope of exemption 5, because they would have been protected by the attorney-client privilege had DOE been a private party. The court rejected the claim of privilege, in part, because DOE could not demonstrate that it had treated the documents in a confidential manner. Noting that the record contained no evidence of any attempt to protect the confidentiality of the document, which had in fact, at least in some regions, been "circulated to all area offices, filed and indexed for future use, relied on as precedent and used as training materials for new personnel," 617 F.2d at 863 (footnotes omitted), the court held that there was no basis on which to conclude they were confidential.

Plaintiff argues that the rationale of Coastal

requires a holding that there is no privilege in this case. The Court cannot agree. The documents in question were not broadly circulated or used as training materials; they were simply indexed and placed in the appropriate file where they would be available to those corporate employees who needed them. As the court noted in Coastal itself, it is only when facts have been made known to persons other than those who need to know them that confidentiality is destroyed. 617 F.2d at 863. Further, to the extent that Coastal can be read to suggest a stricter rule limiting intra-corporate circulation, it should be noted that the Coastal court, writing prior to the Supreme Court's decision in Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), relied, in part, on the now-discarded control group test.

It is of course true that the placement of the documents in the general program file made it more likely that some corporate personnel other than those who "needed to know" would discover their contents. But the fact that some unauthorized corporate personnel may purposely or inadvertently read a privileged document does not render that document nonconfidential. To hold otherwise would be to require every corporation to maintain at least two sets of files. Moreover, a screening committee would then have to be set up whereby some designated official could pass on the need of each employee to know the contents of any requested document. Such a system is neither practical nor in the Court's opinion required by the case law.

Attorney Work Product

(6) Even if the documents in question were not subject to the attorney-client privilege, they would still be protected from disclosure by the attorney work product doctrine. In contrast to the attorney-client privilege, the work product doctrine provides an attorney with a "zone of privacy" *143 within which to think, plan, weigh facts and legal theories, and prepare a case. Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 864 (D.C.Cir.1980); Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136 (D.Del.1977). As codified in Rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

**(Cite as: 93 F.R.D. 138)**

26(b)(3) of the Federal Rules of Civil Procedure, the doctrine protects:

> documents and tangible things ... prepared in anticipation of litigation or for trial by or for (a) party or by or for (a) party's ... attorney ... [FN3]

>> FN3. The full text of Rule 26(b)(3) provides:
>> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
>> In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
>> A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

(7) The rule was not intended "to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process." Hercules, Inc. v. Exxon Corp., 434 F.Supp. at 150-51. For that reason the doctrine's protection has always been limited to materials prepared or collected by an attorney in preparation for litigation. See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

(8)(9) Plaintiff argues that the memoranda were prepared before there was even a hint of litigation and that the doctrine is therefore inapplicable. The mere fact that a document is prepared before litigation actually commences does not preclude a finding that it constitutes work product. On the other hand, litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation. In In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979), the Court of Appeals for the Third Circuit reviewed a variety of formulas for determining "the necessary nexus between the creation of the material and the prospect of litigation," and concluded that on the facts of that case any of the proposed tests would have been satisfied. In Grand Jury the corporation, suspecting the existence of undisclosed, illegal foreign payments, retained outside counsel to investigate. In reviewing the district court's quashing of a grand jury subpoena directed to the materials prepared in the course of that investigation, the court held that the fact that there was no suit pending at the time of the investigation did not negate the claim of privilege. If the investigation confirmed the corporation's suspicions, some litigation was almost inevitable. The fact that the corporation could not know who would sue based on what theory did not matter. The prospect of litigation was sufficiently strong to bring the materials within the doctrine. 559 F.2d at 1229.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

**(Cite as: 93 F.R.D. 138)**

(10) The memoranda at issue here present an even stronger case for protection. They contain the opinions of counsel with regard to the prospect of the present litigation. Plaintiff was clearly identified *144 as the potential adversary as were several of the legal and factual points at issue. Having reviewed the documents, the Court finds plaintiff's contention that they were prepared in the absence of "even a 'hint,' suggestion or possibility of a claim of any litigation ...," Plaintiff's Answering Brief at 17, to border on the ludicrous.

Production of Materials Reviewed Prior to Depositions

In the course of preparing witnesses for depositions plaintiff's counsel assembled a binder which was reviewed by current principals, officers and employees of Julian who were being deposed by the Raytheon defendants. The binder, which was not reviewed by the Court, contains: 1) selected documents obtained from RSC through discovery; 2) documents obtained by Julian from the public records of the Delaware Solid Waste Authority through a Freedom of Information Act request; and 3) documents prepared by Julian during the course of the project. Plaintiff's Answering Brief at 6-7.

Julian does not object to defendants' obtaining the documents contained in the binder; indeed, Julian has represented that many of the documents were already turned over during the course of discovery. Plaintiff's Answering Brief at 7. Rather, plaintiff objects to the production of the binder itself, arguing that the selection and ordering of documents constitute privileged work product reflecting counsel's opinions, mental impressions, conclusions or legal theories and is therefore entitled to special protection under Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Raytheon defendants argue first, that production of the binder would not reveal the thought processes of plaintiff's counsel and second, that even if the binder was at one time entitled to special protection, plaintiff waived that entitlement by using the binder to prepare witnesses for deposition.

(11) The threshold issue can be dispensed with

quickly. The binder contains a small percentage of the extensive documents reviewed by plaintiff's counsel. In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research. There can be no doubt that at least in the first instance the binders were entitled to protection as work product. See Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613 (S.D.N.Y.1977).

Even assuming the binder was once entitled to protection, the Raytheon defendants argue that plaintiff waived that protection. Relying on Rule 612 of the Federal Rules of Evidence, they argue that if a party uses protected documents to prepare a witness for deposition, those documents become discoverable. Rule 612 provides in part:

... if a witness uses a writing to refresh his memory for the purpose of testifying either-
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness....

Its provisions are made applicable to depositions by virtue of Rule 30(c) of the Federal Rules of Civil Procedure. The legislative history and case law both discuss Rule 612 in terms of privilege without clearly distinguishing the attorney work product doctrine. As a result the following analysis will discuss the Rule's effect on protected documents generally before considering the effect, if any, of the fact that in this case plaintiff claims the protection of the work product doctrine.

