## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

          Plaintiff,

    v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

          Defendants.

Civil Action No. 04-343 (JJF)

**REDACTED –**
**PUBLIC VERSION**

**VIEWSONIC CORPORATION'S OBJECTIONS TO FINDING IN SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING A PORTION OF LG. PHILIPS' MOTION TO COMPEL VIEWSONIC TO PROVIDE TECHNICAL AND MOUNTING RELATED DISCOVERY**

Jeffrey B. Bove (#0998)
James D. Heisman (#2746)
Jaclyn M. Mason (#4737)
Connolly Bove Lodge & Hutz LLP
The Nemours Building, 8th floor
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
*Attorneys for Defendant*
*ViewSonic Corporation*

Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Manuel Nelson (CA Bar No. 229590)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071

Tracy R. Roman (CA Bar No. 199031)
Raskin Peter Rubin & Simon LLP
1801 Century Park East
Suite 2300
Los Angeles, CA 90067-2325

Date:  March 7, 2007

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 1

III. GOVERNING LAW............................................................................................ 2

IV.  ARGUMENT...................................................................................................... 3

    A.  LPL CANNOT ESTABLISH THAT THE DOCUMENTS IN ISSUE ARE UNDER
        VIEWSONIC'S "CONTROL" PURSUANT TO FED. R.CIV. P. 34 ............................... 3

    B.  THE SPECIAL MASTER'S RECOMMENDATION IS TANTAMOUNT TO
        ADOPTING THE INAPPLICABLE "PRACTICAL ABILITY" TEST IN
        COMPELLING PRODUCTION IN THESE CIRCUMSTANCES................................... 5

V.   CONCLUSION................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Gerling International Insurance Co. v. Commissioner of Internal Revenue,*
  839 F.2d 131 (3d Cir. 1988)..................................................................................... 5, 6

*Inline Connection Corp. v. AOL Time Warner, Inc.,*
  2006 U.S. Dist. LEXIS 72724  (D. Del. Oct. 5, 2006) ......................................... 6, 8

*Mercy Catholic Medical Center v. Thompson,*
  380 F.3d 142 (3d Cir. 2004)........................................................................................ 8

*Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.,*
  206 F.R.D. 392 (D. Del. 2002) ...................................................................... 3, 6, 7, 8

*Penwalt Corp. v. Plough, Inc.,*
  85 F.R.D. 257 (D. Del. 1979) ..................................................................................... 3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
  233 F.R.D. 143 (D. Del. 2005) ............................................................................... 4, 5

*Rosie D. v. Romney,*
  256 F.Supp.2d 115 (D. Mass. 2003) .......................................................................... 8

## RULES

Fed. R. Civ. P. 34..........................................................................................3, 4, 5, 6, 8, 9

Fed. R. Civ. P. 34(a) ...........................................................................................................6

Fed. R. Civ. P. 45 ...............................................................................................................4

Fed R. Civ. P. 53(g)(1)........................................................................................................3

Fed. R. Civ. P. 53(g)(2)........................................................................................................1

Fed. R. Civ. P. 53(g)(4)........................................................................................................3

## I.    INTRODUCTION

Pursuant to Rule 53(g)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."),

Defendant ViewSonic Corporation ("ViewSonic") submits this Objection to the February 14,

2007 Special Master's Report and Recommendation Regarding a Portion of LG.Philips' Motion

to Compel Defendant ViewSonic Corporation to Provide Technical and Mounting Related

Discovery ("Recommendation").  ViewSonic lacks the requisite "control" over the documents in

issue mandating the denial of LPL's motion and the rejection of the Recommendation.

## II.    BACKGROUND

Plaintiff, LG.Philips LCD Co., Ltd. ("LPL") accuses ViewSonic of infringing U.S. Patent

Nos. 6,498,718 ("the '718 patent") and 6,501,641 ("the '641 patent").  The patents in suit are

directed to flat screen visual displays capable of being mounted in laptop computers from the

rear (referred to as "rear mountable").

