# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

Plaintiff,

v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

Defendants.

Civil Action No. 04-343 (JJF)

## DEFENDANT VIEWSONIC CORPORATION'S RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant ViewSonic Corporation ("ViewSonic") submits its Responses to Plaintiff LG.Philips LCD Co., Ltd.'s ("LPL") Second Set of Requests for Production of Documents ("Requests").

ViewSonic objects to each and every Request as set forth below. These general objections are incorporated into every response and are set forth here to avoid the necessity of duplicating them for each request. These general objections may specifically be referred to in response to a request for clarity; however, the failure to specifically repeat a general objection should not be construed as a waiver of the objection.

### General Objections

1.      ViewSonic objects to the Definitions and Instructions and/or the requests to the extent they purport to impose obligations on ViewSonic greater than those imposed by operation of law.

1

LA/0333337.2

produced, if any, in its possession, custody, or control. Discovery is continuing and ViewSonic reserves the right to supplement this response as, and when, necessary.

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning any investigation(s) or analysis undertaken by you or on your behalf regarding possible infringement of the Patents-in-Suit, including, for example, documents reflecting the date(s), scope, purpose, results, and persons with relevant knowledge.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

ViewSonic incorporates its general objections herein by reference. ViewSonic objects to this Request on the grounds that it prematurely seeks expert discovery. ViewSonic further objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege and/or the work product doctrine, or that are otherwise privileged and protected from disclosure.

Subject to and without waiving the foregoing objections, ViewSonic responds as follows: ViewSonic has no non-privileged documents not previously produced that are responsive to this Request. Discovery is continuing and ViewSonic reserves the right to supplement this response as, and when, necessary.

**REQUEST FOR PRODUCTION NO. 51:**

All inventory reports since January 1, 2002, that reference any types of visual display products responsive to Interrogatory No. 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

ViewSonic incorporates its general objections herein by reference. ViewSonic objects to this Request on the grounds that it is overbroad, unduly burdensome, and oppressive. ViewSonic further objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege and/or the work product doctrine, or that are otherwise privileged and protected from disclosure. ViewSonic also objects on the grounds that this Request seeks information which is not relevant to the claims or defenses of this

lawsuit, and which is not reasonably calculated to lead to the discovery of admissible evidence including that it is not limited to the accused product and is not limited to sales in the U.S.

Subject to and without waiving the foregoing objections, ViewSonic responds as follows: ViewSonic will produce those non-privileged, responsive documents not previously produced, if any, in its possession, custody, or control sufficient to show its U.S. inventory of the ViewSonic VX900 LCD monitor, which is the only product Plaintiff has accused of infringement in this case. Discovery is continuing and ViewSonic reserves the right to supplement this response as, and when, necessary.

**REQUEST FOR PRODUCTION NO. 52:**

All sales reports since January 1, 2002, that reference sales of any types of visual display products responsive to Interrogatory No. 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

ViewSonic incorporates its general objections herein by reference. ViewSonic objects to this Request on the grounds that it is overbroad, unduly burdensome, and oppressive. ViewSonic further objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege and/or the work product doctrine, or that are otherwise privileged and protected from disclosure. ViewSonic also objects on the grounds that this Request is duplicative of prior requests and that it seeks information which is not relevant to the claims or defenses of this lawsuit, and which is not reasonably calculated to lead to the discovery of admissible evidence including that it is not limited to the accused product and is not limited to the U.S.

Subject to and without waiving the foregoing objections, ViewSonic responds as follows: This Request is duplicative of other requests to which ViewSonic has already responded.

# EXHIBIT 2

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CORMAC T. CONNOR
(202) 496-7439

EMAIL ADDRESS
cconnor@mckennalong.com

September 25, 2006

**VIA E-MAIL AND U.S. MAIL**

Scott R. Miller
Connolly Bove Lodge & Hutz LLP
Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles, CA  90071
smiller@cblh.com

> **Re:**   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.;*
> **U.S. District Court Case No. 04-343 JJF**

Dear Scott:

ViewSonic recently offered to sell samples of its visual display products to LPL.  During our September 22, 2006 teleconference, we asked whether we could inspect products in advance before making any decision whether to purchase products.  You said that ViewSonic is unwilling to permit LPL to inspect any visual display products because inspection would require ViewSonic to open the boxes in which those products are shipped, thus converting them into "used" products with reduced value.  This confirms that you did, however, agree to provide LPL with a list of the visual display products that are available for LPL to purchase as well as the purchase price for each product.

Please provide us with this information as soon as possible, so that we can consider how to proceed concerning ViewSonic's proposal.

Sincerely,

Cormac T. Connor
*(Admitted only in Colorado. Supervised by
Lora A. Brzezynski, a member of the D.C. Bar.)*

cc: Tracy Roman (via email)
    Manuel Nelson (via email)
DC:50434979 1

# EXHIBIT 3

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
(213) 787 2500
FAX (213) 687 0498

Scott R. Miller
Partner

TEL (213) 787-2510
FAX (213) 687-0498
EMAIL smiller@cblh.com
REPLY TO Los Angeles Office

www.cblh.com

*Via Email and U.S. Mail*

September 28, 2006

Cormac T. Connor, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006-1108

Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
       **USDC Case No. 04-343 JJF**

Dear Cormac:

In response to your letter of September 25, 2006 regarding the purchase of ViewSonic's visual display products, please be advised that the visual display products that are available can be found on the following website:  http://store.viewsonic.com.

