# CASE 3

Westlaw.

168 F.R.D. 502                                                                                                   Page 1
168 F.R.D. 502, 36 Fed.R.Serv.3d 945
(Cite as: 168 F.R.D. 502)

C

**Motions, Pleadings and Filings**

United States District Court,
M.D. Pennsylvania.
George HOWELL, Catherine Howell, Plaintiffs,
v.
MAYTAG, Magic Chef Corporation, Maycor, Wal-Mart Stores, Inc., Defendants.
**Civil Action No. 1:CV-95-1117.**

Sept. 5, 1996.

Following house fire, homeowners brought products liability action against manufacturer of microwave oven that allegedly caused fire. After case was removed to federal court, defendant moved for summary judgment. The District Court, Caldwell, J., held that: (1) defendant's requests for admissions exceeded scope of rule pertaining to such requests, and (2) plaintiffs' destruction of fire scene before defendant could conduct its own investigation as to cause of fire warranted jury instruction on "spoliation inference."

Motion denied.

West Headnotes

**[1] Federal Civil Procedure** ⚷1672
170Ak1672 Most Cited Cases
"Admission" is intended to serve as unassailable statement of fact that narrows triable issues in case. Fed.Rules Civ.Proc.Rule 36, 28 U.S.C.A.

**[2] Federal Civil Procedure** ⚷1672
170Ak1672 Most Cited Cases
Rule pertaining to admissions seeks to promote trial efficiency by eliminating uncontested factual matters; its concern is with questions of fact otherwise subject to proof at trial. Fed.Rules Civ.Proc.Rule 36, 28 U.S.C.A.

**[3] Federal Civil Procedure** ⚷1272.1
170Ak1272.1 Most Cited Cases
Factual matters are generally appropriate subjects for discovery, but trial strategy is not. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure** ⚷1675
170Ak1675 Most Cited Cases
Products liability defendant's request for admissions exceeded scope of rule governing requests for admissions, and thus, any alleged impropriety or insufficiency in plaintiffs' response to them could not form basis for summary judgment; requests asked not whether defects in question existed, or whether plaintiffs had knowledge of any defects, but whether evidence of such defects would be presented at trial, and thus, requests improperly sought to compel discovery of trial strategy in violation of work product rule, and unreasonably sought to force plaintiffs, before close of discovery, to determine what evidence they would present at trial. Fed.Rules Civ.Proc.Rule 36, 28 U.S.C.A.

**[5] Trial** ⚷211
388k211 Most Cited Cases
    (Formerly 313Ak97)
Products liability plaintiffs' destruction of fire scene entitled defendant microwave oven manufacturer to jury instruction on "spoliation inference," permitting jury to assume that scene would have been unfavorable to plaintiffs' position, in action alleging that defect in microwave caused house fire; plaintiff homeowners had control over preservation or destruction of their property, plaintiffs had identified possible cause of action against defendant one week prior to demolition of fire scene but did not attempt to notify defendant of that potential claim so that defendant could have scene examined by its own expert prior to demolition, and, although defendant could examine microwave for alleged fault, as well as burn patterns shown in photographs of scene, it was denied opportunity to examine other possible causes of fire.

**[6] Federal Civil Procedure** ⚷1551
170Ak1551 Most Cited Cases

**[6] Federal Civil Procedure** ⚷1636.1
170Ak1636.1 Most Cited Cases
Party that reasonably anticipates litigation has affirmative duty to preserve relevant evidence; where evidence is destroyed, sanctions may be appropriate, including outright dismissal of claims, exclusion of countervailing evidence, or jury instruction on "spoliation inference," which permits jury to assume that destroyed evidence would have been unfavorable to position of offending party.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.R.D. 502                                                                                                           Page 2
168 F.R.D. 502, 36 Fed.R.Serv.3d 945
**(Cite as: 168 F.R.D. 502)**

**[7] Federal Civil Procedure ☞1636.1**
170Ak1636.1 Most Cited Cases
Where spoliation of evidence is alleged, court considers degree of fault of party who altered or destroyed evidence, degree of prejudice suffered by opposing party, and whether there is lesser sanction (compared to complete exclusion of evidence) that will avoid substantial unfairness to opposing party and, where offending party is seriously at fault, will serve to deter such conduct by others in future.

*503 Dean F. Picarella, Post & Schell, P.C., Harrisburg, PA, for George Howell and Catherine Howell.

Grant S. Palmer, Patrick J. McDonnell, Blank, Rome, Comisky & McCauley, Philadelphia, PA, Richard L. Kremnick, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Wal-Mart Stores, Inc.

