# CASE 4

Westlaw.

519 F.Supp. 668                                                                                                      Page 1
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

United States District Court, D. Delaware.
OLIVER B. CANNON AND SON, INC., a
Pennsylvania corporation, Plaintiff,
v.
FIDELITY AND CASUALTY COMPANY OF
NEW YORK, a New Hampshire corporation,
Defendant.
Civ. A. No. 79-129.

July 31, 1981.

Insured brought an action against insurer seeking to recover sums of money which insured allegedly became obligated to pay as damages as the result of a state court suit. On various motions of the parties, the District Court, Latchum, Chief Judge, held that: (1) while insurer had the burden of proving that at time the insurance contract was made, insured was aware of the "work product" exclusion and understood its meaning, and thus intended to be bound by it, insurer was entitled to a jury instruction that the jury must find exclusions to coverage claimed by insurer to be applicable if it found that insurer had proved by a preponderance of the evidence that insurer and insured had relative equal bargaining power at the time the contract was executed; (2) despite insured's arrangement with his attorney whereby insured could be relieved of all or part of his obligation to pay attorney fees in the event the jury did not award insured the amount claimed, insured had a cause of action for the unpaid attorney fees sought and consequently was a real party in interest for that claim; and (3) a material issue of fact existed as to whether insurer could meet its burden of proving the applicability of the claimed exclusions by showing equal bargaining power, precluding summary judgment.

Ordered accordingly.

See also, 484 F.Supp. 1375.

West Headnotes

[1] Insurance ⚖️3579
217k3579 Most Cited Cases
    (Formerly 217k669.6(3))
In action by insured against insurer seeking recovery of sums of money which insured allegedly became obligated to pay as damages, while insurer had burden of proving that at the time the insurance contract was made, insured was aware of the "work product" exclusion contained in the policies and understood their meaning, and thus intended to be bound by them, insurer was entitled to a jury instruction that jury had to find the exclusions to coverage claimed by insurer to be applicable if it found that insurer had proved by a preponderance of the evidence that insurer and insured had relatively equal bargaining power at the time the contract was executed.

[2] Insurance ⚖️3567
217k3567 Most Cited Cases
    (Formerly 217k624.1(1))
Insured had a cause of action against insurer for unpaid attorney fees for legal services rendered by insured's attorney in state court litigation, despite insured's independent agreement with its attorney by which insured could be relieved of all or part of its obligation to pay the fees in the event jury did not award insured the amount claimed, and thus insured was a real party in interest for the claim. Fed.Rules Civ.Proc. Rule 17(a), 28 U.S.C.A.

[3] Federal Civil Procedure ⚖️2501
170Ak2501 Most Cited Cases
In insured's action seeking recovery from insurer of sums of money which insured allegedly became obligated to pay as damages as result of a state court suit, material issue of fact existed as to whether insurer could meet its burden of proving applicability of the claimed exclusions in policies by showing equal bargaining power, precluding summary judgment for insured.

[4] Federal Civil Procedure ⚖️2012
170Ak2012 Most Cited Cases
In order for exception in sequestration rule for a person whose presence is shown by a party to be essential to presentation of his cause to apply, what must be shown is that a witness has such specialized expertise or intimate knowledge of facts of the case that a party's attorney could not effectively function without the presence and aid of the witness or that witness would be unable to present essential testimony without hearing the trial testimony of other witnesses. Fed.Rules Evid.Rule 615, 28 U.S.C.A.

[5] Federal Civil Procedure ⚖️2012
170Ak2012 Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF    Document 562-9    Filed 03/09/2007    Page 3 of 13

519 F.Supp. 668                                                                                                    Page 2
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

In insured's action against insurer seeking recovery of sums of money which insured allegedly became obligated to pay as damages as result of a state court suit, presence of insured's expert witness who had based his testimony and conclusions upon the evidence adduced at trial and of attorney who acted as insured's attorney in its dealings with insurer and conducted state court litigation was essential, and thus insurer's sequestration request would not be applicable to such witnesses. Fed.Rules Evid. Rules 615, 615 note, 28 U.S.C.A.

[6] Federal Civil Procedure ⚖2012
170Ak2012 Most Cited Cases
Exception to sequestration rule which allows presence in courtroom of "an officer or employee of a party which is not a natural person designated as its representative by his attorney" permitted insured corporation's attorney to designate an officer or employee to act as its representative who might be excluded from a sequestration order entered pursuant to insurer's request, but such exception did not permit counsel to designate more than one person to be present as corporation's representative. Fed.Rules Evid. Rule 615, 28 U.S.C.A.

[7] Constitutional Law ⚖305(3)
92k305(3) Most Cited Cases
Although, in some unusual cases, party seeking production of documents pursuant to a subpoena duces tecum may obtain an order disposing of anticipated objections to a subpoena directed to an opposing party before the subpoena is issued, it would violate dictates of due process to rule upon anticipated objections which may be raised by a third party before any subpoena has issued and before third party has been given any opportunity to appear before the court and object. Fed.Rules Civ.Proc. Rule 45(b), 28 U.S.C.A.

[8] Witnesses ⚖9
410k9 Most Cited Cases
Generally, a party has no standing to seek to quash a subpoena directed to one who is not a party; however, a party may raise objections in situations where party claims personal right of privilege relating to documents sought. Fed.Rules Civ.Proc. Rule 45(b), 28 U.S.C.A.

[9] Witnesses ⚖201(1)
410k201(1) Most Cited Cases
In the absence of special circumstances, information relating to billing and payment of attorney fees does not fall within the scope of the attorney-client privilege.

*669 Robert G. Carey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiff.

*670 B. Wilson Redfearn and Colin M. Shalk of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant.

MEMORANDUM OPINION

LATCHUM, Chief Judge.

