# CASE 5

**Westlaw.**

227 F.R.D. 435                                                                                          Page 1
227 F.R.D. 435
(Cite as: 227 F.R.D. 435)

C

**Motions, Pleadings and Filings**

United States District Court,
E.D. Virginia,
Norfolk Division.
SAFER DISPLAY TECHNOLOGY, LTD, Plaintiff,
v.
TATUNG COMPANY and Tatung Co. of America,
Inc., Defendants.
No. CIV.A. 2:04CV154.

Dec. 29, 2004.

**Background:** Owner of patent for method of displaying data on television screen sued competitor for infringement. Competitor moved for leave to withdraw its motion to dismiss.

**Holding:** The District Court, Doumar, J., held that defendant would not be allowed to withdraw its motion to dismiss for lack of personal jurisdiction, and thus pretermit jurisdictional discovery, while at same time asserting its continued belief that it was not subject to court's jurisdiction.
  Motion denied.


West Headnotes

**[1] Federal Civil Procedure** ⟵834
170Ak834 Most Cited Cases

**[1] Federal Civil Procedure** ⟵851
170Ak851 Most Cited Cases
Litigant should be denied leave to amend pleading only when amendment would be prejudicial to opposing party, there has been bad faith on part of moving party, or amendment would be futile. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[2] Patents** ⟵313
291k313 Most Cited Cases
Patent infringement defendant would not be allowed to withdraw its motion to dismiss for lack of personal jurisdiction, and thus pretermit jurisdictional discovery, while at same time asserting its continued belief that it was not subject to court's jurisdiction; tactic would allow defendant to reassert jurisdictional issue on appeal without sufficient factual record from which issue could be resolved. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**Patents** ⟵328(2)
291k328(2) Most Cited Cases
4,270,145. Cited.
*435 Deborah Judith Jeffrey, Zuckerman Spaeder LLP, Washington, DC, Douglas Scott Weinstein, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, Atlanta, GA, John Morgan Ryan, Vandeventer Black LLP, Norfolk, VA, Laura P. Masurovsky, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, Mark Wingate Foster, Zuckerman Spaeder LLP, Washington, DC, Richard Hooper Ottinger, Vandeventer Black LLP, Norfolk, VA, Roger D. Taylor, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, Atlanta, GA, for Plaintiff.

Kathryn Louise Clune, Greenberg & Traurig LLP, Mark Lee Hogge, Greenberg Traurig LLP, Washington, DC, Stephen Edward Noona, Kaufman & Canoles PC, Norfolk, VA, Mark Howard Krietzman, Greenberg Traurig LLP, Santa Monica, CA, for Defendants.

*MEMORANDUM OPINION AND ORDER*

DOUMAR, District Judge.

  The Stalingrad Defense, in which the proponent tries to wear down the adversary until he succumbs to the depths of a longsome, frigid winter, cannot be implemented without severe cost to the proponent himself. Indeed,
  [w]hile this hard-nosed approach to litigation may be viewed as effective trench warfare, it must be pointed out that such tactics have a significant downside. The defendants suffer the adverse effects of that downside here. There is a corollary to the duty to defend to the utmost--the duty to take care to resolve litigation on terms that are, overall, the most favorable to a lawyer's client. Although tension exists between the two duties, they apply concurrently. When attorneys blindly pursue the former, their chosen course of *436 action may sometimes prove to be at the expense of the latter.
Lipsett v. Blanco, 975 F.2d 934, 941 (1st Cir.1992).

  Now before the Court is Defendant Tatung Company's Motion for Leave to Withdraw its Motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

227 F.R.D. 435
227 F.R.D. 435
(Cite as: 227 F.R.D. 435)

Page 2

to Dismiss for Lack of Personal Jurisdiction, a Motion which clearly would not normally be necessary except for some reason *other* than the stated reason. For the reasons that follow, the Motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

On March 11, 2004, Plaintiff Safer Display Technology, Ltd. ("Safer Display") filed seventeen lawsuits against more than that many defendants alleging violations of United States Patent Number 4,270,145 (the " '145 patent"). The '145 patent is a patent for a "Television Set Which Displays Analog Data Relevant to the Operation of the Television Set on its Video Display." United States Patent No. 4,270,145 (May 26, 1981). Safer Display is represented by Laura P. Masurovsky of Finnegan, Henderson, Farabow, Garrett, & Dunner ("Finnegan Henderson") in Washington, DC, and locally by John Morgan Ryan of Vandeventer Black LLP in Norfolk, Virginia.

