# EXHIBIT 8

## In The Matter Of:

*LG Philips LCD, Company, LTD.  v.
Tatung Company, et al.*

*Hearing
January 24, 2005*

*Hawkins Reporting Service
715 N. King Street, Suite 3
Wilmington, DE  19801
(302) 658-6697*

*Original File 012405~1.TXT, 66 Pages
Min-U-Script® File ID: 4107502328*

## Word Index included with this Min-U-Script®


Page 21

[1] not something new that Mr. Goddess got done over [2] the weekend.

[3] **MR. GODDESS:** Absolutely not.

[4] **THE COURT:** So we're dealing with [5] what you had seen before. But we're going to put [6] it February 22nd is the extent of its validity.

[7] **MR. CHRISTENSON:** And, Your Honor, [8] we can then revisit that issue going forward, and [9] we won't be prejudiced?

[10] **THE COURT:** Once we decide if [11] they're in, —

[12] **MR. CHRISTENSON:** Yes, sir.

[13] **THE COURT:** — then all these issues [14] that Judge Jordan had become ripe in this case, [15] and then we'll talk about it.

[16] **MR. CHRISTENSON:** What about with [17] respect —

[18] **THE COURT:** So we can fight over the [19] protective order at that point that will be in [20] place going forward on fact discovery.

[21] **MR. CHRISTENSON:** All right. And am [22] I correct to understand, Your Honor, this [23] protective order will apply just to the [24] jurisdictional discovery related to the Tatung

Page 22

[1] Company and not the Viewsonic Corporation, —

[2] **THE COURT:** Well, which —

[3] **MR. CHRISTENSON:** — which is [4] different?

[5] **THE COURT:** For now, the only person [6] that you talked about that got me here this [7] morning was them. So...

[8] **MR. CHRISTENSON:** Very well.

[9] **THE COURT:** And that would be the [10] answer.

[11] **MR. CHRISTENSON:** Thank you, sir.

[12] **THE COURT:** Unless I'm — did I [13] misunderstand, Mr. Kirk, when I read your papers, [14] or Mr. Goddess?

[15] **MR. GODDESS:** No, Your Honor. It [16] relates only to the Tatung.

[17] **THE COURT:** So protective order is [18] done. Now, and, you know, again, I understand [19] that, you know, the papers are coming in fast and [20] furious, but essentially what they say is you're [21] trying to get — you're trying to inch into [22] something more than jurisdictional discovery by [23] the topics you noticed in your 30(b)6.

[24] So tell me about that.

Page 23

[1] **MR. CHRISTENSON:** Your Honor, I'd be [2] glad to, and I appreciate the opportunity to do [3] so.

[4] The deposition notice, which the [5] Court may have reviewed, specifically goes [6] through, and instead of using three or four [7] catchall categories that were very generic and [8] broad, tried to use specific areas of [9] jurisdictional fact, and separate those into 20 [10] categories.

[11] And they essentially fall under two [12] general categories, either specific — the [13] specific type of contacts, Your Honor, that are [14] reflected and address Mr. Chen's declaration and [15] Mr. Tsou's declaration that Tatung Company of [16] America filed in this case.

[17] That's the first area. The second [18] general area of topics, that relates to [19] distribution channel discovery, so we can [20] understand where the distribution channel starts [21] and how the products ultimately arrive in [22] Delaware.

[23] Because, of course, there's a long [24] line of cases in the Federal Circuit and this

Page 24

[1] case that says if you distribute products that [2] infringe into Delaware through a purposeful [3] distribution channel, that subjects the defendant [4] to jurisdiction in this Court.

[5] So we need to connect the dots, Your [6] Honor, from the time of manufacture to the time [7] that Tatung Company presumably sent their product [8] to Tatung Company of America in California. [9] Tatung America then sends it to a distributor, or [10] the distributor perhaps gives it to a reseller. [11] And it's in a sales store in Delaware.

[12] We've confirmed sales at a Best Buy [13] store, for example, in Wilmington. We've [14] confirmed sales from a direct shipment where [15] Tatung Company of America sent the product to a [16] Delaware customer.

