# CASE 1

# Westlaw.

785 F.2d 1108                                                                                                Page 1
785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170
**(Cite as: 785 F.2d 1108)**

▷

United States Court of Appeals,
Third Circuit.
Antonio CIPOLLONE, individually and as the
Executor of the Estate of Rose D.
Cipollone, Plaintiff-Respondent,
v.
LIGGETT GROUP, INC., a Delaware Corporation;
Philip Morris Incorporated, a
Virginia Corporation; and Loew's Theatres, Inc., a
New York Corporation,
Defendants-Petitioners.
LIGGETT GROUP, INC., a Delaware Corporation;
Philip Morris Incorporated, a
Virginia Corporation; and Loew's Theatres, Inc., a
New York Corporation,
Petitioners,
v.
Honorable H. Lee SAROKIN, United States District
Judge for the District of New
Jersey, Nominal Respondent.
Susan HAINES, as Administratrix Ad Prosequendum
and Executrix of the Estate of
Peter F. Rossi, Plaintiff-Respondent,
v.
LIGGETT GROUP, INC., a Delaware Corporation;
Loew's Theatres, Inc., a New York
Corporation; R.J. Reynolds Tobacco Co., a New
Jersey Corporation; Philip
Morris Incorporated, a Virginia Corporation; and the
Tobacco Institute,
Defendants-Petitioners.
LIGGETT GROUP, INC., a Delaware Corporation;
Loew's Theatres, Inc., a New York
Corporation; R.J. Reynolds Tobacco Co., a New
Jersey Corporation; Philip
Morris Incorporated, a Virginia Corporation; and
Loew's Theatres, Inc., a New
York Corporation, Petitioners,
v.
Honorable H. Lee SAROKIN, United States District
Judge for the District of New
Jersey, Nominal Respondent.
Antonio CIPOLLONE, individually and as Executor
of the Estate of Rose D.
Cipollone,
v.
LIGGETT GROUP, INC., a Delaware Corporation;
Philip Morris Incorporated, a
Virginia Corporation; and Loews Corporation, a
Delaware Corporation, and

Loew's Theatres, Inc., a New York Corporation.
Appeal of LIGGETT GROUP, INC., Philip Morris
Incorporated, and Loew's Theatres,
Inc.
Susan HAINES, as Administratrix Ad Prosequendum
and Executrix of the Estate of
Peter F. Rossi
v.
LIGGETT GROUP, INC., a Delaware Corporation;
Loew's Theatres, Inc., a New York
Corporation, R.J. Reynolds Tobacco Co., a New
Jersey Corporation; Philip
Morris Incorporated, a Virginia Corporation; and the
Tobacco Institute.
Appeal of LIGGETT GROUP, INC., Loew's
Theatres, Inc., R.J. Reynolds Tobacco
Co., Philip Morris Incorporated, and the Tobacco
Institute.
**Nos. 85-3423, 85-3424, 85-5529 and 85-5530.**

Argued Sept. 26, 1985.
Decided March 12, 1986.

Cigarettes smokers or their personal representatives brought products liability suits against tobacco companies. The United States District Court for the District of New Jersey, H. Lee Sarokin, J., amended a protective order obtained by the tobacco companies, and the plaintiffs appealed and also petitioned for mandamus. The Court of Appeals, Becker, Circuit Judge, held that District Court committed clear errors of law in applying a least-restrictive-means test rather than a good-cause standard and in reviewing magistrate's order under an incorrect plenary review standard; thus, those errors warranted exercise of Court of Appeals' mandamus jurisdiction and reversal of District Court's order and remand for reconsideration of good cause.

Writ granted.

West Headnotes

**[1] Federal Courts** ⚙⇒594
170Bk594 Most Cited Cases
Discovery orders, being interlocutory, are not normally appealable.

**[2] Federal Courts** ⚙⇒572.1
170Bk572.1 Most Cited Cases
        (Formerly 170Bk572)

785 F.2d 1108 Page 2
785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170
**(Cite as: 785 F.2d 1108)**

To be reviewable pursuant to the collateral-order doctrine, a nonfinal order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action and be effectively unreviewable on appeal from final judgment.

[3] Federal Courts ⚚574
170Bk574 Most Cited Cases
Order amending a protective order in a products liability action was not appealable under the collateral-order doctrine since the order touched on the merits of the underlying action.

[4] Mandamus ⚚57(1)
250k57(1) Most Cited Cases
District court, in amending protective order obtained by tobacco company's in products liability actions, committed clear errors of law in applying a least-restrictive-means test rather than a good-cause standard and in reviewing magistrate's order under an incorrect plenary review standard; thus, those errors warranted exercise of Court of Appeals' mandamus jurisdiction and reversal of district court's order and remand for reconsideration of good cause. Fed.Rules Civ.Proc. Rule 26(c), 28 U.S.C.A.; 28 U.S.C.A. §§ 636(b)(1)(A), 1651.

[5] Mandamus ⚚28
250k28 Most Cited Cases
Mandamus is not available for abuse of discretion; rather, court exercises mandamus jurisdiction only if it finds that district court committed a clear error of law. 28 U.S.C.A. § 1651.

[6] Federal Civil Procedure ⚚1271.5
170Ak1271.5 Most Cited Cases
    (Formerly 170Ak1271)
Burden of persuasion is on the party seeking a protective order; to overcome the presumption, party seeking the protective order must show good cause by demonstrating a particular need for protection; broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the test. Fed.Rules Civ.Proc. Rule 26(c), 28 U.S.C.A.

[7] Federal Civil Procedure ⚚1271.5
170Ak1271.5 Most Cited Cases
    (Formerly 170Ak1271)
An applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. Fed.Rules Civ.Proc. Rule 26(c), 28 U.S.C.A.

[8] Federal Civil Procedure ⚚1615.1
170Ak1615.1 Most Cited Cases
    (Formerly 170Ak1615)
Burden of justifying the confidentiality of each and every document sought to be covered by a protective order is on party seeking the protective order; however, party seeking protective order is not necessarily required to demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. Fed.Rules Civ.Proc. Rule 26(c), 28 U.S.C.A.

