# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, | |
| Defendants/Counterclaim Plaintiffs. | **REDACTED PUBLIC VERSION** |

## PLAINTIFF LG.PHILIPS LCD CO., LTD.'S OBJECTIONS TO SPECIAL MASTER'S FEBRUARY 21, 2007 REPORT AND RECOMMENDATIONS

March 7, 2007

THE BAYARD FIRM
Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

# TABLE OF CONTENTS

**Page**

I.    NATURE & STAGE OF THE PROCEEDINGS ................................................... 1

II.   SUMMARY OF ARGUMENT ........................................................................ 1

III.  STATEMENT OF FACTS ............................................................................ 2

IV.   ARGUMENT ........................................................................................... 4

    A.    Legal Standards ............................................................................ 5

    B.    The Court and the Special Master Have the Authority to Compel ViewSonic to Categorize its Products by Mounting System ..................... 5

          1.    LPL Previously Tried to Get ViewSonic to Group Products by Mounting System ........................................................ 6

          2.    ViewSonic Should Categorize its Products in order to Expedite and Limit Discovery ........................................... 8

                a.    ViewSonic Refuses to Produce OEM Documents ........... 8

                b.    ViewSonic Has Not Made All Products Available for Inspection .................................................... 9

          3.    This Court Has Awarded Similar Relief in a Previous Case ....... 10

    C.    Special Master Misinterpreted LPL's Correspondence to ViewSonic .................................................................................. 13

V.    CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

Page

## Cases

*Gov't of the Virgin Islands v. Fahie,*
  419 F.3d 249 (3d Cir. 2005)............................................................................ 11
*IP Innovation LLC v. Sharp Corp.,*
  219 F.R.D. 427 (N.D. Ill. 2003)................................................................... 6, 12
*Macrovision Corp. v. VSA Ltd.,*
  Civ. Action No. 88-315-FR, 1989 WL 112808 (D. Or. Sept. 20, 1989) ...................... 11
*Wisniewski v. Johns-Manville Corp.,*
  812 F.2d 81 (3d Cir. 1987)............................................................................. 12

## Rules

Fed. R. Civ. P. 53 ............................................................................................ 1
Fed. R. Civ. P. 53(g) ......................................................................................... 5
Fed. R. Civ. P. 53(g)(1)...................................................................................... 5

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), through counsel and pursuant to Fed. R. Civ. P. 53, submits its Objections to the Special Master's February 21, 2007 Report and Recommendations Regarding LPL's Motion to Compel ViewSonic Corporation to Work Promptly With LPL to Categorize its Products into Mounting Systems or Mounting Categories (D.I. 487) (the "Report").[1]

## I.    NATURE & STAGE OF THE PROCEEDINGS

This is a patent infringement case. LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting systems used in visual display products such as liquid crystal display ("LCD") televisions, computer monitors and laptop computers.

Discovery in this case is ongoing, but non-expert and all third party discovery closes on March 30, 2007. The parties have scheduled depositions of party witnesses on almost every day in March. The Defendants began taking depositions of LPL's witnesses on February 26, 2007. LPL will begin taking depositions of Defendants' witnesses on March 12, 2007.   This matter is set for a jury trial, which will begin on January 21, 2008. (D.I. 198.)

## II.    SUMMARY OF ARGUMENT

The Special Master should have ordered ViewSonic to categorize its products by mounting system. First, the Special Master and this Court have authority to supervise discovery and fashion appropriate relief. Because less than one month remains in the fact discovery period, because ViewSonic has delayed in producing all of its responsive

---

[1] The Report is not listed on the Court's docketing system. The Special Master served copies of the Report on the parties on or about February 21, 2007. A copy of the Report is attached as Exhibit 1.

documents and because ViewSonic has inhibited LPL's ability to inspect or acquire

samples of ViewSonic's products, LPL needs the Court to order ViewSonic to generate

an index that categorizes its products by mounting system.  In fact, in a previous case

involving these same parties, this Court fashioned relief that is nearly identical to the

relief LPL seeks.  Second, the Special Master mistakenly characterized a letter from LPL

to ViewSonic as suggesting that LPL finds ViewSonic's production of technical

documents to be sufficient to enable LPL to determine whether the products related to

those documents infringe the Patents-in-Suit.  To the contrary, LPL's letter actually

confirmed that ViewSonic's production is insufficient.

