# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

      Plaintiff,

      v.

TATUNG COMPANY, et al.,

      Defendants.

Civil Action No. 04-343 (JJF)

## PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT VIEWSONIC CORPORATION

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), by counsel and pursuant to Fed. R. Civ. P. 34, requests that Defendant ViewSonic Corporation ("ViewSonic") produce the designated documents for inspection and copying and serve a written response to these Requests within thirty (30) days from the date of service to the undersigned counsel at McKenna Long & Aldridge LLP, 1900 K Street, N.W., Washington, D.C. 20006. In lieu thereof, ViewSonic may produce and deliver to the undersigned counsel copies of such documents.

## DEFINITIONS

1.     For purposes of these document requests, "Interrogatory No. 2" refers to Interrogatory No. 2 in Plaintiff's Second Set of Interrogatories to ViewSonic.

2.     ViewSonic should refer to Plaintiff's Second Set of Interrogatories to ViewSonic, for the definition or meaning of other terms used herein, which definitions and meanings are incorporated herein by reference.

3.     All document requests and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting LPL's position in this case regarding claim construction or any other issue. LPL specifically reserves the right to use

609983v1

different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

## INSTRUCTIONS

For purposes of these document requests, the following instructions apply:

1.     If the Defendant believes that any Document Request contained in this set of Document Requests is unclear, unintelligible or because of its wording otherwise prohibits or prevents the Defendant from responding to that Document Request, Plaintiff requests that the Defendant immediately request clarification of that Document Request from the Plaintiff.

2.     In producing the documents described below, Defendant should furnish all documents within your possession, custody or control or that of any of your agents or representatives.

3.     In response to the following set of Document Requests, as to each document withheld in whole or in part from production on the basis of a claim of privilege or immunity, Defendant shall state the following outlined information.  Defendant is requested to submit this information on the date and at the time of production of documents and things responsive to these requests.

(a)     identification of the document being withheld, including separately each copy or draft;

(b)     the nature of and basis for the privilege or immunity asserted;

(c)     the kind of document (e.g., letter, memorandum, facsimile, etc.);

(d)     the number of pages comprising the document;

(e)     the present location and custodian of the document;

(f)     the date it bears, if any, as well as the date it was prepared if different;

(g)     the date the document was prepared;

(h)    whether the document was sent, and if so, the date it was sent;

(i)    the name, address, and title of its author, its addressee, each person to whom a copy has been sent or who received a copy, and each person known to have read the document; and

(j)    a description of the subject matter and/or contents of the document.

4.    These requests shall be deemed to be continuing and responses to these Document Requests are subject to supplementation in accordance with Fed. R. Civ. P. 26(e).

## REQUESTS FOR THE PRODUCTION
## OF DOCUMENTS AND THINGS

1.    All documents that you relied upon, identified, and/or agreed to produce in answering Plaintiff's Second Set of Interrogatories to you.

2.    Documents sufficient to determine the structural components and assembly thereof (including, for example, the screw and hole locations used in mounting) concerning each type of visual display product responsive to Interrogatory No. 2.

3.    Documents sufficient to determine how the LCD module is attached, mounted, and/or fixed within each type of visual display product with an LCD module that is responsive to Interrogatory No. 2.

4.    All technical specifications and manuals corresponding to each of your visual display products responsive to Interrogatory No. 2.

5.    All final blueprints and design documents used to manufacture and assemble each type of visual display product responsive to Interrogatory No. 2.

6.    For each type of visual display product responsive to Interrogatory No. 2, documents sufficient to determine the quantity and price of each product manufactured each month by or for ViewSonic since January 1, 2002.

609983v1

3

7.    For each type of visual display product responsive to Interrogatory No. 2, documents sufficient to determine the quantity and price of each product imported into the U.S. each month by or for ViewSonic since January 1, 2002.

8.    For each type of visual display product responsive to Interrogatory No. 2, documents sufficient to determine the quantity and price of each product shipped each month to the U.S., or outside the U.S. for possible use or sale in the U.S., by or for ViewSonic since January 1, 2002.

