# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, | |
| Defendants/Counterclaim Plaintiffs. | |

## JOINT SUPPLEMENTAL SUBMISSIONS BY PLAINTIFF LG.PHILIPS LCD CO., LTD. AND DEFENDANT VIEWSONIC CORPORATION REGARDING PENDING DISCOVERY MOTIONS IN PREPARATION FOR THE DECEMBER 28, 2006 HEARING

Pursuant to the Special Master's direction given during the December 8, 2006 telephone conference, LG.Philips LCD Co., Ltd. ("LPL") and ViewSonic Corporation ("ViewSonic") hereby jointly submit the following supplements for the Special Master's consideration in preparation for the December 28, 2006 hearing.

LPL's Supplemental Submission is found at pages 2-11. ViewSonic's Supplemental Submission is found at pages 12-18.

647190-1

## LG.PHILIPS LCD CO., LTD.'S SUPPLEMENTAL SUBMISSION

Plaintiff LG.Philips LCD Co., Ltd. ("LPL") hereby supplements the record concerning pending motions filed by LPL and Defendant ViewSonic Corporation ("ViewSonic") against each other between September 27 and November 17, 2006 (collectively, the "Motions"). The Special Master will conduct a hearing on the Motions on December 28, 2006 (the "Hearing"). This supplement addresses three motions to compel by LPL against ViewSonic and three motions to compel and one motion to preclude by ViewSonic against LPL.

### I.    LPL'S MOTIONS TO COMPEL AGAINST VIEWSONIC

#### A.    LPL's Motion to Compel Technical and Mounting-Related Documents

LPL filed its motion to compel technical and mounting-related documents on September 27, 2006. ViewSonic subsequently began producing technical documents but, by its own admission, has not produced all technical documents related to all of the products ViewSonic identified in its response to LPL's Interrogatory No. 2. (*See* Exs. 2 & 8.)

ViewSonic's dramatically incomplete approach to its document production is fundamentally unfair, and ViewSonic must be compelled to produce all of its relevant technical documents, including all such documents in the possession of ViewSonic's original equipment manufacturers ("OEMs"). LPL has recently become aware of specific documents in the possession, custody, or control of ViewSonic directly responsive to LPL's discovery requests that ViewSonic has wrongfully withheld. First, LPL is aware that ViewSonic entered into agreements with its OEMs, and in fact produced its OEM agreement with Jean Company, Ltd. ("Jean") in a previous action filed in California.

647190-1

ViewSonic has not produced its OEM agreements in this case even though they are directly responsive to LPL's discovery requests. As a courtesy to ViewSonic, LPL apprised ViewSonic that such documents were not produced in this case and asked that they be promptly produced. (*See generally* Exs. 7, 9 & 10.) Because the OEM agreement was produced by ViewSonic under a protective order in the California action, the OEM agreement cannot be used in this case until it is produced in this case.

Significantly, LPL also advised ViewSonic that ViewSonic's OEM agreement with Jean contained express language requiring Jean to maintain all documents and stating that ViewSonic has a right to obtain and review all documents in Jean's possession created or received during the performance under the agreement, including records supplied by subcontracted third parties. During the deposition of Gen Yar (Freddy) Chen, an employee of Jean, in the California action, Mr. Chen described the kinds of technical documents used to assemble ViewSonic's products. These documents are responsive, at least, to LPL's Document Request Nos. 2-5, 18, 28, and 46-48, which ask ViewSonic to produce documents related to: structural components; assembly; final blueprints; and design documents. (*See* Ex. 1.) LPL also made ViewSonic's counsel aware of this deposition from the California action. (*See* Ex. 7.)

As a result, Jean and ViewSonic's other OEMs should have exactly the types of technical documents that will best illustrate that ViewSonic's products infringe the Patents-in-Suit. ViewSonic's suppliers and OEMs manufacture and assemble ViewSonic's products for ViewSonic. Pursuant to the agreements between ViewSonic and its OEMs and suppliers, as shown by ViewSonic's agreement with Jean, ViewSonic

3

has the legal right to obtain these documents from its own OEMs and, thus, must produce

those responsive and highly relevant documents to LPL.

