# EXHIBIT 8

# THE BAYARD FIRM
A   T   T   O   R   N   E   Y   S

222 DELAWARE AVENUE, SUITE 900
P.O BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395

WRITER'S DIRECT ACCESS

302-429-4242
astitzer@bayardfirm.com

BY HAND AND BY EMAIL

January 10, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, Delaware 19801

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*;
U.S. District Court Case No. 04-343 JJF

Dear Special Master Poppiti:

Plaintiff LG.Philips LCD Co., Ltd. ("LPL") hereby supplements the record on the issue of ViewSonic's control of documents used to assemble ViewSonic's products under ViewSonic's OEM Agreements with its suppliers. LPL's further review of ViewSonic's OEM agreement with Jean has not revealed any limitations placed on the legal contractual rights granted therein. The language of Section 10.9 Document Retention in particular clearly grants ViewSonic an absolute right to and legal control of Jean's documentation for at least 5 years after the termination of the agreement. Jean OEM Agreement at VS 025147. *See also* Delta OEM Agreement at VS025238; Innolux OEM Agreement at VS016939; Optoma OEM Agreement at VS025315; Tatung OEM Agreement at SUBVS0041-42; and Top Victory OEM Agreement at VS018037.[1]

While LPL's review did not reveal any limitations on the contractual rights granted, LPL has identified additional sections of the OEM Agreements that underscore ViewSonic's control over suppliers and assembly documents. Specifically, Section 5.3 under Indemnification, recites: "If a lawsuit is instituted against ViewSonic claiming intellectual property infringement, Supplier shall immediately provide ViewSonic with acceptable proof of non-infringement." OEM

---

[1] ViewSonic produced three additional OEM agreements with this document retention language on the day of the December 28, 2006 hearing. See Arima OEM Agreement at VS026027; Top Victory OEM Agreement at VS025965; and VisionBank OEM agreement at VS026168.

648604-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
January 10, 2007
Page 2

Agreement with Jean at VS025144. Thus, the OEM Agreement specifically grants ViewSonic the legal right to obtain any evidence or documents necessary for an infringement assessment, the exact issue in this case. Further, this provision demonstrates the common interests of ViewSonic and Jean.

The OEM Agreement also grants ViewSonic control over ViewSonic monitors in Jean's possession. Section 5.1 of Exhibit 1 to the Agreement states: "Supplier will provide, free of charge, an initial RMA swap pool for each new model to be used by ViewSonic to effect timely customer returns." OEM Agreement with Jean at VS025155. This section indicates that Jean has a "pool" of monitors for ViewSonic to swap out monitors immediately if a customer received a faulty monitor, thus establishing that Jean has a number of monitors that would also be under the legal control of ViewSonic.

LPL has conducted a thorough search and has not found any additional Third Circuit case law beyond *Mercy Catholic*, which is controlling precedent. In *Mercy Catholic*, the Court confirmed the standard to determine control by stating, "In the Rule 34 context, control is defined as the legal right to obtain required documents on demand." *Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 161 (3d Cir. 2004) (citing *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1998)). Other courts also have found that control may be established by a legal right pursuant to a contract provision. *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-929 (1st Cir. 1988)).

The *Novartis* case does not support ViewSonic's position. As Your Honor stated at the January 3, 2007 hearing, "a focus on the relationship of the entities is sufficient but not necessary." Tr. at 46. Further, as also noted by Your Honor, the present case is distinguishable from *Novartis* because the Product Royalty Agreement in *Novartis* merely granted the defendant the right to use the technical information in developing products and was not as broad as the unlimited contractual provision here. *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del 2002).

ViewSonic's continued reliance on *Inline Connection Corp. v. AOL Time Warner Inc.*, 2006 WL 2864586 at *3 (D. Del. Oct. 5, 2006) also is misplaced. There was no contractual provision permitting *Inline* access to relevant information, and there, the non-parties were competitors to AOL, had refused to provide information to AOL, and AOL had no legal right to demand information. As Your Honor recognized at the hearing, a hypothetical proposition that a right to documents *could have been* included in a contractual relationship is notably different from the present case where a detailed contractual provision exists.

Finally, ViewSonic's argument that one of its suppliers may refuse to provide ViewSonic access to requested documents is clearly premature. At this time, there is no evidence that any supplier will breach their contractual obligations. LPL contends that the unfettered contractual

648604-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
January 10, 2007
Page 3

right of ViewSonic to access documents under its OEM Agreements cannot be ignored, and that ViewSonic must produce the requested documents.

Respectfully submitted,

*/s/ Ashley B. Stitzer*

Ashley B. Stitzer

cc: Counsel as shown on the attached certificate

648604-1