# EXHIBIT 9

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CORMAC T. CONNOR
(202) 496-7439

EMAIL ADDRESS
cconnor@mckennalong.com

February 14, 2007

VIA E-MAIL AND U.S. MAIL

Scott R. Miller
Connolly Bove Lodge & Hutz LLP
Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles, CA 90071
*smiller@cblh.com*

Re: *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.;*
U.S. District Court Case No. 04-343 JJF

Dear Scott:

I write on behalf of LG.Philips LCD Co., Ltd. ("LPL") in order to address LPL's concerns that ViewSonic may have failed to preserve samples of its visual display products and to make those samples available to LPL for inspection and/or purchase. In particular, we are concerned that, during the course of this litigation, ViewSonic: (1) has not taken steps necessary to identify all visual display products in its inventory and make those products available to LPL for inspection or purchase; and (2) has not taken all necessary steps since it learned of the instant litigation to ensure that samples of its visual display products are available for LPL's review. Additionally, ViewSonic has not responded to our letters of February 8, 9 and 13, through which we sought purchase and inspection information for numerous products.

On the first point, LPL has been trying to get ViewSonic to produce samples of its products since it served its Document Requests in November 2005. LPL specifically addressed this issue again during the parties' negotiations in September 2006 and has been trying ever since to inspect and/or purchase samples of the visual display products that ViewSonic identified in its responses to Interrogatory No. 2. As you know, in September, ViewSonic refused to let LPL inspect any product samples because you said such inspection would devalue ViewSonic's products. On September 25, 2006, I wrote to you and requested a listing of the products that ViewSonic would sell to LPL. Three days later, you responded and informed us that "the visual display products *that are available* can be found on the following website: http://store.viewsonic.com" (emphasis added). I responded the next day, noting the small percentage of products that were actually offered for sale on the website, compared to the number listed in ViewSonic's response to Interrogatory No. 2. Shortly thereafter, LPL submitted

Scott R. Miller
February 14, 2007
Page 2

a supplement to its motion to compel technical and mounting-related documents from ViewSonic, which was already pending before the Special Master.

At no time did ViewSonic ever inform LPL that ViewSonic has samples of products that were available only for inspection or that there were any products offered for sale other than those listed on ViewSonic's website. However, during and after the parties' hearing with the Special Master on December 28, 2006 (the "Hearing"), it became clear that ViewSonic actually does have at least three categories of product samples that were never disclosed or made available to LPL prior to the Hearing. First, as you discussed during the Hearing, ViewSonic has so-called "dinosaurs" that are "in [ViewSonic's] facilities" or otherwise in its possession. (*See* Hr'g Tr. at 77-80 (Dec. 28, 2006).) You described these "dinosaurs" as "a dead product or something," making clear that these are products that would *only* be made available for inspection (*not* for sale), and that they are samples of products identified in ViewSonic's responses to Interrogatory No. 2. (*See id.*) Second, after the Hearing, in your letter of January 30, 2007, you identified a new category of ViewSonic product samples called "C-Stock." You failed to disclose the existence of this second category of additional products during the Hearing or in any prior communications with LPL. Notably, most of the products in this second category are *not* listed on ViewSonic's website but, nonetheless, you informed us that these products "will only be made available for sale and not for inspection...." It is not clear from your letter what the term C-Stock means; however, it is clear from pages 4-5 of the attachment to your letter that most of the C-Stock products are *not available for sale* on ViewSonic's website or at ViewSonic's on-line "outlet" store. Third, in your January 30 letter, you identified 107 different product numbers with the suffix "D." LPL learned during its visit to ViewSonic's facilities in early February that the "D" suffix indicates products that *ViewSonic has marked for disposal*. Your letter also notes that ViewSonic has only one or two samples of nearly half of these 107 "D" products.

LPL's concern arises from the fact that, until very recently, ViewSonic withheld from LPL information about ViewSonic's so-called dinosaur, C-Stock and "D" products. Although LPL expressly asked for access to all of the products identified in ViewSonic's response to Interrogatory No. 2, ViewSonic offered only those products that were listed at the time on ViewSonic's website. ViewSonic said nothing of any other dinosaur, C-Stock or "D" products and, in fact, *plainly informed LPL that there were no products that LPL could inspect without having to purchase*. We believe that ViewSonic's concealment of at least the so-called dinosaur, C-Stock and "D" types of products until the waning days of discovery shows a distinct lack of candor and evidences bad faith. By waiting so long to even identify these product samples to LPL, ViewSonic has severely constricted the amount of time that LPL will have to review those products and has prevented LPL from finalizing its list of accused products. Unless the parties can resolve this matter quickly, LPL will address it with the Special Master.

