# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>TATUNG COMPANY, et al.,<br><br>Defendants. | Civil Action No. 04-343 (JJF) |

## NOTICE OF FED.R.CIV.P. 30(b)(6) DEPOSITION *DUCES TECUM* AND FED.R.CIV.P. 45 SERVICE OF SUBPOENA (RADIOSHACK CORPORATION)

TO:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

PLEASE TAKE NOTICE that Plaintiff will take the deposition *duces tecum* of

Radioshack Corporation ("Radioshack") pursuant to Fed. R. Civ. P. 30(b)(6), on March 22, 2007

at 10:00 a.m. The deposition will take place at the offices of Esquire Deposition Services, 1700

Pacific Ave., Suite 4750, Dallas TX 75201. The deposition will be videotaped and taken before

a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s) and may use technology that permits the real time display of the deposition transcript for attendees who bring a compatible computer. The deposition may continue from day to day until completed if authorized by the Court or stipulated by the parties.

PLEASE ALSO TAKE NOTICE that LG.Philips LCD Co., Ltd. is serving Radioshack with a subpoena (the "Subpoena"), a copy of which is attached hereto. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to the Subpoena. Pursuant to Fed. R. Civ. P. 30(b)(6), Radioshack is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Radioshack concerning all topics listed in Attachment A to the Subpoena. In addition, the Subpoena requires Radioshack to produce at the deposition the documents listed in Attachment B to the Subpoena.

You are invited to attend and cross examine.

February 26, 2007

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
OF COUNSEL:                          rkirk@bayardfirm.com
Gaspare J. Bono                      (302) 655-5000
Matthew T. Bailey                    Counsel for Plaintiff
Lora A. Brzezynski                   LG.PHILIPS LCD CO., LTD.
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

OAO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF TEXAS

LG PHILIPS LCD CO., LTD.
V.
TATUNG COMPANY, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    04-343 (JJF)

TO:   **RadioShack Corporation**
      **Riverfront Campus World Headquarters**
      **300 RadioShack Circle, Ft. Worth, TX 76102-1964**

United States District Court for the District of Delaware

   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
G  to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
X  deposition in the above case. (See Attachment A for topics.)

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | March 22, 2007 at 9:00 am. |

   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
X  the place, date, and time specified below (list documents or objects): All documents listed in Attachment B.

| PLACE | DATE AND TIME |
|---|---|
| Mail documents to: McKenna Long & Aldridge LLP. Attn: Shari Klevens c/o Esquire Deposition Services, 1700 Pacific Ave. Ste 4750, Dallas TX 75201 | March 15, 2007 at 9:00 a.m. |

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6)

| ISSUING OFFICER=S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR | DATE |
|---|---|
| Shari Klevens (Attorney for Plaintiff)   *Kleverz* | February 26, 2007 |

ISSUING OFFICER=S NAME, ADDRESS AND PHONE NUMBER
Shari Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202-496-7612

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

DC:50459468 1

AO88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45. Federal Rules of Civil Procedure. Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a

party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research. development. or commercial information. or
(ii)   requires disclosure of an unretained expert=s opinion or information not describing specific events or occurrences in dispute and resulting from the expert=s study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial. the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials. the claim shall be made expressly and shall be supported by a description of the nature of the documents. communications, or things not produced that is sufficient to enable the demanding party to contest the claim

DC:50459468 1

## ATTACHMENT A: TOPICS TO BE ADDRESSED AT THE DEPOSITION

For purposes of this Attachment, RadioShack Corporation should use the following definition for the terms used herein.

A.    "RadioShack," "you," and "your" as used herein, means RadioShack Corporation and all persons or entities acting or purporting to act on your behalf, and any affiliates of RadioShack Corporation.

B.    "ViewSonic" means Defendant ViewSonic Corporation, and all persons or entities acting or purporting to act on ViewSonic's behalf, and any affiliates of ViewSonic, including, but not limited to, entities, divisions, and affiliates located in Taiwan.

C.    "ViewSonic products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for ViewSonic. This includes all such products, regardless of brand name, and thus includes, but is not limited to, ViewSonic brand products.

D.    "Tatung Company" means Defendant Tatung Company, all persons or entities acting or purporting to act on Tatung Company's behalf, and affiliates of Tatung Company including but not limited to Tatung Company.

E.    "Tatung Company products" as used herein any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung Company. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung brand products.

F.    "Tatung America" means Defendant Tatung Company of America, Inc., and all persons or entities acting or purporting to act on Tatung Company of America's behalf, including, but not limited to Tatung Company of America.

G.    "Tatung America products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for Tatung America. This includes all such products, regardless of brand name, and thus includes, but is not limited to, Tatung America brand products.

H.    "TSTI" means Tatung Science and Technology, Inc., and all persons or entities acting or purporting to act on Tatung Science and Technology's behalf, including, but not limited to Tatung Science and Technology.

I.    "TSTI products" as used herein means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs, and is made or assembled in whole or in part by or for TSTI. This includes all such products, regardless of brand name, and thus includes, but is not limited to, TSTI brand products.

J.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

K.    "Visual display products" means any flat panel computer monitor, flat panel television, and/or laptop computer that uses, contains or incorporates without limitation, one or more LCDs, PDPs and/or FEDs.

L.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two of more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

M.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

N.    "Discuss," "discussing," "relate to" "relating to," "support" or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

O.    "Identify" used in respect to a company or corporate or business entity of any kind means to set forth:

> a.    the full name of the company;
>
> b.    the full name of the division or office involved, if applicable; and
>
> c.    the address of the company and of the division or office involved, if applicable.

