# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

**James D. Heisman**
Partner
TEL (302) 888-6216
EMAIL jheisman@cblh.com

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

March 16, 2007

*Via Email and Hand-Delivery*
The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:  *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
     USDC Case No. 04-343 JJF

Dear Special Master Poppiti:

    LPL's March 9, 2007 motion to compel ViewSonic to produce inventory reports ("LPL's March 9 Motion") should be denied for a multitude of reasons. This is the first time inventory reports have substantively been raised by LPL.[1] More importantly, LPL's professed need for old ViewSonic inventory reports is simply unfounded. Namely, LPL complains that it has only been able to locate a small fraction of products for sale and has "recently" learned of C-stock and D-stock inventory that ViewSonic makes available to employees for purchase. This argument is a red herring. LPL has known of these different stocks since at least January, if not from previous litigation. Further, the appearance of a product in C-stock or D-stock does not preclude the product from also being available for retail purchase.

    LPL further complains that ViewSonic has destroyed D-stock products. Tellingly, what LPL does not state – because it knows it factually cannot – is that LPL has been unable to obtain any single ViewSonic product. On the contrary, LPL knows that ViewSonic is still working to provide, for LPL's inspection or purchase, a specimen of every ViewSonic flat panel visual display product offered for sale or sold in the U.S. on or after December 24, 2002. Until LPL can point to a single ViewSonic product for which ViewSonic has stated it will *not* make a sample available for inspection or purchase, LPL has no need for inventory reports.

    LPL has had the ability to purchase ViewSonic products via ViewSonic's website, from a time prior to bringing this suit and continuing through the present. In fact, LPL has boasted about its familiarity with ViewSonic's website and that it had examined the website thoroughly in an effort to independently obtain ViewSonic products. *See* Ex. 1, at 1 ("[w]e are familiar with ViewSonic's website and, in fact, *have examined it thoroughly in our efforts to independently obtain ViewSonic products*") (emphasis added). Despite its

---

[1] LPL's motion ostensibly is directed to its Request for Production ("RFP") 51. In its 7.1.1 certification, LPL indicates that it has made "reasonable efforts to resolve the issues" related to RFP 51 as described in its motion. The only communication ever made by LPL concerning inventory reports sought by RFP 51 was in a February 14, 2007 letter that was primarily directed to specimens of ViewSonic's products, and which mentioned inventory reports only in passing.

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
March 16, 2007
Page 2

professed thorough familiarity with ViewSonic's website, LPL clearly avoided or ignored the website for more than two years after filing this suit. Had LPL diligently sought to acquire products independently from the ViewSonic website since commencing this suit nearly three years ago, LPL would have in its possession all of the ViewSonic flat panel visual display products sold or offered for sale in the U.S. on or after the filing date of this suit, which is the earliest date LPL is entitled to damages in this case, and which products represent the only ViewSonic products of any possible relevance in this case. Put simply, LPL's lack of specimens, if any, is due to LPL's inattentiveness.

In its March 9 Motion, LPL indicates that RFP 51 was at issue in its September 27, 2006 motion to compel ViewSonic to provide discovery regarding indirect infringement and damages, but that "newly discovered facts necessitate the instant motion." *See* LPL's March 9 Motion, at fn 1.[2] A closer look at the facts reveals the flaws in that statement. Not once prior to its September 27, 2006 motions did LPL discuss with ViewSonic a need for inventory reports. LPL listed RFP 51 in its omnibus September 27, 2006 Motion to Compel ViewSonic to Provide Technical and Mounting-Related Discovery ("LPL's Technical Motion"). *See* Ex. 2 (copy of LPL's Technical Motion). Notably, in that motion, LPL knew that "some [ViewSonic] products have been discontinued or are not widely available." *Id.*, at 6; *see also id.*, at 7 (LPL aware that it is unable to buy some ViewSonic products "because they had been discontinued"). Moreover, at no time during the December 28, 2006 hearing on LPL's Technical Motion did LPL raise the issue of inventory reports. Most notably, during that December 28 hearing, LPL *conceded* that ViewSonic should *not* be ordered to produce specimens of products it does *not* have:

