# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION,<br><br>Defendants/Counterclaim Plaintiffs. | Civil Action 04-343 (JJF) |

**PLAINTIFF LG.PHILIPS' LCD CO., LTD.'S MOTION TO COMPEL
DEFENDANT VIEWSONIC CORPORATION TO PROVIDE
TECHNICAL AND MOUNTING-RELATED DISCOVERY**

LG.Philips LCD Co., Ltd. ("LPL") hereby submits this Motion to Comel Defendant ViewSonic Corporation ("ViewSonic") to Provide Technical and Mounting-Related Discovery in response to LPL's November 29, 2005 discovery requests, namely, Document Requests 2-5, 18, 28, 29, 38-41, 46-48 and 51 and Interrogatory 2. (*See* Exhibits 2-4.)[1]

LPL alleges that ViewSonic directly, indirectly, and willfully infringes U.S. Patent Nos. 6,498,718 and 6,501,641 (the "Patents in Suit") concerning the mounting of flat panel displays and devices found in popular liquid crystal display ("LCD") and plasma consumer products (collectively, "visual display products"). The Patents-in-Suit relate to apparatuses and methods for mounting and/or assembling flat panel visual display products in accordance with LPL's "rear mount technology" as disclosed in those Patents. LPL's discovery requests seek discovery

---

[1] LPL has filed multiple Motions to Compel which all relate to a common set of documents and court filings. Unless otherwise indicated, for the convenience of the Special Master, all of the documents referenced in LPL's Motions to Compel, including the instant Motion, are attached as Exhibits to LPL's Local Rule 7.1.1 Certification (the "Certification"), which has been filed contemporaneously.

1

on ViewSonic's visual display products generally, specifically including "any LCD computer monitor, LCD television, plasma television and/or laptop computer." (*See* Pl.'s 2d Set of Interrogs. to ViewSonic, Def'n 24, cited portions of which are submitted as Ex. 1.)

In its Complaint, LPL identified the VX900 product as one *example* of an infringing product. (*See* Compl. at ¶ 28 (D.I 1).) In its responses to ViewSonic's Interrogatory 1, LPL also provided a claim chart further addressing infringement. Because ViewSonic understands LPL's claims and admits that it sells many products that are mounted comparably to the VX900, ViewSonic should provide discovery on all of these relevant products. *See, e.g. IP Innovation LLC v. Sharp Corp.*, 219 F.R.D. 427, 429 (N.D. Ill. 2003) (granting motion to compel identification of all products using infringing device so that plaintiff could "determine the identity of all allegedly infringing models" and "calculate the full level of damages to which they are allegedly entitled.")

LPL has been trying for months to obtain this discovery, which is essential for LPL to take depositions and to prove its claims. Since serving discovery on November 29, 2005, despite LPL's repeated efforts, ViewSonic has refused to provide critical discovery that LPL needs. After good faith efforts to resolve these issues (*see* Local Rule 7.1.1 Certification, submitted contemporaneously with this Motion), LPL respectfully requests the Special Master's assistance.

I.  **ARGUMENT**

"In the Third Circuit, 'it is well recognized that the federal rules allow broad and liberal discovery.'" *Corning Inc. v. SRU Biosystems LLC*, 223 F.R.D. 191, 192 (D. Del. 2004). All of the discovery requests addressed by this Motion are relevant and reasonably calculated to lead to the discovery of admissible evidence. ViewSonic should be compelled to provide this discovery without further delay.

(2)

not infringe, in which case technical discovery regarding those products would be unnecessary. ViewSonic, however, rejected LPL's proposal and insisted that LPL identify unspecified "characteristics" related to the Patents-in-Suit as a condition for further discovery.[2] As LPL explained to ViewSonic, however, LPL should not have to commit itself to construe claims or take positions now regarding which "characteristics" do or do not infringe depending on how they are construed or the assembly of ViewSonic's products. This is information that ViewSonic knows, but LPL does not. In addition, the Special Master indicated his agreement with LPL's position that discovery on claim construction is premature as it would usurp the schedule for defining and briefing claim terms. (*See* Ex. 33, Hr'g Tr., at 3-6 (Aug. 23, 2006).) The schedule in this case provides that discovery should precede claim construction and briefing, and forcing LPL to define claim terms and apply those definitions to unknown products as part of the discovery process is inappropriate.

