# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,    )
                                 )
            Plaintiffs,          )    C.A. No. 04-343(JJF)
                                 )
v.                               )
                                 )
TATUNG CO., TATUNG COMPANY OF    )
AMERICA, INC., and VIEWSONIC     )
CORPORATION,                     )
                                 )
            Defendants.          )

          Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Thursday, December 28, 2006, beginning at
approximately 11:30 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

          THE BAYARD FIRM
          RICHARD D. KIRK, ESQ.
           222 Delaware Avenue, Suite 900
           Wilmington, Delaware  19899
           for Plaintiffs

                  CORBETT & WILCOX
             Registered Professional Reporters
     230 North Market Street      Wilmington, DE 19899
                    (302) 571-0510
                 www.corbettreporting.com
          Corbett & Wilcox is not affiliated
       with Wilcox & Fetzer, Court Reporters

2 (Pages 2 to 5)

Page 2

1  APPEARANCES (Continued):
2    MCKENNA, LONG & ALDRIDGE, LLP
     CASS W. CHRISTENSON, ESQ.
3    REL S. AMBROZY, ESQ.
     JESSE KOKRDA, ESQ.
4    CORMAC CONNOR, ESQ.
       1900 K Street, N.W.
5      Washington, D.C. 20006
       for Plaintiffs
6
     RICHARDS LAYTON & FINGER
7      FREDERICK L. COTTRELL, III
       One Rodney Square
8      Wilmington, Delaware 19801
       for Defendant Tatung Co.
9
     GREENBERG TRAURIG LLP
10     FRANK MERIDETH, ESQ.
       2450 Colorado Avenue, Suite 400E
11     Santa Monica, California 90404
       for Defendant Tatung Company of America, Inc.
12
     CONNOLLY BOVE LODGE & HUTZ LLP
13     JEFFREY B. BOVE, ESQ.
       JACQUELINE MASON, ESQ.
14     1007 North Orange Street
       Wilmington, Delaware 19899
15     for Defendant Viewsonic Corporation
16   BINGHAM McCUTCHEN LLP
       SCOTT R. MILLER, ESQ.
17     355 South Grand Avenue
       Los Angeles, California 90071-3106
18     for Defendant Viewsonic Corporation
19
20
21
22
23
24

Page 3

1        MR. BOVE:  Your Honor, this is Jeff Bove
2  from Connolly Bove representing Viewsonic, along with
3  Jacqueline Mason and my partner Scott Miller from
4  Los Angeles.
5        MR. COTTRELL:  And, your Honor, Fred
6  Cottrell at Richards Layton in Wilmington for Tatung, and
7  on the phone from Greenberg Traurig, Frank Merideth.
8        SPECIAL MASTER POPPITI:  Next, please.
9        MR. KIRK:  Dick Kirk from The Bayard
10  Firm here in Wilmington for the plaintiff LG Phillips LCD
11  Company, Ltd., and with me on the line from Washington,
12  and perhaps elsewhere, from McKenna Long & Aldridge are
13  Cass Christenson, Rel, R-e-l, Ambrozy, Derek Auito, and
14  Jesse Kokrda, K-o-k-r-d-a, and Cormac Connor,
15  C-o-r-m-a-c.
16        SPECIAL MASTER POPPITI:  Thank you,
17  Mr. Kirk.
18        Then thank you, counsel, and good
19  morning as we come up shortly to noon.
20        Let's do some housekeeping first, if you
21  will, with respect to today's proceeding.
22        I would propose that, for purposes of
23  making sense of what I expect is going to be a fairly
24  healthy workday with you all, that we go for a period of

Page 4

1  approximately two hours so that we can take a break and
2  make sure that anyone who needs to refresh themselves can
3  do that.  And that break, I would expect a half hour,
4  unless someone suggests that we are going to need more
5  time than a half hour.  So I would be looking to break
6  around 1:30.
7        Does anyone have any problem with that?
8        MR. BOVE:  Jeff Bove for Viewsonic.
9  That's fine, your Honor.
10        MR. COTTRELL:  Fred Cottrell.  I have
11  another call at 2:00, which won't go very long, so I can
12  just jump back in, hopefully, only a few minutes after
13  our break.
14        SPECIAL MASTER POPPITI:  Thank you.
15  That's fine.
16        MR. BOVE:  Jeff Bove.  Also, since I
17  have Jacqueline Mason with me, with the Court's
18  permission, once we got started, I was going to request
19  your Honor's permission to be excused.  I am next door
20  and am available, but I will not be arguing today.  Scott
21  Miller will be.
22        SPECIAL MASTER POPPITI:  I have no
23  problem with that at all.
24        MR. BOVE:  Your Honor, one --

