# THE BAYARD FIRM
A T T O R N E Y S

222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE

www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395
WRITER'S DIRECT ACCESS
(302) 429-4208
rkirk@bayardfirm.com

ELECTRONICALLY FILED
BY HAND AND BY EMAIL

March 20, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

   Re: *LG.Philips LCD Co., Ltd. v. ViewSonic,* C.A. No. 04-343 JJF

Dear Special Master Poppiti:

  This letter is a joint submission from the parties containing a general Status Report of the parties' efforts to resolve discovery disputes and compliance with deadlines.

  I. <u>March 23, 2007 Status Conference and Hearing</u>

  The following new discovery motions are pending for Your Honor's possible consideration during the March 23, 2007 status conference and hearing:

   (a). LPL's Motion to Compel ViewSonic to Produce Inventories responsive to Document Request 51, which was filed on March 9, 2007. This matter is fully briefed and awaits a determination by Your Honor.

   (b). LPL's Motion Concerning Tatung's Interference with LPL's Third Party Discovery Efforts, which was filed on March 9, 2007. The parties filed submissions on this matter on March 15, 2007 and Your Honor heard argument during a hearing on March 16. The Tatung Defendants contend that the motion referred to by LPL in this paragraph is LPL's motion to extend third party discovery. The Tatung Defendants further contend that LPL's suggestion that they have improperly interfered with third party discovery is baseless. The only issue remaining to be resolved under LPL's motion is the extent to which third party discovery will be extended to accommodate depositions of third parties noticed for deposition by the parties.

   (c). Tatung's Motion to Strike LPL's January 24, 2007 submission concerning LPL's allegations that Tatung's document production is deficient. LPL withdrew Ex. E to its submission, in an effort to resolve the matter, but Tatung wants to have the entire submission stricken. This matter is fully briefed and awaits a determination by Your Honor.

650966-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
March 20, 2007
Page 2

 (d). As discussed below, the parties also seek Your Honor's assistance concerning other discovery issues that remain pending.

 II. Issues Concerning Document Productions and Inspections

The parties seek assistance from the Special Master concerning the unresolved issues stated below.

 (a). During the March 9, 2007 hearing conducted in Delaware, Tatung confirmed that it would produce CAD/CAM drawings for all the 51 product categories identified in its letter of March 1, 2007. Tatung produced CAD/CAM drawings on or about March 13, 2007. However, Tatung only produced CAD/CAM drawings for less than 60% of its 51 product categories. The CAD/CAM drawings for the 51 product categories are incomplete in that several of the representative CAD/CAM drawing sets appear to cobble together drawings from different product categories. Moreover, Tatung has not produced a CAD/CAM drawing set for several of the product categories. LPL informed Tatung of these deficiencies on March 16, 2007. Tatung replied on March 19, but LPL continues to dispute that Tatung's production of CAD/CAM drawings is sufficient. LPL seeks the Special Master's guidance as to whether Tatung's production is complete and, if not, whether the April 6 deadline should be delayed until Tatung's production is complete.

 Tatung contends that it has produced all of the CAD/CAM drawings in its possession. Tatung contends that LPL is mistaken as to the number of drawings, products, etc. Tatung states that the parties can address this issue, but if Tatung has produced everything it has, it has complied with the parties' agreement, notwithstanding LPL's desire for additional documents. Tatung believes that there is no reason to extend the dates since there is nothing more to produce. The contention by LPL that the CAD/CAM drawings produced by Tatung only correspond to 60% of the groups of products is wrong. The correlation of CAD/CAM drawings to grouped products is almost 90%. Counsel for LPL was informed on March 19, 2007 that their understanding of the CAD/CAM drawings was incorrect. LPL repeats its erroneous numbers in here.

 Moreover, although 51 groups of products were identified by Tatung, it has been explicitly noted on the actual list of product groupings that 6 of the groups contain only non-US products.[1] Accordingly, the groups of products that LPL could accuse of infringement number only 45, not 51. Of the 45 North American product groups, CAD/CAM drawings for 40 of the groups have been provided. For the remaining five product groups without CAD/CAM drawings, Tatung has provided a physical sample for one group. Of the four remaining product groups without a physical sample or a CAD/CAM drawing, Tatung has previously provided the type of rear assembly view drawing LPL has indicated is the type of assembly drawing it needs for one product

---

[1] The Non-US products were included on Tatung's interrogatory responses. Rather than provide fodder for unecessary disputes over a non-issue, Tatung did not remove those products from the chart provided to LPL. Rather, Tatung clearly identified the "Non-North America Product[s]" in the chart.

