# RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ANNE SHEA GAZA

DIRECT DIAL
(302) 651-7539
GAZA@RLF.COM

March 21, 2007

**BY E-MAIL & HAND DELIVERY**
The Honorable Vincent J. Poppiti
BLANK ROME LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*, C.A. No. 04-343-JJF

Dear Special Master Poppiti:

The Tatung Defendants respectfully submit this letter brief in support of their Motion for Protective Order limiting the scope of Plaintiff LPL's third party subpoenas issued to Ingram Micro, Edward Service, eMachines, CLI, Inc., Amazon.com, and American Dynamics to documents and deposition testimony regarding accused products.[1] Tatung also requests that LPL be required to withdraw the subpoena issued to Gateway, Inc., as Gateway has not purchased any of the accused products.[2] This Motion originally was brought in the districts from which the subpoenas issued; those Courts have since transferred the motions to the District of Delaware.[3]

### I.   Procedural Background

In mid to late February, LPL served 23 third party subpoenas out of 15 district courts on Tatung's customers. The subpoenas sought confidential technical information, pricing, negotiations, agreements, and correspondence from the Tatung Defendants' customers.[4] The subpoenas were not limited in any way to the accused products. Tatung requested a meet and confer on this subject. After delaying the process for a week, LPL finally indicated that it was unwilling to narrow or modify the subpoenas.[5] Tatung then proposed to LPL that its motions for protective order be consolidated before Your Honor.[6]

---

[1] The parties will soon stipulate to transfer the motions for protective order regarding the subpoenas issued to Radio Shack and CompUSA to the District of Delaware.

[2] *See* Gateway, Inc. subpoena at Exh. A.

[3] *See* Orders of W.D. Wash. and C.D. Cal. at Exh. B. The S.D. Cal. has not yet issued an Order but stated its decision to transfer at the hearing on March 20, 2007.

[4] *See, e.g.*, Exh. A. The Gateway subpoena is representative of all of LPL's subpoenas.

[5] *See* Letter from Valerie Ho to Cormac Connor and subsequent emails at Exh. C.

[6] *See* excerpts of Transcript dated March 9, 2007, Exh. D; *see also* excerpts of Transcript dated March 16, 2007, Exh. E.

RLF1-3129180-2

The Honorable Vincent J. Poppiti
March 21, 2007
Page 2

LPL refused, claiming that Tatung lacked standing to object to the subpoenas and that Your Honor had no jurisdiction over the third parties.[7]

As a last resort and at great expense, Tatung retained local counsel and, beginning on March 9, 2007, filed its motions for protective order.[8] Tatung has largely been successful with its motions.[9] Last week, LPL filed its oppositions.[10] In an about-face, LPL has now asked each of those courts to transfer Tatung's motions to Delaware.[11]

## II.   Argument

### A. The Tatung Defendants Have Standing To Move For Protective Orders Under Federal Rule of Civil Procedure 26(c).

Tatung has stated from the outset and in its briefs that its motions are made pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which expressly authorizes parties to move for protective orders against subpoenas issued to third parties.[12] *See also, e.g., Regency Oldsmobile, Inc. v. GMC*, 723 F.Supp. 250, 270 (D.N.J. 1989) (holding that party to a lawsuit had standing to object to third party deposition); *Springbrook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal. 1988) (holding that defendant had standing to move for protective order under Rule 26(c)). However, LPL continues to deliberately misconstrue Tatung's position to manufacture a non-existing standing argument. Its oppositions resort to citing inapposite case law under *Rule 45* for the proposition that Tatung does not have standing to bring this motion.[13] LPL's opposition also mischaracterizes Tatung's motions as motions to *quash* and as asserting objections "on behalf of the third parties."[14] In fact Tatung has never claimed to raise objections *on behalf of third parties*; but only *on its own behalf*.

### B. LPL Should Not Be Allowed To Embark On A Fishing Expedition.

The salient issue is whether LPL is entitled to receive from third parties discovery relating to products that have not been accused by LPL of infringing the Patents-in-Suit and that Tatung treats as highly confidential. Your Honor has stated that discovery in this case likely will be limited to accused products. LPL's subpoenas are an attempt to circumvent an impending ruling from Your Honor. LPL's subpoenas seek broad categories of information regarding *every* "visual display product" sold or offered for sale by the Tatung Defendants.[15] The subpoenas are not limited in any way to the 20 accused products

---

[7] *See* Exh. E at 8-9.

