# EXHIBIT E

031607hr1.TXT

1

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3

PHILLIPS, L.G., LCD CO., LTD,   )

4                                )
                Plaintiffs,      )   C.A. No. 04-343(JJF)
5                                )
     v.                          )
6                                )
     TATUNG CO., TATUNG COMPANY OF )
7    AMERICA, INC., and VIEWSONIC )
     CORPORATION,                )
8                                )
                Defendants.      )
9

10         Hearing of above matter taken pursuant to
     notice before Renee A. Meyers, Registered Professional
     Reporter and Notary Public, in the law offices of BLANK
11   ROME, LLP, 1201 North Market Street, Wilmington,
     Delaware, on Friday, March 16, 2007, beginning at
12   approximately 3:00 p.m., there being present:

13   BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

14   APPEARANCES:

15         THE BAYARD FIRM
           RICHARD D. KIRK, ESQ.
16           222 Delaware Avenue, Suite 900
             Wilmington, Delaware  19899
17           for Plaintiffs

18

19

20                    CORBETT & WILCOX
21          Registered Professional Reporters
     230 North Market Street    Wilmington, DE 19899
22                  (302) 571-0510
                www.corbettreporting.com
23          Corbett & Wilcox is not affiliated
           with Wilcox & Fetzer, Court Reporters
24

0

2

1    APPEARANCES (Continued):

031607hr1.TXT

8

1    that response for just a moment.

2                    I don't expect, and certainly, in none

3    of your papers, No. 1, you are not asking me to do

4    anything with respect to those applications and with

5    respect to those hearings, and I expect the reason for

6    that is I don't have -- and tell me whether you agree

7    with this -- I don't have the authority to direct Tatung

8    to stand down; do you agree with that?

9                    MR. CONNOR:   Not necessarily, Your

10   Honor.

11                   SPECIAL MASTER POPPITI:   Tell me why you

12   don't think.

13                   MR. CONNOR:   Well, we believe that these

14   motions could have, and Mr. Merideth raised this on

15   Monday, we did discuss it, and, at the time, LPL didn't

16   see how what it understood to be Tatung's plan could be

17   heard before Your Honor, but as it's now taken shape,

18   these issues could be raised with Your Honor if they are

19   going to be raised.

20                   And what we are asking for is that Your

21   Honor issue an order on one hand that extends the time by

22   which LPL can complete its third-party discovery, and we

23   would submit that a reasonable time would be 60 days, and

24   then we also ask Your Honor to direct Tatung to stop

9

1    interfering and throwing up road blocks in front of LPL's

                          Page 7

031607hr1.TXT

7   motion that we had presented to Your Honor which is to
8   sustain our objections and to grant us a protective order
9   with regard to the production of confidential information
10  concerning unaccused products.  And there is -- there is
11  absolutely nothing improper about what we have done.
12                  It's exceedingly important to our
13  client, as we have said on numerous occasions, that
14  information about unaccused products not be shared with
15  our competitor.  There is absolutely no reason to do
16  that.  That very issue is under consideration by Your
17  Honor.  We would have been happy and we asked that the
18  issue be presented to you in some form that would have
19  precluded having to do this.  We don't enjoy going to 13
20  different jurisdictions and filing these motions.
21                  Second, we have asked for emergency
22  consideration of these motions because we want to get the
23  decisions made right away.  So, if a decision is that the
24  information should be produced, then it can be produced

0

18

1   by these third-party witnesses.  And we have -- that
2   effort to try to expedite a determination of the issue
3   has been resisted by LG Phillips.
4                  So, to suggest somehow or another that
5   we are trying to impede the process is just flat out
6   wrong.  And it's -- well, that's the end of it.  I
7   won't --
8                  SPECIAL MASTER POPPITI:  Let me do this
9   before Mr. Christenson says anything:  I hope, if nothing
10  else, over the time that we have -- that I have had an

031607hr1.TXT
11    opportunity to be working with all of you, I hope one of

12    the things that you have learned is, when I say I have

13    not made a judgment one way or the other, when I do not

14    have any inclination one way or the other, that you can

15    take me at my word.

16              So, the dialogue that I was having

17    earlier about the papers that have been put before me and

18    what, if any, authority I have, notwithstanding the

19    language that I used for purposes of having that

20    dialogue, because I think the language is the language of

21    the art to use, the language of the law to use, I make no

22    judgment and I have no inclination.

23              Let me say this as well, and perhaps I

24    should have done this earlier than now:  To the extent

D

19

1    that it is appropriate for a Special Master and for

2    somebody sitting in my chair to give an inclination as to

3    what a finding and recommendation is going to be, and

4    particularly to give an inclination as to a finding and

5    recommendation that has not only implications in this

6    case but perhaps implications in other cases, even though

7    I know what I do is merely a finding and recommendation,

8    it's not adopted by the Court, it is -- the words are,

9    they are on the paper, hopefully, they have some worth,

10   but it's the Court's words that count.

11             But to the extent that it's important to

12   give an inclination on the issue of accused/unaccused, I

13   think the best way to describe that is you know that I

14   have not filed a finding and recommendation on that

15   issue, and you also know that discovery is proceeding --
                          Page 16

031607hr1.TXT

16    I am not going to characterize how it's proceeding -- on
17    accused product. You all know that.
18                    You can expect, and I said it to you
19    last week, but, quite frankly, I wasn't able to turn to
20    it and get to it this week, you will get a finding and
21    recommendation. It's important that it be as careful --
22    they all should be careful -- but in more depth in terms
23    of its analysis of dealing with the issue of
24    accused/unaccused. But by virtue of what has been going

20

1    on, I am telling you that the discovery is going to be,
2    absent something earth shattering that I consider in the
3    next number of days, it's going to be limited to accused
4    products.
5                    Now, perhaps I should have done that
6    earlier, and I will even go so far as to suggest, by
7    perhaps doing it earlier in terms of giving you an
8    indication or an inclination on the record, you would
9    have been able to, perhaps, discussed the issue in a meet
10   and confer more meaningfully and you would have had the
11   opportunity and you now may have that opportunity to
12   share a Special Master's inclination with other
13   jurisdictions that you will be working in.
14                    Now, having said that, Mr. Christenson.
15                    MR. CHRISTENSON: Yes, Your Honor.
16   Thank you. I don't know if there is anything else that
17   you would like me to address concerning the third-party
18   issue. I think -- I think we all understand your view on
19   that and it sounds like that's an issue to be addressed

