# EXHIBIT H

1  Frank E. Merideth, Jr., Esq.
   Valerie W. Ho, Esq.
2  Mark H. Krietzman, Esq.
   **GREENBERG TRAURIG LLP**
3  2450 Colorado Avenue, Suite 400E
   Santa Monica, CA 90404
4  Telephone: (310) 586.7700
   Facsimile: (310) 586.7800
5
   Janice P. Brown, Esq. (114433)
6  Nadia P. Bermudez, Esq. (216555)
   **BROWN LAW GROUP**
7  600 B Street, Suite 1650
   San Diego, CA 92101
8  Telephone: (619) 330-1700
   Facsimile: (619) 330-1701
9
   Attorneys for Tatung Company and
10 Tatung Company of America, Inc.

11

12             **IN THE UNITED STATES DISTRICT COURT**

13           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14

15 L.G. PHILIPS LCD CO., LTD.,            )  Case No. _____
                                          )
16              Plaintiff,                 )  **DEFENDANTS TATUNG COMPANY**
                                          )  **AND TATUNG COMPANY OF**
17 v.                                      )  **AMERICA, INC.'S MEMORANDUM OF**
                                          )  **POINTS AND AUTHORITIES**
18 TATUNG COMPANY; TATUNG                  )  **IN SUPPORT OF MOTION FOR A**
   COMPANY OF AMERICA, INC.; AND           )  **PROTECTIVE ORDER LIMITING**
19 VIEWSONIC CORPORATION,                  )  **SCOPE OF THIRD PARTY**
                                          )  **DEPOSITION AND SUBPOENA**
20              Defendants.                )
                                          )
21                                         )  **DATE:**
                                          )  **TIME:**
22                                         )  **DEPT.:**
                                          )
23                                         )
   _____)
24

25

26

27

28

_____
                    L.G. Philips v. Tatung Co., Case No. _____
        Memo of Points & Authorities in Support of Defendants' Motion for
   Protective Order Limiting Scope of Third Party Deposition and Subpoena

1

TABLE OF CONTENTS

2  I.    INTRODUCTION ...................................................................................1

3  II.   FRCP 26(C) CERTIFICATE OF COMPLIANCE..............................................2

4  III.  STATEMENT OF FACTS ..........................................................................2

5        A.    The Nature Of This Lawsuit. ...........................................................2

6        B.    The Tatung Defendants Have Already Provided LPL With Voluminous Discovery

7              Relating to Both Its Accused and Non-Accused Products.............................3

8        C.    LPL's Motion To Compel Further Customer Information Is Pending

9              Before the Special Master. .............................................................4

10       D.    LPL Now Seeks the Same Discovery Directly From the Tatung    Defendants'

11             Customers. ...............................................................................4

12 III.  LEGAL ARGUMENT................................................................................5

13       A.    The Tatung Defendants Have Standing Under FRCP 26(c)

14             To Move For A Protective Order. ......................................................5

15       B.    Good Cause Supports The Issuance of A Protective Order. .........................6

16             1.    Legal Standard Governing The Issuance Of Protective Orders...................6

17             2.    The Requested Discovery Seeks Overly Broad Categories Of

18                   Communications and Information Completely Unrelated To

19                   Claims At Issue in The Delaware Action............................................7

20             3.    The Requested Third-Party Discovery Is Irrelevant To Any

21                   Purported Claim of Indirect Infringement. .......................................9

22             4.    The Requested Discovery Seeks Confidential Business Information

23                   To Which LPL Would Not Otherwise Be Entitled. ..............................9

24             5.    LPL's Discovery Is Unduly Burdensome And Is Intended to

25                   Harass The Tatung Defendants' Customers............................................10

26       C.    The Need For a Protective Order Limiting Third Party Discovery

27             Is Even More Compelling Due To LPL's Violations Of Previous

28             Protective Orders. ........................................................................11

i

L.G. Philips v. Tatung Co., Case No. _____
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1          1.    LPL Has Violated Other Protective Orders On At Least Two
2                Occasions. ...................................................................................11
3          2.    LPL Is Potentially In Violation Of the Patent Prosecution Bar. ...............11
4   IV.   CONCLUSION.................................................................................12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1

## TABLE OF AUTHORITIES

2

**Cases**

3

American Standard, Inc. v. Pfizer Inc.,
  828 F.2d 734, 739-42 (Fed. Cir. 1987) ................................................................7

4

5

Fincher v. Keller Industries, Inc.,
  129 FRD 123, 125 (MD NC 1990) .......................................................................1

6

In re Ashworth, Inc. Securities Litigation,
  2002 WL 33009225 at * 1 (S.D. Cal. 2002) .......................................................5

7

8

Joy Technologies, Inc. v. Flakt, Inc.,
  772 F. Supp. 842 (D. Del. 1991)..........................................................................7

9

Micro Motion, Inc. v. Kane Steel Co.,
  894 F.2d 1318, 1323 (Fed. Cir. 1990).........................................................7, 8, 10

10

11

Minnesota Mining and Mfg. Co. v. Chemque, Inc.,
  303 F.3d 1294, 1304 (Fed. Cir. 2002)..................................................................9

12

Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.,
  234 F.R.D. 175, 178 (N.D. Ill. 2006) ..................................................................6

13

14

PC Connector Solutions LLC v. Smartdisk Corp.,
  406 F.3d 1359, 1362 (Fed. Cir. 2005)..................................................................9

15

Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Assoc.,
  38 F. Supp. 2d 1202, 1206 n. 3 (D. Or. 1999) ....................................................5

16

17

Pulsecard, Inc. v. Discover Card Services, Inc.,
  1995 WL 526533 at *14 (D. Kan. 1995) ....................................................6, 7, 12

18

Springbook Lenders v. Northwestern Nat'l Ins. Co.,
  121 F.R.D. 679, 680 (N.D. Cal. 1988) .................................................................5

19

20

Visto Corp. v. Smartner Info. Systems, Ltd.,
  2007 WL 218771 at * 5 (N.D. Cal. 2007) ...........................................................8

21

22

**Statutes**

23

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-F, 11:2289 ...........................1

24

**Rules**

25

Federal Rules of Civil Procedure Rule 26(c) ....................................................... passim

26

27

28

-iii-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1  **I.    INTRODUCTION**

2      Defendants Tatung Company and Tatung Company of America (collectively, "the Tatung

3  Defendants") submit this Memorandum of Points and Authorities in support of their Motion for

4  Protective Order Limiting Scope of Third Party Deposition and Subpoena (the "Motion for

5  Protective Order").

6      This Motion for Protective Order seeks to limit the scope of a subpoena and deposition

7  notice issued on third-party **American Dynamics** out of this district in connection with a patent

8  infringement lawsuit pending in the United States District Court for the District of Delaware (the

9  "Delaware Action," C.A. No. 04-343-JJF).  Controversies regarding depositions of nonparties are

10  decided in the court which issued the subpoena (where the deposition is being taken), unless the

11  nonparty consents to determination elsewhere.  *Fincher v. Keller Industries, Inc.*, 129 FRD 123,

12  125 (MD NC 1990); Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-F, 11:2289.

13      The subpoena at issue is attached as Exhibit 1 hereto and made a part hereof.  Defendants

14  submit that any third-party discovery should be limited to the accused products.  *See* Declaration

15  of Charlene Oh at ¶3.  For the reasons discussed in greater detail below, the Tatung Defendants'

16  request for a protective order should be granted because the discovery sought by Plaintiff L.G.

