# EXHIBIT J

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| L.G. PHILIPS LCD CO., LTD, | No. MS 07-0030-RSM |
| Plaintiff, | PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER |
| v. | |
| TATUNG COMPANY, TATUNG COMPANY OF AMERICA, INC., and VIEWSONIC CORPORATION, | **Noted for Hearing** March 19, 2007 at 9:00 a.m. |
| Defendant. | |

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the Motion for Protective Order filed by Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") with respect to the third party subpoena served by LPL on Amazon.com, Inc. (*See* Ex. 1.) LPL requests that the Court exercise its discretion to transfer the instant motion to the United States District Court for the District of Delaware. In the alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with necessary and appropriate third party discovery.

This Motion for Protective Order has not been filed by the party who received the subpoena from LPL. Rather, Tatung, a defendant in the underlying case, in a blatant attempt to interfere with this and other proper subpoenas, has filed this motion in an effort to prevent third parties from producing what LPL knows will be extensive evidence against Tatung of both infringement and inducement to infringe the patents in the underlying suit. Further,

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 1
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

Tatung's efforts are designed to prevent LPL from obtaining necessary third party discovery prior to the deadline of March 30, 2007. LPL has filed a motion with the Special Discovery Master in the underlying case seeking an order that prevents Tatung from taking such actions and also seeking an extension of third party discovery due to Tatung's improper conduct.

## I.   STATEMENT OF FACTS

This discovery dispute arises out of a patent infringement action pending in the United States District Court for the District of Delaware ("Main Case"). LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting systems used in visual display products such as liquid crystal display ("LCD") computer monitors, laptop computers, and televisions. LPL has asserted patent infringement claims against Tatung and ViewSonic Corporation ("ViewSonic") (collectively, the "Defendants"). The Defendants manufacture visual display products, which LPL alleges utilize LPL's patented techniques. Among its claims, LPL alleges that Defendants have induced other parties, including the party to whom the instant Subpoena was served, to infringe LPL's patents.[1]

On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company. On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas ("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the United States. The Subpoenas were issued based on LPL's understanding that

---

[1] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). If the defendant has knowledge of the patent, then upon a showing that defendant "had intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005). A jury could conclude that e-mails between a foreign defendant and a U.S. company "represent product support" showing that the defendant was aware of potentially infringing activities in the U.S. by the U.S. company and that the defendant "intended to encourage those activities." *Id.* at 1379-80. *See also Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002) (evidence did not support finding of no inducement where defendant was aware of patents and supplied infringing products to customers "with instructions on how they were to be used, which, when followed, would lead to infringement"); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips, manufactured in Singapore and sold to customer that resold to the U.S. PC market, constituted active inducement).

PLAINTIFF L.G. PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 2
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1    these parties, who have current or former business relationships with Tatung and ViewSonic,

2    have documents that are relevant to the instant action, including but not limited to, documents

3    related to purchase and sale of the infringing products in the United States, documents relating

4    to Defendants' efforts to market the infringing products in the United States, and other

      important discovery concerning infringement, inducement, damages, and other issues.[2]  While

5    a small handful of these third parties were served with subpoenas during the jurisdictional

6    phase of this case, the new subpoenas are broader in several respects.  First, the jurisdictional

7    subpoenas did not seek documents related to ViewSonic, which are sought in the present

8    Subpoenas.  Second, the jurisdictional subpoenas were limited in most of their categories to

9    sales of products in Delaware, rather than throughout the United States.  In addition, the

      Subpoenas include three categories that did not appear at all in the jurisdictional subpoenas.

10   See Ex. 1, paragraphs 1, 2, and 8 in Attachment B.  Moreover, and perhaps most importantly,

11   some of the parties that received both subpoenas produced very few, if any, documents in

12   response to the jurisdictional subpoenas, and likely have additional responsive documents

13   created since the first subpoena was served.

14          Based on information available to LPL and LPL's belief, the third parties are likely to

15   have information showing that the Defendants have imported, sold, and used their products in

16   the United States, activities which infringe upon LPL's U.S. patents and which support LPL's

17   claims of direct infringement or inducement of infringement.  Thus, the third parties are likely

18   to have documents pertaining to communications, business coordination efforts, contracts or

19   other agreements between itself and the Defendants pertaining to Defendants' products and

20   sales of those products in the United States.  The employees of the third parties are likely to

21   have knowledge of the manner in which the third party conducted business with the

      Defendants and their customers in the United States.  The employees of the third parties are

22

23   ---

[2] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.  Defendants have produced some - but certainly not all – discovery that LPL seeks.  Notably, much of Defendants' production is subject to objections and limitations that LPL disputes and which are the subject of related discovery motions already pending before the Special Discovery Master in the Main Case in the District of Delaware, as described more fully below.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S                    GARDNER BOND TRABOLSI PLLC
OPPOSITION TO TATUNG'S MOTION FOR                              A T T O R N E Y S
                                                         2200 SIXTH AVENUE, SUITE 600
PROTECTIVE ORDER - 3                                      SEATTLE, WASHINGTON 98121
- MS 07-0030-RSM                                         TELEPHONE (206) 256-6309
                                                         FACSIMILE (206) 256-6318

1    also likely to have knowledge of the methods and practices and any coordination efforts

2    related to the third parties' acquisition of infringing LCD components from the Defendants.

3    All of this information will assist LPL in evaluating its patent infringement and inducement

4    claims against the Defendants and will enable LPL to verify whether the Defendants' own

5    document productions and deposition testimony have been complete and accurate. *See*

6    *generally MEMC Elec. Materials, Inc., v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369,

     1379-80 (Fed. Cir. 2005) (discussing factors evidencing inducement to infringe on patents).

7        In addition, the Subpoenas requested that all documents be produced by March 5,

8    2007, and that depositions occur between March 12 and March 27, 2007, consistent with the

9    March 30 deadline for third party discovery in this case. LPL provided notice and copies of

10   the Subpoenas to the Defendants prior to the service of the Subpoenas. During a telephone

11   conference on January 30, 2007, Tatung indicated for the first time that it intended to file a

12   motion for protective order with respect to the Subpoena directed to Hewlett-Packard, but

13   Tatung never did so.[3] More than one month later, on March 5, Tatung again threatened to file

14   additional motions for protective orders with respect to the later served 23 Subpoenas. In

15   addition, even though Tatung had received the second batch of Subpoenas nearly three weeks

16   earlier, Tatung indicated that some or all of such motions would be made on an *ex parte* basis

17   because of the upcoming return dates on the Subpoenas, which incidentally was that same

18   day. (*See* Ex. 2, Emails between V. Ho and C. Connor (Mar. 5-7, 2007).) Tatung claimed to

19   have standing to raise any such objections on behalf of the third parties because it claimed

     that the Subpoenas pertained to Tatung's still unresolved objections to the scope of discovery

20   in the Main Case. Tatung never explained why it had waited several weeks before raising its

_____

21   [3] To date, Hewlett-Packard has produced more than 5000 pages of relevant, responsive documents. Hewlett-
     Packard's agreement to produce and subsequent production belies Tatung's argument that the Subpoenas are
22   burdensome to the third parties, particularly because the majority of the third parties are smaller entities with far
     fewer responsive documents.     Moreover, Hewlett-Packard produced many "Process Management Plans,"
23   documents that LPL asserts are essential to its infringement claims. Incredibly, Tatung denied the existence of
     such documents and refused to produce them in response to numerous requests from LPL. Tatung's failure to
     produce these documents underscores how critical it is for LPL to obtain the discovery that is being sought from
     the third parties.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 4
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1  objections, but merely stated that it intended to file its motions on an *ex parte* basis. *See id.*

