# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL
(302) 651-7509
COTTRELL@RLF.COM

March 30, 2007

**BY E-MAIL & HAND DELIVERY**
The Honorable Vincent J. Poppiti
BLANK ROME LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*, C.A. No. 04-343-JJF

Dear Special Master Poppiti:

Defendant Tatung Company ("Tatung") hereby moves to compel Plaintiff LG. Philips LCD Co., Ltd. ("LPL") to supplement its responses to Tatung's First and Second Sets of Requests for Production and to produce all responsive documents. Specifically, Tatung seeks all documents responsive to Requests 5-6, 8-10, 12, 15, 36-37, 39, 41-42, 44-49, 52-56, 58-59, 64-67, 69-70, 72, 74, 76, 79-80, 84, 88, 96, 108, 112-113, 114-116, 118-120, 122, 124, 135-137, 139, and 150-152.[1]

**A.   Tatung Recently Discovered That LPL May Be Withholding Numerous Responsive Documents.**

During the depositions of LPL's inventors and Rule 30(b)(6) witnesses which took place the weeks of February 26 and March 5, 2007, Tatung learned that LPL may have additional responsive documents that have not been produced. For example, at the last minute, LPL produced some additional documents at the depositions of Mr. Kim and Mr. Cho. Because the resumed deposition of Mr. Kim and the deposition of Mr. Bang were scheduled to begin the third week of March, Tatung sent LPL a letter on March 15, 2007 asking LPL to 1) confirm that it has performed a diligent search for responsive documents; 2) confirm that all responsive documents that exist have been produced or identify a date by which they will be produced; and 3) with respect to requests for which no responsive documents have been located, to supplement its written responses to indicate that no documents exist. After delaying for over a week, LPL finally met and conferred with Tatung regarding its document production on March 27-29. See Exs. B-H.

Almost all of LPL's written responses state that "[s]ubject to and without waiving these objections, *LPL will produce non-privileged, responsive, and relevant documents, to the extent such documents exist.*" (Emphasis added.) However, during the meet and confers, when asked whether LPL withheld any responsive documents based on LPL's numerous objections, LPL was equivocal, stating that

---

[1] Tatung agreed to narrow many of the requests as stated in Mr. Hassid's March 29, 2007 email to Mr. Connor, which is attached hereto as Ex. A.

RLF1-3133558-1

The Honorable Vincent J. Poppiti
March 30, 2007
Page 2

it would have to investigate the issue. It became apparent during the course of the parties' discussions that LPL in fact may have withheld numerous documents based on boilerplate objections (e.g., that the requests are vague, overly broad, burdensome and seek privileged materials). See Exs. I-L, Ex. A.

In addition, when it was pointed out to LPL that not a single document had been produced in response to many requests for which LPL *had agreed to produce documents if they existed*, LPL again was equivocal, stating that it did not know whether certain categories of documents exist and would have to investigate. Tatung asked LPL to identify at least the requests for which there are no responsive documents so that it would not have to waste the parties' and the Special Master's time by moving to compel production of non-existing documents. LPL, however, refused to provide such confirmation during the meet and confers. As a result, Tatung has no choice but to move to compel on all of the requests set forth above. See Ex. A. Of course, Tatung is willing to continue discussing these issues between now (the deadline for filing motions) and the hearing on April 13.

**B.    LPL's Equivocal Responses Are Improper.**

LPL's equivocal responses are improper because they do not provide any insight into whether LPL has performed a diligent search for documents, whether LPL has produced all responsive documents, and whether responsive documents even exist. See *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 1995 WL 389822 *7 (N.D. Ill. 1995) (finding party's statement that it would produce "responsive, relevant non-privileged documents" to be "wholly inadequate," because "from reading [the] responses, it was impossible for [the propounding party] to know... which documents, if any, [the responding party] agreed to produce and which it was withholding as privileged."); *Bob Barker Co., v. Ferguson Safety Products, Inc.*, 2006 WL 648674 *4 (N.D. Cal. 2006) (finding that because defendant's responses were "too ambiguous to permit [plaintiff] or the Court to determine the extent to which [defendant] may be withholding responsive documents based on its other objections rather than asserting that no responsive documents exist," the court held that defendant "must either produce all documents responsive to this request (as limited by this order), or serve a further response plainly and unequivocally stating that no documents exist in its possession, custody, or control that are responsive to that specific request.").

