# EXHIBIT A

### Ho, Valerie W. (Shld-LA-LT)

| | |
|---|---|
| **From:** | Hassid, Steve (Assoc-LA-IP) |
| **Sent:** | Thursday, March 29, 2007 4:17 PM |
| **To:** | 'cconnor@mckennalong com' |
| **Cc:** | 'rkirk@bayardfirm com'; 'astitzer@bayardfirm com'; 'gbono@mckennalong.com'; 'cchristenson@mckennalong.com'; 'rambrozy@mckennalong com'; 'sklevens@mckennalong com'; 'jbove@cblh com'; 'jheisman@cblh com'; 'jmason@cblh com'; 'smiller@cblh com'; 'jherr@cblh.com'; 'troman@raskinpeter com'; 'cottrell@rlf.com'; 'gaza@rlf com'; 'lees@rlf com'; Merideth, Frank (Shld-LA-LT); Krietzman, Mark H (Shld-LA-IP); Ho, Valerie W. (Shld-LA-LT); Bialas, Monika (Secy-LA-IP); 'Jill J Herr'; 'lbrzezynski@mckennalong com' |
| **Subject:** | Confirmation of Meet and Confer |

Cormac,

I am writing to confirm our meet and confer discussions this week regarding the discovery issues raised in my letters of March 15, 2007 and March 21, 2007.

Even though LPL has no basis to refuse to permit an inspection of the alleged Tatung products in its possession, and even though we offered to schedule the inspection after the depositions in mid-April in an effort to accommodate LPL's schedule, LPL confirmed today that it will not agree to such an inspection Accordingly, we have no choice but to bring this issue before the Special Master.

During the meet and confers, we learned that LPL might be withholding numerous documents based on meritless objections Most of LPL's responses to Tatung's document requests state that LPL will produce responsive, non-privileged documents to the extent the documents exist and can be located These equivocal responses do not provide any insight into whether LPL has in fact performed a diligent search for all responsive documents, whether LPL has produced all responsive documents, and whether responsive documents even exist. We identified numerous categories for which we have received little to no responsive documents despite LPL's statement in its written responses that responsive documents would be produced. With limited exceptions which I have noted below, during our meet and confer LPL was not able to identify whether any responsive documents have been produced and in the limited instances where LPL indicated it believed responsive documents have been produced, most of the time it was unable to provide bates number for those alleged productions With respect to almost every request, you indicated that you would have to check with your client to determine whether 1) additional documents exist; 2) additional documents will be produced; and 3) if documents (or what documents) were being withheld in light of your objections. You also refused to provide a date by which LPL will supplement its responses to the document requests to indicate whether responsive documents exist and have been produced

On March 27, we discussed, in detail, Tatung Request Nos 5, 6, 8, 9, 10, 12, 15, 18, 19, 25, 28, and 36

For all of the requests below, Tatung agreed to limit these requests as indicated if LPL agreed to specifically identify and produce responsive documents in an expedited fashion

For requests 8 and 10, Tatung agreed to limit the requests to documents and things related to "mounting technologies"

For request 12, Tatung agreed to limit the request to all documents and things that constitute (instead of "relate to") an embodiment of any of the patents-in-suit

For request 15, Tatung agreed to limit the request to all documents and things that constitute (instead of "relate to") an embodiment of any of the patents-in-suit

For request 18, Tatung agreed to limit the request to all published materials that are about (instead of "related to") any invention.. " You indicated LPL produced bates ranges 08371-09245, 11781-118640. 11409-11413 and 11775-11860 in response to request 18 and that production represents all the responsive documents LPL could find

For request 25, you said LPL produced bates ranges 11409-11413

For request 36, Tatung agreed to limit the request to documents.

Generally and with respect to other request raised in my letter of March 15, 2007, you agree to look into LPL's production of correspondence regarding the patents in suit, organizational charts for all of LPL's predecessors, inventor notebooks and disclosure documents regarding one or more of the patents in suit and foreign applications based on or related to one or more of the patents in suit.

