# EXHIBIT F

# Greenberg Traurig

Steve Hassid
Tel 310 586 7700
Fax 310.586.7800
hassids@gtlaw.com

March 21, 2007

Via E-Mail and U.S. Mail

Cormac T. Connor
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation et al.*
      **U.S. District Court Case No. 04-343 JJF**

Dear Cormac:

    I write in response to your March 19, 2007 letter. We deny your baseless accusations that Tatung's request for a meet and confer to discuss LPL's inadequate document production and request to inspect alleged Tatung products in LPL's possession was intended to "waste time or distract LPL from preparing to depose Tatung's witnesses." LPL must satisfy its discovery obligations. Being busy "preparing to depose Tatung's witnesses" does not excuse LPL's obligation to do so.

    Contrary to your misguided contentions, we in fact have reviewed LPL's production, which as of this date is so wholly deficient. It would be nearly impossible to identify all the deficiencies. Nonetheless, in an effort to provide additional clarity, I am providing the following non-exhaustive list of categories, which are covered by the Requests I identified in my March 15, 2007 letter. LPL has produced little to no documents in response to those Requests.

<u>Categories</u>
1. Correspondence regarding the patents-in-suit.
2. Any product suspected or believed to infringe the patents-in-suit.
3. Embodiments of the patents-in-suit.
4. Searches, investigations, or evaluations of materials that relate to any inventions described or claimed in the patents-in-suit.
5. Evaluation, opinion as to novelty, patentability, validity, enforceability or scope of any of the patents-in-suit.
6. First sale or offer for sale of any invention disclosed, described or claimed in any of the patents-in-suit, including but not limited to, all advertising, sales, promotional, and technical material related to such sale or offer for sale.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS'
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES
MIAMI
MILAN'
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME'
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO'
TYSONS CORNER
WASHINGTON D.C.
WEST PALM BEACH
ZURICH

LA 126752487v3 3/21/2007   Attorneys at Law | Los Angeles Office | 2450 Colorado Avenue | Suite 400E | Santa Monica, CA 90404
Tel 310 586 7700 | Fax 310 586 7800

www.gtlaw.com

Cormac T. Connor
March 21, 2006
Page 2

---

7. Public use, on sale activity, commercial exploitation, experimental use of the inventions described or claimed in the patents-in-suit.
8. Any product that embodies any claim of any of the patents-in-suit.
9. Due diligence exercised in reducing to practice the alleged invention claimed in the patents-in-suit.
10. Documents authored by any inventor of the patents-in-suit.
11. Any mode contemplated by any inventor for carrying out any alleged invention disclosed, described or claimed in any of the patents-in-suit.
12. Research projects involving the development of the any alleged invention disclosed, described or claimed in an of the patents-in-suit.
14. Products that are believed to be covered by any claim of any of the patents-in-suit.
15. Secondary indicia of non-obviousness.
16. Any problem allegedly solved by any alleged invention disclosed, described or claimed in any of the patents-in-suit.
17. How any alleged invention disclosed, described or claimed in any of the patents-in-suit has departed from the accepted principals in the industry.
18. Person of ordinary skill in the art to which any alleged invention disclosed, described or claimed in any of the patents-in-suit.
19. Making or use, in this or another country, any alleged invention disclosed, described, or claimed in the patents-in-suit.
20. Commercial exploitation by others of any alleged invention disclosed, described or claimed in the patents-in-suit.
21. Search results, studies or analysis to determine the patentability, validity, enforceability, enforceability, or enforceable scope of any of the claim of any of the patents-in-suit.
22. Whether any alleged invention disclosed, described or claimed in any of the patents-in-suit has been copied by others.
23. Articles and technical documents authored by LPL, that relate to the subject matter described, disclosed, or claimed in any of the patents-in-suit.
24. Communications with customers regarding products incorporating LPL's technology.
27. All drawings and things, including without limitation drawings, schematics, diagrams, and block diagrams that show the structure, function or operation of all products ever made by, or for, or sold by, or for LGP that embody or use any invention disclosed, described, or claimed in any of the patents-in-suit.
28. Advertisements, brochures, or sales or promotional literature for "FPD" products that have ever been made by or for or sold by or for any competitor of LPL.
29. Any acceptable non-infringing "FPD" products.
30. Technical and assembly information for each and every "FPD" product LPL sold prior to the earliest priority date for any of the patents-in-suit.

