Opp 1 exh C.txt

page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
    PHILLIPS, L.G., LCD CO., LTD,  )
 4                                 )
              Plaintiffs,          )  C.A. No. 04-343(JJF)
 5                                 )
    v.                             )
 6                                 )
    TATUNG CO., TATUNG COMPANY OF  )
 7  AMERICA, INC., and VIEWSONIC   )
    CORPORATION,                   )
 8                                 )
              Defendants.          )
 9
10           Hearing of above matter taken pursuant to
    notice before Renee A. Meyers, Registered Professional
11  Reporter and Notary Public, in the law offices of BLANK
    ROME, LLP, 1201 North Market Street, Wilmington,
12  Delaware, on Wednesday, February 28, 2007, beginning at
    approximately 6:05 p.m., there being present:
13  BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER
14  APPEARANCES:
15           THE BAYARD FIRM
             RICHARD D. KIRK, ESQ.
16             222 Delaware Avenue, Suite 900
               Wilmington, Delaware  19899
17             for Plaintiffs
18
19
20                      CORBETT & WILCOX
21             Registered Professional Reporters
        230 North Market Street    Wilmington, DE 19899
22                      (302) 571-0510
                    www.corbettreporting.com
23           Corbett & Wilcox is not affiliated
             with Wilcox & Fetzer, Court Reporters
24
```

☐page 2

```
 1  APPEARANCES (Continued):
 2           MCKENNA, LONG & ALDRIDGE, LLP
             CASS W. CHRISTENSON, ESQ.
 3           REL S. AMBROZY, ESQ.
             DEREK AUITO, ESQ.
 4           GASPARE BONO, ESQ.
               1900 K Street, N.W.
 5             Washington, D.C.  20006
               for Plaintiffs
 6
             RICHARDS LAYTON & FINGER
 7           FREDERICK L. COTTRELL, III, ESQ.
             ANNE SHEA GAZA, ESQ.
 8             One Rodney Square
               Wilmington, Delaware  19801
 9             for Defendant Tatung Co.
10           GREENBERG TRAURIG LLP
             FRANK MERIDETH, ESQ.
11           VALERIE HO, ESQ.
             MARK KREISMAN, ESQ.
```

Page 1

Opp 1 exh C.txt

```
12        AL JANSEN, ESQ.
             2450 Colorado Avenue, Suite 400E
13           Santa Monica, California  90404
             for Defendant Tatung Company of America, Inc.
14
          CONNOLLY BOVE LODGE & HUTZ LLP
15        JAMES D. HEISMAN, ESQ.
             1007 North Orange Street
16           Wilmington, Delaware  19899
             for Defendant Viewsonic Corporation
17
          BINGHAM McCUTCHEN LLP
18        SCOTT R. MILLER, ESQ.
          TRACY ROMAN, ESQ.
19        MANUEL NELSON, ESQ.
             355 South Grand Avenue
20           Los Angeles, California  90071-3106
             for Defendant ViewSonic Corporation
21
22
23
24
```
☐page 3

```
 1             SPECIAL MASTER POPPITI:  The way we left
 2   it the last time we were on the teleconference, as I
 3   understood it, there were some questions that, perhaps,
 4   or issues that remained open with respect to deposition
 5   scheduling.  I am not aware of any other agenda items for
 6   this evening other than the document that I received by
 7   email from Mr. Cottrell, with today's date, and I
 8   received that document and advised everyone, by return
 9   email, that it should be the subject of some discussion
10   this evening.
11             MR. AMBROZY:  Your Honor, this is Rel
12   Ambrozy for LPL in Washington.  The other topic we wanted
13   to address with Your Honor is a motion, and we addressed
14   this last time, there was a motion filed by Tatung
15   defendants in regard to the protective order, and we did
16   not agree on a date for when LPL would respond to that
17   and then it would be argued before Your Honor.  And then
18   tied into that is Tatung's refusal to produce anymore
19   discovery until that issue was decided.
20             So, we wanted touch on that, as it
21   pertains to categorization, which was somewhat left
22   untouched when we finished last time.
23             SPECIAL MASTER POPPITI:  If that's the
24   firms item in que before we get to issues involving
```
☐page 4

```
 1   deposition, then let's do that.  And I don't think I need
 2   to, unless you tell me that I should, I did not bring
 3   into the conference room where I am sitting the paper
 4   dealing with those issues.  I think I remember it clearly
 5   enough not to have to go get them, but if it becomes
 6   important to get them, I just need a moment to go back
 7   down the hall again.
 8             MR. AMBROZY:  That's okay.
 9             SPECIAL MASTER POPPITI:  Go ahead,
10   please.
11             MR. MERIDETH:  That is Frank Merideth on
12   behalf of the Tatung defendants.  I believe that the
13   motion has not been correctly characterized.  That is not
```
Page 2

Opp 1 exh C.txt
14  the relief that we seek.  We are not suspending any
15  production of documents that have been ordered to be
16  produced.  Our motion related to the ending motions that
17  relate to whether or not Tatung defendants should be
18  required to produce documentation respecting non-accused
19  products.
20              SPECIAL MASTER POPPITI:  I understand.
21              MR. MERIDETH:  And we have suggested
22  that until this issue with respect to the protective
23  order, and particularly the use of confidential documents
24  by patent prosecutors be resolved until, at any time, if
page 5

1   we are going to be required to produce information about
2   non-accused products, that we at least have the minimal
3   protection of producing it only to the litigation team
4   and not the patent prosecution team.
5              SPECIAL MASTER POPPITI:  Did someone
6   just join?
7              MR. KREISMAN:  Mark Kreisman from
8   Greenberg Traurig.
9              SPECIAL MASTER POPPITI:  Thank you, sir.
10             MR. KREISMAN:  Good afternoon.
11             SPECIAL MASTER POPPITI:  Good afternoon.
12             MR. MERIDETH:  We are not refusing to
13  produce this document.  We are saying that that needs to
14  be taken into account with regard to the pending motions
15  to compel the production of documents.
16             SPECIAL MASTER POPPITI:  I think what I
17  was hearing, then, was the question as to when there
18  should be a responsive document to the most recent -- to
19  your most recent application to take that issue into
20  consideration in deciding the underlying motion.  And
21  what I simply need from LPL is:  Tell me when, I'd like
22  it sooner than later, because I would want to be getting
23  out something on the underlying motion not later than the
24  end of next week.
page 6

1              MR. AMBROZY:  And just to be clear, Your
2   Honor, which underlying motion?
3              SPECIAL MASTER POPPITI:  This is the
4   motion that deals with the issue as to whether there
5   should be production beyond the accused products;
6   correct, Mr. Merideth?
7              MR. MERIDETH:  Yes, sir.
8              MR. AMBROZY:  Your Honor --
9              SPECIAL MASTER POPPITI:  Again, I don't
10  have, for purposes of describing what it looks like, the
11  trolly of documents that I have to work from in the room
12  with me at this point so I can't tell you the date of
13  that motion.
14             MR. AMBROZY:  I believe that was January
15  24, Your Honor.  The first motion that LPL filed to
16  compel the additional documents was January 24th.
17             SPECIAL MASTER POPPITI:  So the question
18  is when should the issue be considered joined by virtue
19  of a last filing, and what I am suggesting to you is I
20  would like that issue to be joined as soon as possible so
21  that I can turn to what will need to be a document as
22  opposed to anything simply on the record.  And I'd like
23  to get closure on that by the end of next week if not
24  sooner.
                              Page 3

Opp 1 exh C.txt

☐page 7

```
 1                    MR. AMBROZY:  I agree, Your Honor.  And
 2  I believe the end of next week is the 9th, on which we
 3  are having the hearing in Delaware also in support of
 4  that motion.
 5                    SPECIAL MASTER POPPITI:  That's correct.
 6                    MR. AMBROZY:  So, if we were to get you
 7  a paper by the 9th, at the latest, does that work for
 8  Your Honor?  Or if I am hearing you correctly, you want
 9  it earlier than that?
10                    SPECIAL MASTER POPPITI:  I'd like it
11  sooner.
12                    MR. AMBROZY:  If we get it by the 6th,
13  is that okay?
14                    SPECIAL MASTER POPPITI:  The 6th is
15  fine.
16                    MR. AMBROZY:  Thank you, Your Honor.
17  So, if I understand Mr. Merideth, then, they are not
18  withholding documents at this point.  But what we were
19  more focused on was the categorization issue.  And it's
20  our understanding -- we have had discussions with Tatung
21  and Tatung has agreed in the past to provide
22  categorizations, and Your Honor referred to a specific
23  citation, I don't have it in front of me, but you did
24  read from the record and ask whether LPL agreed with the
```

☐page 8

```
 1  categorizations that were represented by Tatung were
 2  produced.
 3                    SPECIAL MASTER POPPITI:  I missed that.
 4  I think somebody may have been turning a page.
 5                    MR. AMBROZY:  During the last hearing,
 6  Your Honor read from the transcript, and I believe it was
 7  December 28th transcript, where you asked if LPL had
 8  received a categorization that Tatung represented it
 9  would produce.
10                    SPECIAL MASTER POPPITI:  Yes.
11                    MR. AMBROZY:  We had told Your Honor
12  that we had not.  And, in addition, we have not received
13  new -- a new categorization of the additional monitors
14  and products that Tatung has identified in supplemental
15  interrogatory responses.  And, so, we just want to be
16  clear that those will still be forthcoming from Tatung
17  regardless of when this motion is decided.
18                    SPECIAL MASTER POPPITI:  Mr. Merideth?
19                    MR. MERIDETH:  I believe that we have
20  provided what we believe is responsive to the commitment
21  that was made by Miss Ho at the hearing, I believe it was
22  on the 28th.
23                    SPECIAL MASTER POPPITI:  It was.
24                    MR. MERIDETH:  And we have lived up to
```

☐page 9

```
 1  that commitment.  We have provided representative
 2  products and the products of which they are
 3  representative.
 4                    What we have not agreed to is the
 5  definition that LPL wants us to use, and we don't believe
 6  that we are required to use their definitions, we don't
 7  agree with their definitions, and we have provided them
 8  with schedules that include the representative modules --
 9  the representative products and the products that are
```
                              Page 4

Opp 1 exh C.txt

```
10   within the family, if you will, of that representative
11   product, and we have identified the working drawings that
12   relate to that family of products.
13               We believe that that's what Miss Ho
14   promised to do and we have done it.
15               MR. AMBROZY:  Frank, let me point you to
16   -- there is a February 15th letter from Miss Ho where she
17   states, on the first page --
18               SPECIAL MASTER POPPITI:  Can you expect
19   that I would have that by virtue of what I have told you
20   I have in the room?  I don't think I would.
21               MR. AMBROZY:  You do not, Your Honor.
22               SPECIAL MASTER POPPITI:  It would be
23   important, please, to tell me what it says, and if
24   Mr. Merideth thinks it needs to placed in context by
```
Ɖpage 10

```
 1   telling me or framing it with other language from the
 2   document, I am sure he will.  The document again, please?
 3               MR. AMBROZY:  It is a February 15th
 4   letter from Valerie Ho to myself.
 5               SPECIAL MASTER POPPITI:  Okay.
 6               MR. AMBROZY:  And in that, we discuss
 7   whether there were drawings to be produced by Tatung.
 8   And then Ms. Ho, in regard to the categorization, she
 9   states, "You should have received a few additional
10   assembly drawings that were produced early this week.  We
11   should be in a position next week to provide an updated
12   table that will attempt to align new drawings with new
13   groupings of products."
14               And then, with regard to the next page,
15   page 2, Miss Ho goes on to say that they would not update
16   anymore categorizations until LPL agrees that it will not
17   require two exploded view drawings for each category
18   instead of the one.
19               So it's our understanding that, first of
20   all, all the new products identified in interrogatories
21   one and two by Tatung are not in this new chart, and even
22   on February 15, Miss Ho identifies that there are
23   additional products that are not listed on the chart.
24               So, I don't know if you would like us to
```
Ɖpage 11

