# THE BAYARD FIRM
A T T O R N E Y S

222 DELAWARE AVENUE, SUITE 900
P.O. Box 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE

www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395
WRITER'S DIRECT ACCESS

(302) 429-4208
rkirk@bayardfirm.com

FILED ELECTRONICALLY

April 9, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

      Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic,* C.A. No. 04-343 JJF

Dear Special Master Poppiti:

      This is Plaintiff LG.Philips LCD Co., Ltd.'s ("LPL") response to Defendants Tatung Company's and Tatung Company of America, Inc.'s (collectively, "Tatung") March 30, 2007 motion to compel LPL to allow Tatung to inspect Tatung products that are in LPL's possession (the "Motion"). Tatung does not need to inspect the products in LPL's possession for two simple reasons: i) Tatung made and assembled these products and thus only requires a serial number to confirm that a given product is a Tatung product, and LPL has offered to provide the serial numbers; and ii) Tatung expressly exempted such products from its document request. Therefore, the Motion should be denied.

      Tatung did not request (nor does it need) to inspect its own products that have been analyzed by LPL's counsel. Tatung's Motion cites to Request 57 from its First Set of Document Requests, which refers generally to documents and things. Subsequently, however, Tatung served Request 115, which is the more relevant Request, as it specifically seeks production of product samples, ***but excludes the Defendants' own products***. Request 115 asks LPL to produce "[s]amples of any and all 'rear-mounted products'... *other than* the ViewSonic VX900 and the Tatung L17AMTN . . . ." (Ex. B at Doc. Req. 115 (emphasis added).)[1] Importantly, and as this Court is aware, the ViewSonic VX900 and the Tatung L17AMTN were the only "accused products" identified at that point in the litigation. Although the universe of "accused products" has grown, the call of Tatung's request does not – it excluded the accused products. With Request No. 115, Tatung implicitly concedes both that: i) the earlier Request No. 57 did not target such product samples, or else Request No. 115 would not have been necessary; and ii) Tatung has no basis or need to inspect Tatung's own products.

---

[1] All Exhibits referenced herein are attached to LPL's Response to Tatung's Local Rule 7.1.1 Certification ("LR 7.1.1 Response"), which was submitted contemporaneously with this Response.

656699-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
April 9, 2007
Page 2

LPL therefore should not have to allow Tatung's counsel to inspect ***Tatung's own products*** that are disassembled and being reviewed and analyzed by LPL's counsel. Tatung claims that it must physically inspect its own products for two unpersuasive reasons: i) to confirm whether Tatung made the specific products in the possession of LPL's counsel, (*see* Mot. at 2); and ii) "to conduct its independent analysis with respect to infringement/noninfringement" (*id.* at 2-3). LPL objects because such an inspection is unnecessary, unduly burdensome and would potentially invade protected work product. (*See* Ex. A at LPL's Objecs. to Req. 57.) For example, the Tatung products that Tatung wants to inspect are being evaluated by LPL's attorneys. The products have been disassembled, labeled and notated as part of that review and the work necessary to conceal or undo all of LPL's attorneys' efforts just so that Tatung's attorneys can review the products in LPL's possession, would be substantial, unnecessarily burdensome and require LPL to risk revealing work product. Tatung continues to demand this intrusive inspection even though LPL has produced photographs of the relevant products, (*see* Bates nos. LPL 15995-17013), and has offered to identify for Tatung the unique serial numbers attached to each product.[2]

Tatung has not shown that its purported needs will not be satisfied by the information that LPL has offered to provide. Contrary to Tatung's assertions, federal courts have discretion when it comes to discovery issues and, moreover, courts recognize that inspections are burdensome even when attorney work product is not implicated. (*Cf.* Mot. at 1, fn. 1.) For instance, one of the authorities cited in Tatung's Motion found that "***[n]otwithstanding the relevance of the proposed inspection***, a challenge 'may be made on any ground that would support an application for a protective order under Rule 26(c).'" *Minn. Mining & Mfg. Co., Inc. v. Nippon Carbide Industries Co., Inc.*, 171 F.R.D. 246, 248 (D. Minn. 1997) (emphasis added) (internal citations omitted).) Furthermore, where a party responding to discovery "exercises its right under Rule 26(c), and objects to a Rule 34 inspection, ***the Court should balance the parties' conflicting interests***." *Id.* (emphasis added) (citing *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978)).)

