# CASE 2



588 F.2d 904                                                                                                                     Page 1
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

**Briefs and Other Related Documents**

United States Court of Appeals,
Fourth Circuit.
Alease BELCHER, Esther Britten, Willis T. Brown, George W. Conner, Joanna H. Conner, John R. France, Calvin M. Hairston, Lillie Mae Hairston, Vexter P. Hairston, Robert Hightower, Virginia W. Hightower, Vivian Hightower, Elizabeth Johnson, Charles Manns, Alma R. Martin, Blanche Menefee, Dorothy J. Moore, Genevive Neville, Frank E. Redd, Ben F. Shelton, Dora M. Swanson, Individually and on behalf of all persons similarly situated,
Appellees,
v.
BASSETT FURNITURE INDUSTRIES, INC., Bassett Chair Co., Bassett Furniture Co., J. D. Bassett Manufacturing Co., Bassett Superior Lines, Bassett Table Co.,
Appellants.
No. 77-1087.

Argued May 5, 1978.
Decided Dec. 5, 1978.

In an employment discrimination suit, the United States District Court for the Western District of Virginia, at Danville, James C. Turk, C. J., granted an inspection order to the plaintiffs, and defendants appealed. The Court of Appeals, Donald Russell, Circuit Judge, held that, the complaint containing only "boiler-plate" allegations and plaintiffs' motion for discovery being also of a general nature, failing to specify any reason or need for requested inspection of the employment premises, the trial court acted improvidently in granting such inspection on plaintiffs' original terms including inspection to be conducted over a five-day period by an identified but undescribed expert to be accompanied by a guide supplied by defendant and an entourage consisting of an unspecified number of plaintiffs' attorneys, paralegal and two plaintiffs.

Reversed and remanded with directions.

West Headnotes

**[1]** Federal Civil Procedure  184.10
170Ak184.10 Most Cited Cases
  (Formerly 170Ak184)
Normally, class action certification in employment discrimination suit should not be granted perfunctorily on basis of "boiler-plate" allegations, but, rather, it is ordinarily duty of trial court to hold evidentiary hearing before deciding whether to grant or deny class certification.

**[2]** Federal Courts  820
170Bk820 Most Cited Cases
Discovery rule has been amended to operate extrajudicially, but scope is defined by rule, and standard of review remains that granting or denying request is matter within trial court's discretion and will be reversed only if action taken was improvident and affected substantial rights. Fed.Rules Civ.Proc. rules 26(b), 34, 34(b), 28 U.S.C.A.

**[3]** Federal Civil Procedure  1616
170Ak1616 Most Cited Cases
In employment discrimination suit wherein complaint contained only "boiler-plate" allegations and plaintiffs' motion for discovery was also of general nature, failing to specify any reason or need for requested inspection of employment premises, trial court acted improvidently in granting such inspection on plaintiffs' original terms including inspection to be conducted over five-day period by identified but undescribed expert to be accompanied by guide supplied by defendant and entourage consisting of unspecified number of plaintiffs' attorneys, paralegal and two plaintiffs. Fed.Rules Civ.Proc. rules 26, 26(b)(1, 3), (c), 34 34(b), 37(a), 28 U.S.C.A.

**[4]** Federal Civil Procedure  1616
170Ak1616 Most Cited Cases
In most cases, on request for discovery, need is demonstrated by simply showing relevancy of desired discovery to cause of action, but when desired discovery concerns materials prepared in anticipation of trial, moving party must show that he has substantial need of materials and that he is unable without undue hardship to obtain substantial equivalence of the materials by other means. Fed.Rules Civ.Proc. rules 26, 26(b)(1, 3), (c), 34, 37(a), 28 U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

588 F.2d 904                                                                                                                Page 2
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

**[5]** Federal Civil Procedure ⚷1625
170Ak1625 Most Cited Cases
      (Formerly 170Ak1558.1, 170Ak1558)

**[5]** Federal Civil Procedure ⚷1572
170Ak1572 Most Cited Cases
Rule concerning production of documents and tangible things as well as inspection of premises is governed by standards of rule concerning showing of relevancy of desired discovery to cause of action, but request for inspection
of premises is not necessarily governed by such general relevancy standard, and, under rule providing for protective order, degree to which proposed inspection will aid in search for truth must be balanced against burdens and dangers created by inspection. Fed.Rules Civ.Proc. rules 26, 26(b), (b)(1, 3), (c), 34, 37(a), 28 U.S.C.A.

