# CASE 4



651 F.2d 877 Page 1
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

United States Court of Appeals,
Third Circuit.
COMPAGNIE DES BAUXITES DE GUINEA
v.
INSURANCE COMPANY OF NORTH AMERICA,
et al.
No. 80-2416.

Argued April 21, 1981.
Decided June 10, 1981.
As Amended June 16, 1981.
Rehearing and Rehearing In Banc Denied July 7,
1981.

Action was filed seeking recovery from excess insurers on insurance claim. Excess insurers subsequently filed suit seeking to rescind excess insurance contract alleging that insured failed to disclose material facts relating to the contract. Insured moved to enjoin carriers from pursuing English suit on ground that it raised issues identical to those in district court action. The United States District Court for the Western District of Pennsylvania, Paul A. Simmons, J., enjoined insurers from pursuing action, and they appealed. The Court of Appeals, Aldisert, Circuit Judge, held that: (1) district court's decision to take as established for purpose of action that the insurers had sufficient minimum contacts with Pennsylvania, in response to insurers' failure to comply with discovery orders issued to determine the existence of such contacts, was an appropriate exercise of its discretion, and (2) district court abused its discretion when it enjoined action seeking declaratory judgment in England's High Court of Justice, Queen's Bench Division.

Ordered accordingly.

Gibbons, Circuit Judge, dissented in part and filed opinion.

Gibbons, Circuit Judge, would grant petition for rehearing for reasons set forth in his dissenting opinion.

West Headnotes

**[1] Federal Courts** 96
170Bk96 Most Cited Cases
Defendant's challenge to court's in personam jurisdiction imposed on the plaintiff the burden of coming forward with facts, by affidavit or otherwise, in support of personal jurisdiction.

**[2] Constitutional Law** 305(6)
92k305(6) Most Cited Cases

**[2] Federal Courts** 79
170Bk79 Most Cited Cases
In asserting jurisdiction over a foreign corporation, only minimal contacts with a forum state are required to satisfy due process. U.S.C.A.Const. Amends. 5, 14.

**[3] Federal Civil Procedure** 1534
170Ak1534 Most Cited Cases
When answer to an interrogatory is contained in business records and the burden of ascertaining the answer is substantially the same for both parties, the respondent may answer by specifying the relevant records and allowing an opportunity to examine them.

**[4] Federal Civil Procedure** 1623
170Ak1623 Most Cited Cases
Generally, inspection is required when requested material is so voluminous that copying and transporting it would prove unduly burdensome and oppressive, or where distance between the parties is great.

**[5] Federal Civil Procedure** 1624
170Ak1624 Most Cited Cases
Where plaintiff's request for documents was not burdensome, and excess insurers, who alleged that they would have to contact hundreds of London brokers, would not be greatly burdened, district court did not abuse its discretion in ordering that necessary documents be brought to Pittsburgh for examination by plaintiff instead of requiring plaintiff to inspect records at the home office of each of 21 insurance companies; moreover, excess insurers offer to permit home office inspection was made quite late in the proceedings. Fed.Rules Civ.Proc. Rule 34, 28 U.S.C.A.

**[6] Federal Courts** 848
170Bk848 Most Cited Cases
Appellate court is not free to substitute its judgment for that of the trial court, because rules have invested the court of first instance with the expression of judgment in imposition of sanctions for failure to comply with discovery order; review function is not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

651 F.2d 877                                                                                                          Page 2
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

plenary, rather, to disturb exercise appellate court must find an abuse of authority, not merely the presence of an alternative reasonable choice. Fed.Rules Civ.Proc. Rule 37(b), 28 U.S.C.A.

### [7] Federal Civil Procedure 1636.1
170Ak1636.1 Most Cited Cases
            (Formerly 170Ak1636)
District court's decision to take as established for purposes of action seeking recovery on insurance claim that insurers had sufficient minimum contacts with Pennsylvania, in response to the insurer's failure to comply with discovery order issued to determine the existence of such contacts, was an appropriate exercise of discretion, in that excess insurers negligently or deliberately flouted the district court's order compelling discovery and, furthermore, insurers could not have been unfairly surprised by imposition of sanction since district court gave ample warning of the sanction it would impose. Fed.Rules Civ.Proc. Rule 37(b), (b)(2), 28 U.S.C.A.

### [8] Constitutional Law 305(6)
92k305(6) Most Cited Cases
Determination that district court had personal jurisdiction over excess insurers because of business contacts in Pennsylvania deemed established as a sanction for failure to make discovery did not violate the Fifth Amendment due process rights of the excess insurers, in that sanction was carefully tailored to fit the situation, and only the facts necessary to establish the minimum contacts needed to justify personal jurisdiction in action were taken as established pursuant to the sanction. Fed.Rules Civ.Proc. Rule 37(b), (b)(2), (b)(2)(A), 28 U.S.C.A.

### [9] Federal Courts 96
170Bk96 Most Cited Cases
District court erred in determining that it had personal jurisdiction over three insurance companies, which complied with discovery order by filing affidavits stating that they had issued no policies covering risks located in Pennsylvania or associated with plaintiff or Pittsburgh office of insurance brokerage firm, in action seeking recovery on insurance claim, in that contacts with Pennsylvania were inadequate to justify the exercise of personal jurisdiction pursuant to long-arm statute, and record disclosed no evidence that such companies deliberately availed themselves of the privilege of doing business within state, or indeed that they had any contacts which would justify reasonable expectation of being haled into court there.

### [10] Courts 516
106k516 Most Cited Cases
District court abused its discretion when it enjoined action seeking declaratory judgment in England's High Court of Justice, Queen's Bench Division, in that duplication of issues in district court action seeking recovery on insurance claim and foreign action seeking rescission of underlying insurance contracts and insurers' delay in filing London action did not justify breach of comity among courts of separate sovereignties.

### [11] Federal Courts 589
170Bk589 Most Cited Cases
Appeal from order denying appellant's motion to dismiss action seeking recovery on insurance claim on basis of forum non conveniens was dismissed for lack of jurisdiction, in that order was inherently interlocutory since it did not terminate any phase of the litigation. 28 U.S.C.A. § § 1291, 1292.

 **\*879** Edmund K. Trent (Argued), Thomas P. Lawton, III, Reed, Smith, Shaw & McClay, Pittsburgh, counsel for appellants.

 Cloyd R. Mellott, Dale Hershey (Argued), Robert W. Doty, Jordan S. Weltman, Eckert, Seamans, Cherin & Mellott, Pittsburgh, counsel for appellee, Compagnie des Bauxites de Guinea.

 Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

                  OPINION OF THE COURT

 ALDISERT, Circuit Judge.

 The question presented for review is whether the district court erred in enjoining the defendants from pursuing an action in England's High Court of Justice, Queens Bench Division, which sought to rescind excess insurance contracts covering business interruptions of a Delaware corporation doing business in an African country. A threshold inquiry requires us to decide if the district court had jurisdiction over the defendants. We conclude that the court properly exercised personal jurisdiction over eighteen of twenty-one insurance companies and reverse the grant of the injunction.

                              I.
 This is an unfortunate case filed in the district court in 1975 which still admits of no resolution on the merits but bears the scars of over five years of pre-trial skirmishing.[FN1] The appellee, Compagnie des **\*880** Bauxites de Guinea (CBG), a Delaware Corporation owned by Halco (Mining), Inc. (51%) and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

651 F.2d 877                                                                                                    Page 3
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

Republic of Guinea (49%), mines and sells bauxite. CBG operates only in Guinea; it is not registered to do business in Pennsylvania and conducts no business in the United States.

> FN1. The insurers have unsuccessfully appealed various aspects of the present case to this court on two previous occasions. No. 79-1511 (dismissed July 2, 1979) (motion to dismiss); No. 79-1513 (denied April 30, 1979) (stay of preliminary injunction).

Acting as an agent for CBG, Halco obtained insurance coverage through the Pittsburgh office of Marsh & McLennan, an insurance brokerage firm. The coverage insured against losses up to $20,000,000 from business interruptions caused by breakdowns at CBG's processing plant in Guinea. The Insurance Company of North America, not a party to this appeal, insured the first $10,000,000 of loss; the appellants, a group of twenty-one foreign insurance companies, provided excess coverage of $10,000,000 on contracts issued through a London broker.

As is customary in London, the lead underwriter circulated a "placing slip" among representatives of interested insurance companies indicating the risks to be covered and the total coverage requested. The representatives then initialed the placing slip, indicating the percentage of risk their companies were willing to assume. After the coverage was fully subscribed the London broker prepared a "cover note" listing briefly the details of the risk and the premium. An actual policy is seldom issued at this stage and none was issued here. Instead, the excess insurers adopted the form of the INA policy "as far as applicable." App. at 136a.

Because of damage to its bauxite crushing plant, CBG presented a claim on its insurance coverage and the insurers refused to pay. CBG filed a complaint in December, 1975, in the Western District of Pennsylvania against all the insurance companies, asserting jurisdiction based on diversity of citizenship. 28 U.S.C. s 1332(a). Almost four years later, while still participating in the pre-trial stages of this case, the excess insurers filed suit in England on March 22, 1979, seeking to rescind the excess insurance contract alleging that CBG failed to disclose material facts relating to the contract. CBG then moved the district court to enjoin the carriers from pursuing the English suit on the ground that it raised issues identical to those in the case at bar. After a hearing, the district court granted the motion, providing the order that is the subject of this appeal under 28 U.S.C. s 1292(a)(1).

II.

A district court must have personal jurisdiction over a party before if can enjoin its actions. See Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 112, 89 S.Ct. 1562, 1570, 23 L.Ed.2d 129 (1969). The lack of jurisdiction is the initial question raised by the excess insurers.[FN2] The district court found personal jurisdiction under two independent theories. First, it held that the appellants' activities placed them within reach of the Pennsylvania long-arm statute. 42 Pa.Cons.Stat.Ann. ss 8301-8311 (repealed June 27, 1978; current version at 42 Cons.Stat.Ann. s 5322). Alternatively, the district court took as established, pursuant to Fed.R.Civ.P. 37(b)(2)(A), that it had personal jurisdiction as a sanction for the insurers' failure to comply with the court's order compelling discovery. The rule provides that "(i)f a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make ... (a)n order that ... designated facts shall be taken to be established for the purposes of the action...."

> FN2. Seventeen of the twenty-one insurers appeal from the finding of lack of in personam jurisdiction. App. At 81a. Eagle Star Insurance Co., Ltd., Hanover Insurance Co., Home Insurance Co., Ltd., and Turegum Insurance Co., Ltd. concede personal jurisdiction. All of the insurers appeal from the order granting the permanent injunction as well as the denial of the motion to dismiss for forum non conveniens.

[1] A defendant's challenge to the court's in personam jurisdiction imposes on the plaintiff the burden of "com(ing) forward with facts, by affidavit or otherwise, in support of personal jurisdiction." DiCesare-Engler Productions, Inc. v. Mainman Ltd., 81 F.R.D. 703, 705 (W.D.Pa.1979); see ***881** also Amba Marketing Systems, Inc. v. Jobar International, Inc., 551 F.2d 784, 787 (9th Cir. 1977). CBG had the ultimate burden of proving that the activities of the insurance companies brought them within the scope of the Pennsylvania long-arm statute.

[2] The long-arm statute sets forth two independent tests for the assertion of in personam jurisdiction over foreign corporations. A court may exercise jurisdiction over a foreign corporation found to be doing business in Pennsylvania as the statute defines doing business. Alternatively, the assertion of jurisdiction over a foreign corporation is permitted so long as that assertion does not contravene the due

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

651 F.2d 877                                                                                                                                   Page 4
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

process clause prohibition against assertions of jurisdiction that "offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); see generally World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980). Only minimal contacts with the forum state are required to satisfy due process. See McGee v. International Life Insurance Co., 355 U.S. 220, 222-23, 78 S.Ct. 199, 200-201, 2 L.Ed.2d 223 (1957); Aldens, Inc. v. Packel, 524 F.2d 38, 42-44 (3d Cir. 1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

### III.

CBG sought by means of discovery to obtain evidence to meet its burden of proving either that the insurers were doing business in Pennsylvania or that there were sufficient contacts to satisfy due process. On August 9, 1976, it began what was to become a three-year discovery odyssey by serving a request on each defendant for copies of all business interruption insurance policies issued between January 1, 1972 and December 31, 1975, as well as all documents related in any way to the claim being made here. App. at 66a-69a. The carriers objected to the discovery request on January 24, 1977, claiming that compliance "would be extremely expensive and burdensome." Id. at 72a. CBG responded on May 12, 1977, by filing a motion to compel production. Id. at 74a. Over a year passed before the district court ruled on CBG's motion and ordered the excess insurers to produce the relevant documents. Id. at 515a-16a. During the interim, the insurance companies pressed their claim that the court did not have personal jurisdiction but did not relate that claim to the discovery order.

