IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 04-343 JJF |
| : | |
| TATUNG CO., TATUNG COMPANY : | |
| OF AMERICA, INC., and VIEWSONIC : | |
| CORP., : | |
| : | |
| Defendants. : | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING LG.PHILIP LCD CO., LTD'S MOTION TO COMPEL VIEWSONIC CORPORATION TO WORK PROMPTLY WITH LG.PHILIP LCD CO., LTD. TO CATEGORIZE ITS PRODUCTS INTO MOUNTING SYSTEMS OR MOUNTING CATEGORIES**

Upon consideration of Plaintiff LG.Philip LCD Co., Ltd.'s (hereinafter "LPL") January 26, 2007 letter Motion to Compel Defendant ViewSonic Corporation (hereinafter, "ViewSonic") to work promptly with LPL to categorize its products into "mounting systems" or "mounting categories" (the "January 26th Motion"), the Special Master concludes that ViewSonic cannot be compelled to do so and/or to create documents that are not otherwise in existence.[1]

The Patents in Suit relate to assembly mountings for the flat panel display mountings used in liquid crystal displays ("LCD") for such products as plasma televisions and computer monitors. D.I. 1.

**BACKGROUND**

The genesis of the January 26th Motion is LPL's Motion to Compel ViewSonic to provide technical and mounting related documents filed on September 27, 2006 ("the Sept. 27th Motion"). The Sept. 27th Motion implicates Document Requests 2-5, 18, 28, 29, 38-41, 46-48

---

[1] The Order appointing Vincent J. Poppiti as Special Master was entered on February 25, 2005. D.I. 178.

and 51 and Interrogatory 2.[2] LPL claims that ViewSonic sells many products that are mounted comparably to the VX900, which monitor is identified in the Complaint as one example of an infringing product. (See Compl. at ¶128 (D.I. 1)).

While ViewSonic disagrees that LPL is entitled to technical and mounting-related discovery for products LPL has not accused of infringement and for products only sold outside of the United States, ViewSonic agreed as part of the meet and confer process to produce Service Manuals for each of the Visual Display Products it had sold, offered for sale, or imported into the United States since December, 2002. In this regard ViewSonic claims to have produced approximately 200 Service Manuals corresponding to more than 90% of ViewSonic's Visual Display Products imported, offered for sale or sold in the United States since December 24, 2002, which date is the earliest date of the Patents in Suit. ViewSonic states that the Service Manuals, which include the so-called "exploded view" diagrams show the assembly of its products, including mounting. ViewSonic further states that the Service Manuals are the only documents in ViewSonic's possession, custody or control showing the technical assembly and mounting of the products.[3] In this regard the Special Master understands that ViewSonic does not manufacture the Visual Display Products that it sells. Rather, ViewSonic purchases fully assembled products from various Original Equipment Manufactures ("OEMs") for importation

---

[2] ViewSonic asserts that LPL cannot point to any specific Request for Production or Interrogatory that seeks the categorization or classification of "mounting systems" or mounting categories or documents containing same. Nonetheless the Special Master for the purpose of addressing the issues raised assumes without deciding that LPL's discovery is broad enough to cover the January 26th Motion.

[3] The Special Master also understands that ViewSonic has either sold or offered to sell LPL a sample of any product for which it does not have a Service Manual to the extent that it has a sample product in its possession, custody or control. ViewSonic also states that it has offered LPL an opportunity to inspect samples of certain models no longer on the market.

and sale in the United States. ViewSonic asserts that whatever technical documents it does have – namely the Service Manuals – is dependent on what the OEMs provide to ViewSonic.[4]

In sum and substance, ViewSonic maintains that it has produced all documents it has in response to the subject Document Requests.

The January 26, 2007 Motion focuses then, not on ViewSonic's obligations under the discovery rules, but rather on LPL's claimed inability to determine from certain Service Manuals whether the corresponding products should be accused of infringement. In this regard, LPL claims that some documents are of poor quality, some show only a front view, many do not show any fastening elements at all and finally none contain size and dimension information for the parts depicted.

Against this back-drop of LPL's claimed inability, the Special Master is mindful first, that in correspondence dated September 26, 2006 from Rel. S. Ambrozy, counsel for LPL, to Scott R. Miller, counsel for ViewSonic, LPL advised:

> We have completed our review of the exploded view documents produced on September 15, 2006. Based on that review, we have determined that all of the monitors identified in that September 15th production potentially infringe the Patents in suit. Accordingly, please produce immediately all documents responsive to LPL's pending document requests for these monitors. . ... Also, please confirm that, as we have discussed multiple times, you are producing the balance of the exploded view documents on a rolling basis.

\*   \*   \*

---

[4] The Special Master issued a Report and Recommendation dated February 14, 2007 which addressed the issue of whether ViewSonic can be compelled to produce documents in possession of certain OEMs. The Special Master has concluded that LPL's Motion to Compel should be granted.

062038.00612/40167334v.1

The Special Master concludes from this correspondence that Service Manuals produced on September 15, 2006 were sufficient from which LPL could make a determination, and that LPL expected the Service Manuals not yet produced would also be sufficient.

Second, even if exploded view documents later produced were claimed to be insufficient, the Special Master without more, e.g. a declaration from someone with expertise stating same, would be unable to draw such a conclusion.

In any event, the question becomes, even if the record were to permit the Special Master to conclude that the Service Manuals were not sufficient, to what end?

Consistent with the Special Master's guidance during the December 28, 2006 hearing, the Special Master concludes that under the circumstances presented, the Court lacks the authority to require ViewSonic to create something that does not exist and that it does not otherwise maintain or create in the ordinary course of business. Transcript of December 28, 2006 Hearing ("Tr." P. 26 ll. 9-13). The Special Master is aware of no authority to the contrary, and LPL has cited to no authority in the January 26th Motion. It follows then that while the Special Master can encourage the parties to reach compromise on disputed issues, the parties cannot be ordered to engage in dialogue designed to compel ViewSonic to categorize its products into "mounting systems" or "mounting categories".

## CONCLUSION

For the reasons set forth above, the Special Master concludes that LPL's Motion should be denied.

ENTERED this
_21_ day of February, 2007

_____
Vincent J. Poppiti (DSBA No. 100614)
Special Master

4