IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| L.G. PHILLIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, <br><br> Defendants. | C. A. No. 04-343-JJF |

## DEFENDANTS TATUNG COMPANY'S AND TATUNG COMPANY OF AMERICA, INC.'S SUPPLEMENTAL OPENING CLAIM <u>CONSTRUCTION BRIEF</u>

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan Jansen
Valerie W. Ho
Steve Hassid
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
(310) 586-7700

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
*Attorneys for Defendants Tatung Co. and Tatung Company of America, Inc.*

Dated: April 30, 2007

RLF1-3145335-1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.   INTRODUCTION ............................................................................................................ 1

II.  PROCEDURAL HISTORY .............................................................................................. 1

III. ARGUMENT .................................................................................................................... 2

    A.  The Term "the flat display panel is rear mounted" Does Not
        Meet The Written Description Requirement ......................................................... 2

    B.  Alternatively, The Court Should Adopt Tatung's Proposed
        Construction For The Term "the flat display panel is rear mounted." ................. 6

    C.  The Court Should Adopt Tatung's Proposed Construction For
        "corners of the first frame." .................................................................................. 8

IV.  CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Acacia Media Technologies Corp. v. New Destiny Internet Group*,
    405 F. Supp. 2d 1127 (N.D. Cal. 2005) ................................................................. 5

*Gentry Gallery, Inc. v. Berkline Corp.*,
    134 F.3d 1473 (Fed. Cir. 1998) ............................................................................. 3

## STATUTES

35 U.S.C. § 112 ................................................................................................................. 2, 5

## I. INTRODUCTION

Defendants Tatung Company and Tatung Company of America (collectively, "Tatung") submit their Supplemental Opening Claim Construction Brief, which addresses terms in claims that were newly asserted by Plaintiff LG. Philips LCD Co., Ltd. ("LPL"). Tatung incorporates by reference its opening brief submitted on December 28, 2006.

The Patents-in-Suit are simple mechanical patents directed to the mounting of a flat panel display device or module in a portable computer. In particular, the Patents are concerned with fitting a larger display into a display case that has a fixed size. The Patents identify the prior art "front mounting" elements as space wasting features that reduce the available space for the active display. The Patents pose what it claims as a novel solution which is twofold:

1. Eliminate the space wasting front and side mounting fastening elements on the liquid crystal display device or module.[1]

2. Relocate all of the fastening elements to the back of the liquid crystal display device or module.

As explained in detail below, the constructions proposed by Tatung are consistent with the stated object of the invention and are supported by the intrinsic record.

## II. PROCEDURAL HISTORY

On November 10, 2006, after the parties already had exchanged proposed claim terms and proposed constructions, LPL asserted for the first time a number of new claims

---

[1] As noted in the opening brief, the Patents identify three types of flat panel display devices: the liquid crystal display device (LCD device), the plasma display panel (PDP), and the field emission display (FED). The liquid crystal display device is the only flat panel display device that is discussed in any detail in the Patents.

1

against Tatung.[2] On November 28, 2006, Tatung joined in Defendant ViewSonic Corporation's Motion to Preclude LPL's Untimely Patent Infringement Contentions. On January 9, 2007, Defendants submitted proposals for ameliorating some of the prejudice caused by LPL's late assertion of new claims. On January 11, 2007, LPL withdrew some of the newly asserted claims. As a result, the new claims were limited to claims 38-39, 44-45 and 56 of the '641 Patent and claim 36 of the '718 Patent.

The issues relating to LPL's late identification of new asserted claims were considered by the Special Master. On January 17, 2007, the Court issued an Amended Rule 16 Scheduling Order. Because the parties already had submitted their opening *Markman* briefs on December 28, 2006, the Amended Scheduling Order provided that the parties could submit a supplemental opening brief on April 30, 2007 to address the new claims asserted by LPL.

### III.  ARGUMENT

**A.   The Term "the flat display panel is rear mounted" Does Not Meet The Written Description Requirement.**

35 U.S.C. § 112 provides in relevant part:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

---

[2] As of April 2006, LPL had identified only one accused product, the Tatung L17AMTN, and seven asserted claims, claims 35-36 and 55 of the '641 Patent and claims 33-35 and 40 of the '718 Patent.

2

"To fulfill the written description requirement, the patent specification 'must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998). In *Gentry*, the Court invalidated certain claims on the grounds that the patent's disclosure did not support claims "in which the location of the recliner controls is other than on the console." *Id.* The Court reasoned:

> In this case, the original disclosure clearly identifies the console as the only possible location for the controls. . . . Additionally, the only discernible purpose of the console is to house the controls. As the disclosure states, identifying the only purpose relevant to the console, "[a]nother object of the present invention is to provide . . . a console positioned between [the reclining seats] that accommodates the controls for both of the reclining seats. [Citation omitted.] Thus, locating the controls anywhere but on the console is outside the stated purpose of the invention.

