IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>TATUNG CO.;<br>TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION,<br><br>Defendants. | CIVIL ACTION NO. 04-343-JJF |

### DEFENDANT VIEWSONIC CORPORATION'S
### SUPPLEMENTAL OPENING CLAIM CONSTRUCTION BRIEF

CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey B. Bove (#998)
James D. Heisman (#2746)
Jaclyn M. Mason (#4737)
The Nemours Building, 8th Floor
1007 North Orange Street
Wilmington, DE  19801
(302) 658-9141

*Attorneys for ViewSonic Corporation*

OF COUNSEL:
Scott R. Miller
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071
(213) 787-2500

Tracy R. Roman
Raskin Peter Rubin & Simon, LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 277-0010

Dated:  April 30, 2007

11803.1

TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1
II. SUMMARY OF THE ARGUMENT ..................................................................................1
III. STATEMENT OF THE FACTS & Legal principles ..........................................................1
IV. CONSTRUCTION OF DISPUTED CLAIM TERMS AND PHRASES ..........................1
   A. Construction of "*corners of the first frame*" ..................................................................2
   B. Construction of "*peg*" and "*protruding portion*" .........................................................6
   C. Construction of "*the flat display panel is rear mounted*" ..............................................7
   D. Construction of "*stepped hole*" ....................................................................................13
V. CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*CVI/Beta Ventures, Inc. v. Tura LP*
  112 F.3d 1146 (Fed. Cir. 1997) ..................................................................................... 3

*Energizer Holdings, Inc. v. International Trade Comm'n*
  435 F.3d 1366 (Fed. Cir. 2006) ................................................................................... 10

*General Am. Transp. Corp. v. Cryo-Trans, Inc.*
  93 F.3d 766 (Fed. Cir. 1996) ....................................................................................... 11

*Hoganas AB v. Dresser Indus., Inc.*
  9 F.3d 948 (Fed. Cir. 1993) ......................................................................................... 10

*In Re Hyatt*
  708 F.2d 712 (Fed. Cir. 1983) ....................................................................................... 6

*Process Control v. HydReclaim*
  190 F.3d 1350 (Fed. Cir. 1999) ................................................................................... 10

*Raytheon Co. v. Roper Corp.*
  724 F.2d 951 (Fed.Cir.1983) ....................................................................................... 12

*Southwall Techs., Inc. v. Cardinal IG Co.*
  54 F.3d 1570 (Fed. Cir. 1995) ....................................................................................... 9

*Toro Co. v. White Consol. Indus.*
  199 F.3d 1295 (Fed. Cir. 1999) ................................................................................. 3, 6

*White v. Dunbar*
  119 U.S. 47 (1886) ......................................................................................................... 5

**Statutes**

35 U.S.C. section 112 .............................................................................................. 12, 13

I.     **NATURE AND STAGE OF THE PROCEEDINGS**

Defendant ViewSonic Corporation ("ViewSonic") hereby submits its Supplemental Opening Claim Construction Brief, setting forth its proposed construction of only those terms contained in the newly-identified claims, which terms were identified by the parties pursuant to the Court's Second Amended Omnibus Scheduling Order dated March 9, 2007 ("Scheduling Order") (D.I. 577). The Court has presently scheduled the claim construction hearing on disputed terms for May 30, 2007.

II.    **SUMMARY OF THE ARGUMENT**

The terms "corners of the first frame," "peg," and "protruding portion," appear in dependent claims that ultimately depend from Claim 35 of the '641 patent. The phrase, "the flat display panel is rear mounted" appears only in Claim 56 of the '641 patent. The term "stepped hole" appears in Claim 36 of the '718 patent. All of these terms should be construed in the manner compelled by their use in the claims, and as described in the specification and the prosecution history.

III.   **STATEMENT OF THE FACTS & LEGAL PRINCIPLES**

For the sake of brevity, ViewSonic incorporates by reference the Statement of Facts and Legal Principles set forth in its Corrected Opening Claim Construction Brief (D.I. 378).

IV.    **CONSTRUCTION OF DISPUTED CLAIM TERMS AND PHRASES**

Most of the newly disputed claim terms are found in claims that depend from Claim 35 of the '641 Patent. For the Court's convenience, Claim 35 provides:

> 35. A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising:
>
> a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and
>
> a second frame;
>
> wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being

fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame.[1]

### A.  Construction of *"corners of the first frame"*[2]

ViewSonic contends that the *"corners of the first frame"* should be interpreted to mean "the places on the first frame where two side edges of the first frame intersect." This construction is the only proper reading of this phrase in light of the intrinsic evidence, and is confirmed by the LPL's written admissions in the extrinsic record.

