# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, | JURY TRIAL DEMANDED |
| Defendants/Counterclaim Plaintiffs. | |

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION MEMORANDUM
IN SUPPORT OF TWO NEW CLAIM TERMS**

April 30, 2007

THE BAYARD FIRM
Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 429-4208
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

658556-1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................... 3

II. ARGUMENT ............................................................................................................... 4

    A. Plaintiff's Proposed Constructions Adhere To The Federal Circuit's Mandated Methodology For Properly Construing Claims ...................... 4

        1. "corners of the first frame" ............................................................... 4

            a. LPL's Construction of "corners of the first frame" is Consistent With The Common And Ordinary Meaning Of The Disputed Term And The Intrinsic Record ................................................................................ 4

            b. Defendants' Constructions Are Improper Because They Impermissibly Add Structural Limitations And Ignore The Intrinsic Record .................................. 8

        2. "the flat display panel is rear mounted" ........................................... 9

            a. The Term Should Not Be Construed Because The Parties Have Already Agreed On The Meaning Of "flat display panel" And Agreed That "rear mounted" is The Past Tense Of "rear mountable" ......................... 9

            b. Defendants' Constructions Are Improper Because They Ignore The Intrinsic Record By Adding Structural Limitations .............................................................. 13

III. CONCLUSION .......................................................................................................... 14

**Error! Unknown document property name.**

**TABLE OF AUTHORITIES**

                                                                                                                **Page**

**Cases**

*Reinshaw PLC v. Marposs Societa per Azioni,*
    158 F.3d 1243 (Fed. Cir. 1998) .......................................................................................... 7

*CVI/Beta Ventures, Inc. v. Tura LP,*
    112 F.3d 1146 (Fed. Cir. 1997) .......................................................................................... 7

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................... 5, 7

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................................ 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, | JURY TRIAL DEMANDED |
| Defendants/Counterclaim Plaintiffs. | |

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION MEMORANDUM
IN SUPPORT OF TWO NEW CLAIM TERMS**

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), through counsel, hereby submits this brief in support of its constructions of certain newly identified and disputed claim terms recited in LPL's U.S. Patent No. 6,501,641 ("the '641 Patent"), which is at issue in this litigation.

## I.     INTRODUCTION

Pursuant to the Modified Scheduling Order, LPL supplements its Opening Markman Brief, submitted on December 22, 2006, to address additional claim terms identified by Defendants ViewSonic Corporation ("ViewSonic"), Tatung Co. ("Tatung"), and Tatung Company of America, Inc. ("Tatung America") (collectively "Defendants"), which are recited in the '641 Patent. Specifically, Defendants identified the following additional claim terms in the '641 Patent for construction: (1) "corners of the first frame," which appears in claims 38 and 39; and (2) "the flat display panel is rear mounted," which appears in claim 56. LPL contends that neither of these additional claim terms

**Error! Unknown document property name.**

require construction by the Court because either the meaning of this language is clear to one of ordinary skill in the art or their construction has been previously agreed upon between the parties. Moreover, it is clear that Defendants identified these terms in order to proffer constructions in an attempt to avoid infringement. Defendants' proposed constructions, however, improperly ignore the intrinsic record, vitiate claim language, and invite legal error.

## II.     ARGUMENT

### A.     Plaintiff's Proposed Constructions Adhere To The Federal Circuit's Mandated Methodology For Properly Construing Claims

For the reasons discussed below, Plaintiff respectfully requests that this Court construe the disputed claim terms "corners of the first frame" and "the flat display panel is rear mounted" in accordance with constructions compelled by a review of the intrinsic evidence or previously agreed upon constructions.

#### 1.     "corners of the first frame"

LPL's proposed construction of the disputed term "corners of the first frame," recited in dependent claims 38 and 39 of the '641 Patent, is "areas located in or near the edges of the first frame and positioned on or inside the border of the flat display panel." For the reasons set forth below, this Court should adopt LPL's construction as it is compelled by the intrinsic evidence.

