# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

**James D. Heisman**
Partner

TEL (302) 888-6216
EMAIL jheisman@cblh.com

*Via Email and Hand-Delivery*

May 2, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic et al.*, USDC, D. Del., No. 04-343-JJF
      DM 31: ViewSonic's Motion to Compel re RFP 128

Dear Special Master Poppiti:

ViewSonic Corporation ("ViewSonic") moves to compel Plaintiff ("LPL") to produce documents and things sought by supplemental discovery expressly allowed by the Court due to LPL's late assertion of new claims after the start of the Markman process. *See* DI 401. RFP 128 seeks information related to attaching a flat panel display device (i.e., an LCD module or plasma display panel) to, on or within any other structure at or near the corners of the flat panel display device. *See* Ex. 2.[1] RFP 128 defines flat panel display device to be an LCD module or plasma display panel, thus removing any ambiguity regarding whether LPL's LCD modules or plasma products are covered by the request. LPL product specifications, assembly drawings and product samples are responsive to RFP 128.[2]

As to documents and things relating to products that qualify as prior art and predate the US filing date of the '641 patent (April 2, 1999), such discovery is clearly proper to enable defendants' experts to evaluate these materials as part of defendants' invalidity defense. There is no reason to delay such discovery until after a claim construction decision as doing so will have the unintended consequence of effectively bifurcating fact discovery and will likely impact the trial date. The information sought is critical to properly evaluate the validity of the patents in suit. LPL has conceded that an LCD module with holes on the rear surface or back side of the module is relevant to rear-mount technology. *See* Ex. 23 (providing partial "list of LPL's modules that have *holes* at rear surface"). ViewSonic believes that virtually all of LPL's LCD modules, including the prior art modules, are related to mounting at the corners and have holes on the rear surface or back side of the module that were or could be used to attach various items to the module, or to attach the module to another component. ViewSonic's understanding is based on the

---

[1] Numeric exhibits are enclosed with ViewSonic's 7.1.1 certification. Letter exhibits are enclosed with Mr. Nelson's declaration.
[2] Discovery related to attaching a flat panel display device to, on or within any other structure at or near the "corners" of the flat panel display device is specifically directed to newly asserted claims 38-39 of the '641 patent, which recites "corner", a term not found in any previously asserted claim.


CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
May 2, 2007
Page 2

few LPL product specs that ViewSonic independently obtained which reveal what look like fastening holes on the back of the devices, and mention mounting at the corners.[3] *See* Nelson Decl., ¶¶ 4-12 & Exs. F-L. ViewSonic is entitled to have its expert(s) examine LPL's prior art products specs, assembly drawings and product samples to investigate the configurations of the holes on the back of the module, including the type, location, size, robustness, material, etc. of such holes, and determine independently whether such holes on the back of LPL's prior art LCD modules are or could be used to attach the module to another structure, such as a monitor case or laptop housing. This is the identical position LPL took during the March 9, 2007 hearing regarding discovery sought from Tatung. *See* Ex. 22 ("Mar. 9, 2007 Hrng. Tr."), p. 29, l. 9 - p. 33, l. 22 (LPL needs drawings to evaluate whether there are any fastening elements or parts on the back of the device; *id.*, p. 84, l. 20 - p. 88, l. 19 (even if product is front or side mounted, party entitled to evaluate whether product also may be capable of being rear mounted through fastening parts on the back).

Claim construction will not impact RFP 128, and provides no basis for delaying production of the materials sought. LPL's relevant proposed constructions, including that of "flat panel display device," encompass the defendants' proposed constructions. *See* Mar. 9, 2007 Hrng. Tr., p. 79, l. 23 - p. 80, l. 12 (representing that LPL's construction is broader, and encompasses an LCD module and plasma panel). If LPL's proposed construction of "flat panel display device" is adopted and does not cover its own products (e.g., LCD modules), then LPL's products before and after the filing date of the patents would represent extremely significant discovery regarding non-infringing alternatives. *See Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996) (non-infringing alternatives considered for damages determination). Thus, LPL should be ordered to immediately produce product specifications and assembly drawings, as well as product specimens, that evidence or relate to attaching a flat panel display device (i.e., an LCD module or plasma display panel) to, on or within any other structure at or near the corners of the device that was published, distributed, made, offered for sale, imported or sold in the U.S. prior to April 2, 1999. LPL's prior arguments conceded this fact. *See* Mar. 9, 2007 Hrng. Tr., p. 79, l. 23 - p. 80, l. 12 (argument by LPL that it is improper to limit discovery to party's claim construction).

