# EXHIBIT 14

**Manuel C. Nelson**

| | |
|---|---|
| **From:** | Manuel C. Nelson |
| **Sent:** | Monday, April 23, 2007 12:18 AM |
| **To:** | 'Cormac Connor' |
| **Cc:** | 'A. Stitzer'; 'Allan Jansen'; 'Anne Shea Gaza'; 'Cass W. Christenson '; 'Christopher Darrow'; 'Dick Kirk'; 'Frank C. Merideth, Jr. '; 'Frederick L. Cottrell'; 'HassidS@gtlaw.com'; Jaclyn M. Mason; James Heisman; Jeff Bove; Jill J. Herr; Julie Lorenzen; Kristen Rohrabaugh; 'Lees'; Litigation Docketing Desk; 'Lora A. Brzezynski '; 'Mark Krietzman'; 'Michael Secondo'; Nancy Phillips; 'Ohc'; 'Pouratiand'; 'Rel Ambrozy'; 'S. Klevens'; 'Tracy R. Roman'; 'Valerie Ho'; Manuel C. Nelson |
| **Subject:** | RESENDING April 19, 2007 Meet and Confer |

Dear Mr. Connor ,

This email corrects my email sent earlier this evening, which followed up on my previous emails, and our April 19 telephonic meet and confer, which in turn followed up on our April 18 telephonic meet and confer.

During our April 19 meet and confer, we followed up on the previous discussion regarding LPL's objection that RFP 130 is duplicative of RFP 129. LPL agreed to withdraw this objection, but maintained its remaining objections, and indicated that LPL's response to RFP 130 is basically the same as its response to RFP 129.

Following up on the previous discussions regarding LPL's claim construction objection, LPL indicated that would maintain its objection that ViewSonic's recent discovery requests require construction of claim terms. ViewSonic notes that LPL has not indicated whether it agrees or disagrees with ViewSonic's position that (1) LPL's proposed constructions are broader than ViewSonic's proposed constructions, (2) the particular constructions offered by the parties are not mutually exclusive, (3) the new discovery requests generally address specific parts or elements of a claim, not entire claims, and (4) regardless of which of the alternative constructions of the claim terms offered by LPL and the defendants is ultimately successful, the discovery requests cover LPL's products.

We revisited LPL's objection that ViewSonic's recent discovery requests are not limited to the new claim terms. LPL reiterated its position is that ViewSonic is not permitted to use the new discovery requests to seek discovery that it could have obtained previously. ViewSonic's position is that discovery directed to the new claims asserted by LPL is permitted, and that the fact that the scope of information responsive to such discovery hypothetically could have been sought earlier is not relevant. LPL's position would basically foreclose any new discovery, which ViewSonic believes is contrary to the letter and spirit of the Court's Order allowing discovery related to the new claims. ViewSonic also explained during the telephonic conference how each new discovery request is directed to the new claims. Specifically, RFPs 121-127, ROGs 30-34 and RFAs 34-36 are expressly directed to one or more of claims 38-39, 44-45 and/or 56 of the '641 patent, or claim 36 of the '718 patent. RFPs 128-130 and ROGs 36-37 are expressly directed to the limitation fastening the flat panel display device at the "corners" of the flat panel display device as claimed in claims 38-39 of the '641 patent.

We also revisited LPL's similar objection that ViewSonic's recent discovery requests seek discovery similar to that sought by ViewSonic's February 16, 2007 motion. Specifically, LPL reiterated its position is that ViewSonic is not permitted to seek discovery that has a similar scope to that which is sought by ViewSonic's February 16, 2007 motion. Again, ViewSonic's position is that discovery directed to the new claims asserted by LPL is permitted, and that the fact that some of the scope of information responsive to the new discovery requests may also fall within the scope of information sought by ViewSonic's February 16, 2007 motion is not relevant.

We also revisited LPL's objection that ViewSonic's requests are not limited to rear mount products. ViewSonic explained that relevant information regarding invalidity is not limited to rear mount products. Rather, relevant information related to invalidity includes information regarding precursors to rear mount technology that would have obviously led to rear-mount technology (e.g., an obvious variant of front mount and side mount is rear mount). Additionally, any LCD module with holes on the rear surface or back side of the module is relevant to rear-mount technology. Further, design around rear mount technology (i.e., non-infringing alternatives) encompasses front and side mounting. Similarly, evidence regarding reasonable royalty calculations would naturally include commercial alternatives to rear mounting, thus also encompassing front and side mounting.

