# EXHIBIT 17

| | |
|---|---|
| **From:** | Manuel C. Nelson |
| **Sent:** | Sunday, April 29, 2007 10:38 PM |
| **To:** | 'Cormac Connor' |
| **Cc:** | 'A. Stitzer'; 'Allan Jansen'; 'Anne Shea Gaza'; 'Cass W. Christenson '; 'Christopher Darrow'; 'Dick Kirk'; 'Frank C. Merideth, Jr. '; 'Frederick L. Cottrell'; 'HassidS@gtlaw.com'; Jaclyn M. Mason; James Heisman; Jeff Bove; Jill J. Herr; Julie Lorenzen; Kristen Rohrabaugh; 'Lees'; Litigation Docketing Desk; 'Lora A. Brzezynski '; 'Mark Krietzman'; 'Michael Secondo'; Nancy Phillips; 'Ohc'; 'Pouratiand'; 'Rel Ambrozy'; 'S. Klevens'; 'Tracy R. Roman'; 'Valerie Ho'; 'Kokrda, Jessie'; Manuel C. Nelson; Scott Miller |
| **Subject:** | April 24, 2007 Meet and Confer |

Dear Mr. Connor,

Thank you for continuing the meet and confer Tuesday morning (April 24, 2007) regarding LPL's responses to ViewSonic's new discovery requests.

ViewSonic requests that LPL indicate by no later than 5 pm EST Monday, April 30, 2007 whether LPL agrees to the proposal regarding RFAs 34-36 discussed previously, and outlined in my emails of April 18 and 23.

With respect to the sales summaries LPL has produced, we discussed that the sales summaries do not provide the break downs requested by ViewSonic's RFPs, and do not go back to 1998. LPL inquired whether ViewSonic would be willing to accept sales summaries going back to 1998 with the same information provided in the sales summaries LPL has produced to date. ViewSonic is willing to accept this as a compromise solution. ViewSonic requests that LPL indicate by no later than 5 pm EST Monday, April 30, 2007 whether LPL agrees to the proposal to produce sales summaries going back to 1998, with the same breakdowns provided, e.g., for 2006.

The remainder of this email summarizes the highlights of our April 24 discussion, and makes a last offer to compromise.

We again revisited LPL's objection that ViewSonic's new discovery requests require claim construction. I reiterated ViewSonic's disagreement with that contention for the various reasons previously provided. I indicated that LPL's proposed constructions are broader than ViewSonic's proposed constructions, the scope of LPL's constructions encompass the scope of ViewSonic's constructions (this is another way of articulating that the particular constructions offered by the parties are not mutually exclusive), and regardless of which of the competing constructions offered by the parties is ultimately successful, ViewSonic's discovery requests cover LPL's products.

Moreover, I explained that the new discovery requests were narrowly focused on specific terms or elements of the new claims, not complete claims. I indicated that, assuming that LPL's construction of the relevant terms in ViewSonic's requests do not encompass LPL's products (LPL's LCD modules and plasma products), then LPL's products represent non-infringing alternatives, and the discovery of the related specifications, assembly drawings and samples of such products becomes even more relevant. As an example, I pointed out that, if LPL's construction of "flat panel display device" does not cover its own product, then whenever LPL's product is attached directly to a monitor case or laptop housing, the resulting monitor or laptop computer cannot infringe the claims of the '641 patent or '718 patent, because it does not have a "flat panel display device."

