# EXHIBIT 19

# Manuel C. Nelson

| | |
|---|---|
| **From:** | Manuel C. Nelson |
| **Sent:** | Wednesday, May 02, 2007 11:03 AM |
| **To:** | 'Cormac Connor' |
| **Cc:** | 'A. Stitzer'; 'Allan Jansen'; 'Anne Shea Gaza'; 'Cass W. Christenson '; 'Christopher Darrow'; 'Dick Kirk'; 'Frank C. Merideth, Jr. '; 'Frederick L. Cottrell'; 'HassidS@gtlaw.com'; Jaclyn M. Mason; James Heisman; Jeff Bove; Jill J. Herr; Julie Lorenzen; Kristen Rohrabaugh; 'Lees'; Litigation Docketing Desk; 'Lora A. Brzezynski '; 'Mark Krietzman'; 'Michael Secondo'; Nancy Phillips; 'Ohc'; 'Pouratiand'; 'Rel Ambrozy'; 'S. Klevens'; 'Tracy R. Roman'; 'Valerie Ho'; 'Kokrda, Jessie'; Scott Miller; Manuel C. Nelson |
| **Subject:** | May 1, 2007 Meet and Confer |

Dear Mr. Connor:

Thank you for meeting and conferring again yesterday, May 1, 2007. This email summarizes the highlights of our meet and confer.

ViewSonic and LPL agreed that LPL will revise its responses to RFAs 34-36 to provide qualified admissions or denials that are subject to LPL's right to change its responses, if necessary, after claim construction. Thus, the initial disagreements concerning RFAs 34-36 have been resolved.

LPL offered to produce supplemental sales summaries for 1998-1999. However, LPL advised ViewSonic that, because of changes to LPL's accounting system and/or software, LPL no longer has access to profit or cost information for that period. Consequently, the supplemental sales summaries would identify the product models, the number of units sold for each model for the relevant period (i.e., monthly, quarterly or yearly), and the gross revenues generated for such sales of each model for the same relevant period. As we discussed, ViewSonic will accept such partial summaries, along with a written representation that LPL no longer has access to profit or cost information for the period 1998-1999. This will resolve any disagreements concerning RFPs 121-122 and ROGs 30-31. Any remaining issues regarding RFPs 123-124 and ROGs 32-33 will await claim construction, and may be moot in light of other discovery ViewSonic seeks to obtain.

We also discussed your April 30, 2007 request that ViewSonic identify LPL products that ViewSonic believes are missing from LPL's list of products with "holes" on the rear surface. As I explained previously, ViewSonic understands that the list of products identified by LPL with holes on the rear surface (LPL11775-LPL11780) are limited to LCD TVs. LPL has not produced any product specifications, assembly drawings or samples for any of its older products, including any products identified in the bill of material information LPL produced (LPL9463-LPL9762). Thus, it is not feasible for ViewSonic to identify in the first instance what products may be missing from LPL's list of products with "holes" on the back. As I indicated previously, ViewSonic believes that most if not all LCD modules have holes on the back or rear surface of the modules.

Moreover, the products reflected in the bill of material information predate the U.S. filing date of the patents in suit, and thus represent prior art products. Products specs, assembly drawings and samples of all of such prior art products are relevant to the issues in the case outlined in my previous emails, including invalidity, damages, and noninfringing alternatives.

Finally, during our conversation, I pointed out that LPL has not even produced exploded view diagrams for its products like those produced by the defendants for all of their domestic products, not just accused products. Despite such production from the defendants, LPL argued during the March 9, 2007 hearing that it needed better drawings (e.g., CAD drawings) and/or product samples to be able to determine whether a product has holes on the rear surface. That is the same type of information ViewSonic seeks. LPL and ViewSonic agreed that they are at an impasse with respect to the technical discovery ViewSonic seeks.

Regards,

Manuel