# EXHIBIT 2

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,       )
                                    )
            Plaintiffs,             )    C.A. No. 04-343(JJF)
                                    )
    v.                              )
                                    )
TATUNG CO., TATUNG COMPANY OF       )
AMERICA, INC., and VIEWSONIC        )
CORPORATION,                        )
                                    )
            Defendants.             )

            Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Friday, April 13, 2007, beginning at
approximately 11:45 a.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        MARY E. AUGUSTINE, ESQ.
          222 Delaware Avenue, Suite 900
          Wilmington, Delaware  19899
          for Plaintiffs

                CORBETT & WILCOX
            Registered Professional Reporters
        230 North Market Street     Wilmington, DE 19899
                    (302) 571-0510
                www.corbettreporting.com
            Corbett & Wilcox is not affiliated
          with Wilcox & Fetzer, Court Reporters

**Page 2**

```
1    APPEARANCES (Continued):
2      MCKENNA, LONG & ALDRIDGE, LLP
       CASS W. CHRISTENSON, ESQ
3      REL S. AMBROZY, ESQ.
       CORMAC CONNOR, ESQ.
4      1900 K Street, N.W.
       Washington, D.C. 20006
5      for Plaintiffs
6      RICHARDS LAYTON & FINGER
       ANNE SHEA GAZA, ESQ
7      One Rodney Square
       Wilmington, Delaware 19801
8      for Defendant Tatung Co.
9      GREENBERG TRAURIG LLP
       FRANK MERIDETH, ESQ.
10     VALERIE HO, ESQ.
       AL JANSEN, ESQ.
11     2450 Colorado Avenue, Suite 400E
       Santa Monica, California 90404
12     for Defendant Tatung Company of America, Inc.
13     CONNOLLY BOVE LODGE & HUTZ LLP
       JAMES D. HEISMAN, ESQ.
14     1007 North Orange Street
       Wilmington, Delaware 19899
15     for Defendant ViewSonic Corporation
16     CONNOLLY BOVE LODGE & HUTZ LLP
       SCOTT R. MILLER, ESQ.
17     355 South Grand Avenue
       Los Angeles, California 90071-3106
18     for Defendant ViewSonic Corporation
19
20
21
22
23
24
```

**Page 3**

```
1       SPECIAL MASTER POPPITI:  We can start.
2    I do apologize for hanging up on everyone.
3       MR. CHRISTENSON:  One quick point, just
4    to let you know, I apologize in advance for the
5    interruption, but I think that Mr. Ambrozy is going to be
6    joining us in progress.
7       SPECIAL MASTER POPPITI:  Okay.
8       MR. CHRISTENSON:  He is not able to join
9    right this minute, but he is planning to join.
10      SPECIAL MASTER POPPITI:  That's fine.
11      MR. CHRISTENSON:  Thank you.
12      SPECIAL MASTER POPPITI:  Before we
13   start, let me start by offering an apology.  I expected
14   that when you all made the argument on the -- let me just
15   pull my file here -- on ViewSonic's February 16th, 2007,
16   motion dealing with mounting methods and structures and
17   LPL's response thereto, which was February the 23rd, I
18   now understand what occurred on this end.
19      You may remember, we had a hearing on
20   that application that I had indicated I would have hoped
21   I could have provided you with a decision on the record
22   the Monday after that hearing, and I realized that I
23   wasn't going to be getting the transcript that would
24   permit me to do that.
```

**Page 4**

```
1       Then we had a hearing on that following
2    Monday, I don't have the dates in mind, that Monday was
3    in advance of the Friday, March 9 -- somebody correct me
4    if my date is wrong -- when we had the hearing in the
5    courthouse that all of you participated in, and I
6    indicated, on Monday, that I would issue an oral decision
7    on that Friday.
8       Well, when we came to the end of the
9    business day and the question was:  Is there anything
10   else for me to attend to today?, we all expected that
11   there wasn't, and, in fact, there was.
12      So, not having attended to it on that
13   day, quite frankly, it slipped below the radar screen and
14   it wound up on a sheet that I keep of the 34 applications
15   -- I think we are up to 34 -- that we have been --
16   actually, only up to 30 -- that I have been working on,
17   it wound up as being listed as "resolved."
18      So, it is squarely in my lap that that
19   fell through the cracks and I sincerely apologize.
20      So, what I want to do first is turn my
21   attention very briefly to that application.
22      From my perspective, I think it's fair
23   to say that the application, itself, seeks significant
24   discovery -- I won't adopt ViewSonic's, I am sorry, LPL's
```

