# EXHIBIT

# 4

041307hr1

                                                                                                      1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
    PHILLIPS, L.G., LCD CO., LTD,  )
 4                                 )
              Plaintiffs,          )  C.A. No. 04-343(JJF)
 5                                 )
    v.                             )
 6                                 )
    TATUNG CO., TATUNG COMPANY OF  )
 7  AMERICA, INC., and VIEWSONIC   )
    CORPORATION,                   )
 8                                 )
              Defendants.          )
 9
              Hearing of above matter taken pursuant to
10  notice before Renee A. Meyers, Registered Professional
    Reporter and Notary Public, in the law offices of BLANK
11  ROME, LLP, 1201 North Market Street, Wilmington,
    Delaware, on Friday, April 13, 2007, beginning at
12  approximately 11:45 a.m., there being present:

13  BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

14  APPEARANCES:

15          THE BAYARD FIRM
            MARY E. AUGUSTINE, ESQ.
16            222 Delaware Avenue, Suite 900
              Wilmington, Delaware  19899
17            for Plaintiffs

18

19

20                     CORBETT & WILCOX
21             Registered Professional Reporters
        230 North Market Street    Wilmington, DE 19899
22                     (302) 571-0510
                    www.corbettreporting.com
23          Corbett & Wilcox is not affiliated
              with Wilcox & Fetzer, Court Reporters
24
```

                                                                                                       2

