# EXHIBIT F

RLF1-3157583-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG.PHILIPS LCD CO., LTD., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 04-343 JJF |
| TATUNG CO., TATUNG COMPANY OF AMERICA, INC., and VIEWSONIC CORP., | : | |
| Defendants. | : | |

### SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING (a) PHILIPS' MOTION TO COMPEL TATUNG DEFENDANTS TO PROVIDE DISCOVERY ON ADVICE OF COUNSEL AND DUTY OF CARE; AND (b) THE TATUNG DEFENDANTS' CROSS-MOTION TO BIFURCATE DISCOVERY

Upon consideration of Plaintiff LG.Philips LCD Co., Ltd.'s Motion to Compel Defendants Tatung Company and Tatung Company of America, Inc. (collectively, "Tatung") to Provide Discovery on Advice of Counsel and Exercise of Due Care (the "Motion"),[1] the Special Master[2] concludes, for the reasons set forth herein, that the Motion is not ripe for consideration. Upon consideration of the request of Tatung to bifurcate discovery relating to advice of counsel until after any infringement is established, which request the Special Master treats as a cross-motion (the "Cross-Motion") the Special Master concludes that the Cross-Motion should be denied.

### BACKGROUND

1. This is a patent infringement case brought by LG.Philips LCD Co., Ltd. ("LPL") against Tatung and another defendant alleging infringement of United States Patent Nos.

---

[1] The motion *sub judice* was submitted to the Special Master by letter dated December 22, 2006; it was not filed or docketed with the Court.

[2] The Order Appointing Vincent J. Poppiti as Special Master was entered on February 25, 2005 and is docketed as item number 178.

6,498,718 (the "'718 Patent") and 6,501,641 (the "'641 Patent" and, together with the '718 Patent, the "Patents-in-Suit") that relate to assembly mountings for flat panel display monitors used in liquid crystal displays ("LCD") for such products as plasma televisions and computer monitors. D.I. 1.

2.  The Tatung defendants filed their respective answers on April 14, 2005, D.I. 187-88, approximately 11 months after the Complaint was filed.[3]

**LPL's Motion**

3.  On December 22, 2006, plaintiff LPL submitted the instant Motion to compel the Tatung defendants "to provide discovery concerning any advice of counsel or other evidence related to whether Tatung exercised due care after learning of the [Patents-in-Suit]." Motion at p. 1. Specifically, LPL seeks to compel discovery responsive to LPL's Interrogatory Nos. 5-7 and Document Requests 19-24, 49-50, 55 and 72 (regarding the Tatung Company only) and 73 (regarding Tatung America only) directed to Tatung on November 29, 2005. *Id.* at p. 1, n. 1.

4.  According to LPL, the Motion is prompted by Tatung's February 13, 2006 responses to those discovery requests, including Tatung's Response to Interrogatory No. 6 that states:

> [Tatung] has not yet finally determined which defenses it will pursue, including without limitation, whether it will rely on advice of counsel as a defense to Plaintiff's claims.

Motion at p. 2 and Exs. 3-4. LPL argues that it needs to know whether Tatung is relying on the advice of counsel as a defense in this case in order to identify witnesses for deposition and to prepare for trial. Motion at pp. 2-3.

---

[3] The interval between the filing of the complaint and the filing of Tatung's answers resulted from a Tatung motion, filed June 14, 2004, to dismiss the complaint for lack of personal jurisdiction, insufficient process and insufficient Service of Process (the "Motion to Dismiss"). D.I. 16. A period of jurisdictional discovery followed. D.I. 88.

**Tatung's Opposition and Cross-Motion**

5. On January 8, 2007, Tatung filed its response in opposition to the Motion, D.I. 395 (the "Opposition"). Tatung takes the position it should not "be forced to choose between waiving the [attorney-client] privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found." (quoting *Quantum Corp. v. Tandom Corp.*, 940 F. 2d 642, 643-44 (Fed. Cir. 1991)). D.I. 395 at pp. 2-3.

