# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                        Plaintiff,

          v.                                Civil Action No. 04-343-JJF

TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.;
and VIEWSONIC CORPORATION,

                        Defendants.

## PLAINTIFF'S SIXTH SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANT TATUNG COMPANY'S FIRST SET OF INTERROGATORIES

Plaintiff LG.Philips LCD Co., Ltd. ("LPL" or "Plaintiff," also referred to in

Interrogatories as "LGP"), by counsel and pursuant to Fed. R. Civ. P. 33, objects and responds as

follows to Defendant Tatung Company's ("Tatung") First Set of Interrogatories.

### PRELIMINARY STATEMENT & GENERAL OBJECTIONS

LPL hereby incorporates its Preliminary Statement and its General Objections from

Plaintiff's Objections and Answers to Defendant Tatung Company's First Set of Interrogatories,

dated April 7, 2006.  Those general objections apply to each Interrogatory herein and thus, for

convenience, are not repeated after each Interrogatory, and are hereby incorporated into each

response.

This set of Objections and Responses incorporates into this single document all of LPL's

previously-submitted supplemental objections and responses to Defendant Tatung Company's

First Set of Interrogatories.

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

For each of the Patents-in-Suit, identify each and every TATUNG and TATUNG USA product by model number and/or other TATUNG or TATUNG USA designation made, used, offered for sale, sold in the U.S., or imported into the U.S. which LGP contends infringes the Patents-in-Suit (herein after, "Accused Product(s)") and identify each claim of each of the Patents-in-Suit that LGP contends is infringed by each Accused Product and where in each Accused Product the claim elements are located.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as vague and ambiguous, including with respect to the terms "TATUNG product" and "TATUNG USA product." LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from defendants. Further, LPL objects to this Interrogatory as calling for legal conclusions. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL cannot currently identify all infringing Tatung brand and other products and defendants have failed to provide discovery sufficient for LPL to make such an assessment. LPL is aware of products that infringe the Patents-in-Suit, including Tatung L17AMTN monitors. Tatung's liability and TATUNG USA's liability, however, includes any type of unlawful conduct related to any infringing products, whether direct infringement, contributory infringement, and/or inducing infringement by others. Tatung and TATUNG USA, for example,

have at least made, sold, offered for sale, and/or imported infringing products such as the

L17AMTN monitor.

With respect to the L17AMTN monitor, the infringed claims include, at least, claims 35,

36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent, which are

infringed literally.  The following charts show infringement by comparing the claims of the

Patents-in-Suit with the Tatung L17AMTN monitor (*see* corresponding Exhibit A, which is

attached to these Interrogatory answers):

| Claim in the '641 Patent | Tatung L17AMTN Monitor |
|---|---|
| **35**.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The Tatung L17AMTN monitor contains a Chi Mei LM170E4-L02 flat panel TFT LCD module K.  The LCD module K, in conjunction with the first support frame C, is rear mounted within the monitor.<br><br>The monitor is a data processing device as it contains a video processor for processing video data.  The monitor is also part of (i.e., a component of) a computer system, where a computer system constitutes a data processing device or system. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | The Chi Mei module K contains a backlight unit and an LCD panel.  The LCD panel is a flat display panel that is located immediately in front of the backlight unit.<br><br>The Chi Mei module K and, therefore, the backlight unit in the Chi Mei module K, are supported by the first support frame C.  The first support frame C has screw holes D through its rear surface.  Each of the screw holes D through the rear surface of the support frame C constitutes a fastening part, or at least a portion of a fastening part at the rear surface of a first frame. |
| a second frame; | The Tatung monitor has a front or second support frame M. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | Because the flat LCD panel is contained in the Chi Mei module K, the flat LCD panel must be positioned between the first support frame C and the second support frame M.<br><br>The four screw holes D through the rear surface of the first support frame C, together with the four screws B, |

| Claim in the '641 Patent | Tatung L17AMTN Monitor |
|---|---|
| | fix the first support frame C to the rear housing A.<br><br>The rear housing A protects the monitor, and in particular, the components located behind or to the rear of the first support frame C, including the data processing circuitry. As the Tatung monitor is a data processing device, or a component of a computer (i.e., a data processing device), the housing associated with the monitor constitutes a housing of a data processing device. |
| **36**. The rear mountable flat panel display device according to claim **35**, wherein the fastening part includes a fastening hole. | Each of the screw holes D through the rear surface of the first support frame C constitutes a fastening hole. |
| **55**. A rear mountable flat panel display device comprising: | The Tatung L17AMTN monitor contains a Chi Mei LM170E4-L02 flat panel TFT LCD module K. The LCD module K, in conjunction with the first support frame C, is rear mounted within the monitor. Thus, the Tatung monitor contains a rear mountable flat panel display device. |
| a first frame having a fastening part at a rear surface of the first frame; | The first support frame C has four screw holes D through its rear surface. Each of the four screw holes D constitutes a fastening part, or at least a portion of a fastening part at the rear surface of a first frame. |
| a second frame; and | The Tatung monitor employs a front frame M located at the front of the LCD module K. This front frame M constitutes a second support frame. |
| a flat display panel between the first and second frames; | The Chi Mei module K contains a flat LCD panel. Therefore, the flat LCD panel in the Chi Mei module K must be located between the first support frame C and the second support frame M. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | When the four screws B are installed, the four screws B, together with the four screw holes D through the rear surface of the first support frame C, fix the first support frame C to the rear housing A.<br><br>The rear housing A protects the monitor, and in particular, the components located behind or to the rear of the first support frame C, including the data processing circuitry. As the Tatung monitor is a data processing device, or a component of a computer (i.e., a data processing device), the housing associated with the monitor constitutes a housing of a data processing device. |

| Claims in the '718 Patent | Tatung L17AMTN Monitor |
|---|---|
| **33**. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The Tatung L17AMTN monitor includes a Chi Mei LM170E4-L02 flat panel TFT LCD module K, a first support frame C and a rear housing A. The Chi Mei module K and the support frame C are rear mounted to the rear housing A. The Tatung monitor was therefore assembled in accordance with a method of rear mounting a flat panel display device to a housing. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The Chi Mei module K contains a flat LCD panel and a backlight unit. It is understood that the LCD panel is in front of (i.e., on top of) the backlight unit. It can thus be said that the Chi Mei module K is assembled by placing a flat LCD panel on top of a backlight unit.

Just behind and providing support for the Chi Mei module K is the first support frame C. The first support frame C has four fastening elements that at least partially involve the four screw holes D. The screw holes D are used in fastening the first frame C to the rear housing A.

Screw holes D go through the rear surface of the first support frame C and, therefore, it can be said that they are located on a rear surface of the first support frame C opposite the top surface (i.e., the front surface) of the backlight unit. |
| placing a second frame on the flat display panel; and | The Tatung monitor includes a front or second support frame M. It is located at the front of the Chi Mei module K. It can therefore be said that the second frame M is placed on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | Because the flat LCD panel is contained in the Chi Mei module K, the flat LCD panel must be positioned between the first support frame C and the second support frame M. Thus, it can be said that the Tatung monitor was assembled in accordance with a method that involved fixing the flat LCD panel, contained in the Chi Mei module K, between a first support frame C and a second support frame M. |
| **34**. The method of claim 33, wherein the fastening element comprises a fastening hole. | Each of the four screw holes D are fastening holes that constitutes a fastening element, or at least a portion of a fastening element. |
| **35**. The method of claim 33, wherein the fastening element comprises a screw hole. | Each of the four screw holes D constitutes a fastening element, or at least a portion of a fastening element. |

| Claims in the '718 Patent | Tatung L17AMTN Monitor |
|---|---|
| **40**. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The Tatung L17AMTN monitor includes a Chi Mei LM170E4-L02 flat panel TFT LCD module K, a first support frame C and a rear housing A.  The Chi Mei module K and the support frame C are rear mounted to the rear housing A.  accordingly, the Tatung monitor was assembled in accordance with a rear mountable method of assembling a LCD device. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The Chi Mei module K and the first support frame C are located just in front of the rear housing A. Therefore, the Chi Mei module K and the first support frame C are arranged on an inner surface of the rear housing A, where the rear housing A constitutes a display case. |
| attaching the LCD device to the display case from the back of the display case. | The Chi Mei module K and the first support frame C are attached to the rear housing A from the back of the rear housing A, in that the Chi Mei module K is supported by the first frame C, which is rear mounted to the rear housing A by the four screws B passing through the rear surface of the rear housing A and through the screw holes D at the rear surface of the first support frame C. |

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing.  LPL reserves the right to address the doctrine of equivalents if and when appropriate, and reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL RESPONSE & OBJECTION:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL

objects to this Interrogatory at least because it is premature in that it seeks information pertaining to or requiring claim construction, and because it seeks information pertaining to infringing products that are presently unavailable because LPL is still awaiting discovery from Tatung on such products. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Tatung has refused and/or failed to provide discovery that would enable LPL to fully respond to this Interrogatory. The Tatung products that LPL is currently aware of that infringe the Patents-in-Suit include the: Tatung L17UCCT ("L17UCCT"), Tatung L17AMTN ("LTAMTN"), and Tatung L1705 ("L1705") monitors. Tatung's liability, however, includes any type of improper conduct related to any infringing products, whether by direct infringement, contributory infringement, and/or inducing infringement by others. Tatung, for example, has at least sold, offered for sale, and/or imported infringing products such as the L17UCCT, LTAMTN, and L1705 monitors.

With respect to the L17UCCT monitors, the infringed claims include, at least, claims 35, 36, 38, 40-43, and 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the LTAMTN monitors, the infringed claims include, at least, claims 35, 36, 38-43, 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L1705 monitors, the infringed claims include, at least, claims 35, 36, 38, 40-45, 55-56 of the '641 Patent and claims 33-35 and 39-40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

The following charts show infringement by comparing the claims of the Patents-in-Suit with the L17UCCT, L17AMTN, and L1705 monitors:

| Claims in the '641 Patent | Tatung Monitors |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The L17UCCT, L17AMTN, and L1705 are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | The L17UCCT, L17AMTN, and L1705 each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit. |
| a second frame; | The L17UCCT, L17AMTN, and L1705 each have a second frame. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The L17UCCT, L17AMTN, and L1705 each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 35, the L17UCCT, L17AMTN, and L1705 each have a fastening part that includes a fastening hole. |
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the L17UCCT, L17AMTN, and L1705 each have fastening parts that include at least two fastening holes at two corners of the first frame. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the L17AMTN has fastening parts that include four fastening holes at four corners of the first frame. |

| Claims in the '641 Patent | Tatung Monitors |
|---|---|
| 40. The rear mountable flat panel display device according to claim 35, wherein the backlight unit comprises: | In addition to the elements listed above that pertain to the limitations of claim 35, the L17UCCT, L17AMTN, and L1705 each have a backlight unit comprising the following elements. |
| a reflector unit adjacent the first frame; | The L17UCCT, L17AMTN, and L1705 each have a reflector unit adjacent the first frame. |
| a light source unit adjacent the reflector unit; and | The L17UCCT, L17AMTN, and L1705 each have a light source unit adjacent the reflector unit. |
| a light guide unit adjacent the light source unit. | The L17UCCT, L17AMTN, and L1705 each have a light guide unit adjacent the light source unit. |
| 41. The rear mountable flat panel display device according to claim 40, further comprising a diffuser unit and a prism unit. | In addition to the elements listed above that pertain to the limitations of claim 40, the L17UCCT, L17AMTN, and L1705 each have a diffuser unit and a prism unit. |
| 42. The rear mountable flat panel display device according to claim 35, wherein the fastening part is not visible from a viewing direction of the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the L17UCCT, L17AMTN, and L1705 each have a fastening part that is not visible from a viewing direction of the flat display panel. |
| 43. The rear mountable flat panel display device according to claim 35, wherein the flat panel display device only shows the flat display panel and the second frame when viewed from a viewing direction of the display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the L17UCCT, L17AMTN, and L1705 each have a flat panel display device that only shows the flat display panel and the second frame when viewed from a viewing direction of the display panel. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the L1705 has a fastening part that includes a protruding portion protruding away from the flat display panel. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 44, the L1705 has a protruding portion that includes a peg having a fastening hole. |

9

| Claims in the '641 Patent | Tatung Monitors |
|---|---|
| 55. A rear mountable flat panel display device comprising: | The L17UCCT, L17AMTN, and L1705 are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The L17UCCT, L17AMTN, and L1705 each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; and | The L17UCCT, L17AMTN, and L1705 each have a second frame. |
| a flat display panel between the first and second frames; | The L17UCCT, L17AMTN, and L1705 each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The L17UCCT, L17AMTN, and L1705 each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. |
| 56. A rear mountable flat panel display device comprising: | The L17UCCT, L17AMTN, and L1705 are each a rear mountable flat panel display device, the flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The L17UCCT, L17AMTN, and L1705 each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; | The L17UCCT, L17AMTN, and L1705 each have a second frame. |
| and a flat display panel between the first and second frames; | The L17UCCT, L17AMTN, and L1705 each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The L17UCCT, L17AMTN, and L1705 each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| **33**. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The L17UCCT, L17AMTN, and L1705 are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed. |
| placing a second frame on the flat display panel; and | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes placing a second frame on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes fixing the flat display panel between the first frame of the backlight unit and the second frame. |
| **34**. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L17UCCT, L17AMTN, and L1705 each have a fastening element that comprises a fastening hole. |
| **35**. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L17UCCT, L17AMTN, and L1705 each have a fastening element that comprises a screw hole. |
| **39**. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The L17UCCT, L17AMTN, and L1705 are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps. |
| arranging a first frame on a light guide, the first frame having holes for coupling a LCD panel to a supporting | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes arranging a first frame on a light guide, the first frame having holes for |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| frame, the supporting frame having a front surface and a rear surface; and | coupling an LCD panel to a supporting frame, the supporting frame having a front surface and a rear surface. |
| coupling the LCD panel, the light guide to the first frame from the rear surface of the supporting frame. | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes coupling the LCD panel, the light guide to the first frame from the rear surface of the supporting frame. |
| **40**. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The L17UCCT, L17AMTN, and L1705 are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the L17UCCT, L17AMTN, and L1705 includes attaching the LCD device to the display case from the back of the display case. |

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL RESPONSE & OBJECTION:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL

objects to this Interrogatory at least because it is premature in that it seeks information pertaining

to or requiring claim construction, and because it seeks information pertaining to infringing

products that are presently unavailable because LPL is still awaiting discovery from Tatung on

such products.  Subject to and without waiving these objections and the general objections, and

based upon the information presently available, LPL states as follows: Tatung has refused and/or

failed to provide discovery that would enable LPL to fully respond to this Interrogatory.  The

Tatung products that LPL is currently aware of that infringe the Patents-in-Suit include the:

American Dynamics ADMNC1LCD15 (the "ADMNC1LCD15"); American Dynamics

ADMNC1LCD17 (the "ADMNC1LCD17"); Tatung ADMNC1LCD17 (the "Tatung

ADMNC1LCD17"); American Dynamics (Unidentified but inspected at Greenberg Traurig's

office on January 16, 2007 and includes module model number M170EN06 (the "Unidentified

American Dynamic Product"); Tatung L17AMTN (the "Tatung L17AMTN"); Unidentified

product with designation P42HSMT identified at Greenberg Traurig's office on January 16, 2007

(the "P42HSMT"); Tatung P46 (the "Tatung P46T"); Triview TLM 1505 (the "Triview

FST1503RV-4B"); Tatung TLM 1703T (the "Tatung TLM-1703T"); Triview TLM-1703 (the

"Triview TLM-1703"); Tatung TLM-1705 (the "Tatung TLM-1705"); Triview TLM-1705 (the

"Triview TLM-1705"); Triview TLM-1903 (the "Triview TLM-1903"); Tatung V23CLTT (the

"Tatung V23CLTT"); Taung V23DLWX-U12 (the "Tatung V23DLWX-U12"); Tatung

V27CMTT-U01 (the "Tatung V27CMTT-U01"); Tatung V30CMTT-U01 (the "Tatung

V30CMTT-U01"); and Triview V30CMTT-U62 (the Triview V30CMTT-U62") products.

Tatung's liability, however, includes any type of improper conduct related to any

infringing products, whether by direct infringement, contributory infringement, and/or inducing

infringement by others.  Tatung, for example, has at least sold, offered for sale, and/or imported

infringing products such as the ADMNC1LCD15; the ADMNC1LCD17; the Tatung

ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the

P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview

TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung

V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-

U01; and Triview V30CMTT-U62 products.

