# EXHIBIT A

HEARING

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,   )
                                )
        Plaintiffs,             )  C.A. No. 04-343(JJF)
                                )
v.                              )
                                )
TATUNG CO., TATUNG COMPANY OF   )
AMERICA, INC., and VIEWSONIC    )
CORPORATION,                    )
                                )
        Defendants.             )

        Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Tuesday, March 13, 2007, beginning at
approximately 5:05 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        RICHARD D. KIRK, ESQ.
          222 Delaware Avenue, Suite 900
          Wilmington, Delaware  19899
          for Plaintiffs

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street    Wilmington, DE 19899
(302) 571-0510
www.corbettreporting.com
Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

HEARING

2 (Pages 2 to 5)

Page 2

```
 1  APPEARANCES (Continued):
 2      MCKENNA, LONG & ALDRIDGE, LLP
        CASS W. CHRISTENSON, ESQ.
 3      REL S. AMBROZY, ESQ.
        1900 K Street, N.W
 4      Washington, D.C. 20006
          for Plaintiffs
 5
        RICHARDS LAYTON & FINGER
 6      ANNE SHEA GAZA, ESQ
        One Rodney Square
 7      Wilmington, Delaware 19801
          for Defendant Tatung Co
 8
        GREENBERG TRAURIG LLP
 9      FRANK MERIDETH, ESQ.
        MARK KREISMAN, ESQ.
10      VALERIE HO, ESQ.
        2450 Colorado Avenue, Suite 400E
11      Santa Monica, California 90404
          for Defendant Tatung Company of America, Inc.
12
        CONNOLLY BOVE LODGE & HUTZ LLP
13      JAMES D. HEISMAN, ESQ.
        1007 North Orange Street
14      Wilmington, Delaware 19899
          for Defendant Viewsonic Corporation
15
        CONNOLLY BOVE LODGE & HUTZ LLP
16      SCOTT R. MILLER, ESQ.
        MANUEL NELSON, ESQ.
17      TRACY ROMAN, ESQ.
        355 South Grand Avenue
18      Los Angeles, California 90071-3106
          for Defendant Viewsonic Corporation
19
20
21
22
23
24
```

Page 3

 1          SPECIAL MASTER POPPITI: Mr. Kirk.
 2          MR. KIRK: Yes, Your Honor. Richard
 3  Kirk, from the Bayard Firm, for the plaintiff, LG
 4  Phillips, LCD Company, Ltd., and I heard on the line my
 5  colleagues from McKenna, Long & Aldridge, Cass
 6  Christenson, I believe Rel Ambrozy, and there may be
 7  others, Your Honor. I am sorry, I didn't catch them.
 8          MR. CHRISTENSON: I think that's all,
 9  Your Honor.
10          SPECIAL MASTER POPPITI: Thank you.
11          MS. GAZA: Your Honor, Anne Gaza from
12  Richards, Layton & Finger. I believe on the phone with
13  me are Frank Merideth, Mark Kreisman, and Valerie Ho from
14  Greenberg Traurig.
15          SPECIAL MASTER POPPITI: Thank you.
16          MR. HEISMAN: Good afternoon, Your
17  Honor. Jim Heisman from Connolly Bove on behalf of
18  ViewSonic Corporation. Also on the line is Tracy Roman
19  from the Rafkin Peter firm.
20          SPECIAL MASTER POPPITI: Thank you. Is
21  everyone still there? Before we start, I want to focus
22  everyone's attention on correspondence from Mr. Kirk
23  dated March 12, which forwarded to me documents
24  corresponding to privilege log entries. And I just want

Page 4

 1  to make sure that I have an agreement, if there is one,
 2  that all of the documents that accompanied that cover
 3  are, in fact, the universe of documents that I am
 4  expected to review in camera.
 5          Has anyone been able to turn their
 6  attention to that, and if not, when can you do that,
 7  please?
 8          MR. MERIDETH: Your Honor, I have not
 9  checked the numbers against the one -- against the
10  transcript, but I can do that this afternoon.
11          And, Your Honor, we provided more than
12  the numbers that were referred to in the transcript. We
13  have provided all of them.
14          SPECIAL MASTER POPPITI: Then the
15  numbers that you have listed here are a universe that is
16  bigger than the universe of the numbers in the
17  transcript; is that correct?
18          MR. MERIDETH: That's correct, Your
19  Honor.
20          SPECIAL MASTER POPPITI: In any event,
21  I'd like a check on that so I can make sure that once the
22  review is finished, that, in fact, I have looked at
23  everything that I was expected to look at and review.
24  Okay?

