# EXHIBIT D

Teleconference

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
L.G. PHILLIPS LCD      )
CO., LTD.,             )
                       )
       Plaintiff,      )  Civil Action No.
                       )  04-343-JJF
v.                     )
                       )
TATUNG COMPANY;        )
TATUNG COMPANY OF      )
AMERICA, INC.; and     )
VIEWSONIC              )
CORPORATION,           )
                       )
       Defendants.     )
```

　　　　A teleconference was taken pursuant to notice before Ellen Corbett Hannum, Registered Merit Reporter, in the law offices of Blank Rome, 1201 N. Market Street, Suite 800, Wilmington, Delaware, on Wednesday, May 23, 2007, beginning at approximately 2:30 p.m., there being present:
BEFORE:   SPECIAL MASTER VINCENT L. POPPITI
APPEARANCES:

　　　　　　　　　RICHARD D. KIRK, ESQ.
　　　　　　　　　The Bayard Firm
　　　　　　　　　　Wilmington, Delaware   19801
　　　　　　　　　　　　　　and
　　　　　　　　　CASS W. CHRISTENSON, ESQ.
　　　　　　　　　REL S. AMBROZY, ESQ.
　　　　　　　　　CORMAC T. CONNOR, ESQ.
　　　　　　　　　McKenna Long & Aldridge LLP
　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　For the Plaintiff
　　　　　　　　　CORBETT & WILCOX
　　　　Registered Professional Reporters
　　The Parcels Building - 230 N. Market Street
　　　　　　　　Wilmington, DE 19801
　　　　　　　　　(302) 571-0510
　　　　　　　　www.corbettreporting.com
Corbett & Wilcox is not affiliated with Wilcox & Fetzer,
　　　　　　　　　Court Reporters

Teleconference

12 (Pages 42 to 45)

Page 42

1  MR. HEISMAN: And there was also some
2  testimony from Ms. Wang as well that confirmed
3  Ms. Stetson's testimony that in fact ViewSonic cannot
4  merely generate summaries of U.S. sales. What we can do,
5  however, is generate summaries by the Americas to
6  generate. And isolate the U.S. we would need to
7  undertake a burdensome task and do it on
8  a customer-by-customer basis and create a special report
9  merely for purposes of litigation, which is something
10 that ViewSonic does not keep in the ordinary course of
11 business.
12     We believe that Your Honor has ruled on
13 this issue several times. We have seen nothing new that
14 that should change Your Honor's calculus and request that
15 the application be denied.
16     SPECIAL MASTER POPPITI: I guess my
17 question is: What has changed since I've ruled on this
18 before?
19     MR. CHRISTENSON: Your Honor, Cass
20 Christenson.
21     A couple of things: First of all, I
22 disagree with ViewSonic that this is another request for
23 import information. This has nothing to do with import
24 information, which is an issue we specifically addressed

Page 43

1  previously. This is an issue of whether we are entitled
2  to reports and data compilations regarding U.S.-specific
3  shipments.
4      And the reason that's important is --
5  that it's different is important is that previously you
6  concluded that we had requested documents sufficient to
7  determine the amount of imports. The document requests
8  that are at issue now are different document requests,
9  and they specifically call for this type of a report.
10 So, for example, if you have our Rule 7.11 submission.
11     SPECIAL MASTER POPPITI: Just going to
12 have to give me a moment. One sec. I have it.
13     MR. CHRISTENSON: Your Honor, Exhibit 11
14 to our Rule 7.11 submission.
15     SPECIAL MASTER POPPITI: Okay, I'm
16 there.
17     MR. CHRISTENSON: That's LPL's second
18 set of requests for production. If you will, please,
19 turn to request No. 17 on page 5. We specifically
20 requested -- I will just read it for the record: "All
21 reports and data compilations showing actual monthly
22 sales in units and U.S. dollars by or for you since
23 January 1, 2002 concerning each type of digital display
24 product responsive to interrogatory No. 2."

Page 44

1      And so this is the request that
2  specifically called for this type of report or data
3  compilation.
4      SPECIAL MASTER POPPITI: Let me ask this
5  question. I would expect that even though you suggest we
6  are talking about something different than I ruled on
7  before, and I will want to hear about that if there is a
8  different view, when you are looking for all reports and
9  data compilations, the way I would read that, given the
10 ruling that I have already made and given what I would
11 expect should be a consistent ruling with respect to this
12 different data -- and I will accept your characterization
13 of it for purposes of making the point -- in my view it
14 is all reports and data compilations that are generated
15 in the ordinary course of business.
16     Now, I mean, I realize we live in a
17 little bit of a different world than we lived in when we
18 were -- when we were pulling paper and compiling
19 information and reports in that fashion. But I'm not
20 aware of any different guidance, if you will, from either
21 this District or this Circuit which says simply because
22 we live in a different world and you've got the talent to
23 go into a database and create something that is new and
24 snappy and more clear and more cogent and more focused

Page 45

1  if that's not done in the ordinary course of business and
2  it is only done -- or only done against the backdrop of a
3  litigation request, it's something that the Court is not
4  going to direct.
