# EXHIBIT E

Conference

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - -

PHILLIPS, L.G., LCD CO., LTD,         :
                                      : Civil Action
    Plaintiffs,                       : No. 04-343(JJF)
                                      :
    vs.                               :
                                      : TRIAL BY JURY OF 12
TATUNG CO., TATUNG COMPANY OF         :
AMERICA, INC., and VIEWSONIC          :
CORPORATION,                          :
                                      :
    Defendants.                       :

- - -

A status conference was taken before The Honorable Vincent J. Poppiti on Thursday, May 24, 2007, beginning at approximately 3:15 p.m.

APPEARANCES:

    STEPHEN BRAUERMAN, ESQ.
    THE BAYARD FIRM
    222 Delaware Avenue, Suite 900
    Wilmington, Delaware 19899
      Attorney for Plaintiffs

Gail Inghram Verbano, CSR, RMR, CLR
CORBETT & WILCOX
230 N. Market Street - Wilmington, Delaware 19801
(302) 571-0510

Corbett & Wilcox is not affiliated with
Wilcox & Fetzer, Court Reporters

Conference

2 (Pages 2 to 5)

Page 2

1  APPEARANCES: (CONT'D.)
2       CASS W. CHRISTENSON, ESQ.
        CORMAC T. CONNOR, ESQ.
3       McKENNA, LONG & ALDRIDGE
        1900 K Street NW
4       Washington, D.C. 20006-1108
          Attorney for Plaintiffs
5
        JAIME TWEEDIE, ESQ.
6       RICHARDS LAYTON & FINGER
        One Rodney Square
7       Wilmington, Delaware 19899
          Attorney for Defendant Tatung Co.
8
        VALERIE HO, ESQ.
9       GREENBERG TRARURIG, LLP
        2450 Colorado Avenue, Suite 400E
10      Santa Monica, California 90404
          Attorney for Defendant Tatung Company
11        of America, Inc.
12      JAMES D. HEISMAN, ESQ.
        CONNOLLY, BOVE, LODGE & HUTZ
13      1220 North Market Street
        Wilmington, DE 19801
14        Attorney for Defendant Viewsonic
          Corporation
15
        SCOTT MILLER, ESQ.
16      CONNOLLY, BOVE, LODGE & HUTZ
        355 South Grand Avenue
17      Los Angeles, California 90071-31076
          Attorney for Defendant Viewsonic
18        Corporation

Page 3

1       JUDGE POPPITI: Okay. We are back
2  with the May 2nd application, by correspondence of
3  that date from Mr. Heisman. The response is dated
4  May 9 from Mr. Kirk. And for my purposes, that is
5  No. DM31. Please, Mr. Heisman.
6       MR. MILLER: Your Honor, this is
7  Scott Miller. I'll be speaking to this one.
8       JUDGE POPPITI: Thank you,
9  Mr. Miller.
10      MR. MILLER: And what we seek,
11 obviously, by this motion is a production of
12 technical-related documents from LPL relating to the
13 structure and drawings showing the structure of and
14 information regarding various products that are made
15 by LPL.
16      The discovery request under which
17 these are sought seek information about products that
18 are provided by LPL where there are instructions
19 included to mount or the product itself is arranged
20 so as to mount at the corners.
21      As you know, there was some
22 late-asserted claims and some allowed discovery was
23 permitted by defendants to address these new claims.
24 One of the claim terms that was in the new claims and

Page 4

1  one of the new claims relates to fastening at the
2  corner.
3       JUDGE POPPITI: Right.
4       MR. MILLER: So we asked for this
5  information.
6       And I know LPL has asserted that
7  this is an attempt to end-run the discovery and the
8  discovery order Your Honor entered as a result of the
9  hearing that took place back in February.
10      JUDGE POPPITI: Yes.
11      MR. MILLER: And from our
12 standpoint, it clearly is not an end-run.
13      First, it's independent discovery
14 related to different topics. The fact that some of
15 the documents may overlap, or a substantial amount of
16 the documents may be the same is not an attempt to
17 end run.
18      The other thing that I think is
19 important to remember is that, based on my
20 understanding at least, the reason for the deferral
21 by Your Honor of the decision for the motion that was
22 argued back in February was that Your Honor wants to
23 be able to assess the veracity of the statements made
24 by LPL with regard to whether their products practice

