# CASE 1

Westlaw.

435 F.3d 1356                                                                                           Page 1
435 F.3d 1356, 77 U.S.P.Q.2d 1666
(Cite as: 435 F.3d 1356)

▷

United States Court of Appeals,
Federal Circuit.
APPLIED MEDICAL RESOURCES
CORPORATION, Plaintiff-Appellee,
v.
UNITED STATES SURGICAL CORPORATION,
Defendant-Appellant.
No. 05-1149.

Jan. 24, 2006.

**Background:** Owner of patent for "trocar" surgical device sued competitor for infringement. The United States District Court for the Central District of California, Cormac J. Carney, J., 352 F.Supp.2d 1119, held for owner, and competitor appealed.

**Holdings:** The Court of Appeals, Lourie, Circuit Judge, held that:
(1) owner, having previously prevailed on infringement claim against competitor, was not collaterally estopped from asserting different hypothetical royalty rate, and
(2) evidence supported finding that infringement was willful.
Affirmed.

West Headnotes

**[1] Courts** ⇐═96(7)
106k96(7) Most Cited Cases
Application of collateral estoppel in patent case is governed by law of regional circuit.

**[2] Patents** ⇐═327(13)
291k327(13) Most Cited Cases
Patent infringement plaintiff, having previously prevailed on infringement claim based on prior version of accused device and received reasonable royalty damages, was not collaterally estopped from asserting different hypothetical royalty rate for current infringement; infringements were different, and market conditions under which hypothetical negotiations would have taken place at start of each infringement were different. 35 U.S.C.A. § 284.

**[3] Patents** ⇐═319(1)
291k319(1) Most Cited Cases
"Reasonable royalty," as measure of damages for patent infringement, is amount that person, desiring to manufacture, use, or sell patented article, as business proposition, would be willing to pay as royalty and yet be able to make, use, or sell patented article, in market, at reasonable profit. 35 U.S.C.A. § 284.

**[4] Patents** ⇐═319(1)
291k319(1) Most Cited Cases
When established royalty does not exist, court calculating patent infringement damages may determine reasonable royalty based on hypothetical negotiations between willing licensor and willing licensee. 35 U.S.C.A. § 284.

**[5] Patents** ⇐═319(1)
291k319(1) Most Cited Cases
Reasonable royalty determination, for purposes of calculating patent infringement damages, must relate to time infringement occurred. 35 U.S.C.A. § 284.

**[6] Patents** ⇐═319(1)
291k319(1) Most Cited Cases
Fact that same company sold two different products which infringed patent does not prevent patentee from litigating and collecting separate damages for each infringement.

**[7] Patents** ⇐═327(13)
291k327(13) Most Cited Cases
Patent infringement defendant, having lost on claim that patent was invalid when previously sued for infringement based on prior version of accused device, was collaterally estopped from asserting from asserting same invalidity argument in current litigation.

**[8] Patents** ⇐═319(1)
291k319(1) Most Cited Cases
Hypothetical license negotiation, for purpose of calculating reasonable royalty damages for patent infringement, occurs on date of first infringement. 35 U.S.C.A. § 284.

**[9] Patents** ⇐═312(8)
291k312(8) Most Cited Cases
Finding that surgical device manufacturer's infringement of trocar patent was willful was supported by evidence that manufacturer desperately needed accused device to remain competitive, that its management placed intense time pressure on its engineers, who were attempting to design around

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

435 F.3d 1356  Page 2
435 F.3d 1356, 77 U.S.P.Q.2d 1666
(Cite as: 435 F.3d 1356)

patent, and that it did not rely on opinions of counsel in good faith.

[10] Patents ⌕312(2)
291k312(2) Most Cited Cases
Admission of evidence in patent infringement case, that plaintiff had previously prevailed on infringement claim against defendant, was not abuse of discretion; evidence was relevant both to issue of willfulness and as factor affecting reasonable royalty calculation.

Patents ⌕328(2)
291k328(2) Most Cited Cases
5,385,553. Infringed.
*1357 Joseph R. Re, Knobbe, Martens, Olson & Bear, LLP, of Irvine, California, argued for plaintiff-appellee. With him on the brief were Karen Vogel Weil, Joseph F. Jennings, Joseph S. Cianfrani, and Christy Green Lea. Of counsel was Brian C. Horne, of Los Angeles, California.

