# CASE 3

Westlaw.

851 F.2d 1387                                                                                      Page 1
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

Demaco Corp. v. F. Von Langsdorff Licensing Ltd.
C.A.Fed. (Fla.),1988.

United States Court of Appeals,Federal Circuit.
DEMACO CORPORATION, Plaintiff-Appellee,
v.
F. VON LANGSDORFF LICENSING LIMITED
and F. Von Langsdorff Bauverfahren GmbH,
Defendants-Appellants.
**No. 86-1439.**

June 21, 1988.

Alleged infringer brought action against patentee for declaratory judgment to invalidate patent on paving stone with ten-sided elongated shape and appearance of octagon joined to square across dummy groove. Patentee brought infringement action against counterclaim defendants. The United States District Court for the Middle District of Florida, William J. Castagna, J., invalidated patent on basis of obviousness and inequitable conduct. Patentee appealed. The Court of Appeals, Pauline Newman, Circuit Judge, held that: (1) patent was not obvious under prior art, and (2) clear and convincing evidence failed to establish deliberate intent to conceal German patent on paving stone.

Reversed and remanded.

Archer, Circuit Judge, filed concurring opinion.
West Headnotes
**[1] Patents 291 ⚷16.24**

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
            291k16.24 k. Building Materials and Methods. Most Cited Cases
Patented paving stone with ten-sided elongated shape and appearance of octagon joined to square across dummy groove was not obvious under prior art that showed paving stones with generally elongated shape, but without dummy groove, which showed other paving stones with dummy grooves, and which did not describe or suggest stone giving structural strength and harmonious appearance despite pattern for laying stones; prima facie case of nexus between commercial success of stone and patent was not rebutted. 35 U.S.C.A. § 103.

**[2] Patents 291 ⚷16(1)**

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
            291k16 Invention and Obviousness in General
                291k16(1) k. In General. Most Cited Cases
Patent statute does not require that patentable invention be superior to all other devices. 35 U.S.C.A. § 103.

**[3] Patents 291 ⚷16(1)**

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
            291k16 Invention and Obviousness in General
                291k16(1) k. In General. Most Cited Cases
Patent statute does not require invention to be complex in order to be nonobvious. 35 U.S.C.A. § 103.

**[4] Patents 291 ⚷36.1(1)**

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
            291k36 Weight and Sufficiency
                291k36.1 Secondary Factors Affecting Invention or Obviousness
                    291k36.1(1) k. In General. Most Cited Cases
Secondary considerations are significant to determination of obviousness. 35 U.S.C.A. § 103.

**[5] Patents 291 ⚷36.2(1)**

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
            291k36 Weight and Sufficiency
              291k36.2 Commercial Success
                    291k36.2(1) k. In General. Most Cited Cases
Commercial response to invention is significant to determination of obviousness and is entitled to fair

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

851 F.2d 1387 Page 2
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

weight. 35 U.S.C.A. § 103.

**[6]** Patents 291 36.2(1)

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
           291k36 Weight and Sufficiency
               291k36.2 Commercial Success
                   291k36.2(1) k. In General. Most Cited Cases

When patentee asserts that commercial success supports contention of nonobviousness, there must be sufficient relationship between commercial success and patented invention. 35 U.S.C.A. § 103.

**[7]** Patents 291 32

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
           291k31 Evidence of Invention
               291k32 k. Presumptions and Burden of Proof. Most Cited Cases

Patentee claiming that commercial success supports contention of nonobviousness has burden of going forward with evidence sufficient to constitute prima facie case of requisite nexus between commercial success and invention and has burden of proof. 35 U.S.C.A. § 103.

**[8]** Patents 291 36(1)

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
           291k36 Weight and Sufficiency
               291k36(1) k. In General. Most Cited Cases

Prima facie case of nexus between commercial success and invention is generally made out when patentee shows that there is commercial success and that thing, product, or method is invention disclosed and claimed in patent; when commercially successful thing is not coextensive with patented invention, patentee must make prima facie showing of legally sufficient relationship between patented thing and sold thing. 35 U.S.C.A. § 103.

