# CASE 4

Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2004 WL 1125911 (N.D.Ill.)
**(Cite as: 2004 WL 1125911 (N.D.Ill.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
A.L. HANSEN MANUFACTURING CO., Plaintiff,
v.
BAUER PRODUCTS, INC., Defendant.
No. 03 C 3642.

May 18, 2004.

Allan J. Sternstein, Jeffry M. Nichols, Brinks, Hofer, Gilson & Lione, Chicago, IL, for Plaintiff.

Paul G. Juettner, Thomas R. Fitzsimons, Greer, Burns & Crain, Ltd. , Chicago, IL, Steven L. Underwood, Price, Heneveld, Cooper, DeWitt & Litton, Grand Rapids, MI, for Defendant.

*MEMORANDUM OPINION AND ORDER*

ASHMAN, Magistrate J.

*1 Plaintiff, A.L. Hansen Manufacturing Co. ("Hansen"), filed suit against Defendant, Bauer Products, Inc. ("Bauer"), alleging infringement of two patents held by Hansen. Hansen alleges infringement either literally or through the doctrine of equivalents and seeks increased damages due to Bauer's alleged willful infringement. Pursuant to Federal Rule of Civil Procedure 42(b), Bauer seeks to bifurcate the action into two phases: first, a liability phase, and second, a damages phase that will also address the issue of willfulness. [FN1] Bauer also asks the Court to stay discovery on the issue of willfulness.

> FN1. Bauer's motions and memoranda are inconsistent with regard to bifurcation. Bauer alternates between bifurcation into an initial liability and damages phase followed by a willfulness phase, and bifurcation into an initial liability phase followed by proceedings on both damages and willfulness. However, Bauer's original motion of January 6, 2004 proposes the latter bifurcation: a separate liability phase followed by damages and willfulness. Bauer suggested the same arrangement at oral argument. Therefore the Court will treat this bifurcation proposal as the substance of Bauer's motion.

This matter has been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1. For the reasons set forth below, Bauer's motion to bifurcate is granted in part and denied in part: the issue of damages is bifurcated from liability, however, the issues of liability and willfulness shall be tried together. The Court grants a stay of discovery on Bauer's opinion of counsel.

I. *Background and Procedural History*
Hansen is an Illinois corporation which manufactures the "Support Arm" at issue in this case. On March 28, 2000, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 6,041,548 ("the '548 patent") to Hansen as assignee. The PTO issued a second patent to Hansen as assignee on April 10, 2001: U.S. Patent No. 6,212,827 ("the '827 patent"). Both patents claim the support arm, an invention comprised of interlocking arms and pivots designed to support the hinged lid for a pickup truck bed with the assistance of a biasing element such as a gas strut.

Bauer, a Michigan Corporation, began selling support arms in late October 2002. On September 26, 2002, before selling its support arms, Bauer obtained an opinion of counsel to determine whether the support arms infringed on any existing patents, including Hansen's '548 and '827 patents. According to Bauer's memoranda, only Bruce Bacon, Bauer's Vice-President of Engineering, relied on the analysis contained in this opinion of counsel. Bauer has submitted this opinion of counsel to the Court for *in camera* inspection.

Hansen requested that Bauer cease and desist marketing the support arms in January 2003. Bauer did not comply with this request and Hansen filed the instant suit on May 28, 2003. Bauer then filed its motion to bifurcate the proceedings and stay discovery on the issue of willfulness on January 6, 2004. Specifically, Bauer asks the Court to stay discovery on all matters involving the opinion of counsel unless and until Hansen can establish Bauer's liability for infringement. Pending the Court's resolution of this motion, Bauer has objected to all of Hansen's discovery requests that involve the opinion of counsel.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1125911 (N.D.Ill.)
**(Cite as: 2004 WL 1125911 (N.D.Ill.))**

Page 2

II. *Discussion*

Federal Rule of Civil Procedure 42(b) authorizes bifurcation of trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy...." The Seventh Circuit has explained that Rule 42(b) allows separate trials only when three conditions are met. *Houseman v. United States Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir.1999). First, the trial court must determine whether bifurcation would either promote judicial economy or avoid prejudice to the parties. *Id.* Next, if one or both of these interests are implicated, the trial court must balance these interests against any countervailing prejudice to the non-moving party. *Id.* Third, when the trial court is satisfied that this balance favors bifurcation, the court may order separate proceedings, but only if doing so would not violate the Seventh Amendment. *Id.*

