# EXHIBIT C

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

WEB www.cblh.com

Scott R. Miller
Partner

TEL (213) 787-2510
EMAIL smiller@cblh.com
REPLY TO Los Angeles Office

*Via Email and U.S. Mail*

June 13, 2007

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108

**Re: *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.***
**USDC Case No. 04-343 JJF**

Dear Cass:

This letter follows up on the June 5, 7, 11 and 12, 2007 telephone meet and confers and your June 7, 2007 letter concerning possible discovery issues pending with the Special Master that may be unresolved.

## I. Mutual Exchange Of Updated 2007 Sales Information

ViewSonic and LPL seek updated sales information for 2007. ViewSonic proposed an exchange of sales information in the same format the parties previously provided. LPL and ViewSonic can produce sales information through May 2007. Because Tatung has indicated that it can produce sales information for the first quarter of 2007 (through March 2007), LPL and ViewSonic have agreed to produce corresponding updated sales information through March 2007. LPL seeks to exchange such information next week. Tatung is still investigating when it can exchange such information. ViewSonic is willing to produce updated sales information next week, or at a later time LPL and Tatung agree.

## II. ViewSonic's Motion To Compel LPL To Produce 1998-1999 Sales Information

ViewSonic's May 8, 2007 motion for sales information from LPL for 1998-1999 has been fully briefed and is pending before the Special Master.

## III. Discovery ViewSonic Seeks From LPL

Pursuant to Mr. Kirk's June 1, 2007 letter to the Special Master (DI 681), ViewSonic sent LPL a letter identifying the following discovery discussed during the

December 28, 2006 hearing that LPL has failed to provide, or that awaits a decision on a motion to compel filed by ViewSonic:

ViewSonic's Request for Production ("RFP") Nos. 63-66, 77-81, 84-85, 88, 90, 92, 94, 96, 98-99, 102-103, and 118-119.

**1. Discovery LPL Agreed To Provide But Never Provided**

As ViewSonic explained during our initial telephone conference, during the December 28, 2006 hearing, LPL agreed to produce documents responsive to Request for Production ("RFP") 85. *See* Dec. 28, 2006 Hearing Tr. ("Dec. Tr.") at 135:3-7.[1] Despite its clear agreement on the record, LPL now alleges that it is not aware of any disputed issues to be resolved.

RFP 85 seeks "[d]ocuments from January 1, 1997 to the present sufficient to identify each part of an LCD module that is or can be used for mounting an LCD module to the external case of a Flat Panel Display Product." During our recent conferences, LPL asked what type of LPL documents ViewSonic seeks via RFP 85. ViewSonic responded that it is not in a position to identify LPL's documents, as LPL has produced almost no technical discovery in this case. At a minimum, as ViewSonic pointed out, LPL's LCD module product specifications, some of which ViewSonic has independently uncovered, have been shown to expressly identify specific locations on the LCD modules that can be used to mount the modules to other structures. Thus, despite this clear illustrative example of at least one type of document that is responsive to ViewSonic's RFP 85, LPL continues to renege on its agreement made on the record to produce documents responsive to this request.

**2. Discovery That Remains Pending With The Special Master**

ViewSonic's RFPs 63-66, 77-81, and 99

During our telephone conferences, ViewSonic explained its position that, during the December 28 hearing, the Special Master expressed an intent to order LPL to produce documents responsive to ViewSonic's RFPs 63-66, 77-81, and 99. *See* Dec. Tr., at 101:3-113:13, especially 111:14-21. These RFPs were raised as part of ViewSonic's Technical Motion (at 2-7), and seek information related to mounting methods and mounting structures.

[1] RFP 85 was raised as part of the October 3, 2006 Motion of ViewSonic to Compel Plaintiff to Provide Discovery Regarding Components, Assemblies, and Structures, Including Mounting Methods and Structures, of Flat Panel Display Devices (DM 3, "ViewSonic's Technical Motion"), at 7-8.

