# EXHIBIT D

| | McKenna Long & Aldridge LLP
Attorneys at Law | |
|---|---|---|
| Albany | | New York |
| Atlanta | | Philadelphia |
| Brussels | | San Diego |
| Denver | 1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com | San Francisco |
| Los Angeles | | Washington, D.C. |

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

June 7, 2007

**VIA E-MAIL AND U.S. MAIL**

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz, LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA 90071

Valerie W. Ho, Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

      Re:    *LG.Philips LCD Co., Ltd. v. Tatung, et al.,*
              **Civil Action No. 04-343 (JJF)**

Dear Scott and Valerie:

      I write to follow up on our June 5, 2007 teleconference concerning potentially unresolved discovery issues previously submitted to the Special Master. I am available to discuss these issues further, either before or after we submit our list of issues tomorrow. This letter confirms my understanding of the issues that we discussed and attempts to narrow the disputed issues.

## ISSUES REGARDING TATUNG

      We discussed that LPL is seeking complete sales figures for all of the accused products. LPL is seeking sales for accused products regardless whether those products were shipped directly to the U.S., or delivered to a customer outside of the U.S., but for sale partly or wholly in the U.S. As we discussed, all of the accused products are "U##" product models, which means that they are intended for the U.S. market and comply with applicable U.S. regulations. If Tatung delivers those products to a customer (or customer's agent) outside of the U.S., those products will ultimately be imported and sold in the U.S. and are part of LPL's damages claim in this case. Despite Ms. Ho's contention that LPL had never requested worldwide sales information, I specifically cited you to our request for such information in previous hearings. See, e.g., 1/19/07 Tr. at 82-84, 90-95; LPL Doc. Requests No. 17, 26, 38, 41. Indeed, until I received Ms. Ho's May 29, 2007 letter, I believed that Tatung had disclosed all sales information.

Scott R. Miller, Esq.
Valerie W. Ho, Esq.
June 7, 2007
Page 2

      Ms. Ho stated that she does not believe that Tatung withheld any sales for any accused products. Nonetheless, Ms. Ho could not be sure that this is correct and agreed to investigate and confirm that Tatung has produced all sales information for all accused products and will continue to do so when Tatung supplements the sales figures on June 15. If Tatung is not providing all sales for all accused products, then we will need to address this issue with the Special Master.

**ISSUES REGARDING VIEWSONIC**

      We discussed the following issues concerning LPL and ViewSonic:

      1.    We discussed whether ViewSonic will produce discovery responsive to LPL's document requests 18 and 48. Mr. Miller suggested that ViewSonic would incur expenses of $15,000 to $20,000 to search and produce electronically stored information responsive to these requests. I stated that LPL does not agree to pay any part of the expense. I also stated, however, that LPL is willing to consider ways to reduce the expense by, for example, possibly narrowing the scope of the requests. For Request 18, LPL is willing to limit the scope of the request to accused products. For Request 48, LPL is willing to limit the scope of the request to benefits or advantages concerning product design, appearance, and/or rearmounting with respect to accused products. Please let us know whether ViewSonic agrees to produce these documents subject to LPL's proposed limitations.

      2.    We also discussed whether ViewSonic agrees to produce any type of discovery relevant to inducement issues. As I stated, LPL believes that the Special Master's March 30, 2007 ruling requires ViewSonic to provide non-technical discovery that is relevant to accused products. Mr. Miller disagreed, noting ViewSonic's position that the March 30 ruling merely provides "guidance" and does not require any affirmative production of discovery from ViewSonic. LPL continues to seek from ViewSonic relevant non-technical discovery and LPL's position remains that this discovery is required under the March 30 ruling.

      As a specific example, we discussed correspondence between ViewSonic and Tatung related to accused products (LPL Document Request No. 62). In April 2007, Tatung recently produced examples of such correspondence, yet ViewSonic has not produced such discovery. Please let us know whether ViewSonic will agree to produce communications with Tatung concerning accused products, which should be a limited set of documents and not in any way burdensome.

      3.    An issue that was not discussed before we ended our call, but was listed in our agenda for the call, is whether ViewSonic's sales summaries include drop shipments of products from ViewSonic's suppliers to U.S. locations. After further reviewing Ms. Stetson's deposition transcript, I understand her to have testified that such drop shipments are included in ViewSonic's sales summaries as produced. If this is not correct, please let me know immediately so that we can resolve this issue.

