# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

        Plaintiff,

      v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

        Defendants.

C. A. No. 04-343

## DEFENDANT VIEWSONIC CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF LG. PHILIPS LCD CO., LTD.

PROPOUNDING PARTY:      Defendant ViewSonic Corporation

RESPONDING PARTY:      Plaintiff LG. Philips LCD Co., Ltd.

SET NO.:      One (Nos. 1-64)

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant ViewSonic Corporation. ("ViewSonic") serves the following requests for production of documents on Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), and requests that LPL produce for inspection and copying the documents requested herein. The documents are to be produced, within thirty (30) days after service of the requests at the offices of Bingham McCutchen, LLP, 355 South Grand Avenue., Suite 4400, Los Angeles, CA  90071.

### I. DEFINITIONS

1.      "ViewSonic" means Defendant ViewSonic Corporation and includes any and all of its predecessors and successors-in-interest, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees,

attorneys, accountants, consultants and representatives of the foregoing.

      2.     "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing..

      3.     "You," "Yours," and "Your" means LPL.

      4.     The "'718 patent" shall mean and refer to United States Patent No. 6,498,718.

      5.     The "'641 patent" shall mean and refer to United States Patent No. 6,501,641.

      6.     The term "Patents-in-Suit" shall mean and refer to the '718 Patent and the '641 Patent, or any of them.

      7.     The term "foreign counterparts" shall mean any non-United States patent or patent application (1) that claims priority from or through any U.S. patent or patent application, (2) from which any U.S. patent or patent application claims priority, or (3) which claims or sought to claim any invention disclosed in either of the Patents-in-Suit.

      8.     The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

      9.     The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy:  agreements; communications (including intra-company communications and communications between individual corporate respondents);

correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

     10.    "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

     11.    "And" and "or" as used herein shall be construed both conjunctively and disjunctively and the term "including" means "including but not limited to"; all as is necessary to bring within the scope of these requests for production any documents or things that would otherwise not be brought within their scope but substantively pertain thereto.

     12.    "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

     13.    "Patent Holder" shall mean any inventor, licensee and all assignees of the rights of any invention in any of the Patents-in-Suit.

     14.    "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

15.   "Prior Art" includes, by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and each and every subdivision of 35 U.S.C. § 102.

16.   Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

## II. INSTRUCTIONS

A.   Plaintiff is to search for all Documents within its possession, custody, or control, or within the possession, custody or control of Plaintiff's attorneys, wherever located, including but not limited to, Documents placed in storage facilities and Documents in the possession of any partner, employee, relative, agent, insurer, entity, representative or person acting or purporting to act on behalf of Plaintiff.

B.   In the event that any claim of immunity from discovery or privilege from production is claimed, identify each Document that is withheld thereunder by specifying its author, addressee, recipient, date, those persons to whom copies were furnished, subject matter, kind (e.g., letter, memo, etc.), and specify the precise grounds upon which the privilege or immunity is claimed.

C.   If any of the Documents requested cannot be produced in full, Plaintiff is required to produce them to the fullest extent possible, specifying clearly the reasons for Plaintiff's inability to produce the remainder and stating whatever information, knowledge, or belief Plaintiff has regarding the portion not produced.

D.   If, after the exercising of due diligence, Plaintiff is unable to determine the existence of any Documents or things falling within a Request, Plaintiff shall so state in its written response required by F.R.C.P. Rule 34.

E.   To the extent that Plaintiff considers any of the following Requests objectionable in whole or in part for reasons other than a claim of privilege, Plaintiff is to permit inspection, pursuant to F.R.C.P. 34(b), of the remaining part of an item or category of Documents requested to be produced; and separately with respect to each other part, state the nature of Plaintiff's objection and set forth each and every ground for Plaintiff's objection.

F.    All Documents that in their original condition were stapled, clipped, or otherwise fastened together should be produced in that form.

G.    If any part of a Document is responsive to a request, the entire Document should be produced and no deletions or exclusions should be made therefrom.

H.    These Requests are to be regarded as continuing and Plaintiff is requested to provide, by way of supplementary responses, any additional information, most notably that specified under F.R.C.P. Rule 26(e), or Documents that may hereinafter be obtained by Plaintiff or any person acting under Plaintiff's behalf, which will augment or otherwise modify Plaintiff's responses.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

All documents referring or relating to ViewSonic and/or any ViewSonic product which you content infringes either of the Patents-is-Suit.

### REQUEST FOR PRODUCTION NO. 2:

All documents produced by LPL in any other litigations brought by LPL involving either of the Patents-in-Suit.

### REQUEST FOR PRODUCTION NO. 3:

All documents and things relating to any investigation of alleged infringement by ViewSonic of any claim of either of the Patents-in-Suit, or of any U.S. or foreign patent or pending or abandoned patent application that claims priority from either of the Patents-in-Suit.

### REQUEST FOR PRODUCTION NO. 4:

All documents and things referring or relating to the date and circumstances upon which LPL became aware that ViewSonic products, systems or methods allegedly infringed either of the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 52:**

All documents evidencing the date on which LPL first marked any product under either of the Patents-in-Suit pursuant to 35 U.S.C. § 287.

