# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

**WILMINGTON, DE**

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

James D. Heisman
Partner

TEL (302) 888-6216
EMAIL jheisman@cblh.com

*Via Email and Hand-Delivery*

June 25, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

**Re:** *LG.Philips LCD Co., Ltd. v. ViewSonic et al.*, **USDC, D. Del., No. 04-343-JJF**
**Discovery Deferred Until After Claim Construction**

Dear Special Master Poppiti:

Pursuant to section II of Mr. Kirk's June 1, 2007 letter to Your Honor (DI 681), ViewSonic hereby responds to LPL's June 20 submission.

LPL did not identify any additional discovery that it seeks from the defendants, or that has been deferred based on any alleged need for claim construction. Instead, LPL asks that any such discovery be limited at most. Unfortunately, this is simply not possible given that defendants have produced substantial discovery, while LPL has successfully fought to defer discovery until now. This deferral, however, cannot be the basis for denial, as doing so will severely prejudice defendants in their preparation of this case.

LPL has produced very little technical information about its own products, and **_no_** technical information about **any** prior art LPL product, which is critical discovery at least for invalidity and unenforceability of the patents in suit. Moreover, LPL has failed to provide a single LPL product for inspection. With claim construction complete, it is apparent that the discovery sought by ViewSonic that has been deferred, both prior art and later LPL products, is all unquestionably relevant. The fact that it may also be materially harmful to LPL's contentions in this case is what makes it important to defendants.

Allegations by LPL that the burden to produce the technical discovery that it has managed to defer should somehow relieve it from its discovery obligations must be rejected. Any burden placed on LPL now is no different than the burdens already borne in this case by ViewSonic and the Tatung defendants to produce technical information, reflected in part by the much larger volume of discovery produced by the defendants.[1] It was LPL's strategic choice to delay production of its technical information - which ViewSonic has been seeking for a year - until after claim construction. LPL's choice to pursue delay rather than comply with its discovery obligations has prejudiced ViewSonic

---

[1] As an example of the burden ViewSonic has absorbed, ViewSonic has produced more than 130,000 pages of documents including technical and sales information for every ViewSonic monitor and television sold in the U.S. since December 2002. ViewSonic located and offered LPL and its technical expert to inspect approximately 150 ViewSonic products. LPL has avoided similar burdens by producing a total of approximately 18,000 pages of documents comprising primarily the prosecution histories of the patents in suit (including certified copies which ViewSonic had already produced in the case), related patent applications, some prior art, and photos of various products the defendants have offered for inspection.

CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
June 25, 2007
Page 2

by, among other things, greatly shortening the time remaining to properly evaluate the expected volume of discovery to be provided by LPL. LPL has all of the technical discovery from ViewSonic, while ViewSonic has virtually none from LPL.

To the extent that LPL does or can group or categorize its LCD and plasma products, ViewSonic is willing to accept information sufficient to establish the structure and assembly of each group or category of LCD and plasma products, including the structure and assembly of the parts of such products, as long as the details of all fastening parts are accurately depicted for each group, including identifying the location, size and type of any and all fastening parts, whether or not the fastening parts were used to mount the LCD or plasma product to a case or housing, and even if the fastening parts were in fact designed to fasten other structures to the LCD or plasma product. This is exactly the type of categorization LPL has asked the defendants to provide, and will reduce any alleged burden on LPL to produce the critical information.

LPL has suggested in the past that (i) LPL does not make a "rearmountable" flat panel display product as that term is used in the patents in suit, and (ii) that it does not have any technical information regarding front mount and side mount LPL LCD modules sold or offered for sale in the U.S. prior to December 31, 1998 (the date LPL asserts should cut-off prior art technical discovery). Properly made, such representations would reduce the volume of technical discovery from and the commensurate burden on LPL. ViewSonic believes appropriate representations would have the following form:

> (1) LCD modules that LPL has made and makes for use in desktop computer monitors and televisions are "flat panel display devices" as that term is presently construed;[2]

> (2) LPL has not made and does not make "flat panel display devices" that are "rear mountable" as those terms are presently construed; and

> (3) LPL has no technical information (e.g., product specifications, drawings, or service or repair manuals, instructions, samples, etc.) for any of its "flat panel display products" that were offered for sale or sold prior to December 1998.

If LPL makes these representations on the record, the deferred technical discovery from LPL that will remain at issue relates to noninfringing alternatives, which will greatly reduce any burden on LPL.[3]

Finally, LPL's implication that there was no compliance with LR 7.1.1 is incorrect. What is apparent is that LPL's arguments to "defer" discovery were nothing more than thinly veiled attempts to completely avoid discovery. As demonstrated by the correspondence enclosed with LPL's June 20 submission, when ViewSonic indicated that it would consider any offer from LPL to produce some portion of the technical discovery that is long overdue, LPL offered nothing.

Counsel for ViewSonic looks forward to discussing the issues raised herein and in ViewSonic's June 20 submission at Your Honor's convenience.

---

[2] LPL has admitted that its LCD modules have frames. See A. Stitzer's Jan. 8, 2007 letter (Ex. 19), p. 2, § III. However, LPL's LCD modules may not be "rear mountable".

[3] If any claim construction changes, ViewSonic reserves the right to seek the full scope of its discovery requests.

 CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
June 25, 2007
Page 3

Respectfully submitted,

*/s/ James D. Heisman*

James D. Heisman

cc:    Counsel of record

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2007, a true copy of the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

I hereby certify that on June 25, 2007, I have sent by email the foregoing document to the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy R. Roman
Raskin Peter Rubin & Simon
1801 Century Park East 23rd Floor
Los Angeles, CA 90067

By: _/s/  James D. Heisman_
    James D. Heisman (#2746)
    jheisman@cblh.com