IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 04-343 (JJF) |
| TATUNG CO.; TATUNG COMPANY OF AMERICA, INC.; and VIEWSONIC CORPORATION, | JURY TRIAL DEMANDED |
| Defendants/Counterclaim Plaintiffs. | |

**PLAINTIFF LG.PHILIPS LCD CO., LTD.'S EXCEPTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON CLAIM CONSTRUCTION**

THE BAYARD FIRM
Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Cass W. Christenson
Audrey E. Klein
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

July 6, 2007

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    REVIEW OF THE RECORD BEFORE THE SPECIAL MASTER ............................... 2

    A.     Hearing Transcript ................................................. 2

    B.     *Markman* Briefs .................................................. 2

    C.     *Markman* Presentation Materials ................................. 2

III.   LPL'S CONSTRUCTION OF "REAR MOUNTABLE" IS SUPPORTED BY THE INTRINSIC RECORD ................................................................. 2

IV.    THE SPECIAL MASTER'S CONSTRUCTION OF "REAR MOUNTABLE" .............. 3

V.     THE SPECIAL MASTER'S CONSTRUCTION OF THE TERM "REAR MOUNTABLE" TO INCLUDE A NEGATIVE LIMITATION IS CONTRARY TO LAW AND FACT ................................................................. 5

    A.     The Special Master's Construction of "rear mountable" Impermissibly Excludes Front and Side Mounting Absent Any Requisite Clear and Unmistakable Disavowal ................................................................. 5

        1.     Controlling Precedent Forbids Importing a Negative Limitation Without Explicit Support ................................................. 5

        2.     The Special Master Improperly Imported a Negative Limitation Without Any Explicit Support ................................................. 6

            a.     The Negative Limitation "that has no front or side mounting fastening elements" Finds No Anchor in The Explicit Claim Language ................................................. 6

            b.     Applicants Did Not Clearly and Unmistakably Disavow Front or Side Mounting Fastening Elements Nor Was Such A Disavowal Necessary to Overcome The Prior Art .................... 7

    B.     The Special Master Misconstrued The Purpose of The Invention to Justify Improperly The Negative Limitation ................................... 10

    C.     The Special Master's Conclusion that The Negative Limitation Is Warranted "Notwithstanding the Absence of An Explicit Disclaimer" Is Wrong ................................................. 13

VI.    CONCLUSION ................................................................. 15

## TABLE OF AUTHORITIES

### CASES

**Page**

*Cephalon, Inc. v. Barr Labs, Inc.,*
389 F. Supp. 2d 602 (D. Del. 2005) .................................................................................... 14

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
246 F.3d 1336 (Fed. Cir. 2001) .......................................................................................... 6

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,*
423 F.3d 1343 (Fed. Cir. 2005) .................................................................................. 6, 12

*MBO Labs., Inc. v. Becton, Dickson & Co.,*
474 F.3d 1323 (Fed. Cir. 2007) ........................................................................................ 11

*Northern Telecom Ltd. v. Samsung Electronics Company,*
215 F.3d 1281 (Fed. Cir. 2000) .......................................................................................... 9

*O.I. Corp. v. Tekmar Co. Inc.,*
115 F.3d 1576 (Fed. Cir. 1997) ........................................................................................ 14

*Omega Engineering, Inc. v. Raytek Corp.,*
334 F.3d 1314 (Fed. Cir. 2003) .................................................................................. 5, 6, 9

*Phillips v. AWH Corp.,*
415 F.3d  1303 (Fed. Cir. 2005) ........................................................................................ 11

*Power Integrations, Inc. v. Fairchild Semiconductors. Inc.,*
422 F. Supp. 2d 446 (D. Del. 2006) .................................................................................. 12

*Rexnord Corp. v. Laitram Corp.,*
274 F.3d 1336 (Fed. Cir. 2001) .......................................................................................... 9

*Uniloc USA, Inc. v. Microsoft Corp.,*
447 F. Supp. 2d 177 (D. R.I. 2006) .................................................................................... 11

### STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 53 ................................................................................................................. 1

Fed. R. Civ. P. 53(g)(2) ....................................................................................................... 1

Fed. R. Civ. P. 53(g)(3) ....................................................................................................... 1

I.     **INTRODUCTION**

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), through counsel, hereby objects, pursuant to Federal Rule of Civil Procedure 53(g)(2) and the Court's Second Amended [Omnibus] Rule 16 Scheduling Order (D.I. 577), to a portion of the June 15, 2007 Special Master Opinion and Order on Claim Construction ("Order") (D.I. 692).[1]  This Court decides *de novo* all objections to findings of fact and conclusions of law by the Special Master.  *See* Fed. R. Civ. P. 53(g)(3) & (4).

