IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| L.G. PHILLIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | C.A. No. 04-343-JJF |
| | **REDACTED - PUBLIC VERSION** |
| TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, | |
| Defendants. | |

**DEFENDANTS TATUNG COMPANY'S AND TATUNG COMPANY OF AMERICA, INC.'S REQUESTS FOR CLARIFICATIONS REGARDING SPECIAL MASTER'S OPINION AND ORDER ON CLAIM CONSTRUCTION**

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
*Attorneys for Defendants Tatung Company
and Tatung Company of America*

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan W. Jansen
Valerie W. Ho
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
(310) 586-7700

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

I.     INTRODUCTION ............................................................................................. 1

II.    PROCEDURAL HISTORY ............................................................................... 2

III.   FACTUAL BACKGROUND ............................................................................ 2

       A.     The Patents-In-Suit ............................................................................... 2

       B.     The Purported Invention ....................................................................... 3

IV.    ARGUMENT .................................................................................................... 7

       A.     Standard Of Review ............................................................................... 7

       B.     The Law Of Claim Construction ........................................................... 7

       C.     The Constructions For "Flat Panel Display Device," "Liquid
              Crystal Display Device," "First Frame," And "Second Frame"
              Require Clarification .............................................................................. 8

              1.     A Sandwich Is An Integrated Unit ............................................. 9

              2.     LPL Misconstrues The Special Master's Constructions ......... 13

       D.     The Constructions For "Fastening Element" And "Fastening Hole"
              Require Clarification ............................................................................ 15

V.     CONCLUSION ............................................................................................... 18

i

**TABLE OF AUTHORITIES**

Page

**Federal Cases**

*Aquatex Indus., Inc. v. Techniche Solutions,*
    419 F.3d 1374 (Fed. Cir. 2005)....................................................................................... 12

*Kraft Foods, Inc. v. International Trading Co.,*
    203 F.3d 1362 (Fed. Cir. 2000).................................................................................... 12

*Kumar v. Ovonic Battery Co.,*
    351 F.3d 1364 (Fed. Cir. 2003)...................................................................................... 8

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995).......................................................................................... 7

*Microsoft Corp. v. Multi-Tech Systems, Inc.,*
    357 F.3d 1340 (Fed. Cir. 2004)...................................................................................... 8

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)................................................................................ 7, 8

*Resqnet.com, Inc. v. Lansa, Inc.,*
    346 F.3d 1374 (Fed. Cir. 2003)...................................................................................... 8

*Union Oil Co. of California v. Atlantic Richfield Co.,*
    208 F.3d 989 (Fed. Cir. 2000), *cert. denied,* 531 U.S. 1183 (2001).............................. 8

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996)....................................................................................... 7

**Federal Rules**

Federal Rules of Civil Procedure
    Rule 53 ........................................................................................................................... 7

**Other Authorities**

The American Heritage Dictionary................................................................................... 12, 14

ii

## I.    INTRODUCTION

Defendants Tatung Company and Tatung Company of America respectfully submit their Requests for Clarifications Regarding Special Master's Opinion And Order On Claim Construction. The Tatung Defendants do not take exception to the Special Master's recommendations, but in the hopes of narrowing the issues for trial, they respectfully seek clarification regarding the recommended constructions for several claim terms.

First, the recommended constructions for "flat panel display device," "liquid crystal display device," "first frame," and "second frame" require that the flat display panel or liquid crystal panel be "sandwiched" by the first and second frames. The Tatung Defendants believe that by adopting the term "sandwich" and ruling that the flat panel display device consists of two frames holding together at least a flat display panel, the Special Master shared the Tatung Defendants' view that the flat panel display device is an integrated unit or module. As is commonly understood, the term "sandwich" means more than merely "between." The concept of "sandwiching" involves holding something together. The term "sandwich" connotes a proximal association and connection between the constitute parts that make up the sandwich. Accordingly, the Tatung Defendants respectfully request that the Court clarify the terms "sandwiched" and "sandwiches" as used in the recommended constructions to mean proximally associated or connected so as to form a unit.

