IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILLIPS LCD CO., LTD., | |
| Plaintiff, | |
| v. | C.A. No. 04-343-JJF |
| | **REDACTED - PUBLIC VERSION** |
| TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, | |
| Defendants | |

## DEFENDANTS TATUNG COMPANY'S AND TATUNG COMPANY OF AMERICA, INC.'S RESPONSE TO PLAINTIFF LG. PHILIPS LCD CO., LTD.'S EXCEPTIONS TO SPECIAL MASTER'S OPINION AND ORDER ON CLAIM CONSTRUCTION

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan W. Jansen
Valerie W. Ho
Greenberg Traurig LLP
2450 Colorado AvenueSuite 400E
Santa Monica, CA 90404
(310) 586-7700

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
*Attorneys for Defendants Tatung Company and Tatung Company of America*

Dated: July 20, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    INTRODUCTION ........................................................................................... 1

II.   THE PATENTS-IN-SUIT ............................................................................... 2

III.  ARGUMENT ................................................................................................... 3

    A.   Standard Of Review ................................................................................ 3

    B.   The Law Of Claim Construction ............................................................ 3

    C.   The Special Master Correctly Construed The Term "Rear Mountable" ........... 4

        1.    The Object of the Invention Was To Eliminate The
             Wasted Space Associated With Traditional Front Or
             Side Mounting ....................................................................................... 4

        2.    The Presence Of Front Or Side Mounting Fasteners
             Would Eviscerate The Stated Purpose Of The Invention ..................... 10

        3.    LPL Clearly Disclaimed Front And Side Mounting
             Features ................................................................................................ 12

            a.    The Patents Consistently Distinguish The Invention
                From Prior Art Front Mounting ................................................. 12

            b.    During Prosecution Of The Patents, The Patentees
                Consistently Distinguished The Invention From
                Front-Mounting and Side-Mounting ........................................ 14

        4.    LPL's Suggestion That The Rear Fastening Parts Must Be
             Positioned Within The Perimeter Of The Module Has No
             Intrinsic Support .................................................................................. 17

IV.   CONCLUSION ................................................................................................ 19

i

# TABLE OF AUTHORITIES

## Federal Cases

*Allen Engineering Corp. v. Bartell Industries, Inc.*,
  299 F. 3d 1336 (Fed. Cir. 2002).................................................................. 10

*Cephalon, Inc. v. Barr Laboratories, Inc.*,
  389 F.Supp.2d 602 (D. Del. 2005).......................................................... 13, 14

KSR Int'l Co. v. Teleflex Inc.,
  127 S.Ct. 1727 (2007)............................................................................. 16

*Kumar v. Ovonic Battery Co.*,
  351 F.3d 1364 (Fed. Cir. 2003).................................................................. 4

*Markman v. Westview Instruments, Inc.*,
  52 F. Cir. 1995), aff'd, 517 U.S. 370 (1996).......................... 3

*Microsoft Corp. v. Multi-Tech Systems, Inc.*,
  357 F.3d 1340 (Fed. Cir. 2004).................................................................. 4

*Northern Telecom Ltd. v. Samsung Elelcs. Co., Ltd.*,
  215 F.3d 1281 (Fed. Cir. 2000)................................................................ 17

*O.I. Corp. v. Tekmar Co., Inc.*,
  115 F. 3d 1576 (Fed. Cir. 1997)........................................................... 13, 14

*Omega Engineering, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)........................................................... 16, 17

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)............................................................... 3, 4

*ResQNet.com, Inc. v. Lansa, Inc.*,
  346 F.3d 1374 (Fed. Cir. 2003).................................................................. 4

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems*,
  242 F. 3d 1337 (Fed. Cir. 2001)................................................................ 13

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001).................................................................. 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  447 F.Supp.2d 177 (D.R.I. 2006) ............................................................. 10

ii

*Union Oil Co  of California v  Atlantic Richfield Co* ,
  208 F.3d 989 (Fed. Cir. 2000)............................................................................... 4

*Vitronics Corp. v  Conceptronic, Inc* ,
  90 F.3d 1576 (Fed. Cir. 1996)................................................................................ 3

