RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ANNE SHEA GAZA
COUNSEL

DIRECT DIAL NUMBER
302-651-7539
GAZA@RLF.COM

August 10, 2007

**REDACTED - PUBLIC VERSION**

The Honorable Vincent J. Poppiti
BLANK ROME LLP
Chase Manhattan Center
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic et al.*, C.A. No. 04-343-JJF

Dear Special Master Poppiti:

LPL's motion to compel production of module specifications and correlation information again misstates the record and fails to account for the documents that have already been produced.

Correlation Data

In its motion, LPL asks for the first time that Tatung correlate the accused products to the LCD or PDP modules that are used in those products. The Document Requests cited by LPL do not cover this type of information. For example, Document Request No. 3 seeks documents sufficient to show how the LCD module is attached in the Tatung products. CAD/CAM and assembly drawings were provided in response to this Request. There is no conceivable way in which this Request can be stretched to include a correlation of module model numbers to product model numbers. Moreover, Tatung does not maintain this type of correlation data in the ordinary course of its business. Based on these reasons alone, LPL's request should be denied.

In the California case pending between the parties, as part of its interrogatory responses, Tatung did correlate the LCD products accused in that case (most of which are not accused here) to LCD modules. Even though the correlation data produced in the California case is not relevant in this case, it nevertheless was provided by Mark Krietzman to Rel Ambrozy at the in-person discovery hearing before Your Honor. Therefore, to the extent that correlation data exists, it has already been provided to LPL.

Finally, LPL has inspected and disassembled a number of products made available by the Tatung Defendants, including products that subsequently were accused by LPL. LPL also has in its possession a number of Tatung products. While LPL refused to make those products

RLF1-3188433-2

available for inspection, it did produce photographs of the products in their disassembled state, including photographs of the modules or flat panel display devices used in those products. LPL also has technical documents and assembly instructions produced by the Tatung Defendants. In short, LPL already has the samples and documents that would allow LPL to derive the module information it seeks. LPL's request is nothing more than a thinly veiled attempt to force the Tatung Defendants to do LPL's work. LPL's request for correlation data should be denied.

Module Specifications

Again, without reviewing the Tatung Defendants' document productions, LPL sent several harassing emails and letters claiming that module specifications had not been produced when in fact they had been produced long ago. While LPL attaches to its motion Cormac Connor's July 11, 2007 email to Valerie Ho regarding module specifications, it fails to inform Your Honor either in its motion or in the Rule 7.1.1 certification that the parties actually held a telephonic meet and confer on July 12, 2007 to discuss these issues, among others. During this meet and confer, LPL was informed that module specifications already had been produced.

In fact, the Tatung Defendants have produced the LCD and PDP module specifications they could locate, including for modules used in the products that remain accused if the Special Master's claim constructions are adopted. Attached as Exhibits A and B hereto are two examples of the specifications produced.

LPL attempts to make much of the fact that Vincent Liu could not testify in detail about the internal structures of the LCD modules. This is not surprising, however, because, as LPL knows, the Tatung Defendants do not design or manufacture LCD or PDP modules. They purchase those components from third party vendors, including LPL. Had LPL wanted more information about LCD or PDP modules, it could have subpoenaed the module manufacturers before the close of fact discovery, which it did not do, or it could have searched its own library for LPL module specifications.

Accordingly, LPL's motion to compel module correlation data and module specifications has no merit and should be denied.

Respectfully,

*Anne Shea Gaza*
Anne Shea Gaza (#4093)

ASG/afg
Enclosures
cc:   Clerk of the Court (By Electronic Filing)
      All Counsel of Record (via electronic mail)