# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

James D. Heisman
Partner
TEL (302) 888-6216
EMAIL jheisman@cblh.com

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

August 10, 2007

*Via Email and Hand-Delivery*
The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:   *LG.Philips LCD Co., Ltd. v. ViewSonic et al.*, USDC, D. Del., No. 04-343-JJF
      ViewSonic's Response to LPL's Motion to Compel Inspection  (DM ___)

Dear Special Master Poppiti:

LPL seeks an Order compelling ViewSonic to reproduce certain products for re-inspection by LPL. These products were previously produced at least once on dates selected by LPL and at great expense to ViewSonic. Though LPL's says it seeks re-inspection because of the Court's claim construction Report, it is notable that the request was not made until more than a month after the Report issued and near the eve of the date for ViewSonic's expert reports. The motion is not accompanied by a declaration from LPL's expert indicating a need for a further inspection nor does LPL identify any reason for the request. Instead, what the motion shows is delay and an abject failure to meet and confer in advance of filing the instant motion. This is what LPL demanded in its July 26 letter:

> "Mr. Bohannon needs to inspect *all* products in ViewSonic's possession that he did not personally inspect but were inspected by attorneys from our firm. We will provide a list of these monitors to you shortly." and

> "We need to schedule a time and location for our attorneys and Mr. William Bohannon to inspect all of the products relied upon by ViewSonic for prior art purposes" as identified in its supplemental interrogatory response.[1]

The list of monitors was never provided as promised, nor has LPL provided this Court with a list of the products it seeks to compel. Moreover, the decision to have the ViewSonic products inspected by someone other than LPL's expert was LPL's – not ViewSonic's. Indeed, ViewSonic granted LPL's expert access to ViewSonic's facility to inspect products on the dates and times agreed to by LPL's counsel. Thus, the import of the motion is that without a shred of evidence of need or even any argument of counsel to justify the request, LPL seeks an open-

---

[1] *See* Ex. A to LPL's Motion to Compel (emphasis added).



CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
August 10, 2007
Page 2

ended Order to compel the re-inspection of products in the midst of the use of those products by ViewSonic's experts to meet the upcoming expert report deadlines. ViewSonic submits that such a motion cannot be fairly granted.

As for the supposed meet and confer, LPL's July 26 letter was directed to "all previously produced ViewSonic products" not certain (and still unnamed) "accused ViewSonic products." Even with this narrowing, the request is unacceptable due to the burden it places on ViewSonic at a critical junction of the case and because the re-inspection "need" is due solely to LPL's prior unilateral decision to have someone other than its expert inspect the products made available. In rejecting the broad request tardily presented, ViewSonic noted that LPL had offered no explanation why Mr. Bohannon had been unable to inspect all of ViewSonic's monitors at the times they were previously offered for inspection.[2] No response to this question was provided to ViewSonic or this Court. Similarly, LPL never responded to ViewSonic's proposal to allow LPL to inspect any prior art products in its possession that had not previously been inspected.

LPL's stated reasons for re-inspection fall far short of "compelling." LPL correctly notes that some of Your Honor's recommended claim constructions differed from what the parties had proposed. But LPL reaches too far when it says Your Honor's construction of rear mountable "was not contemplated by any of the parties." One of the two constructions ViewSonic proposed in November 2006 was: "A flat panel display device that is mountable to a case with fastening elements *located only on the back* of the device and which has no fastening element that extends from or protrudes beyond any of the four side edges of the device."[3] ViewSonic has consistently argued from the start of this case that a device which was front mounted or side mounted could not infringe the patents. LPL was also exposed to this same "contemplation" in the corresponding UK trial and appeal where defendants also argued that the device must be mounted solely from the back and not from the front or side. Thus, while the precise language of the claim construction might not have been proffered by ViewSonic, LPL has known at all relevant times that this construction was contemplated.

