# EXHIBIT A

## Ambrozy, Rel

| From: | HoV@GTLAW.com |
|---|---|
| Sent: | Thursday, August 09, 2007 1:07 PM |
| To: | Christenson, Cass; Ambrozy, Rel; Connor, Cormac; Brzezynski, Lora; rkirk@bayardfirm.com |
| Cc: | gaza@RLF.com; Cottrell@RLF.com; KrietzmanM@GTLAW.com; MeridethF@GTLAW.com; JansenA@gtlaw.com; TRoman@raskinpeter.com; SMiller@cblh.com; MNelson@cblh.com; JHeisman@cblh.com |
| Subject: | Deposition topics |
| Attachments: | 126894804_2.pdf |

Cass,

In advance of the parties' meet and confer today, attached are the Tatung Defendants' proposed deposition topics. In an effort to narrow the issues for discussion, please note that this list of topics is identical to Viewsonic's list circulated last night except that we've added two sub-topics under Topic 7. We look forward to discussing these with LPL.

Valerie

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

8/9/2007

# {DRAFT} PROPOSED
# DEPOSITION SUBJECT MATTERS

I.  **Definitions**

1.  "ViewSonic" means Defendant ViewSonic Corporation and includes any and all of its predecessors and successors-in-interest, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

2.  "Tatung" means Defendants Tatung Company and Tatung Company of America.

3.  "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

4.  "You," "Yours," and "Your" means LPL.

5.  The "'718 patent" shall mean and refer to United States Patent No. 6,498,718.

6.  The "'641 patent" shall mean and refer to United States Patent No. 6,501,641.

7.  The term "Asserted Patents" shall mean and refer to the '718 Patent and the '641 Patent, or any of them.

8.  The term "Counterpart," when used in reference to any patent, means any parent, continuation, continuation in part, divisional or other application or patent, pending, issued or abandoned, that claims priority, directly or indirectly, on or though any of the Asserted Patents or any patent

through which any of the Asserted Patents claim priority, whether it be pending, issued or abandoned.

9. The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

10. The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy:  agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design

registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

11. "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

12. "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

13. "Patent Holder" shall mean any inventor, licensee and all assignees of the rights of any invention in any of the Asserted Patents and/or any Counterpart thereof.

14. "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

15. The term "prior art" shall have the same meaning as "prior art" used in 35 U.S.C. § 103, and shall also include all of the events set forth in each and every subdivision of 35 U.S.C. § 102, including, without limitation, prior knowledge, prior publication, prior patenting, prior invention, public use, offer for sale and sale.

16. "Flat Panel Display Products" shall mean any product that uses, contains, or incorporates one or more LCDs, PDPs or FEDs, and includes by

way of example flat screen computer monitors, lap top screens and flat screen televisions.

17. The term "LCD" shall mean any display which uses liquid crystals to form or create an image (regardless of the technology, *e.g.* active vs. passive matrix; MVA; IPS; TN, etc.). The terms "PDP" and "FED" shall be interpreted as the terms PDP and FED are used in the specifications of the Asserted Patents and/or any Counterpart thereof.

18. "Prior Art LPL Product" shall mean any product made, marketed, sold, distributed and/or offered for sale by LPL on or before December 31, 1998 that includes an LCD, PDP and/or FED, including without limitation any such product disclosed in the documents produced by LPL bearing the Bates ranges of LPL 18927 - LPL 20807 and LPL 20900 - LPL 21540 and any supplemental or replacement production from LPL including the replacement production identified in Mr. Auito's August 7, 2007 email and discussed during the August 7, 2007 hearing with the Special Master, and the 23 products listed on page 3 of the August 3, 2007 letter from Richard Kirk to the Honorable Vincent J. Poppiti.

19. "Other LPL Product" shall mean any product made, marketed, sold, distributed and/or offered for sale by LPL on or after January 1, 1999 that includes an LCD, PDP and/or FED and which in any calendar year was in LPL's top 10-selling products and which also includes a fastening part on either the front, side, or rear of the product, including without limitation any such product disclosed in the documents produced by LPL bearing the Bates ranges of LPL 18927 - 21540 and any supplemental or replacement production from LPL including the replacement production identified in Mr. Auito's August 7, 2007 email and discussed during the August 7, 2007 hearing with the Special Master, and the more than 70 products referenced

on page 2 of the August 3, 2007 letter from Richard Kirk to the Honorable Vincent J. Poppiti that are not Prior Art LPL Products.

20. "LPL Product" shall refer collectively to Prior Art LPL Products and Other LPL Products.

