# EXHIBIT G

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,    )
                                 )
            Plaintiffs,          )    C.A. No. 04-343(JJF)
                                 )
v.                               )
                                 )
TATUNG CO., TATUNG COMPANY OF    )
AMERICA, INC., and VIEWSONIC     )
CORPORATION,                     )
                                 )
            Defendants.          )

        Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Tuesday, March 13, 2007, beginning at
approximately 5:05 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        RICHARD D. KIRK, ESQ.
          222 Delaware Avenue, Suite 900
          Wilmington, Delaware  19899
          for Plaintiffs

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street      Wilmington, DE 19899
(302) 571-0510
www.corbettreporting.com
Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

2 (Pages 2 to 5)

## Page 2

APPEARANCES (Continued):
MCKENNA, LONG & ALDRIDGE, LLP
CASS W. CHRISTENSON, ESQ.
REL S. AMBROZY, ESQ.
1900 K Street, N.W.
Washington, D.C. 20006
for Plaintiffs

RICHARDS LAYTON & FINGER
ANNE SHEA GAZA, ESQ
One Rodney Square
Wilmington, Delaware 19801
for Defendant Tatung Co

GREENBERG TRAURIG LLP
FRANK MERIDETH, ESQ.
MARK KREISMAN, ESQ.
VALERIE HO, ESQ.
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
for Defendant Tatung Company of America, Inc.

CONNOLLY BOVE LODGE & HUTZ LLP
JAMES D. HEISMAN, ESQ.
1007 North Orange Street
Wilmington, Delaware 19899
for Defendant Viewsonic Corporation

CONNOLLY BOVE LODGE & HUTZ LLP
SCOTT R. MILLER, ESQ.
MANUEL NELSON, ESQ.
TRACY ROMAN, ESQ.
355 South Grand Avenue
Los Angeles, California 90071-3106
for Defendant Viewsonic Corporation

## Page 3

SPECIAL MASTER POPPITI: Mr. Kirk.

MR. KIRK: Yes, Your Honor. Richard Kirk, from the Bayard Firm, for the plaintiff, LG Phillips, LCD Company, Ltd., and I heard on the line my colleagues from McKenna, Long & Aldridge, Cass Christenson, I believe Rel Ambrozy, and there may be others, Your Honor. I am sorry, I didn't catch them.

MR. CHRISTENSON: I think that's all, Your Honor.

SPECIAL MASTER POPPITI: Thank you.

MS. GAZA: Your Honor, Anne Gaza from Richards, Layton & Finger. I believe on the phone with me are Frank Merideth, Mark Kreisman, and Valerie Ho from Greenberg Traurig.

SPECIAL MASTER POPPITI: Thank you.

MR. HEISMAN: Good afternoon, Your Honor. Jim Heisman from Connolly Bove on behalf of ViewSonic Corporation. Also on the line is Tracy Roman from the Rafkin Peter firm.

SPECIAL MASTER POPPITI: Thank you. Is everyone still there? Before we start, I want to focus everyone's attention on correspondence from Mr. Kirk dated March 12, which forwarded to me documents corresponding to privilege log entries. And I just want

## Page 4

to make sure that I have an agreement, if there is one, that all of the documents that accompanied that cover are, in fact, the universe of documents that I am expected to review in camera.

Has anyone been able to turn their attention to that, and if not, when can you do that, please?

MR. MERIDETH: Your Honor, I have not checked the numbers against the one -- against the transcript, but I can do that this afternoon.

And, Your Honor, we provided more than the numbers that were referred to in the transcript. We have provided all of them.

SPECIAL MASTER POPPITI: Then the numbers that you have listed here are a universe that is bigger than the universe of the numbers in the transcript; is that correct?

MR. MERIDETH: That's correct, Your Honor.

SPECIAL MASTER POPPITI: In any event, I'd like a check on that so I can make sure that once the review is finished, that, in fact, I have looked at everything that I was expected to look at and review. Okay?

## Page 5

MR. MERIDETH: Yes, Your Honor.

SPECIAL MASTER POPPITI: As soon as you can get to it, Mr. Merideth, that will be helpful.

MR. MERIDETH: Yes, sir. I will do it this afternoon. Is it all right if I just send an email saying yea or nay?

SPECIAL MASTER POPPITI: Yes. That's fine.

Now, as we turn to the business of the day, before I hear any comments with respect to the substance of your respective submissions, it is important for me, and, in fact, I am required to focus on some dates that I think may drive an ultimate question that I have even before, at substance, and correct me if I am wrong with respect to these dates, I think I am correct, I believe the record reflects that the Rule 30(b)6 notices were filed on December the 5th of 2006; is that correct?

MR. CHRISTENSON: Yes, Your Honor.

SPECIAL MASTER POPPITI: And I believe that objections with respect to that first filing were filed, and I am not sure that it is the same for each, that is, for Tatung and ViewSonic, January 5, but I'd like to know specifically as it relates to each of the

Page 6

1  parties' defendants.
2      MS. ROMAN:  Give me just a moment and I
3  will put the document up.
4      SPECIAL MASTER POPPITI:  Please.
5      MS. ROMAN:  Regarding the December 5th
6  notices, the objections were served on January 5th.
7      SPECIAL MASTER POPPITI:  January 5?
8      MS. ROMAN:  Correct.
9      SPECIAL MASTER POPPITI:  And that was
10  for ViewSonic?
11      MS. ROMAN:  That was for ViewSonic for
12  LPL's original 30(b)(6) notices.
13      SPECIAL MASTER POPPITI:  There were
14  supplemental notices, if I understand the record
15  correctly, on January 24; is that correct?
16      MR. CHRISTENSON:  Your Honor, I believe
17  that we did serve one additional topic to each defendant
18  on or about January 24.
19      SPECIAL MASTER POPPITI:  Okay.  And
20  objections with respect to same, if any, when were they
21  filed, please?
22      MS. ROMAN:  I am looking for that
23  information.  Just a moment.  I am sorry, Your Honor.  I
24  am trying to get the information.  I don't have the

Page 7

1  document in front of me.
2      SPECIAL MASTER POPPITI:  Okay.  You can
3  give me an about date for purposes of the backdrop, if
4  you will, to my question.
5      MS. ROMAN:  Well, I don't want to
6  misstate and say we served --
7      SPECIAL MASTER POPPITI:  I understand
8  that.
9      MS. ROMAN:  I am not sure if the counsel
10  for LPL knows if we served objections for the amended
11  notices.
12      MR. MERIDETH:  Yes, we did.
13      SPECIAL MASTER POPPITI:  That was
14  Mr. Merideth?
15      MR. MERIDETH:  Yes, Your Honor, the
16  Tatung defendants.
17      SPECIAL MASTER POPPITI:  Do you know the
18  date, sir?
19      MR. MERIDETH:  I don't off the top of my
20  head.
21      MS. ROMAN:  I will try and find that for
22  you, Your Honor.
23      SPECIAL MASTER POPPITI:  While you are
24  looking for that, then, when were the designations made?

Page 8

1  Were they made all at once?  Were they made over time?
2      MS. ROMAN:  Your Honor, the parties
3  reached an agreement that designations would be made five
4  business days before the dates of the deposition.
5      SPECIAL MASTER POPPITI:  Okay.  And I
6  believe I have -- just give me one moment, please -- and
7  I would expect that that would mean, with respect to the
8  deposition schedule that was provided to me by Mr. Kirk
9  on February 23rd --
10      MR. MERIDETH:  Your Honor, actually, the
11  most recent deposition schedule that was provided was
12  attached to a letter from Mr. Miller dated February 26th,
13  2007.
14      SPECIAL MASTER POPPITI:  That was sent
15  to me?
16      MR. MERIDETH:  Yes, sir.
17      MS. GAZA:  Your Honor, on March 7th, we
18  served Tatung Company and Tatung Company of America,
19  Inc., objections to LPL's supplemental notices of
20  deposition.
21      SPECIAL MASTER POPPITI:  What was the
22  date again, please?
23      MS. GAZA:  March 7th, 2007.  And the
24  notice of service was BI 546.

Page 9

1      MR. CHRISTENSON:  Your Honor, with
2  respect to the deposition schedule, I believe the
3  February 23rd and the February 26th letter should match.
4  I just learned yesterday that the defendants, apparently,
5  changed one of the agreed dates, but we have worked that
6  out.
7      SPECIAL MASTER POPPITI:  Okay.  And, in
8  any event, whether it was the 23rd or the 26th, the
9  schedule began on the 12th?
10      MR. CHRISTENSON:  Yes, Your Honor.
11      SPECIAL MASTER POPPITI:  And is expected
12  to go through the 29th; correct?
13      MR. CHRISTENSON:  Correct.
14      SPECIAL MASTER POPPITI:  Now, I have
15  said, I know, on at least, at least I think I have, on at
16  least a number of occasions, that I think there are times
17  when it is completely inappropriate to drive a process
18  and expect that form should overtake substance.  I am a
19  firm believer in that when I think it's important to get
20  the business at hand accomplished.
21      But my question is this:  Rule 26(c)
22  reads as follows, "Upon motion by a party, or by a person
23  from whom discovery is sought, accompanied by a
24  certification that the movant has, in good faith,

HEARING

4 (Pages 10 to 13)

| | |
|---|---|
| **Page 10** | **Page 12** |

**Page 10**

1  conferred or attempted to confer with other affected
2  parties in an effort to resolve the dispute without court
3  action and for good cause shown," etcetera. That rule is
4  certainly no less mandatory than the Local Rule 7.11 in
5  our district that requires a statement filed by counsel
6  showing that the attorney making the motion has made a
7  reasonable effort to reach agreement with the opposing
8  attorneys on the matters set forth in the motion.
9          My question is this: I don't see -- let
10  me phrase it in the form of a question -- where is the
11  certification? That's my first question. And my second
12  question is: Why now and not long before preparation for
13  these witnesses could be expected to have been
14  accomplished?
15          MR. HEISMAN: Your Honor, attached to
16  our motion was various correspondence that went to and
17  from the parties --
18          SPECIAL MASTER POPPITI: Where is your
19  certification, sir?
20          MR. HEISMAN: The certification should
21  have been attached to the motion, itself, under 7.1.
22          SPECIAL MASTER POPPITI: If I missed it,
23  please direct my attention to it.
24          MR. HEISMAN: Your Honor, it was my

**Page 11**

1  understanding it was attached to the back of the papers.
2  If not, I can send you a copy momentarily.
3          SPECIAL MASTER POPPITI: Am I mistaken?
4  Has anyone else seen it?
5          MR. CHRISTENSON: Your Honor, if there
6  was one, I can't recall if there was or not, but I do
7  seem to recall there was some submission, I think it was
8  very cursory, I don't think it was sufficient, and I
9  believe that, primarily, it relied on a letter.
10          SPECIAL MASTER POPPITI: It was one
11  letter.
12          MR. CHRISTENSON: Yes, from Mr. Miller
13  to me late in the afternoon one day, asking me to respond
14  that same day. And I believe it was one business day
15  before they filed their motion.
16          SPECIAL MASTER POPPITI: I see that
17  letter. I am certainly mindful of the March 6th, 2007,
18  letter to you. You all have been involved in very
19  extensive motion practice with me, and you know that I am
20  accustomed to reading rather lengthy certifications, so
21  am I to understand that this March 6th, 2007, letter,
22  which is, in fact, Exhibit 7 on the March 7, 2007,
23  application, is the certification as to your efforts to
24  meet and confer?

**Page 12**

1          MS. ROMAN: Mr. Scott Miller has joined
2  the conference.
3          SPECIAL MASTER POPPITI: Thank you.
4          MR. MILLER: Hello, Your Honor.
5          SPECIAL MASTER POPPITI: How are you,
6  sir?
7          MR. MILLER: I am fine. I think -- and
8  Manuel Nelson is coming. This is sort of a joint effort
9  amongst a number of us. We had a number of discussions
10  with LPL originally after the January 5th objections were
11  served. We had a telephone conference on the 8th where
12  we had some discussion about various deposition topics,
13  and there were overlap between some of the issues that
14  are ViewSonic issues and the issues that were presented
15  with the LPL depositions, particularly as it relates to
16  experts and those kinds of things.
17          So, we discussed those kinds of issues
18  generally on the 8th, and then I believe there was a
19  follow-up telephone conversation after that. There was
20  supposed to be another conference that was going to
21  happen, I think, January 16th, which got postponed, and
22  then there was some letter correspondence that happened
23  through sometime in January. We got their supplemental
24  designation of topics in late January, and I think on

**Page 13**

1  January 29th, we sent them a letter objecting.
2          SPECIAL MASTER POPPITI: Are you reading
3  from something, sir?
4          MR. MILLER: No. I am going from
5  primarily from memory of what Mr. Nelson was telling me a
6  moment ago.
7          SPECIAL MASTER POPPITI: Isn't that part
8  of the problem? I mean, I am -- again, I don't want to
9  drive this by form over substance, but a motion for
10  protective order is a significant attention-getter by the
11  parties because it puts everything at a dead stall and
12  it's something that I need to pay very serious attention
13  to.
14          MR. CHRISTENSON: Your Honor --
15          SPECIAL MASTER POPPITI: I have. I
16  mean, let me assure you that I have read your submissions
17  not knowing whether or not there was an administrative
18  oversight and not providing the Rule 26(c) certification
19  and the Rule 7.1 certifications. It's the same document,
20  obviously.
21          Mr. Christenson, you were about to say
22  something.
23          MR. CHRISTENSON: Yes. Thank you, Your
24  Honor. I was just going to say to the extent that you --

## Page 14

1    to the extent that we need to talk about what Mr. Miller
2    just represented, I disagree with the characterization
3    that he gave you.
4            SPECIAL MASTER POPPITI: That's my
5    problem. I mean, you all have, in numerous settings,
6    described to me as meet and confers, you frequently both
7    walk away from those meet and confers and ask me, at some
8    point, to "staunch the flow from your self-inflicted
9    wounds." That's a Steele quote, by the way, when he was
10   vice-chancellor.
11           It's my responsibility to try to point
12   you in the right direction with respect to your
13   respective submittals, but, you know, quite frankly, I
14   don't have a Rule 26 or Local Rule certification, I am
15   really not in a position to measure whether or not there
16   has been effective meet and confers, and I am very
17   troubled by the fact that the -- if the letter dated
18   March 6th, that is the one that seems to be what counsel
19   suggested may be the certification, itself, the letter
20   dated March 6th is asking for a response by the end of
21   the business day, and I know and you all know, by the end
22   of the business day on the 6th, your respective teams
23   were in deposition and some of your team was preparing to
24   meet with me on the 9th of March for purposes of an all

## Page 15

1    day hearing. And, again, why now and why wasn't this
2    done earlier with an appropriate certification?
3            MR. HEISMAN: Your Honor, I did attach a
4    certification after speaking with Mr. Miller. It was in
5    the form typically submitted to the District of Delaware
6    Courts. The letter that you are referring to from
7    Mr. Miller was, from my understanding, one of several
8    communications on the topic with plaintiffs.
9            MR. MILLER: Your Honor, I guess I will
10   try to answer it in terms of why and how we got to the
11   point of that letter.
12           The letter clearly is the most detailed
13   and direct identification of some of the issues from
14   ViewSonic's standpoint. But I guess why we -- what
15   happened leading up to that is there were issues where
16   the subject of deposition topics that ViewSonic had
17   noticed, that Tatung had noticed, and that LPL had
18   noticed, for example, some of these issues were directed
19   to expert testimony on infringement and validity
20   contention, those sorts of things, we knew that we were
21   working with LPL and that we would have to resolve those
22   issues somehow.
23           And I guess maybe -- it's certainly my
24   responsibility, and, at the end of the day, my fault, if

## Page 16

1    it was too late to do it now, but my belief was that we
2    would go through this process as we would in a normal
3    case, work these things out as we would be working them
4    out, and we would have mutuality in terms of how we would
5    work these things out towards each other.
6            And, so, through -- we had these
7    discussions in January, generally, about some of these
8    issues. We knew that we were having these issues in
9    February and we had some discussions. LPL didn't
10   identify witnesses for certain topics. And as the
11   depositions proceeded, again, in late February, in
12   Delaware, you know, it became apparent that Your Honor
13   believed that we needed to have a protective order motion
14   on file, that LPL needed to have a protective order
15   motion on file. And, so, we, you know, we were trying to
16   work these issues out with Mr. Christenson in terms of
17   where LPL was going to identify or not identify witnesses
18   on topics that would relate to expert testimony, for
19   example, and, you know, with the belief that there would
20   be mutuality in terms of how that would be worked out.
21           We then prepared the March, I think it's
22   the March 6th letter you referred to to send to
23   Mr. Christenson to put forth a comprehensive list of the
24   issues and are here today.

## Page 17

1            You know, so, if that is inadequate
2    under the press of time that everybody was working under
3    and in the hopes that we were -- we would be working
4    these things out, then, obviously, that's my
5    responsibility and my fault.
6            MS. ROMAN: Mr. Christenson can also
7    agree that we have continued to work with LPL regarding
8    these topics and we have tried to resolve some of these
9    topics -- we are not quite there yet -- regarding what
10   Mr. Miller was just mentioning with respect to topics
11   that speak to infringement and invalidity contention or
12   claim construction issues which really is the heart of
13   most of the areas of the motion for protective order, and
14   I am happy to forward that correspondence to Your Honor.
15           MR. CHRISTENSON: Your Honor, just to
16   respond briefly, I do not feel there has been any
17   adequate attempt to respond to these issues informally
18   without a motion, and I do feel the motion is much too
19   little much too late.
20           I haven't heard anything yet today about
21   efforts by Tatung Company, but with respect to ViewSonic
22   and what Mr. Miller said, just very briefly, I raised
23   questions about topics with ViewSonic to try to work out
24   some of these issues with respect to LPL's depositions in

HEARING

6 (Pages 18 to 21)

Page 18

1  January and in December --
2      SPECIAL MASTER POPPITI:  I saw that in
3  your correspondence of -- give me a second here, please
4  -- March 8.
5      MR. CHRISTENSON:  Yes.  And in January,
6  we had a call on January 5th, we had a follow-up call on
7  January 8th, where I again raised some issues.  We then
8  agreed on that call -- and Mr. Miller was not on the
9  January 8 call -- we agreed on that call with ViewSonic's
10 counsel and Tatung's counsel to have a follow-up call on
11 January 17 and to exchange, in the interim, our concerns
12 about the topics.
13     At that point, I think it was January
14 16, the day before that call, ViewSonic unilaterally
15 cancelled the call and refused to appear for the call.
16 And after that time, Mr. Miller took the position that no
17 further telephonic discussions would occur among counsel
18 without the presence of a court reporter, and that they
19 wouldn't have a court reporter present unless LPL agreed
20 to pay.  And we couldn't resolve that issue.
21     And after that time, there was no real
22 effort to resolve any of the topics that we have noticed
23 until the March 6th letter, which, as Mr. Miller agrees,
24 is the first time they set forth in detail these issues.

