# EXHIBIT H

Case 1:04-cv-00343-JJF    Document 763-9    Filed 08/13/2007    Page 1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 04-343 JJF |
| TATUNG CO., TATUNG COMPANY OF AMERICA, INC., and VIEWSONIC CORP., | : |
| Defendants. | : |

**SPECIAL MASTER REPORT AND RECOMMENDATION
REGARDING PLAINTIFF'S REQUESTS FOR DISCOVERY OF NON-TECHNICAL
INFORMATION RELATED TO UNACCUSED PRODUCTS**

Upon consideration of various motions, opposition papers, supplemental papers, and other submittals by the parties, including, *inter alia*, (i) Plaintiff LG.Philips LCD Co., Ltd.'s[1] September 27, 2006, Motion to Compel Defendant ViewSonic to Produce Indirect Infringement and Damages Discovery (the "September 27 Motion") and ViewSonic's opposition thereto, (ii) LPL's companion December 22, 2006, Motion to Compel Defendants Tatung Company and Tatung Company of America, Inc.[2] to Produce Indirect Infringement and Damages Discovery (the "December 22 Motion") and Tatung's opposition thereto, and (iii) various papers submitted in connection with Tatung's attempts in other jurisdictions to quash or limit subpoenas recently served by LPL upon third party customers of Tatung; and after having heard the arguments of counsel presented during various hearings and conferences conducted by the Special Master, including, *inter alia,* the hearings held on December 28, 2006, January 19, 2007, and March 16, 2007, the Special Master concludes that LPL must first accuse products of infringement before

---

[1] Plaintiff shall be referred to herein as LPL.
[2] Tatung Company of America, Inc. shall be referred to herein as Tatung America. Tatung and Tatung America shall be collectively referred to as Tatung.

062038.00612/40167913v.1

LPL is entitled to receive requested non-technical documents and information more particularly described below. The Special Master advised the parties during a hearing conducted on March 16, 2007 that a Finding and Recommendation would issue stating same.

## BACKGROUND

This is a patent infringement action brought by LPL against the Tatung Defendants and ViewSonic Corporation alleging infringement of United States Patent Nos. 6,498,718 (the '718 Patent) and 6,501,641 (the '641 Patent) (collectively, the "Patents"). The Patents relate to methods for mounting flat panel display devices associated with products such as flat screen computer monitors and flat screen televisions.[3] (Complaint, ¶2) LPL alleges that Defendants "directly, indirectly, and willfully infringe" the Patents. (September 27 Motion, page 1)

LPL filed its complaint (the "Complaint") on May 27, 2004. LPL specifically accused one ViewSonic product (the VX900 monitor) and one Tatung product (the L17AMTN-U01 monitor) of infringement. (Complaint, ¶¶18, 23, 28, 33) While the Complaint specifically identifies the two monitors as allegedly infringing products, the allegations of the Complaint are not limited to the two monitors. Rather, LPL alleges "Such infringing products include at least the product depicted in Exhibit D, which is identified as a ViewSonic VX900 monitor…; as well as products that infringe the '718 Patent that are not yet identified." (Complaint, ¶28; see also ¶¶29 ("The infringing products…"), 33, 34) (Emphasis added). The same is true with respect to the allegations pertaining to infringement by Tatung products. (*Id.*, ¶¶18, 19, 23, 24)[4]

To say that discovery in this 2004 case has been contentious would be an

---

[3] LPL describes the Patents as relating to "rear mount technology". (September 27 Motion, page 1)
[4] Since the filing of the Complaint and following LPL's review of documents and/or samples of products produced or made available by the Defendants during discovery, LPL has accused additional ViewSonic (22) and Tatung products (55) of infringement. In response thereto, the Special Master understands the Defendants have supplemented their discovery responses to provide requested non-technical information on the additional accused products.

