# Exhibit A

## DEPOSITION SUBJECT MATTER

1.      "McKenna" means McKenna, Long & Aldridge LLP, its predecessors including Long, Aldridge & Norman, LLP and McKenna & Cuneo, and their attorneys, shareholders, partners, employees, agents, and representatives, including Song K. Jung and Rebecca Rudich.

2.      "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, co-venturers, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

3.      The "Patents-in-Suit" mean United States Patent No. 6,498,718 and 6,501,641.

4.      "Counterpart," when used in reference to any patent, means any parent, continuation, continuation in part, divisional or other application or patent, pending, issued or abandoned, that claims priority, directly or indirectly, on or through any of the Patents-in-Suit or any patent through which any of the Patents-in-Suit claim priority, whether it be pending, issued or abandoned.

5.      The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

6.  "Relate to" means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

7.  "Communication" means any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

8.  "Prior art" shall have the same meaning as "prior art" used in 35 U.S.C. § 103, and shall also include all of the events set forth in each and every subdivision of 35 U.S.C. § 102, including, without limitation, prior knowledge, prior publication, prior patenting, prior invention, public use, offer for sale and sale.

9.  Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

10. "Flat Panel Display Products" means any product that uses, contains, or incorporates one or more LCDs, PDPs or FEDs, and includes by way of example flat screen computer monitors, lap top screens and flat screen televisions.

11. The term "LCD" means any display which uses liquid crystals to form or create an image (regardless of the technology, *e.g.* active vs. passive matrix; MVA; IPS; TN, etc.). The terms "PDP" and "FED" shall be interpreted as the terms PDP and FED are used in the specifications of the Patents-in-Suit and/or any Counterpart thereof.

12. "Recent Discovery" means the documents produced by LPL after June 29, 2007 including those bearing the bates ranges of LPL 18927 – LPL 21540, and any supplemental or replacement production from LPL, including the replacement production

identified in Mr. Auito's August 7, 2007 email and discussed during the August 7, 2007 hearing with the Special Master.

13. "Prior Art LPL Product" means a) the products disclosed in the Recent Discovery and that were conceived, made, marketed, sold, distributed, disclosed and/or offered for sale by LPL on or before December 31, 1998 that includes an LCD, PDP and/or FED; and b) the LG 500 LC monitor.

14. The "NEC Litigation" means the following matters: *LG.Philips LCD Co., Ltd. v. NEC Corporation, et al.*, District of Delaware, Case No. 1:99-cv-00726-RRM, and *LG.Philips LCD Co., Ltd. v. NEC Corporation, et al.*, District of Delaware, Case No. 1:99-cv-00680-RRM.

## TOPICS FOR EXAMINATION

**Topic No. 1**

a. McKenna's policies and procedures relating to patent prosecution for the time frame of April 1998 to December 2002, including any policies or procedures implemented by McKenna to ensure that its patent prosecution attorneys and clients comply with the requirements of 37 C.F.R. § 1.56.

b. The custom and practice employed by McKenna prosecution attorneys during the time frame of April 1998 to December 2002 in connection with researching, obtaining, investigating, evaluating, and disclosing prior art to the Patent Office during patent prosecution.

**Topic No. 2**

a. All non-privileged facts and circumstances relating to the prosecution of the Patents-in-Suit.

  b. The disclosure or non-disclosure of prior art, including the Prior Art LPL Products or any feature thereof, to the Patent Office during prosecution of the Patents-in-Suit, including any Information Disclosure Statements and/or PTO-1449 Forms submitted to the Patent Office.

  c. All non-privileged facts and circumstances relating to the disclosure or non-disclosure of any LPL Prior Art Product or any feature thereof to the Patent Office during prosecution of the Patents-in-Suit, including any Information Disclosure Statements and/or PTO-1449 Forms submitted to the Patent Office.

  d. All details regarding the awareness of any of the inventors of the Patents-in-Suit, the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit, and anybody substantively involved in the preparation and/or prosecution of the applications for the Patents-in-Suit of any Prior Art LPL Product and any feature thereof that may bear on patentability and/or any argument made by LPL to any Patent Office, including without limitation, the statements contained in the Amendment filed on or about January 17, 2001 in the prosecution of the application that led to the '641 Patent.

  e. The facts known to anyone involved in the prosecution of the applications for the Patents-in-Suit, including LPL and/or the inventors, or their attorneys and/or agents, relating to the existence of and/or structure of Prior Art LPL Products, including the location of fastening parts or elements on the product used for any purpose, if at all.

  f. The understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the duty of disclosure under 37 C.F.R. § 1.56.

g.  The understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the subject matter claimed in the Patents-in-Suit.

h.  The understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the Prior Art LPL Products.

i.  Any and all non-privileged facts or circumstances that support, evidence, contradict or negate the defense of inequitable conduct.

Topic No. 3

a.  Whether McKenna was involved in any capacity in the NEC Litigation, and if so, the identities of those McKenna attorneys and/or employees who were involved and the nature and extent of their involvement.

b.  The timing and circumstances under which McKenna first obtained access to the LPL documents that were produced in the NEC Litigation and subsequently produced in this case.