There is no doubt that Rule 612(2) constituted a major departure from the settled rule that the use of a privileged document to refresh a witness' memory only constituted a waiver of the privilege if it occurred at the time of testimony. See *145La Chemise Lacoste v. Alligator Company, Inc., 60

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

(Cite as: 93 F.R.D. 138)

F.R.D. 164 (D.Del.1973) (stating prior rule). The precise issue presented by the Raytheon defendants' motion is whether in extending the rule to include documents used to refresh a witness' memory before testifying Congress intended to include all such documents or only those not subject to claims of privilege.

The legislative history of Rule 612 is ambiguous. It can be read to indicate a congressional intent to leave the decision as to privileged documents to the sound discretion of the district courts for resolution on a case by case basis. It is also possible to view the record as reflecting an intent to exempt privileged documents from the operation of the expanded rule. See Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. at 616; J. Weinstein & M. Berger, 3 Weinstein's Evidence at 612-2-612-5 (1978).

As noted, prior case law required disclosure of privileged documents used to refresh memory at the time of testimony. Plaintiff argues, based largely on legislative history, that Congress intended to limit Rule 612's expansion of prior law to nonprivileged documents used to refresh witness' memory prior to testimony. As enacted, Rule 612 does limit the expansion of prior law, not, as plaintiff suggests, by exempting privileged documents, but by conditioning disclosure on the discretionary approval of the district court. It would thus appear that Congress left the task of striking a balance between the competing interests of full disclosure and the maintenance of confidentiality for case by case determination.

Those courts which have considered the issue have generally agreed that the use of protected documents to refresh a witness' memory prior to testifying constitutes a waiver of the protection. In what is perhaps the leading case, Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613 (S.D.N.Y.1977) (Frankel, J.), defendant's attorneys used four notebooks to prepare expert witnesses for deposition. The court noted that:

(Given the) modern views favoring broad access to materials useful for effective cross-examination, embodied in rules like 612

(and the Jencks Act), it is disquieting to posit that a lawyer may "aid" a witness with items of work product and then prevent totally the access that might reveal and counteract the effects of such assistance. There is much to be said for a view that a party or its lawyer, meaning to invoke the privilege, ought to use other, and different materials, available later to a cross-examiner, in the preparation of witnesses. When this simple choice emerges the decision to give the work product to the witness could well be deemed a waiver of the privilege.

74 F.R.D. at 616. The court's actual holding that the notebook which had "the sound and quality of materials appropriate 'to promote the search of credibility and memory,' " 74 F.R.D. at 616, need not be produced was based not on its reading of Rule 612 but on its perception that an order compelling discovery would work undue hardship on defendant, whose counsel were unaware of the scope of the then recently adopted rule. Indeed, the court was at pains to put the bar on notice that in the future a contrary result would obtain.

Judge Frankel's prediction has proved largely accurate. Thus, for example, the court in Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc., 81 F.R.D. 8 (N.D.Ill.1978), held that the use of privileged documents to refresh a witness' recollection prior to testimony served as an effective waiver of the privilege. Plaintiff attempts to distinguish Wheeling by arguing that because the witness had left the party's employ by the time of his deposition, his review of the documents destroyed their confidentiality. The Wheeling Court did hold that the use of the documents to refresh the witness' recollection constituted a waiver of the attorney-client privilege, but any notion that it was relying on concepts of publication to noncorporate personnel must be dispelled by its reliance on Bailey v. Meister Brau, Inc., 57 F.R.D. 11 (N.D.Ill.1972), a pre-Rule 612 case. In Bailey, privileged*146 documents were used to refresh a witness's recollection at his deposition. In rejecting plaintiff's claim that privileged documents are excepted from the general rule that a party is entitled to inspect any document used to refresh recollection the court held that:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

**(Cite as: 93 F.R.D. 138)**

To adopt such an exception would be to ignore the unfair disadvantage which could be placed upon the cross-examiner by the simple expedient of using only privileged writings to refresh recollection

57 F.R.D. at 13. The Bailey court also considered the applicability of the attorney work product doctrine to the requested documents and concluded that the use of the documents to refresh recollection constituted a waiver of that doctrine for the same reasons that it constituted a waiver of the attorney-client privilege. Id; accord, Marshall v. United States Postal Service, 88 F.R.D. 348 (D.D.C 1980) (unsigned affidavit prepared by attorney from interview notes used to refresh recollection at deposition); Williamson v. Puritan Chemical Corp., 80 Civ. 1698 (S.D.N.Y. March 6, 1981) (statement made to counsel and reviewed prior to testifying); Peck & Peck, Inc. v. Jack La Lanne, 76 Civ. 4020 (S.D.N.Y. Jan. 12, 1978) (use of privileged investigative report to refresh recollection prior to testimony)

Aside from Berkey the only case Court or counsel have discovered in which the court denied production of privileged documents reviewed prior to testimony is Jos. Schlitz Brewing Co. v. Muller & Phipps (Hawaii) Ltd., 85 F.R.D. 118 (W.D.Mos 1980) In Schlitz the witness, an attorney, testified that he had reviewed his correspondence file consisting of thirty-nine documents in preparation for his deposition. Although the Court did state that language and history of Rule 612 indicated that the Rule's adoption occasioned "little if any widening of disclosure obligations," 85 F.R.D. at 119, the court's actual holding was simply that "there was insufficient establishment of actual use of any of the various documents (contained in the file), so as to authorize (the invocation of) Rule 612. 85 F.R.D. at 120.

(12) Plaintiff attempts to distinguish the above cited cases by asserting that, with the exception of Bailey, a pre Rule 612 case, and Berkey, which is dismissed as containing mere dicta, none involved a claim of attorney opinion work product, the disclosure of which the court is obligated to protect

against Fed.R.Civ.P. 26(b)(3). Plaintiff's argument is not without merit. Each case must, of course, be evaluated on its own facts. In a given case the fact that the privileged documents contained attorneys' mental impressions might cause the Court to strike the balance in favor of nondisclosure. However, this is not that case. The binder at issue contains various documents selected and arranged by plaintiff's counsel and given to various witnesses prior to their depositions. Without reviewing those binders defendants' counsel cannot know or inquire into the extent to which the witnesses' testimony has been shaded by counsel's presentation of the factual background The instant request constitutes neither a fishing expedition into plaintiff's files nor an invasion of counsel's "zone of privacy." Plaintiff's counsel made a decision to educate their witnesses by supplying them with the binders, and the Raytheon defendants are entitled to know the content of that education

Based on the foregoing the Court concludes that the binders are properly within the scope of Rule 612(2) and in the interests of justice should be disclosed An appropriate order will issue

93 F.R.D. 138, 33 Fed.R.Serv.2d 509, 1982-1 Trade Cases P 64,599, 9 Fed. R. Evid. Serv. 1184

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

# EXHIBIT B

Westlaw.