On September 27, 2006, LPL filed a motion to compel discovery regarding technical and

mounting relating discovery of ViewSonic's products.  ("the Motion").  Prior to oral argument

before the Special Master,  LPL supplemented its Motion to include a request that ViewSonic be

compelled to produce technical and mounting related documents, not in ViewSonic's possession,

but rather in the possession of independent third party Original Equipment Manufacturers

("OEM's") which supply fully assembled products to ViewSonic for re-sale.  The Motion was

argued during both the December 28, 2006 and January 3, 2007 hearings before Special Master

Poppiti.  (D.I. 383, 384).  At the request of the Special Master, the parties supplemented their

Motion papers.  Special Master Poppiti issued his Recommendation on February 14, 2007.  (D.I.

487).

ViewSonic does not manufacture the accused "Visual Display Products" which it sells.
Rather, ViewSonic purchases fully-assembled visual display products from OEM's for
importation and sale in the United States. Because ViewSonic does not manufacturer these
products, not surprisingly, it has very limited "technical and mounting related documents." To
the extent that ViewSonic has any documents at all fitting this description, the type and quantity
of those documents were provided to ViewSonic solely at the discretion of its OEM's.

In fulfilling its discovery obligations in this case, ViewSonic has already produced
service manuals or technical documents ("Technical Documents") to LPL for all but 18 of the
visual display products ViewSonic has sold, offered for sale, or imported into the United States
since December 2002.[1] The Technical Documents produced by ViewSonic include "Exploded
View" diagrams showing the assembly and related components used in ViewSonic products,
including detail relating to mounting. (See Ex. 1, "VX900 Service Manual"). Indeed,
ViewSonic has already produced all such documents in its possession, custody, or control
showing the technical assembly and mounting of the accused products. LPL has conceded that
these Technical Documents enable it to determine potential infringement (Ex. 2). Nonetheless
on the eve of the close of discovery, LPL now seeks to compel ViewSonic to produce documents
not in its possession, but rather in the possession of independent, unrelated, non-party OEM's.
For the reasons that follow, LPL's motion should be denied and the Special Master's
Recommendation rejected.

## III.    GOVERNING LAW

When ruling on a party's objections to the Special Master's report and recommendation,
the Court may adopt, affirm, modify, wholly or partly reject, or reverse the report and

---

[1] The earliest issue date for a patent in suit is December 24, 2002.

recommendations of the Special Master, or resubmit the matter to the Special Master. Fed. R.

Civ. P. 53(g)(1). The Court's review of the question of law presented herein is *de novo*. Fed. R.

Civ. P. 53(g)(4).

## IV.    ARGUMENT

### A.    LPL CANNOT ESTABLISH THAT THE DOCUMENTS IN ISSUE ARE UNDER VIEWSONIC'S "CONTROL" PURSUANT TO FED. R.CIV. P. 34

The technical and mounting related documents at issue in this Motion are not in

ViewSonic's "control" as that term is used in Fed. R. Civ. P. 34 and has been construed in the

case law in this District and the Third Circuit. LPL's Motion seeks to compel ViewSonic to

produce commercially sensitive documents of non-party, OEM's to the OEM's competitor. The

documents in issue are proprietary to, were created by, belong to, and are in the possession of

foreign, non-party OEM's which supply finished products to ViewSonic for sale into the United

States.

LPL and the Special Master relied upon language in an arm's length commercial OEM

supply contract between ViewSonic and Jean Company, Ltd. ("Jean") to conclude that the

documents are under ViewSonic's "control" for purposes of Fed. R. Civ. P. 34 and consequently

must be produced.[2] (Recommendation at 3, 9). This language does not support this

determination. The Third Circuit and this District have required more than a contractual right to

the documents before requiring a litigant to produce documents in the possession of non-parties.

As this Court has explained in analogous circumstances:

> [I]n cases in which the corporate entities are not [related],
> production is **rarely ordered** unless the respective business
> operations of each entity "are so intertwined as to render
> meaningless their separate corporate identities."

---

[2] Jean is an OEM supplier to ViewSonic located in Taiwan. A copy of the Jean agreement is attached as Ex. 3.

*Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002); citing *Penwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) (emphasis added).  In *Eon Labs*, this Court denied a motion to compel the production of documents despite the fact that *Eon* had the contractual right to use the documents sought by virtue of a license agreement. *Id.* at 395.  Like *Eon*, ViewSonic has produced all technical and mounting documents in its possession, i.e., the Technical Documents.[3] *Id.*

Despite the fact that *Eon* had a licensing agreement which provided it could use the information at issue, the Court rejected the argument that the agreement alone established "control" of the documents for purposes of Fed. R. Civ. P. 34.  Rather, this Court explicitly held that absent a showing that the business operations of Eon and Hexal AG (the non-party) are so intertwined as to render meaningless their separate corporate identities, the motion to compel was outside the scope of Fed. R. Civ. P. 34 and subject to denial.  *Id.*  In other words, the language in the contract was insufficient to hold their identities were so intertwined and insufficient to compel production of the documents.

This rule makes sound policy. First, where, as here, the documents in the possession of a foreign, non-party are commercially sensitive, the non-party should have an opportunity to be heard before it is subject to having its documents produced to a competitor. (*See* Fed. R. Civ. P. 45 providing a mechanism for non-parties to object to discovery requests).  Second, if the Recommendation is adopted, ViewSonic will be subject to an order compelling it to produce documents for which it only has the contractual ability to request for purposes relating to the

---

[3] ViewSonic provided the Jean OEM Agreement to LPL as far back as 2005.  LPL has had the ability to obtain third party discovery since that time via subpoena or The Hague Convention yet sat on its rights until it raised the issue for the first time in a December 14, 2006 submission to Special Master Poppiti. This factor weighs in favor of denying LPL's motion. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D. Del. 2005) (Because alternative avenues exist to pursue the information and the circumstances of the case did not justify disregarding corporate formalities, motion denied).

performance of the OEM agreement, i.e., a business purpose. Unlike "intertwined entities",

ViewSonic has no "control" over these documents, only an expectancy that Jean may supply

documents for a business purpose relating to the performance of the contract. If Jean, or the other

foreign OEMs, fail to comply with the request, either temporally or substantively, ViewSonic

may be subject to sanctions and the prospect of satellite litigation in an effort to comply with a

discovery order. ViewSonic's only remedy against the OEM's refusal to produce the documents

is to sue them for breach of contract. This is not the "control" necessary for purposes of Fed. R.

Civ. P. 34.

LPL has proffered no evidence even remotely suggesting that ViewSonic or *any* of its

OEM suppliers are either: a parent and subsidiary or that their businesses are related, much less

intertwined. The only evidence of record is that ViewSonic and its OEM's are separate, distinct

legal entities and that the OEM agreements are the product of arms length negotiations between

the parties. (Ex. 3). Indeed, in other cases brought by LPL against ViewSonic where LPL also

sued the OEMs, LPL obtained these documents directly from the OEMs. ViewSonic does not

have "control" of the documents in issue. ViewSonic certainly should not be facing an Order

that could subject it to sanctions for failing to produce documents it cannot extract from the

OEMs when it was LPL that chose not to sue the OEMs in this particular litigation, despite

having done so in other litigations.

###    B.    THE SPECIAL MASTER'S RECOMMENDATION IS TANTAMOUNT TO ADOPTING THE INAPPLICABLE "PRACTICAL ABILITY" TEST IN COMPELLING PRODUCTION IN THESE CIRCUMSTANCES.

*Gerling International Insurance Co. v. Commissioner of Internal Revenue*, 839 F.2d 131

(3d Cir. 1988), rejected the expansive "practical ability" test for obtaining documents advanced

by LPL. See *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143,

146 (D. Del. 2005). In *Gerling*, the Third Circuit determined that a party did not exercise

control, within the meaning of Fed. R. Civ. P. 34, over documents in the possession of a non-

party despite having a contractual right of access. *See Gerling*, 839 F.2d at 140.