Sincerely,

*Scott R. Miller*

Scott R. Miller

cc:    Tracy R. Roman, Esq. (via email)
       Mark H. Krietzman, Esq. (via email)
       Jaclyn M. Mason, Esq. (via email)
       Manuel C. Nelson, Esq. (via email)

# EXHIBIT 4

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CORMAC T. CONNOR
(202) 496-7439

EMAIL ADDRESS
cconnor@mckennalong.com

September 29, 2006

VIA E-MAIL AND U.S. MAIL

Scott R. Miller
Connolly Bove Lodge & Hutz LLP
Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles, CA 90071
smiller@cblh.com

      **Re:**    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;
             **U.S. District Court Case No. 04-343 JJF**

Dear Scott:

In its Supplemental Responses, ViewSonic offered to sell samples of its products to LPL. During our negotiations on September 22, we asked ViewSonic to provide a list of the products that are available and the prices for each. On September 28, you sent us a letter in which you informed us that the list of available products can be found at the website *http://store.viewsonic.com*.

We are familiar with ViewSonic's website and, in fact, have examined it thoroughly in our efforts to independently obtain ViewSonic products. ViewSonic's website, however, offers only a small fraction of the products about which LPL is interested. Specifically, of the 216 model numbers listed in ViewSonic's supplemental response to Interrogatory 2, only 30 monitors (22 LCD displays and eight LCD televisions) are listed on ViewSonic's website. Of those that are listed, only 14 (seven LCD displays and seven LCD televisions) are listed as available or "in stock." Furthermore, four of the LCD televisions listed for sale on ViewSonic's website are not identified in ViewSonic's response to Interrogatory 2: N2060w, N3260w, N3760w and N4060w. Accordingly, barely 6% of the products listed in ViewSonic's response are available for sale on ViewSonic's website.

If this is the best that ViewSonic can do, then its offer to allow LPL to purchase samples of its products is neither feasible nor responsive to LPL's discovery requests. LPL's pending motion to compel seeks an order compelling responses to the very same document requests for which ViewSonic offered to sell products to LPL. (*See* Doc. Reqs. 2, 3, 46 & 47.) Unless ViewSonic can provide LPL with a comprehensive listing of products, LPL will simply allow the

Scott R. Miller
September 29, 2006
Page 2

Special Master to resolve this issue, as the relevant Document Requests have already been raised in LPL's pending motions to compel.

Sincerely,

Cormac T. Connor
*(Admitted only in Colorado. Supervised by*
*Lora A. Brzezynski, a member of the D.C. Bar.)*

CTC:vvk

cc: Tracy Roman      (via email)
    Manual Nelson    (via email)

DC:50435989 1

# EXHIBIT 5

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,   )
                                )
          Plaintiffs,           )   C.A. No. 04-343(JJF)
                                )
v.                              )
                                )
TATUNG CO., TATUNG COMPANY OF   )
AMERICA, INC., and VIEWSONIC    )
CORPORATION,                    )
                                )
          Defendants.           )

          Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Thursday, December 28, 2006, beginning at
approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

          THE BAYARD FIRM
          RICHARD D. KIRK, ESQ.
            222 Delaware Avenue, Suite 900
            Wilmington, Delaware  19899
            for Plaintiffs

                 CORBETT & WILCOX
            Registered Professional Reporters
      230 North Market Street     Wilmington, DE 19899
                   (302) 571-0510
               www.corbettreporting.com
          Corbett & Wilcox is not affiliated
        with Wilcox & Fetzer, Court Reporters

Hearing

2  (Pages 2 to 5)

**Page 2**

1  APPEARANCES (Continued):
2    MCKENNA, LONG & ALDRIDGE, LLP
    CASS W. CHRISTENSON, ESQ.
3      REL S. AMBROZY, ESQ.
    JESSE KOKRDA, ESQ.
4      CORMAC CONNOR, ESQ.
    1900 K Street, N.W.
5      Washington, D.C. 20006
    for Plaintiffs
6
7    RICHARDS LAYTON & FINGER
    FREDERICK L. COTTRELL, III
    One Rodney Square
8      Wilmington, Delaware 19801
    for Defendant Tatung Co
9
  GREENBERG TRAURIG LLP
10      FRANK MERIDETH, ESQ.
    2450 Colorado Avenue, Suite 400E
11      Santa Monica, California 90404
    for Defendant Tatung Company of America, Inc
12
  CONNOLLY BOVE LODGE & HUTZ LLP
13      JEFFREY B BOVE, ESQ.
    JACQUELINE MASON, ESQ.
14      1007 North Orange Street
    Wilmington, Delaware 19899
15      for Defendant Viewsonic Corporation
16    BINGHAM McCUTCHEN LLP
    SCOTT R. MILLER, ESQ.
17      355 South Grand Avenue
    Los Angeles, California 90071-3106
18      for Defendant Viewsonic Corporation
19
20
21
22
23
24

**Page 3**

1      MR. BOVE: Your Honor, this is Jeff Bove
2  from Connolly Bove representing Viewsonic, along with
3  Jacqueline Mason and my partner Scott Miller from
4  Los Angeles.
5      MR. COTTRELL: And, your Honor, Fred
6  Cottrell at Richards Layton in Wilmington for Tatung, and
7  on the phone from Greenberg Traurig, Frank Merideth.
8      SPECIAL MASTER POPPITI: Next, please.
9      MR. KIRK: Dick Kirk from The Bayard
10  Firm here in Wilmington for the plaintiff LG Phillips LCD
11  Company, Ltd., and with me on the line from Washington,
12  and perhaps elsewhere, from McKenna Long & Aldridge are
13  Cass Christenson, Rel, R-e-l, Ambrozy, Derek Auito, and
14  Jesse Kokrda, K-o-k-r-d-a, and Cormac Connor,
15  C-o-r-m-a-c.
16      SPECIAL MASTER POPPITI: Thank you,
17  Mr. Kirk.
18      Then thank you, counsel, and good
19  morning as we come up shortly to noon.
20      Let's do some housekeeping first, if you
21  will, with respect to today's proceeding.
22      I would propose that, for purposes of
23  making sense of what I expect is going to be a fairly
24  healthy workday with you all, that we go for a period of