Joseph E. O'Neil, George J. Lavin, Jr. Associates, Philadelphia, PA, Peter M. Newman, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for Maytag.

MEMORANDUM

CALDWELL, District Judge.

This is a products liability action filed by plaintiffs George and Catherine Howell ("plaintiffs") against defendants Maytag Corporation ("Maytag") and Wal-Mart Corporation ("Wal-Mart"). Before us is a motion for summary judgment, filed by the defendant Maytag Corporation ("Maytag"). We exercise jurisdiction pursuant to 28 U.S.C. § 1332.

I. *Facts and Procedural History*

Plaintiffs' home was seriously damaged by fire on June 3, 1993. Plaintiffs' insurance company, Farmers Mutual, assigned the claim to an adjuster, which conducted a preliminary investigation on June 4, 1993. Farmers Mutual subsequently hired a fire investigator, John R. Bainbridge, Jr., who conducted an on-site investigation on June 7 and 9, 1993.

The adjuster and its investigator concluded that the fire originated at a microwave oven manufactured by Maytag. The microwave was removed from the fire scene and stored, along with the duplex outlet into which it was plugged, and the attached romex wiring. On June 24, 1993, Farmers Mutual authorized plaintiffs to conduct repairs to their home. [FN1]

> FN1. It appears that the home has been demolished.

Farmers Mutual filed the instant subrogation action, in plaintiffs' names, against Maytag, as the manufacturer of the microwave, and Wal-Mart, as the retailer who sold it. The action was filed on June 2, 1995 in the Court of Common Pleas for Perry County, Pennsylvania, and was removed to this court by Wal-Mart on July 13, 1995.

Maytag has moved for summary judgment, alleging three grounds: (1) plaintiffs' failure to timely answer requests for admission served upon them, and alleged insufficiencies in plaintiffs' late-filed responses; (2) plaintiffs' alleged failure to identify an expert by the date set in this Court's scheduling order, issued on January 3, 1996; and (3) plaintiffs' failure to preserve the fire scene for Maytag's inspection.

II. *Law and Discussion*

A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *504 genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Indus.*, 475 U.S. at 586-87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

B. *Requests for Admission*

Maytag served upon Plaintiffs the following requests for admission:
**Request No. 1:**
Plaintiffs will not present evidence of a manufacturing defect in the microwave at trial of this matter.

....

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.R.D. 502    Page 3
168 F.R.D. 502, 36 Fed.R.Serv.3d 945
(Cite as: 168 F.R.D. 502)

**Request No. 2:**
Plaintiffs will not present evidence of a design defect in the microwave at trial of this matter.

....

**Request No. 3:**
Plaintiffs will not present evidence of an assembly defect in the microwave at trial of this manner.

....

**Request No. 4:**
Plaintiffs will not present evidence of a defect in the electrical wiring of the microwave oven at trial of this manner.

Rule 36 permits a party to serve a request for admission regarding any question of fact (or the application of law to fact) within the proper scope of discovery as defined by Rule 26(b)(1). Fed.R.Civ.P. 36(a). Rule 26(b)(1) defines the scope of discovery as including "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1).

[1][2] A Rule 36 admission is intended to serve as an "unassailable statement of fact that narrows the triable issues in the case." Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3d Cir.1992). The rule seeks to promote trial efficiency by eliminating uncontested factual matters. Id.; American Automobile Assoc. v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1121 (5th Cir.1991). Its concern is with questions of fact otherwise subject to proof at trial, see Fed.R.Civ.P. 63, 1970 advisory committee notes ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."), not with trial strategy.

[3] This distinction is made clear by Rule 36's incorporation of Rule 26(b)(1). While factual matters are generally appropriate subjects for discovery, trial strategy is not. Hickman v. Taylor, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451, 462 (1947); Sig Swiss Indus. Co. v. Fres-Co System, USA, Inc., No. 91-0699, 1993 WL 147241, *3, *5-6 (E.D.Pa. Apr. 30, 1993).

[4] Maytag's requests for admission seek to uncover Plaintiffs' plans for trial, not admissions as to facts at issue. The requests ask not whether the defects in question *exist,* or whether Plaintiffs have *knowledge* of any defects, but whether evidence of such defects *will be presented at trial.* As the *Sig Swiss* court points out, the discovery of such information would be improper for two reasons: first, compelling discovery of trial strategy would violate the work product doctrine; second, it is unreasonable to expect a party to have determined what evidence it will choose to present at trial before the close of discovery. *Id.* at *6.