In this action plaintiff, Oliver B. Cannon and Son, Inc. ("Cannon"), seeks to recover from its insurance carrier, defendant Fidelity and Casualty Company of New York ("Fidelity"), (a) sums of money which Cannon allegedly became obligated to pay as damages as the result of a state court suit, (b) Cannon's litigation expenses accumulated in that suit, and (c) exemplary damages. The facts and issues of this action are described in detail in this Court's opinion denying cross-motions for summary judgment. Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Company of New York, 484 F.Supp. 1375 (D.Del.1980).

Presently before the Court are (A) Fidelity's motion that the Court reconsider its decision that the rule of law set forth in the case of Hionis v. Northern Mutual Insurance Co., 230 Pa.Super. 511, 327 A.2d 363 (1974) is applicable to this case; (B) Fidelity's motion to dismiss that portion of Count Five of the Complaint which seeks to recover attorney's fees allegedly incurred in the underlying state court litigation but never paid by Cannon (Docket Item ("D.I.") 129); (C) Cannon's third motion for summary judgment (D.I. 161); and (D) a request for a number of in limine rulings on questions raised by the parties pre-trial relating to (1) Fidelity's request for sequestration of witnesses at trial, (2) the subpoena duces tecum which will be sought by Fidelity and directed to Courtney Cummings, Esq., Cannon's attorney in the state court litigation, and (3) the applicability of the exclusions to insurance coverage invoked by Fidelity to the damages determined in the state court litigation. The Court will address these issues seriatim.

A. The Applicability of the Hionis Rule

[1] Fidelity has requested that the Court reexamine its holding in its opinion of January 16, 1980, Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Co. of New York, 484 F.Supp. 1375, 1383-84 (D.Del.1980), that before Fidelity may rely upon the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF   Document 562-9   Filed 03/09/2007   Page 4 of 13

519 F.Supp. 668                                                                                           Page 3
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

"work product" exclusions contained in the insurance policies which it issued to Cannon, it has the burden of proving that at the time the insurance contract was made, Cannon was aware of the exclusion "and understood its meaning, and thus intended to be bound by it." In so holding, the Court relied upon the rule of law stated in Hionis v. Northern Mutual Insurance Co., 230 Pa.Super. 511, 327 A.2d 363 (1974).[FN1] Fidelity argues that Hionis is inapplicable to the circumstances of this case. Specifically, it contends that "Pennsylvania courts have adopted a bi-level approach in dealing with insurance contracts." According to Fidelity, when the purchaser is a large sophisticated corporation with bargaining power equal to the insurer and the contract is unambiguous, all the normal rules of contract interpretation apply. Fidelity thus argues that it is only where the purchaser is unsophisticated and has no significant bargaining power or where the contract is ambiguous that special protective rules enunciated in Hionis apply. Finally, Fidelity contends that Cannon is a large sophisticated corporation with bargaining power equal to that of Fidelity and that therefore the Hionis requirement is inapplicable.

> FN1. The Hionis issue was raised by the Court in its earlier opinion and neither party had briefed or argued the issue. However, the issue has now been thoroughly discussed in the round of briefing preceding this opinion. (See Docket Items ("D.I.") 158, 159 & 160.)

After carefully considering the arguments and submissions of the parties, the Court is convinced that its original decision finding Hionis applicable to this case was correct. However, the Court also concludes that Fidelity is entitled to a jury instruction that the jury must find the exclusions to coverage claimed by Fidelity to be applicable if it finds that Fidelity has proved by a preponderance of the evidence that Fidelity and Cannon had relatively equal bargaining power at the time the contract was executed. *671 The Court has reached this conclusion as a result of its examination of the Hionis case, its progeny, and the body of Pennsylvania law, upon which Hionis relied, finding insurance contracts to be contracts of adhesion.

In Hionis, the plaintiff, a layman of apparently average intelligence who was "unschooled in insurance matters," had sought insurance to cover certain improvements he had made on the premises of his leased restaurant. He sought this insurance upon the recommendation of an agent of the defendant insurance company and entrusted the entire matter to the agent. The insured's only requirement was "that the new policy cover him for loss to the improvements since his expense had been considerable." Thereupon, a fire policy issued covering improvements and betterments to the amount of $49,500. A fire later occurred and the insurers refused to pay anything in excess of $12,733, basing its refusal on an exclusion in the policy. Plaintiff thereupon brought suit against the insurer seeking the balance of his losses. The trial court entered a judgment for the plaintiff and the Superior Court affirmed. Judge Hoffman, summarizing prior law, stated:

> Insurance contracts have been viewed under the law as contracts of "adhesion", where the insurer prepares the policy for a purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the insurer. * * * The policy behind this rule (construction against the insurer) is sound; the insurer wrote the policy and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer. * * * When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it.

327 A.2d at 365. The court went on to hold: "Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him." Applying this rule, the court concluded that because the plaintiff had adduced evidence showing that it was his intention to obtain full insurance for the improvements in his restaurant and because the insurer had failed to introduce any evidence, other than the policy itself, that would seem to indicate an awareness of the limitation on the part of the plaintiff, the lower court had properly directed judgment in favor of the plaintiff.

The new element which Hionis added to the case law concerning the construction of insurance contracts was that even where an exclusion to a policy is unambiguous, the insurer has the burden of proving that the insured was aware of and understood the exclusion at the time he became insured. This principle, known as the "Hionis rule" has been reaffirmed and applied in numerous later cases both

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF    Document 562-9    Filed 03/09/2007    Page 5 of 13

519 F.Supp. 668
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

Page 4

by the Pennsylvania State and Federal Courts. See Daburlos v. Commercial Insurance Co. of Newark, New Jersey, 521 F.2d 18 (C.A.3, 1975); Mattes v. National Fidelity Life Insurance Co., 506 F.Supp. 955 (M.D.Pa.1980); Kelmo Enterprise, Inc. v. Commercial Union Insurance Co., 285 Pa.Super. 13, 426 A.2d 680 (1981); Klischer v. Nationwide Life Insurance Co., 281 Pa.Super. 292, 422 A.2d 175 (1980) (collecting cases); L. & W. Demolition Co., Inc. v. Rockwood Insurance Co., 75 Pa. D. & C.2d 688 (C.P. Dauphin County 1976).