On October 12, 2004, because the allegations in all the complaints are substantially similar, the Court consolidated the matter into a single civil action. Order, Doc. No. 47. Among the consolidated defendants was Taiwan-based Defendant Tatung Company ("Tatung-Taiwan") and its subsidiary, California-based Tatung Company of America, Inc. ("Tatung-U.S."), collectively referred to as the "Tatung Defendants." The Tatung Defendants are represented by Mark Lee Hogge of Greenberg Traurig LLP in Washington, DC, and locally by Stephen Edward Noona of Kaufman & Canoles PC in Norfolk, Virginia. Due to the contentiousness of the litigation between Safer Display and the Tatung Defendants, which is described below, the Court severed the Tatung Defendants from the consolidated litigation on December 17, 2004. Order, Doc. No. 114.

### B. Procedural History of Tatung-Taiwan's Personal Jurisdiction Plea

Safer Display's complaint alleges that the Tatung Defendants "infringed, induced others to infringe, and/or committed acts of contributory infringement of ... the '145 patent by using, selling, importing, and/or offering for sale," in the United States, monitors with on-screen display features. Pl.'s Amended Compl. at ¶ 13-35, Doc. No. 103 (Nov. 30, 2004). On July 15, 2004, Tatung-Taiwan filed a Motion to Dismiss alleging that this Court lacked personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In support of its personal jurisdiction plea, Tatung-Taiwan argued that it does not transact business in the Commonwealth of Virginia and that, to the extent that any of the products it manufactures may be sold in Virginia, it does not control the sales or distribution of those products or derive any direct revenues from the sale of those products. Def.'s Br. in Supp. of Mot. to Dismiss at 5-6, Doc. No. 7 (July 15, 2004). A merits hearing on the Motion to Dismiss was conducted on August 25, 2004, at which time the Court ordered a 60- day period of jurisdictional discovery to determine whether Tatung-Taiwan has sufficient minimum contacts with Virginia for this Court to exercise personal jurisdiction consistent with the requirements of Virginia's Long Arm Statute and the Due Process Clause of the United States Constitution. *See* Order, Doc. No. 24 (Aug. 26, 2004). The central, though not exclusive, factual issue for determination in jurisdictional discovery is whether monitors with on-screen display features manufactured by Tatung-Taiwan were sold in the Commonwealth of Virginia at a level sufficient to warrant the exercise of personal jurisdiction within the time frame of January 1, 1998 to December 31, 1999. *See* Magistrate's Order, Doc. No. 60 (Oct. 29, 2004).

Four months have come and gone since this Court ordered commencement of a 60-day period of jurisdictional discovery. The 60-day period has been prolonged by an array discovery objections resulting in several hearings before United States Magistrate Judge James E. Bradberry, the magistrate judge assigned to the case. Based on the *437 parties' own representations and submissions to the Court, amicability and communication between counsel for the parties has deteriorated significantly, which has also prolonged the jurisdictional discovery period. *See* Memorandum Opinion and Order, Doc. No. 95 (Nov. 18, 2004) (documenting the deterioration in communication, admonishing the parties to resolve disputes that do not ordinarily necessitate a court's intervention, and advising the parties to take appropriate action to move this litigation ahead). Among the disputes prolonging jurisdictional discovery involved the scope of the '145 patent, the necessity of third-party discovery, and, most recently, depositions of certain representatives of Tatung-Taiwan. *See* Trs. of Magistrate Hrgs., Doc. Nos. 64 (Oct. 27, 2004), 98 (Nov. 16, 2004), 106 (Dec. 1, 2004); Tr. of Hrg., Doc. No. 94 (Nov. 16, 2004). Each of these disputes required intervention by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Magistrate Judge Bradberry. *See* Magistrate's Order, Doc. No. 60 (Oct. 29, 2004) (defining the scope of the '145 patent for purposes of jurisdictional discovery and establishing ground rules for third-party discovery); Doc. No. 105 (Dec. 2, 2004) (allowing for certain third-party depositions and specifically ordering that two employees of Tatung-Taiwan and one employee of Tatung-U.S. be deposed). The scheduling of depositions of certain Tatung-Taiwan and Tatung-U.S. employees appears to have been the most contentious of the issues. Pursuant to Magistrate Judge Bradberry's December 2, 2004 Order, the depositions of two Tatung-Taiwan employees, David Shun-Juh Chang and O. Shaih, and Tatung-U.S. employee Robin Sue, were scheduled to begin on December 14, 2004 at Finnegan Henderson's Palo Alto, California office. *See* Def.'s Mot. for Leave to Withdraw, Exhs. 6-7, Doc. No. 107 (Dec. 9, 2004). These depositions were never conducted.