[17] So we know the products get to [18] Delaware through distributors and retailers, but [19] we need to understand the network and how that [20] occurs. Because the declarations only address [21] the first area of we don't have offices in [22] Delaware. We don't have operations. We don't [23] have employees.

[24] And what they're really saying is we

Page 25

[1] don't have a direct physical presence in [2] Delaware. We don't have direct sales in [3] Delaware.

[4] And, of course, that's not the [5] question. The question is whether they're [6] subjected to discovery based upon the products, [7] which is the distribution channel.

[8] We need that discovery. The initial [9] notice was just a notice of Tatung Company of [10] America under Rule 30(b)6.

[11] That was the deposition notice that [12] was on December 2nd. I served that notice on [13] December 10th.

[14] I served a notice individually for [15] Mr. Chen and a deposition notice for Mr. Tsou, [16] again, the two people who submitted declarations [17] saying there are no offices or operations in [18] Delaware, and went through a litany of generic [19] contacts and non-events in Delaware.

[20] So I set them individually for [21] deposition.

[22] Those depositions — the first [23] deposition didn't go forward because Tatung [24] Company of America, on the eve of the deposition

Page 26

[1] unilaterally decided it was "stayed" and refused [2] to appear. So I renoticed that deposition to [3] coincide with the two individual depositions.

[4] So what was supposed to happen was [5] last week, Your Honor, after they first failed to [6] appear on December 22nd, last week I had the [7] deposition notice for Mr. Chen on January 18th. [8] And I had a deposition noticed for Mr. Tsou on [9] January 19th.

[10] And I had renoticed the 30(b)6 [11] deposition for January 20th, last week. And I [12] agreed to do all these depositions at Tatung [13] America headquarters in Long Beach at their [14] request.

[15] Also, Your Honor, on December 6th, I [16] had sent a letter to Mr. Weems. I submitted that [17] to the Court earlier in December with some [18] letters, and I have another copy here if the [19] Court would like to see it.

[20] But in that letter — may I provide [21] it to the Court, Your Honor?

[22] **THE COURT:** Sure.

[23] **MR. CHRISTENSON:** Thank you.

[24] Mr. Goddess, would you like a copy?

Page 27

[1] **MR. GODDESS:** Sure. Thank you.

[2] **MR. CHRISTENSON:** Your Honor, this [3] is just one of many letters exchanged between [4] counsel. But I wanted to provide this to the [5] Court, because it shows that on Page 2, Your [6] Honor, I specifically went through and made an [7] attempt to facilitate the deposition.

[8] And without narrowing the scope of [9] the deposition, the focus is likely to include [10] the following. And I set forth, specifically as [11] I could, the types of things that I was going to [12] focus on at this deposition.

[13] And I think Your Honor will see that [14] they're all specifically things that are

Case 1:04-cv-00343-JJF  Document 571-9  Filed 03/12/2007  Page 4 of 5

LG Philips LCD, Company,  v.  Hearing
Tatung Company, et al.  January 24, 2005

[15] calculated to show jurisdictional facts, and [16] including the chain of distribution, Your Honor.

[17] **THE COURT:** So this is — this is [18] what was in the notice, most of these?

[19] **MR. CHRISTENSON:** Yes, Your Honor. [20] The notice covers those areas, but I tried to [21] give him also what I'm going to focus on, because [22] he kept telling me, Your Honor, that it was — he [23] couldn't understand what this deposition was [24] about.

Page 28

[1] He couldn't even designate somebody [2] — someone under Rule 30(b)6, which is an issue I [3] haven't encountered before.

[4] And I kept telling him — he, by the [5] way, never could say to me, Your Honor, any one [6] of those specifically, why the 20 topics weren't [7] very specific enough. He couldn't tell me a [8] reason why any of those was insufficient.

[9] And so, you know, I'm essentially [10] negotiating with myself. I went back to him and [11] said, Here's what I'm going to focus on, [12] Mr. Weems.