*1110 Donald C. Cohn (Argued), Alan S. Naar, Paul A. Rowe, Greenbaum, Rowe, Smith, Ravin, Davis & Bergsteind, Newark, N.J., for appellant-petitioner Liggett Group, Inc.

Joel C. Balsam, Sills, Beck, Cummis, Zukerman, Radin, Tischman & Epstein, Newark, N.J., for appellant-petitioner Loew's Theatres, Inc.

Murray H. Bring (Argued), Arnold & Porter, Washington, D.C., Raymond F. Drozdowski, Brown, Connery, Kulp, Wille, Purnell & Greene, Camden, N.J., for appellant-petitioner Philip Morris, Inc.

Peter N. Perretti, Jr., Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for appellant-petitioner R.J. Reynolds Tobacco Co.

John T. Dolan, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for appellant-petitioner The Tobacco Institute, Inc.

Marc Z. Edell (Argued), Lisa Murtha, Porzio, Bromberg & Newman, Morristown, N.J., for appellees-plaintiffs Antonio Cipollone and Susan Haines.

Before HIGGINBOTHAM, BECKER and STAPLETON, Circuit Judges.

### OPINION OF THE COURT

BECKER, Circuit Judge.

These appeals require us to apply the principles and case law pertaining to Fed.R.Civ.P. 26(c) to a claim that certain materials obtained in civil discovery but alleged by the producing party to be confidential may be disclosed by the discovering party to the public. We must also consider whether we have appellate jurisdiction over the district court's interlocutory order permitting disclosure of the materials.

The appeal arises from two of the several cases

nationwide in which cigarette smokers or their personal representatives have instituted product liability suits against tobacco companies. In both cases, the parties had already engaged in extensive discovery, including production of a very large number of documents by defendants, when the defendants sought protective orders that would prevent the dissemination, either to the public or to counsel in other similar cases, of any documents they had produced or would produce during discovery. [FN1] A federal magistrate entered identical protective orders in both cases along the lines requested by the defendants.

> FN1. Although the record is unclear on the point, it appears from representations made at oral argument that confidentiality was maintained during the initial phase of the litigation by tacit mutual understanding and that it was only when plaintiffs' counsel evinced an intention to use the material beyond the confines of the litigation that the protective order phase of the litigation began.

On appeal from the magistrate's orders, the district court substantially revised them. The court altered the procedure that the magistrate's orders had established for deciding disputed claims of confidentiality, and restricted the orders' scope so that release of the documents to the press and public would have followed almost as of course but for this appeal. The *1111 revised orders also permitted the documents to be used in other cases in which plaintiffs' counsel was the counsel of record.

The defendants thereupon appealed to this Court and petitioned for mandamus, asserting that the revised orders violated Fed.R.Civ.P. 26(c) and reflected a skewed reading of Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The defendants also moved for an expedited appeal and a stay of the district court's orders, as well as reinstatement of the magistrate's orders pending appeal. We granted those motions. The plaintiffs moved to dismiss the appeals for want of appellate jurisdiction, and also moved to dismiss the petition for mandamus.

We hold that: (1) we do not have jurisdiction to review the order pursuant to the collateral order doctrine as enunciated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); (2) we do have mandamus jurisdiction to review the order pursuant to 28 U.S.C. § 1651 (1982); (3) because the district court's reading of Seattle Times constituted a clear error of law, the ruling on the defendants' motion for protective orders was incorrect; and (4) the district court also clearly erred in relying on Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) to exercise plenary review of the magistrate's protective order, for the court was bound to apply a "clearly erroneous" standard. We therefore grant the writ of mandamus. To assist the district court in future proceedings, we discuss two additional points relevant to this case: the definition of "good cause," and the administration of protective order proceedings.

I. PROCEDURAL HISTORY
A. *The Institution of the Suits*

Rose Cipollone and her husband Antonio filed a complaint against Liggett Group, Inc., Phillip Morris, Inc., and Loew's Theaters, Inc., all manufacturers of cigarettes, [FN2] in the district court for the District of New Jersey on August 1, 1983. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332 (1982). The complaint alleged that defendants manufactured or sold cigarettes and that Rose Cipollone had smoked defendants' cigarettes for almost forty years. As a result of her smoking, the complaint alleged, she acquired bronchogenic carcinoma and other personal injuries; it further alleged that she had experienced severe pain and suffering and that her illness had caused her--and would continue to cause her--great expense. Plaintiffs sought compensation for Rose Cipollone's injuries, suing under theories of negligence and strict liability. Central to plaintiffs' case was their allegation that defendants had withheld scientific evidence from the public and had misrepresented the effects upon health of smoking cigarettes. They also sought compensation for Antonio Cipollone's loss of consortium.

> FN2. Liggett and Phillip Morris are well-known tobacco companies. Loews, originally an entertainment company but now a conglomerate, manufactures True Cigarettes.

Shortly thereafter, Susan Haines as administratrix ad prosequendum and executrix of the Estate of Peter F. Rossi brought suit in the same court against the same three defendants as well as R.J. Reynolds Tobacco Co. and the Tobacco Institute, Inc. Haines was represented by the same attorney who represented the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cipollones. Jurisdiction was based on diversity, and once again the complaint alleged tortious conduct sounding in strict liability and negligence. The complaint also included an allegation of misrepresentation. The plaintiff sought compensation for the decedent's pain and suffering and for his death, which she alleged was the result of his smoking defendants' cigarettes.

B. *The Initial Protective Order*

The district court ordered discovery in both cases under the supervision of a federal magistrate. 28 U.S.C. § 636(b)(1)(A) (1982). Discovery proceeded until March *1112 1985, and a large number of documents were produced by the defendants for inspection pursuant to Fed.R.Civ.P. 34. On that date, the defendants moved for an "umbrella" protective order. The defendants argued that such an order would facilitate the discovery process by reducing the number of occasions for lawyers' conferences and discussions about the confidentiality of particular documents. Defendants also argued that they had good cause for the protective order under Fed.R.Civ.P. 26(c) [FN3] and that the closely analogous *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), permitted a protective order in this case. Plaintiffs objected to the defendants' proposal, countering that the defendants' real purpose was to make it impossible for plaintiffs in other suits against the cigarette companies to share information gathered from the defendants. The defendants' strategy, said plaintiffs, was to raise the expense of litigation for future plaintiffs, thus making the cost of suits prohibitive.