　　　　LPL originally requested that ViewSonic and all of the Defendants categorize

their products back in August 2006, so that the parties could streamline their discovery

efforts.  Defendants refused.  However, ViewSonic has also not provided all of the

discovery that LPL seeks, so LPL requests that this Court reject the findings in the

Special Master's Report and order ViewSonic to generate an index that categorizes its

products based on the mounting system used.

## III.    STATEMENT OF FACTS

　　　　LPL served Defendant ViewSonic Corporation ("ViewSonic") with its Second

Set of Requests for Production of Documents and Second Set of Interrogatories on

November 29, 2005.  (D.I. 225-226.)  After struggling to get ViewSonic to fully respond

to these discovery requests, particularly Document Requests 2-5, 18, 28, 29, 38-41, 46-48

and 51, on September 27, 2006, LPL filed its Motion to Compel ViewSonic to Provide

Technical and Mounting Related Documents (the "Motion to Compel").

The Special Master held his first hearing on LPL's Motion to Compel – along with numerous other discovery motions that the parties had filed – on December 28, 2006 (the "December Hearing"). By that time, LPL had filed a similar motion to compel against the Tatung Defendants, along with numerous other discovery motions. Notably, during the December Hearing, the Special Master ordered the Tatung Defendants to categorize their visual display products by mounting system. (*See* Hr'g Tr. at 188:6-206:7 (Dec. 28, 2006) (D.I. 384), cited portions of which are attached as Exhibit 6.) As he was ordering the Tatung Defendants to perform this task, the Special Master addressed counsel for ViewSonic and stated, "I expect ViewSonic has been paying very close attention…." (*Id.* at 205:8-13.)

Following the December Hearing, the parties continued to negotiate over their various discovery disputes. During one of the parties' meet-and-confer sessions in January 2007, LPL inquired as to when it would be receiving product categorizations by mounting system. ViewSonic was quick to restate the position it had taken during the December Hearing: that it did not find itself under any obligation to provide such categorizations and that it would not do so. (*See, e.g., id.* at 205:15-206:5.)

Because it was clear that ViewSonic would not provide categorizations of its products absent an order to do so, on January 26, 2007, LPL filed its Motion to Compel ViewSonic to Work Promptly with LPL to Categorize its Products into Mounting Systems or Mounting Categories (the "Categorization Motion").[2] In its Categorization Motion, which invoked the same Document Requests addressed in its previous Motion to

---

[2] LPL's Categorization Motion is not listed on the Court's docketing system. A copy of the Categorization Motion is attached as Exhibit 2.

653724-1

Compel, LPL argued that it needed ViewSonic to categorize its products because ViewSonic's production of technical documents was (and still is) inadequate and because so many of ViewSonic's visual display products are not available to LPL for inspection. LPL thus found itself in the difficult position of trying to establish its patent infringement claims without having complete production of technical drawings and related technical documents and without being able to obtain samples of ViewSonic's products for inspection. For these reasons, LPL asked the Special Master to compel ViewSonic to group its products according to the mounting system used in each product, so that LPL could more efficiently identify infringing products. Notably, in an effort to streamline discovery and mitigate burdens on all parties, LPL had asked all of the Defendants to undertake a similar categorization in August 2006. (*See* Letter from L. Brzezynski to T. Roman (Aug. 16, 2006), a copy of which is attached as Exhibit 8.) Defendants, however, refused.

On February 21, 2007, the Special Master denied LPL's request for ViewSonic to categorize its products by mounting system. (*See* Ex. 1.) The Special Master's reasoning, however, was flawed.