9.    For each type of visual display product responsive to Interrogatory No. 2, documents sufficient to determine the quantity and price of each product sold or offered for sale each month by or for ViewSonic since January 1, 2002.

10.    All orders, invoices, bills of sale, and bills of lading since December 1, 2002 concerning the purchase or sale of visual display products responsive to Interrogatory No. 2.

11.    Documents sufficient to determine the per unit price paid to you, and the suggested price(s) for resale and/or retail sale, since January 1, 2002, concerning each visual display product responsive to Interrogatory No. 2.

12.    Documents sufficient to determine the per unit gross profit, net profit, and profit margin, since January 1, 2002, concerning each visual display product responsive to Interrogatory No. 2.

13.    Documents sufficient to identify each customer, distributor, reseller, and/or retailer authorized to import, distribute, and/or sell in the U.S., since December 1, 2002, any visual display products responsive to Interrogatory No. 2.

14.    For each type of visual display product responsive to Interrogatory No. 2, documents sufficient to identify each person in the U.S. to whom you sold or shipped each

product, and the quantity and price of products sold and shipped to each person, for each month since December 1, 2002.

15.    For each type of visual display product responsive to Interrogatory No. 2, documents sufficient to identify each person that imported, received, purchased, distributed, sold and/or offered for sale in or to the U.S. each product, and the quantity of products imported, received, purchased, distributed, and sold to each person for each month since December 1, 2002.

16.    All contracts and related documents reflecting, since December 1, 2002, each order from and sale to U.S. customers of any types of visual display products responsive to Interrogatory No. 2.

17.    All reports and data compilations showing actual monthly sales (in units and U.S. dollars) by or for you since January 1, 2002, concerning each type of visual display product responsive to Interrogatory No. 2.

18.    All documents concerning communications between you and any supplier, manufacturer, customer, distributor, reseller, or retailer since December 1, 2002, regarding assembly of or the structural components used for assembly of (including, for example, with respect to the screw and hole locations used in mounting) any type of visual display product responsive to Interrogatory No. 2.

19.    All documents (for example, but not limited to, correspondence, agreements, and contracts) concerning any and all efforts by you, since the time that you first learned about either of the Patents-in-Suit, to avoid infringing the Patents-in-Suit.

20.    All documents concerning all attempts by or for you to design around the Patents-in-Suit.

609983v1

21.    All documents concerning when and how you first learned of the Patents-in-Suit.

22.    All correspondence concerning the Patents-in-Suit or any Counterpart thereof, including, without limitation, internal memoranda and correspondence between you and your officers, agents, consultants, subcontractors, and/or employees.

23.    All documents concerning or reflecting your interpretation of any claims of the Patents-in-Suit, including, for example, all documents that support your claim interpretation(s) or that you deem relevant for purposes of interpreting any claims of the Patents-in-Suit.

24.    All documents concerning any opinion of counsel regarding the Patents-in-Suit, including, for example, all opinions, draft opinions, notes, analysis, and communications regarding each opinion, and all documents considered for the purposes of each opinion.

25.    All documents under which you or your customer(s) is or are indemnified in whole or in part against infringement of the Patents-in-Suit, whether or not the documents mention the Patents-in-Suit, including, but not limited to, any documents constituting or incorporating any indemnification agreements or provisions to which you are a party or a third-party beneficiary.

26.    For all types of visual display products responsive to Interrogatory No. 2 that are, have been, or may be available in the U.S., documents sufficient to determine the quantity of each type of visual display product that you manufactured, imported, shipped, and/or sold each month, and the amount of revenue generated each month for all such shipments and sales since January 1, 2002.

27.    All documents reflecting or establishing projections, forecasts, and/or goals since January 1, 2000, regarding manufacturing and/or sales (in units and U.S. dollars) for each type of visual display product responsive to Interrogatory No. 2.

28.    All documents concerning any impact that assembly of the structural components (including, for example, with respect to the screw and hole locations used in mounting) has or may have on the marketability, price, cost, manufacturing, sale, or performance of any types of visual display products responsive to Interrogatory No. 2.