**B.    LPL's Motion to Compel Indirect Infringement and Damages Documents**

On September 27, 2006, LPL filed its motion to compel ViewSonic to produce

documents related to indirect infringement and damages.  ViewSonic had, to that point,

produced almost no responsive information.  After LPL filed its motion, ViewSonic

began to produce responsive sales summaries pertaining to its products.  While

ViewSonic has produced some responsive information, ViewSonic's production remains

incomplete.

LPL knows from other cases that additional, relevant information is available and

should have been produced in this case long ago.  LPL has enforced other patents

recently obtained verdicts against Tatung and ViewSonic in separate cases in California

and in Delaware related to visual display products and LCD manufacturing (the

"California and Delaware Cases").[1]  Through the discovery processes in the California

and Delaware Cases, ViewSonic (and Tatung) produced numerous documents that

contain information that is also relevant to LPL's damages and indirect infringement

claims in this case, but which have not yet been produced here, such as:  data showing

imports into the United States; customer information; sales and profit information for all

products; customer agreements; OEM agreements; and communications with

ViewSonic's customers, distributors, OEMs and other suppliers.  ViewSonic (and

---

[1] The Delaware Case, also pending before Judge Farnan is Civ. No. 05-292-JJF.  Separate juries recently returned verdicts of willful infringement against ViewSonic, Tatung, and other Defendants, and in favor of LPL.

647190-1

Tatung) also provided deposition testimony in the California and Delaware cases that is relevant to this case. Because significant additional portions of the discovery produced in the California and Delaware Cases would also be relevant to this case, counsel for LPL has recently proposed that the parties stipulate to bring all of those documents into the instant case. (*See* Exs. 3 & 5.) Under LPL's proposal, the parties would not be agreeing that any specific California Case and Delaware Case discovery is admissible here, only that such discovery be incorporated into discovery in this case, leaving admissibility to be determined at a later date. (*See* Ex. 6.) The parties in this case, including LPL, ViewSonic and the Tatung Defendants, all agreed to this very same proposal in the recent Delaware Case. In this case, however, ViewSonic and Tatung have not yet agreed to incorporate other discovery into this case.

LPL's discovery proposal promotes efficiency and is mutually beneficial. Documents from the California and Delaware Cases could be used to prepare for and conduct depositions that will begin in weeks, substantially narrowing many discovery disputes and saving substantial expenses for all of the parties. In addition, many witnesses in this case have been deposed in the California and/or Delaware cases, and the parties should be able to avoid duplicative testimony by incorporating depositions into this case. In contrast, ViewSonic's counsel has attempted to limit incorporation and

demanded an index of individual documents for other cases.[2]

ViewSonic was represented by another firm, Howrey LLP, in the California and Delaware Cases. In the Delaware Case, however, Howrey LLP had no problem agreeing to deem discovery from this case and the California Case incorporated into the Delaware Case. Howrey LLP stipulated to incorporate discovery regardless of the fact that Howrey LLP does not represent ViewSonic or Tatung in all three of the patent cases.

ViewSonic apparently does not deny that documents produced in the other cases may be relevant and admissible here. Further, although LPL has now notified ViewSonic that LPL is aware of these relevant California and Delaware Case documents, ViewSonic has not produced them in this case. ViewSonic's failure to produce complete discovery regarding indirect infringement and damages, combined with ViewSonic's refusal to accept LPL's proposal to incorporate discovery from the California and Delaware Cases, prevents LPL from using relevant documents and other discovery for depositions or trial in the instant case. ViewSonic should either re-produce all relevant discovery in this case or the discovery from the California and Delaware Cases should be deemed to be incorporated into this case.

## C.    Motion to Compel ViewSonic to Provide Discovery on Advice of Counsel and Duty of Care

The record concerning this motion does not require supplementation.