As for LPL's second point of concern, since the date that ViewSonic reasonably anticipated litigation with LPL, ViewSonic has had and continues to have an affirmative duty to preserve evidence relevant to this case. LPL is concerned that, if ViewSonic has allowed its entire product inventory of any given visual display product to be sold to unknown third parties, then ViewSonic has not fulfilled its duty to preserve material evidence. Further, although LPL's Document Request No. 51 sought copies of "[a]ll inventory reports since January 1, 2002, that

Scott R. Miller
February 14, 2007
Page 3

reference any types of visual display products responsive to Interrogatory No. 2," ViewSonic has yet to produce any. (Request No. 51 is also addressed by LPL's pending motion to compel technical and mounting-related documents.) In contrast, your January 30, 2007 letter attached a 3-page list resembling an inventory. The list presented the products that ViewSonic would make available to LPL for purchase and specified exactly how many of each product ViewSonic still had available. It was not until Derek Auito traveled to California to review ViewSonic's products, however, that LPL learned that the document that you had attached to your letter actually reflected inventory numbers that were ***over one month old*** and that, because of the passage of time, some of the products were no longer available. Your February 6, 2007 letter confirms this discrepancy by identifying products that, per your January 30 letter, were available for purchase but are no longer available for purchase.

Additionally, ViewSonic has marked the "D" type of products for disposal. We must have ViewSonic's confirmation that it will not destroy or dispose of any "D" products unless it maintains at least one sample for LPL to review or makes one of those products available to LPL for purchase. Further, your February 6 letter identified 16 different products for which a sample may be available for purchase. We have asked you to confirm which of these products will be available, but you have not responded. Now that more than one week has passed since your letter, please provide confirmation immediately as to which of these products are available for LPL to purchase.

ViewSonic must not prevent LPL from evaluating ViewSonic's visual display products by selling off or otherwise depleting ViewSonic's inventory. Furthermore, LPL has been trying to purchase or inspect ViewSonic's products since at least November 2005, yet ViewSonic has prevented LPL from inspecting or purchasing those products by delaying its responses to LPL and failing to identify the vast majority of product inventory that ViewSonic actually did and does have in its possession. Moreover, in the meantime, ViewSonic appears to have been selling, liquidating or otherwise disposing of its product inventory such that samples may no longer be available for inspection or purchase. To address this concern, please immediately provide LPL with lists of all products in ViewSonic's possession as of June 15, 2004 (after LPL filed suit), and at all times since, including, but not limited to, products available as of December 1, 2005 (just after LPL had served its discovery requests), September 25, 2006 (after ViewSonic agreed to sell products), and products currently available. These lists should include *all* visual display products identified in ViewSonic's responses to Interrogatory No. 2, including all products available on ViewSonic's website, all products available as "C-Stock," all "dinosaur" products, all "D" products and any other products within ViewSonic's possession or control. We need this information immediately so that we may identify any additional infringing products and determine the full scope of any prejudice that ViewSonic's conduct has caused to LPL.

Finally, on February 8, 9 and 13, 2007, we sent letters requesting that certain of ViewSonic's visual display products be delivered to your firm's D.C. offices for inspection. In those same letters, we also asked that ViewSonic provide pricing information for other specified products so that LPL could make purchasing arrangements. We also asked ViewSonic to decide whether or not it would make certain products available for inspection or for purchase, so that LPL could make necessary arrangements. To date, you have not responded to any of these requests. We must have this information immediately.

Scott R. Miller
February 14, 2007
Page 4


      Please provide us with the information requested in this letter by the 5:00 pm EST on February 15. If we cannot resolve these matters by then, LPL will raise them with the Special Master.

                                            Sincerely,

                                            Cormac T. Connor

cc: Manuel Nelson, Esq. (via e-mail)
    Tracy R. Roman, Esq. (via e-mail)
    Frank E. Merideth, Esq. (via e-mail)
    Jeffrey B. Bove, Esq. (via e-mail)
    Jaclyn M. Mason, Esq. (via e-mail)
    James D. Heisman, Esq. (via e-mail)

DC:50461292.2