P.    "Identify" used in respect to a document or thing means:

      a.  to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

      b.  to identify the custodian of the document or thing;

      c.  to identify the place where the document or thing may be inspected; and

      d.  if a copy of the document has been supplied to LPL, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

Q.     "Identify" used with respect to a natural person means to state:

      a.  the full name;

      b.  the present or last known business and residence addresses;

      c.  the last known employer or job affiliation; and

      d.  the last known occupation and business position or title held.

R.     "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

S.     "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

T.     "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.     "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

V.     "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.     The use of the singular form of any word includes the plural and vice versa.

The topics to be covered in the deposition include:

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 4 of 6

1.      The nature of the business relationship and transactions between RadioShack and Tatung Company, Tatung America, TSTI, and/or ViewSonic relating to the sale, distribution, or importation of visual display products, including but not limited to the agreements between RadioShack, Tatung Company, Tatung America, TSTI, and/or ViewSonic.

2.      The scope, nature and purpose of communications between RadioShack and Tatung Company, Tatung America, TSTI, and ViewSonic (a) concerning the sale or marketing in the United States of visual display products manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, (b) communications regarding any product support assistance or warranties that Tatung Company, Tatung America, TSTI, and/or ViewSonic have provided to RadioShack, and (c) communications regarding the market trends for visual display products in the United States.

3.      Any agreements or contracts pursuant to which RadioShack has agreed to purchase Tatung Company's, Tatung America's, TSTI's and/or ViewSonic's visual display products either directly from Tatung Company, Tatung America, TSTI, or ViewSonic or indirectly by purchasing such products from any OEMs.

4.      RadioShack's activities or efforts related to the distribution or sale of visual display products in the United States manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic.

5.      All channels, distributors, suppliers, and networks through which products made in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic have been shipped, imported, sold, and/or distributed in the United States.

6.    RadioShack's sales of its visual display products that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, including the quantity and dollar amount of such sales, by product.

7.    The date(s) and location(s) of any in person meetings in the United States between employees or representatives of RadioShack and of a) Tatung, b) Tatung America, c) TSTI, and/or d) ViewSonic, the identity and job descriptions of participants in such meetings, and the substance of issues discussed or addressed in such meetings.

DC:50459616 1

Attachments A to Fed. R. Civ. P. 45 Subpoena

Page 6 of 6

## ATTACHMENT B: DOCUMENTS TO BE PRODUCED

For purposes of this Attachment, RadioShack Corporation should refer to Attachment A for the definition or meaning of terms used herein, which definitions are incorporated herein by reference. In addition, the following definition applies:

A    "Document" means all types of documents and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries or interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and other data compilations from which

information can be obtained or translated, if necessary by RadioShack through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

The documents to be produced on or before March 5, 2007, include the following:

1.    All documents provided by Tatung Company, Tatung America, TSTI, or ViewSonic to RadioShack since January 1, 2002 regarding marketing, sales, or business documents or presentation materials and any documents relating to warranties, product support, or service provided by Tatung Company, Tatung America, TSTI, or ViewSonic regarding their visual display products.

2.    Documents provided by RadioShack to Tatung Company, Tatung America, TSTI, or ViewSonic since January 1, 2002 sufficient to show RadioShack's market for visual display products, and/or market trends in the United States for visual display products.

3.    Documents sufficient to show the business relationship between RadioShack and Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including communications with Tatung Company, Tatung America, TSTI, and/or ViewSonic, notes from meeting with Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents in which RadioShack has agreed to purchase visual display products directly from Tatung Company, Tatung America, TSTI, and/or ViewSonic.

4.    All documents from January 1, 2002 by which RadioShack has agreed to purchase from original equipment manufacturers ("OEMs") any visual display products that RadioShack had reason to believe were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic, and documents sufficient to show

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 2 of 4

that Tatung Company, Tatung America, TSTI, and/or ViewSonic received notice of RadioShack's agreements to purchase.

5.    Documents sufficient to show RadioShack's receipt or purchase of visual display products sold, manufactured, shipped, imported, or distributed in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002.

6.    Documents sufficient to show the total quantity of visual display products sold, by product, by RadioShack that were manufactured or assembled in whole or in part by Tatung Company, Tatung America, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

7.    Documents sufficient to show the sales by total dollar value and by quantity of visual display products sold, by product, by RadioShack that were manufactured or assembled in whole or in part by or for Tatung Company, Tatung America, TSTI, and/or ViewSonic since January 1, 2002, including separate summaries for (1) Tatung Company products, (2) Tatung America products, (3) TSTI products, and (4) ViewSonic products.

8.    Documents sufficient to identify each person RadioShack has communicated with at Tatung Company, Tatung America, TSTI, and/or ViewSonic.

DC:50459608 1

Attachments B to Fed. R. Civ. P. 45 Subpoena

Page 3 of 4

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 26, 2007, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by email to the above counsel on February 26, 2007, and will be sent by hand

on February 26, 2007, and were sent by email on February 26, 2007, and will be sent by

first class mail on February 26, 2007, to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D Kirk

# EXHIBIT B

# Greenberg
# Traurig

February 27, 2007

**Via E-Mail and U.S. Mail**

Cormac T Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

> **Re:**   ***LG.Philips LCD Co., Ltd. v. Tatung Company et al.***
> **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

I write in regard to LPL's subpoenas to Planar Systems, CTX Technologies, Tatung Science and Technology Inc., Edward Service, Ingram Micro, eMachines, Wal-Mart Stores Inc., Avnet Inc., Sensormatic, Tyco International, Tri-Ed Distribution, CLI, Medion USA, TMX Logistics, American Dynamics, Best Buy, Radio Shack, Safeway, Amazon.com Inc., Gateway Inc., Sam's Club, Tweeter Home Entertainment, CompUSA Inc., and Pelco (the "subpoenas").