> MR. MILLER: Your Honor, Viewsonic, like most companies, doesn't keep products that have gone out of sale in inventory, hopefully, in order to be successful. And, so, we are talking about a list of products that dates back over four years.
>
> The only products Viewsonic would have are products that are currently being sold or offered for sale in the United States. It doesn't maintain a museum, if you will, of old inventory.
>
> SPECIAL MASTER POPPITI: Well, if you don't have them, you can't give them.
>
> MR. MILLER: We told them where they can locate them. And as to new products, we have declined to let them inspect them, we have offered to sell to them because if they open up the package and take them out, start taking them apart, they become a used product and that's a cost that they should bear, not us.
>
> With regard to if we have other products that are laying around for one reason or another, that may be a dead product or something, we have -- we are willing to try to collect whatever we can of ancient products and make those available for an inspection as well, but it's only been, from LPL's side, just the intransigents, Just give us everything or nothing, so we have not -- that has not progressed.

---

[2] It is unclear what are the "newly discovered facts" to which LPL refers.

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
March 16, 2007
Page 3

> We are happy to sit down and try to work out a solution if there are, you know, dinosaurs laying around somewhere that they can look at, we are not intending to hide them. We are happy to let them look at them.
>
> ***
>
> SPECIAL MASTER POPPITI: . . . [W]ith respect to the monitors, themselves, it seems to me what Mr. Miller is saying makes sense. I mean, if they have them, they said they are going to provide them. If they are new product, it seems to me that it is appropriate for you to purchase them. It should be at your cost.
>
> If there are dinosaurs laying around, then I will take Mr. Miller at his word that they will do a search, and at the end of that search, they will advise what they have for you to either inspect or even purchase a dinosaur if they are willing to -- if they are willing to let that go, and I would like some time frame as to when all of that occurs.
>
> I don't hear Mr. Miller saying that they are not going to make these available.
>
> MR. AMBROZY: Again, Your Honor, and *I agree that they are not -- that he shouldn't be* ordered *to produce something that he cannot produce.*
>
> SPECIAL MASTER POPPITI: Right.

Trans. of Dec. 28, 2006 Hearing (D.I. 384) (Ex. 3 hereto), 75:24 - 78:6 (emphasis added).

Assuming *arguendo* that LPL had made a proper showing for this Motion, it is not entitled to inventory reports going back to 2002. LPL served its first document requests on ViewSonic on November 29, 2005 – 1 ½ years after filing this lawsuit. Thus, any request for sample products, if properly within the scope of a discovery request, which ViewSonic disputes, would have been limited to those ViewSonic products offered for sale or sold in the U.S. that ViewSonic had in its possession, custody, or control as of November 29, 2005. Any production of inventory reports, if ordered, should likewise be limited to inventory reports from November 2005 forward for products offered for sale or sold in the U.S.

Based on the foregoing, LPL's March 9 Motion should be denied.

Respectfully submitted,

*/s/ James D. Heisman*

James D. Heisman

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
March 16, 2007
Page 4

cc:    Gaspare J. Bono, Esq.
        Cass W. Christenson, Esq.
        Rel S. Ambrozy, Esq.
        Lora A. Brzezynski, Esq.
        Cormac T. Connor, Esq.
        Richard D. Kirk, Esq.
        Ashley B. Stitzer, Esq.
        Mark H. Krietzman, Esq.
        Valerie W. Ho, Esq.
        Steve P. Hassid, Esq.
        Anne Shea Gaza, Esq.
        Frederick L. Cottrell III, Esq.
        Tracy R. Roman, Esq.
        Jeffrey B. Bove, Esq.
        Jaclyn M. Mason, Esq.
        James D. Heisman, Esq.