Significantly, there is no genuine dispute that many of ViewSonic's visual display products are potentially infringing. First, LPL has studied the exploded view documents for more than fifty of ViewSonic's visual display products and has determined that all of those products likely infringe the Patents-in-Suit. (*See* Ex. 31.) Moreover, LPL has inspected numerous of ViewSonic's visual display products purchased on the open market, and determined that they also infringe the Patents-in-Suit. Thus, LPL's pending written discovery requests are not – as ViewSonic has tried to characterize them – a fishing expedition that hopes to obtain

---

[2] During a telephonic conference on September 22, 2006, and in ViewSonic's supplemental responses to LPL's Document Requests, ViewSonic's counsel clarified that ViewSonic intends to limit its responsive document production to only those products accused of infringement. ViewSonic appears to expect that LPL will have to proffer claim charts and show that certain products infringe before discovery on those products will continue. ViewSonic's attempt to impose any such conditions is contrary to Rule 26's grant of a broad scope of discovery *before* resolving the merits of a claim and regardless of disputes as to liability.



useful information. Instead, the pending requests have been shown to seek relevant information from ViewSonic.

Second, ViewSonic recently identified the possible claim terms for claim construction (*see* Ex. 32, Letter from S. Miller to C. Christenson, *et al.*, (Sept. 22, 2006) (identifying preliminary list of claims needing construction)), and the construction of those terms could implicate many of ViewSonic's products. Indeed, in its opposition to LPL's preliminary injunction motion, ViewSonic argued that an injunction would pose an undue hardship on ViewSonic because LPL's claims could extend to so many of ViewSonic's products, including "any of [ViewSonic's] products having stands attached from the rear," as ViewSonic puts it. (ViewSonic's Answering Br. in Opp'n to Pl.'s Mot. for Prelim. Inj., at 38 (D.I. 64).) ViewSonic also acknowledged that it had so many potentially infringing products that an injunction would "effectively [destroy] the business of ViewSonic." (*Id.*) Because ViewSonic admits that so many of its products are comparable to the VX900, it is unfair, if not disingenuous, for ViewSonic to continue to place unnecessary and unreasonable conditions on LPL's right to obtain discovery regarding these products. Further, LPL cannot be expected to know about every visual display product that ViewSonic has ever sold, in part because some products have been discontinued or are not widely available.

    **B.**    **ViewSonic's List of Product Numbers is Inadequate**

LPL's Interrogatory 2 requires ViewSonic to identify by model each of its visual display products, regardless of where they are sold. What ViewSonic has provided, through its original and supplemental responses to Interrogatory 2, is a simple list of product numbers that purportedly cover all of ViewSonic's visual display products, ***but only those sold in the United States***. (*Compare* Ex. 2. Interrog. Resp. 2 *with* Interrog. Supp. Resp. 2.) Further, and of equal



importance, ViewSonic refuses to identify even those products in a manner that is meaningful to LPL.

ViewSonic lists 211 product numbers in its supplemental response to Interrogatory 2, but each number does not actually identify a separate product. ViewSonic's counsel represented to LPL on September 14 that ViewSonic assigns different numbers to its products depending on where the products are sold. *See* Letter from C. Connor to T. Roman, at 1-2 (Sept. 15, 2006), attached as Ex. 22. Thus, a single product may have many different product numbers. Further, for example, ViewSonic's VX900, an infringing monitor, may be sold in Mexico under a different number and then be resold through alternative distribution channels into the United States. As a result, based on the unsorted list that ViewSonic has provided, there is no way for LPL to determine which of ViewSonic's product numbers actually pertain to the same product.

LPL has also confirmed that ViewSonic's list of product numbers is inadequate and incomplete – even for products sold in the U.S. LPL has independently purchased several of ViewSonic's visual display products in the U.S. In many cases, LPL was unable to buy the products listed in ViewSonic's chart because they had been discontinued or because ViewSonic had changed its product numbers. Finally, ViewSonic recently produced product manuals related to product model numbers not disclosed by ViewSonic in response to Interrogatory 2, further evidencing that ViewSonic's interrogatory responses are deficient.[3]

ViewSonic must identify all of the various product numbers assigned to each of its visual display products. ViewSonic must also be required to sort its 211 product numbers by the actual

---

[3] For example, ViewSonic produced service manuals for products numbered as VA520-2, VE700-1, VE175b-1 and VA720-1. None of these numbers appear in ViewSonic's response to Interrogatory 2. If these numbers correlate to different versions of the products that are listed in ViewSonic's response, then this makes LPL's need for full discovery more acute, as only ViewSonic has information about whether one version of a particular product infringes but others do not.

ViewSonic's claims that it has no documents are contrary to the documents productions it has made in other pending patent cases. In another case now pending in this Court, ViewSonic has produced, for example, design specifications that show how portions of their products are constructed and the product specifications with which ViewSonic expects its manufacturers to conform. In addition, ViewSonic has produced assembly diagrams and acceptance specifications in a related case involving mounting technology that is pending in California. ViewSonic's document productions in other cases show that it does in fact have the types of technical and mounting-related documents that LPL seeks. ViewSonic should, therefore, be ordered to promptly produce all responsive documents.

## II. CONCLUSION

LPL respectfully requests that the Special Master grant this Motion to Compel and award such further relief as the Special Master deems just and proper.

September 27, 2006

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000

OF COUNSEL:

Gaspare J. Bono
Matthew T. Bailey
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