Page 5

1        SPECIAL MASTER POPPITI:  Please identify
2  yourselves each time.
3        MR. BOVE:  Jeff Bove again.
4        SPECIAL MASTER POPPITI:  Thank you,
5  Mr. Bove.
6        MR. BOVE:  One other point of
7  housekeeping, and I am sure everyone will want to weigh
8  in on this, particularly your Honor, which is the manner
9  in which the Court would propose to tackle these motions
10  today.
11        Obviously, from Viewsonic's standpoint,
12  we have been thinking about it, and would toss the
13  proposal out for your Honor's consideration, obviously
14  for comment by all on the phone, which is to go, frankly,
15  motion by motion, request by request.
16        As I understand, the Court does have
17  rather extensive written submissions of the parties, and
18  we were thinking, again, obviously, subject to your
19  Honor's views, that perhaps some reasonable closure on
20  oral argument, per discovery requests, might be
21  appropriate in order to give hope of completing the task
22  today.
23        I simply offer that as a suggestion,
24  and, obviously, defer completely to your Honor's view.

Hearing

20  (Pages 74 to 77)

Page 74

1  haven't looked at them for that issue, unfortunately.
2          SPECIAL MASTER POPPITI:  I understand
3  that.  How many agreements to we expect?
4          MR. AMBROZY:  We would look through at
5  least the three most recent, your Honor.
6          SPECIAL MASTER POPPITI:  And how many
7  are there in the universe of agreements?
8          MR. MILLER:  I believe there is probably
9  on the order of a dozen agreements.
10          SPECIAL MASTER POPPITI:  Okay.  So, you
11  know, the task is not significant to compare that
12  language.
13          MR. AMBROZY:  In regard to the rest of
14  the motion, your Honor?
15          SPECIAL MASTER POPPITI:  Yeah, please.
16          MR. AMBROZY:  We had also sought
17  production of actual monitors.
18          SPECIAL MASTER POPPITI:  Right.
19          MR. AMBROZY:  And we wanted to just
20  address that with your Honor in that Viewsonic initially
21  provided -- initially agreed that they would provide
22  monitors but only for the accused devices, and as your
23  Honor knows, that started out with the VX 900 and then
24  it, as the case progressed, just recently, LPL has

Page 75

1  supplemented its interrogatory responses to include, I
2  think it was eight or nine other Viewsonic monitors.
3          SPECIAL MASTER POPPITI:  Right.
4          MR. AMBROZY:  And we can get into the
5  specifics of that later when we talk about the preclusion
6  application, but the monitors that we are seeking are all
7  the monitors that Viewsonic listed in response to LPL's
8  interrogatory requests, I think it's interrogatory
9  request No. 2 and 3, where we asked them to identify all
10  their monitors.  And we were seeking production or at
11  least inspection of those monitors.
12          And in response, I think you have seen
13  from the briefing on this, Viewsonic basically pointed
14  LPL to its web site and said, You can buy whatever you
15  need off the web site.  And when we went to the web site
16  and tried to buy those monitors, the sum total that we
17  were able to buy, I think there was only about six
18  percent of the numerous monitors listed in Viewsonic's
19  response that we were able to purchase online.
20          So, we would like some guidance from
21  Your Honor as to how we can work with Viewsonic to attain
22  all those monitors, or at least inspect them.
23          SPECIAL MASTER POPPITI:  Mr. Miller.
24          MR. MILLER:  Your Honor, Viewsonic, like