650966-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
March 20, 2007
Page 3

group - the "L5XKTPP," For the three remaining product groups without CAD/CAM drawings, a physical sample or a rear assembly view drawing, Tatung has provided LPL with the customer model correlations for two of those groups. A sole product group remains which lacks a customer model correlation, a physical model to inspect, rear view assembly drawings or CAD/CAM drawings. For all of the five product groupings without CAD/CAM drawings, Tatung has performed a diligent search and has not been able to locate any additional drawings.

(b). On March 7, 2007, Tatung forwarded a list to LPL that correlated a subset of Tatung Company's product categories to products sold by third party companies. Since receipt of that list, LPL has attempted to purchase monitors from each of the product categories. During the March 9, 2007 hearing conducted in Delaware, Tatung again confirmed that it would correlate its internal product designations to the product designations used by third parties so that LPL can purchase these monitors. As LPL informed Tatung on March 14 and 16, 2007, 11 of the 51 product categories have no corresponding third party correlation. Additionally, nine of the third-party-identified representative products are not available for sale. Because of the delay in purchasing these third party products, LPL asked Tatung to provide them directly to LPL. LPL seeks the Special Master's guidance as to whether Tatung's production is complete and, if not, whether the April 6 deadline should be delayed until Tatung's production is complete.

Tatung contends that it has provided the product correlations of which it is aware. There is no one to one correlation for Tatung products and its customers products. In any event, this is not a record that Tatung and TUS maintain; it essentially is apocryphal information. Tatung contends that there is a serious flaw in LPL's plan to use customer model numbers to buy product to prove infringement. In most cases, the customer assigns its own model number to a product it sells or resells. There may be (and usually are) more that one supplier of that product.

(c). During the March 9, 2007 hearing conducted in Delaware, Tatung confirmed that the Tatung Defendants would correlate the Tatung America products to the Tatung Company products. Despite the representation to the Special Master on March 9th that the Tatung Defendants would correlate the Tatung America products to the Tatung Company products, LPL has not yet seen such a correlation. LPL seeks the Special Master's guidance as to whether Tatung's production is complete and, if not, whether the April 6 deadline should be delayed until Tatung's production is complete.

Tatung contends that it has provided a schedule confirming the correlation for accused products and has explained that TUS uses the same model number as that used by Tatung Company. Moreover, Tatung contends that LPL is aware that the vast majority of the Tatung America products are "open frame" products which do not have a back covers or front bezel and therefore cannot meet the limitations of any claim of the patents in suit. Nonetheless, LPL seeks to compel Tatung or Greenberg to "create" additional correlations and categorizations - even for products that simply cannot infringe.

650966-1

THE BAYARD FIRM

However, LPL contends that the product correlation schedule that Tatung provided only links Tatung Company's accused products to corresponding Tatung America products. This limited schedule is contrary to what Tatung agreed to provide during the March 9, 2007 hearing. During that hearing, Tatung agreed to provide a list that correlates all Tatung America products back to Tatung Company products, without any limitation based on accused products. The reason for this request was so that LPL would be able to identify additional Tatung America accused products. The parties ask that the Special Master provide guidance on this matter.

(d). On February 14, 2007, the Special Master ordered that ViewSonic must produce all technical and mounting-related documents in the possession of its OEMs. ViewSonic has filed Objections to the Special Master's report and LPL served a brief in response. In the meantime, LPL awaits this production and maintains that, given the types of documents that ViewSonic's OEM Contracts describe as being in the possession of its OEMs, documents produced by the OEMs are likely to help LPL identify additional infringing products. LPL seeks the Special Master's guidance as to how to adjust the discovery schedule if Judge Farnan adopts the Special Master's recommendations.

III. Deposition Scheduling

(a). As noted above, the parties will coordinate with each other as to third party deposition dates. The parties expect that the depositions of third parties will be conducted beyond the March 30 deadline, pursuant to the Special Master's determinations during the March 16 hearing, but are working to determine how much additional time will be necessary.

(b). During the March 12, 2007 hearing, the Special Master approved LPL's request to take the depositions of Tatung's technical witnesses after April 13, 2007, which is after the April 6 deadline by which LPL is to identify additional accused products. Other than the fact that Tatung's depositions will begin after April 13, the parties have not set any new deposition dates. ViewSonic indicated that, because Judge Farnan is considering ViewSonic's objections to Your Honor's recommendations concerning ViewSonic's production of OEM documents, ViewSonic would prefer to schedule the depositions of its technical witnesses in April also. The parties are still negotiating over these new deposition dates.

Tatung contends that its witnesses are to be deposed starting April 13 and that there is nothing to negotiate. Specifically, Tatung contends that the parties agreed to reset the depositions of Jamie Wang for April 13 and Vincent Liu for April 16-17.

LPL contends that the parties agreed only that Tatung's depositions would resume on or after April 13, but that specific dates have not been discussed.