[8] *See* Tatung's Motions for Protective Order in at Exhs. F, G, and H, exhibits excluded. Ex. F is exemplar of the Motions in re Edward Service, eMachines, CLI, Inc., and Gateway, Inc, all of which were filed in the C.D. Cal.

[9] The S.D. Fla, W.D. Ark., D.N.J., D. Minn. have all limited discovery to accused products. Only one court, the N.D. Cal., denied Tatung's motion.

[10] *See* LPL's Oppositions to Motion for Protective Order at Exhs. I, J, and K, respectively.

[11] *See, e.g.,* Exh. I at 6.

[12] *See* emails between counsel for Tatung and counsel for LPL at Exh. C.

[13] *See, e.g.,* Exh. I at 7-8.

[14] *See, e.g.,* Exh. I at p. 5.

[15] *See* Gateway subpoena at Exh. A as an exemplar.

The Honorable Vincent J. Poppiti
March 21, 2007
Page 3

identified by LPL and instead attempt to improperly delve into the confidential business relationships between Tatung and their customers.

LPL should not be permitted to embark on a "fishing expedition" that serves no legitimate purpose but is instead calculated to harass Tatung's customers.[16] See *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F.Supp. 842 (D.Del. 1991) (Farnan, J., holding that defendant was entitled to protective order to prevent patent licensee from taking *any* discovery from defendant's customers, and that "unless [patent licensee] can demonstrate that it has a specific need for evidence available only from third party customers of [defendant], the Court concludes that [defendant] and its customers are entitled to protection"); see also *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327-28 (Fed. Cir. 1990) (characterizing patent owner's third party subpoenas as a "fishing expedition" and stating that "litigant[s] may not engage in merely speculative inquiries in the guise of relevant discovery").

LPL claims that the broad categories of information it seeks are relevant to the issue of inducement. However, in order for there to be indirect infringement (inducement), there must be direct infringement *and an infringing product*. See *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002). Here, there is no allegation of direct infringement with respect to the hundreds of products for which LPL seeks information from Tatung's customers.[17]

C.   **LPL's Opposition Contains Unfounded Accusations.**

LPL has represented both to Your Honor and to the various district courts that Tatung improperly impeded third party discovery. Counsel for Tatung denies that it has suggested or otherwise told third parties not to comply with LPL's subpoenas. Tatung merely informed some customers that it is filing motions for protective order. Indeed, many customers served their own objections or filed motions to quash LPL's subpoenas. LPL's insinuation that Tatung purposely timed its motions and expedited hearings to coincide with key depositions and to "distract" counsel for LPL also lacks merit: counsel for Tatung was likewise forced to address these issues during important depositions, and to suggest that Tatung had control over the schedules of Federal Courts so as to orchestrate overlapping hearings is disingenuous. Finally, LPL itself noticed third party depositions on the same day in different states.

Any delay or inconvenience asserted by LPL as a result of the recent motion practice is self-inflicted. LPL waited until the eve of discovery cutoff to issue two dozen broad-ranging subpoenas. LPL refused to limit the scope of its subpoenas in any way. LPL then rebuffed Tatung's attempt to consolidate these motions before Your Honor, forcing Tatung into courts across the country.

Accordingly, Tatung respectfully requests that the Court grant its Motion for Protective Order and limit discovery from third parties to documents and deposition testimony, if any, regarding products specifically accused by LPL.

---

[16] LPL has succeeded in this respect, as the majority of subpoenaed parties have served objections and some have filed motions to quash.

[17] Tatung has submitted further briefing on this issue in opposition to LPL's Motion to Compel Discovery Regarding Indirect Infringement and Damages. *See* Exh. L.

RLF1-3129180-2

The Honorable Vincent J. Poppiti
March 21, 2007
Page 4

                        Respectfully,

                        Anne Shea Gaza
                        (#4093)

ASG/afg
cc:    Clerk of Court (via CM/ECF)
       Richard Kirk, Esquire (via electronic mail)
       Cormac T. Connor, Esquire (via electronic mail)
       Mark Krietzman, Esquire (via electronic mail)
       Scott R. Miller, Esquire (via electronic mail)
       Jeffrey B. Bove, Esquire (via electronic mail)