Page 17

# EXHIBIT F

FILED

1  FRANK E. MERIDETH, JR. (SBN 46266)
   meridethf@gtlaw.com
2  MARK H. KRIETZMAN (SBN 126806)2007 MAR 12 PM 12: 21
   krietzmanm@gtlaw.com
3  VALERIE W. HO (SBN 200505)        CLERK U.S. DIST?    COURT
   hov@gtlaw.com                     CENTRAL DIST. OF CALIF.
4  CHARLENE L. OH (SBN 246349)            LOS ANGELES
   ohc@gtlaw.com                    BY_____
5  GREENBERG TRAURIG, LLP
   2450 Colorado Avenue, Suite 400E
6  Santa Monica, California 90404
   Telephone:  (310) 586-7700
7  Facsimile:  (310) 586-7800

8
   Attorneys for Defendants
9  TATUNG COMPANY and
   TATUNG COMPANY OF AMERICA, INC.
10
            **UNITED STATES DISTRICT COURT**
11
          **CENTRAL DISTRICT OF CALIFORNIA**
12
   L.G. PHILIPS LCD CO., LTD.,       CASE NO. CV07-1614 DDP(AJWx)
13
              Plaintiff,             **DEFENDANTS TATUNG COMPANY**
14                                   **AND TATUNG COMPANY OF**
        vs.                          **AMERICA, INC.'S *EX PARTE***
15                                   **APPLICATION FOR PROTECTIVE**
   TATUNG COMPANY, TATUNG            **ORDER LIMITING SCOPE OF**
16 COMPANY OF AMERICA, INC., and     **SUBPOENA SERVED ON THIRD**
   VIEWSONIC CORPORATION,            **PARTY INGRAM MICRO, INC.**
17                                   **PURSUANT TO FRCP 26(C)**
              Defendants.
18                                   [[Proposed] Order Filed Concurrently
   [ C.A. No. 04-343-JJF             Herewith]
19   United States District Court
     District of Delaware ]
20                                   Judge:
                                     Courtroom:
21

22

23

24      PLEASE TAKE NOTICE that Defendants TATUNG COMPANY and TATUNG

25 COMPANY OF AMERICA, INC. (the "Tatung Defendants") hereby submit this *ex*

26 *parte* application ("Application") for a Protective Order limiting the scope of third party

27 discovery served by Plaintiff L.G. Philips LCD Co., Ltd. ("LPL") on INGRAM

28 MICRO, INC. ("Ingram").  The Tatung Defendants submit this Application for a

1  Protective Order pursuant to Federal Rule of Civil Procedure 26(c) and Civil L.R. 7-19.

2      This Application concerns a subpoena for testimony and documents issued out of

3  this district in connection with a patent infringement lawsuit pending in the United

4  States District Court for the District of Delaware (the "Delaware Action"), C.A. No. 04-

5  343-JJF. The discovery deadline in the Delaware Action is set for March 30, 2007.

6  This matter is brought on an *ex parte* basis due to the urgency and immediacy of the

7  relief requested.

8   • On February 13, 2007, Plaintiff LPL served Ingram with a deposition and

9     document subpoena. LPL has since served 22 other third parties who are, like

10     Ingram, the Tatung Defendants' customers.

11   • Given the press of discovery deadlines and motion practice before the Special

12     Master in the Delaware Action, on February 27, 2007, counsel for the Tatung

13     Defendants requested a meet and confer, pursuant to FRCP 26(c), regarding the

14     scope of the subpoenas. *See* Exhibit 1.

15   • Counsel for LPL responded that it could not meet and confer prior to March 5,

16     2007. *See* Exhibit 2.

17   • On March 5, 2007, the parties met and conferred. Counsel for LPL refused to

18     limit the scope of third party discovery.

19      LPL's subpoena to Ingram requested documents by March 5, 2007. The

20  deposition is noticed for March 13, 2007.

21      Given the urgency of this situation and LPL's unwillingness to narrow the scope

22  of its extremely broad subpoenas, the Tatung Defendants must file this motion on an *ex*

23  *parte* basis and are unable to comply with Local Rules 45-1, 37-2, or 6-1. *See*

24  Declaration of Charlene L. Oh ("Oh Decl."), ¶ at 4, filed concurrently herewith.

25      This Application is made on the grounds that LPL's subpoenas to two dozen

26  customers, issued out of fifteen different judicial districts across the country, seek to

27  obtain extremely broad categories of confidential, commercially sensitive information

28  relating to the Tatung Defendants' business relationships with their customers and make

1

1    absolutely no attempt to limit the information sought to the accused products at issue.

2         Because the deposition of Ingram is fast approaching, the Tatung Defendants

3    respectfully request that this Court issue a Protective Order pursuant to FRCP 26(c)

4    limiting the scope of any testimony and documents from Ingram to information relating

5    to the accused products. *See* Oh Decl. at ¶ 5.

6         This Application is based upon the Memorandum of Points and Authorities, the

7    the Declarations of Charlene L. Oh and Jackson Chang, the pleadings and files in this

8    action, and such other argument and evidence as may be presented at the hearing.

9

10   DATED: March 9, 2007                    GREENBERG TRAURIG, LLP

11

12                                           By: _____
                                                 FRANK E. MERIDETH
13                                               MARK KRIETZMAN
                                                 VALERIE W. HO
14                                               CHARLENE L. OH

15                                           Attorneys for Defendants
                                             TATUNG COMPANY AND TATUNG
16                                           COMPANY OF AMERICA, INC.