17  Philips LCD Co., Ltd. ("LPL") is:

18      1.    A transparent and improper effort by LPL to perform an "end run" around a

19  potentially unfavorable ruling by the Special Master in the Delaware Action concerning the

20  proper scope of LPL's discovery, namely, the Special Master's impending ruling on LPL's

21  motion to compel discovery pertaining to *unaccused* products from the Tatung Defendants and

22  the Tatung Defendants' motion to stay discovery regarding *unaccused* products pending

23  resolution of issues relating to LPL's and its attorneys' violations of Protective Orders in cases

24  pending between the parties;

25      2.    Irrelevant in that it seeks extremely broad categories of communications and

26  information from the Tatung Defendants' customers entirely unrelated to the patents-in-suit or

27  the accused products in the Delaware Action;

28  / / /

L.G. Philips v. Tatung Co., Case No. _____
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    3.    Not reasonably calculated to lead to the discovery of admissible evidence in the

2  Delaware Action, but instead, is information about the Tatung Defendants' confidential business

3  communications and trade secret information that LPL seeks for ulterior and improper purposes;

4  and

5    4.    Unduly burdensome in that the third-party discovery Plaintiff seeks from

6  American Dynamics and the Tatung Defendants' other customers will require the production of

7  thousands of documents and is calculated to harass the Tatung Defendants' customers, some of

8  whom have already responded to subpoenas issued by LPL during jurisdictional discovery.

9  **II.    FRCP 26(C) CERTIFICATE OF COMPLIANCE**

10    Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, counsel for Defendants

11  Tatung Company and Tatung Company of America, Inc. certify that they conferred in good faith

12  with counsel for Plaintiff L.G. Philips LCD Co., Ltd. to resolve this dispute prior to filing this

13  motion and were unsuccessful.

14  **III.    STATEMENT OF FACTS**

15    **A.    The Nature Of This Lawsuit.**

16    Defendant Tatung sells electronic products including computer monitors and televisions

17  to resellers and retailers worldwide.  Defendant Tatung Company of America, a California

18  corporation, is a reseller of computer monitors and other LCD applications in the United States.

19  The Tatung Defendants also perform OEM (Original Equipment Manufacturer) services for a

20  number of customers.  LPL and its parent company, LG Electronics, Inc. ("LGE"), compete with

21  the Tatung Defendants in the market of flat display panel products (e.g., LCD monitors, LCD

22  televisions and plasma televisions).

23    Third-party American Dynamics, the recipient of LPL's subpoena and deposition notice,

24  is located in San Diego, California and is a customer of the Tatung Defendants.

25    The Tatung Defendants integrate more than 800 models of computer monitors and flat

26  panel display products, referred to collectively as "visual display products." As OEMs, many of

27  the Tatung Defendants' products are branded and otherwise customer specific; in most instances,

28  the products are made to exacting customer specifications.  Because the monitor business is

-2-

L.G. Philips v. Tatung Co., Case No. _____
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    highly competitive, the particular product design requirements and specifications of the Tatung

2    Defendants' OEM customers, including those of American Dynamics, are extremely valuable

3    trade secrets. The Tatung Defendants' specific pricing arrangements with customers also are

4    extremely valuable trade secrets.

5    LPL commenced the Delaware Action against the Tatung Defendants on May 27, 2004.

6    In the Delaware Action, LPL has alleged patent infringement claims against the Tatung

7    Defendants based on certain "rear-mount" patents with respect to 20 of its products.

8    The discovery cut-off date in the Delaware Action is March 30, 2007.

9    **B.    The Tatung Defendants Have Already Provided LPL With**

10    **Voluminous Discovery Relating to Both Its Accused and Non-Accused**

11    **Products.**

12    LPL served its initial discovery requests in the Delaware Action over two years ago. In

13    response to those discovery requests, the Tatung Defendants produced technical specifications

14    and assembly drawings covering approximately 800 models of monitors and flat panel displays

15    they sell. Until November 2006, LPL had accused only one Tatung product of infringing the

16    patents-in-suit. In November 2006, LPL identified two additional accused products. It was not

17    until mid-January 2007 that LPL accused the remaining products.

18    The Tatung Defendants have expended a great deal of effort to comply with their

19    discovery obligations. Since late January 2007 alone, the Tatung Defendants have produced

20    approximately 15,000 pages of documents, including the following:

21    • Highly confidential Tatung America product work instructions;

22    • Highly confidential exploded view drawings of products; and

23    • Highly confidential sales summaries from 2002 to the present

24    (quarter 1, 2007) containing model, price, and quantity information

25    for *all* of its visual display products.

26    In addition, the Tatung Defendants have made available for LPL's inspection, and LPL

27    has examined, disassembled, and photographed more than 40 monitor and television products.

28    Of the hundreds of products for which LPL has been provided technical documents, LPL to date

-3-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    has accused only 20 products of infringing the patents-in-suit.

2         **C.**    **LPL's Motion To Compel Further Customer Information Is Pending**

3                **Before the Special Master.**

4         In January 2007, LPL filed a motion to compel the production of additional documents

5    such as highly confidential agreements and communications between the Tatung Defendants and

6    their customers relating to *all* of the Tatung Defendants' visual display products including the

7    hundreds of unaccused products. The Tatung Defendants vigorously opposed that motion on the

8    grounds that LPL's requested discovery is not limited in any way to the accused products at issue

9    in the Delaware Action and is instead a transparent attempt by LPL to obtain highly sensitive

10   business information. That motion is presently pending before the Special Master. The parties

11   expect a decision shortly, as discovery cut-off is March 30, 2007.

12        **D.**    **LPL Now Seeks the Same Discovery Directly From the Tatung**

13               **Defendants' Customers.**

14        In what can only be characterized as a blatant attempt to circumvent a potentially

15   unfavorable ruling by the Special Master on a motion LPL itself filed, LPL recently served

16   American Dynamics, as well as two dozen other customers of the Tatung Defendants, with a

17   subpoena and deposition notice seeking voluminous discovery about highly confidential

18   customer information on hundreds of products that LPL has *never accused of infringement.*

19        Specifically, LPL's request for documents seeks, *inter alia,* "all documents" including but

20   not limited to writings, accounting records, agreements, communications, correspondence, faxes,

21   summaries of records or telephone conversations, minutes or records of meetings or conferences,

22   lists of persons attending meetings or conferences, drafts of any documents, working papers, and

23   documents between the Tatung Defendants and American Dynamics concerning such subject

24   matter area as (a) marketing, sales, business documents or presentation materials provided by the

25   Tatung Defendants, (b) technical specifications and/or assembly drawings regarding the Tatung

26   Defendants' "visual display products," (c) American Dynamics' design requirements for its

27   "visual display products," (d) American Dynamics' market for its "visual display products," (e)

28   the business relationship between American Dynamics and the Tatung Defendants since January

-4-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1  1, 2002, (f) the manufacture and/or assembly of the Tatung Defendants' "visual display
2  products," and more.

3      These extensive and broad-reaching requests for "visual display products" encompass *all*
4  of the products the Tatung Defendants sell to American Dynamics and not just the accused
5  products that are the subject of the Delaware Action.  To date, LPL has failed to provide any
6  legitimate explanation why information on *unaccused* products is relevant to its patent
7  infringement claims in the Delaware Action.