2  In an exchange of emails, LPL strenuously objected to Tatung's position that it could file *ex*

3  *parte* motions on any issue in the case, including any issues related to the third party

4  subpoenas served by LPL. *See id.* In addition, LPL further reiterated its position that Tatung

5  had no standing to raise objections to the Subpoenas, principally, because Tatung has never

6  proved why any documents now in the custody of third parties are confidential, trade secrets,

   or otherwise shielded from discovery. *See id.*

7      Nonetheless, Tatung filed the instant Motion, along with approximately 22 other

8  Motions related to the various Subpoenas served by LPL. Tatung filed the Motions for

9  Protective Order without regard for the fact that several of the third parties had either already

10 produced the requested documents or agreed to produce the requested documents with

   objection. Indeed, several third parties have agreed to produce the requested documents even

11 after learning that Tatung had filed Motions related to the Subpoenas, which further

12 undermines Tatung's arguments in its Motion. Nonetheless, due to Tatung's interference and

13 improper motions, there are also certain third parties who have now refused to produce the

14 requested discovery <u>after they had already agreed to comply with the subpoenas</u>. *See, e.g.* Ex.

15 3.

16 **II.    ARGUMENT**

       Under Rule 26(c), Tatung bears the burden of establishing that a protective order

17 should be granted. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To

18 meet its burden, " the party seeking the protective order must show good cause by

19 demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by

20 specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See id; United*

21 *States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978) (requiring "a particular and

   specific demonstration of fact as distinguished from stereotyped and conclusory statements");

22 *General Dynamics Corp. v. Selb Mfg. Corp.*, 481 F.2d 1204, 1212 (8th Cir. 1973), cert.

23 denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller,

GARDNER BOND TRABOLSI PLLC
ATTORNEYS
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

Federal Practice and Procedure § 2035 (1970 & Supp.1985). Moreover, it is clear that the harm described by the movant must be significant, not a mere trifle. *See, e.g., Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982) (refusing protective order where proponent's only argument in its favor was the broad allegations that the disclosure of certain information would "injure the bank in the industry and local community"), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Tatung has failed to meet its high burden with respect to this Motion.

A.    **The Court Should Exercise Its Discretion to Transfer Tatung's Motion to the District of Delaware**

The Court has the authority to transfer Defendants' Motion for Protective Order to the District of Delaware. *See Devlin v. Transportation Communications International Union*, 2000 WL 249286, *1 (S.D.N.Y. 2000) (stating that there is ample authority for the court from which a subpoena issues to transfer any motions relating to that subpoena back to the court where the main case is pending); *Digital Equipment Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) (holding that while the court initially has exclusive jurisdiction to rule on the objections, it may in its discretion remit the matter to the court in which the action is pending).[4]

As explained above, all 23 motions filed by LPL are nearly identical. Yet, by having the Motions heard in 15 or more different jurisdictions, the parties risk that inconsistent opinions will be rendered. Moreover, the hearings on all of these motions will be very time consuming and will further interfere with LPL's attempts to finalize discovery in the Main Case, in which depositions of Tatung's witnesses are currently being taken. In light of these issues, and the other related discovery issues currently pending in the Main Case as described below, a decision in this Court would have to be made in a vacuum, without the benefit of entering a global decision related to all 23 nearly identical motions. Indeed, this Court should not attempt to decide these issues in a vacuum without the benefit of knowing the history of

---

[4] *See also* Fed.R.Civ.P. 26(c), advisory committee's note. The Advisory Committee's Note to Rule 26(c) (Protective Orders) explains: The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders...The court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending.

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 6
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
ATTORNEYS
2200 SOUTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1   complex discovery disputes and facts at issue between the parties in the Main case. Thus, for

2   the reasons cited above, LPL requests that the Court formally transfer this dispute back to the

3   District of Delaware, the court where the Main Case is pending, so that all 23 motions and

4   oppositions can be heard en masse.

**B.    Tatung Lacks Standing to Challenge the Subpoenas**

5       Tatung does not have standing to raise any objections to LPL's Rule 45 subpoenas.

6   Rule 45(c) provides protection to persons "subject to subpoenas." Indeed, "[u]nless a party to

7   an action can make claim to some personal right or privilege in respect to the subject matter of

8   a subpoena duces tecum directed to a nonparty witness, the party to the action has no right to

9   relief under Rule 45(b) or 30(b)." *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50

10  F.R.D. 286, 291 (D. Del. 1970); *see Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir.

11  1985) (denying motion to quash for lack of standing); *Nova Products, Inc. v. Kisma Video,*

    *Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (denying motion to quash because no showing of

12  personal right or privilege); *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New*

13  *York*, 519 F. Supp. 668, 680 (D. Del. 1981) (denying motion to quash because movant failed

14  to prove documents sought were privileged). Tatung attempts to distinguish the *Dart* decision

15  on two grounds. First, Tatung argues that the motion in *Dart* was premised on Rule 45(c),

16  rather than Rule 26(c), which was relied upon by Tatung. However, the standards for

    protective orders under both rules are the same. *See* Advisory Committee Notes to the 1970

17  Amendment to Rule 45 (the "scope of discovery through a subpoena is the same as that

18  applicable to Rule 34 and other discovery rules.") Thus, Rule 45 clearly incorporates the

19  standards set forth in Rule 26.

20      Tatung also attempts to distinguish *Dart* on the ground that the moving party in *Dart*

21  did not assert any personal privilege in the requested documents. Similarly however, in this

22  case, while Tatung has stated, in a conclusory manner, that it has a personal stake in the

23  documents to be produced, Tatung has failed to provide any particularized facts or evidence to

    support its conclusions. Such statements are insufficient for Tatung to meet its burden in

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 7
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1   establishing that it is entitled to a Protective Order. *Cipollone*, 785 F.2d at 1121. Namely,

2   Tatung has failed to explain why it would be burdensome <u>to Tatung</u> for a third party to

3   produce the requested information. In addition, while Tatung argues that its alleged

4   confidential documents are stored in a secure facility, Tatung fails to explain how it can assert

    the alleged confidentiality of such information that it has <u>voluntarily</u> disclosed to its

5   customers, particularly where Tatung evidently has <u>no confidentiality agreement in place to</u>

6   <u>protect the information</u>. In addition, Tatung fails to explain why the Protective Order entered

7   in the Main Case, which governs the use and disclosure of confidential information, does not

8   adequately protect the information to be produced by the third parties. Indeed, by Tatung's

9   own admission, it has already produced documents designated as "Highly Sensitive

10  Confidential" in the Main Case under the Protective Order. Yet, Tatung's arguments suggest

    that such a course of action is not good enough for the third parties, even though the

11  Protective Order clearly applies to non-parties as well. Ex. 4. Tatung's argument that LPL

12  seeks such information "to obtain a competitive advantage over them" is unfounded,

13  inappropriate, and frankly, would not even be possible since documents marked "Highly

14  Sensitive Confidential" cannot even be disclosed to LPL and can only be seen by outside

15  counsel. *See* Ex. 4 at ¶ 2.2. LPL strongly disputes Tatung's contention that it has ever

16  violated a Protective Order in this or any other cases. Moreover, Tatung has no evidence to

17  support its contention that LPL may be in violation of the patent prosecution bar, and

    Tatung's accusations on this point are misplaced and offensive.

18       Here, Tatung has not identified any particular harm that would necessitate a Protective

19  Order. Moreover, Tatung has no basis to object to the information sought by LPL's

20  subpoenas and, thus, does not have standing to move for a Protective Order with respect to

21  any of LPL's subpoenas. As such, Tatung has evidently filed these motions solely to delay

22  and impede LPL's discovery efforts.