**C.    LPL Should Be Required To Supplement Its Responses And Production For Requests That Seek Information Relating To The Patents-In-Suit.**

The requests at issue seek information that is directly relevant to this case and is reasonably calculated to lead to the discovery of admissible evidence. For example, Requests 5-6, 8-10, 12, 15, 44-49, 76, 84, 96, 116, 118-120, 135-137, 139, and 150-152 seek information regarding the Patents-in-Suit and the invention claimed, including communications, drawings, notebooks, prototypes, reports, diaries, calendars, memos, marketing plans, publications and press releases that relate to the Patents-in-Suit and/or have been prepared by the inventors. LPL has produced little to no documents in response to these requests.

The Honorable Vincent J. Poppiti
March 30, 2007
Page 3

**D.    LPL Should Be Required To Supplement Its Responses And Production For Requests Directed To Validity And Enforceability Of The Patents-In-Suit.**

Requests 37, 39, 41-42, 54, 80, 114-115, 122, and 124 seek information regarding the validity of the Patents-in-Suit, including prior art that may be in LPL's possession. For example, Tatung recently discovered that the 500LC monitor made by LPL's parent company, LG. Electronics, Inc. ("LGE"), may be prior art to the Patents-in-Suit. Tatung has asked LPL to produce sales and technical documents relating to the 500LC and the LCD module used in the 500LC (which presumably was made by LPL or its predecessor). Tatung believes these documents may show that the 500LC was on sale and in public use in the United States prior to the critical date. LPL has refused to produce these documents or any other documents responsive to the above requests.

Requests 108, 112-113 seek joint venture and technology sharing agreements which may directly impact LPL's standing to sue. Tatung believes that there may be joint venture and technology sharing agreements between LPL and third parties that may cover the purported invention in this case. For example, in the California action involving LPL's so-called "Side-Mount Patents," the Court held that LPL had no standing to sue under those patents and had never owned the invention claimed because LGE had assigned those rights to another company (Digital Equipment Corporation) pursuant to a joint venture agreement.

**E.    LPL Should Be Required To Supplement Its Responses And Production For Requests Directed To Its Claims Against Tatung.**

Requests 52, 53, 55-56, and 58-59 seek documents relating to Tatung's products and Tatung's alleged infringement. LPL has produced little to no documents in response to these requests.

**F.    LPL should Be Required To Supplement Its Responses And Production For Requests Directed To Its Claim For A Reasonable Royalty.**

Requests 64-67, 69-70, 72, 74, and 79 all seek documents relating to LPL's claim for a reasonable royalty. While LPL has confirmed that it has produced all license agreements it intends to rely on at trial (none of which pertain to the Patents-in-Suit), LPL has refused to produce documents relating to the license agreements, such as negotiations regarding the licenses, memos or other communications regarding LPL's decision to enter into the licenses, the royalties paid, and the products sold under the licenses. In short, LPL wishes to rely on the royalty amounts set forth in the license agreements but refuses to produce any documents showing the circumstances surrounding those licenses. These documents are relevant under the well-established *Georgia Pacific* factors for determining a reasonable royalty, including factors 1, 3, 4, 5, 8, and 12. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Accordingly, Tatung respectfully requests that the Court grant its motion to compel.

The Honorable Vincent J. Poppiti
March 30, 2007
Page 4

Respectfully,

Frederick L. Cottrell, III (#2555)

FLC,III/afg

cc: Clerk of the Court (By Electronic Filing)
    Richard Kirk, Esquire (via electronic mail)
    Cormac T. Connor, Esquire (via electronic mail)
    Lora Brzezynski, Esquire (via electronic mail)
    Mark Krietzman, Esquire (via electronic mail)
    Scott R. Miller, Esquire (via electronic mail)
    Jeffrey B. Bove, Esquire (via electronic mail)
    Tracy Roman, Esquire (via electronic mail)