On March 28, we discussed, in detail, Tatung Request Nos 37, 39, 41, 42, 44-57, 58, 59, 62-67, 69-72, 74-84, 88 and 96

For requests 41 and 42, we clarified that these requests include documents (technical and sales data) relating to the 500LC and the LCD module used in the 500LC.

For request 44, you indicated that this request was overly broad because it seeks "a ll documents." We disagree

For request 45, you indicated that there might be documents that LPL is withholding based on its objections even though LPL agreed to produce responsive documents.

For request 47, you noted that LPL has produced invention disclosure and PTO related documents  We discussed numerous other types of documents that we believe are responsive to this request but have not been produced  You indicated that you would check with your client and get back to us.

For request 48, Tatung agreed to limit the request to "mounting technologies" and the "patents-in-suit." You indicated that you could not see how the documents we requested were relevant. We pointed out that, among other reasons, they are relevant because they are evidence of the various Georgia-Pacific factors.

For request 49, contrary to your previous statement, you indicated that LPL cannot confirm that all responsive documents have been produced.

For request 51, the parties agreed that at least a portion of the documents that are responsive to this request are the subject of ViewSonic's pending motion in front of the Special Master. LPL agreed to produced all non-privileged responsive documents in response to this request if the Special Master orders LPL to produce responsive documents in response to ViewSonic's motion on this issue

For request 52, Tatung agreed to limit and clarify this request as directed to documents containing communications regarding Tatung's alleged infringement without any limitation on when those documents were created.

For request 53, you confirmed that you were not aware of whether or not LPL has produced anything in response to this request

For request 54, you indicated that you will check with your client and produce anything that has been overlooked

For request 55, you indicated that you will check with your client and produce anything that has been overlooked.

For request 56, we agreed to limit the request to three categories:
  1) Confidential responsive documents produced in other cases that LPL used in the present case.
  2) Non-confidential responsive documents produced in other cases that LPL used in the present case and;
  3) Responsive document that are independently within LPL's possession.

You indicated LPL does not have any documents in response to category 1, that you would have to check with your client regarding category 2 and that you did not see the relevance of category 3  We agreed to disagree regarding category 3

For request 58, you indicated LPL will confirm that the client does not have any responsive, non-privileged documents  We clarified that we believe the request includes opinions created by third parties regarding alleged

3/29/2007

infringement or invalidity of the patents-in-suit. You indicated you would check with your client and get back to us as soon as possible.

For request 59, we expressed concern that LPL's production was insufficient because, for example, non-privileged documents regarding Mr. Bohannon's work was not produced. You indicated that expert discovery has not yet begun and that Mr. Bohannon's notes and work product would be produced at a later time. You also indicated that all documents relating to work performed by Mr. Bohannon during the preliminary injunction proceedings have been produced.

For request 63, you represented that LPL has produced all licensing agreements that it intends to rely on at trial.

For request 64, we noted that we believe LPL produced little to no documents in response to this request. You indicated LPL produced documents, subject to its objections, to the extent that such documents exist, which is to say, you provided us with no useful information at all.

For request 67, the parties acknowledged that we previously met-and-conferred regarding this request. Tatung agreed to limit this request to sales and distribution agreements, purchase orders and invoices for the products covered by the license agreements upon which LPL intends to rely.

For request 71, you represented that LPL has produced all licensing agreements that it intends to rely on at trial.

For request 72, Tatung agreed to limit the request to documents relating to royalties paid on licenses produced by LPL. You indicated LPL believes these documents are not relevant.

For request 76, you indicated you will let us know if there are any responsive documents that were overlooked.

For request 79, we clarified that the request included documents which compare and discuss rear mount technology with other mounting technologies. Tatung agreed to limit the request to documents that discuss acceptable non-infringing products.

For request 80, you agreed to consider producing sales summaries for the LC 500 which include, among other things, the date of sale, name of customer, price and quantity. In addition, with respect to other "rear mountable products," we agreed that responsive documents should be produced if Viewsonic's motion on this issue is granted.