Cormac T. Connor
March 21, 2006
Page 3

---

    31. Acquisition of all "FPD" products, including but not limited to the acquisition of LCD modules made by Toshiba or other LCD module suppliers.
    32. Any "FPD" products exhibited in public prior to the date of conception of any alleged invention disclosed, described, or claimed by any of the patents-in-suit.
    33. Documents prepared, reviewed, edited, responded to or received that relate to LGP's and it predecessors' business proposals, including but not limited to, requests for proposals, proposals, prototypes, designs, or projects for Liquid Crystal Displays or products that contain a Liquid Crystal Display which pre-date the filing of the patents in suit
    34. Flat Panel Display Products that use and/or practice any alleged invention disclosed and/or claimed in the Patents-In-Suit.
    35. Documents from January 1, 1997 to the present referring to, relating to, or evidencing instructions, directions, or information prepared and/or distributed by or on behalf of LPL relating to mounting an LCD module on, to or into an external case of a data processing device.
    36. Documents from January 1, 1997 to the present referring to, relating to, or evidencing instructions, directions, or information prepared and/or distributed by or on behalf of LPL relating to attaching a flat panel display device on, to, or into an external case of a Flat Panel Display Product, including without limitation manuals, instructions, specifications, drawings, service documents.
    37. Documents from January 1, 1997 to the present referring to, relating to, or evidencing mounting flat panel display devices other than by the "front mounting method," as that term is disclosed in the Patents-in-Suit.
    38. Joint venture agreements
    39. Documents that reference rear mounting and/or rear mountable.

    Accordingly, we once again request a meeting of counsel to discuss LPL's deficient production. If all responsive documents have been produced for some of the requests identified in my March 15, 2007 letter, please immediately identify those requests and confirm that all responsive documents have been produced. If LPL has no responsive documents, please immediately supplement your responses to the requests for production to indicate that LPL has conducted a diligent search and no responsive documents have been located.

    With regard to our request to inspect all alleged Tatung products in LPL's possession, custody or control, we are entitled to inspect the products to confirm that they are made by Tatung. In addition, we are entitled to examine the products in order to form our own analysis regarding the products. Contrary to your statement that "Tatung's request is designed to probe into LPL's attorneys' thought processes and mental impressions...," the products themselves are not in any way privileged or protected by the work product doctrine. Moreover, LPL's attorneys' thought processes and mental impressions will not in any way be divulged by virtue of our examination and disassembly of the products. Tatung is not asking LPL or its attorneys

Cormac T. Connor
March 21, 2006
Page 4

---

to do anything during the inspection. If LPL refuses to allow Tatung to inspect the alleged Tatung products, Tatung will bring this issue to the attention of the Special Master. Tatung also will move in limine to exclude the products at trial.

We are available for a teleconference on Thursday and Friday March 22th and 23th, 2007 from 9:00 am to 5:00 pm PST. Please advise regarding your availability. If we do not hear from you, we will immediately raise this issue with the Special Master.

Sincerely,

Steve P. Hassid

cc:   Scott Miller (via e-mail)
      Frank Merideth (via e-mail)
      Richard Kirk, Esq. (via email)
      Jeffrey Bove, Esq. (via email)
      Mark Krietzman, Esq. (via email)
      Frederick L. Cottrell, III, Esq. (via email)
      Anne Shea Gaza, Esq. (via email)
      Cass Christenson (via email)
      Lora Brzezynski (via email)
      James Heisman (via email)
      Tracy Roman (via email)
      Shari Klevins (via email)
      Rel Ambrozy (via email)
      Manuel C. Nelson (via email)
      Allan W. Jansen (via email)