```
 1   take this up with Mr. Merideth on the side, Your Honor,
 2   but we are of the position that the charts are not --
 3   that the categorizations are not up-to-date.
 4               SPECIAL MASTER POPPITI:  It's not a
 5   matter of my preferring that you do that.  I think, from
 6   my perspective, if the issue is ultimately going to come
 7   down to this is what we think the agreement was and there
 8   is a difference of opinion as to what the agreement was,
 9   then part of the issue I have to visit is -- I know I
10   have the authority to enforce an agreement as it relates
11   to discovery.  I need to make a determination as to what
12   the agreement was and is.  And once that's done, I need
13   to make a determination as to whether that agreement, as
14   I conclude it is, has been lived up to.
15               I am not relishing that path forward,
16   but, if necessary, you know, I will do that.  I don't
17   think the record, at this point, as you have put it
18   before me, puts it in a posture for me to be doing that
19   kind of work.
20               Do you both agree with that?
```
Page 5

Opp 1 exh C.txt

21          MR. AMBROZY:  I agree with that, Your
22   Honor.  I would suggest that we may do a supplemental
23   briefing in advance of the March 9th hearing.
24          SPECIAL MASTER POPPITI:  If you need to
page 12

 1   do it, I mean, it seems to me, and please correct me if
 2   you think I am wrong, the heart of the hearing that we
 3   are going to be conducting next week frames these issues,
 4   does it not?
 5          MR. AMBROZY:  It does, Your Honor.
 6          SPECIAL MASTER POPPITI:  Mr. Merideth.
 7          MR. MERIDETH:  Yes, sir, I agree it
 8   does.
 9          SPECIAL MASTER POPPITI:  So, if you both
10   think that it is important for me to dissolve the issue
11   as to what the agreement was, therefore, is, and what it
12   means going forward or what it means with respect to
13   compliance, and that's part of the March 9 hearing, then,
14   sure, I am going to have to require that you put a paper
15   together with that context in mind, short pages, and in
16   very short order, because I know that you all have very
17   important work that is ongoing, and I know that it will
18   represent some distraction from that work.  But if it's
19   important to do it, tell me now and I will give you
20   parameters in terms of what I need and when.
21          MR. MERIDETH:  I believe that it is
22   important that it be queued up most efficiently and
23   effectively before the Court, so I would suggest that we
24   agree upon some dates.
page 13

 1          SPECIAL MASTER POPPITI:  Okay.  Why
 2   don't you forge the agreement.
 3          MR. MERIDETH:  We will do that.
 4          SPECIAL MASTER POPPITI:  Do you want to
 5   do that off-line?
 6          MR. AMBROZY:  That's fine.
 7          SPECIAL MASTER POPPITI:  Okay.  I am
 8   happy to let that occur and I'd like to be aware of what
 9   that is, without sounding unrealistic, as soon as
10   possible in the new day, if you will.  Okay?
11          MR. MERIDETH:  Okay.
12          MR. AMBROZY:  Okay.  Your Honor, one
13   other point in that the Delaware hearing is the 9th, and
14   because we begin Tatung's depositions on the 14th, we
15   were hoping just to bring to the Court's attention the
16   fact that we could possibly run out of time before the
17   documents are either ordered produced or collected and
18   produced, and, so, our depositions would have occurred by
19   the time the documents are actually produced.  And, so,
20   we might run out of time at the end of March 30th.  And I
21   just want to make the Court aware that we believe it
22   would be entitled to additional time to take discovery if
23   the Court finds that additional documents should have
24   been produced all along.
page 14

 1          SPECIAL MASTER POPPITI:  I mean, I would
 2   expect that you would expect, even though I have proposed
 3   to Judge Farnan -- and, by the way, footnote, he is not
 4   available, as of this date, he is out of state, hopefully
 5   enjoying himself a bit, he will be back next week, and

Opp 1 exh C.txt

6  that's when I will have an opportunity to sit down with
7  him -- even though you know I have proposed a scheduling
8  order that keeps everyone focused on very, very, very
9  tight time frame, I would expect that you know me,
10 through local counsel, as to be a reasonable person.  So
11 I don't think I should be saying any more than that.
12                MR. AMBROZY:  That's fine.  Thank you.
13                SPECIAL MASTER POPPITI:  That could be a
14 reasonable yes, it could be a reasonable no, but I hope I
15 am considered to be a reasonable person.
16                Okay.  Next, please.
17                MR. CHRISTENSON:  Your Honor, on a
18 follow-up note, there were some -- there is some
19 discovery outstanding from Tatung Company that had been
20 agreed to be produced to us by the end of January, and we
21 are now at the end of February, and I am concerned, as
22 the deposition dates for Tatung draw near, that we don't
23 have the bulk of the discovery that was agreed to be
24 provided to us during the prior hearings before you in
□page 15

1  January.
2                SPECIAL MASTER POPPITI:  Is that in the
3  status report that we will be dealing with on Friday?
4                MR. CHRISTENSON:  It's in the status
5  report that is pending and still unresolved from the
6  prior hearing as well as in the continued status report
7  for the next hearing.
8                SPECIAL MASTER POPPITI:  You tell me the
9  most efficient way to deal with that.  It seems to me
10 that the most efficient way is to make sure that whatever
11 work we set out to do on Friday, we encompass everything
12 from the February, and I expect that's what we are
13 working from, February -- is it 7 status and the current
14 status -- February 5, I am sorry?
15                MR. CHRISTENSON:  Yes, Your Honor.  So,
16 you know, things like sales summaries for all their
17 products, you know, I am happy to address that now.  If
18 you prefer to address it on Friday, we can do that as
19 well.
20                SPECIAL MASTER POPPITI:  I want to do it
21 as efficiently as possible, and if everyone is prepared
22 to do it now and discuss it now, that's fine, because
23 there was no agenda other than my expectation we were
24 going to be focused on depositions.  Tell me.
□page 16

1                MR. CHRISTENSON:  We certainly have had
2  several communications with Tatung on this issue, Your
3  Honor, so I think we are aware of what the -- I think we
4  have made them aware of what we are still waiting for.
5  It's just a matter of how to get it.
6                SPECIAL MASTER POPPITI:  Let's talk
7  about it, then.
8                MS. ROMAN:  Your Honor, this is Tracy
9  Roman for ViewSonic.  My only concern is that ViewSonic
10 also has similar issues that are in the loop on status
11 status report --
12                SPECIAL MASTER POPPITI:  Right.
13                MS. ROMAN:  -- that have been pending
14 from previous status reports regarding production of
15 documents from LPL, and if we are going to take the
16 opportunity to go through all this stuff right now, it
                          Page 7

Opp 1 exh C.txt
17  might go on a little bit longer than anybody is willing
18  to participate.
19                SPECIAL MASTER POPPITI:  I understand
20  that.  I expected this evening would be something to keep
21  matters moving, but I didn't expect we were going to be
22  here for more than a healthy hour and a half or so, maybe
23  two hours.  So, let's do it on Friday.
24                MR. CHRISTENSON:  Very well, Your Honor.
□page 17

1                SPECIAL MASTER POPPITI:  And if there is
2  a need to more tightly focus on it between now and Friday
3  in light of the statuses, tell me that.  Other than
4  hearing that, I have got the February report in mind, and
5  I only briefly looked at the report that was filed, I
6  don't know whether it was yesterday or the day before
7  yesterday, I haven't turned my attention to it, for
8  purposes of Friday.  It was filed on the 26th.
9                MR. CHRISTENSON:  The only other thing I
10  would offer, Your Honor, is, if you are interested, there
11  is a handful of letters back and forth.  If you would
12  prefer to have that in advance --
13                SPECIAL MASTER POPPITI:  I'd like to
14  have that in advance.
15                MR. CHRISTENSON:  We will put that
16  together and submit it to Your Honor.
17                SPECIAL MASTER POPPITI:  Thank you.
18  Next, please.
19                MR. MERIDETH:  We have an issue with
20  respect to the scheduling of the depositions.
21                SPECIAL MASTER POPPITI:  Okay.
22                MR. MERIDETH:  Particularly, there is --
23  there have been depositions of Mr. Ho Lee and Mr. Bang
24  that have been scheduled, and LPL has indicated that they
□page 18

1  are not going to produce Ho Lee and they have indicated
2  that they are not going to produce Mr. Bang.  We believe
3  -- they are suggesting that Mr. Ho Lee no longer works
4  for LPL but works for the parent company, LGE.
5                I think we have discussed an agreement,
6  whereby, if Mr. Ho Lee is not going to testify at trial
7  and his declaration is not going to be used at trial,
8  then we don't have a problem taking his deposition.  But
9  Mr. Bang was a key witness, as was illustrated in the
10  deposition testimony today, and his deposition has to be
11  taken, and there is no excuse for not producing him.
12                MR. CHRISTENSON:  Your Honor, with
13  respect to Mr. Ho Lee, as Mr. Merideth stated, ViewSonic,
14  who noticed his deposition, had proposed not proceeding
15  with Mr. Ho Lee's deposition if Mr. Ho Lee was not going
16  to be testifying as part of LPL's case at trial, and I
17  have sent a letter confirming that we do not intend to
18  call Mr. Ho Lee as part of our case at trial, and,
19  therefore, as I understand it, that issue is moot.
20                With respect to Mr. Bang, this is a --
21                SPECIAL MASTER POPPITI:  Let's pause
22  right there for a moment.  Is that the case?
23                MR. MILLER:  Your Honor, we did make
24  that proposal, and I got Mr. Christenson's letter.  There
□page 19

1  was some issue in there, I don't really know what that
                              Page 8

Opp 1 exh C.txt

2  means, in the sense he says that we would not be seeking
3  to take advantage of his absence.  I don't know what that
4  means.
5           Obviously, if there is documents that he
6  has authored, we would to expect to be able to use them
7  if we can use them through other witnesses.  If they are
8  not going to call him there to testify and they are not
9  going to try to sneak his testimony in through some other
10 fashion, then we are not going to try to take his
11 deposition.  We are willing to make that agreement to cut
12 to the chase here, but I don't know what Mr. Christenson
13 had in mind about this sort of vague comment about, you
14 know, "take advantage his absence."
15           MR. CHRISTENSON:  Your Honor, I am happy
16 to clarify that.  There is no intent to sneak anybody's
17 testimony into the trial.  We have no intention, as I
18 have affirmatively stated, of calling him as a witness.
19 What I alluded to in my letter was I was assuming that
20 Mr. Miller is not intending to make some argument to the
21 jury that we, that, in rebuttal, we should have called
22 Mr. Ho Lee as a witness and failed to do so.  Obviously,
23 if they raise that sort of a question, that's a different
24 situation.  But we have no intent of using him in our
□page 20

1  affirmative case at trial whatsoever.
2           MR. MILLER:  We absolutely will raise
3  the issue of his absence.  He was involved directly in
4  many of the key issues in this case.  We just can't
5  compel him to come here and have his deposition taken.
6           SPECIAL MASTER POPPITI:  Let's slow down
7  for a moment.  I have the authority to deal with pretrial
8  matters, and with respect to those pretrial matters, if I
9  understand what you have just said, if Mr. Ho Lee is not
10 going to be called as a witness, there is an agreement
11 not to depose him.  That's what I think I heard.
12           MR. CHRISTENSON:  That's correct.
13           SPECIAL MASTER POPPITI:  What you all do
14 with that information -- or what you all do with respect
15 to Mr. Ho Lee's absence at trial is something that, quite
16 frankly, I don't have any control over.  I would have
17 some thoughts on it, but they would be just Vincent
18 Poppiti's thoughts, and I don't know that that holds any
19 weight for my -- for Judge Farnan with respect to trial
20 issues.
21           So, I think what I have heard is there
22 is no need for me to consider dealing with the scheduling
23 of Mr. Ho Lee's deposition.
24           MR. MILLER:  I believe that's correct
□page 21

1  based on that.
2           MR. CHRISTENSON:  May I respond with
3  respect to Mr. Bang's deposition?
4           SPECIAL MASTER POPPITI:  Let's do that.
5  And I do expect, counsel, that we are, by virtue of
6  talking about Mr. Ho Lee and Mr. Bang, we are dealing
7  with item No. 4 in the February 26th status report; is
8  that correct?
9           MR. CHRISTENSON:  Your Honor, I don't
10 have that in front of me.
11           SPECIAL MASTER POPPITI:  That's where
12 there is extended discussion about both gentlemen.

Page 9

Opp 1 exh C.txt

13          MR. CHRISTENSON:  That's probably
14   correct, Your Honor.  This is an issue that only recently
15   has come to light.
16          SPECIAL MASTER POPPITI:  I understand.
17   I am happy to deal with it because you both have eased me
18   into it, if you will.
19          MR. MILLER:  I don't have it in front of
20   me either, but I suspect that's right as well.
21          SPECIAL MASTER POPPITI:  Yes.  Okay.
22   Then let's talk about Mr. Bang.  And be mindful of the
23   fact that I said to you before, I perused the letter but
24   I didn't study it, so I may have to look down a couple
☐page 22

1    times as you are talking.
2           MR. CHRISTENSON:  As Your Honor knows,
3    we have been negotiating on a deposition schedule for
4    several months in this case, and throughout that process,
5    we were never informed of any intention to depose
6    Mr. Bang.  Mr. Bang is referenced very briefly in at
7    least one of the documents that LPL produced, I believe
8    in April of 2006, and Mr. Bang was identified by
9    ViewSonic in initial disclosures in September 2006 or
10   earlier; however, as I mentioned, whenever we have
11   discussed depositions, never was his name mentioned as a
12   witness for which a deposition was sought.  And we have
13   seen a -- the deposition notice was issued on February 16
14   for a March 14 deposition.  Right now, we already have
15   two other depositions scheduled of the defendants'
16   witnesses for that same day.
17          Mr. Bang is in Korea.  He would need
18   sufficient time to travel to the United States and
19   appear.  It would be -- obviously, there would be some
20   expense and burden in bringing him here.  I have asked
21   ViewSonic if they intend to pay for that expense and I
22   haven't -- they haven't responded yet.  I just sent that
23   letter recently, so they have not responded yet.  But
24   this is an issue that I think needs more discussion
☐page 23

1    between counsel before it's ripe for you to consider.
2           I have asked, in my recent letter, what,
3    specifically, do they think they need to ask Mr. Bang
4    about because it seems to me that any issues for which he
5    might have some knowledge, and I think his knowledge
6    would be limited, are issues that are going to be
7    addressed by the existing witnesses this week and/or next
8    week.
9           So, I don't want to be in a situation
10   where we bring a witness here from Korea that really is
11   not necessary and is -- and if there is an expense,
12   obviously, and an effort to do it.
13          SPECIAL MASTER POPPITI:  Can you have
14   those discussions that you propose between now and Friday
15   so that if the discussions aren't fruitful in forging an
16   agreement, that I can deal with that specific issue on
17   Friday?
18          MR. CHRISTENSON:  Yes, Your Honor.  I am
19   available tomorrow to talk about that.  That's fine with
20   me.
21          MR. MILLER:  I will be taking Mr. Kim's
22   deposition tomorrow, probably, but we can -- I am sure we
23   can work it in somehow.  The only problem I have, I
                         Page 10

Opp 1 exh C.txt
24   guess, is that -- I don't mind putting it until Friday,
☐page 24

1   but we are here from California this week and next, and
2   we'd like to do it efficiently while everybody is in
3   Washington taking these depositions.
4                If we put it to Friday, I don't want to
5   be in a situation where now we argument that we need
6   another couple weeks to get it scheduled and we have to
7   make trips back and forth, as opposed to still looking at
8   the 12th as a possible date and the 14th as a possible
9   date, and if that doesn't work, we will, with your help,
10  we will pick another date if that's appropriate.  But I
11  don't want to have to slide it to the end of March and
12  have to make another trip simply because the intervening
13  time has past.
14               SPECIAL MASTER POPPITI:  I understand
15  that.  My comment would be this:  I would suggest that if
16  you think you are wanting to deal with that now and you
17  want to be providing me with the information fresh as we
18  are talking, that's fine.  If it's important for you to
19  have some discussion with respect to that and you think
20  you can have that discussion and hopefully resolve it,
21  and you think that you need ten minutes with me on the
22  phone before Friday, then I will make myself available.
23  I understand the need to resolve the "Bang" issue, if you
24  will, sooner than later.
☐page 25

1                MR. MILLER:  Thank you, Your Honor.  I
2   am happy to talk to Mr. Christenson tomorrow about it and
3   see if we can work something out.  I am always preferring
4   to work it out rather than to consume Your Honor's time
5   and hopefully we can, and, if not, we will raise it
6   either tomorrow for ten minutes for Friday.
7                SPECIAL MASTER POPPITI:  Tomorrow, you
8   have got the office number.  Let me suggest this:  If I
9   don't pick up right away, our phone system here,
10  unfortunately, doesn't tell you that I am on a phone, so
11  if I don't answer it right away, no one else will pick
12  up, it will go to a voice mail.  Feel free to use the
13  cell phone number that I have given you, and between the
14  two, I should be able to get back to you within 15
15  minutes after your call.
16               MR. MILLER:  Thank you, Your Honor.
17               SPECIAL MASTER POPPITI:  And, obviously,
18  counsel, if that occurs and you are in the throws of a
19  deposition, it will be helpful for you all to use the
20  court reporter that is working the deposition to deal
21  with the telecon.  Okay?
22               MR. MILLER:  Yes, that makes sense.
23               MR. CHRISTENSON:  Thank you, Your Honor.
24               SPECIAL MASTER POPPITI:  Thank you.
☐page 26

1                Next, please.
2                MR. MILLER:  I think the next issue,
3   Your Honor, is the question of the time for Mr. Kim's
4   deposition, who is both an inventor and subject to the 21
5   hours, plus the designee under all four of the deposition
6   notices.  That's a notice -- that's an issue independent
7   of the issue I think that was reported to Your Honor
8   today regarding his level of preparation.
                        Page 11

Opp 1 exh C.txt