None of the cases that Tatung cites in its Motion pertain to a party that was trying to inspect ***its own products***. To the contrary, the cases that Tatung cites generally involve scenarios where a party asked to inspect an opposing party's computers, products or factory operations specifically because the requesting party claimed it could not learn the information from any other source. Yet, Tatung relies on these same cases to infer that "in patent suits, inspections are commonplace." (Mot. at 2 (citing *Micro Chem., Inc. v. Lextron, Inc.*, 193 F.R.D. 667, 670 (D. Colo. 2000).) However, unlike the cases Tatung's cites, Tatung's inspection request is unnecessary and would, therefore, impose unnecessary burdens on LPL.

The authorities that Tatung cites actually support LPL's position. For example, in *Micro Chemicals*, the District Court reviewed a party's request to enter the opposing party's factory and perform tests on one of the opposing party's products. The court denied the motion precisely because the moving party already owned one of the opposing party's products which was at issue

---

[2] Notably, one week before filing its Motion, Tatung informed LPL and Your Honor that serial numbers could be sufficient to alleviate the need for an inspection, but has since changed its position and now unpersuasively insists on an inspection. (*See* Ex. U, Joint Status Report at 5.)

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
April 9, 2007
Page 3

and because that same product was available for purchase on the open market. *See id.* at 669-70. The court reasoned that an inspection was unnecessary because the moving party could perform all the testing that it wanted to perform on either the product it already possessed or on a product that could be purchased on the open market, all without interfering with the opposing party's confidential business operations. *Id.*

Additionally, the *Minnesota Mining* decision relies on standards and analysis used by the Fourth Circuit in *Belcher* support LPL's position here. *See generally Minn. Mining*, 171 F.R.D. at 248 (citing *Belcher*, 588 F.2d at 905-10). The *Belcher* court found that the requesting party must show an actual and sufficient need for the inspection:

> Neither rule 34 nor rule 26, the general discovery rule, permits blanket discovery upon bare skeletal request when confronted with an objection, as the plaintiffs seem to assume. ***Some degree of need must be shown.*** [...]
>
> ***Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted.*** We therefore reject the plaintiffs' contention that the inspection in this case must necessarily be governed by the general relevancy standard of rule 26(b). [...] Under [Rule 26(c)], the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection.

*Id.* at 908 (emphasis added) (internal citations omitted). The *Belcher* court prohibited the inspection, finding that the moving party must first resort to less intrusive and burdensome methods of discovery before an inspection would be warranted. *Id.* at 909; *see also Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 883 (3d Cir. 1981) (evaluating burdens that inspection would impose on resisting party).

Any Tatung products that LPL's counsel has in its possession were purchased on the open market. Tatung makes all of the product models that it wants to inspect. Because Tatung may more easily and less intrusively obtain its own products either from its own manufacturing and distribution facilities or on the open market, there is no need for LPL or its attorneys to expend time and resources to preparing for and monitoring an inspection by Tatung. Further, Tatung's proposed inspection and infringement analysis of the products might damage or materially alter LPL's only sample of an accused product, or reveal LPL's attorneys' thought processes or strategic considerations. Tatung has not shown why it cannot conduct its infringement analysis on its own products at its own facilities, rather than using those being analyzed by LPL's attorneys. *See Micro Chem.*, 193 F.R.D. at 669-70. Tatung has also not demonstrated why LPL should incur the costs and burdens of an inspection and has not demonstrated why LPL should risk exposing any of its work product to Tatung during such an inspection. Tatung's Motion should therefore be denied.

THE BAYARD FIRM

The Honorable Vincent J. Poppiti<br>
April 9, 2007<br>
Page 4

Respectfully submitted,

*[signature]*

Richard D. Kirk (rk0922)

cc: Counsel as shown on the attached certificate

656699-1

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on April 9, 2007, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document were sent by email to the above counsel on April 9, 2007, and will be sent by hand on April 9, 2007, and were sent by email on April 9, 2007, and will be sent by first class mail on April 9, 2007, to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Richard D. Kirk (rk922)
Richard D. Kirk