**[6]** Federal Civil Procedure ⚷1624
170Ak1624 Most Cited Cases
Precision and care should be exercised in formulation of inspection orders. Fed.Rules Civ.Proc. rules 26, 26(b), (b)(1, 3), (c), 34, 28 U.S.C.A.

 **\*905** J. W. Alexander, Jr., Charlotte, N. C. (L. Dale McGhee, Bassett, Va., Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellants.

John W. Douglas, Washington, D. C. (David J. Cynamon, Thomas S. Williamson, Jr., Covington & Burling, Richard T. Seymour, Lawyers' Committee for Civil Rights Under Law, Robert B. Wallace, Washington, D. C., Ruth L. Harvey, Danville, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

[1] The plaintiffs/appellees, a group of past and present employees of the defendant/appellant, have filed a discrimination action, both in their individual capacities and as class representatives, charging, in separate causes of action, both sex and racial discrimination. The allegations of discrimination **\*906** in both counts are stated in exactly the same "boiler-plate," standardized language, without any specification whatsoever of the individual claims of discrimination by any of the plaintiffs.[FN1] Without a hearing and acting entirely on the allegations of the complaint, the district court certified the action as a class action. It may not be amiss to state again what we have said in a number of recent cases that normally certification should not be granted perfunctorily on the basis of "boiler-plate" allegations such as we have here.[FN2] We have counseled that there should be some inquiry, often involving discovery, into the nature of the case both for the purpose of determining whether the case qualifies for certification and, if it does qualify, of identifying the class or classes certified.[FN3] Despite the fact that the district court has certified this as a class action without such an inquiry, there is no reason why it may not at any time reconsider that action and conduct an appropriate hearing on the propriety of the certification. This, however, is not the issue on which an interlocutory appeal was granted, and our statements are not to be taken as either approving or disapproving the class certification of the case.

    FN1. The complaint contains broad allegations concerning the hiring, assignment, transfer, and promotion of employees to certain desirable jobs. It alleges, in part, that the defendant has concentrated blacks and females in certain of the lowest paid and least desirable departments and job assignments while restricting certain of the highest paid and most desirable departments and job assignments to white male employees, yet it fails to identify any department, any assignment, or any employee specifically affected.

    FN2. Shelton v. Pargo, Inc. (4th Cir. 1978) 582 F.2d 1298, 1312; Doctor v. Seaboard Coast Line R. Co., 4 Cir., 540 F.2d 699, 707; See East Texas Motor Freight Sys., Inc. v. Rodriguez (1977) 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453. As noted recently by the fifth circuit, "(t)he propriety of class action suits can seldom be determined on the basis of pleadings alone, and, ordinarily, it is the duty of the trial court to hold an evidentiary hearing before deciding whether to grant or deny class certification." King v. Gulf Oil Co. (5th Cir. 1978) 581 F.2d 1184, 1186.

    FN3. Doctor v. Seaboard Coast Line R. Co., supra at 708-709 (540 F.2d). Certainly it is incumbent upon the court to determine that the named plaintiffs are members of the class they seek to represent. "(A) class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." East Texas Motor Freight Sys., Inc. v. Rodriguez, supra,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

588 F.2d 904                                                                                                    Page 3
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

431 U.S. at 403, 97 S.Ct. at 1896; See Tuft v. McDonnell Douglas Corp. (8th Cir. 1978) 581 F.2d 1304, 1307-08 (unmarried recipient of hysterectomy was improper representative of either married or pregnant women); Johnson v. American Credit Co. of Georgia (5th Cir. 1978) 581 F.2d 526, 532. See generally Goodman v. Schlesinger (4th Cir. 1978) 584 F.2d 1325, 1333.

The issue presented for appeal is whether the district court abused its discretion in granting a motion for discovery pursuant to Rule 34 of the Fed.R.Civ.P.[FN4] The plaintiffs' motion sought inspection of the five plants whose operations are in issue. The motion broadly states that the inspection is to be conducted over a five-day period by a designated expert. While the expert is identified, his special expertise is not described. Neither does the motion suggest the areas of inquiry to which his inspection is to be directed. The expert is to have the right to roam through the plants, to stop when he chooses, and to make such inquiries as he deems appropriate of any supervisors or employees in the plant. He is to be accompanied on his tour by a guide supplied by the defendant and an entourage consisting of an unspecified number of plaintiffs' attorneys, a paralegal, and two plaintiffs. One of defendant's attorneys, if defendant so desires, might be included in the party.