On May 20, 1977, seventeen of the twenty-one excess insurers filed a motion for summary judgment, contending that the complaint should be dismissed because the district court lacked personal jurisdiction over them. Id. at 78a-86a. According to the allegations of the motion and the supporting affidavits, none of these insurance companies was organized, licensed, or authorized to do business under the laws of Pennsylvania.[FN3] The excess insurers therefore concluded that the exercise of personal jurisdiction over them would constitute "a clear-cut violation of due process." Id. at 81a.

> FN3. Two of the insurance companies questioning the district court's in personam jurisdiction, Excess Insurance Co., Ltd. and English & American Insurance Co., Ltd., are registered as surplus line carriers in Pennsylvania, Pa. Stat. Ann. tit. 40 s 1006.6, and have designated agents for service of process, id. at s 1006.8. They argue that these facts should not distinguish them from the other fifteen insurers. We do not find it necessary to address that argument.

In an affidavit opposing the motion for summary judgment, CBG claimed that between 1971 and 1975, various excess insurers had participated in at least ten insurance contracts connected with CBG's operations in Guinea wherein the insurers agreed to be subject to suit in the United States. Id. at 172a-73a. A second affidavit contains a more general list of the contracts involving CBG and each of the excess insurance companies in which the Pittsburgh office of Marsh & McLennan acted as CBG's agent. Id. at 177a.

**\*882** Recognizing, however, that the full extent of the insurers' contacts with Pennsylvania could only be determined by examining the insurers' records, CBG renewed its request for the production of "all cover notes and/or insurance policies wherein any of the excess insurer defendants participated as an insurer ... which ... were delivered in ... Pennsylvania and/or covered a risk located in ... Pennsylvania." Id. at 194a. This request of July 14, 1978, narrowed CBG's earlier discovery request of August 9, 1976, to encompass only policies with some logical relationship to Pennsylvania. The excess insurers again objected on the ground that the request included documents beyond the legitimate scope of discovery and that the request was unduly burdensome and oppressive. Id. at 195a-96a.

On July 27, 1978, the district court attempted to resolve the motions for production of documents by ordering the insurance companies to "furnish the names of the policies and the numbers and sort of a general outline of the policies, not in detail, of all the (Pennsylvania related) policies they (had) written from 1971 to date." Id. at 516a; see Fed.R.Civ.P. 37(a). Counsel for the carriers argued that obtaining the policies was no simple task because the policies would be available only in the files of London brokers. To satisfy CBG's request, "over 150 London brokers" would have to search through "hundreds of thousands of documents." App. at 517a. The district court found, however, that the request was not burdensome and that the process could be expedited by contacting the brokers immediately through form letters. Id. at 518a. The court granted the excess insurers' request for ninety days in which to comply with the order.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The insurers never questioned the district court's power to order production of their records. They recognized that the court had jurisdiction to determine whether it could properly exercise personal jurisdiction over them and therefore that it could compel discovery to aid in the resolution of that issue. See English v. 21st Phoenix Corp., 590 F.2d 723, 728 n.5 (8th Cir.), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); In Re Uranium Antitrust Litigation, 480 F.Supp. 1138, 1151 (N.D.Ill.1979).

By October 25, 1978, the insurance companies were in violation of the order and asked for an additional thirty days to comply, representing to the court that "(c)ounsel has sought to secure the information necessary to answer plaintiff's interrogatories and will probably be able to complete the answers within thirty days from this date." [FN4] App. at 309a. (emphasis added). The court again granted their request. Although the excess insurers still had not produced any of the requested documents, the district court granted a final extension on December 21, 1978, giving the carriers until February 21, 1979, to comply with the discovery order. When granting the extension, the court warned the excess insurers that failure to produce the requested documents within this additional sixty days would result in the imposition of a sanction under Fed.R.Civ.P. 37(b)(2)(A) consisting of a finding of in personam jurisdiction. Id. at 542a.

> FN4. In answering the insurers' motion for an extension, CBG noted that no interrogatories remained unanswered. App. at 316a. We agree, and assume that the excess insurers and the district court, in granting the motion, were referring to the order to produce documents.

At the close of the sixty day period, the excess insurers had produced only a few of the documents requested. The record indicates that no request that the English brokers forward the relevant policies was made until January 1979. Id. at 337a. This modest attempt to comply with the court order was not begun until long after the ninety day period the excess insurers requested in July 1978, and at least two months after their counsel represented to the court in Pittsburgh that the material would be forthcoming within thirty days. These facts make it difficult to conclude that the excess carriers made a good faith effort to comply with the court's orders of July 27, 1978 and November 8, 1978. It is one thing not to produce discovery material on time; *883 it is quite another thing not even to begin to produce it.

On April 19, 1979, the district court "impose(d) a sanction consisting of a finding that the Excess Insurers are subject to the in personam jurisdiction of this Court because of their business contacts in Pennsylvania." Id. at 667a; see Fed.R.Civ.P. 37(b)(2)(A). The sanction was carefully limited to the action before the court; only the facts necessary to exercise personal jurisdiction were taken as established. See English v. 21st Phoenix Corp., 590 F.2d at 728.

One month earlier, the excess insurers had filed suit in the High Court of Justice in London seeking to rescind the underlying insurance contract with CBG, contending that CBG had misrepresented material facts concerning the subject matter of the coverage. CBG then moved that the district court enjoin the insurers from pursuing the English action, claiming that it involved the same issues as the present case and was filed merely to harass CBG. App. at 342a-45a. Concluding that the English suit was duplicative, the district court granted CBG's motion for a preliminary injunction, App. at 674a, and on August 5, 1980, permanently enjoined the insurers from pursuing the English action during the pendency of the present case. Id. at 476a-77a.

IV.

The insurers attempt to justify their failure to produce the requested documents, arguing that they complied with the discovery order of the district court by offering to make the documents available for inspection by CBG at their home offices in London and Brussels. We are not persuaded by this argument.