*Id.*

Here, the term "the flat display panel is rear mounted" appears in claim 56 of the '641 Patent. Claim 56 recites:

> A rear mountable flat panel display device comprising:
> a first frame having a fastening part at a rear surface of the first frame;
> a second frame; and
> a flat display panel between the first and second frames; wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted.

The parties agreed that the term "flat display panel" means "the component within a flat panel display device on which the image appears." (Exhibit A, pg. 27, to Joint Submission filed on April 23, 2007.) This construction recognizes that the flat display panel is a component within the flat panel display device. For example, the liquid crystal display panel is a layer within a stack of layers that form the liquid crystal display

3

device (or liquid crystal display module as understood by one skilled in the art). ('641 Patent, Fig. 4C, JA00007 at Exh. A.) Indeed, LPL itself recognizes that a liquid crystal display panel is "the glass, electronic circuitry and liquid crystal . . . ." (*See* LPL's Opening Claim Construction Brief at 2.)

The Patents-in-Suit are directed to mounting a flat panel display device, not mounting a component within that device. According to the Patents, "the present invention is directed to a portable computer and method for *mounting a flat panel display device* thereon . . . ." ('641 Patent, 2:41-42, JA00018 at Exh. A (emphasis added).) The Patents further state, "The present invention provides a back mounting method and *a back mounting structure for a panel display device* in a portable computer." ('641 Patent, 4:6-8, JA00019 at Exh. A (emphasis added).) There is a complete absence in the intrinsic record of any disclosure of "rear mounting" of the flat display panel or liquid crystal display panel (the only flat display panel disclosed in the Patents.) There is no figure, no description, and no suggestion that the thin glass liquid crystal display panel itself has any mounting features or fastening elements. There also is no description of how the liquid crystal display panel could be mounted to a housing. Rather, the Patents describe that a support frame alone or in conjunction with another frame sandwiches the layers depicted in Figure 4C (reproduced below), including the liquid crystal display panel 12, to form the liquid crystal display device 10, which in turn is mounted to a housing or case.

4



FIG. 4C

Because the Patents clearly state that the purported invention relates to the mounting of a flat panel display device, and not a flat display panel within that device, claim 56 of the '641 Patent, which provides in part that "the flat display panel is rear mounted," does not comply with the written description requirement. The specification simply does not provide notice to one of ordinary skill in the art that the claimed invention relates to the mounting of a component within the flat panel display device. Claim 56, therefore, is invalid. 35 U.S.C. § 112; *Gentry Gallery*, 134 F.3d at 1479-80; *see also Acacia Media Technologies Corp. v. New Destiny Internet Group*, 405 F.Supp.2d 1127, 1141 (N.D. Cal. 2005) (invalidating claims during claim construction on the grounds that a claim term was indefinite).

5

**B.     Alternatively, The Court Should Adopt Tatung's Proposed Construction For The Term "the flat display panel is rear mounted."**

| TERM | LPL | TATUNG |
|---|---|---|
| the flat display panel is rear mounted | The flat display panel is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel. | The flat display panel having only rear fastening elements mounted to a housing via those fastening elements. |

If the Court were to essentially allow LPL to redraft claim 56 to replace the term "the flat display panel," which makes no sense in the context of the Patent, with the term "the flat panel display device," Tatung's proposed construction should be adopted because it is supported by the intrinsic record.

As discussed in the opening brief, the term "rear mountable" was added to the preamble of every claim by amendment after several rounds of rejections of all claims by the Patent Office. (*See* '641 File History, JA00390-398 at Exh. G.). After an interview between the patentee and the Examiner, the Examiner stated in his interview summary that the independent claims were to be "amended with limitation 'back mounted display' or the equivalent." (*See* '641 File History, JA00367 at Exh. G.) Following that interview, LPL amended the preamble of all of the independent claims to include the limitation "rear mountable."

The term "rear mountable" is a limitation that was added to overcome prior art cited by the Examiner. During prosecution of the Patents-in-Suit, the patentee distinguished the purported invention from the cited prior art, including the Yun Reference, by arguing that Yun disclosed a flat panel display device using side-mounting

6

whereas the claimed invention used rear mounting. (*See* '641 File History, JA00388 at Exh. G.) Therefore, the purported invention claimed by the Patents-in-Suit necessarily cannot include side mounting elements.

In addition, because the purported invention includes the removal of side space taken up by flanges used for front mounting (*see, e.g.*, '641 Patent, Fig. 3B, JA00005 at Exh. A.), the "rear mountable" or "rear mounted" flat panel display device claimed by the Patents-in-Suit necessarily does not have fastening elements for front mounting (*see, e.g.*, '641 Patent, Fig. 8, JA00010 at Exh. A.) Indeed, the Patents make clear that "[t]he mounting method according to the present invention does not require unnecessary side space for mounting the LCD device on the computer. Thus, the ratio of the display of the LCD device to the display case can be improved and maximized." ('641 Patent, JA00021 at Exh. A.)