Claim 38 provides: "The rear mountable flat panel display device according to Claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame."[3] Claim 39 is similar except it has four fastening holes at four corners.[4] The only distinction between these claims is the number of holes and corners. Claim 36, from which each of these claims depends, provides: "The rear mountable flat panel display device according to Claim 35, wherein the fastening part includes a fastening hole."[5] Combining these claims with Claim 35, shows that Claims 38 and 39 simply provide that the fastening part of Claim 35 is two or four fastening holes located on the rear surface of and at corners of the first frame.

The Court needs to look no further than the language of the claims and the specification, as the law directs, to construe this phrase. The corners of the first frame are clearly identified in the specification at column 4, lines 22-24, which instructs the reader that the corners of the first frame contain fastening holes located as shown in Figures 4A-C. Those figures show the fastening parts at the places where the two side edges of the first frame intersect. Figure 5 similarly shows the fastening holes in the corners of the first frame and corresponding holes formed, "preferably at each corner of the case 21. . . ."[6] The patent provides no further explanation of where the "corner" is located, because – prior to LPL's attempt to rewrite this term – none was needed. It is simply the place where the side edges of the first frame intersect

---

[1] JA at Ex. A, '641 Pat., Claim 35.
[2] This phrase appears in asserted dependent Claims 38 and 39 of the '641 Patent.
[3] JA at Ex. A, '641 Pat., Claim 38.
[4] JA at Ex. A, '641 Pat., Claim 39.
[5] JA at Ex. A, '641 Pat., Claim 36.
[6] JA at Ex. A, '641 Pat., Col. 4:49-55; Fig. 5; *see also* Figs. 6, 7, 15 and 16.

as shown by these Figures. *See Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1300-01 (Fed. Cir. 1999) (limiting claim to what specification and related drawings show where no other structure is illustrated or described.)

The construction proposed by LPL – "Areas located in or near the edges of the first frame and positioned on our inside the border of the flat display panel" – is an obvious attempt to rewrite this claim term and link unrelated components. Fig. 4B (VS Ex. 2) shows the fastening elements at the furthest reaches of the display device. In contrast, figures 10-14 show the fastening part located in various positions behind the flat panel display device, including in locations that are indisputably behind the flat display panel (*e.g.*, the center screw in fig. 14). Thus the specification discloses that the fastening elements can be anywhere behind the device as a whole (*e.g.*, just inside the outermost perimeter of the second frame (elements 15 and 15a in figures 4B, 4C, 8 and 9), or further inward (*i.e.* towards the center of) the flat panel display device from the outer edge).[7] *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997) (noting relevance of drawings to claim interpretation). These dependent claims simply limit the location in which the fastening elements can be located to the corners of the first frame, as opposed to anywhere on the back.

Nothing in the patent specification indicates or illustrates that the "corner of the first frame" can be anywhere "near" the edge of the frame. Using figure 14 for illustration, under LPL's definition, two fastening holes located in the rear of the first frame at the locations corresponding to the intersections of the vertical and horizontal portions of the display device support member 24 (which is separate and distinct from the first frame) would satisfy Claim 38 despite the fact that no reasonable person would consider those locations to be "at the corners of the first frame."

Similarly, nothing in Figures 4A-C shows the fastening element when it is used in the corners of the first frame to be on or inside of the border of separate flat display panel component

---

[7] JA at Ex. A, '641 Pat., Figs. 12-14.

11803.1                                3

(element 12 in Fig. 4C). Figure 4B shows that the fastening elements are not behind the flat display panel. Certainly, if it were a requirement of the invention sought to be protected by the patents in suit that the fastening part 15 shown in figure 4B *must be* behind the flat display panel, the patents would have said so in clear and unequivocal language. Nary a word, however, is said that supports the construction LPL asks for today. Indeed, when the inventors wanted to claim a fastening hole located in relation to the display panel, they did so expressly. Unasserted Claim 29, for example, provides that the "screw hole of the case is located at a position corresponding to a display area of the rear mountable display device."[8] Thus, the intrinsic evidence expressly contradicts the construction proposed by LPL. By asking the Court to insert the limitation "on or inside the border of the flat display panel" into its construction, LPL improperly seeks to rewrite the patents to include a disclosure nowhere found in the specification.