##### a.     LPL's Construction of "corners of the first frame" is Consistent With The Common And Ordinary Meaning Of The Disputed Term And The Intrinsic Record

LPL's construction is proper because it conforms to the meaning a person of ordinary skill in the art would attribute to the disputed term "corners of the first frame" after reading it in the context of the particular claims in which it appears. *Vitronics Corp.*

4

*v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves . . . to define the scope of the patented invention"); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (citation omitted), *cert. denied*, 126 S. Ct. 1332 (2006) (finding the context in which a term is used in the claim at issue can be highly instructive). Therefore, the Court should not construe "corners of the first frame" in isolation, but in the context of the entire claim language. For example, claim 38 of the '641 Patent recites, in relevant part, "fastening holes *at* two corners of the first frame" (J.A. at A, '641 Patent, claim 38) and claim 39 of the '641 Patent recites, in relevant part, "fastening holes *at* four corners of the first frame" (*See* '641 Patent, claim 39) (emphasis added). The common and ordinary meaning of "at" to a person of ordinary skill in the art is *in or near* the position or area (corner area) occupied by something (fastening hole). Thus, it is clear that the phrase "*at* the corners of the first frame," when read in context, cannot be limited to the places solely on the first frame where the two side edges intersect. Simply put, if a fastening hole must encroach a corner of the first frame, the corner would no longer exist. For the corner of the first frame to exist, the fastening holes at the corners must be located in or near where the edges of the first frame intersect, and not specifically on top of the point where the side edges intersect.

   Thus, according to the claim language, the corners of the first frame having fastening holes must be located in or near the edges of the first frame and positioned on or inside the border of the flat display panel.

   Furthermore, the specification of the '641 Patent clearly supports LPL's construction that the corners of the first frame, where the fastening holes are located, are positioned on or inside the border of the flat display panel. Indeed, Figures 4C and 10 of

5

the specification clearly show that the fastening holes at the corners of the first frame 14g are located in or near the edges of the first frame, and positioned on or inside the border of the flat display panel.  For example, in Figure 4C (shown below), the fastening elements 15 (colored red) at the corners of the first frame 14g (colored green) are located in or near the edges of the first frame 14g (colored green), and are positioned on or inside the border of the flat display panel 12 (colored blue).



Figure 10 (shown below) also shows that the LCD device 10 (flat panel display device) includes fastening elements (colored red) located at the four corners of the first frame that are positioned on or inside the border of the flat display panel (colored blue).  It thus follows that the corners of the first frame, where the fastening holes are located, are positioned on or inside the border of the flat display panel.

**Error! Unknown document property name.**

FIG. 10

Further, a full reading of the specification compels LPL's construction because it is consistent with the stated purpose of the invention, *i.e.*, the elimination of the requirement of unnecessary side space. As discussed in LPL's Opening Brief, the purpose of the invention is to provide a rear mounting technology or a rear mounting method that does "not require unnecessary side space for mounting the LCD device." (*See* the '641 Patent at 2:37-39 and 7:31-35 and Figs. 4-16.) As such, the invention's purpose mandates LPL's construction that the corners of the first frame, where the fastening holes (fastening elements) are located, are positioned on or inside the border of the flat display panel in order to mount the flat panel display device to the housing. If these same fastening holes are located on corners of the first frame that are positioned outside the border of the flat display panel, then the corners of the first frame would *require*, rather than eliminate, the need for unnecessary side space. Therefore, in order to satisfy the purpose of the invention and eliminate the requirement for unnecessary side space, the corners of the first frame, where the fastening holes are located, *must* be positioned on or inside the border of the flat display panel. *See Reinshaw PLC v.*

7

*Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) (reasoning that a claim interpretation that aligns with the purpose of the invention is likely to be correct).

Further, there is nothing whatsoever in the prosecution history that necessitates deviation from LPL's construction.  Thus, the intrinsic record confirms and supports LPL's construction because all of the intrinsic record clearly sets forth that the corners of the first frame, as described in dependent claims 38 and 39, are the areas located in or near the edges of the first frame and positioned on or inside the border of the flat display panel.

In addition, the dictionary definition of "at" supports LPL's construction that the common and ordinary meaning of the phrase "corners of the first frame," when read in context of the claim language, e.g., at corners of the first frame, is "areas located in or near the edges of the first frame and positioned on or inside the border of the flat display panel."  *See Phillips*, 415 F.3d at 1318 (noting that dictionaries "may be considered if the court deems it helpful").  Indeed, the American Heritage Dictionary defines "at" as "1. In or near the position or area occupied by: at the market: at the top of the page."  Ex. LPL 11, American Heritage Dictionary, 52 (3d ed. 1994), attached hereto.  For these reasons, the Court should construe the phrase "corners of the first frame" to mean "areas located in or near the edges of the first frame and positioned on or inside the border of the flat display panel."