Finally, information regarding prior art (front or side mount) specifications, drawings and products without holes on the back of the modules is also properly discoverable for numerous reasons. For example, a proper obviousness inquiry requires an examination of the scope and content of the prior art, which includes front mount and side mount technology. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (obviousness inquiry examines scope and content of prior art, and differences between prior art and claims at issue); *McNeil-PPC v. Perrigo Co.*, 337 F.3d 1362, 1368 (Fed. Cir. 2003) (same). Designs that are different than rear mounting technology (i.e., non-infringing alternatives)

---

[3] Notably, LPL hid this information from the U.S. Patent Office, just as it is trying to do in this case. For example, the Examiner rejected the claims of the '641 patent as obvious over U.S. Patent No. 5,835,139 (Yun et al.), finding that it would have been obvious to rearrange the fastening parts from the side to the rear of the device. *See* Ex. 24, at VS5005614. In response to the Examiner's obviousness rejection, LPL challenged the Examiner's failure to cite prior art showing a fastener on the back of a module while simultaneously failing to disclose that prior art LCD modules commonly had fastening elements on their backs. *See* Nelson Decl., ¶ 3 & Ex. A (back of prior art IBM module that practices side mounting has holes in back); *see also id.*, ¶¶ 4-12 & Exs. F-L.


CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
May 2, 2007
Page 3

encompass front and side mounting, and are relevant. A reasonable royalty damages analysis naturally includes alternatives to rear mounting, thus encompassing front and side mounting. *See Minco*, 95 F.3d at 1120 (non-infringing alternatives considered in reasonable royalty determination). LPL has argued that front and side mounted products are relevant to discovery it seeks, estopping it from arguing the opposite here. *See* Mar. 9, 2007 Hrng. Tr., p. 81, ll. 2-12; *see also* Nelson Decl., ¶¶ 4-13 & Exs. F-M.

Similarly, information related to products first sold, offered for sale, imported or published in the US after April 2, 1999 is also highly relevant and properly discoverable. For example, these materials are directly related to the evaluation of the "commercial success" factor used in both invalidity and damages analyses.[4] ViewSonic needs the information sought by RFP 128 to allow its expert to ascertain if there is any correlation between mounting schemes on the products sold by LPL and their commercial success in order to properly conduct these analyses. These same analyses are directly relevant to the evaluation of any assertion by LPL that the supposed invention has enjoyed commercial success, thus the discovery sought is necessary to permit the full evaluation of that assertion, unless LPL commits to waive its right to argue same at trial. This analysis is even more important under the *KSR Int'l Co. v. Teleflex Inc.* decision just handed down by the U.S. Supreme Court April 30, 2007 which over-ruled the Federal Circuit's overly rigid approaches in obviousness examinations. ___ U.S. ___, 2007 WL 1237837 (2007).

LPL has wrongly asserted that ViewSonic is not permitted to use the new requests to seek discovery that (1) it could have obtained previously, or (2) happens to fall within the scope of discovery sought by ViewSonic's February 16 motion. LPL's positions make the Court's Amended Scheduling Order (DI 401) allowing discovery related to the new claims a nullity. *See also* Ex. 20 (Jan. 19, 2007 Hrng. Tr.), p. 9, l. 15 - p. 10, l. 11. ViewSonic's new discovery requests are directed to the new claims asserted by LPL. That the scope of information responsive to such discovery hypothetically could have been sought earlier, or that some of the information responsive to the new discovery requests may also fall within the scope of information sought by ViewSonic's February 16, 2007 motion is not relevant.

LPL's assertion that an alleged agreement reached during the December 28, 2006 hearing limits ViewSonic's new discovery to information dated prior to December 31, 1998 is an equally frivolous attempt to write limitations into the clear mandate of the Amended Scheduling Order. Nowhere in the transcript of that hearing is there a hint of an agreement to temporally limit all discovery. *See* Ex. 21 (DI 384), p. 100, l. 19-p. 176, l. 18.

Based on the foregoing, LPL should be compelled to produce the information sought herein.

---

[4] *See, e.g., Graham*, 383 U.S. at 17-18 (commercial success a secondary consideration for obviousness inquiry); *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) ("secondary" considerations refer to secondary in time, not importance); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970) (eighth factor for reasonable royalty determination includes commercial success). As discussed above, deferring discovery of post April 1999 materials similar to the deferral of independent discovery sought in ViewSonic's Feburayr 16, 2007 motion (argued March 2) ignores the subsequent admissions of LPL of the relevance of such material and the importance of these materials regardless of the construction adopted.


**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
May 2, 2007
Page 4

                                              Respectfully submitted,

                                              */s/ James D. Heisman*

                                              James D. Heisman

cc:    Counsel of record