We discussed LPL's objection that ViewSonic's recent discovery requests are not temporally limited to information dated prior to December 31, 1998. LPL maintains that such temporal limitation is called for by the discussions held and agreement reached during the December 28, 2006 hearing with the Special Master. ViewSonic disagrees. ViewSonic's position is that such an agreement, if effective, pertained solely to the particular discovery requests specifically discussed in connection with such temporal limitation during the December 28, 2006 hearing. There is no agreement, or implication of an agreement, regarding a wholesale temporal limitation that would apply to all discovery requests. The propriety of any

temporal limitation discussed in the December 28, 2006 hearing is before the Special Master for determination, and is totally separate and independent from the new discovery. ViewSonic does not think that the issues are conjoined. Additionally, ViewSonic explained that relevant information related to invalidity includes information regarding the commercial success (or lack thereof) casually connected to the practice of the claimed invention (thus encompassing the period of time after the effective filing date of the patent), as compared with the practice of other technology (e.g., front mounting or side mounting). Relevant information regarding reasonable royalty damage measures includes various factors related to conduct after the filing date of the patent, including the practice of the claimed invention, and alternatives to the claimed invention. Relevant information regarding non-infringement encompasses designs around the patented invention (non-infringing alternatives), regardless of the date.

We also discussed LPL's relevancy objections to ViewSonic's recent discovery requests. I explained that ViewSonic's new discovery requests are relevant, indeed necessary, for the development of ViewSonic's invalidity and damages theories of the case. With respect to invalidity, ViewSonic explained why it is entitled to information from before and after the effective filing date of the patents in suit. Similarly, with respect to damages, ViewSonic believes it is entitled to information from before and after the issue date of the patents in suit for reasons discussed. During our April 19 meet and confer, LPL clarified that LPL's relevancy objection is related to other objections, such as its objections that the discovery is not limited to rear mount products, that the discovery seeks information beyond the December 31, 1998 temporal limit LPL seeks to impose, that the discovery requires claim construction, and that the discovery seeks information that is within the scope of information sought by ViewSonic's February 16, 2007 motion to compel that has not been ruled upon. Because LPL's relevancy objection is closely connected to LPL's other objections, ViewSonic and LPL agreed that the discussions regarding relevancy was encompassed by the discussions regarding the other objections, and was sufficiently complete from the stand point of the parties' meet and confer obligations.

We also discussed LPL's response to RFAs 34 and 36. LPL indicated that is was prepared to offer a response to RFAs 34 and 36 so long as it could indicate that the response was subject to change after the claim construction. As with RFA 35, ViewSonic is prepared to accept an admission or denial in response to RFAs 34 and 36 that is subject to change based on the Special Master's claim construction order, and Judge Farnan's review of such order.

We discussed LPL's objection that RFPs 128-130 are overlybroad in that they seek "all information" regarding all types of mounting. ViewSonic pointed out that there are only three primary types of mounting, front, side, and rear mounting, as well a finite number of permutations of combinations of the three primary types of mounting. Nevertheless, ViewSonic agreed to try to narrow these requests with respect to the portions of the requests seeking "all information".

RFP 128 seeks technical information (structure and methods) since 1997 related to attaching a flat panel display device (illustratively defined in the request as "an LCD module, plasma display panel or field emission device") to, on or within any other structure "at or near the corners of the flat panel display device" (thus directed to claims 38-39 of the '641 patent), including a sample of each such flat panel display device. To reach a compromise, ViewSonic will limit the information sought by RFP 128 to product specifications and assembly drawings (or similar documents, regardless of their title) that relate to or mention mounting a flat panel display device (i.e., an LCD module or plasma display panel) to, on or within any other structure at or near one or more corners of the flat panel display device and a sample of each such device. In instances that LPL does not have all of these three categories of responsive discovery, ViewSonic is willing to accept other documents that address the mounting of the flat panel display device (i.e., LCD module or plasma display panel), describe or categorize the mounting of the device, or group the mounting of the device with other devices, to fill in what is missing. For example, if LPL has a responsive product specification but no assembly drawings or sample, ViewSonic would expect LPL to produce other documents it has, if any, which show the assemblage or construction of the product (e.g. photographs, work instructions, etc).

RFPs 129 and 130 seek business and marketing information. Specifically, RFPs 129 and 130 respectively seek information related to projections, budgets, forecasts and business plans since 1997 regarding any flat panel display device (illustratively defined in the request as "an LCD module, plasma display panel or field emission device") that can be attached to, on or within any other structure "at or near the corners of the flat panel display device" (RFP 129) or not "at or near the corners of the flat panel display device" (RFP 130), thus directing the requests to business and marketing information relevant to claims 38-39 of the '641 patent. To reach a compromise, ViewSonic will limit the information sought by RFPs 129 and 130 to projections, budgets, forecasts and business plans since 1997 regarding any flat panel display device (e.g., an LCD module or plasma display panel) that can be attached to, on or within any other structure at or near one or more of the corners of the flat panel display device (RFP 129) or not at or near one or more of the corners of the flat panel display device (RFP 130), and reports or summaries that show results that are, or can be, compared to such projections, forecasts and/or plans.

Finally, thank you for your Friday email scheduling a telephone conference this coming Tuesday, April 24, at 7:00 am PST (10:00 am EST) to complete our meet and confer on ViewSonic's recent discovery requests. I look forward to completing our discussions.
Regards,
Manuel

5/2/2007