We revisited LPL's objection that ViewSonic's requests are not limited to rear-mount products. LPL and ViewSonic agree that there are only three primary types of mounting -- front, side, and rear mounting --, as well a finite number of permutations of combinations of the three primary types of mounting. I indicated that there are in fact only four permutations of combinations of the three primary types of mounting: (1) front mounting + side mounting (2) front mounting + rear mounting, (3) side mounting + rear mounting, (4) front mounting + side mounting + rear mounting. You suggested that, if ViewSonic were willing to limit its requests to rear mounting, and only those permutations involving rear mounting, LPL would investigate whether it would be willing to produce responsive documents. Although LPL's suggestion is a step forward, ViewSonic maintains that it is entitled to discovery regarding front, side, and rear mounting, and the four permutations of combinations of the three primary mounting techniques. As outlined in my April 23 email, there is a significant amount of information that is highly relevant in this case that is not limited to rear mount products. Relevant information related to invalidity includes information regarding prior art, which clearly encompasses front and side mount technology, and products that practice such technology. Additionally, any LCD module with any holes on the rear surface or back side of the module, especially holes for attachment of or to any other structure, is relevant to the alleged rear mount invention, regardless of whether the LCD module has mounting holes for front or side mounting. Designs around rear mount technology (i.e., non-infringing alternatives) certainly encompass front and side mounting. Similarly, relevant evidence regarding reasonable royalty calculations includes commercial alternatives to rear mounting, thus also

encompassing front and side mounting, and permutations that do not necessarily include rear mounting. Finally, ViewSonic also is entitled to explore any cost or profit differences associated with flat panel display devices that have particular mounting configurations, and any nexus of costs or profits to particular configurations, as part of the evaluation of the commercial success and any reasonable royalty for use of the alleged invention.

During Tuesday's meet and confer, LPL raised that it has already produced documents responsive to the new discovery requests. Specifically, LPL asserts that LPL has produced a table or list of LPL products with holes at the rear surface of the modules, and that it has produced sales information (in the form of summaries).

ViewSonic is aware that LPL has produced a partial list of LPL products by model name that identifies some LPL modules that have holes at the rear surface of the modules. See LPL 11775 to LPL 11780. This information does not fully respond to ViewSonic's requests. First, the list of modules is incomplete, and includes only LPL's LCD modules for televisions. Further, ViewSonic understands that this partial list is limited to a subset LPL products (i.e., LCD modules used for television) sold on or after 2003. (If ViewSonic is mistaken, please identify what other products types are included in this list.) There are other LPL modules with holes on or in the back of the modules that LPL has not disclosed. Whether or not holes on or in the back of the module were or are intended to be used for fastening the module to a monitor case or laptop housing is not relevant for the purposes of discovery. ViewSonic is entitled to discovery regarding all of LPL's modules with any type of hole on or in the back of the module. Whether or not such hole would obviate the invention is not for LPL to decide during discovery. Moreover, the aforementioned list produced by LPL does not go back to 1997 (see RFP 129). Second, even if the aforementioned list were complete, which it is not, a list of model names alone does not provide any details regarding the configuration of any such holes on the back of the module, including the structure, type, location, size, robustness, material, etc. of such holes, and whether such holes are or could be used to attach another component or structure to the module, or attach the module to another structure. This type of information is found in the product specifications, assembly drawings and product specimens that ViewSonic seeks to obtain from LPL. Third, the list does not identify whether any of the remaining LPL products are front mount, side mount, or some permutation of mounting methods. Discovery as to all such products is critically essential to ViewSonic's invalidity investigation.

ViewSonic does not see how there can be any disagreement that all materials related to flat panel display devices (and more specifically, LPL's LCD and plasma products) dated prior to the U.S. filing date of April 2, 1999 are directly relevant to a proper evaluation of the validity of the patents in suit, and LPL's duty to disclose relevant prior art during the prosecution of the patents in suit. These materials also are relevant (but do not represent the complete scope of necessary material) to ViewSonic's evaluation of LPL's assertion of damages, including the amount of a reasonable royalty and/or the scope of non-infringing alternatives. To try and reach a more than reasonable compromise, in addition to the narrowing ViewSonic made to RFP 128 in my April 23 email, ViewSonic is willing to agree to a two-step resolution of your concerns. ViewSonic will accept the immediate production of LPL product specifications and assembly drawings related to attaching a flat panel display device (i.e., LCD module or plasma display panel) to, on or within any other structure at or near the corners of the flat panel display device which were made, used, sold, offered for sale, imported and/or disclosed prior to April; 2, 1999, or otherwise qualify as prior art, and a sample of each such LCD or plasma product. ViewSonic will agree to wait until after claim construction by the Special Master to address the issue of the same scope of materials for products that do not meet the above date limitation.