**Page 5**

```
1    term "voluminous" discovery, it's significant, it could
2    be voluminous, I don't know what it would all involve --
3    that I don't think either party can disagree that
4    ViewSonic previously agreed that LPL did not have to
5    produce.
6       Secondly, I think it's fair to say that
7    the underpinning of the application was, in fact, LPL's
8    written advice on a status document that LPL did, in
9    fact, produce modules that had holes or mounting
10   structures, or whatever we ultimately are going to be
11   calling that equipment, if you will, in the rear of the
12   module that LPL said that others could use for purposes
13   of rear mounting.  I think that's fair in terms of what
14   you all advised me of.
15      Then, in my view, the question became:
16   Did LPL misrepresent, in the December 28th, 2006,
17   hearing, did it misrepresent that it did not practice the
18   patents-in-suit?
19      Now, it seems to me that in light of the
20   fact that -- LPL's position is that ViewSonic is, through
21   its present argument, stating something different than it
22   argues in its initial brief for claim construction.
23      You can expect that I have started to
24   study the briefing and claim construction independent of
```

Hearing

### Page 6

1   this application. You can also expect that short of
2   having full briefing and having your studied view of what
3   claim construction should be with respect to each claim
4   that's in dispute, each term that's in dispute, that I
5   have made no judgment, and I do not have any -- I have
6   made no judgment with respect to claim construction.
7           I am satisfied that because the
8   discovery is significant, perhaps voluminous, No. 1, and
9   I am satisfied, because I expect I need to make some
10  judgment as to whether ViewSonic was appropriately saying
11  that it did not practice the patents-in-suit, that it is
12  necessary for me to accomplish the claim construction
13  before I open the gates to discovery that was not
14  contemplated in December of 2006.
15          I fully understand that that may mean,
16  if the claim construction, if you will, goes ViewSonic's
17  way, and, by that, I mean if it goes ViewSonic's way as
18  articulated in its February 16 application, and if I
19  conclude, by virtue of that, that LPL misstated whether
20  or not they practiced the patent, that discovery, as
21  requested by ViewSonic, is likely, and I understand that
22  that may mean that we are back at a different square. I
23  understand that it may mean that there will be more
24  deposition discovery that will have to take place, and I

### Page 7

1   understand the distraction that all of that may cause.
2           I am not satisfied, however, that that
3   is something that's appropriate to do before claim
4   construction is accomplished.
5           So, with that said, you have my
6   decision, if you will, with respect to the February 16
7   application, and if anyone needs further guidance with
8   respect to that, I can certainly respond to any request
9   for guidance.
10          MR. MILLER: This is Scott Miller.
11          SPECIAL MASTER POPPITI: I realize,
12  Mr. Miller, you didn't argue that application. I think
13  it was --
14          MR. MILLER: Mr. Nelson.
15          SPECIAL MASTER POPPITI: Thank you. I
16  drew a blank there for a moment. Mr. Nelson.
17          MR. MILLER: So I am not particularly
18  well versed on it. I guess the question I would have is:
19  How do we raise this issue once we get the preliminary
20  claim construction order in June?
21          SPECIAL MASTER POPPITI: Well, I think
22  the way that it gets -- that I raise it, I don't think --
23  well, let me step back from that.
24          It seems to me that the claim

### Page 8

1   construction is consistent with what LPL says that it
2   should be, and I know that LPL is suggesting that
3   ViewSonic is either attempting to have it both ways or
4   attempting to argue on both sides of the claim, I
5   understand all that, but if it goes LPL's way, then it
6   seems to me that, by virtue of that, it may be that no
7   further discovery will be ordered.
8           If, in fact, claim construction goes
9   ViewSonic's way, then it seems to me all I need to know
10  is whether ViewSonic is still interested, once claim
11  construction occurs, and if it goes ViewSonic's way,
12  whether it is still interested in this discovery.
13          So, it's not a matter of anything other
14  than, say, Please turn your attention to what I refer to
15  in my house over here as "DM 24," which translates to
16  your application that I have just talked about.
17          Is that helpful?
18          MR. MILLER: It is, with one exception,
19  and because I am not particularly versed in it --
20          SPECIAL MASTER POPPITI: And I do
21  understand that.
22          MR. MILLER: The concern I have is that
23  my recollection, and it is pretty fuzzy on this, is that
24  you may have the results inverted. If the claim

### Page 9

1   construction goes LPL's way, the discovery may be much
2   more relevant because it deals with issues where there
3   are mounting features both on the back and in some other
4   location; whereas, if -- in that sense, the discovery is
5   going to be potentially much more critical; whereas, if
6   the claim construction goes ViewSonic's way, it may be
7   less critical. That's just my sense of the motion. I
8   was concerned that there may be -- you may have the two
9   results mixed up in terms of --
10          SPECIAL MASTER POPPITI: I am not sure
11  that I do. But I can assure you that when the time
12  occurs, I will make every effort and attempt to get it
13  right.
14          Mr. Christenson, do you want to weigh in
15  on that?
16          MR. MILLER: I will be happy to review
17  it, too, Your Honor, I apologize.
18          SPECIAL MASTER POPPITI: No. That's
19  okay. You all didn't expect that I was going to be doing
20  this up at the front end, but I was very concerned that,
21  as I read these papers, there were certainly clear --
22  there were references to a ViewSonic motion that had yet
23  to be decided, although fully briefed, and I had to
24  figure out which one that was.