```
 1  APPEARANCES (Continued):
```

041307hr1

183

1   to determine whether we need to fight about that or not
2   as opposed to whether we are going to produce them.
3              So I think we are trying to see if the
4   issue just goes away because if there aren't documents,
5   then I guess that will resolve it. If there are
6   documents, we still will have to cross that bridge at the
7   7.1.1. And I know you started out today saying you
8   wanted to address those first, but we have kind of gone
9   in the reverse order.
10             SPECIAL MASTER POPPITI: Yes, we have
11  gone in the reverse order. I think we just wound up
12  there.
13             MR. MILLER: If that's okay with Your
14  Honor?
15             SPECIAL MASTER POPPITI: It is. I
16  understand. So that we will look at that on Tuesday.
17             MR. CHRISTENSON: Your Honor, the next
18  issue --
19             SPECIAL MASTER POPPITI: In that
20  application?
21             MR. CHRISTENSON: Yes, Your Honor. Just
22  continuing down, the next issue is documents related to,
23  I think, import, and my understanding, we had -- I had
24  discussed with counsel LPL's document request No. 67, and

184

1   my understanding is that they have -- they stated that

041307hr1

2 they have produced import documents that are sufficient
3 to show all imports of all of ViewSonic's products, and
4 that that is, therefore -- that that, therefore,
5 satisfies their burden to respond to that document
6 request.
7          We had asked for, if they exist, and we
8 had discussed in the depositions whether ViewSonic has
9 data available in theirs, electronically, that they could
10 produce as a report to us that would show, for example,
11 all the products that were imported into the U.S. because
12 we felt that that would be discoverable under Rule
13 34(b), especially as recently amended to allow for discovery of
14 electronically stored information, and we had addressed,
15 I think, a similar issue at the December 28th hearing
16 before you, and you had stated in your review that
17 counsel was not obligated to, as a courtesy, I believe
18 you stated, produce information.
19          SPECIAL MASTER POPPITI: That was my
20 word.
21          MR. CHRISTENSON: And I certainly
22 understand that. But I raised this issue now again only
23 because, based on the testimony, it appeared to me that
24 it might be as simple as just generating a report from

185

1 existing data and that, you know, that that production
2 would essentially be the production of the data as
3 printed.
4          So, the question was: Does the data
5 exist to be provided in a report, and, if so, is that
6 discoverable? I think that I understood counsel from

041307hr1

7  ViewSonic to tell me this week that they don't have that
8  data in such form that could be generated into a report,
9  and if that's the case, I guess, you know, then we don't
10 get to question two on discoverability.
11              SPECIAL MASTER POPPITI:  Mr. Miller.
12              MR. MILLER:  It is my understanding that
13 they cannot generate a report that shows sales of
14 products that were manufactured by OEMs, on an OEM basis.
15              SPECIAL MASTER POPPITI:
16 Mr. Christenson, your understanding of what Mr. Miller
17 said has just been confirmed.
18              MR. CHRISTENSON:  Well, there were, I
19 take it, two different questions.  One was whether a
20 report existed that, this is on paragraph three of page
21 1, we had talked about whether a report could be provided
22 showing total quantities by model, that is, that a
23 supplier like Tatung had provided -- I think that's what
24 Mr. Miller was just speaking to -- then there is another

186

1  question, at the very last paragraph on page 2 of our
2  motion, which is actually what I was referring to, which
3  is:  Is there a report that would show what products were
4  imported into the U.S., so that -- the alternative would
5  be we would look at, on a page-by-page,
6  transaction-by-transaction basis, trying to cobble
7  together, from thousands of pages, the total numbers of
8  imported products.
9               And, so, what we are seeking is, if
10 there is the ability to generate a report right from data

Page 159

041307hr1

11  that exists in the system, we feel that would be
12  discoverable, and we would, therefore, avoid the burden
13  of compiling that report that already exists.
14              So, I think that -- I don't know whether
15  Mr. Miller addressed that type of report of whether all
16  products imported into the U.S. is available.
17              SPECIAL MASTER POPPITI:  Mr. Miller.
18              MR. MILLER:  This is exactly the issue
19  we discussed on December 28th.  The document request
20  seeks documents sufficient to determine the quantity of
21  products imported into the United States, and those are
22  the documents we have produced.  I assume -- it sounds
23  like they'd like to rewrite that request to say, "summary
24  documents sufficient to show that," but they didn't.

                                                        187

1               I have not gone to specifically
2   investigate this because this was an issue, I believe,
3   that was squarely addressed by Your Honor and this motion
4   to compel is an improper vehicle to try to seek
5   reconsideration, it seems to me.
6               SPECIAL MASTER POPPITI:  Yeah.  It looks
7   -- it certainly looks to me like the same issue,
8   Mr. Christenson.  And the only issue that -- and I don't
9   think the issue needs to be discussed further unless you
10  have some authority that you want to bring to my
11  attention that would suggest that what I concluded in
12  December was not the correct conclusion, and that is
13  this:  I don't know that the -- the fact that we live in
14  a data filled business world, data that is accessible
15  electronically, should result in any different conclusion

041307hr1

16   when it comes to the production of a report that is not
17   -- that is not generated during the -- during the
18   customary usual business.
19           I don't know that that request is any
20   different after the rules changed then before because I
21   don't know that the rules mean that someone should be
22   doing something that they don't otherwise do as opposed
23   to literally providing you with all of the data that they
24   have and you do whatever you want with it, data in even

188

1    native format, if you will.
2            So, I don't see anything that you have
3    brought to my attention, by virtue of your March 30
4    application, that would cause me to reexamine my own
5    view, and, that is, it would be a courtesy because it is
6    not generated during the, I am told, during the ordinary
7    course of business.
8            MR. CHRISTENSON:  That may be true, Your
9    Honor.  I am not sure if Mr. Miller stated that or if he
10   stated he had not investigated that.
11           SPECIAL MASTER POPPITI:  Well, I --
12   Mr. Miller, you can speak for yourself, but let me tell
13   you what I thought you said:  That we did discuss this in
14   another hearing, that you do not generate the reports
15   that are being -- a report that is being requested, and
16   you have provided data from which the plaintiffs can
17   examine the information and come to their own
18   conclusions; did I understand you incorrectly?
19           MR. MILLER:  I think, Your Honor, that

Page 161

041307hr1

20  what I had said was the document request seeks documents
21  sufficient to ascertain the quantity and price of each
22  product imported.
23              SPECIAL MASTER POPPITI: Right.
24              MR. MILLER: We were making available

                                                              189

1   the documents that show all importation of products by