6. "In order to ameliorate the harsh affects of this dilemma," Tatung requests that the Special Master bifurcate discovery relating to liability from discovery relating to willfulness and damages, so that it is not required to decide – until after infringement has been established – whether or not to waive the attorney client privilege by raising advice of counsel as a defense. D.I. 395 at p. 3. Specifically, Tatung requests that the Special Master (a) set a June 2007 deadline for Tatung to inform LPL as to whether or not it will assert the advice of counsel defense; and (b) extend until August 2007 the cutoff for fact discovery relating to advice of counsel issues. *Id.*

**LPL's Response**

7. By letter to the Special Master dated January 11, 2007, LPL notes that it had earlier filed a similar motion to compel the other defendant, the ViewSonic Corporation ("ViewSonic"), to provide discovery regarding its reliance on any advice of counsel. That earlier motion was addressed by the Special Master's Report and Recommendations dated January 5, 2007, D.I. 385, which concluded that the motion was not ripe for consideration because

---

Before jurisdictional discovery was completed, the Motion to Dismiss was resolved consensually and Tatung agreed to submit to the jurisdiction of the Court. D.I. 188.

3

ViewSonic had never pled an advice of counsel defense and, therefore, the issue was not properly joined in the pleadings. LPL's January 11 letter argues that, because Tatung has also never pled an advice of counsel defense, the disposition of the instant Motion should be similar to the Special Master's conclusion in his January 5, 2007 Report and Recommendation with respect to ViewSonic:

> [T]he record is clear that ViewSonic has not raised the affirmative defense of advice of counsel – and, based on the Scheduling Order, may not amend its pleadings to assert that defense without leave of court . . . .

D.I. 385 at 4. LPL concludes by arguing that, because the deadline to amend pleadings in this case expired in early 2006, Tatung has waived any affirmative defense based on advice of counsel. January 11, 2007 Letter from LPL counsel to Special Master at 2 (citing *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F. 2d 66, 74 (3d Cir. 1972) (untimely affirmative defenses may be deemed waived)).

**January 19, 2007 Hearing**

8.  On January 19, 2007, the Special Master conducted a telephonic hearing with the parties to address a number of discovery disputes, including the issues framed by the Motion and Cross-Motion. During that hearing, Tatung conceded that it had not raised advice of counsel as a defense in any pleading filed with the Court. Transcript of January 19, 2007 Discovery Conference with Special Master ("January 19, 2007 Tr.") at 71:5-7. Tatung argues that its position is distinguishable from that of ViewSonic – notwithstanding that, like ViewSonic, it has not pleaded advice of counsel – because Tatung has notified LPL that it does have an opinion of counsel.[4] *Id.* at 71:14-18. Thus, according to Tatung, the issue is not whether it will raise

---

[4] LPL disputes this representation. According to LPL, it "first learned that such an opinion may exist" during the January 19 discovery conference with the Special Master. January 31, 2007 Letter to Special Master from LPL counsel at p. 2 n. 2.

4

advice of counsel but, rather, the timing of when it will raise it:

> It is our view that the problem that we confront is one of timing because of the seriousness of the waiver issues that arise with respect to the assertion of this defense. . . . [T]he only discussions that we have had have been related to timing, not related to the issue of whether or not we have an opinion.

*Id.* at 72:4-10.

9. Tatung then went on to raise the new argument that it was not required to raise the defense of advice of counsel in its pleadings, because case law supports the view that advice of counsel is not an affirmative defense and that the courts permit the issue to be deferred until the late stages of litigation. January 19, 2007 Tr. at 72:11-22. Tatung also requests that, even if advice of counsel were determined by the Special Master to be an affirmative defense, that Tatung be excused from seeking the Court's leave to amend so that the parties could immediately proceed to the merits of what Tatung views as the primary issue – that being timing:

> [I]f your view ultimately is that an affirmative defense needs to be asserted, then we would amend and assert it and then we'd come back to the issue of timing. I'd just as soon skip that intervening step, but we can do that if LPL insists that we do it.