     The following charts show infringement by comparing the claims of the Patents-in-Suit

with ADMNC1LCD15; the ADMNC1LCD17; the Tatung ADMNC1LCD17; the Unidentified

American Dynamic Product; the Tatung L17AMTN; the P42HSMT; the Tatung P46T; the

Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-

1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung

V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and Triview

V30CMTT-U62 products:

| Claims in the '641 Patent | Tatung Products |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview |

| Claims in the '641 Patent | Tatung Products |
|---|---|
| unit; and | TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit. |
| a second frame; | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a second frame. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 35, The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a fastening part that includes a fastening hole. |

| Claims in the '641 Patent | Tatung Products |
|---|---|
|  |  |
| 38. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD15; the ADMNC1LCD17; the Tatung ADMNC1LCD17; the Tatung L17AMTN; the Triview FST1503RV-4B; the Triview TLM-1703; the Tatung TLM-1705; and the Triview TLM-1705; each have fastening parts that include at least two fastening holes at two corners of the first frame. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD15; the ADMNC1LCD17; the Tatung ADMNC1LCD17; the Tatung L17AMTN; the Tatung TLM-1705; and the Triview TLM-1705; has fastening parts that include four fastening holes at four corners of the first frame. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the ADMNC1LCD15; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Tatung TLM-1705; and the Triview TLM-1705 has a fastening part that includes a protruding portion protruding away from the flat display panel. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 44, the Triview FST1503RV-4B; the Tatung TLM-1703T; the Tatung TLM-1705; and the Triview TLM-1705 has a protruding portion that includes a peg having a fastening hole. |
| 55. A rear mountable flat panel display device comprising: | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the P42HSMT; the |

16

| Claims in the '641 Patent | Tatung Products |
|---|---|
| | Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; and | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a second frame. |
| a flat display panel between the first and second frames; | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. |

| Claims in the '641 Patent | Tatung Products |
|---|---|
| 56. A rear mountable flat panel display device comprising: | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 are each a rear mountable flat panel display device, the flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a second frame. |
| and a flat display panel between the first and second frames; | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a flat display panel between the first and second frames. |

| Claims in the '641 Patent | Tatung Products |
|---|---|
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| **33**. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed. |
| placing a second frame on the flat display panel; and | The method of assembling each of the ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 includes placing a second frame on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit | The method of assembling each of the ADMNC1LCD15; the ADMNC1LCD17; Tatung |

20

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| and the second frame. | ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 includes fixing the flat display panel between the first frame of the backlight unit and the second frame. |
| **34**. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a fastening element that comprises a fastening hole. |
| **35**. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 each have a fastening element that comprises a screw hole. |
| **36.** The method of claim 33, wherein the fastening element comprises a stepped hole. | The ADMNC1LCD15; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; and the Triview TLM-1705 each have a stepped hole. |
| **40**. A rear mountable method of assembling a liquid crystal display | The ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| (LCD) device comprising: | Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the ADMNC1LCD15; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 includes attaching the LCD device to the display case from the back of the display case. |

LPL will provide more detailed information regarding the infringing products and

asserted claims at the appropriate time and based on further discovery, possibly including, for

example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this

Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL RESPONSE & OBJECTION:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory at least because it is premature in that it seeks information pertaining to or requiring claim construction, and because it seeks information pertaining to infringing products that are presently unavailable because LPL is still awaiting discovery from Tatung on such products. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Tatung has refused and/or failed to provide discovery that would enable LPL to fully respond to this Interrogatory. The Tatung products that LPL is currently aware of that infringe the Patents-in-Suit include the: American Dynamics ADMNC1LCD17 (the "ADMNC1LCD17"); Tatung ADMNC1LCD17 (the "Tatung ADMNC1LCD17"); American Dynamics (Unidentified but inspected at Greenberg Traurig's office on January 16, 2007 and includes module model number M170EN06 (the "Unidentified American Dynamic Product"); Tatung L17AMTN (the "Tatung L17AMTN"); Tatung L17UCCT (the "Tatung L17UCCT"); Unidentified product with designation P42HSMT identified at Greenberg Traurig's office on January 16, 2007 (the "P42HSMT"); Tatung P46 (the "Tatung P46T"); Triview TLM 1505 (the "Triview FST1503RV-4B"); Tatung TLM 1703T (the "Tatung TLM-1703T"); Triview TLM-1703 (the "Triview TLM-1703"); Tatung TLM-1705 (the "Tatung TLM-1705"); Triview TLM-1705 (the "Triview TLM-1705"); Triview TLM-1903 (the "Triview TLM-1903"); Tatung

V23CLTT (the "Tatung V23CLTT"); Taung V23DLWX-U12 (the "Tatung V23DLWX-U12");

Tatung V27CMTT-U01 (the "Tatung V27CMTT-U01"); Tatung V30CMTT-U01 (the "Tatung

V30CMTT-U01"); Triview V30CMTT-U62 (the "Triview V30CMTT-U62"); Hewlett-Packard

w22 RG556AA (the "HP RG556AA"); Ilo L15FCBT (the "Ilo L15FCBT"); and Hitachi

37HDL52 (the "Hitachi 37HDL52") products.

Tatung's liability, however, includes any type of improper conduct related to any

infringing products, whether by direct infringement, contributory infringement, and/or inducing

infringement by others.  Tatung, for example, has at least sold, offered for sale, and/or imported

infringing products such as the ADMNC1LCD17; the Tatung ADMNC1LCD17; the

Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the

P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview

TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung

V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-

U01; Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52

products.

With respect to the ADMNC1LCD17 products, the infringed claims include, at least,

claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With

respect to the Tatung ADMNC1LCD17 products, the infringed claims include, at least, claims

35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Unidentified American Dynamic Product products, the infringed

claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of

the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the Tatung L17AMTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17UCCT monitors, the infringed claims include, at least, claims 35-36, 38 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the P42HSMT products, the infringed claims include, at least claims 55 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung P46T products, the infringed claims include, at least, claims 55-56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the Triview FST1503RV-4B products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung TLM-1703T products, the infringed claims include, at least, claims 35-36, 44-45 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the Triview TLM-1703 products, the infringed claims include, at least, claims 35-36, 38, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung TLM-1705 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With

25

respect to the Triview TLM-1705 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Triview TLM-1903 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the Tatung V23CLTT products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung V23DLWX-U12 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the Tatung V27CMTT-U01 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung V30CMTT-U01 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the Triview V30CMTT-U62 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the HP RG556AA products, the infringed claims include, at least, claims 35-36, 44 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the Ilo L15FCBT products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

The following charts show infringement by comparing the claims of the Patents-in-Suit with the ADMNC1LCD17; the Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52  products:

| Claims in the '641 Patent | Tatung Products |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52  are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements. |
| a backlight unit including a first frame | The ADMNC1LCD17; Tatung ADMNC1LCD17; the |

| Claims in the '641 Patent | Tatung Products |
|---|---|
| having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit. |
| a second frame; | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a second frame. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 35, the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung |

| Claims in the '641 Patent | Tatung Products |
|---|---|
|  | TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a fastening part that includes a fastening hole. |
| 38. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD17; the Tatung ADMNC1LCD17; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Triview TLM-1703; the Tatung TLM-1705; and the Triview TLM-1705; each have fastening parts that include at least two fastening holes at two corners of the first frame. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD17; the Tatung ADMNC1LCD17; the Tatung L17AMTN; the Tatung TLM-1705; and the Triview TLM-1705; has fastening parts that include four fastening holes at four corners of the first frame. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the Triview FST1503RV-4B; the Tatung TLM-1703T; the Tatung TLM-1705; the Triview TLM-1705, and the HP RG556AA has a fastening part that includes a protruding portion protruding away from the flat display panel. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 44, the Triview FST1503RV-4B; the Tatung TLM-1703T; the Tatung TLM-1705; and the Triview TLM-1705 has a protruding portion that includes a peg having a fastening hole. |

| Claims in the '641 Patent | Tatung Products |
|---|---|
| 55. A rear mountable flat panel display device comprising: | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; and | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a second frame. |
| a flat display panel between the first and second frames; | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM- |

| Claims in the '641 Patent | Tatung Products |
|---|---|
| | 1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. |
| 56. A rear mountable flat panel display device comprising: | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 are each a rear mountable flat panel display device, the flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a first |

| Claims in the '641 Patent | Tatung Products |
|---|---|
|  | frame having a fastening part at a rear surface of the first frame. |
| a second frame; | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a second frame. |
| and a flat display panel between the first and second frames; | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT;  the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed. |
| placing a second frame on the flat display panel; and | The method of assembling each of the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 includes placing a second |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
|  | frame on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 includes fixing the flat display panel between the first frame of the backlight unit and the second frame. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a fastening element that comprises a fastening hole. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 each have a fastening element that comprises a screw hole. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| 36. The method of claim 33, wherein the fastening element comprises a stepped hole. | The Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705, and the HP RG556AA each have a stepped hole. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 includes attaching the LCD |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
|  | device to the display case from the back of the display case. |

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## **SUPPLEMENTAL RESPONSE & OBJECTION:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory at least because it is premature in that it seeks information pertaining to or requiring claim construction, and because it seeks information pertaining to infringing products that are presently unavailable because LPL is still awaiting discovery from Tatung on such products. LPL also objects because Tatung produced additional information after its March 30, 2007 deadline for such production and LPL has not had enough time to incorporate that recently produced information into this response, but reserves the right to do so. LPL also objects to responding to this Interrogatory as premature because LPL has yet to conduct its third party discovery and thus this Interrogatory should properly include all infringing products discovered during third party discovery, and thus LPL reserves the right to do so.

Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Tatung has refused and/or failed to provide discovery that would enable LPL to fully respond to this Interrogatory. Moreover, LPL recently became aware that many of Tatung's products are sold under third-party model numbers and/or designations. Accordingly, LPL's identification of accused products extends to all third-party products corresponding to the Tatung model numbers identified herein, and vice-versa. LPL reserves the right to supplement this response after it completes it third party discovery.

The Tatung products that LPL is currently aware of that infringe the Patents-in-Suit include the: i) L15FCBT-U02 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L15FCBT; Tatung L15FCBT-U02; Tatung L15FCBT-U09; and Tatung L15FCBT-U12 products (also sold as third-party product: Ilo L15FCBT) (collectively the "L15FCT-U02 Product Group"). LPL reserves the right to add additional products in the L15FCT-U02 Product Group when and if additional information becomes available, or otherwise;

ii) L17ACLN-U13 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L17ACLN-U03; Tatung L17ACLN-U13; Tatung L17ACLN-UB3; Tatung LI7ACTN-U01; Tatung L17ACTN-U23; Tatung L17ACTN-U32; Tatung L17ACTN-UC3; and Tatung L17ACTN-UD2 products (collectively the "L17ACLN-U13 Product Group"). LPL reserves the right to add additional products in the L17ACLN-U13 Product Group when and if additional information becomes available, or otherwise;

iii)  L17AMTN-U23 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L17AMTN-U01; Tatung L17AMTN-U03; Tatung L17AMTN-U22; Tatung L17AMTN-U23; and Tatung LI7AMTN-U32 products (collectively the "L17AMTN-U23 Product Group").  LPL reserves the right to add additional products in the L17AMTN-U23 Product Group when and if additional information becomes available, or otherwise;

iv)  L17FCBT-U02 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L17FCBT; Tatung L17FCBT-U02; and Tatung L17FCBT-U12 products (collectively the "L17FCBT-U02 Product Group").  LPL reserves the right to add additional products in the L17FCBT-U02 Product Group when and if additional information becomes available, or otherwise;

v)  L17FCMT Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L17FCMT; and Tatung L17FCMT-U05 products (collectively "L17FCMT Product Group").  LPL reserves the right to add additional products in the L17FCMT Product Group when and if additional information becomes available, or otherwise;

vi)  L17ECBQ-U08 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L17ECBQ-U08; Tatung L17KCBQ-U08; and Tatung L17EMBQ-U08 products (also sold as third-party product: HP Compaq FP7317) (collectively the "L17ECBQ-U08 Product Group").  LPL reserves the right to add additional products in the L17ECBQ-U08 Product Group when and if additional information becomes available, or otherwise;

vii)  L17UCCT-U02 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L17UCCT-U01; Tatung L17UCCT-U02; Tatung L17UCCT-U12; Tatung L17UCCT-U22; Tatung L17UCCT-U25; Tatung L17UCCT-U32; Tatung L17UCCT-U42; Tatung L17UCCT-U62; Tatung L17UCCT-U72; and Tatung L17UCCT-U82 products (collectively the "L17UCCT-U02 Product Group").  LPL reserves the right to add additional products in the L17UCCT-U02 Product Group when and if additional information becomes available, or otherwise;

ix)  L19FCBT Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L19FCBT; and Tatung L19FCBT-U12 products (collectively the "L19FCBT Product Group").  LPL reserves the right to add additional products in the L19FCBT Product Group when and if additional information becomes available, or otherwise;

x)  L19FCMT-U05 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L19FCMT-U05 products (hereinafter the "L19FCMT-U05 Product Group").  LPL reserves the right to add additional products in the L19FCMT-U05 Product Group when and if additional information becomes available, or otherwise;

xii)  L20WCAQ-U19 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L20WCAQ-U19 products (also sold as third-party product: HP L2045w) (hereinafter the "L20WCAQ-U19 Product Group").  LPL reserves the right to add additional products in the L20WCAQ-U19 Product Group when and if additional information becomes available, or otherwise;

xiii)  L22YMTT-U09 Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung L22YMTT-U09 products (also sold as third-party product: Hewlett-Packard w22 RG556AA) (hereinafter the "L22YMTT-U09 Product Group").  LPL reserves the right to add additional products in the L22YMTT-U09 Product Group when and if additional information becomes available, or otherwise.

xv)  V17AFTW Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung V17AFTW; Tatung V17AFTW-U01; and Tatung V17AFTW-U06 products (collectively the "V17AFTW Product Group").  LPL reserves the right to add additional products in the V17AFTW Product Group when and if additional information becomes available, or otherwise;

xvi)  V23CLTT Product Group as represented by Tatung Company in Ms. Valerie Ho's letter dated March 1, 2007, as including the: Tatung V23CLTT; Tatung V23CLTT-U01; Tatung V23CLTT-U02; Tatung V23CLTT-U05; Tatung V23CLTT-U62; Tatung V27CMTT-U01; Tatung V30CMTT-U62; Tatung V30CMTT-U01; Tatung V30CMTT-U03; Tatung V30CMTT-U05; and Tatung V23DLWX-U12 products (collectively the "V23CLTT Product Group").  LPL reserves the right to add additional products in the V23CLTT Product Group when and if additional information becomes available, or otherwise;

xvii)  Tatung P46 (the "Tatung P46T"); and

xviii)  Hitachi 37HDL52 (the "Hitachi 37HDL52") products.

Tatung's liability, however, includes any type of improper conduct related to any infringing products, whether by direct infringement, contributory infringement, and/or inducing infringement by others.  Tatung, for example, has at least sold, offered for sale, and/or imported infringing products such as the L15FCBT-U02 Product Group; L17ACLN-U13 Product Group;

L17AMTN-U23 Product Group; L17FCBT-U02 Product Group; L17FCMT Product Group;

L17ECBQ-U08 Product Group; L17UCCT-U02 Product Group; L19FCBT Product Group;

L19FCMT-U05 Product Group; L20WCAQ-U19 Product Group; L22YMTT-U09 Product

Group; V17AFTW Product Group; V23CLTT Product Group; Tatung P46T Products; and

Hitachi 37HDL52 products.

With respect to the L15FCBT-U02 Product Group, the infringed claims include, at least,

claims 35-36, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17ACLN-U13 Product Group, the infringed claims include, at least,

claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17AMTN-U23 Product Group, the infringed claims include, at least,

claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17FCBT-U02 Product Group, the infringed claims include, at least,

claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17FCMT Product Group, the infringed claims include, at least,

claims 35-36, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17ECBQ-U08 Product Group, the infringed claims include, at least,

claims 35-36, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17UCCT-U02 Product Group, the infringed claims include, at least, claims 35-36, 38 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L19FCBT Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L19FCMT-U05 Product Group, the infringed claims include, at least, claims 35-36 and 55-56  of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L20WCAQ-U19 Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L22YMTT-U09 Product Group, the infringed claims include, at least, claims 35-36, 44 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V17AFTW Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V23CLTT Product Group, the infringed claims include, at least, 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung P46T products, the infringed claims include, at least, claims 55-56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

The following charts show infringement by comparing the claims of the Patents-in-Suit with the L15FCBT-U02 Product Group; L17ACLN-U13 Product Group; L17AMTN-U23 Product Group; L17FCBT-U02 Product Group; L17FCMT Product Group; L17ECBQ-U08 Product Group; L17UCCT-U02 Product Group; L19FCBT Product Group; L19FCMT-U05 Product Group; L20WCAQ-U19 Product Group; L22YMTT-U09 Product Group; V17AFTW Product Group; V23CLTT Product Group; Tatung P46T products; and Hitachi 37HDL52 products:

| Claims in the '641 Patent | Products |
|---|---|
| 35. A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight | TheL15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 |

| Claims in the '641 Patent | Products |
|---|---|
| unit; and | Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit. |
| a second frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a second frame. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a fastening part that includes a fastening hole. |

| Claims in the '641 Patent | Products |
|---|---|
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | The L17ACLN-U13 Product Group, L17AMTN-U23 Product Group each have fastening parts that include at least two fastening holes at two corners of the first frame. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | The L17ACLN-U13 Product Group, L17AMTN-U23 Product Group has fastening parts that include four fastening holes at four corners of the first frame. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | The L17ECBQ-U08 Product Group, L22YMTT-U09 Product Group each has a fastening part that includes a protruding portion protruding away from the flat display panel. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | The L17ECBQ-U08 Product Group has a protruding portion that includes a peg having a fastening hole. |
| 55. A rear mountable flat panel display device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame having a fastening part at a rear surface of the first |

| Claims in the '641 Patent | Products |
|---|---|
| | frame. |
| a second frame; and | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a second frame. |
| a flat display panel between the first and second frames; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. |
| 56. A rear mountable flat panel display device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, |

46

| Claims in the '641 Patent | Products |
|---|---|
| | Hitachi 37HDL52 products are each a rear mountable flat panel display device, the flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a second frame. |
| and a flat display panel between the first and second frames; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, |

| Claims in the '641 Patent | Products |
|---|---|
| | Hitachi 37HDL52 products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed. |
| placing a second frame on the flat display panel; and | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, |

48

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
|  | L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes placing a second frame on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes fixing the flat display panel between the first frame of the backlight unit and the second frame. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a fastening element that comprises a fastening hole. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a fastening element that comprises a screw hole. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | |
| 36. The method of claim 33, wherein the fastening element comprises a stepped hole. | In addition to the elements listed above that pertain to the limitations of claim 33, the L17ECBQ-U08 Product Group and the L22YMTT-U09 Product Group each have a fastening element that includes a stepped hole. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes attaching the LCD device to the display case from the back of the display case. |

The following response is directed to Tatung America products that LPL understands to have been manufactured, shipped, imported, sold, and/or offered for sale, in or to the United States, by or for Tatung America.

The Tatung America products that LPL is currently aware of that infringe the Patents-in-Suit include the:  Tatung P46 products (the "TUS P46T products"); Tatung ADMNC1LCD17 products, including third party product American Dynamics ADMNC1LCD17 (the "ADMNC1LCD17 products"); unidentified American Dynamics product inspected at Greenberg Traurig's office on January 16, 2007 and includes module model number M170EN06 (the "Unidentified American Dynamic Product"); unidentified product with designation P42HSMT identified at Greenberg Traurig's office on January 16, 2007 (the "P42HSMT products"); Triview TLM 1505 products (Triview FST1503RV-4B) (the "TLM 1505 products"); TLM 1703 products, including the Tatung TLM 1703 and Triview TLM 1703 products (the "TLM 1703 products"); Tatung TLM 1703T products (the "TLM-1703T products"); TLM-1705 products, including the Tatung TLM 1705 and Triview TLM-1705 products (the "TLM-1705 products"); Triview TLM-1903 products (the "TLM-1903 products"); Triview V30CMTT-U62 products (the "V30CMTT-U62 products"); and Hitachi 37HDL52 products (the "Hitachi 37HDL52 products").

Additionally, the Tatung America products, which correspond to Tatung Company products, that LPL is currently aware of that infringe the Patents-in-Suit include: the L17AMTN products, including the L17AMTN, L17AMTNB-U32AD, L17AMTN-M21L, and L17AMTN-SR products (the "TUS L17AMTN products"); the V17AFTW products, including the V17AFTW, V17AFTW-D, V17AFTW-G, and V17AFTW-U01 products (the "TUS V17AFTW products"); the V23CLTT products, including the V23CLTT, V27CLTT-U01, V27CMTT,

V30CLTT-U01, and V30CMTT products (the "TUS V23CLTT products"); and the L17ACTN

products, including the L17ACTNB-U32, L17ACTNB-U32 AD, L17ACTNB-UD2 AD,

L17ACTN-U01, and L17ACTN-UD2 products (the "TUS L17ACTN products").