Page 5

 1          MR. MERIDETH: Yes, Your Honor.
 2          SPECIAL MASTER POPPITI: As soon as you
 3  can get to it, Mr. Merideth, that will be helpful.
 4          MR. MERIDETH: Yes, sir. I will do it
 5  this afternoon. Is it all right if I just send an email
 6  saying yea or nay?
 7          SPECIAL MASTER POPPITI: Yes. That's
 8  fine.
 9          Now, as we turn to the business of the
10  day, before I hear any comments with respect to the
11  substance of your respective submissions, it is important
12  for me, and, in fact, I am required to focus on some
13  dates that I think may drive an ultimate question that I
14  have even before, at substance, and correct me if I am
15  wrong with respect to these dates, I think I am correct,
16  I believe the record reflects that the Rule 30(b)6
17  notices were filed on December the 5th of 2006; is that
18  correct?
19          MR. CHRISTENSON: Yes, Your Honor.
20          SPECIAL MASTER POPPITI: And I believe
21  that objections with respect to that first filing were
22  filed, and I am not sure that it is the same for each,
23  that is, for Tatung and ViewSonic, January 5, but I'd
24  like to know specifically as it relates to each of the

HEARING

13 (Pages 46 to 49)

Page 46

1  SPECIAL MASTER POPPITI: It does.
2  MR. CHRISTENSON: And I think it would
3  then be Exhibit 6, Your Honor, if you could find that
4  exhibit.
5  SPECIAL MASTER POPPITI: I have it in
6  front of me.
7  MR. CHRISTENSON: If you could please
8  turn to topic 20B?
9  SPECIAL MASTER POPPITI: 20B?
10 MR. CHRISTENSON: I am sorry, 20C, as in
11 Charlie.
12 SPECIAL MASTER POPPITI: 20C?
13 MR. CHRISTENSON: Yes, Your Honor.
14 SPECIAL MASTER POPPITI: I have 20C in
15 front of me.
16 MR. CHRISTENSON: Your Honor, I think if
17 you read that topic that was served on us and for which
18 we designated a witness, I can't -- I really cannot
19 understand the objection.
20 SPECIAL MASTER POPPITI: I am looking at
21 20C, and although it's not a mirror, it's pretty darn
22 close, is it not?
23 MS. ROMAN: I am sorry, what number am I
24 looking at?

Page 47

1  SPECIAL MASTER POPPITI: 20C, "Any
2  advantages, disadvantages, benefits, or detriments,
3  whether technical, financial, or legal, pertaining to
4  any," etcetera.
5  MR. CHRISTENSON: And it refers
6  specifically to the inventions claimed in the patent.
7  SPECIAL MASTER POPPITI: Of any of the
8  asserted patents.
9  MR. CHRISTENSON: Right. Which is what
10 they are now complaining about.
11 SPECIAL MASTER POPPITI: That's why I
12 said, It's certainly not a mirror, but it's virtually
13 identical.
14 MS. ROMAN: Well, notwithstanding that I
15 believe that the company that invented it would be in a
16 better position to discuss whether there were any such
17 advantages or disadvantages and knows what their
18 invention was that they created, I do see the --
19 SPECIAL MASTER POPPITI: I understand
20 they may be in a better position to do that, but that
21 doesn't preclude them from asking the question and having
22 somebody say, I don't know.
23 MS. ROMAN: Right. So, with respect to
24 topic five, then, I think it's, based on this, it's a

Page 48

1  simple resolution of what we have already discussed,
2  which is that topic five is not seeking a ViewSonic
3  witness to provide their interpretation of claim terms or
4  to be committed to any particular claim terms.
5  SPECIAL MASTER POPPITI: I think it
6  would have to be, would it not, counsel?
7  MR. CHRISTENSON: Yes, Your Honor. I
8  don't think that topic calls for a definitive claim term.
9  SPECIAL MASTER POPPITI: As long as
10 that's the understanding, then that topic can stand as it
11 is written.
12 MS. ROMAN: Your Honor, I think that
13 resolves all of the topics that related to the
14 infringement or invalidity or claim construction issues.
15 SPECIAL MASTER POPPITI: Okay.
16 MS. ROMAN: I believe there is only two
17 other areas that the motion raised, one of which is the
18 issue regarding the date restriction.
19 SPECIAL MASTER POPPITI: Yes.
20 MS. ROMAN: For many of the topics, LPL
21 has listed a date of January 1, 2000, and then, for many
22 of the topics, there is no date restriction at all. And
23 we raise the concern that since the patents did not even
24 issue until December 24th of 2002, we would request the