5      So having said that, let's look at what
6  we are talking about here because I do not intend to
7  require any party to do, other than what they -- or
8  provide or produce or create anything that they don't do
9  in the ordinary course, even if it is easy to go in and
10 press some buttons and get that report you are looking
11 for.
12     MR. HEISMAN: Judge, this is Jim Heisman
13 for ViewSonic.
14     LPL has not come forward with a
15 scintilla of evidence that ViewSonic has ever prepared
16 these type of summary documents that they are now
17 requesting in the ordinary course of business. They
18 cited to you some snippets that indicated, yeah, it may
19 be possible and, as Your Honor has correctly observed, in
20 the digital world anything may be possible with the
21 appropriate database manipulation. But this is simply
22 not the case here.
23     What we are talking about are documents
24 that ViewSonic simply does not use in its business and

Page 46

1  that they would have to create solely for purposes of
2  responding to a discovery request. And we believe that's
3  entirely inappropriate.
4      SPECIAL MASTER POPPITI: Mr.
5  Christenson.
6      MR. CHRISTENSON: Your Honor, to respond
7  to your point, I do understand your point, my response is
8  twofold first, with regard to Rule 34 -- I'm going by
9  recollection here, I apologize, I don't have it in front
10 of me.
11     SPECIAL MASTER POPPITI: Yes.
12     MR. CHRISTENSON: My recollection is
13 that it's clear in the committee, though, that it can be
14 appropriate for a party to produce data, to produce a
15 report or a compilation of data that exists within the
16 company's database or computer system as maintained in
17 the ordinary course of business.
18     And as I understand it, as the second
19 point, is that's exactly what we are talking about, that
20 we are talking about data that ViewSonic maintains in the
21 ordinary course of business. Now if you are asking me --
22     SPECIAL MASTER POPPITI: But what you
23 are asking them to do is something you can do with the
24 data. You have just said you can do it. They have given

Page 47

1  you the information, at least this is my understanding.
2  They have given you information that you can work with.
3  And I think it was said in an earlier hearing, isn't that
4  the purpose of gathering information that you can work
5  with?
6      Now, if you are suggesting to me that
7  there is some guidance in this District or in this
8  Circuit that suggests that a party should be required to
9  go in and, for the ease and sake of the requesting party,
10 manipulate data and produce a report that the other party
11 is asking for, I would like to see that. And I'm happy
12 to review it.
13     MR. CHRISTENSON: Very well, Your Honor.
14     SPECIAL MASTER POPPITI: I will be the
15 first to admit if I'm wrong, I will tell you I'm wrong.
16 So if there is something there that I should be looking
17 at, then make me aware of it.
18     MR. CHRISTENSON: Yes, sir.
19     May I proceed to the second point?
20     SPECIAL MASTER POPPITI: Yes, please.
21     MR. CHRISTENSON: The second and third
22 issue, Your Honor, are issues that are supplemental to
23 issues that we had raised in motions that were argued
24 back in December of 2006. They are not issues that were

Page 48

1  specifically raised in our March 30th submission, and I
2  have sent a letter to counsel for ViewSonic on April 24
3  raising these issues because we are seeking some
4  information that we feel we need to prepare for
5  depositions of ViewSonic's witnesses in June. And we
6  only recently realized that there may be information that
7  we don't have that in ViewSonic's possession.
8      We recently talked to ViewSonic about
9  these other two types of documents -- and I was not on
10 the call, but as I understand it, ViewSonic's position is
11 that because there was never any specific ruling from
12 Your Honor that directed ViewSonic to produce these types
13 of documents, then ViewSonic did not have a duty to
14 produce these documents. Our position is that we had
15 never understood that documents had not been produced.
16 We thought we had received these types of documents, and
17 we only recently realized that there is apparently a
18 dispute about these type of documents.
19     The first type is --
20     SPECIAL MASTER POPPITI: Direct me to
21 specifically where you are referring in your
22 correspondence, please.
23     MR. CHRISTENSON: Yes, Your Honor. This
24 is, on page 2 of our May 8th submission.

Page 49

1      SPECIAL MASTER POPPITI: Right.
2      MR. CHRISTENSON: We first talked about
3  documents that refer to mounting technology used in
4  ViewSonic's products. Specifically, of course, we are
5  positive more interested in rear-mounting technology. So
6  we would want any documents that reference the use of
7  rear-mounting technology. And we have pointed to some
8  documents where ViewSonic's suppliers refer to the use of
9  either front- or side-mounting technologies of
10 ViewSonic's products.
11     So that caused us to believe that there
12 may be documents that refer specifically to rear-mounting
13 technology. And if there are, we would like to receive
14 those documents as soon as possible to use in ViewSonic's
15 depositions. That's the first issue.
16     The second issue is --
17     SPECIAL MASTER POPPITI: Let's focus on
18 that one for a moment, please.
19     MR. MILLER: Scott Miller, I will speak
20 to this one.
21     SPECIAL MASTER POPPITI: Please.
22     MR. MILLER: Two issues, I guess, that
23 come as a result of this. These are matters for which
24 there was not a meet and confer in advance of filing the