Page 5

1  the inventions that led to the agreement with
2  Viewsonic about narrowing or limiting the time frame
3  of certain discovery responses.
4       JUDGE POPPITI: That's correct.
5       MR. MILLER: And this is totally
6  independent of the determination of the veracity of
7  that statement.
8       As I say, it's independent
9  discovery. It's tied to issues that are the subject
10 matter of the new claims. And what we believe, from
11 what we've been able to ascertain, we've submitted to
12 Your Honor some product specifications that we've
13 been able to find on the Internet that show
14 information about how LPL directs that certain of its
15 products be mounted at corners; and as a result,
16 we're asking for documents that relate to those sorts
17 of products.
18      We also note from those drawings
19 that there appear to be fasteners on the back of
20 those products in some of the depictions.
21      And those fasteners we believe
22 relate also to issues involved in this case -- in
23 particular, to the validity of the patents in suit
24 where there are fasteners on the back.

Conference

3 (Pages 6 to 9)

Page 6

1      Those fasteners -- the existence of
2  those fasteners is nowhere shown in the file history;
3  and to the extent they existed prior to the issue
4  date of the patents, there clearly was an obligation
5  by LPL, in our view at least, to disclose them to the
6  patent office.
7      Certainly, our expert ought to have
8  access to those materials in order to be able to
9  opine on those issues with regard to unclean hands or
10 inequitable conduct and/or validity of the patents in
11 suit.
12     And as a result, we believe that
13 those documents, as demonstrated by the exhibits
14 we've given to Your Honor, also contain information
15 that's clearly relevant to the issues presented in
16 this case.
17     They go, as I say, not only to the
18 validity -- and we ought to be able to have the right
19 to have our expert have access to those materials to
20 assess whether or not those fastening elements would
21 be useful for purposes of the validity analysis.
22     I know LPL believes that the new
23 KSR decision is not anything that Your Honor needs to
24 be concerned about, but I believe that it does

Page 7

1  clarify the issue with regard to things involving
2  invalidity of the patents, for example, and expressly
3  approves --
4      JUDGE POPPITI: Why don't you speak
5  to that, just for purposes of making the record.
6      MR. MILLER: Sure.
7      The Supreme Court, as you may know,
8  issued a decision on April 30th, 2007, in the case
9  involving KSR International versus Teleflex, Inc.
10 And in that case, the Court clarified the standard
11 that was applicable for analysis of obviousness under
12 Section 103 of the Patent Act. And in so doing, it
13 specifically directed that the more rigid test that
14 the Court of Appeals for the federal circuit had
15 issued previously was too narrow and too restricting
16 and that it identified several errors that were
17 present in that case as a result of the application
18 of that test.
19     And so as it relates, in
20 particular, to this circumstance, the error which we
21 think is most apropos is that the Court of Appeals
22 for the Federal Circuit had said that it was improper
23 for the Court to consider, as part of the obviousness
24 analysis, whether or not it was obvious for a person

Page 8

1  of skill in the art to try something based upon what
2  was shown in the prior art that might have led to the
3  invention; and the Supreme Court specifically said
4  that was an unduly restrictive nature of the
5  analysis.
6      We believe that having some kind of
7  fasteners on the back of this case ought to be
8  allowed discovery so that our expert can evaluate it
9  and look to see whether or not, under the
10 clarification of the test articulated by the Supreme
11 Court, that it would be obvious to one of skill in
12 the art to have tried using the fasteners on the back
13 for purposes of mounting to the housing, even if
14 those fasteners, in the minds of the manufacturer of
15 the product, like LPL, may have been there for
16 mounting a circuit board or mounting a cable holder
17 or some other component. We believe certainly that,
18 at the discovery stage, we should be allowed to have
19 access to those materials for evaluation by our
20 expert.
21     JUDGE POPPITI: And let me ask this
22 question: Even if I were to agree with that overall
23 analysis, would you address the issue as to why it
24 should occur before claim construction or whether the