Glen E. Summers, Bartlit Beck Herman Palenchar & Scott LLP, of Denver, Colorado, argued for defendant-appellant. Of counsel on the brief was Donald L. Morrow, Paul Hastings Janofsky & Walker LLP, of Costa Mesa, California. Of counsel was Fred H. Bartlit, Jr., Bartlit Beck Herman Palenchar & Scott LLP, of Denver, Colorado.

Before LOURIE, RADER, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

United States Surgical Corporation ("U.S.Surgical") appeals from the decision of the United States District Court for the Central District of California granting *1358 judgment of willful infringement of U.S. Patent 5,385,553 in favor of Applied Medical Resources Corporation ("Applied"), and awarding damages, enhanced damages, attorney fees, and prejudgment interest totaling $64.5 million. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, Civ. No. 99-CV-625 (C.D.Cal. Jan. 27, 2005). Because the district court did not err in not applying collateral estoppel to the reasonable royalty rate, substantial evidence supports the jury's verdict of willful infringement, and the court did not abuse its discretion in admitting evidence regarding a prior litigation, we affirm.

BACKGROUND
The '553 patent is entitled "Trocar With Floating Septum Seal" and was issued to Applied as assignee. The invention relates to surgical devices called trocars, which are used as access ports into the abdomen during laparoscopic surgery. Laparoscopic surgery is performed by inflating the abdomen and inserting instruments through trocars. It is important for the trocar to maintain a seal with the instrument; otherwise, the insufflation gas used to inflate the abdomen would leak and potentially cause serious complications.

Early trocars did not accommodate instruments of different diameters. For example, inserting a relatively small instrument through a large seal would produce a gap between the instrument and the seal, allowing the insufflation gas to leak out from the abdomen. As a result, surgeons were required to either use multiple trocars with differently sized seals or "flip top" adapters to accommodate differently sized instruments. The invention of the '553 patent eliminates the need for adapters, describing a trocar which maintains a seal around instruments of various sizes, using a "floating seal." Specifically, claim 3 recites a trocar whose seal includes excess material at its outer portions, which permits the seal orifice to move without allowing gas to leak. '553 patent, col. 11, ll. 57-62. Claim 4, which depends from claim 3, further requires that the excess material be configured in a bellows shape. *Id.*, col. 11, ll. 63-64.

The parties to this appeal are no strangers to each other and to this court. Applied first sued U.S. Surgical in the United States District Court for the Eastern District of Virginia in 1996 ("*Applied I*"), alleging that U.S. Surgical's sale of its Versaport trocars ("Versaport I") infringed the '553 patent, as well as two other Applied patents. In 1997, a jury found that U.S. Surgical willfully infringed claims 4 and 18 of the '553 patent as well as two other Applied patents, and awarded damages in the form of a 7% reasonable royalty. The court granted judgment for $20.5 million and entered a permanent injunction enjoining further infringing sales effective May 20, 1997. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 967 F.Supp. 861 (E.D.Va.1997). We affirmed that judgment on June 30, 1998. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374 (Fed.Cir.1998).

During the *Applied I* litigation, U.S. Surgical began redesigning its Versaport trocar. U.S. Surgical completed its redesign shortly after the *Applied I* verdict and began selling the redesigned Versaport ("Versaport II") by June 2, 1997. [FN1] On *1359 April 16, 1999, Applied filed a second complaint

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

435 F.3d 1356 Page 3
435 F.3d 1356, 77 U.S.P.Q.2d 1666
(Cite as: 435 F.3d 1356)

against U.S. Surgical in the United States District Court for the Central District of California, alleging that Versaport II infringed the '553 patent ("*Applied II* "). The parties filed competing motions for summary judgment: Applied, for infringement of claim 3 of the '553 patent, and U.S. Surgical, for noninfringement and invalidity of claim 3. On February 28, 2002, the district court granted Applied's motion for summary judgment of infringement of claim 3, and entered a permanent injunction effective November 1, 2002. U.S. Surgical appealed to this court, and we affirmed the court's judgment and injunction on September 11, 2003. *Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 75 Fed.Appx. 765 (Fed.Cir.2003).

> FN1. The redesigned Versaport continued to be sold under the same name and the same model number as the original Versaport. To avoid confusion, however, we will refer to the original trocar as Versaport I and the redesigned trocar as Versaport II.