**[9]** Patents 291 32

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
           291k31 Evidence of Invention
               291k32 k. Presumptions and Burden of Proof. Most Cited Cases

When patentee presents prima facie case of nexus between commercial success and invention, burden of going forward with evidence in rebuttal shifts to challenger that must adduce evidence showing responsibility of other factors such as advertising and superior workmanship to explain commercial success. 35 U.S.C.A. § 103.

**[10]** Patents 291 36(2)

291 Patents
    291II Patentability
        291II(A) Invention; Obviousness
           291k36 Weight and Sufficiency
               291k36(2) k. Degree of Proof and Doubt as to Invention. Most Cited Cases

Patentee claiming relationship between commercial success and patented paving stone was not required to prove, as part of its prima facie case, that the commercial success was not due primarily to advertising or other factors such as technical service to licensees and licensing of other products. 35 U.S.C.A. § 103.

**[11]** Patents 291 97

291 Patents
    291IV Applications and Proceedings Thereon
        291k97 k. Patent Office and Proceedings Therein in General. Most Cited Cases

Person who obtains patent by intentionally misleading Patent and Trademark Office cannot enforce patent.

**[12]** Patents 291 97

291 Patents
    291IV Applications and Proceedings Thereon
        291k97 k. Patent Office and Proceedings Therein in General. Most Cited Cases

Inequitable conduct before Patent and Trademark Office may be found although common-law elements of fraud are absent.

**[13]** Patents 291 97

291 Patents
    291IV Applications and Proceedings Thereon
        291k97 k. Patent Office and Proceedings Therein in General. Most Cited Cases

Court deciding whether there is inequitable conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

851 F.2d 1387                                                                                                  Page 3
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

is charged with reaching equitable result in particular circumstances of case.

**[14] Patents 291 312(6)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
           291k312 Evidence
                291k312(3) Weight and Sufficiency
                    291k312(6) k. Particular Matters, Sufficiency as To. Most Cited Cases

Clear and convincing evidence failed to support district court's conclusions that patentee deliberately intended to conceal German patent for nine-sided paving stone and was engaged in inequitable conduct while applying for patent on paving stone with ten-sided elongated shape and appearance of octagon joined to square across dummy groove; German patent was listed in German priority document filed with Patent and Trademark Office.

**Patents 291 328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original. Most Cited Cases
4,128,357. Valid and infringed.

Russell D. Orkin, Webb, Burden, Robinson & Webb, P.A., of Pittsburgh, Pa., argued for plaintiff-appellee. With him on the brief was Richard L. Byrne.
Albert C. Johnston, St. Onge Steward Johnston & Reens, of Stamford, Conn., argued for defendants-appellants. With him on the brief were William J. Speranza and Michael L. Goldman.

Before FRIEDMAN, NEWMAN and ARCHER, Circuit Judges.
PAULINE NEWMAN, Circuit Judge.
F. Von Langsdorff Bauverfahren GmbH and F. Von Langsdorff Licensing Ltd. (together "Langsdorff") appeal the judgment [FN1] in favor of declaratory judgment plaintiff Demaco Corporation and counterclaim defendants Coastal Contracting Corporation, Paver Systems, Inc., and R.I. Lampus Company (together "Demaco"). The United States District Court for the Middle District of Florida, Tampa Division, held that claims 9, 13, and 29-33 of United States Patent No. 4,128,357 ("the Barth patent") are invalid for obviousness under 35 U.S.C. § 103, that all of the claims are unenforceable for inequitable conduct, and **\*1389** thus that the patent is not infringed. We reverse.

    FN1. *Demaco Corporation v. F. Von Langsdorff Licensing Ltd.,* No. 84-1051-CIV-T-15 (M.D.Fla. May 22, 1986) (amended April 1, 1987).