*2 Thus the decision to bifurcate centers on a balance of equities. *Id.* However, this balance is weighted against bifurcation. *William Reber, LLC v. Samsung Elecs. Am., Inc.,* No. 03 C 4174, 2004 WL 541851, at *4 (N.D.Ill. March 12, 2004). Rule 42 is read in light of the overarching policy principle behind the Federal Rules, which seeks the just, speedy, and inexpensive resolution of every trial. *Id.* at *2. Accordingly, because bifurcation risks additional delay, it has remained the exception and not the rule. *Id.* (citing *Pfizer, Inc. v. Novopharm, Ltd.,* 57 U.S.P.Q.2d 1442, 1443 (N.D.Ill.2000)). Ultimately, however, the decision to bifurcate is made on a case by case basis and rests with the sole discretion of the trial court. *Houseman,* 171 F.3d at 1121.

The burden is on the moving party to show that bifurcation is proper. *Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 620 (N.D.Ill.2000). Here, the parties agree that bifurcating damages and liability is proper, but Hansen objects to bifurcating willfulness and liability. (Def.'s Mem. Opp'n at 15 n. 6.)

A. Bifurcation of Liability and Willfulness is Inappropriate.

Bauer argues that bifurcation of liability and willfulness meets the first prong of the *Houseman* test both by serving the interests of judicial economy and by avoiding the prejudicial effects of the so-called "*Quantum* dilemma." *See Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643-44 (Fed.Cir.1991). Under the second prong of *Houseman,* Bauer argues that Hansen will not suffer prejudice if the Court bifurcates willfulness and liability because the same jury will hear both issues and bifurcation will not cause undue delay.

1. *Judicial Economy*

In every case, there is a speculative possibility that judicial economy will be served if the accused infringer prevails on the liability issue, thus eliminating the need to consider other issues. *See Pfizer,* 57 U.S.P.Q.2d at 1444. This Court has looked to two factors which demonstrate that this potential benefit tips the balance in favor of bifurcation. *Clintec Nutrition Co. v. Abbott Labs.,* No. 94 C 3152, 1995 WL 228988, at *5 (N.D. Ill. April 14, 1995). First, the likelihood that a finding of no liability will actually occur: where the movant can make a *prima facie* showing of success, this Court is more likely to grant bifurcation in the interests of judicial economy. *Id.* Second, where substantial time and effort will be saved by a finding of no liability, the Court is more likely to grant bifurcation. *Id.* In other words, if the movant can show that the additional issues avoided by a finding of no liability are complex and time consuming, the Court is more likely to bifurcate. *Id.* [FN2]

> FN2. In *Clintec,* which was decided before *Houseman,* this Court also noted that any increased efficiency must not be outweighed by potential prejudice to the non-moving party. *Id.* This observation is analytically the same as the second prong of *Houseman.*

At this stage of the proceedings, Bauer cannot demonstrate any likelihood that it will prevail on liability, thus the first factor is inapplicable. *See Aptargroup, Inc. v. Owens-Illinois, Inc.,* No. 02 C 5058, 2003 WL 21557632, at *1 (N.D.Ill. July 3, 2003) (granting bifurcation in part because the plaintiff's liability case took "a real hit" from the court's claim construction).

*3 Nor does the second factor carry much weight because the willfulness issue is not especially complex in this case. The presence of willful infringement is a factual question for the jury and must be determined from the totality of the circumstances. *See, e.g., WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1354 (Fed.Cir.1999) (quoting *Amsted Indus., Inc. v. Buckeye Steel Casing Co.,* 24 F.3d 178, 181 (Fed.Cir.1994)). While that test implies that the willfulness determination requires the evaluation of much evidence, it also implies that willfulness and liability substantially overlap.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Accordingly, much of the evidence establishing the totality of the circumstances will have already been presented in the initial liability phase. [FN3] The relevant question, therefore, is whether the willfulness issue would require presentation of large amounts of additional evidence that a finding of no liability would circumvent. *See, e.g., Caterpillar, Inc. v. Deere & Co.,* No. 96 C 5355, 1997 WL 17798, at *1 (N.D.Ill. Jan. 14, 1997) (citing *Remcor Prods. Co. v. Servend Int'l,* No. 93 C 1823, 1994 WL 594723, at *1 (N.D.Ill. Oct. 28, 1994)) (holding that bifurcating willfulness would not eliminate the need to present additional evidence, but would in fact require duplication of evidence). This additional evidence may include opinions of counsel, minutes from meetings, and other evidence that suggests subjective intent. In this case, the parties have not shown that the additional evidence will be extensive. Thus a finding of no liability would not save the court much time because additional proceedings on willfulness will be relatively short.