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

In your June 7 letter and during telephone conferences, LPL argued that ViewSonic's February 16, 2007 motion (DM 17) sought similar discovery, and that the Special Master had elected to defer ruling on ViewSonic's February 16 motion until after claim construction. As the parties discussed during our recent telephone conferences, ViewSonic's October 3, 2006 Technical Motion and its later February 16 motion are independent motions. One of the primary subjects of ViewSonic's February 16, 2007 motion was LPL's misrepresentation that it did not make or sell LCD modules that implement rear-mounting technology. LPL's misrepresentation was not before the Court in December 2006 as to any of these requests, and LPL has not offered any reason the Special Master's expressed inclination on the record during the December 28 hearing (*see* Dec. Tr. at 111:14-21) should be changed. Thus, ViewSonic will ask the Special Master to enter an Order in accordance with the discussions at the December 28, 2006 hearing.

ViewSonic's RFPs 84, 88, 90, 92, 94, 96, and 98

The parties also discussed ViewSonic's RFPs 84, 88, 90, 92, 94, 96, and 98. These RFPs seek documents sufficient to show the parts and assemblage of an LCD module, and the shape, structure, function, source, and assemblage of such parts, from January 1, 1997 to the present.[2] ViewSonic noted during our first telephone conference that, during the December 28 hearing, the Special Master expressed an intent to order LPL to produce documents responsive to ViewSonic's RFPs 84, 88, 90, 92, 94, 96, and 98. *See* Dec. Tr., at 113:14-140:1, especially 133:8-12; 139:11-17. ViewSonic understands, however, that the Special Master has since determined that he will revisit these requests after the Markman ruling is announced based on LPL's representation that it does not make or sell products that practice the invention of the patents in suit.

During the recent telephone conferences, LPL offered to look into the existence of documents responsive to these RFPs from January 1, 1997 to December 31, 1998, while

---

[2] For example, RFP 84 requests:

> Documents sufficient to identify the parts of an LCD module, and the structure, function, source, and/or assemblage of those parts from January 1, 1997 to the present. (This Request does not seek every document referencing an LCD module; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of an LCD module and their assemblage).

RFP 88 requests:

> Documents from January 1, 1997 to the present sufficient to identify the parts of a backlight unit, and the structure, function, source, and/or assemblage of. those parts. (This Request does not seek every document referencing a backlight unit; rather, it simply seeks documents that will show the name, shape, structure, function, and source of the various parts of a backlight unit and their assemblage).

RFPs 90, 92, 94, 96 and 98 are worded similar to RFP 88, but are directed to other parts of the LCD module, such as "light guide unit", "light source unit", "prism unit", "diffuser unit", "reflector unit" rather than backlight unit. These RFPs were raised as part of ViewSonic's Technical Motion, at 7-9.

forestalling any further discussion of these requests pending the post-Markman ruling proceeding the Special Master has indicated he will undertake. ViewSonic now understands that, after LPL investigated further, LPL alleges that it has no documents relating to products from the period January 1, 1997 to December 31, 1998 maintained in the ordinary course of its business that are responsive to ViewSonic's RFPs 84, 88, 90, 92, 94, 96, and 98. If ViewSonic's understanding is correct, a full representation by LPL on the record of such facts and circumstances will resolve the issue as to documents from January 1, 1997 to December 31, 1998 responsive to ViewSonic's RFPs 84, 88, 90, 92, 94, 96, and 98. If ViewSonic has misunderstood LPL's position, then the issue will need to be resolved by the Special Master.

As to responsive documents dated after December 31, 1998, ViewSonic reserves it right to seek such documents based on other pending motions that have been deferred until after the claim construction decision from the Special Master.

ViewSonic's RFPs 118

RFP 118 seeks documents sufficient to identify the model number of products made or sold by or on behalf of LPL or its predecessor(s) that incorporate any invention disclosed in the patent-in-suit, ***and documents relating to how each product is or can be mounted to an external case of a flat panel display product.***[3] During the December 28 hearing, LPL's obligation to produce documents responsive to RFP 118 was deferred based on LPL's misrepresentation that it does not use rear mount technology. *See* Dec. Tr., 171:13-172:6; *see also id.*, 165:1-170:18. In January 2007, LPL changed its position and revealed for the first time that in fact it did make products that implement rear-mount technology. Thus, as discussed during our first telephone conference, ViewSonic believes that LPL's untimely change of position regarding its use of rear-mount technology requires production of documents responsive to RFP 118.