Scott R. Miller, Esq.
Valerie W. Ho, Esq.
June 7, 2007
Page 3

      4.     We discussed ViewSonic's document requests cited in your June 1, 2007 letter (Document Requests 63-66, 77-81, 84-85, 88, 90, 92, 94, 96, 98-99, 102-03, and 118-119). As I stated, LPL believes that these issues are not appropriately raised and the Special Master has deferred them until after the claim construction decision. On February 16, 2007, ViewSonic filed a motion to compel technical discovery from LPL responsive to many of these and other document requests. We argued these issues extensively at the March 2, 2007 teleconference. Recently, the Special Master ruled that such discovery should be deferred and addressed after the Markman ruling issues on June 15. The Special Master recently reaffirmed that ruling when ViewSonic again attempted to force a premature resolution of these issues. After the Markman decision, the parties will submit their positions to the Special Master concerning many of these issues, and ViewSonic should defer these issues until the proper time.

      With respect to Document Requests 84 and 85, I explained that LPL is not aware of any disputed issues to be resolved, or specific documents to be produced. For Request 84, my understanding from the March 2 hearing was that ViewSonic wanted LPL to produce assembly drawing documents. *See* 3/2/07 Tr. at 104-05. As I previously informed Mr. Nelson, however, LPL does not have those documents. Since that time, ViewSonic has never requested any other document responsive to Request 84. During our call on June 5, Mr. Miller stated that LPL's website includes a depiction that is responsive to this request and module specifications that ViewSonic already has obtained would also be responsive. As I noted, however, assuming that such information is responsive, ViewSonic already has that information and it appears that the scope of Request 84 is therefore satisfied.

      For Request 85, I requested clarification concerning what type of document ViewSonic wants LPL to produce. During the March 2 hearing, we explained that LPL already has produced various documents that LPL has identified. *See* 3/2/07 Tr. at 105-06. At the hearing, Mr. Nelson argued for additional module specifications similar to specifications already in ViewSonic's possession. *See* 3/2/07 Tr. at 107-117. We disagree that Request 85 seeks specifications. As I explained on June 5, LPL's understanding is that module specifications are the subject of the disputed technical discovery that the Special Master has deferred until after the Markman decision. Indeed, ViewSonic did not raise this issue or Request 85 after the March 2 hearing until now. As I requested during our June 5 call, please let me know if there is something more limited and specific that ViewSonic deems responsive.

      For Requests 88, 90, 92, 94, 96, and 98, LPL disagrees that the Special Master has ever granted or compelled any of that discovery from LPL. LPL continues to object to that technical discovery as overly broad, burdensome, and not reasonably calculated to lead to discovery of admissible evidence. These Requests are made even more problematic because Mr. Miller stated that ViewSonic intends to argue that they require not just an example responsive to each Request, but all examples of all types of each component -- which would amount to numerous, irrelevant documents. As we discussed, however, in an effort to resolve this dispute, we can

Scott R. Miller, Esq.
Valerie W. Ho, Esq.
June 7, 2007
Page 4

check to determine whether LPL could agree to produce an example responsive to each Request, if that could resolve this issue.

For Requests 102 and 103, we confirmed that LPL understood from the December 28, 2006 hearing that ViewSonic sought agreements regarding the development or inventorship of mounting technology, as well as documents and agreements reflecting any transfer of interest in the rearmount patents or any other mounting technology. *See* 12/28/06 Tr. at 143-50. As I confirmed during the June 5 call, LPL is not aware of any documents not produced already in this case.

For Request 118, I believe that ViewSonic intends to drop this request and agrees that it is deferred until after the Markman ruling. If you disagree, please let me know.

For Request 119, I noted that LPL previously had confirmed that LPL does not have any additional responsive documents. If the Markman ruling impacts this issue, we can revisit this Request thereafter.

5.   We also discussed ViewSonic's May 8, 2007 submission to the Special Master requesting that LPL produce sales summaries for 1998-99. As we discussed, LPL believes that ViewSonic's request is improper and inconsistent with ViewSonic's own objections to discovery in this case. ViewSonic, for example, insists that data summaries should not have to be created for litigation and has objected to producing sales information for the period before December 2002. Tomorrow, we will file LPL's submission with the Special Master responding to ViewSonic's May 8 submission.

**OTHER ISSUES**

I noted that LPL seeks updated sales information regarding accused products sold during 2007. LPL intends to provide such information to its damages expert so that the expert can supplement initial opinions and calculations for trial. We agreed to discuss this issue further, including a timetable for updated sales information.

Sincerely,

Cass W. Christenson

cc:   Counsel of Record (via email)