**REQUEST FOR PRODUCTION NO. 53:**

Documents that refer or relate to the frequency with which LPL has marked products (if at all) under either of the Patents-in-Suit pursuant to 35 U.S.C. § 287.

**REQUEST FOR PRODUCTION NO. 54:**

Documents which reflect LPL's organizational structure, including the identity of its officers and department heads responsible fore research, development, manufacture, marketing, licensing, and sales.

**REQUEST FOR PRODUCTION NO. 55:**

All documents which refer or relate in any way to LPL's policies or practices, whether formal or informal, regarding:

      (a)     document retention/destruction,

      (b)     disclosure of inventions to patent counsel or patent staff, and

      (c)     patent licensing and enforcement.

**REQUEST FOR PRODUCTION NO. 56:**

All documents concerning any attempt to license, assign or otherwise transfer any rights relating to either of the Patents-in-Suit, or any domestic or foreign patent or application related thereto, including, by way of example but not limitation:  proposals; correspondence; notes or memoranda of meetings, conversations, or negotiations; draft and final agreements and amendments.

**REQUEST FOR PRODUCTION NO. 57:**

All documents describing, referring or relating to the utility and advantages that the alleged invention of either of the Patents-in-Suit has over the prior art.

**REQUEST FOR PRODUCTION NO. 58:**

All documents concerning or relating to any acceptable non-infringing substitutes for

ViewSonic's allegedly infringing products.

**REQUEST FOR PRODUCTION NO. 59:**

All documents which reflect or refer or relate to the bases for, or the calculation of, LPL's claims for damages, including without limitation any documents reflecting LPL's assessment as to what would constitute a reasonable royalty.

**REQUEST FOR PRODUCTION NO. 60:**

All documents which support, contradict, or otherwise refer or relate to the allegation that ViewSonic willfully, intentionally and deliberately infringed either of the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 61:**

All documents showing assignment of either of the Patents-in-Suit (and/or the application from which it issued) to LPL including but not limited to, documents showing terms of the assignment

**REQUEST FOR PRODUCTION NO. 62:**

All documents showing assignment of either of the Patents-in-Suit (and/or the application from which it issued) from any Patent Holder to any other person or entity including but not limited to, documents showing terms of each such assignment.

POTTER ANDERSON & CORROON LLP

By: _____

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

*Attorneys for ViewSonic Corporation*

Dated: February 8, 2006

- 16 -

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,                )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )
                                         )    C. A. No. 04-343-JJF
TATUNG CO.;                              )
TATUNG COMPANY OF AMERICA, INC.;         )
and VIEWSONIC CORPORATION,               )
                                         )
          Defendants.                    )

### DEFENDANT VIEWSONIC CORPORATION'S SECOND SET OF
### REQUESTS FOR PRODUCTION OF DOCUMENTS
### TO PLAINTIFF LG. PHILIPS LCD CO., LTD. (NOS. 63-120)

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant ViewSonic Corporation. ("ViewSonic") serves the following requests for production of documents on Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), and requests that LPL produce for inspection and copying the documents requested herein. The documents are to be produced, within thirty (30) days after service of the requests at the offices of Bingham McCutchen, LLP, 355 South Grand Avenue., Suite 4400, Los Angeles, CA 90071.

### I. DEFINITIONS

1.      "ViewSonic" means Defendant ViewSonic Corporation and includes any and all of its predecessors and successors-in-interest, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

2.      "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing..

3.      "You," "Yours," and "Your" means LPL.

4.   The "'718 patent" shall mean and refer to United States Patent No. 6,498,718.

5.   The "'641 patent" shall mean and refer to United States Patent No. 6,501,641.

6.   The term "Patents-in-Suit" shall mean and refer to the '718 Patent and the '641 Patent, or any of them.

7.   The term "Foreign Counterparts" shall mean any non-United States patent or patent application (1) that claims priority from or through any U.S. patent or patent application, (2) from which any U.S. patent or patent application claims priority, or (3) which claims or sought to claim any invention disclosed in either of the Patents-in-Suit.

8.   The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

9.   The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries

2

of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

10.    "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

11.    "And" and "or" as used herein shall be construed both conjunctively and disjunctively and the term "including" means "including but not limited to"; all as is necessary to bring within the scope of these requests for production any documents or things that would otherwise not be brought within their scope but substantively pertain thereto.

12.    "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

13.    "Patent Holder" shall mean any inventor, licensee and all assignees of the rights of any invention in any of the Patents-in-Suit.

14.    "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

15.    "Prior Art" includes, by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and each and every subdivision of 35 U.S.C. § 102.

16.    "Flat Panel Display Products" shall mean any product that uses, contains, or incorporates one or more flat panel display devices as that term is used by LPL in its Complaint in this case, and includes by way of example flat screen computer monitors and flat screen televisions.

3

17.     Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

## II. INSTRUCTIONS

A.     Plaintiff is to search for all Documents within its possession, custody, or control, or within the possession, custody or control of Plaintiff's attorneys, wherever located, including but not limited to, Documents placed in storage facilities and Documents in the possession of any partner, employee, relative, agent, insurer, entity, representative or person acting or purporting to act on behalf of Plaintiff.