The Special Master's Order follows the *Markman* Hearing of May 30, 2007, wherein counsel for Plaintiff LPL and Defendants Tatung Co., Tatung Company of America, Inc., and ViewSonic Corporation (collectively "Defendants") presented their respective positions on the construction of fifteen (15) disputed claim terms of U.S. Patent No. 6,501,641 ("the '641 Patent") and U.S. Patent No. 6,498,718 ("the '718 patent") (collectively "the Patents-in-Suit").  The parties had previously stipulated to the constructions of five (5) claim terms, all of which were adopted by the Special Master. (Order at p. 17.)  Of the fifteen (15) terms construed by the Special Master in his Order, LPL hereby objects to the construction of a single term -- "rear mountable."  As discussed in detail below, LPL stands by its proposed construction of this term.  In light of the Special Master's construction, however, LPL proposes that the Court simply modify the Special Master's construction by removing the improperly imposed negative limitation, *i.e.*, "and that has no front or side mounting fastening elements," because such limitation lacks legal and factual support.

---

[1]  The Order is attached as Exhibit A to the accompanying Declaration of Rel S. Ambrozy ("Ambrozy Decl. Exh.").

## II.    REVIEW OF THE RECORD BEFORE THE SPECIAL MASTER

### A.    Hearing Transcript

A copy of the transcript of the May 30, 2007 hearing before the Special Master is attached as Ambrozy Decl. Exh. B.

### B.    *Markman* Briefs

Copies of LPL's Opening, Supplemental Opening, and Answering Briefs on Claim Construction can be found, respectively, at D.I. 370, D.I. 642, and D.I. 667.

Copies of Tatung's Opening, Supplemental Opening, and Answering Briefs on Claim Construction can be found, respectively, at D.I. 369 and 381, D.I. 639, and D.I. 666.

Copies of ViewSonic's Opening, Supplemental Opening, and Answering Briefs on Claim Construction can be found, respectively, at D.I. 372 and 378, D.I. 640, and D.I. 664.

Joint Appendix of Exhibits Identified in the Joint Submission ("JA") can be found at D.I. 373-376.

### C.    *Markman* Presentation Materials

A copy of LPL's *Markman* Hearing Presentation is attached as Ambrozy Decl. Exh. C.

## III.    LPL'S CONSTRUCTION OF "REAR MOUNTABLE" IS SUPPORTED BY THE INTRINSIC RECORD

As discussed in detail in LPL's claim construction briefs and by LPL's counsel during the *Markman* hearing (hereby incorporated by reference), LPL proposed that the claim term "rear mountable" be construed to mean "capable of being substantially supported with the rear housing via a fastening part(s) located on the rear surface of the first frame *and positioned on or inside the border of the flat display panel*." (Emphasis

664414-1

added.) LPL's proposed construction is clearly supported by the intrinsic record. LPL

respectfully disagrees with the Special Master's finding that "the intrinsic record provides

no support for that particularized location of the fastening element." (Order at p. 5, n. 3.)

Indeed, if the rear mountable fastening part(s) themselves were not "positioned on or

inside the border of the flat display panel," they would necessarily create side space, and

thus LPL's construction of the term "rear mountable" is consistent with the specification

and the prosecution history. Accordingly, LPL maintains that its proposed construction is

proper. In light of the phraseology of the Special Master's construction, however, LPL

proposes an alternative construction below, which takes the Special Master's construction

and modifies it to make it consistent with the intrinsic record and the purpose of the

invention.

IV.    **THE SPECIAL MASTER'S CONSTRUCTION OF "REAR
       MOUNTABLE"**

The Special Master construed "rear mountable" to mean "*a flat-panel display

device that is capable of being mounted to a housing solely from the back of the first

frame and that has no front or side mounting fastening elements.*" (Emphasis added.)