Second, while the Tatung Defendants do not take issue with the Special Master's proposed constructions for "fastening element" and "fastening hole," LPL had argued during the briefing process that a through hole can never be a fastening hole or

1

fastening element. The Tatung Defendants believe that this argument was rejected by the Special Master. Indeed, the Patents-in-Suit repeatedly refer to through holes and the material defining the holes as fastening elements. To avoid any future misapplication of the Special Master's constructions, the Tatung Defendants respectfully request that the Court clarify that through holes along with the material defining the holes can be fastening holes or fastening elements if they play a role in fastening one component to another. This position is supported by the clear language of the Patents and is entirely consistent with the Special Master's proposed constructions and analysis.

## II.    PROCEDURAL HISTORY

Pursuant to the Court's Rule 16 Scheduling Order, the parties filed their opening claim construction briefs on December 28, 2006. On April 30, 2007, the parties filed their supplemental claim construction briefs to address terms in claims that were newly asserted by LPL. On May 16, 2007, the parties filed their answering claim construction briefs.

The Special Master conducted a *Markman* hearing on May 30, 2007 and on June 15, 2007 issued his Opinion and Order on Claim Construction. Altogether, the Special Master construed 20 claim terms, a list of which is attached as Appendix A to the Opinion. (D.I. 692.)

## III.    FACTUAL BACKGROUND

### A.    The Patents-In-Suit

The Patents-in-Suit are U.S. Patent No. 6,501,641 (the "'641 Patent") and U.S. Patent No. 6,498,718 (the "'718 Patent"), which is a continuation of the '641 Patent. The '641 Patent is entitled, "Portable Computer Having a Flat Panel Display Device."

2

The "718 Patent is entitled, "Portable Computer and Method for Mounting a Flat Panel Display Device Thereon."[1]

Both patents claim priority from two Korean patent applications:   No. 98-44475 (the "'475 Application"), filed on October 23, 1998  and No. 98-44973 (the "'973 Application"), filed on October 27, 1998 (collectively, the "Korean Parent Applications").  Both the '641 Patent and the '718 Patent incorporate by reference the Korean Patent Applications.  ('641 Patent, 1:4-7, at Exh. A and '718 Patent, 1:7-10, at Exh. B.)[2]  The '641 and '718 Patents share the same specification.  The '641 Patent contains apparatus claims while the '718 Patent contains method claims.

LPL contends that the Tatung Defendants infringe claims 35, 36, 38, 39, 44, 45, 55 and 56 of the '641 Patent and claims 33, 34, 35, 36, and 40 of the '718 Patent.

**B.     The Purported Invention.**

The Patents-in-Suit are directed to the mounting of a flat panel display device in a portable computer.  A liquid crystal display (LCD) device is the only type of flat panel display device that is discussed in any detail in the Patents.  Notably, the invention does not relate to the flat panel display device itself but only to the mounting of the flat panel display device in a display product.  The Patents make clear that a flat panel display device, including a liquid crystal display device, already was well known in the art.  ('641 Patent, 1:25-45, at Exh. A.)

---

[1] The application that resulted in the '641 Patent was filed on April 2, 1998 (Application No. 09/285,338).  The application that resulted in the '718 Patent was filed on November 22, 1999 (Application No. 09/444,376).

[2] Unless otherwise noted, all exhibits are attached to the Joint Appendix of Exhibits filed by Co-Defendant ViewSonic Corporation on December 22, 2006.

3

The problem addressed by the Patents concerned fitting a larger flat panel display device into a display case that has a fixed size. (*See* '641 Patent, 2:37-39, 2:41-52, at Exh. A; *see also* D.I. 692 at pg. 3.) The Patents and the prosecution files explain that by eliminating the prior art front and/or side mounting features and relocating all of the mounting features to the back of the flat panel display device, the claimed invention thus removes the wasted space taken up by the front or side mounting features and correspondingly increases the size of the display area.

For example, in discussing Prior Art Figure 2 (an annotated version of which is depicted below), the Patents state: "In the front mounting structure of the LCD device, since the protrusions 136a require additional space corresponding to the protruded width d, the display area of the LCD device is reduced in comparison to the fixed size of the display case 122." ('641 Patent, 1:60-64, at Exh. A.)