**Federal Statutes**
Federal Rules of Civil Procedure 53 ......................................................................... 3

iii

## I.    INTRODUCTION

Having abandoned its original proposed construction for "rear mountable," presumably because it had no support in the intrinsic record, LPL now wants the Court to rewrite the Special Master's construction in order to salvage its infringement claims. The Special Master correctly construed "rear mountable (flat panel display device)" to mean "a flat panel display device that is capable of being mounted to a housing solely from the back of the first frame and that has no front or side mounting fastening elements." LPL asks this Court to strike the phrase "and that has no front or side mounting fastening elements" from the Special Master's construction. LPL needs a construction for "rear mountable" that permits the presence of front or side mounting features because the Tatung products it has accused in this case are all front or side mounted, and not rear mounted.

LPL's request should be rejected for two reasons. First, as the Special Master found, the Patents themselves make clear that the whole object of the invention was to eliminate the unnecessary side space associated with prior art front or side mounting and to relocate all of the fastening elements from the side to the back of the flat panel display device. Therefore, allowing the presence of front or side mounting elements would completely contravene the stated purpose of the invention. Second, throughout the written description and the prosecution history, LPL consistently distinguished the rear mounting invention from front and side mounting. Indeed, the LG patentees had to make these distinctions in order to overcome the Patent Examiner's rejections based on prior art that taught front and side mounting of flat panel displays. It was only by distinguishing the claimed invention from front and side mounting and adding the limitation "rear mountable" to all independent claims that the patentees were able to

overcome the Examiner's rejections. The intrinsic record could not be more clear that the patentees had disclaimed front and side mounting features. Accordingly, the Court should adopt the Special Master's construction of "rear mountable" in its original form.

## II.    THE PATENTS-IN-SUIT

The Patents-in-Suit are U.S. Patent No. 6,501,641 (the "'641 Patent") and U.S. Patent No. 6,498,718 (the "'718 Patent"), which is a continuation of the '641 Patent. The '641 Patent is entitled, "Portable Computer Having a Flat Panel Display Device." The "718 Patent is entitled, "Portable Computer and Method for Mounting a Flat Panel Display Device Thereon."[1]

Both patents claim priority from two Korean patent applications:  No. 98-44475 (the "'475 Application"), filed on October 23, 1998  and No. 98-44973 (the "'973 Application"), filed on October 27, 1998 (collectively, the "Korean Parent Applications"). Both the '641 Patent and the '718 Patent incorporate by reference the Korean Patent Applications. ('641 Patent, 1:4-7, at Exh. A and '718 Patent, 1:7-10, at Exh. B.)[2] The '641 and '718 Patents share the same specification. The '641 Patent contains apparatus claims while the '718 Patent contains method claims.

LPL contends that the Tatung Defendants infringe claims 35, 36, 38, 39, 44, 45, 55 and 56 of the '641 Patent and claims 33, 34, 35, 36, and 40 of the '718 Patent.

---

[1] The application that resulted in the '641 Patent was filed on April 2, 1998 (Application No. 09/285,338). The application that resulted in the '718 Patent was filed on November 22, 1999 (Application No. 09/444,376).

[2] Unless otherwise noted, all exhibits are attached to the Joint Appendix of Exhibits filed by Co-Defendant ViewSonic Corporation on December 22, 2006, D.I. 373, 374, 375, 376.

2

## III.     ARGUMENT

### A.     Standard Of Review

When ruling on a party's objections to the Special Master's report and recommendation, the Court may "adopt or affirm; modify; wholly or partly reject or reverse; or resubmit to the master with instructions." Fed. R. Civ. Proc. 53(g)(1). The Court's review of conclusions of law is *de novo.* Fed. R. Civ. Proc. 53(g)(4). Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

### B.     The Law Of Claim Construction

In construing claims, "the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Court provides an extensive discussion of the intrinsic and extrinsic evidence that should be considered for claim construction. While noting that "'the claims of a patent define the invention to which the patentee is entitled the right to exclude,'" the Court also emphasizes that "[t]he claims, of course, do not stand alone." *Id.* at 1312-15. "[The claims] are part of 'a fully integrated written instrument,' [citation omitted] consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.' . . . [T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (Citation omitted).