Notably absent from LPL's motion is any explanation as to why LPL chose to ignore this potential construction when inspecting the products. Certainly LPL contemplated the possibility that its own construction might not be adopted. Further, LPL offers no declaration from Mr. Bohannon stating what information he purportedly needs in light of this claim construction that he was unable to ascertain either during the first round of inspections or from the extensive photographs he and LPL's attorneys took of the products. For example, LPL has not stated that it either does not know, is unable to recall, or cannot tell from its own photographs (or those incorporated in Defendants' supplemental interrogatory responses) whether any of the products are capable of being mounted solely from the back of the first frame. Understandably, this would be a difficult argument to make given that in its July 16 supplemental infringement contentions, LPL asserted that each of the accused products is capable of being mounted solely

---

[2] *See* Ex. D to LPL's Motion to Compel.
[3] D.I. 312 – relevant page attached hereto as Ex. 1 (emphasis added).


**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
August 10, 2007
Page 3

from the back of the first frame and each has no front or side mount fasteners.[4]

LPL also complains that with respect to the prior art products, "even if LPL were able to purchase a device with similar identifiers, there is no way to be absolutely sure that LPL is examining the exact same version as that asserted by Defendants."[5]  Tellingly, LPL does not state whether it *has* purchased, or even attempted to purchase, these devices.  Assuming LPL did have its own set of these devices, LPL should first have to compare them to the numerous photographs it has of the products in Defendants' possession and conclude whether, in fact, it could not tell if the manufacturer made any material modifications to its version of the prior art product.  Indeed, this exercise might reveal to LPL that it only needed to re-inspect one or two prior art products.  Instead of taking this initial initiative, LPL improperly attempts to shift the entire burden to Defendants to interrupt their own experts' work to make these products available regardless of any actual necessity, compelling or otherwise.

The case relied on by LPL, *Fullone*, does not support a re-inspection on these facts.  That case did not involve patent infringement, but rather a wrongful death claim arising from an explosion of "a multi-piece truck rim which resulted in the death of plaintiff's decedent."  *Fullone v. Goodyear Tire Rubber & Co.*, 107 F.R.D. 1, 1 (W.D.N.Y. 1985).  Thus, unlike here, the exploded rim in plaintiff's possession truly was *the only* one that could be inspected.  Moreover, the plaintiff offered no reason, let alone a valid reason, why the re-inspection could not occur.  *Id.* at 1-2.

By contrast, ViewSonic has simple, valid reasons for objecting to a re-inspection: the re-inspection would interfere with its experts' ability to complete their reports in a timely and thorough manner and would unduly burden ViewSonic.  Defendants are squarely in the midst of preparing their expert reports, which – not surprisingly – requires those experts to have access to the accused products and the prior art products.  These experts would have to stop their work, reassemble any disassembled products, and package and ship them to ViewSonic's counsel.  Then after LPL's inspection – the length of which is unknown – ViewSonic's counsel would have to re-ship the products back to its experts, who would in turn have to disassemble the products to recommence their now much-delayed work.  This delay was certainly not considered or built into the recently-proposed scheduling order which requires Defendants to file their expert reports on invalidity on August 28 – a mere 18 days away.

Knowing the burden a re-inspection at this late date would place on Defendants, LPL could have – indeed, should have – raised long ago (even before the Markman hearing) that it would want to re-inspect products after the claim construction issued.  Your Honor's Opinion issued on June 15 but LPL waited until July 26 to first raise this request.  Given the lack of any compelling reasons LPL offers for re-inspection and the undeniable burden it would place on Defendants and their experts, LPL's motion should be denied.

---

[4] Due to its voluminous size, ViewSonic will not submit LPL's Sixth Supplemental Response to ViewSonic's First Set of Interrogatories as an exhibit hereto, but will provide a copy to Your Honor upon request.
[5] *See* Ex. A to LPL's Motion to Compel.



The Honorable Vincent J. Poppiti
August 10, 2007
Page 4

                                      Respectfully submitted,

                                      */s/ James D. Heisman*

                                      James D. Heisman

cc:    All Counsel of Record
557913/70104*4