21. "Mounting Technology" shall mean the structures, devices and/or methods used to affix, assemble or secure an LCD, PDP, FED and/or an LPL Product within, on or to another structure including, without limitation, a Flat Panel Display Product.

22. "Accused Products" shall mean any product, including without limitation, all products sold, offered for sale, imported, used, or made, by or on behalf of, any defendant which LPL asserts infringes or may infringe any of the Asserted Patents or any Counterpart thereof and also including those products identified by LPL in response to ViewSonic's Interrogatory Nos. 1, 3 and 4.

23. The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

24. Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

## TOPICS FOR EXAMINATION

### Topic No. 1

a. The identity of any Prior Art LPL Product.

b. Any use in any Prior Art LPL Product of any inventions(s) disclosed in the Asserted Patents or any Counterpart thereof;

c. All methods and structures relating to a Prior Art LPL Product;

d. The structure, assembly, operation, and functionality of any Prior Art LPL Product and each component thereof.

e. The research, design, development and/or engineering of any Prior Art LPL Product and each component thereof.

f. The performance and/or function associated with each design of any manner and/or method to affix, attach and/or secure a Prior Art LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product.

g. The location and structure of any fastening parts or elements, including but not limited to holes, through holes or threaded holes or holes used as part of a fastening or locking mechanism, located on any surface of a Prior Art LPL Product.

h. The location and structure of any fastening parts or elements, including but not limited to holes, through holes or threaded holes or holes used as part of a fastening or locking mechanism, located on or viewable from the back or rear of a Prior Art LPL Product or located on or viewable from the back or rear of a backlight unit or assembly used in a Prior Art LPL Product.

i. The development and/or first use, first offer to sell, and/or first sale of each Prior Art LPL Product.

**Topic No. 2**

a. The identity of any Other LPL Product.

b. Any use in any Other LPL Product of any inventions(s) disclosed in the Asserted Patents or any Counterpart thereof;

c. All methods and structures relating to any Other LPL Product;

d. The structure, assembly, operation, and functionality of any Other LPL Product and each component thereof.

e. The research, design, development and/or engineering of any Other LPL Product and each component thereof.

f. The performance and/or function associated with each design of any manner and/or method to affix, attach and/or secure an Other LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product.

g. The location and structure of any fastening parts or elements, including but not limited to holes, through holes or threaded holes or holes used as part of a fastening or locking mechanism, located on any surface of an Other LPL Product.

h. The location and structure of any fastening parts or elements, including but not limited to holes, through holes or threaded holes or holes used as part of a fastening or locking mechanism, located on or viewable from the back or rear of an Other LPL Product or located on or viewable from the back or rear of a backlight unit or assembly used in an Other LPL Product.

i. The development and/or first use, first offer to sell, and/or first sale of each Other LPL Product.

**Topic No. 3**

    a.    The incorporation, inclusion, or mounting of any Prior Art LPL Product into any other Flat Panel Display Product.

    b.    All customers, distributors, suppliers, and resellers to whom Prior Art LPL Products have been marketed, shipped, imported, transferred, sold, and/or distributed.

    c.    The identity of any and all Flat Panel Display Products marketed, shipped, imported, transferred, sold, and/or distributed in the United States containing a Prior Art LPL Product, including without limitation the identity of the manufacturer, brand name, model number, and product description.

    d.    All distributors, suppliers, channels, and networks through which you have, directly by you, for you or on your behalf, marketed, shipped, imported, transferred, sold, and/or distributed Prior Art LPL Products, the relationship between or among you and all such entities, the identity of all such entities, any contracts, agreements, or contractual business arrangements between you and such entities, and the quantity and value of such products;

    e.    All meetings, communications, agreements, and contractual and business relationships, that relate to the importation, manufacture, distribution, promotion, marketing, advertising, purchases, or sales in the United States of any Prior Art LPL Products and/or Flat Panel Display Products containing Prior Art LPL Products, including but not limited to those products which use, are arranged to use, employ and/or embody any Prior Art LPL Product.