Page 19

1  And, so, I don't think that constitutes a good faith
2  effort.
3      Furthermore, Your Honor, with respect to
4  LPL's witnesses, the argument was made that LPL was
5  obligated, having not moved previously for protective
6  order, to provide testimony on all of these topics.
7      SPECIAL MASTER POPPITI:  I understand
8  that.
9      MR. CHRISTENSON:  And we -- and, so,
10 they have put us in the position of providing the similar
11 information and arguing that we have failed to properly
12 seek a protective order, and now, of course, when the
13 shoe is on the other foot, they seem to think a different
14 standard should apply.
15     MS. ROMAN:  That's just not correct.  We
16 have not stated that it was too late for them to seek a
17 protective order on the 23 topics that they didn't
18 designate a witness for.
19     We have simply -- they just never filed
20 a motion for protective order, and, so, we continued, in
21 good faith, to try to work in good faith with them to try
22 and resolve the issues.  And it's a little bit
23 unfortunate that we went ahead and followed the procedure
24 of filing a motion for protective order and we are not

Page 20

1  going to be able to get resolution or get LPL to agree to
2  work these issues out with us even though we did follow
3  the procedure and they never filed their own motion.
4      MR. CHRISTENSON:  Your Honor, we worked
5  out all of the topic issues with respect to LPL and we
6  have agreed to provide supplemental testimony on many of
7  those topics and we resolved the other topics.
8      We had also proposed a two-way deal for
9  everybody to defer some topics that we felt were more
10 suitable for experts.  We offered that more than once and
11 the defendants would not agree with us on that.  I think
12 now they may be willing to agree and we are still trying
13 to work with them on those discrete issues.
14     MR. MERIDETH:  We did agree to that
15 proposal.  I have sent you a couple of emails on that.
16 In fact, I sent you an email today reminding you that I
17 had sent you an email.
18     SPECIAL MASTER POPPITI:  Counsel, what
19 you are doing for me is identifying the nature of the
20 problem that I have identified.
21     It is difficult, at best, to -- well,
22 it's difficult to focus on the substance of it all,
23 having been through the substance of it all, without
24 knowing the path forward in an appropriate filing with

Page 21

1  sufficient detail for me, on behalf of the Court, to make
2  a judgment that it is a proper filing.
3      The language of the rules makes sense.
4  The language of the rules, both of them, the language is
5  mandatory, and it's there for a purpose.
6      I mean, I expect you wouldn't -- no one
7  would disagree with that; is that fair?  I don't hear any
8  disagreement.
9      Now, if there was to have accompanied
10 this filing a 7.11 or a Rule 26(c) and it didn't get
11 attached, then I need to see it because nothing came over
12 other than March 7, seven exhibits, and I have read the
13 March 8th correspondence and all of their exhibits -- and
14 all of the exhibits attached to that, and then the March
15 12th and all of the exhibits attached to that as well as
16 Tatung joining on March 12th.
17     I mean, it's a little bit frustrating,
18 and I heard what Mr. Merideth just said.  I don't have
19 the benefit of that if I don't have an appropriate
20 certification.
21     MR. CHRISTENSON:  Your Honor, I think
22 that Mr. Merideth was referring to email sent to me
23 today.
24     SPECIAL MASTER POPPITI:  I understand

Page 22

1   what he said.
2        MS. ROMAN:  Just so that I can be clear
3   as to what it is, as Mr. Heisman mentioned, there was a
4   certification signed by him, a single page, that was
5   attached to the motion and to the -- it was -- it
6   preceded the exhibits that you have referenced.
7        I just want to make sure that the
8   question isn't whether you received that, but your
9   concern is whether or not that was sufficient?
10       SPECIAL MASTER POPPITI:  That's correct.
11  That's exactly correct.
12       MS. ROMAN:  Your Honor, as Mr. Miller,
13  and also myself, as well, being involved in arguing and
14  certainly preparing this motion, we accept responsibility
15  for the lack of additional detail in it.
16       SPECIAL MASTER POPPITI:  Let me ask this
17  question -- and I am going to ask my colleagues at the
18  local Bar; every once in a while, it's important to make
19  sure that I am reflecting what I expect Delaware practice
20  expects on behalf of the Court -- counsel, you have the
21  benefit of looking at the March 7th one-page
22  certification from Mr. Heisman, and I don't have anything
23  other than that detailing what, apparently, is in
24  dispute; how do I deal with that?

Page 23

1        MR. HEISMAN:  Your Honor, I can tell
2   you, from a matter of Delaware practice, that the
3   certification which I attached to the motion that went to
4   Your Honor is similar to certifications that are attached
5   in my practice and I believe the practice of everyone in
6   my firm that typically go to the District of Delaware,
7   and based on the representations that the parties made an
8   effort to resolve the dispute, we were unable to, and
9   that's what the certification indicated.
10       I recognize that it didn't put into
11  great detail what Mr. Miller has explained to Your Honor
12  which creates the dispute, but, nonetheless, that's the
13  typical certification that's filed with motions in this
14  District.
15       SPECIAL MASTER POPPITI:  I have seen
16  certifications, counsel, but I have not seen them as a
17  one-pager without any attachments.
18       MS. GAZA:  Just to address the issue as
19  well, we have also filed similar certifications in the
20  District Court stating that the parties have attempted to
21  resolve the disputes referenced in the papers and have
22  been unable to do so and replied upon the motion or the
23  brief to address the substance of the dispute.
24       MR. KIRK:  Your Honor, I am sure my

Page 24

1   colleagues can search records and find certifications
2   that I have done that are quite sketchy, quite bare
3   boned.  I think that Local Rule requirement, I think, as
4   I read it, requires that counsel certify that efforts
5   have been made but not necessarily that all of those
6   efforts be detailed in the filing.
7        If I can read it, it says, "If the
8   moving party files with the Court, at the time of filing
9   the motion, a statement showing that the attorney making
10  the motion has made a reasonable effort to reach
11  agreement with the opposing attorneys on the matters set
12  forth in the motion".
13       SPECIAL MASTER POPPITI:  And I read the
14  same language that you did and that everybody reads, and
15  I read "statement showing" to be more than just a
16  one-page submission that has been done.  I have got your
17  certification, I have got what I have.  Let's -- I'd like
18  some answer to the question as to why now and not
19  earlier?
20       MS. ROMAN:  I will let Mr. Miller chime
21  in, too, if this is incorrect, but I believe what he
22  expressed earlier was that the parties have been
23  operating under an understanding that we had each
24  exchanged our various objections and things would be

Page 25

1   worked out or wouldn't be worked out.  It really wasn't
2   until we were on with Your Honor during the first week of
3   deposition of Mr. Kim, LPL's witness, that it was made
4   abundantly clear, to all the parties, that a motion for
5   protective order would be the only vehicle by which a
6   witness could seek protection from testifying as to any
7   category.  So, we proceeded immediately from there to try
8   to get the motion prepared and to make one additional
9   effort to meet and confer on these issues which is
10  reflected on that March 6th letter.
11       SPECIAL MASTER POPPITI:  Any other
12  comments about that, then, please?  Let's turn to -- we
13  will turn to substance.
14       MS. ROMAN:  Thank you, Your Honor.
15       I think, perhaps, the easiest place to
16  start is with the topics that focus fundamentally on
17  invalidity and infringement contention and claim
18  construction, 10 and 11.
19       I will just state, for purposes of
20  Mr. Christenson, please feel free to chime in at any time
21  if you think that we have reached agreement on some of
22  these because I certainly don't want to waste anyone's
23  time.
24       But topics 10 and 11 would be the best

HEARING

8 (Pages 26 to 29)

Page 26

1   place to start. As I understand it, these topics seek
2   the contentions concerning whether or not the
3   patents-in-suit are infringed by the products. That's
4   topic 10. Topic 11 seeks ViewSonic's position and
5   contention concerning whether the patents-in-suit are
6   unenforceable for any reason. And I think that the
7   parties are in agreement that the contentions,
8   themselves, are areas that should not be explored with
9   fact witnesses but should be reserved for expert
10  deposition. We have agreed to that limitation with
11  respect to not requiring LPL to produce a fact witness
12  for similar topics.
13          SPECIAL MASTER POPPITI: Okay.
14          MS. ROMAN: The continuation of topics
15  10 and 11 also states the factual basis responsive to
16  interrogatories and documents concerning those positions.
17  And I think that's where our last discussion has left off
18  as to whether or not we have to produce a fact witness
19  for that portion of the topic. And our difficulty is
20  trying to figure out how we parse out what is expert
21  testimony versus what is a fact witness testimony on
22  infringement and invalidity contentions relative to the
23  factual phase of the interrogatory responses and document
24  responses.

Page 27

1          SPECIAL MASTER POPPITI:
2   Mr. Christenson.
3          MR. CHRISTENSON: Yes, Your Honor. It
4   sounds like ViewSonic -- until recently, ViewSonic was
5   reserving the right to elect whether they would defer to
6   experts on contentions concerning validity and
7   infringement and it sounds like they have made the
8   election to defer to experts. Miss Roman stated
9   correctly that LPL had made that same election. And, so,
10  it sounds like that issue --
11          SPECIAL MASTER POPPITI: Doesn't that
12  resolve --
13          MR. CHRISTENSON: -- is moot; in other
14  words, resolved. As Ms. Roman said, however, the topics
15  go on to request information concerning the factual basis
16  and relevant documents, which I believe are appropriate
17  fact witness issues.
18          SPECIAL MASTER POPPITI: And that's what
19  she is talking about. She is saying that they are
20  having, correct me if I am wrong, you are having a
21  difficult time parsing and I guess my -- I am having a
22  difficult time understanding why that's difficult.
23          It may not be the most efficient way to
24  do it, but you are not suggesting that the topic 10, if

Page 28

1   it only had the factual basis interrogatories, documents,
2   you are not suggesting that that would be inappropriate;
3   correct?
4          MS. ROMAN: To the extent that the
5   interrogatories that are focused on are the invalidity or
6   infringement contention interrogatories, then I think
7   it's one in the same. The factual basis really is the
8   contention and what underlies it, in all of that, is
9   testimony that's going to be put forth through an expert.
10          MR. AMBROZY: Your Honor, if I may?
11          SPECIAL MASTER POPPITI: Please.
12          MR. AMBROZY: In regards to No. 10,
13  where it discusses the basis for infringement or
14  non-infringement and their responses in interrogatories,
15  I believe that the underlying fact as to whether their
16  monitor or television contains a certain element is a
17  factual basis on which a witness can be identified.
18          MS. ROMAN: I wouldn't disagree with
19  that, Rel. I think that's covered in many of the other
20  topics, and certainly that makes sense to me.
21          As I was reading topic 10 and 11 and
22  reading the factual basis and the responses to
23  interrogatories and the documents concerning our
24  contention for infringement and invalidity, I read that

Page 29

1   to be seeking the information regarding the conclusions
2   that are reached or the expert's testimony that's going
3   to come forth on those.
4          SPECIAL MASTER POPPITI: I don't -- that
5   would be virtually -- I mean, that would be crazy,
6   wouldn't it?
7          MR. CHRISTENSON: Yes, Your Honor. It
8   sounds to me like they are trying to suggest it can't be
9   a separate factual basis for a contention. We just
10  disagree with that fundamentally.
11          MS. ROMAN: I am actually suggesting
12  that we wouldn't have a fact witness that would be
13  putting forth that factual basis. But I understand, from
14  Mr. Ambrozy's point, I believe, that you are considering
15  that the factual basis can be as broad as what are the
16  components within our product and identifying those
17  components. Hearing that, I understand the distinction
18  you are making.
19          SPECIAL MASTER POPPITI: And with that
20  distinction, is it not going to depend, then, on what
21  questions are posed?
22          MS. ROMAN: Yes, Your Honor.
23          SPECIAL MASTER POPPITI: Okay.
24          MS. ROMAN: So I think that we all have

| Page 30 | Page 32 |
|---|---|
| 1  a clear understanding with regard to topics 10 and 11, | 1  involving the opposition to the preliminary injunction |
| 2  and to the extent we are dealing with just the beginning | 2  motion, the U.K. proceedings and decision, and to the |
| 3  half of it that deals with the contentions, the ultimate | 3  extent one is obtained, after claim construction, an |
| 4  contentions, that that will be areas that ViewSonic is | 4  opinion of counsel, which, I will just acknowledge for |
| 5  going to rely on expert testimony for, and then if a fact | 5  the record, I understand LPL disagrees about whether we |
| 6  basis is something that's within the scope and knowledge | 6  can offer such an opinion, but just for purposes of the |
| 7  of the fact witness, then that will be provided. | 7  scope of topic four. |
| 8  SPECIAL MASTER POPPITI: Okay. Thank | 8  So, for each of those categories I just |
| 9  you. Next, please. | 9  identified that we feel would fall within the scope of |
| 10  MS. ROMAN: Your Honor, I think I can | 10  topic four, we would produce a fact witness. For |
| 11  short us through a few of the other topics if I might | 11  everything else, we believe it would be proper to reserve |
| 12  identify them first and then explain why I am grouping | 12  it for expert testimony and we agreed to rely on expert |
| 13  them together because they flow from what we just | 13  testimony for the remainder of it. |
| 14  discussed with respect to topics 10 and 11. | 14  MR. CHRISTENSON: Your Honor, if I may |
| 15  SPECIAL MASTER POPPITI: Yes, please. | 15  respond? |
| 16  MS. ROMAN: This would be topics, four | 16  SPECIAL MASTER POPPITI: Yes, please. |
| 17  eight, nine, and 23. | 17  MR. CHRISTENSON: The concern I have |
| 18  SPECIAL MASTER POPPITI: Just a second. | 18  with the proposal from ViewSonic is that they are |
| 19  Four, eight, nine, and 23, okay. | 19  attempting to say they are going to rely on experts with |
| 20  MS. ROMAN: Yes, Your Honor. | 20  respect to whatever I guess it is that the expert may do |
| 21  SPECIAL MASTER POPPITI: Thank you. | 21  in terms of an analysis or an investigation or testing. |
| 22  MS. ROMAN: Each of these topics, | 22  However, then they bring back in and put on the table |
| 23  because of their breath, also raise concern to the extent | 23  certain categories of those activities that they think, |
| 24  that the testimony sought would be seeking not only fact | 24  apparently, are favorable to them for which they will |

| Page 31 | Page 33 |
|---|---|
| 1  witness testimony but could bleed into expert testimony | 1  provide a witness. I think we have the right to test and |
| 2  or areas that were specifically only appropriate for | 2  find out if there are unfavorable investigations or |
| 3  expert witnesses. And I sent Mr. Christenson an email | 3  inspections or testing that would benefit our client and |
| 4  that broke down, within each topic, what areas we | 4  that we would want to offer. |
| 5  believed would be specific for fact witnesses and what | 5  SPECIAL MASTER POPPITI: You mean the |
| 6  would be specific for expert witnesses. And I am just | 6  existence of them? |
| 7  not sure if we still have a dispute on that or whether | 7  MR. CHRISTENSON: Yes, Your Honor, the |
| 8  Mr. Christenson needs further clarification from me on a | 8  existence and nature of them, for example. So I don't |
| 9  position on those topics. | 9  want to agree that they can just pick the ones that |
| 10  MR. CHRISTENSON: Yeah. I sent you an | 10  should be discussed at the deposition. I don't think |
| 11  email back on that, and I was not clear on -- my | 11  that's appropriate. I think we should have the right to |
| 12  understanding was you were designating a witness as to | 12  explore that, and I would note, Your Honor, that the |
| 13  those topics, but you were proposing some limit on those | 13  topic is very similar to topic 24E that was noticed to |
| 14  topics and it wasn't clear to me exactly what was the | 14  LPL and for which LPL provided a witness. |
| 15  limit proposed. | 15  MS. ROMAN: Perhaps, then, there is a |
| 16  MS. ROMAN: Can I just walk through it | 16  better way of going about each of these topics. |
| 17  now and we can see if we can reach clarification on it? | 17  SPECIAL MASTER POPPITI: Why don't you |
| 18  SPECIAL MASTER POPPITI: Yes, please do. | 18  propose that, then, please? |
| 19  MS. ROMAN: With regard to topic four, | 19  MS. ROMAN: Fundamentally, our concern |
| 20  which states, "Any infringement analyses, inspections, | 20  is that we don't want to have to have fact witnesses |
| 21  investigations, or testing," etcetera, we had proposed | 21  testifying as to those areas for which expert testimony |
| 22  that we would produce -- we would rely on expert | 22  is the appropriate testimony in Delaware, specifically, |
| 23  testimony except to the extent that this topic seeks | 23  infringement contentions, invalidity contentions, and, |
| 24  information regarding retention of counsel, the issues | 24  also, this would fall with regards to claim construction, |

HEARING

10 (Pages 34 to 37)

Page 34

1   any of the topics that relate to claim construction
2   before the claim construction order has been issued.
3           And to the extent that all of the topics
4   that I have identified might sweep in some of that, it
5   won't matter because the parties have agreed that
6   questioning regarding the contention is improper until
7   expert testimony. And then we can provide the fact
8   witnesses and hope that, during the depositions, there is
9   no disagreement as to whether certain questioning goes to
10  the contentions or not.
11          SPECIAL MASTER POPPITI: Well, let me
12  suggest this: If you are able to forge that agreement,
13  and certainly understanding that questioning a fact
14  witness as to the factual basis of contentions may be
15  fair -- you would agree with that; correct?
16          MS. ROMAN: Yes. I understand that,
17  Your Honor.
18          SPECIAL MASTER POPPITI: If you forge
19  that agreement and you find yourself in a deposition
20  where the agreement is coming off track, in light of the
21  fact that I am dealing with a protective order and it is
22  not a function of my responding to an instruction not to
23  answer, it would be really to get you back on track with
24  your agreement, then I certainly would be available to do