2

understatement.[5] The parties initially fought over jurisdictional issues for a lengthy period. Once those issues were resolved, written discovery on the merits began in the latter half of 2005.[6] Disputes over written discovery issues began bubbling to the surface in or about mid-2006. Those disputes have escalated to new heights in recent months, including without limitation disputes and corresponding submissions over (i) the adequacy of responses to interrogatories, (ii) the adequacy of document production, (iii) compliance with protective orders, (iv) compliance with agreements allegedly struck between the parties during the meet-and-confer process, and (v) adequacy of Defendants' production of samples of their respective products. Since late 2006, the Special Master has addressed many of the issues raised via telephonic conferences and/or telephonic or in-person hearings. Many of these conferences or hearings have resulted in the parties reaching full or partial agreements to resolve the issues, the terms of which were either set forth on the record or documented by the parties following the hearing. On several of the issues, the Special Master has issued a formal written decision or Report and Recommendation when the respective parties involved have been unable to reach agreement.

In addition to the ongoing written discovery process, the parties commenced the taking of depositions in or about late February 2007. Numerous depositions have been held throughout March and are scheduled to continue over the next several weeks. Disputes over deposition-related issues such as dates of depositions, the order of deponents, the scope of Rule 30(b)(6) discovery and preparedness of Rule 30(b)(6) designees, third party depositions, attorney conduct during depositions, and the like have spawned numerous other submissions and conferences with

---

[5] The parties have a significant litigation history between them. Prior patent infringement actions involving at least some of the parties have been filed in Virginia, California, Delaware, and the United Kingdom.
[6] For example, on November 29, 2005, LPL served its Second Set of Interrogatories and Second Set of Requests for Production of Documents upon ViewSonic. ViewSonic served its initial responses to the discovery requests on January 13, 2006.

3

062038.00612/40167913v.1

the Special Master since December 2006. In recent weeks the Special Master has conducted two or three conferences or hearings per week to address, at least in part, issues relating to depositions.

The current scheduling order sets March 31, 2007, as the completion deadline for all fact discovery. In light of certain recent agreements reached by the parties and/or determinations by the Special Master after hearing arguments from counsel, depositions of certain fact witnesses will continue into at least April 2007. With respect to third party discovery, the parties recently have been litigating in various courts across the country approximately twenty (20) motions for protective orders filed by Tatung in response to third party subpoenas issued by LPL. Discussions among the parties and the Special Master have led to a stipulation and proposed order establishing May 11, 2007, as the new deadline for completion of third party discovery. That matter is presently before Judge Farnan for consideration.

Against the above-described backdrop, the issue of whether LPL is entitled to compel discovery of non-technical documents and information relating to Defendants' products that LPL has not yet accused of infringement, including information relating to "customer, manufacturer, and supplier identification; brand names under which products are sold; communications with customers and distributors; sales, profit and shipment records; steps taken to comply with U.S. regulations; and indemnification, license and OEM agreements" (collectively, the "Non-Technical Information")[7], *has been raised squarely by the September 27 and December 22* Motions and opposition papers filed in response and by the papers submitted in connection with the recent third party motion practice. The issue has also been raised in discovery responses and as part of numerous other submissions to the Special Master.

---

[7] *See* December 22 Motion, page 2, citing to Document Requests 6-18, 25-28, 31-33, 38-41, 48, 51, 52, 56-70, 76, 77, and 79-86.

4

062038.00612/40167913v.1
062038.00612/40167913v.1

In written discovery, LPL has, in large part, directed the same interrogatories and requests for production to each of the Defendants. Many document requests are designed to elicit more detailed information concerning the subjects of the response to Interrogatory No. 2. Interrogatory No. 2 directed to ViewSonic reads as follows:

> Identify each type of visual display product (such as the ViewSonic VX900 monitor) manufactured, shipped, imported, sold, and/or offered for sale, by or for you, since January 1, 2002, and specify which products have been marketed or sold under a trademark or brand name that belongs to ViewSonic Corporation or its affiliated entities

The Special Master understands that in its initial response and supplemental responses to Interrogatory No. 2, ViewSonic has identified approximately 211 product numbers. The Special Master further understands that on a combined basis, the Tatung defendants have identified over 800 product numbers in their various responses to Interrogatory No. 2.

As stated above, many document requests submitted by LPL to the Defendants request documents concerning all of the visual display products identified in response to Interrogatory No. 2, regardless of whether LPL has accused all such products of infringement. By way of example, Document Request No. 10 directed to Tatung Company states:

> All orders, invoices, bills of sale, and bills of lading since December 1, 2002, concerning the purchase or sale of visual display products responsive to Interrogatory No. 2.