103 F.R.D. 407

103 F.R.D. 407, 1 Fed.R.Serv.3d 428, 17 Fed. R. Evid. Serv. 645

**(Cite as: 103 F.R.D. 407)**

United States District Court,
W.D. Pennsylvania
S & A PAINTING CO., INC., a corporation,
Plaintiff,
v.
O.W.B. CORPORATION, a corporation, and
Transamerica Insurance Co., a
corporation, Defendants,
v.
Nick S. FRANGOPOULOS, Third-Party Defendant.
**Civ. A. 82-2332.**

Nov. 6, 1984

In contract action, defendants moved to compel production of handwritten memorandum written by third-party defendant, president of plaintiff corporation. The District Court, Ziegler, J., held that: (1) 24 pages of handwritten notes prepared by witness prior to deposition at request of counsel, setting forth events relevant to the litigation, fell within attorney-client privilege and work-product doctrine, and (2) by referring to his notes during the deposition, witness waived the attorney-client privilege and work-product protection, but only for those portions of the documents to which reference was made, and no disclosure was required of the otherwise privileged, unexamined portions of the documents.

Limited disclosure ordered.

West Headnotes

**[1] Federal Civil Procedure ☞1381**
170Ak1381 Most Cited Cases
Rule entitling adverse party to inspect writings used by witness to refresh his memory for purpose of testifying applied even though witness in question testified at deposition rather than at trial. Fed.Rules Evid.Rules 612, 612(1, 2), 28 U.S.C.A.; Fed.Rules Civ.Proc.Rule 30(c), 28 U.S.C.A.

**[2] Federal Civil Procedure ☞1414.1**
170Ak1414.1 Most Cited Cases
(Formerly 170Ak1414)
Attorney-client privilege was applicable to handwritten notes prepared by witness prior to deposition at request of counsel, setting forth events relevant to the litigation, since the notes were a communication from the witness to his lawyer which both expected to be confidential.

**[3] Federal Civil Procedure ☞1415**
170Ak1415 Most Cited Cases
Notes prepared by witness prior to deposition at request of his counsel, setting forth events relevant to the litigation, fell within work-product doctrine. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[4] Federal Civil Procedure ☞1414.1**
170Ak1414.1 Most Cited Cases
(Formerly 170Ak1414)

**[4] Federal Civil Procedure ☞1415**
170Ak1415 Most Cited Cases
Deposition witness, by referring to his notes during deposition, waived attorney-client privilege and work-product protection, but only as to those portions of the notes to which reference was made; unexamined portions of the documents, otherwise privileged, did not have to be disclosed. Fed.Rules Evid.Rules 612, 612(1, 2), 28 U.S.C.A.

**[5] Witnesses ☞256**
410k256 Most Cited Cases
Purposes of disclosure under rule entitling adverse party to inspect writings used by witness to refresh his memory for purpose of testifying are to test credibility of the witness' claim that memory has been revived and to expose any discrepancies between the writing and the testimony. Fed.Rules Evid.Rule 612, 28 U.S.C.A.

**[6] Witnesses ☞256**
410k256 Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

103 F.R.D. 407, 1 Fed.R.Serv.3d 428, 17 Fed. R. Evid. Serv. 645

**(Cite as: 103 F.R.D. 407)**

Rule entitling adverse party to inspect writings used by witness to refresh his memory for purpose of testifying is not a mechanism for uncovering all prior inconsistent statements of a witness; witness' statements, inconsistent with testimony or not, which have not been used to refresh recollection are irrelevant for purposes of the rule. Fed.Rules Evid.Rule 612, 28 U.S.C.A.

**[7] Federal Civil Procedure** ☞1381
170Ak1381 Most Cited Cases
For purposes of rule entitling adverse party to inspect writing used by witness to refresh his memory for purpose of testifying and authorizing court to excise portions of the writing which are not related to subject matter of the testimony, "testimony" means only testimony which was refreshed by the writing, not the entire testimony of witness during deposition or trial, avoiding unfairly broad disclosure which would otherwise result merely because other parts of the writing, not used to refresh recollection, may coincide with other parts of the testimony. Fed.Rules Evid.Rule 612, 28 U.S.C.A.
*408 Susan A. Yohe, Pittsburgh, Pa., for plaintiff.

Jeffrey J. Bair, Pittsburgh, Pa., for defendants.

MEMORANDUM OPINION

ZIEGLER, District Judge.

(1) This is a civil action for damages arising from a contract dispute. Defendants, O.W.B. Corporation and Transamerica Insurance Company, move to compel the production of a handwritten memorandum authored by third-party defendant, Nick S. Frangopoulos, president of plaintiff, S & A Painting Co., Inc.

(2) Jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332.

(3) Defendants deposed Nick S. Frangopoulos on March 6, 1984. During the course of the deposition, Frangopoulos referred to 24 pages of handwritten notes, prepared earlier at the request of counsel, setting forth the events relevant to this litigation. The parties dispute the frequency of the deponent's reference to notes.

(4) The transcript establishes that Frangopoulos examined the notes three times in order to ascertain dates and read from the notes on one occasion. Defendants seek production of the entire document pursuant to Federal Rule of Evidence 612.

[1] (5) Plaintiff contends that the attorney-client privilege protects the notes from disclosure. Rule 612 provides in part:
[I]f a witness uses a writing to refresh his memory for the purpose of testifying, either--
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.

Rule 612(1) applies even though Frangopoulos testified at a deposition, not a trial. Fed.R.Civ.P. 30(c).