Gerling International Insurance Co. ("GIIC") entered into a reinsurance contract with

Universale Reinsurance Company, Ltd. ("Universale"). *Id.* at 133. At the time, GIIC's founder,

Robert Gerling, was the President of GIIC, as well as a director and stockholder, while also

Chairman of the Board of Directors of Universale, and one of its stockholders. *Id.* at 135. Under

the contract, *inter alia*, Universale sent GIIC an annual statement, called the Technical Figures,

and GIIC was given access to Universale's files on the risks covered by the contract so that GIIC

could verify the Technical Figures and other documents.[4] During an audit of GIIC, the IRS

demanded the production of Universale's books and records from GIIC. *Id.* at 134. GIIC

declared that it was unable to produce Universale's books and records for IRS inspection, and the

Tax Court imposed sanctions on GIIC for its failure to do so.[5] *Id.* at 136. Reversing, the Third

Circuit determined that the Tax Court's decision was erroneous. First, the Tax Court made "an

improper presumption" that GIIC and Universale were "sister corporations under common

control" based on Mr. Gerling's involvement. *Id.* at 141. Moreover, the Court held that, even if

true, this still was not enough to find control over the records at issue:

> [E]ven if these corporations had been properly . . . assumed to be under common
> control, there was . . . *no record to support a finding that their corporate entities
> had been disregarded by themselves or Gerling in the course of their businesses
> or that GIIC has acted for the benefit of Universale either in the transactions
> giving rise to the alleged tax liability or in conducting this litigation.* In such
> circumstances, we conclude that there was no foundation for the Tax Court's

---

[4] GIIC's contract right of access reads in Article 8: "[GIIC] shall have the right through an authorized agent to inspect in the office of Universale all the files which affect the risks under this treaty." *Gerling*, 839 F.2d 131, 134 n.3.

[5] The procedural rule governing production in *Gerling* was T.C. Rule 72(a)(1), which follows from Fed. R. Civ. P. 34(a) in providing that a party may obtain from a party opponent documents that "are in the possession, custody or control of" that party. *Id.* at 139.

conclusion that GIIC had sufficient control over Universale to require production
of its books and records in the United States.

*Id.* (emphasis added).  Significantly, despite GIIC's contractual right to inspect Universale's

books, the Third Circuit declined to hold that GIIC was required to exercise its contractual right

of access to Universale's records solely for the benefit of the IRS.  *Id.* at 142;  *See also Inline*

*Connection Corp. v. AOL Time Warner, Inc.*, 2006 U.S. Dist. LEXIS 72724, at \*2 (D. Del. Oct.

5, 2006) ("a contract provision which merely authorizes the party litigant's access to information

that is in the possession of a non-party, without more, is insufficient to establish legal control in

the Third Circuit"); *Eon Labs*, 206 F.R.D. at 395 (when corporate entities are unrelated,

production is ordered only when the respective business operations of each entity "are so

intertwined as to render meaningless their separate corporate identities").

**Redacted**

See Ex. 3.  ViewSonic's right of access also is subject to the

implied covenant of good faith and fair dealing, and thus can be exercised only to the extent

necessary to enjoy its rights and perform its obligations under the OEM agreement,[6] i.e., for a

business purpose in furtherance of the agreement.

**Redacted**

ViewSonic simply has no business reason to request the documents at issue.

Not only has ViewSonic already produced Technical Documents for all but 18 of the

identified products, but LPL has also purchased and/or inspected sample products, with more

---

[6] For example, the need to conduct customer service as required by the Song Beverly Act. Cal. Civ. Code §§ 1791 *et seq.*

products to be inspected in the near future. ViewSonic has not exercised its right to access the

OEM's documents sought by LPL for any business purpose related to the performance of the

contract. To compel ViewSonic to do so now – nearly 3 years after this case was filed, solely as

a litigation-induced request for LPL's benefit, would wrongly convert LPL into a third party

beneficiary under the contract and would defeat the intent of the parties to the OEM agreement

because it is not for a business purpose related to the performance of the agreement. Courts in

this Circuit have rejected the argument that a contractual right of access to documents is

sufficient "control" for purposes of Fed. R. Civ. P. 34 and have required the intertwinement of

the separate entities to the point of disregarding their separateness. *Eon Labs,* 206 F.R.D. at 395.

Everything from the "Whereas" clauses to the end of the Jean agreement indicates that

ViewSonic and its OEMs are distinct, separate entities and that the OEM agreement is an arm's

length commercial supplier agreement between two independent companies.[7] Were ViewSonic

required to obtain documents from an OEM under these circumstances, it would allow litigants

to circumvent the protections afforded by Fed. R. Civ. P. 45 to non-parties that are not properly

the subject of litigation, prejudicing the unheard non-parties and in turn thwarting supplier

arrangements like those between ViewSonic and its OEMs.