**Page 4**

1  approximately two hours so that we can take a break and
2  make sure that anyone who needs to refresh themselves can
3  do that. And that break, I would expect a half hour,
4  unless someone suggests that we are going to need more
5  time than a half hour. So I would be looking to break
6  around 1:30.
7      Does anyone have any problem with that?
8      MR. BOVE: Jeff Bove for Viewsonic.
9  That's fine, your Honor.
10      MR. COTTRELL: Fred Cottrell. I have
11  another call at 2:00, which won't go very long, so I can
12  just jump back in, hopefully, only a few minutes after
13  our break.
14      SPECIAL MASTER POPPITI: Thank you.
15  That's fine.
16      MR. BOVE: Jeff Bove. Also, since I
17  have Jacqueline Mason with me, with the Court's
18  permission, once we got started, I was going to request
19  your Honor's permission to be excused. I am next door
20  and am available, but I will not be arguing today. Scott
21  Miller will be.
22      SPECIAL MASTER POPPITI: I have no
23  problem with that at all.
24      MR. BOVE: Your Honor, one --

**Page 5**

1      SPECIAL MASTER POPPITI: Please identify
2  yourselves each time.
3      MR. BOVE: Jeff Bove again.
4      SPECIAL MASTER POPPITI: Thank you,
5  Mr. Bove.
6      MR. BOVE: One other point of
7  housekeeping, and I am sure everyone will want to weigh
8  in on this, particularly your Honor, which is the manner
9  in which the Court would propose to tackle these motions
10  today.
11      Obviously, from Viewsonic's standpoint,
12  we have been thinking about it, and would toss the
13  proposal out for your Honor's consideration, obviously
14  for comment by all on the phone, which is to go, frankly,
15  motion by motion, request by request.
16      As I understand, the Court does have
17  rather extensive written submissions of the parties, and
18  we were thinking, again, obviously, subject to your
19  Honor's views, that perhaps some reasonable closure on
20  oral argument, per discovery requests, might be
21  appropriate in order to give hope of completing the task
22  today
23      I simply offer that as a suggestion,
24  and, obviously, defer completely to your Honor's view.

Hearing

20 (Pages 74 to 77)

Page 74

1  haven't looked at them for that issue, unfortunately.
2        SPECIAL MASTER POPPITI: I understand
3  that. How many agreements to we expect?
4        MR. AMBROZY: We would look through at
5  least the three most recent, your Honor.
6        SPECIAL MASTER POPPITI: And how many
7  are there in the universe of agreements?
8        MR. MILLER: I believe there is probably
9  on the order of a dozen agreements.
10        SPECIAL MASTER POPPITI: Okay. So, you
11  know, the task is not significant to compare that
12  language.
13        MR. AMBROZY: In regard to the rest of
14  the motion, your Honor?
15        SPECIAL MASTER POPPITI: Yeah, please.
16        MR. AMBROZY: We had also sought
17  production of actual monitors.
18        SPECIAL MASTER POPPITI: Right.
19        MR. AMBROZY: And we wanted to just
20  address that with your Honor in that Viewsonic initially
21  provided -- initially agreed that they would provide
22  monitors but only for the accused devices, and as your
23  Honor knows, that started out with the VX 900 and then
24  it, as the case progressed, just recently, LPL has

Page 75

1  supplemented its interrogatory responses to include, I
2  think it was eight or nine other Viewsonic monitors.
3        SPECIAL MASTER POPPITI: Right.
4        MR. AMBROZY: And we can get into the
5  specifics of that later when we talk about the preclusion
6  application, but the monitors that we are seeking are all
7  the monitors that Viewsonic listed in response to LPL's
8  interrogatory requests, I think it's interrogatory
9  request No. 2 and 3, where we asked them to identify all
10  their monitors. And we were seeking production or at
11  least inspection of those monitors.
12        And in response, I think you have seen
13  from the briefing on this, Viewsonic basically pointed
14  LPL to its web site and said, You can buy whatever you
15  need off the web site. And when we went to the web site
16  and tried to buy those monitors, the sum total that we
17  were able to buy, I think there was only about six
18  percent of the numerous monitors listed in Viewsonic's
19  response that we were able to purchase online.
20        So, we would like some guidance from
21  Your Honor as to how we can work with Viewsonic to attain
22  all those monitors, or at least inspect them.
23        SPECIAL MASTER POPPITI: Mr. Miller.
24        MR. MILLER: Your Honor, Viewsonic, like

Page 76

1  most companies, doesn't keep products that have gone out
2  of sale in inventory, hopefully, in order to be
3  successful. And, so, we are talking about a list of
4  products that dates back over four years.
5        The only products Viewsonic would have
6  are products that are currently being sold or offered for
7  sale in the United States. It doesn't maintain a museum,
8  if you will, of old inventory.
9        SPECIAL MASTER POPPITI: Well, if you
10  don't have them, you can't give them.
11        MR. MILLER: We told them where they can
12  locate them. And as to new products, we have declined to
13  let them inspect them, we have offered to sell to them
14  because if they open up the package and take them out,
15  start taking them apart, they become a used product and
16  that's a cost that they should bear, not us.
17        With regard to if we have other products
18  that are laying around for one reason or another, that
19  may be a dead product or something, we have -- we are
20  willing to try to collect whatever we can of ancient
21  products and make those available for an inspection as
22  well, but it's only been, from LPL's side, just the
23  intransigents, Just give us everything or nothing, so we
24  have not -- that has not progressed.