Because Maytag's requests for admission exceeded the scope of Rule 36, any alleged impropriety or insufficiency in Plaintiffs' response to them can not form the basis for summary judgment.

*505 C. *Identification of Experts*

This Court issued a case management Order in this case on January 3, 1996. The Order provided, *inter alia,* that:
Discovery shall be completed by September 16, 1996. The parties shall identify any expert witnesses and shall provide reports promptly. Plaintiff's report is due by July 1, 1996, and defendant's report is due by August 1, 1996. Supplementations, if any, are due by August 15, 1996. (This case is on the standard track).

Maytag alleges that plaintiffs have failed to identify any experts, and that this failure precludes plaintiffs from presenting expert testimony which would be essential to the establishment of a prima facie case of liability. Maytag argues that, in the absence of this testimony, it is entitled to summary judgment.

Plaintiffs respond that Maytag was made aware in a timely fashion of their use of John R. Bainbridge, Jr., the cause and origin expert who investigated the fire for Liberty Mutual, as an expert in this case. Viewing the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus.,* 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d at 553, it appears that plaintiffs adequately complied with the requirements of the January 3 Order, and summary judgment is not called for on these grounds.

D. *Spoliation of Evidence*

[5] Maytag argues that as plaintiffs' destruction of the fire scene denied it the opportunity to conduct its own investigation as to the cause of the fire, it is entitled to summary judgment as a sanction for the spoliation of evidence.

[6] A party which reasonably anticipates litigation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.R.D. 502                                                                                                          Page 4
168 F.R.D. 502, 36 Fed.R.Serv.3d 945
**(Cite as: 168 F.R.D. 502)**

has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994). Where evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the "spoliation inference." This inference permits the jury to assume that "the destroyed evidence would have been unfavorable to the position of the offending party." *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78 (3d Cir.1994). The appropriate sanction will depend on the facts and circumstances of the case. *Id.* at 81.

[7] The Third Circuit recently laid out the standard for examining spoliation claims in *Schmid.* *Schmid* involved a products liability claim based on an alleged defect in the design of a circular saw. The expert retained by the plaintiff to examine the allegedly defective saw disassembled it in the course of his examination; this disassembly caused debris which had collected in the saw's guard mechanism to fall out, changing the condition of the saw prior to inspection by the defendant's expert. The Court of Appeals ruled that while this change may have compromised the defendant's ability to fully investigate the cause of the accident, the exclusion of the report of plaintiff's expert was too severe a remedy. *Id.* at 79.

The *Schmid* court held that three factors must be considered when spoliation of evidence is alleged:
1. "the degree of fault of the party who altered or destroyed the evidence;"
2. "the degree of prejudice suffered by the opposing party; and"
3. "whether there is a lesser sanction [compared to the complete exclusion of evidence] that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."
*Id.*

A number of factors present in *Schmid* led the court to conclude that a jury instruction on the "spoliation inference" was a more appropriate remedy than the exclusion of plaintiff's expert's report. First, the fault involved appeared to be minimal. Due to the nature of the apparent defect, "[d]isassembly was necessary to determine whether Schmid has a meritorious claim against the manufacturer of the saw." *Id.* In disassembling the saw, the expert did not destroy the evidence in question, but instead merely altered an already transient aspect of its condition. *Id.* *506 (comparing facts to cases involving complete destruction of evidence).

Additionally, the expert minimized the impact of his investigation by documenting his findings with photographs. *Id.* While the expert could have done more--he did not videotape or time the operation of the allegedly defective guard--this omission would not justify severe sanctions, absent a showing by the manufacturer that taking these steps would have avoided some substantial prejudice. *Id.* at 79-80.

The prejudice present in *Schmid* was also limited by the fact that the plaintiff was proceeding under a theory of defective design, rather than defective manufacture. The defendant therefore was free to experiment with other saws of the same design in formulating its defense. *Id.*

The *Schmid* factors were recently applied to an accident similar in many respects to the one before us now in *Baliotis,* 870 F.Supp. 1285. *Baliotis* also involved the destruction of a fire scene following a fire allegedly started by a defective microwave. The *Baliotis* court, like the court in *Schmid,* concluded that the appropriate remedy was a jury instruction on the spoliation inference, rather than summary judgment or the exclusion of plaintiffs' expert testimony. *Id.* at 1293. Both plaintiffs' fault and defendant's prejudice were limited by the particular facts of the case: plaintiffs were renters, and as such had no power over the preservation or destruction of the fire scene, *id.* at 1289-90; a number of items useful to defendant's investigation were preserved, including the microwave, several other kitchen appliances, and wiring from inside the kitchen wall, along with photographs and a videotape of the fire scene, *id.* at 1291; the fire scene, a potential safety hazard, could not be preserved indefinitely, *id.;* and the defendant had access to investigative reports, from both the plaintiffs' investigator and the State Fire Marshall, suggesting fire causes other than the microwave, *id.* at 1291-92.