Two exceptions to the "Hionis rule" have emerged from the case law applying the decision. See generally Mattes v. National Fidelity Life Insurance Co., supra. First, in cases where the claimed exclusion will not defeat the expectation of coverage, the exclusion may be enforced even though the insured was unaware of it and did not understand it. Thus, Hionis has been held to be inapplicable in cases where an exclusion merely prevented double recovery, Weiss v. CNA, 468 F.Supp. 1291 (W.D.Pa.1979); *672Miller v. Prudential Insurance Company of America, 239 Pa.Super. 467, 362 A.2d 1017 (1976), and in a case where an exclusion prevented recovery for a loss suffered by an owner of two stores at the store which was not the subject of the insurance policy under which recovery was sought. Treasure Craft Jewelers, Inc. v. Jefferson Insurance Company of New York, 583 F.2d 650 (C.A.3, 1978). Second, the Hionis rule has also been held to be inapplicable in cases where the insured and the insurer have roughly equal bargaining power. Brokers Title Company, Inc. v. St. Paul Fire & Marine Insurance Co., 610 F.2d 1174 (C.A.3, 1979).[FN2]

> FN2. Brokers Title Company, Inc. v. St. Paul Fire & Marine Insurance Co., supra, in an alternative holding, also apparently found the Hionis rule inapplicable because the relevant exclusion was not ambiguous. This holding was firmly repudiated by the Pennsylvania Superior Court in Klischer v. Nationwide Life Insurance Co., 281 Pa.Super. 292, 422 A.2d 175 (1980) which held the Hionis rule to be applicable even where the relevant exclusion is utterly unambiguous. The extent to which the Court of Appeals in St. Paul also relied upon the fact that the exclusion was not ambiguous in finding the Hionis rule inapplicable because the two parties had equal bargaining power is not clear from the opinion. See Brokers Title Co. v. St. Paul Fire & Marine Insurance Co., supra, 610 F.2d at 1179, n.3. Consequently, the soundness of the latter holding, expounding on Pennsylvania law, may be doubted. Indeed, in most cases where the exception created in St. Paul would be relevant, the burden in adducing evidence sufficient to prove the applicability of the exception would be no greater than the minimal burden imposed by the Hionis rule. For example, in Purdy v. Commercial Union Insurance Co. of New York, 50 D. & C.2d 230, 236 (C.P. Allegheny County, 1968), a case upon which the Hionis court relied in fashioning its rule, the court noted:
> We do not intend to treat the individual plaintiff any differently from the large corporate plaintiff. The burden of proof, in either event, is on the party asserting the exclusion to prove not only its applicability, but its understanding by the party against whom the exclusion is sought. As with any other contract situation, if there is no meeting of the minds on the terms of the contract, there is no contract. If it be shown in the case of a large corporation, that the insurance contract went, along with all the other contracts entered into by the corporation, to the corporate attorneys for examination before signing, then it may be reasonably concluded by the court that the exclusion was known to exist and understood as applying to any given situation. However, in the case of an individual, construing this contract of adhesion strictly against the insurer, unless it be shown by the insurer that the insured was made aware of this exclusion and its effect on his coverage at the time of purchase of the policy, we will not enforce it as a part of the bargained-for agreement.

The reasons for and scope of these exceptions can best be understood if one examines the rationale underlying the Hionis rule. The Hionis rule is based upon the recognition by the Pennsylvania courts of the fact that most insurance contracts are contracts of adhesion, and are consequently often not "arrived at by the normal processes of negotiation between parties in substantially equal bargaining positions" that is contemplated by traditional contract theory. 7 S. Williston, Contracts s 900 at 29 (3rd ed. 1963). Contracts of adhesion are usually contracts between parties of unequal bargaining power where the majority of the terms and conditions are contained in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF    Document 562-9    Filed 03/09/2007    Page 6 of 13

519 F.Supp. 668                                                                                    Page 5
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

a form contract which has been prepared by the party with superior bargaining power. The only real bargaining which takes place concerns certain essential conditions, such as price, type of coverage and amount of coverage. The other terms contained in the form contract are usually offered by the party which prepared the contract on a "take it or leave it" basis. Moreover, these terms, which are formulated to protect the interests of the party in the superior bargaining position in diverse circumstances are, at best, obscure and confusing.[FN3] See *673 Collister v. Nationwide Life Insurance Co., 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979); Brakeman v. Potomac Insurance Co., 472 Pa. 66, 371 A.2d 193 (1977); Purdy v. Commercial Union Insurance Co. of New York, 50 D. & C.2d 230 (C.P. Allegheny County, 1968); 7 S. Williston, Contracts s 900 (3rd ed. 1963). Indeed, the purchase of insurance contracts is said to bear a closer resemblance to the purchase of merchandise than to the negotiation of an agreement. 7 S. Williston, Contracts s 900 at 30-31 (3rd ed. 1963).

> FN3. Indeed, the particular exclusion invoked by the insurer in this case was described by the Pennsylvania Superior Court in W.T. Grant Co. v. U.S.F. & G. Insurance Co., 279 Pa.Super. 591, 421 A.2d 357, 360 (1980), as follows:
> A review of cases involving this clause reveals the confusion and ambiguity of same. There is little agreement between companies themselves and applicable rational examples of its meaning are difficult to imagine. This is certainly one of the areas in insurance policies where plain language which is readily understandable, should be requested.
> In W.T. Grant the court found that an exception to the exclusion rendered the exclusion ambiguous under the facts of that case and resolved the ambiguity in favor of the insured. That exception to the exclusion is irrelevant to this case. This Court, in its earlier opinion, found that although the exclusion was confusing and was not "readily understandable," it was possible to read it without ambiguity as applied to the facts of this case.