### C. The Instant Motion for Leave to Withdraw the Personal Jurisdiction Plea

On December 9, 2004, five days prior to the jurisdictional depositions ordered by Magistrate Judge Bradberry, Tatung-Taiwan filed the instant Motion for Leave to Withdraw its Motion to Dismiss for Lack of Personal Jurisdiction. Doc. Nos. 107-08. The Motion contends that Safer Display "can still not make a *prima facie* showing of jurisdiction over [Tatung-Taiwan] in Virginia," Def.'s Mot. for Leave to Withdraw at ¶ 2, Doc. No. 107 (Dec. 9, 2004), but nonetheless requests leave to withdraw for the following reasons:

> The Court has indicated that the jurisdictional discovery will continue with no deadline. The Court also indicated that if the currently allowed depositions in California were not sufficient for Safer to prove jurisdiction, the Court would allow more depositions of Tatung Company's employees in Taiwan until there was enough evidence for Safer to prove jurisdiction.

*Id.* at ¶ 2; *see also* Mem. of Law in Support at 4, Doc. No. 108 (Dec. 9, 2004) ("The Court Has Indicated That The Jurisdictional Discovery Will Continue With No Deadline."). Additionally, Tatung-Taiwan insists that "[t]he amount of resources needed to complete the jurisdictional discovery clearly exceeds the resources needed to complete the case on the merits," *id.* at ¶ 3, and that, since co-Defendant Tatung Company of America, Inc. ("Tatung-America") was under obligation to file an answer in this matter by December 10, 2004, "there will [be] two discovery tracks for the two defendants despite the same accused products for both defendants." *Id.* at ¶ 4. Therefore, contends Tatung-Taiwan, "[s]ignificant resources of the court and the parties will be served if both defendants are on the same track." *Id.* at ¶ 4.

Tatung-Taiwan's Motion and Memorandum of Law in Support lacked any citations to the record or orders of this Court supporting the allegations leveled in Paragraph 2. Consequently, the Court ordered Tatung-Taiwan to file a submission containing page- and line-specific citations to transcripts in the record and Court orders so that its Motion for Leave to Withdraw could be fully considered and properly resolved. The required submission was presented to the Court on December 10, 2004. Furthermore, prior to this Court granting it leave to withdraw its personal jurisdiction plea, Tatung-Taiwan appears to have cancelled the jurisdictional discovery depositions scheduled for December **438** 14, 2004 in Palo Alto. *See* Def.'s Mot. for Leave to Withdraw, Exh. 7, Doc. No. 107 (Dec. 9, 2004).

On December 10, 2004, the same day it filed the Court-ordered submission providing support for its Motion for Leave to Withdraw, Tatung-Taiwan filed an Answer to the Amended Complaint, Counterclaims and Jury Demand (Doc. No. 110) along with Tatung-U.S. Therein, Tatung-Taiwan explicitly submitted to the personal jurisdiction of this Court: "For purposes of this action only, Tatung submits itself to the jurisdiction of this Court." This directly contradicts the instant Motion, however, where Tatung-Taiwan asserts that "[a]fter four months of written discovery ... Plaintiff can still not make a *prima facie* showing of jurisdiction over [Tatung-Taiwan] in Virginia." Def.'s Mot. for Leave to Withdraw at ¶ 1, Doc. No. 107 (Dec. 9, 2004). The Answer also contradicts a statement in an e-mail sent to Safer Display's attorney Laura Masurovsky by Tatung-Taiwan's attorney Kathryn L. Clune, an associate of Mark Hogge at Greenberg Traurig, which Tatung-Taiwan attached as an exhibit to the instant Motion, where it was asserted that "Tatung does not agree that there is jurisdiction in Virginia. It only made a business decision to withdraw its motion in order to better spend its resources." *Id.* Exh. 5. The discrepancy between Tatung-Taiwan's Answer and the instant Motion led this Court to schedule a merits hearing on December 29, 2004. Order at 5, Doc. No. 114 (Dec. 17, 2004).

Safer Display filed a response to the instant Motion on December 14, 2004. Although Safer Display does not object to Tatung-Taiwan's attempt to withdraw its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

jurisdictional challenge, it alleges that Tatung-Taiwan's actions in the course of jurisdictional discovery cost the Court, Safer Display, and several third-parties unnecessary time and expense. *See* Response to Def.'s Mot. to Withdraw Jurisdictional Plea at 1-2, Doc. No. 112 (Dec. 14, 2004). It also argued that Tatung-Taiwan's jurisdictional challenge was ill-fated at the outset and that the instant Motion amounted to an attempt to avoid sanctions for pursuing a frivolous defense. Specifically, Safer Display argues that:

> Tatung, possibly in [an] effort to avoid the imposition of sanctions, has conceded jurisdiction while at the same time it blames the plaintiff for its own delays. Such conduct should not be rewarded by simply passing on to the merits. A clear inference can be drawn that by their concession on the jurisdictional issue Tatung knows and has known since the beginning, that the court has jurisdiction over the matters raised in plaintiff's Complaint. Such an inference is warranted as well by the fact that [Tatung-Taiwan's] co-defendants, engaged in the same business, have not raised similar jurisdictional objections.