[13] Then I told him, obviously, if he [14] designated someone who is prepared under Rule [15] 30(b)6, which is his obligation, and he objected [16] to some question at the deposition, then either [17] the witness wouldn't know the answer, if I didn't [18] put that in my notice, or he could object if it [19] was an improper question.

[20] It would be on the record and we, [21] too, would take the answer, subject to the [22] objection, which is standard deposition practice.

[23] So their obligation, Your Honor, was [24] to designate one or more witnesses, to prepare

Page 29

[1] them to testify on these topics, and then to do [2] the deposition, as appropriate at the deposition.

[3] **THE COURT:** All right. Let me hear [4] from Mr. Goddess about the topic issue.

[5] Thank you.

[6] **MR. CHRISTENSON:** Yes, sir.

[7] **MR. GODDESS:** Your Honor, so far as [8] the topics, one overriding problem with them is [9] that they are not — are not focused on Delaware. [10] They are talking about all operations in the [11] United States.

[12] And it is my understanding that [13] plaintiff is aware the jurisdiction can be [14] obtained on Tatung elsewhere in the — the Tatung [15] defendants, elsewhere in the United States. And [16] so our standing position, and I've seen that in [17] the correspondence that Mr. Christenson's [18] referred to, although I just really see it going [19] back and forth.

[20] I'm not an active participant. But [21] our position is that the question should be [22] focused on Delaware.

[23] And so questions such as Topic [24] Number 4, sales and marketing related to the U.S.

Page 30

[1] concerning products made by or for Tatung, all [2] their product lines, those two companies are [3] competitors. And what they're trying to do is [4] put that — put Tatung here in the Court in [5] Delaware.

[6] And those questions, though the [7] narrowing is appreciated, and obviously, I, in [8] some fashion, did along the lines over the phone [9] with Mr. Weems what Mr. Kirk just did here this [10] morning on the other issue.

[11] I said, Are you sure? You know, [12] it's our style in Delaware to not take an [13] unreasonable stance.

[14] And it was absolutely persuaded [15] through me to provide people that are going to [16] say more than I don't know to the list of — [17] either the 20 topics in the 30(b)6 or the [18] slightly pared version here, which still is not a [19] total limitation.

[20] You're asking about soup to nuts [21] about Tatung Company, and you're either going to [22] have to get people who are totally on the top as [23] to specifics like what's your travel policy, who [24] are going to have to say I don't know, or you're

Page 31

[1] talking about lining up whole batches of people [2] that — for topics that are way too broad of [3] what's going on in Delaware.

[4] If he started with the declarants or [5] said the sorts of things that he said right here [6] in this courtroom, there's a way to write up what [7] Mr. Christenson said in this courtroom. I'm [8] trying to — the subject of the deposition will [9] be — and I'm doing this off the cuff. Obviously, [10] it will be more elaborate than this — how goods [11] get to Delaware.

[12] And I'm tracing backwards in the [13] distribution tree. You don't come out with the [14] questions that you've got here.

[15] And, again, I'm just talking about [16] the 30(b)6, not the other ones that came in the [17] wake. I mean, you look at those depo notices.

[18] They want to take the deposition. [19] This is at Page 75 of 90 in the appendix of an [20] electronics distributing outfit called TXU.

[21] All documents that refer or relate [22] to Tatung or Tatung Companies, Tatung America [23] facilities, or operations in Texas, any other [24] files concerning Tatung or Tatung America.

Page 32

[1] There may be a measure of [2] frustration in what Mr. Christenson did, and I've [3] been there myself. But what our basic stance is [4] is that we do not want to stand in the way of [5] properly drawn discovery and preparing deponents [6] for that discovery.

[7] **THE COURT:** All right.

[8] **MR. CHRISTENSON:** Your Honor, may I [9] respond briefly?

[10] **THE COURT:** Sure.

[11] **MR. CHRISTENSON:** Thank you. Your [12] Honor, I just want to make sure, because [13] there's — I want to make sure it's clear, with [14] all these facts being thrown at the Court [15] together and with the lengthy response that was [16] served today by the Tatung defendants, I just [17] want to make it clear to Your Honor on the record [18] that the — several of these other deposition [19] notices, in fact all the other ones besides the [20] three that I've been talking about are [21] third-party deposition notices.