> FN3. The rule reads:
> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court....

After hearing the matter, the magistrate found for defendants. On March 25, 1985, he entered identical protective orders in both cases. The crucial aspects of the protective orders may be summarized as follows: (a) "all information" produced in discovery, presumably confidential and nonconfidential alike, could be used only for the instant cases and not for other cases or other purposes; (b) the defendants had the responsibility in the first instance of deciding in good faith which of their documents were confidential and marking them accordingly; (c) information marked confidential could be examined as a matter of course by plaintiffs' lawyer, his associates, and experts retained by plaintiffs or their lawyer for the cases; (d) if plaintiffs wished to disclose the information to anyone else, they had to inform defendants' counsel, who then had opportunity to apply to the court to prevent that disclosure; and (e) all documents and copies thereof had to be destroyed or returned at the conclusion of the litigation. [FN4]

> FN4. The relevant portions of the Magistrate's protective order read as follows: 2. All information produced or exchanged in the course of this civil action or any appeal arising therefrom (the "litigation") shall be used solely for the purpose of this case.
> 3. "Confidential information" as used herein means any information which is designated as "confidential".... Information shall be designated as confidential only upon a good-faith belief that the information falls within the scope of confidential information under the Federal Rules of Civil Procedure and the precedents thereto.
>
> \* \* \*
>
> 6. Confidential information may be inspected only by the following persons:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> (a) Counsel of record for plaintiff and defendants [and other lawyers employed by plaintiff and defendants for this case];
> (b) Experts retained by or on behalf of any party....
>
> * * *
>
> 10. Prior to the disclosure of any confidential information to any person, other than outside counsel and their employees or medical experts, the party seeking disclosure shall advise counsel and the Court, in writing, of the name, address and occupation of the person to whom counsel proposes to disclose.... Within twenty (20) days after such advice, counsel to whom notice is given may ... give written notice to adverse counsel of an application to this Court for an order prohibiting the proposed disclosure. No such disclosure shall take place until the Court has acted upon such application.
>
> * * *
>
> 13. Within forty-five (45) days after the final adjudication or settlement of all claims in this case, counsel for the parties shall either return all documents produced, if so requested by the producing party, or shall destroy such documents.
> App. at 52-56, 59-63.

***1113** C. *Plaintiffs' Appeal to the District Court*

Plaintiffs appealed the protective order to the district court, arguing that the order violated plaintiffs' first amendment rights to disseminate the information that they had received through discovery. Plaintiffs relied on *Seattle Times, supra,* arguing that the defendants and the magistrate had misconstrued the Supreme Court's holding in that case. They also argued that the defendants had failed to demonstrate good cause as required for a protective order by Fed.R.Civ.P. 26(c).

The district court filed a lengthy opinion, covering its scope of review of the magistrate's decision, the meaning and relevance of *Seattle Times,* the notion of "good cause" in Fed.R.Civ.P. 26(c), and the proper scope of the protective order. Disposition of the appeal requires that we describe each part of the district court's opinion in some detail.

1. *The District Court's Scope of Review of the Magistrate's Protective Order*

Although 28 U.S.C. § 636(b)(1)(A) states that a magistrate's order is not to be reconsidered unless it is "clearly erroneous or contrary to law," [FN5] the district court ruled that its standard of review was plenary, relying on *Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), which held that an appellate court has plenary review over the finding of actual malice in libel cases. *See* Dist.Ct.Op. at A17-A18. [FN6]

> FN5. *See also* Fed.R.Civ.P. 72(a); General Rule 40 D(4) of the U.S. Dist. Ct. for the Dist. of N.J. *See generally United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980); *Merritt v. International Brotherhood of Boilermakers,* 649 F.2d 1013, 1016-17 (5th Cir.1981).
>
> FN6. 28 U.S.C. § 636(b)(1)(B) also allows a district judge to designate a magistrate to submit to the court a report containing proposed findings of fact and recommendations for disposition. The court reviews *de novo* any portions of the report to which parties object. *Id.* The parties in this case agree that the magistrate was acting pursuant to § 636(b)(1)(A).

2. *The District Court's Analysis of* Seattle Times

The district court next engaged in a lengthy first amendment analysis of protective orders in discovery. It reviewed the conflicting approaches of the circuit courts prior to *Seattle Times* [FN7] and then observed that *Seattle Times* had resolved the issue. The court quoted what it believed to be the relevant analysis from that case:

> FN7. One court required a showing of serious harm in the absence of a protective order and a demonstration that the proposed protective order would be the least restrictive means possible for avoiding the harm. *See In re Halkin,* 598 F.2d 176, 191-96 (D.C.Cir.1979). Another court held that the first amendment did not affect a court's authority to issue a protective order. *See International Products Corp. v. Koons,* 325 F.2d 403, 407-08 (2d Cir.1963). A third court took a middle course, applying a balancing test that includes the magnitude of the threatened harm in the absence of a protective order, the breadth of the order, and the order's probable effectiveness. *See*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

785 F.2d 1108                                                 Page 6
785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170
(Cite as: 785 F.2d 1108)

> *In re San Juan Star Co.*, 662 F.2d 108 (1st Cir.1981).

The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary to the *1114 protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974).
104 S.Ct. at 2207 (quoted in Dist.Ct.Op. at A21-A22).

The district court believed the passage established that, when a case involves matters of substantial public interest, a protective order implicates first amendment concerns and some constitutional analysis is required. Dist.Ct.Op. at A24-A25. The district court went further, explicitly analogizing the case before it to *Seattle Times* and holding that the same constitutional inquiry was appropriate in both cases: "It therefore remained there, and remains here, to decide only whether the protective orders at issue limited first amendment freedoms more than necessary or essential to protect the governmental interests furthered by Rule 26(c)." Dist.Ct.Op. at A22.