## IV.    ARGUMENT

The Special Master should not have denied LPL's requested relief. In reaching the conclusions that are expressed in the Report, the Special Master erred in two significant ways. First, the Special Master improperly concluded that he lacks authority to require ViewSonic to create something that does not necessarily exist.[3] In fact, to the

---

[3] LPL will assume only for purposes of this brief that ViewSonic does not ordinarily categorize its products by mounting system. LPL in no way concedes, however, that ViewSonic does not maintain these categorizations as part of its ordinary business operations.

4

contrary, in another case involving these parties, this Court ordered the same relief that

LPL now seeks.  Second, the Special Master misinterpreted correspondence from LPL's

Counsel to ViewSonic as suggesting that ViewSonic's production of technical documents

was sufficient when, in fact, LPL was seeking additional document production because

ViewSonic's production was actually ***not*** sufficient.

Because the Special Master erred in reaching the conclusions expressed in the

Report, the Special Master's determinations should be rejected.  This Court should find

that ViewSonic has not fulfilled its obligations to produce documents fully responsive to

LPL's Document Requests and, in order to help the parties and this Court narrow issues

for trial, View should be required to categorize its own products by the type of mounting

system that they use.

### A.    Legal Standards

Pursuant to Fed. R. Civ. P. 53(g), a discovery master's findings of fact and

conclusions of law are reviewed *de novo* by the District Court.  The Court may wholly or

partly adopt, modify or reject any of the master's recommendations.  *See* Fed. R. Civ. P.

53(g)(1).

### B.    The Court and the Special Master Have the Authority to Compel ViewSonic to Categorize its Products by Mounting System

The inventions claimed by the Patents-in-Suit pertain to innovative methods of

rear mounting flat panel display devices into finished products such as laptops, desktop

computer monitors and televisions.  The Patents-in-Suit disclose a method and a

mounting system for mounting the flat panel display devices to the rear housing of the

product.  Before LPL's invention, flat panel display devices were not mounted from

behind to the rear housing. Instead, the flat panel display devices were mounted to the

5

housing using front mounting and/or side mounting methods.  Thus, LPL is asking the
Court to order ViewSonic to group its products according to mounting system, so that
irrelevant, non-infringing products may be excluded from this case.

### 1.    LPL Previously Tried to Get ViewSonic to Group Products by Mounting System

The Defendants, including ViewSonic, make hundreds of different flat panel
display products.  (*See* ViewSonic's Am. Supp. Resps. to LPL's 2d Set of Interrogs. at
Interrog. No. 2 (listing all LCD products that ViewSonic has made since 2000) (D.I.
489), a copy of which is attached as Exhibit 5.)  When it commenced the instant lawsuit,
LPL had identified one product made by each of the Defendants that infringed the
Patents-in-Suit and described that the infringing products include other products that
infringe the Patents-in-Suit that are not yet identified .  (*See* Compl. at ¶¶ 18, 23, 28 & 33
(D.I. 1).)  Initially, all of the Defendants, including ViewSonic, refused to provide LPL
with discovery pertinent to any products other than the ones specifically identified in the
Complaint, regardless of whether the Defendants made any products that contain similar
mounting systems.  LPL, on the other hand, insisted that the Defendants needed to
produce information about all of their flat panel display products so that LPL could
determine which other products have a rear-mounting system similar to the ones used by
the products identified in the Complaint and claimed in the Patents-in-Suit.  *See, e.g.*, *IP
Innovation LLC v. Sharp Corp.*, 219 F.R.D. 427, 429 (N.D. Ill. 2003) (allowing plaintiff
to seek discovery against unaccused products after providing defendant with method to
narrow its search for potentially infringing products).

As discovery and *Markman* deadlines under the operative scheduling order
loomed, LPL and the Defendants negotiated to try to resolve their impasse.  In September

2006, the parties reached an agreement by which the Defendants would produce their technical-related documents for each of the products identified in response to Interrogatory 2. Although LPL did not believe that the Defendants' approach was consistent with the parties' agreements, the Defendants elected to produce only some technical documents for their products and expected that LPL would rely solely on that sampling to identify any other products that might infringe the Patents-in-Suit. LPL disapproved of this approach because, for example, it ignored the fact that many of LPL's Document Requests sought "all" documents related to various technical topics, (*see, e.g., LPL's 2d Set of Request For Production at Doc. Reqs. 4-5, a copy of which is attached as Exhibit 4*), not just a sampling of documents that might, in the Defendants' eyes, be "sufficient to show" the type of mounting system that each product uses.