29.    All documents concerning the size of the viewing display area and/or the non-display area of any types of visual display products responsive to Interrogatory No. 2, including, for example, documents discussing advantages, benefits and/or disadvantages regarding display area and/or non-display area sizes.

30.    All documents discussing any relationship between the size of the viewing display area and the size of the non-display area.

31.    All documents concerning any effect that the size of the viewing display area and/or the ratio of display area to non-display area may have on the marketability, price, sale, and/or value of any types of visual display products responsive to Interrogatory No. 2.

32.    All documents reflecting the advertising, marketing, promotion of, and/or offer to sell in or to the U.S. since January 1, 2002, any types of visual display products responsive to Interrogatory No. 2, including, without limitation, brochures, marketing plans, sales literature, advertisements, and product descriptions and specifications.

33.    Documents sufficient to identify the persons, units, and divisions responsible for the advertising, marketing and sale of the types of visual display products responsive to Interrogatory No. 2.

34.    Organizational charts, for example showing ViewSonic's units, divisions, departments, subsidiaries, affiliates, locations, and personnel, since January 1, 2002.

609983v1

7

35.    All patents and patent applications, whether filed or not, in which you have or have had any interest, related to the subject matter claimed or disclosed in the Patents-in-Suit.

36.    All documents concerning the factual basis for your contention that any product, publication, patent, or other document or thing qualifies as prior art under U.S. law, including, but not limited to, the following:

(a)    Pixelvision products, such as the SGT 115

(b)    CTX products, such as the Panoview 600

(c)    IBM products, such as the IBM 9052, IBM 9515, and IBM 39H7116

(d)    Apple products, such as the duo product line and flat panel display for the Apple II

(e)    Tatung products, such as L4KAS monitors

(f)    Hewlett-Packard products, such as the 1010 and/or 1010a

(g)    Sun products, such as the Voyager and related patents

(h)    Compaq products, such as the 640

(i)    ViewSonic products, such as the VP140 and VPA138

(j)    Advantech products, such as PPC-140T

(k)    Summitomo products

(l)    LG Electronics Inc. products

(m)    LG Semicon Co., Ltd. products

(n)    Hitachi products, such as the VisionDesk

(o)    Products supported by Ergotron, Inc.

(p)    Samsung products

609983v1

8

(q)    Nokia products, such as the Nokia 300Xa Super-TFT 13.3 inch LCD display

(r)    "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE – The International Society for Optical Engineering

(s)    U.S. Pat. No. 5,041,965

(t)    U.S. Pat. No. 5,119,204

(u)    U.S. Pat. No. 5,570,267

(v)    U.S. Pat. No. 5,831,816

(w)    U.S. Pat. No. 5,844,772

(x)    U.S. Pat. No. 5,546,270

(y)    U.S. Pat. No. 6,188,569

(z)    U.S. Pat. No. 5,363,276

(aa)   U.S. Pat. No. 5,264,992

(bb)   U.S. Pat. No. 5,379,182

(cc)   U.S. Pat. No. 5,636,101

(dd)   U.S. Pat. No. 5,835,343

(ee)   U.S. Pat. No. 6,068,227

(ff)   U.S. Des. Pat. No. 356,077

(gg)   U.S. Des. Pat. No. 328,291

(hh)   JP 407020447A

(ii)   JP 4071711358A

(jj)   JP 4019190156A

(kk)   JP 406214511A

(ll)    JP 410117313A

(mm)   JP 08-268137

(nn)    JP 05-188810

(oo)    JP 09-190156

37.    All documents (for example, but not limited to, service manuals, design drawings, schematic drawings, assembly drawings, specifications, and photographs) concerning the structural assembly, and the components or methods related to structural assembly, regarding any product, publication, patent, or other document or thing that you contend qualifies as prior art, including, but not limited to, the following:

(a)    Pixelvision products, such as the SGT 115

(b)    CTX products, such as the Panoview 600

(c)    IBM products, such as the IBM 9052, IBM 9515, and IBM 39H7116

(d)    Apple products, such as the duo product line and flat panel display for the Apple II

(e)    Tatung products, such as L4KAS monitors

(f)    Hewlett-Packard products, such as the 1010 and/or 1010a

(g)    Sun products, such as the Voyager and related patents

(h)    Compaq products, such as the 640

(i)    ViewSonic products, such as the VP140 and VPA138

(j)    Advantech products, such as PPC-140T

(k)    Summitomo products

(l)    LG Electronics Inc. products

(m)    LG Semicon Co., Ltd. products

609983v1

10

(n)     Hitachi products, such as the VisionDesk

(o)     Products supported by Ergotron, Inc.