---

[2] In a December 6, 2006 email Counsel for ViewSonic demanded: "(i) a list of the discovery requests propounded in those cases and an index of the documents that would be available in this case under the proposed stipulation; (ii) a list of the depositions that would be available in this case under the proposed stipulation; (iii) an authorization directed to counsel for ViewSonic in the other actions which will allow us to review those documents and deposition transcripts under any protective order in place; and, (iv) an identification of the deposition notices served by LPL that will be withdrawn if we agree to this stipulation." (Ex. 4.) LPL responded on December 8, (*see* Ex. 5), and followed up again on December 14, 2006, (*see* Ex. 6).

647190-1

---

## II.   VIEWSONIC'S MOTIONS AGAINST LPL

### A.   Motion to Compel Responses to Requests for Admission 5-10

ViewSonic's September 26 motion to compel pertained to ViewSonic's Requests for Admission 5-10. The Special Master's Report and Recommendations of November 8, 2006, however, resolved that motion by finding that LPL need not respond to any of these Requests; thus, the motion has been resolved and is no longer before Your Honor.

### B.   Motion to Compel Further Responses to Document Requests 75 & 76

The record concerning this motion does not require supplementation.

### C.   Motion to Compel LPL to Provide Discovery Concerning Mounting Methods

The record concerning this motion does not require supplementation.

### D.   Motion to Preclude LPL from Introducing New Claims

In its Motion to Preclude, which was filed on November 17, 2006 and which the Tatung Defendants joined on November 28, ViewSonic argues that LPL should be precluded from arguing that ViewSonic infringes any additional claims of the Patents-in-Suit. As discussed above, however, LPL has recently learned that ViewSonic not only has not produced all relevant technical documents and product samples, but refuses to produce detailed technical documents held by its OEMs, even though ViewSonic has a legal right to request and obtain copies of those documents. Without the discovery that LPL has been seeking for more than one year, LPL has not been able to fully evaluate each of the Defendants' products for infringement purposes. Further, for the same reasons, LPL has not been able to evaluate each potentially infringing product against the claims in the Patents-in-Suit.

647190-1

Defendants' delay in providing discovery is preventing LPL from identifying all infringing products. In a December 15, 2006 letter, based on ViewSonic's ongoing document production, ViewSonic's counsel recently asked LPL to agree to a future date by which LPL could identify all infringing ViewSonic products. (*See* Ex. 8.) Precluding LPL from recovering damages for all infringing products not identified by a specific date would be unfair unless and until LPL obtains all necessary discovery from Defendants.

### III.    RESPONSE TO ARGUMENTS RAISED BY VIEWSONIC IN ORIGINAL SUBMISSION ON DECEMBER 20, 2006

In this section, LPL will address points raised in ViewSonic's Supplemental Submission, (*see* Ex. 11), that are not addressed by the arguments above.[3]

#### A.    ViewSonic Improperly Attempts to Reargue its December 19 Motion

ViewSonic begins its Supplemental Submission with a so-called "update" concerning its motion to compel depositions ("Depositions Motion"). (*See id.*) The Depositions Motion was not submitted until December 19, almost ***two weeks after*** the parties the Special Master authorized supplements regarding the ***pending*** motions already on file. The Depositions Motion is so recent that LPL has not submitted a responsive brief yet. Because the parties are still negotiating and because LPL has not yet submitted a responsive brief, LPL will address the Depositions Motion in LPL's response brief.

#### B.    ViewSonic Refuses to Produce Documents Known to be Relevant

In the second section of its Supplemental Submission, ViewSonic objects to LPL's proposal to bring discovery produced in other cases into the instant case. (*See id.* at 5.) LPL's proposal is detailed above, (*see generally* Exs. 3, 5 & 6), and, as stated

---

[3] Contrary to procedure set forth by the Special Master, ViewSonic's Supplemental Submission was not delivered to LPL until 5:54 pm EST on December 20, 2006.