As previously discussed, one of the issues currently pending before Special Master Poppiti is whether the Tatung Defendants are required to produce documents, including highly confidential agreements and communications with their customers, that do not pertain to the products LPL has accused in this case. While the Special Master has not yet rendered a decision on this issue, we do expect a decision from him shortly.

The subpoenas served by LPL are attempts to circumvent a potential ruling that may be favorable to the Tatung Defendants. LPL has subpoenaed the aforementioned entities for broad categories of confidential, commercially sensitive information relating to the Tatung Defendants' business relationships with these entities and has made no attempt to limit the information sought to the accused products at issue. As such, LPL's subpoenas to the Tatung Defendants' customers appear to serve no legitimate purpose and are merely calculated to harass. Please be advised that the Tatung Defendants object to all Topics and Document Requests on the grounds that they are not limited to the accused products and seek confidential, proprietary, trade secret information belonging to the Tatung Defendants. The deposition topics and document requests are overly broad and seek information that is not relevant to any claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence. The topics and document requests are also overly broad because they are not limited as to time.

Cormac T. Connor, Esq.
February 27, 2007
Page 2


Unless the parties can reach an immediate agreement regarding the scope of the subpoenas, we intend to file motions for protective orders. Please advise regarding your availability for a meet and confer. We are available in the late afternoon on Wednesday, February 28, 2007, or anytime on Thursday, March 1 or Friday, March 2, 2007.

Very truly yours,

Valerie W. Ho

cc:     Rel Ambrozy (via email)
        Lora Brzezynski (via email)
        Richard Kick (via email)
        Scott Miller (via email)
        Jeffrey Bove (via email)
        James Heisman (via email)
        Tracy Roman (via email)
        Anne Gaza (via email)
        Frank Merideth (via email)
        Mark Krietzman (via email)
        Steve Hassid (via email)

From: Ho, Valerie W. (Shld-LA-LT)
Sent: Wednesday, March 07, 2007 3:06 AM
To: 'cconnor@mckennalong.com'
Cc: 'cchristenson@mckennalong.com'; 'rambrozy@mckennalong.com';
'lbrzezynski@mckennalong.com'; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-
IP); Hassid, Steve (Assoc-LA-IP)
Subject: Re: 3/5 meet-and-confer

Your suggestion that the Tatung Defendants have known about LPL's improper subpoenas since
January is wrong. LPL did not serve its various batches of subpoenas until mid to late
February. We never met and conferred regarding the subpoenas at issue in January because
those subpoenas had not even been issued by LPL at the time. Your resentment aside, the
record speaks for itself.

The case law you cite is irrelevant.

We will proceed with our motions.

Valerie Ho
--------------------------
Sent from my BlackBerry Wireless Handheld


----- Original Message -----
From: Connor, Cormac <cconnor@mckennalong.com>
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass <cchristenson@mckennalong.com>; Ambrozy, Rel
<rambrozy@mckennalong.com>; Brzezynski, Lora <lbrzezynski@mckennalong.com>; Merideth,
Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho,
Valerie W.
(Shld-LA-LT)
Sent: Tue Mar 06 08:49:18 2007
Subject: RE: 3/5 meet-and-confer

We obviously continue to disagree.  LPL will not withdraw or modify its subpoenas as they
are entirely proper and seek relevant material.
Further, the subpoenas are not limited to discovery disputed by Tatung and seek
substantial information that is separate and apart from any motions pending before the
Special Master.


Also, your email was the second time yesterday that you insinuated that I am or LPL is
somehow using the meet-and-confer process "merely as a delay tactic."  As I told you
during our call yesterday, I resent your baseless insinuation that I am or LPL is acting
in bad faith, particularly as I have been asking you to provide legal authority to support
your demands since at least our meet-and-confer on January 30, more than one month ago.
Now, after your own delay and inaction, you are trying to use the press of our March 30
discovery deadline as an excuse to proceed against LPL on an ex parte basis.  Further,
although I specifically requested that you explain why Tatung thinks it should be
permitted to file motions without first providing notice to LPL, you have not done so.
(Your reference to the CDCA local rule concerning the formatting and process by which an
ex parte submission is handled does not suffice.)  Tatung is alone responsible for waiting
so long to file the motions it has described and LPL rejects any suggestion that Tatung is
entitled to proceed against any of LPL's subpoenas without providing LPL proper notice and
an opportunity to be heard.  If Tatung persists down this path, LPL will seek sanctions
and all appropriate relief against Tatung.


As for the case citations that you have finally provided, I have reviewed your references
and they are distinguishable from our situation
in several ways.   Tatung's position also is contrary to settled law.
"Unless a party to an action can make claim to some personal right or privilege in respect
to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party
to the action has no right to relief under Rule 45(b) or 30(b)."  Dart Industries, Inc. v.
Liquid Nitrogen Processing, 50 F.R.D. 286, 291 (D. Del. 1970); see Ponsford v.
United States, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying motion to quash for lack of
standing); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004)
(denying motion to quash because no showing of personal right or privilege); Oliver B.
Cannon and Son, Inc.
v. Fidelity and Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del.
1981) (denying motion to quash because movant failed to prove documents sought were
privileged).  We do not find that Tatung has any basis to object to the information sought
by LPL's subpoenas and, thus, we do not believe that Tatung has standing to move to quash
any of LPL's subpoenas.