Page 76

1  most companies, doesn't keep products that have gone out
2  of sale in inventory, hopefully, in order to be
3  successful.  And so, we are talking about a list of
4  products that dates back over four years.
5          The only products Viewsonic would have
6  are products that are currently being sold or offered for
7  sale in the United States.  It doesn't maintain a museum,
8  if you will, of old inventory.
9          SPECIAL MASTER POPPITI:  Well, if you
10  don't have them, you can't give them.
11          MR. MILLER:  We told them where they can
12  locate them.  And as to new products, we have declined to
13  let them inspect them, we have offered to sell to them
14  because if they open up the package and take them out,
15  start taking them apart, they become a used product and
16  that's a cost that they should bear, not us.
17          With regard to if we have other products
18  that are laying around for one reason or another, that
19  may be a dead product or something, we have -- we are
20  willing to try to collect whatever we can of ancient
21  products and make those available for an inspection as
22  well, but it's only been, from LPL's side, just the
23  intransigents, Just give us everything or nothing, so we
24  have not -- that has not progressed.

Page 77

1          We are happy to sit down and try to work
2  out a solution if there are, you know, dinosaurs laying
3  around somewhere that they can look at, we are not
4  intending to hide them.  We are happy to let them look at
5  them.
6          MR. AMBROZY:  I think that's why these
7  documents that Jean are contractually obligated to keep
8  from five years after the termination of that agreement
9  becomes so important.
10          SPECIAL MASTER POPPITI:  We will get to
11  Jean in a moment after I have the opportunity to do the
12  work that I suggested I need to do.
13          But with respect to the monitors,
14  themselves, it seems to me what Mr. Miller is saying
15  makes sense.  I mean, if they have them, they said they
16  are going to provide them.  If they are new product, it
17  seems to me that it is appropriate for you to purchase
18  them.  It should be at your cost.
19          If there are dinosaurs laying around,
20  then I will take Mr. Miller at his word that they will do
21  a search, and at the end of that search, they will advise
22  what they have for you to either inspect or even purchase
23  a dinosaur if they are willing to -- if they are willing
24  to let that go, and I would like some time frame as to

Page 78

1   when all of that occurs.
2       I don't hear Mr. Miller saying that they
3   are not going to make these available.
4       MR. AMBROZY:  Again, Your Honor, and I
5   agree that they are not -- that he shouldn't be ordered
6   to produce something that he cannot produce.
7       SPECIAL MASTER POPPITI:  Right.
8       MR. AMBROZY:  But getting back to our
9   point, and I understand we will get back to the Jean, but
10  that does make those documents the best available
11  evidence of the monitors that were previously sold.
12      SPECIAL MASTER POPPITI:  It may be.  But
13  I want to focus on the hardware, if you will, and I would
14  just like a representation from the both of you as to
15  when you can expect there will be some resolution to the
16  process of what exists, new product that will be
17  purchased, old product that will either be inspected or
18  purchased, and a representation by Mr. Miller that that
19  does constitute the universe of expected -- of available
20  product.
21      MR. MILLER:  Your Honor, I am happy to
22  do that with dispassion.  I can only make so many demands
23  on my client in terms of the things we have agreed to for
24  the 19th.

Page 79

1       This is going to be a, you know, a
2   looking around for dinosaur kind of project.  It's not
3   going to be that straightforward.  I am going to need
4   some time, I would think, you know, until the end of
5   January, perhaps, to get that list assembled.  I mean,
6   the products that are available for purchase obviously
7   are on our web site and they can get those at any time
8   they choose.
9       SPECIAL MASTER POPPITI:  And those that
10  are available for purchase and if they are on the web
11  site, that can be done right away.
12      To search for dinosaurs, I mean, how
13  many are we -- how many exist?  Any idea?
14      MR. MILLER:  There is 216 products
15  listed on our list, and we are looking through a, you
16  know, five or 600,000 foot facility, which is warehouse
17  and office and it may be on somebody's desk, that we are
18  going to have to try to locate some of these things.  So
19  it's not a -- it's not just an easy task, I don't
20  believe.
21      SPECIAL MASTER POPPITI:  And are we
22  talking about dinosaurs that are yours or dinosaurs that
23  may be in the possession of the OEMs?
24      MR. MILLER:  No.  We are talking about