(c). The parties have already taken two weeks of depositions. For the week of March 26, only the deposition dates for Mr. Ranucci, Ms. Liu and Mr. Bang are confirmed. The remaining ViewSonic witnesses (names in italics) have been noticed for the dates identified below, but, LPL and ViewSonic are negotiating over whether those

650966-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
March 20, 2007
Page 5

witnesses will appear on those dates or appear after LPL identifies additional infringing products in April. That said, the parties agree that the following witnesses are scheduled to be deposed on the following dates:

<u>March 20</u>: Oliver Shih (TTC) (additional time may be needed unless testimony is in English)

<u>March 21</u>: J. H. Kim (LPL)

<u>March 22</u>: A. Sun (TTA), J. H. Kim, cont'd (LPL)

<u>March 23</u>: J. H. Kim, cont'd (LPL)

<u>March 26</u>: *E. Willey (VS), D. Lee (VS)*

<u>March 27</u>: R. Ranucci (VS), *A. Huang (VS)*

<u>March 28</u>: V. Liu (VS), *G. Hsiao (VS), T. Huang (VS)*

<u>March 29</u>: Y. Bang (LPL), *J. Sung (VS)*

<u>March 30</u>: *V. Yip (VS), M. Zapka (or person holding same job position/responsibilities as Mr. Zapka) (VS)*

    (d).    Tatung has requested a deposition date from LPL attorney Rebecca Rudich (or in the alternative an agreement to provide a declaration) limited to one subject--her written response to a PTO office action. LG Philips has requested a draft of a declaration for Ms. Rudich which it will consider in lieu of Ms Rudich's deposition. However, LG Philips has advised that Ms Brzezynski will be out of town for two days. Tatung has no objection to deferring this issue, but believes that if an agreement cannot be reached the parties should be ordered to schedule Ms. Rudich's deposition at a mutually convenient date, even if that date is after March 30, 2007. LPL will consider the draft declaration when it is received and will respond to Tatung as soon as possible thereafter. LPL further states that if agreement cannot be reached, then this may be an issue for which the parties will need guidance from the Special Master.

    (e).    Tatung contends that LPL has refused to provide Tatung access to the products they contend are Tatung products that they have dismantled and inspected. As such, Tatung contends that it has no way of knowing whether LPL is accusing or not accusing Tatung products without seeing the monitors (or at least having serial numbers). Tatung's submitted its request to inspect all Tatung monitors in LPL's possession on March 15. LPL responded on March 19, asking Tatung to explain why it needed to inspect its own monitors and why such inspection would not be an invasion of LPL's attorney work product. Tatung has not responded to LPL's March 19 letter, except to reiterate its request for an inspection.

650966-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
March 20, 2007
Page 6

      (f).    Tatung contends that they have requested LPL to provide technical manuals and sales information regarding "rear mountable" products. Tatung has provided LPL with specific model numbers, although there may be more that Tatung has not discovered. Tatung contends that LPL has refused to produce any such documents. LPL contends that it has not refused, but that it has asked Tatung to explain why such documents are relevant to or necessary for this case. Tatung's recent request for technical information concerning LPL's modules, however, appears to seek burdensome and irrelevant discovery, in which case it overlaps with ViewSonic's motion to compel previously briefed and submitted for decision. LPL remains willing to discuss this matter with Tatung.

                     Respectfully submitted,

                     /s/ Richard D. Kirk (rk0922)

cc: Counsel as shown on the attached certificate

650966-1

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that, on March 20, 2007, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Jeffrey B Bove, Esq.  
Jaclyn M. Mason, Esq.  
Connolly Bove Lodge & Hutz LLP  
1007 North Orange Street  
P.O. Box 2207  
Wilmington, Delaware 19899-2207  

Frederick L. Cottrell, III, Esq.  
Anne Shea Gaza, Esq.  
Richards, Layton & Finger  
One Rodney Square  
P.O. Box 551  
Wilmington, DE 19899  

The undersigned counsel further certifies that copies of the foregoing document were sent by email to the above counsel on March 20, 2007, and will be sent by hand on March 20, 2007, and were sent by email on March 20, 2007, and will be sent by first class mail on March 20, 2007, to the following non-registered participants:

Scott R. Miller, Esq.  
Connolly Bove Lodge & Hutz LLP  
355 South Grand Avenue  
Suite 3150  
Los Angeles, CA 90071  

Valerie Ho, Esq.  
Mark H. Krietzman, Esq.  
Frank C. Merideth, Jr., Esq.  
Greenberg Traurig LLP  
2450 Colorado Avenue, Suite 400E  
Santa Monica, CA 90404  

Tracy Roman, Esq.  
Raskin Peter Rubin & Simon LLP  
1801 Century Park East, Suite 2300  
Los Angeles, CA 90067  

/s/ Richard D. Kirk (rk922)  
Richard D. Kirk

571447-1