17

18

19

20

21

22

23

24

25

26

27

28

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Tatung Defendants submit this Memorandum of Points and Authorities in support of their Motion for Protective Order Limiting Scope of Third Party Subpoena (the "Motion for Protective Order"). The subpoena at issue is attached as Exhibit 3 hereto and made a part hereof. For the reasons discussed in greater detail below, the Tatung Defendants' request for a protective order should be granted because the discovery sought by Plaintiff L.G. Philips LCD Co., Ltd. ("LPL") is:

1.    A transparent and improper effort by LPL to perform an "end run" around a potentially unfavorable ruling by the Special Master in the Delaware Action concerning the proper scope of LPL's discovery;

2.    Irrelevant in that it seeks extremely broad categories of communications and information from the Tatung Defendants' customers entirely unrelated to the patents-in-suit or the accused products in the Delaware Action;

3.    Not reasonably calculated to lead to the discovery of admissible evidence in the Delaware Action, but instead, seeks information about the Tatung Defendants' confidential business communications and trade secret information; and

4.    Unduly burdensome and calculated to harass the subpoenaed third parties, some of whom have already responded to subpoenas issued by LPL during jurisdictional discovery.

## II.    STATEMENT OF FACTS

### A.    The Nature Of This Lawsuit.

Defendant Tatung sells electronic products including computer monitors and televisions to resellers and retailers worldwide. Defendant Tatung Company of America, a California corporation, is a reseller of computer monitors and other LCD applications in the United States. LPL competes with the Tatung Defendants in the market of flat display panel products.

Third-party Ingram, the recipient of LPL's subpoena and deposition notice, is

3

126743341_1

1  located in Santa Ana, California and is a customer of the Tatung Defendants.

2      The Tatung Defendants, who integrate more than 800 models of visual display

3  products, are Original Equipment Manufacturers ("OEMs"). As such, many of their

4  products are branded and otherwise customer specific; in most instances, the products

5  are made to exacting customer specifications. Because the monitor business is highly

6  competitive, the particular product design requirements and specifications of the

7  Tatung Defendants' OEM customers, including those of Ingram, are extremely

8  valuable trade secrets. The Tatung Defendants' specific pricing arrangements with

9  customers also are extremely valuable trade secrets.

10      In the Delaware Action, LPL has alleged patent infringement claims against the

11  Tatung Defendants based on certain "rear-mount" patents with respect to 20 of its

12  products.

13  **B.    The Tatung Defendants Have Already Provided LPL With Voluminous**

14  **Discovery Relating to Both Its Accused and Non-Accused Products.**

15      LPL served its initial discovery requests in the Delaware Action over two years

16  ago. In response to those discovery requests, the Tatung Defendants produced

17  technical specifications and assembly drawings covering approximately 800 models of

18  monitors and flat panel displays they sell.

19      The Tatung Defendants have expended a great deal of effort to comply with

20  their discovery obligations. Since late January 2007 alone, the Tatung Defendants

21  have produced approximately 15,000 pages of highly confidential documents. In

22  addition, Defendants have made available for LPL's inspection, and LPL has

23  examined, disassembled, and photographed more than 40 monitor and television

24  products. Of the hundreds of products for which LPL has been provided technical

25  documents, LPL to date has accused only 20 products of infringing the patents-in-suit.

26  **C.    LPL's Motion To Compel Further Customer Information Is Pending**

27  **Before the Special Master.**

28      In January 2007, LPL filed a motion to compel the production of additional

4

1   documents such as highly confidential agreements and communications between the

2   Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual

3   display products including the hundreds of unaccused products. The Tatung

4   Defendants vigorously opposed that motion on the grounds that LPL's requested

5   discovery is not limited in any way to the accused products at issue in the Delaware

6   Action and is instead a transparent attempt by LPL to obtain highly sensitive business

7   information. That motion is presently pending before the Special Master. The parties

8   expect a decision shortly, as discovery cut-off is March 30, 2007.

9   **D.**    **LPL Now Seeks the Same Discovery Directly From the**

10        **Tatung Defendants' Customers.**

11      In what can only be characterized as a blatant attempt to circumvent a

12   potentially unfavorable ruling by the Special Master on a motion LPL itself filed, LPL

13   recently served Ingram, as well as two dozen other customers of the Tatung

14   Defendants, with a subpoena and deposition notice seeking voluminous discovery

15   about highly confidential customer information on hundreds of products that LPL has

16   *never accused of infringement*.

17      LPL's extensive and broad-reaching requests for "visual display products"

18   encompass *all* of the products the Tatung Defendants sell to Ingram and not just the

19   accused products that are the subject of the Delaware Action. To date, LPL has failed

20   to provide any legitimate explanation why information on *unaccused* products is

21   relevant to its patent infringement claims in the Delaware Action.

22           **III.**   **LEGAL ARGUMENT**

23   **A.**    **The Tatung Defendants Have Standing Under FRCP 26(c)**

24        **To Move For A Protective Order.**

25      Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that

26   "[u]pon motion *by a party* or by the person from whom discovery is sought,

27   accompanied by a certification that the movant has in good faith conferred…and for

28   good cause shown… the court in the district where the deposition is to be taken may

126743341_1

1    make any order which justice requires to protect a party or person…" (emphasis

2    added).  Courts within the Ninth Circuit have recognized that this language gives

3    parties to a lawsuit, as well as third-parties themselves, standing to challenge third-

4    party subpoenas. *See Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Assoc.*, 38 F.

5    Supp. 2d 1202, 1206 n. 3 (D. Or. 1999), *rev'd on other grounds*, 218 F.3d 1085 (9th

6    Cir. 2000) (noting that FRCP 26(c) "expressly gives" a party standing to challenge

7    third party subpoenas); *see also, In re Ashworth, Inc. Securities Litigation*, 2002 WL

8    33009225 at * 1 (S.D. Cal. 2002) (finding that under FRCP 26, defendants have

9    standing to seek a protective order in connection with a third party subpoena);

10   *Springbook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal.

11   1988) (citing FRCP 26(c) for the proposition that "[Defendant] does have standing to

12   object to [Plaintiff's] subpoena of a third party").

13          In meet and confer discussions, LPL has asserted that the Tatung Defendants do

14   not have standing to object to the information sought from third parties.  LPL is

15   mistaken and references inapposite authority.[1]

16   **B.    Good Cause Supports The Issuance of A Protective Order.**

17          **1.    Legal Standard Governing The Issuance Of Protective Orders.**

18          Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good

19   cause," the Court may issue a protective order precluding or limiting the scope of

20   discovery in order to protect a party from annoyance, embarrassment, oppression, or

---

[1]    For example, LPL will likely cite *Dart Industries, Inc. v. Liquid Nitrogen Processing* for the proposition that "unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under FRCP 45(b) or 30(b)." 50 F.R.D. 286, 291 (D. Del. 1970).