8  **III.    LEGAL ARGUMENT**

9      **A.    The Tatung Defendants Have Standing Under FRCP 26(c) To Move For A**
10          **Protective Order.**

11      Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[u]pon
12  motion *by a party* or by the person from whom discovery is sought, accompanied by a
13  certification that the movant has in good faith conferred…and for good cause shown… the court
14  in the district where the deposition is to be taken may make any order which justice requires to
15  protect a party or person…" (emphasis added).  Courts in the Ninth Circuit have recognized that
16  this language gives parties to a lawsuit, as well as third-parties themselves, standing to challenge
17  third-party subpoenas. *See Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Assoc*, 38 F. Supp.
18  2d 1202, 1206 n. 3 (D. Or. 1999), *rev'd on other grounds*, 218 F.3d 1085 (9th Cir. 2000) (noting
19  that FRCP 26(c) "expressly gives" a party standing to challenge third party subpoenas; *see also,*
20  *In re Ashworth, Inc. Securities Litigation*, 2002 WL 33009225 at * 1 (S.D. Cal. 2002) (finding
21  that under FRCP 26, defendants have standing to seek a protective order in connection with a
22  third party subpoena); *Springbook Lenders v. Northwestern Nat'l Ins. Co.*, 121 F.R.D. 679, 680
23  (N.D. Cal. 1988) (citing FRCP 26(c) for the proposition that "[Defendant] does have standing to
24  object to [Plaintiff's] subpoena of a third party").

25  ///
26  ///
27  ///
28  ///

-5-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    In meet and confer discussions, LPL has asserted that the Tatung Defendants do not have

2 standing to object to the information sought from third parties.[1]  LPL is mistaken and references

3 inapposite authority.

4    Based on the above, the Tatung Defendants, as parties to the Delaware Action, clearly

5 have standing to seek a protective order against LPL's attempts to obtain extremely broad and

6 irrelevant discovery from third-parties.

7    **B.    Good Cause Supports The Issuance Of A Protective Order.**

8        **1.    Legal Standard Governing The Issuance Of Protective Orders.**

9    Pursuant to Federal Rule of Civil Procedure 26(c), "upon a showing of good cause," the

10 Court may issue a protective order precluding or limiting the scope of discovery in order to

11 protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  *See,*

12 *e.g., Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill. 2006); *see also,*

13 *Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995 WL 526533 at *14 (D. Kan. 1995).  The

14 protective order may include limiting the scope of discovery to certain matters, precluding

15 altogether the discovery of certain matters, and ordering that a trade secret or other confidential

16 research, development, or commercial information not be revealed.  Fed. R. Civ. Proc. 26(c)(4),

17 26(c)(7).

18

19

20  [1]    For example, LPL will likely cite *Dart Industries, Inc. v. Liquid Nitrogen Processing* for the proposition
     that "unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of
21 a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief under FRCP
     45(b) or 30(b)." 50 F.R.D. 286, 291 (D. Del. 1970), *quoting Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo.
22 1957).

        *Dart Industries* is inapposite for two reasons.  First, that case involved a party's motion to *quash a third*
23 *party subpoena under FRCP 45(b)*; here, the Tatung Defendants move for a *protective order pursuant to FRCP*
     *26(c)*, which expressly grants parties standing to move the court to limit the scope of, or altogether preclude certain
24 issues from, third party discovery.[1] FRCP 26(c)(4), 26(c)(7).  The Tatung Defendants have chosen not to quash
     under FRCP 45(b) because they agree that LPL may seek *relevant and appropriate* discovery from third parties;
25 FRCP 26(c) is the more appropriate mechanism to strike a balance between allowing open discovery and ensuring
     that such discovery is fairly tailored to the accused products.

26        Second, unlike the Tatung Defendants, the moving party in *Dart Industries* did not assert any personal
     privilege with respect to the requested documents. 50 F.R.D. at 291.  In fact, the court expressly "decline[d] to hold
27 that Dart lacks standing to move to quash the subpoena duces tecum on the grounds stated in FRCP 45(b)," averring
     that Dart's interest *"may be sufficient to give it standing to move to limit the production sought here." Id.*, emphasis
28 added.

-6-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    In the context of Federal Rule of Civil Procedure 26(c)(7) specifically, "good cause"

2  requires the party seeking the protective order to demonstrate that: (1) the material sought to be

3  protected is confidential, and (2) disclosure will create a competitive advantage for the party.

4  *Pulsecard*, 1995 WL 526533 at * 16, *citing Georgia Television Co. v. TV News Clips of Atlanta*,

5  718 F. Supp. 939, 953 (N.D. Ga. 1989).

6             **2.    The Requested Discovery Seeks Overly Broad Categories Of**

7                     **Communications and Information Completely Unrelated To**

8                     **Claims At Issue in The Delaware Action.**

9    A protective order is appropriate because LPL's third-party discovery requests are overly

10  broad and seek information that is not relevant to its claims, or the Tatung Defendants' defenses,

11  in the Delaware Action. Instead, LPL seeks to obtain, through the guise of "discovery," sensitive

12  and confidential information relating to the Tatung Defendant's business operations that would

13  help LPL gain a competitive advantage.

14    "[D]iscovery may not be had regarding a matter which is not 'relevant to the subject

15  matter involved in the pending action.'" *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318,

16  1323 (Fed. Cir. 1990). Moreover, "[e]*ven if relevant*, discovery is not permitted where no need

17  is shown, or compliance would be unduly burdensome, or where harm to the person outweighs

18  the need of the person seeking discovery of the information." *Id; see also, American Standard,*

19  *Inc. v. Pfizer Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987).

20    In this regard, the case of *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842 (D. Del.

21  1991) is instructive, and presents a nearly identical situation to that found here. In *Joy*

22  *Technologies*, the defendant sought a protective order preventing plaintiff from seeking

23  discovery from *any of the defendant's customers or potential customers* until plaintiff made a

24  showing that the information: (a) was necessary and relevant to the action, and (b) could not be

25  obtained from any other source. *Id* at 845. The court granted the requested protective order,

26  stating:

27

28

-7-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1               "[I]t is undisputed that [plaintiff] and [defendant] are fierce

2               competitors in the technology that is the subject of this lawsuit, and

3               [plaintiff] has not convinced the Court that the same information it

4               seeks from third parties is not available from [defendant].

5               Therefore, unless [plaintiff] can demonstrate that it has a specific

6               need for evidence available only from third party customers of

7               [defendant], the Court concludes that [defendant] and its customers

8               are entitled to protection."

9    *Id.* at 849.

10       Similarly, in *Micro Motion, supra,* the plaintiff sought to obtain information from a

11   nonparty competitor that was purportedly relevant to the issue of damages in the underlying

12   patent suit. The court held that the plaintiff was embarking on a "fishing expedition" with its

13   "merely speculative inquiries in the guise of relevant discovery." 894 F.2d at 1327-28, *see also*

14   *Visto Corp. v. Smartner Info. Systems, Ltd.,* 2007 WL 218771 at * 5 (N.D. Cal. 2007) (granting

15   protective order such that third party did not have to respond to the subpoena).

16       Here, LPL's discovery requests to American Dynamics seek broad categories of

17   documents and information concerning both accused and *unaccused* products that also are not

18   limited as to time period. Such overly broad discovery requests encompass documents and

19   information that, in reality, have nothing to do with the pending Delaware Action. Instead, it is

20   readily apparent that LPL seeks to obtain such information about the Tatung Defendants to

21   obtain a competitive advantage over them.

22       It also should be noted that the Tatung Defendants do not seek to prevent LPL from

23   obtaining all third-party discovery being requested in its subpoena and deposition notice. Rather,

24   such third-party discovery should focus on deposition topics and documents *pertaining to the*

25   *accused products* at issue in the Delaware Action.