23

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 8
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

**C.     Tatung's Motion Is Nothing More Than An Attempt to Interfere With LPL's Legitimate Third Party Discovery**

Tatung's interference with valid third party discovery is inappropriate and is nothing more than an attempt to delay the third party discovery until after the March 30, 2007 discovery deadline. Indeed, on March 7, 2007, LPL received a telephone message from Sensormatic, who had previously agreed to produce the documents requested in the Subpoena. In that message, Sensormatic stated that Tatung told Sensormatic that it planned to move for a protective order. Sensormatic further expressed concern about being in the middle of the dispute between the parties regarding the Subpoena. As a result, Sensormatic has not produced documents yet despite its earlier agreement to do so. On March 8, 2007, LPL received correspondence from Tyco Electronics Corp. ("Tyco"), who LPL had also served with a Subpoena. (*See* Ex. 3.) Prior to that date, Tyco had also agreed to produce documents in response to the Subpoena. In the correspondence on March 8, however, Tyco stated that, "I understand that [Tatung] intends to file a motion for protective order with regard to this subpoena. In light of this, Tyco will await the disposition of this motion by the court before providing any material in response to the subpoena." (Id.) These communications clearly show that Tatung's motions are delaying LPL's legitimate discovery in this action. Because Tatung waited until now to file motions pertaining to subpoenas served almost one month ago, it is also clear that Tatung is using its motions as a way to prevent LPL from obtaining third party discovery prior to the March 30 deadline.

Tatung's decision to wait almost one month to file its motions for protective order and Tatung's disruptive communications with third parties are tactics that Tatung has used before in the Main Case and in at least one prior patent infringement case. In the Main Case, during the jurisdictional discovery phase, "Tatung failed to appear for depositions on multiple occasions, failed to produce witnesses prepared to testify on noticed and relevant topics, and failed to respond to interrogatories and requests for production of documents," which forced LPL to waste its resources just to prove that Tatung's products are sold in Delaware. (Ex. 5,

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 9
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1    Report & Recomms. at 9 (Aug. 16, 2005) (imposing sanctions on Tatung).) Ultimately, after

2    the Special Discovery Master in the Main Case reviewed Tatung's pattern of delay and

3    discovery abuse, Tatung withdrew its jurisdictional defense. (*See generally id.*)

4        Tatung has also taken steps to disrupt third party discovery in at least one other case.

5    *See Safer Display Technology, Ltd. v. Tatung Co.*, 227 F.R.D. 435 (E.D. Va. 2004) (copy

6    attached hereto). In that case, represented by the same counsel as in the Main Case, Tatung

7    engaged in similar delays before it finally withdrew its jurisdictional defense. *See Safer

8    Display*, 227 F.R.D. at 437. Notably, in *Safer Display*, Tatung worked diligently to impede

9    third party discovery by contacting and attempting to dissuade third parties from producing

10   discovery, (*see* Ex. 6 at 9-10), and filing motions for protective orders for which Tatung

11   lacked standing, (*see id.* at 10-11).

12       As Tatung is aware, all of these emergency hearings have been scheduled to occur

13   simultaneously with depositions of Tatung's witnesses. Because LPL's lead trial counsel are

14   busy taking and defending depositions this week, it appears that Tatung strategically filed

15   these requests for expedited hearing in an attempt to prevent LPL from obtaining significant

16   and relevant information it needs from the third parties or to divert LPL's focus from the

17   Tatung depositions. Tatung's continuing pattern of dilatory tactics and improper interference

18   with LPL's discovery efforts should not be allowed to continue.

**D.    LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the Defendants, Who Have Refused to Produce the Requested Documents**

       LPL needs the discovery that it seeks from the third parties because the fact discovery

in the Main Case will close on March 30, 2007 and because Tatung has not cooperated with

LPL's discovery efforts. Indeed, Tatung misrepresents the volume and the sufficiency of its

document production to date. Although LPL's discovery requests were served on November

29, 2005, Tatung has refused to fully comply with those requests by, among other things,

imposing unreasonable limitations and conditions on their production. LPL filed motions to

compel in the Main Case that addressed issues common to all Defendants in the Main Case in

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 10
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1   September, October, November, and December 2006 and in January, February, and March

2   2007. Most of these issues have not yet been resolved and many of those unresolved issues

3   relate directly to Tatung's instant Motion for Protective Order. For instance, although Tatung

4   has identified over 300 potentially infringing products, it only produced about 60 technical

    drawings and then claimed, without explaining their calculations, that this fractional

5   production covered as much as 96% of their products. Additionally, after telling LPL for

6   months that it had produced all technical documents, Tatung has only recently revealed, but

7   not yet fully produced, additional categories of critically relevant technical drawings. Tatung

8   has informed LPL that it will complete its supplemental production in April, which is well

9   after the March 30 deadline for third party discovery.

10          Tatung argues that the third parties should not be required to produce documents, in

    part, because Tatung has objected to the scope of LPL's requests. Tatung correctly notes that

11  the Special Discovery Master in the Main Case has not yet ruled on these issues. This is

12  precisely the reason that LPL seeks discovery from the third parties. Tatung has refused to

13  produce relevant documents and the Special Discovery Master has not ruled on Tatung's

14  objections or on LPL's motions to compel that production. Notably, the subpoena itself is not

15  limited to documents relating to Tatung in the possession of the third party as the subpoena

16  also seeks documents relating to ViewSonic, another defendant in the Main case who has not

17  objected to these subpoenas. All fact discovery, including third party discovery, in the Main

18  Case closes on March 30, 2007. After that date, LPL will not be able to seek further

19  discovery from any third party. Thus, in order to compile all relevant evidence and properly

20  prepare its case for trial, LPL needs discovery from the third parties so that it can test the

    sufficiency and completeness of Tatung's own production.

21          There have been no rulings in the Main Case that would limit LPL's ability to obtain

22  the scope of discovery that it seeks from the third parties. Indeed, contrary to Tatung's

23  statement that the Special Discovery Master's "impending ruling" will be favorable to Tatung,

    neither party can predict in whose favor the Special Discovery Master will rule. Although

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 11
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1    Tatung resists LPL's discovery in the Main Case, that resistance does not, by itself, erect

2    roadblocks to LPL's discovery from third parties. LPL properly seeks discovery from Tatung

3    about all potentially infringing products because only Tatung can provide LPL with

4    information that would identify infringing products out of Tatung's total of over 850 different

5    products.

     E.    **The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's**
6    **Objections are Misplaced**

7        In its Motion, Tatung argues that any discovery should be limited to the accused

8    products. This, however, is precisely why LPL issued the Subpoenas. In its Complaint, LPL

9    identified to Tatung an example of a product that LPL alleged to infringe the Patents-in-Suit.

10   However, because Tatung makes hundreds of products, most of which are sold under brand

11   names belonging to third parties, LPL has no way to know, without Tatung's assistance,

12   which of Tatung's hundreds of products use infringing technology. LPL's attempts to obtain

13   information regarding Defendants' products has been ongoing since November 2005.

14   However, the Defendants have objected to producing documents that would enable LPL to

15   identify those products, and continue to resist LPL's efforts to this day. In fact, during a

16   hearing on March 12, 2007, Tatung conceded that it has not produced all such documents and

     that it would produce additional documents in April 2007, after the deadline for the close of

     third party discovery.