For request 81, we agreed that at least part of the request is covered by the pending ViewSonic motion to compel. LPL agreed to produce all non-privileged responsive documents in response to this request if Viewsonic's motion on this issue is granted.

For request 84, you indicated you will check with your client for responsive documents.

For request 88, you indicated you will check with your client for additional responsive documents.

For request 96, you indicated you will check with your client for additional responsive documents.

Today, we discussed in detail Tatung's request Nos. 105, 108, 112-114, 116, 118-120, 122, 124, 135, 136, 137, 139, 150, 151, 152 and 170.

Despite your agreement yesterday to produce sales summaries for the LC 500 in response to request 80, you indicated today that LPL believes the LC 500 is not an LPL product. You indicated that the related issue of what LPL must produce, including documents from related entities like LGE, is in front of the Special Master.

For request No. 105, you referenced your letter of November 17, 2006. Tatung agreed to further limit this request to "mounting technologies" and clarified, based on your questions, that the request is related to patent applications that issued into the patents-in-suit. You indicated LPL produced an agreement with DEC and licensing agreements in response to this request.

For request Nos. 108, 112, and 113, you referenced your letter of November 17, 2006. You indicated LPL

3/29/2007

produced an agreement with DEC and licensing agreements in response to these requests

For request Nos. 114 and 116, you indicated LPL produced patent prosecution files, a list of rear-mountable products (bates ranges 11775-11780), some licensing agreements that might be responsive to this requests and documents obtained by third parties. You indicated that this request involved issues related to claim construction and therefore LPL might have withheld responsive documents.

For request Nos. 118-120, the parties agreed that at least a portion of these requests are covered by ViewSonic's pending discovery motions.

For request Nos. 119, 120 and 122, Tatung agreed to limit the request to the patents-in-suit.

For request No. 124, you indicated LPL produced prosecution histories.

For request No. 135, you indicated LPL produced bill of material summaries and referenced in your letter of November 17, 2006. You stated that "parts of an LCD module" was unclear and referenced LPL objections as stated in your response to Tatung's requests and your letter of November 17, 2006. Upon trying to clarify these terms, you made it clear that LPL believes this request sought information that was not relevant to any claim or defense of Tatung and therefore was not relevant. We disagreed and agreed to limit the request to the time period of January 1, 1997 to December 31, 1998.

For request No. 136, you referenced your letter of November 17, 2006 and indicated LPL produced bills of material summaries. You reiterated that LPL does not sell products that practice the inventions of the patents-in-suit.

For request No. 137, you indicated LPL produced bill of materials summaries.

For request No. 139, Tatung agreed to limit the request to the time period of January 1, 1997 to December 31, 1998. You indicated LPL believes that Tatung should have brought up any issue with LPL's objections or production during the hearing with the Special Master on December 28, 2006, which you alleged raised almost identical issues.

For request No. 150, you indicated LPL believes there are no responsive documents except possibly the bill of materials summary. Tatung agreed to limit the request in time to May 2004.

For request Nos. 151 and 152, you indicated LPL produced VESA standard related documents. We clarified that this request is not limited to external communications and includes communication from LPL employees to LPL employees. Tatung agreed to limit the request to January 1, 1997 to May 2004.

For request No. 170, you indicated that all responsive document have been produced or will be produced by the expert disclosure deadline.

Sincerely,

Steve

Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
hassids@gtlaw.com
www.gtlaw.com

*Office Located at 1601 Cloverfield Blvd., Suite 2050 North

(310) 586-7703 (Direct)
(310) 586-7700 (Main)
(310) 586-0203 (Fax)

3/29/2007

Amsterdam • Albany • Atlanta • Boca Raton • Boston • Chicago • Dallas • Denver • Fort Lauderdale • Los Angeles • Miami • New Jersey • New York • Orange County • Orlando • Philadelphia • Phoenix • Silicon Valley • Tallahassee • Tysons Corner • Washington D C • West Palm Beach • Wilmington • Zurich

3/29/2007