```
 9              We can take them both at once, if that
10   makes the most sense to do it, or however you would like.
11              SPECIAL MASTER POPPITI:  Let's do them
12   one at a time.
13              MR. MILLER:  I think under Your Honor's
14   order with regard to the depositions and the timing, the
15   clarification of the original scheduling order, Mr. Kim
16   has an obligation to appear for 21 hours as an inventor,
17   as an individual, and as he was the designee under -- as
18   a witness under all four of the deposition notices, would
19   have an obligation to appear as a witness under each of
20   the deposition notices for the, because the translator is
21   required, ten-and-a-half hours for each notice.
22              I don't think -- I was hoping,
23   ultimately, we wouldn't need all that time.  Having seen
24   what I have seen over the last couple days, I am less
```
□page 27

```
 1   optimistic, but, you know, I think that -- I think LPL
 2   has a different view in terms of what his obligations are
 3   in the abstract under the notices.
 4              SPECIAL MASTER POPPITI:  Before I hear a
 5   view, let me explain once again what I meant by the
 6   order.  It's precisely as you have identified it.  So, if
 7   there needs to be some fine tuning of that, you need to
 8   tell me.  That's the way I intended the order to read.
 9   That's what I mean the order to say.
10              MR. MILLER:  That's what I understood,
11   but I think we needed that last clarification from Your
12   Honor.
13              SPECIAL MASTER POPPITI:  Does it need
14   anymore clarification?  Please.
15              MR. BONO:  Gaspare Bone.
16              SPECIAL MASTER POPPITI:  I haven't heard
17   your voice in so long, Mr. Bono.
18              MR. BONO:  Yes.  I much prefer to talk
19   about French law than patent issues.
20              SPECIAL MASTER POPPITI:  Good.  Thank
21   you.  You can do it in French and I won't pick up a word.
22              MR. BONO:  As I understand Your Honor's
23   order, you have decided that there should be 21 hours for
24   the individual inventor depositions.
```
□page 28