> FN4. The interlocutory appeal was certified pursuant to 28 U.S.C. s 1292(b) (1970). All rules cited are to the Federal Rules of Civil Procedure.

The district court, without awaiting any response to the motion by the defendant and without a hearing, initially granted the motion as requested by the plaintiffs. The defendant promptly moved for reconsideration and filed a response vigorously objecting to the inspection. The court granted the motion to reconsider and held a hearing at which the plaintiffs and the defendant, by their counsel, were heard.

*907 After rehearing, the district court granted the inspection on the plaintiffs' original terms, finding that the allegations of blacks being relegated to lower paying and less attractive jobs placed the defendant's physical premises in issue in this suit, and inspection might reveal "significant" evidence not discernable through a review of documents alone. What that "significant" evidence might be was unspecified. The court did, however, direct that questioning of employees be kept to a minimum, and that no questions concerning alleged discrimination be asked. Just what questions were deemed proper, however, was not specified.

[2][3] The sole issue confronting us is whether the trial court's authority to order inspection was properly exercised. "Granting or denying a request under rule 34 is a matter within the trial court's discretion, and it will be reversed only if the action taken was improvident and affected substantial rights." Tiedman v. American Pigment Corporation (4th Cir. 1958) 253 F.2d 803, 808. Although rule 34 has since been amended to operate extrajudicially, its scope is defined by rule 26(b), and the standard of review expressed in Tiedman is applicable. See McDougall v. Dunn (4th Cir. 1972) 468 F.2d 468, 476. We believe the trial court acted improvidently in this case.

The motion which the plaintiffs submitted and which the court approved is, like their complaint, of a general nature. It fails to specify any reason or need for the inspection, relying simply on rule 34. The defendant raised numerous specific objections to the order, none of which, apparently, persuaded the district court. Defendant objects both on constitutional grounds [FN5] and on the language of the rule itself. Defendant maintains that an inspection such as the plaintiffs seek is entirely beyond the confines of rule 34, as that rule embraces only the inspection of property, not the interrogation of persons. Moreover, the defendant claims that the motion fails to specify the items to be inspected with the particularity required by rule 34. This argument is founded on the statement in rule 34(b):

> FN5. Inspection and production orders have long been considered constitutional, and we find no merit in this aspect of defendant's argument. See Montana Co. v. St. Louis Mining etc. Co. (1894) 152 U.S. 160, 168-69, 14 S.Ct. 506, 38 L.Ed. 398.

The request shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity.[FN6]

> FN6. See, generally, 4A Moore's Federal Practice P 34.07, at 34-50 to 34-56 (2d ed. 1978).

The defendant directs, however, a large part of its argument against the order to the burden upon its operations and the alleged unfairness of the proposed inspection, as well as the absence of legal precedent

588 F.2d 904                                                                                                                        Page 4
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

for the inspection. It claims that inspections during working hours will consume considerable time at company expense, will interfere with plant operations, and will jeopardize the safety of those persons near dangerous machinery. This is particularly true, it says, of the request to interrogate employees at their work. Defendant conducts its operations on a conveyorized-type system, each step of production thereby being dependent upon the preceding steps. The defendant maintains that, under such a manufacturing procedure, a cessation of work by any given employee for purposes of interrogation will cause a production breakdown along the entire production line. Moreover, if the questioning of employees at work is to be conducted by a large group unfamiliar with the plant, the defendant contends that a serious safety hazard arising from the proximity of such unfamiliar persons to the operating machinery will be created. The interrogation of the employees, conducted informally, would also be, in the opinion of the defendant, tantamount to a roving deposition, taken without notice, throughout the plants, of persons who were not sworn and whose testimony was not recorded, and without any right by the defendant to make any objection to the questions asked. Presumably, on the basis of such interrogations, the expert would base his testimony.