[3][4][5] As a general principle, a trial court has discretion to order one party to produce its records for another party during discovery. Fed.R.Civ.P. 34; see, e. g., Jacobs v. Kennedy Van Saun Mfg. & Eng. Co., 12 F.R.D. 523 (M.D.Pa.1952). In certain situations, however, a court may force the requesting party to inspect the documents at the convenience of the party who possesses them. Gielow v. Warner Bros. Pictures, 26 F.Supp. 425, 426 (S.D.N.Y.1938); cf. Fed.R.Civ.P. 33(c) (When the answer to an interrogatory is contained in business records, and the burden of ascertaining the answer is substantially the same for both parties, the respondent may answer by specifying the relevant records and allowing an opportunity to examine them.) [FN5] Generally, inspection is required when the requested material is so voluminous that copying and transporting it would prove unduly burdensome and oppressive, Compagnie Continentale D'Importation v. Pacific Argentine Brazil Line, 1

651 F.2d 877                                                                                                                                  Page 6
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

F.R.D. 388, 389 (S.D.N.Y.1940), or where the distance between the parties is great. Niagara Duplicator Co. v. Shackleford, 160 F.2d 25 (D.C. Cir. 1947); see also Lundberg v. Welles, 93 F.Supp. 359 (S.D.N.Y.1950); Harris v. Sunset Oil Co., 2 F.R.D. 93 (W.D.Wash.1941). Here, the district court specifically found that CBG's request for documents was not burdensome, App. at 516a, 518a, and it was likewise unimpressed by the excess insurers' complaints that they would have to contact hundreds of London brokers. Id. at 517a. On the record before us, we cannot conclude that these findings were erroneous, and thus it was well within the trial judge's discretion to order that the necessary documents be brought to Pittsburgh for examination by CBG instead of requiring CBG to inspect the records at the home office of each of the twenty-one insurance companies.

> FN5. See, e. g., Mid-American Facilities, Inc. v. Argonant Ins. Co., 78 F.R.D. 497 (E.D.Wis.1978); Haykel v. G. F. L. Furniture Leasing Co., 76 F.R.D. 386 (N.D.Ga.1976).

Moreover, the excess insurers' offer to permit home office inspection was made quite late in the proceedings. They did not make the offer of home office inspection when they replied to the original request for the documents that was made on August 9, 1976, or during the July 27, 1978 hearing at which they requested an additional ninety days to comply, or when they asked for a thirty day extension on October **\*884** 25, 1978, or when they received a sixty day extension on December 21, 1978. When they finally made the offer on November 24, 1978, it was neither included in any of the answering papers in the discovery proceeding nor was it made during any of the hearings. Instead the offer was tucked away in an affidavit filed by the insurers' New York counsel supporting the summary judgment motion. Id. at 312a. At the same time that the excess insurers' New York counsel was offering to permit inspection, their Pittsburgh counsel was promising the court that their clients would comply with the discovery order if only given more time. Id. at 309a. Indeed, the Pittsburgh counsel did not begin to rely on the offer for home inspection until June 1979, two months after the district court applied sanctions and issued the preliminary injunction.

Thus, in our view this is not the garden variety geographic conflict about whether the mountain should come to Mahomet or vice versa.[FN6] Rather, we perceive the appellants' offer to provide home office inspection as a defense strategy that simply comes too late in these unduly protracted pre-trial proceedings to be of major significance in reviewing the imposition of sanctions by the district court.

> FN6. See F. Bacon, Essays: Of Boldness (1597).

V.

We will reverse a sanction imposed pursuant to Fed.R.Civ.P.37(b)(2) only if the district court abused its discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43, 96 S.Ct. 2778, 2780-2781, 49 L.Ed.2d 747 (1976) (per curiam); DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Discretion as a jural concept admits of some lack of precision, and formal definitions of the concept are only the inception and not the fruition of understanding. We agree with Professor Dworkin that discretion, like the hole in the doughnut, does not exist except as an area left open by a surrounding belt of restriction.[FN7] At best, this means that legislative or judicial authority should provide guidance to both the exerciser and the reviewer by defining with some specificity the permissible outer limits of the exercise of discretion.

> FN7. R. Dworkin, Taking Rights Seriously 31 (1977); see generally United States v. Criden, 648 F.2d 814, at 817-819 (3d Cir. 1981).

[6] The Federal Rules of Civil Procedure offer some guidance regarding the limits on the district court's power to impose sanctions. Rule 37(b) specifies two limitations. It states that the district court "may make such orders in regard to the failure (to obey an order compelling discovery) as are just," and it lists specific sanctions that, "among others," are contemplated by the rule. The order before us here easily satisfies both limits of discretion specified by the rule. Case law instructs that the district court's decision must be rationally related to the reasons given and the requirements of the rule. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 642, 96 S.Ct. at 2780. We are aided here by the trial court's explanation of the factors that led to its decision.[FN8] An appellate court is not free to **\*885** substitute its judgment for that of the trial court, because the rules have invested the court of first instance with the expression of that judgment. See DiGregorio v. First Rediscount Corp., 506 F.2d at 788. The review function is not plenary; to disturb the exercise we must find an abuse of authority, not merely the presence of an alternative reasonable choice. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 642, 96 S.Ct. at 2780.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN8. To show the full extent of the business done by the Excess Insurers connected with Pennsylvania, this Court, on July 27th, 1978, ordered the Excess Insurers to produce all insurance contracts which they had written since 1971 in which they provided coverage to Pennsylvania insureds, including Pennsylvania risks, or provided coverage through Pennsylvania brokers.
>
> The Excess Insurers, through their attorneys, promised on several occasions to comply with this Court's order, and obtained extensions of time in order to comply. The Excess Insurers produced only a few of the insurance contracts requested and under the circumstances the Court feels that the Excess Insurers have not offered the necessary assistance to the various brokers in gathering documents and getting the requested information which would be necessary under the circumstances.
>
> This Court, after some months of further delay, on December 21st, 1978, stated that if the Excess Insurers were to fail to produce the requested information within 60 days from that date, the insurance contracts, which were subject to its order of July 27, 1978, and showing the extent of the business contacts with Pennsylvania, that this Court would impose a sanction consisting of a finding that the Excess Insurers are subject to the in personam jurisdiction of this Court because of their business contacts in Pennsylvania....
>
> (T)he Court finds, as a fact, that the material promised this Court by the Excess Insurers on December 21st, 1978, and prior to that time on July 27th, 1978, ... has not been forthcoming, and the Court, at this point, will rule and impose a sanction, and does find that the Excess Insurers are, in fact, subject to the in personam jurisdiction of this court.
> Id., at 666a-668a.

[7] On the record before us, we are persuaded that the trial court did not exceed appropriate limits of its authority. The excess insurers negligently or deliberately flouted the district court's order compelling discovery. For over six months after the order was first issued, the insurers represented to the court that they were attempting to comply with the order. But the insurers did not even attempt to implement the court's order until January 1979, several weeks after being warned that failure to comply would force the court to impose sanctions. The English brokers were given less than a month to gather the documents, and later indicated that given sufficient time they could have complied with the discovery order. App. at 1303a, 1308a-10a, 1330a. In addition, the insurers produced none of their own records consisting of indexes and placing slips. The district court imposed the sanction in response to the excess insurers' dilatory conduct in dealing with the court throughout the discovery proceedings. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 640, 643, 96 S.Ct. at 2779-2781; Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d. 1187 (3d Cir. 1971) (per curiam).