In fact, in each of the embodiments disclosed in the Patents-in-Suit, (*see, e.g.*, '641 Patent, Fig. 4A-14, JA00006-16 at Exh. A.), all of the fasteners for mounting the liquid crystal display device to a housing are located exclusively behind the first frame of the device. Accordingly, the "rear mountable" limitation requires that the fastening elements used in the prior art methods of front and side mounting be eliminated, and as a result, *all* of the fastening elements used for mounting must be relocated to the rear surface of the flat panel display device.

LPL's proposed construction is flawed because it permits the existence of front and/or side fastening elements on the flat display panel as long as a rear fastening element is used to mount the flat display panel to the housing. However, the existence of front and/or side fastening elements requires the very space that the invention supposedly

7

eliminated. In other words, the presence of front and/or side fastening elements would contradict the stated object of the invention. LPL's proffered construction also is misguided because it includes the unsupported limitation that the rear fastening element has to be "positioned on or inside the border of the flat display panel." This requirement is not supported by the intrinsic record. Accordingly, unlike LPL's proposed construction, Tatung's proposed construction for "the flat display panel is rear mounted" is consistent with the stated object of the invention and is supported by the intrinsic record.

### C. The Court Should Adopt Tatung's Proposed Construction For "corners of the first frame."

| TERM | LPL | TATUNG |
| --- | --- | --- |
| corners of the first frame | Areas located in or near the edges of the first frame and positioned on or inside the border of the flat display panel. | The area (region) at the back surface of a flat panel display device near the intersection of any two side edges of the flat panel display device. |

The term "corners of the first frame" should be accorded its ordinary and customary meaning.[3] The American Heritage Dictionary defines "corner" as "[t]he position at which two lines, surfaces, or edges meet and form an angle: *the four corners of a rectangle.*" American Heritage Dictionary,

---

[3] This term can be found, for example, in dependent claim 38, which recites: "The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame."

8

http://www/bartleby.com/61/79/C0647900.html. (*See* Printout at Exh. A attached hereto.) Dictionary.com defines "corner" as:

> 1. the place at which two converging lines or surfaces meet.
> 2. the space between two converging lines or surfaces near their intersection; angle: *a chair in the corner of the room.*

Dictionary.com, http://dictionary.reference.com/browse/corner. (*See* Exh. B attached hereto.) Tatung's proposed construction for "corners of the first frame" is consistent with these definitions.

Tatung's proposed construction also is supported by the specification. For example, Figures 4B and 4C depict a liquid crystal display device, the only flat panel display device discussed in detail in the Patents-in-Suit. The figures depict a first frame 14g or supporting frame 16 at the back of the liquid crystal display device. "At each corner of the first frame 14g a screw hole 15 is preferably formed." Figures 4B (reproduced below), 4C, 5 (reproduced below), and 8 (reproduced below) all show screw holes 15 that are located at the back surface of the liquid crystal display device 10 near the intersection of two side edges of the device. ('641 Patent, 4:22-24, Figs. 4B, 4C, 5 & 8, JA00006-8, 10 & 19 at Exh. A.)

9



FIG. 4B



FIG. 5

RLF1-3145335-1



FIG. 8

Unlike Tatung's proposed construction, LPL's proposed construction is not supported by the intrinsic record. First, "areas located in or near the edges of the first frame" is hopelessly vague. Under LPL's construction, fastening parts may be located in the edges of the first frame (for example, in the middle portion of the top and bottom edges) but be nowhere near the corners of the first frame. Second, the requirement that the corners of the first frame be "positioned on or inside the border of the flat display panel" is both nonsensical and not supported by the intrinsic record. Accordingly, the Court should adopt Tatung's proposed construction for "corners of the first frame."

11

## IV.  CONCLUSION

For the reasons stated above, Tatung respectfully requests that the Court adopt its proposed constructions.

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan Jansen
Valerie W. Ho
Steve Hassid
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
(310) 586-7700

Dated: April 30, 2007

/s/ Anne Shea Gaza
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
*Attorneys for Defendants Tatung Co. and Tatung Company of America, Inc.*

12

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2007 I caused to be served by electronic mail and hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
Wilmington, DE 19899

Jeffrey B. Bove, Esquire
James Heisman, Esquire
Jaclyn M. Mason, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on April 30, 2007 I caused to be sent the foregoing document by electronic mail and Federal Express to the following non-registered participants:

Gaspare J. Bono, Esquire
Rel S. Ambrozy, Esquire
Lora A. Brzezynski, Esquire
Cass W. Christenson, Esquire
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington D.C. 20006

Tracy R. Roman, Esquire
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

Scott R. Miller, Esquire
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Anne Shea Gaza (#4093)
Gaza@rlf.com

RLF1-2967131-1