As discussed above, the specification shows the fastening elements on the back of the device; nowhere is it limited to being on or inside the border of the flat display panel. While figures such as Fig. 14 show a fastening element (extending between the support member and the rear case) as being behind the flat display panel, the fastening elements shown in Figs. 4B and 4C (which actually connect the housing to the first frame, and not to a support member) do not disclose their placement behind the panel 12, rather they are simply behind the device 10. Indeed, Fig. 4B (VS Ex. 2) shows the fastening elements at the furthest reaches of the corners of the display device, without regard for the location of the corners of the flat display panel. This is consistent with the express disclosure in the specification – to wit: "At each corner of the first frame 14g a screw hole 15 is preferably formed."[9] Since the display panel (12) is a subcomponent of the display device (10), physics dictates that it must be smaller in size than the frames 16, 14g. Just like a box must be larger than the item stored therein, the display device must be larger in size than the panel it contains.

---

[8] JA at Ex. A, '641 Pat., Claim 29.
[9] JA at Ex. A, '641 Pat., Col. 4:22-24.

Finally, though it is extrinsic evidence, LPL has admitted in writing that it is not a requirement of the claims of the patents in suit that the fastening elements are on or inside the border of the flat display panel. In seeking to assert the claims of the '641 patent against Fujitsu Siemens in 2003, Mr. Kim, the head of LPL's patent group and the lead inventor of the patents in suit, prepared a chart which identified the fastening elements of the Fujitsu-Siemens 5110FA monitor that supposedly infringed. That chart, together with the related testimony of Mr. Kim, is attached to the accompanying declaration of James Heisman as Exhibits 4 and 5.[10] As that chart shows, several of the fastening elements LPL identified as falling in the scope of Claim 35 are not even behind the flat panel display device, much less the flat display panel.[11] The credibility of LPL's arguments in light of this admission must be questioned. LPL simply cannot be permitted to treat the claims as a "nose of wax" as proscribed more than 100 years ago by the Supreme Court. *White v. Dunbar*, 119 U.S. 47, 51-52 (1886) (famously noting, "Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned in twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is.")

Accordingly, the claims, figures, and specification evidence that "corners of the first frame" means precisely what it says, the fastening part is in the corner of the first frame.

---

[10] *See Declaration of James D. Heisman*, Exhibits 4 (in particular, pp. LPL00033, LPL00036, and LPL00037) and 5 (in particular, pp. 786:8-790:24), filed concurrently under seal.
[11] *Heisman Decl.*, Ex. 4 at pp. LPL00033, LPL00036, and LPL00037.

11803.1                                  5

B.  **Construction of *"peg"* and *"protruding portion"***

- The proper constructions of these terms are "*a boss*" and "*the portion of a fastening element that extends out from the surrounding surface,*" respectively.

According to the patent, a "peg" is one type of fastening part.[12] Because the patent defines it as a fastening part, and it has a plain, ordinary meaning that is understood by one of ordinary skill in the art, it requires no further construction. Likewise, "protruding portion" has a plain, ordinary meaning that is consistent with the context of the claims. *See In Re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("[a] claim must be read in accordance with the precepts of English grammar").

One of ordinary skill in the art would understand a peg to be any type of small cylindrical fastener that is also referred to as a boss. A "protruding portion" is the part of something that protrudes, or extends out from the surrounding surface. The claims, specification, and prosecution history all confirm the interpretations proposed by ViewSonic.

Peg and protruding portion appear in asserted dependent Claims 44 and 45, and also in unasserted Claims 33, 34, 51, and 52. Taking Claims 44 and 45, for example:

> 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel.[13]
>
> 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole.[14]

As for peg, the patent examiner noted during prosecution that the term was not defined in the specification.[15] LPL pointed the examiner to items 15 and 15a in the drawings.[16] Thus, a peg is limited to the structure shown in the drawings. *See Toro*, 199 F.3d at 1300-01.

---

[12] JA at Ex. A, '641 Pat., Col. 5:60-63 ("The pegs 15a together with the mounting holes formed therein may be referred to as a fastening element or fastening part and as shown in FIG. 8 protrude away from the LCD device 10.")
[13] JA at Ex. A, '641 Pat., Claim 44.
[14] JA at Ex. A, '641 Pat., Claims 45.
[15] JA at Ex. G., '641 Pat. file history, VS5005456-VS5005465 [paper #6 responding to 4/2/99 filing and preliminary amendment, p. 2 VS5005458; VS5005532-VS5005537 [paper #12, p.3 VS5005535].
[16] *Id.*

11803.1                                          6

Protruding portion also appears in unasserted Claim 46, which provides that the protruding portion of Claim 44 includes a first part and a second part, the first part being larger than the second part.[17] Again, this simply narrows the type of fastening part to, for example, a fastener with a compressible head.