        **b.**    **Defendants' Constructions Are Improper Because They Impermissibly Add Structural Limitations And Ignore The Intrinsic Record**

In contrast to LPL's construction, which is supported by the intrinsic record, Defendants' proposed constructions of "corners of the first frame" are belied by the

**Error! Unknown document property name.**

intrinsic record. In fact, Defendants were unable to reach agreement among themselves as to the meaning of this term.

First, ViewSonic's proposed definition of "the places on the first frame where two side edges of the first frame intersect" improperly narrows the claims to avoid infringement. As discussed above, it is clear that the phrase "corners of the first frame," when read in context of the language "*at* the corners of the first frame," cannot be limited to the *exact* places on the first frame where the two side edges intersect. It is indisputable that nothing in the specification or prosecution history supports deviating from the claim language. Rather, when the term is read in context of the claim language, a person of ordinary skill in the art would have understood the term to mean that the fastening hole is located in or near the edges of the first frame, and positioned on or inside the border of the flat display panel.

Second, Tatung's proposed construction of "the area (region) at the back surface of a flat panel display device near the intersection of any two side edges of the flat panel display device" impermissibly adds structural limitations to this claim by *requiring* that the corners of the first frame (back surface of a flat panel display device) be located near the corners (intersection of any two side edges) of the flat panel display device. Unfortunately for Tatung, however, there is no support whatsoever in the intrinsic record for this structural limitation.

### 2. "the flat display panel is rear mounted"

LPL's proposed construction of the disputed term "the flat display panel is rear mounted," recited in independent claim 56 of the '641 Patent, is "[t]he flat display panel is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel." For the

9

reasons set forth below, this Court should adopt LPL's construction based on the intrinsic evidence and the parties agreed upon construction of "flat display panel" and their understanding that "rear mounted" is simply the past tense of "rear mountable."

      **a.    The Term Should Not Be Construed Because The Parties Have Already Agreed On The Meaning Of "flat display panel" And Agreed That "rear mounted" is The Past Tense Of "rear mountable"**

LPL contends that the phrase "the flat display panel is rear mounted," recited in independent claim 56 of the '641 Patent, does not need to be construed. The parties have already stipulated that "flat display panel" means "the component within a flat panel display device on which the image appears." Further, none of the parties proposed that the term "rear mounted" needed to be construed. Indeed, the term rear mountable, which the parties have proposed for construction, is simply the capability of being rear mounted. *See* LPL's Opening Brief, page 8. Thus, the only word left in the "disputed" phrase is the word "is," which has an ordinary, understood meaning and does not need to be construed. In sum, based on the agreed-upon meaning of "flat display panel" and this Court's future construction of "rear mountable (disputed term)," the parties have in effect already agreed to construe this phrase to mean: "the component within a flat panel display device on which the image appears (stipulated construction) is 'rear mountable' (past tense)."

Defendants insistence on reconstruing this phrase is clear: to avoid infringement. Specifically, Defendants impermissibly attempt to limit the claimed invention to a flat display panel that is mounted using only fastening elements at the back surface of the flat display panel. For example, Defendant ViewSonic now argues that the "disputed" term means: "the flat display panel is mounted to a case solely from the back surface of the flat display panel . . . ." and Defendant Tatung now argues that the "disputed" term means:

10

"the flat display panel having only rear fastening elements and is mounted to a housing via those fastening elements." Defendants' constructions ignore the fact that the flat display panel is a component of the flat panel display device and that "rear mounted" is materially the same as "rear mountable" (already briefed) because the parties agreed that rear mountable is simply the capability of being rear mounted. Thus, accordingly Defendants' constructions find no basis in the intrinsic record.

Nevertheless, if the Court decides to construe the phrase "the flat display panel is rear mounted," then LPL proposes the phrase be construed to mean: "[t]he flat display panel is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel." As discussed below, LPL's construction is supported by the intrinsic record and is consistent with the parties agreed upon construction of "flat display panel" and understanding that "rear mounted" is simply the past tense of "rear mountable."

Turning first to the claim language, the claim reads: "[a] rear mountable flat panel display device comprising: . . . a first frame having a fastening part at a rear surface of the first frame; . . . a flat display panel . . . wherein the first frame is capable of being fixed to a housing . . . through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted." It is clear that the flat display panel (which the parties agree is a component of the flat panel display device) is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel. Therefore, when the flat panel display device is rear mounted, the flat display panel is rear mounted, and vice-versa.