As indicated in my April 23 email, in instances that LPL does not have all of these three categories of responsive discovery, ViewSonic is willing to accept other documents that address the mounting of the flat panel display device (i.e., LCD module or plasma display panel), describe or categorize the mounting of the device, or group the mounting of the device with other devices, to fill in what is missing. For example, if LPL has a responsive product specification but no assembly drawings or sample, ViewSonic would expect LPL to produce other documents it has, if any, which show the assemblage or construction of the product (e.g. photographs, work instructions, etc). ViewSonic requests that LPL indicate by 5 pm EST Monday, April 30, 2007 whether LPL will accept this compromise.

Closely related to LPL's assertion that it has already responded to ViewSonic's new discovery requests, LPL raised the possibility of amending its ROG responses to additionally cite to bates numbers of documents already produced in the case that are responsive to the ROGs, pursuant to FRCP 33(d). Because ViewSonic does not agree that LPL properly and fully responded to ViewSonic's new discovery requests, ViewSonic cannot agree to such a proposal unless LPL aggress to supplement its discovery as outlined above. Although the burden to summarize information already produced may be no greater for ViewSonic (assuming that LPL does not maintain the requested information in the ordinary course of business), FRCP 33(d) requires the underlying information to have been produced. That is not the case here.

LPL also illustratively identified various previous discovery requests that it believes seek similar information as that sought by ViewSonic's new requests. ViewSonic understands this to be a variation on LPL's objections that ViewSonic's new requests cannot seek discovery that could have been sough earlier, and cannot seek discovery that has as similar scope to that which is sought by ViewSonic's February 16, 2007 motion.

Specifically, LPL illustratively identified ViewSonic's prior RFPs 63-64, 67-69 as the same as ViewSonic's new RFPs 121-123 and 126. ViewSonic respectfully disagrees. RFPs 63-64 and 67-69 clearly address different aspects than that addressed by the new requests.

5/2/2007

Similarly, LPL illustratively identified ViewSonic's prior RFPs 106-109, 111 and 116 as seeking the same sales information sought in ViewSonic's new requests. First, ViewSonic notes that LPL did not provide the itemization or breakdown requested in RFPs 106-107. Second, ViewSonic's new RFPs are tailored to the newly asserted claims. Nevertheless, ViewSonic is willing to accept the compromise regarding sales summaries discussed above.

We also again briefly revisited LPL's relevancy objection. I indicated ViewSonic's understanding that the relevancy of ViewSonic's requests had already been fully discussed in the prior meet and confers. I summarized that, during our prior discussions, I had explained that ViewSonic's new discovery requests are relevant for the development of ViewSonic's invalidity and damages theories of the case, and added that non-infringing alternatives could also be relevant for ViewSonic's non-infringement theories (i.e., not just damages). I clarified ViewSonic's understanding that LPL's relevancy objection is closely related to its other objections. LPL agreed. To be clear, as I indicated in my April 23 email, ViewSonic understands that LPL's relevancy objection is related to LPL's other objections that the discovery is not limited to rear mount products, that the discovery seeks information beyond the December 31, 1998 temporal limit LPL seeks to impose, that the discovery requires claim construction, and that the discovery seeks information that is within the scope of information sought by ViewSonic's February 16, 2007 motion to compel that has not been ruled upon. Because LPL's relevancy objection is closely connected to LPL's other objections, ViewSonic understands that the discussions regarding relevancy is essentially encompassed by the discussions regarding the other objections, and is sufficiently complete from the stand point of the parties' meet and confer obligations.

If you would like to discuss these issues further, ViewSonic will be available at 1 pm PST on Monday, April 30, 2007, and 11 am PST Tuesday, May 1, 2007. ViewSonic has made great efforts to explain its position and offer compromises to LPL to avoid having to file another motion to compel. If we are unable to reach an agreement as indicated herein, ViewSonic will be forced to seek assistance from the Special Master.

Regards,

Manuel

5/2/2007