Hearing

4 (Pages 10 to 13)

Page 10

1    Mr. Christenson.
2        MR. CHRISTENSON:  Yes, thank you, Your
3    Honor.  And, likewise, I am really not fully in a
4    position to address it in detail, but I understand what
5    you are saying with respect to claim construction issues
6    that could impact on what you view as the relevance or
7    lack of relevance with respect to this discovery.
8        SPECIAL MASTER POPPITI:  Correct.
9        MR. CHRISTENSON:  What I believe would
10   be helpful would be, once you are in a position where you
11   feel that you have done the analysis that would be
12   necessary to make an informed judgment on this, that, as
13   I understand it, you are suggesting we would revisit,
14   then, how that impacts this discovery, and I think there
15   would be questions about, you know, the scope of that
16   discovery maybe with -- if there is any discovery, I
17   think we would have to consider what would be the time
18   period or the scope, etcetera, that would be relevant --
19       SPECIAL MASTER POPPITI:  That's correct.
20       MR. CHRISTENSON:  -- with respect to
21   LPL's products, you know, in a case where we are talking
22   about whether somebody else's products infringe.
23       So, I think that's all -- it sounds like
24   that's all for another day, as I understand what you just

Page 11

1    said.
2        SPECIAL MASTER POPPITI:  That's what I
3    am saying.  I am not meaning to -- I just don't think
4    that I can fairly consider the application against the
5    premise that LPL misrepresented something until the
6    claims are construed.
7        Do either of you -- do you disagree with
8    that?
9        MR. CHRISTENSON:  Well, my view on that,
10   I guess one answer is, you know, we submitted some
11   interrogatory answers that ViewSonic had provided that we
12   felt made it fairly clear that the module, itself,
13   couldn't practice the invention.
14       SPECIAL MASTER POPPITI:  And I
15   understand your position with respect to that, and, yet,
16   you know that that's not what ViewSonic is arguing.
17       MR. CHRISTENSON:  Yes.  I understand.
18       SPECIAL MASTER POPPITI:  So, I need to
19   make some judgment with respect to what the claim, how to
20   construe the claims before I can get to that.
21       MR. CHRISTENSON:  I understand, Your
22   Honor.
23       SPECIAL MASTER POPPITI:  And I expect in
24   the, you know, in the interim, ViewSonic has the

Page 12

1    capacity, certainly, to secure, if they think it's
2    important to do this, on the market product that perhaps
3    is available even with respect to the product that was
4    identified at tabs 10 and 11 of their exhibits.
5        I mean, we spent, as I know,
6    Mr. Christenson, you will recall, we spent a lot of time
7    with Mr. Nelson walking me through a black and white
8    exhibit, if you will, on flat paper trying to describe to
9    me what the particular fastening elements on the back of
10   Exhibit No. 11 were.  And once we went through that, you
11   made the comment, if I remember correctly, Indeed, there
12   are fastening elements on the back of the module that is
13   pictured in Exhibit 11, but those -- had the module been
14   in front of me and had there been someone to teach me
15   what that was, I believe you told me that those were to
16   fasten something else to the back of that module;
17   correct?
18       MR. CHRISTENSON:  I think that
19   Mr. Ambrozy addressed that point specifically, Your
20   Honor, but --
21       SPECIAL MASTER POPPITI:  Someone did.
22       MR. CHRISTENSON:  I remember there was
23   discussion about that, and I know that there is a dispute
24   about what -- well, first of all, there are -- there is

Page 13

1    more than one way to mount many of these modules, and I
2    don't remember specifically which module we were talking
3    about or -- and I don't have that exhibit in front of me
4    right now, but I do remember --
5        SPECIAL MASTER POPPITI:  It's not
6    important to do that.  If you think it is, I can tell you
7    which one it was.
8        MR. CHRISTENSON:  Well, again, I think
9    Mr. Ambrozy had addressed that and I do remember it was
10   addressed in detail.
11       SPECIAL MASTER POPPITI:  Right.  I
12   understand what this may mean down the road, but I am
13   certainly mindful of what it would mean were I to decide,
14   without having a final claim construction in place, and
15   what it would mean in terms of pointing you in the
16   direction of discovery that was not contemplated by the
17   agreement that was forged on December the 28th of 2006.
18       Okay?
19       MR. MILLER:  I understand, Your Honor.
20   Thank you.
21       SPECIAL MASTER POPPITI:  Thank you.
22       With that, I did have a very brief
23   conversation with local counsel yesterday, and I told
24   them that I would like to suggest that there are a number