2   ViewSonic, and they will have invoices, bills of lading,
3   and other materials in them that are sufficient in the
4   original documentation, but to the extent that the
5   information is in the computer system, it would have been
6   inputted from those documents.
7              I don't believe that -- I have not
8   confirmed that they do not prepare a summary report in
9   the ordinary course of business, and I don't believe that
10  specific issue was inquired upon at the December 28th
11  hearing. It was a question of whether or not, given the
12  language of the request, itself --
13              SPECIAL MASTER POPPITI: In other words,
14  the language of the request being sufficient enough?
15              MR. MILLER: Yes.
16              SPECIAL MASTER POPPITI: Well, I
17  certainly don't have a record before me that will permit
18  me to make that determination, do I, as to whether it's
19  sufficient or insufficient?
20              MR. MILLER: I don't believe there is
21  any suggestion that it's not sufficient.
22              SPECIAL MASTER POPPITI: Right. Isn't
23  that correct, Mr. Christenson?
24              MR. CHRISTENSON: We certainly have not

041307hr1

190

1  made a record, Your Honor, that it's not sufficient.  I
2  agree with that.
3              SPECIAL MASTER POPPITI:  That's what was
4  asked for, is it not?
5              MR. CHRISTENSON:  With respect to that
6  document request, Your Honor, it is.  I would have to see
7  if there were others.  I mean --
8              SPECIAL MASTER POPPITI:  Okay.  Well, I
9  am focused on that particular document request.
10             MR. CHRISTENSON:  All right.  So, in
11 response to your question about, Do I have other
12 authority?, Your Honor, I do not.  The only thing I am
13 aware of is that we had produced very voluminous reports
14 that is not something that we had other than to prepare
15 and produce.
16             SPECIAL MASTER POPPITI:  I understand
17 that, and that's why you all better know than the
18 framework that I used back in December because you are
19 focused on this particular application.  I did not
20 revisit it, you reminded me of it, but I see -- I said it
21 that way before and I say it again:  The fact that you
22 have done a courtesy, that's a good thing.  The fact that
23 a courtesy is not being extended to you, I am not going
24 to make a comment that that's a bad thing.  It's just not

191

1  a courtesy that ViewSonic is willing to extend.  And they

041307hr1

2  are framing that against the specificity of your request.
3           MR. CHRISTENSON: All right. Your
4  Honor, the other issue that's raised, and I think it's
5  the last issue raised in this motion, is at the bottom of
6  the first page of our letter, we are asking for documents
7  that show specifically sales within the United States.
8  The documents that were produced by ViewSonic, as we
9  learned in the deposition, are documents that show sales
10 by ViewSonic within North America, generally.
11          SPECIAL MASTER POPPITI: Right.
12          MR. CHRISTENSON: And then ViewSonic
13 also, I think, has produced some documents from which you
14 could determine, if you do some math, you could
15 determine, presumably -- I haven't tried to do this --
16 but, presumably, you could deduct that subset from the
17 overall shipment and come up with U.S. shipments.
18          What we are asking to compel are the
19 documents that we believe exist that already have done
20 that, that are documents that ViewSonic has from the
21 ordinary course of business that isolate shipments
22 specifically within the U.S. Those were documents that
23 we obtained in the prior CPT case in Delaware before
24 Judge Farnan that went to trial last year.

                                                    192

1           So, rather than -- it seems to me part
2  of the purpose of discovery is to try to be efficient and
3  taking, you know, the rule of No. 1 of the Rules of
4  Procedure, promoting a just and efficient and inexpensive
5  resolution, it seems to me if the documents exist that
6  have already carved out the non-U.S. shipment, it would

Page 164

041307hr1

7  make sense for us to have those documents rather than
8  having to redo the math.
9              SPECIAL MASTER POPPITI:  Mr. Miller.
10             MR. MILLER:  Your Honor, I was not
11 counsel in that case, but I can tell you what I know and
12 what the witness testified to here.  The witness
13 testified to here that it was not possible to isolate
14 sales in the United States in the summary form that LPL
15 has asked.
16             It would have to be done on a
17 customer-by-customer basis, and I am reminded of the long
18 discussion that took place between LPL and Tatung where
19 LPL held out the summary reports that ViewSonic had
20 prepared as what they were looking for, not a
21 customer-by-customer recitation of sales on a -- you
22 know, these are voluminous and would require them to do
23 other math.
24             What Miss Stetson testified to is in our

193

1  opposition in specificity, and says, No, it cannot be
2  prepared in a summary form.  Mr. Christenson asked the
3  question, "All right.  In what form can that report be
4  generated"?
5              "ANSWER:  We would have -- we would have
6  to generate a report for each customer within that
7  country, and then, somehow, they would need to be added
8  together.
9              That's not a burden that we, obviously,
10 should be obligated to undertake.  I believe that, while

Page 165

041307hr1

11  I have invited counsel to give us Bates Nos. of documents
12  produced in other cases, so there were issues, and the
13  invitation extends back to September of last year, that's
14  never been provided to us, my understanding is that, to
15  the extent those documents that were produced in those
16  cases were decided to be done as U.S. sales, there was
17  merely a decision by ViewSonic not to try to go through
18  and identify foreign sales.
19  In this case, we did go through and
20  identify foreign sales and do some of this -- what
21  Miss Stetson testified to here, we would have to do for
22  the U.S. because the non-U.S. sales are substantially
23  less. We were able to do that on a non-U.S. sales basis
24  and give them the information of non-U.S. sales that they

194

1   could deduct from the all American sales.
2   MR. CHRISTENSON: Your Honor, having
3   heard what Mr. Miller said, perhaps the best way to
4   pursue this is to take him up on his offer. I can check
5   to see the documents that I am referring to from the
6   other case and confirm that they are what I think they
7   are, and then I can give him those Bates Nos., and if we
8   need to, we can try to work something out.
9   SPECIAL MASTER POPPITI: Mr. Miller.
10  MR. MILLER: I am not very receptive to
11  working out more work for my client, but I am happy to
12  hear what Mr. Christenson has to say.
13  SPECIAL MASTER POPPITI: Thank you for
14  doing that, sir. So I am going to, just with respect to
15  this one issue, I may be asked to revisit at least from a

Page 166

041307hr1

16  status point of view; correct?
17          MR. CHRISTENSON: Yes, Your Honor.
18          SPECIAL MASTER POPPITI: All right.
19          MR. CHRISTENSON: Otherwise, I think
20  that's the last issue in our motion.
21          SPECIAL MASTER POPPITI: It is. Just
22  one moment. Let me make a note here. That brings us to
23  5:00. I appreciate your attention throughout what has
24  been, I think, a long session, and I think we should all

195

1   go tend to our respective colds and flues. Everyone,
2   please have a nice weekend and I look forward to working
3   with you on Tuesday.
4          MR. CHRISTENSON: Thank you, Your Honor.
5          MS. HO: Thank you.
6          (The hearing was concluded at 5:04 p.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19