*Id.* at 73:21-74:1.

10. In response, LPL argues that Tatung's failure to raise the defense is prejudicial and, in fact, reflects Tatung's election not to raise it. January 19, 2007 Tr. at 74:16-75:18. LPL also argues that Tatung's efforts to convert this into a motion to bifurcate is "unworkable" given the provisions of the Scheduling Order in this case. *Id.* at 78:11-22.

11. In order to properly address the additional issues framed by the Motion and Cross-Motion, the Special Master directed that the parties submit supplemental briefing and provide authority for their respective positions on the issues relating to (a) advice of counsel as an affirmative defense and (b) the bifurcation of discovery. January 19, 2007 Tr. at 79:16-22 and

5

81:2-9.

**The Supplemental Briefing**

12.   On January 26, 2007, Tatung submitted its supplemental position paper to the Special Master. Tatung argues that it is not required to plead advice of counsel as an affirmative defense, and, therefore, need not move to amend the pleadings if it should decide to rely on an opinion of counsel to rebut the allegation of willful infringement. January 26, 2007 Letter to Special Master from Tatung ("Tatung's January 26, 2007 Letter") at p. 1.

13.   On January 31, 2007, LPL submitted its supplemental response. LPL argues that, because Tatung has not asserted an advice of counsel defense by pleading or otherwise, it would be unfair and prejudicial to LPL if Tatung is permitted to postpone its decision of whether to assert an advice of counsel defense until after resolution of dispositive motions and the close of discovery. January 31, 2007 Letter to Special Master from LPL ("LPL's January 31, 2007 Letter") at p. 1.

## DISCUSSION

**A.   Cross-Motion for Bifurcation**

The Special Master turns first to Tatung's Cross-Motion seeking to bifurcate discovery on any advice of counsel that Tatung may raise as a defense because, if granted, it would effectively deny the relief sought by the Motion and obviate consideration of the issues until such time as Tatung actually asserts the advice of counsel defense.

As set forth in Tatung's Opposition papers, the Cross-Motion seeks to bifurcate discovery relating to liability from that relating to willfulness. Tatung seeks to postpone the decision of whether to waive attorney-client privilege, "until after infringement has been established." D.I. 395 at p. 3. Tatung requests that the Special Master (i) establish a June 2007 deadline for Tatung

062038.00612/40167463v.2

to inform LPL as to whether or not Tatung will assert the advice of counsel defense; and (ii) extend the cutoff for fact discovery relating to advice of counsel issues until August 2007. *Id.*

The Special Master notes that, on their face, the extended deadlines proposed by Tatung are simply not calculated to achieve Tatung's stated objective of deferring – until after infringement has been established – any decision to waive attorney-client privilege by raising the advice of counsel defense. That is because the very soonest date by which liability for infringement could be established short of a trial on the merits would be when a Report and Recommendation issues on an appropriate case-dispositive motion.[5] To achieve Tatung's stated objective of deferring its election until after liability is established, the Special Master determines that it would likely be necessary to bifurcate and stage the trial on willfulness following the trial for infringement, currently scheduled for January 21, 2008. The Special Master concludes that the delay bifurcation would interpose is not favored under principles of judicial economy. *See, e.g., Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 36 (D. Del. 1995) ("[The] stop-and-start of a stay of discovery and separate trials undermines our goal of working to apply the Rules of Civil Procedure to obtain a just, speedy and inexpensive resolution of every action.").[6]

The Special Master next considers the harms asserted by the parties if the bifurcation sought by Tatung is or is not permitted. The Special Master concludes that the balance of harms favors LPL because Tatung's request to bifurcate discovery would effectively thwart LPL from timely taking discovery that is both permissible and necessary whenever the advice of counsel