Tatung's liability, however, includes any type of improper conduct related to any

infringing products, whether by direct infringement, contributory infringement, and/or inducing

infringement by others.  Tatung, for example, has at least sold, offered for sale, and/or imported

infringing products such as the TUS P46T products, ADMNC1LCD17 products, Unidentified

American Dynamic Product, P42HSMT products, TLM 1505 products, TLM 1703 products,

TLM 1703T products, TLM 1705 products, TLM 1903 products, V30CMTT-U62 products,

Hitachi 37HDL52 products, TUS L17AMTN products, TUS V17AFTW products, TUS

V23CLTT products, and TUS L17ACTN products.

With respect to the TUS P46T products, the infringed claims include, at least, claims 55-

56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of

equivalents.  With respect to the ADMNC1LCD17 products, the infringed claims include, at

least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718

Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Unidentified American Dynamic Product products, the infringed

claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of

the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of

equivalents.  With respect to the P42HSMT products, the infringed claims include, at least

claims 55 of the '641 Patent, which are infringed literally, or, in the alternative, under the

doctrine of equivalents.

With respect to the TLM 1505 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the TLM-1703T products, the infringed claims include, at least, claims 35-36, 44-45 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1703 products, the infringed claims include, at least, claims 35-36, 38, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the TLM-1705 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1903 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the V30CMTT-U62 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS L17AMTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the TUS V17AFTW products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS V23CLTT products, the infringed claims include, at least, 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the TUS L17ACTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

The following charts show infringement by comparing the claims of the Patents-in-Suit with the TUS P46T products, ADMNC1LCD17 products, Unidentified American Dynamic Product, P42HSMT products, TLM 1505 products, TLM 1703 products, TLM 1703T products, TLM 1705 products, TLM 1903 products, V30CMTT-U62 products, Hitachi 37HDL52 products, TUS L17AMTN products, TUS V17AFTW products, TUS V23CLTT products, and TUS L17ACTN products:

| Claims in the '641 Patent | Products |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The ADMNC1LCD17 products, TLM 1505 products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements. |
| a backlight unit including a first frame having a fastening part at a rear | The ADMNC1LCD17 Products, TLM 1505 Products, The TLM-1703T Products, TLM-1703 Products, TLM- |

54

| Claims in the '641 Patent | Products |
|---|---|
| surface of the first frame, a flat display panel adjacent to the backlight unit; and | 1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products and TUS L17ACTN Products each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit. |
| a second frame; | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a second frame. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products and TUS L17ACTN Products each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 35, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a fastening part that includes a fastening hole. |
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703 Products, TLM-1705 Products, TUS L17AMTN Products, and TUS L17ACTN Products each have fastening parts that include at least two fastening holes at two corners of the |

| Claims in the '641 Patent | Products |
|---|---|
| | first frame. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1705 Products, TUS L17AMTN Products, and TUS L17ACTN Products each have fastening parts that include four fastening holes at four corners of the first frame. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the TLM 1505 Products, TLM-1703T Products and TLM-1705 Products each have a fastening part that includes a protruding portion protruding away from the flat display panel. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 44, the TLM 1505 Products, TLM-1703T Products, and TLM-1705 Products each have a protruding portion that includes a peg having a fastening hole. |
| 55. A rear mountable flat panel display device comprising: | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; and | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and |

56

| Claims in the '641 Patent | Products |
|---|---|
|  | TUS L17ACTN Products each have a second frame. |
| a flat display panel between the first and second frames; | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. |
| 56. A rear mountable flat panel display device comprising: | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products are each a rear mountable flat panel display device, the flat panel display device comprising the following elements. |
| a first frame having a fastening part at a rear surface of the first frame; | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame having a fastening part at a rear surface of the first frame. |
| a second frame; | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, |

57

| Claims in the '641 Patent | Products |
|---|---|
| | V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a second frame. |
| and a flat display panel between the first and second frames; | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a flat display panel between the first and second frames. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed. |
| placing a second frame on the flat display panel; and | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes placing a second frame on the flat display panel. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes fixing the flat display panel between |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | the first frame of the backlight unit and the second frame. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products each have a fastening element that comprises a fastening hole. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products each have a fastening element that comprises a screw hole. |
| 36. The method of claim 33, wherein the fastening element comprises a stepped hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, and TLM-1705 Products each have a stepped hole. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| back; | Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes attaching the LCD device to the display case from the back of the display case. |

LPL will provide more detailed information regarding the infringing products and asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 2:**

For each claim of each of the Patents-in-Suit identified in response to Interrogatory No. 1, state whether the alleged infringement by each Accused Product is literal or by the doctrine of equivalents and explain in detail how LG contends each Accused Product infringes each claim.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as duplicative of Interrogatory No. 1. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in

responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information regarding the doctrine of equivalents, claim construction, and infringing products that is premature and unavailable, including because LPL is awaiting discovery from Tatung. Further, LPL objects to this Interrogatory as calling for legal conclusions. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

As stated in response to Interrogatory No. 1, with respect to the L17AMTN monitor, the infringed claims include, at least, claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. The answer to Interrogatory No. 1 describes how the Tatung L17AMTN monitor literally infringes claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent. LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**<u>SUPPLEMENTAL RESPONSE & OBJECTION:</u>**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as duplicative of Interrogatory No. 1. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information regarding the doctrine of equivalents, claim construction, and infringing products that is premature and unavailable, including because LPL is awaiting discovery from Tatung. Further, LPL objects to this Interrogatory as calling for legal

conclusions.  Subject to and without waiving these objections and the general objections, and

based upon the information presently available, LPL states as follows:

As stated in response to Interrogatory No. 1, with respect to the Triview FST1503RV-4B;

the Tatung TLM-1705; and the Triview TLM-1705 products the infringed claims include, at

least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 patent and claims 33-36 and 40 of the

'718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the ADMNC1LCD17; Tatung ADMNC1LCD17; and the Tatung L17AMTN

products the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 patent

and claims 33-35 and 40 of the '718 patent, which are infringed literally, or, in the alternative,

under the doctrine of equivalents.  With respect to the Unidentified American Dynamic Product;

the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung

V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the Ilo L15FCBT;

and the Hitachi 37HDL52 products the infringed claims include, at least, claims 35, 36, 55, and

56 of the '641 patent and claims 33-35, and 40 of the '718 patent, which are infringed literally,

or, in the alternative, under the doctrine of equivalents.  With respect to the P42HSMT, the

infringed claims include, at least, claim 55, which is infringed literally, or, in the alternative,

under the doctrine of equivalents.  With respect to the Tatung P46T the infringed claims include,

at least, claim 55 and 56, which are infringed literally, or, in the alternative, under the doctrine of

equivalents.  With respect to the Tatung TLM-1703T the infringed claims include, at least,

claims 35-36, 44-45, and 55-56 of the '641 patent and claims 33-36 and 40 of the '718 patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With

respect to the Triview TLM-1703, the infringed claims include, at least, claims 35-36, 38, and

55-56 of the '641 patent and claims 33-36 and 40 of the '718 patent, which are infringed

literally, or, in the alternative, under the doctrine of equivalents. With respect to the Tatung L17UCCT the infringed claims include, at least, claims 35-36, 38, and 55-56 of the '641 patent and claims 33-35 and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the HP RG556AA, the infringed claims include, at least, claims 35-36, 44, and 55-56 of the '641 patent and claims 33-35 and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. The answer to Interrogatory No. 1 describes how the Tatung L17UCCT; the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 products literally infringe the above identified claims. LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## **SUPPLEMENTAL RESPONSE & OBJECTION:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as duplicative of Interrogatory No. 1. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information regarding the doctrine of equivalents, claim construction,

and infringing products that is premature and unavailable, including because LPL is awaiting

discovery from Tatung, and has yet to conduct depositions of Tatung's witnesses and experts,

and has yet to receive direction from the Court as to claim construction.  Further, LPL objects to

this Interrogatory as calling for legal conclusions.  Subject to and without waiving these

objections and the general objections, and based upon the information presently available, LPL

states as follows:

With respect to the L15FCBT-U02 Product Group, the infringed claims include, at least,

35-36, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17ACLN-U13 Product Group, the infringed claims include, at least,

claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17AMTN-U23 Product Group, the infringed claims include, at least,

claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent,

which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17FCBT-U02 Product Group, the infringed claims include, at least,

claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17FCMT Product Group, the infringed claims include, at least,

claims 35-36, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are

infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17ECBQ-U08 Product Group, the infringed claims include, at least, claims 35-36, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17UCCT-U02 Product Group, the infringed claims include, at least, claims 35-36, 38 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L19FCBT Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L19FCMT-U05 Product Group, the infringed claims include, at least, claims 35-36 and 55-56  of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L20WCAQ-U19 Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L22YMTT-U09 Product Group, the infringed claims include, at least, claims 35-36, 44 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V17AFTW Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V23CLTT Product Group, the infringed claims include, at least, 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung P46T products, the infringed claims include, at least, 55-56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS P46T products, the infringed claims include, at least, claims 55-56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the ADMNC1LCD17 products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Unidentified American Dynamic Product products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the P42HSMT products, the infringed claims include, at least claims 55 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM 1505 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the

TLM-1703T products, the infringed claims include, at least, claims 35-36, 44-45 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1703 products, the infringed claims include, at least, claims 35-36, 38, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the TLM-1705 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1903 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the V30CMTT-U62 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS L17AMTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the TUS V17AFTW products, the infringed claims include, at least, claims 35-36 and

55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS V23CLTT products, the infringed claims include, at least, 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents. With respect to the TUS L17ACTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

As stated in response to Interrogatory No. 1, the answer to Interrogatory No. 1 describes how the L15FCBT-U02 Product Group; L17ACLN-U13 Product Group; L17AMTN-U23 Product Group; L17FCBT-U02 Product Group; L17FCMT Product Group; L17ECBQ-U08 Product Group; L17UCCT-U02 Product Group; L19FCBT Product Group; L19FCMT-U05 Product Group; L20WCAQ-U19 Product Group; L22YMTT-U09 Product Group; V17AFTW Product Group; V23CLTT Product Group; Tatung P46T products; Hitachi 37HDL52; the TUS P46T products, ADMNC1LCD17 products, Unidentified American Dynamic Product, P42HSMT products, TLM 1505 products, TLM 1703 products, TLM 1703T products, TLM 1705 products, TLM 1903 products, V30CMTT-U62 products, Hitachi 37HDL52 products, TUS L17AMTN products, TUS V17AFTW products, TUS V23CLTT products, and TUS L17ACTN products literally infringe the above identified claims. LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, deposition testimony of Tatung witnesses yet to be conducted, in or after submission of expert reports, in its M*arkman* briefing, and/or after the Special Master issues his claim construction report and recommendation, and/or after the Court issues its claim

construction order.  LPL reserves the right to supplement this Interrogatory answer, if

appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 3:

If LGP alleges that any Accused Product infringes by literal infringement, separately
apply each claim identified in response to Interrogatory No. 1 to each Accused Product element
by element (including terms and limitations within each element), and provide specific
references by document, page and line number to the specification, prosecution history or other
matter supporting LGP's application of those claims to the Accused Products.  Apply each
element of each asserted claim in a separate paragraph and identify specifically the support for
each claim construction given.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory as

duplicative of previous Interrogatories.  LPL further objects to this Interrogatory because Tatung

mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in

responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL objects to this

Interrogatory as seeking information on claim construction and infringing products that is

premature and unavailable, including because LPL is awaiting discovery from Tatung.   Further,

LPL objects to this Interrogatory as calling for legal conclusions.  Subject to and without waiving

these objections and the general objections, and based upon the information presently available,

LPL states as follows:

The answer to Interrogatory No. 1 describes how the Tatung L17AMTN monitor literally

infringes claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718

patent.  The tables below include claims 35, 36 and 55 of the '641 patent and claims 33, 34, 35

and 40 of the '718 patent, and, for each of these claims, provide examples of representative

portions of the disclosure from each patent that provide support for the claim language:

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| **35**. A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | "The present invention relates to a flat panel display device, and more specifically, to a flat panel display device mounting structure and a method of mounting the flat panel display device to a computer." Col. 1:11-15.<br><br>"Accordingly, the present invention is directed to a … computer and method for mounting a flat panel display device thereon…." Col. 2:41-43.<br><br>"To achieve these and other advantages and in accordance with the purpose of the present invention, as embodied and broadly described, a portable computer includes a body … a case coupled to the body and having inner and outer surfaces; and a flat panel display device having a display surface and a rear surface, the rear surface being fixed to the inner surface of the case." Col. 2:59-65.<br><br>"The present invention provides … a back mounting structure for a panel display device in a portable computer." Col. 4:6-10. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a backlight unit 14…." Col. 4:12-14.<br><br>"Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed. Although FIG. 4C shows the first frame 14g as part of the backlight unit 14, the first frame 14g can act as the supporting frame 16." Col. 4:16-25.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g and 15 [where the flat display panel 12 is adjacent to the backlight unit 14 and the fastening part 15 is at the rear surface of the first frame 14g]. |
| a second frame; | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16." Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-22. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight | "The computer includes a body 20 … and a … case 21." Col. 4:44-46. |

71

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | "Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel … a backlight device having a first surface … and a second surface attached to the outer case…." Col. 3:14-20.<br><br>Referring to FIG. 4C, the LCD device 10 has a first frame 14g…."<br><br>At each corner of the first frame 14g a screw hole 15 is preferably formed."  Col. 4:11-25.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g, 15 and 16 [which shows the flat display panel 12 between the first frame 14g and the second frame 16, as well as fastening holes 15 at the rear surface of the first frame 14g].<br><br>"To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30. Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:26-36. |
| **36**. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | At each corner of the first frame 14g a screw hole 15 is preferably formed.  Col 4:21-23.<br><br>"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| | from the back of the display case 30.  Col. 4:29-36

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21."  Col. 4:56-67. |
| **55**. A rear mountable flat panel display device comprising: | "The present invention relates to … a flat panel display device mounting structure…."  Col. 1:11-14.

"The present invention provides … a back mounting structure for a panel display device…."  Col. 4:6-10. |
| a first frame having a fastening part at a rear surface of the first frame; | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed."  Col. 4:16-23.

See also, FIG. 4C, reference nos. 14g and 15 [where fastening parts or fastening holes 15 pass through the rear surface of the first frame 14g]. |
| a second frame; and | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16."  Col. 4:12-14.

"The first frame 14g is coupled to a second frame or supporting frame 16."  Col. 4:21-22.

See also, FIG. 4C, reference no. 16. |
| a flat display panel between the first and second frames; | Referring to FIG. 4C, the LCD device 10 has … a first frame 14g, … and the LCD panel 12. The first frame 14g is coupled to a second frame or supporting frame 16.  Col. 4:11-21.

See also FIG. 4C, reference nos. 12, 14g and 16 [where flat display panel, i.e., LCD panel 12, is positioned between the first frame 14g and the second frame 16]. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | "The computer includes a body 20 … and a … case 21." Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case…." Col. 3:14-15.<br>"At each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:21-23.<br><br>"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:29-37.<br><br>See also FIG. 4C, reference nos. 14g and 15 [where the fastening holes 15 pass through the rear surface of first frame 14g].<br><br>See also, FIG. 5, reference nos. 15, 18, 21 and 21a [where the first frame 14g is fixed to the housing, i.e., case 21, using the fastening holes 15 on the rear surface of first frame 14g]. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| **33**. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | "The present invention relates generally to a flat panel display device, and more specifically … a method of mounting the flat panel display device to a computer." Col. 1:14-17.<br><br>"Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon…." Col. 2:45-47. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | "According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel having a display surface and a rear surface; a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case; and a supporting frame for assembling the LCD panel and the backlight device." Col. 3:19-25.<br><br>"To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30. Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw-hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:33-43.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g and 15. |
| placing a second frame on the flat display panel; and | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [t]he first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-27.<br>See also, FIG. 4C, reference nos. 12 and 16 [where the second frame 16 is placed on the flat display panel 12]. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | See FIG. 4C, reference nos. 12, 14a-g and 16 [where the flat display panel 12 is fixed between the first frame 14g associated with the backlight unit 14 and the second frame 16]. |
| **34**. The method of claim 33, wherein the fastening element comprises a fastening hole. | "Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| | conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:35-43.

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21." Col. 4:62 - Col. 5:3. |
| **35**. The method of claim 33, wherein the fastening element comprises a screw hole. | "At each corner of the first frame 14g a screw hole 15 is preferably formed." Col 4:27-28.

"Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:35-43.

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21." Col. 4:62 - Col. 5:3. |
| **40**. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | "The present invention relates generally to a flat panel display device, and more specifically … a method of mounting the flat panel display device to a computer." Col. 1:14-17. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| | "Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon…." Col. 2:45-47.

"Flat panel display devices include liquid crystal display devices (LCD)…." Col. 1:20-21.

"For convenience of explanation, the present invention will be discussed with respect to the LCD as an example of the flat screen type display devices…." Col. 1:24-26. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | "To achieve these and other advantages and in accordance with the purpose of the present invention … a case … having inner and outer surfaces; and a flat panel display device having a display surface and a rear surface, the rear surface being fixed to the inner surface of the case." Col. 2:63 - Col. 3:2.

"According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel having a display surface and a rear surface; a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case…." Col. 3:19-23.

To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30." Col. 4:33-35. |
| attaching the LCD device to the display case from the back of the display case | "Then, the case 30 and the LCD device 10 are attached to one another … from the back of the display case 30." Col. 4:35-43.