Page 49

1  -- in our motion, we requested May 28th, 2004, which is
2  the date ViewSonic contends it first learned of the
3  patents-in-suit, but having read LPL's opposition, we
4  recognize and understand that they are entitled to --
5  SPECIAL MASTER POPPITI: They are
6  entitled to test that.
7  MS. ROMAN: Yes, Your Honor. We would
8  like to consider limiting the testimony to December 24th,
9  2002, which was the date on which the patents issued.
10 It's the earliest date that could come into play on these
11 topics.
12 MR. AMBROZY: Again, I don't see the
13 logic there because if we are asking about what ViewSonic
14 knew or what was known in the industry, we would want to
15 know before the patent, the date Ms. Roman gave. I think
16 the relevant dates are back in 1997, 1998.
17 MR. CHRISTENSON: Your Honor, just to
18 add on to that, I think the easiest way to resolve this
19 and show that the argument is not persuasive is if you
20 would turn to Exhibit 5 to our submission, which is
21 ViewSonic's deposition notice concerning topics 13
22 through 18.
23 SPECIAL MASTER POPPITI: Just a moment.
24 I am at -- just a moment.

14 (Pages 50 to 53)

### Page 50

1  MR. CHRISTENSON: Specifically, topic
2  13, Your Honor.
3  SPECIAL MASTER POPPITI: I am looking at
4  your submittal, and I am looking at Exhibit 5, and I
5  don't see a 13. It starts at 19 on page 7; am I correct?
6  MR. CHRISTENSON: That could be right,
7  Your Honor. Maybe it's the exhibit before that.
8  SPECIAL MASTER POPPITI: I will look at
9  that one. It is the one before that. 13 what, please?
10  MR. CHRISTENSON: Yes. Essentially
11  topic 13 which has subparts A through W.
12  SPECIAL MASTER POPPITI: It does.
13  MR. CHRISTENSON: It seeks a broad range
14  of financial information, Your Honor, from LPL. Most of
15  the subtopics have no date limitation; however, when
16  there is a date limitation, for example, topic 13 P, as
17  in Paul.
18  SPECIAL MASTER POPPITI: That's 1998?
19  MR. CHRISTENSON: Yes, Your Honor.
20  Similarly, topic 13 S, as in Sam, topic 13 T, as in Tom,
21  goes back to 1998. I had a specific discussion with
22  ViewSonic in January proposing that we agree on a time
23  frame, and, initially, ViewSonic's counsel expressed
24  interest in doing so, but very shortly thereafter, stated

### Page 51

1  they would not agree to a time frame.
2  So, I can't see how they could possibly
3  contend now that this earlier time frame would not be
4  relevant and that it would be inappropriate to have more
5  open-ended topic time periods when those are the time
6  periods that they used in their notice.
7  Our notice is less broad, Your Honor,
8  than their own notice.
9  SPECIAL MASTER POPPITI: Any other
10  comments, please?
11  MS. ROMAN: Yes, Your Honor. Just for
12  purposes of, as I understand it, actual profits aren't
13  being sought on this case and it's limited to reasonable
14  royalty damages, and reasonable royalty damages would be
15  considered at the time that the patents issued and not
16  before then.
17  SPECIAL MASTER POPPITI: Yes.
18  MS. ROMAN: We talking about having a
19  witness prepared to go through two years before that on
20  sales information of products that wouldn't come into
21  play, for example, in this case, just seems an undue
22  burden for information that can't actually be used in
23  this case.
24  SPECIAL MASTER POPPITI: I agree. Now,

### Page 52

1  the other question, however, is, and Mr. Christenson, you
2  will have to point me to -- you took the position with
3  respect to the development of certain technology. The
4  question was: How do you compare?, was it not?
5  MR. CHRISTENSON: Yeah. There are a
6  couple questions, Your Honor. One question is: What
7  were the level of sales for products that ViewSonic sold
8  before they began to use our technology, and what were
9  the sales after they began to use our technology? I
10  think that's a relevant point of comparison, for example.
11  That's with respect to damages.
12  With respect to technology, I think that
13  raises a host of other issues, but I think that Ms. Roman
14  is targeting the time period with respect specifically to
15  reasonable royalty questions on the amount of sales.
16  SPECIAL MASTER POPPITI: So, what date
17  would you propose? It's certainly not going to be
18  open-ended; correct? You don't prepare a witness to say
19  "from the beginning of time."
20  MR. CHRISTENSON: That's true, Your
21  Honor. I think that, you know, if we could go back to --
22  I think the time period that we used typically is January
23  1, 2000. They go back to an earlier time period, as I
24  just mentioned, and I just showed it to you, so, you