Page 9

1  request, by virtue of calling out a number of the
2  terms that are to be construed, why shouldn't it wait
3  until after claim construction?
4      MR. MILLER: I don't think it needs
5  to wait for claim construction. Because, first off,
6  the term "corners" is a term that, as Your Honor may
7  recall, we had a discussion prior to the depositions
8  in this case as to whether or not parties were going
9  to be able to use common terms to describe common
10 things, such as screws and holes and other sorts of
11 terms.
12     "Corners" is a term that LPL has
13 used independent of the patents in conjunction with
14 the documents that we've submitted to Your Honor, in
15 terms of fastenings thing or mounting things at the
16 corners.
17     We don't believe that we should be
18 hamstrung in terms of taking discovery for purposes
19 of preparing the experts and preparing the Court to
20 decide the issues of validity and infringement in
21 this case until after claim construction to be able
22 to obtain discovery on issues relating to "at the
23 corners," for example.
24     Similarly, with regard to the

Conference

4 (Pages 10 to 13)

Page 10

1  question of flat panel display device, we
2  specifically identified LCD devices, plasma display
3  panels. It's not tied -- I don't believe the request
4  is tied to the language of the claim.
5       But it is -- you know, flat panel
6  display device, in this circumstance, is a term that
7  the parties have some dispute about how broad that
8  term is, but it doesn't matter under either
9  construction that might be adopted by the Court.
10      Even if it were tied to the claims,
11 it would still be within the scope of proper
12 discovery, because the identification identified by
13 LPL is a flat display panel with support frames.
14      JUDGE POPPITI: Right.
15      MR. MILLER: And it's clear that
16 the instructions in the specifications that we've
17 submitted have those components, and the instructions
18 about mounting at the corners relate to the assembled
19 device, which is either an LCD device, flat panel
20 display device, whatever you want to call it.
21      Similarly, under the articulations
22 of the definition by defendants that it is a device
23 with flat display panel and other components
24 assembled by support frames along the edges; again,

Page 11

1  that is exactly consistent with what is in the
2  information that we're seeking.
3       We're not believing that this
4  discovery is going to have an impact on the claim
5  construction, nor will the claim construction have an
6  impact on the discovery. Because, regardless of
7  which articulation of the flat panel display device
8  the Court might adopt, the discovery is still going
9  to be relevant, because the fact of fastening the
10 elements at the corners and/or the fastening elements
11 being found on the back of the flat display panel
12 device, whether it is as defined by LPL or defined by
13 defendants, is going to be relevant to the issues of
14 validity of the patents and LPL's conduct before the
15 patent office.
16      JUDGE POPPITI: And even expecting
17 that your analysis is correct, what impact would you
18 see if I were to come up with a different
19 construction?
20      MR. MILLER: I still don't believe
21 that a different construction that might vary from
22 this would impact the issue of the appropriateness of
23 the discovery. Because ultimately, the product that
24 you're going to identify or that the patents identify

Page 12

1  as a flat panel display device invariably has to be
2  broad enough to encompass this product that is -- but
3  for the mounting structures potentially, but the
4  products that is described in these specifications.
5       And if it's not a flat panel
6  display device, then these would all be noninfringing
7  alternative products and configurations that we would
8  need to be able to have access to, both for our
9  damages case so that we can present to the jury the
10 fact that these are noninfringing alternative
11 configurations and they are identical to the
12 configurations used by the defendant.
13      So if it's not a flat panel display
14 device, under whatever articulation may be arrived at
15 by the Court, then under that circumstance, it's
16 equally if not more relevant.
17      JUDGE POPPITI: Okay. May I hear
18 LPL's position, please.
19      MR. CONNOR: Your Honor, this is
20 Cormac Connor. I'll be arguing on behalf of LPL.
21      JUDGE POPPITI: Thank you.
22      MR. CONNOR: I note the significant
23 point that Mr. Miller just made, and that is that
24 Request No. 128 does, in fact, overlap with prior