Having resolved liability and validity issues, the district court then held a trial to determine the damages owed to Applied for U.S. Surgical's infringing sales of Versaport II, and to determine whether U.S. Surgical's infringement was willful. Before trial, U.S. Surgical moved to establish as a matter of law that the reasonable royalty for infringing sales of Versaport II was 7%, arguing that the reasonable royalty established in *Applied I* for infringing sales of Versaport I was binding under principles of collateral estoppel. U.S. Surgical also sought to preclude introduction of evidence related to the jury's finding of willful infringement in *Applied I*. The court denied both motions. The court first held that the jury would make "its own '*independent* ' determination of the reasonable royalty rate in 1997" and was thus not bound by the royalty rate in *Applied I.* (emphasis in original). The court also concluded that evidence regarding *Applied I* was relevant to willful infringement and damages because the "fact that U.S. Surgical had infringed the '553 patent once before in its actions in response thereto is probative of its intent to infringe the '553 patent a second time."

The trial commenced on July 14, 2004. At the close of Applied's case-in-chief, U.S. Surgical again moved for judgment as a matter of law that the 7% reasonable royalty from *Applied I* for infringing sales of Versaport I estopped Applied from asserting that a different damages determination should apply in *Applied II*. The court denied the motion, stating that it had "already ruled on that." U.S. Surgical also moved for judgment as a matter of law of no willful infringement. The court deferred that ruling under Federal Rule of Civil Procedure 50(b) until after the jury rendered its verdict.

On July 27, 2004, the jury found that U.S. Surgical's infringement was willful and awarded Applied damages of $43,575,907. U.S. Surgical renewed its motions for judgment as a matter of law on the grounds of collateral estoppel and lack of willful infringement. At the same time, Applied filed a motion for enhanced damages. The court denied both of U.S. Surgical's motions for judgment as a matter of law on October 4, 2004. On the same day, the court granted Applied's post-trial motion and enhanced compensatory damages by 25%. Applied then moved for attorney fees, prejudgment interest, and post-judgment interest. The court granted that motion on January 12, 2005.

On January 27, 2005, the court entered final judgment in favor of Applied in the amount of $64.5 million. U.S. Surgical timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION
I. *Collateral Estoppel*

[1] We review a trial court's application of collateral estoppel by applying the **\*1360** law of the regional circuit. *See Bayer AG. v. Biovail Corp.,* 279 F.3d 1340, 1345 (Fed.Cir.2002) ("Because the application of collateral estoppel is not a matter within the exclusive jurisdiction of this court, this court applies the law of the circuit in which the district court sits."). The Ninth Circuit has reviewed the application and non-application of collateral estoppel by trial courts under varying standards, either without deference or for abuse of discretion. *Compare McQuillion v. Schwarzenegger,* 369 F.3d 1091, 1096 (9th Cir.2004) ("We review *de novo* the application of collateral estoppel."); *United States v. Real Prop. Located at 22 Santa Barbara Drive,* 264 F.3d 860, 868 (9th Cir.2001) ("Application of collateral estoppel is reviewed *de novo.*"), *with Bates v. Union Oil Co. of Cal.,* 944 F.2d 647, 651 (9th Cir.1991) ("We review a district court's decision to apply collateral estoppel for abuse of discretion."); *Garrett v. City & County of San Francisco,* 818 F.2d 1515, 1520 (9th Cir.1987) ("The *availability* of collateral estoppel is subject to *de novo* review, but *application* of the doctrine, if available, is reviewed for abuse of discretion."). We need not resolve which standard should apply to the collateral estoppel analysis because even under a more exacting plenary review,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

435 F.3d 1356                                                                                                  Page 4
435 F.3d 1356, 77 U.S.P.Q.2d 1666
**(Cite as: 435 F.3d 1356)**

the result in this case would be the same.

On appeal, U.S. Surgical argues that the district court erred in refusing to give collateral estoppel effect to the 7% reasonable royalty rate found by the jury in *Applied I*. U.S. Surgical contends that all of the requirements for application of collateral estoppel are satisfied because the reasonable royalty rate was actually litigated in *Applied I*, it was decided by a jury, and the jury's determination was essential to the district court's final judgment in *Applied II*. U.S. Surgical maintains that the issue that the *Applied I* jury decided is the same issue presented in *Applied II*, and points out that both cases involved the same parties, the same patent, and the same type of product. In addition, according to U.S. Surgical, the infringement in *Applied II* is an uninterrupted continuation of the infringement in *Applied I*, and therefore the correct date of a hypothetical negotiation in *Applied II* is the 1994 time period used in *Applied I*, rather than 1997.