*The Patented Invention*

The patent claims here at issue are for a paving stone of specific shape and proportion, as illustrated in claim 9, an agreed "typical" claim (as rewritten in independent form):

9. Ground covering slab elements for paving ground areas, each of said elements being a single piece of concrete consisting of a head portion and a stem portion meeting at a dummy groove allowing, but not necessitating, breakage of said slab elements into heads and stems along said dummy grooves and being delimited by two opposite end faces of equal length joined by opposite sides that form angled traces about a longitudinal axis common to said head and said stem, each said angled trace being formed by a succession of sides comprising at said head an inclined side face inclined at 45° in one direction relatively to said axis, a lateral side face extending lengthwise with respect to said axis, and another inclined side face inclined at 45° in the opposite direction with respect to the said axis, and comprising at said stem a lateral side face extending lengthwise with respect to said axis, each said lateral face of said stem being complementary to a lateral face of said head, said end face of said head together with said inclined sides of said head and said lateral faces of said head and said dummy groove describing a centrally symmetrically [sic] octagon, said dummy groove together with said end face of said stem and said lateral faces of said stem being symmetrical about the center of said stem, and said head and said stem being mirror symmetrical about said longitudinal axis, wherein said end face of said head, said lateral faces of said head, said inclined sides of said head and said dummy groove together describe an octagon, with equal lengths of said end face, said lateral faces and said dummy groove, and with equal lengths of said inclined sides of said head, wherein said inclined sides of said head are each shorter than said end face of said head.

Appellant Langsdorff describes the advantages of the Barth paving stone as combining the feature of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

851 F.2d 1387                                                                                          Page 4
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

structural strength obtained from an elongated, interlocking paver, with the feature whereby, however the asymmetric stone is laid, the effect is the same symmetrical pattern. These characteristics are illustrated in the brochure of one of the accused infringers, wherein the Barth stone is shown along with another commercial paving stone laid in the same patterns:



**\*1390** The Barth result is achieved by using the claimed paving stone.

*Validity-*35 U.S.C. § 103

A

[1] Reexamination was requested on behalf of Langsdorff on December 2, 1982, and on behalf of Demaco on January 12, 1983. Both requesters brought new references before the United States Patent and Trademark Office ("PTO"). During reexamination the examiner confirmed some of the claims without change, Barth dropped some claims, and some new claims were added. The examiner gave the following reasons for allowing the claims:
Claims 9 and 29-33 are considered to be allowable because the prior art does not suggest a paving stone having a head shaped as an octagon with a square stem separated by a dummy groove in which inclined sides of the head are each shorter than the end face of the head. Claim 13 is considered patentable because the prior art does not suggest a composite pavement formed by laying plural elements having an octagon head with a square stem separated by a dummy joint [laid] in a herringbone pattern as specified. Claims 20-28 are considered allowable because the prior art does not suggest a paving stone having the specific corner angles and indentations as specified.

After the PTO issued the reexamination certificate Demaco filed this declaratory judgment action. Following a trial to the bench, the district court held asserted claims 9, 13 and 29-33 invalid for obviousness. Langsdorff argues that the district court erred in its factual findings and in its application of the law.

Langsdorff asserts that a paving stone having the structure of the Barth paver, combining its ten-sided elongated shape with its appearance of an octagon joined to a square, and accompanying structural and visual advantages, is not shown or suggested in the prior art. Langsdorff argues that even if retrospectively simple in concept, the Barth paving stone was "a new product in a millennia old art". Langsdorff thus argues that the district court did not understand the invention, pointing to the court's statement that
[t]he essence of the advance made by the Barth paver is to accomplish with one piece of concrete that which could be accomplished with one square piece and one octagonal piece by joining the square to the octagon.

as demonstrating that the court believed that Barth had simply joined two paving blocks into one.

The prior art showed paving stones having the general elongated shape of the Barth stone but without the dummy groove; and the geometrical figure of an octagon joined to a square was shown in mathematics texts. The prior art also showed other paving shapes having dummy grooves. The claimed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relative dimensions are not shown in the prior art. Langsdorff further states, without apparent contradiction, that this symmetrical paving stone pattern giving the appearance of two different stones is not shown or suggested in the art. Nor does the prior art describe or suggest a stone that gives to paving the structural strength obtained here while achieving a harmonious appearance whatever the pattern in which the stones are laid. Langsdorff presented evidence that it is the overall shape that provides the traffic load strength, by enabling an interlocking pavement.