> FN3. An obvious example is the strength of the infringer's validity and non-infringement defenses. Where an infringer has presented a good-faith and vigorous defense, that by itself militates for a finding of no willfulness. *See* 7-20 Donald S. Chisum, *Chisum on Patents* § 23.03(4)(b)(v)(E) (1978). Thus the evidence given on patent validity, such as obviousness, and infringement, such as the similarity between the products under the doctrine of equivalents, may be highly relevant to willfulness but always is presented during the liability phase. Bifurcation could never eliminate the need to present this evidence and other evidence that fleshs out the full totality of the circumstances.

Accordingly, the Court sees no reason to depart from the general presumption that a single trial will best serve judicial economy. However, Bauer can still prevail on the first prong of the *Houseman* test if it can demonstrate that bifurcation would avoid prejudice.

2. *Avoiding Prejudice to Bauer--the* Quantum *Dilemma*

Bauer argues that the Court should bifurcate willfulness from liability because of the potential prejudice arising from its *Quantum* dilemma. In *Quantum,* the Federal Circuit explained that an accusation of willfulness forces the accused infringer to choose between waiving attorney-client privilege or forfeiting the use of its opinions of counsel as a defense to the allegation of willfulness. 940 F.2d at 643-44. The former choice prejudices the accused infringer by giving the adversary a glimpse at its attorney's work product, the latter choice prejudices the accused infringer by drastically undercutting its defense. *Id.*

Although willfulness is ultimately determined from the totality of the circumstances, the issue often turns on the defendant's opinion of counsel letters, because these letters indicate whether the accused infringer was aware that its activities were illegal or whether it had a good faith belief that it was not violating any patents. *Comark Communs., Inc. v. Harris Corp.,* 156 F.3d 1182, 1191 (Fed.Cir.1998). These opinion letters are, of course, protected by attorney-client privilege and the accused infringer need not produce them. *See Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.,* 34 F.3d 1048, 1056 (Fed.Cir.1994). However, the Federal Circuit has held that, where the accused infringer does not produce an opinion of counsel, the finder of fact may legitimately infer that the accused infringer either failed to obtain an opinion of counsel, or, worse yet, obtained an opinion that warned the infringer not to proceed. *Id.* [FN4]

> FN4. The *en banc* Federal Circuit is currently reevaluating this inference. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 344 F.3d 1336 (Fed.Cir.2003). Of course, if the Federal Circuit were to eliminate the propriety of these negative inferences, the force of the *Quantum* dilemma would be greatly reduced.

*4 Therefore, because that inference strongly suggests willfulness, considerable pressure exists for the accused infringer to rely on exculpatory opinions of counsel and thus forfeit the attorney-client privilege, or else forego an effective defense against willfulness. *Quantum,* 940 F.2d at 644.

Bifurcation can mitigate the *Quantum* dilemma by delaying this choice. *Id.* By splitting the proceedings and staying discovery on opinions of counsel, the trial court allows the accused infringer to maintain attorney-client privilege throughout the liability phase. The court may then reopen discovery on opinions of counsel if and when the jury finds infringement, thus allowing the defendant to present a more effective defense against the allegation of willful infringement.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Thus the Federal Circuit suggested in *Quantum* that the trial court receive opinions of counsel *in camera* to determine whether the accused infringer is presented with such a dilemma and, if so, to give "careful consideration" to bifurcation. *Id.* Here, Bauer has submitted its opinions for inspection. The Court concludes that Bauer indeed faces a *Quantum* dilemma: its opinions include detailed analysis of the '548 and '827 patents including patent prosecution history and claims, claims construction, defenses, and mental impression work product. Therefore, Bauer has satisfied prong one of the *Houseman* test by showing that bifurcation of liability from willfulness would avoid prejudice.