ViewSonic's RFPs 119

RFP 119 seeks documents relating to or evidencing the use, in any Flat Panel Display Product, of the element in the ViewSonic VX900 identified as frame "C" in the Declaration of William Bohannon (also referred to by ViewSonic as a "tray" or "chassis").[4]

---

[3] RFP 118 requests:

> Documents from January 1, 1997 to the present sufficient to identify each and every product by model number and/or other designation made, sold, or offered for sale by or on behalf of LPL that incorporates or embodies any invention disclosed or claimed in the Patents-in-Suit, the time period during which such product was manufactured, sold or offered for sale, and all documents relating or referring to how each such product is or can be mounted to an external case of a Flat Panel Display Product.

RFP 118 was raised in ViewSonic's Technical Motion, at 10.

[4] RFP 119 was raised as part of ViewSonic's Technical Motion, at 6.

As ViewSonic explained to LPL during our first meet and confer, the Special Master indicated during the December 28 hearing that he intended to require production of documents responsive to ViewSonic's RFP 119 if the parties could not reach an agreement. *See* Dec. Tr., 150:21-164:21, especially 157:14-17.

Your June 7, 2007 letter (at 4) represents that LPL does not have any additional responsive documents, but then immediately qualifies such representation by stating that, "If the Markman ruling impacts this issue, we can revisit [RFP 119] thereafter." The Markman ruling never had an impact on ViewSonic's RFP 119, and LPL cannot now attempt to improperly defer discovery on RFP 119 until after the claim construction decision. If LPL has no additional responsive documents, a representation by LPL on the record of such facts and circumstances will resolve any remaining dispute regarding RFP 119. If LPL is not willing to make such a representation, the issue will need to be resolved by the Special Master.

## IV. Discovery LPL Seeks From ViewSonic

The section numbers below follow the numbering convention used in your June 7, 2007 letter regarding discovery LPL seeks.

1. The parties discussed LPL's desire to obtain additional documents in response to LPL's RFP Nos. 18 and 48. LPL's RFPs 18 and 48 seek documents related to visual display products responsive to LPL's Interrogatory ("ROG") No. 2. As we discussed, because LPL's ROG 2 is directed to worldwide products sales, it is overlybroad and unduly burdensome, and RFPs 18 and 48 are correspondingly overlybroad and unduly burdensome.

Specifically, LPL's ROG 2 requests as follows:

> Identify each type of visual display product (such as the ViewSonic VX900 monitor) manufactured, shipped, imported, sold, and/or offered for sale, by or for you, since January 1, 2002, and specify which products have been marketed or sold under a trademark or brand name that belongs to ViewSonic Corporation or its affiliated entities.

As ViewSonic has repeatedly pointed out, LPL's ROG 2 relates to ViewSonic products sold all over the world, and is not limited to products offered for sale, sold or used in or imported into the U.S. Thus, ROG 2, and all RFPS seeking information related to visual display products responsive to ROG 2, are overly broad and unduly burdensome, as

not limited to products made, offered for sale or sold in or imported into the U.S.[5] RFPs 18 and 48 are two examples of such overlybroad requests, as they seek information regarding visual display products responsive to LPL's ROG 2.[6]

LPL's attempt to "limit the scope" of RFPs 18 and 48 to accused products is a thinly veiled and improper attempt to re-write the requests, which is not permitted at this time, long after the date to serve discovery requests has passed.

Nevertheless, during the parties' recent telephonic meet and confers, ViewSonic indicated that it would consider, as a compromise to avoid burdening the Special Master, to produce documents related to accused products, similar to that indicated in your June 7 letter, ***provided*** that LPL agrees to pay the cost of electronic searching through the necessary scope of electronic communications for such responsive documents. ViewSonic estimated during the June 5 telephone conference regarding correspondence with Tatung that the cost for such a search to be in the ball park of $15,000-$20,000. As discussed during subsequent phone calls, as result of further investigation, ViewSonic has determined that it will cost on the order of $13,000 to $17,000 to perform electronic searches for communications solely with Tatung. The cost to search for communications with all suppliers related to all ViewSonic accused products is estimated to be on the order of more than $60,000. The cost to search for all communications with all customers related to all ViewSonic accused products is estimated to be an additional similar amount. LPL has refused ViewSonic's cost shifting proposal.