B.     In the event that any claim of immunity from discovery or privilege from production is claimed, identify each Document that is withheld thereunder by specifying its author, addressee, recipient, date, those persons to whom copies were furnished, subject matter, kind (e.g., letter, memo, etc.), and specify the precise grounds upon which the privilege or immunity is claimed.

C.     If any of the Documents requested cannot be produced in full, Plaintiff is required to produce them to the fullest extent possible, specifying clearly the reasons for Plaintiff's inability to produce the remainder and stating whatever information, knowledge, or belief Plaintiff has regarding the portion not produced.

D.     If, after the exercising of due diligence, Plaintiff is unable to determine the existence of any Documents or things falling within a Request, Plaintiff shall so state in its written response required by F.R.C.P. Rule 34.

E.     To the extent that Plaintiff considers any of the following Requests objectionable in whole or in part for reasons other than a claim of privilege, Plaintiff is to permit inspection, pursuant to F.R.C.P. 34(b), of the remaining part of an item or category of Documents requested to be produced; and separately with respect to each other part, state the nature of Plaintiff's objection and set forth each and every ground for Plaintiff's objection.

F.     All Documents that in their original condition were stapled, clipped, or otherwise fastened together should be produced in that form.

4

G.    If any part of a Document is responsive to a request, the entire Document should be produced and no deletions or exclusions should be made therefrom.

H.    These Requests are to be regarded as continuing and Plaintiff is requested to provide, by way of supplementary responses, any additional information, most notably that specified under F.R.C.P. Rule 26(e), or Documents that may hereinafter be obtained by Plaintiff or any person acting under Plaintiff's behalf, which will augment or otherwise modify Plaintiff's responses.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 63:

All documents referring to, relating to, or evidencing "rear-mounted products" as that phrase is used by LPL in its response to Request No. 28 of Tatung's First Set of Request for Production of Documents.

### REQUEST FOR PRODUCTION NO. 64:

Samples of any and all "rear-mounted products" (as defined in RFP No. 63 above) other than the ViewSonic VX900 and the Tatung L17AMTN, and including without limitation prototypes, experimental products, finished products, and/or commercially available products.

### REQUEST FOR PRODUCTION NO. 65:

All documents referring to, relating to, or evidencing "rearmounting technology," as that phrase is used by LPL in its response to Request No. 50 of Tatung's First Set of Request for Production of Documents, including without limitation any and all pictures, drawings, schematics, technical designs, engineering notebooks.

### REQUEST FOR PRODUCTION NO. 66:

Samples of any and all flat panel display devices utilizing "rearmounting technology," (as defined in RFP No. 65 above) including without limitation, prototypes, experimental products, finished products, and/or commercially available products.

5

**REQUEST FOR PRODUCTION NO. 67:**

Any and all documents referring to, relating to, or evidencing prototypes that use and/or practice any invention disclosed and/or claimed in the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 68:**

Samples of any and all prototypes that use and/or practice any invention disclosed and/or claimed in the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 69:**

Any and all documents referring to, relating to, or evidencing prototypes that use and/or practice any invention disclosed and/or claimed in any Foreign Counterparts to the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 70:**

Samples of any and all prototypes that use and/or practice any invention disclosed and/or claimed in any Foreign Counterparts to the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 71:**

Any and all documents referring to, relating to, or evidencing Flat Panel Display Products that use and/or practice any invention disclosed and/or claimed in the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 72:**

Samples of any and all Flat Panel Display Products that use and/or practice any invention disclosed and/or claimed in any of the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 73:**

Any and all documents referring to, relating to, or evidencing Flat Panel Display Products that use and/or practice any invention disclosed and/or claimed in any Foreign Counterparts to the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 74:**

Samples of any and all Flat Panel Display Products that use and/or practice any invention disclosed and/or claimed in any Foreign Counterparts to the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 75:**

Any and all documents referring to, relating to, or evidencing communications with or materials provided to any draftsman regarding or relating to the Patents-in-Suit and/or the Foreign Counterparts to the Patents-in-Suit, including without limitation all correspondence, instructions, translations, contracts, agreements, drafts, declarations or affidavits, prototypes, and/or samples.

**REQUEST FOR PRODUCTION NO. 76:**

Any and all documents referring to, relating to, or evidencing work performed by any draftsman for the Patents-in-Suit and/or the Foreign Counterparts to the Patents-in-Suit, including without limitation all contracts, drawings, designs, drafts, declarations, and/or affidavits.

**REQUEST FOR PRODUCTION NO. 77:**

Any and all documents from January 1, 1997 to the present referring to, relating to, or evidencing instructions, directions, or information prepared and/or distributed by or on behalf of LPL relating to mounting an LCD module on, to, or into an external case of a data processing device, including without limitation manuals, instructions, specifications, drawings, service documents.