LPL is not appealing the italicized portion of the construction because, as detailed in

LPL's briefs and by LPL's counsel during the *Markman* hearing, this construction

captures a novel aspect of the Patents-in-Suit in accordance with the intrinsic record and

LPL's proposed construction. As discussed in detail below, the claims, specification and

prosecution history clearly support that the Patents-in-Suit claim a "rear mountable flat

panel display device," which was not disclosed by the prior art. Indeed, it was the

addition of this "rear mountable"[2] capability that lead to allowance of the claims at issue.

In the words of the Examiner regarding the '641 Patent:

> The following is an examiner's statement of reasons for allowance:
> The best prior art of record, Abell Jr. et al. (US 5,268,816) and
> Yun et al. (US 5,835,139), taken alone or in combination fails to
> teach or suggest a portable computer comprising a rear mountable
> display device having a fastening element at a rear surface of the
> rear mountable display device attached to a case through the
> fastening element as claimed in claims 1, 30, 35, 47, 55 and 56.
> Claims 2-29, 31-34, 36-46, and 48-54 are dependent claims from
> claims 1, 30, 35 and 47 respectively.

J.A. at Ex. G. JA00403.[3]  (A similar reason for allowance was given for the '718 Patent at

JA00195.)

Accordingly, the Special Master correctly concluded that the rear mountable

limitation is more than "a fastening part at a rear surface of the first frame" (Order at p.

5).  Rather, the rear mountable limitation requires, as the Special Master found, "that the

flat panel display device be *capable* of being mounted to a housing *solely* from the back

of the first frame."  (Emphasis added.)  Thus, the rear mountable amendment made clear

that the fastening part at a rear surface of the first frame is capable of *solely* attaching the

flat panel display device to the housing.  Further, it is also clear that the fastening part at a

rear surface of the first frame must be positioned within the perimeter of the module to

achieve the purpose of the invention, even as mischaracterized by the Special Master.

Thus, the intrinsic record supports the Special Master's construction so long as

the negative limitation is removed and the construction reads: "a flat panel display

---

[2]  Significantly, the suffix "able" means "susceptible, capable, or worthy of (an action)" (Ambrozy Decl.
Exh. D, American Heritage Dictionary 2 (3d. ed. 1994)).

[3]  References hereto to the Joint Appendix or Exhibits shall be cited as JA___.

device that is capable of being mounted to a housing solely from the back of the first

frame." Removal of the negative limitation of "and that has no front or side mounting

fastening elements" is necessary because, as discussed below, there is no support in law

or fact for such additional negative limitation.

V.    **THE SPECIAL MASTER'S CONSTRUCTION OF THE TERM "REAR MOUNTABLE" TO INCLUDE A NEGATIVE LIMITATION IS CONTRARY TO LAW AND FACT**

   A.    **The Special Master's Construction of "*rear mountable*" Impermissibly Excludes Front and Side Mounting Absent Any Requisite Clear and Unmistakable Disavowal**

      1.    **Controlling Precedent Forbids Importing a Negative Limitation Without Explicit Support**

As the Special Master acknowledged, the Federal Circuit, in *Omega Engineering,*

*Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003), rejected, as a matter of law,

attempts to import a negative limitation into a claim where the claim language does not

contain or support such a limitation. In *Omega*, the Federal Circuit vacated a district

court's claim construction because the court improperly imported a negative limitation

that was not present in the claim language, specification or prosecution history. In

performing its analysis of the intrinsic evidence, the Federal Circuit first reviewed the

claims and found "no anchor in the explicit claim language" for the negative limitation.

*Id.* at 1322. Moving on to the specification, the Federal Circuit also found that "neither

the district court nor [the party proffering the negative limitation] identified any express

disclaimer or independent lexicography in the written description that would justify

adding the negative limitation." *Id.* at 1323 (internal citations omitted). Finally, after

reviewing the prosecution history in detail, the Federal Circuit "declined to apply the

doctrine of prosecution disclaimer where the alleged disavowal of claim scope is

ambiguous." *Id.* at 1324. In sum, the Federal Circuit based its refusal to read in the negative limitation on the fact that the Applicant did not "clearly and unmistakably disavow" the negative limitation at issue. *Id.* at 1326.