(PRIOR ART)
FIG. 2

4

In discussing Prior Art Figure 3B (an annotated version is shown below), the

Patents state:

> In the mounting structure shown in FIG. 3B, the supporting frame 114
> requires side spaces for the flanges 114a and 114b. Therefore, the side
> space D (d1+d2) [shown in blue] results in a reduction of the display area
> [shown in black] of the LCD panel 112 relative to the display case 122.
> Moreover, as the display size increases, the display case becomes
> undesirably large, especially for a portable computer such as a laptop
> computer.

('641 Patent, 2:30-36, at Exh. A)



(PRIOR ART)
FIG. 3B
'641 Patent

5

Thus, according to the Patents, the prior art method of front mounting had certain disadvantages because the "protrusions," "protruded width," and "side space" associated with front mounting take up space that otherwise could be used for the display area.

The solution proposed by the Patents was to eliminate the space taken up by flanges 114a and 114b and the mounting holes therein (shown in green below) used for what the Patents refer to as "front mounting" and to relocate all of the fastening elements to the back of the liquid crystal display device 10. (*Compare* '641 Patent, Prior Art Fig. 3A *with* '641 Patent, Fig. 8, at Exh. A.)[3]



---

[3]   In addition to disclaiming "front mounting," LPL also distinguished the claimed invention from "side mounting" taught in U.S. Patent No. 5,835,139 (the "Yun Reference"), which was cited by the Patent Examiner during prosecution of the Patents-in-Suit. In order to overcome the Patent Examiner's objections, LPL had to amend all of the independent claims to add the "rear mountable" limitation. ('641 File History, JA00367 and JA00390 at Exh. G.)

6

## IV.    ARGUMENT

### A.    Standard Of Review

When ruling on a party's objections to the Special Master's report and recommendation, the Court may "adopt or affirm; modify; wholly or partly reject or reverse; or resubmit to the master with instructions." Fed. R. Civ. Proc. 53(g)(1). The Court's review of conclusions of law is de novo. Fed. R. Civ. Proc. 53(g)(4). Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

### B.    The Law Of Claim Construction

In construing claims, "the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Court provides an extensive discussion of the intrinsic and extrinsic evidence that should be considered for claim construction. While noting that "'the claims of a patent define the invention to which the patentee is entitled the right to exclude,'" the Court also emphasizes that "[t]he claims, of course, do not stand alone." *Id.* at 1312-15. "[The claims] are part of 'a fully integrated written instrument,' [citation omitted] consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.' [Citation omitted]. . . . [T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315.

7

Although limitations from the patent specification are not to be read into the claims, claims cannot be read more broadly than the patent's description of what the inventor regards as his invention. *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 821 (2004) ("We cannot construe the claims to cover subject matter broader than that which the patentee itself regarded as comprising its inventions...").

Courts may also construe the claims, in part, by referring to the problems that the invention allegedly overcomes. *See Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989, 995-96 (Fed. Cir. 2000), *cert. denied*, 531 U.S. 1183 (2001); *see also Resqnet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1380 (Fed. Cir. 2003) (construing claims to solve the problems identified in the specification "confirms the meaning of the claim language").

In addition, the prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. The "prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence." *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003).

C.    **The Constructions For "Flat Panel Display Device," "Liquid Crystal Display Device," "First Frame," And "Second Frame" Require Clarification.**

| Term | Tatung | LPL | Special Master |
|------|--------|-----|----------------|
| Liquid crystal | A stack or sandwich | An apparatus having | A display device |

8

| display (LCD) device | of layers, including a LCD panel, fixed together by at least a first frame to assemble a module | at least a liquid crystal display panel and supporting frame(s) | including a LCD panel and a backlight unit both of which are *sandwiched* by the first and second frames (emphasis added) |
|---|---|---|---|
| Flat panel display device | A stack or sandwich of layers, including a flat display panel, fixed together by at least a first frame to assemble a module | An apparatus having at least a flat display panel and supporting frame(s) | A display device having at least a flat display panel *sandwiched* by the first and second frames (emphasis added) |
| First frame | The rear (back) structure of a flat panel display device that, alone or in combination with the second frame, sandwiches and assembles the layers to form the device | A structure enclosed by the housing for firmly supporting the flat display panel | The structure at the back of the flat-panel display device that together with the second frame structure *sandwiches* at least the flat display panel (emphasis added) |
| Second frame | The front (top) structure of a flat panel display device that, together with the first frame, sandwiches and assembles the layers to form the device | A structure disposed in relation to the first frame such that the flat display panel is between the first frame and the structure | The structure at the front of the flat-panel display device that together with the first frame structure *sandwiches* at least the flat display panel (emphasis added) |