3

Although limitations from the patent specification are not to be read into the claims, claims cannot be read more broadly than the patent's description of what the inventor regards as his invention. *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004), cert. denied, 543 U.S. 821 (2004) ("We cannot construe the claims to cover subject matter broader than that which the patentee itself regarded as comprising its inventions....").

Courts may also construe the claims, in part, by referring to the problems that the invention allegedly overcomes. *See Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989, 995-96 (Fed. Cir. 2000); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1380 (Fed. Cir. 2003) (construing claims to solve the problems identified in the specification "confirms the meaning of the claim language").

In addition, the prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. The "prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence." *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003).

## C.    The Special Master Correctly Construed The Term "Rear Mountable."

### 1.    The Object Of The Invention Was To Eliminate The Wasted Space Associated With Traditional Front Or Side Mounting.

The Special Master correctly concluded that construing "rear mountable (flat panel display device)" to include front or side mounting features would completely contradict the stated object of the invention, which was the elimination of unnecessary

4

space associated with prior art front or side mounting. (Opinion, D.I. 692 at 9.) In its opening brief, LPL conceded that "rear mountable" is a claim limitation. (LPL's Opening Brief, D.I. 370 at 11.) LPL also admitted that the stated object of the invention must be considered in construing "rear mountable." (*Id.* at 9-10.) LPL further recognized that the object of the invention was to eliminate the wasted space traditionally used for mounting a flat panel display device. (*Id.*)

The Patents describe the structure and method of what they refer to as the "conventional" prior art method of front mounting a display device and the purported disadvantages associated with that method. In discussing Prior Art Figure 2 (an annotated version is reproduced below), the patentee states:

> Referring to FIG. 2, which shows conventional assembly structure of the LCD device applied to a conventional portable computer..., [t]he LCD device 130 has an LCD panel 132, a backlight device 134 fixed to the back of the LCD panel 132, and a supporting frame 136 for assembling the LCD panel 132 and the backlight device 134 along the edge.
>
> At the corners of the supporting frame 136, corresponding to the positions of the ribs 123a of the rear case 123, a plurality of protrusions 136a having holes are formed.
>
> For mounting the LCD device 130 to the display case 122, the LCD device 130 is placed on the rear case 123 and the holes of the supporting frame 136 and the ribs 123a are fastened together preferably by screws 138. The front case 121 is coupled to the rear case 123.
>
> Hereinafter, **the way in which the LCD device is mounted to the case from the front toward the**



(PRIOR ART)
FIG. 2

**rear direction is defined as the front mounting method,** and the assembled structure of the LCD device and the case formed through the front mounting method is defined as the front mounting structure.

**In the front mounting structure of the LCD device, since the protrusions 136a require additional space corresponding to the protruded width d, the display area of the LCD device is reduced in comparison to the fixed size of the display case 122.**

('641 Patent, 1:35-64, at Exh. A, (emphasis added).)

In discussing Prior Art Figure 3B (an annotated version is shown below), the patentee states:

In the mounting structure shown in FIG. 3B, the supporting frame 114 requires side spaces for the flanges 114a and 114b. Therefore, the side space D (d1+d2) [shown in blue] results in a reduction of the display area [shown in black] of the LCD panel 112 relative to the display case 122. Moreover, as the display size increases, the display case becomes undesirably large, especially for a portable computer such as a laptop computer.

('641 Patent, 2:30-36, at Exh. A.)

6



(PRIOR ART)
FIG. 3B
'641 Patent

Thus, according to the patents, the prior art method of front mounting had certain disadvantages because the "protrusions," "protruded width," and "side space" associated with front mounting take up space that otherwise could be used for the display area. The patents further state that "[t]o solve the above problem and to provide a large display area with minimal display case size, a new mounting structure is needed for the LCD device." ('641 Patent, 2:37-39 at Exh. A.)

The Patents state that the objects of the invention are: 1) "to minimize the non-display area of the LCD device;" and 2) "to provide a computer having a flat panel display device with a maximum display area and a minimal display case size." ('641 Patent, 2:47-51 at Exh. A ) The solution proposed by the patents was to eliminate the side space taken up by flanges 114a and 114b and mounting holes therein (shown in

7

green below) used for what the patents refer to as "front mounting" (*see* '641 Patent, Fig. 3A, annotated version reproduced below) and to relocate the fastening elements to the back of the LCD device (*see* '641 Patent, Fig. 8, annotated version reproduced below).