**Topic No. 4**

a. The incorporation, inclusion, or mounting of any Other LPL Product into any other Flat Panel Display Product.

b. All customers, distributors, suppliers, and resellers to whom Other LPL Products have been marketed, shipped, imported, transferred, sold, and/or distributed.

c. The identity of any and all Flat Panel Display Products marketed, shipped, imported, transferred, sold, and/or distributed in the United States containing an Other LPL Product, including without limitation the identity of the manufacturer, brand name, model number, and product description.

d. All distributors, suppliers, channels, and networks through which you have, directly by you, for you or on your behalf, marketed, shipped, imported, transferred, sold, and/or distributed Other LPL Products, the relationship between or among you and all such entities, the identity of all such entities, any contracts, agreements, or contractual business arrangements between you and such entities, and the quantity and value of such products;

e. All meetings, communications, agreements, and contractual and business relationships, that relate to the importation, manufacture, distribution, promotion, marketing, advertising, purchases, or sales in the United States of any Other LPL Products and/or Flat Panel Display Products containing Other LPL Products, including but not limited to those products which use, are arranged to use, employ and/or embody any Other LPL Product.

**Topic No. 5**

a.  Any damages sustained by LPL as a result of the infringement of the Asserted Patents and/or any Counterpart thereof and/or any patent you own or license regarding Mounting Technology by any entity, including any contentions, positions, or assertions of price erosion, lost profits, reasonable royalty, established royalty and/or lost sales, and/or any other basis for compensation under 35 U.S.C. § 284;

b.  All actions you have taken to sell, distribute, market, promote, advertise the inventions disclosed and/or claimed in the Asserted Patents or any Counterpart thereof, including the promotional, marketing, sales and advertising activities with respect to any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

c.  All actions you have taken to sell, distribute, market, promote, advertise the inventions disclosed and/or claimed in any patent you hold, claim to hold and/or license which relates to Mounting Technology, including the promotional, marketing, sales and advertising activities with respect to any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

d.  All efforts you have made to promote, market, and/or advertise LPL Products;

e.  The relevant market(s) for any LPL Product and/or any Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

f.  The monthly, quarterly, and annual unit volume and dollar revenue, by customer, of each LPL Product and/or Flat Panel Display Product which uses, is arranged to use, capable of employing and/or

LA 126894804v2 8/9/2007

embodies any LPL Product, that was made, used, sold, offered for sale, or otherwise transferred: (i) in the United States and/or (ii) outside the United States;

 g. All costs associated with manufacturing, selling or otherwise transferring any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product. This topic includes without limitation the unit costs of all such LPL Product and/or Flat Panel Display Products and/or the cost(s), actual, projected or estimated, associated with each design of any manner and/or method to attach, secure and/or assemble the LPL Product within, on or to another structure including without limitation a Flat Panel Display Product;

 h. For each year from the first commercialization by LPL, the monthly, quarterly and/or annual gross revenues, gross profits, gross profit margins, net profits and net profit margins on sales of each LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

 i. The actual, projected, or desired return on investment, and all analyses related to, associated with the manufacture and/or sale of any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

 j. The percentage of LPL's total sales volume of LPL Products and/or Flat Panel Display Products using, arranged to use, capable of employing and/or embodying any LPL Product (i) sold inside the United States; and (ii) sold outside the United States;

 k. LPL's royalty payments and future obligations, if any, to or from any third party with respect to any LPL Product and/or Flat Panel

Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

l.   LPL's cost of goods for any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

m.   LPL's actual or projected costs of research, development and testing of any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product.

n.   LPL's cost of developing the capacity to manufacture any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

o.   All forecasts, projections or expectations, since January 1, 1996, regarding sales and/or profitability for any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

p.   LPL's pricing of and price changes for any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

q.   The nature, timing, extent, cost or business rationale for any promotional practices engaged in by LPL for any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product;

r.   Actual or potential customers for any LPL Product and/or Flat Panel Display Product using, arranged to use, capable of employing and/or embodying any LPL Product.

**Topic No. 6**

Any "commercial success" of the subject matter and/or inventions disclosed and/or claimed in each of the Asserted Patents and/or any Counterpart thereof by such subject matter and/or inventions including without limitation, the availability of any LPL Product.

**Topic No. 7**

a. LPL's document, data, product and/or record retention policies and procedures and/or the adherence or suspension of such policies in connection with this litigation, including without limitation LPL's document management policy referred to on page 3 of the August 3, 2007 letter from Richard Kirk to the Honorable Vincent J. Poppiti and any policies and procedures relating to the retention of LPL products.

b. The storage of, access to and searchability and/or retrieval of electronic information including any and all electronic mail or messaging systems used by LPL.

c. The storage of, access to and searchability and/or retrieval of technical information, including but not limited to drawings, product specifications, service manuals, assembly or work instructions, including without limitation those produced by LPL at LPL 18927 - LPL 20752 and LPL 20900 - LPL 21540, and any replacements for such documents or supplements to such documents.

d. LPL's possession, retention, storage, or archiving of any LPL Product.

e. All specifications, drawings, manuals, instructions, or procedures relating to any Prior Art LPL Product.