Page 35

1   that.
2           But Mr. Christenson, what I am hearing,
3   it makes some sense, does it not?
4           MR. CHRISTENSON: Your Honor, it makes
5   some sense, but I have a concern that I would like to
6   express.
7           SPECIAL MASTER POPPITI: Sure.
8           MR. CHRISTENSON: That is that the
9   contention topics are three specific topics in our
10  notice, and those are topics eight, 10, and 11.
11          SPECIAL MASTER POPPITI: Just a second.
12          MR. CHRISTENSON: What I am
13  understanding Miss Roman to say is that they want to
14  treat, under some agreement that does not exist, as
15  covering contention issues, you know, the many, many
16  topics that they identified in the motion for protective
17  order.
18          MS. ROMAN: What I really want to do is
19  make sure that the protection that's provided for topics
20  eight, 10, and 11 isn't circumvented by virtue of the
21  breath of another topic being brought on us to sweep in
22  that information. That's all I am trying to make sure
23  of.
24          MR. CHRISTENSON: I think it's, to the

Page 36

1   extent we ask on a contention issue and we have agreed
2   that contention issue will be deferred to experts, we
3   can't, obviously, use a different topic number to get the
4   contention issue resolved by a fact witness. So, I don't
5   think that's going to be a problem.
6           I am just trying to avoid a situation
7   where there is some suggestion that some of these topics,
8   other than eight, 10, and 11, are somehow part of an
9   agreement.
10          MS. ROMAN: Perhaps also adding topic
11  nine to the extent it pertains to specific defenses of
12  non-infringement -- well, you are saying that's not a
13  specific contention?
14          MR. CHRISTENSON: Right. Fact nine is
15  the basis, so, again, I think that's seeking factual
16  information.
17          MR. AMBROZY: If we were to ask the
18  witnesses about what they knew existed before the patents
19  were filed, what technology they knew before the patents
20  were filed, I think that's a totally proper factual
21  inquiry, although it might -- it might be swept under
22  invalidity, it still is not part of the invalidity
23  contention. Even if it was, it still is the fact
24  witness' or ViewSonic's knowledge of a fact in existence,

Page 37

1   so I think that's a proper topic.
2           MS. ROMAN: Right. I agree with that.
3   Whereas, the contrary, which would be: Why do you
4   contend that this particular reference is prior art?
5           SPECIAL MASTER POPPITI: That's
6   different.
7           MR. CHRISTENSON: Right. I agree, Your
8   Honor.
9           SPECIAL MASTER POPPITI: That's
10  completely different. It sounds to me like you are both
11  on the same page.
12          MS. ROMAN: Yes. I think that that
13  works, and if Mr. Christenson is willing to go with that
14  understanding as he just voiced it and we just voiced it,
15  then I will as well. It would be the contentions are
16  topics -- what was it -- eight, 10, and 11?
17          SPECIAL MASTER POPPITI: Eight, 10, and
18  11.
19          MS. ROMAN: For which we could rely on
20  expert testimony except to the extent that 10 and 11
21  seeks factual basis as we discussed.
22          SPECIAL MASTER POPPITI: Yes.
23          MS. ROMAN: And that, to the extent that
24  there is any disagreement during the depositions as to

Page 38

1  whether or not questioning is going astray from this
2  agreement, then we can seek Your Honor's assistance.
3       SPECIAL MASTER POPPITI: Yes.
4       MR. CHRISTENSON: That's fine, Your
5  Honor.
6       SPECIAL MASTER POPPITI: Okay.
7       MR. MERIDETH: I would agree with that
8  also as well on behalf of the Tatung defendants.
9       SPECIAL MASTER POPPITI: Thanks,
10 Mr. Merideth.
11      MS. ROMAN: Sorry. For the topics that
12 related to -- or what we believed required claim
13 construction in order to properly respond to questioning
14 of -- under them, that was topics, I believe, one, five,
15 27, and 29.
16      SPECIAL MASTER POPPITI: Okay. Go
17 ahead, please. By "one," that is the newly designated
18 one?
19      MS. ROMAN: Yes, Your Honor.
20      SPECIAL MASTER POPPITI: Okay.
21      MS. ROMAN: I believe that the terms
22 that are included in it are flat panel display, flat
23 panel display device, and housing, although flat panel
24 display, I think we might actually have an agreed

Page 39

1  construction on, somebody can correct me if I am wrong.
2       MR. CHRISTENSON: We do.
3       MS. ROMAN: So, flat panel display
4  device in topic No. 1. I believe that's also in topic
5  No. 5.
6       SPECIAL MASTER POPPITI: Just one second
7  to make sure I am on the same page with you. I
8  understand there is an agreement, but I am looking at --
9       MR. CHRISTENSON: Your Honor, I think
10 there was a little misunderstanding. When you said "new
11 topic one," actually, that would be supplemental topic
12 31.
13      SPECIAL MASTER POPPITI: Thank you.
14      MR. CHRISTENSON: I think Ms. Roman is
15 working from the original ordering.
16      SPECIAL MASTER POPPITI: Thank you.
17 Then that's why I was not reading the right language. Go
18 ahead, please.
19      MS. ROMAN: So, topic No. 1 includes the
20 language, quote, Seeking the structure of the visual
21 display products, the method of assembling visual display
22 products, including the structure and method of
23 assembling the flat panel display and flat panel display
24 device contained in each of those visual display

Page 40

1  products. The flat panel display device is one of the
2  terms that has been raised for construction. And to the
3  extent that this topic would require a witness to respond
4  to questions that involve proposed construction, I think
5  it's premature, as Your Honor has previously indicated.
6       Otherwise, other than that --
7       SPECIAL MASTER POPPITI: I am still
8  flipping through documents here to look at -- to look and
9  see where No. 1 is because it is not No. 1 -- what number
10 was used to -- in the re-numbering?
11      MS. ROMAN: I think it was 31.
12      SPECIAL MASTER POPPITI: And that's,
13 perhaps if you could tell me what submission and what
14 exhibit it's under? I am looking at an LPL submission,
15 and I do not have --
16      MS. ROMAN: Your Honor, I believe the
17 topic No. 1 I am referring to is actually the original
18 topic No. 1.
19      SPECIAL MASTER POPPITI: Okay. It is.
20 It begins, "The structure of the visual display product"?
21      MS. ROMAN: Yes, Your Honor. I pointed
22 out flat panel display device is one of the terms that
23 has been breached for construction. It also includes
24 fastening parts, fastening holes and frames involved in

Page 41

1  breach for construction.
2       Separate and apart from --
3       SPECIAL MASTER POPPITI: Let me hear a
4  response with respect to topic No. 1.
5       MR. AMBROZY: Our position is as long as
6  the terms, if they are in the ordinary course of what one
7  ordinarily skilled would understand those terms and they
8  are proper, and also as the terms relate to products that
9  are sold by the defendants, we think the terms are proper
10 to be used, and in that -- they basically describe the
11 inventions, therefore, allows us to tie the inventions to
12 the accused products, there is no other way, Your Honor,
13 to really walk through an accused product without having
14 some sort of identification of the elements within that
15 product.
16      SPECIAL MASTER POPPITI: I don't see any
17 way that that can be done and I expect that the witness
18 is not being deposed for purposes of having that witness
19 do a -- or commit the party to a claim, a definition of a
20 claim or a view as to what your ultimate position with
21 respect to the construction of the claim is.
22      MR. AMBROZY: That's correct, Your
23 Honor.
24      MS. ROMAN: I appreciate that

HEARING

12 (Pages 42 to 45)

Page 42

1    clarification, Your Honor, because that's precisely what
2    I proposed last to Mr. Christenson.
3          SPECIAL MASTER POPPITI: That's what
4    should be going on, I would expect, because, otherwise,
5    you are all going to be using sign language during the
6    course of these depositions.
7          MS. ROMAN: It could actually be more
8    effective at times, perhaps.
9          SPECIAL MASTER POPPITI: You may be
10   right.
11         MS. ROMAN: I simply wanted
12   clarification on that, and it sounds like we are all in
13   accord that as long as those topics aren't seeking a
14   witness to testify regarding the interpretation of those
15   claim terms or committing to an interpretation, then that
16   clarifies the concern.
17         SPECIAL MASTER POPPITI:
18   Mr. Christenson?
19         MR. CHRISTENSON: Yes, Your Honor. I
20   think that -- that, as Mr. Ambrozy said, that's not our
21   intent. I am not sure what communication Ms. Roman was
22   referring to with me.
23         MS. ROMAN: It was the one I sent to you
24   yesterday, Cass, regarding topics 1, 27, and 29.

Page 43

1          MR. CHRISTENSON: I don't think that
2    issue was raised. We are not trying to make the fact
3    witness into an expert, Your Honor.
4          SPECIAL MASTER POPPITI: Thank you.
5          MS. ROMAN: Can we resolve
6    clarification, perhaps, then, on topic five?
7          SPECIAL MASTER POPPITI: Yes. Any and
8    all technical, economic, or other, etcetera?
9          MS. ROMAN: Yes, Your Honor, that's the
10   correct topic.
11         SPECIAL MASTER POPPITI: Okay.
12         MS. ROMAN: And perhaps this is just
13   different interpretations of it, but the way I read topic
14   five, it asks for any of that information concerning the
15   structures and methods of assembly claimed in the
16   patents-in-suit and any comparisons or analysis conducted
17   by you or for you concerning the mounting of flat panel
18   displays or flat panel display devices used in visual
19   display products, etcetera.
20         We read the entire topic No. 5, or I
21   understood it to be seeking mounting structures and
22   methods of assembly and comparisons or analysis regarding
23   those mounting structures or assemblies that are claimed
24   in the patents-in-suit, and I think that goes directly to

Page 44

1    the claim construction.
2          MR. AMBROZY: Your Honor, for the same
3    reason that we believe the terms were proper in topic
4    one, they are proper in topic five. Again, it's just to
5    point the defendants so they can properly prepare their
6    witnesses as to what the witness should be able to
7    testify on, which is the mounting structures and the
8    methods of assembly.
9          MR. CHRISTENSON: I specifically
10   informed Ms. Roman of that, that that's our intent, and
11   the fact that there may be a reference in there to the
12   claimed invention in the patent wasn't -- was not
13   intended to be a result-oriented analysis.
14         There are topics in the ViewSonic's
15   notice that also refer to what's claimed in the patents;
16   for example, topic 23A. But, in any event, I clarified
17   for Ms. Roman that our intent is to focus, as Mr. Ambrozy
18   said, on the relevant structures and methods of assembly.
19   There are many other structures and assembly-related
20   issues that are not at issue in this case, so we are not
21   trying to make it that broad. We are trying to make it
22   relevant to the types of structures and assembly-related
23   facts that are relevant to these claims.
24         MS. ROMAN: I guess my concern was that

Page 45

1    it's speaking of technical, economic, or other advantages
2    or benefits or disadvantages concerning the inventions,
3    concerning the structure, the methods of assembly claimed
4    in the patents-in-suit. Until we have got definition as
5    to what the invention as claimed in the patents-in-suit
6    are, how can our witnesses testify about the technical,
7    economic, or other advantages of those?
8          MR. AMBROZY: It's our opinion that
9    those witnesses would be able to testify because they are
10   the 30(b)(6) and/or fact witnesses that work at
11   ViewSonic. They can testify about the structure used in
12   the various devices that they sell.
13         MR. CHRISTENSON: Your Honor, do you
14   have ViewSonic's deposition topics in front of you?
15         SPECIAL MASTER POPPITI: If you -- I
16   know that you referenced them, so if you point me to one
17   of your exhibits, that would be helpful.
18         MR. CHRISTENSON: Yes, Your Honor. I
19   believe that in our -- I am just looking to see if I can
20   find the copy of the notices -- I think it was in our
21   March 2nd -- I am sorry, our March 12th letter, I believe
22   it was maybe Exhibits 5 and 6, perhaps -- I believe
23   Exhibits 3, 4, 5, and 6 to our March 12 letter include
24   the four deposition notices from ViewSonic.

HEARING

Page 46

1    SPECIAL MASTER POPPITI: It does.
2        MR. CHRISTENSON: And I think it would
3    then be Exhibit 6, Your Honor, if you could find that
4    exhibit.
5        SPECIAL MASTER POPPITI: I have it in
6    front of me.
7        MR. CHRISTENSON: If you could please
8    turn to topic 20B?
9        SPECIAL MASTER POPPITI: 20B?
10        MR. CHRISTENSON: I am sorry, 20C, as in
11    Charlie.
12        SPECIAL MASTER POPPITI: 20C?
13        MR. CHRISTENSON: Yes, Your Honor.
14        SPECIAL MASTER POPPITI: I have 20C in
15    front of me.
16        MR. CHRISTENSON: Your Honor, I think if
17    you read that topic that was served on us and for which
18    we designated a witness, I can't -- I really cannot
19    understand the objection.
20        SPECIAL MASTER POPPITI: I am looking at
21    20C, and although it's not a mirror, it's pretty darn
22    close, is it not?
23        MS. ROMAN: I am sorry, what number am I
24    looking at?

Page 47

1        SPECIAL MASTER POPPITI: 20C, "Any
2    advantages, disadvantages, benefits, or detriments,
3    whether technical, financial, or legal, pertaining to
4    any," etcetera.
5        MR. CHRISTENSON: And it refers
6    specifically to the inventions claimed in the patent.
7        SPECIAL MASTER POPPITI: Of any of the
8    asserted patents.
9        MR. CHRISTENSON: Right. Which is what
10    they are now complaining about.
11        SPECIAL MASTER POPPITI: That's why I
12    said, It's certainly not a mirror, but it's virtually
13    identical.
14        MS. ROMAN: Well, notwithstanding that I
15    believe that the company that invented it would be in a
16    better position to discuss whether there were any such
17    advantages or disadvantages and knows what their
18    invention was that they created, I do see the --
19        SPECIAL MASTER POPPITI: I understand
20    they may be in a better position to do that, but that
21    doesn't preclude them from asking the question and having
22    somebody say, I don't know.
23        MS. ROMAN: Right. So, with respect to
24    topic five, then, I think it's, based on this, it's a

Page 48

1    simple resolution of what we have already discussed,
2    which is that topic five is not seeking a ViewSonic
3    witness to provide their interpretation of claim terms or
4    to be committed to any particular claim terms.
5        SPECIAL MASTER POPPITI: I think it
6    would have to be, would it not, counsel?
7        MR. CHRISTENSON: Yes, Your Honor. I
8    don't think that topic calls for a definitive claim term.
9        SPECIAL MASTER POPPITI: As long as
10    that's the understanding, then that topic can stand as it
11    is written.
12        MS. ROMAN: Your Honor, I think that
13    resolves all of the topics that related to the
14    infringement or invalidity or claim construction issues.
15        SPECIAL MASTER POPPITI: Okay.
16        MS. ROMAN: I believe there is only two
17    other areas that the motion raised, one of which is the
18    issue regarding the date restriction.
19        SPECIAL MASTER POPPITI: Yes.
20        MS. ROMAN: For many of the topics, LPL
21    has listed a date of January 1, 2000, and then, for many
22    of the topics, there is no date restriction at all. And
23    we raise the concern that since the patents did not even
24    issue until December 24th of 2002, we would request the

Page 49

1    -- in our motion, we requested May 28th, 2004, which is
2    the date ViewSonic contends it first learned of the
3    patents-in-suit, but having read LPL's opposition, we
4    recognize and understand that they are entitled to --
5        SPECIAL MASTER POPPITI: They are
6    entitled to test that.
7        MS. ROMAN: Yes, Your Honor. We would
8    like to consider limiting the testimony to December 24th,
9    2002, which was the date on which the patents issued.
10    It's the earliest date that could come into play on these
11    topics.
12        MR. AMBROZY: Again, I don't see the
13    logic there because if we are asking about what ViewSonic
14    knew or what was known in the industry, we would want to
15    know before the patent, the date Ms. Roman gave. I think
16    the relevant dates are back in 1997, 1998.
17        MR. CHRISTENSON: Your Honor, just to
18    add on to that, I think the easiest way to resolve this
19    and show that the argument is not persuasive is if you
20    would turn to Exhibit 5 to our submission, which is
21    ViewSonic's deposition notice concerning topics 13
22    through 18.
23        SPECIAL MASTER POPPITI: Just a moment.
24    I am at -- just a moment.