*See also* Document Request Nos. 2-9, 11-18, 26-28, 32-33, 46-48, 51-52, 56-58, 66, 69, 77, and 80-83 directed to Tatung Company.[8] Defendants have objected to such document requests on numerous grounds, including that the requests are not limited to accused products. *See e.g.* Tatung's Response to Document Request No. 10.

---

[8] While not specifically tied to the response to Interrogatory No. 2, various other Document Requests seek documents concerning items like brand name, model number, quantity, price, payee, purchaser, marketing and terms of payment and delivery for "every visual display product" manufactured for or sold to any person doing business in

5

During numerous meet-and-confers held by the parties since the fall of 2006, the parties have attempted to narrow disputed issues relating to requested technical information and non-technical information. Progress has been made. For example, the Defendants have agreed to produce technical documents and/or samples of products in their possession, custody, or control that would be sufficient for LPL to evaluate the visual display products identified by Defendants in response to Interrogatory No. 2 for purposes of making a determination as to whether to accuse additional visual display products of infringement. An in-court evidentiary hearing was held before the Special Master on March 9, 2007, to address the sufficiency of the Tatung Defendants' production of technical documents in connection with this agreement. The March 9 hearing and subsequent follow-up conferences with the Special Master resulted in an agreement among Tatung and LPL that Tatung would produce additional technical documents to facilitate LPL's infringement determination, and LPL in turn agreed it would identify by April 6, 2007, all of the Tatung products it accuses of infringement in this action.

## ANALYSIS

Fed. R. Civ. P. 26(b)(1) provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, <u>whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party</u>…(Emphasis added)

It is well-settled that the scope of discovery, while broad, is not unlimited. The Special Master understands LPL to argue that based upon the case of *IP Innovation v. Sharp,* 219 F.R.D. 427, 429 (N.D. Ill. 2003) (Nolan, Magistrate), it is entitled to receive the requested Non-Technical Information on all of the visual display products identified by Defendants in response to Interrogatory No. 2, regardless of whether all such products have been accused of

---

the United States or sold in the United States since January 1, 2002. *See e.g.* Document Request Nos. 38-41, 59, 63-

infringement by LPL in this action. It is the Special Master's view that LPL reads *IP Innovation* too broadly.

The plaintiffs in *IP Innovation* filed a patent infringement action involving technology relating to improving image enhancement for consumer products such as laser printers, VCRs, and televisions. Plaintiffs moved to compel responses to interrogatories and requests for production. In particular, plaintiffs sought: (1) documents showing relevant features of potentially infringing devices; (2) an analysis of prior art or other invalidity defenses; and (3) documents showing the sales and profits of products plaintiff had identified. *Id.* at 428.

Following a hearing, the parties informed the *IP Innovation* Court that they had reached an agreement on certain points of dispute. Defendant Sharp agreed to produce certain information concerning products "specifically identified" by plaintiffs, including unit and dollar volume sale information and profit/loss summary information. *Id.* at 428-29. The parties continued to disagree as to whether defendant Sharp was required to identify all of its models using the technology (chips) at issue.

The *IP Innovation* court held that defendant Sharp should be required to identify all of its products that used the chips at issue. In connection therewith, the court stated "<u>once plaintiffs determine the identity of all infringing models, they can seek sales information for additional specific model numbers</u> and calculate the full level of damages to which they are allegedly entitled." *Id.* at 429 (Emphasis added).

The Special Master is satisfied that the above quote indicates that the plaintiffs in *IP Innovation* would receive certain non-technical information on defendant's products, but only <u>after</u> plaintiffs had accused the products of infringement. The Special Master is also satisfied that it can not mean that plaintiffs were entitled to information on all of defendant's products,

---
65, 67.

regardless of whether the products utilized the technology at issue. *See also Honeywell Intern. Inc. v. Audiovox Commun. Corp.*, 2005 WL 3988905 at fn. 2 (D. Del. 2005)[9]; *Caliper Tech. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558, 561 (N.D. Cal. 2003) (Larson, Magistrate) (cross-motions to compel granted in part, denied in part; plaintiff failed to show relevance of sales and sales-related documents on unaccused products; defendant failed to show relevance of plaintiff's license agreements for patents not at issue in suit). The facts and circumstances of the instant case do not justify a different result.