[2][3] (6) The attorney-client privilege is applicable to the notes in question because they constitute a communication from the *409 client to his lawyer which both expected to be confidential. *See Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Moreover, the notes fall within the work-product doctrine as embodied in Fed.R.Civ.P. 26(b)(3) because they were prepared "in anticipation of litigation" for the attorney for S & A Painting Co., the party's representative under the Rule. Documents protected under Rule 26(b)(3) may be discovered "only upon a showing that the party seeking discovery has a substantial need of the materials" and cannot obtain their equivalent "without undue hardship."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

103 F R D  407, 1 Fed R Serv 3d 428, 17 Fed  R  Evid  Serv  645

**(Cite as: 103 F.R.D. 407)**

[4] (7) The issue here is whether Frangopoulos, by referring to his notes during the deposition, waived the attorney-client privilege and work-product protection for all or part of the document  We hold that a waiver occurred as to those portions of the notes to which reference was made, but that the bulk of the notes are protected from disclosure

(8) Confronted with the conflict between the command of Rule 612 to disclose materials used to refresh recollection and the protections afforded by the attorney-client privilege and the work-product doctrine, the weight of authority holds that the privilege and protections are waived. *James Julian, Inc  v  Raytheon Co ,* 93 F R D  138 (D Del 1982) (work-product protection waived); *Marshall v United States Postal Service,* 88 F R D  348, 350 (D D C 1980) (attorney-client privilege waived); *Wheeling-Pittsburgh Steel Corp  v  Underwriters Laboratories, Inc ,* 81 F R D  8, 9 (N D Ill 1978) (attorney-client privilege waived); *Bailey v Meister-Brau, Inc ,* 57 F R D  11, 13 (N D Ill 1972) (attorney-client privilege and work-product protection waived)  Given the lack of discretion of Fed R Evid  612(1), applicable here, as compared with Fed R Evid  612(2), we conclude that disclosure is required of those parts of the notes to which reference was made.

(9) Defendants assert that we must order disclosure of the entire 24-page document  While such broad disclosure has been ordered when deponents reviewed entire files prior to testifying, defendants cite no case in which production was ordered of the entire material separate from those portions actually examined while testifying  *Bailey v  Meister-Brau, Inc ,* 57 F R D  11 (N D Ill 1972), comes closest to defendants' position  In *Bailey* the court ordered production of three documents examined by the deponent while testifying, even though they were work-products and covered by the attorney-client privilege  *Id* at 13  However, the court did not specify the extent of examination of each document  We hold that *Bailey* does not support defendants' contention that unexamined portions of documents, otherwise privileged, must be disclosed pursuant to Rule 612

(10) *Bogosian v  Gulf Oil Corp ,* 738 F 2d 587 (3d Cir 1984) is instructive  Although the case deals with the protection of core work product, attorney mental impressions and thought processes, the Court of Appeals noted that "Rule 612    does not displace the protections of Fed R Civ P  26(b)(3)." *Id* at 595 n  3  This suggests that Rule 612 should be construed narrowly in order to respect the protections of work-product material embodied in Rule 26(b)(3).  Allowing disclosure under Rule 612 of documents protected by the work-product doctrine circumvents the requirement of "substantial need" and "undue hardship" prior to discovery under Rule 26(b)(3)  While even a narrow construction of Rule 612 mandates waiver of protections for portions of documents actually used to refresh, permitting discovery of the bulk of the notes converts Rule 612, a rule of evidence, into a discovery device

(11) Case law supports disclosure of only those portions of material that were actually used to refresh recollection  In *Jos  Schlitz Brewing Co  v  Muller & Phipps (Hawaii), Ltd ,* 85 F R D  118 (W D Mo 1980), the deponent, an attorney, testified that he had "looked at" his correspondence file, consisting of 39 documents, prior to testifying  The district court held that actual use of any of the documents had not been established to invoke Rule 612  *Id* at 120  In the case at bar, defendants have *410 failed to show actual use by Frangopoulos of any of the notes except for several references to dates and one portion read aloud during the deposition.

(12) While *United States v  Wright,* 489 F 2d 1181 (D C Cir 1973), predates Rule 612, it is often cited as a leading case on the question whether an entire document must be disclosed if only part is used to refresh recollection  *See* 3 J  Weinstein & M  Berger, *Weinstein's Evidence* ¶ 612[1] at 612-14 (1982)  The *Wright* court noted:

It is a hornbook rule of evidence that, had investigator Reeves used parts of his report to refresh his recollection while on the witness stand, the prosecution would be entitled to examine those parts of the report and would be permitted to make use of those parts of the report

© 2007 Thomson/West  No Claim to Orig  U S  Govt  Works

103 F.R.D. 407, 1 Fed.R.Serv.3d 428, 17 Fed. R. Evid. Serv. 645

**(Cite as: 103 F.R.D. 407)**

in cross-examining Reeves.

*Id.* at 1188. *Wright* supports our conclusion to excise those portions of the notes that were not employed to refresh recollection during testimony.

[5][6] (13) The purposes of disclosure under Rule 612 are to test the credibility of a witness's claim that memory has been revived and to expose any discrepancies between the writing and the testimony. McCormick, *Evidence* § 9 at 17 (1972). Both purposes are served by ordering disclosure of only those portions of the document actually used to refresh recollection. A witness cannot be improperly "prompted" by material that he has not examined. Discrepancies may exist between refreshed testimony and portions of documents not referred to during testimony. But Rule 612 is not a mechanism for uncovering all prior inconsistent statements of a witness. Statements of a witness, inconsistent with testimony or not, which have not been used to refresh recollection are simply irrelevant for purposes of Rule 612.

[7] (14) Rule 612 authorizes a court to excise portions of the writing which are not related to the subject matter of the testimony. Considering the policies and authorities rehearsed, we do not interpret "testimony" to mean the entire testimony of a witness during a deposition or trial. Instead, we believe that "testimony" should be interpreted to mean only testimony which was refreshed by the writing. Our interpretation prevents the unfairness which would result from broad disclosure merely because other parts of the writing, not used to refresh recollection, may coincide with other parts of the deponent's or witness's testimony.

(15) We will order that plaintiff produce a copy of the 24-page set of handwritten notes for *in camera* inspection. We will then order disclosure of all portions of the notes to which Frangopoulos referred during the deposition as established by the transcript. Fed.R.Civ.P. 37(a)

(16) Given our disposition, we will deny defendants' request to resume the deposition.

Defendants' motion for expenses, including attorney's fees incurred in the preparation of the motion, will be denied because we find that plaintiff's opposition to the motion was substantially justified. Fed.R.Civ.P. 37(a)(4).

103 F.R.D. 407, 1 Fed.R.Serv.3d 428, 17 Fed. R. Evid. Serv. 645

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

759 F.2d 312                                                                   Page 1

759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed.R.Serv.3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

Sporck v. PeilC.A.3,1985.
United States Court of Appeals,Third Circuit.
Charles E. SPORCK, Petitioner,
v.
Raymond K. PEIL, on behalf of himself and all
others similarly situated, Respondents,
andHonorable John B. Hannum and Honorable
Anthony J. Scirica, Judges, United States District
Court, Nominal Respondents.
No. 85-3023.

Argued Feb. 20, 1985.
Decided April 18, 1985.
Rehearing and Rehearing En Banc Denied May 21,
1985.