*Mercy Catholic Medical Center v. Thompson,* 380 F.3d 142 (3d Cir. 2004), relied on by

LPL, does not change the result.[8] While *Thompson* held that, "[As] long as the party has the

legal right to obtain the documents from another source upon demand, that party is deemed to

have control", it did so in the context of a principal-agent relationship. The *Thompson* court did

not address the issue of document production and "control" with respect to independent

corporations which conduct business like ViewSonic and Jean. *Mercy Catholic* is thus

---

[7] Even the opening paragraph of the agreement :     Redacted     Ex.1.
[8] LPL has also cited *Rosie D. v. Romney,* 256 F.Supp.2d 115 (D. Mass. 2003) in support of its motion. However, *Romney* does not reflect the law of this Circuit and should not be followed. *See Eon Labs,* 206 F.R.D. 392.

inapplicable and has been limited to situations involving principal-agent relationships. *See Inline at \*2* (declining to extend *Thompson* to situations involving independent entities).

The Third Circuit and this District have adopted a stringent standard for establishing "control" under Fed. R. Civ. P. 34 which LPL has failed to meet. Even though there is a contractual provision giving ViewSonic access to certain OEM documents under certain circumstances, LPL must demonstrate that ViewSonic and its OEMs are "so intertwined as to render meaningless their separate corporate entities." LPL has not satisfied its burden.

## V.    CONCLUSION

Based upon the foregoing, ViewSonic respectfully requests that the Court reject the Special Master's finding that ViewSonic exercises "control" over OEM documents in the possession of non-parties.

Date:  March 1, 2007

Respectfully submitted,

Connolly Bove Lodge & Hutz LLP

Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Manuel Nelson (CA Bar No. 229590)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071

Tracy R. Roman (CA Bar No. 199031)
Raskin Peter Rubin & Simon LLP
1801 Century Park East
Suite 2300
Los Angeles, CA 90067-2325

By:  */s/ James D. Heisman*
     Jeffrey B. Bove (#0998)
     James D. Heisman (#2746)
     Jaclyn M. Mason (#4737)
     The Nemours Building, 8th floor
     1007 North Orange Street
     Wilmington, DE 19801
     Telephone:  (302) 658-9141
     Facsimile:  (302) 658-5614

     *Attorneys for Defendant
     ViewSonic Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

               Plaintiff,

         v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

               Defendants.

Civil Action No. 04-343 (JJF)

### <u>ORDER</u>

Having considered ViewSonic Corporation's objections to the **Special Master's Report
and Recommendation Regarding Portions of LG.Philips' Motion to Compel ViewSonic to
Provide Technical and Mounting Related Discovery,**

    **IT IS HEREBY ORDERED** this ____ day of March, 2007 that the Special Master's
Recommendation is REJECTED and LPL's Motion to Compel is DENIED.

                               _____
                                 U.S. District Court Judge

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on March 1, 2007, a true copy of the foregoing **Defendant ViewSonic Corporation's Objections to Finding in Special Master's Report and Recommendation Regarding a Portion of LG.Philips' Motion to Compel ViewSonic to Provide Technical and Mounting Related Discovery** was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE 19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

I further certify that on March 1, 2007, I have sent by email the foregoing document to the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404

Tracy R. Roman
Raskin Peter Rubin & Simon
1801 Century Park East
Suite 2300
Los Angeles, CA 90067

By: /s/ James D. Heisman
    James D. Heisman (# 2746)
    jheisman@cblh.com

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on March 7, 2007, a true copy of the foregoing **REDACTED – PUBLIC VERSION of Defendant ViewSonic Corporation's Objections to Finding in Special Master's Report and Recommendation Regarding a Portion of LG.Philips' Motion to Compel ViewSonic to Provide Technical and Mounting Related Discovery filed March 1, 2007 (D.I. 526)** was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE 19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

I further certify that on March 7, 2007, I have sent by email the foregoing document to the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404

Tracy R. Roman
Raskin Peter Rubin & Simon
1801 Century Park East
Suite 2300
Los Angeles, CA 90067

By: /s/ James D. Heisman
James D. Heisman (# 2746)
jheisman@cblh.com