Page 77

1        We are happy to sit down and try to work
2  out a solution if there are, you know, dinosaurs laying
3  around somewhere that they can look at, we are not
4  intending to hide them. We are happy to let them look at
5  them.
6        MR. AMBROZY: I think that's why these
7  documents that Jean are contractually obligated to keep
8  from five years after the termination of that agreement
9  becomes so important.
10        SPECIAL MASTER POPPITI: We will get to
11  Jean in a moment after I have the opportunity to do the
12  work that I suggested I need to do.
13        But with respect to the monitors,
14  themselves, it seems to me what Mr. Miller is saying
15  makes sense. I mean, if they have them, they said they
16  are going to provide them. If they are new product, it
17  seems to me that it is appropriate for you to purchase
18  them. It should be at your cost.
19        If there are dinosaurs laying around,
20  then I will take Mr Miller at his word that they will do
21  a search, and at the end of that search, they will advise
22  what they have for you to either inspect or even purchase
23  a dinosaur if they are willing to -- if they are willing
24  to let that go, and I would like some time frame as to

Hearing

21 (Pages 78 to 81)

Page 78

1 when all of that occurs.
2         I don't hear Mr. Miller saying that they
3 are not going to make these available.
4         MR. AMBROZY:  Again, Your Honor, and I
5 agree that they are not -- that he shouldn't be ordered
6 to produce something that he cannot produce.
7         SPECIAL MASTER POPPITI:  Right.
8         MR. AMBROZY:  But getting back to our
9 point, and I understand we will get back to the Jean, but
10 that does make those documents the best available
11 evidence of the monitors that were previously sold.
12         SPECIAL MASTER POPPITI:  It may be.  But
13 I want to focus on the hardware, if you will, and I would
14 just like a representation from the both of you as to
15 when you can expect there will be some resolution to the
16 process of what exists, new product that will be
17 purchased, old product that will either be inspected or
18 purchased, and a representation by Mr. Miller that that
19 does constitute the universe of expected -- of available
20 product.
21         MR. MILLER:  Your Honor, I am happy to
22 do that with dispassion.  I can only make so many demands
23 on my client in terms of the things we have agreed to for
24 the 19th.

Page 79

1         This is going to be a, you know, a
2 looking around for dinosaur kind of project.  It's not
3 going to be that straightforward.  I am going to need
4 some time, I would think, you know, until the end of
5 January, perhaps, to get that list assembled.  I mean,
6 the products that are available for purchase obviously
7 are on our web site and they can get those at any time
8 they choose.
9         SPECIAL MASTER POPPITI:  And those that
10 are available for purchase and if they are on the web
11 site, that can be done right away.
12         To search for dinosaurs, I mean, how
13 many are we -- how many exist?  Any idea?
14         MR. MILLER:  There is 216 products
15 listed on our list, and we are looking through a, you
16 know, five or 600,000 foot facility, which is warehouse
17 and office and it may be on somebody's desk, that we are
18 going to have to try to locate some of these things.  So
19 it's not a -- it's not just an easy task, I don't
20 believe.
21         SPECIAL MASTER POPPITI:  And are we
22 talking about dinosaurs that are yours or dinosaurs that
23 may be in the possession of the OEMs?
24         MR. MILLER:  No.  We are talking about

Page 80

1 dinosaurs that are ours.
2         SPECIAL MASTER POPPITI:  Right.
3         MR. MILLER:  And are in our facilities.
4         SPECIAL MASTER POPPITI:  Is the date of
5 the 26th doable?
6         MR. AMBROZY:  Just to clarify, Your
7 Honor, when Mr. Miller says that he is looking at
8 Viewsonic, does that include Viewsonic -- I am not sure
9 of the proper name, Scott -- but Viewsonic America or the
10 other entities of Viewsonic?
11         MR. MILLER:  I would be looking at
12 Viewsonic America, which would be the only place I would
13 expect to find the U.S. products.  I mean, if we are
14 going to expand this to overseas, it's going to take
15 substantially longer.
16         MR. AMBROZY:  We will start with the
17 U.S. products, but that brings, Your Honor, brings us to
18 another point --
19         SPECIAL MASTER POPPITI:  No new points.
20 We will keep it to what was asked for.  I will look at
21 the document that you are going to provide to me over the
22 break, and if it becomes an issue that is looking
23 overseas, we can join that issue at some other point.
24         MR. MILLER:  Your Honor, as to the 26th,

Page 81

1 could I ask for the 29th to give me another weekend, if
2 necessary, to scrounge around, please?
3         SPECIAL MASTER POPPITI:  29th is fine.
4 Okay.  We are just about at 1:30.  Did that finish that
5 particular application?
6         MR. AMBROZY:  The only issue remaining,
7 Your Honor, was the fact of the limitation to U.S. sales
8 which we think is improper.
9         We believe that our discovery should be
10 responded to to include monitors that are imported to the
11 U.S. as well as monitors that might go to Mexico, are
12 assembled or put under a different brand name and then
13 make their way into the United States.  So just limiting
14 the search to just monitors that are imported by
15 Viewsonic into the United States, we think, is too
16 narrow.
17         SPECIAL MASTER POPPITI:  Mr. Miller.
18         MR. MILLER:  I think we have retrenched
19 to the motion I thought we had finished which was the
20 information about sales.  This was technical documents
21 and those sorts of things.
22         Is that what you are doing, Rel?
23         MR. AMBROZY:  No.  I am trying to get
24 before his Honor the proper scope of the requests, which

# EXHIBIT 6

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

LOS ANGELES CA

Scott R. Miller
Partner

TEL (213) 787-2510
FAX (213) 687-0498
EMAIL smiller@cblh.com

*Via Email and U.S. Mail*

January 30, 2007

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006-1108

Frank E. Merideth, Jr., Esq.
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA  90404

Re:     *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
         **USDC Case No. 04-343 JJF**

Counsel:

As a follow-up to the discussion held before the Special Master, enclosed please find the list which constitutes our best estimate of ViewSonic's "dinosaur" products available for inspection or purchase. The products listed on pages 1-3 are units which ViewSonic has identified for disposal which ViewSonic offers to make available for inspection in Los Angeles within the next ten days. We cannot guarantee the condition of these products, or even that the estimated number of products available is fully accurate. To the extent there are multiple complete units available for a particular product, ViewSonic is prepared to sell one specimen to LPL, and a second to Tatung, should either party wish to purchase same. As any inspection needs to be complete promptly an before the parties resources are devoted to depositions, we expect that any inspection will be completed by the end of next week. Thus please identify which products you wish to inspect by this Friday.