The application of the *Schmid* factors to the case before us leads us to conclude that while a jury instruction on the spoliation inference is appropriate here, more severe sanctions are unnecessary.

**1. Fault.** While there is no evidence of fault in the sense of malice or bad faith evident in the destruction of the fire scene, plaintiffs nonetheless bear a somewhat greater degree of fault than is evidenced in *Schmid* or *Baliotis.* Plaintiffs here are the owners of the property in question; unlike the renters in *Baliotis,* they had control over the preservation or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.R.D. 502                                                                                                                      Page 5
168 F.R.D. 502, 36 Fed.R.Serv.3d 945
**(Cite as: 168 F.R.D. 502)**

destruction of their property.

Without question, the eventual demolition of the fire scene was inevitable. In addition to the health and safety concerns raised by the preservation of the fire-damaged house, *Baliotis, 870 F.Supp. at 1291*, maintaining the house in its damaged state would presumably have lengthened the time in which the plaintiffs were displaced from their residence. The burden of such a displacement far exceeds the mere expense of storing damaged property, as courts have required in many spoliation cases. *E.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363 (9th Cir.1992); Roselli v. General Elec. Co., 410 Pa.Super. 223, 599 A.2d 685 (1991); Hirsch v. General Motors Corp., 266 N.J.Super. 222, 628 A.2d 1108 (1993); Patton v. Newmar Corp., 538 N.W.2d 116 (Minn.1995); Fire Ins. Exch. v. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911 (1987)*.

It does appear that plaintiffs could reasonably have given Maytag notice of the potential claim, and provided it with an opportunity to conduct an independent investigation before the demolition of the fire scene. Farmers Mutual conducted a preliminary inspection of plaintiffs' home the day after the fire. The fire inspection by plaintiffs' expert was conducted in the week following, and the expert's report was complete two weeks after the casualty. That report identified the microwave as the presumptive cause of the fire, and suggested the possibility of a subrogation action. Farmers Mutual authorized plaintiffs to begin repairing the house a week later, approximately three weeks after the fire.

It seems that plaintiff had identified a possible cause of action against Maytag one week prior to the demolition of the fire scene. Plaintiff did not attempt to notify Maytag of *507 this potential claim, so that Maytag could have the scene examined by its own expert prior to demolition. While the expert's report proposes further examination of the microwave, it clearly anticipates the possibility of a suit against Maytag. "[T]he knowledge of a *potential* subrogation claim is deemed sufficient to impose a duty to preserve evidence." *Baliotis, 870 F.Supp. at 1290*. While that preservation need not be perpetual, plaintiffs had an affirmative duty to give Maytag the opportunity to conduct a prompt investigation. [FN2] *Id.*

> FN2. As no attempt was made by plaintiffs to contact Maytag prior to the demolition of the fire scene, we need not decide here how much opportunity plaintiffs should have given Maytag to conduct an investigation.

Plaintiffs did preserve some evidence of the fire scene, both through photographs and through the preservation of the microwave, the duplex electrical outlet, and the romex wire from inside the wall. Despite the absence of a videotape (as was present in *Baliotis*), these items make it possible for Maytag to inspect the microwave for the presence or absence of possible defects, and to examine the burn patterns in plaintiffs' kitchen. *See Northern Assurance Co. v. Ware, 145 F.R.D. 281, 284 (D.Me.1993)* (suggesting that demolition of a fire scene may be appropriate where all evidence has been adequately documented). As discussed below, however, they do not provide the same opportunity for inspection of other possible causes that Maytag would have enjoyed had it conducted an on-scene investigation.

**2. Prejudice.** Maytag suffers greater prejudice due to the destruction of the fire scene than that faced by the manufacturers in *Baliotis* and *Schmid*. While Maytag can examine the microwave for the alleged fault which plaintiffs assert gives rise to its liability, as well as the burn patterns shown in plaintiffs' photographs of the scene, it has been denied the opportunity to examine other possible causes of the fire. This search for alternative causes will be particularly crucial to Maytag's defense, given plaintiffs' stated intention to proceed under a theory of "circumstantial evidence of malfunction in the absence of abnormal use and after elimination of reasonably secondary causes." (Plaintiffs' Brief at 10). If plaintiffs intend to argue that a defect in the microwave can be inferred from the lack of alternative causes of the fire, then denying Maytag an opportunity to examine the remainder of the kitchen wiring and appliances leaves Maytag to rely solely on plaintiffs' investigation. [FN3]

> FN3. The prejudice to Maytag's position would be less serious if an independent third party had conducted its own investigation. *See Baliotis, 870 F.Supp. at 1291* (report by State Fire Marshall).