Because the circumstances leading to the execution of the usual insurance contract are so radically different from those leading to the execution of other contracts, the Hionis court determined that different rules of interpretation were warranted in order to effectuate the original principles underlying contract law. At the most basis level, contract law seeks to determine the mutual intentions of the contracting parties and to enforce their agreement. See Burns Manufacturing Co. v. Boehm, 467 Pa. 307, 356 A.2d 763, 766 n.3 (1976); 1 A. Corbin, Contracts s 1 (1963). In the case of the usual insurance contract which is a contract of adhesion, although a court can safely presume that the parties have mutually assented to the basic terms of the contract the type of coverage, the amount of coverage and the price it cannot presume that the written instrument accurately reflects the intentions of the parties with respect to its other terms. Thus, the Hionis court held that where one of these other terms was an exclusion to coverage which would defeat the expectations of one party with respect to one of the basic, bargained for terms, the party invoking that exclusion must adduce additional evidence showing that the exclusion was part of the bargain, that is that the insured was aware of it, understood it, and thus agreed to it.

It is in light of this rationale that the two exceptions noted earlier have been created. Where exclusions do not defeat the basic bargained for coverage, courts can presume that they were part of the bargain without further proof. Similarly, where the insured is in a bargaining position equal to that of the insurer, courts can presume that they have legal staffs which can analyze the insurance contract and that the insured can use its bargaining power to demand different terms. Thus, as in the case of other contracts, the Court can presume that the written instrument reflects the intention of the parties. See e. g., Stern Enterprises, Inc. v. Penn State Mutual Insurance Co., 223 Pa.Super. 410, 302 A.2d 511 (1973). The parties do not dispute that the first exception is inapplicable to the present case. The question presented to the Court here is whether the Hionis requirement would be held inapplicable because Cannon has bargaining power roughly equal to Fidelity's. However, the question of relative bargaining power is a factual one, and, on the present record, that issue is clearly in dispute. Because there are disputed issues of fact, the question must be submitted to the jury.

Therefore, the Court will instruct the jury that before it may find the claimed exclusions applicable it must find that Fidelity has proved by the preponderance of the evidence either that Cannon was aware of the exclusions and understood their meaning or that Cannon and Fidelity had relatively equal bargaining power. The Court will further instruct the jury that in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF    Document 562-9    Filed 03/09/2007    Page 7 of 13

519 F.Supp. 668                                                                                                Page 6
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

determining bargaining power the jury may consider the relative size and sophistication of the two parties, any actual bargaining that took place, the size and importance of the contract to each, and the practice of the insurance company with respect to similarly sized contracts with other companies of Cannon's size. From these factors the jury will have to determine whether, in fact, Cannon did or could have bargained over the exclusions with a reasonable hope of altering the terms of the contract and if the jury so finds, it may find the claimed contract exclusions applicable.

*674 B. Fidelity's Motion To Dismiss That Portion Of Count Five Seeking Attorney's Fees

[2] Fidelity has also moved to dismiss the portion of Count Five of the complaint seeking an award of attorney's fees in the amount of $346,794.26 for failure to state a claim upon which relief can be granted and for the failure to be prosecuted in the name of the real party in interest. (D.I. 129 and 130.)

The attorney's fees which Cannon seeks in Count Five are fees for legal services rendered by Cannon's attorney, Courtney Cummings, in the underlying state court litigation. Cannon has never paid those fees to Mr. Cummings and will be required to pay them only in the event, and to the extent, that Cannon recovers from Fidelity on its claim in Count Five. Although the fee arrangement between Cannon and Mr. Cummings was never formalized in a single document, letters between Mr. Cummings and Cannon and Cannon's answers to interrogatories appear to reveal the following arrangement between Cannon and Mr. Cummings: From the beginning, Cannon and Mr. Cummings believed that Cannon would be entitled to reimbursement from Fidelity for the value of the legal services rendered by Mr. Cummings while defending Cannon against the counterclaims in the state court action. It was apparently agreed between Cannon and Mr. Cummings that Cannon was to be billed contemporaneously and to pay for only a small fraction of the value of the legal services being rendered by Mr. Cummings. Cannon and Mr. Cummings further agreed that Cannon would seek to recover the full value of Mr. Cummings' services from Fidelity and that Cannon would pay Mr. Cummings any sums which it received from Fidelity for attorney's fees which were greater than the amount which it had already paid to Mr. Cummings. Mr. Cummings and Cannon further agreed, however, that Cannon would not be required to pay Mr. Cummings any additional sums if it did not recover those sums from Fidelity. (D.I. 152, PP 11, 12, and 13.) Consequently, in Count Three Cannon seeks to recover the legal fees and expenses which it actually paid and in Count Five Cannon seeks a sum equal to the amount by which the value of Mr. Cummings' legal services exceeded the amount which was billed to and has already been paid by Cannon. Pursuant to the agreement between Cannon and Mr. Cummings described above, Cannon will be obligated to pay any amount recovered under the attorney's fees portion of Count Five to Mr. Cummings but in the event Cannon does not recover the full amount demanded, it will not have to pay Mr. Cummings any amount beyond that actually recovered from Fidelity under the attorney's fees portion of Count Five. Also, apparently in order to protect Mr. Cummings' contingent interests, Cannon and Mr. Cummings have agreed that Mr. Cummings has the sole right to determine the amount that Cannon will accept in settlement for the attorney's fees portion of Count Five and Cannon has given Mr. Cummings the right to negotiate with Fidelity independently regarding settlement of this portion of the claim.

Fidelity now attempts to turn this arrangement between Cannon and Mr. Cummings to its own advantage by contending that Cannon's obligation to pay any additional attorney's fees to Mr. Cummings is contingent solely upon its prevailing upon its claim in Count Five in this action, and that therefore Cannon never "incurred" any attorney's fees in defending against the counterclaims in the state court action other than those attorney's fees which Cannon paid contemporaneously to Mr. Cummings. Fidelity further contends that therefore Cannon has suffered no loss and has failed to state a cause of action with respect to the attorney's fees which it has not paid the subject of the claim in Count Five. Fidelity argues, in the alternative, with regard to the attorney's fees claim in Count Five, that Cannon is not the real party in interest and that if the claim belongs to anyone, it belongs to Mr. Cummings. Fidelity, therefore, contends that the attorney's fee portion of Count Five should be dismissed for the additional reason that it is not being prosecuted in the name of the *675 real party in interest as required by Rule 17(a), F.R.Civ.P.