*Id.* at 2-3. Accordingly, Safer Display informed the Court that it intended to seek sanctions and reimbursement for legal fees incurred as a result of Tatung-Taiwan's personal jurisdiction defense. *Id.* at 3. Safer Display filed papers to that effect on December 23, 2004. *See* Pl.'s Req. for Sanctions, Doc. No. 116. On December 28, 2004, Tatung-Taiwan filed a response to Safer Display's request for sanctions and fees, in which it reiterated its objection to the Court's personal jurisdiction, stating that it "has never conceded or 'known' that this Court has jurisdiction over it. [Tatung-Taiwan] has always denied that the court had jurisdiction over it." Def.'s Opp. to Pl's. Req. for Sanctions at 7, Doc. No. 118. Thus, as late as the day before the merits hearing, Tatung-Taiwan was contending that there was no personal jurisdiction over it.

On December 28, 2004, the Court conducted a merits hearing on the instant Motion. The instant Motion is now ripe for judicial resolution.

## II. ANALYSIS

### A. Standard of Review

[1] Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Consequently, a litigant should be denied leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999) (quoting **\*439** *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986)). There is no analogue in the Federal Rules of Civil Procedure for motions for leave to withdraw a personal jurisdiction plea, as it would clearly be unnecessary if one were willing to voluntarily submit to personal jurisdiction. However, as a motion for leave to withdraw a jurisdictional plea was filed, the Court will consider it as tantamount to amending an initial pleading and apply the same standard.

### B. Discussion

As explained in the recitation of the facts above, Tatung-Taiwan explicitly submitted to this Court's personal jurisdiction in its Answer to the Amended Complaint. *See* Def.'s Ans., Doc. No. 110 (Dec. 10, 2004) ("For purposes of this action only, Tatung submits itself to the jurisdiction of this Court." [FN1]); *see also Foster v. Arletty 3 Sarl,* 278 F.3d 409, 413 (4th Cir.2002) ("[A] defendant may consent to a court's exercise of jurisdiction either implicitly or *explicitly.*") (emphasis added). However, Tatung-Taiwan's consent to the Court's personal jurisdiction, though explicit, nonetheless appears to come under protest and not be a voluntary submission. First, in the instant Motion Tatung-Taiwan alleges that Safer Display has no proof of personal jurisdiction and blames the Court for conceding to personal jurisdiction because "[t]he Court has indicated that the jurisdictional discovery will continue with no deadline." Def.'s Mot. for Leave to Withdraw at ¶¶ 1-2, Doc. No. 107 (Dec. 9, 2004). Second, in correspondence with counsel for Safer Display that was attached to the instant Motion, counsel for Tatung-Taiwan made clear that it does not believe that this Court has personal jurisdiction: "Tatung does not agree that there is jurisdiction in Virginia. It only made a business decision to withdraw its motion in order to better spend its resources.... Tatung absolutely has the right to fight jurisdiction ..." *Id.* Exh. 5. Finally, as late as December 28, 2004, the day before the merits hearing on the instant Motion, Tatung-Taiwan filed papers before the Court in which it reiterated its position that this Court lacks personal jurisdiction: "[Tatung-Taiwan] has never conceded or 'known' that this Court has jurisdiction over it. [Tatung-Taiwan] has always denied that the court had jurisdiction over it." Def.'s Opp. to Pl's. Req. for Sanctions at 7, Doc. No. 118.

FN1. Notably, Tatung-Taiwan omitted the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

word "personal" from paragraph 7 of its Answer. However, paragraph 7 of Tatung-Taiwan's Answer corresponds to paragraph 7 of Safer Display's Amended Complaint, Doc. 103 (Nov. 30, 2004), where it alleges that the Court possesses personal jurisdiction over Tatung-Taiwan.