[22] And we didn't — we're not doing [23] this to harass anyone. We served these notices [24] on former, the two former employees of Tatung

Page 33

[1] Company of America that I was able to find myself [2] just through investigation to try to get some [3] factual information when they wouldn't appear for [4] deposition. And I don't know why it would be [5] inappropriate for me to take a deposition to try [6] to find some of these facts out from third-party [7] witnesses, Your Honor, when I couldn't get them [8] directly from the party.

[9] The TXU deposition, not that [10] Mr. Goddess just referred to, is a notice that — [11] that's a subpoena directed to someone in Texas [12] who went out — it's a gas and utility company [13] who went out to Tatung Company in Taipei, is my [14] understanding, and persuaded Tatung Company to [15] set up a distribution facility in Arlington, [16] Texas outside of Dallas for distribution of [17] products in the East Coast.

[18] So they weren't just distributing [19] solely out of Tatung America in California. They [20] had another distribution and production facility [21] in Texas.

[22] I wanted to find out information, [23] Your Honor, about that facility, so I can, again, [24] draw the — connect the dots. Your Honor, what

Page 34

[1] they really want to do is they want to

<a>
Case 1:04-cv-00343-JJF   Document 571-9   Filed 03/12/2007   Page 5 of 5

Hearing     LG Pl[...]s LCD, Company, LTD. v.
January 24, 2005                 Tatung Company, et al.

limit my [2] inquiry and the Court's attention to sales and [3] operations physically in Delaware. And it simply [4] isn't appropriate, Your Honor. There's the [5] Brennan case and numerous other cases.

[6] And, Your Honor, the recent Federal [7] Circuit decision in the CEA case, that makes very [8] clear that although it's not clear what the [9] standard is in Delaware for distribution, chain [10] jurisdiction, or rather — or rather it's not [11] clear what the — specifically whether it's the [12] Brennan or the O'Connor standard that applies, [13] what is very clear is that that is a valid [14] doctrine.

[15] And if you distribute products [16] through an established distribution channel, [17] you're subject to jurisdiction hearings.

[18] **THE COURT:** Well, do you both agree [19] that one of the legal standards that I will be [20] measuring defendants' conduct against is the [21] Delaware Long Arm Statute?

[22] **MR. CHRISTENSON:** Your Honor, yes. [23] The Delaware Long Arm Statute applies.

[24] **THE COURT:** And there's a — the

Page 35

[1] Delaware Supreme Court has cases, which I've [2] become familiar with over the years. They may [3] not use the exact same language, they may use [4] language like stream of commerce and other — you [5] know, it depends who's writing.

[6] But it's pretty clear what our [7] Delaware Supreme Court thinks that statute [8] involves.

[9] **MR. CHRISTENSON:** I may have [10] misspoke. I was recharacterizing what the [11] Federal Circuit had said.

[12] I apologize.

[13] **THE COURT:** Right. Well, yeah.

[14] And, again, we have to do a lot of [15] reading. I only got to read that decision very [16] quickly last week.

[17] But as I understand it, they want to [18] understand what that statute allows. And, of [19] course, everybody is going to look at what the [20] Delaware Supreme Court has said.

[21] **MR. CHRISTENSON:** Yes.

[22] **THE COURT:** That's done [23] historically. Then we will go to the other [24] prong, —

Page 36

[1] **MR. CHRISTENSON:** Yes.

[2] **THE COURT:** — which is the [3] constitutional test that will be applied in this [4] case.

[5] What you've said in Court here, in [6] my view, all is designed to reach what the case [7] law already is, both in this district and in the [8] State Supreme Court, except what Mr. Goddess has [9] pointed out and what I saw when I was reviewing [10] this over the weekend: Sales, volume, marketing [11] information.

[12] But if the defendant truly finds [13] that objectionable, you have offered a solution. [14] They can object.