The court did note one point of confusion about *Seattle Times* that is relevant to our discussion below. Despite the Supreme Court's apparent endorsement in the above passage of a least restrictive means analysis, its *holding* subsumes a different analysis entirely. The district court quoted that holding in full:

> We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.

104 S.Ct. at 2209-10 (footnote omitted) (quoted in Dist.Ct.Op. at A22- A23). As the district court noted, this explicit holding appears to exclude any first amendment analysis from the decision about whether a court should issue a protective order; that is, it implies that "if a protective order passes muster under Rule 26(c), it must, of necessity, be constitutional." Dist.Ct.Op. at A24. However, the analytical passage quoted earlier, *see supra* pp. 1113-14, implies that a court must apply a least restrictive alternative test to all proposed protective orders. Although it noted this apparent contradiction, the district court did not resolve it explicitly, apparently assuming that *Seattle Times* imposed a least restrictive alternative test and that the test had to be read into the holding. *See* Dist.Ct.Op. at 24-25; *see generally infra* part IV (discussing the district court's first amendment analysis). [FN8]

> FN8. The district court may have been motivated to make this assumption by its perception that a protective order would favor the economically powerful defendants and prevent the public and the relatively impecunious plaintiffs from gaining access to material in which there was an enormous public interest. *See id.* at A11 ("The court cannot ignore the might and power of the tobacco industry and its ability to resist the individual claims asserted against it and its individual members.")

3. *The District Court's Findings on Good Cause*

The district court noted that the party seeking the protective order bore the burden of proving that there was good cause for such an order. It also observed that a protective order could issue only upon a showing that disclosure would result in "clearly defined and serious injury." Dist.Ct.Op. at A26. Although early in its opinion the court suggested that there could be good cause only for revelation of technical information that might hurt one of the defendants' competitive positions, [FN9] the court later made it clear, as the caselaw has established, that lesser concerns, including "embarrassment," might constitute good cause for a protective order. Dist.Ct.Op. at A32 n. 8. [FN10]

> FN9. The court wrote that
> [d]efendants [are] entitled to protection from the disclosure of matters which are truly secret, where disclosure thereof will affect the operation of their business, but not their potential liability. Formulae, marketing strategy, and other matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business are entitled to protection.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A10-A11.

> FN10. Rule 26(c) protects parties from a broad range of troubles: "annoyance, embarrassment, oppression, or undue burden or expense." Consistent with the spirit of the Rule, courts have held that a showing of harm to nonbusiness interests may constitute a good cause. See, e.g., Krause v. Rhodes, 671 F.2d 212 (6th Cir.) (government's interest in conducting thorough and confidential investigations is ground for a protective order), cert. denied, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982) Galella v. Onassis, 487 F.2d 986 (2d Cir.1973) (protection of public figure from physical and emotional harassment). The Supreme Court has expressly stated that Rule 26(c) protects privacy interests. Seattle Times, supra, 104 S.Ct. at 2208 n. 21.

*1115 After discussing these broad legal issues, the court turned to the particular facts before it, and found that neither the magistrate's opinion nor the submissions of the defendants sustained the burden of justifying the protective order. It found that "the reasons asserted are quite conclusory," id. at A28, and that defendants' suggestion that the magistrate's protective order would 'streamline the litigation' was not sufficient to carry the evidentiary burden. Id.

4. The Scope of Confidentiality

As noted above, the magistrate's order applied to all information produced during discovery. See supra p. 11; Magistrate's Order ¶ 2, supra note 4. The district court criticized this approach, stating that nonconfidential material was, by definition, information for which no Rule 26(c) good cause had been shown and that therefore no protective order should protect such material. Dist.Ct.Op. at A29.

The district court also criticized the portion of the magistrate's order that had prohibited the use in any other case of the materials produced in this case's discovery. The district court said that the prohibition "undermine[d] the purpose of the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action.'" Dist.Ct.Op. at A34 (quoting Fed.R.Civ.P. 1) (footnote omitted). Additionally, the court noted that prohibiting the use of materials from one case in other cases would burden both the plaintiffs and the defendant:

There may be some claimants who do not have the resources ... to pursue the thorough investigation which these cases require. To require that each and every plaintiff go through the identical, lone and expensive process would be ludicrous. Even from the point of view of the defendants (though they resist), it would seem that they would benefit by avoiding repetition of the same discovery in each and every case."
Id. at A11.

5. The District Court's Amendment to the Protective Order

The district court amended the magistrate's protective order in light of its conclusions as outlined above. The court's amendments were as follows: (a) whereas the magistrate's protective order had limited the use of all materials produced in discovery, the amended protective order would apply only to confidential materials and would not restrict the use of nonconfidential materials; (b) rather than making defendants' good faith the only limitation on their freedom to designate documents confidential, and forcing the plaintiffs to challenge the designation subject thereafter to rulings by the Court, the amended order required the defendants to demonstrate in a document-by-document showing to the court that each document they believed to be confidential was so in fact; the advantage of this system, the court explained, was that it "does not allow misuse of the confidentiality designation and places the burden of proving such confidentiality squarely upon defendants, as required by Rule 26(c) and the first amendment," id. at A29-A30; (c) although the court agreed that confidential information could not be released to the public, its order differed from the magistrate's in that the court's order allowed plaintiffs' counsel to use any and all confidential materials in cases in which he was a participant, id. at A32; and (d) the amended order eliminated entirely the provision requiring counsel to return or destroy all documents produced in discovery; this was done virtually without discussion, because defendants had not *1116 opposed plaintiffs' motion to eliminate the provision. [FN11]

> FN11. The relevant portions of the district court's protective order read as follows (all parts of the district court's order that were not part of the magistrate's order are italicized; all parts of the magistrate's order that the district court omitted are in square brackets; unchanged portions are unmarked):

785 F.2d 1108                                                                                                                    Page 8
785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170
**(Cite as: 785 F.2d 1108)**