LPL tried to meet the Defendants halfway by proposing that the Defendants first group their products by mounting system, such that LPL would then seek further discovery only on the groups that it believed were likely to infringe the Patents-in-Suit. (*See* Ex. 8.) The Defendants rejected LPL's request. (*See* E-mail from T. Roman to L. Brzezynski (Aug. 10, 2006), a copy of which is attached as Exhibit 7.) As a result, the parties ultimately agreed to have the Defendants begin a rolling production of technical documents. However, the parties' meeting of minds diverged: LPL expected that the Defendants would gradually produce all of their technical documents, pursuant to LPL's long-standing discovery request, but the Defendants apparently thought that LPL should first review a subset of documents that Defendants themselves selected for production and then try to identify infringing products from that subset.

7

After struggling unsuccessfully to get the Defendants to agree to produce *all* responsive technical documents, LPL filed its Motion to Compel on September 27, 2006. Between the date that LPL filed the Motion to Compel and the date that the Motion was actually heard, December 28, 2006, ViewSonic did continue to produce some responsive documents. However, most of the documents that ViewSonic has produced to date are still not sufficient in and of themselves for LPL to determine for certain whether or not the products related to those documents infringe the Patents-in-Suit.

### 2. ViewSonic Should Categorize its Products in order to Expedite and Limit Discovery

LPL, through its Categorization Motion, is asking the Court to order ViewSonic to do exactly what LPL tried to get ViewSonic to do back in August 2006, when LPL initially proposed that the parties limit discovery based on the Defendants' groupings of their own products. (*See* Ex. 8.) ViewSonic is uniquely able to evaluate its own products – which number in the hundreds – and determine whether any use a rear-, side-, front- or any other mounting systems. LPL asks ViewSonic to categorize its own products because ViewSonic has refused to produce all responsive technical documents and has refused, until very recently, to make samples of its products available to LPL for inspection.

### a. ViewSonic Refuses to Produce OEM Documents

LPL would be able to categorize ViewSonic's products itself if ViewSonic had produced all responsive technical documents when they were originally requested more than one year ago. (*See generally* Ex. 4 & 5 (served on Nov. 29, 2005).) Notably, ViewSonic has refused to produce responsive documents used by its original equipment manufacturers ("OEMs") to assemble ViewSonic's products. These OEM documents are

8

likely to provide the detail that LPL needs in order to identify all infringing products. However, despite the fact that ViewSonic's agreements with its OEMs provide ViewSonic with unfettered access to its OEMs documents at any time, ViewSonic has refused to produce them, even though the Special Master has explicitly ordered ViewSonic to do so. (*See generally* Sp. Master's Report & Recomms. (Feb. 14, 2007), a copy of which is attached as Exhibit 14; ViewSonic's Objecs. to Sp. Master's Report (D.I. 526).) With discovery set to close on March 30, 2007, time is of the essence.

### b.    ViewSonic Has Not Made All Products Available for Inspection

Additionally, ViewSonic has not made samples of all of its products available for inspection. LPL has tried to purchase ViewSonic products on the open market, but very few of the hundreds of products identified in ViewSonic's response to Interrogatory 2, (*see* Ex. 5), are available for retail sale. In fact, LPL has specifically requested that ViewSonic produce inventory lists, (*see* Ex. 4 at Doc. Req. 51), so that LPL can determine when ViewSonic's products were sold and what products ViewSonic has in its possession, but ViewSonic has refused.[4]    LPL has even asked ViewSonic to confirm that it has preserved its inventory of products, but ViewSonic has not responded to LPL's request. (*See* Letter from C. Connor to S. Miller (Feb. 14, 2007), a copy of which is attached as Exhibit 9.) Finally, although ViewSonic has allowed LPL to inspect many of its products, those inspections amount to only a fraction of all of ViewSonic's products and ViewSonic has recently not fulfilled its agreement to make an additional subset of products available to LPL for inspection in Delaware or Washington, DC.