(p)     Samsung products

(q)     Nokia products, such as the Nokia 300Xa Super-TFT 13.3 inch LCD display

(r)     "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE – The International Society for Optical Engineering

(s)     U.S. Pat. No. 5,041,965

(t)     U.S. Pat. No. 5,119,204

(u)     U.S. Pat. No. 5,570,267

(v)     U.S. Pat. No. 5,831,816

(w)     U.S. Pat. No. 5,844,772

(x)     U.S. Pat. No. 5,546,270

(y)     U.S. Pat. No. 6,188,569

(z)     U.S. Pat. No. 5,363,276

(aa)     U.S. Pat. No. 5,264,992

(bb)     U.S. Pat. No. 5,379,182

(cc)     U.S. Pat. No. 5,636,101

(dd)     U.S. Pat. No. 5,835,343

(ee)     U.S. Pat. No. 6,068,227

(ff)     U.S. Des. Pat. No. 356,077

(gg)     U.S. Des. Pat. No. 328,291

(hh)     JP 407020447A

609983v1

11

     (ii)    JP 4071711358A

     (jj)    JP 4019190156A

     (kk)    JP 406214511A

     (ll)    JP 410117313A

     (mm)   JP 08-268137

     (nn)    JP 05-188810

     (oo)    JP 09-190156

38.    Documents sufficient to determine the brand name, model number, quantity, and price of every visual display product that you manufactured since January 1, 2002, for any person doing business in the U.S.

39.    Documents sufficient to determine the brand name, model number, quantity, and price of every visual display product manufactured by or for you in the U.S. since January 1, 2002.

40.    Documents sufficient to determine the brand name, model number, quantity, and price of every visual display product sold by or for you in the U.S. since January 1, 2002.

41.    For each shipment or sale of visual display products by or for you to any person doing business in the U.S. since January 1, 2002, documents sufficient to identify the persons involved and to determine the date, quantity of products, brand name, model number, price, payee, and terms of payment and delivery.

42.    All license agreements that you have entered into related to the subject matter claimed or disclosed in the Patents-in-Suit.

43.    All documents reflecting any policies, practices, or relevant factors that you have regularly used when negotiating potential license agreements since January 1, 1999.

609983v1

44.    All documents reflecting the methodology or basis that you have used since January 1, 1999, to negotiate or calculate the rate and/or amount of royalty regarding any patents comparable to the patents-in-suit and/or any subject matter comparable to the subject matter claimed or disclosed in the Patents-in-Suit.

45.    All documents relevant to the conception and/or reduction to practice of any invention related to any alleged prior art relied on by you in this case (including, for example, any product).

46.    Documents sufficient to determine the placement, purpose, and function of all fastening parts and elements (including, for example, screws and screw holes) within each type of visual display product responsive to Interrogatory No. 2.

47.    Documents sufficient to determine the placement, purpose, and function of all frames within each type of visual display product responsive to Interrogatory No. 2.

48.    Documents reflecting any communication between you and others (including, for example, customers, distributors, or suppliers) regarding any benefits and advantages concerning the visual display products responsive to Interrogatory No. 2.

49.    All documents concerning any investigation(s) or analysis undertaken by you or on your behalf regarding the validity of the Patents-in-Suit, including, for example, documents reflecting the date(s), scope, purpose, results, and persons with relevant knowledge.

50.    All documents concerning any investigation(s) or analysis undertaken by you or on your behalf regarding possible infringement of the Patents-in-Suit, including, for example, documents reflecting the date(s), scope, purpose, results, and persons with relevant knowledge.