647190-1

above, the benefits of LPL's proposal are that it would efficiently bring large volumes of relevant discovery produced in the California and Delaware Cases into this case. LPL has never stated that, under its proposal, the parties would be conceding admissibility of any document or discovery response.

ViewSonic's claims that importing the California and Delaware Case documents would unfairly intrude on claim construction or prematurely introduce expert discovery are unfounded. (*See id.* at 5.) ViewSonic's claims that LPL's proposal would "circumvent the Court's Scheduling Order in this case" and enable LPL to engage in untimely written discovery are also unfounded.[4] (*Id.*) Contrary to ViewSonic's claims, LPL's proposal would bring in *all* desired discovery exchanged in the California and Delaware Cases, for the benefit of all parties. ViewSonic's discovery deadline argument ignores the crucial issue – ViewSonic should have already produced in this case the relevant discovery sought to be incorporated from the California and Delaware Cases. LPL needs the ability to use relevant information from the other cases. Information that is not relevant to this case would not be used in this case.

ViewSonic's counsel fails to explain why prior access to all discovery in other cases is needed before incorporating discovery. In any event, ViewSonic's counsel cannot seriously contend a lack of access to these documents. LPL's counsel has not reviewed all documents produced in the California case, nor is that relevant. After incorporation, all counsel in this case will have equal access to all discovery from the other cases.

---

[4] While it is an issue for another day, LPL maintains that written discovery in this case has not closed.

9

**C.      ViewSonic's Claims About its Document Production Are Misleading**

ViewSonic claims that, "[a]s part of" its supplemental responses to LPL's

Document Requests, ViewSonic "specifically offered LPL the opportunity to inspect"

documents responsive to Document Requests 6-9, 11, 13-17, 26, 31, 40-41, 52, 56-59,

63-67 and 79-86.  (*Id.* at 6.)  ViewSonic acknowledges in a footnote, however, that these

inspection offerings were actually conveyed only in ViewSonic's amended response to

LPL's Document Request No. 10.  (*Id.*)  LPL's Request No. 10 seeks "[a]ll orders,

invoices, bills of sale, and bills of lading since December 1, 2002 concerning the

purchase or sale of visual display products responsive to Interrogatory No. 2."

ViewSonic's amended response states that it will allow LPL to inspect documents related

to "ViewSonic's purchases and importation of flat panel display products… on or after

December 24, 2002" and related to "documents (without customer information)… that

are sufficient to determine the sales (in dollars and units) and suggested retail price by

product type of ViewSonic flat panel product types." (Ex. 12 at 6.)  ViewSonic then

mistakenly asserts that this limited offer is fully responsive not only to Request No. 10,

but to "Request Nos. 6-9, 11, 13-17, 26, 31, 40-41, 52, 56-59, 63-67, and 79-86." (*Id.*)

ViewSonic should have produced any responsive documents long ago by sending copies

to LPL's counsel, the method used by all parties to produce all other documents in this

case.  Further, this limited subset of documents does not cover many of the documents

that LPL needs and seeks.

Similarly, ViewSonic's claim that it has produced technical documents for most

of its products is only partially true:  while it has produced *a* technical document for

almost all of its products, it has not produced ***all*** responsive documents for its products.

After producing minimal technical information for its products, ViewSonic demands that

LPL identify infringing products to get more discovery.  ViewSonic's demands are fundamentally unfair to LPL and ViewSonic should be permitted to use its partial production as a means to prevent further discovery.