Further, you have generally objected that the subpoenas seek information that is
confidential and not limited to U.S. products.  We believe that
these objections are unfounded.   If you have a more specific proposal
for narrowing certain issues, however, please let us know so that we can respond.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

---

From: HoV@GTLAW.com [mailto:HoV@GTLAW.com]
Sent: Monday, March 05, 2007 4:52 PM
To: Connor, Cormac
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; MeridethF@GTLAW.com;
KrietzmanM@GTLAW.com; HassidS@gtlaw.com
Subject: RE: 3/5 meet-and-confer

Dear Cormac,

During our meet and confer, you stated that you did not believe the Tatung Defendants have
standing to bring motions for protective order in connection with the subpoenas issued by
LPL to third party customers of the Tatung Defendants, which seek broad categories of
confidential and trade secret information belonging to the Tatung Defendants that do not
relate in any way to the accused products or patents-in-suit. In response to your request
that we provide authority on this issue, we agreed to do so with the understanding that
LPL may reconsider its position upon reviewing the authorities provided. Accordingly, in
a good faith attempt to meet and confer and potentially obviate the need to file these
motions (and in the hopes that LPL is not using the meet and confer process merely as a
delay tactic), we agreed to provide you with the authorities requested on the condition
that you inform us by the commencement of business (pacific time) tomorrow as to whether
LPL will withdraw or narrow its subpoenas (as identified in my letter).

The authorities the Tatung Defendants are relying on include the
following: FRCP 26(c); Visto Corp. v. Smartner Information Systems, Ltd., 2007 WL 218771
(N.D. Cal. 2007); Highland Tank & Mfg. Co. v. PS Int'l, Inc., 227 F.R.D. 374 (W.D. Pa.
2005); Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318 (Fed. Cir. 1990); and Joy
Technologies, Inc. v.
Flakt, Inc., 772 F.Supp. 842, 849 (D.Del. 1991).

If we do not receive confirmation tomorrow morning that LPL is withdrawing or narrowing
its subpoenas, we will move forward with the motions/applications for protective order.

As I mentioned during our meet and confer, we will be filing the applications/motions in
the courts from which the subpoenas were issued.
Due to the return dates of the subpoenas, the Tatung Defendants may not have sufficient
time to file regularly noticed motions under the relevant local rules, and as a result,
may have to move on an ex parte basis. See, e.g., Central District of California Local
Rule 7-19. We, of course, will provide LPL with the appropriate ex parte notice.

With respect to the issues raised in Cass' email from this weekend, I will respond
separately as those issues are completely unrelated to the issues discussed during our
meet and confer.

Valerie

---

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS
under Circular 230, we inform you that any U.S.

federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.


     The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com <mailto:postmaster@gtlaw.com> .

_____

From: Connor, Cormac [mailto:cconnor@mckennalong.com]
Sent: Monday, March 05, 2007 12:15 PM
To: Ho, Valerie W. (Shld-LA-LT)
Cc: Christenson, Cass; Ambrozy, Rel; Brzezynski, Lora; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve (Assoc-LA-IP); Ho, Valerie W. (Shld-LA-LT)
Subject: 3/5 meet-and-confer


Following up on our 2 pm EST meet-and-confer call today, this email will confirm that you have agreed to provide LPL with legal authority supporting Tatung's stated intention to file motions for protective orders with respect to several of LPL's third party subpoenas.  (To that end, you noted that Tatung would not be filing any motions concerning the subpoena issued to CTX.)  You said that you would provide that authority within the hour and I agreed to respond as to whether LPL will change its position based on those authorities by approximately noon EST tomorrow.

Additionally, you stated that Tatung intends to file its motions in the relevant courts on an ex parte basis.  As I stated on the call, LPL objects to Tatung's efforts to file these motions.  If this is the route that Tatung intends to take, please be sure to include citations to legal authority that would support Tatung's filing its proposed motions on an ex parte basis.  If, as it seems to be, Tatung's intention is to file these motions without notice to LPL, then LPL strenuously objects. LPL demands that Tatung provide LPL with notice of any motions that it files with respect to any issue in this case, including motions pertaining to third party subpoenas.  If you refuse to do so, LPL will raise the matter with the appropriate courts and with the Special Master.

Finally, please let us know where Tatung stands with respect to the discovery deficiencies identified in Cass Christenson's March 4 email to you.

Cormac T. Connor

McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel. 202-496-7439
fax 202-496-7756
email: cconnor@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from

the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

# EXHIBIT C

Thomas J. Walsh Jr., Esq. (4724)
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
40 Paterson Street, P.O. Box 480
New Brunswick, NJ  08903
(732) 545-4717
Attorneys for Plaintiff LG.Philips LCD Co., Ltd. and non-party LG Electronics USA, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON, NEW JERSEY

| | |
|---|---|
| Plaintiff(s),<br><br>LG.PHILIPS LCD Co., Ltd.<br><br>vs.<br><br>Defendant(s),<br><br>TATUNG COMPANY, et al. | CIVIL ACTION NO.  3:07-cv-01140-MLC-JJH<br><br>**NOTICE OF APPEARANCE** |

TO:    The Honorable Judge Mary L. Cooper
       United States District Court
       District of New Jersey
       Clarkson S. Fisher Building & U.S. Courthouse
       402 East State Street Room 2020
       Trenton, NJ 08608

SIRS:

PLEASE TAKE NOTICE that the Law Firm HOAGLAND, LONGO, MORAN, DUNST &

DOUKAS, LLP.  Has undertaken the representation of Plaintiff LG.Philips LCD Co., Ltd. and

non-party LG Electronics USA, Inc. for all matters before the UNITED STATES DISTRICT

COURT, DISTRICT OF NEW JERSEY.