Page 80

1   dinosaurs that are ours.
2       SPECIAL MASTER POPPITI:  Right.
3       MR. MILLER:  And are in our facilities.
4       SPECIAL MASTER POPPITI:  Is the date of
5   the 26th doable?
6       MR. AMBROZY:  Just to clarify, Your
7   Honor, when Mr. Miller says that he is looking at
8   Viewsonic, does that include Viewsonic -- I am not sure
9   of the proper name, Scott -- but Viewsonic America or the
10  other entities of Viewsonic?
11      MR. MILLER:  I would be looking at
12  Viewsonic America, which would be the only place I would
13  expect to find the U.S. products.  I mean, if we are
14  going to expand this to overseas, it's going to take
15  substantially longer.
16      MR. AMBROZY:  We will start with the
17  U.S. products, but that brings, Your Honor, brings us to
18  another point --
19      SPECIAL MASTER POPPITI:  No new points.
20  We will keep it to what was asked for.  I will look at
21  the document that you are going to provide to me over the
22  break, and if it becomes an issue that is looking
23  overseas, we can join that issue at some other point.
24      MR. MILLER:  Your Honor, as to the 26th,

Page 81

1   could I ask for the 29th to give me another weekend, if
2   necessary, to scrounge around, please?
3       SPECIAL MASTER POPPITI:  29th is fine.
4   Okay.  We are just about at 1:30.  Did that finish that
5   particular application?
6       MR. AMBROZY:  The only issue remaining,
7   Your Honor, was the fact of the limitation to U.S. sales
8   which we think is improper.
9       We believe that our discovery should be
10  responded to to include monitors that are imported to the
11  U.S. as well as monitors that might go to Mexico, are
12  assembled or put under a different brand name and then
13  make their way into the United States.  So just limiting
14  the search to just monitors that are imported by
15  Viewsonic into the United States, we think, is too
16  narrow.
17      SPECIAL MASTER POPPITI:  Mr. Miller.
18      MR. MILLER:  I think we have retrenched
19  to the motion I thought we had finished which was the
20  information about sales.  This was technical documents
21  and those sorts of things.
22      Is that what you are doing, Rel?
23      MR. AMBROZY:  No.  I am trying to get
24  before his Honor the proper scope of the requests, which

62 (Pages 242 to 244)

Page 242

1  inducement motion that you had -- that you had, as you
2  had stated earlier, we would circle back to later.
3          SPECIAL MASTER POPPITI:  That's correct.
4          MR. KIRK:  Not to impose more work on
5  you, I know that when we supplied things this afternoon
6  at our break, we just supplied a case citation.  I know
7  Miss Mason supplied citations and a little bit of text
8  arguing the cases.
9          SPECIAL MASTER POPPITI:  Yes.
10         MR. KIRK:  Might we have just a short
11  amount where we could at least annotate our ideas in
12  about the same length that she did.
13         SPECIAL MASTER POPPITI:  Yes.
14         MR. KIRK:  And we could do that
15  tomorrow?
16         SPECIAL MASTER POPPITI:  Yes.
17         MR. KIRK:  Thank you, Your Honor.
18         SPECIAL MASTER POPPITI:  I really
19  appreciate everyone's time and enduring attention for
20  what we had to do today.
21         I wish you all the best of the beginning
22  of a new year.  Stay safe and healthy and I look forward
23  to working with you again on Wednesday of the new week.
24         MR. CHRISTENSON:  Thank you, Your Honor.

Page 243

1          MR. MILLER:  Thank you, Your Honor.
2          MS. MASON:  Thank you.
3          (The hearing was concluded at 6:17 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 244

1              C E R T I F I C A T E.
2  STATE OF DELAWARE:
                        :
3  NEW CASTLE COUNTY:
4      I, Renee A. Meyers, a Registered Professional
5  Reporter, within and for the County and State aforesaid,
6  do hereby certify that the foregoing hearing was taken
7  before me, pursuant to notice, at the time and place
8  indicated; that the hearing was correctly recorded in
9  machine shorthand by me and thereafter transcribed under
10  my supervision with computer-aided transcription; that
11  the foregoing hearing is a true record of the hearing;
12  and that I am neither of counsel nor kin to any party in
13  said action, nor interested in the outcome thereof.
14      WITNESS my hand this 29th day of December A.D.
15  2006.
16
17

18      _____
        RENEE A. MEYERS
        REGISTERED PROFESSIONAL REPORTER
19      CERTIFICATION NO. 106-RPR
        (Expires January 31, 2008)
20
21
22
23
24