      *Dart Industries* is inapposite for two reasons. First, that case involved a party's motion to *quash a third party subpoena under FRCP 45(b)*; here, the Tatung Defendants move for a *protective order pursuant to FRCP 26(c)*, which expressly grants parties standing to move the court to limit the scope of, or altogether preclude certain issues from, third party discovery.[1]  FRCP 26(c)(4), 26(c)(7).

      Second, unlike the Tatung Defendants, the moving party in *Dart Industries* did not assert any personal privilege with respect to the requested documents. 50 F.R.D. at 291. In fact, the court expressly "decline[d] to hold that Dart lacks standing to move to quash the subpoena duces tecum on the grounds stated in FRCP 45(b)," averring that Dart's interest "*may be sufficient* to give it standing to move to limit the production sought here." *Id.*, emphasis added.

1   undue burden or expense. *See, e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234

2   F.R.D. 175, 178 (N.D. Ill. 2006); *see also, Pulsecard, Inc. v. Discover Card Services,*

3   *Inc.*, 1995 WL 526533 at *14 (D. Kan. 1995).

4       In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good

5   cause" requires the party seeking the protective order to demonstrate that: (1) the

6   material sought to be protected is confidential, and (2) disclosure will create a

7   competitive advantage for the party. *Pulsecard*, 1995 WL 526533 at * 16, *citing*

8   *Georgia Television Co. v. TV News Clips of Atltanta*, 718 F. Supp. 939, 953 (N.D. Ga.

9   1989).

10  **2.      The Requested Discovery Seeks Overly Broad Categories Of**

11          **Communications and Information Completely Unrelated To Claims**

12          **At Issue in The Delaware Action.**

13      A protective order is appropriate because LPL's third-party discovery requests

14  are overly broad and seek information that is not relevant to its claims, nor the Tatung

15  Defendants' defenses, in the Delaware Action.  Instead, LPL seeks to obtain, through

16  the guise of "discovery," sensitive and confidential information relating to the Tatung

17  Defendant's business operations that would help LPL gain a competitive advantage.

18      "[D]iscovery may not be had regarding a matter which is not 'relevant to the

19  subject matter involved in the pending action.'" *Micro Motion, Inc. v. Kane Steel Co.,*

20  894 F.2d 1318, 1323 (Fed. Cir. 1990).  The case of *Joy Technologies, Inc. v. Flakt,*

21  *Inc.*, 772 F. Supp. 842 (D. Del. 1991) presents a nearly identical situation to that found

22  here.  In *Joy Technologies*, the defendant sought a protective order preventing plaintiff

23  from seeking discovery from *any of the defendant's customers or potential customers*

24  until plaintiff made a showing that the information: (a) was necessary and relevant to

25  the action, and (b) could not be obtained from any other source. *Id.* at 845.  The court

26  granted the requested protective order, stating:

27          "[I]t is undisputed that [plaintiff] and [defendant] are fierce competitors in

28          the technology that is the subject of this lawsuit, and [plaintiff] has not

7

1  convinced the Court that the same information it seeks from third parties
2  is not available from [defendant]. Therefore, unless [plaintiff] can
3  demonstrate that it has a specific need for evidence available only from
4  third party customers of [defendant], the Court concludes that [defendant]
5  and its customers are entitled to protection."

6  *Id.* at 849.[2]

7      Here, LPL's discovery requests to Ingram seek broad categories of documents
8  and information concerning both accused and *unaccused* products that also are not
9  limited as to time period. Such overly broad discovery requests encompass documents
10  and information that, in reality, have nothing to do with the pending Delaware Action.
11  Instead, it is readily apparent that LPL seeks to obtain such information about the
12  Tatung Defendants to obtain a competitive advantage over them.

**3.    The Requested Discovery Seeks Confidential Business Information
To Which LPL Would Not Otherwise Be Entitled.**

15      A protective order also is appropriate because LPL's subpoena and deposition
16  notice seeks disclosure of confidential, proprietary trade secret information belonging
17  to the Tatung Defendants. Such confidential commercial information warrants special
18  protection under Rule 26(c)(7). *Micro Motion,* 894 F.2d at 1323, *citing Smith &*
19  *Wesson v. United States,* 782 F.2d 1074, 1082 (1st Cir. 1986).

20      The Tatung Defendants and LPL are active competitors in the computer monitor
21  business. Declaration of Jackson Chang ("Chang Decl.") at ¶ 2. Producing the
22  information and testimony LPL seeks would cause major competitive harm to the
23  Tatung Defendants. Chang Decl. at ¶ 3. The deposition topics designated by LPL are
24  closely guarded by the Tatung Defendants as highly sensitive and confidential business

25  _____
26  [2]    Similarly, in *Micro Motion, supra,* the plaintiff sought to obtain information from a nonparty competitor that was purportedly relevant to the issue of damages in the underlying patent suit. The court held that the plaintiff was embarking on a "fishing expedition" with its "merely speculative inquiries in the guise of relevant discovery." 894 F.2d at 1327-28, *see also Visto Corp. v. Smartner Info. Systems, Ltd.,* 2007 WL 218771 at * 5 (N.D. Cal. 2007) (granting protective order such that third party did not have to respond to the subpoena).

8

1   information.[3] *Id.* at ¶ 4. The Tatung Defendants' methods of manufacturing its visual

2   display products, for example, are not disclosed publicly; divulging this information

3   would likely result in competitors using the information to 1) undercut the Tatung

4   Defendants in pricing; 2) deduce the exact specifications required by existing

5   customers; and/or 3) specifically target and lure away Tatung's existing customers. *Id.*

6   at ¶ 7. All of this information is kept secret by the Tatung Defendants. Only

7   authorized personnel have access to the information and information kept on

8   computers are password protected. *Id.* at ¶ 6. The product specifications and features

9   required by each customer constitute competitive value and maintaining the

10  confidentiality of such information is essential to the fair conduct of this litigation.