26   ///

27   ///

28   ///

-8-

1             **3.    The Requested Third-Party Discovery Is Irrelevant To Any Purported**

2                            **Claim of Indirect Infringement.**

3          The Tatung Defendants anticipate that LPL will claim that it needs customer information

4    in order to determine indirect infringement. However, LPL has not shown why such information

5    is relevant to any such indirect infringement claim.

6          Determining whether a patent claim has been infringed involves a two step analysis.

7    First, the claim must be properly construed by the Court to determine its scope and meaning.

8    Second, the claim, as construed, must be compared to the accused device or process. *PC*

9    *Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005).

10   Infringement analysis therefore focuses on the products or processes and the claims of the

11   patents.

12         Here, the Tatung Defendants have already produced technical documents that depict their

13   products' components, as well as the assembly methods used. LPL is *already in possession* of all

14   the technical information it needs to compare Tatung's products to the asserted claims. There is

15   no need to directly subpoena and depose the Tatung Defendants' customers.

16         Moreover, there can be no indirect infringement without direct infringement and an

17   infringing product. "In order to succeed on a claim of inducement, the patentee must show, first

18   that there has been direct infringement, ... and second that the alleged infringer knowingly

19   induced infringement and possessed specific intent to encourage another's infringement."

20   *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304 (Fed. Cir. 2002).

21         Here, there is no allegation of direct infringement with respect to the hundred of products

22   for which LPL seeks thousands of documents from third parties. LPL is therefore not entitled to

23   the broad categories of documents it seeks from American Dynamics.

24            **4.    The Requested Discovery Seeks Confidential Business Information To**

25                           **Which LPL Would Not Otherwise Be Entitled.**

26         A protective order also is appropriate because LPL's subpoena and deposition notice

27   seeks disclosure of confidential, proprietary trade secret information belonging to the Tatung

28   Defendants. Such confidential commercial information warrants special protection under Rule

-9-

L.G. Philips v. Tatung Co., Case No.
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    26(c)(7). *Micro Motion*, 894 F.2d at 1323, *citing Smith & Wesson v. United States*, 782 F.2d

2    1074, 1082 (1st Cir. 1986).

3        The Tatung Defendants and LPL are active competitors in the computer monitor

4    business. Declaration of Jackson Chang ("Chang Decl.") at ¶ 2. Producing the information and

5    testimony LPL seeks would cause major competitive harm to the Tatung Defendants. Chang

6    Decl. at ¶ 3. As just one example, LPL designates as a deposition topic: "The nature of the

7    business relationship and transactions between American Dynamics and [the Tatung Defendants]

8    relating to the sale, manufacture, assembly, distribution, or import of visual display products,

9    including but not limited to the agreements between American Dynamics [and the Tatung

10   Defendants]." These topics are closely guarded by the Tatung Defendants as highly sensitive

11   and confidential business information. *Id.* at ¶ 4. The Tatung Defendants' methods of

12   manufacturing its visual display products, for example, are not disclosed publicly; divulging this

13   information would likely result in competitors using the information to 1) undercut the Tatung

14   Defendants in pricing; 2) deduce the exact specifications required by existing customers; and/or

15   3) specifically target and lure away Tatung's existing customers. *Id.* at ¶ 7. All of this

16   information is kept secret by the Tatung Defendants. Only authorized personnel have access to

17   the information and information kept on computers are password protected. *Id.* at ¶ 6. The

18   product specifications and features required by each customer, including American Dynamics,

19   constitute competitive value and maintaining the confidentiality of such information is essential

20   to the fair conduct of this litigation.

21        **5.    LPL's Discovery Is Unduly Burdensome And Is Intended to**

22                **Harass The Tatung Defendants' Customers.**

23        Ordering compliance with LPL's subpoena would pose an undue and unnecessary burden

24   and expense on non-party American Dynamics to gather and produce such information and

25   defend depositions in the requested time frame, particularly given the utter irrelevance of the

26   majority of requested documents and testimony.

27   ///

28   ///

L.G. Philips v. Tatung Co., Case No. _____
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1    The Tatung Defendants respectfully submit that LPL's discovery requests have been

2  interposed solely to harass American Dynamics and aggravate the business relationship between

3  the Tatung Defendants and their customers.

4    **C.**    **The Need For a Protective Order Limiting Third Party Discovery Is Even**

5    **More Compelling Due To LPL's Violations Of Previous Protective Orders.**

6    LPL will likely argue that a Protective Order entered in the Delaware Action is sufficient

7  for discovery produced by third parties. The Tatung Defendants disagree on two grounds, both

8  of which are pending before the Special Master.

9    **1.**    **LPL Has Violated Other Protective Orders On At Least Two**

10    **Occasions.**

11    The Tatung Defendants have recently petitioned the Special Master for relief regarding

12  LPL's multiple violations of protective orders issued in different cases, implicating different

13  patents, pending between the parties. LPL has *admitted* that its lawyers have viewed, used and

14  disclosed confidential materials produced in other litigation between the parties for purposes of

15  this case, which is expressly prohibited by the Protective Orders in the other litigation. The cases

16  include *LPL v. Tatung Company, et. al.*, Case No. 05-292-JJF in Delaware District Court and

17  *LPL v. Tatung Company, et. al.*, Case No. CV-02-6775-CBM in the Central District of

18  California. Such conduct flagrantly disregards the letter and spirit of the applicable protective

19  orders.

20    **2.**    **LPL Is Potentially In Violation Of the Patent Prosecution Bar.**

21    Second, the PTO records appear to show that LPL staffs its litigation team with attorneys

22  who also prosecute patents in the area of flat panel display technology. The Tatung Defendants'

23  investigation of this conduct, which would directly violate the Protective Order, is ongoing, and

24  the issue has been raised with the Special Master.

25    For these reasons, the Tatung Defendants submit that the parties' current Protective Order

26  is insufficient to protect against the potential harm posed by disclosure of unlimited confidential

27  ///

28  ///

-11-

L.G. Philips v. Tatung Co., Case No. _____
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

1  information by third parties, including American Dynamics. *See Pulsecard*, 1995 WL 526533 at

2  * 26 ("The court does not find that the entry of a prior protective order should necessarily bar a

3  second one, if facts justify it").

4  **IV.    CONCLUSION**

5      To be clear, the Tatung Defendants do not contest LPL's right to seek discovery from

6  American Dynamics. They submit, however, that discovery obtained from third-parties must be

7  *relevant* to this litigation and serve a legitimate purpose. Here, LPL's overly broad and improper

8  requests do not serve such purposes. Accordingly, the Tatung Defendants respectfully request

9  that the Court issue a protective order limiting discovery from American Dynamics to deposition

10  testimony and documents relating to the accused products.

11

12  Dated  March ___, 2007                     Respectfully submitted:

13

14                                            By: _____

15                                            Janice P. Brown, Esq.
                                              Nadia P. Bermudez, Esq.
16                                            BROWN LAW GROUP
                                              Attorneys for Tatung Company and
17                                            Tatung Company of America, Inc.