17       In light of the Delaware Court's Scheduling Order, requiring that third party discovery

18   be completed by March 30, Tatung's efforts to limit the scope of LPL's subpoena to products

19   that have been accused of infringement will artificially narrow the scope of the subpoena to

20   products that are currently accused, even though that list will likely expand in April, after LPL

21   finally receives Tatung's supplemental document production.

22       In addition, Tatung's objections to the scope of the Subpoena are misplaced.

23   Specifically, objections based on burden or scope of a Subpoena should be made by the party

     upon whom the Subpoena is served. As the burden will not be borne by Tatung, Tatung does

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 12
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
A T T O R N E Y S
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

1  not have standing to raise that issue. To the extent that Tatung believes that the documents

2  produced by third parties are not relevant to the litigation, or exceed the bounds of admissible

3  evidence, Tatung can raise those arguments in advance of trial. *See Cook v. Rockwell Intern.*

4  *Corp.*, 935 F.Supp. 1452, 1465 (D.Colo. 1996) ("Defendants had no standing to object to the

   breadth of the order [with respect to third party subpoena] but were restricted to appropriate

5  objections as to relevance and admissibility before trial.") Notably, Tatung filed the Motions

6  for Protective Order without regard for the fact that several of the third parties had either

7  already produced the requested documents or agreed to produce the requested documents with

8  objection. As the party to whom the Subpoena was served has not filed a Motion for

9  Protective Order with respect to the breadth of the Subpoena, Tatung's objection on that basis

   should be denied.

10

**III.    CONCLUSION**

11 For the foregoing reasons, LPL requests that the Court exercise its discretion to transfer the

12 instant motion to the United States District Court for the District of Delaware.    In the

13 alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with

14 necessary third party discovery.

15         DATED this 14th day of March 2007.

16                              GARDNER BOND TRABOLSI PLLC

17

18         By /s/ Ronald C. Gardner
              Ronald C. Gardner, WSBA No. 9270

19         *Of Counsel:*

20         **MCKENNA LONG & ALDRIDGE LLP**

21         Shari Klevens
           1900 K Street, NW
22         Washington, DC 20006
           202-496-7207

23
           Attorneys for Plaintiff

PLAINTIFF L.G.PHILIPS LCD CO., LTD.'S
OPPOSITION TO TATUNG'S MOTION FOR
PROTECTIVE ORDER - 13
- MS 07-0030-RSM

GARDNER BOND TRABOLSI PLLC
ATTORNEYS
2200 SIXTH AVENUE, SUITE 600
SEATTLE, WASHINGTON 98121
TELEPHONE (206) 256-6309
FACSIMILE (206) 256-6318

# EXHIBIT K

ROSS H. HYSLOP (SBN 149358)
MCKENNA LONG & ALDRIDGE LLP
Suite 3300, Symphony Towers
750 B Street
San Diego, CA 92101
Telephone:     (619) 595-5400
Facsimile:     (619) 595-5450

LORA A. BRZEZYNSKI (pro hace vice pending)
SHARI L. KLEVENS (pro hace vice pending)
CORMAC T. CONNOR (pro hace vice pending)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006
Telephone:     (202) 496-7207
Facsimile:     (202) 496-7756

Attorneys for Plaintiff
L.G. PHILIPS LCD CO. LTD.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.G. PHILIPS LCD CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION,<br><br>Defendants. | CASE NO. 07-CV-0450-H (CAB)<br><br>**PLAINTIFF LG.PHILIPS LCD CO., LTD.'S OPPOSITION TO TATUNG'S MOTION FOR PROTECTIVE ORDER**<br><br>Date:   None Set<br>Time:   None Set<br>Ctrm.   E<br>Judge:  Cathy Ann Bencivengo |

1

## TABLE OF CONTENTS

2                                                                    Page

3    I.   STATEMENT OF FACTS .............................................................1

     II.  ARGUMENT ......................................................................5
4
          A.   The Court Should Exercise Its Discretion to Transfer Tatung's Motion to
5              the District of Delaware ................................................ 5

6         B.   Tatung Lacks Standing to Challenge the Subpoenas ..........................6

          C.   Tatung's Motion Is Nothing More Than An Attempt to Interfere With
7              LPL's Legitimate Third Party Discovery ................................ 8

8         D    LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the
               Defendants, Who Have Refused to Produce the Requested Documents..........9
9
          E.   The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's
               Objections are Misplaced ..............................................11
10
     III. CONCLUSION ....................................................................12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
                                                                           Page

3
### CASES

4    *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*
       911 F.2d 670 (Fed. Cir. 1990) ................................................2

5    *Cipollone v. Liggett Group, Inc.*
       785 F.2d 1108 (3d Cir. 1986) ..............................................5, 7

6
     *Citytrust v. Joy*
7      460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983)....................5

8    *Cook v. Rockwell Intern. Corp.*
       935 F.Supp. 1452 (D. Colo. 1996) ..........................................12

9    *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*
       246 F.3d 1336 (Fed. Cir. 2001) .............................................2

10
     *Dart Industries, Inc. v. Liquid Nitrogen Processing*
11     50 F.R.D. 286 (D. Del. 1970) ................................................6

12   *Devlin v. Transportation Communications International Union*
       2000 WL 249286, *1 (S.D.N.Y. 2000)........................................5

13   *In re Digital Equipment Corp.*
       949 F.2d 228 (8th Cir. 1991) ...............................................5

14   *General Dynamics Corp. v. Selb Mfg. Corp.*
       481 F.2d 1204 (8th Cir. 1973) ..............................................5

15
     *Joy v. North*
16     692 F.2d 880 (2d Cir. 1982) ................................................5

17   *MEMC Elec. Materials, Inc., v. Mitsubishi Materials Silicon Corp.*
       420 F.3d 1369 (Fed. Cir. 2005) .............................................3, 4

18   *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*
       303 F.3d 1294 (Fed. Cir. 2002) .............................................2

19   *Nova Products, Inc. v. Kisma Video, Inc.*
       220 F.R.D. 238 (S.D.N.Y. 2004)..............................................6

20
     *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*
21     519 F.Supp. 668 (D. Del. 1981)..............................................6

22   *Ponsford v. United States*
       771 F.2d 1305 (9th Cir. 1985) ..............................................6

23   *Safer Display Technology, Ltd. v. Tatung Co.*
       227 F.R.D. 435 (E.D. Va. 2004) .............................................9

24   *United States v. Garrett*
       571 F.2d 1323 (5th Cir. 1978) ..............................................5

25

26
### STATUTES AND REGULATIONS

27   Fed.R.Civ.P.
       Section 26(c) ..............................................................5

28

1

**TABLE OF AUTHORITIES**
(continued)

2                                                                                      Page

3                                    MISCELLANEOUS

4    8 C. Wright & A. Miller, Federal Practice and Procedure
        Section 2035 (1970 & Supp. 1985) .................................................................. 5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

1  Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff LG Philips LCD

2 Co., Ltd. ("LPL") hereby opposes the Motion for Protective Order filed by Defendants Tatung

3 Company and Tatung Company of America, Inc (collectively "Tatung") with respect to the third

4 party subpoena served by LPL on American Dynamics (*See* Ex. 1 ) LPL requests that the Court

5 exercise its discretion to transfer the instant motion to the United States District Court for the

6 District of Delaware. In the alternative, LPL requests that the Court deny the Motion and allow

7 LPL to proceed with necessary and appropriate third party discovery.

8  This Motion for Protective Order has not been filed by the party who received the

9 subpoena from LPL. Rather, Tatung, a defendant in the underlying case, in a blatant attempt to

10 interfere with this and other proper subpoenas, has filed this motion in an effort to prevent third

11 parties from producing what LPL knows will be extensive evidence against Tatung of both

12 infringement and inducement to infringe the patents in the underlying suit  Further, Tatung's

13 efforts are designed to prevent LPL from obtaining necessary third party discovery prior to the

14 deadline of March 30, 2007. LPL has filed a motion with the Special Discovery Master in the

15 underlying case seeking an order that prevents Tatung from taking such actions and also seeking

16 an extension of third party discovery due to Tatung's improper conduct.