```
 1              SPECIAL MASTER POPPITI:  That's correct.
 2              MR. BONO:  And then I am a little bit
 3   confused, I must say, with respect to the 30(b)(6) notice
 4   and the import of Your Honor's ruling as to the time
 5   allotted for the 30(b)(6) component and how that plays,
 6   out as a practical matter, with respect to this
 7   particular case.
 8              And my -- and my concern is that we have
 9   designated, and just so Your Honor -- we have designated
10   two individuals to be our 30(b)(6) witnesses for all of
11   the 30(b)(6) topics, Mr. Kim, who has been deposed now
12   for the last three days, and Mr. J.F. Kim, who will be
13   deposed next Thursday and Friday on certain topics of the
14   30(b)(6) designation.  Fundamentally, we have designated
15   John Kim, whose deposition has been taken these three
16   days, on the technical issues in the deposition notice,
17   and Mr. J.F. Kim will testify on the non-technical
18   business and sales issues topics in the notice.
19              At the beginning of the deposition this
```
Page 12

Opp 1 exh C.txt

20  week, I proposed, and we reached an agreement with the
21  defendants, that it made more sense, rather than
22  segregating Mr. John Kim's deposition into two separate
23  parts, individual and 30(b)(6), that since there were a
24  number of technical topics that overlapped, because they
□page 29

1   assuredly will ask these questions as an inventor and
2   assuredly ask him these questions as a 30(b)(6), that I
3   proposed that we take the deposition from the beginning
4   in a dual role and they could ask questions of him that
5   would cover both circumstances.
6                  And then at the end of these two weeks
7   of depositions, the defendants will designate those
8   portions of Mr. John Kim's deposition that they believe
9   are covered by the deposition -- 30(b)(6) deposition
10  topic, we will have an opportunity to respond, and either
11  agree or disagree.
12                  We would then meet and confer to try to
13  narrow the issue, and then if we are unable to reach an
14  issue as to certain portions of the deposition, that we
15  would bring that -- those matters to Your Honor's
16  attention to make a decision on whether Your Honor felt
17  that this was covered by a 30(b)(6) topic or was
18  individual testimony.
19                  SPECIAL MASTER POPPITI:  Okay.
20                  MR. BONO:  That agreement was agreed to
21  by the parties at the beginning of this deposition.
22                  SPECIAL MASTER POPPITI:  May I ask a
23  question as you are explaining?
24                  MR. BONO:  Yes, sir.
□page 30

1                   SPECIAL MASTER POPPITI:  Did any part of
2   the agreement or any conversation with respect to the
3   agreement impact on the time as described in the
4   scheduling order and as I have just re-described it?
5                   MR. BONO:  Not -- we left that issue for
6   discussion for another day, Your Honor.  I was trying to
7   just reach sort of this kind of efficient agreement and
8   then deal with the time issues at a later date.
9                   SPECIAL MASTER POPPITI:  Okay.
10                  MR. MILLER:  We actually did discuss it,
11  and what we agreed to was that this amalgamation, if you
12  will, of the deposition, to the extent it would lead to
13  efficiencies, would benefit everybody, but it had no
14  impact whatsoever on the timing that was permitted under
15  the deposition notices that were -- that you had had
16  before you.
17                  SPECIAL MASTER POPPITI:  Okay.  Thank
18  you.  I just wanted to know if there was any discussion
19  about it.
20                  MR. BONO:  Your Honor, now to come to
21  the timing issue with respect to the 30(b)(6) deposition
22  notice, given the -- what has happened during the last
23  three days, Your Honor, it is quite apparent that the
24  defendants are going to, as good lawyers, take up
□page 31

1   whatever amount of time they have, that Your Honor gives
2   them, with respect to Mr. Kim regardless of whether, you
3   know, it is necessary or sufficient for their inquiry.
4                   And they have gone -- they have spent
                            Page 13

Opp 1 exh C.txt

5  three days and they have gone into questions dealing with
6  such minutia that it boggles the mind, and they are
7  simply, it is apparent, they are simply taking up time in
8  order to fill this enormous amount of time that Your
9  Honor has extended to them.
10               For example, they went so far as to take
11  time to ask Mr. Kim how far his desk was from the company
12  co-inventor's desk, Mr. "Chow", to elicit a response that
13  it was about five meters apart.  And that's just one
14  example of the level of minutia that they are going into.
15               With all due respect, Your Honor, it is
16  apparent that having five days during this week with
17  Mr. Kim was more and is more than sufficient time for the
18  defendants to go into any topics, legitimate topics that
19  they need to inquire of Mr. Kim as an inventor and
20  legitimate inquiries on the deposition topics that he has
21  been identified for.
22               And, so, I would propose the following
23  -- plus, the defendants are entitled to get information,
24  and we don't dispute that, but we provide information to
☐page 32

1  the defendants through several sources.  Sometimes it's
2  best to get it from a deposition witness, including a
3  30(b)(6) notice; sometimes it's more efficient to give
4  information to the defendants by way of interrogatory
5  answers.  We have answered enormous amounts of
6  interrogatories and have provided that to them.  And they
7  are -- they have the information in several of these
8  categories.
9               I would respectfully submit, Your Honor,
10  that after we conclude these five days with Mr. Kim, that
11  Your Honor -- after we conclude, say, even next week's
12  depositions, that the defendants have to provide good
13  cause to Your Honor to take further deposition testimony
14  of these 30(b)(6) witnesses and explain to Your Honor
15  what information they don't have from the plaintiff,
16  either by way of the deposition testimony or by way of
17  interrogatory answers, before we go beyond these ten days
18  of depositions, which, quite frankly, I respectfully is
19  submit is more than sufficient time for the defendants to
20  get the information that they are entitled to on the
21  deposition topic.
22               SPECIAL MASTER POPPITI:  Let me ask you
23  this question, and I am not looking for a bottom line
24  answer, but I think what you are saying to me is:  Given
☐page 33

1  the framework of 30(b)(6) time that I read into the
2  order, there being no definition before I read it into
3  the order and put it into the order and will propose that
4  Judge Farnan sign that document, and I realize you are in
5  the throws of depositions now, I think what I hear you
6  saying is that, the flip side, it seems to me, of
7  stonewalling a deposition, if you will, which I expect
8  all of you would agree with me is ultimately
9  sanctionable, the flip side of that may be, and I am not
10  writing on any slate, I don't have a slate that I have
11  written on with respect to this, but the flip side of it
12  may be that the time that is permitted is literally being
13  wasted and the purpose of the waste is simply to waste
14  time.
15               I have to expect -- I don't know the
Page 14

Opp 1 exh C.txt

16  answer to this -- that the flip side of stonewalling is
17  wasting resources and wasting time. And if that's the
18  case, then it seems to me what you may be saying, and I
19  heard what your request was with respect to an
20  application, but the flip side of stonewalling may be
21  that you will make an appropriate application at an
22  appropriate time to argue just that, that the -- that
23  everyone's time was being wasted for no good purpose, and
24  that, as an appropriate sanction, attorneys' time,
☐page 34

1   expenses, and other things should be borne by a party
2   that wastes deposition time.
3                   I think that's what you may be -- you
4   haven't said it that way, because you are saying to me,
5   you know, We may want you to get involved in this before
6   time gets wasted, and you may want me, then, to make some
7   judgment that no additional time is needed, and I am not
8   -- I am not convinced that that's the best circumstance
9   for whether it's a Special Master or a Magistrate Judge
10  or for the Court to be in to say, I can make a judgment
11  that no more time is necessary as opposed to saying --
12  and I realize it's at the end of the game, if you will --
13  too much time was taken, too much time has been wasted.
14                  Do you want to speak to that just for a
15  moment?
16                  MR. BONO: Well, Your Honor, quite
17  frankly, I am really -- I am really only trying to
18  protect the time of my clients in having to come from
19  Korea and spend not only these two weeks in the United
20  States, but, as I understand defendants' position is,
21  with respect to Your Honor's order, is that they are now
22  going to have to come back for a significant amount of
23  more time to have their depositions taken.
24                  And I believe that over the course of
☐page 35

1   the next -- of the ten days that we have for this
2   deposition taking, that there is more than sufficient
3   time, with the witnesses we have provided, to make the
4   proper inquiries, for the defendants to get the
5   information that they are entitled to, to get in
6   discovery in this case.
7                   And that if they want more time after
8   this, that they should bear the burden of coming before
9   Your Honor and saying, We need more deposition time
10  because we don't have information on A, B, and C. And if
11  they can make that showing, perhaps they should be
12  entitled to some additional time. But if they already
13  have the information that is being provided to them,
14  either by way of deposition testimony or by way of
15  interrogatory answers, it seems to me that we are being
16  unfairly burdened.
17                  And I am not really interested, Your
18  Honor, in setting up a situation where one side is
19  seeking sanctions against another.
20                  SPECIAL MASTER POPPITI: I am not
21  inviting that either. I understand.
22                  MR. BONO: And that's not my intent,
23  purpose, or request.
24                  My sole proposal is: Because of the
☐page 36

Page 15

Opp 1 exh C.txt

1   flip side that Your Honor identified, which is certainly
2   the case, whether it's purposeful or inadvertent, time
3   will fill up -- to fill the space.
4           SPECIAL MASTER POPPITI: Mr. Bono, let
5   me ask you a question. Let's not talk about 30(b)(6) for
6   a moment. Let's just talk about a fact witness. And let
7   me expect that the fact witness is a non-English speaking
8   person and it is not an inventor, so you get, by virtue
9   of the order, 10.5 hours; that's clear, is it not?
10          MR. BONO: Yes, Your Honor.
11          SPECIAL MASTER POPPITI: Now, let me
12  also expect that during the course of that 10.5 hours,
13  everything that you can conceivably get from that witness
14  is accomplished in the first hour, and, yet, the
15  deposition continues gruelingly to 10.5 hours, what
16  authority do I have to say, at the end of an hour and a
17  half, Enough is enough; you have got everything you need;
18  you don't have to do it in English and French and German,
19  etcetera; you have got all the detail you need, and we
20  are going to make an application to the Court to cut it
21  off at an hour and a half, you are not entitled to the
22  10.5?
23          Now, I realize it's a different set of
24  facts, but is it not the same thing? I read the
☐page 37

1   application. I made my judgment with respect to how much
2   time is permitted as I read the rule, as I read the
3   commentary to the rule. I defined that for everyone.
4           What I am hearing from you is that all
5   of the time that I have said is permitted is not needed.
6   What authority do I have to deal with that at the front
7   end of this? And I guess the best example I can think of
8   is a pure fact witness for 10.5 hours where everyone
9   around the table knows that, at the end of an hour and a
10  half, there couldn't possibly be anymore information and
11  you are literally down talking about how many inches
12  somebody is sitting from someone else, and it has little
13  if anything to do with the case, so there is an objection
14  of -- there is a relevancy objection, there is a record
15  made, and the witness answers the question.
16          Then the next question is: How far is
17  the phone from your chair? How far is the screen from
18  your chair? Stuff that is literally wasting time. What
19  authority do I have to get involved in that at the front
20  end other than a desire to want you all to operate
21  efficiently?
22          MR. BONO: Your Honor, I believe, as the
23  Special Master, you would have the authority to get
24  involved. But I must say, I don't, with all due respect,
☐page 38

1   I don't see the issue that I am addressing to be a
2   situation involving where we have, as you said, an
3   individual fact witness --
4           SPECIAL MASTER POPPITI: I understand
5   that. I don't mean -- I don't mean to diminish the
6   importance of the witnesses that are in the chair. I
7   don't mean to diminish that at all. I understand what it
8   means to you and to your client to literally disrupt the
9   business that they should be about, and that is the
10  business that they are in. I understand that. I was
11  using it as, just simply as an example.

Page 16

Opp 1 exh C.txt

12          Let me hear from -- I understand your
13  position, Mr. Bono.  Let me hear from the other side,
14  please.
15          MR. MERIDETH:  Let me address what has
16  happened so far in this deposition because I think it's
17  relevant directly to this issue.
18          First of all, we have had three days of
19  deposition but we have only had 18.32 hours of testimony,
20  and the reason that that has occurred is because counsel
21  for LPL and the witness has been persistently late,
22  taking persistently long lunch hours, except for today,
23  and the witness tires and wants to leave at 6:00.
24          So, we have been going at the rate of
Ωpage 39

1  six hours and ten minutes a day.  Now, at that rate, it's
2  going to be a long time before we are finished.  That's
3  problem No. 1.
4          Problem No. 2, and this is far more
5  important and it raises the second issue, but I feel we
6  have to address it, we are having a problem with this
7  witness.  For one thing, whenever he finds himself in a
8  tight spot, he has a language problem.  He quibbles over
9  translations that were certified by LPL as being accurate
10  translation.
11          SPECIAL MASTER POPPITI:  I just have to
12  ask a point of clarification:  The Mr. Kim that we are
13  talking about, have I been aware of his deposition
14  testimony in the jurisdictional phase?
15          MR. MERIDETH:  I don't know.
16          SPECIAL MASTER POPPITI:  Because I can't
17  remember that gentleman's first or second name, but go
18  ahead, please.
19          MR. MERIDETH:  Now, I'd like to read you
20  an exchange that will give you an idea of wasting time.
21  This is Mr. Kim, who is an inventor, he is the head of
22  their patent office function, and he is a 30(b)(6)
23  witness on the subject of the patent-in-suit.
24          "QUESTION:  Would the difference by
Ωpage 40

1  model of the light guides to which you just made
2  reference be an important difference in your invention?
3          "ANSWER:  That, I am not sure.
4          "QUESTION:  Well, how could you become
5  sure?
6          "ANSWER:  Well, even that, I am not
7  sure.
8          "QUESTION:  Well, did you describe, in
9  your patent, anywhere, how differences in light guides
10  would be important respecting your invention?
11          "ANSWER:  I don't really know, you know.
12  Search me.
13          "QUESTION:  Well, I am sorry, but you
14  are the inventor.  I would expect you might have some
15  idea as to whether the difference in light guides might
16  be material to your invention.
17          Is there anybody else that you know of
18  that might know that information about your patent?
19          "ANSWER:  Please bear with me.  I was a
20  little bit out of wits just a moment ago.
21          In any event, I already told you that
22  that was a long time ago that I made my invention, and I
Page 17

Opp 1 exh C.txt
23  came up with a patent as a result, you know. Needless to
24  say, I don't have very clear recollections of the past
☐page 41

1   events. So in order to, you know, read through the
2   patent and come to grips with the overall, you know,
3   specifics of the patent, in order to be able to effect --
4   more effectively answer your question.
5                "QUESTION:  Well, did you understand
6   that as a 30(b)(6) witness, that at least you had an
7   obligation to read the patents-in-suit?
8                "ANSWER:  I did understand that I had an
9   obligation to read the applicable patent, but I didn't
10  realize that that goes to the extent of interpreting or
11  construing the contents of the patent."
12               And it goes on. And for question after
13  question after question, he says he can't answer the
14  question because he hasn't read the patents.
15               Let me give you another example.
16               "QUESTION:  Are you aware of any
17  functional difference between any of the components of
18  Figure 6 and Figure 4C other than the mounting holes on
19  the first frame?
20               "ANSWER:  I would give you the same
21  answer that I had been giving you to these types of
22  questions. In order to figure out the functions, it is
23  necessary for me to spend a long time to thoroughly read
24  through these two patents, and I can answer your question
☐page 42

1   effectively only after I have found out about the
2   functions of the associated elements, and, as of now, I
3   am not prepared in that manner that I was describing, so
4   I would not be able to answer your question effectively."
5               That goes on and on and on with respect
6   to every question relating to Figures 4 -- I am sorry,
7   Figures 6 and 4C, to which we sent you a copy, as to
8   every single element, he says he doesn't know.
9               Second --
10              SPECIAL MASTER POPPITI:  And I guess
11  what you are describing to me is, again, the flip side,
12  maybe that's the third side of a coin that's standing on
13  its end a bit here, the third side of the coin is you are
14  suggesting, by reading part of a record, that you have
15  got a witness in the chair wearing his 30(b)(6) hat, and,
16  boy, I guess it really could get confusing understanding
17  the agreement you all forged, he is wearing his 30(b)(6)
18  hat and he is telling you, Yeah, I was the person that
19  was designated 30(b)(6); I am not prepared to do this.
20  And you know the question I am going to ask next: How
21  much more time do you need even if you use up all the
22  time that you have been allotted if this continues?
23              I am not making any judgment here.
24              MR. MERIDETH:  The problem is that he is
☐page 43

1   simply not prepared in asking him the questions over and
2   over and over again.
3               SPECIAL MASTER POPPITI:  He is not
4   giving you anymore information?
5               MR. MERIDETH:  No. Because every single
6   question he says he doesn't know.
7               MR. BONO:  May I respond?
                                    Page 18

Opp 1 exh C.txt

```
 8                SPECIAL MASTER POPPITI:  Just a moment,
 9   Mr. Bono.
10                MR. BONO:  Thank you.  I just want to
11   make sure I have an opportunity to respond.
12                SPECIAL MASTER POPPITI:  Absolutely.
13                MR. MERIDETH:  We have been completely
14   frustrated with respect to any questions, and, bear in
15   mind, that's this witness' own patent, and he hasn't even
16   read it adequately to answer questions concerning it.
17                The second problem that we have, and
18   it's a very crucial issue in this case, and it relates to
19   the standing of LPL or LG to prosecute this case.  It was
20   an issue that was also addressed in the California
21   litigation.  And it has to do with agreement called the
22   DEC agreement.
23                SPECIAL MASTER POPPITI:  Yes.
24                MR. MERIDETH:  And the issue is whether
```
page 44

```
 1   or not the patents-in-suit were developed during the
 2   course of the performance of the DEC agreement or are
 3   improvements on the DEC patent because, if they are, they
 4   are governed by the development manufacturing agreement
 5   between LGE and DEC.  And that was exactly what the issue
 6   was in the California case, and in that case, the Court
 7   found there was no standing.
 8                We have asked Mr. Kim about the DMA, and
 9   he has been instructed not to answer.
10                SPECIAL MASTER POPPITI:  Which hat is he
11   wearing when you ask him that question?
12                MR. MERIDETH:  30(b)(6).  He has not
13   been instructed not to answer as an individual, but he
14   claims he has no knowledge.  As a 30(b)(6) witness, and
15   it is a specific topic that has been designated for his
16   testimony, his counsel refuses to allow him to answer on
17   the grounds that an objection was made to the 30(b)(6)
18   deposition and that they don't have to get a protective
19   order, we have an obligation to come in and make a motion
20   to compel his testimony.  And that's just preposterous,
21   and we spent a tremendous amount of time with that issue
22   as well.
23                An instruction not to answer --
24                SPECIAL MASTER POPPITI:  Let me ask
```
page 45