 *908 [4] Neither rule 34 nor rule 26, the general discovery rule, permits blanket discovery upon bare skeletal request when confronted with an objection, as the plaintiffs seem to assume.[FN7] Some degree of need must be shown. In most cases, this need is demonstrated by simply showing the relevancy of the desired discovery to the cause of action.[FN8] This, indeed, is the general policy as stated in rule 26(b)(1). But when the desired discovery concerns materials prepared in anticipation of trial, the moving party must show that he has substantial need of the materials, and that "he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).[FN9]

> FN7. Rule 34 contemplates extrajudicial discovery, but provides for determination of the issue when confronted with objections. The court may compel discovery under rule 37(a) and provide protective provision under rule 26(c).

> FN8. See, e. g., Babcock & Wilcox Co. v. Public Serv. Co. of Indiana (S.D.Ind.1976) 22 F.R.Serv.2d 340, 341; Community Sav. & L. Ass'n. v. Federal Home Loan Bank Bd. (E.D.Wis.1975) 68 F.R.D. 378, 381; White v. Jaegerman (S.D.N.Y.1970) 51 F.R.D. 161, 163.

> FN9. See McDougall v. Dunn, supra, at 473 (468 F.2d); Guilford National Bank of Greensboro v. Southern Ry. Co. (4th Cir. 1962) 297 F.2d 921, 923-24.

 [5] Rule 34, concerning the production of documents and tangible things as well as inspection of premises, is governed by the standards of rule 26(b). There is not, however a clear indication of which standard defined by 26(b) is to control the proposed inspections. The conflicts in the courts which led to the 1970 amendments centered almost entirely around the production of documents. Consequently, the realignment of rules 34 and 26, along with the advisory committee's notes, largely concerned documents.[FN10] Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted. We therefore reject the plaintiffs' contention that the inspection in this case must necessarily be governed by the general relevancy standard of rule 26(b). Rule 26(c) expressly provides that "for good cause shown," the court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by either denying inspection or by appropriate restrictions on the inspection.[FN11] Under this subsection, the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection.[FN12]

> FN10. Prior to 1970, a showing of "good cause" was a requirement for all discovery under rule 34. The advisory committee found that in actual practice, good cause was required only in trial preparation materials cases while mere relevancy was sufficient for production of other documents. The committee accordingly wrote the varying standards into rule 26 and dropped the good cause requirement from rule 34. In so doing, however, it gave no indication as to what standard would govern the second part of rule 34, I. e., inspection of a party's premises. See Advisory Committee's Note, 48 F.R.D. 487, 498 (1970); 8 Wright & Miller, Federal Practice and Procedure s 2205 at 596-597 (1970). Some recent commentators have suggested that upon contest of a rule 34 motion, traditional concepts of "good cause" once again become important. Hughes &

Case 1:04-cv-00343-JJF    Document 627-3    Filed 04/09/2007    Page 6 of 8

588 F.2d 904                                                                                                                    Page 5
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

> Anderson, Discovery: A Competition Between the Right of Privacy and the Right to Know, 23 U.Fla.L.Rev. 289, 299 (1971).
>
> FN11. For a recent illustration of the use of such power, See Gentron Corp. v. H. C. Johnson Agencies, Inc. (E.D.Wis.1978) 79 F.R.D. 415, 418-419.
>
> FN12. See 8 Wright & Miller, Federal Practice & Procedure s 2040, at 286-287 (1970). As recognized by the commentators: * * * (i)t is clear that the right to discovery is a qualified right that does not extend to making unnecessary and unwarranted excursions onto the property of another under the guise of supportable litigative need. Public policy supports reasonable and necessary demands for information in the hands of the adversary, in order that the case may be well and truly tried. But any such invasion of a person's property rights must, in the language of our Supreme Court, 'be judged with care . . . . Properly to balance these competing interests is a delicate and difficult task.'
> Hughes & Anderson, Supra, at 291 (quoting Hickman v. Taylor, 329 U.S. 495, 497, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).
> In the recent more liberalized trend of granting inspection orders, the courts have uniformly scrutinized the problems to insure that the anticipated benefits are real and necessary, and that the burdens will not be intolerable. See, e. g., National Dairy Products Corp. v. L. D. Schreiber & Co., Inc. (E.D.Wis.1973) 61 F.R.D. 581, 583 (patent infringement); United States v. National Steel Corp. (S.D.Tex.1960) 26 F.R.D. 603, 606-607 (antitrust).