The excess insurers argue, however, that the district court could only enter the sanction of denying the motion to dismiss for lack of jurisdiction, but could not "(take) as established for the purposes of the action" that appellants had sufficient contacts with the forum state to justify its exercise of in personam jurisdiction. We reject this argument. The purpose and scope of the ordered discovery were directly related to the issue of jurisdiction and the rule 37 sanction was tailored to establish as admitted those jurisdictional facts that, because of the insurers' failure to comply with discovery orders, CBG was unable to adduce through discovery. This was an appropriate exercise of the district court's discretion. See English v. 21st Phoenix Corp., 590 F.2d 723, 728 (8th Cir.), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

We recognize that in Familia de Boom v. Arosa Mercantil, S. A., 629 F.2d 1134 (5th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981), the Fifth Circuit's position appears to be to the contrary, but we find ourselves in disagreement with that case. As long as discovery orders are permissible in aid of the jurisdictional determination, we think it fairly follows that a district court may respond to noncompliance by the party resisting a finding of jurisdiction with an appropriate rule 37(b)(2)(A) sanction. The availability of such a sanction is particularly important when, as here, the very material sought to be discovered the defendants' contacts with the forum state will normally be in the possession of a defendant and will frequently be unknown to a plaintiff. The district court's decision to take as established for purposes of this action that the insurers had sufficient minimum contacts with Pennsylvania, in response to the insurers' failure to comply with discovery orders issued to determine the existence of such contacts, was an appropriate exercise of its discretion under rule 37(b)(2)(A).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*886** Furthermore, there is no question of the insurers having been unfairly surprised by imposition of the sanction. The district court gave ample warning of the sanction it would impose. See App. at 542a; see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 642, 96 S.Ct. at 2780. Jurisdictional issues should not delay the proceedings before a court more than necessary, and personal jurisdiction in particular is best settled at the outset of litigation if the judicial system is to operate efficiently and without diluting the quality of justice. See Pacific Intermountain Express Co. v. Hawaii Plastics Corp., 528 F.2d 911 (3d Cir. 1976) (per curiam). We conclude that the district court's order was a proper application of Rule 37(b) (2)(A) that the designated facts "shall be taken as established for the purposes of the action...."

[8] Having concluded that the court did not abuse its discretion under the rule, the only remaining limitation on imposition of sanctions is the due process clause of the Constitution. The sanction did not violate the fifth amendment due process rights of the excess insurers. As this court has observed, "(o) nly where the sanction invoked is more stern than reasonably necessary does a denial of due process result." DiGregorio v. First Rediscount Corp., 506 F.2d at 789; see generally Societe Internationale v. Rogers, 357 U.S. 197, 209-11, 78 S.Ct. 1087, 1094-1095, 2 L.Ed.2d 1255 (1958). Here, the sanction was carefully tailored to fit the situation; only the facts necessary to establish the minimum contacts needed to justify personal jurisdiction in this action were taken as established pursuant to the sanction.

Accordingly, we will not disturb the discretion exercised by the district court in determining that the excess insurers were subject to the personal jurisdiction of the court because their business contacts in Pennsylvania were deemed established as a sanction for failure to make discovery.[FN9]

> FN9. Because of the view we take, it is not necessary to consider the other arguments advanced by the insurers, nor is it necessary to meet the district court's alternative determination that, based on the evidence before it, the excess insurers' activities did in fact constitute doing business in Pennsylvania.
> We do not overlook the reality that CBG's contention that the excess insurers did do business in Pennsylvania was not fanciful. By affidavit dated March 19, 1979, CBG presented 24 insurance policies and cover notes reflecting coverage written for CBG between 1972 and 1977, in which various excess insurers participated. App. at 2010-2500. The policies were delivered to CBG in Pittsburgh at the office of Halco (Mining) Inc. Eighteen of the policies and cover notes are dated prior to the filing of the law suit here. In these policies the insurers agreed to be subject either to the jurisdiction of American courts or to arbitrate policy disputes here.

VI.

[9] Three of the excess insurers, Chiyoda Fire & Marine Insurance Co., Ltd., Vesta (UK) Ltd., and L'Union Atlantique S. A. D'Assurances, Brussels, complied with the discovery order by filing affidavits stating that they had issued no policies covering risks located in Pennsylvania or associated with either CBG or the Pittsburgh office of Marsh & McLennan. App. at 236a, 493a, 323a. The sanction imposed by the district court because of the other insurers' failure to produce the requested documents should not apply to these three companies. In addition, their contacts with Pennsylvania are simply inadequate to justify the exercise of personal jurisdiction pursuant to the Pennsylvania long-arm statute. The record discloses no evidence that these companies deliberately availed themselves of the privilege of doing business within the state, or indeed that they had any contacts that would justify a reasonable expectation of being haled into court there. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

We therefore will reverse the district court's determination that it had personal jurisdiction over Chiyoda Fire & Marine Insurance Co., Ltd., Vesta (UK) Ltd., and L'Union Atlantique S. A. D'Assurances, Brussels and direct dismissal of the complaint with respect to them.

**\*887** VII.

We now turn to the order enjoining the excess insurers from maintaining the action commenced by them in London. The general principle established "(e) arly in our history," is that one court will not interfere with or try to restrain proceedings in another in an ordinary action in personam. Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964). [FN10] "(W)here the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is

651 F.2d 877    Page 9
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

obtained in one of them which may be set up as res judicata in the other." Princess Lida v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939). This principle has often been applied in cases similar to the present case where one of the actions is in a foreign jurisdiction. See Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc., 412 F.2d 577 (1st Cir. 1969).

> FN10. The principle applied here does not contradict the "first-filed rule" established in Crosley Corp. v. Hazeltine Corp., 122 F.2d 925 (3d Cir. 1941), cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). The first-filed rule provides that when similar cases have been filed in different federal district courts, "it (is) the duty of the court first obtaining jurisdiction to enjoin the prosecution of the subsequent proceedings in the other court." Triangle Conduit & Cable Co., Inc. v. National Electric Products Corp., 125 F.2d 1008, 1009 (3d Cir.), cert. denied, 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942); see also Berkshire International Corp. v. Marquez, 69 F.R.D. 583 (E.D.Pa.1976). The rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty. Crosley Corp. v. Hazeltine Corp., 122 F.2d at 929. Restraining a party from pursuing an action in a court of foreign jurisdiction involves delicate questions of comity and therefore "requires that such action be taken only with care and great restraint." Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc., 412 F.2d 577, 578 (1st Cir. 1969).