The specification supports ViewSonic's construction as well. Referencing Figure 8, the specification states, "At the back surface of the LCD device 10, pegs 15a having mounting holes formed therein are formed. . . ."[18] Looking at Figure 8, it shows the referenced "pegs" 15a as short stubs, like bosses, formed on the back of the LCD device with mounting (or threaded) holes for receiving the depicted screws 18. The term "protruding portion" does not appear in the specification. But when describing fasteners such as "hooks," shown in Figures 6, 7, 15, and 16, the specification states that the hook "*protrudes away from* the LCD device 10 and includes a first part and a second part where the first part is larger than the second part."[19] Consistent with these descriptions, the Figures show the hooks extending straight out from the back of the flat panel display device. Likewise, the specification provides that the flanges in the prior art mounting includes a "protruding width" and the wings of the compressible fastener protrude.[20]

In short, these terms should be given their ordinary meanings as supported by the plain language and context of the claims. Specifically, peg should be defined as "a boss," and protruding portion should be defined as "the portion of a fastening element that extends out from the surrounding surface."

### C. Construction of *"the flat display panel is rear mounted"*

Consistent with its proposed construction of "rear mountable," ViewSonic proposes two alternative embodiments of its construction for this phrase:

---

[17] JA at Ex. A, '641 Pat., Claim 46.
[18] JA at Ex. A, '641 Pat., Col. 5:57-60.
[19] JA at Ex. A, '641 Pat., Col. 6:56-63, emphasis added.
[20] JA at Ex. A, '641 Pat., Col. 2:19-21; 7:19-21.

- *"The flat display panel is mounted to a case solely from the back surface of the flat display panel and the panel has no front or side mounting elements."*; or

- *"The flat display panel is mounted to a case with fastening elements located only on the back of the panel and the panel has no fastening element that extends through, from or protrudes beyond any of the four side edges of the panel."*

ViewSonic refers to these as alternative embodiments because both capture the same ideas, except that the second proposal does not use the terms "front or side mounting," and instead sets out in more detail what those terms communicate. Both embodiments are fully supported by the claims and the intrinsic record.

This phrase appears in Claim 56 of the '641 patent which provides:

> A rear mountable flat panel display device comprising:
>
> a first frame having a fastening part at a rear surface of the first frame;
>
> a second frame;
>
> and a flat display panel between the first and second frames;
>
> > wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted.

The only difference between this Claim and Claim 55 (previously briefed) is that Claim 56 requires that the flat display panel of the flat panel display device be "rear mounted." ViewSonic has previously briefed its contentions regarding Claim 55, and will not repeat them here. Consistent with that interpretation, though, ViewSonic's proposed construction for "rear mounted" is similar to its construction of a "rear mountable" flat panel display device except that the instant definition is directed to the flat display panel rather than the flat panel display device as is compelled by the clear and unambiguous language of the claim.

As discussed more fully in the opening briefs, LPL added the "rear mountable" claim limitation in an amendment to overcome the rejection by the Patent Office Examiner that the

11803.1                                    8

claims were anticipated by or obvious from the cited prior art teachings.[21] The inventors argued that the feature differentiating the proposed invention from the prior art was that the fastening element used to mount the flat panel display device to a case was on the *rear surface* of the first frame, and expressly differentiated this "rear mounting" system from the prior art which used fastening elements located around the periphery (*i.e.* front mounting) or through the sides of the frames of the flat panel display device (*i.e.* "side mounting").[22] It was not until LPL added the limitation that the flat panel display device was "rear mountable" that the Examiner allowed the claims and permitted the patents to issue. Thus, ViewSonic submits that rear mountable means the subject component is mounted to a case solely from its back surface and does not have front or side mounting features, as that is the only thing that distinguishes the invention from the prior art. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (holding that statement in prosecution history will limit claim terms to exclude interpretations disclaimed during prosecution).

The phrase "the flat display panel is rear mounted" was added to the patent at the same time as LPL inserted the "rear mountable" limitation.[23] Given these similarities, it is clear that the naked term "rear mounted" must have the same construction as "rear mountable" except for the tense. This similarity cannot, as LPL proposes, be used to ignore the language of the claim and override the application of similar definitions to the different components specified in the patent. Instead, it merely means that the components specified in the claims must be mounted or mountable in a consistent manner.