11

As discussed at length in LPL's Opening Brief, and fully supported by the intrinsic record, the rear mountable flat panel display device is rear mounted when the fastening elements located on the rear surface of the first frame of the flat panel display device, and positioned on or inside the border of the flat display panel, are used to mount the flat panel display device to the rear housing. *See* LPL's Opening Markman Brief, p. 8. Indeed, Defendant Tatung recognized in its Opening Brief that the flat panel display device is rear mounted ("rear mounted (flat panel display device)") when it is "mounted to a display case by fastening elements at the rear of its first frame." *See* Tatung's Opening Markman Brief, p. 14. Tatung also stipulated that the flat display panel is a "component within a flat panel display device." Therefore, Defendant Tatung supports LPL's construction that the flat display panel is rear mounted when the flat panel display device is mounted to the rear housing (display case). Tatung's construction is flawed, however, because it fails to limit the location of the fastening elements located on the rear surface of the first frame in relation to the border of the flat panel display device.

Moreover, the language "rear mounted" derives from the claim term "rear mountable" and both terms must be consistently defined. The term "rear mounted" simply means that the action of rear mounting has occurred, whereas "rear mountable" means "capable of being" rear mounted. *See* LPL's Opening Brief, p. 8. Reading the disputed phrase "the flat display panel is rear mounted" in context of the claim language leaves no doubt that the phrase relates to the "rear mountable flat panel display device" and the stated purpose of the invention, which is to eliminate the requirement for unnecessary side space when mounting the flat panel display device. (*See* '641 Patent at 2:37-39 and 7:31-35 and Figs. 4-16.) Accordingly, the disputed phrase "the flat display

**Error! Unknown document property name.**

panel is rear mounted" means that the flat display panel (which is a component of the flat panel display device) is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel.

The specification is fully consistent with LPL's construction. For example, Figure 5 illustrates that the flat display panel, which is a component of the LCD device 10 (flat panel display device), is mounted to the rear housing 21 via a fastening part(s) 15 located on the rear surface of the first frame (component of the LCD device 10) and positioned on or inside the border of the flat display panel. (*See* '641 Patent, Figure 5). Further, the prosecution history is consistent with LPL's construction, as evidenced by the Notice of Allowance, wherein the Examiner specifically referenced a rear mountable display device that is rear mounted. (J.A. at G, Notice of Allowability, dated 4/12/02 at page 2, paragraph 2.).

For these reasons, the Court should construe the phrase "the flat display panel is rear mounted" to mean "[t]he flat display panel is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel."

        **b.    Defendants' Constructions Are Improper Because They Ignore The Intrinsic Record By Adding Structural Limitations**

In contrast to LPL's construction, which is supported by intrinsic record, Defendants' proposed constructions of "the flat display panel is rear mounted" are belied by the intrinsic record. In fact, all <u>three</u> of Defendants' proposed constructions are transparent attempts to fashion a non-infringement position where none exists. Specifically, Defendants' proposed constructions explicitly limit the claimed invention to

13

a flat display panel that is mounted using only fastening elements at the back surface of the flat display panel, even though no such limitation is found in the claims.  In other words, all three proposed constructions improperly read a structural limitation into the asserted claims by requiring that the flat display panel: i) has "only rear fastening elements and is mounted to a housing via those fastening elements" (Tatung's construction); ii) "is mounted to a case solely from the back surface of the flat display panel and the panel has no front or side mounting elements" (ViewSonic's first construction); and iii) "is mounted to a case with fastening elements located only on the back of the panel and the panel has no fastening element that extends through, from or protrudes beyond any of the four side edges of the panel" (ViewSonic's second construction).

Taking the intrinsic evidence in turn, neither the claims, specification, nor prosecution history support Defendants' position that: (1) the flat display panel has fastening elements and that the flat display panel is mounted to the housing / display case via fastening elements located on the back of the panel (Tatung's construction and ViewSonic's second construction); or (2) the flat display panel is mounted to the display case "solely from the back surface of the flat display panel" (ViewSonic's first construction).

Accordingly, the phrase "the flat display panel is rear mounted" is properly construed as "[t]he flat display panel is mounted to the rear housing via a fastening part(s) located on the rear surface of the first frame and positioned on or inside the border of the flat display panel."

**Error! Unknown document property name.**

## III. CONCLUSION

For all of the foregoing reasons, LPL submits that the Court construe the above disputed claim terms in accordance with LPL's proposed constructions.

April 30, 2007                                     THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 429-4208
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

15

**Error! Unknown document property name.**