---

[5] Under the Scheduling Order, the Special Master's initial recommendations on case dispositive motions are not scheduled to issue until late October. D.I. 577 at ¶ 9(b). The parties then have until mid-November to complete briefing on any exceptions taken to those recommendations. *Id.*

[6] The inefficiency of stop and start discovery is illustrated by what has already transpired in this case. During the course of the March 13, 2007 deposition of Oliver Shih, a Tatung Rule 30(b)(6) designated witness on topics including advice of counsel (D.I. 349, Topic No. 27), Mr. Shih was instructed not to answer questions implicating advice of counsel. It is worthy of note that Tatung's counsel failed to immediately seek a protective order. *Tuerkes-Beckers, Inc. v. New Castle Assocs.*, 158 F.R.D. 573 (D. Del. 1993).

7

defense is asserted. *See, e.g., In re EchoStar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (addressing the potential for misusing advice of counsel as a sword and a shield, the Federal Circuit "recognize[s] that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter") *aff'd*, 980 F.2d 742 (Fed. Cir. 1992); *Mobile Oil Corp. v. Amoco*, 779 F. Supp. 1429, 1485 n.43 (D. Del. 1991) (Court concluding that, "Amoco's failure to clearly waive the privilege before the close of discovery prevented Mobil from taking any appropriate discovery regarding the opinions or from ascertaining that all of the documents relating to the opinions had been produced."). The Court in *Mobile* added that Amoco's contention that it would waive the privilege at trial and in any event it "properly maintained the privilege . . . until there was no prospect for future settlement of the case . . . [does] not justify a failure to comply with a discovery schedule." *Id*. The scheduling order (in any case) is just that, an order, not a mere suggestion.

In contrast, Tatung's concern that having to assert an advice of counsel defense at this juncture would create a "harsh dilemma" if it is forced to choose between asserting or waiving attorney-client privilege, has been substantially ameliorated by the Federal Circuit's decision in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (concluding that an adverse inference should not be drawn from patent infringement defendant's invocation of attorney-client and/or work product privileges or from defendant's failure to consult with counsel) and *Ampex Corp. v. Eastman Kodak Co.*, C.A. No. 04-1373 2006 WL 1995140 (D. Del. July 17, 2006) (Jordan, J.) (construing *EchoStar* to clarify and limit the scope of waiver).[7]

---

[7] The Special Master is aware that, because some courts have broadly interpreted the scope of waiver under *EchoStar*, the United States Court of Appeals for the Federal Circuit has granted a petition to hear *en banc* the

062038.00612/40167463v.2

As a final matter, the Special Master considers whether the requested bifurcation is permitted under the Court's Scheduling Order. In this regard in conjunction with addressing other matters, the Special Master has thoroughly reviewed the Scheduling Order in this case from its genesis as the Proposed Rule 16 Scheduling Order (the "Proposed Order") jointly submitted by the parties. D.I. 192. The Special Master notes that the Proposed Order contained numerous points reflecting the counter-proposals of the parties as to those provisions on which they could not agree. *See, e.g.,* D.I. 192 at ¶¶ 3(d), 3(e), 3(h) and 7. The Special Master also notes that Tatung's proposals did not request the bifurcation it now seeks. The Special Master is therefore satisfied that the Scheduling Order does not contemplate bifurcation of discovery that relates to advice of counsel. Rather, the Special Master's review of the Proposed Order and the form of Scheduling Order subsequently adopted by the Court, including later amendments thereto submitted by the parties and approved by the Court, reveal no suggestion that discovery relating to advice of counsel should proceed under a schedule different.

Accordingly, the Special Master concludes that Tatung's Cross-Motion should be denied.