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21. The through-hole 21a is preferably a stepped hole so that the head of the screw 18 will not protrude from the outer surface of the case 21." |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
|  | Col. 4:62 - Col. 5:3. |

LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL OBJECTIONS AND ANSWER:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as duplicative of previous Interrogatories. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from Tatung. Further, LPL objects to this Interrogatory as calling for legal conclusions. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

The answer to Interrogatory No. 1 describes how the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi

37HDL52 products literally infringe the above identified claims.  The tables below include

claims 35-36, 38-39, 44-45, and 55-56 of the '641 patent and claims 33-36 and 40 of the '718

patent, and, for each of these claims, provide examples of representative portions of the

disclosure from each patent that provide support for the claim language:

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| 35. A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | "The present invention relates to a flat panel display device, and more specifically, to a flat panel display device mounting structure and a method of mounting the flat panel display device to a computer."  Col. 1:11-15.<br><br>"Accordingly, the present invention is directed to a … computer and method for mounting a flat panel display device thereon…."  Col. 2:41-43.<br><br>"To achieve these and other advantages and in accordance with the purpose of the present invention, as embodied and broadly described, a portable computer includes a body … a case coupled to the body and having inner and outer surfaces; and a flat panel display device having a display surface and a rear surface, the rear surface being fixed to the inner surface of the case."  Col. 2:59-65.<br><br>"The present invention provides … a back mounting structure for a panel display device in a portable computer."  Col. 4:6-10. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a backlight unit 14…."  Col. 4:12-14.<br><br>"Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed. Although FIG. 4C shows the first frame 14g as part of the backlight unit 14, the first frame 14g can act as the supporting frame 16."  Col. 4:16-25.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g and 15 [where the flat display panel 12 is adjacent to the backlight unit 14 and the fastening part 15 is at the rear surface of the first frame 14g]. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| a second frame; | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16."  Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16."  Col. 4:21-22. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | "The computer includes a body 20 … and a … case 21."  Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term."  Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel … a backlight device having a first surface … and a second surface attached to the outer case…."  Col. 3:14-20.<br><br>Referring to FIG. 4C, the LCD device 10 has a first frame 14g…."<br><br>At each corner of the first frame 14g a screw hole 15 is preferably formed."  Col. 4:11-25.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g, 15 and 16 [which shows the flat display panel 12 between the first frame 14g and the second frame 16, as well as fastening holes 15 at the rear surface of the first frame 14g].<br><br>"To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30. Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30."  Col. 4:26-36. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | At each corner of the first frame 14g a screw hole 15 is preferably formed.  Col 4:21-23.<br><br>"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30.  Col. 4:29-36<br><br>"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21."  Col. 4:56-67. |
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | At each corner of the first frame 14g a screw hole 15 is preferably formed.  Col. 4:21-23.<br><br>See also, Figs. 4c and 5. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | At each corner of the first frame 14g a screw hole 15 is preferably formed.  Col. 4:21-23.<br><br>See also, Figs. 4c and 5. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | "At the back surface of the LCD device 10, pegs 15a having mounting holes formed therein are formed corresponding to the positions of the through-holes 24c." Col. 5:57-60<br><br>"The pegs 15a having mounting holes formed therein may be referred to as a fastening element or fastening part and as shown in FIG. 8 protrude away from the LCD device 10." Col. 5:60-63<br><br>"The display case 30, the hinge arm 24 (referred to as a display device support member), and the LCD device 10 are preferably attached together by screws 18 (fastening elements or fastening parts) through the mounting hole of the pegs 15a and the screw hole 24c." Col. 6:9-13 |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | "At the back surface of the LCD device 10, pegs 15a having mounting holes formed therein are formed corresponding to the positions of the through-holes 24c." Col. 5:57-60<br><br>"The pegs 15a having mounting holes formed therein may be referred to as a fastening element or fastening part and as shown in FIG. 8 protrude away from the LCD device 10." Col. 5:60-63)<br><br>"The display case 30, the hinge arm 24 (referred to as a display device support member), and the LCD device 10 are preferably attached together by screws 18 (fastening elements or fastening parts) through the mounting hole of the pegs 15a and the screw hole 24c." Col. 6:9-13 |
| 55. A rear mountable flat panel display device comprising: | "The present invention relates to … a flat panel display device mounting structure…." Col. 1:11-14.<br><br>"The present invention provides … a back mounting structure for a panel display device…." Col. 4:6-10. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| a first frame having a fastening part at a rear surface of the first frame; | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:16-23.<br><br>See also, FIG. 4C, reference nos. 14g and 15 [where fastening parts or fastening holes 15 pass through the rear surface of the first frame 14g]. |
| a second frame; and | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16." Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-22.<br><br>See also, FIG. 4C, reference no. 16. |
| a flat display panel between the first and second frames; | Referring to FIG. 4C, the LCD device 10 has … a first frame 14g, … and the LCD panel 12. The first frame 14g is coupled to a second frame or supporting frame 16. Col. 4:11-21.<br><br>See also FIG. 4C, reference nos. 12, 14g and 16 [where flat display panel, i.e., LCD panel 12, is positioned between the first frame 14g and the second frame 16]. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | "The computer includes a body 20 … and a … case 21." Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case…." Col. 3:14-15.<br>"At each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:21-23.<br><br>"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| | from the back of the display case 30."  Col. 4:29-37.<br><br>See also FIG. 4C, reference nos. 14g and 15 [where the fastening holes 15 pass through the rear surface of first frame 14g].<br><br>See also, FIG. 5, reference nos. 15, 18, 21 and 21a [where the first frame 14g is fixed to the housing, i.e., case 21, using the fastening holes 15 on the rear surface of first frame 14g]. |
| 56. A rear mountable flat panel display device comprising: | "The present invention relates to … a flat panel display device mounting structure…."  Col. 1:11-14.<br><br>"The present invention provides … a back mounting structure for a panel display device…."  Col. 4:6-10. |
| a first frame having a fastening part at a rear surface of the first frame; | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed."  Col. 4:16-23.<br><br>See also, FIG. 4C, reference nos. 14g and 15 [where fastening parts or fastening holes 15 pass through the rear surface of the first frame 14g]. |
| a second frame; | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16."  Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16."  Col. 4:21-22.<br><br>See also, FIG. 4C, reference no. 16. |
| and a flat display panel between the first and second frames; | Referring to FIG. 4C, the LCD device 10 has … a first frame 14g, … and the LCD panel 12. The first frame 14g is coupled to a second frame or supporting frame 16.  Col. 4:11-21.<br><br>See also FIG. 4C, reference nos. 12, 14g and 16 [where flat display panel, i.e., LCD panel 12, is positioned between the first frame 14g and the second frame 16]. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | "The computer includes a body 20 … and a … case 21." Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case…." Col. 3:14-15.<br>"At each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:21-23.<br><br>"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:29-37.<br><br>See also FIG. 4C, reference nos. 14g and 15 [where the fastening holes 15 pass through the rear surface of first frame 14g].<br><br>See also, FIG. 5, reference nos. 15, 18, 21 and 21a [where the first frame 14g is fixed to the housing, i.e., case 21, using the fastening holes 15 on the rear surface of first frame 14g]. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | "The present invention relates generally to a flat panel display device, and more specifically … a method of mounting the flat panel display device to a computer." Col. 1:14-17.<br><br>"Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon…." Col. 2:45-47. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | "According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel having a display surface and a rear surface; a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case; and a supporting frame for assembling the LCD panel and the backlight device." Col. 3:19-25.<br><br>"To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30. Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw-hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:33-43.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g and 15. |
| placing a second frame on the flat display panel; and | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [t]he first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-27.<br>See also, FIG. 4C, reference nos. 12 and 16 [where the second frame 16 is placed on the flat display panel 12]. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | See FIG. 4C, reference nos. 12, 14a-g and 16 [where the flat display panel 12 is fixed between the first frame 14g associated with the backlight unit 14 and the second frame 16]. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | "Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| | conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30."  Col. 4:35-43.

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21."  Col. 4:62 - Col. 5:3. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | "At each corner of the first frame 14g a screw hole 15 is preferably formed."  Col 4:27-28.

"Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30."  Col. 4:35-43.

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21."  Col. 4:62 - Col. 5:3. |
| 36.  The method of claim 33, wherein the fastening element comprises a stepped hole. | See Figs. 6 and 7 reference number 21. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | "The present invention relates generally to a flat panel display device, and more specifically … a method of mounting the flat panel display device to a computer." Col. 1:14-17.<br><br>"Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon…." Col. 2:45-47.<br><br>"Flat panel display devices include liquid crystal display devices (LCD)…." Col. 1:20-21.<br><br>"For convenience of explanation, the present invention will be discussed with respect to the LCD as an example of the flat screen type display devices…." Col. 1:24-26. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | "To achieve these and other advantages and in accordance with the purpose of the present invention … a case … having inner and outer surfaces; and a flat panel display device having a display surface and a rear surface, the rear surface being fixed to the inner surface of the case." Col. 2:63 - Col. 3:2.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel having a display surface and a rear surface; a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case…." Col. 3:19-23.<br><br>To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30." Col. 4:33-35. |
| attaching the LCD device to the display case from the back of the display case | "Then, the case 30 and the LCD device 10 are attached to one another … from the back of the display case 30." Col. 4:35-43.<br><br>"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| | referred to as a fastening element or fastening part) from the back of the case 21. The through-hole 21a is preferably a stepped hole so that the head of the screw 18 will not protrude from the outer surface of the case 21." Col. 4:62 - Col. 5:3. |

LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL OBJECTIONS AND ANSWER:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory as duplicative of previous Interrogatories.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from Tatung, and has yet to conduct depositions of Tatung's witnesses and experts, and has yet to receive direction from the Court as to claim construction.  Further, LPL objects to this Interrogatory as calling for legal conclusions.  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

The answer to Interrogatory No. 1 describes how the L15FCBT-U02 Product Group; L17ACLN-U13 Product Group; L17AMTN-U23 Product Group; L17FCBT-U02 Product Group; L17FCMT Product Group; L17ECBQ-U08 Product Group; L17UCCT-U02 Product Group;

L19FCBT Product Group; L19FCMT-U05 Product Group; L20WCAQ-U19 Product Group;

L22YMTT-U09 Product Group; V17AFTW Product Group; V23CLTT Product Group; Tatung

P46T products; Hitachi 37HDL52 products; the TUS P46T products, ADMNC1LCD17 products,

Unidentified American Dynamic Product, P42HSMT products, TLM 1505 products, TLM 1703

products, TLM 1703T products, TLM 1705 products, TLM 1903 products, V30CMTT-U62

products, Hitachi 37HDL52 products, TUS L17AMTN products, TUS V17AFTW products,

TUS V23CLTT products, and TUS L17ACTN products literally infringe the above identified

claims.

      In addition to all the information provided by LPL in its disputed term identification and

preliminary claim construction charts containing intrinsic support, and briefs pertaining to its

claim construction submissions, LPL provides the tables below that include claims 35-36, 38-39,

44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, and, for each of

these claims, provide examples of representative portions of the disclosure from each patent that

provide support for the claim language:

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| 35. A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | "The present invention relates to a flat panel display device, and more specifically, to a flat panel display device mounting structure and a method of mounting the flat panel display device to a computer." Col. 1:11-15.<br><br>"Accordingly, the present invention is directed to a … computer and method for mounting a flat panel display device thereon…." Col. 2:41-43.<br><br>"To achieve these and other advantages and in accordance with the purpose of the present invention, as embodied and broadly described, a portable computer includes a body … a case coupled to the body and having inner and outer surfaces; and a flat panel display device having a display surface and a rear surface, the |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
|  | rear surface being fixed to the inner surface of the case." Col. 2:59-65.<br><br>"The present invention provides … a back mounting structure for a panel display device in a portable computer." Col. 4:6-10. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a backlight unit 14…." Col. 4:12-14.<br><br>"Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed. Although FIG. 4C shows the first frame 14g as part of the backlight unit 14, the first frame 14g can act as the supporting frame 16." Col. 4:16-25.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g and 15 [where the flat display panel 12 is adjacent to the backlight unit 14 and the fastening part 15 is at the rear surface of the first frame 14g]. |
| a second frame; | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16." Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-22. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | "The computer includes a body 20 … and a … case 21." Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel … a backlight device having a first surface … and a second surface attached to the outer case…." Col. 3:14-20.<br><br>Referring to FIG. 4C, the LCD device 10 has a first frame 14g…."<br><br>At each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:11-25. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| | See also, FIG. 4C, reference nos. 12, 14a-g, 15 and 16 [which shows the flat display panel 12 between the first frame 14g and the second frame 16, as well as fastening holes 15 at the rear surface of the first frame 14g].

"To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30. Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:26-36. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | At each corner of the first frame 14g a screw hole 15 is preferably formed. Col 4:21-23.

"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30. Col. 4:29-36

"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21." Col. 4:56-67. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | At each corner of the first frame 14g a screw hole 15 is preferably formed.  Col. 4:21-23.<br><br>See also, Figs. 4c and 5. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | At each corner of the first frame 14g a screw hole 15 is preferably formed.  Col. 4:21-23.<br><br>See also, Figs. 4c and 5. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | "At the back surface of the LCD device 10, pegs 15a having mounting holes formed therein are formed corresponding to the positions of the through-holes 24c."  Col. 5:57-60<br><br>"The pegs 15a having mounting holes formed therein may be referred to as a fastening element or fastening part and as shown in FIG. 8 protrude away from the LCD device 10."  Col. 5:60-63<br><br>"The display case 30, the hinge arm 24 (referred to as a display device support member), and the LCD device 10 are preferably attached together by screws 18 (fastening elements or fastening parts) through the mounting hole of the pegs 15a and the screw hole 24c."  Col. 6:9-13 |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | "At the back surface of the LCD device 10, pegs 15a having mounting holes formed therein are formed corresponding to the positions of the through-holes 24c."  Col. 5:57-60<br><br>"The pegs 15a having mounting holes formed therein may be referred to as a fastening element or fastening part and as shown in FIG. 8 protrude away from the LCD device 10."  Col. 5:60-63<br><br>"The display case 30, the hinge arm 24 (referred to as a display device support member), and the LCD device |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
|  | 10 are preferably attached together by screws 18 (fastening elements or fastening parts) through the mounting hole of the pegs 15a and the screw hole 24c." Col. 6:9-13 |
| 55. A rear mountable flat panel display device comprising: | "The present invention relates to … a flat panel display device mounting structure…." Col. 1:11-14.<br><br>"The present invention provides … a back mounting structure for a panel display device…." Col. 4:6-10. |
| a first frame having a fastening part at a rear surface of the first frame; | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:16-23.<br><br>See also, FIG. 4C, reference nos. 14g and 15 [where fastening parts or fastening holes 15 pass through the rear surface of the first frame 14g]. |
| a second frame; and | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16." Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-22.<br><br>See also, FIG. 4C, reference no. 16. |
| a flat display panel between the first and second frames; | Referring to FIG. 4C, the LCD device 10 has … a first frame 14g, … and the LCD panel 12. The first frame 14g is coupled to a second frame or supporting frame 16. Col. 4:11-21.<br><br>See also FIG. 4C, reference nos. 12, 14g and 16 [where flat display panel, i.e., LCD panel 12, is positioned between the first frame 14g and the second frame 16]. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | "The computer includes a body 20 … and a … case 21." Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| | "According to a further aspect of the present invention, an LCD device coupled to an outer case…." Col. 3:14-15. "At each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:21-23. "[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:29-37. See also FIG. 4C, reference nos. 14g and 15 [where the fastening holes 15 pass through the rear surface of first frame 14g]. See also, FIG. 5, reference nos. 15, 18, 21 and 21a [where the first frame 14g is fixed to the housing, i.e., case 21, using the fastening holes 15 on the rear surface of first frame 14g]. |
| 56. A rear mountable flat panel display device comprising: | "The present invention relates to … a flat panel display device mounting structure…." Col. 1:11-14. "The present invention provides … a back mounting structure for a panel display device…." Col. 4:6-10. |
| a first frame having a fastening part at a rear surface of the first frame; | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [a]t each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:16-23. See also, FIG. 4C, reference nos. 14g and 15 [where fastening parts or fastening holes 15 pass through the rear surface of the first frame 14g]. |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| a second frame; | "Referring to FIGS. 4A and 4B, the LCD device 10 has … a supporting frame 16." Col. 4:12-14.<br><br>"The first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-22.<br><br>See also, FIG. 4C, reference no. 16. |
| and a flat display panel between the first and second frames; | Referring to FIG. 4C, the LCD device 10 has … a first frame 14g, … and the LCD panel 12. The first frame 14g is coupled to a second frame or supporting frame 16. Col. 4:11-21.<br><br>See also FIG. 4C, reference nos. 12, 14g and 16 [where flat display panel, i.e., LCD panel 12, is positioned between the first frame 14g and the second frame 16]. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | "The computer includes a body 20 … and a … case 21." Col. 4:44-46.<br><br>"Together, the case 21 and the body 20 may be referred to as a housing, or a similar conveniently descriptive term." Col. 4:48-49.<br><br>"According to a further aspect of the present invention, an LCD device coupled to an outer case…." Col. 3:14-15.<br>"At each corner of the first frame 14g a screw hole 15 is preferably formed." Col. 4:21-23.<br><br>"[T]he case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:29-37.<br><br>See also FIG. 4C, reference nos. 14g and 15 [where the fastening holes 15 pass through the rear surface of first frame 14g].<br><br>See also, FIG. 5, reference nos. 15, 18, 21 and 21a [where the first frame 14g is fixed to the housing, i.e., |

| Claims in the '641 Patent | Representative Support for the claims from the '641 Patent Disclosure |
|---|---|
| | case 21, using the fastening holes 15 on the rear surface of first frame 14g]. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | "The present invention relates generally to a flat panel display device, and more specifically … a method of mounting the flat panel display device to a computer." Col. 1:14-17.<br><br>"Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon…." Col. 2:45-47. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | "According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel having a display surface and a rear surface; a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case; and a supporting frame for assembling the LCD panel and the backlight device." Col. 3:19-25.<br><br>"To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30. Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw-hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:33-43.<br><br>See also, FIG. 4C, reference nos. 12, 14a-g and 15. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| placing a second frame on the flat display panel; and | "Referring to FIG. 4C, the LCD device 10 has a first frame 14g … [t]he first frame 14g is coupled to a second frame or supporting frame 16." Col. 4:21-27.<br>See also, FIG. 4C, reference nos. 12 and 16 [where the second frame 16 is placed on the flat display panel 12]. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | See FIG. 4C, reference nos. 12, 14a-g and 16 [where the flat display panel 12 is fixed between the first frame 14g associated with the backlight unit 14 and the second frame 16]. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | "Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:35-43.<br><br>"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21." Col. 4:62 - Col. 5:3. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | "At each corner of the first frame 14g a screw hole 15 is preferably formed." Col 4:27-28.<br><br>"Then, the case 30 and the LCD device 10 are attached to one another by bolts 18 (which may be referred to as fastening elements, fastening parts, or a similar conveniently descriptive term) into the screw hole 15 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as a fastening element or fastening part) from the back of the display case 30." Col. 4:35-43.<br><br>"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
|  | such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21." Col. 4:62 - Col. 5:3. |
| 36.  The method of claim 33, wherein the fastening element comprises a stepped hole. | See Figs. 6 and 7 reference number 21. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | "The present invention relates generally to a flat panel display device, and more specifically … a method of mounting the flat panel display device to a computer." Col. 1:14-17.

"Accordingly, the present invention is directed to a portable computer and method for mounting a flat panel display device thereon…." Col. 2:45-47.

"Flat panel display devices include liquid crystal display devices (LCD)…." Col. 1:20-21.

"For convenience of explanation, the present invention will be discussed with respect to the LCD as an example of the flat screen type display devices…." Col. 1:24-26. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | "To achieve these and other advantages and in accordance with the purpose of the present invention … a case … having inner and outer surfaces; and a flat panel display device having a display surface and a rear surface, the rear surface being fixed to the inner surface of the case." Col. 2:63 - Col. 3:2.

"According to a further aspect of the present invention, an LCD device coupled to an outer case includes an LCD panel having a display surface and a rear surface; a backlight device having a first surface facing the rear surface of the LCD panel and a second surface attached to the outer case…." Col. 3:19-23.