### Page 53

1  know, they went back to 1998. I would suggest we should
2  be able to go back to 1998. If we can go back to 1998, I
3  would think we could go to January 1, 2000.
4  MS. ROMAN: Cass, I wasn't privy to the
5  discussions you mentioned earlier about this proposed
6  compromise on a date. I am sure that went to document
7  production and issues, but was January 1, 2000, the date
8  that you were proposing?
9  MR. CHRISTENSON: It went to the
10  deposition topics, and I can't recall right now
11  specifically what the date was.
12  MS. ROMAN: So it would seem to me that
13  a year's worth of sales before the patent would be more
14  than enough, particularly given that, you know, most of
15  this technology was just starting to come into the market
16  during that time period.
17  MR. CHRISTENSON: My proposal had been
18  that we should pick a uniform date that would apply all
19  the way around, and the two dates that were on the table
20  were 1998, which was your date, and our date, which was
21  2000.
22  MS. ROMAN: I also don't want to be in a
23  position to having a date agreed to for the depositions
24  that doesn't reflect what had been agreed to for the

Page 54

production of documents. I am a little concerned that I am at a disadvantage. I don't know what has been produced for purposes of documents on this information.

MR. CHRISTENSON: I think LPL has produced back to the year 2000. I think we have attempted to get information from ViewSonic back to sometime before December, 2002, but I think that, so far, ViewSonic has refused to provide that discovery, and I am not sure if Tatung is providing it back to before December 2002.

SPECIAL MASTER POPPITI: Mr. Merideth? I mean, that would be helpful. It mean, it does make sense to parallel what has, either what has been produced -- there is no application, that I am aware of, to -- unless this is part of the clean up they had not done, but it seems to me to use the same date and time frame makes sense.

MR. MERIDETH: I agree, Your Honor.

SPECIAL MASTER POPPITI: So, do you have in mind Tatung production with respect to the issue we are talking about?

MR. MERIDETH: I think that, if we are talking about the sales, that we have done so.

MS. ROMAN: Your Honor, I believe

Page 55

Mr. Christenson was correct with respect to ViewSonic, that it went to December 1, 2002.

SPECIAL MASTER POPPITI: We will use --

MR. CHRISTENSON: Your Honor, that was the point -- that's a point of dispute. We feel it should go back to at least January 1st of that year.

SPECIAL MASTER POPPITI: I understand -- is that before me right now? If it is --

MR. CHRISTENSON: I think it is, Your Honor.

MR. AMBROZY: Not to throw a monkey wrench in all this, but in regards to the validity aspect, which I believe is at least No. 8, we would respectfully request that the date be December of 1997.

MS. ROMAN: Your Honor, I am okay with that.

SPECIAL MASTER POPPITI: Well, with respect to the sales, we will go back to the time frame for which production has been provided, and if I have before me an application to make that date earlier, then what I am going to ask be done is if, counsel, if you can make sure that you tell me where that is in terms of the filings that you have made so I can check and see where it is in terms of decision making.

Page 56

MR. CHRISTENSON: Your Honor, we can do that. I think what I should probably do as a first step is go back and look at the December 28 transcript. I think I raised it at that time.

SPECIAL MASTER POPPITI: You may have, but I just don't really have it in mind at this point. We can deal with it -- if you will do that for me tomorrow, we will deal with it on Friday.

MR. CHRISTENSON: Yes, Your Honor.

MS. ROMAN: Thank you, Your Honor. I guess that takes us just to the final issue in the motion, which also raises a couple of different topics, but I will give you the topic numbers.

SPECIAL MASTER POPPITI: Okay.

MS. ROMAN: 13, 14, 15, 19, 20, 25, and 29.

SPECIAL MASTER POPPITI: Okay.

MS. ROMAN: With respect to these topics, we are not seeking a preclusion on the entirety of the topics. It's that each of these topics sweeps in a concern regarding testimony that would have to be given about ViewSonic's customers, resellers, distributors of its products.

We have got over 230 products, I

Page 57

believe, or somewhere in the neighborhood of 230 products that ViewSonic has identified and hundreds of customers that sell these products. To the extent that these topics are seeking a witness to testify as to correspondence between ViewSonic and each of those hundreds of customers regarding each of those 230 products, we are concerned that it's not only an undue burden for ViewSonic to have to do it, but that is not really going to yield information that relates to any claim in this case that really belongs in the case.

I understand the concern that LPL has is that this kind of information goes to the issue of indirect infringement for inducement, but I believe, as the parties have previously discussed with Your Honor, LPL has an entitlement to a single recovery from ViewSonic. That single recovery would be coming from any direct infringement which necessarily would have to be proven before even getting to indirect infringement.

SPECIAL MASTER POPPITI: Right.

MS. ROMAN: To the extent that this discovery -- or to the extent these topics seek discovery that goes solely to indirect infringement, we just are concerned that the burden that would be required to prepare for it is stronger than the amount of relevant