Page 13

1  discovery. And I just point that out as a sort of an
2  umbrella issue, because that is something that we
3  pointed out in our briefing.
4       The other -- another point is that
5  the Request No. 128 was propounded pursuant to Your
6  Honor's amendment to the scheduling order that
7  allowed the defendants to seek new discovery --
8       JUDGE POPPITI: Right.
9       MR. CONNOR: -- on newly asserted
10 claims or claims that were asserted back in November.
11      The way we read this request is
12 that it's not seeking anything unique to those new
13 claims, other than the fact that it recites not one
14 but two disputed claim terms, those being "corners"
15 and "flat panel display device."
16      As Viewsonic's motion concedes,
17 they're seeking the exact same types of information
18 that they sought as part of their February 16th
19 motion, and that's borne out by a review of the
20 March 2nd transcript, starting at Page 155 and
21 continuing all the way through 161, where Viewsonic
22 argues point by point for each of the 24 different
23 requests that were covered by that motion, all of the
24 different types of information that we were seeking.

### Page 14

1  Before we get there -- I'll review
2  those types, but before I do, I'd like to look at
3  Exhibit 2 to Viewsonic's motion, and that is the
4  exhibit that contains Request No. 128.
5      JUDGE POPPITI: I've got 128 in
6  front of me.
7      MR. CONNOR: And I'll just start
8  out by -- the very first two words, "all
9  information." Then carries on, "from January 1st,
10 1997, relating to the structures, devices, mechanisms
11 and/or methods used to affix, to cure or mount or
12 attach a flat panel display device" -- there's the
13 first disputed term -- and I'll skip the example --
14 "to, on or within any other structure, including but
15 not limited to a frame, chassis, tray, enclosure,
16 case, housing or stand at or near the corners" -- and
17 here's the second disputed term -- "of the flat panel
18 display device, including a sample of each product."
19     So if we then turn to what is
20 Exhibit 2 -- I'm sorry, it's Exhibit 1 to LPL's
21 submission, and that being the transcript for the
22 March 2nd hearing --
23     JUDGE POPPITI: I'm there.
24     MR. CONNOR: -- starting at 155.

### Page 15

1      JUDGE POPPITI: Just one moment.
2  Okay.
3      MR. CONNOR: Here Viewsonic argues
4  each of the different points that their
5  February 16th motion covers. And I think that a
6  comparison to the topics covered by Viewsonic's
7  February 16th motion lined up against Request
8  No. 128 reveals -- and I should say that the third
9  comparison would be lining it up against Viewsonic's
10 May 2nd motion -- reveals that they're seeking the
11 exact same type of information.
12     Scrolling through on the
13 transcript, it's asking for each mode of practicing
14 the invention. Still on 125, Request 25, looks for
15 all documents identified as prior art.
16     Request 33, looking still on Page
17 155, is related to the commercialization of the
18 patents in suit.
19     The next one down for Request 36,
20 all documents related to obviousness or
21 nonobviousness. 37, it's documents related to
22 commercial success.
23     Skipping ahead to Page 157, looking
24 at Line 7, Viewsonic's counsel notes that Request 73

### Page 16

1  pertains to all flat panel display products that use
2  or practice any invention disclosed or claimed.
3      77, just below it, relating to
4  instructions, directions or information relating to
5  mounting an LCD module.
6      And I'm just pointing those out, by
7  way of an example, that there's nothing different
8  about the information that Viewsonic is seeking in
9  Request 128 and through the current motion that they
10 didn't already seek in their February 16th motion
11 and through argument on the March 2nd hearing.
12     As Your Honor is aware, that
13 hearing resulted in Your Honor ruling that discovery
14 on these issues was going to have to wait, because it
15 dealt with disputed claim terms. And there's no
16 clearer issue in this instance than Request 128
17 covers specifically not one but two disputed claim
18 terms.
19     This is an issue that Judge Farnan
20 laid out in the very beginning of this case. As Your
21 Honor will probably recall, back last fall we had
22 disputes over this very issue, over whether or not
23 discovery in this case was going to be split among --
24 based on the claim construction process.