Applied responds that the court properly denied collateral estoppel effect to the 7% reasonable royalty rate found by the jury in *Applied I* because that determination was for infringing sales of Versaport I, and should not limit U.S. Surgical's liability for later infringing sales of Versaport II. Applied contends that because the parties independently litigated infringement, willfulness, and damages for Versaport I and Versaport II, the products constitute separate infringements and require separate hypothetical negotiations to determine damages. According to Applied, the hypothetical negotiation relating to Versaport II involved market conditions that did not exist at the time of the 1994 hypothetical negotiation in *Applied I*, viz., increased demand for the patented product and decreased supply resulting from U.S. Surgical's enjoinment from making Versaport I.

[2] We agree with Applied that the district court properly denied collateral estoppel effect to the 7% reasonable royalty rate found by the jury in *Applied I*. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *1361*Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)* (citing *Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)*); *see also San Remo Hotel, L.P. v. City and County of San Francisco, Cal., 545 U.S. 323, ---- - ----, 125 S.Ct. 2491, 2500-01, 162 L.Ed.2d 315 (2005)*. As we explained in *Arkla, Inc. v. United States, 37 F.3d 621* (Fed.Cir.1994):

> Collateral estoppel is appropriate only if: (1) the issue to be decided is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full and fair opportunity to litigate the issue in the first action.

*Id.* at 624 (citation omitted). Here, collateral estoppel is not appropriate because the necessary reasonable royalty determination in *Applied II* is not identical to that decided in *Applied I*.

[3] As an initial matter, the juries in both *Applied I* and *Applied II* employed a reasonable royalty calculation because actual damages could not be adequately proved. *Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 870 (Fed.Cir.1993)* (citing *Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed.Cir.1988)*). "A reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonable profit.'" *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1568 (Fed.Cir.1984)* (citations omitted). "The objective of [a] reasonable royalty calculation is to determine the amount necessary to adequately compensate for an infringement." *Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1109 (Fed.Cir.1996)*.

[4][5] When an established royalty does not exist, a court may determine a reasonable royalty based on "hypothetical negotiations between willing licensor and willing licensee." *Fromson, 853 F.2d at 1574*. We have held that a reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred. *Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1079 (Fed.Cir.1983)* ("The key element in setting a reasonable royalty ... is the necessity for return to the date when the infringement began.") (quoting *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1158 (6th Cir.1978)*); *see also Fromson, 853 F.2d at 1575* (holding that hypothetical royalty negotiations methodology "speaks of negotiations as of the time infringement began").

Consistent with our precedent, reasonable royalty damages are not calculated in a vacuum without consideration of the infringement being redressed. *Id.* We are required to identify the infringement requiring compensation, and evaluate damages based

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on a hypothetical negotiation at the time that infringement began, not an earlier one. *Id.* Here, the issue of reasonable royalty damages in *Applied II* is not identical to the issue of reasonable royalty damages in *Applied I* because the infringements requiring compensation began at separate and distinct times. The infringement in *Applied II* was caused by sales of Versaport II, which began in 1997, whereas the infringement in *Applied I* was caused by sales of Versaport I, which began in 1994. Because Versaport I and Versaport II caused two separate infringements, and each infringement commenced on a different date, it follows that the ***1362** reasonable royalties may well be different from each other. Reasonable royalty damages for the infringement caused by Versaport II are tied to sales of Versaport II beginning in 1997. We cannot relate reasonable royalty damages for Versaport II sales back to a separate and past infringement caused by Versaport I sales beginning in 1994. Indeed, the issue of reasonable royalty damages for Versaport II sales could not have been and was not considered, much less decided, in *Applied I* because that product had not yet been determined to infringe. We conclude that the damages issues in *Applied I* and *Applied II* are not identical, and therefore the jury's award of reasonable royalty damages for infringing sales of Versaport I in *Applied I* does not preclude another jury's evaluation of reasonable royalty damages for infringing sales of Versaport II at a different time in *Applied II.*