[2][3] The district court held that the Barth stone gave "no significant structural advantage ... over other pavers", and that "there is no evidence that the Barth paver makes a stronger or more durable pavement". The patent statute does not require that a patentable invention be superior to all prior devices. *Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 960 n. 12, 1 USPQ2d 1196, 1199 n. 12 (Fed.Cir.1986) ("Finding that an invention is an 'improvement' is not a prerequisite to patentability"); G. Rich, *Principles of Patentability,* 28 Geo.Wash.L.Rev. 393, *reprinted in* 42 J.Pat.Off.Soc'y 75 (1960) (discussing "the unsound notion that to be patentable an invention must be better than the prior art"). Nor does the **\*1391** patent statute require that an invention be complex in order to be nonobvious. *Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1572, 1 USPQ2d 1593, 1600 (Fed.Cir.),*cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987):

Though technology has burgeoned, the patent system is not limited to sophisticated technologies.... Nowhere in the statute or the Constitution is the patent system opened only to those who make complex inventions difficult for judges to understand and foreclosed to those who make less mysterious inventions a judge can understand....

*See also van Veen v. United States,* 386 F.2d 462, 465, 181 Ct.Cl. 884, 891, 156 USPQ 403, 405 (1967) ("Experience has shown that some of the simplest advances have been the most nonobvious").

It was not disputed that the Barth stone possessed a combination of advantages not obtained with prior pavers. Indeed, the chairman of accused infringer Paver Systems testified to that effect:

Q: It's true, is it not, that the herringbone bond lay of paving stones is quite important to the strength of the pavement under traffic load?
A: Yes.
Q: In fact, your company has stressed that in its brochures, has it not?
A: Yes.
Q: Isn't there an advantage in having a stone suitable of a variety of bonds including herringbone rather than herringbone bond only?
A: Yes.
Q: Is it true from your experience that when one lays multiple pavers of the [Langsdorff] shape, no matter in which orientation they are laid the resultant pavement will have the same surface appearance pattern?
A: Yes.
Q: Now, do you know of any [interlocking] paving stone that was ever produced and sold in the United States or Canada that has the two characteristics of being suitable for a variety of bonds, including herringbone, and when laid in a variety of bonds in a pavement shows the same surface appearance in the pavement?....
A: No.

We conclude that the district court clearly erred in its analysis of the differences between the Barth paver and the prior art.

B

[4][5] The district court held that "secondary considerations are not significant in this case because first, the prior art so clearly indicates obviousness...." This misstates the law. *See Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,* 776 F.2d 281, 306, 227 USPQ 657, 674 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986) ("evidence on secondary considerations must have been considered prior to reaching a conclusion on obviousness/nonobviousness"). This court wrote in *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39, 218 USPQ 871, 879 (Fed.Cir.1983):

Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.

The commercial response to an invention is significant to determinations of obviousness, and is entitled to fair weight. *Graham v. John Deere Co.,* 383 U.S. 1, 35-36, 86 S.Ct. 684, 702-03, 15 L.Ed.2d 545, 148 USPQ 459, 474 (1966); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick*

851 F.2d 1387                                                                                                           Page 6
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

*Co.,* 730 F.2d 1452, 1461, 221 USPQ 481, 487 (Fed.Cir.1984). The rationale for giving weight to the so-called "secondary considerations" is that they provide objective evidence of how the patented device is viewed in the marketplace, by those directly interested in the product. *See Graham,* 383 U.S. at 35-36, 86 S.Ct. at 702-03, 148 USPQ at 474:These legal inferences or subtests do focus attention on economic and motivational **\*1392** rather than technical issues and are, therefore, more susceptible of judicial treatment than are the highly technical facts often present in patent litigation.

and *Safety Car Heating & Lighting Co. v. General Electric Co.,* 155 F.2d 937, 939, 69 USPQ 401, 403 (2d Cir.1946) (L. Hand, J.):Courts, made up of laymen as they must be, are likely either to underrate, or to overrate, the difficulties in making new and profitable discoveries in fields with which they cannot be familiar; and, so far as it is available, they had best appraise the originality involved by the circumstances which preceded, attended and succeeded the appearance of the invention.