3. *Avoiding Prejudice to Bauer--Jury Confusion*

Bauer also argues that bifurcation of willfulness and liability would avoid prejudice caused by jury confusion. Specifically, Bauer, relying on *Pfizer*, 57 U.S.P.Q.2d at 1444, argues that the evidence of subjective intent relevant to willfulness is not relevant to the objective question of infringement and that the jury would thus confuse the two issues. Moreover, Bauer submits that evidence of its subjective intent might bias the jury against it on the question of infringement. Nevertheless, the issues of willfulness and infringement are not readily separable. To the contrary, as we have noted, the Federal Circuit has repeatedly held that willfulness must be determined from the totality of the circumstances. *See, e.g., WMS Gaming,* 184 F.3d at 1354. Therefore, because the issues of willfulness and infringement substantially overlap, bifurcation of the two may be inappropriate. *Real,* 195 F.R.D. at 626; *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,* No. IP-96-1718-C-H/G, 2001 WL 699856, at *3 (S.D.Ind. May 31, 2001). Instead, courts have allowed the jury to hear all the evidence in one contiguous proceeding so that the jury may better grasp the totality of the circumstances, while alleviating prejudice with jury instructions. *See Dentsply Int'l Inc. v. Kaydex,* No. 93 C, 1994 WL 376276, at *2 (N.D.Ill. July 11, 1994) (observing that even though trying these issues together inevitably creates the risk of jury prejudice, that routine risk does not justify bifurcation). Thus, in weighing the interests that favor bifurcation, the Court does not give much credit to the interest in avoiding this jury prejudice.

4. *Countervailing Prejudice against Hansen under the Second Prong of* Houseman

*5 In summary, the Court holds that Bauer has met the first prong of the *Houseman* test for its proposed bifurcation of willfulness and liability because bifurcation would avoid *Quantum* dilemma prejudice. Under the second prong of *Houseman,* we must now decide whether bifurcation would create undue prejudice to Hansen.

Bifurcation causes additional delay between trial phases. *Real,* 195 F.R.D. at 621. The court gives great weight to this problem, again cutting the balance against bifurcation, where this delay has the potential to create prejudice against the non-moving party. *Id.*

The added delay between a liability and willfulness phase would prejudice Hansen. Bauer argues that its proposed bifurcation will create only a short delay, perhaps only a single day. Bauer argues that Hansen will only need to depose a few witnesses, and probably only one: Bruce Bacon, Vice-President of Engineering, who relied on the opinion. Hansen suggests that it will need more extensive discovery, that it will depose additional third parties who may have relied on the opinion and seek expert testimony. In response, Bauer argues that such discovery would be unnecessary. Thus Bauer implicitly asks this Court to accept its proposed scope of future discovery proceedings, in effect asking the Court to limit Hansen's discovery in advance. Bauer also asks the Court to limit Hansen's trial preparation for the willfulness phase to a single day. The Court refuses to do either. Hansen has the right to seek broad discovery. Fed.R.Civ.P. 26(b)(1). We will not suggest in advance that Hansen's future discovery requests be narrowed and thus we accept Hansen's quite reasonable contention that its discovery will take more than a mere day or two.

On the other hand, Bauer is correct insofar as discovery on opinions of counsel would not take an exorbitant amount of time because there is only one relatively short opinion. Yet, as Hansen points out, the more time taken between trial phases, the greater the risk of losing jurors or having their memory fade before evaluating the totality of the circumstances. Here, one week is a reasonable, but still optimistic, estimate of the additional time needed, yet even that short delay risks undue prejudice. And, as any practitioner knows, further delays in discovery arising from disputes or other reasons are not rare. Such delays would push back the resumption of the trial even further.

The prejudice arising from undue delay can only be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00343-JJF    Document 688-5    Filed 06/12/2007    Page 6 of 7

Not Reported in F.Supp.2d                                                                                                        Page 5
Not Reported in F.Supp.2d, 2004 WL 1125911 (N.D.Ill.)
(Cite as: 2004 WL 1125911 (N.D.Ill.))

avoided by denying bifurcation entirely. By the same token, the interest in judicial economy is best served by conducting a single phase on liability and willfulness. For these reasons, the Court finds that Bauer's motion to bifurcate liability from willfulness should be denied.