As another compromise, ViewSonic has offered to produce all communications with Tatung that relate to warranty work on ViewSonic accused products. ViewSonic would bear the cost for this compromise production, as it would allow ViewSonic to reduce

---

[5] For comparison, LPL's ROG 3 is limited to products made, offered for sale or sold in or imported into the U.S.:

> Identify each type of visual display product (such as the ViewSonic VX900 monitor) manufactured, shipped, imported, sold, and/or offered for sale, in or to ***the United States***, by or for you, since January 1, 2002.

[6] RFP 18 seeks:

> All documents concerning communications between you and any supplier, manufacturer, customer, distributor, reseller, or retailer since December 1, 2002, regarding assembly of or the structural components used for assembly of (including, for example, with respect to the screw and hole locations used in mounting) any type of visual display product responsive to Interrogatory No. 2.

RFP 48 seeks:

> Documents reflecting any communication between you and others (including, for example, customers, distributors, or suppliers) regarding any benefits and advantages concerning the visual display products responsive to Interrogatory No. 2.

the number of person's electronic files that would need to be searched. LPL has refused this offer.[7]

LPL inquired into the reasons why electronic searching is so expensive for these materials. ViewSonic explained that its communications are not stored or grouped by supplier, or customer, or model, or date, but rather are maintained by individuals by name of author or recipient. Thus, for example, to search for all communications with Tatung requires searching through the files of approximately 20 people. Even if one narrows the universe of desired documents to communications with Tatung regarding accused products, that does not reduce the scope and burden of the required search.

During the recent meet and confers, LPL suggested that ViewSonic's argument regarding the burdensomeness of LPL's discovery requests is inconsistent with ViewSonic's motions seeking information regarding all of LPL's LCD modules. As ViewSonic indicated in response, there is nothing inconsistent about ViewSonic's position. Each party requires the information necessary to prove its case and defenses, which are obviously different for a patentee and a defendant. Moreover, the facts suggest that the discovery provided by LPL in this case has been grossly disproportionately small compared with the discovery provide by the defendants. ViewSonic has produced far more discovery in this case than LPL, including about 128,000 pages of documents which provided technical information (Service Manuals) for ***every*** ViewSonic product sold in the United States since December 2002, the issue date of the patents in suit. The 128,000 pages does not include ViewSonic's offer to allow LPL and LPL's technical expert(s) to inspect approximately 150 of the more than 200 products ViewSonic identified in response to LPL's ROG 3. On the other hand, LPL has produced a total of merely approximately 18,000 pages in this case. LPL's production comprises primarily the prosecution histories of the patents in suit (including certified copies which ViewSonic had already produced in the case) and related patent applications, some prior art, and photos of all of the accused products. LPL has produced very little technical information about its own products, and ***no*** technical information about **any** LPL product that was offered for sale or sold prior to the U.S. filing date of the patents in suit, which is relevant discovery for invalidity and unenforceability of the patents in suit. Moreover, LPL has failed to provide a single LPL product for inspection. Even third parties have produced more discovery in this case than has LPL. Examined in the light of day, LPL's production in this case is difficult to reconcile with its discovery obligations.

[7] During the December 28 hearing, LPL confirmed that it had refused ViewSonic's compromise offer to search through the files of various officers and executives for communications related to Tatung. *See* Dec. Tr., 57:15-60:21.


2. The parties also discussed LPL's desire to obtain additional documents ostensibly related to alleged "inducement". As you know, LPL's September 27, 2006 motion (DM 2A) and LPL's December 28, 2006 presentment of such motion sought to compel discovery regarding ViewSonic's communications with all of its customers and suppliers. There was no attempt at that time by LPL to limit the discovery sought to accused products. Consequently, the Special Master's March 30, 2007 ruling (DI 611) denied LPL's motion to the extent that it sought discovery regarding un-accused products. ViewSonic understands that the Special Master's decision also was intended to provide guidance to the parties regarding information to produce in the future, and was not an order compelling ViewSonic to produce any specific information or documents. Apparently, the parties have disparate views of the Special Master's March 30, 2007 ruling related to alleged inducement discovery.