**REQUEST FOR PRODUCTION NO. 78:**

Any and all documents from January 1, 1997 to the present referring to, relating to, or evidencing instructions, directions, or information prepared and/or distributed by or on behalf of LPL relating to attaching a flat panel display device on, to, or into an external case of a Flat Panel Display Product, including without limitation manuals, instructions, specifications, drawings, service documents.

**REQUEST FOR PRODUCTION NO. 79:**

Any and all documents from January 1, 1997 to the present referring to, relating to, or evidencing mounting flat panel display devices other than by the "front mounting method," as that term is disclosed in the Patents-in-Suit, including without limitation drawings,

specifications, tutorials, product descriptions, schematics.

**REQUEST FOR PRODUCTION NO. 80:**

      Samples of any and all Flat Panel Display Products from January 1, 1997 to the present wherein the flat panel display device is mounted to an external case using any means other than exclusively the "front mounting method."

**REQUEST FOR PRODUCTION NO. 81:**

      Samples of any and all Flat Panel Display Products from January 1, 1997 to the present wherein the flat panel display device is mounted to an external case using the "front mounting method" in combination with any other mounting method.

**REQUEST FOR PRODUCTION NO. 82:**

      Any and all bill of materials for each LCD module made by LPL from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 83:**

      Any and all bill of materials for each LCD module made by anyone other than LPL from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 84:**

      Documents sufficient to identify the parts of an LCD module, and the structure, function, source, and/or assemblage of those parts from January 1, 1997 to the present. (This Request does not seek every document referencing an LCD module; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of an LCD module and their assemblage).

**REQUEST FOR PRODUCTION NO. 85:**

      Documents from January 1, 1997 to the present sufficient to identify each part of an LCD module that is or can be used for mounting an LCD module to the external case of a Flat Panel Display Product.

**REQUEST FOR PRODUCTION NO. 86:**

Any and all documents from January 1, 1997 to the present referring to, relating to, or evidencing the parts of an LCD module that are or can be used for mounting an LCD module to the external case of a Flat Panel Display Product.

**REQUEST FOR PRODUCTION NO. 87:**

Any and all bill of materials for any backlight unit for use in a flat panel display device from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 88:**

Documents from January 1, 1997 to the present sufficient to identify the parts of a backlight unit, and the structure, function, source, and/or assemblage of those parts. (This Request does not seek every document referencing a backlight unit; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of a backlight unit and their assemblage).

**REQUEST FOR PRODUCTION NO. 89:**

Any and all bill of materials for any light guide unit for use in a flat panel display device from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 90:**

Documents from January 1, 1997 to the present sufficient to identify the parts of a light guide unit, and the structure, function, source, and/or assemblage of those parts. (This Request does not seek every document referencing a light guide unit; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of a light guide unit and their assemblage).

**REQUEST FOR PRODUCTION NO. 91:**

Any and all bill of materials for any light source unit for use in a flat panel display device from January 1, 1997 to the present.

9

**REQUEST FOR PRODUCTION NO. 92:**

Documents from January 1, 1997 to the present sufficient to identify the parts of a light source unit, and the structure, function, source, and/or assemblage of those parts. (This Request does not seek every document referencing a light source unit; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of a light source unit and their assemblage).

**REQUEST FOR PRODUCTION NO. 93:**

Any and all bill of materials for any prism unit for use in a flat panel display device from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 94:**

Documents from January 1, 1997 to the present sufficient to identify the parts of a prism unit, and the structure, function, source, and/or assemblage of those parts. (This Request does not seek every document referencing a prism unit; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of a prism unit and their assemblage).

**REQUEST FOR PRODUCTION NO. 95:**

Any and all bill of materials for any diffuser unit for use in a flat panel display device from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 96:**

Documents from January 1, 1997 to the present sufficient to identify the parts of a diffuser unit, and the structure, function, source, and/or assemblage of those parts. (This Request does not seek every document referencing a diffuser unit; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of a diffuser unit and their assemblage).

**REQUEST FOR PRODUCTION NO. 97:**

Any and all bill of materials for any reflector unit for use in a flat panel display device from January 1, 1997 to the present.

10

**REQUEST FOR PRODUCTION NO. 98:**

Documents from January 1, 1997 to the present sufficient to identify the parts of a reflector unit, and the structure, function, source, and/or assemblage of those parts. (This Request does not seek every document referencing a reflector unit; rather, it simply seeks documents that will show the name, shape, structure, function and source of the various parts of a reflector unit and their assemblage).

**REQUEST FOR PRODUCTION NO. 99:**

Any and all documents from January 1, 1997 to the present referring to, relating to, or evidencing the attachment of a stand or base to a Flat Panel Display Product, excluding documents relating to the ViewSonic VX900 or the Tatung L17AMTN.

**REQUEST FOR PRODUCTION NO. 100:**

Any and all documents referring to, relating to, or evidencing communications to or from LPL that mention the advantages or features of the inventions disclosed in the Patents-in-Suit, regardless of whether the communications occurred before or after the application filing dates for the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 101:**

Any and all documents referring to, relating to, or evidencing communications to or from LPL that mention the reduction of side space as expressed at Column 2, lines 29-36 in the '641 Patent, regardless of whether the communications occurred before or after the application filing dates for the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 102:**

Any and all agreements from January 1, 1997 to the present with any third parties pursuant to which any method of mounting flat panel display devices, other than "front mounting," was considered, discussed, mentioned, evaluated, analyzed, conceived, invented, developed, and/or used.