> 2.    **The Special Master Improperly Imported a Negative Limitation Without Any Explicit Support**
>
> > a.    **The Negative Limitation *"that has no front or side mounting fastening elements"* Finds No Anchor in The *Explicit* Claim Language**

The claim language of the Patent-in-Suit does not support the negative limitation imported by the Special Master. As in *Omega*, "[t]he *express* text of the claims does not prohibit" front or side mounting fastening elements. *Id.* at 1322 (emphasis added). The claim language only requires "having a fastening part at a rear surface of the first frame . . . ." (*See, e.g.,* the '641 Patent, claim 35). The Special Master's phrase "that has no front or side fastening elements" relates to unclaimed features and finds no support in the text of the claims. *See Omega*, 334 F.3d at 1322.

Further, all the independent claims employ "comprising" as the transitional phrase between the preamble and the body of the claim (*e.g.*, claim 35 of the '641 Patent recites "*comprising* . . . a first frame having a fastening part at a rear surface . . . ." (emphasis added)). As this Court and the Federal Circuit have repeatedly recognized, the use of the term "comprising" indicates that the claim is "open-ended" and creates a presumption that the claim does not exclude additional, unrecited elements, such as, in this case, "front or side mounting fastening elements." *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001); *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,* 423 F.3d 1343, 1353 (Fed. Cir. 2005) (holding that "[b]asic patent law holds that a party may not avoid infringement of a patent claim using an open

transitional phrase, such as comprising, by adding additional elements"). This

presumption cannot be rebutted because, as the Special Master noted, any rebuttal

requires "a clear disavowal in the intrinsic record" (Order at p. 6), which, as discussed

below, is clearly absent in this case. Accordingly, as in *Omega*, this "additional negative

limitation finds no anchor in the *explicit* claim language."[4]

> b.  **Applicants Did Not Clearly and Unmistakably Disavow Front or Side Mounting Fastening Elements Nor Was Such A Disavowal Necessary to Overcome The Prior Art**

Although the Special Master begins by correctly citing controlling case law

requiring that consideration be given to whether the "applicant clearly and

unambiguously disavowed [any interpretation] during prosecution in order to obtain

claim allowance," (Order at p. 9, citations omitted), he then inexplicably finds disavowal-

by-implication where none exists. In order to reach this result, the Special Master begins

by ignoring the required absolute language; instead concluding that, in the instant case,

Applicants' arguments "differentiating" or "distinguishing the rear-mountable invention

from the front- or side- mounting prior art" are sufficient to find an "unmistakable

disavowal," wherein they "expressly disclaimed" alternate mounting techniques. (Order

at pp. 9-10.)

The Special Master reaches this conclusion despite his acknowledgement that

"nowhere in the prosecution history do the inventors expressly say that 'rear mountable'

is not front or side mounting." (Order at p. 10.) Indeed, the Applicants did not argue that

---

[4] The Special Master's sole reliance on the disputed term "'rear mountable' itself" (Order at p. 5) to be the "explicit claim language" sufficient to anchor the negative limitation should be rejected because, by virtue of the dispute as to the meaning of this term between the parties and the Special Master's proffer of yet an additional alternate construction, the meaning of the term "rear mountable" is clearly not explicit.

the instant invention lacks front- or side- mounting fastening elements for the simple reason that such an argument was not necessary to overcome the prior art. As is clear from the prosecution histories, in order to get the pending claims allowed, the Applicants only needed to demonstrate to the Examiner that the prior art did not disclose rear-mounting, and to amend the claims to add the term "rear mountable." JA00367 (Interview Summary, February 19, 2002, the Examiner finding "[t]he independent c[f]laims are to be amended with limitation "back mounted display" or the equivalent and pending for approval.")[5]

For example, Applicants' arguments focused on the fact that "[n]one of the cited references, singly or in combination, teaches or suggests at least this [rear mountable] feature of the claimed invention." JA00387. Indeed, the Examiner recognized the need to "search for back mount in the prior art." JA01093. As the Special Master acknowledged, *nowhere* in the prosecution histories did the Applicants ever disclaim side- or front- mounting, *i.e.*, that other fastening elements may be located elsewhere on the first frame. (Order at p. 10.) It is abundantly clear from the reasons for allowance, recited above, that it was the fact that the display device was "*capable of being mounted to a housing solely from the back of the first frame,*" as construed by the Special Master, which overcame the prior art. Again, none of the prior art cited by the Examiner had even a single fastening element on the rear surface of the first frame.