1.    **A Sandwich Is An Integrated Unit.**

The terms "sandwiched" and "sandwiches" as used by the Special Master require clarification because at a recent discovery hearing before the Special Master, LPL attempted to misconstrue the Special Master's recommended constructions. (Discovery Hearing Transcript, June 28, 2007, 6:20 - 12:24 at Exh. A hereto.)    The Tatung

9

Defendants believe the Special Master shared their view that the flat panel display device and liquid crystal display device, as claimed in the Patents, are integrated units consisting of two frames holding in place, or sandwiching together, at least a flat display panel. One of ordinary skill in the art would have understood the flat panel display device or liquid crystal display device to be what is commonly referred to in the industry as a "module."[4] The Special Master's Opinion adopted this position: "The patents-in-suit are generally directed to the mounting of flat-panel display device, such as an LCD (liquid crystal display) module, in a portable computer." (D.I. 692 at 3.)

Moreover, while the Special Master did not adopt the portion of Defendants' constructions that required multiple layers be assembled or held together along the edge, the Special Master "agree[s] with the Defendants, however, that the flat-panel display device includes the first and second frames." (*Id.* at 25.) The Special Master reasoned that claims 55 and 56 of the '641 Patent do not necessarily require that the flat panel display device have multiple layers (such as those found in a liquid crystal display device as depicted in Figure 4C of the Patents). The Special Master noted that claims 55 and 56 only recite that the flat panel display device have three main elements - a first frame, a second frame and a flat display panel sandwiched in between the frames. (*See id.* at 25-26.) While the Special Master rejected the notion that the flat panel display device must

---

**REDACTED**

10

have multiple layers, he nevertheless agreed with Defendants that the flat panel display device is a unit held together by frames.

The Special Master's analysis of the terms first frame and second frame further supports the Tatung Defendants' position. In concluding that the first frame is at the back of the flat panel display device and the second frame is at the front of the device, the Special Master noted that "the common specification supports this construction through its consistent description of the frames in relation to each other, and the depictions of the first and second frames as the structures at the rear and front, respectively, of the device." (*Id.* at 28.) The Special Master cites to Figures 4A-4C, 8, 9, 12-14 and Column 4, lines 21-22 of the '641 Patent to support his conclusion. Figure 4C cited by the Special Master (reproduced here) depicts the liquid crystal display device 10 as an integrated unit held together by frames 16 and 14g. As the Special Master recognized, the Patents clearly state that the "first frame 14g is coupled to a second frame or support frame 16." ('641 Patent, 4:21-22, at Exh. A.)



Figures 8-9 and 12-14, also relied on by the Special Master, all show the liquid crystal display device 10 as a device or module, and the flat display panel is held between the first and second frames to form the device.   In fact, the liquid crystal display device 10 (the only flat panel display device discussed in the Patents) is shown throughout the description as a unit.  *See Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380-82 (Fed. Cir. 2005) (a patentee's description in a specification may dictate a narrow claim construction where the specification contains no support for a broader one); *Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (the court construed the claim term "protecting back panel" as one that must be relatively stiff because "every disclosed embodiment that employs a back panel employs one that is relatively stiff").

Accordingly, the terms "sandwiched" and "sandwiches" as adopted by the Special Master mean more than merely "between."  The flat panel display device must comprise more than just disembodied parts.  The term "sandwich" connotes a proximal association and coupling between the essential components that make up the sandwich.  The concept of "sandwiching" involves holding something together.   The American Heritage Dictionary defines "sandwiched" and "sandwiches" as "1) [t]o make into or as if into a sandwich;" or "2) [t]o insert (one thing) tightly between two other things of differing character or quality."  (Printout from Dictionary.com at Exh. B hereto.)  Based on the commonly understood meaning of "sandwiched," in order for the flat display panel to be sandwiched by the first and second frames, the flat display panel must be in between the two frames and the three components must be proximally associated or connected so as to form a unit or device.  If the first frame were in one side of a room, the second frame in

12

the opposite side and the flat display panel somewhere in the middle of the room, one would be hard pressed to say that the panel is sandwiched by the two frames.