(PRIOR ART)
FIG. 3A
'641 Patent

FIG.8
'641 Patent

To accomplish the objects of the invention, all of the fastening elements are relocated from the front of the LCD device to the back of the device, as depicted in Figures 8 and 5.

The purported invention was to eliminate the prior art mounting features and thereby eliminate the space "D" (shown above in Prior Art Figure 3B.)



FIG. 5
'641 patent

Likewise, the specification expressly rejects the use of additional side space consumed in side mounting, through the contents of the '475 Korean Application, which LPL incorporated by reference into the

8

specification of the Patent-in-Suit.[3]  Thus, the specification of the Patents-in-Suit also

expressly teach that the wasted space as illustrated by "t" in Figure 3 below, is also

avoided by the invention.  The '475 Application goes on to systematically show LCD

devices without wasted space "d" or "t."  (Tatung's Opening Brief, D.I. 381, VS024385-

86 at Exh. 4.)



At the end of the specification, the Patents state:

> As explained above, the mounting method according to the present
> invention does not require unnecessary side space for mounting the LCD
> device on the computer.  Thus, the ratio of the display area of the LCD
> device to the display case can be improved and maximized."

('641 Patent, 7:31-35 at Exh. A.)

REDACTED

---

[3] "When a document is 'incorporated by reference' into a host document, such as a
patent, the referenced document becomes effectively part of the host document as if it
were explicitly contained therein." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247
F.3d 1316, 1329 (Fed. Cir. 2001). *See also* Manual of Patent Examining Procedure,
2163.07(b).

REDACTED

In short, the invention contemplated by the inventors clearly did not include front or side mounting elements. *See Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F. 3d 1336 (Fed. Cir. 2002) (stating that claims must point out what the inventor regards as his invention).

Accordingly, LPL's claim that the invention merely allows for the removal of unnecessary space but does not require it completely ignores the context of the invention and is belied by both the intrinsic and extrinsic record.[5] At all times contemporaneous with the invention's conception and its prosecution, it was elimination of wasted space and relocation of the fastening elements to the rear that was the "invention."

2.    **The Presence Of Front Or Side Mounting Fasteners Would Eviscerate The Stated Purpose Of The Invention.**

Presumably recognizing that its originally proffered construction for "rear mountable" has absolutely no support in the intrinsic record, LPL is not asking the Court to adopt its originally proposed construction. Instead, LPL asks the Court to rewrite the Special Master's construction by removing the requirement that there be no front or side

---

[4] This exhibit was filed under seal.
[5] *Uniloc USA, Inc. v. Microsoft Corp.*, 447 F.Supp.2d 177, 186, 187 (D.R.I. 2006), cited by LPL, is distinguishable. In that case, in addition to noting that "the applicant simply reiterated that the system does not *require* the use of vendor-supplied information, not that vendor-supplied information is banned absolutely," the Court found that the prosecution history actually "allow[s] use of vendor information."

**REDACTED**

10

mounting fastening elements. Having already conceded that the object of the invention must be taken into account in construing "rear mountable" (see LPL's Opening Brief, D.I. 370 at 9-10), LPL now is asking the Court to completely disregard the purpose of the invention.



The construction sought by LPL would allow for the presence of space-wasting prior art fastening elements. Under LPL's definition, the outside perimeter or dimensional outline of a prior art device and the claimed device could be identical. Such a design achieves none of the stated objects of the invention. As depicted in the hypothetical Figure H1, a device which the claim scope would extend to under LPL's definition is indistinguishable from the prior art device because it still has flanges for front mounting which take up space "d," the very space the invention sought to eliminate. Under LPL's proposed construction, unnecessary space is not eliminated and the viewing area relative to the size of the display case is not increased. The Special Master properly concluded that the claim scope does not extend to the device depicted in Figure H1. (Opinion, D.I. 692 at 9 ("LPL's proposed construction would extend the claim scope to a flat-panel display device with fastening elements for front and side mounting even though such a device would suffer from the prior-art deficiencies of unnecessary side space, the very problem the patents purport to solve.").)