f. All specifications, drawings, manuals, instructions, or procedures relating to any Other LPL Product.

  g. The types and categories of documents that you receive, create, generate, or maintain concerning the development, manufacture, importation, purchase, distribution, sale, offer for sale, receipt, or advertisement of LPL Products.

  h. The access to, gathering of, retrieval, review, and production of documents in the following cases: *LG. Philips LCD Co., Ltd. v. NEC Corporation, et al.*, District of Delaware, Case No. 1:99-cv-00726-RRM and *LG. Philips LCD Co., Ltd. v. NEC Corporation, et al.*, District of Delaware, Case No. 1:99-cv-00680-RRM (the "NEC Litigation").

  i. The people who had access to, or who were involved in the gathering of, retrieval, review or production of, documents in the NEC Litigation.

**Topic No. 8**

  a. The preparation and/or prosecution of each of the Asserted Patents and/or any Counterpart thereof;

  b. Communications to, from, between and/or with any patent office or similar authority to which any of the invention(s) described, disclosed and/or claimed in the Asserted Patents or any Counterpart thereof were disclosed including without limitation the U.S. Patent and Trademark Office and/or any other person, attorney or agent, concerning in any way any of the Asserted Patents and/or any Counterpart thereof, including but not limited to all documents or information presented to the Examiner of the applications that issued as the Asserted Patents and/or any Counterpart thereof and all notes or reports relating to, reflecting or evidencing any interview and/or communication with any Examiner;

      c.    The disclosure or nondisclosure of any Prior Art LPL Product to any patent office or similar authority during prosecution of each of the Asserted Patents and/or any Counterpart thereof, including without limitation any Information Disclosure Statements and/or PTO-1449 Forms submitted to the U.S. Patent and Trademark Office, and the circumstances as to how and when LPL and/or the inventors, or their attorneys and/or agents for each of the Asserted Patents and/or any Counterpart thereof became aware of any cited or disclosed references;

      d.    All facts and circumstances relating to the disclosure or nondisclosure to any patent office or similar authority during prosecution of each of the Asserted Patents and/or any Counterpart thereof, including without limitation any Information Disclosure Statements and/or PTO-1449 Forms submitted to the U.S. Patent and Trademark Office, of any Flat Panel Display Product, including without limitation any product that has a fastening part or element at its rear surface, made by LPL or known to LPL, and/or the inventors, or their attorneys and/or agents for each of the Asserted Patents and/or any Counterpart, that bears on the patentability of, or any arguments made to the patent office regarding the inventions disclosed in each of the Asserted Patents and/or any Counterpart thereof;

      e.    All details regarding the awareness of any of the inventors of the Asserted Patents and/or any Counterpart thereof, the attorneys who prepared and/or prosecuted the applications that led to the Asserted Patents and/or any Counterpart thereof, and anybody substantively involved in the preparation and/or prosecution of the applications that led to the Asserted Patents and/or any Counterpart thereof of any Prior Art LPL Product;

f. Any policy or procedure of LPL for managing its duty of disclosure to the United States Patent and Trademark Office during or after the prosecution of patent applications.

g. The statements contained in the Amendment filed on or about January 17, 2001 in the prosecution of the application that led to the '641 patent; including the factual information on which such statements were based.

h. The facts known to anyone involved in the prosecution of the applications for the Asserted Patents and/or any Counterpart thereof, including without limitation, LPL and/or the inventors, or their attorneys and/or agents, relating to the existence of and/or structure of Prior Art LPL Products, including without limitation the location of fastening parts or elements on the product used for any purpose, if at all.

i. Any facts or circumstances that support, evidence, contradict or negate the defense of inequitable conduct.

**Topic No. 9**

a. The efforts You took to gather and search for information, documents and/or product samples the Special Master required You to produce and You agreed to produce during the hearings on June 28, 2007, July 13, 2007, and August 7, 2007, including the locations for responsive information, documents and/or samples, the persons interviewed regarding the responsiveness of such information, documents and/or samples, and the manner in which You searched for electronic information, documents, records, and/or samples including LPL's search, if any, of its electronic databases and substandard or scrap material inventories.

b. The contents of the documents produced by LPL bearing Bates numbers LPL 18927 - LPL 20807 and LPL 20900 - LPL 21540.

  c. The preparation of the documents produced by LPL bearing Bates numbers LPL 18927 - LPL 20807 and LPL 20900 - LPL 21540.

  d. Any samples of any LPL products produced in response to the Special Master's Order during the hearing dated August 7, 2007.