HEARING

14  (Pages 50 to 53)

Page 50

1    MR. CHRISTENSON: Specifically, topic
2 13, Your Honor.
3    SPECIAL MASTER POPPITI: I am looking at
4 your submittal, and I am looking at Exhibit 5, and I
5 don't see a 13. It starts at 19 on page 7; am I correct?
6    MR. CHRISTENSON: That could be right,
7 Your Honor. Maybe it's the exhibit before that.
8    SPECIAL MASTER POPPITI: I will look at
9 that one. It is the one before that. 13 what, please?
10    MR. CHRISTENSON: Yes. Essentially
11 topic 13 which has subparts A through W.
12    SPECIAL MASTER POPPITI: It does.
13    MR. CHRISTENSON: It seeks a broad range
14 of financial information, Your Honor, from LPL. Most of
15 the subtopics have no date limitation; however, when
16 there is a date limitation, for example, topic 13 P, as
17 in Paul.
18    SPECIAL MASTER POPPITI: That's 1998?
19    MR. CHRISTENSON: Yes, Your Honor.
20 Similarly, topic 13 S, as in Sam, topic 13 T, as in Tom,
21 goes back to 1998. I had a specific discussion with
22 ViewSonic in January proposing that we agree on a time
23 frame, and, initially, ViewSonic's counsel expressed
24 interest in doing so, but very shortly thereafter, stated

Page 51

1 they would not agree to a time frame.
2    So, I can't see how they could possibly
3 contend now that this earlier time frame would not be
4 relevant and that it would be inappropriate to have more
5 open-ended topic time periods when those are the time
6 periods that they used in their notice.
7    Our notice is less broad, Your Honor,
8 than their own notice.
9    SPECIAL MASTER POPPITI: Any other
10 comments, please?
11    MS. ROMAN: Yes, Your Honor. Just for
12 purposes of, as I understand it, actual profits aren't
13 being sought on this case and it's limited to reasonable
14 royalty damages, and reasonable royalty damages would be
15 considered at the time that the patents issued and not
16 before then.
17    SPECIAL MASTER POPPITI: Yes.
18    MS. ROMAN: We talking about having a
19 witness prepared to go through two years before that on
20 sales information of products that wouldn't come into
21 play, for example, in this case, just seems an undue
22 burden for information that can't actually be used in
23 this case.
24    SPECIAL MASTER POPPITI: I agree. Now,

Page 52

1 the other question, however, is, and Mr. Christenson, you
2 will have to point me to -- you took the position with
3 respect to the development of certain technology. The
4 question was: How do you compare?, was it not?
5    MR. CHRISTENSON: Yeah. There are a
6 couple questions, Your Honor. One question is: What
7 were the level of sales for products that ViewSonic sold
8 before they began to use our technology, and what were
9 the sales after they began to use our technology? I
10 think that's a relevant point of comparison, for example.
11 That's with respect to damages.
12    With respect to technology, I think that
13 raises a host of other issues, but I think that Ms. Roman
14 is targeting the time period with respect specifically to
15 reasonable royalty questions on the amount of sales.
16    SPECIAL MASTER POPPITI: So, what date
17 would you propose? It's certainly not going to be
18 open-ended; correct? You don't prepare a witness to say
19 "from the beginning of time."
20    MR. CHRISTENSON: That's true, Your
21 Honor. I think that, you know, if we could go back to --
22 I think the time period that we used typically is January
23 1, 2000. They go back to an earlier time period, as I
24 just mentioned, and I just showed it to you, so you

Page 53

1 know, they went back to 1998. I would suggest we should
2 be able to go back to 1998. If we can go back to 1998, I
3 would think we could go to January 1, 2000.
4    MS. ROMAN: Cass, I wasn't privy to the
5 discussions you mentioned earlier about this proposed
6 compromise on a date. I am sure that went to document
7 production and issues, but was January 1, 2000, the date
8 that you were proposing?
9    MR. CHRISTENSON: It went to the
10 deposition topics, and I can't recall right now
11 specifically what the date was.
12    MS. ROMAN: So it would seem to me that
13 a year's worth of sales before the patent would be more
14 than enough, particularly given that, you know, most of
15 this technology was just starting to come into the market
16 during that time period.
17    MR. CHRISTENSON: My proposal had been
18 that we should pick a uniform date that would apply all
19 the way around, and the two dates that were on the table
20 were 1998, which was your date, and our date, which was
21 2000.
22    MS. ROMAN: I also don't want to be in a
23 position to having a date agreed to for the depositions
24 that doesn't reflect what had been agreed to for the

Page 54

1  production of documents. I am a little concerned that I
2  am at a disadvantage. I don't know what has been
3  produced for purposes of documents on this information.
4         MR. CHRISTENSON: I think LPL has
5  produced back to the year 2000. I think we have
6  attempted to get information from ViewSonic back to
7  sometime before December, 2002, but I think that, so far,
8  ViewSonic has refused to provide that discovery, and I am
9  not sure if Tatung is providing it back to before
10 December 2002.
11        SPECIAL MASTER POPPITI: Mr. Merideth?
12 I mean, that would be helpful. It mean, it does make
13 sense to parallel what has, either what has been
14 produced -- there is no application, that I am aware of,
15 to -- unless this is part of the clean up they had not
16 done, but it seems to me to use the same date and time
17 frame makes sense.
18        MR. MERIDETH: I agree, Your Honor.
19        SPECIAL MASTER POPPITI: So, do you have
20 in mind Tatung production with respect to the issue we
21 are talking about?
22        MR. MERIDETH: I think that, if we are
23 talking about the sales, that we have done so.
24        MS. ROMAN: Your Honor, I believe

Page 55

1  Mr. Christenson was correct with respect to ViewSonic,
2  that it went to December 1, 2002.
3         SPECIAL MASTER POPPITI: We will use --
4         MR. CHRISTENSON: Your Honor, that was
5  the point -- that's a point of dispute. We feel it
6  should go back to at least January 1st of that year.
7         SPECIAL MASTER POPPITI: I understand --
8  is that before me right now? If it is --
9         MR. CHRISTENSON: I think it is, Your
10 Honor.
11        MR. AMBROZY: Not to throw a monkey
12 wrench in all this, but in regards to the validity
13 aspect, which I believe is at least No. 8, we would
14 respectfully request that the date be December of 1997.
15        MS. ROMAN: Your Honor, I am okay with
16 that.
17        SPECIAL MASTER POPPITI: Well, with
18 respect to the sales, we will go back to the time frame
19 for which production has been provided, and if I have
20 before me an application to make that date earlier, then
21 what I am going to ask be done is if, counsel, if you can
22 make sure that you tell me where that is in terms of the
23 filings that you have made so I can check and see where
24 it is in terms of decision making.

Page 56

1         MR. CHRISTENSON: Your Honor, we can do
2  that. I think what I should probably do as a first step
3  is go back and look at the December 28 transcript. I
4  think I raised it at that time.
5         SPECIAL MASTER POPPITI: You may have,
6  but I just don't really have it in mind at this point.
7  We can deal with it -- if you will do that for me
8  tomorrow, we will deal with it on Friday.
9         MR. CHRISTENSON: Yes, Your Honor.
10        MS. ROMAN: Thank you, Your Honor.
11        I guess that takes us just to the final
12 issue in the motion, which also raises a couple of
13 different topics, but I will give you the topic numbers.
14        SPECIAL MASTER POPPITI: Okay.
15        MS. ROMAN: 13, 14, 15, 19, 20, 25, and
16 29.
17        SPECIAL MASTER POPPITI: Okay.
18        MS. ROMAN: With respect to these
19 topics, we are not seeking a preclusion on the entirety
20 of the topics. It's that each of these topics sweeps in
21 a concern regarding testimony that would have to be given
22 about ViewSonic's customers, resellers, distributors of
23 its products.
24        We have got over 230 products, I

Page 57

1  believe, or somewhere in the neighborhood of 230 products
2  that ViewSonic has identified and hundreds of customers
3  that sell these products. To the extent that these
4  topics are seeking a witness to testify as to
5  correspondence between ViewSonic and each of those
6  hundreds of customers regarding each of those 230
7  products, we are concerned that it's not only an undue
8  burden for ViewSonic to have to do it, but that is not
9  really going to yield information that relates to any
10 claim in this case that really belongs in the case.
11        I understand the concern that LPL has is
12 that this kind of information goes to the issue of
13 indirect infringement for inducement, but I believe, as
14 the parties have previously discussed with Your Honor,
15 LPL has an entitlement to a single recovery from
16 ViewSonic. That single recovery would be coming from any
17 direct infringement which necessarily would have to be
18 proven before even getting to indirect infringement.
19        SPECIAL MASTER POPPITI: Right.
20        MS. ROMAN: To the extent that this
21 discovery -- or to the extent these topics seek discovery
22 that goes solely to indirect infringement, we just are
23 concerned that the burden that would be required to
24 prepare for it is stronger than the amount of relevant

HEARING

16 (Pages 58 to 61)

Page 58

1  information that could be had because it can only go to
2  indirect infringement.
3          SPECIAL MASTER POPPITI:
4  Mr. Christenson.
5          MR. CHRISTENSON: Yes, Your Honor.
6  Thank you.
7          First of all, we have -- we have
8  addressed this issue, I think this came up at the
9  December 28th hearing as well, and as we explained at
10 that time, ViewSonic contends that it does not directly
11 infringe any of these patents. And although there may be
12 only a single recovery, there are two separate theories
13 for which we can attain a recovery. One theory is direct
14 infringement by ViewSonic and another theory is any
15 inducement of infringement by ViewSonic.
16         Similarly for Tatung, we are going to
17 seek liability, including liability for inducement by
18 Tatung. And I think we are entitled to explore the facts
19 and get the information we need to be able to pursue
20 those theories at trial. ViewSonic does not concede that
21 it directly infringes, so I don't know how it can have it
22 both ways.
23         And in terms of the scope and the breath
24 and the burden, again, Your Honor, if you could please

Page 59

1  look at exhibit, I believe it's Exhibit 4, ViewSonic's
2  deposition notice, topic 15B.
3          SPECIAL MASTER POPPITI: Just a second.
4          MR. CHRISTENSON: Topic 15B.
5          SPECIAL MASTER POPPITI: 15B?
6          MR. CHRISTENSON: Yes, and 15C. Your
7  Honor, this is really a theme. You know, they want this
8  information from us, we have to provide a witness, and
9  then after they get the information from us, they turn
10 around and complain that this is not appropriate.
11         This information from us is much less
12 relevant to any issue with respect to our sales and our
13 distribution chain of our products, and, yet, they
14 somehow think they are entitled to that information.
15 When we seek it for a relevant purpose, they complain
16 about it. And topic 15B and 15C, Your Honor, are not
17 limited in terms of -- if you look at 15B, for example,
18 it's not limited to any specific products. It's very
19 open-ended and very broad.
20         SPECIAL MASTER POPPITI: Well, at this
21 juncture, you do have alternative theories of recovery,
22 and there certainly is not going to be an agreement that
23 there is direct infringement.
24         I mean, that's a fair statement, is it

Page 60

1  not?
2          MS. ROMAN: Yes, Your Honor, that is a
3  fair statement. But the alternative theory of
4  infringement that they are working from only comes into
5  play if they have proven the first theory, which is
6  direct infringement. So, regardless of whether we agree
7  that we directly infringed, the point is that they have
8  to -- they have to get to that juncture before even
9  getting to the indirect infringement anyway. So indirect
10 infringement really falls out of the case. I guess
11 that's where I am confused.
12         SPECIAL MASTER POPPITI:
13 Mr. Christenson, why don't you speak to that?
14         MR. CHRISTENSON: Sure. I can give you
15 a specific example.
16         SPECIAL MASTER POPPITI: I expect you
17 would.
18         MR. CHRISTENSON: That is, we
19 understand, from documents that we have obtained, that
20 ViewSonic has customers that received shipments directly
21 from ViewSonic's manufacturers who make ViewSonic
22 products and ship the ViewSonic products directly to the
23 customer. And, so, ViewSonic, itself, may not have
24 directly imported that product into the United States,

Page 61

1  but they may have induced the customer to import the
2  product. So the customer would be the direct infringer
3  and ViewSonic would be the indirect infringer,
4  potentially.
5          MS. ROMAN: I am sorry. Maybe I didn't
6  understand that. ViewSonic doesn't have manufacturers.
7  They get these products from OEMs.
8          MR. CHRISTENSON: Right, OEM
9  manufacturers that supply the products.
10         MS. ROMAN: I am sorry. Are you saying
11 that you have, for example, Best Buy, which is a customer
12 of ViewSonic, do you have information that shows that
13 Best Buy purchases a product from maybe Jean Company, one
14 of the OEMs, directly, but it's not a ViewSonic product,
15 but because one of the retailers that sells our product
16 also buys products directly from OEMs, from whom we also
17 happen to buy a product, do you want to know if we
18 induced them to do that?
19         MR. CHRISTENSON: We have an
20 understanding that ViewSonic products made by OEMs are
21 shipped directly from the OEMs, in some cases, to
22 ViewSonic's customer in the U.S. and ViewSonic could
23 certainly be liable for inducing that customer to import
24 that product if it infringes.

HEARING

Page 62

1     MS. ROMAN: If I am not mistaken, and I
2   am happy to follow-up on this, but any such sales are
3   reflected in the sales information that ViewSonic
4   provided.
5     MR. CHRISTENSON: I tried to confirm
6   that with Mr. Miller, and he told me to take a deposition
7   to find that out. That's what I am trying to do, Your
8   Honor.
9     SPECIAL MASTER POPPITI: If that's what
10  he told you to do, that's certainly what this is designed
11  to do, and if it's designed to do that, it is an
12  alternative theory, I am going to permit it.
13    MR. CHRISTENSON: Thank you, Your Honor.
14    MS. ROMAN: Your Honor, we need to have
15  clarification on the scope, though. As I mentioned,
16  there is 230 products, and ad nauseam correspondence,
17  perhaps, with each of 100 different customers regarding
18  these products that have nothing to do with the standard
19  we are talking about --
20    SPECIAL MASTER POPPITI: I am concerned
21  about the scope, and I am not quite sure, as I am sitting
22  here without the benefit of your respective thoughts on
23  scope, how to address it, so why don't you see if you
24  can't help me a bit here on scope.

Page 63

1     MR. CHRISTENSON: Your Honor, I think I
2   can offer a suggestion. First of all, as I pointed out,
3   topic 15B is equally broad and is not limited in any way.
4   It talks about all the meetings, all the distribution
5   channels, and all the ways that all of LPL's products are
6   sold. So this goes both ways, Your Honor. And we went
7   forth with the deposition of our witness under this type
8   of a topic.
9     But my suggestion is: We, obviously,
10  are going to try to direct these questions for our own
11  benefit to make the questions relevant and useful and we
12  are not going to try to delve off into -- in fact, we
13  don't have the time, even if we had the intent, which we
14  don't, to delve off into unnecessary or irrelevant
15  information.
16    And so, just as I would hope that
17  ViewSonic, when they deposed our witness, thought that
18  they kept it focused on the appropriate issues, we intend
19  to keep the questions focused on the appropriate issues,
20  and I suspect if we don't, then the witness won't know
21  the answer, and then, you know, you would decide, if the
22  witness did know the answer, whether the question was
23  appropriate. But I don't know how we can do this on a --
24  without the depositions happening, I don't know how we

Page 64

1   can pin anybody down to a specific question right now.
2     MS. ROMAN: And I guess I would offer
3   that, you know, ViewSonic certainly will talk about --
4   its witnesses will testify about the general business
5   model and the marketing strategy and the types of
6   communications it normally does have with its customers,
7   and to the extent that counsel has specific documents
8   showing correspondence or information regarding specific
9   correspondence that it wants to question the witness
10  about, you know, working from a disadvantage here, the
11  witness would have to be thinking off the top of their
12  head or working from any document put in front of them.
13    But, otherwise, I mean, this
14  correspondence, documents that haven't been produced
15  because it was the subject of a prior motion, so --
16    SPECIAL MASTER POPPITI: Say that again.
17    MS. ROMAN: This type of correspondence,
18  all the correspondence between the 100 customers and 230
19  products isn't documents that have been produced because
20  it was the subject of a motion.
21    SPECIAL MASTER POPPITI: Okay.
22    MS. ROMAN: I guess my concern is -- I
23  understand what Mr. Christenson is saying, but I don't
24  want to be in a position where we are later at a

Page 65

1   disadvantage for not having produced documents that we
2   haven't been required to produce and not having a witness
3   testify as to those documents or having a witness have to
4   testify about stuff that has not been part of the case.
5   And I guess I would ask that Mr. Christenson, if he
6   could, agree to specific correspondence that they have
7   identified as stuff that they can talk about, but if we
8   are talking about broad sweeping, Tell me every
9   communication you have had with X customer, tell me every
10  communication you have had with Y customer, that that's
11  not the sort of thing that we are going to be getting
12  into.
13    MR. CHRISTENSON: Your Honor, as I said,
14  I am going to ask reasonable questions, and I don't know
15  what else I can say about that.
16    SPECIAL MASTER POPPITI: Well, here is
17  what I want to do at this juncture. I am not going to do
18  anything to restrict the subject matters at this point.
19  I am mindful of the fact that there is that motion that
20  has to be resolved, and what I'd like to do is circle
21  back to these topics, that is, 13, 14, 15, 19, 20, 25,
22  and 29 on Friday.
23    MR. MERIDETH: Your Honor, let me just
24  check one thing, if I might.

HEARING

18 (Pages 66 to 69)

Page 66

1          MS. ROMAN:  I think I know what you are
2  checking and I think the problem is the date of this
3  witness' deposition.
4          MR. AMBROZY:  This goes back to your
5  earlier point, Your Honor, about why not earlier.  We
6  have got depositions scheduled on these topics and
7  ViewSonic has actually designated witnesses on these
8  topics.
9          SPECIAL MASTER POPPITI:  When?
10         MR. AMBROZY:  For Wednesday and -- I am
11  sorry, for Thursday and Friday this week.
12         SPECIAL MASTER POPPITI:  Thursday and
13  Friday this week.  Just give me a moment.
14         Counsel, I am just going to have to let
15  these go forward, then, and it's going to -- if the
16  depositions, themselves, create issues that I need to
17  deal with, I will just have to make myself available.
18         MR. CHRISTENSON:  Very well, Your Honor.
19         MS. ROMAN:  Thank you, Your Honor.  I
20  think that was the last issue in our motion.  I really,
21  again, appreciate you taking the time and everybody
22  taking the time to allow us to be heard.
23         SPECIAL MASTER POPPITI:  Okay.  Any
24  other matters, then, please, for this evening?