The parties have cited only a handful of cases in connection with the accused/unaccused issue addressed herein. The cited cases suggest that a two-step approach in discovery is employed in cases where a plaintiff maintains that additional products produced or sold by a defendant infringe, but does not have enough independent information at the time of filing the complaint to identify all products accused of infringement. First, sufficient technical or other information should be supplied by a defendant to enable a plaintiff to identify any additional products it wishes to accuse of infringement. *See IP* Innovation, 219 F.R.D. at 429. This first step either has occurred or is occurring in this case with respect to each of the Defendants, in the form of production of technical information and/or available samples of products regarding those products identified in response to Interrogatory No. 2. *Compare* August 30, 2006 letter from C. Conner to S. Perkins at p. 5 (Tab 14 attached to LPL's LR 7.1.1 Certification concerning December 22 Motions to Compel Against Tatung: "It is our opinion that Judge Farnan's and Special Master Poppiti's determinations affirm that, <u>in order to identify all of Tatung's accused</u>

---

[9] Footnote 2 quotes Judge Jordan's comments made at a hearing held on September 9, 2005 in the *Honeywell* case: "Because I agree with the defendants that now what you are doing is you are telling manufacturers, you know what? You got one or two things that are bad. We want [you to] do an analysis of everything you make and tell us whether you are guilty on those fronts, too; and that is not what the law requires, and it's not what I'm going to require them to do. If you want to go out, you want to buy them, you want to do the tear-downs, you want to get information that prompts you to be able to say 'now I know that this specific model also infringes,' then you can certainly do that. And then you would be in an area where you could be requiring additional discovery from them. But to ask them to come forward in the first instance, which is what it really comes down to, is not right."

8

products, LPL may properly seek discovery on all of the defendants' visual display products, not just the one example listed in the Complaint.")[10] It is the technical information, not the Non-Technical Information, that is necessary for the infringement determination.

Second, as to the products a plaintiff accuses of infringement, plaintiff becomes entitled to receive production of additional, non-technical information like the Non-Technical Information. *Id.; Honeywell* at fn. 2; *Caliper Tech.* at 558. Until a product is accused of infringement however, such non-technical and often proprietary and confidential business information is not relevant pursuant to the plain language of Fed. R. Civ. P. 26(b)(1). It therefore need not be produced. LPL has made no showing that it should be different under the facts presented here.

---

[10] *See also* LPL's LR 7.1.1 Certification, Tab 14, Page 3 of Appendix A to August 30 letter [Appendix A is an August 16 letter from L. Brzezynski to T. Roman]: "Because LPL is not interested in obtaining documents from ViewSonic pertaining to products that do not use the mounting techniques recited by the Patents-In-Suit, LPL would then use ViewSonic's list of visual display-mounting technique categories to identify the categories to which LPL wants Document Requests Nos. 2-5 to apply. Discovery could then proceed only on the products covered by those categories." While the August 16 letter appears to address LPL's attempts to obtain technical documents and information, the Special Master believes the same logic and nexus should apply with respect to document requests seeking non-technical information.

9

## CONCLUSION

For the reasons set forth above, the Special Master concludes that LPL's September 27 and December 22 Motions should be denied to the extent they seek production of Non-Technical Information relating to unaccused products.

This Report and Recommendation shall not limit, detract from or otherwise change any agreement reached between the parties on discovery issues. The parties will be held to the terms of all such agreements. Moreover, the Special Master expects the parties to continue to work in good faith to resolve discovery issues as they develop. The Special Master trusts that this Report and Recommendation will provide guidance to the parties going forward with respect to the completion of written discovery and the conduct of depositions.

**The Special Master's Report and Recommendation will become a final order of the Court unless objection is timely taken in accordance with the provisions of Fed. R. Civ. P. 53(g) or other agreement of the parties.**

ENTERED this
30th day of March, 2007

Vincent J. Poppiti (DSBA No. 100614),
Special Master