On a petition for writ of mandamus involving a
discovery dispute between parties to a securities
fraud class action suit in which was sought issuance
of writ to direct trial court to vacate discovery
orders, the Court of Appeals, James Hunter, III,
Circuit Judge, held that: (1) although individual
documents that comprised grouping of documents
by defense counsel out of thousands produced in
litigation were not attorney work product, the
selection process itself, representing defense
counsel's mental impressions and legal opinions as
to how evidence and documents related to issues
and defenses in litigation, was attorney work
product entitled to protection from discovery, and
(2) by failing to properly condition application of
evidentiary rule entitling adverse party to
production of writing used by a witness to refresh
his memory for purpose of testifying on a showing
that witness relied upon requested documents for
his testimony and that those documents impacted on
his testimony, district court committed prejudicial
legal error in relying on evidentiary rule to remove
any protection that process of selecting documents
engaged in by witness' counsel would ordinarily
enjoy under attorney work product rule.

Reversed and remanded.

Seitz, Circuit Judge, dissented and filed an opinion.
West Headnotes
**[1] Mandamus 250 ⟜26**

250 Mandamus
    250II Subjects and Purposes of Relief
        250II(A) Acts and Proceedings of Courts,
Judges, and Judicial Officers
            250k26 k. Exercise of Judicial Powers and
Functions in General. Most Cited Cases
A writ of mandamus will only be granted for clear
error of law.

**[2] Federal Civil Procedure 170A ⟜1600(3)**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of
Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1600 Privileged Matters in
General
                    170Ak1600(3) k. Work Product of
Attorney. Most Cited Cases
        (Formerly 170Ak1600.2)
Although individual documents that comprised
grouping of documents by defense counsel out of
thousands produced in litigation were not attorney
work product, the selection process itself,
representing defense counsel's mental impressions
and legal opinions as to how evidence and
documents related to issues and defenses in
litigation, was attorney work product entitled to
protection from discovery.    Fed.Rules
Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⟜1600(3)**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of
Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1600 Privileged Matters in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

759 F.2d 312                                                                                                    Page 2

759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed. R. Serv 3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

General

>170Ak1600(3) k. Work Product of Attorney. Most Cited Cases
>
>(Formerly 170Ak1600 2, 170Ak1000 2)

Attorney work product is accorded almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by adversary system's interest in maintaining privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases. 28 U.S.C.A. § 1651(a)

**[4] Federal Courts 170B ⊝903**

170B Federal Courts
>170BVIII Courts of Appeals
>>170BVIII(K) Scope, Standards, and Extent
>>>170BVIII(K)6 Harmless Error
>>>>170Bk903 k. Examination and Impeachment of Witnesses. Most Cited Cases

**Witnesses 410 ⊝256**

410 Witnesses
>410III Examination
>>410III(A) Taking Testimony in General
>>>410k253 Refreshing Memory
>>>>410k256 k. Inspection of Writing by Adverse Party. Most Cited Cases

By failing to properly condition application of evidentiary rule entitling adverse party to production of writing used by a witness to refresh his memory for purpose of testifying on a showing that witness relied upon requested documents for his testimony and that those documents impacted on his testimony, district court committed prejudicial legal error in relying on evidentiary rule to remove any protection that process of selecting documents engaged in by witness' counsel would ordinarily enjoy under attorney work product rule. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.; Fed.Rules Evid.Rule 612, 28 U.S.C.A.

**\*313** Stirling Lathrop (Argued), Richard D. Greenfield, Nicholas E. Chimicles, Alfreda L. Verratti, Greenfield & Chimicles, Haverford, Pa., for respondents

Seymour Kurland (Argued), Ian A L. Strogatz, M. Norman Goldberger, Patrick Matusky, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for petitioner.

Before SEITZ, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case arises on a Petition for Writ of Mandamus involving a discovery dispute between the parties to a securities fraud class action suit. The underlying action involves an allegation by plaintiff-respondent Raymond K. Peil that defendant National Semiconductor Corporation ("NSC"), defendant-petitioner Charles F. Sporck, NSC's president, and defendant Peter J. Sprague, NSC's chairman, conspired to inflate artificially the value of NSC stock, in order to enable Sporck and Sprague to sell their own shares at the inflated level. The wrongful conduct alleged includes various misrepresentations and nondisclosures of material facts during an eight-month period continuing from July 1, 1976, until March 1, 1977. Jurisdiction in this court is based on the All Writs Act, 28 U.S.C. § 1651(a) (1982).

During pretrial discovery, attorneys for Peil served numerous sets of combined interrogatory and document requests on defendants. In response, defendants produced hundreds of thousands of documents, from which Peil's attorneys selected more than 100,000 for copying. There is no allegation in this case that defendants have improperly concealed or refused to produce requested documents.

The issue presently before this court arose on May 16, 1983, at the deposition of defendant-petitioner Sporck. Prior to the deposition, counsel for defendants had prepared Sporck for his expected week-long deposition by showing him an unknown quantity of the numerous documents produced by defendants in response to plaintiff's discovery requests. Defense counsel selected and compiled these documents in a folder in Philadelphia, and transported them to California solely for the deposition. According to defense counsel, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed.R.Serv.3d 1431, 17 Fed.R.Evid.Serv.1232
**(Cite as: 759 F.2d 312)**

selected documents represented, as a group, counsel's legal opinion as to the evidence relevant both to the allegations in the case and the possible legal defenses. It is conceded that none of the individual documents, in their redacted form, contained work product of defense counsel.

At the inception of the Sporck deposition, Peil's attorney asked: "Mr Sporck, in preparation*314 for this deposition, did you have occasion to examine any documents?" (Petition, Exhibit A at 9). Sporck answered affirmatively, and Peil's attorney first orally, and then by written motion pursuant to Federal Rule of Civil Procedure 34, requested identification and production of "[a]ll documents examined, reviewed or referred to by Charles E. Sporck in preparation for the session of his deposition commencing May 16, 1983" (Petition, Exhibit B). Defense counsel refused to identify the documents, arguing first that all the documents had previously been produced, and second, that the select grouping of the documents was attorney work product protected from discovery by Federal Rule of Civil Procedure 26(b)(3). Defense counsel agreed, however, to allow Peil's counsel to ask Sporck about his reliance on individual documents in the context of specific factual questions, and Sporck's deposition continued on this basis.