The list found on pages 4-5 identifies non-current ViewSonic products which are presently available for purchase on the ViewSonic store and outlet websites and/or are designated as "C-Stock" and available for purchase by employees. While we cannot provide you with an exact inventory for these products, ViewSonic is willing to sell one sample of each of these products to LPL and/or Tatung to the extent it has sufficient

10345 1

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

Cass W. Christenson, Esq.
January 30, 2007
Page 2

inventory to do so. To the extent you identify one of these products for which only a single unit is available, ViewSonic reserves the right to retain ownership of that product and make it available for inspection in Los Angeles at the same time as the inspection of the products described on pages 1-3. Except as described in the preceding sentence, products from the ViewSonic store, outlet and/or categorized as "C-Stock," will only be made available for sale and not for inspection as doing so would interfere with ViewSonic's ability to sell them in the ordinary course of business.

Products purchased will be available for pickup at ViewSonic's facility in California. As for a purchase price, the products on pages 4-5 will be sold at the currently established price through the outlet store and/or the employee purchase program. Any products on pages 1-3 sold will be priced in accordance with the price ViewSonic has negotiated with the third party to whom it normally sells these products. Once you identify what you are interested in purchasing, we can send you a complete price for the lot.

As you can imagine, inventory of products is a fluid matter. Accordingly, please provide us with identification no later than the end of this week of the products you wish to purchase from these lists.

Sincerely,

Scott R. Miller

Enclosure

10545.1



CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

Cass W. Christenson, Esq.
January 30, 2007
Page 3

cc:    Rel S. Ambrozy, Esq. (w/encl.)
       Lora A. Brzezynski, Esq. (w/encl.)
       Cormac T. Connor, Esq. (w/encl.)
       Richard D. Kirk, Esq. (w/encl.)
       Mark H. Krietzman, Esq. (w/encl.)
       Valerie W. Ho, Esq. (w/encl.)
       Steve P. Hassid, Esq. (w/encl.)
       Anne Shea Gaza, Esq. (w/encl.)
       Frederick L. Cottrell III, Esq. (w/encl.)
       Tracy R. Roman, Esq. (w/encl.)
       Jeffrey B. Bove, Esq. (w/o encl.)
       Jaclyn M. Mason, Esq. (w/o encl.)
       Manuel C. Nelson, Esq. (w/o encl.)
       James D. Heisman, Esq. (w/o encl.)

10545.1

**Estimate of ViewSonic Products available for inspection or purchase**

| ITEM NUMBER | ONHAND QUANTITY |
|---|---|
| N1700W-D | 9 |
| N1800TV-NT-D | 3 |
| N2000-D | 4 |
| N2750W-D | 8 |
| N3200W-2-D | 1 |
| N3200W-D | 2 |
| Q190MB-D | 3 |
| Q7B-D | 1 |
| VA2012WB-D | 9 |
| VA520-1-D | 1 |
| VA520-2-D | 7 |
| VA520-3-D | 4 |
| VA712B-D | 1 |
| VA720-2-D | 4 |
| VA720-D | 5 |
| VA800-D | 6 |
| VA903B-D | 1 |
| VA912B-4-D | 4 |
| VA930-D | 1 |
| VE150B-D | 4 |
| VE150-D | 4 |
| VE150MB-D | 3 |
| VE150M-D | 1 |
| VE155-1-D | 9 |
| VE170MB-D | 2 |
| VE170M-D | 5 |
| VE175-3-D | 1 |
| VE175B-1-D | 2 |
| VE175B-2-D | 5 |
| VE175-D | 2 |
| VE500-1-D | 7 |
| VE510+-1-D | 3 |
| VE510B-D | 3 |
| VE700-1-D | 6 |
| VE710B-2-D | 1 |
| VE710B-4-D | 1 |
| VE710S-2-D | 1 |
| VE710S-4-D | 1 |
| VE800-1-D | 5 |
| VE902M-D | 1 |
| VG150B-D | 7 |
| VG150-D | 9 |
| VG150M-2-D | 1 |

1

HIGHLY SENSITIVE CONFIDENTIAL UNDER PROTECTIVE ORDER

| ITEM NUMBER | ONHAND QUANTITY |
|---|---|
| VG150MB-D | 1 |
| VG151-2-D | 2 |
| VG151B-2-D | 2 |
| VG151-D | 2 |
| VG170M-D | 1 |
| VG171B-D | 7 |
| VG171-D | 2 |
| VG180-2-D | 1 |
| VG180-D | 1 |
| VG191B-D | 7 |
| VG191-D | 2 |
| VG500-1-D | 2 |
| VG500-2-D | 1 |
| VG500B-D | 10 |
| VG510B-D | 3 |
| VG700-1-D | 3 |
| VG700B-2-D | 9 |
| VG700B-D | 1 |
| VG710B-D | 12 |
| VG710S-D | 2 |
| VG800-1-D | 7 |
| VG800B-D | 1 |
| VG810S-D | 1 |
| VG900B-D | 12 |
| VG900-D | 10 |
| VG910B-D | 4 |
| VG910S-D | 5 |
| VG920-D | 5 |
| VP140-D | 3 |
| VP150-D | 1 |
| VP171B-2-D | 7 |
| VP171B-D | 3 |
| VP171S-2-D | 3 |
| VP171S-D | 2 |
| VP181B-2-D | 2 |
| VP181-D | 5 |
| VP191B-D | 12 |
| VP191S-D | 5 |
| VP201B-D | 1 |
| VP201MB-D | 4 |
| VP201M-D | 2 |
| VP201S-D | 14 |
| VP2030B-D | 1 |
| VP211B-D | 1 |
| VP2130B-D | 2 |
| VP2290B-2-D | 3 |