Maytag will have some limited opportunity to attack plaintiffs' no-alternative-causes theory at trial. The preliminary report of the adjuster for Farmers Mutual reveals some inconclusiveness in the investigation. (Exhibit F to Defendant's Motion to Summary Judgment, Preliminary Report of Arthur Reeher Co., Inc., at 3 ("[plaintiffs' expert] was a bit puzzled by some other areas of severe damage in the kitchen and as discussed wanted a second opinion from another

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.R.D. 502  
168 F.R.D. 502, 36 Fed.R.Serv.3d 945  
**(Cite as: 168 F.R.D. 502)**

Page 6

representative from his company")). Maytag will, of course, be able to cross-examine plaintiffs' expert on this issue. This opportunity can not, however, replace an independent investigation to identify alternative causes. [FN4]

> FN4. The prejudice to Maytag is tempered here, as it was in *Baliotis,* by the absence of an affidavit that Maytag "will be unable to present expert witness evidence on the cause and origin of this fire because of the demolition of the fire scene." *Baliotis,* 870 F.Supp. at 1292.

**3. Sanction.** *Schmid* requires that we weigh all of these considerations when applying the appropriate sanction. Three alternative sanctions are available: (1) a jury instruction on the "spoliation inference"; (2) the exclusion of plaintiffs' expert report; and (3) the outright dismissal of the claim or claims for which the defendant's position has been prejudiced.

While the *Schmid* factors weigh more heavily against the plaintiffs than they did in *Schmid* or *Baliotis,* they are not so weighty as to require outright dismissal. See *Transamerica Ins. Group v. Maytag, Inc.,* 99 Ohio App.3d 203, 650 N.E.2d 169, 171 (1994) (dismissal inappropriate, where plaintiff preserved *508 only allegedly defective power cord, and destroyed refrigerator and fire scene). Indeed, many cases applying the less severe sanction of the exclusion of expert testimony involve greater levels of fault and prejudice than those evident here. *See, e.g., Unigard,* 982 F.2d 363 (destruction of allegedly defective space heater responsible for fire); *Northern Assurance,* 145 F.R.D. 281 (plaintiff's investigator failed to adequately document fire scene with photographs and diagrams, and failed to preserve any physical evidence relating to alternative cause suggested in Fire Marshal's report); *Patton,* 538 N.W.2d 116 (burned motor home and allegedly defective parts lost by plaintiff); *Fire Ins. Exch.,* 747 P.2d 911 (destruction of allegedly defective television set).

This "middle" option, the exclusion of plaintiffs' expert report, is also troubling in light of the fact that here, as in many cases, it will have the same effect as the outright dismissal of the claim. *See, e.g., Schmid,* 13 F.3d at 78; *Unigard,* 982 F.2d at 369; *Patton,* 538 N.W.2d at 120; *Fire Ins. Exch.,* 747 P.2d at 913. Plaintiffs' case against both Maytag and Wal-Mart is entirely dependant upon the report of its expert, pinpointing the microwave as the cause of the fire. If this evidence is excluded, then plaintiffs will be left with no evidence as to causation or fault, and Maytag will be entitled to its requested summary judgment.

It is our opinion that the facts of this case do not call for such a severe sanction. Application of the *Schmid* factors leads us to conclude that the destruction of the fire scene requires a jury instruction on the spoliation inference, [FN5] but not the end of plaintiffs' lawsuit. Summary judgment is therefore inappropriate.

> FN5. A more severe sanction may prove necessary, should the evidence produced at trial lead us to conclude that the prejudice to Maytag is more severe than the record reveals at this juncture.

III. *Conclusion*

For the foregoing reasons, Maytag's motion for summary judgment is denied. Maytag will, however, be entitled to a jury instruction at trial as to the spoliation inference, based on plaintiffs' failure to preserve evidence.

168 F.R.D. 502, 36 Fed.R.Serv.3d 945

**Motions, Pleadings and Filings (Back to top)**

• 1:95cv01117 (Docket) (Jul. 13, 1995)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.