Underlying both of Fidelity's contentions is the single proposition that Cannon may not maintain an action in its own name to recover its unpaid attorney's fees merely because, by the workings of an independent agreement between Cannon and Mr. Cummings, Cannon may be relieved of all or part of its obligation to pay those fees in the event the jury does not award Cannon the amount claimed.[FN4] Fidelity has been unable to cite a single authority in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF   Document 562-9   Filed 03/09/2007   Page 8 of 13

519 F.Supp. 668                                                                                      Page 7
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

support of this proposition and cites only Pennsylvania cases stating the general proposition that the measure of damages for a breach of a contractual duty to defend is the cost of hiring substitute counsel and other costs of the defense. See King v. Automobile Underwriters, Inc., 409 Pa. 608, 187 A.2d 584 (1963).

> FN4. A party must have a substantive right to enforce in order to be a real party in interest for purposes of Rule 17(a), F.R.Civ.P. In diversity, the question of whether one has a substantive right is a matter of state law. Hughey v. Aetna Casualty & Surety Co., 32 F.R.D. 340 (D.Del.1963); 3A Moore's Federal Practice P 17.07. In this case, Fidelity's two claims collapse into the single contention that Cannon has no substantive state law cause of action for the unpaid attorney's fees.

The Court finds these cases inapposite to the question at issue here. Past cases dealing with the measure of damages to be imposed in cases where a contract to defend has been breached merely apply the well-established rule of contract law that damages for breach of contract may be measured by the cost of cover. In the context of the breach of a contract to provide legal representation this would normally be the cost of procuring alternative counsel and any additional court costs or attendant legal expenses. See Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959); King v. Automobile Underwriters, Inc., supra. These cases simply do not address the issue which Fidelity has raised here, viz., whether a portion of the legal cost should be excluded from the calculation of damages because, by the workings of an independent contract between the insured and his attorney, the insured would be excused from paying a portion of the legal costs to the extent the insured could not recover that portion from the insurer.

The Court can conceive of no principled reason for excluding such costs from the measure of damages in the present case. To adopt such a rule would have the effect of allowing Fidelity, the insurer, the alleged wrongdoer, to receive a windfall because of the independent efforts of Cannon, the insured, to limit its own liability for fees in the face of the insurer's breach of its duty to defend. To allow the insurer to take advantage of Cannon's efforts would amount to allowing a tort-feasor to seek to reduce his damages because the injured party carried insurance which compensated him for losses caused by the tort-feasor.

Thus, the Court finds the cases holding that the measure of damages in a case of personal injury should not be reduced by compensation received from a collateral source to be directly relevant to the issue at bar. See Yarrington v. Thornburg, 8 Storey 152, 205 A.2d 1 (Del.1964). It is clear that Cannon will receive no windfall if it recovers damages for unpaid attorney's fees. Cannon will be required to pay any damages it receives for attorney's fees under Count Five to Mr. Cummings for the legal services rendered.

Moreover, Cannon has a very real and personal stake in seeking attorney's fees. A portion of Cannon's claim for attorney's fees is for fees already paid by Cannon and will thus benefit Cannon alone. This personal stake in the claim assures that Cannon is a real party in interest which will pursue the claim with true adversary vigor.

Fidelity, however, contends that to permit Cannon to obtain damages for the unpaid attorney's fees will encourage post-litigation agreements whereby the attorney providing legal services will claim excessive fees and obtain a windfall at the insurer's expense. The Court finds this argument unconvincing. If Cannon and Mr. Cummings have inflated Mr. Cummings' bill, *676 Fidelity will certainly have the opportunity at trial to show that the hours and/or the hourly rates claimed are excessive. The Court notes that Cannon will have the burden of proving the amount of its damages to the jury to a reasonable certainty. Restatement, Contracts s 331; 5 Corbin, Contracts s 1020.[FN5]

> FN5. This requirement is particularly significant here, where Mr. Cummings' fee is not based upon contemporaneous records of hours spent and contemporaneous billings but, rather, is based upon Mr. Cummings' estimation of the time he spent and the rate that he would have charged. (D.I. 65, pp. 25-28.)

Contentions similar to those advanced by Fidelity here were considered and rejected by the California Supreme Court in Arenson v. National Automobile and Casualty Insurance Co., 48 Cal.2d 528, 310 P.2d 961 (1957). In that case, following the wrongful refusal of the insurance company to defend an action against the insured, the insured hired alternative counsel. The alternative counsel billed the insured regularly, but testified that he had never received full payment and that because of the impecunity of the insured he had never expected to receive full

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF   Document 562-9   Filed 03/09/2007   Page 9 of 13

519 F.Supp. 668
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

Page 8

payment from the insured. The California Supreme Court directly addressed the question of whether "the fact that plaintiff-insured may not have been financially able to employ counsel and make a defense in an action (and thus would never pay counsel his full fee), which defendant-insurer should have defended, (is) a ground for denying or limiting recovery against the insurer?" This Court finds that the conclusion of the California court set forth below is directly applicable to the present case:

> Here, the company agreed to defend any suit brought against Arenson in which damages for injury to property was alleged (see Arenson v. Nat. Automobile & Cas. Ins. Co. (1955), supra, 45 Cal.2d 81, 82, 286 P.2d 816). Having defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. It will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel, or to present every reasonable defense, or to carry his cause to the highest court having jurisdiction, and that therefore he should not have had, and will not be allowed compensation for, an attorney who filled the breach. Sustaining such a theory would not only tend to discourage busy attorneys from rendering adequate services for needy clients but would tend also to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose. If there be uncertainty as to the nature or extent of the services reasonably to be rendered by counsel engaged by the insured, that uncertainty must be resolved against defendant insurer. As declared in Speegle v. Board of Fire Underwriters (1946), 29 Cal.2d 34, 46(14), 172 P.2d 867, "(T)he wrongdoer shall bear the risk of the uncertainty which his own wrong has created." There is in the record before us no basis whatsoever for concluding that plaintiff is asking indemnification for services not rendered to him in good faith or for which he has not in good faith been billed, or that he seeks more than he reasonably expects to pay his attorney upon recoupment of that obligation from defendant. We hold that on the record before us plaintiff (insured) was warranted, so far as relates to the liability of defendant (insurer), in proceeding as he did in defense of the municipal court action, and that attorney's fees were properly incurred for all of the services which the evidence ... shows were performed by the attorney engaged by plaintiff.
> 310 P.2d at 968. Accord, Maryland Casualty Co. v. Willsey, 380 P.2d 254, 259 (Okl.1963).