Accordingly, Tatung-Taiwan does not appear to have *voluntarily waived* personal jurisdiction. Had Tatung-Taiwan intended to waive personal jurisdiction voluntarily, it could have done so by answering the complaint and seeking leave to withdraw its personal jurisdiction plea without attempting to affix blame on the Court for allowing jurisdictional discovery to continue indefinitely and indicating that it was forced to waive personal jurisdiction. This begs the question of what end the instant Motion is intended to serve. One possibility is that Tatung-Taiwan desired to go forward on the merits while preserving its exception to the Court's personal jurisdiction for a later stage in the litigation. This may be an acceptable tactic since, under some circumstances, particularly in complex cases such as this one, courts may hold decisions on Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction in abeyance and afford an opportunity for jurisdictional discovery. 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1351, at 307-08 n. 34 (3d ed.2004). Indeed, that is precisely what this Court did by ordering a 60-day period of jurisdictional discovery to ascertain to what extent, if any, Tatung-Taiwan has contact with the forum state. *See* Order, Doc. No. 24 (Aug. 26, 2004). In some cases, it may even be appropriate for courts to postpone resolution of a personal jurisdiction objection until completion of a trial on the merits of the suit, or even to allow a jury to make the determination in fact-intensive cases. *Id.* § 1351, at 308-09 n. 36-38. Consequently, perhaps Tatung-Taiwan's intent was to preserve its objection while going forward on the merits. If that was Tatung-Taiwan's intent, however, it should have so stated in the present Motion.

**\*440** Instead, Tatung-Taiwan filed a motion seeking leave to *withdraw*-not *preserve*-its personal jurisdiction plea on the grounds that this Court "has indicated that jurisdictional discovery will continue with no deadline" and will be extended "until there [is] enough evidence for Safer [Display] to prove jurisdiction." Tatung-Taiwan's Mot. at ¶ 2, Doc. 107 (Dec. 9, 2004). In other words, Tatung-Taiwan's grounds for seeking leave to withdraw the instant Motion is that the Court has compelled it to press ahead on the merits and forego its personal jurisdiction defense. In support of that assertion, pursuant to this Court's Order of December 10, 2004, Doc. No. 109, commanding it to supply specific citations to the record supporting its claim, Tatung-Taiwan relies on excerpts of a hearing before Magistrate Judge Bradberry on December 1, 2004 concerning jurisdictional discovery depositions. However, nowhere does Magistrate Judge Bradberry state that jurisdictional discovery will proceed without a deadline or that it will go on indefinitely until personal jurisdiction is established.

In any event though, that is neither here nor there. Even if Magistrate Judge Bradberry had stated that jurisdictional discovery would continue indefinitely, or if Tatung-Taiwan felt as if his jurisdictional discovery orders were in error, it could have exercised its right to request that the United States District Judge review the Magistrate's order. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). Tatung-Taiwan did not do so. For Tatung-Taiwan to turn around now and allege that this Court "has indicated that the jurisdictional discovery will continue with no deadline," without having aired its grievance by way of appealing Magistrate Judge Bradberry's jurisdictional discovery orders, is outright disingenuous.

This Court made it absolutely clear at the November 16, 2004 merits hearing on Tatung-America's Motion for Summary Judgment, in which Magistrate Judge Bradberry participated, that the jurisdictional issue must be resolved in a timely fashion and issued a general warning to both parties that the use of excessive tactics intended to waste time and resources, such as demanding unnecessary depositions, would result in sanctions:

> If it's your client that's causing a problem, you'd better educate your clients and tell them, this is costing money. Because I'm guaranteeing you, neither Judge Bradberry nor myself are going to tolerate it. *And if I feel it's excessive, I will issue sanctions.* And not against your clients. So I want to make that abundantly clear. I'm not known for anything--as they say, I'm the irascible judge. So just understand that. I am not going to tolerate what I consider petty bickering.

Tr. of Hrg. at 18-19, Doc. No. 94 (emphasis added). Additionally, the Court also warned the *Plaintiff* that the Court would not tolerate a fishing expedition at any stage of the litigation, emphasizing that "[t]he

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

227 F.R.D. 435  
227 F.R.D. 435  
(Cite as: 227 F.R.D. 435)

Page 6

defendant is entitled to know what it is you're suing for.... They are entitled to know. And how they have supposedly violated your rights, if you have any rights." *Id.* at 21.

Following these general admonishments, the Court invited the parties to bring forward any additional items for discussion not related to the summary judgment motion. Per this invitation, Mark Hogge, counsel for Tatung-Taiwan, raised concerns about the extent and scope of jurisdictional discovery, which resulted in the following colloquy, where the Court makes clear that jurisdictional discovery would have absolute limits:

> MR. HOGGE: Exactly. Now there is ongoing personal jurisdiction issues, and there are some 27 depositions that are out there that have been noticed.
> THE COURT: *On jurisdiction?*
> MR. HOGGE: That have been noticed by the plaintiff. And I think it might be up to 30 at this point. On jurisdiction. And it was based upon a statement in your transcript that discovery shall be extensive. And we have been forced to--
> THE COURT: Well, I'm not going to allow 27 things. John, why do you need 27?