[15] And they can try and get me on the [16] phone, which would be very difficult given the [17] trial schedule and others in this Court.

[18] But you — they can pass without an [19] answer. You know, they can note their objection. [20] You can pass without an answer, and then bring it [21] on a motion to compel.

[22] Then I'll have the specific question [23] you were asking; right?

[24] **MR. CHRISTENSON:** Yes.

Page 37

[1] **THE COURT:** And what you were [2] looking for. And I'll have their defense of the [3] objection.

[4] And as Mr. Goddess has said, you [5] know, in this jurisdiction, we look for people to [6] be reasonable. If they've interposed objections [7] unreasonably, then they'll be hurt by that [8] conduct.

[9] If they properly interpose an [10] objection and I make a ruling, then it means that [11] no harm's been done. You asked the question, and [12] you're not going to get an answer.

[13] So, but I can tell you at the [14] outset, when I looked at some of the sales [15] information, it seemed to me that you were [16] directing it, by the literal reading of the topic [17] as it was put forth in paper, volume and product [18] as opposed to stream of commerce information. [19] But maybe — you know, we all try to write [20] precisely.

[21] And maybe I'm reading too literally [22] or Mr. Goddess is reading too literally. But the [23] solution to that is for Mr. Goddess's clients to [24] get to the deposition, interpose an objection.

Page 38

[1] You pass on the question then, and bring it as a [2] motion to compel. That is — and that's the [3] solution.

[4] But I think the other questions that [5] you've set forth on a 30(b)6 witness are [6] appropriate to try and determine. Again, I'm [7] looking towards the Delaware Supreme Court case [8] law initially —

[9] **MR. CHRISTENSON:** Yes, sir.

[10] **THE COURT:** — to meet what they [11] find is the facts that support their standing, or [12] the interpretation of their understanding.

[13] **MR. CHRISTENSON:** That is — I [14] intend to obtain, obviously, the information that [15] relates to those issues. That's my intention as [16] well.

[17] **THE COURT:** Now, on a third-party [18] basis, that is always the interesting part of [19] these cases. I — I think that you're able to [20] have at that, and it's up to the third party in [21] their jurisdiction to bring a motion to quash.

[22] And I assume Mr. Goddess' client is [23] astute enough to talk with the third party once [24] they see the notice, if they want, and devise

Page 39

[1] some strategy to avoidance to your efforts.

[2] **MR. CHRISTENSON:** Your Honor, don't [3] give them any ideas.

[4] **THE COURT:** Well, no.

[5] **MR. CHRISTENSON:** I'm sorry. I'm [6] just joking.

[7] **THE COURT:** I get the idea. I see [8] lawyers do it all the time.

[9] I'm a purist. I always think [10] everybody just comes and talks.

[11] But, no. So I think that that's the [12] framework of the solution here.

[13] They're right about you shouldn't be [14] asking about sales volume, and marketing [15] techniques, and product information in a specific [16] way like how many 1937 BADs are you selling [17] through your New York distribution into Delaware [18] Best Buys.

[19] It should be: Are you selling [20] product through your New York distribution into [21] Delaware? And, yeah, there can be some general [22] identification, but you don't need to know that [23] they're doing 2,000 a day.

[24] Now, you're going to tell me — go

Page 40

[1] ahead, Mr. Kirk.

[2] **MR. KIRK:** Just to point out that [3] the Long Arm Statute speaks about deriving [4] substantial revenue.

[5] **MR. CHRISTENSON:** Right. So —

[6] **MR. KIRK:** So there's a volumetric [7] component to this.

[8] **THE COURT:** Exactly. That's why I'm [9] saying in a specific way.

[10] **MR. CHRISTENSON:** Okay.

[11] **THE COURT:** You can generally find [12] out that they're doing two truckloads. That's [13] permissible.

[14] I think their objection is they [15] don't want to give up the proprietary [16] information, and I'm sure everybody in this [17] courtroom understands the distinction between [18] the general information about volume and [19] proprietary information that gets into more [20] specific detail that would be — would [21] disadvantage them and ad-