2. All "*confidential*" information produced *by defendants* [or exchanged] in the course of this civil action or any appeal arising therefrom (the "ligitation") *may be used in all cases in which plaintiffs' counsel in this action are counsel of record* [shall be used for the purpose of this case]. 3. "Confidential information" as used herein means any *document* [information] which is *found by the court or agreed by the parties to be* [designated] "confidential".... Information shall be designated as "*claimed* confidential" only upon the good faith belief that the information falls within the scope of confidential information under the Federal Rules of Civil Procedure and the precedents thereto. *If defendants claim that a particular document is confidential, it shall be the defendants' burden to bring a motion before the court to determine whether the document in question is a confidential document under the Federal Rules of Civil Procedure and the precedents thereto. Failure of defendants to bring such a motion within ten days of advising plaintiffs' counsel of any claim of confidentiality shall constitute a waiver of any claim of confidentiality as to the document in question and permit removal of the claim of confidentiality. Should the court determine that the defendants have misused the "claimed confidential" designation, it will consider awards of costs including counsel fees incurred as a result of the misuse of said designation.*

\* \* \*

5. *Confidential information may be inspected only by the following persons:*
(a) *Counsel of record for the plaintiff and defendants in this or other* litigation, any lawyers specifically employed by them in connection with this *or other* litigation and any employee of such counsel assisting with this *or other* litigation:
(b) Experts retained by or on behalf of any party to provide assistance or testimony in connection with this litigation.

\* \* \*

9. Prior to the disclosure of any confidential information to any person, other than counsel and their employees or experts, the party seeking disclosure shall advise the court and counsel, in writing, of the name,

address and occupation of the person to whom counsel proposes to disclose said confidential information. Within twenty days after such advice, counsel to whom notice is given may ... give written notice to adverse counsel on an application to this court for an order prohibiting such disclosure. No such disclosure shall take place until the court has acted on such application.

\* \* \*

[13. Within forty-five (45) days after the final adjudication or settlement of all claims in this case, counsel for the parties either shall return all documents produced, if so requested by the producing party, or shall destroy such documents.]

The defendants immediately moved the district court for a stay of its own protective order. The district court granted a stay conditioned on defendants' instituting proceedings in the court of appeals, which they did promptly. We granted a further stay pending disposition of the appeal, having been informed that appellees had scheduled a press conference for the morning following expiration of the stay and that they would, at that time, release to the public all the documents obtained in discovery.

II. *COLLATERAL APPEALABILITY*
[1] Discovery orders, being interlocutory, are not normally appealable. See Borden Co. v. Sylk, 410 F.2d 843, 845 (3d Cir.1969); 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2006 at 29 (1970 & Supp.1985). The first issue before us, therefore, is whether we have appellate jurisdiction. The defendants make two arguments in favor of appellate jurisdiction. First, they assert that the district court's protective order is a collateral order appealable under the rule of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949). In the alternative, they argue that this court should exercise its statutory power of mandamus, 28 U.S.C. § 1651 (1982), to review the order. We consider collateral appealability here and the mandamus argument in part III *infra*. [FN12]

FN12. Although we took this appeal before any documents had been challenged under the district court's protective order, the appeal is ripe. It is clear that we are not deciding mere hypothetical questions that we might avoid by refusing jurisdiction at this time, for the parties have indicated to us

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that they differ sharply over the propriety of disseminating several documents. It is also clear that, as the district court's alleged errors are purely legal, see infra parts IV and V, the issues before us are sufficiently concrete to allow for judicial determination and will not be better defined by waiting. Thus, nothing would be gained by waiting for a particular dispute to exercise appellate jurisdiction. Moreover, there is danger that, if we did not take this appeal, some documents would be released before we had the opportunity for review. That potential harm, once done, could not be undone. See infra III.A. Thus, this may be the only opportunity for meaningful appellate review.

*1117 Title 28 U.S.C. § 1291 (1982) provides that courts of appeals may review only "final" decisions of the district courts. In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), however, the Supreme Court established a narrow exception to the rule of finality. Cohen held that a prejudgment order of a district court can be reviewed if it falls within

> that small class [of prejudgment orders] which finally determine claims of right separable from and collateral to, rights asserted in the action, too important to be denied review, and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.
> Id. at 546, 69 S.Ct. at 1225. See also Mitchell v. Forsyth, 472 U.S. 511, ----, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); Richardson-Merrell, Inc. v. Koller, --- U.S. ----, ----, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985).

[2] Cohen's progeny have established three requirements for the review of non-final orders: to be reviewed the order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). We have made clear that each of the three requirements must be met before appellate review is permitted. Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 537 (3d Cir.1985); Metex Corp. v. ACS Industries, Inc., 748 F.2d 150, 153 (3d Cir.1984); Lusardi v. Xerox Corp., 747 F.2d 174, 177 (3d Cir.1984); Gross v. G.D. Searle & Co., 738 F.2d 600, 602 (3d Cir.1984). This approach furthers the important goal of avoiding piecemeal litigation.

[3] The second prong is not met here because defendants' claim touches on the merits of the underlying action. The underlying action raises issues concerning whether and when the defendants knew of the health hazards associated with smoking cigarettes and what steps the defendants allegedly took to mislead the public about those hazards. Defendants contend that the materials should not be disseminated because they would present a distorted and unfair picture about what the defendants knew about the effects of cigarettes on health. Our evaluation of defendants' argument would take us into the merits of the underlying action because we would have to make a judgment about what defendants knew and what steps they may have taken to mislead the public-- precisely the issues at the heart of the underlying action. See supra pp. 1111-12. [FN13] Because the second prong is not satisfied, we do not have jurisdiction under the Cohen doctrine.

> FN13. This case is thus similar to State of New York v. United States Metal Refining Co., 771 F.2d 796 (3d Cir.1985), in which a panel of this court held that it did not have Cohen jurisdiction to review an order prohibiting dissemination of a report prepared by the State of New York about the pollution practices of United States Metal Refining Company (USMR). USMR's argument against dissemination was that the report was biased and inaccurate. We held that because an evaluation of that argument would involve an inquiry into the actual environmental practices of USMR, a decision on the protective order would necessarily involve it with the merits of the underlying action. Id. at 800.