---

[4] This matter was addressed in LPL's September 27, 2006 motion to compel documents related to inducement and damages. The Special Master has not yet ruled on the relief requested by LPL.

653724-1

ViewSonic has refused to produce all of its technical documents. ViewSonic has refused, even in the face of the Special Master's order, to produce technical documents used by its OEMs to manufacture ViewSonic's products. ViewSonic has refused to provide samples of its products to LPL for inspection. Under these circumstances, LPL cannot possibly identify all of the ViewSonic products that infringe the Patents-in-Suit. For these reasons, LPL asked the Special Master to order ViewSonic to remedy its inadequate discovery production by categorizing its products and, in doing so, streamline the discovery process. The Special Master declined, however, thinking that he lacked authority to do so. (*See* Ex. 1 at 4.)

### 3.    This Court Has Awarded Similar Relief in a Previous Case

The Special Master and this Court do have authority to grant the relief that LPL seeks. In a previous case involving these same parties, *LG.Philips LCD Co., Ltd. v. Tatung Co., Tatung Co. of Amer., Inc., Chungwha Picture Tubes Ltd. and ViewSonic Corp.*, Civ. Action No. 05-292-JJF (the "292 Case"), this Court ordered one of the defendants to do exactly what LPL is asking ViewSonic to do in this case. (*See* Order (May 1, 2006), a copy of which is attached as Exhibit 10.) In the 292 Case, LPL had been trying to get Defendant Chungwha Picture Tubes Ltd. ("CPT") to generate a document that would summarize, in English, the volume of documents that had been produced and inform LPL which of CPT's products "use which types of tape carrier packages," "which modules and products are manufactured using electrostatic discharge guard rings" and which of "Defendants' mask works files... relate to which products." (*See id.*)

As the Special Master noted, ViewSonic claims that it does not maintain a categorization of its products by mounting system in the ordinary course of its business

and, because of that, the Special Master concluded that he was powerless to force

ViewSonic to generate such a categorized list. (*See* Ex. 1 at 4.) Yet, this Court rejected

the same types of arguments in the 292 Case and obviously determined that it did have

the authority to compel CPT to generate the index described in the Court's May 2005

Order. (*See* Ex. 10.)

In the 292 Case, CPT argued that it had produced all of the documents that LPL

would need to generate, on its own, the type of index that LPL was asking CPT to create.

(*See, e.g.*, 292 Case Hr'g Tr. at 8:22-11:14 (Apr. 25, 2006), a copy of which is attached

as Exhibit 11.) In CPT's counsel's words, CPT did not want to be required to "spoon

feed" information to LPL and did not want to be compelled "to do [LPL's] homework for

them." (*Id.*) However, LPL countered that, similar to the situation here, it was unable to

determine the facts it needed to learn from the documents that CPT had produced. (*Id.* at

55:22-61:3.) Furthermore, LPL noted that the categorization list that it sought from CPT

did not require CPT to disclose any protected attorney work product because the list

would only involve a mechanical summary of information and, thus, did not did not

contain any of their attorneys' mental impressions, conclusions, opinions or legal theories

concerning the litigation. (*See id.* at 60:5-61:3.) *See Gov't of the Virgin Islands v. Fahie*,

419 F.3d 249, 257 (3d Cir. 2005) (rejecting government's effort to withhold report from a

database as work product); *see also Macrovision Corp. v. VSA Ltd.*, Civ. Action No. 88-

315-FR, 1989 WL 112808 at *3 (D. Or. Sept. 20, 1989) (where responding party's data is

only usable to discovering party if viewed on respondent's devices, then respondent may

be required to "translate the data into usable form").