51.    All inventory reports since January 1, 2002, that reference any types of visual display products responsive to Interrogatory No. 2.

52.     All sales reports since January 1, 2002, that reference sales of any types of visual display products responsive to Interrogatory No. 2.

53.     For each prior art reference or item on which you rely, all documents concerning how the alleged prior art reference or item qualifies as prior art under every section of Title 35 of the United States Code on which you rely, including, for example, documents reflecting: the first date, by whom, and how the alleged prior art was known or used in the U.S., patented or described in a printed publication in any country, and/or conceived and reduced to practice; the making, knowledge, use, or sale of the prior art; the authors and title of each patent, patent application, and article/publication; the date that each reference was issued, filed, or published; the number of each patent and patent application; and/or the country(ies) where each reference was issued, filed, or published.

54.     All documents and products that you contend qualify as prior art, including, but not limited to, patents, patent applications, and printed publications.

55.     All documents and products on which you rely to support any contention that any claims of the Patents-in-Suit are invalid.

56.     All documents that you submitted to, filed with, and/or received from any U.S. government agency or employee, concerning the possible or actual importation, distribution, and/or sale in or to the U.S. of any types of visual display products responsive to Interrogatory No. 2, since January 1, 2002.

57.     Documents sufficient to determine whether each type of visual display product responsive to Interrogatory No. 2 could be lawfully imported and/or sold in the U.S. since December 1, 2002, including, for example, documents reflecting any U.S. regulatory approval and/or compliance.

58.    All documents concerning transactions since January 1, 2002 between you and any subsidiary, customer, distributor, reseller, and/or retailer in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2.

59.    Documents sufficient to determine all transactions since January 1, 2002 in which you sold to or in the U.S. any refurbished or "de-branded" visual display products manufactured by or for you, including, for example, documents showing the purchaser, quantity, price, and payment for each transaction.

60.    Documents sufficient to identify each of your operations and business locations within the U.S. and the persons at each location responsible for importing, marketing, and/or selling visual display products since January 1, 2002.

61.    Documents sufficient to identify each person who is or was authorized to sell or market any visual display products in the United States since January 1, 2002, including, but not limited to, all contracts and correspondence with sales representatives since January 1, 2002.

62.    All correspondence and documents reflecting communications between or among Tatung Co., Tatung Company of America, Inc., and/or ViewSonic regarding any visual display products imported, sold, and/or marketed in or to the U.S. since January 1, 2002.

63.    All correspondence regarding the import, sale, and/or marketing of visual display products in or to the U.S. market since January 1, 2002.

64.    All contracts with any U.S. customer, distributor, reseller, and/or retailer that has ordered, purchased, distributed, and/or sold visual display products manufactured by or for you since January 1, 2002.

65.    All contracts with Tatung Co. and any other suppliers applicable to visual display products that you have imported and/or sold in the U.S. since January 1, 2002, including, for example, all supply agreements.

66.    All documents reflecting transactions since January 1, 2002 with any U.S. customer, distributor, reseller, and/or retailer concerning visual display products manufactured by or for you, including, for example, all invoices, purchase orders, worksheets, and documents reflecting debit, credit or payment information.

67.    Documents sufficient to identify all companies that have manufactured each type of visual display product responsive to Interrogatory No. 2, including the quantity of each such product made by each such manufacturer, since January 1, 2002.

68.    Documents reflecting all transactions among ViewSonic and any U.S. subsidiary or affiliate of ViewSonic regarding visual display products since December 1, 2002, including, for example, contracts, purchase orders, invoices, and documents reflecting debit, credit, or payment information.

69.    Documents sufficient to identify each subsidiary and affiliate of ViewSonic that since January 1, 2002 sells or has sold visual display products in or to the U.S., including documents reflecting each U.S. customer or account to which such products have been sold or delivered.

70.    Documents sufficient to identify each person and channel through which ViewSonic has distributed and sold visual display products responsive to Interrogatory No. 2 since January 1, 2002.