[remainder of page intentionally blank]

11

## VIEWSONIC'S SUPPLEMENTAL SUBMISSION

### I.    PENDING MOTIONS

The following motions submitted by ViewSonic are presently pending:

1.   ViewSonic's October 3, 2006 letter Motion to Compel Plaintiff to Provide Discovery Responsive to Document Requests 75 and 76;

2.   ViewSonic's October 3, 2006 Motion to Compel Plaintiff to Provide Discovery Regarding Components, Assemblies and Structures, Including Mounting Methods and Structures, of Flat Panel Display Devices;

3.   ViewSonic's November 17, 2006 letter Motion to Preclude LPL's Untimely Patent Infringement Contentions; and

4.   ViewSonic's December 19, 2006 letter Motion to Compel Depositions of LPL and for Protective Order.[5]

The following motions submitted by LPL are presently pending:

1.   LPL's September 27, 2006 Motion to Compel Defendant ViewSonic Corporation to Provide Discovery on Advice of Counsel and Duty of Care;

2.   LPL's September 27, 2006 Motion to Compel Defendant ViewSonic Corporation to Provide Discovery Regarding Indirect Infringement and Damages; and

3.   LPL's September 27, 2006 Motion to Compel Defendant ViewSonic Corporation to Provide Technical and Mounting-Related Discovery.

### II.   UPDATE TO VIEWSONIC'S MOTIONS

**1.    LPL Has Refused to Produce Any Witnesses Before February 22, 2007, Seven Days Prior to the Cut-off Date**

---

[5] Except for ViewSonic's December 19, 2006 motion, all of the above motions have been fully briefed. As LPL has refused to provide any witnesses for depositions until February 22, 2007, in light of the deposition cut-off period of March 2, 2007, ViewSonic requests that the Special Master address ViewSonic's December 19, 2006 Motion to Compel Depositions of LPL and for Protective Order at the upcoming hearing. ViewSonic's December 19, 2006 three-page letter motion was filed in conformance with the parties' practice and interpretation of the Special Master's procedures that has been universally followed in this case, including motions to be decided on December 28.

Although ViewSonic served LPL with six deposition notices on November 29, 2006, and attempted to schedule depositions beginning in December 2006, LPL refuses to provide any witnesses to be deposed prior to February 22, 2007. In the meantime, LPL has served 21 deposition notices seeking depositions of defendant witnesses on 17 different dates between January 5, 2007 and February 13, 2007. The Court's Scheduling Order requires all depositions to be completed by March 2, 2006. [See September 18, 2006 Amended Scheduling Order, D.I. 291, ¶ 1.] The defendants in this case are permitted 140 hours of deposition time of non-experts. [See August 18, 2005 Scheduling Order, D.I. 198, ¶ 4(d).] LPL seeks to obtain the entirety of its deposition discovery well in advance of March 2, 2007, while delaying the depositions of LPL witnesses until the very end of the deposition discovery period, which would prevent the defendants from using the 140 hours of deposition time permitted by the Court. ViewSonic is simply asking the Special Master to compel LPL to produce witnesses for depositions prior to February 22, 2007. In the interest of economy and expeditiously moving forward with discovery, ViewSonic requests that its Motion to Compel Depositions of LPL be heard on December 28, 2006.

2.    **LPL's Intervening Conduct is Inconsistent with its Opposition to ViewSonic's Motion to Compel Discovery Regarding Components, Assemblies and Structures, Including Mounting Methods and Structures, of Flat Panel Display Device**

LPL recently approached ViewSonic about incorporating discovery produced in other cases into this litigation. This position is inconsistent with LPL's opposition to ViewSonic's pending motion to Compel Discovery Regarding Components, Assemblies and Structures, Including Mounting Methods and Structures, of Flat Panel Display Devices. Additionally, LPL's tactic circumvents the Court's Scheduling Order.

647190-1

For example, LPL has used the Scheduling Order to block all discovery sought by the defendants that touches upon claim construction. ViewSonic believes, and LPL has not represented to the contrary, that the discovery from the other cases includes material related to terms that are the subject of claim construction in this case, including discovery related to terms such as "fastening parts", "fastening elements", "frames", "housing", and "case", just to name a few illustrative examples.

As another example, pursuant to the Court's Scheduling Order, the deadline for propounding written discovery in this case expired June 30, 2006. If the discovery requests in the other cases seek information not sought by LPL in this case, allowing the discovery from the other cases to be used in the present case would circumvent the Court's Scheduling Order in this case. The discovery from the other cases also includes expert discovery, which does not even commence in this case until after the Court issues a claim construction Order.