I certify that I am admitted to practice in this court.

HOAGLAND, LONGO, MORAN,
DUNST & DOUKAS, LLP
Plaintiff LG.Philips LCD Co., Ltd. and non-party LG
Electronics USA, Inc.

By: _____

Thomas J. Walsh Jr., Esq. (4724)

cc: All Counsel of Record

Dated: March 14, 2007

HOAGLAND, LONGO, MORAN,
DUNST & DOUKAS, *LLP*
*ATTORNEYS AT LAW*
*40 Paterson Street*
*P.O. Box 480*
*New Brunswick, NJ 08903*
*(732) 545-4717*
*(732) 545-4579 (Fax)*
*http://www.hoaglandlongo.com*

*Clinton Office: (908) 713-9600*
*(732) 545-4579 (Fax)*

*New York City Office: (212) 267-4876*
*(732) 545-4579 (Fax)*

*Buffalo, NY Office: (716) 853-3801*
*(716) 853-0265 (Fax)*

*JAMES B. MORAN*
*ALAN I. DUNST †*
*DONALD D. DAVIDSON †*
*THADDEUS J. HUBERT III † ∗*
*ROBERT G. KENNY*
*MICHAEL J. BAKER*
*ANDREW J. CARLOWICZ, JR*
*GARY J. HOAGLAND*
*JEFFREY S. INTRAVATOLA∗∗*
*LAWRENCE P. POWERS*
*THOMAS J. WALSH, JR. oo*
*ROBERT S. HELWIG*
*MICHAEL F. DOLAN*
*MARC S. GAFFREY*
*JOHN C. SIMONS †*
*SUSAN K. O'CONNOR*
*EMIL H. PHILIBOSIAN oo*
*CHRISTOPHER J. KILLMURRAY*
*JAMES J. KINNEALLY, III*
*PATRICK J. McDONALD ∗*
*FRANK J. KONTELY, III*
*ANDREW N. KESSLER o*
*DANIEL J. COGAN*
*MICHAEL T. KEARNS†oo*
*DIANE HOAGLAND*
*NORA J. GRIMBERGEN∗*
————
*DAWN P. MARINO ∗∗*
*SUSAN A. CARDONEoo*
*BRAD F. RANDELL*
*JEFFREY J. CZUBA†*
*ANTHONY C. IACOCCAoo*
*CHAD M. MOORE*
*BRIAN J. CHABAREKoo*

*JOAN H. OSBORNE ooo*
*SHERYL A. FAY*
*RYAN K. BROWN∗∗*
*CRAIG L. CORSON*
*JEFFREY C. MAZIARZ∗∗*
*KEITH B. BANNACH ∗∗∗*
*NICOLE M. DOWNS*
*SHAZIA CHAUDIRI de WIToo*
*BRUCE W. MC COY, JR. oo*
*KARL P. KEMM oo*
*MICHELE G. HAAS*
*JENNIFER L. REED*
*RICHARD W. GAECKLE oo*
*KRISTY KULINA LYONSoo*
*JOSEPH V. LEONE*
*JOANNE VOS*
*WENDY R. KAGAN oo*
*FRANK J. CARUSO oo*
*SHARON FLYNN∗∗*
*STEPHEN E. SLAVEN*
*SARAH E. NEWSOME oo*
*JACOB S. GROUSER ∗∗*
*KATE E. RO ooo*
*CHRISTOPHER MARCUCCI ∗∗*
*LAURA A. SICLARI oo*
*AARON M. BENDER ∗∗*
*APRIL M. GLOGOWER oo*
*M. TERESA GARCIA*
*MATTHEW G. ROSENFELD oo*
*JENNIFER PASSANNANTE ∗∗*
*JOHN T. FOJUT*
*KIMBERLY MENTO*

*COUNSEL*
*JOHN J. HOAGLAND*
*BARTHOLOMEW A. LONGO*
*KENNETH J. DOUKAS, JR.*

*RICHARD S. COHEN*
*MARK B. EPSTEIN*
*JOAN ALSTER WEISBLATT∗*
*JACQUELYN L. POLAND*
*THOMAS B. LEYHANE*
*MARC D. GOLDSTONE∗∗*
*KATHLEEN HUNTLEY-*
*ROBERTSON*
———
*JAMES S. NOWAK∗∗*
*ERIC C. OEMAU∗∗*

*∗MEMBER NY, NJ & ILL BARS*
*∗∗MEMBER NJ & PA BARS*
*oMEMBER NJ & FL BARS*
*ooMEMBER NJ & NY BARS*
*∗MEMBER NJ, DC & NY BARS*
*∗MEMBER OF PA BAR ONLY*
*∗∗MEMBER OF NY BAR ONLY*
*∞MEMBER OF NJ & VA BARS*
*∞∞MEMBER OF NJ & AZ BARS*
*∗∗∗MEMBER OF NJ, NY & WI*
*BARS*
*ooooMEMBER OF NJ & OH BARS*

*† CERTIFIED BY THE NEW*
*JERSEY SUPREME COURT AS*
*A CIVIL TRIAL ATTORNEY*

VIA ECF
The Honorable Judge Mary L. Cooper
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

    **Re:** **LG.Philips LCD Co., Ltd., Inc. v. Tatung Co.**
        Civil Action No. 3:07-cv-01140-MLC-JJH
        Our File No.: 5480223 - RGK

        Please accept this letter brief in lieu of a more formal Opposition to Tatung's Motion for

Expedited Hearing and in support of LG Philips LCD Co., Ltd.'s Motion for Telephonic

Hearing.

        Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff LG.Philips LCD

Co., Ltd. ("LPL") hereby opposes the Motion for Expedited Hearing filed by Defendants Tatung

Company and Tatung Company of America, Inc. (collectively "Tatung") in relation to the third

party subpoena served on Tyco International, Ltd. by LPL. Ex. 1. LPL requests that Tatung's

motion for expedited hearing be denied and that, in any event, the Court schedule a hearing at a

time when LPL's Washington, D.C. counsel is available and allow LPL to participate in the

hearing by telephone.

time when LPL's Washington, D.C. counsel is available and allow LPL to participate in the hearing by telephone.

Tatung failed to confer with LPL about possible hearing dates, failed to provide sufficient notice to LPL of its motion, and purposely scheduled numerous such motions around the country on the same day. This motion involves extensive factual issues, thus necessitating that LPL's Washington, D.C. counsel present argument to the Court. For these reasons, LPL respectfully requests that it be permitted to appear by telephone or that the hearing date be rescheduled for a date when LPL's counsel may appear and be heard.

## I.   STATEMENT OF FACTS

This matter involves a subpoena issued by LPL in relation to discovery in a patent infringement action pending in the United States District Court in Delaware ("Main Case"). On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company. On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas ("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the United States. The Subpoenas were issued based on LPL's understanding that these parties, who have current or former business relationships with Tatung and ViewSonic Corporation ("ViewSonic"), another Defendant in the underlying case, have documents that are relevant to the instant action, including but not limited to, documents related to purchase and sale of the infringing products in the United States, documents relating to Defendants' efforts to market the infringing products in the United States, documents relating to Defendants' technical specifications, and other important discovery concerning infringement, inducement, damages, and other issues.[1] The Subpoenas seek documents and information related solely to the products at issue in this action.

---

[1] LPL has also sought the same information and documents, unsuccessfully, from the Defendants. Defendants have produced some - but certainly not all – discovery that LPL seeks. Notably, much of Defendants' production is subject to objections and limitations that LPL disputes and which are the subject of numerous discovery motions already pending before the Special Discovery Master in the Main Case in the District of Delaware, as described more fully below.

In addition, the Subpoenas requested that all documents be produced by March 5, 2007, and that depositions occur between March 12 and March 27, 2007, consistent with the March 30 deadline for third party discovery in this case. LPL provided notice and copies of the Subpoenas to the Defendants prior to the service of the Subpoenas. During a telephone conference on January 30, 2007, Tatung indicated for the first time that it intended to file a motion for protective order with respect to the Subpoena directed to Hewlett-Packard, but Tatung never did so.[2] More than one month later, on March 5, Tatung again threatened to file additional motions for protective orders with respect to the later served 23 Subpoenas. In addition, even though Tatung had received the second batch of Subpoenas nearly three weeks earlier, Tatung indicated that some or all of such motions would be made on an *ex parte* basis because of the March 5 return date on some of the Subpoenas, which incidentally was that day. (*See* Ex. 2, Emails between V. Ho and C. Connor (Mar. 5-7, 2007).) Tatung claimed to have standing to raise any such objections on behalf of the third parties because it claimed that the Subpoenas pertained to Tatung's still unresolved objections to the scope of discovery in the Main Case. Tatung never explained why it had waited several weeks before raising its objections, but merely stated that it intended to file its motions on an *ex parte* basis. *See id.* In an exchange of emails, LPL strenuously objected to Tatung's position that it could file *ex parte* motions on any issue in the case, including any issues related to the third party subpoenas served by LPL. *See id.* In addition, LPL further reiterated its position that Tatung had no standing to raise objections to the Subpoenas, principally, because Tatung has never proved why any documents now in the custody of third parties are confidential, trade secrets, or otherwise shielded from discovery. *See id.*

---

[2] Hewlett-Packard has produced more than 5000 pages of relevant, responsive documents. Hewlett-Packard's production belies Tatung's argument that the Subpoenas are burdensome to the third parties, particularly because the majority of the third parties are smaller entities with far fewer responsive documents. Moreover, Hewlett-Packard's production reveals many "Process Management Plans," even after Tatung denied the existence of such documents and refused to produce them. Tatung's failure to produce documents adds support for LPL's position that it needs the discovery sought from the third parties.

Nonetheless, Tatung evidently began filing its motions on March 9, 2007. All of the motions filed are nearly identical. Many of the motions were filed on an *ex parte* basis. With respect to the remaining motions, which were not technically filed *ex parte*, the motions were served in a questionable manner. For example, none of the 23 motions were sent to Shari Klevens at McKenna Long & Aldridge, even though Ms. Klevens was the attorney who issued and served all of the Subpoenas at issue (as evident from the face of the Subpoenas). Indeed, even though LPL's counsel sent an email on Friday, March 2, 2007 providing a service list for all documents in the Main Case, Tatung failed to serve motions on the complete list of attorneys included in that list. As a result, LPL did not learn of many of the motions until well after they were filed. Moreover, Tatung served the majority of its motions by regular mail, even though Tatung requested expedited hearings with respect to those motions, ensuring the possibility that the courts would rule before LPL would receive the motions, let alone have an opportunity to respond. Notably, the facts suggest that Tatung actually went out of its way to make sure that LPL did not receive the motions in a timely manner.

For example, Tatung served only a few of the motions electronically, and then, even though Shari Klevens was the only attorney to sign LPL's subpoenas, served its motions only on two other LPL attorneys, one of whom Tatung knew to be out of the office defending depositions for the Main Case. Also, even though Tatung committed to LPL and the Special Master during a hearing on March 12, 2007 that it would provide electronic copies of all motions by the close of business on March 12, 2007, Tatung has so far failed to do so. *See* Ex. 3, Letter from C. Connor to Tatung's counsel on March 12, 2007, which advises Tatung of LPL's additional concerns.