11          **4.      LPL's Discovery Is Unduly Burdensome And Is Intended to Harass**

12                  **The Tatung Defendants' Customers.**

13          Ordering compliance with LPL's subpoena would pose an undue and

14  unnecessary burden and expense on non-party Ingram, particularly given the utter

15  irrelevance of the majority of requested documents and testimony. The Tatung

16  Defendants respectfully submit that LPL's discovery requests have been interposed

17  solely to harass Ingram and aggravate the business relationship between the Tatung

18  Defendants and their customers.

19  **C.     The Need For a Protective Order Limiting Third Party Discovery Is Even**

20          **More Compelling Due To LPL's Violations Of Previous Protective Orders.**

21          LPL will likely argue that a Protective Order entered in the Delaware Action is

22  sufficient for discovery produced by third parties. The Tatung Defendants disagree on

23  two grounds, both of which are pending before the Special Master.

24          First, the Tatung Defendants have recently petitioned the Special Master for

25  relief regarding LPL's multiple violations of protective orders issued in different cases,

26  _____

[3] As just one example, LPL designates as a deposition topic: "The nature of the business relationship
27  and transactions between Ingram Systems and [the Tatung Defendants] relating to the sale,
    manufacture, assembly, distribution, or import of visual display products, including but not limited to
28  the agreements between Ingram [and the Tatung Defendants]."

9

1   implicating different patents, pending between the parties.[4]  Second, the PTO records
2   appear to show that LPL staffs its litigation team with attorneys who also prosecute
3   patents in the area of flat panel display technology.  The Tatung Defendants have also
4   raised this issue with the Special Master.

5       For these reasons, the Tatung Defendants submit that the parties' current
6   Protective Order is insufficient to protect against the potential harm posed by
7   disclosure of unlimited confidential information by third parties, including Ingram.
8   *See Pulsecard*, 1995 WL 526533 at * 26 ("The court does not find that the entry of a
9   prior protective order should necessarily bar a second one, if facts justify it").

## IV.    CONCLUSION

11      To be clear, the Tatung Defendants do not contest LPL's right to seek discovery
12  from Ingram.  They submit, however, that discovery obtained from third-parties must
13  be *relevant* to this litigation and serve a legitimate purpose.  Here, LPL's overly broad
14  and improper requests do not serve such purposes.  Accordingly, the Tatung
15  Defendants respectfully request that the Court issue a protective order limiting any
16  discovery from Ingram to deposition testimony and documents relating to the accused
17  products.

18  DATED: March 9, 2007                    GREENBERG TRAURIG, LLP
19
20                                          By: _____
21                                              FRANK E. MERIDETH
22                                              MARK KRIETZMAN
                                                VALERIE W. HO
                                                CHARLENE L. OH
23
24                                          Attorneys for Defendants
                                            TATUNG COMPANY AND TATUNG
25                                          COMPANY OF AMERICA, INC.
26

---

27  [4] The cases include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court
    and *LPL v. Tatung Company, et. al.*, Case No. CV-02-6775-CBM  in the Central District of
28  California.

126743341_1

# EXHIBIT G

1
2
3
4
5
6
7

**ORAL ARGUMENT REQUESTED**

8      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON

9

10   L.G. PHILIPS LCD CO., LTD,                    NO.
11              Plaintiff,
                                                   DEFENDANTS TATUNG COMPANY
12        v.                                       AND TATUNG COMPANY OF
                                                   AMERICA, INC.'S MOTION FOR A
13   TATUNG COMPANY, TATUNG                        PROTECTIVE ORDER LIMITING
     COMPANY OF AMERICA, INC.,                     SCOPE OF THIRD PARTY
14   and VIEWSONIC CORPORORATION,                  DEPOSITION AND SUBPOENA AND
                                                   REQUEST FOR EXPEDITED
15              Defendants.                        HEARING

16                                                 **NOTED FOR HEARING:**
                                                   **March 19, 2007, 9:00 a.m.**
17

18            **FRCP 26(C) CERTIFICATE OF COMPLIANCE**
19
           Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for
20
     Defendants Tatung Company and Tatung Company of America, Inc. certify that they
21
     conferred in good faith with counsel for plaintiff L.G. Philips LCD Co., Ltd. to resolve this
22
     dispute prior to filing this motion and were unsuccessful.
23
              **BASIS FOR EMERGENCY HEARING**
24
           This Motion for Protective Order Limiting Scope of Third Party Deposition and
25
     Subpoena (the "Motion for Protective Order") concerns a deposition notice and third-party
26

MOT. FOR PROT. ORDER LIMITING SCOPE          YARMUTH WILSDON CALFO PLLC
OF 3RD PARTY DEPOSITION & SUBPOENA &                  FOURTH & MADISON
REQ. FOR EXPEDITED HEARING -- Page 1            925 FOURTH AVENUE, SUITE 2500
                                                   SEATTLE WASHINGTON 98104
                                               T 206.516.3600  F 206.516.3888

1  subpoena issued in this district in connection with a patent infringement lawsuit pending in

2  the United States District Court for the District of Delaware (the "Delaware Action").

3      Defendants respectfully request an expedited hearing and briefing schedule on the

4  Motion for Protective Order for the following reasons:

5  - Discovery cut-off in the Delaware Action is set for March 30, 2007.

6  - Fully aware of the impending discovery cut-off date, Plaintiff waited until the last
7     minute to serve 23 separate third-party subpoenas and deposition notices, issued out
8     of 15 different judicial districts, throughout the country starting in mid-February
9     2007.

10  - On February 27, 2007, Defendants requested that Plaintiff meet and confer about the
11     scope of discovery demanded by Plaintiff in those 23 third-party subpoenas and
12     deposition notices. Following Defendants' February 27, 2007 request, Plaintiff
13     agreed to meet and confer on March 5, 2007.

14  - During the March 5, 2007 meet and confer, Plaintiff refused to limit the scope of the
15     third-party subpoenas and deposition notices in any meaningful way.

16  - Plaintiff's subpoenas demand production of documents by March 5, 2007, and its
17     deposition notices set depositions for March 12, 2007 through March 28, 2007.
18     Because of Plaintiff's last-minute discovery tactics and its failure to meaningfully
19     meet and confer with Defendants, an emergency hearing is necessary to resolve
20     these discovery issues in a timely manner. Pursuant thereto, Defendants
21     respectfully request an emergency hearing.