18

19

20

21

22

23

24

25

26

27

28

-12-

L.G. Philips v. Tatung Co., Case No. _____
Memo of Points & Authorities in Support of Defendants' Motion for
Protective Order Limiting Scope of Third Party Deposition and Subpoena

# EXHIBIT I

McKenna Long & Aldridge LLP
Frederick A. Clark (State Bar No. 41778)
E-mail: fclark@mckennalong.com
444 South Flower Street, 8th Floor
Los Angeles, California 90071-2901
Telephone: (213) 688-1000
Facsimile: (213) 243-6330

Lora A. Brzezynski, Of Counsel
DC Bar No. 444261
E-mail: lbrzezynski@mckennalong.com
Shari L. Klevens, Of Counsel
DC Bar No. 467476
E-mail: sklevens@mckennalong.com
Cormac T. Connor, Of Counsel
DC Bar No. 500356
E-mail: cconnor@mckennalong.com
1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

Attorneys for Plaintiff
LG.PHILIPS LCD CO., LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | CASE NO. CV 07-1614-DDP(AJWx) (related to case Delaware U.S. District Court No. 1:04-cv-00343-JJF) |
| Plaintiffs, | |
| v. | **PLAINTIFF LG.PHILIPS LCD CO., LTD.'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER RE SUBPOENA SERVED ON CLI, INC. EMACHINES, INC., EDWARD SERVICE LLC, GATEWAY INC. AND INGRAM MICRO, INC.** |
| TATUNG CO., et. al., | |
| Defendants. | |
| | Magistrate: Andrew J. Wistrich Ctrm. 690 (Roybal Building) |

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | | STATEMENT OF FACTS | 1 |
| II. | | ARGUMENT | 5 |
| | A. | The Court Should Exercise Its Discretion to Transfer Tatung's Motion to the District of Delaware | 6 |
| | B. | Tatung Lacks Standing to Challenge the Subpoenas | 7 |
| | C. | Tatung's Motion Is Nothing More Than An Attempt to Interfere With LPL's Legitimate Third Party Discovery | 9 |
| | D. | LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the Defendants, Who Have Refused to Produce the Requested Documents | 11 |
| | E. | The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's Objections are Misplaced | 13 |
| III. | | CONCLUSION | 14 |

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*
911 F.2d 670 (Fed. Cir. 1990)....................................................................2

*Cipollone v. Liggett Group, Inc.*
785 F.2d 1108 (3d Cir. 1986)..............................................................5, 8

*Citytrust v. Joy*
460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983)........................6

*Cook v. Rockwell Intern. Corp.*
935 F.Supp. 1452 (D.Colo. 1996)........................................................14

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*
246 F.3d 1336 (Fed. Cir. 2001)..............................................................2

*Dart Industries, Inc. v. Liquid Nitrogen Processing*
50 F.R.D. 286 (D. Del. 1970) ........................................................7, 8, 10

*Devlin v. Transportation Communications International Union*
2000 WL 249286, *1 (S.D.N.Y. 2000)....................................................6

*Digital Equipment Corp.*
949 F.2d 228 (8th Cir. 1991) ..................................................................6

*General Dynamics Corp. v. Selb Mfg. Corp.*
481 F.2d 1204 (8th Cir.1973), cert. denied, 414 U.S. 1162, 94 S.Ct.
926, 39 L.Ed.2d 116 (1974) ....................................................................6

*Joy v. North*
692 F.2d 880 (2d Cir.1982)......................................................................6

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*
420 F.3d 1369 (Fed. Cir. 2005) ..........................................................2, 4

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.*
303 F.3d 1294 (Fed. Cir. 2002) ..............................................................2

*Nova Products, Inc. v. Kisma Video, Inc.*
220 F.R.D. 238 (S.D.N.Y. 2004) ............................................................7

*Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*
519 F. Supp. 668 (D. Del. 1981)..............................................................8

*Ponsford v. United States*
771 F.2d 1305 (9th Cir. 1985) ................................................................7

*Safer Display Technology, Ltd. v. Tatung Co.*
227 F.R.D. 435 (E.D. Va. 2004) ..........................................................10

*United States v. Garrett*
571 F.2d 1323 (5th Cir. 1978) ................................................................6

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

**Rules**
Federal Rules of Civil Procedure
   Rule 26 .................................................................................8
   Rule 26(c)..................................................... 1, 5, 6, 8
   Rule 45 ................................................................................8
   Rule 45(c).......................................................................7, 8

**Other Authorities**
8 C. Wright & A. Miller, Federal Practice and Procedure
   § 2035 (1970 & Supp.1985)....................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKenna Long &
Aldridge LLP
ATTORNEYS AT LAW
Los Angeles

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY

LA:17252380.1

1     Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff

2  LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the Motions for Protective

3  Order filed by Defendants Tatung Company and Tatung Company of America, Inc.

4  (collectively "Tatung") with respect to the third party subpoenas served by LPL on

5  CLI, Inc., EMachines, Inc. , Edward Service LLC, Gateway Inc. and Ingram Micro,

6  Inc. (An exemplar of the subpoena served on each of these third parties is attached

7  hereto; *see* Ex. 1.) LPL requests that the Court exercise its discretion to transfer the

8  instant Motions to the United States District Court for the District of Delaware. In

9  the alternative, LPL requests that the Court deny the Motions  and allow LPL to

10  proceed with necessary and appropriate third party discovery.

11     This Motions for Protective Order have not been filed by the party who

12  received the subpoena from LPL. Rather, Tatung, a defendant in the underlying

13  case, in a blatant attempt to interfere with these and other proper subpoenas, has

14  filed these motions in an effort to prevent third parties from producing what LPL

15  knows will be extensive evidence against Tatung of both infringement and

16  inducement to infringe the patents in the underlying suit. Further, Tatung's efforts

17  are designed to prevent LPL from obtaining necessary third party discovery prior to

18  the deadline of March 30, 2007. LPL has filed a motion with the Special Discovery

19  Master in the underlying case seeking an order that prevents Tatung from taking

20  such actions and also seeking an extension of third party discovery due to Tatung's

21  improper conduct.

22  **I.    STATEMENT OF FACTS**

23     This discovery dispute arises out of a patent infringement action pending in

24  the United States District Court for the District of Delaware ("Main Case"). LPL is

25  the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No.

26  6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to

27  mounting systems used in visual display products such as liquid crystal display

28  ("LCD") computer monitors, laptop computers, and televisions. LPL has asserted

McKenna Long &
Aldridge LLP
ATTORNEYS AT LAW
Los Angeles

- 1 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1   patent infringement claims against Tatung and ViewSonic Corporation

2   ("ViewSonic") (collectively, the "Defendants"). The Defendants manufacture

3   visual display products, which LPL alleges utilize LPL's patented techniques.

4   Among its claims, LPL alleges that Defendants have induced other parties,

5   including the party to whom the instant Subpoena was served, to infringe LPL's

6   patents.[1]

7        On December 27, 2006, LPL served a third party subpoena on Hewlett-

8   Packard Company. On February 13 and 14, 2007, LPL served approximately 23

9   other third party subpoenas ("Subpoenas") on various distributors, retailers, and

10  purchasers of Defendants' products in the United States. The Subpoenas were

11  issued based on LPL's understanding that these parties, who have current or former

12  business relationships with Tatung and ViewSonic, have documents that are

13  relevant to the instant action, including but not limited to, documents related to

14  purchase and sale of the infringing products in the United States, documents

15  relating to Defendants' efforts to market the infringing products in the United

16  States, and other important discovery concerning infringement, inducement,

17

18  _____

19  [1] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). If the defendant has knowledge of the patent, then upon a showing that defendant "had intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005). A jury could conclude that e-mails between a foreign defendant and a U.S. company "represent product support" showing that the defendant was aware of potentially infringing activities in the U.S. by the U.S. company and that the defendant "intended to encourage those activities." *Id.* at 1379-80. *See also Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002) (evidence did not support finding of no inducement where defendant was aware of patents and supplied infringing products to customers "with instructions on how they were to be used, which, when followed, would lead to infringement."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips, manufactured in Singapore and sold to customer that resold to the U.S. PC market, constituted active inducement).