17 **I.  STATEMENT OF FACTS**

18  This discovery dispute arises out of a patent infringement action pending in the United

19 States District Court for the District of Delaware ("Main Case"). LPL is the owner of U.S. Patent

20 No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent")

21 (collectively, the "Patents-in-Suit"), which relate to mounting systems used in visual display

22 products such as liquid crystal display ("LCD") computer monitors, laptop computers, and

23 televisions  LPL has asserted patent infringement claims against Tatung and ViewSonic

24 Corporation ("ViewSonic") (collectively, the "Defendants"). The Defendants manufacture visual

25 display products, which LPL alleges utilize LPL's patented techniques. Among its claims, LPL

26 alleges that Defendants have induced other parties, including the party to whom the instant

27

28

1   Subpoena was served, to infringe LPL's patents.[1]

2          On December 27, 2006, LPL served a third party subpoena on Hewlett-Packard Company.

3   On February 13 and 14, 2007, LPL served approximately 23 other third party subpoenas

4   ("Subpoenas") on various distributors, retailers, and purchasers of Defendants' products in the

5   United States. The Subpoenas were issued based on LPL's understanding that these parties, who

6   have current or former business relationships with Tatung and ViewSonic, have documents that

7   are relevant to the instant action, including but not limited to, documents related to purchase and

8   sale of the infringing products in the United States, documents relating to Defendants' efforts to

9   market the infringing products in the United States, and other important discovery concerning

10  infringement, inducement, damages, and other issues.[2] While a small handful of these third

11  parties were served with subpoenas during the jurisdictional phase of this case, the new

12  subpoenas are broader in several respects. First, the jurisdictional subpoenas did not seek

13  documents related to ViewSonic, which are sought in the present Subpoenas. Second, the

14  jurisdictional subpoenas were limited in most of their categories to sales of products in Delaware,

15  rather than throughout the United States. In addition, the Subpoenas include three categories that

16  did not appear at all in the jurisdictional subpoenas. *See* Ex. 1, paragraphs 1, 2, and 8 in

---

18  [1] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting
    another's direct infringement." *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d
19  670, 675 (Fed. Cir. 1990). If the defendant has knowledge of the patent, then upon a showing that
    defendant "had intent to induce the specific acts constituting infringement, intent additionally to
20  cause an infringement can be presumed." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials
    Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005). A jury could conclude that e-mails between
21  a foreign defendant and a U.S. company "represent product support" showing that the defendant
    was aware of potentially infringing activities in the U.S. by the U.S. company and that the
22  defendant "intended to encourage those activities." *Id.* at 1379-80. *See also Minnesota Mining &
    Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305 (Fed. Cir. 2002) (evidence did not support
23  finding of no inducement where defendant was aware of patents and supplied infringing products
    to customers "with instructions on how they were to be used, which, when followed, would lead
24  to infringement."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d
    1336, 1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips,
25  manufactured in Singapore and sold to customer that resold to the U.S. PC market, constituted
    active inducement).

26  [2] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.
    Defendants have produced some - but certainly not all – discovery that LPL seeks. Notably,
27  much of Defendants' production is subject to objections and limitations that LPL disputes and
    which are the subject of related discovery motions already pending before the Special Discovery
28  Master in the Main Case in the District of Delaware, as described more fully below.

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

1    Attachment B. Moreover, and perhaps most importantly, some of the parties that received both

2    subpoenas produced very few, if any, documents in response to the jurisdictional subpoenas, and

3    likely have additional responsive documents created since the first subpoena was served.

4         Based on information available to LPL and LPL's belief, the third parties are likely to

5    have information showing that the Defendants have imported, sold, and used their products in the

6    United States, activities which infringe upon LPL's U.S. patents and which support LPL's claims

7    of direct infringement or inducement of infringement. Thus, the third parties are likely to have

8    documents pertaining to communications, business coordination efforts, contracts or other

9    agreements between itself and the Defendants pertaining to Defendants' products and sales of

10   those products in the United States. The employees of the third parties are likely to have

11   knowledge of the manner in which the third party conducted business with the Defendants and

12   their customers in the United States. The employees of the third parties are also likely to have

13   knowledge of the methods and practices and any coordination efforts related to the third parties'

14   acquisition of infringing LCD components from the Defendants. All of this information will

15   assist LPL in evaluating its patent infringement and inducement claims against the Defendants

16   and will enable LPL to verify whether the Defendants' own document productions and deposition

17   testimony have been complete and accurate. *See generally MEMC Elec. Materials, Inc., v.*

18   *Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379-80 (Fed. Cir. 2005) (discussing factors

19   evidencing inducement to infringe on patents).

20        In addition, the Subpoenas requested that all documents be produced by March 5, 2007,

21   and that depositions occur between March 12 and March 27, 2007, consistent with the March 30

22   deadline for third party discovery in this case. LPL provided notice and copies of the Subpoenas

23   to the Defendants prior to the service of the Subpoenas. During a telephone conference on

24   January 30, 2007, Tatung indicated for the first time that it intended to file a motion for protective

25   order with respect to the Subpoena directed to Hewlett-Packard, but Tatung never did so.[3] More

26

27   [3] To date, Hewlett-Packard has produced more than 5000 pages of relevant, responsive
     documents. Hewlett-Packard's agreement to produce and subsequent production belies Tatung's
     argument that the Subpoenas are burdensome to the third parties, particularly because the
28   majority of the third parties are smaller entities with far fewer responsive documents. Moreover,

McKenna Long &
Aldridge LLP
Attorneys at Law
San Diego

- 3 -                                    07-CV-0450-H (CAB)

1  than one month later, on March 5, Tatung again threatened to file additional motions for

2  protective orders with respect to the later served 23 Subpoenas. In addition, even though Tatung

3  had received the second batch of Subpoenas nearly three weeks earlier, Tatung indicated that

4  some or all of such motions would be made on an *ex parte* basis because of the upcoming return

5  dates on the Subpoenas, which incidentally was that same day. (*See* Ex. 2, Emails between V. Ho

6  and C. Connor (Mar. 5-7, 2007).) Tatung claimed to have standing to raise any such objections

7  on behalf of the third parties because it claimed that the Subpoenas pertained to Tatung's still

8  unresolved objections to the scope of discovery in the Main Case. Tatung never explained why it

9  had waited several weeks before raising its objections, but merely stated that it intended to file its

10  motions on an *ex parte* basis. *See id.* In an exchange of emails, LPL strenuously objected to

11  Tatung's position that it could file *ex parte* motions on any issue in the case, including any issues

12  related to the third party subpoenas served by LPL. *See id.* In addition, LPL further reiterated its

13  position that Tatung had no standing to raise objections to the Subpoenas, principally, because

14  Tatung has never proved why any documents now in the custody of third parties are confidential,

15  trade secrets, or otherwise shielded from discovery. *See id.*

16       Nonetheless, Tatung filed the instant Motion, along with approximately 22 other Motions

17  related to the various Subpoenas served by LPL. Tatung filed the Motions for Protective Order

18  without regard for the fact that several of the third parties had either already produced the

19  requested documents or agreed to produce the requested documents with objection. Indeed,

20  several third parties have agreed to produce the requested documents even after learning that

21  Tatung had filed Motions related to the Subpoenas, which further undermines Tatung's arguments

22  in its Motion. Nonetheless, due to Tatung's interference and improper motions, there are also

23  certain third parties who have now refused to produce the requested discovery <u>after they had</u>

24  <u>already agreed to comply with the subpoenas</u>. *See, e.g.* Ex. 3.