```
 1   this:  I know local counsel is on the phone and I expect
 2   you have had conversation with local counsel as to what
 3   is expected in this district with respect to deposition
 4   practice and what is expected in this district with
 5   respect to objections and instructions not to answer.
 6                Those of us in Delaware know that there
 7   is virtually a template that was prepared a number of
 8   years ago -- I would expect that local counsel is aware
 9   of it and have done what I know we certainly have done in
10   this firm, and that is updated it -- and I don't know
11   whether I want local counsel to weigh in yet on the
12   issue -- but it seems to me that if there is an issue
13   with respect to a 30(b)(6) witness, and if the counsel
14   for that witness concludes that the questioning is beyond
15   the issues that are identified for that witness to be
16   testifying to, then it is the responsibility of the
17   attorney that is representing that witness to state that
18   for the record and ask the Court for a protective order.
```

Page 19

Opp 1 exh C.txt

19          Now, if I don't have that right, in
20  terms of what is expected here in the district, then I
21  invite my friends that are local counsel to tell me
22  that's not what's expected here.
23          MR. COTTRELL:  Your Honor, I think two
24  thoughts.  Your Honor was, of course, referring to Judge
□page 46

1   McKelvie's Turks Becker decision where he did lay out
2   that template and I am sure it has been updated.  I am
3   happy to send that case to everyone that would like to
4   read it.  I know Ms. Gaza and I have spoken with counsel
5   about how depositions go in Delaware.
6          And your second point is, at least in my
7   understanding, also correct, that during a deposition,
8   the only instructions not to answer a question are on
9   questions of privilege, and that if the defending
10  attorney feels the deposition is going beyond a topic, it
11  is their obligation to contact the Court for a protective
12  order.
13          SPECIAL MASTER POPPITI:  That's my
14  understanding.  I think it would be helpful for you, and
15  I appreciate the courtesy of your doing that.  I, quite
16  frankly, before you all entered into depositions, gave it
17  some very serious thought as to whether something like
18  that should issue from my desk, and I thought that that
19  was completely inappropriate.
20          I think it would be helpful for you to
21  circulate that, Mr. Cottrell, and I appreciate the offer.
22          MR. COTTRELL:  I will do so, Your Honor.
23          SPECIAL MASTER POPPITI:  That is my
24  understanding of how we operate in this district.
□page 47

1   Judge McKelvie did set down the template a number of
2   years ago, and I am not aware of any judge of this
3   district that has advised, instructed, or ordered that it
4   be done otherwise.
5          I don't know whether that's helpful for
6   purposes of continuing our conversation in this respect.
7          MR. MERIDETH:  The problem here is,
8   obviously, that developed today, and I have only given
9   you a very small example of the failure of this witness
10  to be adequately prepared on even the most basic issues,
11  and it's not a waste of time.  We have to ask these
12  questions because we have to make a record.  He
13  persistently refuses to answer them and evades them by
14  saying he doesn't know or he doesn't understand or
15  whatever.
16          SPECIAL MASTER POPPITI:  Mr. Merideth, I
17  guess I have a question.  I expect that, at some point,
18  from your perspective, you will get to a point where you
19  have concluded that, with all the questions dealing with
20  the minutia that you say is important, you are going to
21  get to a point where you are going to say, This witness
22  is not properly prepared, and I expect that you would be
23  saying to me, The application is, this 30(b)(6) is in
24  recess; we need additional time and we need a different
□page 48

1   designee.
2          I mean, isn't that the ultimate relief?
3          MR. MERIDETH:  Yes, sir.  There is one
                    Page 20

Opp 1 exh C.txt

4  other alternative, and, that is, that if this is the
5  correct witness, that he prepare himself.
6              The problem is he says he didn't take
7  any notes, he went around and gathered documents from
8  various people but can't remember what documents there
9  were, he spoke to half a dozen people and he can't
10  remember what they told him, and he cannot speak to any
11  question on any definitive basis.
12              We have gone through the ,139 patent and
13  the two patents-in-suit, and he just can't answer any
14  questions about them.
15              SPECIAL MASTER POPPITI:  Well, he is
16  either prepared or he isn't.  And if --
17              MR. BONO:  Your Honor, may I respond at
18  some point?
19              SPECIAL MASTER POPPITI:  I am not making
20  any judgments, Mr. Bono, but I do want you to respond.  A
21  witness is either prepared or he isn't.
22              MR. MERIDETH:  So there are two
23  alternatives:  He prepare himself, or, alternatively,
24  someone else be designated that is prepared.  But at this
☐page 49

1  point, asking this fellow further questions is a complete
2  waste of time.
3              SPECIAL MASTER POPPITI:  So what am I
4  being asked to do?
5              MR. MERIDETH:  Well, Mr. Bono,
6  obviously, has a different opinion, but I think that this
7  witness has to be instructed to tell us how much time
8  it's going to take him to prepare to answer questions
9  that have been designated for him as a 30(b)(6) witness.
10              SPECIAL MASTER POPPITI:  You are
11  entitled to ask him that question, aren't you?
12              MR. MERIDETH:  Yes, and to get him to
13  take that time, at his expense, to do that.  I mean, if
14  it takes him a week, it takes him a week.  But we can't
15  -- I mean, it's just a waste of everybody's time and
16  resources to listen to him tell us that he hasn't even --
17  he hasn't read his own patent carefully enough to answer
18  questions about the figures.
19              MR. BONO:  Your Honor, I must step in
20  and correct these misstatements by Mr. Merideth, lest
21  Your Honor get the wrong impression of what actually has
22  taken place in this deposition and with respect to
23  Mr. Kim's dutiful and thorough preparation for this
24  deposition.
☐page 50

1              May I respond?
2              SPECIAL MASTER POPPITI:  You may, and I
3  want to assure you I have made no judgment.  I am not
4  sure I have a record from which to make a judgment.  In
5  any event, I am just giving you what I expect I hope is
6  some helpful guidance as to how I would approach the
7  issue that you both want to tee up from your respective
8  positions with an appropriate record before me.
9              And I think the most efficient way to do
10  it is not with a lot of -- with a lot of paper with an
11  expectation that, at some point, I am going to get to
12  write proposed findings of fact and conclusions of law.
13  You need something pronto.  And the only way to do that
14  is to serve up your positions with the respective
                        Page 21

Opp 1 exh C.txt
15    designations from the transcript, or the entire
16    transcripts, we reconvene, yet again, in between our
17    status conferences, and, I mean, I won't hesitate to give
18    you my best judgment with respect to what is transpiring.
19                    He is either prepared or he isn't
20    prepared.
21                    MR. BONO:  Your Honor, let me assure you
22    that Mr. Kim was prepared and is prepared and spent a
23    more than sufficient time to prepare as a 30(b)(6)
24    witness.
☐page 51

1                    Now, according to Mr. Merideth, as I
2    understand it, I think his position is that he has barely
3    gone into any of the topics on the 30(b)(6) notice at
4    this point.  So, for him to make these accusations is not
5    only unsubstantiated but unfair.
6                    What we have here is a situation where
7    Mr. Kim was prepared as our 30(b)(6) notice on these
8    topics.  He testified that, as a 30(b)(6) designee, he
9    went out and got the information at the company necessary
10   to present the company's position on these various
11   topics.  He testified today that he spoke with the
12   following -- he identified at least five individuals in
13   his department that he spoke with and gathered
14   information from.
15                   He testified that he spoke with and
16   gathered information from other departments, including
17   the sales department, the product planning department,
18   the design group, the TV R and D group, the IP group, and
19   a small size R and D group to be able to testify with
20   respect to the information at LG Phillips in response to
21   these topics.
22                   He also testified that he gathered and
23   reviewed a whole host of categories of documents to be
24   able to testify on these deposition topics.  He testified
☐page 52

1    that he reviewed sales documents, sales data, sales
2    summaries, specifications, model related specification,
3    bill of materials, module specifications, information on
4    modules with holes that are on the rear side of the
5    modules, the patents, the complaint in the case, LPL's
6    interrogatory answers, and other documents.  And those
7    are just examples of the work he did to prepare for this
8    deposition.
9                    What we have here is a situation from a
10   very astute lawyer, Mr. Merideth, who is setting up a
11   situation specifically so he can present this situation
12   to Your Honor as a -- clearly to get additional time with
13   Mr. Kim.
14                   For example, with respect to the figures
15   on the two patents that he complains about in the letter
16   that he just sent to Your Honor, he says Mr. Kim wasn't
17   able to explain the differences to him.
18                   The truth of the matter is, in the
19   deposition, he asked Mr. Kim, by just looking at the
20   figures themselves, without looking at the
21   specifications, Can you explain what the layers are in
22   the two figures?  And he said, From just looking at the
23   figures, you could not do that.
24                   So then Mr. Merideth showed him the
☐page 53

Opp 1 exh C.txt

1  specifications, and he asked him, Looking at the
2  specification, what are those figures?  What are those
3  elements in each of the figures?  He identified and
4  confirmed what each of the elements are.
5              Then Mr. Merideth asked him, Can you
6  tell me, for example, both patents identify a reflector
7  in the two figures, and he asked Mr. Kim, Can you tell me
8  whether the reflector that's depicted in these patents
9  has the identical structure as depicted in these patents?
10  And Mr. Kim, quite properly, said, In order for me to
11  answer that question, I have to review the patent.
12              Mr. Merideth never asked him, Well,
13  review the patent now and answer my question.  He
14  neglected to ask him the question solely so he could come
15  before Your Honor and present this bogus position that
16  Mr. Kim was not prepared to testify.
17              Mr. Kim testified that he, in
18  preparation for his deposition, reviewed these patents,
19  reviewed both the ,641 patent, the ,718 patent, and the
20  ,139 patent about which he was asked about.
21              However --
22              SPECIAL MASTER POPPITI:  Mr. Bono, I
23  don't mean to cut you off, but I just did.  Let's do
24  this, as much as I don't think I want this, I mean, I
□page 54

1  appreciate what -- I appreciate that you are summarizing
2  your view of the transcripts.
3              It seems to me, counsel, if I am to be
4  making a judgment here, that I have got to have the
5  transcripts and I have got to take whatever time it takes
6  to read the work that you have been doing against the
7  backdrop of a one- or two-page document, which says, from
8  one point of view, he is not properly prepared, here are
9  the references; from the other point of view, he was
10  properly prepared, here are the references, and I will
11  make the judgment.
12              I am not meaning to cut you off in
13  arguing for your position, but I am just wanting to do
14  this in the most -- I can't sit here and make a judgment
15  based on who you gentlemen have said because you clearly
16  disagree.
17              So tell me how that can be served up so
18  I can deal with it literally by mid afternoon tomorrow?
19              MR. MERIDETH:  We have electronic copies
20  of the rough transcripts.  They are not the official
21  transcripts.
22              SPECIAL MASTER POPPITI:  I understand.
23              MR. MERIDETH:  We can forward you the
24  three days of testimony.  I think, actually, today, just
□page 55

1  one day, is the most exemplary, and I think that's
2  sufficient, if you just looked at today, you would have
3  the whole --
4              SPECIAL MASTER POPPITI:  I understand
5  what your perspective is in terms of today.
6              Mr. Bono, is that going to be
7  sufficient?
8              MR. BONO:  No, Your Honor.  The question
9  is:  Was the witness prepared?  And it just isn't
10  Mr. Merideth's --

Page 23

Opp 1 exh C.txt
11          SPECIAL MASTER POPPITI:  I understand.
12          MR. BONO:  -- actions today.  It's the
13  whole deposition.  And he has testified now for three
14  days.  And, Your Honor, I would like to address the DEC
15  situation.
16          SPECIAL MASTER POPPITI:  I want you to
17  do that, but in terms of addressing whether he is
18  prepared or has been prepared or whether he is not
19  prepared, I need your view, please, because that will
20  make my read of it easier in no more than two pages.  If
21  one page can do it, that's fine.  And if I have those
22  transcripts, electronic -- how many pages do you have?
23  Do you know?  How many pages of transcript?
24          MR. MERIDETH:  About 350 total.
☐page 56

1          SPECIAL MASTER POPPITI:  Okay.  Well, if
2   I have those electronically, I can assure you I am not
3   going to read them tonight, but if they are at my desk
4   first thing in the morning, I have an arbitration that
5   will take me maybe two or three hours tomorrow, but it
6   will get accomplished between now and mid afternoon
7   tomorrow.
8          MR. MERIDETH:  We can do that.  May I
9   make one request in the intervening period, and, that is:
10  Because LPL is claiming that the number of days ought to
11  be reduced, and to ensure that ViewSonic has an
12  opportunity to question Mr. Kim, I would request that I
13  suspend my questioning of Mr. Kim, give ViewSonic an
14  opportunity to question him, so that if it is determined,
15  as LPL wishes, that his deposition ought to be curtailed,
16  at least ViewSonic would have had an opportunity to have
17  questioned him.
18          But I am afraid if we do that without an
19  order from Your Honor, we are going to be -- the claim is
20  going to be made by LPL that having stopped questioning
21  him, we waived our right to continue, and I don't want to
22  have that happen.
23          SPECIAL MASTER POPPITI:  Mr. Bono.
24          MR. BONO:  I was intending to proceed
☐page 57

1   this week as we had planned, Your Honor, and I understood
2   that Mr. Miller was going to start his questioning
3   tomorrow, and I don't have any problem with that, and we
4   all reserve whatever rights we want without prejudice.
5          SPECIAL MASTER POPPITI:  Is that
6   satisfactory, Mr. Merideth?
7          MR. MERIDETH:  No.  I don't want to
8   reserve our rights.  I want to have an agreement that if
9   the time is not shortened and there is time that's
10  remaining, I will have an opportunity to take up all
11  these questions that the witness wouldn't answer or
12  couldn't answer.
13          MR. MILLER:  Your Honor, I don't mean to
14  interrupt.  We have, based on Your Honor's ruling, we
15  have a certain number of hours, let's say it's 50 hours
16  total; obviously, we had anticipated we were going to
17  split those hours.  We are only at 18 hours, and, so,
18  Mr. Merideth isn't even at the end of his half of those
19  hours.  We have been here this week.  We would like very
20  much to try to get some questioning in of Mr. Kim on
21  behalf of ViewSonic, but, obviously, we are sensitive as
Page 24

Opp 1 exh C.txt
22   well to the concern Mr. Merideth raised, which is, if he
23   ceases now, that LPL will take the position that he
24   doesn't have the right to continue to get up to half of
☐page 58

1   the total allotted amount of time available for this
2   deposition. And, so, we are, you know, we are sensitive
3   to that.
4                        We are kind of caught in the middle
5   here. We'd very much like to take some testimony on the
6   issues that affect us.
7                        SPECIAL MASTER POPPITI: There is no
8   need to be caught in the middle. I am being asked to
9   perform some responsibility with respect to this
10  deposition. The reason why it is being forestalled is
11  because of the work that I am doing and that you have
12  both asked me to do, and it seems to me that no one
13  should be penalized as a result of that.
14                       MR. MILLER: My request is that
15  Mr. Merideth be allowed to suspend his questioning and
16  that we be allowed to pick up our questioning when the
17  deposition resumes for some period of time and that that
18  suspension by Mr. Merideth be without prejudice to his
19  right to continue for half of the total amount of
20  allotted time of the deposition.
21                       SPECIAL MASTER POPPITI: So ordered.
22                       MR. MILLER: Thank you, Your Honor.
23                       SPECIAL MASTER POPPITI: And you have
24  got a transcript. Okay.
☐page 59

1                        First thing in the morning, and I think
2   it will be important for me, if you haven't sought me out
3   during the course of the day, once I get to the end of my
4   responsibility, I will reach out to local counsel to
5   convene everyone.
6                        Let me just do this, while we are on the
7   phone -- I don't recall when this arbitration is
8   tomorrow. Give me a moment, please.
9                        Counsel, this arbitration tomorrow is at
10  2:00, but it should not take that long. My friends that
11  are local counsel knows what a Court pointed arbitration
12  for the Superior Court is, it's a service to the Court,
13  it shouldn't take more than an hour or so, so I may be
14  able to accomplish all of the work before that. If not,
15  it will be shortly after.
16                       When you electronically mail the
17  transcripts to me, I want you also to mail them to Dube,
18  dube@blankrome.com as well.
19                       MR. MERIDETH: Could you repeat that,
20  Your Honor?
21                       SPECIAL MASTER POPPITI: Yes,
22  dube@blankrome.com. So, one is coming to me and one is
23  going to Dale Dube.
24                       MR. MERIDETH: Just plain Dube, no
☐page 60

1   initial?
2                        SPECIAL MASTER POPPITI: That's correct.
3                        Let's deal with the DEC issue.
4                        MR. BONO: Your Honor, this is Gaspare
5   Bono again. Let me respond as briefly as I can to
6   Mr. Merideth on this issue. We objected to the topic in
                              Page 25

Opp 1 exh C.txt