 *909 On balance, it can be seen that the order here indicates but small utility to be derived from the inspection. Neither the complaint, nor the motion for discovery, nor the court's order itself specifies any manner of discrimination or any department or job classifications in which such discrimination has occurred, despite the fact that each of defendant's plants is divided into several large departments, which in turn consist of several hundred job classifications. The district court's order simply states that the defendant's premises have been placed in issue by the allegation that black employees have been relegated to lower paying and less attractive jobs. The proposed inspection certainly cannot aid in determining pay scales any more easily than can interrogatories or a study of the defendant's records. [FN13] The inspection must, then, relate solely to the desirability of certain jobs. Yet the order specifies no jobs which are to be surveyed either for determination as less desirable or for preferences, and no departments which are suspect. Despite the objections raised by the defendant, the plaintiff has made no effort to establish either the area of inquiry to which the inspection is to be directed or why, by the depositions of the plaintiffs or others in similar status, they cannot more easily and more reliably establish which jobs are less desirable or better paying than an expert witness could by roaming through the plants addressing random inquiries to employees he may encounter at work in the plants. Indeed, it would seem that an expert's testimony on the basis of sworn testimony of actual employees or former employees, given under oath at trial or by deposition, would be far more reliable and persuasive in fact, less open to objections for admissibility than the hearsay unrecorded statements of unidentified employees, about whose exact language there might be serious dispute. Under the circumstances, it is difficult to see how the proposed inspection can have any meaningful direction.

> FN13. Over a period of approximately three and one-half years, the plaintiffs have had virtually unlimited access to defendant's personnel data, and have copied some 60,000 records.

 Notwithstanding their extensive discovery efforts so far, the plaintiffs have not sought to depose any employee engaged in the manufacturing process. Had they done so, they would be in a position to specify, with the particularity demanded by rule 34, the alleged discrimination that they seek to expose in the actual operations of the plant or in the activities of the several units of the defendant's operating procedure. Establishing such a predicate would go far toward fulfilling the purposes of discovery by doing what neither the plaintiffs' motion nor the order of the district court does, I. e., defining preliminarily the areas of inquiry.

 The anticipated benefits of the inspection thus appearing slight, the disadvantages, particularly to the defendant, are substantial. The purpose of the inspection, according to the court's order, is to uncover evidence relating to the allegation that blacks have been relegated to less attractive jobs than have been whites. Both the plaintiffs' motion and the court's order indicate that the questioning will be directed to

588 F.2d 904                                                                                                           Page 6
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

this end. Such questioning would necessarily touch on what appears to be one of the plaintiffs' possible claims of discrimination; [FN14] it would, therefore, violate the restriction placed by the court on the questioning. Yet, as we have observed, there is no provision whereby the defendant can be protected against such questioning, or whereby the answers can be substantiated. Any opinions gathered by the expert through such one-sided questioning, going inescapably to one of the issues on discrimination, would consist in large part of unsubstantiated hearsay. While the presence of defendant's attorneys will give the interrogations the appearance of depositions, the safeguards of true depositions will be absent. The **\*910** employees will not be under oath, their answers will not be recorded, and they will not be subject to cross-examination. The plaintiffs' suggestion that defendant's attorneys could control the questioning, objecting to certain questions or instructing employees not to answer them, would, at the very least, lead to confusion and disruption in the assembly line setting. The very suggestion itself lends credence to the suspicion that the interrogations are intended as substitutes for depositions. The requirements and safeguards prescribed by the Federal Rules for deposing witnesses cannot be so easily circumvented.

> FN14. We say "possible" because the complaint does not specify, except in the most general terms, the discrimination.

We see no reason why the plaintiffs should not engage in normal methods of deposing witnesses prior to requesting the sweeping relief they seek here. Although the Federal Rules do not prescribe an order of preference for discovery techniques,[FN15] one method cannot arbitrarily be demanded over another simply because it is less burdensome to the moving party. Depositions do much to identify the items of discovery and to establish the rights of the parties under rule 34.[FN16] The information concerning job desirability, if that is to be the subject of the expert's inspection, can be obtained, as we have already observed, far more easily and reliably in the judicial atmosphere surrounding deposition than in the inspection atmosphere anticipated by the order. And if the testimony taken by depositions should prove unsatisfactory or if they could be profitably illuminated by testimony gleaned from a visual inspection, it would be time enough to consider an order for a simple inspection of the plants.