In Donovan, the Supreme Court applied this general principle notwithstanding the lower court finding that the second action was harassing and vexatious. See 377 U.S. at 415, 84 S.Ct. at 1583, 1584 (Harlan, J. dissenting). Thus, the district court's finding that the action instituted in the English courts was duplicative, and therefore harassing and vexatious, does not affect our decision. Likewise, there is no difference between addressing an injunction to the parties and addressing it to the foreign court itself. Peck v. Jenness, 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841 (1849); see also O'Hare International Bank v. Lambert, 459 F.2d 328, 331 (10th Cir. 1972). Enjoining the parties necessarily affects the court and compromises "the comity which the federal courts owe to courts of other jurisdictions." Canadian Filters (Harwich) Limited v. Lear-Siegler, Inc., 412 F.2d at 578.

[10] We do not determine that the district court lacks the power to enjoin parties from pursuing an action in another jurisdiction in every case. It is sufficient here to hold that the district court abused its discretion when it enjoined an action seeking a declaratory judgment in the courts of another sovereign. In the present case, duplication of issues and the insurers' delay in filing the London action were the sole bases for the district court's injunction, and we hold that these factors alone did not justify the breach of comity among the courts of separate sovereignties.

Accordingly, we will reverse the order granting a permanent injunction restraining the insurers from further prosecution of the suit instituted by them in England in the High Court of Justice, Queen's Bench Division.

VIII.

[11] Finally we address the order denying appellants' motion to dismiss on the basis of forum non conveniens. "(D)enial of a motion to dismiss, even when the motion is based on jurisdictional grounds, is not immediately reviewable." Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945). See Fleming v. Berardi, 441 F.2d 732 (3d Cir. 1971); Commonwealth v. Brown, 373 F.2d 771, 776 (3d Cir. 1967). Agreeing with Judge Maris, ***888** we believe that "little need be said" [FN11] and conclude that the order denying dismissal on the basis of forum non conveniens was inherently interlocutory since it did not terminate any phase of the litigation. Therefore, because it is not appealable under 28 U.S.C. s 1291 as a final order and because no provision of 28 U.S.C. s 1292 is applicable, we will dismiss the appeal on this issue for lack of jurisdiction.

> FN11. Equal Employment Opportunity Commission v. American Telephone and Telegraph Co., 506 F.2d 735, 742 (3d Cir. 1974).

IX.

For the reasons heretofore set forth, we will reverse the judgment of the district court issuing the injunction on August 5, 1980, and remand the cause for further proceedings in accordance with the foregoing.

GIBBONS, Circuit Judge, dissenting in part:

My difference with the majority is narrow. I join in part VI of the opinion of the court holding that there is no personal jurisdiction over Chioyoda Fire & Marine

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

651 F.2d 877                                                                                                                                  Page 10
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

Insurance Co., Ltd., Vesta (UK) Ltd., and L'Union Atlantique S.A. D'Assurances, Brussels. I also join in part VII, reversing the injunction against prosecution of the suit instituted by the excess insurers in the High Court of Justice, Queens Bench Division.

Moreover, I agree that under the controlling case law in this circuit a denial of a motion to dismiss on forum non conveniens grounds is not ordinarily immediately reviewable. I disagree with the conclusion in Part VII of the opinion of the court that that rule is controlling here, however, for several reasons. First, it seems clear that the forum non conveniens contention bears directly upon the propriety of the issuance of an injunction against prosecution of a parallel suit in London, and thus may properly be considered in connection with the disposition of the appeal from that injunction. We review the court's decision to exercise *in personam* jurisdiction by virtue of 28 U.S.C. s 1292(a)(1). I see no distinction between reviewing that decision, otherwise interlocutory and unreviewable, and reviewing the decision refusing to dismiss on forum non conveniens grounds. The facts bearing upon a determination of adjudication competence for purposes of the due process clause and those bearing upon whether or not the chosen forum is excessively inconvenient may not be identical, but they certainly overlap to a large extent. Moreover both a decision to deny a Rule 12(b)(1) motion and a decision to deny a forum non conveniens motion would, if not reviewed at the outset, remain subject to review after final judgment. It makes no sense to me to leave this case in the posture in which one of two grounds which might after final hearing result in a dismissal is decided and the other left open. Even if this were an interstate rather than an international problem that result would be unsatisfactory, since it leaves open the possibility that a panel which later reviews the case may conclude that the trial should never have been held in Pennsylvania. In an international context the case for review now is even stronger, since even if a panel should later agree that Pennsylvania was a convenient forum, Great Britain need not afford that decision full faith and credit. Of course, had no injunction issued, neither ground for dismissal would be reviewed. But since 28 U.S.C. s 1292(a)(1) permits review, we should consider and decide any ground which could be asserted against the propriety of injunctive relief. Certainly an injunction prohibiting trial in a more convenient forum would be error. Since, however, the majority has declined to review the forum non conveniens decision, and the record after final hearing on that issue may not be identical, it seems appropriate that I, too, decline at this time to express an opinion of its merits.

In Parts IV and V, the opinion of the court takes as established the jurisdictional facts supporting *in personam* jurisdiction, by virtue of a sanction imposed under Fed.**\*889** R.Civ.P. 37(b). I disagree with the majority's conclusion that there was no abuse of discretion in imposing that sanction. The majority resorts to perjoratives such as "defense strategy" to characterize defendants' offer to permit inspection of voluminous documents in London rather than in Pittsburgh, and finds fault with the timing of that offer. But that argument ignores the foreign excess insurers' initial pleading that the Western District of Pennsylvania lacked personal jurisdiction to order them to do anything. Asserted from the outset, that position was never abandoned.

More significantly, the majority maintains the sanction was not an abuse of discretion because it "was carefully tailored to fit the situation; only the facts necessary to establish the minimum contacts needed to justify personal jurisdiction in this action were taken as established pursuant to the sanction." At 886. See also, at 885. But the majority errs in characterizing the district court's exercise of personal jurisdiction as an example of minimum contacts, or specific, jurisdiction. The majority has "confounded specific jurisdiction to adjudicate claims linked to activities occurring or having an impact in the forum state, and general, 'all purpose' adjudicatory authority to hear and decide claims totally unconnected with the forum." Donahue v. Far Eastern Air Transport Corp., 652 F.2d 1032 at 1034 (D.C.Cir. 1981). The district court exercised not specific, but general jurisdiction over the excess insurers. See App. 666-68. Specific and general jurisdiction analyses are quite distinct. See generally Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121 (1966). The former inquires into minimum contacts; the latter mandates not minimal, but continuous and substantial forum affiliation.