Hence, the construction of the phrase "the flat display panel is rear mounted" is clear from the plain text of the claim. Quite simply, the flat display panel, having no front or side mounting elements, is mounted to a case solely from the back of the flat display panel. This does not take away from the existence of components on the rear surface of the first frame of the flat

---

[21] JA at Ex. G., '641 Pat. file history, VS5005609, VS5005632-640; VS5005555-559.
[22] JA at Ex. G., '641 Pat. file history, VS5005510-515.
[23] JA at Ex. G., '641 Pat. file history, VS5005618-VS5005642 [paper #20, 2002-Mar-12 Amendment].

11803.1                                    9

panel display device which the claim also requires. Although the claim language could not be clearer, LPL improperly asks the Court to ignore the clear dictates of Claim 56 and to rewrite this claim to say that the flat panel display device – rather than the flat display panel – is rear mounted. *See Process Control v. HydReclaim*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) (reversing district court where claim was susceptible to only one interpretation, stating "we do not permit courts to redraft claims".) The law, the claims, and the specification do not support LPL's construction.

Each of the asserted claims, including Claim 56, distinguishes a rear mountable flat panel display device from a flat display panel.[24] As mentioned above, the only difference between the instant Claim 56 and previously briefed Claim 55 is that Claim 56 requires that the flat display panel be rear mounted. Using the same counsel representing it in this litigation, LPL first proffered Claim 56 at the same time it amended the other claims to include "rear mountable" to the flat panel display device. This choice of how to differentiate Claim 56 from Claim 55 must not be glossed over, but instead honored by this Court. Were this claim the result of a mistake by LPL, the proper remedy to correct that mistake was to seek a certificate of correction or a patent reissue. *See Process Control*, 190 F.3d at 1356-57, citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993) ("It would not be appropriate for us now to interpret the claim differently just to cure a drafting error.... That would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention."). As these cases show, it is simply not proper for LPL to ask this Court to rewrite the clear language of the claim through the Markman process. *Energizer Holdings, Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (holding that courts cannot "rewrite claims to correct material errors".)

Aside from being contradicted by the plain claim language, the Court should reject LPL's construction as it would improperly render a significant portion of the remainder of the claim

---

[24] JA at Ex. A, '641 Pat., Claims 35, 47, 55, 56.

language superfluous. *See General Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996). Specifically, the language, "wherein the first frame *is capable of being fixed to a housing* of a data processing" would be completely superfluous, as there would be no need for this capability if the device is already rear mounted. This strongly supports the position that LPL's decision during prosecution to include a limitation that the flat display panel is rear mounted – rather than the larger flat panel display device – was intentional and not merely a typographical error. Looking at the other claims of the Asserted Patents, it is clear that LPL was more than capable of identifying the flat panel display device when it wanted to do so:

> Claim 1: "the case and the *rear mountable display device* being attached . . ."
>
> Claim 19: "a screw attaching the *rear mountable display device* to the case . . ."
>
> Claim 20: "the screw attaching the *rear mountable display device* to the case . . ."
>
> Claim 28: "a screw is inserted from the rear of the case to fasten the case to the *rear mountable display device*."
>
> Claim 30: "the case and the *rear mountable display device* being attached . . ."

Similarly, just as it did in Claim 56, LPL routinely identified the flat display panel when it chose to do so:

> Claim 35: "the *flat display panel* is between the first frame and the second frame . . ."
>
> Claim 42: "the rear mountable display device according to Claim 40, wherein the fastening part is not visible from a viewing direction of the *flat display panel*."

>Claim 43: "wherein the flat panel display device only shows the *flat display panel* and the second frame when viewed from a viewing direction of the *display panel*."

The ability to differentiate components is also found in the specification. For example, when describing an aspect of the invention, the specification describes the LCD device as including "an LCD panel having a display surface and a rear surface" and "a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case...."[25] In other words, the LCD panel has its own front and rear surface, apart from the LCD device. Likewise, the Abstract for the patent provides that the display panel is attached to the case: "the case and the display panel being attached through the first and second fastening elements...."[26] In short, the plain language of the claim states that the flat display panel is rear mounted, and that is how it should be construed.