## B. Advice of Counsel as Affirmative Defense

The Special Master concludes that the advice of counsel defense to willful infringement must be asserted. Tatung in its submission of January 26, 2007 takes great pains to develop the

---

application of Seagate Technology, LLC for writ of mandamus to vacate discovery orders that compel disclosure of privileged communications of its trial counsel, Misc. No. 2006-830. The narrow issue before the Federal Circuit on review is:

> Whether an accused infringer that asserts an advice-of-counsel defense to a charge of willful infringement automatically waives attorney-client privilege and work-product protection for trial counsel communications relating to the substantive issues of infringement, validity, and enforceability, where trial counsel and opinion counsel have been kept entirely separate and independent of one another throughout the litigation.

Petition for Writ of Mandamus at pp. 6-7. Because Tatung has not yet raised advice of counsel, nothing herein should be construed as a determination by the Special Master with respect to the scope of waiver.

9

062038.00612/40167463v.2

argument that advice of counsel is not a F.R.C.P. Rule 8(c) defense that "must be set forth affirmatively." Tatung's argument can be summarized as follows:

1. Advice of counsel is not one of the specified defenses.

2. The defense of advice of counsel does not defeat plaintiff's claim or otherwise excuse defendants from liability. In the context of defending a claim of willful infringement, reliance on the opinion of counsel is but one factor that may negate the plaintiff's prima facie case.

3. The failure to plead the defense would not unfairly surprise the plaintiff.

While Tatung's Rule 8 analysis is compelling, the fact remains that the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) and this Court in *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 34 (D. Del. 1995) both characterized advice of counsel as an affirmative defense. In this regard the Special Master concludes it would be inappropriate for a Special Master to ignore the characterization.

Even were the Special Master to accept that Tatung's F.R.C.P. 8(c) analysis is correct, the Special Master nonetheless concludes that Tatung must put LPL on notice of its assertion of the defense, that is, Tatung must assert advice of counsel, which waives attorney client privilege, in a time frame consistent with the extant scheduling order or risk the consequence of waiving the defense. *See Mobile*, 779 F. Supp. 1429, 1485 n.43; *Edward Lowe Indus., Inc. v. Oil Dri Corp. of America*, C.A. No. 94 C7568, 1995 WL 609231 at *6 (N.D. IN. Oct. 13, 1995) (concluding that "defendants elected to waive their advice of counsel defense" by asserting privilege throughout fact discovery, "even in opposition to [patent-holder's] motion to compel. . .[d]efendant's attempt to have it both ways will not succeed").

The Special Master concludes that Tatung's denials [D.I. 186 and 187] that they willfully infringed the patents in suit simply do not put LPL on notice that they are asserting advice of counsel as a defense. Moreover, the fact that LPL knew before it filed the instant motion that Tatung may assert advise of counsel is of no moment. Advice of counsel remains unasserted.

C.   **Motion Not Ripe for Consideration**

Having stated the above, and for the selfsame reasons stated in the Special Master's Report and Recommendations Regarding LG. Philips Motion to Compel Defendant Viewsonic Corporation to Provide Discovery on Advice of Counsel and Duty of Care [D.I. 385], the Special Master concludes that the Motion is not ripe for consideration.

## CONCLUSION

For the reasons set forth above, the Special Master concludes that (a) the Motion of Plaintiff LG.Philips LCD Co., Ltd. to Compel Defendants Tatung Company and Tatung Company of America to Provide Discovery on Advice of Counsel and the Exercise of Due Care is **NOT RIPE FOR CONSIDERATION**[8]; and (b) the Cross-Motion of Defendants Tatung Company and Tatung Company of America to bifurcate discovery relating to advice of counsel until after infringement is established should be **DENIED**.

**The Special Master's Report and Recommendation will become a final order of the Court unless objection is timely taken in accordance with the provisions of Fed. R. Civ. P. 53(g).**

ENTERED this
_8_ day of May, 2007

Vincent J. Poppiti (DSBA No. 100614)
Special Master

---

[8] The Special Master's conclusion that the issues raised by the Motion are not properly joined by the pleadings is not intended to foreclose LPL from raising these issues, if and when appropriate, at a later time.

11

062038.00612/40167463v.2