To mount the LCD device 10 to the display case 30 (FIG. 8), the LCD device 10 is placed on the inner surface of the display case 30." Col. 4:33-35. |

| Claims in the '718 Patent | Representative Support for the claims from the '718 Patent Disclosure |
|---|---|
| attaching the LCD device to the display case from the back of the display case | "Then, the case 30 and the LCD device 10 are attached to one another … from the back of the display case 30." Col. 4:35-43.<br><br>"To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the holes 21a and 15 (which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part) from the back of the case 21. The through-hole 21a is preferably a stepped hole so that the head of the screw 18 will not protrude from the outer surface of the case 21." Col. 4:62 - Col. 5:3. |

LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, deposition testimony of Tatung witnesses yet to be conducted, in or after submission of expert reports, in its *Markman* briefing, and/or after the Special Master issues his claim construction report and recommendation, and/or after the Court issues its claim construction order. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.**INTERROGATORY NO. 4:**

If LGP alleges that any Accused Product infringes by the doctrine of equivalents, state in detail how each Accused Product infringes under the doctrine of equivalents, including without limitation, how each element of each alleged infringed claim is literally the same as, or the equivalent under the doctrine of equivalents, to a component or part of the Accused Product.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as duplicative of previous Interrogatories. LPL further objects to this Interrogatory because Tatung

mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL objects to this Interrogatory as seeking information regarding the doctrine of equivalents, claim construction, and infringing products that is premature and unavailable, including because LPL is awaiting discovery from Tatung.  Further, LPL objects to this Interrogatory as calling for legal conclusions.  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

As stated in response to Interrogatories No. 1 and 2, with respect to the L17AMTN monitor, the infringed claims include, at least, claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  The answer to Interrogatory No. 1 describes how the Tatung L17AMTN monitor literally infringes claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35, and 40 of the '718 patent.  LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing.  LPL reserves the right to address the doctrine of equivalents if and when appropriate, and reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## **SUPPLEMENTAL OBJECTIONS AND ANSWER:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory as duplicative of previous Interrogatories.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL objects to this

Interrogatory as seeking information regarding the doctrine of equivalents, claim construction,

and infringing products that is premature and unavailable, including because LPL is awaiting

discovery from Tatung. Further, LPL objects to this Interrogatory as calling for legal

conclusions. Subject to and without waiving these objections and the general objections, and

based upon the information presently available, LPL states as follows:

As stated in response to Interrogatories No. 1 and 2, with respect to the Triview

FST1503RV-4B; the Tatung TLM-1705; and the Triview TLM-1705 products the infringed

claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 patent and claims 33-

36 and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the

doctrine of equivalents. With respect to the ADMNC1LCD17; Tatung ADMNC1LCD17; and

the Tatung L17AMTN products the infringed claims include, at least, claims 35-36, 38-39, and

55-56 of the '641 patent and claims 33-35 and 40 of the '718 patent, which are infringed

literally, or, in the alternative, under the doctrine of equivalents. With respect to the Unidentified

American Dynamic Product; the Tatung TLM-1703T; the Triview TLM-1903; the Tatung

V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-

U01; the Triview V30CMTT-U62; the Ilo L15FCBT; and the Hitachi 37HDL52 products the

infringed claims include, at least, claims 35, 36, 55, and 56 of the '641 patent and claims 33-35,

and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine

of equivalents. With respect to the P42HSMT, the infringed claims include, at least, claim 55,

which is infringed literally, or, in the alternative, under the doctrine of equivalents. With respect

to the Tatung P46T the infringed claims include, at least, claim 55 and 56, which are infringed

literally, or, in the alternative, under the doctrine of equivalents. With respect to the Triview

TLM-1703, the infringed claims include, at least, claims 35-36, 38, and 55-56 of the '641 patent

and claims 33-6 and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  With respect to the HP RG556AA, the infringed claims include, at least, claims 35-36, 44, and 55-56 of the '641 patent and claims 33-35 and 40 of the '718 patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.  The answer to Interrogatory No. 1 describes how the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; the Triview V30CMTT-U62; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 products literally infringe the above identified claims.  LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing.  LPL reserves the right to address the doctrine of equivalents if and when appropriate, and reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## SUPPLEMENTAL OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory as duplicative of previous Interrogatories.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL objects to this Interrogatory as seeking information regarding the doctrine of equivalents, claim construction,

and infringing products that is premature and unavailable, including because LPL is awaiting discovery from Tatung, and has yet to conduct depositions of Tatung's witnesses and experts, and has yet to receive direction from the Court as to claim construction. Further, LPL objects to this Interrogatory as calling for legal conclusions. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

As stated in response to Interrogatories No. 1 and 2, with respect to the L15FCBT-U02 Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L15FCBT-U02 Product Group, the infringed claims include, at least, 35-36, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17ACLN-U13 Product Group, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17AMTN-U23 Product Group, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17FCBT-U02 Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17FCMT Product Group, the infringed claims include, at least, claims 35-36, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17ECBQ-U08 Product Group, the infringed claims include, at least, claims 35-36, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L17UCCT-U02 Product Group, the infringed claims include, at least, claims 35-36, 38 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L19FCBT Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L19FCMT-U05 Product Group, the infringed claims include, at least, claims 35-36 and 55-56  of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L20WCAQ-U19 Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the L22YMTT-U09 Product Group, the infringed claims include, at least, claims 35-36, 44 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V17AFTW Product Group, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V23CLTT Product Group, the infringed claims include, at least, 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Tatung P46T products, the infringed claims include, at least, 55-56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS P46T products, the infringed claims include, at least, claims 55-56 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the ADMNC1LCD17 products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Unidentified American Dynamic Product products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the P42HSMT products, the infringed claims include, at least claims 55 of the '641 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM 1505 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1703T products, the infringed claims include, at least, claims 35-36, 44-45 and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1703 products, the infringed claims include, at least, claims 35-36, 38, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1705 products, the infringed claims include, at least, claims 35-36, 38-39, 44-45, and 55-56 of the '641 Patent and claims 33-36 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TLM-1903 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the V30CMTT-U62 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the Hitachi 37HDL52 products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS L17AMTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS V17AFTW products, the infringed claims include, at least, claims 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS V23CLTT products, the infringed claims include, at least, 35-36 and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

With respect to the TUS L17ACTN products, the infringed claims include, at least, claims 35-36, 38-39, and 55-56 of the '641 Patent and claims 33-35 and 40 of the '718 Patent, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

The answer to Interrogatory No. 1 describes how the L15FCBT-U02 Product Group; L17ACLN-U13 Product Group; L17AMTN-U23 Product Group; L17FCBT-U02 Product Group; L17FCMT Product Group; L17ECBQ-U08 Product Group; L17UCCT-U02 Product Group; L19FCBT Product Group; L19FCMT-U05 Product Group; L20WCAQ-U19 Product Group; L22YMTT-U09 Product Group; V17AFTW Product Group; V23CLTT Product Group; Tatung P46T products; and Hitachi 37HDL52 products literally infringe the above identified claims. The answer to Interrogatory No. 1 also describes how the TUS P46T products, ADMNC1LCD17 products, Unidentified American Dynamic Product, P42HSMT products, TLM 1505 products,

TLM 1703 products, TLM 1703T products, TLM 1705 products, TLM 1903 products,

V30CMTT-U62 products, Hitachi 37HDL52 products, TUS L17AMTN products, TUS

V17AFTW products, TUS V23CLTT products, and TUS L17ACTN products literally infringe

the above identified claims.

The following charts show infringement under the doctrine of equivalents by comparing

the claims of the Patents-in-Suit with the corresponding elements in the L15FCBT-U02 Product

Group; L17ACLN-U13 Product Group; L17AMTN-U23 Product Group; L17FCBT-U02 Product

Group; L17FCMT Product Group; L17ECBQ-U08 Product Group; L17UCCT-U02 Product

Group; L19FCBT Product Group; L19FCMT-U05 Product Group; L20WCAQ-U19 Product

Group; L22YMTT-U09 Product Group; V17AFTW Product Group; V23CLTT Product Group;

Tatung P46T products; and Hitachi 37HDL52 products:

| Claims in the '641 Patent | Products |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, and Hitachi 37HDL52 products are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation |

| Claims in the '641 Patent | Products |
| --- | --- |
|  | and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a second frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a second frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of |

| Claims in the '641 Patent | Products |
|---|---|
| | equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 36. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a fastening hole. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a fastening part that includes a fastening hole.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 38. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | The L17ACLN-U13 Product Group, L17AMTN-U23 Product Group each have fastening parts that include at least two fastening holes at two corners of the first frame.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation |

| Claims in the '641 Patent | Products |
|---|---|
| | and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | The L17ACLN-U13 Product Group, L17AMTN-U23 Product Group has fastening parts that include four fastening holes at four corners of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | The L17ECBQ-U08 Product Group, L22YMTT-U09 Product Group each has a fastening part that includes a protruding portion protruding away from the flat display panel.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | The L17ECBQ-U08 Product Group has a protruding portion that includes a peg having a fastening hole.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of |

| Claims in the '641 Patent | Products |
|---|---|
|  | equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 55. A rear mountable flat panel display device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a first frame having a fastening part at a rear surface of the first frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame having a fastening part at a rear surface of the first |

| Claims in the '641 Patent | Products |
|---|---|
| | frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a second frame; and | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a second frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a flat display panel between the first and second frames; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, |

| Claims in the '641 Patent | Products |
|---|---|
| | Hitachi 37HDL52 products each have a flat display panel between the first and second frames.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 56. A rear mountable flat panel display device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 |

| Claims in the '641 Patent | Products |
|---|---|
| | Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products are each a rear mountable flat panel display device, the flat panel display device comprising the following elements.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a first frame having a fastening part at a rear surface of the first frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame having a fastening part at a rear surface of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

| Claims in the '641 Patent | Products |
|---|---|
| a second frame; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a second frame.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| and a flat display panel between the first and second frames; | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a flat display panel between the first and second frames.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

| Claims in the '641 Patent | Products |
|---|---|
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Tatung P46T, Hitachi 37HDL52 products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. |
| | Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| placing a second frame on the flat display panel; and | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes placing a second frame on the flat display panel.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group, L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes fixing the flat display panel between the first |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | frame of the backlight unit and the second frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a fastening element that comprises a fastening hole.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ- |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
|  | U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, L22YMTT-U09 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products each have a fastening element that comprises a screw hole.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 36.  The method of claim 33, wherein the fasteining element comprises a stepped hold. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the L17ECBQ-U08 Product Group and the L22YMTT-U09 Product Group each have a stepped hole.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, V17AFTW Product Group, V23CLTT Product Group, |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | Hitachi 37HDL52 products are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the L15FCBT-U02 Product Group, L17ACLN-U13 Product Group L17AMTN-U23 Product Group, L17FCBT-U02 |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | Product Group, L17FCMT Product Group, L17ECBQ-U08 Product Group, L17UCCT-U02 Product Group, L19FCBT Product Group, L19FCMT-U05 Product Group, L20WCAQ-U19 Product Group, V17AFTW Product Group, V23CLTT Product Group, Hitachi 37HDL52 products includes attaching the LCD device to the display case from the back of the display case.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

The following charts show infringement under the doctrine of equivalents by comparing the claims of the Patents-in-Suit with the corresponding elements of the following Tatung America products that LPL understands to have been manufactured, shipped, imported, sold, and/or offered for sale, in or to the United States, by or for Tatung America:  TUS P46T products, ADMNC1LCD17 products, Unidentified American Dynamic Product, P42HSMT products, TLM 1505 products, TLM 1703 products, TLM 1703T products, TLM 1705 products, TLM 1903 products, V30CMTT-U62 products, Hitachi 37HDL52 products, TUS L17AMTN products, TUS V17AFTW products, TUS V23CLTT products, and TUS L17ACTN products:

| Claims in the '641 Patent | Products |
|---|---|
| 35.  A rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising: | The ADMNC1LCD17 products, TLM 1505 products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products are each a rear mountable flat panel display device capable of being mounted to a data processing device, the flat panel display device comprising the following elements.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit; and | The ADMNC1LCD17 Products, TLM 1505 Products, The TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products and TUS L17ACTN Products each have a backlight unit including a first frame having a fastening part at a rear surface of the first frame, a flat display panel adjacent to the backlight unit.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

| | |
|---|---|
| a second frame; | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a second frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| Wherein the flat display panel is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame. | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products and TUS L17ACTN Products each have a flat display panel that is between the first frame and the second frame, the first frame of the backlight unit capable of being fixed to a housing of the data processing device through the fastening part at the rear surface of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 36. The rear mountable flat panel | In addition to the elements listed above that pertain to |

| | |
|---|---|
| display device according to claim 35, wherein the fastening part includes a fastening hole. | the limitations of claim 35, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a fastening part that includes a fastening hole.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 38.  The rear mountable flat panel display device according to claim 36, wherein the fastening part includes at least two fastening holes at two corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703 Products, TLM-1705 Products, TUS L17AMTN Products, and TUS L17ACTN Products each have fastening parts that include at least two fastening holes at two corners of the first frame.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 39. The rear mountable flat panel display device according to claim 36, wherein the fastening part includes four fastening holes at four corners of the first frame. | In addition to the elements listed above that pertain to the limitations of claim 36, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1705 Products, TUS L17AMTN Products, and TUS L17ACTN Products each have fastening parts that include four |

| | fastening holes at four corners of the first frame. |
|---|---|
| | Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 44. The rear mountable flat panel display device according to claim 35, wherein the fastening part includes a protruding portion protruding away from the flat display panel. | In addition to the elements listed above that pertain to the limitations of claim 35, the TLM 1505 Products, TLM-1703T Products and TLM-1705 Products each have a fastening part that includes a protruding portion protruding away from the flat display panel.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 45. The rear mountable flat panel display device according to claim 44, wherein the protruding portion includes a peg having a fastening hole. | In addition to the elements listed above that pertain to the limitations of claim 44, the TLM 1505 Products, TLM-1703T Products, and TLM-1705 Products each have a protruding portion that includes a peg having a fastening hole.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above |

| | |
|---|---|
| | element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 55. A rear mountable flat panel display device comprising: | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products are each a rear mountable flat panel display device, the rear mounted flat panel display device comprising the following elements.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a first frame having a fastening part at a rear surface of the first frame; | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame having a fastening part at a rear surface of the first frame.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

| | |
|---|---|
| a second frame; and | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a second frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a flat display panel between the first and second frames; | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a flat display panel between the first and second frames.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the | The TUS P46T Products, ADMNC1LCD17 Products, P42HSMT Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi |

| first frame. | 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| --- | --- |
| 56. A rear mountable flat panel display device comprising: | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products are each a rear mountable flat panel display device, the flat panel display device comprising the following elements.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a first frame having a fastening part at a rear surface of the first frame; | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, |

| | |
|---|---|
| | TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame having a fastening part at a rear surface of the first frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| a second frame; | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a second frame.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| and a flat display panel between the first and second frames; | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a flat display panel between the first and second frames.<br><br>Each of the above accused products infringes this |

| | |
|---|---|
| | limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| wherein the first frame is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted. | The TUS P46T Products, ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products each have a first frame that is capable of being fixed to a housing of a data processing device through the fastening part at the rear surface of the first frame and the flat display panel is rear mounted.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| 33. A method of assembling a rear mountable flat panel display device capable of being mounted to a housing, comprising: | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products are each assembled via a method of assembling a rear mountable flat panel display device capable of being mounted to a housing, that method includes the following steps.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, said fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed; | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes placing a flat display panel on a top surface of a backlight unit having a first frame, the first frame having a fastening element for fastening the first frame to the housing, the fastening element being located on a rear surface opposite the top surface of the backlight unit where the flat display panel is placed.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| placing a second frame on the flat display panel; and | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes placing a second frame on the flat display panel.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| fixing the flat display panel between the first frame of the backlight unit and the second frame. | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes fixing the flat display panel between the first frame of the backlight unit and the second frame.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 34. The method of claim 33, wherein the fastening element comprises a fastening hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products each have a fastening element that comprises a fastening hole.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 35. The method of claim 33, wherein the fastening element comprises a screw hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products each have a fastening element that comprises a screw hole.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 36.  The method of claim 33, wherein the fastening element comprises a stepped hole. | In addition to the steps and/or elements listed above that pertain to the limitations of claim 33, the TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, and TLM-1705 Products each have a stepped hole.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| 40. A rear mountable method of assembling a liquid crystal display (LCD) device comprising: | The ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products  are each assembled via a rear mountable method of assembling a liquid crystal display (LCD) device, that method includes the following steps.<br><br>Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| arranging the LCD device on a inner surface of a display case, wherein the display case has an inner surface and back; | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes arranging the LCD device on an inner surface of a display case, wherein the display case has an inner surface and back.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |
| attaching the LCD device to the display case from the back of the display case. | The method of assembling each of the ADMNC1LCD17 Products, TLM 1505 Products, TLM-1703T Products, TLM-1703 Products, TLM-1705 Products, TLM-1903 Products, V30CMTT-U62 Products, Hitachi 37HDL52 Products, TUS L17AMTN Products, TUS V17AFTW Products, TUS V23CLTT Products, and TUS L17ACTN Products products includes attaching the LCD device to the display case from the back of the display case.

Each of the above accused products infringes this limitation, in the alternative, under the doctrine of equivalents because each product contains the above element(s) that performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation |

| Claims in the '718 Patent | Tatung Monitors |
|---|---|
| | and/or because one of ordinary skill in the field of the invention would believe that the structure of the above element(s) contained in each of the above accused products, and the structure recited in the patent claim limitation, are interchangeable. |

LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, deposition testimony of Tatung witnesses yet to be conducted, in or after submission of expert reports, in its *Markman* briefing, and/or after the Special Master issues his claim construction report and recommendation, and/or after the Court issues its claim construction order. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 5:**

For each claim of the Patents-in-Suit identified above in response to Interrogatory No. 1 that includes limitation written in means-plus-function format, separately correlate the structure disclosed in the specification and drawings of the Patents-in-Suit for each means-plus-function clause recited in the asserted claims of the Patents-in-Suit to the specific component(s), Part(s), or feature(s) in the Accused Products that LGP alleges correspond to the specific structure disclosed in the specification and drawings of the Patents-in-Suit.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this Interrogatory as seeking information on claim construction and infringing products

that is premature and unavailable, including because LPL is awaiting discovery from Tatung.

Further, LPL objects to this Interrogatory as calling for legal conclusions.  Subject to and without

waiving these objections and the general objections, and based upon the information presently

available, LPL states:

LPL does not contend that claims 35, 36, and 55 of the '641 patent and claims 33, 34, 35,

and 40 of the '718 patent include a limitation written in means-plus-function format.  LPL

reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional

information becomes available, or otherwise.

## SUPPLEMENTAL OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory

because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate

subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL

objects to this Interrogatory as seeking information on claim construction and infringing products

that is premature and unavailable, including because LPL is awaiting discovery from Tatung.

Further, LPL objects to this Interrogatory as calling for legal conclusions.  Subject to and without

waiving these objections and the general objections, and based upon the information presently

available, LPL states:

LPL does not contend that claims 35-36, 38-39, 44-45, and 55-56 of the '641 patent and

claims 33-36 and 40 of the '718 patent include a limitation written in means-plus-function

format.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and

if additional information becomes available, or otherwise.