### Page 17

1      And Your Honor clearly and
2  correctly determined that, based on Judge Farnan's
3  guidance and scheduling order, that discovery that
4  touched on disputed claims was going to have to wait
5  until those claims were construed by the Court.
6      Now, what are we dealing with here?
7  We got -- this Request No. 128 has two disputed claim
8  terms. It focuses squarely on LPL's products, which
9  is the same issue as was covered in the March 2nd
10 hearing.
11     JUDGE POPPITI: Actually, has more
12 than two. It's got -- well, I don't know --
13     MR. CONNOR: At least two.
14     JUDGE POPPITI: But it's got more
15 than two.
16     MR. CONNOR: I won't argue with you
17 on that.
18     What we're arguing about here is
19 whether or not this discovery is going to have to
20 wait until Your Honor issues a ruling on Markman,
21 which I believe is expected on June 21st at the
22 latest.
23     The parties have already agreed
24 that, based on those instructions, discovery is going

Page 18

1  to have to reopen. Your Honor determined that just
2  in the April -- I believe it was the 13th hearing
3  where Your Honor determined that the February 16th
4  motion by Viewsonic was going to have to wait; and
5  Your Honor recognized that, in making that decision,
6  you could be opening up a whole new field of
7  potentially voluminous discovery, and the parties
8  recognized that.
9          But that's where we are. And this
10 request, No. 128, doesn't do anything different than
11 what the 24 different requests covered in the
12 February 16th motion.
13         In addition to the fact that
14 Request 128 is, on its face, overly broad and vague
15 and burdensome. It simply doesn't cover anything new
16 that should be the subject of a ruling that would
17 diverge from the standards that Your Honor has set
18 forth in this case for the governance of discovery.
19         And as a final point, Mr. Miller
20 discussed a little bit about the KSR decision. That
21 decision will certainly have a bearing on this case,
22 but it doesn't have a bearing on this issue at this
23 time.
24         The reason I say that is because

Page 19

1  Your Honor is going to be making determinations based
2  on claim constructions that will either adopt -- and
3  this is LPL's sincere hope that you adopt every one
4  of our constructions, but we recognize that that may
5  not happen.
6          And as Your Honor pointed out, the
7  Court is free to take LPL's constructions, any of the
8  defendants' constructions, or adopt something
9  completely different. And based on that, those
10 constructions that are adopted will define what is or
11 is not prior art, for example.
12         So that's the reason that the
13 dividing line exists, so that we're not getting into
14 unnecessary, irrelevant, burdensome, expensive
15 discovery that's going to end up having no bearing on
16 the case once we get through the Markman process.
17 And we're really only talking about less than a month
18 away for having a final ruling on that.
19         So for those reasons, we don't
20 think that the KSR decision should be bearing on this
21 issue at this time, because a review of the
22 procedural history in that case is that it was
23 dealing with the summary judgment motion --
24         JUDGE POPPITI: I'm mindful of

Page 20

1  that.
2          MR. CONNOR: -- which dealt with
3  after discovery had been completed. So we're not
4  there yet.
5          And the question about whether or
6  not prior art should or should not be included in the
7  body of discovery and evidence in this case is an
8  issue that is still open and is waiting for Your
9  Honor's claim construction.
10         So having said that, we ask that
11 the motion be denied, because Request 128 is
12 redundant and premature.
13         MR. CHRISTENSON: Your Honor, this
14 is Cass Christenson. I just wanted to add one point
15 to that.
16         Mr. Miller alluded to that this
17 discovery might possibly relate to an inequitable
18 conduct defense regarding disclosures to the PTO in
19 the prosecution of these patents.
20         And certainly we dispute the
21 relevance of any of that discovery, that it could be
22 relevant -- that technical discovery on LPL's
23 products could be relevant in any way with an
24 inequitable conduct defense.