Further, there is no legal or factual basis for viewing the separate infringements caused by sales of Versaport I and Versaport II as the same infringement. U.S. Surgical has asserted that Versaport II is a different product from the Versaport I trocar: the "product that was at issue in *Applied I* is *vastly different* than the new [Versaport II] at issue in this case." (emphasis added). U.S. Surgical has also agreed that Versaport II involved different infringement issues than Versaport I because the seals were different: "[f]rom this thorough and careful re-design process emerged an *entirely different,* non-infringing trocar, with a *completely new* and improved seal system." (emphases added). Having conceded that Versaport I and Versaport II were different infringements, U.S. Surgical's attempt to conflate the two products for purposes of damages fails. Because the determination of reasonable royalty damages is tied to the infringement being redressed, a separate infringement beginning at a different time requires a separate evaluation of reasonable royalty damages. To argue otherwise, U.S. Surgical would have to concede that it has willfully violated the permanent injunction in *Applied I.*

[6][7] U.S. Surgical argues that its infringement of the '553 patent has been continuous and uninterrupted since 1995, and therefore that the damages issue in *Applied II* was decided in *Applied I.* U.S. Surgical also contends that there can be no genuine dispute that the issues in *Applied I* and *Applied II* were the same because the final judgment in *Applied I* had stated that "Applied is entitled to a seven percent royalty on the sales of each Surgical product which infringed ... the '553 patent." We disagree. That the infringement activity caused by Versaport I and Versaport II may appear to be continuous in time does not mean that it is a continuous infringement in law. The sales of Versaport II constituted a separate and distinct infringement from sales of Versaport I, and Applied is entitled to prosecute and recover damages for each infringement under the statute. 28 U.S.C. § 271 (2000). Indeed, simply because the *same* company sold two *different* products which infringed a patent does not prevent the patentee from litigating and collecting *separate* damages for *each* infringement. Further, we reject U.S. Surgical's contention that the district court's denial of collateral estoppel for purposes of damages is inconsistent with its grant of collateral estoppel for purposes of validity. A conclusion in *Applied I* that the patent is not invalid properly estops U.S. Surgical from making the same arguments in *Applied II.* The issue is the same. That the validity of the '553 patent was adjudicated in *Applied I* does ***1363** not mean, however, that the reasonable royalty rate for infringing sales of Versaport II was also decided in *Applied I.* The damages issues are not the same.

U.S. Surgical asserts that even if there were a lack of "total identity" of issues between *Applied I* and *Applied II,* the issues must be deemed identical for collateral estoppel purposes because, in both litigations, there was substantial overlap in the evidence, application of the same rule of law, similar matters embraced in pre-trial preparation, and closely related claims involving the same patent, the same parties, and the same type of product. That argument misses the point. We recognize that there may be instances, which we do not address here, in which two products, even if not identical, may present the same damages analysis. That is not the case here. The two infringements caused by Versaport I and Versaport II sales began at *different* times, and require two different hypothetical negotiation dates. Indeed, the evidence supporting damages in *Applied II* was entirely different from the evidence offered in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

435 F.3d 1356    Page 6
435 F.3d 1356, 77 U.S.P.Q.2d 1666
**(Cite as: 435 F.3d 1356)**

*Applied I.* For example, the *Applied II* jury heard evidence regarding the market conditions in 1997 for Versaport II, the license agreements entered into by Applied in 1998 and 1999, and the ability of Versaport II to compete with Applied's products in 1997, none of which was available to the *Applied I* jury. Because the determination of reasonable royalty damages is tied to the infringement being compensated for, reasonable royalties for a different infringement beginning at a different time may well be different from each other.

U.S. Surgical also argues that the district court confused the start of the infringement with the start of the damages period, relying on *Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860 (Fed.Cir.2003), *vacated and remanded,* 545 U.S. 193, 125 S.Ct. 2372, 162 L.Ed.2d 160 (2005) and *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858 (Fed.Cir.1993). These cases do not provide the necessary support for its argument. Both cases involved one initial infringement, not two separate infringements. In *Wang,* the parties agreed that the single infringement at issue began in 1987. 993 F.2d at 869. However, the district court in *Wang* chose January 1990, the date the patentee gave notice of the infringement, rather than April 1987 as the date of hypothetical negotiation. *Id.* We reversed, holding that the hypothetical negotiation occurred "when the infringement began" in April 1987. *Id.* at 870. We observed that that was the case even though the damages period did not begin until six years prior to the filing of the infringement action under 35 U.S.C. § 286.