Although the district court concluded that commercial success "is an insignificant factor in this case", the record is to the contrary. At trial Demaco's counsel stated that:
The patent has been copied.... Half of the industry are [licensees] ... the other half are fighting this particular patent....

The court held that Langsdorff's licensing success was "attributable to marketing efforts seeking broad relationships with licensees including several products, advertising, and technical assistance going beyond the monopoly on the Barth paver", and concluded that it had not been proved "that purchasers seek the product due to its inherent qualities as opposed to other paving stone or nonpaving stone ground covering products." Langsdorff argues that the issue is not whether Langsdorff had a successful licensing program, but whether the patented invention was successful in the marketplace. That success was admitted by Demaco.

[6][7] When a patentee asserts that commercial success supports its contention of nonobviousness, there must of course be a sufficient relationship between the commercial success and the patented invention. The term "nexus" is often used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness. The burden of proof as to this connection or nexus resides with the patentee. *See, e.g., Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1027, 226 USPQ 881, 888 (Fed.Cir.1985).

In meeting its burden of proof, the patentee in the first instance bears the burden of coming forward with evidence sufficient to constitute a prima facie case of the requisite nexus. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981): The phrase "prima facie case" ... may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue.

(citing 9 J. Wigmore, *Evidence* § 2494 (3d ed. 1940) (hereinafter *Wigmore* )); E.W. Cleary, *McCormick on Evidence* § 342 (3rd ed. 1984) (hereinafter *McCormick* ):The judge, using ordinary reasoning, may determine that fact A might reasonably be inferred from fact B, and therefore that the party has satisfied his burden [of producing evidence], or as sometimes put by the courts, has made out a "prima facie" case. [footnotes omitted]

[8] A prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent. When the thing that is commercially successful is not coextensive with the patented invention-for example, if the patented invention is only a component of a commercially successful machine or process-the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold. For example, in *Hughes Tool Co. v. Dresser Industries, Inc.,* 816 F.2d 1549, 1556, 2 USPQ2d 1396, 1402 (Fed.Cir.), *cert. denied,* 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 219 (1987), this court reviewed the relation between the patented feature and the thing sold and held that:
**\*1393** Such continuous use of the patented feature while other features were not copied gives rise to an inference that there is a nexus between the patented feature and the commercial success.

*See also Railroad Dynamics, Inc. v. A. Stucki Co.,* 579 F.Supp. 353, 366-67, 218 USPQ 618, 628

851 F.2d 1387                                                                                                          Page 7
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

(E.D.Pa.1983):[T]he testimony as to the advantage of the spaced structure with the biasing spring easily supports the inference that the claimed invention itself was responsible for this [commercial] success.

aff'd, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

[9] When the patentee has presented a prima facie case of nexus, the burden of coming forward with evidence in rebuttal shifts to the challenger, as in any civil litigation. See Hazelwood School District v. United States, 433 U.S. 299, 314, 97 S.Ct. 2736, 2744, 53 L.Ed.2d 768 (1977) (Stevens, J., dissenting) ("The basic framework [in a title VII action] is the same as that in any other lawsuit. The plaintiff has the burden of proving a prima facie case; if he does so, the burden of rebutting that case shifts to the defendant"); see also McCormick § 336:

The burden of producing evidence on an issue ... is usually cast first upon the party who has pleaded the existence of the fact, but as we shall see, the burden may shift to the adversary when the pleader has discharged his initial duty. [footnote omitted]

It is thus the task of the challenger to adduce evidence to show that the commercial success was due to extraneous factors other than the patented invention, such as advertising, superior workmanship, etc. As discussed in Rosemount, Inc. v. Beckman Instruments, Inc., 727 F.2d 1540, 1546, 221 USPQ 1, 7 (Fed.Cir.1984), "argument" and "conjecture" are insufficient:Beckman's argument that a nexus between commercial success and Cardeiro's invention is lacking and its conjecture that some of the commercial success here proven may have been due to elements in nonasserted claims are inadequate to overcome the objective evidence of record.