B. Bifurcation of Liability and Damages is Appropriate.

The parties submit that a liability phase followed by a damages phase, if necessary, is appropriate in this case. We agree. In particular, bifurcation of damages serves the interests of judicial economy because, unlike willfulness, the damages issue in patent cases often requires significant amounts of complex additional evidence. The parties have not indicated the amount of evidence they expect to present and the amount of trial time they will likely use on the damages issue. Yet, in every patent case, courts award those damages that will put the patentee in the same position it would have been in absent infringement: either lost profits or a reasonable royalty. Either calculation usually demands considerable proofs to accomplish the formidable task of recreating a past marketplace that never actually existed. The evidence may include sales records, market pricing and demand fluctuations, proof of the patentee's ability to meet increased demand, and extensive expert testimony to interpret all this hard data. Thus patent cases are particularly well-suited to bifurcation of liability and damages in service of efficiency. *See* 8 James Wm. Moore et al., *Moore's Federal Practice* § 42.24 (3d ed.1997) (citing *Novopharm Ltd. v. Torpharm, Inc.,* 181 F.R.D. 308, 310 (E.D.N.C.1998)).

*6 Bifurcation of damages and liability will not cause prejudicial delay to Hansen. Bauer proposes that the Court bifurcate damages from liability without staying discovery. Thus Hansen will have adequate time to discovery evidence and prepare for trial on the damages issue. Moreover, the delay between phases will not prejudice Hansen because the issues of liability and damages are more separable than liability and willfulness. Thus Hansen need not worry about fading memories of the jurors because most of the evidence relevant to infringement will not be relevant to the computation of damages.

Finally, bifurcation of damages and liability would not violate the Seventh Amendment, which prohibits splitting the proceedings such that a second jury weighs the same factual issues as the first jury. *See Houseman,* 171 F.3d at 1126 (quoting *In Re Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1303 (7th Cir.1995)). Here Bauer has proposed that the same jury try both liability and damages, thus avoiding any Seventh Amendment pitfalls.

C. Staying Discovery is Appropriate.

Although the Court denies Bauer's motion to bifurcate, it will stay certain discovery to minimize the prejudicial effects of the *Quantum* dilemma. *See William Reber,* 2004 WL 541851, at *10 (denying bifurcation but staying discovery on opinions of counsel). This approach would best protect Bauer from the prejudice resulting from early disclosure of its attorneys' thought processes while preserving an efficient trial. *See id.* at *9.

Therefore, the Court will stay discovery of Bauer's opinion of counsel through the discovery phase. The Court will set a date for the filing of dispositive motions by later order, and no dispositive motions shall be filed until such date. At that time, Bauer must make the *Quantum* choice: if Bauer intends to present its opinion of counsel at trial, the parties shall conduct expedited discovery on the opinion. Naturally the Court will preclude Bauer from presenting the opinion at trial if Bauer elects not to waive the privilege at that time.

In the meantime, the Court will allow discovery on all other matters, including liability, damages, and willfulness. Hansen may conduct discovery on all matters not privileged, including its interrogatories asking who obtained, provided, and relied on the opinions. Hansen may also conduct depositions of such persons if it wishes, but Bauer may object to and refuse to answer any questions that disclose the privileged material contained within the opinion.

In this way, Bauer can at least maintain attorney-client privilege throughout the pre-trial phase, including the *Markman* hearing and until the filing of summary judgment motions. However, expedited discovery on Bauer's opinion of counsel will begin immediately if Bauer relies on its opinion of counsel earlier for any reason.

III. *Conclusion*

Bauer's motion is granted in part and denied in part. Bifurcation of damages from liability is appropriate in this case and is granted. However, Bauer has failed to meet its burden of showing that bifurcation of willfulness from liability is preferable. Considerations of judicial economy weigh against bifurcation. And although the *Quantum* dilemma

Not Reported in F.Supp.2d                                                                                          Page 6
Not Reported in F.Supp.2d, 2004 WL 1125911 (N.D.Ill.)
**(Cite as: 2004 WL 1125911 (N.D.Ill.))**

raises potential prejudice against Bauer, bifurcation would create potential prejudice against Hansen. This part of Bauer's motion to bifurcate is therefore denied. However, to minimize *Quantum* prejudice, the Court grants Bauer's motion to stay discovery on its opinion of counsel through the discovery phase and until a date which will be set by a future order of the Court. If Bauer chooses to rely on its opinion when discovery is completed or earlier, the parties shall conduct expedited discovery on the opinion of counsel. Neither party shall file dispositive motions until the date set by the Court.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.