During the parties' telephone conferences, ViewSonic explained it was cognizant of the Special Master guidance, and has offered to produce documents regarding communications with suppliers or customers related to accused products, to the extent it has such documents, ***provided*** that LPL bears the costs through ViewSonic's cost shifting proposal. LPL refuses to accept ViewSonic's offer, which is entirely consistent with the Special Master's March 30 ruling and guidance. Thus, any new request by LPL to avoid cost shifting would be a new motion, which is not related to the December 28 hearing or any other prior motion. LPL's present request for inducement discovery limited to accused products comes after the close of discovery. LPL conceded during this week's telephone conferences that the meet and confers regarding LPL's request for inducement related discovery, limited to accused products, did not commence until after the issue was identified in your June 1, 2007 email. This confirms that any dispute over cost-shifting related to alleged inducement discovery represents a new motion. If LPL intends to seek to be permitted to raise new motions on its discovery requests, ViewSonic has requested a similar opportunity.

Moreover, as ViewSonic has previously explained, LPL cannot recover for any inducement without proving an underlying direct infringement as a necessary condition precedent. The identical products are at issue in LPL's direct infringement and indirect infringement cases. Further, because LPL is barred from obtaining a first recovery from possible direct infringement, and a second, double, recovery from any subsequent induced infringement by an accused infringer's customers, the benefit of the discovery sought is marginal at best.[8] The burden and expense of LPL's proposed discovery regarding any conjectural inducement issues greatly outweigh its speculative benefit, taking into account

[8] LPL agreed that it is barred from seeking double recovery of damages for direct infringement from ViewSonic and damages for inducement on the same products. *See* Dec. Tr., 43:9-45:2.

the parties' resources, and the lack of any significance of the proposed discovery. It is further noteworthy that LPL has sought the same discovery from Tatung, and ViewSonic's customers. Thus, LPL's alleged "inducement" discovery also is duplicative and cumulative of the discovery sought and presumably obtained from other sources.

In your June 7 letter and during our telephone conferences, LPL identified one specific example of alleged "inducement" discovery, namely, correspondence between ViewSonic and Tatung related to accused products (supported, in your opinion, by LPL's RFP 62). When ViewSonic inquired during our meet and confers what other documents LPL sought related to inducement, LPL was unable to identify any specific document categories or discuss any specific RFPs other than RFP 62, and merely referred to LPL's September 27, 2006 motion. As indicated above, it is ViewSonic's position that the Special Master's March 30, 2007 ruling fully disposed of LPL's September 27, 2006 motion. Nevertheless, ViewSonic indicated it's willingness to produce a limited amount of additional discovery consistent with the Special Master's guidance, ***provided*** that LPL is willing to accept a cost-shifting arrangement. As LPL is unwilling to entertain cost-shifting for this discovery, and unwilling to specify what information it seeks other than communications with Tatung regarding ViewSonic accused products, the parties' discussions stalled.[9]

3. LPL has had full opportunity to explore any "drop shipments" via 30(b)(6) depositions of ViewSonic, and ViewSonic has long considered this issue closed.

## V. Miscellaneous

During the June 5, 2007 telephone conference, ViewSonic pointed out that the issues in LPL's May 8, 2007 letter to the Special Master are in fact new issues. As your June 7 letter does not specifically raise any issues from LPL's May 8, 2007 letter to the Special Master, ViewSonic understands that LPL has dropped the requests in its May 8, 2007 letter to the Special Master.

---

[9] LPL's proposal to limit the scope of LPL's RFP 62 (which overbroadly seeks all communications with Tatung regarding all products offered for sale or sold in the U.S.) to accused products. Again, LPL improperly attempts to rewrite RFP 62. Moreover, LPL long ago refused an offer from ViewSonic to produce correspondence with Tatung from the files of various key ViewSonic executives. *See* Dec. Tr., 57:15-60:21. Nevertheless, as ViewSonic previously offered in the spirit of compromise, ViewSonic is willing to produce communications with Tatung regarding ViewSonic accused products, as sought by LPL in response to RFP 62, ***provided*** that LPL agrees to pay the cost of searching through the necessary scope of electronic communications for such responsive documents.


CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

As the parties discussed, ViewSonic welcomes any opportunity to resolve the issues above without troubling the Special Master. Counsel for ViewSonic will make itself available if LPL believes further discussions would be beneficial.

Sincerely,

Scott R. Miller

cc: All counsel of record