11

of the Patents-in-Suit from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 116:**

Any and all documents referring to, relating to, or evidencing license agreements, settlement agreements or an established royalty or reasonable royalty for patents that cover methods for mounting flat panel display devices or related technology from January 1, 1997 to the present.

**REQUEST FOR PRODUCTION NO. 117:**

Any and all documents referring to, relating to, or evidencing any facts that tend to support, or militate against, LPL's contention that it is entitled to reasonable attorney's fees, costs and interest.

**REQUEST FOR PRODUCTION NO. 118:**

Documents from January 1, 1997 to the present sufficient to identify each and every product by model number and/or other designation made, sold, or offered for sale by or on behalf of LPL that incorporates or embodies any invention disclosed or claimed in the Patents-in-Suit, the time period during which such product was manufactured, sold or offered for sale, and all documents relating or referring to how each such product is or can be mounted to an external case of a Flat Panel Display Product.

**REQUEST FOR PRODUCTION NO. 119:**

Any and all documents from January 1, 1997 to the present referring to, relating to, or evidencing the use in Flat Panel Display Products of that element in the ViewSonic VX900 identified as frame "C" in the Declaration of William K. Bohannon.

**REQUEST FOR PRODUCTION NO. 120:**

All documents requested in this litigation by Tatung Company and/or Tatung Company

of America that have not otherwise been produced in response to any request from ViewSonic.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Scott R. Miller
Tracy R. Roman
BINGHAM MCCUTCHEN LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA 90071-3106
Telephone: (213) 680-6400

Dated: May 31, 2006

By:  */s/ Richard L. Horwitz*
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19899-0951
     Telephone: (302) 984-6000
     Facsimile: (302) 658-1192
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for Defendant*
*ViewSonic Corporation*

734544

16

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on February 8, 2006, a true and correct copy of the within document was caused to be served on the attorney of record at the following addresses as indicated:

### VIA HAND DELIVERY

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

### VIA FEDERAL EXPRESS

Daniel G. Jarcho
Cass W. Christenson
Andrew J. Park
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
djarcho@mckennalong.com
cchristenson@mckennalong.com

Mark H. Krietzman
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404
krietzmanm@gtlaw.com


　　　　　　　　　/s/ Richard L. Horwitz
　　　　　　　　　Richard L. Horwitz

639612

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

LG.PHILIPS LCD CO., LTD.,

        Plaintiff,

        v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

        Defendants.

CIVIL ACTION NO. 04-343

**DEFENDANT VIEWSONIC CORPORATION'S THIRD SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS
TO PLAINTIFF LG. PHILIPS LCD CO., LTD.**

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant ViewSonic Corporation serves the following requests for production of documents on Plaintiff LG.Philips LCD Co., Ltd., and requests that LG.Philips LCD Co., Ltd. produce for inspection and copying the documents requested herein. The documents are to be produced, within thirty (30) days after service of the requests at the offices of Connolly Bove Lodge & Hutz LLP, 355 South Grand Avenue, Suite 3150, Los Angeles, CA 90071.

**I.    DEFINITIONS AND INSTRUCTIONS**

ViewSonic incorporates the definitions and instructions in its previous Requests for Production of Documents.

**II.    REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 121:**

Documents sufficient to identify each product by model number and/or other designation made, sold, offered for sale, demonstrated or used by or on behalf of LPL on or after January 1, 1998 that incorporates or embodies a "flat panel display device" as that term is used in any of claims 38, 39, 44, 45, and/or 56 of the '641 patent.

**REQUEST FOR PRODUCTION NO. 122:**

Documents sufficient to show the monthly and annual sales and resultant gross and net profits for each product sold by or on behalf of LPL on or after January 1, 1998 by country and by model number and/or other designation that incorporates or embodies a "flat panel display device" as that term is used in any of claims 38, 39, 44, 45, and/or 56 of the '641 patent.

**REQUEST FOR PRODUCTION NO. 123:**

Documents sufficient to identify each product by model number and/or other designation made, sold, offered for sale, demonstrated or used by or on behalf of LPL on or after January 1, 1998 that incorporates or embodies a "rear mountable flat panel display device" as that term is used in any of claims 38, 39, 44, 45, and/or 56 of the '641 patent.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show the monthly and annual sales and resultant gross and net profits for each product sold by or on behalf of LPL on or after January 1, 1998 by country and by model number and/or other designation that incorporates or embodies a "rear mountable flat panel display device" as that term is used in any of claims 38, 39, 44, 45, and/or 56 of the '641 patent.