---

[5] Contrary to the Special Master's characterization, the context of the Examiner's interview summary does not "clarif[y]" that rear mountable excludes front or side mounting, but rather evidences that the rear-mountable capability was necessary for allowance. (Order at p. 5.) This capability refers to the potential for solely rear mounting, but does not exclude any or all side- or front- mounting fastening elements.

Moreover, as the Special Master noted, there is no context given to the meaning of "rear mountable" in the Examiner's interview summary. (Order at p. 5). Limiting the meaning of the term "rear mountable" to exclude front or side mounting fastening elements based on "inconclusive" remarks in the Examiner's interview summary is contrary to established precedent. For instance, in *Northern Telecom Ltd. v. Samsung Electronics Company*, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000), the accused infringer relied on remarks made by the inventors to overcome a rejection as the basis for narrowing the broad language of the claims. The Federal Circuit, however, deemed the inventors' statements as amenable to multiple reasonable interpretations and deemed the remarks too ambiguous to limit the claims. *Id.* at 1294. Since the prosecution statements were "far too slender a reed to support the judicial narrowing of a clear claim term," the Federal Circuit declined to apply the doctrine of prosecution disclaimer under those circumstances. *Id.*; *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1347 (Fed. Cir. 2001) (refusing to limit the ordinary meaning of the claim because the alleged disclaimer in the file wrapper was at best "inconclusive").

Here, Applicants did not disclaim fastening elements located on other parts of the first frame, and the Examiner did not seek such a disclaimer. As discussed above, the Federal Circuit in *Omega* clearly held that prosecution disclaimer should not be applied "where the disavowal of claim scope is ambiguous." *Omega*, 334 F.3d at 1324. The inventors' arguments cited by the Special Master to support his disavowal-by-implication (Order at p. 10, n.8) are ambiguous at best, and thus insufficient to support the negative limitation. As a result, the Special Master's construction goes too far. Because there was

-9-

no clear disavowal of front- or side- mounting, the Special Master's construction

imposing a disavowal-by-implication should be rejected.

**B.    The Special Master Misconstrued The Purpose of The Invention to Justify Improperly The Negative Limitation**

To justify and incorporate the negative limitation of "that has no front or side

mounting fastening elements," in the absence of explicit support in the claims or a clear

disavowal of claim scope, the Special Master focused on the purpose of the invention.

The Special Master, however, misconstrued the purpose of the invention as *requiring* the

elimination of all unnecessary side space. (Order at p. 6.) Although the Special Master is

correct that two objects of the instant invention are: (1) "to minimize the non-display area

of the LCD device;" and (2) "to provide a computer having a flat panel display device

with a maximum display area and a minimum display case size" (Order at p. 6), neither

of these objects supports the negative limitation.

It is indisputable that, before LPL's invention of the "rear mountable" flat panel

display device, the prior art devices were not capable of being mounted to a housing

solely from the back of the first frame, and the above objects of the invention therefore

could not be achieved. The specification further supports the invention's novel back-

mounting capability by disclosing:

> As explained above, the mounting method according to the
> present invention ***does not require*** unnecessary side space
> for mounting the LCD device on the computer. Thus, the
> ratio of the display area of the LCD device to the display
> case ***can*** be improved and maximized. The '641 Patent at
> col. 7, ll. 32-36. (Emphasis added.)

Although the above language confirms that a "rear mountable" flat panel display

device according to the present invention *does not require* unnecessary side space, the

Special Master erred by assuming that LPL's invention *requires* elimination of all side

-10-

space. (Order at p. 6.). *See, e.g. Uniloc USA, Inc. v. Microsoft Corp.*, 447 F. Supp. 2d

177, 186 (D. R.I. 2006) (distinguishing conceptually between "does not *require*" and

elimination; the fact that the "the system does not *require* the use of vendor-supplied

information" does not mean that "vendor-supplied information is banned absolutely"

(emphasis in original)).

    Further, LPL's position that the purpose of the invention *does not require* the

elimination of unnecessary side space would not result in "an invention that the examiner

rejected as obvious," as asserted by the Special Master. (Order at p. 7, n. 5.) [6] To the

contrary, as discussed in detail above, the rear-mountable feature, *i.e.*, the capability of

being mounted to a housing solely from the back of the first frame, was not rejected as

obvious, but rather resulted in patentability. Of course, the fastening part at a rear surface

of the first frame must be positioned within the perimeter of the module to achieve the

purpose of the invention, even under the Special Master's misinterpretation of the

invention's purpose.