### 2.    LPL Misconstrues The Special Master's Constructions.

At a recent discovery hearing, LPL attempted to pervert the Special Master's proposed constructions by suggesting that a bracket or shield added by a "setmaker" to the back of the liquid crystal display device (which already has two frames) becomes the first frame because the liquid crystal display panel is between the second (or top) frame and the bracket or shield. (Discovery Hearing Transcript, June 28, 2007, 6:20 - 12:24 at Exh. A hereto.) LPL's position completely ignores that the liquid crystal display device or module has its own first frame. This issue was briefed by the Tatung Defendants and the Tatung Defendants believe the Special Master rejected LPL's theory when he ruled that the first and second frames are integral to the flat panel display device. (*See* Tatung's Opening Brief at 28-29 and D.I. 381.) Under LPL's contorted reading of the Special Master's constructions, the hinge arms 24 in Figures 8-14 (annotated Figure 14 is depicted below), which are recognized by the Patents to be components that are separate from the liquid crystal display device, would be considered the first frame and part of the liquid crystal display device 10. Contrary to LPL's tortured interpretation, the Patents refer to the hinge arms as hinge arms and not as another first frame.

13



FIG. 14

LPL's reading of the proposed constructions twists the meanings of "sandwich" and "device" and contravenes the Special Master's intentions. The American Heritage Dictionary defines a "device" as "a contrivance or an invention serving a particular purpose . . . ." (Dictionary.com Printout at Exh. C hereto.) The liquid crystal display device, hinge arms, bracket and/or shield serve different functions and cannot be the same device. The liquid crystal display device, which includes the liquid crystal panel, is the component that generates the images seen on the screen. In contrast, the hinge arms, bracket and shield play no role in generating the images. The hinge arms, bracket and shield serve entirely differently functions than the liquid crystal display device and cannot be considered a part of that device.

Moreover, the liquid crystal panel is sandwiched by the frames of the device, called out in Figure 4C as 16 and 14g. The hinge arms, bracket or shield, alone or in

14

combination with another component, simply do not sandwich the liquid crystal panel, as the term sandwich is commonly understood. The first and second frames 16 and 14g are the slices of bread that form the sandwich in which the flat display panel is held between or secured. The hinge arms do not play a sandwiching role. Even if the hinge arms could be considered to be a plate upon which the sandwich or device is placed, it is simply not a part of the sandwich or device. Accordingly, the hinge arms or any other component added behind the flat panel display device cannot become the first frame, as LPL contends. Indeed, LPL's suggestion that any component that is attached to the back of the flat panel display device can be the first frame should be rejected outright because it is hopelessly vague and impermissibly broad.

To avoid misapplying the Special Master's proposed constructions, the Tatung Defendants respectfully request that the Court clarify the terms "sandwiched" and "sandwiches" as used in the recommended constructions for flat panel display device, liquid crystal display device, first frame and second frame to mean proximally associated or connected so as to form a unit.

**D. The Constructions For "Fastening Element" And "Fastening Hole" Require Clarification.**

| Term | Tatung | LPL | Special Master |
|------|--------|-----|----------------|
| Fastening element | Fastening holes together with the material defining the hole, pegs, screws, hooks, bolts, ribs, nails or other similar fasteners including a fastener with a compressible | A part(s) that provides the capability for mounting one component to another component(s); e.g., screw, bolt, faster (e.g., hook), peg, | An element that provides the capability for attaching firmly or fixing securely so as to be supported, one component to another component |

15

|  | head | nail, material defining a hole, stepped hole, rib |  |
|---|---|---|---|
| Fastening hole | Any hole, including through-holes, screw holes, mounting holes, and stepped holes | An opening, together with the material defining the opening, that provides one component with the capability of being mounted to another component(s) | An opening, together with the material defining the opening, that provides the capability for attaching firmly or fixing securely so as to be supported, one component to another |

The Tatung Defendants do not take issue with the Special Master's recommended constructions for "fastening element" and "fastening hole." The Tatung Defendants believe the Special Master's Opinion clearly provides that a hole, together with the material defining the hole, may be a fastening hole or fastening element if its plays a role in fastening one component to another. (Opinion, D.I. 692 at 32 ("Thus, the 'fastening hole' is not just any hole, but instead must fasten one component to another."))