11

LPL contends that the record does not support the Special Master's conclusion that the presence of front or side mounting features, "regardless of their placement, function, or use," would preclude the reduction of unnecessary side space. (LPL's Exceptions, D.I. 707 at 11.) This is completely disingenuous. As discussed above, the record is replete with references to front or side mounting features as space-wasting elements. The Patents and the prosecution history confirm that the purpose of the claimed rear mounting invention was to eliminate wasted space "d" associated with front mounting and wasted space "t" associated with side mounting. Moreover, regardless of whether the front or side mounting elements are actually used for mounting the flat panel display device, their very presence take up unnecessary space that the invention was supposed to eliminate, as depicted in LPL's own drawings. The Special Master correctly recognized that the stated objects of the invention would not be achieved if front or side mounting features were present.

3.    **LPL Clearly Disclaimed Front And Side Mounting Features.**

a.    **The Patents Consistently Distinguish The Invention From Prior Art Front Mounting.**

The Patents and prosecution history confirm that LPL disclaimed front and side mounting. As explained above, the Patents repeatedly distinguish the claimed invention from prior art front mounting. The Patents explain that the claimed invention removes the flanges, protrusions and wasted space "d" inherent in front mounting by relocating all of the fasteners from the side of the flat panel display device to the back of the device. The specification could not be more clear that the invention does not include front mounting features. Indeed, all of the drawings show the fastening elements as being

12

located solely on the back of the flat panel display device. ('641 Patent, Figs. 5-9, 12-16, at Exh. A.) There is absolutely no disclosure for a combination of front and rear mounting features.

In *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems*, 242 F.3d 1337, 1341 (Fed. Cir. 2001), the Court ruled: "Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."

*O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1581-82 (Fed. Cir. 1997), cited by the Special Master, is directly on point. There, the Court construed "passage" to "not encompass a smooth-walled, completely cylindrical structure." The Court reasoned that in the written description, the patentee distinguished its invention from the prior art by explaining that the prior art structures were "smooth-walled." The Court found that "[a]ll of the 'passage' structures contemplated by the written description are thus either non-smooth or conical."

*Cephalon, Inc. v. Barr Laboratories, Inc.*, 389 F.Supp.2d 602, 606 (D. Del. 2005), also relied on by the Special Master, is similarly on point. In *Cephalon*, this Court held:

> [T]he inventors consistently referred to the "present invention" as teaching the formation of drug-containing lollipops through the compression of "dry" or "solid" powders. There is nothing in the written description or the prosecution history to suggest that they intended the disputed phrases to cover methods or articles using free liquid. Therefore, it would be improper for this Court to broaden the inventors' use of the disputed phrases and construe them to encompass the use of free liquid.
>
> This result is not, as Cephalon argues . . . , the improper importation of limitations from the specification into a claim. This is a case where "the

13

specification read as a whole suggests that the very character of the invention requires the limitations to be a part of every embodiment."

Like the patentee in *O.I. Corp.* who in the written description consistently distinguished its invention from the prior art by stating the prior art structures were "smooth walled," the LG patentees repeatedly distinguished their purported "rear mounting" invention from prior art front mounting and explained that "rear mounting" addressed the deficiencies of the prior art by eliminating unnecessary space. As in *Cephalon*, the specification read as whole makes clear that "the very character of the invention" requires elimination of front mounting, space-wasting, features.[6]

### b. During Prosecution Of The Patents, The Patentees Consistently Distinguished The Invention From Front-Mounting And Side-Mounting.

As the Special Master found, "the prosecution history is replete with the inventors' arguments distinguishing the rear-mountable invention from the front- or side-mounting prior art." (Opinion at D.I. 692 at 10.) For example, the patentees argued to the examiner that U.S. Patent No. 5,268,816 (Abell) "does not include a fastening element on a rear surface of the display device . . . . Abell is directed to a computer with a front-mounting technique . . . [t]herefore, Abell '816 cannot provide the advantages of the claimed invention." ('641 File History, JA00270 at Exh. G.)

---

[6] LPL tries to distinguish *O.I. Corp.* and *Cephalon* by suggesting that the claimed and distinguished features in those cases were "mutually exclusive." Unfortunately for LPL, that rationale is nowhere to be found in those cases. Notwithstanding LPL's attempt to limit the import of *O.I. Corp.* and *Cephalon*, the cases stand for the proposition that where the patentee makes clear throughout the specification that a particular feature is not part of the invention, claim scope will not be extended to include that feature.