Page 67

1          MR. MERIDETH:  Yes, Your Honor.
2          SPECIAL MASTER POPPITI:  Yes.
3          MR. MERIDETH:  Yesterday, there was an
4  issue raised by LG Phillips to the effect that Tatung
5  America had created CAD CAM drawings and it produced CAD
6  CAM drawings and it demand that they produce all CAD CAM
7  drawings for all Tatung America products.
8          We were --
9          SPECIAL MASTER POPPITI:  Is this a March
10  12 correspondence?
11         MR. MERIDETH:  Yes, sir.  We expressed
12  some consternation about that because we were unaware
13  that there were any CAD CAM drawings and it represented
14  and still represent that Tatung America does not create
15  CAD CAM drawings for its products.
16         We asked for a bates number.  That Bates
17  No. turned out to be a non-existent bates number.  We
18  tried to track down all Bates numbers.  We now have.  And
19  it turns out that it was not a CAD CAM drawing created by
20  Tatung America, which is patently obvious when you look
21  at the document.
22         In fact, it was an engineering drawing
23  contained in a service manual provided by a third-party
24  vendor, and it was clearly designated as a drawing

Page 68

1  created by a Top View Display Technologies, Inc.
2          It seems to me, and I am a bit -- I must
3  say I am very frustrated over this.  We were unable to
4  address the accusation, which was a very serious one,
5  made yesterday, because it was made without providing any
6  written notice.  The Bates No. -- I mean, I tried to go
7  find the document during the call.  The Bates No. was
8  wrong.  And then it turns out that it's not a document
9  that was created by Tatung America at all.
10         And, so, we have a serious allegation
11  that's been made, no attempt to meet and confer.  This
12  clearly would have been straightened out if someone would
13  have called up and said, Hey, what's this drawing?  We
14  could have gotten to the bottom of it.  On top of that, I
15  requested further clarification and I couldn't get a
16  response.
17         So, I am very frustrated over that and I
18  am very frustrated that a false impression was created
19  yesterday by LG Phillips that our representations, as to
20  what had been produced, were not accurate.
21         MR. AMBROZY:  Your Honor, if I may
22  respond?
23         SPECIAL MASTER POPPITI:  Before you
24  respond, there was no impression created one way or the

Page 69

1  other because I simply had one side of -- one side of the
2  view with respect to the issue that was raised.  So,
3  Mr. Ambrozy.
4          MR. AMBROZY:  Your Honor, I believe that
5  Your Honor read the Bates No. from the document.
6          SPECIAL MASTER POPPITI:  I did.
7          MR. AMBROZY:  And I did not have it in
8  front of me when you read it, Your Honor, but that Bates
9  No., I believe, was directly from the document that was
10  included in the letter that we sent to Your Honor.
11         SPECIAL MASTER POPPITI:  Well, the Bates
12  No., and I don't remember, as I am sitting here, which
13  number I read in, but I read -- as you know, there are
14  two numbers in the body of the letter, itself.
15         MR. MERIDETH:  I believe that's correct,
16  Your Honor.
17         SPECIAL MASTER POPPITI:  And I read at
18  least one if not both of those Bates Nos.  I seem to
19  recall I read one.
20         MR. AMBROZY:  I believe the way we
21  characterized it was it was an exploded view diagram/CAD
22  CAM, so we were not specifically stating that that
23  represented a CAD CAM drawing.  We were just bringing to
24  Your Honor's attention, based on what we heard during the

Page 70

1 Friday hearing, was that Tatung did not have -- Tatung
2 has produced everything it had in regard to the work
3 instructions and in regard to Tatung America's product.
4 And that -- and the universe of those documents were
5 photographed with annotations below them or next to them.
6           And then we were surprised when we got a
7 late production on, I believe it was the night of the
8 7th, we finally saw it over the weekend, and we were
9 surprised to see that there were documents other than
10 photographs with annotations on them produced by Tatung
11 America. And that's all we were bringing the Court's
12 attention was that if there were other documents like
13 that that had not yet been produced or that we were not
14 aware of, then we wanted to know about them as well as
15 bring them to the Court's attention. That was the sole
16 purpose of that letter. It wasn't to cast any
17 dispersions.
18           SPECIAL MASTER POPPITI: Well, it seems
19 to me there is no issue, then, with respect to that
20 letter; is that correct?
21           MR. AMBROZY: Not from LPL, Your Honor.
22           SPECIAL MASTER POPPITI: Mr. Merideth.
23           MR. MERIDETH: Well, I mean, what was
24 the point of sending it, then, and raising it at the

Page 71

1 hearing?
2           SPECIAL MASTER POPPITI: You made your
3 point.
4           MR. MERIDETH: I mean, I am under the
5 suggestion that somehow or another -- I mean, I got the
6 distinct impression that the suggestion was being made,
7 and I don't have the transcript, but my take on it was a
8 suggestion that there were CAD CAM drawings that Tatung
9 had of its products that were not being produced, and
10 what would be the reason, if you were not referring to a
11 Tatung document, that you would include the page that's
12 attached to that that has to do with the sufficiency of
13 the work drawings for Tatung's CAD CAM drawings?
14           I mean, why would you include that page
15 if you weren't implying that the engineering drawing
16 that's included in your letter wasn't a Tatung drawing?
17           SPECIAL MASTER POPPITI: Mr. Merideth,
18 there is a time to be righteously indignant, and I expect
19 that's what I am hearing, but if there is nothing before
20 me -- I appreciate your comment. I expect it may have
21 the effect of causing a little bit of pause before
22 something like this is filed in the future, but there is
23 nothing for me to deal with; is that correct?
24           MR. MERIDETH: Yes, sir. I mean, I just

Page 72

1 think that if someone had called and said, Gee, what is
2 this?, if they didn't understand what it was, it could
3 have been resolved immediately. There was no need to
4 cause a big issue in the hearing.
5           MR. AMBROZY: We will work to do that in
6 the future.
7           SPECIAL MASTER POPPITI: Thank you,
8 Mr. Ambrozy.
9           MR. MERIDETH: Thank you, Your Honor.
10           SPECIAL MASTER POPPITI: Anything else,
11 please? Thank you all.
12           Would local counsel, please, between now
13 and Friday, make sure that whatever agenda we have, I am
14 aware of with respect to Friday? I know we begin at
15 3:00.
16           MR. KIRK: Yes, Your Honor.
17           SPECIAL MASTER POPPITI: Thank you so
18 much.
19           (The hearing was concluded at 6:42 p.m.)
20
21
22
23
24

Page 73

1           C E R T I F I C A T E.
2 STATE OF DELAWARE:
                      :
3 NEW CASTLE COUNTY:
4           I, Renee A. Meyers, a Registered Professional
5 Reporter, within and for the County and State aforesaid,
6 do hereby certify that the foregoing hearing was taken
7 before me, pursuant to notice, at the time and place
8 indicated; that the testimony was correctly recorded in
9 machine shorthand by me and thereafter transcribed under
10 my supervision with computer-aided transcription; that
11 the foregoing hearing is a true record of the testimony
12 given; and that I am neither of counsel nor kin to any
13 party in said action, nor interested in the outcome
14 thereof.
15           WITNESS my hand this 4th day of March A.D.
16 2007.
17
18
19           RENEE A. MEYERS
             REGISTERED PROFESSIONAL REPORTER
20           CERTIFICATION NO. 106-RPR
             (Expires January 31, 2008)
21
22
23
24

HEARING

| A |
| --- |
| **able** 4:5 20:1 34:12 44:6 45:9 53:2 58:19 |
| **abundantly** 25:4 |
| **accept** 22:14 |
| **accompanied** 4:2 9:23 21:9 |
| **accomplished** 9:20 10:14 |
| **accord** 42:13 |
| **accurate** 68:20 |
| **accusation** 68:4 |
| **accused** 41:12 41:13 |
| **accustomed** 11:20 |
| **acknowledge** 32:4 |
| **action** 10:3 73:13 |
| **activities** 32:23 |
| **actual** 51:12 |
| **ad** 62:16 |
| **add** 49:18 |
| **adding** 36:10 |
| **additional** 6:17 22:15 25:8 |
| **address** 23:18 23:23 62:23 68:4 |
| **addressed** 58:8 |
| **adequate** 17:17 |
| **administrative** 13:17 |
| **advantages** 45:1 45:7 47:2,17 |
| **affiliated** 1:23 |
| **aforesaid** 73:5 |
| **afternoon** 3:16 4:10 5:5 11:13 |
| **agenda** 72:13 |
| **ago** 13:6 |
| **agree** 17:7 20:1 20:11,12,14 |

33:9 34:15
37:2,7 38:7
50:22 51:1,24
54:18 60:6
65:6
**agreed** 9:5 18:8
18:9,19 20:6
26:10 32:12
34:5 36:1
38:24 53:23,24
**agreement** 4:1
8:3 10:7 24:11
25:21 26:7
34:12,19,20,24
35:14 36:9
38:2 39:8
59:22
**agrees** 18:23
**ahead** 19:23
38:17 39:18
**Aldridge** 2:2 3:5
**allegation** 68:10
**allow** 66:22
**allows** 41:11
**alternative**
59:21 60:3
62:12
**Ambrozy** 2:3
3:6 28:10,12
36:17 41:5,22
42:20 44:2,17
45:8 49:12
55:11 66:4,10
68:21 69:3,4,7
69:20 70:21
72:5,8
**Ambrozy's**
29:14
**amended** 7:10
**America** 1:7
2:11 8:18 67:5
67:7,14,20
68:9 70:11
**America's** 70:3
**amount** 52:15
57:24

**analyses** 31:20
**analysis** 32:21
43:16,22 44:13
**and/or** 45:10
**Angeles** 2:18
**Anne** 2:6 3:11
**annotations**
70:5,10
**answer** 15:10
24:18 34:23
63:21,22
**anybody** 64:1
**anyone's** 25:22
**anyway** 60:9
**apart** 41:2
**apparent** 16:12
**apparently** 9:4
22:23 32:24
**appear** 18:15
**APPEARANC...**
1:14 2:1
**application**
11:23 54:14
55:20
**apply** 19:14
53:18
**appreciate** 41:24
66:21 71:20
**appropriate**
15:2 20:24
21:19 27:16
31:2 33:11,22
59:10 63:18,19
63:23
**approximately**
1:12
**areas** 17:13 26:8
30:4 31:2,4
33:21 48:17
**arguing** 19:11
22:13
**argument** 19:4
49:19
**art** 37:4
**asked** 67:16
**asking** 11:13

14:20 47:21
49:13
**asks** 43:14
**aspect** 55:13
**assemblies** 43:23
**assembling**
39:21,23
**assembly** 43:15
43:22 44:8,18
45:3
**assembly-relat...**
44:19,22
**asserted** 47:8
**assistance** 38:2
**assure** 13:16
**astray** 38:1
**attach** 15:3
**attached** 8:12
10:15,21 11:1
21:11,14,15
22:5 23:3,4
71:12
**attachments**
23:17
**attain** 58:13
**attempt** 17:17
68:11
**attempted** 10:1
23:20 54:6
**attempting**
32:19
**attention** 3:22
4:6 10:23
13:12 69:24
70:12,15
**attention-getter**
13:10
**attorney** 10:6
24:9
**attorneys** 10:8
24:11
**available** 34:24
66:17
**Avenue** 1:16
2:10,17
**avoid** 36:6

**aware** 54:14
70:14 72:14
**A.D** 73:15

| B |
| --- |
| **back** 11:1 31:11 32:22 34:23 49:16 50:21 52:21,23 53:1 53:2,5 54:5,6,9 55:6,18 56:3 65:21 66:4 |
| **backdrop** 7:3 |
| **Bar** 22:18 |
| **bare** 24:2 |
| **based** 23:7 47:24 69:24 |
| **basically** 41:10 |
| **basis** 26:15 27:15 28:1,7 28:13,17,22 29:9,13,15 30:6 34:14 36:15 37:21 |
| **bates** 67:16,16 67:17 68:6,7 69:5,8,11,18 |
| **Bayard** 1:15 3:3 |
| **began** 9:9 52:8,9 |
| **beginning** 1:11 30:2 52:19 |
| **begins** 40:20 |
| **behalf** 3:17 21:1 22:20 38:8 |
| **belief** 16:1,19 |
| **believe** 3:6,12 5:16,20 6:16 8:6 9:2 11:9,14 12:18 23:5 24:21 27:16 28:15 29:14 32:11 38:14,21 39:4 40:16 44:3 45:19,21 45:22 47:15 48:16 54:24 |

55:13 57:1,13
59:1 69:4,9,15
69:20 70:7
**believed** 16:13
31:5 38:12
**believer** 9:19
**belongs** 57:10
**benefit** 21:19
22:21 33:3
62:22 63:11
**benefits** 45:2
47:2
**best** 20:21 25:24
61:11,13
**better** 33:16
47:16,20
**BI** 8:24
**big** 72:4
**bigger** 4:16
**bit** 19:22 21:17
62:24 68:2
71:21
**BLANK** 1:10
**bleed** 31:1
**body** 69:14
**boned** 24:3
**bottom** 68:14
**Bove** 2:12,15
3:17
**breach** 41:1
**breached** 40:23
**breath** 30:23
35:21 58:23
**brief** 23:23
**briefly** 17:16,22
**bring** 32:22
70:15
**bringing** 69:23
70:11
**broad** 29:15
44:21 50:13
51:7 59:19
63:3 65:8
**broke** 31:4
**brought** 35:21
**burden** 51:22

57:8,23 58:24
**business** 5:9 8:4
9:20 11:14
14:21,22 64:4
**buy** 61:11,13,17
**buys** 61:16

───────
**C**
**C** 73:1,1
**CAD** 67:5,5,6,13
67:15,19 69:23
71:8,13
**California** 2:11
2:18
**call** 18:6,6,8,9,9
18:10,14,15,15
68:7
**called** 68:13
72:1
**calls** 48:8
**CAM** 67:5,6,6
67:13,15,19
69:22,23 71:8
71:13
**camera** 4:4
**cancelled** 18:15
**case** 16:3 44:20
51:13,21,23
57:10,10 60:10
65:4
**cases** 61:21
**Cass** 2:2 3:5
42:24 53:4
**cast** 70:16
**CASTLE** 73:3
**catch** 3:7
**categories** 32:8
32:23
**category** 25:7
**cause** 10:3 72:4
**causing** 71:21
**certain** 16:10
28:16 32:23
34:9 52:3
**certainly** 10:4
11:17 15:23

22:14 25:22
28:20 34:13,24
47:12 52:17
59:22 61:23
62:10 64:3
**certification**
9:24 10:11,19
10:20 11:23
13:18 14:14,19
15:2,4 21:20
22:4,22 23:3,9
23:13 24:17
73:20
**certifications**
11:20 13:19
23:4,16,19
24:1
**certify** 24:4 73:6
**chain** 59:13
**changed** 9:5
**channels** 63:5
**characterizati...**
14:2
**characterized**
69:21
**Charlie** 46:11
**check** 4:21 55:23
65:24
**checked** 4:9
**checking** 66:2
**chime** 24:20
25:20
**Christenson** 2:2
3:6,8 5:19 6:16
9:1,10,13 11:5
11:12 13:14,21
13:23 16:16,23
17:6,15 18:5
19:9 20:4
21:21 25:20
27:2,3,13 29:7
31:3,8,10
32:14,17 33:7
35:2,4,8,12,24
36:14 37:7,13
38:4 39:2,9,14

42:2,18,19
43:1 44:9
45:13,18 46:2
46:7,10,13,16
47:5,9 48:7
49:17 50:1,6
50:10,13,19
52:1,5,20 53:9
53:17 54:4
55:1,4,9 56:1,9
58:4,5 59:4,6
60:13,14,18
61:8,19 62:5
62:13 63:1
64:23 65:5,13
66:18
**circle** 65:20
**circumvented**
35:20
**claim** 17:12
25:17 32:3
33:24 34:1,2
38:12 41:19,20
41:21 42:15
44:1 48:3,4,8
48:14 57:10
**claimed** 43:15
43:23 44:12,15
45:3,5 47:6
**claims** 44:23
**clarification**
31:8,17 42:1
42:12 43:6
62:15 68:15
**clarified** 44:16
**clarifies** 42:16
**clean** 54:15
**clear** 22:2 25:4
30:1 31:11,14
37:10
**clearly** 15:12
67:24 68:12
**client** 33:3
**close** 46:22
**colleagues** 3:5
22:17 24:1
**Colorado** 2:10

**come** 29:3 49:10
51:20 53:15
**comes** 60:4
**coming** 12:8
34:20 57:16
**comment** 71:20
**comments** 5:10
25:12 51:10
**commit** 41:19
**committed** 48:4
**committing**
42:15
**communication**
42:21 65:9,10
**communicatio...**
15:8 64:6
**company** 1:6
2:11 3:4 8:18
8:18 17:21
47:15 61:13
**compare** 52:4
**comparison**
52:10
**comparisons**
43:16,22
**complain** 59:10
59:15
**complaining**
47:10
**completely** 9:17
37:10
**components**
29:16,17
**comprehensive**
16:23
**compromise**
53:6
**computer-aided**
73:10
**concede** 58:20
**concern** 22:9
30:23 32:17
33:19 35:5
42:16 44:24
48:23 56:21
57:11 64:22

concerned 54:1
  57:7,23 62:20
concerning 26:2
  26:5,16 27:6
  27:15 28:23
  43:14,17 45:2
  45:3 49:21
concerns 18:11
concluded 72:19
conclusions 29:1
conducted 43:16
confer 10:1
  11:24 25:9
  68:11
conference 12:2
  12:11,20
conferred 10:1
confers 14:6,7
  14:16
confirm 62:5
confused 60:11
Connolly 2:12
  2:15 3:17
consider 49:8
considered
  51:15
considering
  29:14
consternation
  67:12
constitutes 19:1
construction
  17:12 25:18
  32:3 33:24
  34:1,2 38:13
  39:1 40:2,4,23
  41:1,21 44:1
  48:14
contained 39:24
  67:23
contains 28:16
contend 37:4
  51:3
contends 49:2
  58:10
contention 15:20

17:11 25:17
  26:5 28:6,8,24
  29:9 34:6 35:9
  35:15 36:1,2,4
  36:13,23
contentions 26:2
  26:7,22 27:6
  30:3,4 33:23
  33:23 34:10,14
  37:15
continuation
  26:14
continued 2:1
  17:7 19:20
contrary 37:3
conversation
  12:19
copy 11:2 45:20
Corbett 1:20,23
Corporation 1:7
  2:14,18 3:18
correct 4:17,18
  5:14,15,18 6:8
  6:15 9:12,13
  19:15 22:10,11
  27:20 28:3
  34:15 39:1
  41:22 43:10
  50:5 52:18
  55:1 69:15
  70:20 71:23
correctly 6:15
  27:9 73:8
correspondence
  3:22 10:16
  12:22 17:14
  18:3 21:13
  57:5 62:16
  64:8,9,14,17
  64:18 65:6
  67:10
corresponding
  3:24
counsel 7:9 10:5
  14:18 18:10,10
  18:17 20:18

22:20 23:16
  24:4 31:24
  32:4 48:6
  50:23 55:21
  64:7 66:14
  72:12 73:12
County 73:3,5
couple 20:15
  52:6 56:12
course 19:12
  41:6 42:6
court 1:1,23
  10:2 18:18,19
  21:1 22:20
  23:20 24:8
Courts 15:6
Court's 70:11,15
cover 4:2
covered 28:19
covering 35:15
crazy 29:5
create 66:16
  67:14
created 47:18
  67:5,19 68:1,9
  68:18,24
creates 23:12
cursory 11:8
customer 60:23
  61:1,2,11,22
  61:23 65:9,10
customers 56:22
  57:2,6 60:20
  62:17 64:6,18
C.A 1:4

        D
D 1:15 2:13
damages 51:14
  51:14 52:11
darn 46:21
date 7:3,18 8:22
  48:18,21,22
  49:2,9,10,15
  50:15,16 52:16
  53:6,7,11,18

53:20,20,23
  54:16 55:14,20
  66:2
dated 3:23 8:12
  14:17,20
dates 5:13,15 8:4
  9:5 49:16
  53:19
day 5:10 11:13
  11:14,14 14:21
  14:22 15:1,24
  18:14 73:15
days 8:4
DE 1:21
dead 13:11
deal 20:8 22:24
  56:7,8 66:17
  71:23
dealing 30:2
  34:21
deals 30:3
December 5:17
  6:5 18:1 48:24
  49:8 54:7,10
  55:2,14 56:3
  58:9
decide 63:21
decision 32:2
  55:24
defendant 2:7
  2:11,14,18
  6:17
defendants 1:8
  6:1 7:16 9:4
  20:11 38:8
  41:9 44:5
defenses 36:11
defer 20:9 27:5,8
deferred 36:2
definition 41:19
  45:4
definitive 48:8
Delaware 1:2,11
  1:16,16 2:7,14
  15:5 16:12
  22:19 23:2,6