Peil filed a motion to compel identification and production of the selected documents, on the ground that all documents used in preparing a witness for a deposition are properly discoverable under Federal Rule of Evidence 612. (Petition, Exhibit D) By order of August 22, 1984, Judge John B. Hannum granted Peil's motion, and ordered that defendant produce or identify all documents reviewed by Sporck in preparation for his deposition. (Petition, Exhibit E) Upon petitioner's motion for reconsideration, Judge Hannum reaffirmed his order, holding that although the select grouping of documents constituted attorney work product, it was not "opinion" work product entitled to absolute protection, and that the principles behind Federal Rule of Evidence 612 supported Peil's claim to identification of the documents (Petition, Exhibit F) Sporck now asks this court to issue a writ of mandamus directing the

trial court to vacate both orders.[FN1]

> FN1. By order dated November 9, 1984, the underlying action was reassigned from Judge Hannum to Judge Anthony J. Scirica, as a newly-appointed judge, as part of normal court procedure. For this reason, both judges have been named nominal respondents in the Petition

I.

[1] The remedy of mandamus is properly invoked only in extraordinary situations and where " necessary or appropriate in aid of [appellate] jurisdiction." 28 U.S.C. § 1651(a) (1982); *see, e.g., Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980). In order to ensure that a writ of mandamus will issue only in limited circumstances, the Supreme Court has required that "a party seeking issuance have no other adequate means to attain the relief he desires," *id.* at 35, 101 S.Ct. at 190, and that the petitioner satisfy the "burden of showing that [his] right to issuance of the writ is 'clear and indisputable.' " *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). Further, because "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable,' " a writ of mandamus will only be granted for clear error of law. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980).

In the case before us, petitioner has established that the issue in dispute "may at some future time come within the court's appellate jurisdiction," [FN2] that post-trial relief would be inadequate because the harm caused by identifying the selected documents would be irreparable,[FN3] and that he has no other adequate means to obtain the relief sought other than by writ of mandamus *315 [FN4] Further, we believe that review of the issue presented in this case "would comport with the instructional goals of mandamus." *United States v. Christian,* 660 F.2d 892, 897 (3d Cir.1981) Because petitioner raises an issue new to this court and discussed in only a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed.R.Serv.3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

few reported district court decisions,[FN5] review by mandamus, if otherwise appropriate, is consistent with the court's supervisory function. *See, e.g., Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 591-92 (3d Cir.1984).

> FN2. *United States v. Christian,* 660 F.2d 892, 894 (3d Cir.1981). Review of discovery orders clearly falls within the appellate jurisdiction of the federal courts. *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)

> FN3. "When a district court orders production of information over a litigant's claim of a privilege not to disclose, appeal after a final decision is an inadequate remedy for compliance with the production orders complained of destroys the right sought to be protected." *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984).

> FN4. The trial court's order compelling identification of the documents is interlocutory in nature, and thus is not appealable under 28 U.S.C. § 1291 (1982) until a final order is rendered in the litigation. *See, e.g., Borden Company v. Sylk,* 410 F.2d 843 (3d Cir.1969). Further, petitioner would have no immediate right of appeal even if he were held in civil contempt for failure to comply with the trial court's orders, and thus has no real choice but to comply with the order and identify the documents. *See, e.g., DeMasi v. Weiss,* 669 F.2d 114, 122-23 (3d Cir.1982). Finally, immediate appellate review by certification is proper only where the challenged order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (1982); *see Milbert v. Bison Laboratories, Inc.,* 260 F.2d 431,

433 (3d Cir.1958) (in banc) (noting that § 1292(b) "is to be used only in exceptional cases where an immediate appeal may avoid protracted and expensive litigation ... "). On the facts of this case, we find that the latter requirement is not met.

> FN5. *See, e.g., James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138 (D.Del.1982); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613 (S.D.N.Y.1977).

The question remains, however, whether petitioner's right to immediate relief by writ of mandamus is "clear and indisputable" because of clear error of the law by the trial court. Although discovery orders are normally committed to the discretion of the trial court, *see, e.g., DeMasi v. Weiss,* 669 F.2d 114, 122 (3d Cir.1982), petitioner argues that the trial court's failure to protect defense counsel's work product from discovery as mandated by Federal Rule of Civil Procedure 26(b)(3) constituted clear error of law. Respondent argues, however, that the trial court correctly ordered the identification of the documents used to prepare petitioner for his deposition, either under a theory of waiver of work product immunity, or through a balance of the respective policies of Federal Rule of Evidence 612 and Federal Rule of Civil Procedure 26(b)(3). Because we find neither a waiver of work product immunity nor a correct application of Federal Rule of Evidence 612 to this case, we agree with petitioner that the trial court should not have ordered the identification of the documents selected by counsel.

II.

[2] The threshold issue in this case is whether the selection process of defense counsel in grouping certain documents together out of the thousands produced in this litigation is work product entitled to protection under Federal Rule of Civil Procedure 26(b)(3) and the principles of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed 451 (1947). Petitioner concedes that the individual documents that comprise the grouping are not attorney work product, but argues that the selection process itself

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed.R.Serv.3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

represents defense counsel's mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation. Because identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions, petitioner argues that identification of the documents as a group must be prevented to protect defense counsel's work product. We agree.

The work product doctrine had its modern genesis in the seminal opinion in *Hickman v Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman,* the Court rejected "an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *316329 U.S. at 510, 67 S.Ct. at 393. Preserving the privacy of preparation that is essential to the attorney's adversary role is the central justification for the work product doctrine. Without this zone of privacy:

Much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman,* 329 U.S. at 511, 67 S.Ct. at 393.

The work product doctrine as articulated in *Hickman* has been partially codified in Federal Rule of Civil Procedure 26(b)(3). That rule conditions the production of "documents and tangible things" prepared in anticipation of litigation by or for an opposing party on the moving party's showing of substantial need and undue hardship. Even where such a showing is made, however, the trial court, in ordering the production of such materials, "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3).
Thus, Rule 26(b)(3) recognizes the distinction

between "ordinary" and "opinion" work product first articulated by the Supreme Court in *Hickman v Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

[3] Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses. *See, e.g., In re Grand Jury Investigation,* 599 F.2d 1224 (3d Cir.1979); *see also* Special Project, *The Work Product Doctrine,* 68 Cornell L.Rev. 760, 818-19 (1983) (cases cited therein). Such material is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases. *See, e.g., Upjohn Co v United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981); *In re Grand Jury Investigation,* 599 F.2d 1224, 1231 (3d Cir.1979).