2

HIGHLY SENSITIVE CONFIDENTIAL UNDER PROTECTIVE ORDER

| ITEM NUMBER | ONHAND QUANTITY |
|---|---|
| VP230MB-D | 3 |
| VP231WB-D | 1 |
| | |
| VP912B-D | 3 |
| VPA138-D | 2 |
| VPA150-D | 1 |
| VPD180-D | 1 |
| VX2000-1-D | 7 |
| VX2025WM-D | 1 |
| VX500+-1-D | 3 |
| VX500T-D | 3 |
| VX700-2-D | 3 |
| VX700-D | 1 |
| VX710-D | 12 |
| VX715-D | 5 |
| VX724-D | 2 |
| VX900-1-D | 3 |
| VX922-D | 2 |
| VX924-D | 3 |

HIGHLY SENSITIVE CONFIDENTIAL UNDER PROTECTIVE ORDER

| Product | C-Stock | Outlet | Store |
|---|---|---|---|
| AIRPANEL 100 | | X | |
| N1300 | X | | |
| N1700W | X | | |
| N1750W | X | | |
| N2010 | | X | |
| N2011 | | | X |
| N2060W | | | X |
| N2700W | | X | |
| N2750W | X | X | |
| N2751W | X | | X |
| N3200W | X | | |
| N3250W | X | X | |
| N3251W | X | | X |
| N3252W | X | | |
| N3260W-2 | | | X |
| N3751w | | | X |
| N3760W | | | X |
| N4000WP | | X | |
| N4060W | | | X |
| N4200W | | | X |
| TPCV1250 | | X | |
| VA1912WB | | X | |
| VA1912WB-3 | | | X |
| VA1930WM | | | X |
| VA2012WB | | | X |
| VA503B | | | X |
| VA521 | | X | |
| VA702B | | | X |
| VA703B | | | X |
| VA712B | | | X |
| VA730M | | | X |
| VA902B | | X | X |
| VA930M-3 | | | X |
| VG191 | | X | |
| VG1930WM | | | X |
| VG2021M | | | X |
| VG2030WM | | | X |
| VG2230WM | | | X |
| VG730M | | | X |
| VIEWPAD 1000 | | X | |
| VP171S | | X | |
| VP2130B | | | X |
| VP2290B | | X | |
| VP2290B-2 | | X | |
| VP920B | | | X |
| VPD150 | | X | |

4

HIGHLY SENSITIVE CONFIDENTIAL UNDER PROTECTIVE ORDER

| Product | C-Stock | Outlet | Store |
|---|---|---|---|
| VPD180 | | X | |
| VX1945WM | | | X |
| VX1945WM-3 | | | X |
| VX2025WM | | X | |
| VX2035WM | | | X |
| VX2235WM | | X | X |
| VX2235WM-3 | | X | |
| VX2245WM | | | X |
| VX500-2 | | X | |
| VX510 | | X | |
| VX922 | | | X |

HIGHLY SENSITIVE CONFIDENTIAL UNDER PROTECTIVE ORDER

# EXHIBIT 7

Scott R. Miller
Partner

TEL (213) 787-2510
EMAIL smiller@cblh.com

*Via Email and U.S. Mail*

February 6, 2007

Derek Auito, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108

> **Re:**   ***LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.***
> **USDC Case No. 04-343 JJF**

Dear Derek:

This letter provides updated information regarding the inspection inventory as indicated earlier today by Tracy Roman.

The following products provided for inspection cannot be purchased as ViewSonic has only 1 specimen in inventory:

1.    VA520
2.    VP230MB

We believe, but are in the process of confirming, that a specimen of the following products provided for inspection are available for purchase:

3.    VE500-1
4.    VE700
5.    VG700B
6.    VG710S
7.    VP140TR
8.    VP2030B
9.    VPA138
10.   VPA150-1
11.   VPA150-2
12.   VPA150-3
13.   VX710
14.   VX724

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Derek Auito, Esq.
February 12, 2007
Page 2


15.    VG175
16.    VP181
17.    VP181B
18.    VP201M

We have confirmed that a specimen of each of the remaining products that are in the inspection area are available for purchase. We will provide you with the pricing information later this week.

We have identified 13 additional products of which ViewSonic appears to have only 1 specimen in inventory, if that. These are not disposal stock units. ViewSonic is searching for those products and will provide what is located tomorrow for inspection. Because only 1 specimen, if any, exists for the below products, these will not be available for separate purchase:

1.    L700
2.    N4050W
3.    VA930
4.    VA930M
5.    VG180
6.    VP140-2
7.    VP171
8.    BP171B-2
9.    VP2330WB
10.    VP912B
11.    VP930-2
12.    VPW4200
13.    VTA900

Sincerely,

/s/

Scott R. Miller

Dictated but not read.

cc:    Rel S. Ambrozy, Esq.
       Lora A. Brzezynski, Esq.
       Cormac T. Connor, Esq.
       Richard D. Kirk, Esq.



CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

Derek Auito, Esq.
February 12, 2007
Page 3

        Mark H. Krietzman, Esq.
        Valerie W. Ho, Esq.
        Steve P. Hassid, Esq.
        Anne Shea Gaza, Esq.
        Frederick L. Cottrell III, Esq.
        Tracy R. Roman, Esq.
        Jeffrey B. Bove, Esq.
        Jaclyn M. Mason, Esq.
        Manuel C. Nelson, Esq.
        James D. Heisman, Esq.

# EXHIBIT 8

# McKenna Long
# &Aldridge<sub>LLP</sub>
Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CORMAC T. CONNOR
(202) 496-7439

EMAIL ADDRESS
cconnor@mckennalong.com

February 14, 2007

**VIA E-MAIL AND U.S. MAIL**

Scott R. Miller
Connolly Bove Lodge & Hutz LLP
Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles, CA  90071
*smiller@cblh.com*

      **Re:**    ***LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;**
                **U.S. District Court Case No. 04-343 JJF**

Dear Scott:

      I write on behalf of LG.Philips LCD Co., Ltd. ("LPL") in order to address LPL's concerns that ViewSonic may have failed to preserve samples of its visual display products and to make those samples available to LPL for inspection and/or purchase. In particular, we are concerned that, during the course of this litigation, ViewSonic: (1) has not taken steps necessary to identify all visual display products in its inventory and make those products available to LPL for inspection or purchase; and (2) has not taken all necessary steps since it learned of the instant litigation to ensure that samples of its visual display products are available for LPL's review. Additionally, ViewSonic has not responded to our letters of February 8, 9 and 13, through which we sought purchase and inspection information for numerous products.

      On the first point, LPL has been trying to get ViewSonic to produce samples of its products since it served its Document Requests in November 2005. LPL specifically addressed this issue again during the parties' negotiations in September 2006 and has been trying ever since to inspect and/or purchase samples of the visual display products that ViewSonic identified in its responses to Interrogatory No. 2. As you know, in September, ViewSonic refused to let LPL inspect any product samples because you said such inspection would devalue ViewSonic's products. On September 25, 2006, I wrote to you and requested a listing of the products that ViewSonic would sell to LPL. Three days later, you responded and informed us that "the visual display products *that are available* can be found on the following website: http://store.viewsonic.com" (emphasis added). I responded the next day, noting the small percentage of products that were actually offered for sale on the website, compared to the number listed in ViewSonic's response to Interrogatory No. 2. Shortly thereafter, LPL submitted

Scott R. Miller
February 14, 2007
Page 2

a supplement to its motion to compel technical and mounting-related documents from ViewSonic, which was already pending before the Special Master.

At no time did ViewSonic ever inform LPL that ViewSonic has samples of products that were available only for inspection or that there were any products offered for sale other than those listed on ViewSonic's website. However, during and after the parties' hearing with the Special Master on December 28, 2006 (the "Hearing"), it became clear that ViewSonic actually does have at least three categories of product samples that were never disclosed or made available to LPL prior to the Hearing. First, as you discussed during the Hearing, ViewSonic has so-called "dinosaurs" that are "in [ViewSonic's] facilities" or otherwise in its possession. (*See* Hr'g Tr. at 77-80 (Dec. 28, 2006).) You described these "dinosaurs" as "a dead product or something," making clear that these are products that would *only* be made available for inspection (*not* for sale), and that they are samples of products identified in ViewSonic's responses to Interrogatory No. 2. (*See id.*) Second, after the Hearing, in your letter of January 30, 2007, you identified a new category of ViewSonic product samples called "C-Stock." You failed to disclose the existence of this second category of additional products during the Hearing or in any prior communications with LPL. Notably, most of the products in this second category are *not* listed on ViewSonic's website but, nonetheless, you informed us that these products "will only be made available for sale and not for inspection...." It is not clear from your letter what the term C-Stock means; however, it is clear from pages 4-5 of the attachment to your letter that most of the C-Stock products are *not available for sale* on ViewSonic's website or at ViewSonic's on-line "outlet" store. Third, in your January 30 letter, you identified 107 different product numbers with the suffix "D." LPL learned during its visit to ViewSonic's facilities in early February that the "D" suffix indicates products that *ViewSonic has marked for disposal*. Your letter also notes that ViewSonic has only one or two samples of nearly half of these 107 "D" products.

LPL's concern arises from the fact that, until very recently, ViewSonic withheld from LPL information about ViewSonic's so-called dinosaur, C-Stock and "D" products. Although LPL expressly asked for access to all of the products identified in ViewSonic's response to Interrogatory No. 2, ViewSonic offered only those products that were listed at the time on ViewSonic's website. ViewSonic said nothing of any other dinosaur, C-Stock or "D" products and, in fact, *plainly informed LPL that there were no products that LPL could inspect without having to purchase*. We believe that ViewSonic's concealment of at least the so-called dinosaur, C-Stock and "D" types of products until the waning days of discovery shows a distinct lack of candor and evidences bad faith. By waiting so long to even identify these product samples to LPL, ViewSonic has severely constricted the amount of time that LPL will have to review those products and has prevented LPL from finalizing its list of accused products. Unless the parties can resolve this matter quickly, LPL will address it with the Special Master.

As for LPL's second point of concern, since the date that ViewSonic reasonably anticipated litigation with LPL, ViewSonic has had and continues to have an affirmative duty to preserve evidence relevant to this case. LPL is concerned that, if ViewSonic has allowed its entire product inventory of any given visual display product to be sold to unknown third parties, then ViewSonic has not fulfilled its duty to preserve material evidence. Further, although LPL's Document Request No. 51 sought copies of "[a]ll inventory reports since January 1, 2002, that

Scott R. Miller
February 14, 2007
Page 3

reference any types of visual display products responsive to Interrogatory No. 2," ViewSonic has
yet to produce any. (Request No. 51 is also addressed by LPL's pending motion to compel
technical and mounting-related documents.) In contrast, your January 30, 2007 letter attached a
3-page list resembling an inventory. The list presented the products that ViewSonic would make
available to LPL for purchase and specified exactly how many of each product ViewSonic still
had available. It was not until Derek Auito traveled to California to review ViewSonic's
products, however, that LPL learned that the document that you had attached to your letter
actually reflected inventory numbers that were *over one month old* and that, because of the
passage of time, some of the products were no longer available. Your February 6, 2007 letter
confirms this discrepancy by identifying products that, per your January 30 letter, were available
for purchase but are no longer available for purchase.