The Court also finds that a line of cases involving the "loan receipt method" of settlement of claims by insurers is analogous to the present case. The "loan receipt" cases arise in situations where an insured *677 suffers a loss against which he is insured and for which he has a claim against a third party. In such cases, if the insurer were to pay the claim outright, the insured's claim against the third party would be subrogated and the insurer would have to appear in court in its own name to enforce that claim. In order to avoid that consequence, insurers have adopted the "loan receipt method" of settlement. Rather than paying the claim outright, an insurer will loan the insured the amount of his loss. The insured is required to repay the loan only in the event and to the extent that it recovers damages for the loss from a third party. Moreover, by the terms of the loans, the insured is required to initiate suit in its own name against the third party and the suit is required to be maintained "at the expense of and under the exclusive direction and control of" the insurer. White Hall Building Corp. v. Profexray Division of Litton Industries Inc., 387 F.Supp. 1202, 1203 (E.D.Pa.1974), aff'd without opinion, 578 F.2d 1375 (C.A.3, 1978) and 578 F.2d 1377 (C.A.3, 1978). Not surprisingly, in such cases the contentions have often been raised that because the insured has been fully compensated, it has suffered no loss and that the insurer, not the insured is the real party in interest. Such contentions have been soundly rejected under Federal law, Pennsylvania law, and Delaware law. The Plow City, 122 F.2d 816 (C.A.3, 1941), cert. denied, 315 U.S. 798, 62 S.Ct. 579, 86 L.Ed. 1199 (1942); White Hall Building Corp. v. Profexray Division of Litton Industries, Inc., supra; Watsontown Brick Co. v. Hercules Powder Co., 201 F.Supp. 343 (M.D.Pa.1962); Capo v. C-O Two Fire Equipment Co., 93 F.Supp. 4 (D.N.J.1950); Kerna v. Trucking, Inc., 3 F.R.D. 365 (W.D.Pa.1944); Steenburg v. Harry Braunstein, Inc., 6 Terry 588, 77 A.2d 206 (Del.Super.1950); Arabian American Oil Co. v. Kirby and Kirby, Inc., 171 Pa.Super. 23, 90 A.2d 410 (1952); see Annotation, Insurance: Validity and Effect of Loan Receipt or Agreement Between Insured and Insurer for a Loan Repayable to Extent of Insured's Recovery from Another, 13 ALR 3d 42; cf. Catalfano v. Higgins, 5 Storey 470, 188 A.2d 357 (Del.1962). In the present case, Mr. Cummings, like the insurers in the loan receipt cases, has loaned some of his legal services to Cannon and has required repayment only in the event and to the extent that Cannon the insured recovers a claim against a third party for the amount of the "loan." Moreover, Mr. Cummings, like the insurers in the loan receipt cases,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF    Document 562-9    Filed 03/09/2007    Page 10 of 13

519 F.Supp. 668                                                                                                        Page 9
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

has sought to protect his interests by assuring that a suit is brought and by maintaining a certain degree of control over the claim for the amount of his "loan" viz., he has provided that he has sole control over the amount that will be accepted in settlement for that portion of Cannon's claim against Fidelity. Thus, the loan receipt cases are directly analogous and the Court finds the conclusions reached in those cases to be equally applicable to the present case. Consequently, on the basis of the Arenson case, the loan receipt cases, and the collateral source cases, and because the Court can conceive of no reason to adopt Fidelity's contentions, the Court concludes that despite Cannon's arrangement with its attorney, Cannon has a cause of action for the unpaid attorney's fees sought in Count Five and consequently is a real party in interest for that claim.

C. Cannon's Third Motion for Summary Judgment

[3] Cannon has moved yet a third time for summary judgment and has stated four grounds in support of that motion. (D.I. 161.) Three of those grounds are merely a rehash of issues which the Court considered with respect to Cannon's first and second motions for summary judgment and the Court can see no reason to alter its previous conclusion that summary judgment is unwarranted.

Cannon has asserted one new ground in support of a motion for summary judgment with respect to its claims for compensation for what the Court has called "the repair claims" the claims which are the subject of Counts One and Two. See Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Co. of New York, 484 F.Supp. 1375 (D.Del.1980). Cannon contends that summary *678 judgment is warranted because there "is no evidence that defendant's interpretation (of the claimed work product exclusions to the insurance policy) was ever explained to plaintiffs (sic) as required by the Hionis case, and there is no evidence that the costs for which plaintiff was held liable did not involve liability within this coverage." Even assuming, arguendo, that there is no evidence in the record indicating that the relevant exclusions were explained to Cannon, there is evidence from which a jury might infer that Cannon and Fidelity were of relatively equal bargaining power. Cannon's size, the size of the insurance contracts, and the evidence that, in some cases, certain provisions were added or subtracted in typewriting all might lead a jury to conclude that the insurance contracts were the product of free bargaining. (D.I. 26, Exhibits N and O.) The Court, in its discussion of the applicability of the Hionis case, supra, concluded that Fidelity could meet its Hionis burden of proving the applicability of the claimed exclusions by showing equal bargaining power. Therefore, because there is evidence from which a jury might reasonably conclude that Fidelity had met its burden under the Hionis rule, the Court must conclude, again, that summary judgment is unwarranted.