*Id.* at 23 (emphasis added). In fact, the Court was incredulous at the notion of such *441 extensive jurisdictional discovery and made clear that it would not be permitted, emphasizing that it was strictly limited to matters relevant to personal jurisdiction.

> MR. RYAN: Your Honor, that's a misrepresentation of the facts. You said at the time we were before you that the discovery will proceed on both product and jurisdiction. Product is an enormous area, and we are proceeding towards the Markman hearing by taking depositions on the issue of product.
> * * *
> MR. HOGGE: What's going on here, Your Honor, is that they have, they have demanded to do merits discovery on the, on the basis of your transcript where you never authorized merits discovery without even a decent set of pleadings.
> THE COURT: I didn't think I was authorizing merits discovery on the question--
> MR. HOGGE: They have said that to Judge Bradberry. They have said that, we've got records showing that, Your Honor. And they're not entitled to ---
> THE COURT: I don't remember--what I was interested in initially was the question of jurisdiction. You were entitled to take--if I said product I shouldn't have, because--and I've made mistakes before. But the question really, first to solve, was is the defendant sufficiently within the State of Virginia to merit jurisdiction in this court.
> MR. RYAN: I'm reading from Page 32 of the transcript. "Here is what I'm going to do, Mr. Noona. I'm going to allow him to take discovery of both product and of sales in Virginia. After that, we'll come back in relation to the motion to dismiss."
> You're Honor, that's our marching orders. I believe that it's moving us towards--
> THE COURT: The way you took that out--what I was trying to get to was the product that was being sold in Virginia and not the question of the validity of any patent.
> * * *
> THE COURT: *I'm going to cancel any deposition other than that which relates to the sale of the product in Virginia or to the distribution of some product in Virginia which violates or allegedly violates the patent, or some product in Virginia which they get substantial revenue from or obtain substantial revenue in.*

*Id.* at 23, 25-26, 27 (emphasis added); *see also id.* at 33 (THE COURT: "What I want to do is get depositions concerned with jurisdiction."), 35 (THE COURT: "Well, we don't want the merits discovery, we want the discovery on jurisdiction. And that's what I'm interested in.").

The specific issue of a deadline for discovery was not addressed at the November 16, 2004 hearing. However, there was no reason for it to be--this Court had already imposed a 60-day limit on the length of jurisdictional discovery. *See* Order, Doc. No. 24 (Aug. 26, 2004). Indeed, at the original August 25, 2004 merits hearing on Tatung-Taiwan's Motion to Dismiss for lack of personal jurisdiction, the Court made the time interval crystal clear:

> THE COURT: You've got 60 days. Okay. Sixty days to *complete* the discovery in relation to jurisdiction in this matter.
> MR. RYAN: To file--to serve it rather, to serve within 60 days?
> THE COURT: Not to serve within 60 days, Mr. Ryan. You have 60 days to get your discovery. That means you'd have to file your interrogatories within 30 days of today's date in order to complete it. *I just don't want this thing to hang on forever.*
> MR. RYAN: Your Honor, it's very likely, I bet, and I'm not a patent lawyer obviously, that there is going to be some objections to the interrogatories and we're going to be back up here.
> THE COURT: *Well, I assure you that if there are objections to the interrogatories, okay, that for every objection *442 to the interrogatory I will*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*increase your time sufficient to do it.* We're not going to get into a situation where this becomes a game of Chess. I'm interested in getting to the facts. And If I think that all we're doing is engaging in the Stalingrad defense, I'm not a great believer in it. Just thought I'd tell Mr. Hogge that I'm not a great believer in the Stalingrad defense.

Tr. of Hrg. at 39-40, Doc. No. 25 (emphasis added). Both parties have been on notice from the outset of jurisdictional discovery that it would be limited in extent, scope, and time. Unfortunately, despite this Court's admonishment to the contrary, jurisdictional discovery has become a game of Chess. However, it is a Chess match in which Tatung-Taiwan has willingly and vigorously engaged. For Tatung-Taiwan to now contend that *the Court* has called Checkmate is either insincere or guileful, or both, since the duration of jurisdictional discovery has to do in large part with its own objections.