III. MANDAMUS

[4] The All Writs Act, 28 U.S.C. § 1651(a) (1982), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions." Although writs of mandamus *1118 are extraordinary devices and we have read § 1651(a) narrowly, mandamus has been held to be appropriate when a failure to issue the writ would lead to the disclosure of confidential materials. See, e.g., Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir.1984); Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949 (8th Cir.1979); In re Halkin, 598 F.2d 176 (D.C.Cir.1979). In Sporck v. Peil, 759 F.2d 312, 314 (3d Cir.1985), we held that a writ of mandamus

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

should issue when (A) the party seeking the writ has " 'no other adequate means to attain the relief he desires,' " (quoting Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980)), and (B) the court below has committed a clear error of law. We consider these requisites in turn.

A. *Other Avenues of Redress*

No other paths to appellate review are available to defendants. First, if defendants are required to wait until the final order of the litigation, their appeal on this issue would be valueless. The harms defendants seek to avoid are embarrassment and prejudice in the community at large. Defendants thus require injunctive relief, for compensatory damages would be virtually impossible to assign. Unless the district court's order is vacated, the materials will be released; thereafter, it will be impossible, practically speaking, to rectify the harm. *See* C & C Products, Inc. v. Messick, 700 F.2d 635, 637-38 (11th Cir.1983) (appeal from district court's modification of a protective order dismissed as moot because the materials had already been released and "no order from this court can undo that situation."). Second, as we have already seen, *supra* II., the district court's order is not appealable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.* [FN14]

> FN14. Neither can defendants obtain immediate appellate review by certification pursuant to 28 U.S.C. § 1292(b) (1982), for the district court made no such certification nor could it have, since that provision limits review by certification to orders "an immediate appeal from [which] may materially advance the ultimate termination of the litigation." The protective order at issue here, although not completely separate from the substantive issues of the case, *supra* p. 1118, is substantially collateral to them and is certainly not of the pivotal nature required for certification. *Cf.* Evanson v. Union Oil Co. of California, 619 F.2d 72, 74 (Em.App.1980); C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2006 at 31 (1970 & Supp.1985) ("Ordinarily it is difficult to believe that a discovery order will present a controlling question of law or that an immediate appeal will materially advance the termination of the litigation.").

B. *Clear Error of Law*

[5] Mandamus is not available for abuse of discretion. Rather, we exercise mandamus jurisdiction only if we find that the district court committed a clear error of law. Sporck, 759 F.2d at 314. This requirement is satisfied because the district court made two clear errors of law. First, it misread *Seattle Times v. Rhinehart* and imposed under Fed.R.Civ.P. 26(c) a more stringent good cause standard than was necessary or appropriate. Second, on account of its misreading of *Seattle Times,* it exercised plenary review over the magistrate's order when the "clearly erroneous" standard was required. As both of these errors were germane to its decision, *see* discussion *infra,* they are independent grounds for reversal. We take these matters up in turn.

IV. THE DISTRICT COURT'S MISREADING OF SEATTLE TIMES

As we have noted, the district court identified an ambiguity in the *Seattle Times* opinion: it was unclear whether *Seattle Times* mandated a Rule 26(c) analysis without regard to the first amendment, or whether it required an analysis that included a strict least restrictive means test. *See* discussion *supra* pp. 1114-15. *See also* Post, *The Management of Speech: Discretion and Right,* 1984 Sup.Ct.Rev. 169, 181-82 (noting the same point). This ambiguity may be significant because the good cause analysis, although by no means toothless, *see infra* part VI.A. is significantly less stringent than the least restrictive *1119 means test. The district court chose the latter alternative without explanation and analyzed the case in first amendment terms, applying the least restrictive means test. *See* Dist.Ct.Op. at A22. While we recognize the ambiguity in *Seattle Times,* we believe for several reasons that the district court misinterpreted *Seattle Times* and that *Seattle Times* prohibits a court considering a protective order from concerning itself with first amendment considerations.

We recently had opportunity in a case very similar to this one, State of New York v. United States Metal Refining Co., 771 F.2d 796 (3d Cir.1985) to interpret *Seattle Times.* We found there that *Seattle Times* confirmed our previous suspicion that protective orders in civil discovery did not require first amendment analysis:

> This court has noted that an order prohibiting the disclosure of information obtained under the rules of discovery probably does not run afoul of the first amendment. Rodgers v. United States Steel Corp., 536 F.2d 1001, 1006 (3d Cir.1976).... The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Supreme Court confirmed our point of view in the *Seattle Times* case. 104 S.Ct. at 2009-10. *New York v. United States Metal Refining Co.*, 771 F.2d at 802. Thus, *United States Metal Refining Co.* is clear precedent for the interpretation eschewed by the district court. [FN15]

> FN15. We note that *United States Metal Refining Co.* was decided about two months after the district court's order in this case, and therefore the district court did not have the benefit of it at the time of its decision.

This holding would appear to end our inquiry. However, because the district court's interpretation of *Seattle Times* raises questions not considered in *United States Metal Refining Co.*, it is appropriate and useful to review the *Seattle Times* opinion in the light of these questions. That review confirms the soundness of *United States Metal Refining Co.*'s reading of *Seattle Times*. In the first place, the Supreme Court's holding in *Seattle Times* was peremptory: "a protective order ... entered on a showing of good cause as required by Rule 26(c) ... does not offend the First Amendment." 104 S.Ct. at 2209-10. This statement leaves no room for lower courts to consider first amendment factors in fashioning or reviewing Rule 26(c) orders. The unequivocal nature of the Court's holding supersedes any ambiguity in its earlier discussion.

Second, the rest of the Supreme Court's opinion, which emphasized that the discovery process was not a forum traditionally open to the public, 104 S.Ct. at 2208, and that the process was "a matter of legislative grace," *id.* at 2207, to which no first amendment rights attached, is consistent with the position that the first amendment is simply irrelevant to protective orders in civil discovery; it does not comport with the district court's insistence on a less restrictive means test in protective order determinations. Although the Supreme Court's dictum about less restrictive means analysis is to the contrary, *see* 104 S.Ct. at 2207, this dictum is insufficient to overcome the weight of the Court's holding and the evident direction of the Court's reasoning.