This Court's determination in the 292 Case is consistent with federal standards applicable to discovery management and the Court should enter a similar order in this case. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion."). ViewSonic has resisted LPL's every effort to obtain complete and relevant discovery. Because of ViewSonic's actions, LPL has not been able to identify all of ViewSonic's infringing products. *See IP Innovation*, 219 F.R.D. at 429. Without this ability, LPL cannot possibly obtain full and fair resolution of the issues in this case and cannot possibly evaluate the proper measure and extent of any damages caused by ViewSonic's infringement.

LPL is not asking ViewSonic to do anything that ViewSonic is incapable of doing. To the contrary, ViewSonic is uniquely aware of the mounting system assembly techniques used in its products and is certainly able to categorize its products accordingly. Further, such categorization by ViewSonic would not have been necessary if ViewSonic had simply produced all of its technical documents and product samples in a timely fashion, so that LPL could have evaluated and categorized ViewSonic's products independently. As it stands, however, ViewSonic's delay has pushed LPL to the brink of the close of discovery, and LPL simply has no time to wait for ViewSonic to finally comply with its discovery obligations. This Court should reject the incorrect findings in the Special Master's Report and require ViewSonic to group its own products according to the mounting systems used in each.

653724-1

C.    **Special Master Misinterpreted LPL's Correspondence to ViewSonic**

In the Report, the Special Master based his recommendations and conclusions on

a single letter sent by Counsel for LPL to Counsel for ViewSonic.  (*See* Ex. 1 at 3-4.)

That letter, dated September 26, 2006, related to an initial wave of technical documents

that ViewSonic produced on September 15, 2006.  (*See* Letter from R. Ambrozy to S.

Miller (Sept. 26, 2006), a copy of which is attached as Exhibit 3.)  The letter stated that:

> We have completed our initial review of the exploded view
> documents produced on September 15, 2006.  Based on
> that review, we have determined that all of the monitors
> identified in that September 15th production *potentially
> infringe* the Patents-in-Suit.  Accordingly, please produce
> all documents responsive to LPL's pending document
> requests for these monitors.  Such LPL Document Requests
> include at least Nos. 2-5, 18, 28-29, 38-41, 46, 47 and 55.
> Please produce these documents on a rolling basis.
>
> Also, please confirm that, as we have discussed multiple
> times, *you are producing the balance of the exploded view
> documents on a rolling basis*.

*Id.* (emphasis added).

The Special Master interpreted LPL's letter to mean that the ViewSonic "Service

Manuals produced on September 15, 2006 were sufficient from which LPL could make a

determination [about infringement], and that LPL expected the Service Manuals not yet

produced would also be sufficient."  (Ex. 1 at 3-4.)  However, LPL has never stated that

ViewSonic's limited production of service manuals is sufficient for LPL to conclusively

determine that the ViewSonic products to which those manuals relate infringe the

Patents-in-Suit.  As LPL stated in its letter, the limited production is sufficient only to

determine that the products *potentially* infringe, and LPL was clearly asking ViewSonic

to complete its document production.  (*See* Ex. 3.)

Most of the limited technical documents that ViewSonic has produced to date permit LPL to determine only that many of the products depicted in those documents *may* use infringing technology. Accordingly, LPL has continuously insisted that ViewSonic produce *all* technical documents related to *all* of the products it identified in its responses to Interrogatory No. 2. In fact, at least LPL's Document Requests 4 and 5 specifically seek "all" responsive documents and LPL has never agreed to limit those Requests in any way. (*See* Ex. 4.) LPL has never agreed to limit Document Requests 4 and 5 to only documents that might be, in the eyes of ViewSonic alone, sufficient to determine the mounting systems used.

There is no question that ViewSonic has failed to produce all of its responsive technical documents. As a primary example, which was discussed further above, ViewSonic refuses to produce documents held by its OEMs, even though its agreements with those OEMs provide ViewSonic with a legal and contractual right to have unencumbered access to those documents at any time. The Special Master agreed that ViewSonic must produce these documents, (*see* Ex. 14), but ViewSonic has refused to do so.