71.    All documents reflecting any suggestion, motivation, or teaching to combine any aspects or elements of any alleged prior art.

72.    All documents reflecting any exercise of due care by you to avoid infringing the Patents-in-Suit.

73.    All of your annual reports since January 1, 2002, or, if you have no such annual reports, any similar periodic report or document describing and/or summarizing your business operations and financial status.

74.    Documents sufficient to determine your size and financial condition since January 1, 2002.

75.    All document retention and/or destruction policies in effect since January 1, 2003.

76.    All documents reflecting any transfer of assets, liabilities, contracts, rights, and/or interests concerning any visual display products since January 1, 2002.

77.    All documents reflecting communications between or among any defendants in this case, to the extent such communications relate to this case or any issues in this case, including, but not limited to, any joint defense agreements or related documents.

78.    All documents referred to or relied upon in drafting and/or supplementing your Initial Disclosures.

79.    All documents addressed to, signed by, or approved by Jeff Volpe, or any successor(s) to Jeff Volpe, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling or advertising.

80.    All documents addressed to, signed by, or approved by Christopher Franey, or any successor(s) to Christopher Franey, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to

Interrogatory No. 2, including, for example, documents related to purchasing, selling or advertising.

81.    All documents addressed to, signed by, or approved by Dorothy Farris, or any successor(s) to Dorothy Farris, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling or advertising.

82.    All documents addressed to, signed by, or approved by Laurie Balcerak, and/or any successor(s) to Laurie Balcerak, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling, or advertising.

83.    All documents addressed to, signed by, or approved by Brian Igoe, and/or any successor(s) to Brian Igoe, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling, or advertising.

84.    All documents addressed to, signed by, or approved by John Yeh, and/or any successor(s) to John Yeh, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling, or advertising.

609983v1

85.    All documents addressed to, signed by, or approved by Steve Woo, and/or any successor(s) to Steve Woo, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling, or advertising.

86.    All documents addressed to, signed by, or approved by Matt Milne, and/or any successor(s) to Matt Milne, since January 1, 2002, concerning transactions with any customer or other person in the U.S. regarding any types of visual display products responsive to Interrogatory No. 2, including, for example, documents related to purchasing, selling, or advertising.

87.    All files and other documents related to any issues in this case and created by or provided to any of the individuals identified in your Initial Disclosures.

88.    All documents concerning any issues in this case and that relate to any of the persons identified in your Initial Disclosures.

89.    All documents, data compilations, and tangible things referenced or identified in your Initial Disclosures.

90.    All documents regarding or supporting your First Defense (Failure to State a Claim).

91.    All documents regarding or supporting your Second Defense (Non-Infringement).

92.    All documents regarding or supporting your Third Defense (Invalidity).

93.    All documents regarding or supporting your Fourth Defense (Laches and/or Estoppel).

94.    All documents regarding or supporting your Fifth Defense (Unclean Hands).

609983v1

19

95.    All documents regarding or supporting your Sixth Defense (Marking).

96.    All documents regarding or supporting your Seventh Defense (Prosecution History Estoppel).

97.    All documents regarding or supporting your Eighth Defense (Discovery Continuing).

98.    All documents regarding or supporting any contention by you that this is an exceptional case under 35 U.S.C. § 285.

99.    All documents concerning any expert who may testify for you in this case and/or whose work forms a basis, in whole or in part, for any opinion of an expert expected to testify for you in this case, including, for example, each expert's reports and draft reports for this case and other cases within the past four years, all your correspondence with such experts, all files of such experts maintained for this case, all documents provided to or created by such experts for purposes of this case, all documents considered by such experts regarding this case, all publications of the expert concerning any issues or subject matter related to the issues or subject matter in this case, and all documents reflecting time expended, services rendered, and compensation or reimbursement of same for such experts regarding this case.

November 29, 2005

THE BAYARD FIRM

_____

Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-2306
rkirk@bayardfirm.com
(302) 655-5000
Attorneys For Plaintiff
LG.PHILIPS LCD CO., LTD.

609983v1

OF COUNSEL:
Daniel G. Jarcho
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

609983v1