Because of the Protective Orders in the other cases, undersigned counsel for ViewSonic has not had access to any documents from the other cases, while counsel for LPL in this case has had access to all those documents. Counsel for ViewSonic in this case has requested that LPL consent to ViewSonic counsel reviewing the materials in the other cases and consulting with ViewSonic counsel in the other cases to evaluate LPL's request, but to date, no such consent has been provided.

## III.    UPDATE TO LPL'S MOTIONS

### 1.    LPL Never Attempted To Inspect Documents Offered by ViewSonic

On October 17, 2006, ViewSonic provided supplemental responses to LPL's Request for Production ("RFP") nos. 2-4, 6-12, 13-18, 26-27, 29-32, 34, 40-41, 46-48, 52, 56-59, 63-67, and 79-86. As part of these responses, ViewSonic specifically offered LPL the

14

opportunity to inspect "... those non-privileged, responsive documents not previously produced in its possession, custody, or control related to ViewSonic's purchases and importation of flat panel display product types imported, offered for sale, and/or sold by ViewSonic in the U.S. on or after December 24, 2002." These documents offered by ViewSonic were expressly indicated to be responsive to at least RFP nos. 6-11, 13-17, 26, 31, 40-41, 52, 56-59, 63-67, and 79-86.[6]

Similarly, in its earlier September 20, 2006 First Supplemental Responses To Plaintiff's Second Set Of Requests For Production Of Documents, ViewSonic offered LPL the opportunity to inspect orders, invoices, bills of sales and bills of lading related to ViewSonic products accused of infringement.[7]

LPL has <u>never</u> sought to inspect any of these of documents at any time.

### 2. ViewSonic Produced Documents for All of its Visual Display Products

With respect to ViewSonic's production of Service Manuals and similar technical documents (referred to as "Configuration Documents") indicated in ViewSonic's counsel's December 14, 2006 letter to the Special Master, ViewSonic has now produced Configuration Documents of physical specimens for all but sixteen ViewSonic visual display products. This number includes the ASV205 for which no documents are available. However, upon information and belief, and as LPL should learn when it

---

[6] *See* ViewSonic's October 17, 2006 Amended First Supplemental Responses To Plaintiff's Second Set Of Requests For Production Of Documents, Amended Supplemental Response to RFP No. 10.

[7] *See* ViewSonic's September 20, 2006 First Supplemental Responses To Plaintiff's Second Set Of Requests For Production Of Documents, Response to RFPs 10, 56, 66 and 68.

647190-1

deposes ViewSonic, the ASV205 has the same structural design as the ASV210, with the

only difference being a software variation, which has absolutely no relevance in this case.

ViewSonic is unable to locate at this time Service Manuals for the remaining fifteen

products in part because certain products were discontinued some time ago and had a

very short commercial lifespan.  For those visual display products that do not have

Service Manuals or similar technical documents, ViewSonic has found and produced

User Guides for seven of the fifteen ViewSonic visual display products.  ViewSonic also

has produced advertising material containing technical specifications and a photograph of

the product for all remaining fifteen ViewSonic visual display products.[8]

## IV.    VIEWSONIC'S OPPOSITION TO LPL'S SUPPLEMENTAL SUBMISSION

### 1.    ViewSonic's Response to § I.B. of LPL's Supplemental Submission

Section I.B. above of LPL's supplemental submission alleges that "ViewSonic

has not produced its OEM agreements in this case."  That is incorrect.  ViewSonic has

produced several agreements with its suppliers (called OEM agreements), including the

following:

| OEM Agreement | ViewSonic Production Nos. |
| --- | --- |
| Delta Electronics | VS025227 – VS025304 |
| Innolux Display | VS016932 – VS016970 |
| Jean Company | VS025137 – VS025226 |
| Optoma | VS025305 – VS025393 |
| Pro Arch Technology | VS016494 – VS016546 |
| Quanta Computer | VS017960 – VS018026 |
| Sampo | VS016547 – VS016584 |