As a further example, according to Tatung, it filed a Motion for Protective Order with regard to the Subpoena served on Sensormatic in the Southern District of Florida on March 9, 2007. That motion was served by mail only and received by LPL in the mid-afternoon on Monday, March 12, 2007 (in the afternoon mail delivery). At 4:30 p.m. that same day, LPL received notice that the Southern District had granted the motion, and the court's order stated that the court reviewed an opposition filed by LPL (evidently using language from a standard

4

proposed order).[3]  Ex. 4.  Moreover, Tatung is now trying to capitalize on the Southern District

of Florida's mistaken entry of an order in Tatung's favor by encouraging other courts, including

this one, to grant Tatung's motions even as LPL is preparing its oppositions.  *See e.g.,* Ex. 5.

As yet another example of Tatung's failure to provide adequate notice of its motions, on

March 12, 2007, Tatung sent a letter to Judge Mary L. Cooper in the District of New Jersey and

forwarded a copy of Tatung's Motion for Protective Order filed in that court.  Tatung copied two

of LPL's attorneys on the letter electronically (although not Ms. Klevens), but did not attach the

enclosures, even though LPL had not otherwise received those documents at that time.  *See* Ex.

6.  Moreover, even after LPL reiterated during a hearing in the Main Case that Ms. Klevens and

Cormac Connor, also of McKenna Long & Aldridge LLP, should be included on correspondence

relating to the third party subpoenas, Tatung had continued to leave them off of new emails

enclosing the requested motions.  *See* Ex. 7.

Finally, as further evidence of Tatung's conduct with respect to the Motions for

Protective Order, not only did Tatung provide untimely and/or no notice of the motions, but

Tatung failed to confer with LPL on possible times for the hearing and scheduled several

overlapping hearings in multiple jurisdictions.  For example, Defendants initially tried to

schedule three oral arguments, all on the morning of March 15, 2007, in New Jersey,

Massachusetts, and Illinois. These three motions, and many others, were scheduled only a few

days after the motions were filed and served by regular U.S. mail, rather than electronically, if at

all.[4]

While Tatung filed the Motions for Protective Order, it did so without regard for the fact

---

[3] LPL has filed a Motion for Reconsideration in the Southern District of Florida, advising the Court that its order
was issued before LPL had been given notice of Tatung's motion and before LPL had an opportunity to respond.

[4] As Tatung is aware, all of these emergency hearings have been scheduled to occur simultaneously with depositions
of Tatung's witnesses.  Because LPL's lead trial counsel are busy taking and defending depositions this week, it
appears that Tatung strategically filed these requests for expedited hearing in an attempt to prevent LPL from
obtaining significant and relevant information it needs from the third parties or to divert LPL's focus from the
Tatung depositions.

that several of the third parties had either already produced the requested documents or agreed to produce the requested documents.[5] However, because Tatung contacted the third parties to notify them of Tatung's Motions, several of the third parties have now refused to produce the requested discovery. *See, e.g.* Ex. 8.

## II.    ARGUMENT

### A.    Defendants' Request for Expedited Hearing Should Be Denied

Defendants argue that LPL has created the need for expedited hearing by serving its Subpoenas "at the last minute." This is simply not true.[6] Indeed, LPL waited to serve its Subpoenas because, simply put, LPL was hopeful that it would receive the discovery at issue from the Defendants. However, as the discovery deadline quickly approached and Defendants had not provided the requested information, LPL realized it had no choice but to serve the Subpoenas before LPL's opportunity to obtain the discovery was lost. Nonetheless, LPL served the Subpoenas a full six weeks before the deadline for third party discovery. Indeed, in a hearing on March 12, 2007, Tatung conceded that it has not produced all responsive discovery documents and that it would produce additional documents in April 2007, after the deadline for the close of third party discovery.

Contrary to Tatung's suggestion, Tatung has created its own delay and now offers that delay as justification for its expedited relief. Indeed, even though Tatung received the Subpoenas on or about February 13 and 14, it waited more than three weeks to file the instant motion. Tatung's request for an expedited motion would be unnecessary but for Defendants' failure to file this motion when it learned of the scope of the Subpoenas. LPL should not have to

---

[5] For example, even after learning that Tatung had filed Motions related to the Subpoenas, a few of the third parties have agreed to produce the requested documents, further undermining Tatung's argument that the Subpoenas are burdensome.

[6] While the Scheduling Order in the Main Case sets March 30, 2007 as the close of third party discovery, LPL has twice requested extensions of this deadline. Tatung opposed those requests, which were denied.

pay for Tatung's delay.[7]

**B.    LPL Requests that Any Hearing On This Matter Be Scheduled At a Time When LPL'S Washington, D.C. Counsel Is Available and Requests Leave to Participate By Telephone**

Because Tatung filed approximately 23 motions, all with requests for expedited hearing, the various courts have begun to schedule hearings at the same time. Tatung did not consult with LPL regarding LPL's availability with respect to any of the 23 pending motions prior to its request for expedited hearing. Consequently, Tatung attempted to schedule at least three hearings (of which LPL knows), all on the morning of March 15, at 9:00 a.m. (in New Jersey), at 9:15 a.m. (in Illinois), and 11:00 a.m. (in Massachusetts). These hearings, which are just a few examples, are obviously being scheduled to create the most interference, harassment, and burden on LPL's counsel. Because the various courts presumably are not aware of the other motions pending with respect to the 23 Subpoenas, the hearings being scheduled are at times when LPL is unavailable, primarily due to other hearings scheduled at the same time. As a result, LPL requests that any hearing on this matter be scheduled, or rescheduled to the extent already placed on the Court's docket, until a time when LPL's Washington, D.C. counsel is available. In addition, in light of the numerous hearings scheduled within hours of one another in different jurisdictions across the country, LPL requests that its Washington, D.C. counsel be permitted to participate in any hearings by telephone. If necessary, however, LPL will have local counsel present in person for the hearing.