22      **I.    INTRODUCTION**

23      Defendants Tatung Company and Tatung Company of America (collectively, "the

24  Tatung Defendants") submit this Memorandum of Points and Authorities in support of their

25  Motion for Protective Order Limiting Scope of Third Party Deposition and Subpoena (the

26  "Motion for Protective Order"). The Motion for Protective Order seeks to limit the scope

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 2

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1   of a subpoena and deposition notice served on third-party Amazon.com, Inc.

2   ("Amazon.com").

3       This Motion for Protective Order concerns a deposition notice and third-party

4   subpoena issued in this district in connection with a patent infringement lawsuit pending in

5   the United States District Court for the District of Delaware (the "Delaware Action," C.A.

6   No. 04-343-JJF). For the reasons discussed in greater detail below, the Tatung Defendants'

7   request for a protective order should be granted because the discovery sought by Plaintiff

8   L.G. Philips LCD Co., Ltd. ("LPL") is:

9       1.      A transparent and improper effort by LPL to perform an "end run" around a

10  potentially unfavorable ruling by the Special Master in the Delaware Action concerning the

11  proper scope of LPL's discovery, namely, the Special Master's impending ruling on LPL's

12  motion to compel discovery pertaining to *unaccused* products from the Tatung Defendants

13  and the Tatung Defendants' motion to stay discovery regarding *unaccused* products

14  pending resolution of issues relating to LPL's and its attorneys' violations of Protective

15  Orders in cases pending between the parties;

16      2.      Irrelevant in that it seeks extremely broad categories of communications and

17  information from the Tatung Defendants' customers entirely unrelated to the patents-in-suit

18  or the accused products in the Delaware Action;

19      3.      Not reasonably calculated to lead to the discovery of admissible evidence in

20  the Delaware Action, but instead, is information about the Tatung Defendants' confidential

21  business communications and trade secret information that LPL seeks for ulterior and

22  improper purposes; and

23      4.      Unduly burdensome in that the third-party discovery Plaintiff seeks from

24  Amazon.com and the Tatung Defendants' other customers will require the production of

25  thousands of documents and is calculated to harass the Tatung Defendants' customers,

26

1    some of whom have already responded to subpoenas issued by LPL during jurisdictional

2    discovery.

## II.    STATEMENT OF FACTS

### A.    The Nature Of This Lawsuit.

Defendant Tatung sells electronic products including computer monitors and

televisions to resellers and retailers worldwide. Defendant Tatung Company of America, a

California corporation, is a reseller of computer monitors and other LCD applications in the

United States. The Tatung Defendants also perform OEM (Original Equipment

Manufacturer) services for a number of customers. LPL and its parent company, LG

Electronics, Inc. ("LGE"), compete with the Tatung Defendants in the market of flat display

panel products (e.g., LCD monitors, LCD televisions and plasma televisions).

Third-party Amazon.com, the recipient of LPL's subpoena and deposition notice, is

located in Seattle, Washington and is a customer of the Tatung Defendants.

The Tatung Defendants integrate more than 800 models of computer monitors and

flat panel display products, referred to collectively as "visual display products." As OEMs,

many of the Tatung Defendants' products are branded and otherwise customer specific; in

most instances, the products are made to exacting customer specifications. Because the

monitor business is highly competitive, the particular product design requirements and

specifications of the Tatung Defendants' OEM customers, including those of Amazon.com,

are extremely valuable trade secrets. The Tatung Defendants' specific pricing

arrangements with customers also are extremely valuable trade secrets.

LPL commenced the Delaware Action against the Tatung Defendants on May 27,

2004. In the Delaware Action, LPL has alleged patent infringement claims against the

Tatung Defendants based on certain "rear-mount" patents with respect to 20 of its products.

The discovery cut-off date in the Delaware Action is March 30, 2007.

//

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 4

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206 516.3800   F 206 516.3888

**B.    The Tatung Defendants Have Already Provided LPL With Voluminous Discovery Relating to Both Its Accused and Non-Accused Products.**

LPL served its initial discovery requests in the Delaware Action over two years ago. In response to those discovery requests, the Tatung Defendants produced technical specifications and assembly drawings covering approximately 800 models of monitors and flat panel displays they sell. Until November 2006, LPL had accused only one Tatung product of infringing the patents-in-suit. In November 2006, LPL identified two additional accused products. It was not until mid-January 2007 that LPL accused the remaining products.

The Tatung Defendants have expended a great deal of effort to comply with their discovery obligations. Since late January 2007 alone, the Tatung Defendants have produced approximately 15,000 pages of highly confidential documents, including product work instructions, exploded view drawings of products, and sales summaries from 2002 to the present (quarter 1, 2007) containing model, price, and quantity information for *all* of its visual display products; and

In addition, the Tatung Defendants have made available for LPL's inspection, and LPL has examined, disassembled, and photographed more than 40 monitor and television products. Of the hundreds of products for which LPL has been provided technical documents, LPL to date has accused only 20 products of infringing the patents-in-suit.

**C.    LPL's Motion To Compel Further Customer Information Is Pending Before the Special Master.**

In January 2007, LPL filed a motion to compel the production of additional documents such as highly confidential agreements and communications between the Tatung Defendants and their customers relating to *all* of the Tatung Defendants' visual display products including the hundreds of unaccused products. The Tatung Defendants vigorously opposed that motion on the grounds that LPL's requested discovery is not limited in any way to the accused products at issue in the Delaware Action and is instead a transparent

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1   attempt by LPL to obtain highly sensitive business information. That motion is presently

2   pending before the Special Master. The parties expect a decision shortly, as discovery cut-

3   off is March 30, 2007.

4   **D.  LPL Now Seeks the Same Discovery Directly From the Tatung Defendants' Customers.**

5          In what can only be characterized as a blatant attempt to circumvent a potentially

6   unfavorable ruling by the Special Master on a motion LPL itself filed, LPL recently served

7   Amazon.com, as well as two dozen other customers of the Tatung Defendants, with a

8   subpoena and deposition notice seeking voluminous discovery about highly confidential

9   customer information on hundreds of products that LPL has *never accused of infringement*.

10  *See* Exhibit 1.

11         LPL's extensive and broad-reaching requests for discovery regarding "visual

12  display products" encompass *all* of the products the Tatung Defendants sell to Amazon.com

13  and not just the accused products that are the subject of the Delaware Action. To date, LPL

14  has failed to provide any legitimate explanation why information on *unaccused* products is

15  relevant to its patent infringement claims in the Delaware Action.