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1  damages, and other issues.[2]  While a small handful of these third parties were

2  served with subpoenas during the jurisdictional phase of this case, the new

3  subpoenas are broader in several respects. First,  the jurisdictional subpoenas did

4  not seek documents related to ViewSonic, which are sought in the present

5  Subpoenas.  Second, the jurisdictional subpoenas were limited in most of their

6  categories to sales of products in Delaware, rather than throughout the United

7  States.  In addition, the Subpoenas include three categories that did not appear at all

8  in the jurisdictional subpoenas. *See* Ex. 1, paragraphs 1, 2, and 8 in Attachment B.

9  Moreover, and perhaps most importantly, some of the parties that received both

10  subpoenas produced very few, if any, documents in response to the jurisdictional

11  subpoenas, and likely have additional responsive documents created since the first

12  subpoena was served.

13          Based on information available to LPL and LPL's belief, the third parties are

14  likely to have information showing that the Defendants have imported, sold, and

15  used their products in the United States, activities which infringe upon LPL's U.S.

16  patents and which support LPL's claims of direct infringement or inducement of

17  infringement.  Thus, the third parties are likely to have documents pertaining to

18  communications, business coordination efforts, contracts or other agreements

19  between itself and the Defendants pertaining to Defendants' products and sales of

20  those products in the United States.  The employees of the third parties are likely to

21  have knowledge of the manner in which the third party conducted business with the

22  Defendants and their customers in the United States.  The employees of the third

23  parties are also likely to have knowledge of the methods and practices and any

24

25  [2] LPL has also sought the same information and documents, unsuccessfully, from
the Defendants. Defendants have produced some - but certainly not all – discovery

26  that LPL seeks. Notably, much of Defendants' production is subject to objections
and limitations that LPL disputes and which are the subject of related discovery

27  motions already pending before the Special Discovery Master in the Main Case in
the District of Delaware, as described more fully below.

28

McKenna Long &
Aldridge LLP
Attorneys at Law
Los Angeles

- 3 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1    coordination efforts related to the third parties' acquisition of infringing LCD

2    components from the Defendants. All of this information will assist LPL in

3    evaluating its patent infringement and inducement claims against the Defendants

4    and will enable LPL to verify whether the Defendants' own document productions

5    and deposition testimony have been complete and accurate. *See generally MEMC*

6    *Elec. Materials, Inc., v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379-

7    80 (Fed. Cir. 2005) (discussing factors evidencing inducement to infringe on

8    patents).

9        In addition, the Subpoenas requested that all documents be produced by

10    March 5, 2007, and that depositions occur between March 12 and March 27, 2007,

11    consistent with the March 30 deadline for third party discovery in this case. LPL

12    provided notice and copies of the Subpoenas to the Defendants prior to the service

13    of the Subpoenas. During a telephone conference on January 30, 2007, Tatung

14    indicated for the first time that it intended to file a motion for protective order with

15    respect to the Subpoena directed to Hewlett-Packard, but Tatung never did so.[3]

16    More than one month later, on March 5, Tatung again threatened to file additional

17    motions for protective orders with respect to the later served 23 Subpoenas. In

18    addition, even though Tatung had received the second batch of Subpoenas nearly

19    three weeks earlier, Tatung indicated that some or all of such motions would be

20    made on an *ex parte* basis because of the upcoming return dates on the Subpoenas,

21    which incidentally was that same day. (*See* Ex. 2, Emails between V. Ho and C.

22

23    [3] To date, Hewlett-Packard has produced more than 5000 pages of relevant,
    responsive documents. Hewlett-Packard's agreement to produce and subsequent

24    production belies Tatung's argument that the Subpoenas are burdensome to the
    third parties, particularly because the majority of the third parties are smaller

25    entities with far fewer responsive documents. Moreover, Hewlett-Packard
    produced many "Process Management Plans," documents that LPL asserts are

26    essential to its infringement claims. Incredibly, Tatung denied the existence of such
    documents and refused to produce them in response to numerous requests from

27    LPL. Tatung's failure to produce these documents underscores how critical it is for
    LPL to obtain the discovery that is being sought from the third parties.

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1   Connor (Mar. 5-7, 2007).)  Tatung claimed to have standing to raise any such

2   objections on behalf of the third parties because it claimed that the Subpoenas

3   pertained to Tatung's still unresolved objections to the scope of discovery in the

4   Main Case.  Tatung never explained why it had waited several weeks before raising

5   its objections, but merely stated that it intended to file its motions on an *ex parte*

6   basis.  *See id.*  In an exchange of emails, LPL strenuously objected to Tatung's

7   position that it could file *ex parte* motions on any issue in the case, including any

8   issues related to the third party subpoenas served by LPL.  *See id.*  In addition, LPL

9   further reiterated its position that Tatung had no standing to raise objections to the

10   Subpoenas, principally, because Tatung has never proved why any documents now

11   in the custody of third parties are confidential, trade secrets, or otherwise shielded

12   from discovery.  *See id.*

13          Nonetheless, Tatung filed the instant Motions, along with approximately 18

14   other Motions related to the various Subpoenas served by LPL.  Tatung filed the

15   Motions for Protective Order without regard for the fact that several of the third

16   parties had either already produced the requested documents or agreed to produce

17   the requested documents with objection.  Indeed, several third parties have agreed

18   to produce the requested documents even after learning that Tatung had filed

19   Motions related to the Subpoenas, which further undermines Tatung's arguments in

20   its Motion.  Nonetheless, due to Tatung's interference and improper motions, there

21   are also certain third parties who have now refused to produce the requested

22   discovery <u>after they had already agreed to comply with the subpoenas</u>.  *See, e.g.*

23   Ex. 3.

24   **II.    ARGUMENT**

25          Under Rule 26(c), Tatung bears the burden of establishing that a protective

26   order should be granted.  *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d

27   Cir. 1986).  To meet its burden, " the party seeking the protective order must show

28   good cause by demonstrating a particular need for protection.  Broad allegations of

McKenna Long &
Aldridge LLP
ATTORNEYS AT LAW
LOS ANGELES

1   harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

2   the Rule 26(c) test." *See id*; *United States v. Garrett*, 571 F.2d 1323, 1326, n. 3

3   (5th Cir. 1978) (requiring "a particular and specific demonstration of fact as

4   distinguished from stereotyped and conclusory statements"); *General Dynamics*

5   *Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir.1973), cert. denied, 414

6   U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, Federal

7   Practice and Procedure § 2035 (1970 & Supp.1985). Moreover, it is clear that the

8   harm described by the movant must be significant, not a mere trifle. *See, e.g., Joy*

9   *v. North*, 692 F.2d 880, 894 (2d Cir.1982) (refusing protective order where

10   proponent's only argument in its favor was the broad allegations that the disclosure

11   of certain information would "injure the bank in the industry and local

12   community"), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct.

13   1498, 75 L.Ed.2d 930 (1983). Tatung has failed to meet its high burden with

14   respect to this Motion.