25

26  Hewlett-Packard produced many "Process Management Plans," documents that LPL asserts are
     essential to its infringement claims. Incredibly, Tatung denied the existence of such documents
27  and refused to produce them in response to numerous requests from LPL. Tatung's failure to
     produce these documents underscores how critical it is for LPL to obtain the discovery that is
28  being sought from the third parties.

## II.    ARGUMENT

Under Rule 26(c), Tatung bears the burden of establishing that a protective order should be granted. *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1986). To meet its burden, " the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See id*, *United States v. Garrett*, 571 F.2d 1323, 1326, n. 3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"); *General Dynamics Corp. v. Selb Mfg. Corp*., 481 F.2d 1204, 1212 (8th Cir. 1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1970 & Supp. 1985). Moreover, it is clear that the harm described by the movant must be significant, not a mere trifle. *See, e.g.*, *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (refusing protective order where proponent's only argument in its favor was the broad allegations that the disclosure of certain information would "injure the bank in the industry and local community"), cert. denied sub nom. *Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Tatung has failed to meet its high burden with respect to this Motion.

### A.    The Court Should Exercise Its Discretion to Transfer Tatung's Motion to the District of Delaware

The Court has the authority to transfer Defendants' Motion for Protective Order to the District of Delaware. *See Devlin v. Transportation Communications International Union*, 2000 WL 249286, *1 (S.D.N.Y. 2000) (stating that there is ample authority for the court from which a subpoena issues to transfer any motions relating to that subpoena back to the court where the main case is pending); *In re Digital Equipment Corp*., 949 F.2d 228, 231 (8th Cir. 1991) (holding that while the court initially has exclusive jurisdiction to rule on the objections, it may in its discretion remit the matter to the court in which the action is pending).[4]

---

[4] *See also* Fed.R.Civ.P. § 26(c), advisory committee's note. The Advisory Committee's Note to Rule 26(c) (Protective Orders) explains: The subdivision recognizes the power of the court in the district where a deposition is being taken to make protective orders. .The court in the district

1    As explained above, all 23 motions filed by LPL are nearly identical. Yet, by having the

2  Motions heard in 15 or more different jurisdictions, the parties risk that inconsistent opinions will

3  be rendered. Moreover, the hearings on all of these motions will be very time consuming and will

4  further interfere with LPL's attempts to finalize discovery in the Main Case, in which depositions

5  of Tatung's witnesses are currently being taken. In light of these issues, and the other related

6  discovery issues currently pending in the Main Case as described below, a decision in this Court

7  would have to be made in a vacuum, without the benefit of entering a global decision related to

8  all 23 nearly identical motions. Indeed, this Court should not attempt to decide these issues in a

9  vacuum without the benefit of knowing the history of complex discovery disputes and facts at

10  issue between the parties in the Main case. Thus, for the reasons cited above, LPL requests that

11  the Court formally transfer this dispute back to the District of Delaware, the court where the Main

12  Case is pending, so that all 23 motions and oppositions can be heard en masse.

13    **B.    Tatung Lacks Standing to Challenge the Subpoenas**

14    Tatung does not have standing to raise any objections to LPL's Rule 45 subpoenas.

15  Rule 45(c) provides protection to persons "subject to subpoenas." Indeed, "[u]nless a party to an

16  action can make claim to some personal right or privilege in respect to the subject matter of a

17  subpoena duces tecum directed to a nonparty witness, the party to the action has no right to relief

18  under Rule 45(b) or 30(b)." *Dart Industries, Inc. v. Liquid Nitrogen Processing*, 50 F.R.D. 286,

19  291 (D. Del. 1970); *see Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985) (denying

20  motion to quash for lack of standing); *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238,

21  241 (S.D.N.Y. 2004) (denying motion to quash because no showing of personal right or

22  privilege); *Oliver B. Cannon and Son, Inc. v. Fidelity and Cas. Co. of New York*, 519 F. Supp.

23  668, 680 (D. Del. 1981) (denying motion to quash because movant failed to prove documents

24  sought were privileged). Tatung attempts to distinguish the *Dart* decision on two grounds. First,

25  Tatung argues that the motion in *Dart* was premised on Rule 45(c), rather than Rule 26(c), which

26  was relied upon by Tatung. However, the standards for protective orders under both rules is the

27

28  where the deposition is being taken may, and frequently will, remit the deponent or party to the
   court where the action is pending.

1   same. *See* Advisory Committee Notes to the 1970 Amendment to Rule 45 (the "scope of

2   discovery through a subpoena is the same as that applicable to Rule 34 and other discovery

3   rules.") Thus, Rule 45 clearly incorporates the standards set forth in Rule 26.

4       Tatung also attempts to distinguish *Dart* on the ground that the moving party in *Dart* did

5   not assert any personal privilege in the requested documents. Similarly however, in this case,

6   while Tatung has stated, in a conclusory manner, that it has a personal stake in the documents to

7   be produced, Tatung has failed to provide any particularized facts or evidence to support its

8   conclusions. Such statements are insufficient for Tatung to meet its burden in establishing that it

9   is entitled to a Protective Order. *Cipollone*, 785 F.2d at 1121. Namely, Tatung has failed to

10  explain why it would be burdensome to Tatung for a third party to produce the requested

11  information. In addition, while Tatung argues that its alleged confidential documents are stored

12  in a secure facility, Tatung fails to explain how it can assert the alleged confidentiality of such

13  information that it has voluntarily disclosed to its customers, particularly where Tatung evidently

14  has no confidentiality agreement in place to protect the information. In addition, Tatung fails to

15  explain why the Protective Order entered in the Main Case, which governs the use and disclosure

16  of confidential information, does not adequately protect the information to be produced by the

17  third parties. Indeed, by Tatung's own admission, it has already produced documents designated

18  as "Highly Sensitive Confidential" in the Main Case under the Protective Order. Yet, Tatung's

19  arguments suggest that such a course of action is not good enough for the third parties, even

20  though the Protective Order clearly applies to non-parties as well. Ex. 4. Tatung's argument that

21  LPL seeks such information "to obtain a competitive advantage over them" is unfounded,

22  inappropriate, and frankly, would not even be possible since documents marked "Highly

23  Sensitive Confidential" cannot even be disclosed to LPL and can only be seen by outside counsel.

24  *See* Ex. 4 at ¶ 2.2. LPL strongly disputes Tatung's contention that it has ever violated a

25  Protective Order in this or any other cases. Moreover, Tatung has no evidence to support its

26  contention that LPL may be in violation of the patent prosecution bar, and Tatung's accusations

27  on this point are misplaced and offensive.

28

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

1    Here, Tatung has not identified any particular harm that would necessitate a Protective

2   Order. Moreover, Tatung has no basis to object to the information sought by LPL's subpoenas

3   and, thus, does not have standing to move for a Protective Order with respect to any of LPL's

4   subpoenas. As such, Tatung has evidently filed these motions solely to delay and impede LPL's

5   discovery efforts.