```
 7  the deposition notice concerning the DEC agreement, and
 8  we stated that we were not presenting a witness, a
 9  30(b)(6) witness on that topic, and Mr. Kim, thereby, was
10  not designated in any way, shape, or form as a 30(b)(6)
11  witness on this topic.
12              At the deposition today, the issue arose
13  as to the questions that Mr. Merideth was asking Mr. Kim
14  concerning the DEC agreement, and I asked Mr. Merideth to
15  limit his questions to Mr. Kim as an individual witness.
16  And with respect to certain questions, Mr. Merideth
17  declined to do that even though Mr. Kim was not
18  designated as a 30(b)(6) witness.
19              Under those circumstances, in order to
20  let the deposition continue, I felt I had no choice but
21  to give a very limited instruction to not answer the
22  question with respect to Mr. Kim's 30 -- a 30(b)(6)
23  capacity, but made it clear, and Mr. Merideth did ask him
24  as many questions as he wanted, about the DEC agreement
```
☐page 61

```
 1  in his individual capacity.  That's what happened at the
 2  deposition today.
 3              At this point, we have not designated a
 4  witness on that topic at all subject to our objection.
 5              SPECIAL MASTER POPPITI:  I was just
 6  going to ask that.  I understand you said you have
 7  objected.
 8              Have you moved for a protective order
 9  with respect to that deposition topic?
10              MR. BONO:  We have not as yet, Your
11  Honor.  But we did not designate -- the point is --
12              SPECIAL MASTER POPPITI:  I understand
13  that.
14              MR. BONO:  Okay.
15              SPECIAL MASTER POPPITI:  I understand
16  that he is not a 30(b)(6) witness as it relates to DEC,
17  and I also understand that he, at the same time, is
18  wearing a fact witness hat, and I understand, to the
19  extent that he has information as a fact witness, he
20  would be required to answer.
21              MR. BONO:  And he did, Your Honor.  To
22  the extent he had any knowledge, he did answer any and
23  all of Mr. Merideth's questions over the past two days
24  with respect to his personal knowledge or any knowledge
```
☐page 62

```
 1  he has as an individual with respect to the DEC
 2  agreement.
 3              There was no other limitation placed on
 4  Mr. Kim's testimony today with respect to any other
 5  development agreements or any other agreements.  And, so,
 6  their letter to Your Honor, quite frankly, is -- appears
 7  to be overbroad of what actually happened in the
 8  deposition.  It was strictly limited only because he was
 9  not designated as a 30(b)(6) witness on that topic.  And,
10  so, therefore, Mr. Merideth trying to insist that he
11  answer as a 30(b)(6) witness was improper.
12              SPECIAL MASTER POPPITI:  Mr. Merideth?
13              MR. MERIDETH:  Yes, could I respond?
14              SPECIAL MASTER POPPITI:  Sure.
15              MR. MERIDETH:  In addition to the
16  designation specifically with regard to DEC, there are
17  two other designations, designation 10 A and 10 B.
```
Page 26

Opp 1 exh C.txt

```
18              SPECIAL MASTER POPPITI:  Just a second.
19  Let me get those in front of me, please.  Hold one
20  moment.
21              MR. MERIDETH:  Thank you.
22              SPECIAL MASTER POPPITI:  Okay.  I have
23  got ten.  It's on page 8 of the amended notice of
24  deposition, topics seven through 12.  I have 10 A in
```
☐page 63

```
1   front of me.
2               MR. MERIDETH:  10 A and 10 B both
3   cover --
4               SPECIAL MASTER POPPITI:  10 A and 10 B.
5               MR. MERIDETH:  Both these requests cover
6   the issues related to technology agreements of which we
7   have identified at least 10, not including the DEC
8   agreement, which may or may not contain provisions, like
9   the DEC agreement contains, that provide for the
10  ownership of intellectual property developed during the
11  course of the performance of the agreement.
12              All questions with respect to those
13  types of technology agreements, or other agreements that
14  might affect the ownership of intellectual property,
15  including the patents-in-suit, have -- are properly
16  noticed, and Mr. Kim has also refused, on the instruction
17  of his counsel, to answer those questions.
18              SPECIAL MASTER POPPITI:  I am looking at
19  topic 10 A and B, and I have LPL's designation for
20  30(b)(6) topics in front of me, and the way I read it is
21  that Mr. Kim has been designated as a 10 A, 10 B 30(b)(6)
22  witness; is that not correct?
23              MR. BONO:  Your Honor, that is correct,
24  and there was no such instruction to Mr. Kim on 10 A and
```
☐page 64

```
1   10 B.  The instruction was, as I said, only with respect
2   to the DEC agreement.  And --
3               SPECIAL MASTER POPPITI:  But I think I
4   just heard from Mr. Merideth, and correct me if I am
5   wrong, sir, that 10 A and 10 B does not encompass DEC?
6   Did I understand you correctly?
7               MR. MERIDETH:  No, it does encompass
8   DEC, but it also encompasses ten other relevant
9   contracts.
10              SPECIAL MASTER POPPITI:  I understand
11  you now.
12              MR. MERIDETH:  It involves DEC and ten
13  other development contracts, and he refused to testify
14  about any of them based upon the instruction of counsel.
15              MR. BONO:  Your Honor, if you look at
16  the deposition notice, it has 10 A, 10 B, and 10 C.
17              SPECIAL MASTER POPPITI:  I am looking at
18  all of them.
19              MR. BONO:  10 C is the topic that deals
20  with DEC.  It doesn't make any sense to interpret the
21  notice as Mr. Merideth now is trying to interpret it.
22              By looking at this notice, we understood
23  it to mean that 10 C was the topic relating to the DEC
24  agreement.  Anyone -- and with respect to any of all of
```
☐page 65

```
1   the other agreements that are covered by 10 A and 10 B,
2   the witness has been designated and is free to testify as
```
Page 27

Opp 1 exh C.txt

3    a 30(b)(6) as to those agreements, and there is no such
4    instruction to limit the testimony.
5              MR. MERIDETH:  We will have to submit
6    the transcript because we have a different view.
7              SPECIAL MASTER POPPITI:  Well, let me
8    ask this question, then:  Mr. Merideth, in looking at the
9    topics you have identified with respect to topic 10, it
10   is A, B, and C, there is no question that C specifically
11   relates to Digital Equipment Corporation, DEC; that's
12   correct, is it not?
13             MR. MERIDETH:  Yes, sir.
14             SPECIAL MASTER POPPITI:  Do I read,
15   then, the topics under 10 A and B -- I should read C
16   separately, should I not?
17             MR. MERIDETH:  Yes.  The fact that we
18   asked specifically about the DEC agreement doesn't limit
19   the testimony on 10 A and 10 B which relates generally to
20   the ownership interests and other technology agreements
21   which might affect ownership interest.
22             C asks about any agreements between LPL
23   and other persons, but it doesn't address the issue of
24   the effect of the DEC agreement on ownership, which is
☐page 66

1    covered by A and B, which is the standing issue.  He has
2    got to testify about that.
3              MR. BONO:  Your Honor, Mr. Kim testified
4    extensively today with respect to ownership of the
5    patents at issue and the -- and the side mount patent at
6    issue.  Mr. Merideth asked him innumerable questions
7    about the ownership issue, and Mr. Kim answered those
8    questions time and time again.
9              SPECIAL MASTER POPPITI:  Just give me a
10   moment, please, because I am looking at the language in
11   10 A.
12             Well, as I read 10 A, 10 A does go to
13   the issue of ownership; do you both agree with that?
14             MR. MERIDETH:  Yes, Your Honor.
15             MR. BONO:  Yes, Your Honor.
16             SPECIAL MASTER POPPITI:  10 B goes to
17   the issue of certain technology; correct?
18             MR. MERIDETH:  Yes, it does.
19             SPECIAL MASTER POPPITI:  And agreements
20   with respect to that; correct?
21             MR. BONO:  Yes, Your Honor.
22             SPECIAL MASTER POPPITI:  And 10 C
23   specifically asks about agreements with DEC regarding the
24   development of technology; correct?
☐page 67

1              MR. MERIDETH:  Yes, Your Honor.
2              MR. BONO:  That's correct.
3              SPECIAL MASTER POPPITI:  As I would read
4    this notice, with its topics as I have read and you have
5    just described your agreement, he has been designated to
6    answer 30(b)(6) questions as it relates to -- and I
7    realize I am brushing this with a broad stroke, if you
8    will -- ownership issues and technology issues.
9              He has not been designated to talk
10   specifically about the DEC agreement insofar as that
11   relates to the development of any technology, etcetera.
12   So I expect that Mr. Kim is in the chair with respect to
13   any and all information relating to A and B.  And if I
                              Page 28

Opp 1 exh C.txt
```
14  need to measure question by question and see the
15  objection, which, again, is not the way Delaware
16  practices it, but I will review it for purposes of trying
17  to keep this moving along and make some judgment with
18  respect to that, I will do that.
19              If somebody can give me an example
20  where, Mr. Merideth, you conclude that he was not
21  answering by virtue of an instruction not to answer a
22  question with respect to current and/or past ownership,
23  etcetera, and any nondisclosure agreements, etcetera, can
24  you point to an example now?
```
☐page 68

```
1               MR. MERIDETH:  Perhaps if you give me
2   one second here.
3               Let me read you an example.
4               SPECIAL MASTER POPPITI:  Okay.  I missed
5   that.  I am sorry.
6               MR. MERIDETH:  Just one minute.
7               SPECIAL MASTER POPPITI:  Yes.  And while
8   you are looking for that, I mean, I really do think it's
9   important to emphasize, again, the process that the
10  District Court expects everyone to follow.  When you have
11  an opportunity to look at Judge McKelvie's decision, if
12  you will take a look at the language in the Federal Rule
13  decision cite at 575, let me just read a portion of this
14  to you.  "Instructions not to answer:  Counsel may not
15  instruct a witness not to answer a question unless, one,
16  answering the question would require the disclosure of
17  information that is protected from disclosure as
18  privileged or work product; or, two, counsel intends to
19  move promptly to terminate or limit examination pursuant
20  to Federal Rule of Civil Procedure 30(d) in which case
21  counsel shall immediately call the Court to request a
22  time to present the motion."
23              So, I mean, I understand where we are in
24  terms of the process of it all at quarter to eight on
```
☐page 69