> FN15. See Wright v. Patrolmen's Benev. Ass'n. (S.D.N.Y.1976) 72 F.R.D. 161, 164.

> FN16. Niks v. Marinette Paper Co. (N.D.N.Y.1951), 11 F.R.D. 384, 386; Cf. Public Administrator v. Rogers (S.D.N.Y.1960) 26 F.R.D. 118, 119 (desirability of interrogatories in identifying specific documents).

Neither counsel's directions nor our own research has led us to compelling precedent for the type of inspection sought here. Most cases involving on-site inspections concern a given object on the premises which is the subject matter of the action, as, for example, a particular machine in a personal injury or patent infringement case.[FN17] An antitrust case may involve actual processes, but will not ordinarily permit or require random interrogation of employees in the course of inspection.[FN18] The only case we have found involving broad inspection powers coupled with interrogations is the recent case of Morales v. Turman (E.D.Tex.1972) 59 F.R.D. 157.

> FN17. See, e. g., National Dairy Products Corp. v. L. D. Schreiber & Co., supra, 61 F.R.D. 581 (patent infringement); Cox v. E. I. Du Pont de Nemours & Company (D.C.S.C.1965) 38 F.R.D. 396 (wrongful death); Cf. Martin v. Reynolds Metals Corporation (9th Cir. 1961) 297 F.2d 49 (inspection of cattle, vegetation, water and soil where deaths of cattle were bases for anticipated tort action).

> FN18. See United States v. National Steel Corp. (S.D.Tex.1960) 26 F.R.D. 603.

Morales involved serious constitutional questions concerning the operations of various juvenile institutions operated by the Texas Youth Council. The inspection order allowed two experts to be placed in each of two institutions for a period of up to thirty days. They were to engage in all the activities of the juveniles, and could converse with the inmates and staff as they deemed necessary. While the order seemingly was quite broad, it was qualified by a substantial predicate, both by testimony and exhibits, of the activities to be inspected, along with identification of the experts and opportunity for the defendant to controvert them. The court considered the issue of inconvenience and found and this is the distinguishing feature of the case that since sizable groups of graduate students had been permitted to conduct studies of the same general character as that sought by the plaintiffs on the premises in the past, the defendant was in no position to make the claim authorized in Rule 26(c). [FN19] The unique order of

588 F.2d 904 Page 7
588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546
**(Cite as: 588 F.2d 904)**

Morales provides no basis for a similar order here.

> FN19. Id. at 158-159. The plaintiffs seek to identify with Morales by asserting that the defendant permits groups of visitors to go through its plants. But these tours are carefully controlled. They involve no questioning of employees; they admit of no approach to the manufacturing chain both to avoid any hazard to the visitor and to prevent any disruption of work by the employees. We see no real similarity between such tours and the form of inspection requested by the plaintiffs. This fact clearly distinguishes this application for inspection from that in Morales.

 *911 [6] The Morales case, like most other inspection cases, does demonstrate the necessity of exercising precision and care in the formulation of inspection orders. This care is altogether lacking in the present case as the order well demonstrates. It fails to identify the items to be inspected with any degree of particularity, fails to insure the reliability of the information to be gained, and provides inadequate protection for the defendant. We believe the proposed interrogations pose a risk of creating highly unreliable evidence. On the present showing, the plaintiffs were not entitled to the order as granted and we find its issuance improvident.

 Finding the order to have been improvidently granted and affecting substantial rights of the defendant, we vacate it and remand the matter to the district court for further action not inconsistent with the principles stated here.

 REVERSED and REMANDED WITH DIRECTIONS.

 588 F.2d 904, 18 Fair Empl.Prac.Cas. (BNA) 1078, 18 Empl. Prac. Dec. P 8704, 26 Fed.R.Serv.2d 546

**Briefs and Other Related Documents (Back to top)**

• 1977 WL 203358 (Appellate Brief) Brief for Defendant-Appellant (May. 01, 1977)Original Image of this Document (PDF)

• 1977 WL 203359 (Appellate Brief) Reply Brief for Defendants-Appellant (Apr. 15, 1977)Original Image of this Document (PDF)

• 1977 WL 203357 (Appellate Brief) Brief for Plaintiffs-Appellees (Mar. 30, 1977)Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.