As the Supreme Court enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 316-19, 66 S.Ct. 154, 158-159, 90 L.Ed. 95 (1945), minimum contacts analysis applies to the "single or occasional acts" of a nonresident defendant within a state when the suit concerns those acts, but not when the suit concerns matters unrelated to the forum activities. Moreover, the Supreme Court has repeatedly emphasized that in order to sustain assertion of specific jurisdiction, the plaintiff must show that the nonresident defendant's single or occasional acts within the forum state which gave rise to the claim manifest defendant's "purposefully availing itself of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

651 F.2d 877                                                                                               Page 11
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

the privilege of conducting activities within the forum state." World-Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.CT. 559, 62 L.Ed.2d 490 (1980); Shaffer v. Heitner, 433 U.S. 286, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Plaintiff's unilateral act within the forum state is insufficient to confer personal jurisdiction over the nonresident defendant. Similarly, defendant's fleeting or fortuitous forum connection lacks the requisite element of intentional invocation of the forum's benefits. Examination of the relevant transactions in this case reveals that the only contact the excess insurers had with Pennsylvania concerning this claim is too attenuated to meet the requirements of Hanson v. Denckla and its progeny. That contact amounts to a phone call placed by CBG's parent corporation's broker from Pittsburgh to Bland, Welsch in London requesting the London firm to secure agreements with foreign insurers in London to cover an African risk.

As a general rule, mere placing of a phone call by defendant into the forum state does not constitute "purposeful availing." See, e. g., Covington Industries Inc. v. Resintex, Inc., 629 F.2d 730 (2d Cir. 1980) (defendant's telexes to Georgia from Switzerland concerning delivery of goods to Haiti do not constitute "transacting business" under the liberally interpreted Georgia long-arm statute); Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247 (9th Cir. 1980) (use of the telephone does not constitute purposeful activity under the fourteenth amendment due process clause); Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211 (8th Cir. 1977) (defendant's phone call **890** to Nebraska from Michigan concerning a Michigan contract does not constitute purposeful activity in Nebraska); North Eastern Timber Inc. v. Pines Trailer Corp., 501 F.Supp. 321 (E.D.Pa.1980) (defendant's phone calls to Pennsylvania from Illinois do not constitute purposeful activity in Pennsylvania). It follows all the more forcefully that plaintiff's or plaintiff's agent's phone call from the forum state concerning an out-of-state transaction does not draw defendant into invoking the forum state's benefits. See, e. g., McBreen v. Beech Aircraft Co., 543 F.2d 26 (7th Cir. 1976) (out-of-state defendant's remarks in interstate phone call placed by plaintiff from the forum state do not constitute purposeful activity by defendant in the forum state); Galaxy International, Inc. v. White Stores Inc., 88 F.R.D. 311 (W.D.Pa.1980) (Pennsylvania company's phone call from Pennsylvania to defendant in Tennessee resulting in a contract to purchase beef from outside Pennsylvania is not purposeful activity in Pennsylvania).

Hence, given the undisputed facts bearing on specific jurisdiction, assertion of such jurisdiction based on the excess insurers' alleged minimum contacts with Pennsylvania would have been inappropriate. International Shoe, however, delineated another category in which assertion of personal jurisdiction over a nonresident defendant may be permissible. This is the general, or "all purpose" jurisdiction classification. It applies to claims unrelated to the forum, when the nonresident's contacts are "continuous" and "substantial."

> While it has been held ... that continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity ... there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.

326 U.S. at 318, 66 S.Ct. at 159 (citations omitted).[FN1] Bork v. Mills, 458 Pa. 228, 231-32, 329 A.2d 247, 249 (1974); Whalen v. Walt Disney World, 274 Pa.Super. 246, 418 A.2d 389, 391-92 (1980). See also Restatement Second of Conflicts of Laws s 47(2).

> FN1. The Supreme Court has only once, since International Shoe, upheld the exercise of this category of personal jurisdiction. That decision, Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), was something of an anomaly. The forum most connected with the defendant and with the disputed transaction was not Ohio, where plaintiff brought suit, but the Philippines, which at the time were under Japanese occupation. At the time, Ohio was the most related American forum. Perkins is arguably a jurisdiction by necessity decision. See Von Mehren & Trautman, supra, 79 Harv.L.Rev. at 1144 ("the Perkins decision should be regarded as a decision on exceptional facts, not as a significant reaffirmation of obsolescing notions of general jurisdiction"). Von Mehren and Trautman argue that, "aside perhaps from the possibility of limited general jurisdiction based on the location of assets," specific jurisdiction should wholly supplant general jurisdiction. Id. (Emphasis in original).

In order to maintain personal jurisdiction over the excess insurers, then, CBG must show that all the

651 F.2d 877                                                                                                                    Page 12
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

foreign excess insurers engaged in continuous and substantial business in Pennsylvania. In imposing personal jurisdiction by Rule 37 sanction, the district court therefore took as established not isolated contacts supporting the exercise of specific jurisdiction, but major "continuous corporate operations" in Pennsylvania by each excess insurer. By their nature, the facts requisite to asserting general jurisdiction cannot be "carefully tailored"; they must be extensive and pervasive.[FN2] The *891 facts before the district court indicated that some of the excess insurers had entered into other contracts in which they agreed to be subject to suit in Pennsylvania or other United States jurisdictions. Standing alone, these contracts do not satisfy the continuous and substantial forum affiliation test. [FN3] In order to assert general jurisdiction, the district court was obliged to assume that these contracts were but a small part of a persistent pattern of sizeable business dealings with Pennsylvania insureds, or covering Pennsylvania risks. The necessarily broad scope of the jurisdictional facts the district court assumed, over defendants' denial, and without placing the burden of discovery on plaintiff, was an abuse of discretion.