As an alternative to construing this phrase, the Court could instead determine that Claim 56 is not enabled (and therefore incapable of construction) under 35 U.S.C. section 112 because the specification fails to adequately describe to one of ordinary skill in the art how the flat display panel can be rear mounted. Section 112 mandates:

>The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Applying section 112 to invalidate claims, the Federal Circuit has stated: "[b]ecause it is for the invention as claimed that enablement must clearly exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under § 112." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed.Cir.1983). As this passage

---

[25] JA at Ex. A, '641 Pat., Col. 3:14-18.
[26] JA at Ex. A, '641 Pat. Abstract.

illustrates, when an impossible limitation is clearly embodied within the claim, the claimed invention must be held invalid.

Here, the Court could easily find the claimed limitation of "the flat display panel is rear mounted" to be impossible. As explained above, the patent discloses that the LCD panel has a front surface and a rear surface. But nowhere does the specification explain how a fastening element can be formed on that rear surface or how that surface can be mounted to a case. Since one of ordinary skill in the art understands that the flat display panel is comprised of glass, it is critical for the patent to explain how this glass can include a screw hole for mounting to a case. Because the specification fails to describe how to achieve this limitation in Claim 56 – and because it appears to be an impossible limitation – this claim should be invalidated under section 112.

### D.   Construction of *"stepped hole"*

- <u>The proper construction of this term is *"a hole where the fastening surface is on a different plane than the component being secured, e.g., a countersunk hole."*</u>

This term only appears in dependent Claim 36 of the '718 patent:

> 36. The method of claim 33, wherein the fastening element comprises a stepped hole.[27]

As shown by this claim, a "stepped hole" is defined by the patent as one type of fastening element.[28] ViewSonic contends, therefore, that it requires no further construction. Moreover, it has a plain, ordinary meaning that is understood by one of ordinary skill in the art and is consistent with the context of the claims. One of ordinary skill in the art would understand a stepped hole to be a hole that changes size, either from wide to narrow or narrow to wide. A stepped hole enables the fastener to sink below the surface so that it does not protrude from or break the surface.

---

[27] JA at Ex. B, '718 Pat., Claim 36.
[28] JA at Ex. A, '641 Pat., Col. 7:3-5 ("stepped hole 30b (which may be referred to as a fastening hole or a similar conveniently descriptive term . . .)").

For example, in describing figure 5, the specification explains that the "through-hole 21a is preferably a stepped hole so that the head of the screw 18 will not protrude from the outer surface of the case 21."[29] In that circumstance, the stepped hole changes from wide to narrow. Figure 6 also has a stepped hole that is identified as part of rib 23.[30] There, the stepped hole changes from narrow to wide as it is meant to receive a fastener with a compressible head, such as the one designated 17 in figure 6.[31] The shape of the stepped hole will vary depending on the type of fastener to be inserted into it.

This term should be given its ordinary meaning as supported by the plain language and context of the claims. Specifically, a stepped hole is "a hole where the fastening surface is on a different plane than the component being secured, e.g., a countersunk hole."

## V. CONCLUSION

For the foregoing reasons, ViewSonic respectfully requests that the Court adopt its proposed constructions for these claim terms.

---

[29] JA at Ex. B, '718 Pat., Col. 5:3-6; Fig. 5.
[30] JA at Ex. B, '718 Pat., Fig. 6.
[31] *Id.*

11803.1                                  14

                                        Respectfully submitted,

                                        CONNOLLY BOVE LODGE & HUTZ LLP

Dated: April 30, 2007          By:   /s/  *James D. Heisman*
                                              Jeffrey B. Bove, Esq. (#998)
                                              James D. Heisman, Esq. (#2746)
                                              Jaclyn M. Mason, Esq. (#4737)
                                              The Nemours Building, 8th Floor
                                              1007 North Orange Street
                                              Wilmington, DE  19801
                                              Telephone:  (302) 658-9141
                                              Facsimile:   (302) 658-5614

                                              Scott R. Miller, Esq.
                                              355 South Grand Avenue, Suite 3150
                                              Los Angeles, CA  90071
                                              Telephone:  (213) 787-2500
                                              Facsimile:   (213) 687-0498

                                        *Attorneys for ViewSonic Corporation*

OF COUNSEL:

Tracy R. Roman, Esq.
Raskin Peter Rubin & Simon, LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  (310) 277-0010
Facsimile:   (310) 277-1980

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2007, a true copy of the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19801

I hereby certify that on April 30, 2007, I have sent by email the foregoing document to the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA  90404

Tracy R. Roman
Raskin Peter Rubin & Simon
1801 Century Park East 23rd Floor
Los Angeles, CA  90067

By: /s/ *James D. Heisman*
    James D. Heisman (#2746)
    jheisman@cblh.com

534937_1.DOC