## INTERROGATORY NO. 6:

State all facts which support or upon which LGP intends to rely in support of LGP's contentions that TATUNG and TATUNG USA has each directly infringed or directly infringes, contributorily infringed, or contributorily infringes, and/or actively induced or actively induces infringement of the Patents-in-Suit, including but not limited to, the identity of each party involved in any act of direct infringement, contributory infringement, or inducement and the act of each such party which constitutes direct infringement, contributory infringement, or inducement and identify all documents that evidence or otherwise support such facts.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as

overly broad and unduly burdensome (for example, calling for "all facts" that may support legal

contentions on several different issues, and seeking identification of "each party involved in any

act," each "act", and "all documents"). LPL further objects to this Interrogatory because Tatung

mischaracterizes as one interrogatory multiple interrogatories on separate subjects and

defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL also

objects to this Interrogatory as premature and seeking information in defendants' possession and

that is the subject of LPL's discovery requests. Further, LPL objects to this Interrogatory as

calling for legal conclusions. Subject to and without waiving these objections and the general

objections, and based upon the information presently available, LPL states as follows:

Tatung's and TATUNG USA's direct infringement of the Patents-in-Suit includes, for example,

making, offering for sale, importing, and/or selling products under the Tatung brand (for

example, L17AMTN monitors) and other brands that infringe multiple claims of the Patents-in-

Suit. Further, LPL alleges that Tatung and/or TATUNG USA have supplied and transacted

business with other parties and third-parties, such as U.S. retailers and distributors, and

intentionally promoted and encouraged the importation, use, offering for sale, and/or sale of

infringing products in and to the U.S. LPL reserves the right to supplement this Interrogatory

response, if appropriate, when and if additional information becomes available, or otherwise.

**SECOND SUPPLEMENTAL OBJECTIONS AND ANSWER:**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as overly broad and unduly burdensome (for example, calling for "all facts" that may support legal contentions on several different issues, and seeking identification of "each party involved in any act," each "act", and "all documents"). LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL also objects to this Interrogatory as premature and seeking information in defendants' possession and that is the subject of LPL's discovery requests. Further, LPL objects to this Interrogatory as calling for legal conclusions. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Tatung's and TATUNG USA's direct infringement of the Patents-in-Suit includes, for example, making, offering for sale, importing, and/or selling products under the Tatung brand (for example, the Tatung ADMNC1LCD17; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Tatung TLM-1705; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 products) and other brands (for example the ADMNC1LCD17; the Unidentified American Dynamic Product; the HP RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52 products) that infringe multiple claims of the Patents-in-Suit. Further, LPL alleges that Tatung and/or TATUNG USA have supplied and transacted business with other parties and

third-parties, such as U.S. retailers and distributors, and intentionally promoted and encouraged

the importation, use, offering for sale, and/or sale of infringing products in and to the U.S. LPL

reserves the right to supplement this Interrogatory response, if appropriate, when and if

additional information becomes available, or otherwise.

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as

overly broad and unduly burdensome (for example, calling for "all facts" that may support legal

contentions on several different issues, and seeking identification of "each party involved in any

act," each "act", and "all documents"). LPL further objects to this Interrogatory because Tatung

mischaracterizes as one interrogatory multiple interrogatories on separate subjects and

defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL also

objects to this Interrogatory as premature and seeking information in defendants' possession and

that is the subject of LPL's discovery requests. Further, LPL objects to this Interrogatory as

calling for legal conclusions. Subject to and without waiving these objections and the general

objections, and based upon the information presently available, LPL states as follows:

Tatung's and TATUNG USA's direct infringement of the Patents-in-Suit includes, for

example, making, offering for sale, importing, and/or selling products under the Tatung brand

(for example, the ADMNC1LCD17; the Tatung L17AMTN; the Tatung L17UCCT; the Tatung

P46T; the TLM-1703T; the Trivew TLM-1703; the TLM-1705; the TLM-1903; the P42HSMT;

the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung

V30CMTT-U01; and the Trivew V30CMTT-U62 products) and other brands (for example, the

the ViewSonic Q170; the HP w22 RG556AA; the Ilo L15FCBT; and the Hitachi 37HDL52

products) that infringe one or more claims of the Patents-in-Suit.  Further, LPL alleges that

Tatung and/or TATUNG USA have supplied and transacted business with other parties and

third-parties, such as U.S. customers, brands, and retailers, and intentionally promoted and

encouraged the importation, use, offering for sale, and/or sale of infringing products in and to the

U.S.

The Tatung Defendants' conduct and intent concerning direct and indirect infringement is

established by discovery and evidence, direct and circumstanital, including, but not limited to:

- Tatung's agreements and contracts with its U.S. customers;

- correspondence and communications between Tatung and, for example, its customers concerning infringing products and the U.S. market;

- presentations directed toward current or potential customers and internal presentations regarding the U.S. market;

- service agreements between Tatung and third parties to service or repair products sold to Tatung's U.S. customers;

- documents reflecting sales and shipments of infringing products for the U.S. market;

- invoices, purchase orders, shipping orders, purchase forecasts and other documents concerning the purchase, sale and/or import of Tatung's infringing visual display products;

-  documents showing that Tatung complies with U.S. regulations so that display products can be imported and sold in the U.S.;

- deposition testimony, including the testimony of, for example, Calvin Ho, Jackson Chang, Oliver Shih, and Andrew Sun; and

- discovery received and/or expected from third parties.

This discovery and evidence shows, for example, that the Tatung Defendants make,

import, offer to sell, and sell infringing products, and that the Tatung Defendants induce their

customers to import and sell infringing products in the United States.  The United States is a key

market for Tatung's infringing visual display products.  Tatung maintains and develops

relationships with U.S. customers to promote and encourage the import, offering for sale, sale and use of its infringing visual display products in the United States. Tatung supplies infringing products for the U.S. market both directly and through subsidiaries in the U.S., including Tatung America and Tatung Science and Technology, Inc. ("TSTI"). Tatung also actively sells to and solicits business from customers and retailers located in the United States, and/or whose brands are sold in the U.S. Tatung coordinates with these and other third parties concerning the designs, specifications, distribution and/or placement of orders regarding such infringing products destined for the U.S. market. Tatung also communicates with third parties to promote and encourage the use, sale, importation, and offering for sale of these same infringing products in and into the United States. To promote visual display products for the U.S. market, including infringing products, Tatung has communicated with customers and brands in person, by telephone, and by e-mail, both in the U.S. and abroad. Tatung communicates and meets with customers and third parties about its infringing visual display products and these communications and meetings caused and facilitated the sale, offer for sale and/or distribution of Tatung's infringing visual display products to and for customers and users in the United States. Tatung also has collaborated with third parties to develop new display products, including for the U.S. market.

Tatung ships its infringing products to customers and destinations in the United States. Tatung also provides customer service and support concerning its infringing visual display products to customers and third parties in the United States such that those third parties and customers are induced to import or purchase Tatung's infringing visual display products. Further, Tatung regularly sends employees to the U.S. to support customers and has employees based in the U.S.

Tatung's conduct has continued despite its knowledge of the Patents-in-Suit.  Tatung knew or should have known that its conduct would result in the importation, offer for sale, sale, and use of infringing products in the U.S.  Tatung has, therefore, acted intentionally.

LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 7:

Identify each communication, whether oral or written, concerning any study, investigation, opinion, test or other evaluation of the validity, invalidity, enforceability, unenforceability, infringement or non-infringement of any claims of the Patents-in-Suit, including without limitation any alleged infringement by TATUNG and by TATUNG USA, whether conducted by, or on behalf of LGP or by a third party, and identify each person who has knowledge of each such study, investigation, opinion, test or other evaluation.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit negotiations and settlement discussions are not reasonably calculated to lead to discovery of admissible evidence and are not discoverable.  LPL also objects to this Interrogatory on the ground that it is overbroad and unduly burdensome because, for example, it seeks "each communication, whether oral or written," concerning every unspecified "study, investigation, opinion, test or other evaluation" without any limitation as to context or time period.  To the extent this Interrogatory seeks expert discovery, LPL further objects to this Interrogatory as premature.  Subject to and without waiving these objections and the general objections, LPL states as follows:

147

LPL's representatives have had confidential meetings with representatives of Fujitsu, and representatives of Sharp Corporation, regarding infringement of the Patents-in-Suit.  During their meetings, LPL's representatives made an electronic presentation.  LPL does not have any written communications or materials from Fujitsu or Sharp, nor did they cite any alleged prior art.  LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit negotiations and settlement discussions are not reasonably calculated to lead to discovery of admissible evidence and are not discoverable.  LPL also objects to this Interrogatory on the ground that it is overbroad and unduly burdensome because, for example, it seeks "each communication, whether oral or written," concerning every unspecified "study, investigation, opinion, test or other evaluation" without any limitation as to context or time period.  To the extent this Interrogatory seeks expert discovery, LPL further objects to this Interrogatory as premature.  LPL further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to the parties' claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence.  LPL also objects to this Interrogatory to the extent that the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, and because the burden or expense of the proposed discovery outweighs its

likely benefit, taking into account the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the litigation, and the importance of the
proposed discovery in resolving the issues.

Subject to and without waiving these objections and the general objections, and based on
the information presently available, LPL states as follows:

LPL's representatives have had confidential meetings with representatives of Fujitsu, and
representatives of Sharp Corporation, regarding infringement of the Patents-in-Suit. In
preparations for those meetings, LPL's representatives created and presented materials regarding
such infringement. LPL does not have any written communications or materials from Fujitsu or
Sharp, nor did they cite any alleged prior art.

LPL's representatives attended confidential meetings with representatives of Fujitsu on
May 20, 2003, at LG.Philips LCD Japan Office in Tokyo. LPL met with representatives of
Fujitsu's IP licensing department, Patent Department IV, and Technology Alliance Department
1. These meetings were attended by the following people: Jong Hwan Lee (LPL), Ho Lee
(LPL), Young Woo Cho (LPL), Won Jun Choi (LPL), Myeong Jo Seo (LPL), Kakegawa
(Fujitsu), Koyasu (Fujitsu), Miyake (Fujitsu), Ozawa (Fujitsu), Nakamura (Fujitsu), Yamaguchi
(Fujitsu), sato (Fujitsu), Ohashi (Fujitsu), Sakoda (Fujitsu), and Hoshino (Fujitsu). Jong Hwan
Kim (LPL) has knowledge of these meetings. LPL and Fujitsu discussed the FujitsuSiemens
5110FA monitor and the Fujitsu Monitor VL1700SS. Fujitsu did not make a presentation to
LPL, nor did it distribute any documents at these meetings.

LPL's representatives attended confidential meetings with representatives of Sharp on
November 7, 2003, at LG.Philips LCD in Anyank, Korea. LPL met with representatives of
Sharp's Licensing department and Patent department. These meetings were attended by the

following people: Ho Lee (LPL), Jong Hwan Kim (LPL), Young Woo Cho (LPL), Won Jun

Choi (LPL), Kubota (Sharp), Himeno (Sharp), Masanori (Sharp), and Hirashi (Sharp).  Jong

Hwan Kim (LPL) has knowledge of these meetings.  LPL and Sharp discussed the SharpLL-

T1620-H and the LC-20B4U-S.  Sharp did not make a presentation to LPL, nor did it distribute

any documents at these meetings.

LPL reserves the right to supplement this Interrogatory response, if appropriate, when

and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 8:**

If LGP has ever claimed or otherwise asserted that any other persons(s), other than
Defendant Viewsonic Corporation in this litigation, infringed any claim of any of the Patents-in-
Suit, either literally or by the doctrine of equivalents, identify the person(s), the accused
product(s) of the other person(s), the patent(s) and claim(s) allegedly infringed, the nature of the
claim and, if the claim resulted in litigation, the nature, the location, the parties to and the date of
all such litigation(s), and identify all documents relating or referring to such claim or assertion.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  LPL's positions concerning any third

parties and third party products in anticipation of litigation, and/or any related attorney work or

communication, for example, are not relevant or discoverable.  LPL also objects to this

Interrogatory as duplicative of previous Interrogatories.  LPL further objects to this Interrogatory

as overly broad and because any confidential pre-suit negotiations and settlement discussions are

not reasonably calculated to lead to discovery of admissible evidence and are not discoverable.

Subject to and without waiving these objections and the general objections, and based upon the

information presently available, LPL states as follows:

As stated in response to Interrogatories No. 1 and 2, for example, LPL alleges that Tatung

and TATUNG USA infringe the Patents-in-Suit.  Also, LPL has identified Fujitsu and Sharp

Corporation (and any affiliated entities, distributors, and resellers that import, offer to sell, or sell their infringing products) as third parties that may infringe the Patents-in-Suit.  LPL has not filed any other lawsuits alleging infringement of the Patents-in-Suit.  LPL reserves the right to assert infringement claims against additional defendants in this or other cases.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### **SUPPLEMENTAL RESPONSES AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL's positions concerning any third parties and third party products in anticipation of litigation, and/or any related attorney work or communication, for example, are not relevant or discoverable.  LPL also objects to this Interrogatory as duplicative of previous Interrogatories.  LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit negotiations and settlement discussions are not reasonably calculated to lead to discovery of admissible evidence and are not discoverable. LPL further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to the parties' claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence.  LPL also objects to this Interrogatory to the extent that the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, and because the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

As stated in response to Interrogatories No. 1 and 2, for example, LPL alleges that Tatung and TATUNG USA infringe the Patents-in-Suit.  Also, LPL has identified Fujitsu and Sharp Corporation (and any affiliated entities, distributors, and resellers that import, offer to sell, or sell their infringing products) as third parties that may infringe the Patents-in-Suit.  LPL has not filed any other lawsuits alleging infringement of the Patents-in-Suit.

LPL's representatives have had confidential meetings with representatives of Fujitsu, and representatives of Sharp Corporation, regarding infringement of the Patents-in-Suit.  In preparations for those meetings, LPL's representatives created and presented materials regarding such infringement.  LPL does not have any written communications or materials from Fujitsu or Sharp, nor did they cite any alleged prior art.

LPL's representatives attended confidential meetings with  representatives of Fujitsu on May 20, 2003, at LG.Philips LCD Japan Office in Tokyo.  LPL met with representatives of Fujitsu's IP licensing department, Patent Department IV, and Technology Alliance Department 1.  These meetings were attended by the following people: Jong Hwan Lee (LPL), Ho Lee (LPL), Young Woo Cho (LPL), Won Jun Choi (LPL), Myeong Jo Seo (LPL), Kakegawa (Fujitsu), Koyasu (Fujitsu), Miyake (Fujitsu), Ozawa (Fujitsu), Nakamura (Fujitsu), Yamaguchi (Fujitsu), sato (Fujitsu), Ohashi (Fujitsu), Sakoda (Fujitsu), and Hoshino (Fujitsu).  Jong Hwan Kim (LPL) has knowledge of these meetings.  LPL and Fujitsu discussed the FujitsuSiemens 5110FA monitor and the Fujitsu Monitor VL1700SS.  Fujitsu did not make a presentation to LPL, nor did it distribute any documents at these meetings.

LPL's representatives attended confidential meetings with representatives of Sharp on November 7, 2003, at LG.Philips LCD in Anyank, Korea. LPL met with representatives of Sharp's Licensing department and Patent department. These meetings were attended by the following people: Ho Lee (LPL), Jong Hwan Kim (LPL), Young Woo Cho (LPL), Won Jun Choi (LPL), Kubota (Sharp), Himeno (Sharp), Masanori (Sharp), and Hirashi (Sharp). Jong Hwan Kim (LPL) has knowledge of these meetings. LPL and Sharp discussed the SharpLL-T1620-H and the LC-20B4U-S. Sharp did not make a presentation to LPL, nor did it distribute any documents at these meetings.

LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 9:

If any person has ever stated or argued that any Patent-in-Suit or any claim of any Patent-in-Suit is invalid or unenforceable, identify such patent and claim, the person who has so stated or argued, the date, time, place and manner such statement or argument was made, including the complete identity of the litigation if the argument was made in that context, the basis for such statement or argument, and all document relating to, referring to or containing such statement or argument.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. LPL also objects to this Interrogatory to the extent that it seeks information already known to Defendants, such as statements or arguments of their affiliated entities in litigation in the U.K. LPL further objects to this Interrogatory because any confidential pre-suit negotiations and settlement discussions are not reasonably calculated to lead to discovery of admissible evidence and are not discoverable. Subject to and without waiving

these objections and the general objections, and based upon the information presently available,

LPL states as follows:

No such communications are currently known.  LPL reserves the right to supplement this

Interrogatory answer, if appropriate, when and if additional information becomes available, or

otherwise.

### INTERROGATORY NO. 10:

Identify all persons with knowledge of relevant facts pertaining to TATUNG's and
TATUNG USA's alleged infringement in this case, including without limitation, all individuals
who assisted in the preparation of LGP's responses to TATUNG's and TATUNG USA's
Interrogatories and Requests for Product [sic] and generally summarize the relevant knowledge
each such individual possesses.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory

because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate

subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories.

LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence.  Also, LPL objects to this

Interrogatory as seeking information that is premature and unavailable, including because LPL

has not yet identified all of its fact and/or expert witnesses.  Subject to and without waiving these

objections and the general objections, and based upon the information presently available, LPL

states as follows:

LPL does not know the identity of every person with knowledge relevant to the claims

and issues in this case, nor does LPL know the specific knowledge of each such person.  LPL

believes, however, that at least the following are likely to have information that is relevant to

LPL's claims concerning the Patents-in-Suit: (1) current and former employees, officers, and/or

directors of Tatung and TATUNG USA (including, for example, Jackson Chang, Calvin Ho, Oliver Shih, and Andrew Sun); (2) current and former affiliates, distributors, suppliers, and/or customers of Tatung and TATUNG USA (including, for example, retailers that sell or have sold accused products); (3) current and former employees, officers, and/or directors of ViewSonic Corp. (including, for example, Jeff Volpe and Kimberly Stetson); (4) Mr. Jong Hwan Kim of LPL; (5) Mr. Young Woo Cho of LPL; and (6) Mr. William Bohannon, expert witness.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Also, LPL objects to this Interrogatory as seeking information that is premature and unavailable, including because LPL has not yet identified all of its fact and/or expert witnesses.  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL does not know the identity of every person with knowledge relevant to the claims and issues in this case, nor does LPL know the specific knowledge of each such person.  LPL believes, however, that at least the following are likely to have information that is relevant to LPL's claims concerning the Patents-in-Suit: (1) current and former employees, officers, and/or

directors of Tatung and TATUNG USA; (2) current and former affiliates, distributors, suppliers,

and/or customers of Tatung and TATUNG USA (including, for example, customers and retailers

that sell or have sold accused products); (3) current and former employees, officers, and/or

directors of ViewSonic Corp.; (4) Mr. Jong Hwan Kim of LPL; (5) Mr. Young Woo Cho of LPL;

(6) Mr. Joo Sup Kim of LPL; and (7) Mr. William Bohannon, expert witness.  LPL reserves the

right to supplement this Interrogatory answer, if appropriate, when and if additional information

becomes available, or otherwise.