Page 21

1          But what I wanted to apprise Your
2  Honor is that there is no defense of inequitable
3  conduct pled by Viewsonic. I just received a letter
4  from Mr. Miller last night requesting that we consent
5  to an amended Answer to be filed to raise now, after
6  discovery, a new defense for inequitable conduct.
7  But right now, there's no such defense in this case
8  by Viewsonic.
9          MR. MILLER: Can I speak to that?
10         JUDGE POPPITI: Sure.
11         MR. MILLER: The inequitable
12 conduct defense was pled by Tatung. It clearly is in
13 this case, and what we've done is asked to confirm
14 our Answer essentially to what Tatung pled with
15 updates of a couple of additional pieces of prior art
16 we believe LPL was aware of at the time of the
17 prosecution of these patents.
18         And if they reject it and the Court
19 rejects our ability to have it in the case, it's
20 still in the case, because the Tatung has pled it.
21 And so inequitable conduct is going to be tried as
22 part of this case under any circumstances.
23         And so we're entitled to take
24 discovery relating to the issues raised by the

Conference

7 (Pages 22 to 25)

Page 22

1  pleadings in this case, not just limited to the
2  issues that we may have raised or may not have
3  raised.
4        Mr. Connor's arguments that these
5  discovery -- this discovery request should be denied
6  because the courts withheld ruling on the other
7  discovery request because they had numerous claim
8  terms seems to me to be putting -- ignoring the fact
9  that one has to evaluate this request on the terms of
10 this request.
11       JUDGE POPPITI: No, and I
12 understand that.
13       No. 1, if I decide to be consistent
14 with the ruling that the discovery is staged the way
15 I expect that Judge Farnan states it, by virtue of
16 signing the scheduling order, which you all crafted,
17 and staged in a fashion that I continue to structure,
18 with Judge Farnan's direction to me, by virtue of
19 saying some discovery will likely have to occur after
20 Markman, I in no way intend to suggest, and will not,
21 deny the motion. I will simply forestall it.
22       And I want to just talk about that
23 just for a little bit longer.
24       There is some suggestion,

Page 23

1  Mr. Miller, in your papers, that were I to forestall
2  the discovery until after the terms have been --
3  after the claims and the terms have been construed,
4  that -- I'm not sure I recall you actually using the
5  word, but you may have: Prejudice, that it would
6  have some impact on the trial. And I'm not quite
7  sure what you're suggesting.
8        MR. MILLER: Here's my concern,
9  Your Honor.
10       LPL has advised all of us that this
11 discovery is going to be voluminous. We will have
12 approximately three weeks from the date of the claim
13 construction order in which to finalize our expert
14 report on invalidity defenses. Now, that would
15 include the issues of inequitable conduct.
16       And just to dot the "I" on that
17 point, we have put in our discovery responses, under
18 our unclean hands defense, which has been
19 specifically pled, information about the inequitable
20 conduct defense, and specifically raised it during
21 the discovery period in this case.
22       And so LPL -- it's an issue that
23 will have to be decided by Judge Farnan, I
24 understand. But I just want you to have the full

Page 24

1  background of that circumstance.
2        JUDGE POPPITI: Right.
3        MR. MILLER: In that three-week
4  period of time, there's just no possible way that
5  we're going to be able to obtain, digest and prepare
6  a report of an expert of voluminous discovery
7  relating to fasteners on the back of these devices
8  and their impact on LPL's obligation to make
9  disclosure to the patent office and the obviousness
10 that may result from that.
11       And as a result, if we don't --
12 we're obviously not even going to have the full three
13 weeks, because once the Court issues the order, then
14 it will re-take up the issue of this discovery. And
15 presumably it's going to take -- I would imagine it's
16 going to take a week or 10 days, if not two weeks, in
17 order to get that material in our hands in the first
18 instance; even if the Court decides at that point in
19 time -- assuming the Court decides at that point in
20 time that the discovery should go forward.
21       Under those circumstances, it's
22 going to be completely impossible for us to meet the
23 deadlines that have been set by the Court for the
24 expert discovery, which obviously has an impact all

Page 25

1  the way down the line, through the summary
2  adjudication motions and ultimately, potentially, on
3  the trial date.
4        So we can't be asked, I don't
5  believe, to -- because of the staging order that's
6  been entered by Judge Farnan, if this is his
7  intention, to compress our ability to put together an
8  expert report on voluminous -- analyze and prepare a
9  report on voluminous discovery over the course of
10 what's going to amount to a week or 10 days of time.
11       JUDGE POPPITI: And I can't -- I
12 certainly am not in a position to suggest what Judge
13 Farnan would do or not do. At the same time, it is
14 my primary responsibility to make sure that the time
15 frames that have been established are workable and
16 are working.
17       So if they're not working, then
18 it's my responsibility to listen to your respective
19 positions, make some informed judgment as to how
20 deadlines that are established, short of moving the
21 trial deadlines, can be adjusted. So there's
22 certainly no expectation on my part that you would be
23 working within the constraints of that very short
24 period of time.