Similarly, the alleged infringement in *Integra* was a single infringement consisting of a series of experiments that took place between 1994 and 1998. 331 F.3d at 870. The district court held that some of the 1994 experiments were not infringing acts due to experimental use, but the record showed that at least one of the 1994 experiments was not considered exempted from infringement. *Id.* We remanded for the district court to determine whether the 1994 experiments were infringing acts, and to clarify whether the hypothetical negotiation would have occurred in 1994 or 1995. *Id.* We explained, "If indeed the record shows that the first infringement occurred in 1994, then the hypothetical negotiation should be regarded as having occurred at least before that earlier date. On remand, the trial court will have the opportunity to clarify the proper timing of the reasonable royalty calculus." *Id.*

[8] Our holdings in *Wang* and *Integra* reiterate the rule that the hypothetical negotiation *1364 relates to the date of first infringement. There is nothing to suggest that we should tie a hypothetical negotiation to a prior infringement no longer at issue. Here, the hypothetical negotiation date for infringing sales of Versaport II relates to the infringement caused by Versaport II sales beginning in 1997, not the past infringement caused by Versaport I sales beginning in 1994. Moreover, while a hypothetical negotiation may occur on a different date than the beginning of the damages period in certain circumstances, as in *Wang,* that outcome results from the statute limiting the damages period. 35 U.S.C. § 286 (2000). No such limitation operates here. In this case, the complaint was filed less than six years after the infringement began, and therefore damages first began to accrue at the same time that the infringement began. Accordingly, the proper hypothetical negotiation date for calculation of reasonable royalty damages in *Applied II* is 1997.

II. *Denial of Judgment as a Matter of Law*

[9] The denial of a motion for judgment as a matter of law "is a procedural issue not unique to patent law, which we review under the law of the regional circuit where the appeal from the district court normally would lie." *Riverwood Int'l Corp. v. R.A. Jones & Co.,* 324 F.3d 1346, 1352 (Fed.Cir.2003). In the Ninth Circuit, the denial of a motion for judgment as a matter of law is reviewed *de novo. Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir.2004). Judgment as a matter of law requires that "we view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of that party." *Id.* (citation omitted). The Ninth Circuit upholds any jury verdict supported by substantial evidence. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.,* 411 F.3d 1030, 1040 (9th Cir.2005) (citation omitted). The Ninth Circuit has explained that when reviewing the record as a whole, we must keep in mind that "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 1040-41.

U.S. Surgical argues that the court erred in not granting its motion for judgment as a matter of law of no willful infringement because the evidence established at every stage of the development process for Versaport II, U.S. Surgical acted with due care and a good faith belief of noninfringement. U.S. Surgical points out that the district court found no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

435 F.3d 1356                                                                                                        Page 7
435 F.3d 1356, 77 U.S.P.Q.2d 1666
**(Cite as: 435 F.3d 1356)**

evidence that U.S. Surgical deliberately copied Applied's patent, and that the court concluded that U.S. Surgical engaged in an intense and deliberate program to design around the '553 patent. U.S. Surgical also asserts that uncontroverted evidence established that U.S. Surgical regularly consulted with its in-house patent counsel during the redesign process, requested the advice of outside law firms, and did not make a single sale until after U.S. Surgical received a written second opinion from a patent attorney at another law firm. According to U.S. Surgical, Applied did not introduce "clear and convincing" evidence that U.S. Surgical lacked a good faith belief that its Versaport II trocar did not infringe.

Applied responds that U.S. Surgical does not rebut the evidence cited by the court as supporting the jury's verdict of willful infringement, which showed that **\*1365** U.S. Surgical (1) desperately needed a trocar with a floating seal to satisfy its customer demands, (2) began its redesign efforts only in response to the threat of an injunction in *Applied I*, (3) did not give its engineers sufficient time to avoid an infringing design, (4) did not rely upon any opinions of counsel in good faith, and (5) continued selling its infringing trocars for eight months after the ruling of infringement.