Id. Once a prima facie case of nexus is made the court must consider the evidence adduced on both sides of the question, with such weight as is warranted. See Ashland Oil, Inc. v. Delta Resins & Refractories, 776 F.2d 281, 306, 227 USPQ 657, 674 (Fed.Cir.1985) ("The objective evidence of secondary considerations may in any given case be entitled to more or less weight, depending upon its nature and its relationship to the merits of the invention"), cert. denied, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). When a prima facie case is made and not fully rebutted, the district court may not totally ignore the objective evidence. W.L. Gore & Associates, Inc. v. Garlock, Inc., 721 F.2d 1540, 1555, 220 USPQ 303, 314 (Fed.Cir.1983) ("The objective evidence of nonobviousness ... should when present always be considered as an integral part of the analysis"), cert. denied, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

This evidentiary routine is reflected in the decisions of this and our predecessor courts, and appears to have been followed in most trial courts. For example, in Stevenson v. Int'l Trade Comm'n, 612 F.2d 546, 204 USPQ 276 (CCPA 1979) the patentee had in the first instance provided affidavit and survey evidence of public preference for the patented skateboard; the patentee was held to have establish[ed] prima facie a nexus between commercial success and the merit of appellant's invention, the provision of an inclined foot-depressible lever.

Id. at 553, 204 USPQ at 282-83. The burden of coming forward shifted to the challenger, who presented evidence of alternative reasons for the commercial success:In rebuttal, to show that the commercial success is unrelated to the merits of the invention, appellees presented [a witness] who gave his opinion that the commercial success was due to cosmetic reasons.

Id. The court determined that the appellee had not overcome the prima facie case of nexus, and took the objective evidence into **\*1394** account in its determination of nonobviousness:We consider the testimony proffered by appellee to be insufficient to overcome the evidentiary value of that of appellants. The net result is a positive inference that the claimed skateboard would have been unobvious at the time the invention was made to one of ordinary skill in the art.

Id. at 554, 204 USPQ at 283.

[10] A patentee is not required to prove as part of its prima facie case that the commercial success of the patented invention is *not* due to factors other than the patented invention. It is sufficient to show that the commercial success was of the patented invention itself. A requirement for proof of the negative of all imaginable contributing factors would be unfairly burdensome, and contrary to the ordinary rules of evidence. See 9 Wigmore § 2486 at 291 ("Thus, in most actions of *tort* there are many possible justifying circumstances ...; but it would be both unfair and contrary to experience to assume that one of them was probably present and to require the plaintiff to disprove the existence of each one of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

851 F.2d 1387                                                                                                                                            Page 8
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

them") (emphasis in original). See also Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1382, 231 USPQ 81, 92 (Fed.Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987), where the court stated that "the record shows that advertising makes those in the industry-hospitals, doctors, and clinical laboratories-aware of the diagnostic kits but does *not* make these potential users buy them; the products have to work, and there is no evidence that that is *not* the case here or that the success was *not* due to the merits of the claimed sandwich assays-clearly contrary to the district court's finding." (Emphases added.)

In the present case, Demaco admitted that the paving stone was commercially successful. In a letter written before filing suit, Demaco described this stone as "a most important segment of the paver market", and in another letter Demaco stated that "[t]his paver shape is in demand in both Georgia and Florida." It was further undisputed that it was the patented paving stone that was the thing sold in commerce. Demaco adduced no evidence to show that the paving stone's commercial success was due to any factor other than its patented structure. There was no evidence that its success was due, for example, to advertising or other factors unrelated to its technological advantages. By placing the burden on Langsdorff to prove that commercial success was *not* due primarily to advertising or other factors such as technical service to licensees and the licensing of other products, the district court put the shoe on the wrong foot.[FN2] Demaco did not meet its burden of rebutting the prima facie case of nexus between the Langsdorff patented invention and its commercial success, and the district court clearly erred in its contrary finding.

> FN2. The court called the Barth paver "only a pedestrian advance".