**REQUEST FOR PRODUCTION NO. 125:**

Documents sufficient to identify any material differences between any product made, sold, offered for sale by or on behalf of LPL on or after January 1, 1998 that incorporates or embodies any "rear mountable flat panel display device" as that term is used in any of claims 38, 39, 44, 45, and/or 56 of the '641 patent and any invention claimed in any of claims 38, 39, 44, 45, and/or 56 of the '641 patent, and any other products made, sold, or offered for sale by or on behalf of LPL on or after January 1, 1998 that incorporate or embody any invention claimed in claims 35, 36 and/or 55 of the '641 patent and/or claims 33, 34, 35 and/or 40 of the '718 patent.

**REQUEST FOR PRODUCTION NO. 126:**

Documents sufficient to illustrate, show and/or evidence the location of the "flat display panel" (as that term is used in claim 56 of the '641 patent) relative to the "first frame" and

"second frame" (as those terms are used in claim 56 of the '641 patent), or the distances between the "flat display panel" and the "first frame" and "second frame" in any product made, sold, or offered for sale by or on behalf of LPL on or after January 1, 1998 that incorporates or embodies any "flat panel display device" (as that term is used in claim 56 of the '641 patent), whether or not the "flat panel display device" is "rear mountable" (as that term is used in claim 56 of the '641 patent).

**REQUEST FOR PRODUCTION NO. 127:**

Documents sufficient to illustrate, show and/or evidence the shape, structure, form and/or performance of any structure provided in any product made, sold, offered for sale, demonstrated or used anywhere by or on behalf of LPL on or after January 1, 1998 that incorporates or embodies any "flat panel display device" (as that term is used in claim 56 of the '641 patent), that enable mounting of a "flat display panel" (as that term is used in claim 56 of the '641 patent) to a "housing" (as that term is used in claim 56 of the '641 patent).

Date: February 23, 2007

Respectfully submitted,

Connolly Bove Lodge & Hutz LLP

Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071
Telephone:  (213) 787-2500
Facsimile:  (213) 687-0498

Tracy R. Roman (CA Bar No. 199031)
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone: (310) 277-0010
Facsimile: (310) 277-1980

By:  /s/ James D. Heisman
     Jeffrey B. Bove (#998)
     Jaclyn M. Mason (#4737)
     James D. Heisman (#2746)
     The Nemours Building, 8th floor
     1007 North Orange Street
     Wilmington, DE 19801
     Telephone:  (302) 658-9141
     Facsimile:  (302) 658-5614

*Attorneys for Defendant*
*ViewSonic Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of February 2007, a true and correct copy of the

foregoing DEFENDANT VIEWSONIC CORPORATION'S THIRD SET OF

REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF LG. PHILIPS LCD CO.,

LTD. was hand delivered to the following persons:

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, DE 19801

Anne Shea Gaza, Esq.
Frederick L. Cottrell, III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

I further certify that on the 23rd day of February 2007, I have sent by email the foregoing

document to the following non-registered participants:

Cass W. Christenson, Esq.
Lora A. Brzezynski, Esq.
Rel S. Ambrozy, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Mark H. Krietzman, Esq.
Valerie W. Ho, Esq.
Frank E. Merideth, Jr., Esq.
Steve Hassid, Esq.
Greenberg Traurig, LLP
2450 Colorado Ave., Suite 400E
Santa Monica, CA 90404

Tracy R. Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East
Suite 2300
Los Angeles, CA 90067-2325

*/s/ James D. Heisman*
James D. Heisman (# 2746)
jheisman@cblh.com

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

        Plaintiff,

          v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

        Defendants.

CIVIL ACTION NO. 04-343

## DEFENDANT VIEWSONIC CORPORATION'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF LG. PHILIPS LCD CO., LTD.

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant ViewSonic Corporation serves the following requests for production of documents on Plaintiff LG.Philips LCD Co., Ltd., and requests that LG.Philips LCD Co., Ltd. produce for inspection and copying the documents requested herein. The documents are to be produced, within thirty (30) days after service of the requests at the offices of Connolly Bove Lodge & Hutz LLP, 355 South Grand Avenue, Suite 3150, Los Angeles, CA 90071.

**I.     DEFINITIONS AND INSTRUCTIONS**

ViewSonic incorporates the definitions and instructions in its previous Requests for Production of Documents.

**II.     REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 128:**

All information from January 1, 1997 relating to the structures, devices, mechanisms and/or methods used to affix, secure, mount, or attach a flat panel display device (e.g., an LCD module, plasma display panel or field emission device) to, on, or within any other structure, including but not limited to a frame, chassis, tray, enclosure, case, housing, or stand, at or near

the corners of the flat panel display device, including a sample of each such flat panel display device.

## REQUEST FOR PRODUCTION NO. 129:

All information related to projections, budgets, forecasts and business plans from January 1, 1997 regarding any flat panel display device (e.g., an LCD module, plasma display panel or field emission device) that can be affixed, secured, mounted, or attached to, on, or within any other structure, including but not limited to a frame, chassis, tray, enclosure, case, housing, or stand, at or near the corners of the flat panel display device.

## REQUEST FOR PRODUCTION NO. 130:

All information related to projections, budgets, forecasts and business plans from January 1, 1997 regarding any flat panel display device (e.g., an LCD module, plasma display panel or field emission device) that can be affixed, secured, mounted, or attached to, on, or within any other structure, including but not limited to a frame, chassis, tray, enclosure, case, housing, or stand, not at or near the corners of the flat panel display device.