    Moreover, there is nothing in the record to support the Special Master's

conclusory assumption that the mere presence of any front- or side- mounting elements --

regardless of their placement, function, or use -- necessarily precludes rear-mounting

and/or reducing unnecessary side space. (Order at p. 9.) ("LPL's proposed construction

would extend the claim scope to a [device] with fastening elements for front and side

---

[6] Even if the Special Master's assertion was true, the Federal Circuit has repeatedly warned that validity construction should be used as a last resort, not a first principle: "we have limited the maxim [that claims are to be construed to preserve validity] to cases in which the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (quotation marks omitted), *see also MBO Labs., Inc. v. Becton, Dickson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007).

mounting even though such a device would suffer from the prior art deficiencies of unnecessary side space, the very problem the patents purport to solve.") Tellingly, the Special Master provides no support for his assumption.[7]

Further, the Special Master's statement that "nowhere in the intrinsic evidence do the inventors discuss using rear-mounting features *in addition* to front or side mounting features" (Order at p. 7) provides no support for his overly narrow purpose of the invention and, once again, he cites to no legal authority in support of this proposition. To the contrary, the Federal Circuit has held that

> [t]he presence of an undesirable feature in addition to the elements recited in the claim, even when the undesirability of that feature formed the basis of an amendment and argument overcoming a rejection during prosecution, does not limit the claim unless there is a clear and unmistakable disclaimer of claim scope.

*Free Motion Fitness*, 423 F.3d at 1353.

Lastly, the Special Master's citation to U.S. Patent No. 6,411,501 ("the '501 Patent"), an unrelated patent, is inapposite because it does not "cover the same subject matter." (Order at p. 7.) The '501 Patent claims a "hinge frame" structure for a display module (Ambrozy Decl. Exh. E, the '501 Patent, *see, e.g.,* Fig. 7, hinge frame **20**), which is not claimed in the Patents-in-Suit. Specifically, claims 1-24 of the '641 Patent, which are not asserted in the instant case, claim a "hinge" and a "display device support member," but do not claim the "hinge frame" structure. The "hinge frame" structure of the '501 Patent should not be confused with the "hinge arm **24**" (also referred to as a "display device support member") of the Patents-in-Suit because the two structures are

---

[7] In contrast, in *Power Integrations, Inc. v. Fairchild Semiconductors. Inc.*, 422 F. Supp. 2d 446, 455 (D. Del. 2006), the purpose of the invention -- to reduce noise -- would clearly be contradicted if the "frequency jittering" was not controlled.

entirely different, both structurally and functionally. For example, the specifications of the Patents-in-Suit disclose an embodiment wherein the rear mountable flat panel display device is attached to a rear case *through* a hole on the hinge arm using fastening parts on the rear surface of a flat panel display device and the rear case. In contrast, the '501 Patent discloses a structure wherein a fastening part on the rear surface of a *module* is coupled *directly to* a hinge frame, which itself is attached to the side and/or back of a display case (side mount). Moreover, asserted claims 35-56 do not claim any hinge element (*i.e.*, hinge, display device support member, hinge structure, etc.), nor do the claims of the '718 patent. Thus, despite arguments made in Defendants' briefs, there was no cause for a double-patenting rejection and/or need for the inventors to inform the Examiner of the '501 Patent application. As Defendants acknowledged during the hearing, LPL did follow "the integrity in the patent process" during prosecution of the '501 patent. (Ambrozy Decl. Exh. B, at 97:12-17.)

In sum, the Special Master's attempt to limit the purpose of the invention to requiring the total elimination of all unnecessary side space finds no support in the intrinsic record, and the improper negative limitation should be rejected.

C.     **The Special Master's Conclusion that The Negative Limitation Is Warranted "Notwithstanding the Absence of An Explicit Disclaimer" Is Wrong**

Under the heading "*The Inventors Clearly and Unmistakably Disavowed Front and Side Mounting*," and following his arguments in support thereof, the Special Master concedes that there is an "absence of an explicit disclaimer" in the present case. (Order at p. 10.) The Special Master then cites distinguishable case law, discussed below, which does not support the negative limitation.