LPL argued in its opening brief that "a through-hole cannot be a fastening hole." (LPL's Opening Brief at 27 (D.I. 370).) There is absolutely no suggestion in the Special Master's Opinion or his recommended constructions that he had accepted LPL's flawed argument. However, to avoid any potential misapplication of the Special Master's constructions, the Tatung Defendants respectfully request that the Court confirm that fastening holes or fastening elements can include through holes. This is amply supported by the intrinsic record. The Patents unambiguously provide that a through hole can be a fastening hole:

16

To mount the LCD device 10 to the case 21, the LCD device 10 is placed on the inner surface of the case 21 such that the positions of the holes 21a and the holes 15 coincide with each other, and screws 18 (fastening elements or fastening parts) are inserted into the **holes 21a** and 15 **(which may be referred to as fastening holes or a similar conveniently descriptive term, and which together with the material defining the holes each may be referred to as a fastening element or fastening part)** from the back of the case 21. The **through-hole 21a** is preferably a stepped hole so that the head of the screw 18 will not protrude from the outer surface of the case 21. ('641 Patent, 4:56-67, JA00019 at Exh. A (emphasis added).)

In the display case 30, a hole such as a **through hole 30 (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred be referred to as a fastening element or fastening part)** may be formed. ('641 Patent, 5:63-6:2, JA00020 at Exh. A (emphasis added).)

In the flat portion 24b of the hinge arm 24 (referred to a display device support member), at least one corresponding **through-hole (which may be referred to as a fastening hole or a similar conveniently descriptive term, and which together with the material defining the hole may be referred to as fastening element or fastening part)** is formed. ('641 Patent, 6:64-7:2, JA00021 at Exh. A (emphasis added).)

LPL also argued that a "through-hole lacks any 'fastening' ability.'" (LPL's Opening Brief at 27 (D.I. 370).) This, of course, defies common sense. A through hole, together with the material defining the hole, provides a channel for a screw to pass into a threaded hole and fastens elements together by engaging the head of the screw. Indeed, that is precisely why the patentees consistently defined through holes and the material defining the holes as fastening elements in the Patents. Accordingly, the Tatung Defendants respectfully request that the Court clarify that fastening elements and fastening holes can include through holes.

17

## V.    CONCLUSION

Based on the foregoing reasons, the Tatung Defendants respectfully request that the Court clarify the Special Master's recommended constructions for flat panel display device, liquid crystal display device, first frame, second frame, fastening element and fastening hole.

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
*Attorneys for Defendants Tatung Company*
*and Tatung Company of America*

OF COUNSEL:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan W. Jansen
Valerie W. Ho
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
(310) 586-7700

Dated:  July 6, 2007

18

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2007 I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

| | |
|---|---|
| Richard D. Kirk, Esquire | Jeffrey B. Bove, Esquire |
| The Bayard Firm | James Heisman, Esquire |
| 222 Delaware Avenue #900 | Jaclyn M. Mason, Esquire |
| Wilmington, DE 19899 | Connolly Bove Lodge & Hutz LLP |
| | 1007 North Orange Street |
| | P.O. Box 2207 |
| | Wilmington, DE 19899 |

I hereby certify that on July 13, 2007 I caused to be sent the foregoing document by Federal Express to the following non-registered participants:

| | |
|---|---|
| Gaspare J. Bono, Esquire | Tracy R. Roman, Esquire |
| Rel S. Ambrozy, Esquire | Raskin Peter Rubin & Simon LLP |
| Lora A. Brzezynski, Esquire | 1801 Century Park East, Suite 2300 |
| Cass W. Christenson, Esquire | Los Angeles, CA 90067 |
| McKenna Long & Aldridge LLP | |
| 1900 K Street, N.W. | Scott R. Miller, Esquire |
| Washington D.C. 20006 | Connolly Bove Lodge & Hutz LLP |
| | 333 South Grand Avenue |
| | Suite 2300 |
| | Los Angeles, CA 90071 |

Anne Shea Gaza (#4093)
Gaza@rlf.com