14

The inventors also distinguished U.S. Patent No. 5,835,139 (Yun), which teaches removing the space needed for front mounting, and as an alternative to front mounting, using side fasteners that protrude beyond the side edges of the LCD device to mount the device. The Patent Examiner had found the claimed invention unpatentable over cited references including Yun. For example, the Examiner stated:

> Yun teaches a flat panel display device (fig. 6) comprising: a backlight unit including a first frame having fastening parts at four corners, a reflector unit, a light source unit, a light guide unit, a diffuser unit, and a prism unit; a flat display panel between the first frame and a second frame; and screws for fastening purposes.
>
> Yun discloses the claimed invention except for the fastening part being on a rear surface of the first frame. It would have been obvious to one having ordinary skill in the art at the time the invention was made to rearrange the fastening parts being on the rear surface of the first frame, since it has been held that rearranging parts of an invention involves only routine skill in the art. *In re Japikse*, 86 USPQ 70 (CCPA 1950).

(*See* '641 File History, JA00218-19 & JA00314 at Exh. G.) The patentees argued to the examiner that "Yun is directed toward a side-mounted flat panel display device . . . . Yun does not include any fastening elements on a rear surface of the frame, as claims 35, 47, and 55." In order to overcome the Patent Examiner's objections, LPL agreed that the claims would be amended with the limitation that they apply to "back mounted display or the equivalent . . . ." LPL subsequently amended all of the independent claims to include the term "rear mountable" display device. (*See* '641 File History, JA00367 & JA00390 at Exh. G; '718 File History, JA001160 & JA01183-88 at Exh. H.)

Contrary to LPL's claim that the disavowal of front and side mounting has no anchor in the claim language, the prosecution history makes clear that the term "rear

mountable" was intended to be that anchor as LPL had to add that term to all of the independent claims in order to overcome prior art cited by the Examiner.

Notably, merely adding a rear fastening element to a prior art device was a claim scope already rejected by the Examiner. Original rejected claim 35 recited "[a] flat panel display device capable of being mounted to a housing, the flat panel display device comprising: . . . the first frame of the backlight unit capable of being fixed to the housing through the fastening part at the rear surface of the first frame." ('641 File History, JA00124-25 at Exh. G.) That claim was rejected by the Examiner. LPL was required to add the "rear mountable" limitation before the Patents were allowed to issue. As a result, "rear mountable" must mean more than just adding a fastening element to the rear surface of the first frame, as LPL contends.[7]

*Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1327 (Fed. Cir. 2003), cited by LPL, actually supports the Tatung Defendants' position. The Court in *Omega* confirmed that where a patentee distinguishes prior art during prosecution in order to overcome a rejection, the patentee has surrendered claim scope that would include the prior art features. In *Omega*, the Court found:

> [D]uring the prosecution of the application that issued as the 880 patents, Omega repeatedly insisted that its invention differed from the prior art by precluding appreciable heat from entering the energy zone and affecting the temperature of the energy zone. By insisting that its invention directs

___

[7] Indeed, merely adding a fastening hole on the back of the prior art device would have been obvious to one skilled in the art and would not have been patentable. *See KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1739-40 (2007) ("This is a principal reason for declining to allow patents for what is obvious. The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results... The Court recognized that when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result [Citation omitted].").

16

> energy in a way that does not affect temperature measurement, the
> patentee has rejected the examiner's broad assessment of the claim scope
> and stated in a public record what his invention could not be. That
> statement is a deliberate surrender of claim scope, unmistakable in its
> effect because it is not suitable to multiple interpretations as in *Northern
> Telecom*, 215 F.2d at 1294, 55 USPQ2d at 1075.

*Id.* As in *Omega*, by differentiating the invention from Abell, which taught front

mounting, and Yun, which taught side mounting, the LG patentees made clear "in a

public record what [the] invention could not be."[8]  Accordingly, the Special Master

correctly found that the patentees had disclaimed front and side mounting.

### 4.    LPL's Suggestion That The Rear Fastening Parts Must Be Positioned Within The Perimeter Of The Module Has No Intrinsic Support.