33:22 73:2
delve 63:12,14
demand 67:6
depend 29:20
deposed 41:18
  63:17
deposition 8:4,8
  8:11,20 9:2
  12:12 14:23
  15:16 25:3
  26:10 33:10
  34:19 45:14,24
  49:21 53:10
  59:2 62:6 63:7
  66:3
depositions
  12:15 16:11
  17:24 34:8
  37:24 42:6
  53:23 63:24
  66:6,16
describe 41:10
described 14:6
designate 19:18
designated
  38:17 46:18
  66:7 67:24
designating
  31:12
designation
  12:24
designations
  7:24 8:3
designed 62:10
  62:11
detail 18:24 21:1
  22:15 23:11
detailed 15:12
  24:6
detailing 22:23
detriments 47:2
development
  52:3
device 38:23
  39:4,24 40:1
  40:22

**devices** 43:18 45:12
**diagram/CAD** 69:21
**different** 19:13 36:3 37:6,10 43:13 56:13 62:17
**difficult** 20:21 20:22 27:21,22 27:22
**difficulty** 26:19
**direct** 10:23 15:13 57:17 58:13 59:23 60:6 61:2 63:10
**directed** 15:18
**direction** 14:12
**directly** 43:24 58:10,21 60:7 60:20,22,24 61:14,16,21 69:9
**disadvantage** 54:2 64:10 65:1
**disadvantages** 45:2 47:2,17
**disagree** 14:2 21:7 28:18 29:10
**disagreement** 21:8 34:9 37:24
**disagrees** 32:5
**discovery** 9:23 54:8 57:21,21
**discrete** 20:13
**discuss** 47:16
**discussed** 12:17 30:14 33:10 37:21 48:1 57:14
**discusses** 28:13
**discussion** 12:12

26:17 50:21
**discussions** 12:9 16:7,9 18:17 53:5
**dispersions** 70:17
**display** 38:22,23 38:24 39:3,21 39:21,23,23,24 40:1,20,22 43:18,19 68:1
**displays** 43:18
**dispute** 10:2 22:24 23:8,12 23:23 31:7 55:5
**disputes** 23:21
**distinct** 71:6
**distinction** 29:17,20
**distribution** 59:13 63:4
**distributors** 56:22
**district** 1:1,2 10:5 15:5 23:6 23:14,20
**document** 6:3 7:1 13:19 26:23 53:6 64:12 67:21 68:7,8 69:5,9 71:11
**documents** 3:23 4:2,3 26:16 27:16 28:1,23 40:8 54:1,3 60:19 64:7,14 64:19 65:1,3 67:18 70:4,9 70:12
**doing** 20:19 50:24
**drawing** 67:19 67:22,24 68:13 69:23 71:15,16

**drawings** 67:5,6 67:7,13,15 71:8,13,13
**drive** 5:13 9:17 13:9
**D.C** 2:4

**——— E ———**

**E** 73:1,1
**earlier** 15:2 24:19,22 51:3 52:23 53:5 55:20 66:5,5
**earliest** 49:10
**easiest** 25:15 49:18
**economic** 43:8 45:1,7
**effect** 67:4 71:21
**effective** 14:16 42:8
**efficient** 27:23
**effort** 10:2,7 12:8 18:22 19:2 23:8 24:10 25:9
**efforts** 11:23 17:21 24:4,6
**eight** 30:17,19 35:10,20 36:8 37:16,17
**either** 54:13
**elect** 27:5
**election** 27:8,9
**element** 28:16
**elements** 41:14
**email** 5:5 20:16 20:17 21:22 31:3,11
**emails** 20:15
**engineering** 67:22 71:15
**entire** 43:20
**entirety** 56:19
**entitled** 49:4,6 58:18 59:14

**entitlement** 57:15
**entries** 3:24
**equally** 63:3
**ESQ** 1:15 2:2,3 2:6,9,9,10,13 2:16,16,17
**Essentially** 50:10
**etcetera** 10:3 31:21 43:8,19 47:4
**evening** 66:24
**event** 4:20 9:8 44:16
**everybody** 17:2 20:9 24:14 66:21
**everyone's** 3:22
**exactly** 22:11 31:14
**example** 15:18 16:19 33:8 44:16 50:16 51:21 52:10 59:17 60:15 61:11
**exchange** 18:11
**exchanged** 24:24
**exhibit** 11:22 40:14 46:3,4 49:20 50:4,7 59:1,1
**exhibits** 21:12 21:13,14,15 22:6 45:17,22 45:23
**exist** 35:14
**existed** 36:18
**existence** 33:6,8 36:24
**expect** 8:7 9:18 21:6 22:19 41:17 42:4 60:16 71:18,20
**expected** 4:4,23

9:11 10:13
**expects** 22:20
**expert** 15:19 16:18 26:9,20 28:9 30:5 31:1 31:3,6,22 32:12,12,20 33:21 34:7 37:20 43:3
**experts** 12:16 20:10 27:6,8 32:19 36:2
**expert's** 29:2
**Expires** 73:20
**explain** 30:12
**explained** 23:11 58:9
**exploded** 69:21
**explore** 33:12 58:18
**explored** 26:8
**express** 35:6
**expressed** 24:22 50:23 67:11
**extensive** 11:19
**extent** 13:24 14:1 28:4 30:2 30:23 31:23 32:3 34:3 36:1 36:11 37:20,23 40:3 57:3,20 57:21 64:7

**——— F ———**

**F** 73:1
**fact** 4:3,22 5:12 11:22 14:17 20:16 26:9,11 26:18,21 27:17 28:15 29:12 30:5,7,24 31:5 32:10 33:20 34:7,13,21 36:4,14,23,24 43:2 44:11 45:10 63:12

HEARING

65:19 67:22
**facts** 44:23
   58:18
**factual** 26:15,23
   27:15 28:1,7
   28:17,22 29:9
   29:13,15 34:14
   36:15,20 37:21
**failed** 19:11
**fair** 21:7 34:15
   59:24 60:3
**faith** 9:24 19:1
   19:21,21
**fall** 32:9 33:24
**falls** 60:10
**false** 68:18
**far** 54:7
**fastening** 40:24
   40:24
**fault** 15:24 17:5
**favorable** 32:24
**February** 8:9,12
   9:3,3 16:9,11
**feel** 17:16,18
   25:20 32:9
   55:5
**felt** 20:9
**Fetzer** 1:23
**figure** 26:20
**file** 16:14,15
**filed** 5:17,22
   6:21 10:5
   11:15 19:19
   20:3 23:13,19
   36:19,20 71:22
**files** 24:8
**filing** 5:21 19:24
   20:24 21:2,10
   24:6,8
**filings** 55:23
**final** 56:11
**finally** 70:8
**financial** 47:3
   50:14
**find** 7:21 24:1
   33:2 34:19

45:20 46:3
   62:7 68:7
**fine** 5:8 12:7
   38:4
**Finger** 2:5 3:12
**finished** 4:22
**firm** 1:15 3:3,19
   9:19 23:6
**first** 5:21 10:11
   18:24 25:2
   30:12 49:2
   56:2 58:7 60:5
   63:2
**five** 8:3 38:14
   43:6,14 44:4
   47:24 48:2
**flat** 38:22,22,23
   39:3,23,23
   40:1,22 43:17
   43:18
**flipping** 40:8
**flow** 14:8 30:13
**focus** 3:21 5:12
   20:22 25:16
   44:17
**focused** 28:5
   63:18,19
**follow** 20:2
**followed** 19:23
**follows** 9:22
**follow-up** 12:19
   18:6,10 62:2
**foot** 19:13
**foregoing** 73:6
   73:11
**forge** 34:12,18
**form** 9:18 10:10
   13:9 15:5
**forth** 10:8 16:23
   18:24 24:12
   28:9 29:3,13
   63:7
**forward** 17:14
   20:24 66:15
**forwarded** 3:23
**four** 30:16,19

31:19 32:7,10
   45:24
**frame** 50:23
   51:1,3 54:17
   55:18
**frames** 40:24
**Frank** 2:9 3:13
**frankly** 14:13
**free** 25:20
**frequently** 14:6
**Friday** 56:8
   65:22 66:11,13
   70:1 72:13,14
**front** 7:1 45:14
   46:6,15 64:12
   69:8
**frustrated** 68:3
   68:17,18
**frustrating**
   21:17
**function** 34:22
**fundamentally**
   25:16 29:10
   33:19
**further** 18:17
   31:8 68:15
**Furthermore**
   19:3
**future** 71:22
   72:6

_____
        **G**
_____
**Gaza** 2:6 3:11,11
   8:17,23 23:18
**Gee** 72:1
**general** 64:4
**generally** 12:18
   16:7
**getting** 57:18
   60:9 65:11
**give** 6:2 7:3 8:6
   18:3 56:13
   60:14 66:13
**given** 53:14
   56:21 73:12
**go** 9:12 16:2

23:6 27:15
   37:13 38:16
   39:17 51:19
   52:21,23 53:2
   53:2,3 55:6,18
   56:3 58:1
   66:15 68:6
**goes** 34:9 43:24
   50:21 57:12,22
   63:6 66:4
**going** 12:20 13:4
   13:24 16:17
   20:1 22:17
   28:9 29:2,20
   30:5 32:19
   33:16 36:5
   38:1 42:4,5
   52:17 55:21
   57:9 58:16
   59:22 62:12
   63:10,12 65:11
   65:14,17 66:14
   66:15
**good** 3:16 9:24
   10:3 19:1,21
   19:21
**gotten** 68:14
**Grand** 2:17
**great** 23:11
**Greenberg** 2:8
   3:14
**grouping** 30:12
**guess** 15:9,14,23
   27:21 32:20
   44:24 56:11
   60:10 64:2,22
   65:5

_____
        **H**
_____
**half** 30:3
**hand** 9:20 73:15
**happen** 12:21
   61:17
**happened** 12:22
   15:15
**happening**

63:24
**happy** 17:14
   62:2
**head** 7:20 64:12
**hear** 5:10 21:7
   41:3
**heard** 3:4 17:20
   21:18 66:22
   69:24
**hearing** 1:9 15:1
   29:17 35:2
   58:9 70:1 71:1
   71:19 72:4,19
   73:6,11
**heart** 17:12
**Heisman** 2:13
   3:16,17 10:15
   10:20,24 15:3
   22:3,22 23:1
**Hello** 12:4
**help** 62:24
**helpful** 5:3
   45:17 54:12
**Hey** 68:13
**Ho** 2:10 3:13
**holes** 40:24
**Honor** 3:2,7,9
   3:11,17 4:8,11
   4:19 5:1,19
   6:16,23 7:15
   7:22 8:2,10,17
   9:1,10 10:15
   10:24 11:5
   12:4 13:14,24
   15:3,9 16:12
   17:14,15 19:3
   20:4 21:21
   22:12 23:1,4
   23:11,24 25:2
   25:14 27:3
   28:10 29:7,22
   30:10,20 32:14
   33:7,12 34:17
   35:4 37:8 38:5
   38:19 39:9
   40:5,16,21

HEARING

41:12,23 42:1
42:19 43:3,9
44:2 45:13,18
46:3,13,16
48:7,12 49:7
49:17 50:2,7
50:14,19 51:7
51:11 52:6,21
54:18,24 55:4
55:10,15 56:1
56:9,10 57:14
58:5,24 59:7
59:16 60:2
62:8,13,14
63:1,6 65:13
65:23 66:5,18
66:19 67:1
68:21 69:4,5,8
69:10,16 70:21
72:9,16
**Honor's** 38:2
69:24
**hope** 34:8 63:16
**hopes** 17:3
**host** 52:13
**housing** 38:23
**hundreds** 57:2,6
**HUTZ** 2:12,15

_____

**I**

**identical** 47:13
**identification**
15:13 41:14
**identified** 20:20
28:17 32:9
34:4 35:16
57:2 65:7
**identify** 16:10
16:17,17 30:12
**identifying**
20:19 29:16
**immediately**
25:7 72:3
**implying** 71:15
**import** 61:1,23
**important** 5:11

9:19 22:18
**imported** 60:24
**impression**
68:18,24 71:6
**improper** 34:6
**inadequate** 17:1
**inappropriate**
9:17 28:2 51:4
**include** 45:23
71:11,14
**included** 38:22
69:10 71:16
**includes** 39:19
40:23
**including** 39:22
58:17
**incorrect** 24:21
**indicated** 23:9
40:5 73:8
**indignant** 71:18
**indirect** 57:13
57:18,22 58:2
60:9,9 61:3
**induced** 61:1,18
**inducement**
57:13 58:15,17
**inducing** 61:23
**industry** 49:14
**informally** 17:17
**information**
6:23,24 19:11
27:15 29:1
31:24 35:22
36:16 43:14
50:14 51:20,22
54:3,6 57:9,12
58:1,19 59:8,9
59:11,14 61:12
62:3 63:15
64:8
**informed** 44:10
**infringe** 58:11
**infringed** 26:3
60:7
**infringement**
15:19 17:11

25:17 26:22
27:7 28:6,13
28:24 31:20
33:23 48:14
57:13,17,18,22
58:2,14,15
59:23 60:4,6,9
60:10
**infringer** 61:2,3
**infringes** 58:21
61:24
**initially** 50:23
**injunction** 32:1
**inquiry** 36:21
**inspections**
31:20 33:3
**instruction**
34:22
**instructions**
70:3
**intend** 63:18
**intended** 44:13
**intent** 42:21
44:10,17 63:13
**interest** 50:24
**interested** 73:13
**interim** 18:11
**interpretation**
42:14,15 48:3
**interpretations**
43:13
**interrogatories**
26:16 28:1,5,6
28:14,23
**interrogatory**
26:23
**invalidity** 17:11
25:17 26:22
28:5,24 33:23
36:22,22 48:14
**invented** 47:15
**invention** 44:12
45:5 47:18
**inventions** 41:11
41:11 45:2
47:6

**investigation**
32:21
**investigations**
31:21 33:2
**involve** 40:4
**involved** 11:18
22:13 40:24
**involving** 32:1
**irrelevant** 63:14
**issue** 18:20
23:18 27:10
36:1,2,4 43:2
44:20 48:18,24
54:20 56:12
57:12 58:8
59:12 66:20
67:4 69:2
70:19 72:4
**issued** 34:2 49:9
51:15
**issues** 12:13,14
12:14,17 15:13
15:15,18,22
16:8,8,16,24
17:12,17,24
18:7,24 19:22
20:2,5,13 25:9
27:17 31:24
35:15 44:20
48:14 52:13
53:7 63:18,19
66:16

_____

**J**

**J** 1:13
**JAMES** 2:13
**January** 5:23
6:6,7,15,18
12:10,21,23,24
13:1 16:7 18:1
18:5,6,7,9,11
18:13 48:21
50:22 52:22
53:3,7 55:6
73:20
**Jean** 61:13

**Jim** 3:17
**joined** 12:1
**joining** 21:16
**joint** 12:8
**judgment** 21:2
**juncture** 59:21
60:8 65:17

_____

**K**

**K** 2:3
**keep** 63:19
**kept** 63:18
**Kim** 25:3
**kin** 73:12
**kind** 57:12
**kinds** 12:16,17
**Kirk** 1:15 3:1,2
3:3,22 8:8
23:24 72:16
**knew** 15:20 16:8
36:18,19 49:14
**know** 5:24 7:17
9:15 11:19
14:13,21,21
16:12,15,19
17:1 35:15
45:16 47:22
49:15 52:21
53:1,14 54:2
58:21 59:7
61:17 63:20,21
63:22,23,24
64:3,10 65:14
66:1 69:13
70:14 72:14
**knowing** 13:17
20:24
**knowledge** 30:6
36:24
**known** 49:14
**knows** 7:10
47:17
**Kreisman** 2:9
3:13

_____

**L**

**lack** 22:15

**language** 21:3,4
  21:4 24:14
  39:17,20 42:5
**late** 11:13 12:24
  16:1,11 17:19
  19:16 70:7
**law** 1:10
**Layton** 2:5 3:12
**LCD** 1:3 3:4
**leading** 15:15
**learned** 9:4 49:2
**left** 26:17
**legal** 47:3
**lengthy** 11:20
**letter** 8:12 9:3
  11:9,11,17,18
  11:21 12:22
  13:1 14:17,19
  15:6,11,12
  16:22 18:23
  25:10 45:21,23
  69:10,14 70:16
  70:20 71:16
**Let's** 24:17
  25:12
**level** 52:7
**LG** 3:3 67:4
  68:19
**liability** 58:17
  58:17
**liable** 61:23
**light** 34:20
**limit** 31:13,15
**limitation** 26:10
  50:15,16
**limited** 51:13
  59:17,18 63:3
**limiting** 49:8
**line** 3:4,18
**list** 16:23
**listed** 4:15 48:21
**little** 17:19 19:22
  21:17 39:10
  54:1 71:21
**LLP** 1:11 2:2,8
  2:12,15

**local** 10:4 14:14
  22:18 24:3
  72:12
**LODGE** 2:12,15
**log** 3:24
**logic** 49:13
**long** 2:2 3:5
  10:12 41:5
  42:13 48:9
**look** 4:23 40:8,8
  50:8 56:3 59:1
  59:17 67:20
**looked** 4:22
**looking** 6:22
  7:24 22:21
  39:8 40:14
  45:19 46:20,24
  50:3,4
**Los** 2:18
**LPL** 7:10 12:10
  12:15 15:17,21
  16:9,14,17
  17:7 18:19
  19:4 20:1,5
  26:11 27:9
  32:5 33:14,14
  40:14 48:20
  50:14 54:4
  57:11,15 70:21
**LPL's** 6:12 8:19
  17:24 19:4
  25:3 49:3 63:5
**L.G** 1:3

     ———————
       **M**
**machine** 73:9
**making** 10:6
  24:9 29:18
  55:24
**mandatory** 10:4
  21:5
**manual** 67:23
**Manuel** 2:16
  12:8
**manufacturers**
  60:21 61:6,9