We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product. As the court succinctly stated in *James Julian, Inc v Raytheon Co,* 93 F.R.D. 138, 144 (D.Del.1982):

In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research. There can be no doubt that at least in the first instance the binders were entitled to protection as work product.

*See also Berkey Photo, Inc v Eastman Kodak Co,* 74 F.R.D. 613, 616 (S.D.N.Y.1977) (notebooks representing "counsel's ordering of 'facts,' referring to the prospective proofs, organizing, aligning, and marshalling empirical data with the view to combative employment that is the hallmark of the adversary enterprise" categorized as work product). Further, in selecting the documents that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed.R.Serv.3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

he thought relevant to Sporck's deposition, defense counsel engaged in proper and necessary preparation of his client's case. As the Supreme Court noted in *Hickman* Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence*317 to promote justice and to protect their client's interest

329 U.S. at 510-11, 67 S.Ct. at 393-94. In the instant case, without the protection that the work product doctrine accords his preparation, defense counsel may have foregone a sifting of the documents, or at the very least chosen not to show the documents to petitioner. As a result, petitioner may not have been as well-prepared for his deposition, and neither plaintiff nor defendant would have realized the full benefit of a well-prepared deponent's testimony. For these reasons, Rule 26(b)(3) placed an obligation on the trial court to protect against unjustified disclosure of defense counsel's selection process.

This conclusion, however, does not end the issue. Respondent argues, and the trial court agreed, that operation of Federal Rule of Evidence 612 removed any protection that defense counsel's selection process would ordinarily enjoy. Because we find that Federal Rule of Evidence 612 does not apply to the facts of this case, we disagree.[FN6]

> FN6. To the extent that the trial court's decision turned on a finding that petitioner "waived" any work product protection when the various documents, including the selected ones, were shown to him, the court's recent decision in *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir.1984), is controlling. In that case, the court held that merely showing alleged work product to a witness did not amount to waiver of the work product privilege. *Id* at 593. Further, we disagree with respondent's argument that defense counsel waived

work product protection by suggesting that counsel could show each individual document to petitioner and ask petitioner if defense counsel showed that document to him. As we read the record, defense counsel made no such concession, but merely informed deposing counsel that he could ask about documents in the context of specific factual questions, a practice we specifically endorse in Part III of this opinion.

III.

Federal Rule of Evidence 612 provides in relevant part:
[I]f a witness uses a writing to refresh his memory for the purpose of testifying, ... (2) before testifying, if the court in its discretion determines it is necessary in the interest of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness

This rule is applicable to depositions and deposition testimony by operation of Federal Rule of Civil Procedure 30(c) ("Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence."). *See, e.g., James Julian, Inc. v. Raytheon, Co.*, 93 F.R.D. 138, 144 (D.Del.1982). Although applicable to depositions, Rule 612 is a rule of evidence, and not a rule of discovery. Its sole purpose is evidentiary in function "to promote the search of credibility and memory." Fed.R.Evid. 612 advisory committee note.

By its very language, Rule 612 requires that a party meet three conditions before it may obtain documents used by a witness prior to testifying: 1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of testifying; and 3) the court must determine that production is necessary in the interests of justice. Fed.R.Evid. 612. The first requirement is consistent with the purposes of the rule, for if the witness is not using the document to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

759 F 2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed R Serv 3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

refresh his memory, that document has no relevance to any attempt to test the credibility and memory of the witness. *See, e g, United States v Wright,* 489 F.2d 1181, 1188-89 (D.C.Cir.1973) (party must lay foundation for document production request by establishing first that witness used document prior to testifying to refresh his memory)

The second requirement-that the witness use the document for the purpose of testifying-was designed "to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in part to have an impact upon the testimony of the witness." Fed R.Evid *318 612 advisory committee note. As with the first requirement, the second requirement recognizes that the document is of little utility for impeachment and cross-examination without a showing that the document actually influenced the witness' testimony *See, e g, Mongeau v Kurz,* C A. No 83-4054 (E.D.Pa. April 2, 1984). Finally, the third requirement codifies the Supreme Court's holding in *Goldman v United States,* 316 U.S. 129, 132, 62 S.Ct. 993, 994, 86 L.Ed 1322 (1942), that even though a witness may review notes prior to testifying, a trial court should exercise discretion to guard against "fishing expeditions among a multitude of papers which a witness may have used in preparing for trial." H.R.Rep. No 93-650, 93d Cong., 1st Sess. (1973).

In the case before us, the apparent conflict between the protected status of defense counsel's document selection process under Rule 26(b)(3) and the asserted need, for cross-examination purposes, of the identification of the documents actually selected resulted from the failure to establish the first two requirements under Rule 612. In seeking identification of all documents reviewed by petitioner prior to asking petitioner any questions concerning the subject matter of the deposition, respondent's counsel failed to establish either that petitioner relied on any documents in giving his testimony, or that those documents influenced his testimony. Without first eliciting the testimony, there existed no basis for asking petitioner the source of that testimony. *See, e g, Bercow v Kidder, Peabody & Co.,* 39 F.R.D. 357

(S.D.N.Y.1965). We conclude, therefore, that deposing counsel failed to lay a proper foundation under Rule 612 for production of the documents selected by counsel

Indeed, if respondent's counsel had first elicited specific testimony from petitioner, and then questioned petitioner as to which, if any, documents informed that testimony, the work product petitioner seeks to protect-counsel's opinion of the strengths and weaknesses of the case as represented by the group identification of documents selected by counsel-would not have been implicated. Rather, because identification of such documents would relate to specific substantive areas raised by respondent's counsel, respondent would receive only those documents which deposing counsel, through his own work product, was incisive enough to recognize and question petitioner on The fear that counsel for petitioner's work product would be revealed would thus become groundless

[4] Rule 612, therefore, when properly applied, does not conflict with the protection of attorney work product of the type involved in this case.[FN7] Because the trial court did not properly condition its application of Rule 612 on a showing that petitioner relied upon the requested documents for his testimony and that those documents impacted on his testimony, the court committed legal error. This error became prejudicial when it implicated work product of petitioner's counsel Proper application of Rule 612 should never implicate an attorney's selection, in preparation for a witness' deposition, of a group of documents that he believes critical to a case Instead, identification of such documents under Rule 612 should only result from opposing counsel's own selection of relevant areas of questioning, and from the witness' subsequent admission that his answers to those specific areas of questioning were informed by documents he had reviewed.[FN8] In such a case, deposing counsel would discover the *319 documents through his own wit, and not through the wit of his adversary.