Additionally, ViewSonic has marked the "D" type of products for disposal. We must
have ViewSonic's confirmation that it will not destroy or dispose of any "D" products unless it
maintains at least one sample for LPL to review or makes one of those products available to LPL
for purchase. Further, your February 6 letter identified 16 different products for which a sample
may be available for purchase. We have asked you to confirm which of these products will be
available, but you have not responded. Now that more than one week has passed since your
letter, please provide confirmation immediately as to which of these products are available for
LPL to purchase.

ViewSonic must not prevent LPL from evaluating ViewSonic's visual display products
by selling off or otherwise depleting ViewSonic's inventory. Furthermore, LPL has been trying
to purchase or inspect ViewSonic's products since at least November 2005, yet ViewSonic has
prevented LPL from inspecting or purchasing those products by delaying its responses to LPL
and failing to identify the vast majority of product inventory that ViewSonic actually did and
does have in its possession. Moreover, in the meantime, ViewSonic appears to have been
selling, liquidating or otherwise disposing of its product inventory such that samples may no
longer be available for inspection or purchase. To address this concern, please immediately
provide LPL with lists of all products in ViewSonic's possession as of June 15, 2004 (after LPL
filed suit), and at all times since, including, but not limited to, products available as of December
1, 2005 (just after LPL had served its discovery requests), September 25, 2006 (after ViewSonic
agreed to sell products), and products currently available. These lists should include *all* visual
display products identified in ViewSonic's responses to Interrogatory No. 2, including all
products available on ViewSonic's website, all products available as "C-Stock," all "dinosaur"
products, all "D" products and any other products within ViewSonic's possession or control. We
need this information immediately so that we may identify any additional infringing products
and determine the full scope of any prejudice that ViewSonic's conduct has caused to LPL.

Finally, on February 8, 9 and 13, 2007, we sent letters requesting that certain of
ViewSonic's visual display products be delivered to your firm's D.C. offices for inspection. In
those same letters, we also asked that ViewSonic provide pricing information for other specified
products so that LPL could make purchasing arrangements. We also asked ViewSonic to decide
whether or not it would make certain products available for inspection or for purchase, so that
LPL could make necessary arrangements. To date, you have not responded to any of these
requests. We must have this information immediately.

Scott R. Miller
February 14, 2007
Page 4

     Please provide us with the information requested in this letter by the 5:00 pm EST on February 15.  If we cannot resolve these matters by then, LPL will raise them with the Special Master.

                                        Sincerely,

                                        Cormac T. Connor

cc: Manuel Nelson, Esq. (via e-mail)
    Tracy R. Roman, Esq. (via e-mail)
    Frank E. Merideth, Esq. (via e-mail)
    Jeffrey B. Bove, Esq. (via e-mail)
    Jaclyn M. Mason, Esq. (via e-mail)
    James D. Heisman, Esq. (via e-mail)
DC:50461292 2

# EXHIBIT 9

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

Atlanta

Denver

Los Angeles

Philadelphia

San Diego

San Francisco

Washington, DC

Brussels

REL AMBROZY
(202) 496-7693

EMAIL ADDRESS
rambrozy@mckennalong.com

March 6, 2007

**VIA EMAIL AND U.S. MAIL**

Tracy R. Roman, Esq.
Raskin Peter Rubin & Simon
1801 Century Park East 23rd Floor
Los Angeles, CA 90067
TRoman@raskinpeter.com

      Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;
             **U.S. District Court Case No. 04-343 JJF**

Dear Tracy:

We are in receipt of your February 20, 2007 correspondence. Please ship all ViewSonic products you indicate are available for inspection, which should consist of at least those products identified in our February 15th letter and attached hereto, to Connolly Bove's Washington D.C. office so that we may inspect those products beginning at 9:00 a.m. on March 12th through at least 5:00 p.m. on March 13th. Please note that our inspection may take additional time depending on the number of products you make available for our inspection. As has been the practice, our inspection will consist of opening and disassembling each product, photographing the internal structure of each product, etc. Thank you in advance for accommodating our inspection.

Also, we are still waiting for pricing/purchase information for the ViewSonic products we identified in our February 15th letter. More than two weeks have passed since you promised that you were "following up" on our request and would "send information on the remaining products listed in [our] February 15 letter as soon as it is gathered." Please provide this information ASAP so that we may purchase and inspect those products. Also, please note that these delays in producing monitors for inspection and sale are prejudicing LPL's ability to properly prepare its case. Thus, LPL reserves all rights to seek all applicable and/or necessary extensions to the currently scheduled close of discovery.

DC.50465375.1

Tracy Roman
March 6, 2007
Page 2

If you have any questions regarding our requests, please contact me.  Thank you.

Sincerely,

Rel S. Ambrozy

DAA:amd

cc:    Scott R. Miller (via email)
       Mark H. Krietzman (via email)
       Valerie W. Ho (via email)
       Jong P. Hong (via email)
       Manuel Nelson (via email)
       Steve Hassid (via email)
       Anne Shea Gaza (via email)
       Fred Cottrell (via email)
       Jaclyn Michel Mason (via email)
       Jeffrey B. Bove (via email)
       Richard Horwitz (via email)