D. Trial Issues

1. Sequestration of Witnesses

Fidelity has made a request, pursuant to Rule 615, F.R.Evid., that all witnesses be excluded from the courtroom during the trial of this case when they are not testifying. Rule 615 provides as follows:
> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

The rule is mandatory and requires that witnesses be excluded pursuant to a sequestration request. 10 Moore's Federal Practice s 615.02. The rule, however, does provide that three categories of witnesses must be excluded from the sequestration order.

Cannon, invoking exceptions (2) and (3), contends that these two exceptions are applicable to all five of its witnesses listed in its proposed Pre-Trial Stipulation and Order.

[4] First, Cannon contends that each of its witnesses falls within exception (3) because each has essential testimony or essential evidence. This alone is clearly not enough to satisfy Cannon's burden of showing that a witness's presence is essential to the presentation of its cause. See Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (C.A.3, 1977). Presumably, every witness has essential testimony or evidence. What must be shown is that a witness has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney could not effectively function without the presence and aid of the witness or that the witness would be unable to present essential testimony without hearing the trial testimony of other witnesses.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[5] Although the Court finds that Cannon's asserted ground is insufficient to meet its burden of showing the applicability of category (3), it finds from the record already before the Court that the presence of at least two of the witnesses on Cannon's proposed pre-trial order will be essential. First, in its argument, Cannon noted that one witness, Mr. Lank is an expert who will base his testimony and conclusions upon the evidence adduced at trial. (D.I. 159, p. 8.) On the basis of this representation, the Court concludes that Mr. Lank's presence is essential and he will be permitted to remain in the courtroom. 3 Weinstein's Evidence P 615(1) at 615-8; see Morvant v. Construction Aggregates Corp., 570 F.2d 626 (C.A.6), cert. denied, 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978). Moreover, on the basis of earlier submissions in this case, and in particular on the basis of the record upon *679 which this Court relied in ruling on Fidelity's motion to disqualify Mr. Cummings, the Court also concludes that Mr. Cummings' presence will be essential to Cannon's ability to prosecute its case effectively. The fact that Mr. Cummings acted as Cannon's attorney in its dealings with Fidelity and conducted the state court litigation which gives rise to the present action makes him the individual most familiar with all the complex factual details underlying this case and an individual without whose presence Cannon's attorney probably could not effectively represent his client at trial. Indeed, it appears that the Advisory Committee contemplated that exception (3) would apply to a person such as Mr. Cummings when it noted:

> (3) The category contemplates such persons as an agent who handled the transaction being litigated.

Advisory Committee's Note, Rule 615, F.R.Evid.; see 3 Louisell and Mueller, s 371 at 607 (1979). Thus, on the basis of the record before it, the Court concludes that Cannon has met its burden in showing that Mr. Cummings falls within exception (3). Cannon has not met its burden, however, with respect to any witnesses other than Mr. Lank and Mr. Cummings.

[6] Cannon also contends that the other three witnesses are its officers or employees and fall within exception (2). Exception (2) permits Cannon's attorney to designate an officer or employee to act as its representative who may be excluded from a sequestration order. However, the exception is clearly framed in the singular and the Court concludes, in the context of this case, that it does not permit counsel to designate more than one person to be present as a corporation's representative. Cf. United States v. Causey, 609 F.2d 777 (C.A.5, 1980). Consequently, Cannon's counsel must choose which witness he wishes to designate as the corporation's representative and the court will also exclude that witness from its sequestration order.

2. Fidelity's Proposed Subpoena of Mr. Cummings

[7] Fidelity asserts that it "will be requiring ... by subpoena duces tecum at trial" to obtain from Mr. Cummings information regarding Mr. Cummings' gross and net income and his charges for services during the years of the state court litigation. Fidelity further maintains that it "understands that Mr. Cummings objects to the production of these documents." Fidelity therefore requests "a ruling by the Court that Mr. Cummings' tax records for the years 1965 through 1979 may be produced and that billing statements for the years spanning the State Court litigation be produced so that the defendant, and the jury, may accurately assess the reasonable hourly rate for the plaintiff's attorney in the State Court litigation." No subpoena has yet been served and Mr. Cummings has not appeared and noted any objections. Instead, Cannon, by its brief, has objected to the production of such information on the grounds of attorney-client privilege and relevancy. While the Court does note that it sees no merit to the anticipated objections, it declines to rule on any objections that Mr. Cummings may raise because they are not properly before the Court. Rule 45(b), F.R.Civ.P., authorizes the issuance of subpoenae duces tecum and sets forth the procedures governing objections thereto. The rule clearly contemplates that a subpoena must first issue and then the person to whom it is directed may raise any objections to the subpoena by a motion to quash or modify. Although, in some unusual cases, the party seeking production may obtain an order disposing of anticipated objections to a subpoena directed to an opposing party before the subpoena is issued, United States v. International Business Machines Corp., 68 F.R.D. 613 (S.D.N.Y.1975), it would violate the dictates of due process to rule upon anticipated objections which may be raised by a third party before any subpoena has issued and before the third party has been given any opportunity to appear before the court and object. Therefore, the Court will not rule upon objections which Fidelity anticipates might be raised by Mr. Cummings until and if a subpoena is issued and Mr. Cummings makes the proper motion to *680 quash or modify the subpoena, as required by Rule 45(b), F.R.Civ.P.