This is what is so troubling about Tatung-Taiwan's latest tactic. The instant Motion appears to be a backhanded attempt to make it seem as if this Court left Tatung-Taiwan with no choice but to scuttle its personal jurisdiction defense so that it can escape jurisdictional depositions and, if it comes to an appeal, reassert the defense at that point--a point in the litigation when Safer Display would be unable to prove personal jurisdiction with certainty because jurisdictional discovery would have ceased before the issue was resolved with certitude. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir.1998) (holding that "participating in the litigation on the merits" does not result in a waiver of personal jurisdiction when the participation comes "*at the direction of the district judge after having raised the defense in a timely fashion*") (emphasis added). Indeed, as explained above, in the instant Motion and in correspondence with counsel for Safer Display that was attached to the instant Motion, counsel for Tatung-Taiwan made clear that it does not believe that this Court has personal jurisdiction and that it has a right to assert a personal jurisdiction plea to the fullest. Def.'s Mot. for Leave to Withdraw at ¶ 1 and Exh. 5, Doc. No. 107 (Dec. 9, 2004). Thus, what Tatung-Taiwan seems to be arguing is that it seeks leave to withdraw its personal jurisdiction plea "at the direction of the district judge after having raised the defense in a timely fashion." *IDS Life,* 136 F.3d at 540. That is, without qualification, absolutely wrong. As demonstrated by the citations to the hearing transcripts, *supra,* this Court has not directed Tatung-Taiwan to participate in litigation on the merits of the present case. To the contrary, this Court has made clear that jurisdictional discovery is limited to the issue of jurisdiction. Tr. of Hrg. at 27, Doc. No. 94 (Nov. 16, 2004).

[2] This Court will not tolerate dilatory, underhanded tactics, which the present one reeks of. Either Tatung-Taiwan intends to waive personal jurisdiction, which means that the defense is forever lost, or it does not. If personal jurisdiction is waived altogether this case can go forward on the merits. However, if personal jurisdiction is preserved, which is what Tatung-Taiwan appears to really desire, then, the jurisdictional discovery depositions originally scheduled for December 14, 2004 must go forward. This Court will not allow a situation to occur where jurisdictional discovery is short-circuited, the merits are fully litigated, and the defense is later reasserted on appeal without a sufficient factual record from which the issue can be resolved. Allowing such a chain of events to unfold would waste precious judicial resources and result in a miscarriage of justice.

### III. CONCLUSION AND ORDER

Accordingly, since going forward without certitude as to the status of Tatung-Taiwan's personal jurisdiction defense could ultimately prejudice Safer Display and waste judicial resources, and particularly given the contentious procedural history and the wranglings that have occurred between the parties, the instant Motion for Leave to Withdraw Its Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**. Furthermore, the Court **ORDERS, DIRECTS**, and **ADVISES** the following:

1. The parties are **ORDERED** to re-schedule and complete the jurisdictional discovery depositions of Tatung-Taiwan **\*443** employees, David Shun-Juh Chang and O. Shaih, and Tatung-U.S. employee Robin Sue, which were originally scheduled to begin on December 14, 2004 in Palo Alto, California. These depositions must be *completed* no later than Friday, January 14, 2005. The parties must inform the Court, via facsimile, of the date, time, and location of the depositions when they are scheduled. The parties must also certify to the Court, via facsimile, that the depositions have been completed by 5:00 p.m. Eastern Standard Time on Friday, January 14, 2005.
2. Unless otherwise directed by this Court, there will be no further hearings before the Magistrate Judge assigned to this case. The Court **ORDERS** the parties to direct any disagreements, objections, motions or other concerns with regard to jurisdictional discovery, or any other pretrial matter, from this point forward until closure of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

case, to this Court and *this* Judge. The Court is amenable to conducting hearings via teleconference with a court reporter with adequate notice.

3. With regard to the jurisdictional discovery depositions in particular, the Court **ORDERS** the parties to have a speaker phone available at the depositions so that any disputes that occur during the course of the depositions can be resolved immediately. The Court may hold witnesses, their attorneys, or the companies they represent in contempt for failing to answer questions where the Court overrules an objection.

4. The Court **ORDERS** Tatung-Taiwan to pay the reasonable expenses, legal and otherwise, of the jurisdictional discovery depositions ordered herein. The Court will reconsider this command should Safer Display fail to prove personal jurisdiction in this case, or should other circumstances arise indicating that the costs should be allocated otherwise.

5. Both parties are **ORDERED** to provide copies of all subpoenas issued in this matter, including copies of the appended certificates of service, no later than Thursday, January 6, 2005 at 3:00 p.m. Eastern Standard Time. The parties are **ORDERED** to specify any subpoenas that have not been strictly adhered to and complied with. The court will issue show cause orders as it may deem appropriate. Show cause hearings will be scheduled for Tuesday-Wednesday, February 8-9, 2005, the same dates that the merits hearing on Tatung-Taiwan's personal jurisdiction plea is scheduled. *See infra* Part 6(d). Even if the merits hearing on Tatung-Taiwan's personal jurisdiction plea is cancelled, should show cause orders be issued the parties will appear for said show cause orders which are returnable on said date.