Finally, we note that the overwhelming number of courts that have considered this issue have reached the same conclusion. *See Worrell Newspapers of Indiana, Inc. v. Westhafer*, 739 F.2d 1219, 1223-24 n. 4 (7th Cir.1984) (in light of *Seattle Times*, court need only undertake a Rule 26(c) good cause analysis without consideration of First Amendment); *Tavoulareas v. Washington Post Co.*, 737 F.2d 1170, 1172-73 (D.C.Cir.1984) (*en banc*) (same); *In re Agent Orange Product Liability Litigation*, 104 F.R.D. 559, 566 (E.D.N.Y.1985) (same). But *see Michelson v. Daly*, 590 F.Supp. 261, 266 (N.D.N.Y.1984) (*Seattle Times* demands a least restrictive alternative test for protective orders in civil discovery). This precedent gives us further confidence in our analysis.

We may summarize thus. *Seattle Times* required the district court merely to inquire whether the defendants had demonstrated good cause for the protective order; the *1120 district court instead applied a least restrictive means test. The good cause standard is significantly less demanding than the least restrictive means test; the court's error, therefore, may have worked a serious detriment to the defendants. The court's error thus constitutes a clear error of law sufficient for our exercise of mandamus jurisdiction.

V. THE DISTRICT COURT'S STANDARD OF REVIEW

The district court also erred because it reviewed the magistrate's order under an incorrect standard. Title 28 U.S.C. § 636(b)(1)(A) (1982) explicitly states that the district court may modify the magistrate's order only if the district court finds that the magistrate's ruling was clearly erroneous or contrary to law. The district court in the instant case, however, held that *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), mandated plenary review regardless of the statutory standard of review. *Bose* held that when questions of constitutional fact arise in the first amendment context--questions like whether a speaker had "actual malice"; whether speech was libelous or an incitement to riot; whether pictures appeal to "prurient interests" or are "patently offensive"--an appellate court is bound to exercise plenary review on account of the crucial values at stake. *Id.* 104 S.Ct. at 1961-65. The district court reasoned that because it was acting as an appellate court in reviewing the magistrate's order, *Bose* should control. Dist.Ct.Op. at A17- A18.

The flaw in this logic stems from the same error discussed above, the district court's misreading of *Seattle Times*. Believing that *Seattle Times* made first amendment analysis an important part of its Rule 26(c) inquiry, the district court found that *Bose* applied. As we have seen, however, *Seattle Times* says exactly the opposite: that first amendment considerations are irrelevant to Rule 26(c) protective orders. Because the first amendment is irrelevant to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

785 F.2d 1108                                                                                                               Page 12
785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170
**(Cite as: 785 F.2d 1108)**

the analysis, there are no grounds for extending *Bose* to this situation. The "clearly erroneous" standard obviously would have been less onerous for the defendants than was the district court's plenary review standard. Thus, the court's error may have harmed the defendants, and this error also constitutes a clear error of law sufficient for our exercise of mandamus jurisdiction.

These errors require that we reverse the district court's judgment and remand for reconsideration of good cause. Although it might be possible for us to review the magistrate's protective order ourselves, we feel it would be unwise to do so. Review of the order will require detailed consideration of the defendants' assertion of good cause. Such consideration would be exceedingly difficult without the district court's prior analysis of the matter under appropriate constitutional standards. *Cf.* Tavoulareas v. Washington Post, 737 F.2d 1170, 1172 (D.C.Cir.1984) (*en banc* ) ("It would seem strange for the appellate court ... to decide the 'good cause' question initially--especially when, as here, the District Court, has had no opportunity to decide it free from erroneously imposed constitutional restraints."). It would be equally unwise for us to "tailor" or adjust the order, for the good cause hearing will likely reveal the appropriate shape that the protective order should take and it is thus better that any delineation of specifics await that hearing. We accordingly shall grant the writ, and allow the district court to reconsider the magistrate's protective order in a manner consistent with this opinion.

### VI. *TWO REMAINING ISSUES*

In view of our holding, the district court will perforce be obliged to take second looks at the good cause issue (no specific good cause findings have been made), and at the magistrate's protective order. With respect to the later issue, we note that our holding has not resolved a critical aspect of the protective order litigation that the record reveals to be still festering: whether the district court was justified in its use *1121 of the document-by-document approach as opposed to a broader approach in its reformulation of the magistrate's protective order. These two issues were contested in the district court, and colloquy at oral argument revealed that they are still at issue and will likely arise again. Therefore, we address them for the guidance of the district court. [FN16]

> FN16. Discussion of these issues comports with the "instructional goals" of mandamus, see Bogosian v. Gulf Oil Corp., 738 F.2d 587, 592 (3d Cir.1984) ("review would comport with the instructional goals of mandamus,' " quoting United States v. Christian, 660 F.2d 892, 897 (3d Cir.1981)); see also Will v. United States, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967) (mandamus review has a "vital corrective and didactic function").

### A. *Embarrassment and Good Cause*

Whether defendants have shown good cause for a protective order has been the issue at the heart of this case, and will likely remain so. The defendants assert that although the material they have turned over does not contain trade secrets, it does include materials the dissemination of which would cause them annoyance and embarrassment sufficient to justify a broad protective order. The plaintiffs contend that the defendants have not made a sufficiently convincing showing of the harm they would suffer from dissemination and that their allegations of harm are merely conclusory.

[6] As the district court explained, Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. See United States v. Garrett, 571 F.2d 1323, 1326, n. 3 (5th Cir.1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"); General Dynamics Corp. v. Selb Mfg. Corp., 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035 (1970 & Supp.1985). Moreover, the harm must be significant, not a mere trifle. See, e.g., Joy v. North, 692 F.2d 880, 894 (2d Cir.1982) (refusing protective order where proponent's only argument in its favor was the broad allegations that the disclosure of certain information would "injure the bank in the industry and local community"), cert. denied sub nom. Citytrust v. Joy, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983).