Additionally, also as discussed above, ViewSonic has not made all of its products available to LPL for inspection and has delayed LPL's inspection of the products that ViewSonic has made available. In fact, after LPL asked to be given access to ViewSonic's products, ViewSonic began by pointing LPL to the products available on ViewSonic's website, which constituted only a small fraction of the total number of products listed on ViewSonic's response to Interrogatory 2. (*Compare, e.g.,* Letter from S. Miller to C. Connor (Sept. 28, 2006), a copy of which is attached as Exhibit 12, *with*

Letter from C. Connor to S. Miller (Sept. 29, 2006), a copy of which is attached as Exhibit 13.)  ViewSonic finally relented after the December Hearing and acknowledged that, contrary to its earlier representations, ViewSonic actually maintains at least three types of product samples that are *not available for sale* on its website.  (*See* Ex. 9 at 2 (noting that ViewSonic has only recently disclosed the existence of products that are not available for sale on its website, known as (i) "dinosaurs," (ii) C-Stock, which are available to employees, and (iii) "D" products, which are marked for destruction).)  Although ViewSonic has recently permitted LPL to inspect many of its products, this inspection has, so far, covered only 44 of the total 246 products listed in ViewSonic's response to Interrogatory 2.  (*See, e.g.*, Letters from D. Auito to T. Roman (Feb. 13 and 23, 2007), copies of which are attached as Exhibits 15 and 16, respectively.)

ViewSonic's September 15 production of service manuals for only some of its products was sufficient to determine only that those products *may* use infringing technology.  Most of ViewSonic's subsequent production of technical documents, in and of themselves, do not provide any additional detail, such that LPL cannot conclusively determine whether the products to which the documents relate infringe the Patents-in-Suit.  ViewSonic's limited production of technical documents and failure to make its products available for inspection has left LPL facing the close of discovery without the information it needs to comprehensively identify all ViewSonic products that infringe the Patents-in-Suit.

Because of ViewSonic's intransigence, LPL has returned to the proposal that it made to the Defendants over seven months ago:  that ViewSonic agree to evaluate their own products and categorize those products based on the mounting systems they use.

15

(*Cf.* Ex. 8.)  The Special Master apparently misinterpreted LPL's September 26 letter to mean that LPL believes ViewSonic's production to be adequate or in any way sufficient to determine infringement.  As a result of this misinterpretation of LPL's letter, the Special Master reached an errant conclusion, which then formed a basis for his denial of LPL's Categorization Motion.  To be clear, LPL has never found most of ViewSonic's production of technical documents to be sufficient in and of itself to determine infringement and LPL's September 26 letter actually reaffirms LPL's position.

LPL respectfully requests that the Court reject the Special Master's conclusions and determinations and order ViewSonic to provide LPL with a categorization of the products listed in ViewSonic's response to Interrogatory 2 based on the mounting system used in each of those products.

653724-1

V.   **CONCLUSION**

LPL respectfully requests that the Court reject the Special Master's determinations in the February 21 Report.  LPL requests that the Court require ViewSonic immediately to provide LPL with a chart that categorizes every one of the products identified in ViewSonic's response to Interrogatory 2 by the mounting system used to mount the flat panel display device inside those products.  LPL also requests that the Court order any additional relief that may be warranted.

March 7, 2007                              THE BAYARD FIRM

                                           /s/ Richard D. Kirk (rk0922)
                                           Richard D. Kirk
                                           Ashley B. Stitzer
                                           222 Delaware Avenue, Suite 900
                                           P.O. Box 25130
                                           Wilmington, DE  19899-5130
                                           (302) 655-5000
                                           rkirk@ bayardfirm.com
                                           Counsel for Plaintiff
                                           LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzeznski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

17

653724-1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 12, 2007, he electronically filed

the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


The undersigned counsel further certifies that copies of the foregoing document

were sent by email to the above counsel on March 12, 2007, and will be sent by hand on

March 12, 2007, and were sent by email on March 12, 2007, and will be sent by first

class mail on March 12, 2007, to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067


/s/ Richard D. Kirk (rk922)
Richard D. Kirk

571447-1