---

[8] ViewSonic notes that two models, VX550 and VX730, were inadvertently included in the attachment to
ViewSonic's counsel's December 14, 2006 letter to the Special Master.  Upon information and belief,
neither the VX550 nor the VX730 were ever imported, offered for sale, sold, or used in the United States.

| OEM Agreement | ViewSonic Production Nos. |
|---|---|
| Tatung | SUB-VS0031 to SUB-VS0094 |
| Top Victory Electronics | VS018027 – VS018090 |
| VisionBank | VS018091 – VS018095 |

With respect to the contents of the OEM agreements, it is important to note that most, if not all, of these agreements are very similar. ViewSonic produced OEM agreements to LPL as far back as April 2005. LPL has had years to raise the issue of obtaining documents from third parties, yet LPL waited to raise it for the first time in a December 14, 2006 letter, and then refused to meet and confer on the subject.

Furthermore, LPL's characterizations about ViewSonic's supplier Jean Company, Ltd. ("Jean") and implications regarding Jean's relationship with ViewSonic are misleading. Jean was a **_party_** in one of the other suits, and thus was subject to discovery under the Federal Rules of Civil Procedure ("FRCP"). Jean is not a party in this case. Despite ViewSonic's request, LPL has failed to specifically identify the documents to which LPL refers, even by mere Bates numbers. This leads ViewSonic to believe that any Jean documents referred to by LPL in its supplemental submission very likely were obtained by LPL directly from Jean, not from ViewSonic.

ViewSonic continues to diligently investigate, and, in compliance with its obligations under FRCP 26(e), will supplement its production if any additional responsive documents are found.[9]

---

[9] LPL tries to downplay the fact that it failed to meet and confer with ViewSonic on the issue of OEM agreements. The December 14, 2006 letter from LPL's counsel submitted as Exhibit 7 by LPL, and ViewSonic's response submitted as Exhibit 9 by LPL, demonstrate that no meet and confer has taken place. ViewSonic agreed in its December 15 letter to meet and confer, but LPL made no attempt to comply with D. Del. LR 7.1.1. After receiving LPL's December 14, 2006 letter, counsel for ViewSonic investigated and determined that some OEM agreements had inadvertently not been produced, and immediately produced those agreements.

647190-1

### 2.    ViewSonic's Response to § I.C. of LPL's Supplemental Submission

LPL alleges that ViewSonic has failed to produce various documents in this case. But, as ViewSonic pointed out in § III.1 above, LPL has failed to inspect numerous documents related to ViewSonic's purchases and importation of flat panel display products.

LPL also discusses cross-use of discovery. ViewSonic addressed the issue of cross-use of discovery from other cases in § II.2 above. In addition, the discovery obtained in suits in other courts is subject to Protective Orders issued by those courts, which, respectfully, this Court cannot alter.

### 3.    ViewSonic's Response to § I.D. of LPL's Supplemental Submission

LPL either misunderstands or mischaracterizes ViewSonic's motion to preclude new claims. ViewSonic's motion does not seek to bar LPL from obtaining relief for any visual display products that are found to infringe the claims of the patents in suit that were timely asserted by LPL. ViewSonic seeks to bar LPL's belated and unfair assertion of new claims, which, if permitted, greatly prejudice ViewSonic in the claim construction process, and at trial.

647190-1

Respectfully submitted,

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
rkirk@bayardfirm.com
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
*Attorneys for Plaintiff*
*LG.Philips LCD Co., Ltd.*

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Jeffrey B. Bove (jb0998)
Jeffrey B. Bove (#998)
jbove@cblh.com
Jaclyn M. Mason (#4737)
jmason@cblh.com
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
(302) 658-9141
*Attorneys for Defendant*
*ViewSonic Corporation*

December 22, 2006

19