**III.    CONCLUSION**

For the foregoing reasons, LPL requests that Tatung's motion for expedited hearing be denied, and that the Court schedule a hearing at a time when LPL's Washington, D.C. counsel is

---

[7] In addition, on Friday, March 16, 2007, Special Master Vincent Poppiti in the District of Delaware will consider whether to extend the deadline for third party discovery. If that motion is granted, the deposition can be rescheduled past March 30, 2007 and any alleged need for expedited resolution of this motion will be rendered moot. Also pending before Special Master Poppiti is LPL's request that Tatung be precluded from continuing their blatant interference with appropriate third party discovery.

available.  LPL also requests that its counsel be permitted to participate in the hearing by telephone.

Respectfully Submitted,

Thomas J. Walsh, Jr., Esq. (4724)

# EXHIBIT D

**From:** Oh, Charlene L. (Assoc-LA-LT)
**Sent:** Monday, March 12, 2007 5:54 PM
**To:** 'cconnor@mckennalong.com'; 'sklevens@mckennalong.com'; 'cchristenson@mckennalong.com';
'rambrozy@mckennalong.com'; 'gbono@mckennalong.com'
**Cc:** Merideth, Frank (Shld-LA-LT); Ho, Valerie W. (Shld-LA-LT); Krietzman, Mark H. (Shld-LA-IP); Hassid, Steve
(Assoc-LA-IP); Pouratian, Debbie (Assoc-LA-LT); 'Scott Miller'; troman@raskinpeter.com; Manuel C. Nelson
**Subject:** LG Philips LCD Co., Ltd. v. Tatung et al. - Motions for Protective Orders

Counsel:

Attached is a document indicating the dates and districts in which the Tatung Defendants have filed motions for
protective orders. The document also indicates whether a judge has been assigned, whether a hearing has been
scheduled, and the deadline for LPL's opposition, if any

Please take note that the motion filed in connection with the Tyco subpoena has been assigned to Judge Mary
Cooper. No hearing date is set; Judge Cooper will initiate a telephone conference with the parties regarding
scheduling.

Finally, the Tatung Defendants plan to file motions in the remaining districts shortly.

_____

Charlene L. Oh
Greenberg Traurig LLP
2450 Colorado Ave, Suite 400E
Santa Monica, California 90404
Direct:  310 586 6585
Fax:     310 586 0585
ohc@gtlaw.com

126745143_1

## MOTIONS FOR PROTECTIVE ORDERS REGARDING THIRD PARTY SUBPOENAS

| Third Party | City/District | Type of Filing | Date of Filing | Opposition Deadline | Hearing Date | Judge | P.O. Granted |
|---|---|---|---|---|---|---|---|
| Planar Systems | Portland, OR Dist. of OR | Withdrawn 3/10 | 3/8 | n/a | n/a | n/a | n/a |
| Edward Service | L.A., Central District of CA | Ex Parte | 3/12 | | | | |
| Ingram Micro | L.A., Central District of CA | Ex Parte | 3/12 | | | | |
| eMachines | L.A., Central District of CA | Ex Parte | 3/12 | | | | |
| Wal-Mart | Bentonville, AR W.D. of AR | | 3/9 | | | | |
| Avnet, Inc. | Phoenix, AZ Dist. of AZ | | 3/12 | | | | |
| Sensormatic | Boca Raton, FL S.D. of FL | | 3/9 | n/a | Ruled on papers | | YES |
| Tyco Internat'l | Woodbridge NJ District of NJ | | 3/9 | | | J. Mary Cooper | |
| Tri-Ed Dist. | NY, NY Southern Dist. of NY | | | | | | |
| CLI, Inc. | L.A., Central District of CA | Ex Parte | 3/12 | | | | |
| Medion USA | Chicago, IL N.D. of IL | | 3/9 | | | J. Elaine B. Bucklo | |
| American | San Diego, CA | Ex Parte | 3/9 | | | J. Marilyn | |

12674514_1

| | Location | | | | | Judge |
|---|---|---|---|---|---|---|
| Dynamics | S.D. of CA | | | | | Huff and Magistrate Cathy Ann Bencivengo |
| Best Buy | Minneapolis, MN Dist. of MN | | 3/9 | | | |
| Radio Shack | Dallas, TX N.D. of TX | | | | | |
| Safeway | San Francisco, CA N.D. of CA | | 3/9 | 3/14 2 p.m. | 3/16 9 a.m. | J. William Alsup |
| Amazon.com | Seattle, WA W.D. of WA | | 3/9 | | 3/19 (no oral argument) | |
| Gateway Inc. | L.A., Central District of CA | Ex Parte | 3/12 | | | |
| Sam's Club | Bentonville, AR W.D. of AR | | 3/9 | | | |
| Tweeter | Boston, MA Dist. of MA | | 3/9 | 3/14 | 3/15 11 a.m. | J. Marianne B. Bowler |
| CompUSA | Dallas, TX N.D. of TX | | | | | |
| Pelco | Sacramento CA E.D. of CA | | | | | |