16         **III.    LEGAL ARGUMENT**

17  **A.  The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A Protective Order.**

18

19         Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon

20  motion *by a party* or by the person from whom discovery is sought, accompanied by a

21  certification that the movant has in good faith conferred…and for good cause shown… the

22  court in the district where the deposition is to be taken may make any order which justice

23  requires to protect a party or person…" (emphasis added). Ninth Circuit courts have

24  recognized that this language gives parties to a lawsuit, as well as third-parties themselves,

25  standing to challenge third-party subpoenas. *See Portland Gen. Elec. Co. v. U.S. Bank*

26  *Trust Nat'l Assoc.*, 38 F. Supp. 2d 1202, 1206 n. 3 (D. Or. 1999), *rev'd on other grounds*,

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 6

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  218 F.3d 1085 (9th Cir. 2000) (noting that FRCP 26(c) "expressly gives" a party standing

2  to challenge third party subpoenas); *see also, In re Ashworth, Inc. Securities Litigation,*

3  2002 WL 33009225 at * 1 (S.D. Cal. 2002) (finding that under FRCP 26, defendants have

4  standing to seek a protective order in connection with a third party subpoena); *Springbook*

5  *Lenders v. Northwestern Nat'l Ins. Co.,* 121 F.R.D. 679, 680 (N.D. Cal. 1988) (citing FRCP

6  26(c) for the proposition that "[Defendant] does have standing to object to [Plaintiff's]

7  subpoena of a third party").

8      In meet and confer discussions, LPL has asserted that the Tatung Defendants do not

9  have standing to object to the information sought from third parties. LPL is mistaken and

10  references inapposite authority.[1]

11      Based on the above, the Tatung Defendants, as parties to the Delaware Action,

12  clearly have standing to seek a protective order against LPL's attempts to obtain extremely

13  broad and irrelevant discovery from third-parties.

14      The Tatung Defendants do claim that the topics and documents requested impinge

15  on their trade secrets and other confidential proprietary information.

16  *//*

17  _____

18  [1]    For example, LPL will likely cite *Dart Industries, Inc v. Liquid Nitrogen Processing* for the
proposition that "unless a party to an action can make claim to some personal right or privilege in respect to
the subject matter of a subpoena duces tecum directed to a nonparty witness, the party to the action has no

19  right to relief under FRCP 45(b) or 30(b)." 50 F.R.D. 286, 291 (D. Del. 1970), *quoting Shepherd v. Castle,* 20
F.R.D. 184, 188 (W.D.Mo. 1957).

20

21      *Dart Industries* is inapposite for two reasons. First, that case involved a party's motion to *quash a
third party subpoena under FRCP 45(b)*; here, the Tatung Defendants move for a *protective order pursuant to*

22  *FRCP 26(c)*, which expressly grants parties standing to move the court to limit the scope of, or altogether
preclude certain issues from, third party discovery.[1] FRCP 26(c)(4), 26(c)(7). The Tatung Defendants have

23  chosen not to quash under FRCP 45(b) because they agree that LPL may seek *relevant and appropriate*
discovery from third parties; FRCP 26(c) is the more appropriate mechanism to strike a balance between
allowing open discovery and ensuring that such discovery is fairly tailored to the accused products.

24

25      Second, unlike the Tatung Defendants, the moving party in *Dart Industries* did not assert any
personal privilege with respect to the requested documents. 50 F.R.D. at 291. In fact, the court expressly

26  "decline[d] to hold that Dart lacks standing to move to quash the subpoena duces tecum on the grounds stated
in FRCP 45(b)," averring that Dart's interest "*may be sufficient* to give it standing to move to limit the
production sought here." *Id.*, emphasis added.

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 7

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206 516 3800   F 206 516 3888

**B.  Good Cause Supports The Issuance of A Protective Order.**

**1.  Legal Standard Governing The Issuance Of Protective Orders.**

Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause," the Court may issue a protective order precluding or limiting the scope of discovery in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See, e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill. 2006); *see also, Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995 WL 526533 at *14 (D. Kan. 1995). The protective order may include limiting the scope of discovery to certain matters, precluding altogether the discovery of certain matters, and ordering that a trade secret or other confidential research, development, or commercial information not be revealed. Fed R. Civ Proc. 26(c)(4), 26(c)(7).

In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good cause" requires the party seeking the protective order to demonstrate that: (1) the material sought to be protected is confidential, and (2) disclosure will create a competitive advantage for the party. *Pulsecard*, 1995 WL 526533 at * 16, *citing Georgia Television Co. v. TV News Clips of Atlanta*, 718 F. Supp. 939, 953 (N.D. Ga. 1989).

**2.  The Requested Discovery Seeks Overly Broad Categories Of Communications and Information Completely Unrelated To Claims At Issue in The Delaware Action.**

A protective order is appropriate because LPL's third-party discovery requests are overly broad and seek information that is not relevant to its claims, nor the Tatung Defendants' defenses, in the Delaware Action. Instead, LPL seeks to obtain, through the guise of "discovery," sensitive and confidential information relating to the Tatung Defendant's business operations that would help LPL gain a competitive advantage.

"[D]iscovery may not be had regarding a matter which is not 'relevant to the subject matter involved in the pending action.'" *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990). Moreover, "[e]ven *if relevant*, discovery is not permitted

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 8

Yarmuth Wilsdon Calfo pllc
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

1  where no need is shown, or compliance would be unduly burdensome, or where harm to the

2  person outweighs the need of the person seeking discovery of the information." *Id; see*

3  *also, American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987).

4       In this regard, the case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D.

5  Del. 1991) is instructive, and presents a nearly identical situation to that found here. In *Joy*

6  *Technologies*, the defendant sought a protective order preventing plaintiff from seeking

7  discovery from *any of the defendant's customers or potential customers* until plaintiff made

8  a showing that the information: (a) was necessary and relevant to the action, and (b) could

9  not be obtained from any other source. *Id.* at 845. The court granted the requested

10  protective order, stating:

11      "[I]t is undisputed that [plaintiff] and [defendant] are fierce competitors in
       the technology that is the subject of this lawsuit, and [plaintiff] has not

12      convinced the Court that the same information it seeks from third parties is
       not available from [defendant]. Therefore, unless [plaintiff] can demonstrate

13      that it has a specific need for evidence available only from third party
       customers of [defendant], the Court concludes that [defendant] and its

14      customers are entitled to protection."