15       **A.    The Court Should Exercise Its Discretion to Transfer Tatung's**

16              **Motion to the District of Delaware**

17       The Court has the authority to transfer Defendants' Motions for Protective

18   Order to the District of Delaware. *See Devlin v. Transportation Communications*

19   *International Union*, 2000 WL 249286, *1 (S.D.N.Y. 2000) (stating that there is

20   ample authority for the court from which a subpoena issues to transfer any motions

21   relating to that subpoena back to the court where the main case is pending); *Digital*

22   *Equipment Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) (holding that while the court

23   initially has exclusive jurisdiction to rule on the objections, it may in its discretion

24   remit the matter to the court in which the action is pending).[4]

25

26   [4] *See also* Fed.R.Civ.P. 26(c), advisory committee's note. The Advisory
     Committee's Note to Rule 26(c) (Protective Orders) explains: "The subdivision
27   recognizes the power of the court in the district where a deposition is being taken to
     make protective orders.... The court in the district where the deposition is being
28                                                              *(footnote continued on next page)*

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES
                                            - 6 -
PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1   As explained above, all 23 motions filed by LPL are nearly identical. Yet, by

2   having the Motions heard in 15 or more different jurisdictions, the parties risk that

3   inconsistent opinions will be rendered. Moreover, the hearings on all of these

4   motions will be very time consuming and will further interfere with LPL's attempts

5   to finalize discovery in the Main Case, in which depositions of Tatung's witnesses

6   are currently being taken. In light of these issues, and the other related discovery

7   issues currently pending in the Main Case as described below, a decision in this

8   Court would have to be made in a vacuum, without the benefit of entering a global

9   decision related to all 23 nearly identical motions. Indeed, this Court should not

10  attempt to decide these issues in a vacuum without the benefit of knowing the

11  history of complex discovery disputes and facts at issue between the parties in the

12  Main Case. Thus, for the reasons cited above, LPL requests that the Court formally

13  transfer this dispute back to the District of Delaware, the court where the Main Case

14  is pending, so that all 23 motions and oppositions can be heard en masse.

15  **B.    Tatung Lacks Standing to Challenge the Subpoenas**

16      Tatung does not have standing to raise any objections to LPL's Rule 45

17  subpoenas. Rule 45(c) provides protection to persons "subject to subpoenas."

18  Indeed, "[u]nless a party to an action can make claim to some personal right or

19  privilege in respect to the subject matter of a subpoena duces tecum directed to a

20  nonparty witness, the party to the action has no right to relief under Rule 45(b) or

21  30(b)." *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50 F.R.D. 286, 291 (D.

22  Del. 1970); *see Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985)

23  (denying motion to quash for lack of standing); *Nova Products, Inc. v. Kisma*

24  *Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash

25  because no showing of personal right or privilege); *Oliver B. Cannon and Son, Inc.*

26  _(footnote continued from previous page)_

27  taken may, and frequently will, remit the deponent or party to the court where the action is pending."

28

1  v. *Fidelity and Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981)

2  (denying motion to quash because movant failed to prove documents sought were

3  privileged). Tatung attempts to distinguish the *Dart* decision on two grounds.

4  First, Tatung argues that the motion in *Dart* was premised on Rule 45(c), rather

5  than Rule 26(c), which was relied upon by Tatung. However, the standards for

6  protective orders under both rules is the same. *See* Advisory Committee Notes to

7  the 1970 Amendment to Rule 45 (the "scope of discovery through a subpoena is the

8  same as that applicable to Rule 34 and other discovery rules.") Thus, Rule 45

9  clearly incorporates the standards set forth in Rule 26.

10       Tatung also attempts to distinguish *Dart* on the ground that the moving party

11  in *Dart* did not assert any personal privilege in the requested documents. Similarly,

12  however, in this case, while Tatung has stated, in a conclusory manner, that it has a

13  personal stake in the documents to be produced, Tatung has failed to provide any

14  particularized facts or evidence to support its conclusions. Such statements are

15  insufficient for Tatung to meet its burden in establishing that it is entitled to a

16  Protective Order. *Cipollone*, 785 F.2d at 1121. Namely, Tatung has failed to

17  explain why it would be burdensome to Tatung for a third party to produce the

18  requested information. In addition, while Tatung argues that its alleged confidential

19  documents are stored in a secure facility, Tatung fails to explain how it can assert

20  the alleged confidentiality of such information that it has <u>voluntarily</u> disclosed to its

21  customers, particularly where Tatung evidently has <u>no confidentiality agreement in</u>

22  <u>place to protect the information</u>. In addition, Tatung fails to explain why the

23  Protective Order entered in the Main Case, which governs the use and disclosure of

24  confidential information, does not adequately protect the information to be

25  produced by the third parties. Indeed, by Tatung's own admission, it has already

26  produced documents designated as "Highly Sensitive Confidential" in the Main

27  Case under the Protective Order. Yet, Tatung's arguments suggest that such a

28  course of action is not good enough for the third parties, even though the Protective

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1  Order clearly applies to non-parties as well. Ex. 4. Tatung's argument that LPL

2  seeks such information "to obtain a competitive advantage over them" is

3  unfounded, inappropriate, and frankly, would not even be possible since documents

4  marked "Highly Sensitive Confidential" cannot even be disclosed to LPL and can

5  only be seen by outside counsel. *See* Ex. 4 at ¶ 2.2. LPL strongly disputes

6  Tatung's contention that LPL has ever violated a Protective Order in this or any

7  other cases. Moreover, Tatung has no evidence to support its contention that LPL

8  may be in violation of the patent prosecution bar, and Tatung's accusations on this

9  point are misplaced and offensive.

10    Here, Tatung has not identified any particular harm that would necessitate a

11  Protective Order. Moreover, Tatung has no basis to object to the information

12  sought by LPL's subpoenas and, thus, does not have standing to move for a

13  Protective Order with respect to any of LPL's subpoenas. As such, Tatung has

14  evidently filed these motions solely to delay and impede LPL's discovery efforts.

15    C.    **Tatung's Motion Is Nothing More Than An Attempt to Interfere**

16          **With LPL's Legitimate Third Party Discovery**

17    Tatung's interference with valid third party discovery is inappropriate and is

18  nothing more than an attempt to delay the third party discovery until after the

19  March 30, 2007 discovery deadline. Indeed, on March 7, 2007, LPL received a

20  telephone message from Sensormatic, who had previously agreed to produce the

21  documents requested in the Subpoena. In that message, Sensormatic stated that

22  Tatung told Sensormatic that it planned to move for a protective order.

23  Sensormatic further expressed concern about being in the middle of the dispute

24  between the parties regarding the Subpoena. As a result, Sensormatic has not

25  produced documents yet despite its earlier agreement to do so. On March 8, 2007,

26  LPL received correspondence from Tyco Electronics Corp. ("Tyco"), who LPL had

27  also served with a Subpoena. (*See* Ex. 3.) Prior to that date, Tyco had also agreed

28  to produce documents in response to the Subpoena. In the correspondence on

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1   March 8, however, Tyco stated that, "I understand that [Tatung] intends to file a

2   motion for protective order with regard to this subpoena. In light of this, Tyco will

3   await the disposition of this motion by the court before providing any material in

4   response to the subpoena." (Id.) These communications clearly show that Tatung's

5   motions are delaying LPL's legitimate discovery in this action. Because Tatung

6   waited until now to file motions pertaining to subpoenas served almost one month

7   ago, it is also clear that Tatung is using its motions as a way to prevent LPL from

8   obtaining third party discovery prior to the March 30 deadline.

9        Tatung's decision to wait almost one month to file its motions for protective

10  order and Tatung's disruptive communications with third parties are tactics that

11  Tatung has used before in the Main Case and in at least one prior patent

12  infringement case. In the Main Case, during the jurisdictional discovery phase,

13  "Tatung failed to appear for depositions on multiple occasions, failed to produce

14  witnesses prepared to testify on noticed and relevant topics, and failed to respond to

15  interrogatories and requests for production of documents," which forced LPL to

16  waste its resources just to prove that Tatung's products are sold in Delaware. (Ex.

17  5, Report & Recomms. at 9 (Aug. 16, 2005) (imposing sanctions on Tatung).)

18  Ultimately, after the Special Discovery Master in the Main Case reviewed Tatung's

19  pattern of delay and discovery abuse, Tatung withdrew its jurisdictional defense.