6        C.    **Tatung's Motion Is Nothing More Than An Attempt to Interfere With LPL's**
             **Legitimate Third Party Discovery**

7

8    Tatung's interference with valid third party discovery is inappropriate and is nothing more

9   than an attempt to delay the third party discovery until after the March 30, 2007 discovery

10   deadline. Indeed, on March 7, 2007, LPL received a telephone message from Sensormatic, who

11   had previously agreed to produce the documents requested in the Subpoena. In that message,

12   Sensormatic stated that Tatung told Sensormatic that it planned to move for a protective order.

13   Sensormatic further expressed concern about being in the middle of the dispute between the

14   parties regarding the Subpoena. As a result, Sensormatic has not produced documents yet despite

15   its earlier agreement to do so. On March 8, 2007, LPL received correspondence from Tyco

16   Electronics Corp ("Tyco"), who LPL had also served with a Subpoena. (*See* Ex. 3.) Prior to that

17   date, Tyco had also agreed to produce documents in response to the Subpoena. In the

18   correspondence on March 8, however, Tyco stated that, "I understand that [Tatung] intends to file

19   a motion for protective order with regard to this subpoena. In light of this, Tyco will await the

20   disposition of this motion by the court before providing any material in response to the

21   subpoena." (Id.) These communications clearly show that Tatung's motions are delaying LPL's

22   legitimate discovery in this action. Because Tatung waited until now to file motions pertaining to

23   subpoenas served almost one month ago, it is also clear that Tatung is using its motions as a way

24   to prevent LPL from obtaining third party discovery prior to the March 30 deadline.

25    Tatung's decision to wait almost one month to file its motions for protective order and

26   Tatung's disruptive communications with third parties are tactics that Tatung has used before in

27   the Main Case and in at least one prior patent infringement case. In the Main Case, during the

28   jurisdictional discovery phase, "Tatung failed to appear for depositions on multiple occasions,

1    failed to produce witnesses prepared to testify on noticed and relevant topics, and failed to

2    respond to interrogatories and requests for production of documents," which forced LPL to waste

3    its resources just to prove that Tatung's products are sold in Delaware. (Ex. 5, Report &

4    Recomms. at 9 (Aug. 16, 2005) (imposing sanctions on Tatung).) Ultimately, after the Special

5    Discovery Master in the Main Case reviewed Tatung's pattern of delay and discovery abuse,

6    Tatung withdrew its jurisdictional defense. (*See generally id.*)

7        Tatung has also taken steps to disrupt third party discovery in at least one other case. *See*

8    *Safer Display Technology, Ltd. v. Tatung Co.*, 227 F.R.D. 435 (E.D. Va. 2004) (copy attached

9    hereto). In that case, represented by the same counsel as in the Main Case, Tatung engaged in

10   similar delays before it finally withdrew its jurisdictional defense. *See Safer Display*, 227 F.R.D.

11   at 437. Notably, in *Safer Display*, Tatung worked diligently to impede third party discovery by

12   contacting and attempting to dissuade third parties from producing discovery, (*see* Ex. 6 at 9-10),

13   and filing motions for protective orders for which Tatung lacked standing, (*see id.* at 10-11).

14       As Tatung is aware, all of these emergency hearings have been scheduled to occur

15   simultaneously with depositions of Tatung's witnesses. Because LPL's lead trial counsel are

16   busy taking and defending depositions this week, it appears that Tatung strategically filed these

17   requests for expedited hearing in an attempt to prevent LPL from obtaining significant and

18   relevant information it needs from the third parties or to divert LPL's focus from the Tatung

19   depositions. Tatung's continuing pattern of dilatory tactics and improper interference with LPL's

20   discovery efforts should not be allowed to continue.

21       **D.    LPL Has Been Unsuccessful In Obtaining the Discovery It Seeks From the
              Defendants, Who Have Refused to Produce the Requested Documents**

22

23       LPL needs the discovery that it seeks from the third parties because the fact discovery in

24   the Main Case will close on March 30, 2007 and because Tatung has not cooperated with LPL's

25   discovery efforts. Indeed, Tatung misrepresents the volume and the sufficiency of its document

26   production to date. Although LPL's discovery requests were served on November 29, 2005,

27   Tatung has refused to fully comply with those requests by, among other things, imposing

28   unreasonable limitations and conditions on their production. LPL filed motions to compel in the

1    Main Case that addressed issues common to all Defendants in the Main Case in September,

2    October, November, and December 2006 and in January, February, and March 2007. Most of

3    these issues have not yet been resolved and many of those unresolved issues relate directly to

4    Tatung's instant Motion for Protective Order. For instance, although Tatung has identified over

5    300 potentially infringing products, it only produced about 60 technical drawings and then

6    claimed, without explaining their calculations, that this fractional production covered as much as

7    96% of their products. Additionally, after telling LPL for months that it had produced all

8    technical documents, Tatung has only recently revealed, but not yet fully produced, additional

9    categories of critically relevant technical drawings. Tatung has informed LPL that it will

10   complete its supplemental production in April, which is well after the March 30 deadline for third

11   party discovery.

12        Tatung argues that the third parties should not be required to produce documents, in part,

13   because Tatung has objected to the scope of LPL's requests. Tatung correctly notes that the

14   Special Discovery Master in the Main Case has not yet ruled on these issues. This is precisely the

15   reason that LPL seeks discovery from the third parties. Tatung has refused to produce relevant

16   documents and the Special Discovery Master has not ruled on Tatung's objections or on LPL's

17   motions to compel that production. Notably, the subpoena itself is not limited to documents

18   relating to Tatung in the possession of the third party as the subpoena also seeks documents

19   relating to ViewSonic, another defendant in the Main case who has not objected to these

20   subpoenas. All fact discovery, including third party discovery, in the Main Case closes on

21   March 30, 2007. After that date, LPL will not be able to seek further discovery from any third

22   party. Thus, in order to compile all relevant evidence and properly prepare its case for trial, LPL

23   needs discovery from the third parties so that it can test the sufficiency and completeness of

24   Tatung's own production.

25        There have been no rulings in the Main Case that would limit LPL's ability to obtain the

26   scope of discovery that it seeks from the third parties. Indeed, contrary to Tatung's statement that

27   the Special Discovery Master's "impending ruling" will be favorable to Tatung, neither party can

28   predict in whose favor the Special Discovery Master will rule. Although Tatung resists LPL's

1   discovery in the Main Case, that resistance does not, by itself, erect roadblocks to LPL's

2   discovery from third parties. LPL properly seeks discovery from Tatung about all potentially

3   infringing products because only Tatung can provide LPL with information that would identify

4   infringing products out of Tatung's total of over 850 different products.

5           **E.      The Scope of the Subpoena is Reasonable, And In Any Event, Tatung's**
            **Objections are Misplaced**

6

7           In its Motion, Tatung argues that any discovery should be limited to the accused products.

8   This, however, is precisely why LPL issued the Subpoenas. In its Complaint, LPL identified to

9   Tatung an example of a product that LPL alleged to infringe the Patents-in-Suit. However,

10  because Tatung makes hundreds of products, most of which are sold under brand names

11  belonging to third parties, LPL has no way to know, without Tatung's assistance, which of

12  Tatung's hundreds of products use infringing technology. LPL's attempts to obtain information

13  regarding Defendants' products has been ongoing since November 2005. However, the

14  Defendants have objected to producing documents that would enable LPL to identify those

15  products, and continue to resist LPL's efforts to this day. In fact, during a hearing on March 12,

16  2007, Tatung conceded that it has not produced all such documents and that it would produce

17  additional documents in April 2007, <u>after</u> the deadline for the close of third party discovery.