```
1   this beautiful Wednesday, and I want to extend the
2   appropriate courtesy to you to continue to hear this, but
3   I don't have a motion for protective order in front of
4   me.  And I am not suggesting that I should, at this
5   juncture, look at form over the substance of the concern
6   that everyone has in terms of how this deposition should
7   proceed.
8               MR. MILLER:  While Mr. Merideth is
9   looking at the transcript, on a related issue, if you are
10  looking at this particular issue tomorrow, that is, it
11  deals with the issues on Friday, not trying to advance
12  it, but just so you understand.
13              SPECIAL MASTER POPPITI:  Please don't do
14  that.
15              MR. MILLER:  At the December 28th
16  hearing, there was a discussion about the production of
17  the DEC agreement which was promised to be produced and
18  that's on the agenda for Friday.  Just so you know, you
19  are going to hear it again on Friday.
20              SPECIAL MASTER POPPITI:  I love to cook,
21  I don't usually like leftovers, but I am happy to look at
22  that issue.
23              MR. BONO:  Your Honor, so, did I
24  understand that, at this point in time, placing substance
```
Page 29

Opp 1 exh C.txt
☐page 70

```
 1   over form, that Your Honor has indicated that we have
 2   placed this issue concerning the DEC agreement before --
 3                   SPECIAL MASTER POPPITI:  I'd like
 4   Mr. Merideth and others to say, yes, you have, but they
 5   have the right to say, No, it hasn't been properly
 6   presented.  We have been talking about it now for the
 7   past however many minutes and lines in this transcript.
 8                   MR. MERIDETH:  I am sorry.
 9                   SPECIAL MASTER POPPITI:  Mr. Bono wanted
10   to know whether he is going to have to sit at the screen
11   tonight and/or have somebody else at the screen
12   generating a motion for protective order?
13                   MR. MERIDETH:  Well, I mean, we can
14   cover other topics tomorrow, but we do need to get this
15   resolved.
16                   SPECIAL MASTER POPPITI:  I understand
17   that, and that's the issue.  We are in the throws of --
18   that's why I am asking you to look and give me an
19   example, and I guess the other question that is
20   appropriate:  May I treat what we are doing as an
21   application for protective order even though one has not
22   been filed?  And if you say, No, I'd like to see it in
23   writing, I'd like to know what we are talking about.  I
24   will at least want to listen to your position with
```
☐page 71

```
 1   respect to that.
 2                   MR. MERIDETH:  No, I don't want to
 3   create unnecessary formality or work.
 4                   SPECIAL MASTER POPPITI:  Good.
 5                   MR. MERIDETH:  The problem, however, is
 6   you have to see the testimony in its context in order to
 7   determine whether --
 8                   SPECIAL MASTER POPPITI:  I understand
 9   that, and if that's necessary for me to do that, then, in
10   conjunction with your asking me to see whether the
11   witness was appropriately prepared, then another piece of
12   that work for me to accomplish tomorrow morning into the
13   afternoon is to also look at the issue with respect to
14   DEC and to your assertion that he has not been responsive
15   to questions that would appropriately be put to him with
16   respect to DEC as it relates to topics A and B.
17                   MR. MERIDETH:  And I'd be happy to read
18   to you now a section that I think is exemplary, although
19   I think you need to look at all of it.  The other problem
20   is, you know, they can't just refuse not to appoint a
21   30(b)(6) witness.
22                   SPECIAL MASTER POPPITI:  I understand
23   that.
24                   MR. MERIDETH:  They are saying, Oh,
```
☐page 72

```
 1   well, we will just boycott the question, and, therefore,
 2   you don't ever have a right to ask the question.
 3                   SPECIAL MASTER POPPITI:  There was no
 4   application for a -- I know you objected to it, but there
 5   was no application to the Court to say it's not an
 6   appropriate subject in this case, so, to me, we are a
 7   little late in the game for that.  Go ahead, please.
 8                   MR. MERIDETH:  I'd like to read this one
 9   to you.  This pertains to a discovery -- I am sorry, an
```
Page 30

Opp 1 exh C.txt

```
10    invention disclosure document in which a reference is
11    made to side mount patents by competitors of either LGE
12    or LPL, it's quite unclear, but let me go on.
13                    SPECIAL MASTER POPPITI:  So that's under
14    10 B?
15                    MR. MERIDETH:  Yes, 10 A and 10 B.
16                    SPECIAL MASTER POPPITI:  A and B.  Okay.
17                    MR. MERIDETH:
18                    "QUESTION:  Which of those competitors
19    has side mounting patents as identified in Exhibits 11
20    and 2?
21                    "ANSWER:  At that time, or at the
22    present time?
23                    "QUESTION:  At that time.
24                    "ANSWER:  At that time, it was not known
```
☐page 73

```
 1    which other competitors other than my own company had
 2    side mounting patents.
 3                    "QUESTION:  So the application was
 4    necessary because it was a design around invention for
 5    competitors side mounting patents that you didn't know
 6    about; is that what you are telling me?
 7                    "MR. BONO:  Object.  Object to the form
 8    of the question.  Lacks foundation.  Argumentative.
 9                    "THE WITNESS:  Well, I am under the
10    impression that, you know, you keep distorting what, you
11    know, is being said here.  I want to make it clear that
12    what is meant here is, by what is indicated here is that
13    side mounting patents -- first of all, side mounting
14    patents was something that was owned by LG Phillips LCD
15    at that time and nobody else has the patents even at the
16    present time."
17                    And I will intercede that that's
18    contrary to the ruling of Judge Marshall in the Central
19    District.  But continuing.
20                    "What is meant by what is indicated here
21    in this document is that if any other competitor, any
22    other competitor tried to avoid my own company's side
23    mounting patents, then this was necessary --
24                    MR. BONO:  Your Honor, I hate to
```
☐page 74

```
 1    interrupt Mr. Merideth.
 2                    MR. MERIDETH:  Let me finish, please.
 3                    MR. BONO:  Nothing he is reading to you
 4    has anything to do with the DEC agreement.
 5                    MR. MERIDETH:  I am getting there,
 6    please.  I am putting it in context.
 7                    "QUESTION:  Isn't it true, Mr. Kim, that
 8    Messers. Bovio and Frame had filed a patent application
 9    for side mounting prior to your co-inventor's completion
10    of Exhibits 2 and 11?
11                    "ANSWER:  I don't quite get it.  What
12    are you trying to drive at?
13                    "QUESTION:  Isn't it true that Messers.
14    Frame and Bovio had filed patent applications with
15    respect to side mounting prior to the preparation of
16    Exhibits 2 and 11?
17                    "ANSWER:  I have absolutely no
18    understanding about what you are mentioning in your
19    question.  Basically, what I need is for you to show me
20    the actual patents for me to, you know, check up on it in
```
Page 31

Opp 1 exh C.txt
```
21  what kind of a patent it may be.
22              "QUESTION:  So you are completely
23  unaware of the fact that Messers. Frame and Bovio filed
24  patent applications for side mounting?
```
□page 75

```
 1              "Just as I told you, the side mounting
 2  patents is something that LG Phillips LCD has and is the
 3  invention of the company.  My understanding tells me that
 4  there is no one else out there who has the side mounting
 5  patent.
 6              "Are you familiar with the design and
 7  manufacturing agreement with DEC?
 8              "MR. BONO:  Object to the form of this
 9  question.  Are you asking him, in his individual
10  capacity?
11              "MR. MERIDETH:  In any capacity, whether
12  it's 30(b)(6) or --
13              "MR. BONO:  We have been through this
14  again, Mr. Merideth.
15              "MR. MERIDETH:  I don't have to say it
16  before each question, which I am going to do.  You have
17  put him up as a witness.
18              "MR. BONO:  No, I didn't.
19              "MR. MERIDETH:  But I am asking him
20  about both, in his capacity as both.
21              "MR. BONO:  Then I instruct the witness
22  not to answer since he is not here as a 30(b)(6) witness
23  on the topic of the manufacturing and design agreement
24  with DEC.  If you limit your question to his individual
```
□page 76

```
 1  capacity, he is free to answer the questions to the
 2  extent of his knowledge."
 3              So, clearly, the line of questioning
 4  relates to ownership, which is 10 A and B.  It relates to
 5  the Bovio and Frame patent and it relates to the DEC
 6  agreement insofar as it effects ownership and joint
 7  technology agreements, and he absolutely refused to
 8  answer.
 9              MR. BONO:  Your Honor, he didn't refuse
10  to answer.  He answered Mr. Merideth's questions
11  throughout this deposition with respect to his entire
12  knowledge concerning the DEC manufacturing and design
13  agreements.  He gave all the information he has.
14              He was not designated as a 30(b)(6)
15  witness as to the DEC agreement, but he provided all the
16  information he had in his individual capacity concerning
17  the DEC agreement.
18              I must point out that what Mr. Merideth
19  said about the ruling in the California court with
20  respect to ownership is absolutely incorrect.
21              Judge Marshall did not rule that
22  ownership of the patents are in DEC.  She made no such
23  ruling.
24              What she ruled was specifically limited
```
□page 77

```
 1  to the question of whether LG Phillips had standing to
 2  enforce these patents against another entity, C.P.T.,
 3  Chunghwa Picture Tubes, in that litigation and with
 4  respect to no other party.
 5              And, in fact, Mr. Merideth was
```
Page 32

Opp 1 exh C.txt

```
 6  co-counsel in that case, defending another defendant, and
 7  Judge Marshall said, in court, on the record, "I am
 8  making no ruling with respect to any other party or with
 9  respect to LG Phillips' rights to enforce this patent as
10  to any other party. My ruling is limited to LG Phillips'
11  rights standing, not ownership, standing to enforce the
12  patent only with respect to C.P.T. in that case."
13              MR. MERIDETH:  You are reading from the
14  order that was amended and it was amended to add Tatung
15  as a party against whom the patent could not be enforced,
16  so I am sorry, but you are not -- I don't mean to
17  interrupt, but you are not reading from the correct
18  order.
19              MR. BONO:  And we are not seeking to
20  enforce, in this case, the side mount patent against
21  Tatung.
22              So, what does it have to do with this
23  case, Mr. Merideth?
24              SPECIAL MASTER POPPITI:  Counsel, you
□page 78

 1  are really getting, I think, a little far afield without
 2  my having a record in front of me to deal with the issue
 3  with respect to DEC. I think I need to have -- I
 4  understand the issue as it was raised in Mr. Cottrell's
 5  letter. I have some sense as to what the response is. I
 6  understand the topics as they have been specified. I
 7  understand the agreement with respect to topics A and B
 8  and C, and I expect, because you are in dispute, I have
 9  got to make some judgment as to whether the questions
10  where Mr. Kim was instructed not to answer are questions
11  that he should answer, and if the answer is, I don't have
12  anymore information than I have already given you, then
13  that's the answer.
14              If there is an issue as to whether or
15  not he has been properly -- prepared himself to answer
16  topics A and B, then I need to know that as well.
17              MR. BONO, what I heard you say, against
18  the backdrop of your instruction to your witness not to
19  answer, I understood what you just told me is he didn't
20  have anymore information.
21              MR. BONO:  That's correct, Your Honor,
22  but he testified as to all the information he had.
23              SPECIAL MASTER POPPITI:  If that's the
24  case, then it seems to me that he needs to -- a question
□page 79