> FN2. Pennsylvania decisions elaborating the "continuous and substantial" standard indicate a very high threshold of business activity. See, e. g., Bork v. Mills, supra (uncontroverted allegation that defendant hauled freight within Pennsylvania insufficient to meet continuous and substantial test), compare Scanapico v. Richmond, Fredricksburg & Potomac R. Co., 439 F.2d 17 (2d Cir. 1970) (en banc) (freight solicitation in forum by two employees, sale of tickets, and daily presence in forum of defendant's freight cars on trains operated by other carriers meets "doing business" test under New York service of process statute); Lebkuecher v. Loquasto, 255 Pa.Super. 608, 389 A.2d 143 (1978) (possessing a license to practice medicine in Pennsylvania and maintaining a classified listing in a Pennsylvania telephone director do not constitute continuous and substantial business activities); Whalen v. Walt Disney World, supra (purchase of $1,551,725 in merchandise from a company located in Pennsylvania, and purchase of liability insurance from a company incorporated in Pennsylvania do not meet continuous and substantial test); Garfield v. Homowack Lodge, Inc., 249 Pa.Super. 392, 378 A.2d 351 (1977) (weekly advertising in Philadelphia newspaper over five year period at cost of $2,000 per year, toll-free phone number to enable Philadelphia residents to make reservations at New York resort, and payment of 10% referral fee to Philadelphia travel agents constitute continuous and substantial business activity).

> FN3. See cases cited supra note 2. Cf. Bernardi Bros. v. Pride Mfg. Co., 427 F.2d 297 (3d Cir. 1970) (when claim unrelated to New Jersey, and defendant's sole contact with New Jersey was a nonexclusive agent residing in that forum, no basis for assertion of personal jurisdiction); DiCesare-Engler Productions, Inc. v. Mainman Ltd., 81 F.R.D. 703 (W.D.Pa.1979) (rock star's occasional performances in Pennsylvania do not justify asserting personal jurisdiction over him in Pennsylvania when claim arose out of breach of contract to perform a concert in Ohio).

I do not advance the proposition that a Rule 37 sanction may never be employed to facilitate discovery of facts bearing upon the exercise of personal jurisdiction. Nonetheless, the imposition of burdens of production in a distant place is one of the core elements of unfairness which the due process cases from International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), through World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), address. It is small comfort to a defendant objecting to the imposition of that burden that it is being imposed only for the purpose of determining whether or not the court has authority to impose it. A proper accommodation between plaintiff's interest in a choice of a forum and defendants' due process protection against imposition of unfair burdens of production, it seems to me, requires that once a foreign defendant makes a prima facie showing both of absence of minimum contacts relating to the claim, and of absence of continuous and substantial forum presence, the plaintiff should have to do the initial traveling. Cf. River Plate Corp. v. Forestal Land, Timber & Ry. Corp., 185 F.Supp. 832 (S.D.N.Y.1960) (court's power to order compliance with discovery requests when it is unclear that the court has jurisdictional power over the defendant must be carefully circumscribed). Thus I would hold that the trial court abused its discretion in imposing the sanction of finding the jurisdictional facts against the defendant, at least until the court first ordered inspection of the relevant documents by the plaintiff at defendants' home base.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

651 F.2d 877                                                                                                          Page 13
651 F.2d 877, 31 Fed.R.Serv.2d 937
**(Cite as: 651 F.2d 877)**

Familia De Boom v. Arosa Mercantil, S. A., 629 F.2d 1134 (5th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981), may possibly be read as prohibiting use of a Rule 37 sanction until such time as the plaintiff has fully met its burden of establishing personal jurisdiction. Were it so intended, I would not follow it that far. Defendant's refusal to permit inspection of documents at its home base at **\*892** plaintiff's expense initially might support the imposition of the sanction imposed in this case. Such a refusal would effectively preclude the plaintiff from meeting its burden of establishing the jurisdictional facts. Cf. Lekkas v. Liberian M/V Caledonia, 443 F.2d 10 (4th Cir. 1971) (dictum).[FN4] But it seems to me that an accommodation between the defendant's due process interests and the plaintiff's choice of a forum requires a more flexible interpretation of Rule 37 than the majority announces.[FN5] That is particularly the case when, as here, the record discloses no basis for the exercise of specific jurisdiction based on purposeful Pennsylvania contacts with the transaction sued on, and the attempted discovery is aimed at establishing a general corporate presence in that state. The far reaching inquiry into the establishment of general jurisdiction could impose costs and burdens far in excess of whatever premiums defendants derived from their prior forum activities. The record in this case establishes that many thousands of files would have to be examined to satisfy the plaintiff's inquiries. The burden of such an examination should have been placed initially on the plaintiff before sanctions were considered.[FN6] I would hold, therefore, that the trial court abused its discretion in imposing the Rule 37 sanction of finding the jurisdictional facts against those defendants left in the case. On the record, aside from the Rule 37 order, defendants maintain insufficient Pennsylvania connections to sustain either specific or general jurisdiction over them. I would reverse with a direction to grant their motion to dismiss.

> FN4. Even this basis for assertion of personal jurisdiction via discovery sanction is problematic, however. In effect, the district court would, by relying on Rule 37 to create personal jurisdiction. This use of Rule 37 may well be inconsistent with Rule 82, which provides that the Federal Rules of Civil Procedure "shall not be construed to extend ... the jurisdiction of the United States district courts ...." Exercise of personal jurisdiction pursuant to a state long-arm statute involves both a fairness and a power analysis. See, e. g., World-Wide Volkswagen, supra. It may not be unfair to subject the excess insurers to suit in Pennsylvania. They have certainly had notice and an opportunity to be heard. Fairness, however, is not all. The district court must also have some power over these defendants. On the facts available to the district court, it lacked that power. It is questionable whether a district court may concoct adjudicatory authority by virtue of defendant's flaunting the court's apparent lack of power. However frustrating defendant's recalcitrance, it does not imply, any more than does these defendants' partial compliance, that defendant in fact has maintained forum affiliations sufficient to justify assertion of either specific or general jurisdiction.

> FN5. The majority's reliance on English v. 21st Phoenix Corp., 590 F.2d 723 (8th Cir.), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979), is misplaced. Although the Eighth Circuit affirmed the district court's assertion of personal jurisdiction as a Rule 37 sanction, the appellate court also observed that the nonresident corporation maintained sufficient forum affiliation to justify assertion of jurisdiction in any event. 590 F.2d at 728 n.6. Moreover, defendant's conduct in that case involved refusal adequately to answer, at its home base, written interrogatories. There was no burden of production at a distant place.

> FN6. Although defendants initially indicated they would comply with the district court's order to inspect and produce their documents in Pittsburgh, and subsequently and belatedly complied only partially, the district court entered the sanction to penalize not defendants' delay, but their insufficient compliance.

651 F.2d 877, 31 Fed.R.Serv.2d 937

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.