### INTERROGATORY NO. 11:

State separately for each patent allegedly infringed, the dollar amounts of monetary
damages LGP seeks to recover each from TATUNG and from TATUNG USA, and the legal and
factual bases for such claims, including without limitation, whether LGP seeks to recover lost
profits and/or reasonable royalties, and the method used to calculate such amounts, and identify
all documents that LGP contends support its damages claims.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  Also, LPL objects to this Interrogatory as

seeking information on damages that is premature and unavailable, including because LPL is

awaiting discovery from defendants and expert disclosures are not due.  LPL further objects to

this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories

on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple

interrogatories.  Further, LPL objects to the extent that Tatung seeks identification of documents

produced by LPL, which Tatung can just as easily identify by its own review.  LPL also objects

to this Interrogatory as calling for a legal conclusion.  Subject to and without waiving these

objections and the general objections, LPL states as follows:

Pursuant to 35 U.S.C. § 284, LPL seeks all damages and relief to which it is entitled,

including, but not limited to, compensatory damages, enhanced damages, and a reasonable

royalty sufficient to compensate LPL for Tatung's infringement, together with interest and costs, and attorneys' fees.  LPL is aware of sales of infringing products imported, made, sold, and/or offered for sale by or for Tatung, TATUNG USA, and/or by others whose infringing conduct was induced and/or contributed to by Tatung and/or TATUNG USA, for all of which Tatung and/or TATUNG USA are liable.  LPL does not yet know all infringing products or the full scope of infringing conduct.  Further, LPL cannot currently state the total amount of damages and other sums for which Tatung and TATUNG USA are liable.  LPL will provide more detailed information regarding infringing products and damages at the appropriate time and based on further discovery, possibly including, for example, in expert reports.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  Also, LPL objects to this Interrogatory as seeking information on damages that is premature and unavailable, including because LPL is awaiting discovery from defendants and expert disclosures are not due.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories.  Further, LPL objects to the extent that Tatung seeks identification of documents produced by LPL, which Tatung can just as easily identify by its own review.  LPL also objects to this Interrogatory as calling for a legal conclusion.  Subject to and without waiving these objections and the general objections, LPL states as follows:

Pursuant to 35 U.S.C. § 284, LPL seeks all damages and relief to which it is entitled, including, but not limited to, compensatory damages, enhanced damages, and a reasonable royalty sufficient to compensate LPL for Tatung's infringement, together with interest and costs, and attorneys' fees.  LPL is aware of sales of infringing products imported, made, sold, and/or offered for sale by or for Tatung, TATUNG USA, and/or by others whose infringing conduct was induced and/or contributed to by Tatung and/or TATUNG USA, for all of which Tatung and/or TATUNG USA are liable.  LPL cannot currently state the total amount of damages and other sums for which Tatung and TATUNG USA are liable.  LPL will provide more detailed information regarding infringing products and damages at the appropriate time and based on further discovery, possibly including, for example, in expert reports.

In addition to and/or in support of any expert opinion, the basis for LPL's reasonable royalty claim includes, for example, documents including sales records produced by the Tatung Defendants; LPL's intent and testimony regarding a hypothetical negotiation; license agreements as produced in discovery; company reports, prospectuses, and financial information produced in discovery; Tatung's lack of knowledge concerning any hypothetical negotiation; and recent jury verdicts in case no. 05-292 in the District of Delaware and case no. 02-6775 in the Central District of California.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 12:

With respect to any secondary considerations that are relevant to the issue of obviousness under 35 U.S.C. section 103, for each alleged invention described in each claim of the Patents-in-Suit that LGP alleges TATUNG and TATUNG USA infringes and identify all such secondary considerations, state and describe all of the facts and circumstances that establish or support each such secondary consideration, and identify all persons having knowledge of the facts and circumstances in regard to each such secondary consideration, and identify all documents concerning such secondary considerations.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory as calling for legal conclusions.  LPL also objects to this Interrogatory as premature and seeking information in Tatung's possession and that is the subject of LPL's discovery requests.  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL continues to investigate any secondary considerations.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### SUPPLEMENTAL RESPONSES AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the word product doctrine.  LPL further objects to this Interrogatory as calling for legal conclusions.  LPL also objects to this Interrogatory as premature and seeking information in Tatung's possession and that is the subject of LPL's discovery requests.  LPL further objects to this Interrogatory on the grounds that it seeks information that is neither relevant to the parties' claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence.  LPL also objects to this Interrogatory to the extent that the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, and because the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows: evidence of commercial success includes the fact that the technology protected by the Patents-in-Suit is, to LPL's knowledge, widely employed in the industry, and that users of the technology include competitors of both Tatung and ViewSonic. Moreover, LPL will later supplement its responses after Defendants produce the information sought by LPL's written discovery requests and after LPL conducts its oral examination of Defendants' witnesses.

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 13:**

Identify all foreign patent applications and patents based in whole or in part on the applications for or disclosure of the Patents-in-Suit, and identify all documents related thereto.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence (for example, in calling for the identification of "all documents related thereto."). Subject to and without waiving those objections, LPL states as follows:

| Patent / Application Number | Filing Date | Issued / Published | Country |
|---|---|---|---|
| 6,501,641 | April 2, 1999 | December 31, 2002 | US |
| 6,498,718 | November 22, 1999 | December 24, 2002 | US |
| 10/294,548 | November 15, 2002 | April 10, 2003 (publication, abandoned) | US |
| 10/787,933 | February 27, 2004 | August 26, 2004 (publication) | US |
| 11/096,080 | April 1, 2005 | September 8, 2005 | US |

|  |  | (publication) |  |
|---|---|---|---|
| 11/096,079 | April 1, 2005 | August 4, 2005 (publication) | US |
| 10/294/753 | November 15, 2002 | April 10, 2003 (publication, abandoned) | US |
| 10/799,662 | March 15, 2004 | N/A | US |
| 11-298916 | October 20, 1999 | May 12, 2000 | Japan |
| 3749516 | December 20, 2002 | December 9, 2005 | Japan |
| 0303067 | October 23, 1998 | July 9, 2001 | Korea |
| 0424936 | October 27, 1998 | March 17, 2004 | Korea |
| 2346464 | October 22, 1999 | January 3, 2001 | Great Britain |

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 14:

Identify all facts establishing the chain of title or ownership of each invention claimed in each of the Patents-in-Suit (*i.e.* date of transfer, consideration paid, parties participating in the transfer, and identification of terms of all agreements transferring title or ownership) from the conception date to the present.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because LPL's ownership and standing is not in contention, and, moreover, foreign patent ownership and interest are not relevant. Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

On or about February 22, 1999, the inventors, Jong Hwan Kim and Young Woo Cho, assigned their rights and interests in the invention covered by the '641 patent, and any related reissue, divisional, and continuing U.S. and non-U.S. applications and/or patents, to LG LCD

Inc., now known as LG.Philips LCD Co., Ltd.  This assignment was recorded with the U.S. Patent and Trademark Office on or about April 2, 1999.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because LPL's ownership and standing is not in contention, and, moreover, foreign patent ownership and interest are not relevant.  Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

The inventors of the Patents-in-Suit, Jong Hwan Kim and Young Woo Cho, conceived of the inventions claimed therein at the beginning of October 1998.  (LPL 01557-1562; LPL 01574-79.)  Messrs. Kim and Cho assigned the right to file domestic Korean patent applications on their inventions to LG Electronics Inc.  (See LPL 01575-76.)  On February 22, 1999, Messrs. Kim and Cho assigned their non-domestic worldwide rights and interests in the inventions claimed in the Patents-in-Suit (and any patent applications thereon and related reissue, divisional, or continuing applications) to LG LCD.  (LPL 05391-94; LPL 14602-04.)  This assignment was recorded with the U.S. Patent and Trademark Office on April 2, 1999.  (LPL 14602-04.)  On that same day, Messrs. Kim and Cho filed U.S. Application No. 09/285,338 with the U.S. Patent and Trademark Office.  (LPL 14632-655; LPL 14656-15510.)  On or about August 27, 1999, LG LCD changed its name to LG.Philips LCD Co., Ltd.  (LPL 12390-401.)  On November 22, 1999, Messrs. Kim

and Cho filed U.S. Application No. 09/444,376 with the U.S. Patent and Trademark Office.

(LPL 15511-994.)  U.S. Application No. 09/444,376 was a continuation of U.S. Application No.

09/285,338.  (LPL 14609-631; LPL 15511-994.)

On April 26, 2002, Messrs. Kim and Cho confirmed and reiterated the assignment to

LG.Philips LCD Co., Ltd. of their rights and interests in the inventions covered by U.S.

Application No. 09/444,376.  (LPL 14605-608.)  On December 24, 2002, the U.S. Patent and

Trademark Office granted and issued U.S. Application No. 09/444,376 as U.S. Patent No.

6,498,718.  (LPL 14609-631.)  On December 31, 2002, the U.S. Patent and Trademark Office

granted and issued U.S. Application No. 09/285,338 as U.S. Patent No. 6,501,641.  (LPL 14632-

55.)  Both U.S. Patent No. 6,501,641 and U.S. Patent No. 6,498,718 were issued to LG.Philips

LCD Co., Ltd. as assignee.  (LPL 14609-631; LPL 14632-55.)  LPL reserves the right to

supplement this Interrogatory answer, if appropriate, when and if additional information

becomes available, or otherwise.

### INTERROGATORY NO. 15:

Identify each and every product by model number and/or other LGP designation made, sold, offered for sale, or imported into the United States by or on behalf of LGP which is covered by, incorporates or embodies any claim of the Patents-in-Suit, identify each such claim, state with specificity how each product is covered by such claim and where each claim limitation is found within each such product, state the time period during which such product was manufactured, sold, offered for sale or imported into the United States and identify all documents relating or referring to how each such product, component or part is covered by such claim.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory

because it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to

the discovery of admissible evidence.  LPL further objects to this Interrogatory because Tatung

mischaracterizes as one interrogatory multiple interrogatories on separate subjects.  Subject to

and without waiving those objections, and based on LPL's current knowledge, LPL states as

follows:

LPL is not aware of any such products. LPL reserves the right to supplement this

Interrogatory answer, if appropriate, when and if additional information becomes available, or

otherwise.

### INTERROGATORY NO. 16:

Identify in spreadsheet format on a monthly or quarterly basis from May 27, 1998 to the
present, all sales of each product identified in response to Interrogatory No. 15 the number of
units sold, price per unit, net sales revenue, gross profit per unit, net profit per unit, date of first
sale, and party to whom sold.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory to

the extent that it purports to dictate an answer in "spreadsheet format." LPL further objects to

this Interrogatory because it is vague, overly broad, unduly burdensome and not reasonably

calculated to lead to the discovery of admissible evidence. LPL further objects to this

Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on

separate subjects. Subject to and without waiving those objections, and based on LPL's current

knowledge, LPL states as follows:

As stated in response to Interrogatory No. 15, LPL is not aware of any such products.

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if

additional information becomes available, or otherwise.

### INTERROGATORY NO. 17:

Identify in spreadsheet format on a monthly or quarterly basis from May 27, 1998 to the
present, all costs incurred by LGP (including without limitation all marginal costs, fixed costs,
sunk costs, development costs, and marketing costs) in connection with the manufacture and sale
of the products identified in response to Interrogatory 13.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory to the extent that it purports to dictate an answer in "spreadsheet format."  LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "marginal costs," "sunk costs," and "development costs."  LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  LPL also objects to this Interrogatory as unintelligible because Interrogatory No. 13 does not request identification of products; presumably, the reference should be to Interrogatory No. 15.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects.  Subject to and without waiving these objections, and based on LPL's current knowledge, LPL states as follows:

As stated in response to Interrogatory No. 15, LPL is not aware of any such products. LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 18:

Identify and describe in detail LGP's efforts to license any of the Patents-in-Suit to any person (including without limitation Tatung), including without limitation any communications regarding proposed royalty rates, inquiries about or offers to license, and all license agreements, cross-license agreements, joint venture agreements, purchase agreements or other agreements relating to licensing.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate

subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  LPL also

objects to this Interrogatory to the extent that it seeks information already known to defendants.

LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit

negotiations and settlement discussions are not reasonably calculated to lead to discovery of

admissible evidence and are not discoverable.  Subject to and without waiving these objections

and the general objections, and based on LPL's current knowledge, LPL states as follows:

LPL's representatives have had confidential meetings with representatives of Fujitsu, and

representatives of Sharp Corporation, regarding infringement of the Patents-in-Suit.  During their

meetings, LPL's representatives made an electronic presentation.  LPL does not have any written

communications or materials from Fujitsu or Sharp, nor did they enter into any license

agreements regarding the Patents-in-Suit.  LPL reserves the right to supplement this

Interrogatory answer, if appropriate, when and if additional information becomes available, or

otherwise.

## SUPPLEMENTAL RESPONSES AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  LPL further objects to this Interrogatory

because Tatung mischaracterize as one interrogatory multiple interrogatories on separate

subjects; in responding, LPL counts this Interrogatory as multiple interrogatories.  LPL also

objects to this Interrogatory to the extent that it seeks information already known to defendants.

LPL further objects to this Interrogatory as overly broad and because any confidential pre-suit

negotiations and settlement discussions are not reasonably calculated to lead to discovery of

admissible evidence and are not discoverable.  LPL further objects to this Interrogatory on the

grounds that it seeks information that is neither relevant to the parties' claims or defenses nor

reasonably calculated to lead to the discovery of admissible evidence. LPL also objects to this Interrogatory to the extent that the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, and because the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Subject to and without waiving these objections and the general objections, and based on LPL's current knowledge, LPL states as follows:

LPL's representatives have had confidential meetings with representatives of Fujitsu, and representatives of Sharp Corporation, regarding infringement of the Patents-in-Suit. In preparations for those meetings, LPL's representatives created and presented materials regarding such infringement. LPL does not have any written communications or materials from Fujitsu or Sharp, nor did they cite any alleged prior art.

LPL's representatives attended confidential meetings with representatives of Fujitsu on May 20, 2003, at LG.Philips LCD Japan Office in Tokyo. LPL met with representatives of Fujitsu's IP licensing department, Patent Department IV, and Technology Alliance Department 1. These meetings were attended by the following people: Jong Hwan Lee (LPL), Ho Lee (LPL), Young Woo Cho (LPL), Won Jun Choi (LPL), Myeong Jo Seo (LPL), Kakegawa (Fujitsu), Koyasu (Fujitsu), Miyake (Fujitsu), Ozawa (Fujitsu), Nakamura (Fujitsu), Yamaguchi (Fujitsu), sato (Fujitsu), Ohashi (Fujitsu), Sakoda (Fujitsu), and Hoshino (Fujitsu). Jong Hwan Kim (LPL) has knowledge of these meetings. LPL and Fujitsu discussed the FujitsuSiemens 5110FA monitor and the Fujitsu Monitor VL1700SS. During these meetings, LPL and Fujitsu

discussed royalty rates.  Fujitsu did not make a presentation to LPL, nor did it distribute any documents at these meetings.

LPL's representatives attended confidential meetings with  representatives of Sharp on November 7, 2003, at LG.Philips LCD in Anyank, Korea.  LPL met with representatives of Sharp's Licensing department and Patent department.  These meetings were attended by the following people: Ho Lee (LPL), Jong Hwan Kim (LPL), Young Woo Cho (LPL), Won Jun Choi (LPL), Kubota (Sharp), Himeno (Sharp), Masanori (Sharp), and Hirashi (Sharp).  Jong Hwan Kim (LPL) has knowledge of these meetings.  LPL and Sharp discussed the SharpLL-T1620-H and the LC-20B4U-S.  During these meetings, LPL and Sharp discussed licensing. Sharp did not make a presentation to LPL, nor did it distribute any documents at these meetings.

LPL reserves the right to supplement this Interrogatory response, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 19:

For each allegedly infringing TATUNG and TATUNG USA product identified in response to Interrogatory No. 1, identify the circumstances under which LGP first considered that each such product might infringe any claim of one or more of the Patent-in-Suit, including the dates LGP first learned of the product, any efforts to verify whether or not the product infringes, the names of the LGP employees who learned of or investigated the alleged infringement, and the date, place, and reasons that any of these events occurred.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "first considered" and "first learned" because, for example, it cannot be determined when each and every employee of LPL first became aware of and/or purchased for any purpose an infringing product; the terms "TATUNG product" and "TATUNG USA product" are also unclear.  LPL further objects to this

Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Subject to and without waiving these objections and the general objections, LPL states as follows:

As stated in response to Interrogatory No 1, LPL cannot currently identify all Tatung and other brand products that infringe, and LPL is seeking discovery from Tatung relevant to this issue. LPL first considered that the Tatung L17AMTN monitor infringed in December 2003, based on analysis by counsel, which is protected by attorney-client privilege and the work product doctrine. LPL retained an expert, Mr. William Bohannon, to analyze the Tatung L17AMTN monitor for infringement. Mr. Bohannon first analyzed a Tatung L17AMTN monitor in January 2004. Mr. Bohannon continued to analyze the Tatung L17AMTN monitor and he completed a declaration in May 2004. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### SUPPLEMENTAL OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "first considered" and "first learned" because, for example, it cannot be determined when each and every employee of LPL first became aware of and/or purchased for any purpose one of the ViewSonic products identified above. Subject to and without waiving these objections and the general objections, LPL states as follows:

As stated in response to Interrogatory No 1, LPL cannot currently identify all Tatung and other brand products that infringe, and LPL is seeking discovery from Tatung relevant to this issue. LPL first considered that the Tatung L17AMTN monitor infringed in December 2003, based on analysis by counsel, which is protected by attorney-client privilege and the work product doctrine. LPL retained an expert, Mr. William Bohannon, to analyze the Tatung L17AMTN monitor for infringement. Mr. Bohannon first analyzed a Tatung L17AMTN monitor in January 2004. Mr. Bohannon continued to analyze the Tatung L17AMTN monitor and he completed a declaration in May 2004.

LPL, through its counsel, attempted to purchase and purchased the L17UCCT and Tatung TLM-1705 products to analyze for infringement between July and October, 2006. LPL, through its counsel, determined that the L17UCCT and Tatung TLM-1705 products infringed on or about November 10, 2006.

LPL, through its counsel, first inspected the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 products when they were made available for inspection by Tatung at Tatung's facility in California, on January 15-16, 2007. LPL, through its counsel, determined that the products infringed on or about February 5, 2007.

LPL, through its counsel, first inspected the HP RG556AA, the Ilo L15FCBT, and the Hitachi 37HDL52 products when they were made available for inspection by Tatung at Tatung's

facility in Delaware, on February 7-9, 2007.  LPL, through its counsel, determined that the products infringed on or about February 28, 2007.