### Page 26

1  It may be helpful for me to
2  expand -- let me see if I have -- just give me one
3  moment. I'm operating out of a different room today,
4  and I want to access the calendar. If you all would
5  just give me a moment, I'm going to put you on mute.
6  (Discussion off the record.)
7  JUDGE POPPITI: Thank you for your
8  patience, Counsel.
9  MR. CHRISTENSON: Your Honor, this
10 is Cass Christenson. May I respond to what
11 Mr. Miller said?
12 JUDGE POPPITI: Yes, you may. But
13 I want a moment to look down at some dates here.
14 I'm just looking at the date that I
15 have committed myself to issuing the initial
16 recommendation, and that is on the 21st of June.
17 You know, I will make every effort
18 to get that out before then. And I don't know
19 whether I should actually commit to a different date,
20 but I'm -- the 21st is on a Thursday.
21 I think what I can do is commit to
22 you, so at least you see time frames in terms of how
23 they are unfolding, to be -- to the Friday before
24 that, the 15th.

### Page 27

1  And knowing that I -- were I to
2  take the same approach with this application as I
3  took with an earlier application, knowing that there
4  will be discovery impact -- or there is likely to be
5  discovery impact, it may be important for me to
6  schedule time now for a conference to deal with that.
7  I don't know whether that would be
8  helpful.
9  For example, if I commit to issuing
10 on the 15th -- that's a Friday -- and reschedule a
11 conference on the 19th to deal with the impact of
12 the Markman on discovery -- that may be too soon, but
13 we can do it the 20th, for example, and give you
14 all time on Monday to describe, in very short order,
15 what you see to be the impact, and deal with it
16 either on the 19th or the 20th.
17 Any thoughts?
18 MR. CONNOR: Your Honor, I think
19 that is a workable proposal.
20 I just want to point out that
21 our -- we certainly disagree with Mr. Miller's
22 generalizations about the -- first, about volume of
23 discovery. Because as he said, he said that -- he
24 made that statement that it will be voluminous.

### Page 28

1  It certainly may be, but that's
2  also going to depend on where the constructions come
3  out. In fact, depending what the constructions are,
4  it may be nothing.
5  And the second point is that he
6  said that it would be, therefore, completely
7  impossible for Viewsonic to meet their deadline. I
8  don't know how, at this point, he can make those
9  kinds of representations without knowing what the
10 ruling is going to be and what the volume of
11 discovery is going to be.
12 JUDGE POPPITI: I understand that.
13 MR. CONNOR: Additionally, he made
14 a point about the inequitable conduct defense, which
15 apparently Viewsonic's -- I may be getting into what
16 Mr. Christenson --
17 MR. CHRISTENSON: Yeah, that was
18 the point I was going to make.
19 I wanted to make you aware that
20 there's a decision by Judge Farnan that -- as I
21 recall; I don't have it in front of me. But as I
22 recall, he states that a party cannot essentially
23 plead or support a defense of an inequitable conduct
24 through Interrogatory answers.

### Page 29

1  So again, we're going to have a
2  dispute about whether there's any inequitable conduct
3  defense.
4  JUDGE POPPITI: But that's
5  something for another day.
6  MR. CHRISTENSON: And I just want
7  to make the point that Viewsonic doesn't have that
8  defense. I don't see how it could have an expert
9  report on a defense it has not pled.
10 JUDGE POPPITI: Well, I expect,
11 then, that I may be dealing with that in short order.
12 Correct?
13 MR. CHRISTENSON: That seems to be
14 the case, Your Honor. Yes.
15 JUDGE POPPITI: All right. Well,
16 let me -- I appreciate and I believe understand your
17 respective views on the application. I will defer
18 the application until after the issuance of the
19 Markman decision.
20 If it is going to be helpful --
21 because I certainly don't want to shave time off of
22 the time that I've allotted to myself. But if it is
23 going to be helpful to issue on the 15th and then
24 begin to use the time in the new week to discuss the