We agree with Applied that substantial evidence supports the jury's verdict of willful infringement. As the district court correctly noted, Applied presented evidence from which a jury could reasonably infer that U.S. Surgical desperately needed a universal seal trocar to remain competitive in the surgical business, that U.S. Surgical's management did not properly oversee or adequately participate in the development of Versaport II, and that U.S. Surgical's management placed intense time pressure on their engineers to create a new product.

At trial, U.S. Surgical produced three written opinions from outside counsel dated May 29, 1997, May 30, 1997, and June 30, 1997, in an attempt to show that it relied on legal advice to make and sell the infringing trocars. However, the first letter was simply "ship[ped] off in the mail," the second letter did not address infringement of the claims of the '553 patent and was limited to the issue of contempt, and the third letter arrived after U.S. Surgical began selling Versaport II. Based on this evidence, a jury could have reasonably concluded that U.S. Surgical paid little if any attention to the opinion letters. Other evidence also undermines U.S. Surgical's alleged good faith reliance on the legal opinions.

Thomas Bremer, U.S. Surgical's former Senior Vice President and General Counsel, testified that U.S. Surgical wanted "no gap" in the supply of Versaport trocars once the *Applied I* injunction took effect on May 20, 1997. A reasonable jury could have believed that U.S. Surgical was not concerned about infringement and would have proceeded to manufacture Versaport II despite receiving outside legal opinions. Mr. Bremer also offered additional testimony from which a jury could have inferred that he did not rely on the legal opinions as legitimate advice as to whether Versaport II infringed, but rather sought legal opinions for their potential evidentiary value on the issue of willful infringement in future litigation. This could have suggested to the jury that U.S. Surgical did not rely on any opinions of counsel in good faith.

We conclude that the jury's finding of willfulness was supported by substantial evidence, and therefore that the district court did not err in denying U.S. Surgical's motion for judgment as a matter of law of no willful infringement.

### III. *Evidentiary Rulings*

We review evidentiary rulings of the district court applying the law of the regional circuit. *Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1363 (Fed.Cir.2004)*. The Ninth Circuit reviews evidentiary rulings for abuse of discretion; to reverse, we must conclude both that the district court abused its discretion and that the error was prejudicial so that it more probably than not tainted the verdict. *McEuin v. Crown Equip. Corp., 328 F.3d 1028, 1032 (9th Cir.2003)*.

[10] U.S. Surgical challenges the district court's evidentiary ruling allowing Applied to introduce evidence regarding the *Applied I* litigation, including the **\*1366** jury's finding that U.S. Surgical's infringement was willful. Applied responds that the *Applied I* litigation was highly relevant to the 1997 hypothetical negotiation, and was probative of U.S. Surgical's state of mind when it decided to make the infringing Versaport II products. Applied also maintains that U.S. Surgical failed to allege, much less show, that the admission of evidence regarding *Applied I* would potentially lead to unfair prejudice, substantially outweighing its probative value.

We agree with Applied that the *Applied I* litigation was relevant to the reasonable royalty analysis because the hypothetical negotiation in 1997 took place on the heels of the *Applied I* jury verdict. We

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

435 F.3d 1356 **Page 8**
435 F.3d 1356, 77 U.S.P.Q.2d 1666
**(Cite as: 435 F.3d 1356)**

also agree that *Applied I* was relevant to the jury's willfulness determination. Basam Nabulsi, an in-house patent lawyer at U.S. Surgical, testified at trial that U.S. Surgical initiated the design of Versaport II in December 1996 because Applied had commenced the *Applied I* litigation by filing suit in the Eastern District of Virginia. U.S. Surgical also admitted that the *Applied I* verdict caused U.S. Surgical to redouble its efforts to avoid willful infringement. Thus, *Applied I* was clearly relevant to U.S. Surgical's state of mind, and U.S. Surgical has not shown that its probative value was outweighed by the danger of unfair prejudice. We therefore conclude that the court acted within its discretion.

## CONCLUSION

We conclude that the district court did not err in not applying collateral estoppel to the reasonable royalty rate, did not err in denying U.S. Surgical's motion for judgment as a matter of law of no willfulness, and did not abuse its discretion in admitting evidence regarding *Applied I*. The decision of the court granting judgment of willful infringement of the '553 patent in favor of Applied, and awarding damages, enhanced damages, attorney fees, and prejudgment interest totaling $64.5 million, is

*AFFIRMED.*

435 F.3d 1356, 77 U.S.P.Q.2d 1666

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.