Viewing all the factors pertinent to determination of obviousness, applying the guidelines of *Graham v. Deere,* leads us to conclude that the presumption of validity had not been overcome by clear and convincing evidence. The holding of invalidity of claims 9, 13 and 29 through 33 for obviousness is reversed.

*Inequitable Conduct*

The district court held that the Barth patent was unenforceable for inequitable conduct, finding that German patent (Gebrauchsmuster) No. 1,998,249 ("Geb. '249") had been intentionally withheld from the PTO, and that the threshold of materiality had been met.

[11][12][13] The concept of inequitable conduct in patent procurement derives from the equitable doctrine of unclean hands: that a person who obtains a patent by intentionally misleading the PTO can not enforce the patent. Inequitable conduct may be held although the common law elements of fraud are absent. To achieve a just application of this penalty in the variety of situations that may arise, this court established a balancing test in *1395 American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1364, 220 USPQ 763, 774 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), whereby the materiality of the information that was not provided to the PTO is weighed against the intent of the actor. The court is charged with reaching an equitable result in view of the particular circumstances of the case.

[14] Geb. '249 was disclosed to the German patent office and cited by the German examiner in connection with the German counterpart of the Barth patent. It shows a nine-sided paving stone having the laying pattern shown:




© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

851 F.2d 1387                                                                                     Page 9
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

The shape of Geb. '249 was described by the district court as "interesting in the sense that abnormal geometric forms are interesting." The court held that Geb. '249 satisfied the "but it may have been" test for materiality and should have been disclosed, although the court stated "the Court does not feel Geb. '249 is material when measured against the objective 'but for' test."

On the question of intent, the district court observed that Geb. '249 was a basis for rejection by the German examiner, and concluded that Geb. '249 had intentionally been withheld from the United States PTO. The court found:
The evidence shows that the applicants' German patent counsel intentionally did not provide his American counterpart with Geb. '249 despite the American attorney's inquiry specifically directed to that issue.

The "evidence" appears to consist solely of correspondence between the German attorney and the U.S. attorney, as follows:

On December 3, 1976 the German attorney wrote to the U.S. attorney stating:
At first we would ask you to file the list of all prior art meanwhile become known to the Applicants beyond the citations made by the Examiner in the U.S. procedure.

The prior art listed by the German attorney included nine German references and one Austrian reference, including Geb. '249. Of these ten references, copies of the drawings of seven were enclosed with the letter, including the full text of two references. No copies of the remaining three (including Geb. '249) were sent.

A second letter from the German attorney dated December 10, 1976 listed four additional references cited by the German examiner, and included copies of drawings from these four references.

On December 21, 1976, the U.S. attorney sent a telex to the German attorney with the following message:
Your letter of December 3 came without copies of listed U.M. 1957744, U.M. 1988249 [Geb. '249], and laid-open 1784497. Copies were received of [two other references] not mentioned in the letter. Please clarify.

The German attorney responded on December 22, 1976, as follows:With our letter of December 3, 1976 we intentionally did not send you the following references U.M. 1,957,744 and U.M. 1,988,249 and 'OS' 1,784,497, from among those mentioned ... as this was not deemed necessary.

**\*1396** No further correspondence is of record. The U.S. attorney filed with the U.S. PTO a list of the references of which copies were sent with the December 3 and December 10 letters, along with the copies or drawings received, as required by PTO practice. The three references for which no copies were sent, including Geb. '249, were not listed.

Although the district court attributed culpable intent to the German attorney, this record does not show clear and convincing evidence thereof. The German attorney included Geb. '249 on "the list of all the prior art meanwhile become known to the Applicants". The district court did not discuss whether the U.S. attorney was delinquent, and may have deemed it exculpatory that the U.S. attorney inquired of the German attorney as to why copies of three references were not provided, and received the reply that it "was not deemed necessary". We need not speculate as to how the German attorney may have intended and the U.S. attorney may have interpreted this statement. Our task is to review whether the district court clearly erred in its finding of culpable intent. *See FMC Corp. v. The Manitowoc Co., 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987)* ("To be guilty of inequitable conduct, one must have intended to act inequitably").