Date:  February 28, 2007

Respectfully submitted,

Connolly Bove Lodge & Hutz LLP

Of Counsel:

Scott R. Miller  (CA Bar No. 112656)
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue, Suite 3150
Los Angeles, CA  90071
Telephone: (213) 787-2500
Facsimile:  (213) 687-0498

Tracy R. Roman (CA Bar No. 199031)
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone: (310) 277-0010
Facsimile: (310) 277-1980

By: :  */s/  James D. Heisman*
Jeffrey B. Bove (#998)
James D. Heisman (# 2746)
Jaclyn M. Mason (#4737)
The Nemours Building, 8th floor
1007 North Orange Street
Wilmington, DE 19801
Telephone:  (302) 658-9141
Facsimile:  (302) 658-5614

*Attorneys for Defendant*
*ViewSonic Corporation*

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on February 28, 2007, a true copy of the

foregoing **DEFENDANT VIEWSONIC CORPORATION'S FOURTH SET OF**

**REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF LG. PHILIPS**

**LCD CO., LTD.** was hand delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing to the following

and the document is available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

I hereby certify that on February 28, 2007, I have sent by email and U.S. Mail the

foregoing document to the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy R. Roman
Raskin Peter Rubin & Simon
1801 Century Park East 23rd Floor
Los Angeles, CA 90067

By: /s/ James D. Heisman
    James D. Heisman (# 2746)
    jheisman@cblh.com

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

Plaintiff,

v.

TATUNG CO.;
TATUNG COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION

Defendants.

C. A. No. 04-343

**DEFENDANT VIEWSONIC CORPORATION'S FIRST SET OF INTERROGATORIES
TO PLAINTIFF LG. PHILIPS LCD CO., LTD.**

PROPOUNDING PARTY:        Defendant ViewSonic Corporation

RESPONDING PARTY:         Plaintiff LG. Philips LCD Co., Ltd.

SET NO.:                  One (Nos. 1-16)


Pursuant to Rule 33 of the Federal Rule of Civil Procedure, Defendant ViewSonic

Corporation requests that Plaintiff LG. Philips LCD Co., Ltd. respond to the following

Interrogatories, separately and fully, under oath and in writing.  The response shall be signed by

the person making said response and served upon Plaintiff within 30 days after service of these

Interrogatories.


I.    **DEFINITIONS AND INSTRUCTIONS**

1.    **SPECIAL DEFINITIONS**

A.    "ViewSonic" means Defendant ViewSonic Corporation and includes any

and all of its predecessors and successors-in-interest, any and all parents, subsidiaries, divisions,

affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

      B.    "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

      C.    The term "'718 Patent" shall mean and refer to U.S. Patent No. 6,498,718.

      D.    The term "'641 Patent" shall mean and refer to U.S. Patent No. 6,501,641.

      E.    The term "Patents-in-Suit" shall mean and refer to the '718 Patent and the '641 Patent, or any of them.

      F.    The term "foreign counterparts" shall mean any non-United States patent or patent application (1) that claims priority from or through any U.S. patent or patent application, or (2) from which any U.S. patent or patent application claims priority.

      G.    "Patent Holder" shall mean any inventor, licensee and all assignees of the rights of any invention in any of the Patents-in-Suit.

      H.    "Prior Art" includes, by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and each and every subdivision of 35 U.S.C. § 102.


    2.    **GENERAL DEFINITIONS**

      A.    "Describe" requires a statement of the information sought by the interrogatory sufficient to answer the question posed and identifying at least one person knowledgeable concerning the subject matter inquired about and, also, where an event is inquired about, the date and location of the event.

      B.    "Individual" shall mean a natural person.

      C.    "Person" means any natural person or individual, association, joint venture, partnership, company, corporation, governmental agency, body or authority, court, or any other organizations of individuals or other entities.

2

D.      The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy:  agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium.  A draft or non-identical copy is a separate document within the meaning of this term.

E.      "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

F.      The singular as used herein shall include the plural and vice versa, and the masculine gender shall include the feminine and the neuter; all as is necessary to bring within the

3

scope of these interrogatories any information that would otherwise not be brought within their scope but substantively pertain thereto.

G.    "And" and "or" as used herein shall be construed both conjunctively and disjunctively and the term "including" means "including but not limited to," all as is necessary to bring within the scope of these interrogatories any information that would otherwise not be brought within their scope but substantively pertain thereto.

H.    In answering these interrogatories, LPL is required to furnish all information known to LPL, including without limitation, information in possession of LPL's advisors, associates, agents, consultants, employees, attorneys, consultants, or investigators. If LPL is unable to answer an interrogatory fully and completely after exercising due diligence to make inquiry and secure information to do so, please so state, answer each such interrogatory to the extent able, specifically identify the portion of the interrogatory that cannot be answered fully and completely, state the facts supporting LPL's contention that the interrogatory cannot be answered fully and completely, and state LPL's current knowledge, information and belief concerning the unanswered portion of each interrogatory.