Both the Special Master and Tatung's counsel cite *Cephalon, Inc. v. Barr Labs, Inc.*, 389 F. Supp. 2d 602, 606 (D. Del. 2005) for the proposition that "whether or not there was an explicit disclaimer, the consistent use of a claim term by the inventor in the specification *may* serve to limit the scope of a claim." (*See* Order at p. 10 (emphasis added); Ambrozy Decl. Exh. B at 62:11-14.) Although this discretionary proposition is accurate, the circumstances justifying its application are not met here. Indeed, the Special Master failed to cite a single "association" in support of his position that "the consistent association of rear mounting with the elimination of unnecessary side space clearly limits the scope of the claimed invention." (Order at p. 10.)

Further, in *Cephalon,* the court found: (1) it "more significant" that "many of their statements indicate that the inventors viewed their invention as enveloping only the dry mixing and compression of powders to form the drug-containing lollipops;" and (2) that the specification disclosed that "the present invention teaches the mixing of solid powders at room temperature, *as opposed to* liquid components at elevated temperatures." *Cephalon*, 389 F. Supp. 2d at 606 (emphasis added). Thus, because dry and liquid components are clearly mutually exclusive, the court had a basis to limit the scope of the claim absent an explicit disclaimer. In contrast, rear-mounting elements and front- or side- mounting elements are not mutually exclusive. The Defendants and the Special Master noted, in fact, that the '501 Patent uses "the *combination* of back with side mounting." (Order at p. 7, emphasis in original.) Accordingly, the *Cephalon* case is distinguishable and does not support the Special Master's negative limitation.

The Special Master also cited to *O.I. Corp. v. Tekmar Co. Inc.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997). In that case, the Federal Circuit found that "[a]ll of the 'passage'

-14-

structures contemplated by the written description are [thus] either non-smooth or conical. In addition, the description expressly distinguishes over prior art passages by stating that those passages are generally smooth-walled." Accordingly, the court concluded that the term "passage" does not encompass a smooth-walled, completely cylindrical structure because such a structure could not satisfy the claimed invention, *i.e.*, "cause[s] a swirling effect on the water vapor to remove that vapor from the analyte slug." *Id.* As in *Cephalon*, there is mutual exclusivity, between a smooth walled, completely cylindrical passage structure and a non-smooth walled, completely cylindrical passage structure and/or a smooth walled, non-cylindrical shaped passage structure (conical), justifying the court's limitation of the scope of the claim term absent an explicit disclaimer. Once again, such is not the case here, as there is no fundamental incompatibility between rear-mounting fastening elements and other fastening elements because the rear mountable limitation can be satisfied regardless of other fastening elements so long as the flat panel display device is "*capable* of being mounted to a housing *solely* from the back of the first frame." It bears repeating, however, that the fastening part at a rear surface of the first frame must be positioned within the perimeter of the module to achieve the purpose of the invention, even as mischaracterized by the Special Master.

## VI.   CONCLUSION

LPL respectfully requests that the Court modify the Special Master's construction of "rear mountable" by deleting the negative limitation "and that has no front or side mounting fastening elements" and construe "rear mountable" to be "A flat-panel display device that is capable of being mounted to a housing solely from the back of the first frame."

664414-1

July 6, 2007                                    THE BAYARD FIRM


                                                /s/ Richard D. Kirk (rk0922)
                                                Richard D. Kirk (rk0922)
                                                Ashley B. Stitzer (as3891)
                                                222 Delaware Avenue, Suite 900
                                                P.O. Box 25130
                                                Wilmington, DE 19899-5130
                                                (302) 655-5000
                                                rkirk@bayardfirm.com
                                                astitzer@bayardfirm.com

                                                Counsel for Plaintiff
                                                LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Cass W. Christenson
Audrey E. Klein
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

664414-1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on July 6, 2007, she electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Jeffrey B Bove, Esq.
James D. Heisman, Esq.
Jaclyn M. Mason, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Frederick L. Cottrell, III, Esq.
Anne Shea Gaza, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by email and by hand on July 6, 2007 to the above counsel and were sent by

email and by U.S. Mail on July 6, 2007 to the following non-registered participants:

Scott R. Miller, Esq.
Connolly Bove Lodge & Hutz LLP
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Valerie Ho, Esq.
Mark H. Krietzman, Esq.
Frank C. Merideth, Jr., Esq.
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy Roman, Esq.
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

/s/ Ashley B. Stitzer (as3891)
Ashley B. Stitzer

571447-1