It appears that LPL has abandoned its former construction for "rear mountable,"

which in part requires the rear fastening part(s) to be "positioned on or inside the border

of the flat display panel." LPL is not appealing the Special Master's rejection of its

proffered construction. However, LPL also states in its brief that "[i]t bears repeating . . .

that the fastening part at a rear surface of the first frame must be positioned within the

perimeter of the module to achieve the purpose of the invention, even as mischaracterized

by the Special Master." (LPL's Exceptions, D.I. 707 at 15.)

---

[8] *Northern Telecom Ltd. v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1294 (Fed. Cir.
2000), also cited by LPL, is not on point. The defendant in that case had argued that the
inventors' statements distinguishing prior art portray plasma etching as a process that
must exclude ion bombardment. However, the inventors had only stated that the prior art
references were "concerned with a totally different process." The Court found this
statement too vague to clearly show that the inventors intended to exclude ion
bombardment. Unlike in *Northern Telecom*, the patentees here said a lot more. As
explained above, they distinguished the invention from Abell on the grounds that Abell
taught front mounting and distinguished Yun on the grounds that it taught side mounting.
Indeed, they had to add the term "rear mountable" to overcome these references.

17

Assuming that this is even an issue framed by LPL's Exceptions (and it should not be), LPL's contention that the rear fastening elements must be positioned within the perimeter of the module should be rejected for the following reasons. First, this argument was never made by LPL during the underlying briefing process. While LPL claimed that the rear fastening part(s) must be positioned within the border of the flat display panel, it never suggested that "within the border of the flat display panel" is equivalent to "within the perimeter of the module." Indeed, LPL claimed (incorrectly) that the flat panel display device cannot be construed as an integrated device or module. Second, the phrase "on or inside the border" is completely absent from the claims of the Patents, the written description, the file histories, the Korean parent applications, and the invention disclosure prepared by the purported inventors. (*See generally,* '641 File History, Exh. G; '718 File History, Exh. H; '973 Application, Tatung Exh. 1; '475 Application, Tatung Exh. 4, and the Invention Disclosure Forms, Tatung Exh. 8.) In the Notice of Allowance, for example, the Examiner makes no mention of "on or inside the border." Rather, the Examiner states:

> The following is an examiner's statement of reasons for allowance: The best prior art of record, Abell Jr. et al. (US 5,268,816) and Yun et al. (US 5,835,139), taken alone or in combination fails to teach or suggest a portable computer comprising a rear mountable display device having a fastening element at **a rear surface of the rear mountable display device** attached to a case through the fastening element as claimed . . . .

('641 File History, JA00402-404 at Exh. G (emphasis added).) Accordingly, the Examiner understood that the fastening element can be anywhere on the "rear surface of the rear mountable display device." Not once during prosecution of the Patents did the patentees remotely suggest that the fastening element had to be positioned specifically

18

within the border or perimeter of anything. Accordingly, any suggestion that the rear

fastening parts must be positioned within the border of the flat display panel or within the

perimeter of the module should be rejected.

### IV.    CONCLUSION

Based on the foregoing reasons, the Tatung Defendants respectfully request that

the Court adopt the Special Master's construction of the term "rear mountable."

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan W. Jansen
Valerie W. Ho
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
(310) 586-7700

Dated: July 20, 2007

*Anne Shea Gaza (by Jameson A.L. Tweedie (# 4927))*
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com

*Attorneys for Defendants Tatung Company
and Tatung Company of America*

19

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2007 I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
Wilmington, DE 19899

Jeffrey B. Bove, Esquire
James Heisman, Esquire
Jaclyn M. Mason, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on July 25, 2007 I caused to be sent the foregoing document by Federal Express to the following non-registered participants:

Gaspare J. Bono, Esquire
Rel S. Ambrozy, Esquire
Lora A. Brzezynski, Esquire
Cass W. Christenson, Esquire
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington D.C. 20006

Tracy R. Roman, Esquire
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

Scott R. Miller, Esquire
Connolly Bove Lodge & Hutz LLP
333 South Grand Avenue
Suite 2300
Los Angeles, CA 90071

Anne Shea Gaza (#4093)
Gaza@rlf.com