**March** 1:11 3:23
  8:17,23 11:17
  11:21,22 14:18
  14:20,24 16:21
  16:22 18:4,23
  21:12,13,14,16
  22:21 25:10
  45:21,21,23
  67:9 73:15
**Mark** 2:9 3:13
**market** 1:11,21
  53:15
**marketing** 64:5
**MASTER** 1:13
  3:1,10,15,20
  4:14,20 5:2,7
  5:20 6:4,7,9,13
  6:19 7:2,7,13
  7:17,23 8:5,14
  8:21 9:7,11,14
  10:18,22 11:3
  11:10,16 12:3
  12:5 13:2,7,15
  14:4 18:2 19:7
  20:18 21:24
  22:10,16 23:15
  24:13 25:11
  26:13 27:1,11
  27:18 28:11
  29:4,19,23
  30:8,15,18,21
  31:18 32:16
  33:5,17 34:11
  34:18 35:7,11
  37:5,9,17,22
  38:3,6,9,16,20
  39:6,13,16
  40:7,12,19
  41:3,16 42:3,9
  42:17 43:4,7
  43:11 45:15
  46:1,5,9,12,14
  46:20 47:1,7
  47:11,19 48:5
  48:9,15,19
  49:5,23 50:3,8

  50:12,18 51:9
  51:17,24 52:16
  54:11,19 55:3
  55:7,17 56:5
  56:14,17 57:19
  58:3 59:3,5,20
  60:12,16 62:9
  62:20 64:16,21
  65:16 66:9,12
  66:23 67:2,9
  68:23 69:6,11
  69:17 70:18,22
  71:2,17 72:7
  72:10,17
**match** 9:3
**matter** 1:9 23:2
  34:5
**matters** 10:8
  24:11 65:18
  66:24
**McKenna** 2:2
  3:5
**mean** 8:7 13:8
  13:16 14:5
  21:6,17 29:5
  33:5 54:12,12
  59:24 64:13
  68:6 70:23
  71:4,5,14,24
**measure** 14:15
**meet** 11:24 14:6
  14:7,16,24
  25:9 68:11
**meetings** 63:4
**memory** 13:5
**mentioned** 22:3
  52:24 53:5
  62:15
**mentioning**
  17:10
**Merideth** 2:9
  3:13 4:8,18 5:1
  5:3,4 7:12,14
  7:15,19 8:10
  8:16 20:14
  21:18,22 38:7

  38:10 54:11,18
  54:22 65:23
  67:1,3,11
  69:15 70:22,23
  71:4,17,24
  72:9
**method** 39:21,22
**methods** 43:15
  43:22 44:8,18
  45:3
**Meyers** 1:10
  73:4,19
**Miller** 2:16 8:12
  11:12 12:1,4,7
  13:4 14:1 15:4
  15:7,9 17:10
  17:22 18:8,16
  18:23 22:12
  23:11 24:20
  62:6
**mind** 54:20 56:6
**mindful** 11:17
  65:19
**mirror** 46:21
  47:12
**missed** 10:22
**misstate** 7:6
**mistaken** 11:3
  62:1
**misunderstan...**
  39:10
**model** 64:5
**moment** 6:2,23
  8:6 13:6 49:23
  49:24 66:13
**momentarily**
  11:2
**Monica** 2:11
**monitor** 28:16
**monkey** 55:11
**moot** 27:13
**motion** 9:22
  10:6,8,16,21
  11:15,19 13:9
  16:13,15 17:13
  17:18,18 19:20

19:24 20:3
22:5,14 23:3
23:22 24:9,10
24:12 25:4,8
32:2 35:16
48:17 49:1
56:12 64:15,20
65:19 66:20
**motions** 23:13
**mounting** 43:17
  43:21,23 44:7
**movant** 9:24
**moved** 19:5
**moving** 24:8
**mutuality** 16:4
  16:20

———————
**N**
**nature** 20:19
  33:8
**nauseam** 62:16
**nay** 5:6
**necessarily** 24:5
  57:17
**need** 13:12 14:1
  21:11 58:19
  62:14 66:16
  72:3
**needed** 16:13,14
**needs** 31:8
**neighborhood**
  57:1
**neither** 73:12
**Nelson** 2:16 12:8
  13:5
**never** 19:19 20:3
**new** 39:10 73:3
**newly** 38:17
**night** 70:7
**nine** 30:17,19
  36:11,14
**non-existent**
  67:17
**non-infringem...**
  28:14 36:12
**normal** 16:2

**normally** 64:6
**North** 1:11,21
  2:13
**Nos** 69:18
**Notary** 1:10
**note** 33:12
**notice** 1:10 8:24
  35:10 44:15
  49:21 51:6,7,8
  59:2 68:6 73:7
**noticed** 15:17,17
  15:18 18:22
  33:13
**notices** 5:17 6:6
  6:12,14 7:11
  8:19 45:20,24
**notwithstandi...**
  47:14
**number** 9:16
  12:9,9 36:3
  40:9 46:23
  67:16,17 69:13
**numbers** 4:9,12
  4:15,16 56:13
  69:14
**numerous** 14:5
**N.W** 2:3

———————
**O**
**objecting** 13:1
**objection** 46:19
**objections** 5:21
  6:6,20 7:10
  8:19 12:10
  24:24
**obligated** 19:5
**obtained** 32:3
  60:19
**obvious** 67:20
**obviously** 13:20
  17:4 36:3 63:9
**occasions** 9:16
**occur** 18:17
**OEM** 61:8
**OEMs** 61:7,14
  61:16,20,21

**offer** 32:6 33:4
  63:2 64:2
**offered** 20:10
**offices** 1:10
**okay** 4:24 6:19
  7:2 8:5 9:7
  26:13 29:23
  30:8,19 38:6
  38:16,20 40:19
  43:11 48:15
  55:15 56:14,17
  64:21 66:23
**once** 4:21 8:1
  20:10 22:18
**ones** 33:9
**one-page** 22:21
  24:16
**one-pager** 23:17
**open-ended** 51:5
  52:18 59:19
**operating** 24:23
**opinion** 32:4,6
  45:8
**opposing** 10:7
  24:11
**opposition** 32:1
  49:3
**Orange** 2:13
**order** 13:10
  16:13,14 17:13
  19:6,12,17,20
  19:24 25:5
  34:2,21 35:17
  38:13
**ordering** 39:15
**ordinarily** 41:7
**ordinary** 41:6
**original** 6:12
  39:15 40:17
**originally** 12:10
**outcome** 73:13
**overlap** 12:13
**oversight** 13:18
**overtake** 9:18

———————
**P**

**P** 50:16
**page** 22:4 37:11
  39:7 50:5
  71:11,14
**panel** 38:22,23
  38:23 39:3,23
  39:23 40:1,22
  43:17,18
**papers** 11:1
  23:21
**parallel** 54:13
**parse** 26:20
**parsing** 27:21
**part** 13:7 36:8
  36:22 54:15
  65:4
**particular** 37:4
  48:4
**particularly**
  12:15 53:14
**parties** 6:1 8:2
  10:2,17 13:11
  23:7,20 24:22
  25:4 26:7 34:5
  57:14
**parts** 40:24
**party** 9:22 24:8
  41:19 73:13
**patent** 44:12
  47:6 49:15
  53:13
**patently** 67:20
**patents** 36:18,19
  44:15 47:8
  48:23 49:9
  51:15 58:11
**patents-in-suit**
  26:3,5 43:16
  43:24 45:4,5
  49:3
**path** 20:24
**Paul** 50:17
**pause** 71:21
**pay** 13:12 18:20
**period** 52:14,22
  52:23 53:16

**periods** 51:5,6
**permit** 62:12
**person** 9:22
**persuasive** 49:19
**pertaining** 47:3
**pertains** 36:11
**Peter** 3:19
**phase** 26:23
**Phillips** 1:3 3:4
  67:4 68:19
**phone** 3:12
**photographed**
  70:5
**photographs**
  70:10
**phrase** 10:10
**pick** 33:9 53:18
**pin** 64:1
**place** 25:15 26:1
  73:7
**plaintiff** 3:3
**plaintiffs** 1:4,17
  2:4 15:8
**play** 49:10 51:21
  60:5
**please** 4:7 6:4,21
  8:6,22 10:23
  18:3 25:12,20
  28:11 30:9,15
  31:18 32:16
  33:18 38:17
  39:18 46:7
  50:9 51:10
  58:24 66:24
  72:11,12
**point** 14:8,11
  15:11 18:13
  29:14 44:5
  45:16 52:2,10
  55:5,5 56:6
  60:7 65:18
  66:5 70:24
  71:3
**pointed** 40:21
  63:2
**POPPITI** 1:13

| | | | | |
|---|---|---|---|---|
| 3:1,10,15,20 | **portion** 26:19 | **procedure** 19:23 | **proposal** 20:15 | **p.m** 1:12 72:19 |
| 4:14,20 5:2,7 | **posed** 29:21 | 20:3 | 32:18 53:17 | |
| 5:20 6:4,7,9,13 | **position** 14:15 | **proceeded** 16:11 | **propose** 33:18 | **Q** |
| 6:19 7:2,7,13 | 18:16 19:10 | 25:7 | 52:17 | **question** 5:13 |
| 7:17,23 8:5,14 | 26:4 31:9 41:5 | **proceedings** | **proposed** 20:8 | 7:4 9:21 10:9 |
| 8:21 9:7,11,14 | 41:20 47:16,20 | 32:2 | 31:15,21 40:4 | 10:10,11,12 |
| 10:18,22 11:3 | 52:2 53:23 | **process** 9:17 | 42:2 53:5 | 22:8,17 24:18 |
| 11:10,16 12:3 | 64:24 | 16:2 | **proposing** 31:13 | 47:21 52:1,4,6 |
| 12:5 13:2,7,15 | **positions** 26:16 | **produce** 26:11 | 50:22 53:8 | 63:22 64:1,9 |
| 14:4 18:2 19:7 | **possibly** 51:2 | 26:18 31:22 | **protection** 25:6 | **questioning** 34:6 |
| 20:18 21:24 | **postponed** 12:21 | 32:10 65:2 | 35:19 | 34:9,13 38:1 |
| 22:10,16 23:15 | **potentially** 61:4 | 67:6 | **protective** 13:10 | 38:13 |
| 24:13 25:11 | **practice** 11:19 | **produced** 54:3,5 | 16:13,14 17:13 | **questions** 17:23 |
| 26:13 27:1,11 | 22:19 23:2,5,5 | 54:14 64:14,19 | 19:5,12,17,20 | 29:21 40:4 |
| 27:18 28:11 | **preceded** 22:6 | 65:1 67:5 | 19:24 25:5 | 52:6,15 63:10 |
| 29:4,19,23 | **precisely** 42:1 | 68:20 70:2,10 | 34:21 35:16 | 63:11,19 65:14 |
| 30:8,15,18,21 | **preclude** 47:21 | 70:13 71:9 | **proven** 57:18 | **quite** 14:13 17:9 |
| 31:18 32:16 | **preclusion** 56:19 | **product** 29:16 | 60:5 | 24:2,2 62:21 |
| 33:5,17 34:11 | **preliminary** | 40:20 41:13,15 | **provide** 19:6 | **quote** 14:9 39:20 |
| 34:18 35:7,11 | 32:1 | 60:24 61:2,13 | 20:6 33:1 34:7 | |
| 37:5,9,17,22 | **premature** 40:5 | 61:14,15,17,24 | 48:3 54:8 59:8 | **R** |
| 38:3,6,9,16,20 | **preparation** | 70:3 | **provided** 4:11 | **R** 2:16 73:1 |
| 39:6,13,16 | 10:12 | **production** 53:7 | 4:13 8:8,11 | **Rafkin** 3:19 |
| 40:7,12,19 | **prepare** 44:5 | 54:1,20 55:19 | 30:7 33:14 | **raise** 30:23 |
| 41:3,16 42:3,9 | 52:18 57:24 | 70:7 | 35:19 55:19 | 48:23 |
| 42:17 43:4,7 | **prepared** 16:21 | **products** 26:3 | 62:4 67:23 | **raised** 17:22 |
| 43:11 45:15 | 25:8 51:19 | 39:21,22 40:1 | **providing** 13:18 | 18:7 40:2 43:2 |
| 46:1,5,9,12,14 | **preparing** 14:23 | 41:8,12 43:19 | 19:10 54:9 | 48:17 56:4 |
| 46:20 47:1,7 | 22:14 | 51:20 52:7 | 68:5 | 67:4 69:2 |
| 47:11,19 48:5 | **presence** 18:18 | 56:23,24 57:1 | **Public** 1:10 | **raises** 52:13 |
| 48:9,15,19 | **present** 1:12 | 57:3,7 59:13 | **purchases** 61:13 | 56:12 |
| 49:5,23 50:3,8 | 18:19 | 59:18 60:22,22 | **purpose** 21:5 | **raising** 70:24 |
| 50:12,18 51:9 | **presented** 12:14 | 61:7,9,16,20 | 59:15 70:16 | **range** 50:13 |
| 51:17,24 52:16 | **press** 17:2 | 62:16,18 63:5 | **purposes** 7:3 | **reach** 10:7 24:10 |
| 54:11,19 55:3 | **pretty** 46:21 | 64:19 67:7,15 | 14:24 25:19 | 31:17 |
| 55:7,17 56:5 | **previously** 19:5 | 71:9 | 32:6 41:18 | **reached** 8:3 |
| 56:14,17 57:19 | 40:5 57:14 | **Professional** | 51:12 54:3 | 25:21 29:2 |
| 58:3 59:3,5,20 | **primarily** 11:9 | 1:10,21 73:4 | **pursuant** 1:9 | **read** 13:16 21:12 |
| 60:12,16 62:9 | 13:5 | 73:19 | 73:7 | 24:4,7,13,15 |
| 62:20 64:16,21 | **prior** 37:4 64:15 | **profits** 51:12 | **pursue** 58:19 | 28:24 43:13,20 |
| 65:16 66:9,12 | **privilege** 3:24 | **proper** 21:2 | **put** 6:3 16:23 | 46:17 49:3 |
| 66:23 67:2,9 | **privy** 53:4 | 32:11 36:20 | 19:10 23:10 | 69:5,8,13,13 |
| 68:23 69:6,11 | **probably** 56:2 | 37:1 41:8,9 | 28:9 32:22 | 69:17,19 |
| 69:17 70:18,22 | **problem** 13:8 | 44:3,4 | 64:12 | **reading** 11:20 |
| 71:2,17 72:7 | 14:5 20:20 | **properly** 19:11 | **puts** 13:11 | 13:2 28:21,22 |
| 72:10,17 | 36:5 66:2 | 38:13 44:5 | **putting** 29:13 | 39:17 |
| | | | | **reads** 9:22 24:14 |

HEARING

real 18:21
really 14:15
  17:12 25:1
  28:7 34:23
  35:18 41:13
  46:18 56:6
  57:9,10 59:7
  60:10 66:20
reason 26:6 44:3
  71:10
reasonable 10:7
  24:10 51:13,14
  52:15 65:14
recall 11:6,7
  53:10 69:19
received 22:8
  60:20
recognize 23:10
  49:4
record 5:16 6:14
  32:5 73:11
recorded 73:8
records 24:1
recovery 57:15
  57:16 58:12,13
  59:21
refer 44:15
reference 37:4
  44:11
referenced 22:6
  23:21 45:16
referred 4:12
  16:22
referring 15:6
  21:22 40:17
  42:22 71:10
refers 47:5
reflect 53:24
reflected 25:10
  62:3
reflecting 22:19
reflects 5:16
refused 18:15
  54:8
regard 30:1
  31:19 70:2,3

regarding 6:5
  17:7,9 29:1
  31:24 34:6
  42:14,24 43:22
  48:18 56:21
  57:6 62:17
  64:8
regardless 60:6
regards 28:12
  33:24 55:12
Registered 1:10
  1:21 73:4,19
Rel 2:3 3:6 28:19
relate 16:18 34:1
  41:8
related 38:12
  48:13
relates 5:24
  12:15 57:9
relative 26:22
relevant 27:16
  44:18,22,23
  49:16 51:4
  52:10 57:24
  59:12,15 63:11
relied 11:9
rely 30:5 31:22
  32:12,19 37:19
remainder 32:13
remember 69:12
reminding 20:16
Renee 1:10 73:4
  73:19
replied 23:22
reporter 1:10
  18:18,19 73:5
  73:19
Reporters 1:21
  1:23
represent 67:14
representations
  23:7 68:19
represented
  14:2 67:13
  69:23
request 27:15

48:24 55:14
requested 49:1
  68:15
require 40:3
required 5:12
  38:12 57:23
  65:2
requirement
  24:3
requires 10:5
  24:4
requiring 26:11
resellers 56:22
reserve 32:11
reserved 26:9
reserving 27:5
resolution 20:1
  48:1
resolve 10:2
  15:21 17:8
  18:20,22 19:22
  23:8,21 27:12
  43:5 49:18
resolved 20:7
  27:14 36:4
  65:20 72:3
resolves 48:13
respect 5:10,15
  5:21 6:20 8:7
  9:2 14:12
  17:10,21,24
  19:3 20:5
  26:11 30:14
  32:20 41:4,21
  47:23 52:3,11
  52:12,14 54:20
  55:1,18 56:18
  59:12 69:2
  70:19 72:14
respectfully
  55:14
respective 5:11
  14:13,22 62:22
respond 11:13
  17:16,17 32:15
  38:13 40:3

68:22,24
responding
  34:22
response 14:20
  41:4 68:16
responses 26:23
  26:24 28:14,22
responsibility
  14:11 15:24
  17:5 22:14
responsive 26:15
restrict 65:18
restriction 48:18
  48:22
result-oriented
  44:13
retailers 61:15
retention 31:24
review 4:4,22,23
re-numbering
  40:10
Richard 1:15
  3:2
Richards 2:5
  3:12
right 5:5 14:12
  27:5 33:1,11
  36:14 37:2,7
  39:17 42:10
  47:9,23 50:6
  53:10 55:8
  57:19 61:8
  64:1
righteously
  71:18
Rodney 2:6
Roman 2:17
  3:18 6:2,5,8,11
  6:22 7:5,9,21
  8:2 12:1 17:6
  19:15 22:2,12
  24:20 25:14
  26:14 27:8,14
  28:4,18 29:11
  29:22,24 30:10
  30:16,20,22

31:16,19 33:15
  33:19 34:16
  35:13,18 36:10
  37:2,12,19,23
  38:11,19,21
  39:3,14,19
  40:11,16,21
  41:24 42:7,11
  42:21,23 43:5
  43:9,12 44:10
  44:17,24 46:23
  47:14,23 48:12
  48:16,20 49:7
  49:15 51:11,18
  52:13 53:4,12
  53:22 54:24
  55:15 56:10,15
  56:18 57:20
  60:2 61:5,10
  62:1,14 64:2
  64:17,22 66:1
  66:19
ROME 1:11
royalty 51:14,14
  52:15
rule 5:16 9:21
  10:3,4 13:18
  13:19 14:14,14
  21:10 24:3
rules 21:3,4