> FN7. Because we resolve this case by finding Rule 612 inapplicable, we have no occasion to comment on the *dictum* in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt Works

759 F 2d 312, 84 A.L R  Fed  763, 53 USL W 2538, 1 Fed R Serv 3d 1431, 17 Fed  R  Evid  Serv  1232
**(Cite as: 759 F.2d 312)**

*Bogosian v  Gulf Oil Corp ,* 738 F 2d 587, 595 n  3 (3d Cir 1984), concerning the direct conflict between Rule 612 and Rule 26(b)(3) that arises when a witness uses a document prepared by an attorney to refresh the witness' recollection.

FN8  Contrary to the dissent's characterization of our opinion, therefore, we are not approving "in effect the use of the work product doctrine to prevent an identification of documents reviewed by a witness in preparation for his deposition."
At 319  The proper use by deposing counsel of Rule 612 in cases similar to this one will result in identification of documents relied upon by a witness without implicating the work product doctrine

## IV.

21  We conclude, therefore, that the trial court committed clear error of law in ordering the identification of the documents selected by counsel. Because we are confident that the district court will proceed in accordance with our opinion without formal issuance of the writ, we will remand to the district court  *See, e g , Bogosian v Gulf Oil Corp ,* 738 F 2d 587, 596 (3d Cir 1984); *United States v RMI Co ,* 599  F.2d 1183, 1190 (3d Cir 1979); *Rapp  v  Van Dusen,* 350 F 2d 806, 814 (3d Cir 1965) (in banc).

SEITZ, Circuit Judge, dissenting.
The majority approves in effect the use of the work product doctrine to prevent an identification of documents reviewed by a witness in preparation for his deposition  I dissent because I am convinced that such a ruling is an impermissible expansion of the work product doctrine at the expense of legitimate discovery

The plaintiffs-respondents sought in the district court the discovery of relevant objective facts: the identities of the documents that the deponent reviewed prior to testifying  These facts are not, in themselves, the opinion or thought processes of an attorney  Nor were the contents of the documents,

all of which had already been produced by the defendants, created by defendants' attorney in anticipation of litigation.

Yet, the defendant-petitioner claims that the mere identification of the documents examined prior to his deposition would reveal his attorney's litigation strategy  Presumably, the petitioner's argument must be that if the respondents knew which documents were reviewed, they could, upon examination of the documents identified, draw conclusions as to why each document was chosen.

The problem with the petitioner's theory is that it assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected for review by the deponent  There are many reasons for showing a document or selected portions of a document to a witness  The most that can be said from the fact that the witness looked at a document is that someone thought that the document, or some portion of the document, might be useful for the preparation of the witness for his deposition  This is a far cry from the disclosure of the a lawyer's opinion work product  Even assuming that the documents were selected by the  petitioner's attorney, the subject matter is so undifferentiated that its potential for invasion of work product is miniscule at best  *See In re Grand Jury Investigation,* 599 F.2d 1224 (3d Cir 1979) (degree to which information reveals attorney's thought processes is a factor in whether opinion work product is revealed).  *See also United States v. Amerada Hess Corp ,* 619  F.2d 980, 988 (3d Cir 1980) (list of employees interviewed, selected out of all the corporation's employees, is not opinion work product).

Every act by a litigant or his attorney gives rise to similar vague inferences  For example, a typical interrogatory from a leading treatise would permit questions of the following form: "Identify each writing … which relates or refers directly or indirectly to [a transaction in question]".  *See, e g ,* 2A L. Frumer & M  Waxner, Bender's Federal Practice Forms, 420 11, question 19 (1984)  It cannot seriously be contended that an answer is not required because it would reveal the fact that the

© 2007 Thomson/West  No Claim to Orig  U S. Govt  Works.

759 F 2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed R.Serv.3d 1431, 17 Fed. R. Evid. Serv. 1232
**(Cite as: 759 F.2d 312)**

attorney thought that certain documents were relevant to the transaction.

Moreover, in order to claim the shield of opinion work product, it must be established that it is the attorney's thought processes that are revealed *In re International Systems and Controls Corp. Securities Litigation,* 693 F.2d 1235, 1240 (5th Cir.1982). The respondents' request did not require the identification of the person who selected the documents. The only disclosed connection to the petitioner's attorney in our situation is that the petitioner *320 gratuitously volunteered the fact that his attorney selected the documents. To permit this volunteered information to provide a necessary link to attorney's thought processes, as the majority has done, is to permit the petitioner to cloak the non-work product aspects of the information sought with work product protection. Certainly an attorney cannot cloak a document under the mantle of work product by simply reviewing it. *Brown v Hart, Schaffner & Marx,* 96 F.R.D. 64, 68 (N.D.Ill 1982). It is difficult to see how an attorney or his witness may insulate the discoverable fact that the witness reviewed a particular document by volunteering that the attorney selected the document for deposition preparation purposes. *See Bogosian v Gulf Oil Corp.,* 738 F.2d 587, 595 (3d Cir 1984).

Finally, the petitioner contends that the information sought was "fact" work product, and that the respondents have made an insufficient showing of need to require its production. Assuming without deciding that the information sought was fact work product, I would not decide this issue on a petition for a writ of mandamus. To reach this issue would require us to review a decision committed to the discretion of the district court, *In re International Systems and Controls Corp. Securities Litigation,* 693 F.2d at 1240-41, and such decisions do not constitute "clear and indisputable" legal error. *Allied Chemical Corp v Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). Further, relevation of fact work product does not constitute the same sort of irreparable harm that would come from the revelation of opinion work product.

Because I find no disclosure of the attorney's work product that would provide a basis for granting the writ, I would not reach the issue of whether a proper foundation had been established for the requested information under Federal Rule of Evidence 612 or the provision covering relevant evidence found in Federal Rule of Civil Procedure 26(b)(1). Decisions on such matters are not independently reviewable on a petition seeking the extraordinary remedy of mandamus.

Based on the record presented by the petitioner, I fail to see how any conclusions may be drawn as to what his attorney may or may not have thought about this litigation. The mere identification of documents used to prepare a witness for his deposition does not convey any meaningful information of the type entitled to protection under the work product doctrine. I would deny the petition.

C.A.3,1985.
Sporck v. Peil
759 F.2d 312, 84 A.L.R. Fed. 763, 53 USLW 2538, 1 Fed.R.Serv.3d 1431, 17 Fed. R. Evid. Serv. 1232

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.