[8][9] The Court, however, will treat the objections raised by Cannon in its brief as a motion to quash made by Cannon in its own name. Even if this

Case 1:04-cv-00343-JJF    Document 562-9    Filed 03/09/2007    Page 12 of 13

519 F.Supp. 668
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
(Cite as: 519 F.Supp. 668)

Page 11

motion were timely, which it is not, the Court would deny it. As a general matter, a party has no standing to seek to quash a subpoena directed to one who is not a party. Brown v. Braddick, 595 F.2d 961, 967 (C.A.5, 1979); Vogue Instrument Corp. v. Lem Instruments Corp., 41 F.R.D. 346 (S.D.N.Y.1967); Shepherd v. Castle, 20 F.R.D. 184, 188 (W.D.Mo.1957); 9 Wright & Miller, Federal Practice and Procedure s 2457. However, a party may raise objections in situations where the party claims some personal right or privilege relating to the documents sought. Norris Manufacturing Co. v. R. E. Darling Co., 29 F.R.D. 1 (D.Md.1961); 9 Wright & Miller, Federal Practice and Procedure s 2457; see Shepherd v. Castle, supra; Dart Industries, Inc. v. Liquid Nitrogen Processing Corp. of California, 50 F.R.D. 286 (D.Del.1970). Most of Cannon's objections are unrelated to any right of privilege held by Cannon and the Court holds that Cannon lacks standing to raise them. Cannon does, however, claim that Mr. Cummings ought not be required to disclose his billing statements on the ground of attorney-client privilege. Because the attorney-client privilege is a right belonging to the client, Cannon can raise objections to a subpoena seeking documents within the scope of Cannon's privilege. However, it is quite clear, that in the absence of special circumstances, which are clearly not present here, information relating to billing and payment of attorney's fees does not fall within the scope of the attorney-client privilege. United States v. Jeffers, 532 F.2d 1101, 1114-15 (C.A.7, 1976), aff'd in part and vac. in part on other grounds, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); United States v. Haddad, 527 F.2d 537 (C.A.6, 1975); In re Michaelson, 511 F.2d 882 (C.A.9), cert. denied, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); United States v. Hodgson, 492 F.2d 1175 (C.A.10, 1974); Colton v. United States, 306 F.2d 633 (C.A.2, 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). Thus, the Court concludes that Cannon's motion to quash Fidelity's proposed subpoena duces tecum directed at Mr. Cummings is without merit.

3. Applicability of the Exclusions to the Damages Determined in State Court Litigation

Finally, Fidelity has requested that the Court assume that the Hionis requirements have been met and determine the applicability of the "work product exclusions" to the costs of repairing the damages to the Dorr-Oliver plant which were caused by the failures of the linings initially applied by Cannon the costs which the state courts held that Cannon was liable to bear and the costs for which Cannon seeks reimbursement in Counts One and Two. Fidelity has framed its request in the following terms:

> Both parties contemplate duplicating the testimony in the Cannon v. Dorr-Oliver litigation to determine the extent of the failures. Further, I argue portions of the record in the State litigation will have to be introduced in this case. The testimony of the witnesses and the documentation will be necessary to establish what has already been established in the lengthy State case litigation. In the interest of judicial economy, defendant requests that the Court determine the scope, effect and applicability of the exclusion to the facts established in the State case litigation if it is satisfied that it is able to do so.

(D.I. 160, p. 6.) Fidelity notes that plaintiff's proposed Exhibit A-184 includes the following:
1. All pleadings in the underlying litigation;
2. Transcript of the liability trial';
3. Transcript of the damage trial;
4. Copies of all depositions;
5. Documents and exhibits in the underlying litigation;
6. Briefs and appendices of all parties;
7. Plaintiff's attorney's notes including trial notes and research papers;
*681 8. Plaintiff's attorney's correspondence.
(D.I. 160, Exhibit A.)

In fact, the Court has already ruled upon the applicability of the exclusions. In its previous opinion this Court stated:

> In the present case, the fact-finder will not have to determine whether or not Cannon's work can be divided into such separate constituent parts, since apparently all aspects of its work were defective. The state courts found that Cannon had been guilty of a multitude of sins both in the preparation of the surface of the tanks and in the application of the liners. Thus, any costs for preparing the surface (including removing any foreign material, such as old liner or rust), applying the liner, or supplying materials, for the purposes of repairing or replacing the defective paint liners would fall within the ambit of the exclusion. However, damages to the tanks themselves or damages to other parts of the plant or its operations would not fall within the exclusion.

484 F.Supp. at 1383. It is evident, from Fidelity's reference to "the extent of the failures," that the parties totally misunderstand this Court's prior ruling. The extent of the failures is simply irrelevant to this case because the state courts determined that all of Cannon's work was defective. Therefore, 100% of the work required to remove the old linings, reprepare

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

519 F.Supp. 668                                                                                                    Page 12
519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482
**(Cite as: 519 F.Supp. 668)**

the surface and reline the tanks are covered by the exclusion. Because much of the state court record concerned the percentage of Cannon's work which was defective and the reasons for the failures and because the state courts conclusively determined that the cause of the failures was the fact that Cannon's work was 100% defective, those determinations are binding against Cannon in this action and the portions of the state court transcript relating to those issues are not relevant to the question of the applicability of the exclusions. Because of the holdings of the state courts, this Court decided that most and possibly all of the coverage sought by Cannon for the costs of the repair and replacement of the tank linings fell within the ambit of the exclusions. However, the Court, in its prior ruling because of an unclear factual record, left open to Cannon the opportunity to prove that there might have been some damage to "other property" or some of the repair expenses related to repair or such other property. For example, if flakes of linings ruined a valve in the tanks the costs of repairing or replacing that valve would not fall within the policy's work product exclusions. Similarly, if a tank were so rusted as a result of the lining failure that it became necessary to weld and replace a part of such tanks, there would be damage to "other property" and the work product exclusions would not apply to any costs of replacing the damaged structural component.

The question of whether there was damage to "other property" was not an issue in the state courts, and this Court, at the time of its earlier opinion, found that it was unable to identify any such "other property." In any event, because of the state of the record then before the Court, it did not wish to foreclose Cannon's opportunity to prove that some of the repair expenses related to the repair of "other property." The Court still is unable to identify or rule out the existence of expenses related to the repair of "other property." However, the Court will require Cannon to make an offer of proof in the pretrial stipulation by setting forth therein with specificity what repairs it contends were made to "other property" and the evidence upon which it will rely to prove that issue.

An order will be entered in accordance with this Memorandum Opinion.

519 F.Supp. 668, 9 Fed. R. Evid. Serv. 482

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.