6. The Court **ORDERS** the parties to comply with, and **DIRECTS** the Clerk of this Court to monitor, the following briefing and hearing schedule for completion of jurisdictional discovery:

a. Safer Display is **ORDERED** to file a memorandum of law in support of personal jurisdiction no later than Friday, January 21, 2005 at 12:00 p.m. (Noon) Eastern Standard Time.

b. Tatung-Taiwan is **ORDERED** to file any memoranda in opposition to the exercise of personal jurisdiction no later than Friday, January 28, 2005 at 12:00 p.m. (Noon) Eastern Standard Time.

c. Safer Display is **ORDERED** to file any reply memoranda to Tatung-Taiwan's opposition no later than Wednesday, February 2, 2005 at 12:00 p.m. (Noon) Eastern Standard Time.

d. Both parties are **ORDERED** to appear at a hearing on the merits of the personal jurisdiction plea on Tuesday, February 8, 2005 at 10:00 a.m. If necessary, the hearing will continue at 10:00 a.m. on Wednesday, February 9, 2005. The hearing will be completed by the close of business on Wednesday, February 9, 2005. Should show cause orders be issued, *see supra* Part 5, the parties will appear for said show cause orders which are returnable on said date.

*444 e. Safer Display is **ORDERED** to provide a list of witnesses that may be called at the personal jurisdiction merits hearing to the Court and Tatung-Taiwan by Wednesday, February 2, 2005 at 12:00 p.m. (Noon) Eastern Standard Time via facsimile.

f. Tatung-Taiwan is **ORDERED** to provide a list of witnesses that may be called at the personal jurisdiction merits hearing to the Court and Safer Display no later than Thursday, February 3, 2005 at 12:00 p.m. (Noon) Eastern Standard Time via facsimile.

g. The Court is amenable to hearing witnesses at the personal jurisdiction merits hearing via teleconference. If the parties so desire a witness to appear via teleconference, they are **ORDERED** to show cause in a formal presentment to the Court no later than Thursday, February 3, 2005 at 12:00 p.m. (Noon) Eastern Standard Time. The Court will rule on requests to appear via teleconference by Friday, February 4, 2005 at 12:00 p.m. (Noon) Eastern Standard Time.

7. Tatung-Taiwan's December 10, 2004 Answer to the Amended Complaint, Counterclaims and Jury Demand (Doc. No. 110), is hereby held in **ABEYANCE** until the personal jurisdiction issue is resolved. All merits discovery concerning Tatung-U.S. and Tatung-Taiwan is hereby **ORDERED** ceased until resolution of the personal jurisdiction issue.

8. The Court **RESERVES** resolution of Safer Display's request that Tatung-Taiwan be sanctioned and ordered to pay legal fees and other expenses associated with jurisdictional discovery until the conclusion of this case.

9. Tatung-Taiwan is **GRANTED** leave to *explicitly and voluntarily waive* personal jurisdiction by presenting papers to that effect to this Court no later than Wednesday, January 5, 2005 at 12:00 p.m. (Noon) Eastern Standard Time. The waiver, if done, must state that Tatung-Taiwan waives personal jurisdiction voluntarily and understands that doing so will result in the defense being permanently forfeited. If Tatung-Taiwan explicitly and voluntarily waives personal jurisdiction, the Court will enter an order vacating parts 1, 3, 4, 6,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and 7 of this Order. The Court will also enter a scheduling order pursuant to Federal Rule of Civil Procedure 16(b) at that time.

10. Finally, for all filings in this matter from this point forward, the Court **ORDERS** an attorney from each of the law firms representing the party presenting the filing to the Court to sign the submission, certifying to its accuracy. The Court further **ORDERS** that an attorney from each of the law firms representing the parties be present at all hearings in this matter from this point forward.

Winters in Stalingrad may be long and frigid, but they do not last forever.

The Clerk of the Court is **DIRECTED** to transmit a copy of this Order to all counsel of record via facsimile and United States Mail, and to forward a copy to the chambers of United States Magistrate Judge James E. Bradberry.

**IT IS SO ORDERED.**

227 F.R.D. 435

### Motions, Pleadings and Filings (Back to top)

• 2004 WL 3621844 (Trial Pleading) Amended Complaint for Patent Infringement and Demand for Jury Trial (Nov. 30, 2004)Original Image of this Document (PDF)

• 2:04CV00154 (Docket) (Mar. 11, 2004)

END OF DOCUMENT