[7] Although there appears to be a lurking dispute as to what may constitute good cause for a protective order, *see* discussion *supra* at pp. 1114-15, we are satisfied that the district court understood and will apply on remand the principle that Rule 26(c)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

785 F.2d 1108                                                                                                                   Page 13
785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170
**(Cite as: 785 F.2d 1108)**

protects parties from embarrassment as well as from disclosure of trade secrets. We add to the district court's comments only our own understanding that, because release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground. *Cf. Joy v. North, supra* (a protective order will not issue upon the broad allegation that disclosure will result in injury to reputation); to succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position.

B. *Administration of the Protective Order*

Under the district court's order, the defendants would be forced to demonstrate to **\*1122** the Court on a document-by-document basis which documents should be protected and not disseminated before they could even be marked "confidential." The district court felt compelled to adopt this solution because it recognized that the burden of persuasion fell on the party seeking the protective order, and it believed that allowing defendants to mark documents confidential in the first instance--bound only by their good faith--and requiring plaintiffs to oppose the confidentiality designation would impermissibly shift the burden of proof to the plaintiffs. Dist.Ct.Op. at A29-30. The defendants object that the district court's order is unduly restrictive and burdensome.

[8] It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. [FN17] After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

> FN17. Admittedly, there is a danger here that counsel will err on the side of caution by designating confidential any potentially sensitive document. The judge must require that counsel not mark documents as protected under the order unless they are at least arguably subject to protection. Manual for Complex Litigation Second, (MCL 2d) § 21.431 (1985). MCL 2d provides that "[t]he designation of a document as confidential may be viewed as equivalent to a motion for protective order and subject to the sanctions of Fed.R.Civ.P. 26(g)." *Id.* We agree.

As the commentary in the *Manual for Complex Litigation Second* (MCL 2d) (1985) makes clear, the umbrella order approach has several advantages over the document-by-document method adopted by the district court in a complex case, [FN18] and **\*1123** MCL 2d recommends the use of umbrella orders in complex cases. [FN19] The caselaw also supports the view that the use of umbrella orders in the district court is a useful method of dealing with large-scale discovery. [FN20]

> FN18. First, because in any large-scale litigation the movant will likely have far more documents that it wants to designate as confidential than the respondent will object to being so designated, the umbrella order approach is less time-consuming and burdensome to the parties and the court than the document-by-document method. In a very large case, the document-by-document approach may be so costly that it may make large-scale litigation too expensive for all but the most affluent parties. Moreover, the time that it would take a judicial officer to rule on the protectability of thousands of documents could cripple the court. By contrast, the umbrella order will encourage efficiency and allow litigation to proceed more quickly. *See* MCL 2d § 21.431 at 51-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

54.

Second, although a smooth, largely self-regulating discovery process should be the court's goal, *id.* at § 21.423 at 49, the document-by-document approach guarantees extensive involvement by the court in the discovery process, deterring the parties from themselves conducting discovery to a significant extent. The umbrella order approach we have described encourages parties to work problems out between and among themselves.

Finally, the document-by-document approach may prevent the parties and the magistrate or judge from getting a broad overview of the documents. The magistrate or judge may be so burdened by the argument over each document that she or he will "lose the forest for the trees." This confusion is not a problem under the umbrella order solution proposed here.

In *In re "Agent Orange" Product Liability Litigation,* 96 F.R.D. 582, 585 (E.D.N.Y.1983), Judge Pratt, sitting by designation, summarized the reasons underlying the umbrella order approach:

The interest of preserving the efficient and effective functioning of the discovery process weighs substantially in favor of a protective order, *In re Halkin, supra,* 598 F.2d at 192, and there is no question that this interest would be significantly impaired were there no protective order in this case. The special master's protective order shifts the very slight burden of going forward to the proponents of dissemination. Those wishing to disseminate merely need to indicate which documents they wish to disseminate, and the burden is then upon those opposing dissemination to show "good cause" pursuant to FRCP 26(c) why the protective order should be continued. It is hoped that this procedure will result in the court's having to review only those particular documents a party wishes to disseminate, rather than having to review every document that some party wants covered by a protective order.

FN19. " 'Umbrella' protective orders, carefully drafted to suit the circumstances of the case, greatly expedite the flow of discovery material while affording protection against unwarranted disclosures." *Id.* at § 21.431 at 53 (footnote omitted); *see also id.* at § 41.36 at 379-83 (sample confidentiality order including umbrella provision).

FN20. *See, e.g., Chambers Development Co., Inc. v. Browning-Ferris Industries,* 104 F.R.D. 133, 135 (W.D.Pa.1985); *In re Korean Airlines Disaster of September 1, 1983,* 597 F.Supp. 621, 622-23 (D.D.C.1984); *In re "Agent Orange" Product Liability Litigation,* 96 F.R.D. 582, 583 (E.D.N.Y.1983); *Tavoulareas v. Piro,* 93 F.R.D. 24, 29-30 (D.D.C.1981); *see generally* Marcus, *Myth and Reality in Protective Order Litigation,* 69 Cornell L.Rev. 1, 8 (1983) (noting "[t]he tendency of courts to enter protective orders, sometimes sua sponte, limiting the use of *all* information produced through discovery") (footnotes omitted). This method was used by the court in *Palmer v. Liggett Group, Inc.,* --- F.Supp. ----, Civ. Action No. 83-2445-MA (D.Mass. Feb. 25, 1985), a cigarette products liability suit very similar to the one here. It was, of course, used by the magistrate in this case. *See supra* at n. 4.

There may be cases in which the document-by-document approach adopted by the district court, which deters over-designation of confidentiality and imposes heavier costs on parties making the confidentiality designation, will be preferable. A case in which the district court has reason to believe that virtually all confidentiality designations will be spurious may be such a case. Our purpose in extending the discussion is to explain that the district court erred to the extent that it felt *obliged* to utilize the document-by-document approach to avoid shifting the burden of proof of confidentiality, and to commend the umbrella approach for consideration of the district courts in this circuit in complex cases.

VII. *CONCLUSION*

Because of the district court's misinterpretation of *Seattle-Times v. Rhinehart* and its consequent errors in defining the appropriate good cause standard and its own scope of review of the magistrate's findings, we will grant the writ.

785 F.2d 1108, 54 USLW 2485, 81 A.L.R. Fed. 443, 4 Fed.R.Serv.3d 170

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.