15  *Id.* at 849.

16       Similarly, in *Micro Motion, supra*, the plaintiff sought to obtain information from a

17  nonparty competitor that was purportedly relevant to the issue of damages in the underlying

18  patent suit. The court held that the plaintiff was embarking on a "fishing expedition" with

19  its "merely speculative inquiries in the guise of relevant discovery." 894 F.2d at 1327-28,

20  *see also Visto Corp. v. Smartner Info. Systems, Ltd.*, 2007 WL 218771 at * 5 (N.D. Cal.

21  2007) (granting protective order such that third party did not have to respond to the

22  subpoena).

23       Here, LPL's discovery requests to Amazon.com seek broad categories of documents

24  and information concerning both accused and *unaccused* products that also are not limited

25  as to time period. Such overly broad discovery requests encompass documents and

26  information that, in reality, have nothing to do with the pending Delaware Action. Instead,

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 9

1    it is readily apparent that LPL seeks to obtain such information about the Tatung

2    Defendants to obtain a competitive advantage over them.

3        It also should be noted that the Tatung Defendants do not seek to prevent LPL from

4    obtaining all third-party discovery being requested in its subpoena and deposition notice.

5    Rather, such third-party discovery should focus on deposition topics and documents

6    *pertaining to the accused products* at issue in the Delaware Action.

7        3.    **The Requested Discovery Seeks Confidential Business Information To
                Which LPL Would Not Otherwise Be Entitled.**

8
9        A protective order also is appropriate because LPL's subpoena and deposition

10   notice seeks disclosure of confidential, proprietary trade secret information belonging to the

11   Tatung Defendants. Such confidential commercial information warrants special protection

12   under Rule 26(c)(7). *Micro Motion*, 894 F.2d at 1323, *citing Smith & Wesson v. United

13   States*, 782 F.2d 1074, 1082 (1st Cir. 1986).

14       The Tatung Defendants and LPL are active competitors in the computer monitor

15   business. Declaration of Jackson Chang ("Chang Decl.") at ¶ 2. Producing the information

16   and testimony LPL seeks would cause major competitive harm to the Tatung Defendants.

17   Chang Decl. at ¶ 3. As just one example, LPL designates as a deposition topic: "The

18   scope, nature, and purpose of communications between Amazon.com and [the Tatung

19   Defendants] (a) concerning the sale or marketing... of 'visual display products'

20   manufactured or assembled in whole or in part by or for [the Tatung Defendants]... and (c)

21   communications regarding the market trends for 'visual display products' in the United

22   States." Another deposition topic concerns purchase "agreements or contracts," "directly or

23   indirectly" between Amazon.com.com and the Tatung Defendants. These topics are closely

24   guarded by the Tatung Defendants as highly sensitive and confidential business

25   information. *Id.* at ¶ 4. The Tatung Defendants' information regarding market trends for its

26   visual display products, for example, is not disclosed publicly; divulging this information

     would likely result in competitors using the information to 1) undercut the Tatung

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 10

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800    F 206.516.3888

1    Defendants in pricing; 2) deduce the exact specifications required by existing customers;

2    and/or 3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7. All of

3    this information is kept secret by the Tatung Defendants. Only authorized personnel have

4    access to the information and information kept on computers are password protected. *Id.* at

5    ¶ 6. The product specifications and features required or purchased by each customer,

6    including Amazon.com, constitute competitive value and maintaining the confidentiality of

7    such information is essential to the fair conduct of this litigation.

8    **4.    LPL's Discovery Is Unduly Burdensome And Is Intended to Harass The Tatung Defendants' Customers.**

9    Ordering compliance with LPL's subpoena would pose an undue and unnecessary

10   burden and expense on non-party Amazon.com to gather and produce such information and

11   defend depositions in the requested time frame, particularly given the utter irrelevance of

12   the majority of requested documents and testimony.

13   The Tatung Defendants respectfully submit that LPL's discovery requests have

14   been interposed solely to harass Amazon.com and aggravate the business relationship

15   between the Tatung Defendants and their customers.

16   **IV.    CONCLUSION**

17   To be clear, the Tatung Defendants do not contest LPL's right to seek discovery

18   from Amazon.com. They submit, however, that discovery obtained from third-parties must

19   be *relevant* to this litigation and serve a legitimate purpose. Here, LPL's overly broad and

20   improper requests do not serve such purposes. Accordingly, the Tatung Defendants

21

22   //

23   //

24   //

25   //

26   //

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 11

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

1   respectfully request that the Court issue a protective order limiting discovery from

2   Amazon.com to deposition testimony and documents relating to the accused products.

3   DATED: March 8, 2007.          YARMUTH WILSDON CALFO PLLC

4                                  By: _____
                                       Stacie Foster, WSBA #23397
5                                  The IDX Tower
                                   925 Fourth Avenue, Suite 2500
6                                  Seattle, WA  98104
                                   Phone: (206) 516-3800
7                                  Fax:    (206) 516-3888

8                                  *Of Counsel:*

9                                  **GREENBERG TRAURIG LLP**

10                                 Frank E. Meredith, Jr.
                                   Valerie W. Ho
11                                 Mark H. Krietzman
                                   Steve P. Hassid
12                                 2450 Colorado Avenue, Suite 400E
                                   Santa Monica, CA 90404
13
                                   **RICHARDS LAYTON & FINGER, PA**
14
                                   Frederick L. Cottrell, III
15                                 Anne Shea Gaza
                                   One Rodney Square
16                                 P.O. Box 551
                                   Wilmington, DE 19899
17
                                   Attorneys for Defendant Tatung Company and
18                                 Tatung Company of America

19

20

21

22

23

24

25

26

MOT. FOR PROT. ORDER LIMITING SCOPE
OF 3RD PARTY DEPOSITION & SUBPOENA &
REQ. FOR EXPEDITED HEARING – Page 12

471.01 hc084803 3/8/07

YARMUTH WILSDON CALFO PLLC
FOURTH & MADISON
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888