20  (See generally id.)

21       Tatung has also taken steps to disrupt third party discovery in at least one

22  other case. See Safer Display Technology, Ltd. v. Tatung Co., 227 F.R.D. 435

23  (E.D. Va. 2004) (copy attached hereto). In that case, represented by the same

24  counsel as in the Main Case, Tatung engaged in similar delays before it finally

25  withdrew its jurisdictional defense. See Safer Display, 227 F.R.D. at 437. Notably,

26  in Safer Display, Tatung worked diligently to impede third party discovery by

27  contacting and attempting to dissuade third parties from producing discovery, (see

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1    Ex. 6 at 9-10), and filing motions for protective orders for which Tatung lacked

2    standing, (see id. at 10-11).

3        As Tatung is aware, all of these emergency hearings have been scheduled to

4    occur simultaneously with depositions of Tatung's witnesses. Because LPL's lead

5    trial counsel are busy taking and defending depositions this week, it appears that

6    Tatung strategically filed these requests for expedited hearing in an attempt to

7    prevent LPL from obtaining significant and relevant information it needs from the

8    third parties or to divert LPL's focus from the Tatung depositions. Tatung's

9    continuing pattern of dilatory tactics and improper interference with LPL's

10   discovery efforts should not be allowed to continue.

11   **D.    LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks**

12   **From the Defendants, Who Have Refused to Produce the**

13   **Requested Documents**

14       LPL needs the discovery that it seeks from the third parties because the fact

15   discovery in the Main Case will close on March 30, 2007 and because Tatung has

16   not cooperated with LPL's discovery efforts. Indeed, Tatung misrepresents the

17   volume and the sufficiency of its document production to date. Although LPL's

18   discovery requests were served on November 29, 2005, Tatung has refused to fully

19   comply with those requests by, among other things, imposing unreasonable

20   limitations and conditions on their production. LPL filed motions to compel in the

21   Main Case that addressed issues common to all Defendants in the Main Case in

22   September, October, November, and December 2006 and in January, February, and

23   March 2007. Most of these issues have not yet been resolved and many of those

24   unresolved issues relate directly to Tatung's instant Motion for Protective Order.

25   For instance, although Tatung has identified over 300 potentially infringing

26   products, it only produced about 60 technical drawings and then claimed, without

27   explaining their calculations, that this fractional production covered as much as

28   96% of their products. Additionally, after telling LPL for months that it had

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -
PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380 1

1    produced all technical documents, Tatung has only recently revealed, but not yet

2    fully produced, additional categories of critically relevant technical drawings.

3    Tatung has informed LPL that it will complete its supplemental production in April,

4    which is well after the March 30 deadline for third party discovery.

5         Tatung argues that the third parties should not be required to produce

6    documents, in part, because Tatung has objected to the scope of LPL's requests.

7    Tatung correctly notes that the Special Discovery Master in the Main Case has not

8    yet ruled on these issues. This is precisely the reason that LPL seeks discovery

9    from the third parties. Tatung has refused to produce relevant documents and the

10   Special Discovery Master has not ruled on Tatung's objections or on LPL's

11   motions to compel that production. Notably, the subpoena itself is not limited to

12   documents relating to Tatung in the possession of the third party as the subpoena

13   also seeks documents relating to ViewSonic, another defendant in the Main case

14   who has not objected to these subpoenas. All fact discovery, including third party

15   discovery, in the Main Case closes on March 30, 2007. After that date, LPL will

16   not be able to seek further discovery from any third party. Thus, in order to

17   compile all relevant evidence and properly prepare its case for trial, LPL needs

18   discovery from the third parties so that it can test the sufficiency and completeness

19   of Tatung's own production.

20        There have been no rulings in the Main Case that would limit LPL's ability

21   to obtain the scope of discovery that it seeks from the third parties. Indeed,

22   contrary to Tatung's statement that the Special Discovery Master's "impending

23   ruling" will be favorable to Tatung, neither party can predict in whose favor the

24   Special Discovery Master will rule. Although Tatung resists LPL's discovery in

25   the Main Case, that resistance does not, by itself, erect roadblocks to LPL's

26   discovery from third parties. LPL properly seeks discovery from Tatung about all

27   potentially infringing products because only Tatung can provide LPL with

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1   information that would identify infringing products out of Tatung's total of over

2   850 different products.

3       **E.**    <u>The Scope of the Subpoena is Reasonable, And In Any Event,</u>

4           <u>Tatung's Objections are Misplaced</u>

5        In its Motion, Tatung argues that any discovery should be limited to the

6   accused products. This, however, is precisely why LPL issued the Subpoenas. In

7   its Complaint, LPL identified to Tatung an example of a product that LPL alleged

8   to infringe the Patents-in-Suit. However, because Tatung makes hundreds of

9   products, most of which are sold under brand names belonging to third parties, LPL

10  has no way to know, without Tatung's assistance, which of Tatung's hundreds of

11  products use infringing technology. LPL's attempts to obtain information

12  regarding Defendants' products has been ongoing since November 2005. However,

13  the Defendants have objected to producing documents that would enable LPL to

14  identify those products, and continue to resist LPL's efforts to this day. In fact,

15  during a hearing on March 12, 2007, Tatung conceded that it has not produced all

16  such documents and that it would produce additional documents in April 2007,

17  <u>after</u> the deadline for the close of third party discovery.

18       In light of the Delaware Court's Scheduling Order, requiring that third party

19  discovery be completed by March 30, Tatung's efforts to limit the scope of LPL's

20  subpoena to products that have been accused of infringement will artificially

21  narrow the scope of the subpoena to products that are currently accused, even

22  though that list will likely expand in April, after LPL finally receives Tatung's

23  supplemental document production.

24       In addition, Tatung's objections to the scope of the Subpoena are misplaced.

25  Specifically, objections based on burden or scope of a Subpoena should be made by

26  the party upon whom the Subpoena is served. As the burden will not be borne by

27  Tatung, Tatung does not have standing to raise that issue. To the extent that Tatung

28  believes that the documents produced by third parties are not relevant to the

McKenna Long &
Aldridge LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1

1  litigation, or exceed the bounds of admissible evidence, Tatung can raise those

2  arguments in advance of trial.  *See Cook v. Rockwell Intern. Corp.*, 935 F.Supp.

3  1452, 1465 (D.Colo. 1996) ("Defendants had no standing to object to the breadth of

4  the order [with respect to third party subpoena] but were restricted to appropriate

5  objections as to relevance and admissibility before trial.")  Notably, Tatung filed

6  the Motions for Protective Order without regard for the fact that several of the third

7  parties had either already produced the requested documents or agreed to produce

8  the requested documents with objection.  As the party to whom the Subpoena was

9  served has not filed a Motion for Protective Order with respect to the breadth of the

10  Subpoena, Tatung's objection on that basis should be denied.

11  **III.   CONCLUSION**

12      For the foregoing reasons, LPL requests that the Court exercise its discretion

13  to transfer the instant motion to the United States District Court for the District of

14  Delaware.  In the alternative, LPL requests that the Court deny the Motion and

15  allow LPL to proceed with necessary third party discovery.

16

17  Dated:  March 14, 2007                 Respectfully submitted,

18                                         MCKENNA LONG & ALDRIDGE LLP

19

20                                         By: Frederick A. Clark

21                                         Attorneys for Plaintiff
22                                         LG.PHILIPS LCD CO., LTD.

23

24

25

26

27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

PLAINTIFF'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER - GATEWAY
LA:17252380.1