18          In light of the Delaware Court's Scheduling Order, requiring that third party discovery be

19  completed by March 30, Tatung's efforts to limit the scope of LPL's subpoena to products that

20  have been accused of infringement will artificially narrow the scope of the subpoena to products

21  that are currently accused, even though that list will likely expand in April, after LPL finally

22  receives Tatung's supplemental document production.

23          In addition, Tatung's objections to the scope of the Subpoena are misplaced. Specifically,

24  objections based on burden or scope of a Subpoena should be made by the party upon whom the

25  Subpoena is served. As the burden will not be borne by Tatung, Tatung does not have standing to

26  raise that issue. To the extent that Tatung believes that the documents produced by third parties

27  are not relevant to the litigation, or exceed the bounds of admissible evidence, Tatung can raise

28  those arguments in advance of trial. *See Cook v. Rockwell Intern. Corp.*, 935 F.Supp. 1452, 1465

1  (D. Colo. 1996) ("Defendants had no standing to object to the breadth of the order [with respect

2  to third party subpoena] but were restricted to appropriate objections as to relevance and

3  admissibility before trial.") Notably, Tatung filed the Motions for Protective Order without

4  regard for the fact that several of the third parties had either already produced the requested

5  documents or agreed to produce the requested documents with objection. As the party to whom

6  the Subpoena was served has not filed a Motion for Protective Order with respect to the breadth

7  of the Subpoena, Tatung's objection on that basis should be denied.

8  **III.    CONCLUSION**

9       For the foregoing reasons, LPL requests that the Court exercise its discretion to transfer

10  the instant motion to the United States District Court for the District of Delaware. In the

11  alternative, LPL requests that the Court deny the Motion and allow LPL to proceed with

12  necessary third-party discovery.

13

14  Dated: March 14, 2007                    MCKENNA LONG & ALDRIDGE LLP

15

16                                           By:    s/Ross H. Hyslop
                                                    Ross H. Hyslop
17                                                  Attorneys for Plaintiff
                                                    L.G. PHILIPS LCD CO. LTD.
18                                                  E-mail: rhyslop@mckennalong.com

19  SD:221552811

20

21

22

23

24

25

26

27

28

# EXHIBIT L



RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
ANNE SHEA GAZA                    WILMINGTON, DELAWARE 19801                    DIRECT DIAL
(302) 651-7700                                                                 (302) 651-7539
                                                                              GAZA@RLF COM
FAX (302) 651-7701
WWW.RLF.COM

January 8, 2007

**BY E-MAIL & HAND DELIVERY**

The Honorable Vincent J Poppiti
BLANK ROME LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:    *LG Philips LCD Co , Ltd v. ViewSonic Corp , et al.,* C.A. No. 04-343-JJF

Dear Special Master Poppiti:

Defendants Tatung Company and Tatung Company of America, Inc. (collectively, the "Tatung Defendants") respectfully submit this letter brief in opposition to Plaintiff LG Philips LCD Co., Ltd.'s ("LPL") Motion to Compel Discovery Regarding Indirect Infringement and Damages.

Significant portions of LPL's Motion are premature and moot. During the parties' December 2006 meet and confers, the Tatung Defendants already agreed to produce summary sales data, including quarterly or monthly quantity and average price for each identified product that is destined for North America.[1] The Tatung Defendants also agreed to supplement numerous interrogatories and document requests to include information pertaining to the two additional Tatung products recently accused by LPL.[2] (Declaration of Valerie W Ho, ¶7)

---

[1] Because Tatung Company's sales occur in Asia and the products are shipped FOB from an Asian port, Tatung does not always know where its customers ultimately will sell the products they purchase from Tatung. Tatung in general knows that certain products are destined for North America, which includes the United States and Canada.

[2] Specifically, the Tatung Defendants agreed to supplement Interrogatories Nos. 1, 8, 9, 10, 11, 12 and Document Requests Nos 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 25, 26, 31, 32, 33, 34, 35, 38, 41, 48, 51, 52, 55, 57, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 73, 74, 75, 79, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98 and 99  (Ho Decl , ¶7).

RLF1-3102174-1

The Honorable Vincent J. Poppiti
January 8, 2007
Page 2

Because of the holidays and counsel's vacation plans, LPL was informed that the Tatung Defendants would provide supplementations in January 2007. The Tatung Defendants also assured LPL that it would receive the supplementations before any scheduled depositions of Tatung witnesses.

Apparently unsatisfied with the Tatung Defendants' reasonable attempts to resolve the parties' discovery disputes, LPL now seeks to compel a large universe of documents that pertain not only to the three accused products it has identified, but to the hundreds of products that are not accused and not at issue. For example, for each of the hundreds of Tatung products that have not been accused by LPL, LPL is demanding that Tatung produce "[a]ll orders, invoices, bills of sales, and bills of lading since December 1, 2002 . . . ." (*See* Request No. 10.) LPL also is seeking "[a]ll documents concerning transactions since January 1, 2002 between you [the Tatung Defendants] and any subsidiary, customer, distributor, reseller, and/or retailer in the U.S. regarding any types of visual display products . . . ." (*See* Request No. 58.) LPL's demand for every single piece of paper relating to every single Tatung product is extremely overbroad and burdensome, especially when most of these products have not been accused of infringement by LPL.

LPL claims that it needs this information in order to determine indirect infringement. However, LPL has not shown why such information is relevant to any claims or defenses in this case or is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. Proc. 26(b); *see also* Adv. Comm. Notes regarding 2000 Amendment ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."). It is well-established that determining whether a patent claim has been infringed involves a two step analysis. First, the claim must be properly construed by the Court to determine its scope and meaning. Second, the claim, as construed, must be compared to the accused device or process. *PC Connector Solutions LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). Therefore, infringement analysis focuses on the products or processes and the claims of the patents. The Tatung Defendants already have produced and will produce technical documents that depict the components that make up its products as well as the assembly methods used. Therefore, LPL has the technical information needed to compare Tatung's products to the asserted claims.[3] Yet, it has thus far only accused three Tatung products out of hundreds.

---

[3] During the parties' meet and confers, the Tatung Defendants repeatedly asked LPL what specific technical information it claims it still needs it order to develop its infringement allegations with respect to all of the identified products. LPL merely responded that it is entitled to every single Tatung document.

The Honorable Vincent J. Poppiti
January 8, 2007
Page 3

　　　　Moreover, there can be no indirect infringement without direct infringement. "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, . . . and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minnesota Mining and Manufacturing Co. v. Chemque, Inc*, 303 F.3d 1294, 1304 (Fed. Cir. 2002). In other words, in order for there to be indirect infringement, there must be direct infringement and an infringing product. Here, there is no allegation of direct infringement with respect to the hundreds of products for which LPL seeks thousands of documents. Because these products have not been accused, Tatung cannot be liable for indirect infringement with respect to these products. Until LPL provides a definitive list of accused products, it is not entitled to the broad categories of documents it seeks in this Motion.

　　　　Accordingly, the Tatung Defendants respectfully request that the Court deny LPL's Motion to Compel in its entirety.

　　　　　　　　　　　　　　　　　　Respectfully,

　　　　　　　　　　　　　　　　　　Anne Shea Gaza
　　　　　　　　　　　　　　　　　　(#4093)

ASG/afg
cc:　　Clerk of the Court (By Electronic Filing)
　　　　Richard Kirk, Esquire (via electronic mail)
　　　　Cormac T. Connor, Esquire (via electronic mail)
　　　　Lora Brzezynski, Esquire (via electronic mail)
　　　　Mark Krietzman, Esquire (via electronic mail)
　　　　Scott R. Miller, Esquire (via electronic mail)
　　　　Jeffrey B. Bove, Esquire (via electronic mail)