 1  should be posed, he should be permitted to answer that
 2  question, and then the issue may be:  Has he prepared
 3  himself properly to answer questions under topic A and B?
 4              MR. BONO:  And he is free -- Your Honor,
 5  Mr. Merideth did not ask him questions under A and B as
 6  to any of those other agreements. So, he is -- he is --
 7              MR. MERIDETH:  That's --
 8              SPECIAL MASTER POPPITI:  I am sorry,
 9  Mr. Merideth, I didn't hear you, sir.
10              MR. MERIDETH:  That's not correct. I
11  think, rather than debating about who did what, we ought
12  to look at the transcript.
13              SPECIAL MASTER POPPITI:  I agree.
14              MR. MERIDETH:  Now, we have the
15  additional problem here is that LPL is being very coy in
16  not designating anybody as a 30(b)(6) witness on the
```

Page 33

Opp 1 exh C.txt
17  subject of DEC. And, so, what, you know, we need to have
18  a designation made. Whether it's Mr. Kim or somebody
19  else, we got to get that witness here and he's got to
20  testify.
21              MR. BONO: Your Honor, the issue has now
22  been placed before Your Honor for a ruling on whether
23  that subject matter is the proper subject matter of a
24  30(b)(6) witness.
page 80

1              SPECIAL MASTER POPPITI: I think not,
2  sir. That's not been placed before me, not at all. I
3  don't have documents in front of me to show me when you
4  objected to the topic, and I certainly don't have,
5  following on that objection, an appropriate application
6  to the Court to preclude that topic from being developed
7  during the course of 30(b)(6) deposition testimony.
8  That's not what this record is.
9              This record, as it presently stands, and
10 the matter that is squarely before me by your courteous
11 agreement with each other, notwithstanding the fact that
12 there was no application to the Court during the course
13 of this deposition for a protective order, is whether or
14 not the witness is, that is in the chair, has been
15 instructed inappropriately to not answer questions that
16 have been posed, No. 1, and if he has exhausted his
17 memory with respect to those questions, whether he has
18 appropriately prepared himself or been prepared to answer
19 questions under 10 A and 10 B.
20             But I do not have before me any
21 application dealing with the appropriateness of 10 C
22 other than whatever document you filed when you served
23 it, saying, I object to this.
24             You know and I know that it does not
page 81

1  place the matter before the Court. We are in the throws
2  of this deposition. I am not going to preclude you from
3  filing anything, but I am going to tell you that I don't
4  expect that an application, at this juncture, is timely.
5  I can be convinced otherwise if you show me some
6  appropriate authority.
7              It's not like we are the week before
8  with all of the pressure that you all have been under
9  over these past couple of months. We are now in the
10 process of and there is no application before the Court
11 to preclude the development of 30(b)(6) testimony under
12 topic 10 C.
13             MR. BONO: Your Honor, I would like the
14 opportunity --
15             SPECIAL MASTER POPPITI: Sir, I just
16 said I am not going to preclude you, but I have also
17 suggested to you what my inclination is.
18             MR. BONO: Your Honor, we will be happy
19 to designate a witness, but I believe the witness, the
20 appropriate witness that we would designate is not John
21 Kim, who is being deposed this week, but would be
22 Mr. J.F. Kim, who is being deposed next Thursday and
23 Friday.
24             SPECIAL MASTER POPPITI: Well, if that
page 82

1  is the case, then, if you are prepared to do that, then I
                        Page 34

Opp 1 exh C.txt
2  will look for that designation sometime during the course
3  of the morning tomorrow.
4           MR. BONO:  We will be happy to do that.
5           SPECIAL MASTER POPPITI:  I can take your
6  comment on this record that he will be designated.  I
7  want you to be formalizing that in the appropriate
8  fashion tomorrow morning.
9           MR. BONO:  We will be happy to do that,
10 Your Honor.
11          SPECIAL MASTER POPPITI:  Mr. Merideth.
12          MR. MERIDETH:  It would also help to get
13 the DEC agreement that was promised a month ago.
14          SPECIAL MASTER POPPITI:  Mr. Bono.
15          MR. BONO:  I thought that was going to
16 be something that you all were going to talk about on
17 Friday, Your Honor.
18          MR. MERIDETH:  You already promised to
19 give it to us.  It's not a matter of discussing it on
20 Friday.
21          SPECIAL MASTER POPPITI:  Let's do this,
22 counsel:  That issue is one that you can do off record.
23 If we are teed up on Friday to do it, I will do whatever
24 I need to do and do it on the record.  There will be no
☐page 83

1  need for me to write.  But I expect if there was
2  discussion and there was a promise, that that should be
3  something that's honored.  If there wasn't, I will deal
4  with it on Friday.
5           MR. CHRISTENSON:  If I can just speak
6  briefly on that issue?
7           SPECIAL MASTER POPPITI:  Sure.
8           MR. CHRISTENSON:  There was a discussion
9  about the DEC agreement briefly at the December 28
10 teleconference before Your Honor.  And the question arose
11 whether we were going to produce a copy of the DEC
12 agreement, which was the only agreement specifically
13 identified by the defendants at that time, and it related
14 to document request No. 102 from ViewSonic.  And, at that
15 time, I said that we would not object to producing the
16 DEC agreement because -- and that was an agreement that I
17 specifically was aware of.  I didn't have it in front of
18 me at the time of the conference.
19          Subsequently, we located a copy of the
20 agreement which was produced by third party, C.P.T., in
21 the California case, and it was designated "confidential"
22 in that case under a protective order in that case.
23          First of all, the agreement, just so you
24 know, is from 1996, and it's an agreement between LGE, a
☐page 84

1  non-party here, and DEC.  The fact that it's a 1996
2  agreement, I didn't realize it at the time, makes it
3  non-responsive to request No. 102 which asks for
4  documents from the time period since January 1, 1997.
5  But that's not the reason I didn't go ahead and produce
6  it.  The reason that I didn't go ahead and produce it is
7  because not only is it not responsive, but it's
8  designated "confidential" by C.P.T.  This is not a
9  document that was produced by LPL.  LPL does not have a
10 copy of this agreement in its possession.
11          SPECIAL MASTER POPPITI:  Have you told
12 Mr. Merideth that before this?

Page 35

Opp 1 exh C.txt
```
13              MR. CHRISTENSON:  I have, Your Honor.
14  And not only did I tell him that, but I offered to
15  Mr. Miller, quite some time ago, to request permission,
16  if he wanted me to do so, from C.P.T., to produce this
17  document as I would have to do under the protective order
18  that I have reviewed in the California case.
19              I wasn't counsel in that case, but I
20  have the protective order and I intend to comply with it,
21  particularly given the circumstances that we faced so far
22  in this case of unfounded accusations of not complying
23  with protective orders.
24              SPECIAL MASTER POPPITI:  I understand.
page 85

 1              MR. CHRISTENSON:  And we have never got
 2  any response, until the most recent status report to Your
 3  Honor, where they injected this issue saying that they
 4  didn't think it was protected under the protective order,
 5  I believe, and they said that we should produce it
 6  because we agreed regardless.  And I can't be in the
 7  position of violating an order of the California Court,
 8  Your Honor.
 9              I would also note C.P.T. is a subsidiary
10  of Tatung Company, and, so, Tatung may already have this
11  document in its possession and may not need it from us.
12              SPECIAL MASTER POPPITI:  If you just tee
13  it up on Friday, I will deal with it on Friday.
14              MR. KREISMAN:  This is Mark Kreisman.  I
15  am also counsel for Tatung.  And the misstatement that
16  C.P.T. is a subsidiary of Tatung is something that I just
17  can't let go unchallenged on the record, Your Honor.
18              SPECIAL MASTER POPPITI:  Your record is
19  here.
20              MR. KREISMAN:  Thank you.
21              SPECIAL MASTER POPPITI:  I will deal
22  with the issue on Friday.  And you are telling me that,
23  again, knowing that I have this status report here,
24  knowing that we have already jumped into it at paragraph
page 86

 1  four, you have fleshed out your respective positions to
 2  the extent that you have just done it again with respect
 3  to DEC; is that correct?
 4              MR. CHRISTENSON:  Yes, Your Honor.  I am
 5  not trying to delay this issue at all.  If you want to
 6  address it further now, that's fine.
 7              SPECIAL MASTER POPPITI:  Let me do this:
 8  I have absolutely no authority to impact on the
 9  protective order of any court unless I am given the
10  authority to do that.  And, Mr. Cottrell, I don't know
11  whether you are still on with us, he knows that I have
12  the authority to deal with that in the Intel case pending
13  here in Delaware, but I certainly have no authority to
14  impact on a protective order.  And I clearly cannot
15  require someone that has agreed to do something that is
16  in violation of a protective order to follow through with
17  that agreement if, in fact, it is violative of the
18  protective order.
19              MR. MERIDETH:  I don't think anyone
20  disputes that, Your Honor.  And the problem here is no
21  one ever told me that they weren't going to produce the
22  DEC agreement because of some protective order.  The last
23  thing I heard is that they were going to produce it.  And
```
Page 36

Opp 1 exh C.txt
24    I would like to ask Mr. Christenson what steps he has
page 87

1    taken to contact counsel for C.P.T. to get consent to
2    release the document?
3                    MR. MILLER:  As well, I did report to
4    Mr. Christenson that I had been in contact with counsel
5    for C.P.T. who advised us that a copy of the DEC
6    agreement, or at least some portion of it, a significant
7    portion of a copy of the DEC agreement had been filed,
8    not under seal, with the California Court during the
9    California litigation where McKenna, Long and Howry were
10   the counsel, we were not counsel, and suggested that he
11   find it through that process and/or working with the
12   Howry firm.
13                   We have not gotten that agreement from
14   any -- from LG, and, so, we are in a situation where we
15   don't -- where, you know, as the outsiders, we don't have
16   it, so we need to try to address this issue.  It is teed
17   up for Friday, I believe.
18                   SPECIAL MASTER POPPITI:  I don't know
19   how much more help I can be.  If the document was part of
20   the public record, then that's easy.  I can't help
21   measure that because I have not been asked to, and I am
22   hoping you would not ask me to go through the docket and
23   determine whether or not this particular discrete
24   document was filed in public, if you will, in the public
page 88

1    record.
2                    If, on the other hand, it was filed
3    under one of the terms of the protective order, it is not
4    for me to make any judgment whatsoever as to whether the
5    parameters of the protective order cover the document,
6    No. 1, or whether there is an opportunity to use a
7    document.  That judgment has to be made by the Court that
8    entered the protective order, or by the parties, if the
9    parties are permitted to do that, after litigation has
10   finished.
11                   So, I am not sure what else I can do for
12   you on Friday.  Tell me what I can do.
13                   MR. MILLER:  Let me make this proposal,
14   I guess.  It is teed up for Friday.  I don't know that
15   there is anything, as you are saying, more to do.  I will
16   contact the C.P.T. lawyers in Los Angeles and see if we
17   can get -- if they will send us a copy or if we can get a
18   copy that was in the public record.
19                   If LPL doesn't have any other copy, I
20   guess we can work off of that, but let's at least get
21   that document and circulate it and see if there is a way
22   to get it.  They advised me it was available through that
23   process.  Obviously, we were not counsel, so we didn't
24   have, nor did we have the desire to go through the
page 89

1    voluminous filings in the case, so we will take the
2    laboring order tonight to call them and see if we can get
3    it, and, if so, I will report that to Mr. Christenson
4    tomorrow when we discuss the other issues.
5                    SPECIAL MASTER POPPITI:  That's great.
6    It seems to me that's, in light of what you have
7    described, it seems to me that somebody needs to take the
8    laboring order, as you just suggested, and get it done.
                            Page 37

Opp 1 exh C.txt
```
 9                    MR. MILLER:  I will do that, Your Honor.
10                    SPECIAL MASTER POPPITI:  And then we
11   will just use Friday as status unless somebody thinks
12   there is something that I can do to impact on the fact
13   that that document does not exist in this docket.
14                    MR. CHRISTENSON:  Thank you, Your Honor.
15                    SPECIAL MASTER POPPITI:  Are we
16   finished?
17                    MR. MILLER:  One last question, and,
18   that is, and I am not sure where in the point of order,
19   there are a number of other categories for which LPL
20   merely refused to designate a witness.
21                    Is that something we need to file a
22   motion to compel or --
23                    SPECIAL MASTER POPPITI:  You know, I
24   would like you all to deal with that promptly.  If it
```
⸎page 90
```
 1   cannot be dealt with -- and by "promptly," I mean during
 2   the course of the expected long business day that you are
 3   going to have tomorrow, then I want to be aware of that
 4   on Friday, and I will move everyone in the appropriate
 5   direction.
 6                    MR. MILLER:  Thank you, Your Honor.
 7                    SPECIAL MASTER POPPITI:  Anything else
 8   for this evening, then, please?
 9                    MR. CHRISTENSON:  I think all of the
10   other remaining issues we have can roll over until
11   Friday.
12                    SPECIAL MASTER POPPITI:  Okay.  Thank
13   you very much.  I look forward to the submission tomorrow
14   and working with you again on Friday.
15                    (The hearing was concluded at 8:10 p.m.)
16
17
18
19
20
21
22
23
24
```
⸎page 91
```
 1               C E R T I F I C A T E.
 2   STATE OF DELAWARE:
                       :
 3   NEW CASTLE COUNTY:
 4               I, Renee A. Meyers, a Registered Professional
 5   Reporter, within and for the County and State aforesaid,
 6   do hereby certify that the foregoing hearing was taken
 7   before me, pursuant to notice, at the time and place
 8   indicated; that the testimony was correctly recorded in
 9   machine shorthand by me and thereafter transcribed under
10   my supervision with computer-aided transcription; that
11   the foregoing hearing is a true record of the testimony
12   given; and that I am neither of counsel nor kin to any
13   party in said action, nor interested in the outcome
14   thereof.
15               WITNESS my hand and official seal this 1st day
16   of March A.D. 2007.
17
18
```
Page 38

Opp 1 exh C.txt

19          RENEE A. MEYERS
             REGISTERED PROFESSIONAL REPORTER
20          CERTIFICATION NO. 106-RPR
             (Expires January 31, 2008)

21
22
23
24