Since filing this lawsuit, LPL has sought and continues to seek discovery for all of Tatung's products, including samples of the products themselves.  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### SUPPLEMENTAL OBJECTIONS AND ANSWER:

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "first considered" and "first learned" because, for example, it cannot be determined when each and every employee of LPL first became aware of and/or purchased for any purpose one of the ViewSonic products identified above.  Also, LPL objects to this Interrogatory at least because it is premature in that it seeks information pertaining to or requiring claim construction, and because it seeks information pertaining to infringing products that are presently unavailable because LPL is still awaiting discovery from Tatung on such products.  LPL also objects because Tatung produced additional information after its March 30, 2007 deadline for such production and LPL has not had enough time to incorporate that recently produced information into this response, but reserves the right to do so.  LPL also objects to responding to this Interrogatory as premature because LPL has yet to conducts its third party discovery and thus this Interrogatory should properly include all infringing products discovered during third party discovery, and thus LPL reserves the right to

do so.  Subject to and without waiving these objections and the general objections, LPL states as follows:

As stated in response to Interrogatory No 1, LPL cannot currently identify all Tatung and other brand products that infringe, and LPL is seeking discovery from Tatung relevant to this issue.  LPL first considered that the Tatung L17AMTN monitor infringed in December 2003, based on analysis by counsel, which is protected by attorney-client privilege and the work product doctrine.  LPL retained an expert, Mr. William Bohannon, to analyze the Tatung L17AMTN monitor for infringement.  Mr. Bohannon first analyzed a Tatung L17AMTN monitor in January 2004.  Mr. Bohannon continued to analyze the Tatung L17AMTN monitor and he completed a declaration in May 2004.

LPL, through its counsel, attempted to purchase and purchased the L17UCCT and Tatung TLM-1705 products to analyze for infringement between July and October, 2006.  LPL, through its counsel, determined that the L17UCCT and Tatung TLM-1705 products infringed in November of  2006.

LPL, through its counsel, first inspected the ADMNC1LCD17; Tatung ADMNC1LCD17; the Unidentified American Dynamic Product; the P42HSMT; the Tatung P46T; the Triview FST1503RV-4B; the Tatung TLM-1703T; the Triview TLM-1703; the Triview TLM-1705; the Triview TLM-1903; the Tatung V23CLTT; the Tatung V23DLWX-U12; the Tatung V27CMTT-U01; the Tatung V30CMTT-U01; and the Triview V30CMTT-U62 products when they were made available for inspection by Tatung at Tatung's facility in California, on January 15-16, 2007.  LPL, through its counsel, determined that the products infringed in February of 2007.

LPL, through its counsel, first inspected the HP RG556AA, the Ilo L15FCBT, and the Hitachi 37HDL52 products when they were made available for inspection by Tatung at the office of Tatung's attorneys in Delaware, on February 7-9, 2007. LPL, through its counsel, determined that the products infringed in February of 2007.

LPL, through its counsel, attempted to purchase and purchased the HP Compaq FP7317 and the HP L2045w products to analyze for infringement in March 2007. LPL, through its counsel, determined that the HP Compaq FP7317 and the HP L2045w products infringed in March and/or April of 2007.

LPL, through its counsel, first considered the L15FCBT-U02 Product Group; L17ACLN-U13 Product Group; L17AMTN-U23 Product Group; L17FCBT-U02 Product Group; L17FCMT Product Group; L17ECBQ-U08 Product Group; L17UCCT-U02 Product Group; L19FCBT Product Group; L19FCMT-U05 Product Group; L20WCAQ-U19 Product Group; L22YMTT-U09 Product Group; V17AFTW Product Group; and V23CLTT Product Group through review of Tatung's March, 2007 document productions. LPL, through its counsel, determined that the products infringed in March and/or April of 2007.

Since filing this lawsuit, LPL has sought and continues to seek discovery for all of Tatung's products, including samples of the products themselves from Tatung and from third parties. LPL will provide more detailed information regarding the accused products at the appropriate time and based on further discovery, possibly including, for example, deposition testimony of Tatung witnesses yet to be conducted, in or after submission of expert reports, in its *Markman* briefing, and/or after the Special Master issues his claim construction report and recommendation, and/or after the Court issues its claim construction order. LPL reserves the

right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 20:**

Identify all materials that were analyzed and/or investigated by you or on your behalf or communicated to you prior to filing this lawsuit which show the mounting of an LCD in a Tatung product including but not limited to each and every TATUNG and TATUNG USA product, assembly drawings, disassembly drawings, photographs, digital media or video media, and identify who conducted each such analysis and/or investigation and when.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. For example, the scope of LPL's counsel's work in preparing for this case, including any analysis and/or investigation, is not discoverable. LPL also objects to this Interrogatory as vague and ambiguous, including with respect to the terms "TATUNG product" and "TATUNG USA product." LPL further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because it does not have any limit as to initial time frame, purpose, or context concerning any analysis and/or investigation of materials. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL, through its counsel, had purchased the Tatung L17AMTN monitor before the filing of LPL's complaint in this case. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. For example, the scope of LPL's

counsel's work in preparing for this case, including any analysis and/or investigation, is not

discoverable.  LPL also objects to this Interrogatory as vague and ambiguous, including with

respect to the terms "TATUNG product" and "TATUNG USA product."  LPL further objects to

this Interrogatory because it is overly broad and not reasonably calculated to lead to the

discovery of admissible evidence, including, for example, because it does not have any limit as

to initial time frame, purpose, or context concerning any analysis and/or investigation of

materials.  Subject to and without waiving these objections and the general objections, LPL

states as follows:

Prior to May 27, 2004, LPL had in its possession the following monitors, all of which

LPL believes to have been manufactured and/or distributed by TATUNG and/or TATUNG USA:

- L17AMTN-U01

- V17AFTW

- LT17A

## INTERROGATORY NO. 21:

Identify all materials you have currently have [sic] in your possession custody or control
which show the mounting of an LCD in a TATUNG and TATUNG USA product including but
not limited to each and every TATUNG and TATUNG USA product, assembly drawings,
disassembly drawings, photographs, digital media or video media that you currently have in your
possession, custody, or control.

## OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine.  For example, the scope of LPL's

counsel's work in preparing for this case, including any materials in its possession, is not

discoverable.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one

interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL

counts this Interrogatory as multiple interrogatories.  LPL also objects to this Interrogatory as

vague and ambiguous, including with respect to the terms "TATUNG product" and "TATUNG USA product." LPL further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because it does not have any limit as to initial time frame, purpose, or context concerning any possession, custody, or control of materials. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL, through its counsel, has possession of the Tatung L17AMTN monitor. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. For example, the scope of LPL's counsel's work in preparing for this case, including any materials in its possession, is not discoverable. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL also objects to this Interrogatory as vague and ambiguous, including with respect to the terms "TATUNG product" and "TATUNG USA product." LPL further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because it does not have any limit as to initial time frame, purpose, or context concerning any possession, custody, or control of materials. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL currently has in its possession the following monitors, all of which LPL believes to have been manufactured and/or distributed by TATUNG and/or TATUNG USA:

- L17AMTN-U01
- V17AFTW
- LT17A
- V20KQDX-U02
- L17UCCT-U02
- L17AMTN

- Telart NT19S (Tatung 17121)
- TLM 1705
- TLM 1905
- TLM 1503

At the Defendants' request, LPL's counsel in the instant action, McKenna Long & Aldridge LLP, contacted LPL's counsel, Morgan Lewis LLP ("Morgan Lewis"), in a separate action pertaining to separate patents that is now pending in California. LPL's counsel contacted Morgan Lewis in order to determine whether Morgan Lewis has any products in its possession that are responsive to this Interrogatory. Morgan Lewis informed LPL that they have the following monitors, which appear to have been manufactured and/or distributed by TATUNG and/or TATUNG USA:

- TLM 1503
- TLM 1703
- TLM 1705
- TLM 1905
- L5CTSDP-U01
- L5CDS
- L5CDSDP-U21
- L17AMTN-U01

**SUPPLEMENTAL OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.  For example, the scope of LPL's counsel's work in preparing for this case, including any materials in its possession, is not discoverable.  LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories.  Also, LPL objects to this Interrogatory because it seeks information pertaining to infringing products that are presently unavailable because LPL is still awaiting discovery from Tatung on such products.  LPL also objects because Tatung produced additional information after its March 30, 2007 deadline for such production and LPL has not had enough time to incorporate that recently produced information into this response, but reserves the right to do so.  LPL also objects to responding to this Interrogatory as premature because LPL has yet to conducts its third party discovery and thus this Interrogatory should properly include all infringing products discovered during third party discovery, and thus LPL reserves the right to do so.  LPL also objects to this Interrogatory as vague and ambiguous, including with respect to the terms "TATUNG product" and "TATUNG USA product."  LPL further objects to this Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence, including, for example, because it does not have any limit as to initial time frame, purpose, or context concerning any possession, custody, or control of materials.  Subject to and without waiving these objections and the general objections, LPL states as follows:

In addition to the materials produced by the Defendants in this case, LPL currently has in its possession the following monitors, all of which LPL believes to have been manufactured and/or distributed by TATUNG and/or TATUNG USA:

- L17AMTN-U01
- V17AFTW
- LT17A
- V20KQDX-U02
- L17UCCT-U02
- L17AMTN
- Telart NT19S (Tatung 17121)
- TLM 1705
- TLM 1905

- TLM 1503
- HP L2045w
- HP w22
- HP FP7317
- JVC LM15GUA
- Gateway FPD1760
- eMachine E17T4W
- Gateway FPD1775W
- Hitachi 26HDL52

At the Defendants' request, LPL's counsel in the instant action, McKenna Long & Aldridge LLP, contacted LPL's counsel, Morgan Lewis LLP ("Morgan Lewis"), in a separate action pertaining to separate patents that is now pending in California. LPL's counsel contacted Morgan Lewis in order to determine whether Morgan Lewis has any products in its possession that are responsive to this Interrogatory. Morgan Lewis informed LPL that they have the following monitors, which appear to have been manufactured and/or distributed by TATUNG and/or TATUNG USA:

- TLM 1503
- TLM 1703
- TLM 1705
- TLM 1905

- L5CTSDP-U01

- L5CDS

- L5CDSDP-U21

- L17AMTN-U01

LPL will provide more detailed information at the appropriate time and based on further discovery, possibly including, for example, deposition testimony of Tatung witnesses yet to be conducted, in or after submission of expert reports, in its *Markman* briefing, and/or after the Special Master issues his claim construction report and recommendation, and/or after the Court issues its claim construction order. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**INTERROGATORY NO. 22:**

State all material facts that support your contention that TATUNG's and TATUNG USA's alleged infringement of each of the Patents-in-Suit is now and has been willful.

**OBJECTIONS AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as premature and seeking information in defendants' possession and that is the subject of LPL's discovery requests. LPL further objects to this Interrogatory because Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects and defendants; in responding, LPL counts this Interrogatory as multiple interrogatories. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Tatung and TATUNG USA. are infringing and/or have infringed the Patents-in-Suit, by, for example, making, importing, offering for sale, and/or selling products known to infringe the Patents-in-Suit, and continuing to do so, including after LPL filed this lawsuit. The conduct of Tatung and TATUNG USA, in disregard of LPL's allegations and patent rights, is willful, and the totality of this conduct by Tatung and TATUNG USA, which is the subject of ongoing investigation and discovery, warrants enhanced damages, attorneys' fees, and other appropriate relief. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

**SUPPLEMENTAL RESPONSES AND ANSWER**

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as premature and seeking information in Defendants' possession and that is the subject of LPL's

discovery requests.  LPL further objects to this Interrogatory because Tatung mischaracterizes as

one interrogatory multiple interrogatories on separate subjects and defendants; in responding,

LPL counts this Interrogatory as multiple interrogatories.  Subject to and without waiving these

objections and the general objections, and based upon the information presently available, LPL

states as follows:

It is LPL's understanding that Tatung and Tatung America continue to infringe, actively

induce and/or contribute to the infringement of the Patents-in-Suit by making, using, causing to

be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing

and/or causing to be imported products or products made by certain methods that infringe one or

more claims of the Patents-in-Suit.

The conduct of Tatung and Tatung America, in disregard of LPL's allegations and patent

rights, is willful, and the totality of this conduct by Tatung and Tatung America, which is the

subject of ongoing investigation and discovery, warrants enhanced damages, attorneys' fees, and

other appropriate relief.

Even after receiving LPL's complaint, and knowing of the Patents-in-Suit, the Tatung

Defendants have continued to make, sell, offer to sell, and/or import in and for the U.S.

infringing products identified in response to Interrogatory No. 1.  Since at least June 1, 2004,

Tatung has made, offered for sale, and sold, for example, the L17AMTN; the P42HSMT; the

L17UCCT;  the V23CLTT; the V27CMTT-U01; and the V30CMTT-U01 LCD and plasma

products.   The Tatung Defendants also have, therefore, continued to infringe the Patents-in-Suit

despite notice of LPL's patents.

The Tatung Defendants also have failed to exercise due care to avoid infringing the

Patents-in Suit.  For example, the Tatung Defendants have not offered any evidence of reliance

on any legal opinion, or advice of counsel. Deposition testimony of the Tatung Defendants'
witnesses shows that Tatung and Tatung America failed to take appropriate steps to avoid
infringing the Patents-in-Suit. For example, the Tatung Defendants did not take steps to revise
or modify product assembly or design after learning of the Patents-in-Suit. The Tatung
Defendants have not taken reasonable or necessary steps to avoid infringing the Patents-in-Suit.

The Tatung Defendants' size and financial condition is also relevant, as Tatung is a large,
sophisticated company. Tatung claims to have a global network of subsidiaries, including in the
United States, with thousands of employees and annual revenues of $7 billion dollars.

Further, Tatung has delayed and avoided providing information in discovery so as to
conceal evidence. The Tatung Defendants have withheld discovery and have forced many
motions and hearings to compel discovery. The Tatung Defendants produced voluminous
discovery, too late for LPL to use that discovery in depositions of the Tatung Defendants'
witnesses. Tatung has also engaged in deposition misconduct including producing evasive
witnesses and unprepared Rule 30(b)(6) witnesses, and stating improper objections and
instructions not to answer. Additionally, Tatung has interfered with third party subpoenas and
discovery efforts, including persuading third parties not to produce documents they had intended
to produce. The U.S. District Courts for the Eastern District of California and Northern District
of California have criticized Tatung for its improper discovery conduct in this case. Further, the
Special Master has sanctioned Tatung for discovery misconduct in this case and the Court upheld
the Special Master's conclusion, ordering Tatung to pay attorneys' fees and costs to LPL as a
result of Tatung's misconduct.

These facts reflect Tatung's conscious disregard for LPL's patent rights. LPL is still
awaiting discovery and is investigating the issue of how and when Tatung first learned of the

Patents-in-Suit. LPL also is seeking other discovery, including from Tatung, relevant to the

issue of willful infringement and Tatung's duty of care. The totality of Tatung's conduct and

lack of affirmative due care, as well as other relevant factors, which remain the subject of

ongoing investigation and discovery, warrants enhanced damages, attorneys' fees, and other

appropriate relief. LPL reserves the right to supplement this Interrogatory answer, if appropriate,

when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 23:

If any of your responses to any of TATUNG's and TATUNG USA's Requests for
Admissions to you is anything other than an unqualified admission, state in detail all material
facts on which you based any part of your response that was not an unqualified admission,
identify all documents memorializing each such fact, and identify all persons with knowledge of
each such fact.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory because no such Requests for Admission have been

served on LPL. Accordingly, this Interrogatory is premature, unintelligible, and improper.

### INTERROGATORY NO. 24:

Describe in detail the circumstances surrounding the formation of LGP, including without
limitation, the reasons for its formation; the identity of all entities with any ownership and/or
management interest in LGP; where LGP fits within the organizational structure of LG Corp.;
LGP's internal organizational structure; all employees, officers and directors of LGP; and
identify all LGP's employees, officers and directors both current and former that have in the past
or now work for any other LG entity, including without limitation LG Electronics Inc., and the
identity of such LG entity and their job title at that LG entity.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory

because it is overly broad, unduly burdensome and not reasonably calculated to lead to the

discovery of admissible evidence, in that this Interrogatory seeks detailed information regarding

LPL (including as to corporate history, organization, relationships, employees, etc.) and third

parties that is harassing and not relevant. LPL further objects to this Interrogatory because

Tatung mischaracterizes as one interrogatory multiple interrogatories on separate subjects; in

responding, LPL counts this Interrogatory as multiple interrogatories. Also, LPL objects to this

Interrogatory to the extent that it seeks information that is publicly available. Subject to and

without waiving these objections and the general objections, and based on LPL's current

knowledge, LPL states as follows:

As stated in LPL's July 21, 2005 prospectus: "At the end of 1998, LG Electronics and

LG Semicon transferred their respective TFT-LCD-related businesses to LG Soft, Ltd., a

subsidiary of LG Electronics, which, as part of the business transfer, changed its name to LG

LCD Co., Ltd. In July 1999, LG Electronics entered into a joint venture agreement with Philips

Electronics pursuant to which Philips Electronics acquired a 50% interest in LG LCD. In

connection with this transaction, LG LCD transferred its existing software-related business to

LG Electronics in order to focus solely on the TFT-LCD business. In addition to the contribution

of TFT-LCD-related businesses from LG Electronics and LG Semicon, the joint venture also

benefited from Philips Electronics' management skills, brand recognition and experience in

research and development relating to TFT-LCD products. The joint venture, which was renamed

LG.Philips LCD Co., Ltd., was officially launched in September 1999." LPL also is producing

documents regarding its organizational structure. LPL reserves the right to supplement this

Interrogatory answer, if appropriate, when and if additional information becomes available, or

otherwise.

### INTERROGATORY NO. 25:

Identify each and every Visual Display Product that is made or sold by LGP, by model
number and/or other LGP designation which have a rear mounting hole(s) like those shown in
Figures 4A-5 and 8-16 of the Patents-in-Suit.

### OBJECTIONS AND ANSWER

185

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. LPL further objects to this Interrogatory as calling for legal conclusions. LPL also objects to this Interrogatory as premature and prior to the time for *Markman* definitions or briefing. LPL further objects to this Interrogatory because it is vague and ambiguous, including, for example, with respect to the term "rear mounting hole(s)". LPL will provide more detailed information regarding the asserted claims at the appropriate time and based on further discovery, possibly including, for example, in expert reports and/or *Markman* briefing. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 26:

Identify each and every Visual Display Product by model number and/or other designation of which LGP is aware, which is or has been marked with any of the Patents-in-Suit and state the date on which each such product was first marked and the patent number(s) with which it was marked.

### OBJECTIONS AND ANSWER

LPL objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving those objections, and based on LPL's current knowledge, LPL states as follows:

LPL is not aware of any products marked with the numbers of the Patents-in-Suit. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

AS TO OBJECTIONS:

April 6,  2007

<div style="margin-left: 40%;">

THE BAYARD FIRM

/s/ Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-2306
(302) 655-5000
rkirk@bayardfirm.com
Attorneys for Plaintiff
LG.PHILIPS LCD CO., LTD.

</div>

OF COUNSEL:
Lora Brzezynski
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500