Page 30

1  impact of Markman on discovery, then I'm willing to
2  commit myself to the 15th.
3        Now, I understand, as we all
4  understand, that my work is not something that gets
5  written in stone. It is in sandstone until you all,
6  as parties, either agree to accept it, or even after
7  objection, Judge Farnan exercises his authority and
8  either adopts, rejects or modifies it. But that does
9  not suggest that we don't keep the ship moving
10 forward.
11       So if there is a consensus that
12 issuing on the 15th and then beginning to focus on
13 the impact on discovery 18, 19 and 20, then I'll do
14 that.
15       MR. MILLER: Your Honor, I think
16 the earlier we can start assessing the impact on
17 discovery, the better off we'll all be.
18       MR. CHRISTENSON: Your Honor, I
19 agree with Mr. Miller. I think we all need to
20 understand what Your Honor's rulings will be and then
21 have a chance to digest it and then proceed
22 accordingly.
23       JUDGE POPPITI: All right. Well,
24 then, I will commit to issuing on the 15th.

Page 31

1         And is it premature to talk about
2  the following week, or should we target something in
3  the following week?
4         And let me just describe part of a
5  calendar. I will not be -- that would be too late
6  anyway. But just for Counsel's information, I will
7  not be in the office of week of July 4. So whatever
8  we're doing, we're going to be doing commencing the
9  week of the 18th and the week of the 25th.
10       MR. MILLER: Your Honor, I think we
11 should try to do something that week of the 18th.
12 I might suggest that we have until the end of the
13 19th to -- because that's Father's Day weekend. I
14 don't know if people will be traveling and things --
15 I know I'm actually traveling that weekend.
16       But if we have until the end of the
17 19th to file something, and then perhaps have a
18 conference with Your Honor on the 21st.
19       JUDGE POPPITI: Okay. Does that
20 work for everyone?
21       MR. CHRISTENSON: You know, I don't
22 have a calendar in front of me. I guess my thought
23 is, given that that is the Father's Day weekend,
24 perhaps we could submit something by close of

Page 32

1  business on the Wednesday, and have a conference with
2  you on the Friday. That would give us --
3         JUDGE POPPITI: Let's do this. I
4  will -- whether it's a Thursday, which was a
5  committed day for me anyway, expecting that I was
6  going to be using all the time to ramp up to Markman
7  and to issue it. So you know that I've got
8  availability on the 21st. And I can tell you that
9  I have -- I presently have ability on the 22nd.
10       I would like you all to marshal
11 your own forces and make some determination as to
12 when there will be a filing in the nature of a
13 discovery update, status if you will, what yet needs
14 to be done.
15       I'd like you to discuss some page
16 limitations so it make sense for me, on this end, to
17 get whatever you're going to be giving me so that I
18 can turn it around and make a determination either on
19 the 21st or 22nd. But I'll leave it to you all
20 to work out that detail.
21       And then just be in a position to
22 let me know -- well, let me know at Markman, or at
23 the end of the Markman.
24       MR. CHRISTENSON: Very well, Your

Page 33

1  Honor.
2         MR. MILLER: That's fine, Your
3  Honor.
4         JUDGE POPPITI: Now, I think that's
5  all we need. I just want to make sure that we have
6  enough time scheduled for Markman. I know we
7  addressed this briefly the other day. And if there's
8  any sense that we're going to need the courtroom
9  beyond what they consider to be their normal closing
10 time of 5 o'clock, please let me know that so I can
11 tell them that we're going to need the courtroom
12 beyond 5:00. We're starting at 2:00.
13       MR. MILLER: I have on our calendar
14 we were starting at 1:00, Your Honor.
15       JUDGE POPPITI: Wait a minute. I'm
16 sorry. We are starting at 1:00. Thank you.
17       So that should give us more than
18 sufficient time. If there's any sense that it is not
19 giving us sufficient time, just let my office know so
20 that we can make whatever arrangements we need to
21 have late lights.
22       That's an old Jesuit term, for
23 those of you who remember late lights in college.
24       Anything else, please?