Of the three unfiled references on the German attorney's list, only Geb. '249 is at issue. Although the absence of further investigation by the U.S. attorney of the possible relevance of Geb. '249 is a factor to be considered by the court, the court may consider all the surrounding circumstances. We note, for example, that Geb. '249 was listed in the German priority document filed with the PTO: this does not support a conclusion of intentional withholding. Indeed, the record contains no evidence of deliberate concealment.
[A]n applicant who knew or should have known of the art or information, and of its materiality, is not automatically precluded thereby from an effort to convince the fact finder that the failure to disclose was nonetheless not due to an intent to mislead the PTO....

*Id.* at 1416, 5 USPQ2d at 1116.

We conclude that there is not clear and convincing evidence to support the district court's finding of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

851 F.2d 1387                                                                                                Page 10
851 F.2d 1387, 7 U.S.P.Q.2d 1222
**(Cite as: 851 F.2d 1387)**

deliberate intent to conceal Geb. '249. *See* id. at 1415, 5 USPQ2d at 1115 ("one who alleges a 'failure to disclose' form of inequitable conduct must offer clear and convincing proof"). The district court's finding of the intent element of inequitable conduct was therefore clearly erroneous; nor did the evidence of record establish gross negligence of such gravity as to warrant the drawing therefrom of an inference of intent to deceive or mislead the PTO. We conclude that in these circumstances inequitable conduct has not been proved. The district court's judgment of unenforceability is reversed.

*Infringement*

The ruling of noninfringement flowed from the decision of invalidity and unenforceability, and was not otherwise discussed by the district court. Demaco's counsel told the court:

[P]erhaps I should start by saying there is no question as to infringement. If the patent is held valid and enforceable, all of these parties are infringers.... we make no bones about it. The patent has been copied.... the issue of infringement just simply isn't in this case we've conceded on that point.

On this basis, we reverse the finding of noninfringement, and remand for determination of remedy.

REVERSED AND REMANDED.
ARCHER, Circuit Judge, concurring.
I join the majority opinion except with respect to the majority's "Inequitable Conduct" analysis.

The German patent (Gebrauchsmuster), No. 1,988,249 (Geb. '249), in my view, fails to meet the threshold of materiality, even though a basis for rejection by the German examiner and by the U.S. examiner in the reexamination of the Barth '357 patent. It is, at best, merely cumulative of prior art **\*1397** disclosed. Geb. '249 discloses an asymmetrical nine-sided paving stone having a single laying pattern, as shown in the majority opinion. The U.S. examiner cited Geb. '249 as showing "slab elements or paving modules being of a single piece of concrete consisting of a head portion and a stem portion." This much was shown by other prior art references which were before the U.S. examiner during prosecution of the Barth '357 patent. In reversing the German examiner's decision, the German Federal Patent Court stated that the
covering element according to [Geb. '249] ... which also has a head and a stem, is neither symmetrically designed about a longitudinal axis nor about another axis, and already for this very reason it is not suitable for giving suggestions to the person skilled in the art through which the features characterized in the claim and directed to a covering element which is symmetrical about a longitudinal axis could have been implied.

Claim 9 claims, *inter alia,* a "centrally symmetrically [sic] octagon" head and the head and stem "being mirror symmetrical about said longitudinal axis." Prior art references before the examiner during both the original examination of the Barth application and the reexamination proceeding disclosed paving stones or comparable elements having integral head and stem portions. Thus, even if the Geb. '249 stone had been symmetrical and of ten sides instead of nine, it would only be cumulative. *Litton Industrial Products, Inc. v. Solid State Systems Corp.,* 755 F.2d 158, 167, 225 USPQ 34, 40 (Fed.Cir.1985). Consequently, while the shape of Geb. '249 may have been "interesting," as the district court noted, it hardly satisfied the "but it may have been" test for materiality as the district court held. Accordingly, it is unnecessary in my view to reach the intent question of the inequitable conduct inquiry.

C.A.Fed. (Fla.),1988.
Demaco Corp. v. F. Von Langsdorff Licensing Ltd.
851 F.2d 1387, 7 U.S.P.Q.2d 1222

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.