I.    These interrogatories are deemed to be continuing, and in addition to the obligations imposed by Rule 26(e) of the Federal Rules of Civil Procedure, LPL is requested to promptly produce, by way of supplementary response, any additional information which may become known or available to LPL or any person acting on LPL's behalf, which will augment or otherwise modify LPL's responses.

J.    These interrogatories are submitted for purposes of discovery only, and nothing contained herein shall be taken as an admission of relevance, or as a waiver of any objections to the admissibility at trial, of any evidence or information inquired about by these interrogatories or furnished in response thereto.

K.    A request to "identify" or for "identification" requires the following information:

(a)    For an individual, his or her full name, last known residence address and occupation, except that for a current employee, the address of the facility at which he or she is employed should be provided in lieu of the residence address.

(b)    For a person other than an individual, its actual and any fictitious names, last known address, and type of entity.

(c)    For a patent, the country, patent number and date of issue.  For a patent application, the country, the serial number, filing date, named inventors, title and whether the application is pending or has been abandoned.

(d)    For a printed publication, the title of the publication, its date, volume and issue numbers, author, page numbers, and publisher.

(e)    For a document, or a study reported in a document, the name of the author(s) and all recipient(s), date, title, number of pages, and a general indication of content.

L.    If LPL objects that a term or phrase is ambiguous or indefinite, then provide LPL's understanding of the term or phrase and respond accordingly.

M.    For any interrogatory which is objected to on the ground of privilege or immunity, state in full:

(a)    a brief identification and description of the withheld communication, information, matter or document, including, for example:

(i)    the date of the communication, information, matter or document;

(ii)    identity of the author of the communication, information, matter or document;

(iii)    the identity and address of each recipient of the communication, information, matter or document, including any copy thereof;

(iv)    for documents, the type or nature of document withheld (e.g., letter, memorandum, etc.); the length of the document in pages; the location of the original and each copy of the document;

5

        (b)     The general subject matter of the communication, information, matter or document, including a statement of sufficient relevant facts and circumstances which will explain the basis of the claim of privilege or immunity and will permit the adjudication of the propriety of the claim of privilege or immunity;

        (c)     the nature of the claimed privilege or immunity (i.e., attorney-client; work product); and

        (d)     each person, other than the attorneys of record, having knowledge of the factual basis asserted for the privilege or immunity.

## II.    INTERROGATORIES

### INTERROGATORY NO. 1:

Set forth all contentions that ViewSonic infringes any patent claim asserted in this litigation, directly, indirectly, literally or under the doctrine of equivalents, including an identification of the following: (a) each allegedly infringing product sold by ViewSonic; (b) the specific sections of 35 U.S.C. section 271 that allegedly gives rise to infringement liability for each allegedly infringing product, (c) the specific claims that LPL contends are infringed with respect to each allegedly infringing product, and (d) on a claim by claim basis, where in each allegedly infringing product the claim elements can be located.

### INTERROGATORY NO. 2:

For each allegedly infringing ViewSonic product identified by you in response to Interrogatory No. 1, identify the circumstances under which LPL first considered that the ViewSonic product might infringe any claim of one or more of the Patents-in-Suit, including the dates LPL first learned of the product, any efforts to verify whether or not the product infringes, the names of LPL employees who learned of or investigated the alleged infringement, and the date, place and reasons that any of these events occurred.

related thereto and identify the three persons most knowledgeable about the transfer of title and any related transactions.

**INTERROGATORY NO. 15:**

Identify, by serial or application number, title, inventor(s) filing date, issue date (if applicable) and country, all pending, issued or abandoned patent applications, both United States and foreign, which are continuations, divisional applications, continuations-in-part, reissues or reexaminations of, or that otherwise resulted from, claim any benefit of priority based on, or describe subject matter related to any of the patent applications that issued as any of the Patents-in-Suit, and identity all persons having knowledge thereof.

**INTERROGATORY NO. 16:**

To the extent that any of your responses to any of ViewSonic's Requests for Admissions was anything other than an unqualified admission, list all material facts on which you based any part of your response that was not an unqualified admission, identify all documents memorializing each such fact, and identify all persons with knowledge of each such fact.

POTTER ANDERSON & CORROON LLP

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19899-0951
    Telephone:  (302) 984-6000
    Facsimile:   (302) 658-1192

*Attorneys for ViewSonic Corporation*

Dated:  February 8, 2006

10

Of Counsel:

Scott R. Miller
Tracy R. Roman
Bingham McCutchen LLP
355 South Grand Ave., 44th Floor
Los Angeles, CA  90071-3106

*Attorneys for ViewSonic Corporation*

#718839

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 8, 2006, a true and correct

copy of the within document was caused to be served on the attorney of record at the following

addresses as indicated:

### VIA HAND DELIVERY

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

### VIA FEDERAL EXPRESS

Daniel G. Jarcho
Cass W. Christenson
Andrew J. Park
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
djarcho@mckennalong.com
cchristenson@mckennalong.com

Mark H. Krietzman
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404
krietzmanm@gtlaw.com

David E. Moore

639612