S
S 2:3 50:20
sales 51:20 52:7
  52:9,15 53:13
  54:23 55:18
  59:12 62:2,3
Sam 50:20
Santa 2:11
saw 18:2 70:8
saying 5:6 27:19
  36:12 61:10
  64:23
says 24:7
schedule 8:8,11
  9:2,9

scheduled 66:6
scope 30:6 32:7
  32:9 58:23
  62:15,21,23,24
Scott 2:16 12:1
search 24:1
second 10:11
  18:3 30:18
  35:11 39:6
  59:3
see 10:9 11:16
  21:11 31:17
  40:9 41:16
  45:19 47:18
  49:12 50:5
  51:2 55:23
  62:23 70:9
seek 19:12,16
  25:6 26:1 38:2
  57:21 58:17
  59:15
seeking 29:1
  30:24 36:15
  39:20 42:13
  43:21 48:2
  56:19 57:4
seeks 26:4 31:23
  37:21 50:13
seen 11:4 23:15
  23:16
self-inflicted
  14:8
sell 45:12 57:3
sells 61:15
send 5:5 11:2
  16:22
sending 70:24
sense 21:3 28:20
  35:3,5 54:13
  54:17
sent 8:14 13:1
  20:15,16,17
  21:22 31:3,10
  42:23 69:10
separate 29:9
  41:2 58:12

serious 13:12
  68:4,10
serve 6:17
served 6:6 7:6
  7:10 8:18
  12:11 46:17
service 8:24
  67:23
set 10:8 18:24
  24:11
settings 14:5
seven 21:12
SHEA 2:6
ship 60:22
shipments 60:20
shipped 61:21
shoe 19:13
short 30:11
shorthand 73:9
shortly 50:24
show 49:19
showed 52:24
showing 10:6
  24:9,15 64:8
shown 10:3
shows 61:12
side 69:1,1
sign 42:5
signed 22:4
significant 13:10
similar 19:10
  23:4,19 26:12
  33:13
Similarly 50:20
  58:16
simple 48:1
simply 19:19
  42:11 69:1
single 22:4 57:15
  57:16 58:12
sir 5:4 7:18 8:16
  10:19 12:6
  13:3 67:11
  71:24
sitting 62:21
  69:12

situation 36:6
sketchy 24:2
skilled 41:7
sold 41:9 52:7
  63:6
sole 70:15
solely 57:22
somebody 39:1
  47:22
soon 5:2
sorry 3:7 6:23
  38:11 45:21
  46:10,23 61:5
  61:10 66:11
sort 12:8 41:14
  65:11
sorts 15:20
sought 9:23
  30:24 51:13
sounds 27:4,7,10
  29:8 37:10
  42:12
South 2:17
speak 17:11
  60:13
speaking 15:4
  45:1
SPECIAL 1:13
  3:1,10,15,20
  4:14,20 5:2,7
  5:20 6:4,7,9,13
  6:19 7:2,7,13
  7:17,23 8:5,14
  8:21 9:7,11,14
  10:18,22 11:3
  11:10,16 12:3
  12:5 13:2,7,15
  14:4 18:2 19:7
  20:18 21:24
  22:10,16 23:15
  24:13 25:11
  26:13 27:1,11
  27:18 28:11
  29:4,19,23
  30:8,15,18,21
  31:18 32:16

  33:5,17 34:11
  34:18 35:7,11
  37:5,9,17,22
  38:3,6,9,16,20
  39:6,13,16
  40:7,12,19
  41:3,16 42:3,9
  42:17 43:4,7
  43:11 45:15
  46:1,5,9,12,14
  46:20 47:1,7
  47:11,19 48:5
  48:9,15,19
  49:5,23 50:3,8
  50:12,18 51:9
  51:17,24 52:16
  54:11,19 55:3
  55:7,17 56:5
  56:14,17 57:19
  58:3 59:3,5,20
  60:12,16 62:9
  62:20 64:16,21
  65:16 66:9,12
  66:23 67:2,9
  68:23 69:6,11
  69:17 70:18,22
  71:2,17 72:7
  72:10,17
specific 31:5,6
  35:9 36:11,13
  50:21 59:18
  60:15 64:1,7,8
  65:6
specifically 5:24
  31:2 33:22
  44:9 47:6 50:1
  52:14 53:11
  69:22
Square 2:6
stall 13:11
stand 48:10
standard 19:14
  62:18
standpoint
  15:14
start 3:21 25:16

  26:1
starting 53:15
starts 50:5
state 25:19 73:2
  73:5
stated 19:16
  27:8 50:24
statement 10:5
  24:9,15 59:24
  60:3
states 1:1 26:15
  31:20 60:24
stating 23:20
  69:22
staunch 14:8
Steele 14:9
step 56:2
straightened
  68:12
strategy 64:5
Street 1:11,21
  2:3,13
stronger 57:24
structure 39:20
  39:22 40:20
  45:3,11
structures 43:15
  43:21,23 44:7
  44:18,19,22
stuff 65:4,7
subject 15:16
  64:15,20 65:18
submission 11:7
  24:16 40:13,14
  49:20
submissions
  5:11 13:16
submittal 50:4
submittals 14:13
submitted 15:5
subparts 50:11
substance 5:11
  5:14 9:18 13:9
  20:22,23 23:23
  25:13
subtopics 50:15

sufficiency
  71:12
sufficient 11:8
  21:1 22:9
suggest 29:8
  34:12 53:1
suggested 14:19
suggesting 27:24
  28:2 29:11
suggestion 36:7
  63:2,9 71:5,6,8
suitable 20:10
Suite 1:16 2:10
supervision
  73:10
supplemental
  6:14 8:19
  12:23 20:6
  39:11
supply 61:9
supposed 12:20
sure 4:1,21 5:22
  7:9 22:7,19
  23:24 31:7
  35:7,19,22
  39:7 42:21
  53:6 54:9
  55:22 60:14
  62:21 72:13
surprised 70:6,9
suspect 63:20
sweep 34:4
  35:21
sweeping 65:8
sweeps 56:20
swept 36:21

———————
  T
T 50:20 73:1,1
table 32:22
  53:19
take 62:6 71:7
taken 1:9 73:6
takes 56:11
talk 14:1 64:3
  65:7

talking 27:19
  51:18 54:21,23
  62:19 65:8
talks 63:4
targeting 52:14
Tatung 1:6,6 2:7
  2:11 5:23 7:16
  8:18,18 15:17
  17:21 21:16
  38:8 54:9,20
  58:16,18 67:4
  67:7,14,20
  68:9 70:1,1,3
  70:10 71:8,11
  71:16
Tatung's 18:10
  71:13
team 14:23
teams 14:22
technical 43:8
  45:1,6 47:3
Technologies
  68:1
technology
  36:19 52:3,8,9
  52:12 53:15
telephone 12:11
  12:19
telephonic 18:17
television 28:16
tell 23:1 40:13
  55:22 65:8,9
telling 13:5
term 48:8
terms 15:10 16:4
  16:16,20 32:21
  38:21 40:2,22
  41:6,7,8,9
  42:15 44:3
  48:3,4 55:22
  55:24 58:23
  59:17
test 33:1 49:6
testify 42:14
  44:7 45:6,9,11
  57:4 64:4 65:3

65:4
testifying 25:6
  33:21
testimony 15:19
  16:18 19:6
  20:6 26:21,21
  28:9 29:2 30:5
  30:24 31:1,1
  31:23 32:12,13
  33:21,22 34:7
  37:20 49:8
  56:21 73:8,11
testing 31:21
  32:21 33:3
Thank 3:10,15
  3:20 12:3
  13:23 25:14
  30:8,21 39:13
  39:16 43:4
  56:10 58:6
  62:13 66:19
  72:7,9,11,17
Thanks 38:9
theme 59:7
theories 58:12
  58:20 59:21
theory 58:13,14
  60:3,5 62:12
thereof 73:14
thing 65:11,24
things 12:16
  15:20 16:3,5
  17:4 24:24
think 3:8 5:13
  5:15 9:15,16
  9:19 11:7,8
  12:7,21,24
  16:21 18:13
  19:1,13 20:11
  21:21 24:3,3
  25:15,21 26:6
  26:17 28:6,19
  29:24 30:10
  32:23 33:1,10
  33:11 35:24
  36:5,15,20

37:1,12 38:24
  39:9,14 40:4
  40:11 41:9
  42:20 43:1,24
  45:20 46:2,16
  47:24 48:5,8
  48:12 49:15,18
  52:10,12,13,21
  52:22 53:3
  54:4,5,7,22
  55:9 56:2,4
  58:8,18 59:14
  63:1 66:1,2,20
  72:1
thinking 64:11
third-party
  67:23
thought 63:17
thoughts 62:22
three 35:9
throw 55:11
Thursday 66:11
  66:12
tie 41:11
time 8:1 17:2
  18:16,21,24
  24:8 25:20,23
  27:21,22 50:22
  51:1,3,5,5,15
  52:14,19,22,23
  53:16 54:16
  55:18 56:4
  58:10 63:13
  66:21,22 71:18
  73:7
times 9:16 42:8
today 16:24
  17:20 20:16
  21:23
told 62:6,10
Tom 50:20
tomorrow 56:8
top 7:19 64:11
  68:1,14
topic 6:17 15:8
  20:5 26:4,4,19

27:24 28:21
  31:4,19,23
  32:7,10 33:13
  33:13 35:21
  36:3,10 37:1
  39:4,4,11,11
  39:19 40:3,17
  40:18 41:4
  43:6,10,13,20
  44:3,4,16 46:8
  46:17 47:24
  48:2,8,10 50:1
  50:11,16,20,20
  51:5 56:13
  59:2,4,16 63:3
  63:8
topics 12:12,24
  15:16 16:10,18
  17:8,9,10,23
  18:12,22 19:6
  19:17 20:7,7,9
  25:16,24 26:1
  26:12,14 27:14
  28:20 30:1,11
  30:14,16,22
  31:9,13,14
  33:16 34:1,3
  35:9,9,10,16
  35:19 36:7
  37:16 38:11,14
  42:13,24 44:14
  45:14 48:13,20
  48:22 49:11,21
  53:10 56:13,19
  56:20,20 57:4
  57:21 65:21
  66:6,8
totally 36:20
track 34:20,23
  67:18
Tracy 2:17 3:18
transcribed 73:9
transcript 4:10
  4:12,17 56:3
  71:7
transcription

73:10
**Traurig** 2:8 3:14
**treat** 35:14
**trial** 58:20
**tried** 17:8 62:5
  67:18 68:6
**troubled** 14:17
**true** 52:20 73:11
**try** 7:21 14:11
  15:10 17:23
  19:21,21 25:7
  63:10,12
**trying** 6:24
  16:15 20:12
  26:20 29:8
  35:22 36:6
  43:2 44:21,21
  62:7
**Tuesday** 1:11
**turn** 4:5 5:9
  25:12,13 46:8
  49:20 59:9
**turned** 67:17
**turns** 67:19 68:8
**two** 48:16 51:19
  53:19 58:12
  69:14
**two-way** 20:8
**type** 63:7 64:17
**types** 44:22 64:5
**typical** 23:13
**typically** 15:5
  23:6 52:22

———————
**U**
**ultimate** 5:13
  30:3 41:20
**unable** 23:8,22
  68:3
**unaware** 67:12
**underlies** 28:8
**underlying**
  28:15
**understand** 6:14
  7:7 11:21 19:7
  21:24 26:1

29:13,17 32:5
  34:16 39:8
  41:7 46:19
  47:19 49:4
  51:12 55:7
  57:11 60:19
  61:6 64:23
  72:2
**understanding**
  11:1 15:7
  24:23 27:22
  30:1 31:12
  34:13 35:13
  37:14 48:10
  61:20
**understood**
  43:21
**undue** 51:21
  57:7
**unenforceable**
  26:6
**unfavorable**
  33:2
**unfortunate**
  19:23
**uniform** 53:18
**unilaterally**
  18:14
**United** 1:1 60:24
**universe** 4:3,15
  4:16 70:4
**unnecessary**
  63:14
**use** 36:3 52:8,9
  54:16 55:3
**useful** 63:11
**U.K** 32:2
**U.S** 61:22

———————
**V**
**v** 1:5
**Valerie** 2:10
  3:13
**validity** 15:19
  27:6 55:12
**various** 10:16

12:12 24:24
  45:12
**vehicle** 25:5
**vendor** 67:24
**versus** 26:21
**vice-chancellor**
  14:10
**view** 41:20 68:1
  69:2,21
**Viewsonic** 1:7
  2:14,18 3:18
  5:23 6:10,11
  12:14 15:16
  17:21,23 18:14
  27:4,4 30:4
  32:18 45:11,24
  48:2 49:2,13
  50:22 52:7
  54:6,8 55:1
  57:2,5,8,16
  58:10,14,15,20
  60:20,21,22,23
  61:3,6,12,14
  61:20,22 62:3
  63:17 64:3
  66:7
**ViewSonic's**
  15:14 18:9
  26:4 36:24
  44:14 45:14
  49:21 50:23
  56:22 59:1
  60:21 61:22
**VINCENT** 1:13
**virtually** 29:5
  47:12
**virtue** 35:20
**visual** 39:20,21
  39:24 40:20
  43:18
**voiced** 37:14,14

———————
**W**
**W** 2:2 50:11
**walk** 14:7 31:16
  41:13

**want** 3:21,24 7:5
  13:8 22:7
  25:22 33:4,9
  33:20 35:13,18
  49:14 53:22
  59:7 61:17
  64:24 65:17
**wanted** 42:11
  70:14
**wants** 64:9
**Washington** 2:4
**wasn't** 15:1 25:1
  31:14 44:12
  53:4 70:16
  71:16
**waste** 25:22
**way** 14:9 27:23
  33:16 41:12,17
  43:13 49:18
  53:19 63:3
  68:24 69:20
**ways** 58:22 63:5
  63:6
**Wednesday**
  66:10
**week** 25:2 66:11
  66:13
**weekend** 70:8
**went** 10:16
  19:23 23:3
  53:1,6,9 55:2
  63:6
**weren't** 71:15
**Wilcox** 1:20,23
  1:23
**willing** 20:12
  37:13
**Wilmington**
  1:11,16,21 2:7
  2:14
**witness** 19:18
  25:3,6 26:11
  26:18,21 27:17
  28:17 29:12
  30:7 31:1,12
  32:10 33:1,14

34:14 36:4,24
  40:3 41:17,18
  42:14 43:3
  44:6 46:18
  48:3 51:19
  52:18 57:4
  59:8 63:7,17
  63:20,22 64:9
  64:11 65:2,3
  66:3 73:15
**witnesses** 10:13
  16:10,17 19:4
  26:9 31:3,5,6
  33:20 34:8
  36:18 44:6
  45:6,9,10 64:4
  66:7
**words** 27:14
**work** 16:3,5,16
  17:7,23 19:21
  20:2,13 45:10
  70:2 71:13
  72:5
**worked** 9:5
  16:20 20:4
  25:1,1
**working** 15:21
  16:3 17:2,3
  39:15 60:4
  64:10,12
**works** 37:13
**worth** 53:13
**wouldn't** 18:19
  21:6 25:1
  28:18 29:6,12
  51:20
**wounds** 14:9
**wrench** 55:12
**written** 48:11
  68:6
**wrong** 5:15
  27:20 39:1
  68:8
**www.corbettr...**
  1:22

**X**

X 65:9

**Y**

Y 65:10
yea 5:6
Yeah 31:10 52:5
year 54:5 55:6
years 51:19
year's 53:13
yesterday 9:4
42:24 67:3
68:5,19
yield 57:9

**0**

04-343(JJF) 1:4

**1**

1 39:4,19 40:9,9
40:17,18 41:4
42:24 48:21
52:23 53:3,7
55:2
1st 55:6
10 25:18,24 26:4
26:15 27:24
28:12,21 30:1
30:14 35:10,20
36:8 37:16,17
37:20
100 62:17 64:18
1007 2:13
106-RPR 73:20
11 25:18,24 26:4
26:15 28:21
30:1,14 35:10
35:20 36:8
37:16,18,20
12 3:23 45:23
67:10
12th 9:9 21:15
21:16 45:21
1201 1:11
13 1:11 49:21
50:2,5,9,11,16

50:20,20 56:15
65:21
14 56:15 65:21
15 56:15 65:21
15B 59:2,4,5,16
59:17 63:3
15C 59:6,16
16 18:14
16th 12:21
17 18:11
18 49:22
19 50:5 56:15
65:21
1900 2:3
19801 2:7
19899 1:16,21
2:14
1997 49:16
55:14
1998 49:16
50:18,21 53:1
53:2,2,20

**2**

2nd 45:21
20 56:15 65:21
20B 46:8,9
20C 46:10,12,14
46:21 47:1
2000 48:21
52:23 53:3,7
53:21 54:5
20006 2:4
2002 48:24 49:9
54:7,10 55:2
2004 49:1
2006 5:17
2007 1:11 8:13
8:23 11:17,21
11:22 73:16
2008 73:20
222 1:16
23 19:17 30:17
30:19
23A 44:16
23rd 8:9 9:3,8

230 1:21 56:24
57:1,6 62:16
64:18
24 6:15,18
24E 33:13
24th 48:24 49:8
2450 2:10
25 56:15 65:21
26 14:14
26th 8:12 9:3,8
26(c) 9:21 13:18
21:10
27 38:15 42:24
28 56:3
28th 49:1 58:9
29 38:15 42:24
56:16 65:22
29th 9:12 13:1

**3**

3 45:23
3:00 72:15
30(b)(6) 6:12
45:10
30(b)6 5:16
302 1:22
31 39:12 40:11
73:20
355 2:17

**4**

4 45:23 59:1
4th 73:15
400E 2:10

**5**

5 5:23 6:7 39:5
43:20 45:22,23
49:20 50:4
5th 5:17 6:5,6
12:10 18:6
5:05 1:12
546 8:24
571-0510 1:22

**6**

6 45:22,23 46:3

6th 11:17,21
14:18,20,22
16:22 18:23
25:10
6:42 72:19

**7**

7 11:22,22 21:12
50:5
7th 8:17,23
22:21 70:8
7.1 10:21 13:19
7.11 10:4 21:10

**8**

8 18:4,9 55:13
8th 12:11,18
18:7 21:13

**9**

9th 14:24
900 1:16
90071-3106 2:18
90404 2:11