Exhibit K

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LG Philips LCD Co., | ) | |
|     Plaintiff, | ) | |
| | ) | C.A. No.: 04-343-JJF |
| v. | ) | JURY TRIAL DEMANDED |
| Tatung Co., Tatung Company of America Inc., | ) | |
| and Viewsonic Corp. | ) | |
| | ) | |
|     Defendants. | ) | |

**DEFENDANT TATUNG COMPANY'S RESPONSES TO
PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Defendant Tatung Company ("TATUNG") hereby makes its Objections and Responses to the Plaintiff's Second Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

TATUNG has not yet completed its gathering of facts and documents related to this action. Therefore, in responding to the Interrogatories, TATUNG reserves the right to revise, correct, add to, supplement, and clarify any of its responses.

All responses are submitted as presently advised, and without prejudice to TATUNG's right to modify, amend, revise, correct, supplement, add to or clarify such responses at the appropriate time.

Counsel for TATUNG invites discussion with counsel for Plaintiff with respect to these responses, with the expectation that discussions between counsel may eliminate or modify objections, reduce burdens on TATUNG, or otherwise result in a mutually satisfactory resolution of the objections set forth herein.

RLF1-2980641-1

## GENERAL OBJECTIONS

TATUNG hereby makes the following general objections to all of the individual Interrogatories. These general objections are incorporated into each and every Interrogatory set forth below, whether referenced specifically or not.

1.    TATUNG hereby interposes the following general objections to all of the individual Interrogatories contained in Plaintiff's Interrogatories. These general objections are incorporated into each and every individual objection set forth below, whether referenced specifically or not.

2.    TATUNG specifically objects to Plaintiff's Second Set of Interrogatories on the grounds that such Interrogatories are overly broad and unduly burdensome, and/or because it Interrogatories documents that are neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

3.    TATUNG objects to the Interrogatories to the extent they seek information or documents that are protected from disclosure by the attorney-client privilege or other privilege, or by the work-product doctrine.  Such information or documents will not be produced to Plaintiffs and any inadvertent production shall not be deemed a waiver of any privilege with respect to the information or any work product doctrine which may apply.

4.    TATUNG objects to the Interrogatories to the extent they attempt to impose duties that are beyond the scope of the Federal Rules of Civil Procedure and the Local Rules of this Court.

5.    TATUNG objects to the Interrogatories on the grounds that they are not limited by time, and, therefore, are in many instances overly broad and unduly burdensome, and/or

2

Interrogatory documents that are neither relevant to the claims and defenses of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

6.    TATUNG objects to the Interrogatories as to the requested time, place, and manner. It is not currently possible to accurately gauge the quantity of documents requested. To the extent that there are properly producible documents, they will be produced at a mutually agreed upon time, place, and manner.

7.    TATUNG objects to the Interrogatories to the extent that they seek materials obtained or prepared in anticipation of litigation or trial, materials prepared by or for an attorney, materials protected by a state or federal right of privacy or protection, materials protected from disclosure under relevant procedural rules or case law, and further seek mental impressions, conclusions, opinion, or legal theories concerning anticipated or actual litigation.

8.    TATUNG objects to the Interrogatories on the grounds that they seek information that is more readily and efficiently obtained through deposition questions rather than written discovery.

9.    TATUNG objects to the Interrogatories on the grounds that they seek information that is readily accessible to Plaintiffs from public sources or Plaintiff's own files.

10.    TATUNG objects to the Interrogatories on the grounds and to the extent that they call for disclosure of proprietary or confidential information or trade secrets, disclosure of which would be prejudicial to TATUNG, its customers, suppliers, and any witnesses testifying on behalf of TATUNG, the clients of such witness, or the person or persons who provided such information to TATUNG. Any such information that TATUNG provides will be provided subject to the stipulated Protective Order entered into by the parties in this proceeding.

3

11.    TATUNG objects to the Interrogatories to the extent that they seek information that, if furnished, would violate a court order, protective order, and/or stipulation of confidentiality that has been entered with respect to such information.

12.    TATUNG objects to the Interrogatories to the extent that they call for disclosure of proprietary or confidential information of a third party, or the joint proprietary or confidential information of TATUNG and the third party.  TATUNG will not provide such information until the third party has been notified of such Requests, and the third party has consented to the production of such requested information.

13.    TATUNG objects to the Interrogatories to the extent that they seek copyrighted material or other information, the copyright, or other intellectual property rights, access to which TATUNG does not possess.

14.    TATUNG objects to the Interrogatories as premature to the extent that they seek disclosure of witnesses, evidence and theories to be presented by TATUNG at the trial of this action before TATUNG has had an opportunity to obtain discovery.

15.    TATUNG objects to the Interrogatories on the grounds and to the extent that responding to such Interrogatories would improperly require TATUNG or its witnesses, or both, to perform studies, analyses, calculations or compilations that do not currently exist.

## SPECIFIC RESPONSES AND OBJECTIONS TO THE INTERROGATORIES

Subject to the general objections, TATUNG makes the following specific objections and responses:

## Interrogatory No. 1.

Identify each person who prepared or otherwise assisted in the preparation of your responses to these interrogatories.

4

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG states that Oliver Shih and Vincent Liu assisted in preparing these responses.

**Interrogatory No. 2.**

Identify each type of visual display product (such as the Tatung L17AMTN monitor) manufactured, shipped, imported, sold, and/or offered for sale, by or for you, since January 1, 2002, and specify which products have been marketed or sold under a trademark or brand name that belongs to TATUNG or its affiliated entities.

**Response:**

TATUNG specifically objects to this Request on the grounds that the vague and ambiguous phrase, "type of visual display product," renders it overbroad and unduly burdensome. TATUNG also objects to this Request on the grounds that it is not limited to the U.S. market and, therefore, seeks information which is not relevant to the claims or defenses of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the general and specific objections, TATUNG states that, based upon information and belief, the following Tatung LCD computer monitors have been shipped, imported, sold, or offered for sale in the United States since January 1, 2002:

| | | | |
|---|---|---|---|
| L15CCAE-U07 | L17ACTN-UD2 | L5CDSDP-U22 | L5SVTPP-U45 |
| L15CCAE-U27 | L17AMTN-U01 | L5CDSDP-U26 | V15PCAP-U03 |
| L17AMTN-U03 | L17AMTN-U22 | L17AMTN-U23 | L17AMTN-U32 |
| L15CCAT-U01 | L17CQAT-U05 | L5CDSDP-U31 | V17AFTW-U01 |

5

| | | | |
|---|---|---|---|
| L15CCAT-U05 | L17DSAV-U16 | L5CDSDP-U32 | V17AFTW-U05 |
| L15CCAT-U13 | L17ECAE-U07 | L5CESDP-U81 | V17ULAJ-U06 |
| L15CCAT-U23 | L17ECBQ-U08 | L5CESPP-U01 | V23CLTT-U01 |
| L15CCAT-U32 | L17FCBT-U02 | L5CESPP-U12 | V23CLTT-U02 |
| L15CCAT-UA3 | L17FCBT-U12 | L5CESPP-U32 | V23CLTT-U05 |
| L15CCAT-UB3 | L17FCMT-U05 | L5CESPP-U41 | V23ULAJ-U06 |
| L15CCQT-U19 | L17KCBQ-U08 | L5CESPP-U42 | V26ALAH-U15 |
| L15ECAE-U27 | L17NCDT-U00 | L5CESPP-U62 | V27CMTT-U01 |
| L15ECAE-U37 | L17PCBG-U05 | L5CTSDP-U01 | V30CMTT-U03 |
| L15FCBT-U02 | L17PCBG-U15 | L5CTSDP-U03 | V30CMTT-U05 |
| L15FCBT-U12 | L17PCBG-UA5 | L5CTSDP-U06 | V32ALAH-U15 |
| L17ACAE-U07 | L19ACLN-U13 | L5CTSDP-U13 | V32FLBB-U21 |
| L17ACLN-U03 | L19AMTN-U01 | L5CTSDP-U52 | TWN-5213K03 |
| L17ACLN-U13 | L19CMAT-U32 | L5CTSDP-U62 | TWN-5213K20 |
| L17ACLN-UB3 | L19CYAT-U05 | L5CTSDP-UA3 | PTAB915DN01 |
| L17ACTN-U01 | L19FCBT-U12 | L5PESPP-U01 | PTAB915DN02 |
| L17ACTN-U23 | L19NCDT-U00 | L5PHSDP-U19 | PTAB915DN03 |
| L17ACTN-U32 | L5CDSDP-U01 | L5PHSDP-U29 | PTAB915DN04 |
| L17ACTN-UC3 | L5CDSDP-U21 | L5PVTPP-U25 | PTAB915DN07 |
| PTAB915DN09 | PTAB915DN10 | PTAB915DN11 | PTAB915DN12 |
| RTABB10-S01 | TTAB510-N03 | TTAB910EA01 | TTAB910EG01 |
| TTAB910EN01 | TTAB910EN02 | TTAB910-N01 | TTAB910-N04 |
| TTAB915DN01 | TTABA12DB04 | TTABA12DF02 | TTABA12DN04 |
| TTABA12DN06 | TTABB10-N01 | TTABB10-N02 | TTABB12DB15 |

6

| TTABB12DCN1 | TTABB12DDN6 | TTABB12DH05 | TTABB12DJ06 |
| TTABB12DN01 | TTABB12DN02 | TTABB12DN03 | TTABB12DN04 |
| TTABB12DN07 | TTABB12DN10 | TTABB12DN12 | TTABB12DN14 |
| TTABB12DN15 | TTABB12DN16 | TTABB12DN18 | VTAB830-E01 |
| VTAB830-E02 | VTAB830-N01 | VTAB830-P05 | |

**Interrogatory No. 3.**

Identify each type of visual display product (such as the Tatung L17AMTN monitor) manufactured, shipped, imported, sold, and/or offered for sale, in or to the United States, by or for you, since January 1, 2002.

**Response:**

TATUNG specifically objects to this Request on the grounds that the phrase, "type of visual display product," is vague and ambiguous terms," renders it overbroad and unduly burdensome. TATUNG also objects to this Request on the grounds that it is not limited to the U.S. market and, therefore, seeks information which is not relevant to the claims or defenses of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the general and specific objections, TATUNG refers Plaintiff to the Response to Interrogatory No. 2.[1]

**Interrogatory No. 4.**

State the date that you first became aware of each of the Patents-In-Suit and describe in detail the circumstances surrounding your first knowledge of each of the Patents-In-Suit, including, but not limited to, identifying the person at Tatung who first learned of each of the Patents-In-Suit and from what source, explaining the manner in which that person

---

[1] Please note that TATUNG manufactures five models of the Tatung L17AMTN, the L17AMTN-U01, L17AMTN-U03, L17AMTN-U22, L17AMTN-U22, and L17AMTN-U32. Consistent with Plaintiff's requests, TATUNG will refer to these models collectively as "Tatung L17AMTN."

7

learned of the Patents-In-Suit, and identifying all documents that reflect when and how you learned of the Patents-In-Suit.

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG responds that it first became aware of each of the Patents-In-Suit when it was served with Plaintiff's Complaint in this action on or about May 28, 2004.

**Interrogatory No. 5.**

Describe in detail any and all efforts made by you, or on your behalf, to avoid infringing the Patents-In-Suit since the time that you first learned of either of the Patents-In-Suit.

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. TATUNG further objects to this Interrogatory to the extent it seeks documents that are protected by the attorney-client privilege and/or the work product doctrine, or that are otherwise privileged and protected from disclosure. TATUNG also objects to this Interrogatory on the grounds that it seeks information which is not relevant to the claims or defenses of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the general and specific objections, TATUNG states that it has not and does not infringe the Patents-In-Suit. Discovery is continuing and TATUNG reserves the right to supplement this response.

8

**Interrogatory No. 6.**

State whether you intend to rely on any legal opinion or advice as part of your defense concerning the scope, validity, enforceability, or infringement of any of the Patents-In-Suit, and, if so, identify each legal opinion, including whether it is written or oral, the author(s), recipient(s), date, and subject matter regarding each opinion, and identify all facts and documents considered for purposes of each opinion.

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG responds that it has not yet finally determined which defenses it will pursue, including without limitation, whether it will rely on advice of counsel as a defense to Plaintiff's claims. TATUNG will make this determination in accordance with the directions and schedule set by the Court. TATUNG does intend to rely on the written judgment of His Honour Judge Fysh QC, Patents County Court, United Kingdom, which was entered on November 28, 2005 in the case of LG.Philips LCD Co., Ltd. (Claimant) and (1) Tatung (U.K.) Ltd., (2) ViewSonic Europe Ltd., and (3) Number One Services Ltd. (Defendants), Case No. PAT04022. The subject matter of the judgment was a finding that Tatung (U.K.) Ltd 's CCTV did not infringe LG's UK Patent No. 2 346 464 (as it was proposed to be amended), the foreign counterpart to the Patents-In-Suit; that the Patent (as proposed to be amended) was invalid over the prior art references of US Pat. No. 5,570,267 (Ma), U.S. Pat. No. 5,119,204 (Hashimoto), JP 09-190156 (Fujitsu '156), JP 09-171358 (Fujitsu '358); and that the Patent as granted is revoked. The facts and documents considered for this judgment include everything filed in the case and the testimony and evidence presented at trial.

9

**Interrogatory No. 7.**

Identify each investigation concerning the Patents-In-Suit undertaken by you or on your behalf (including, for example, prior art searches, tests, or analysis related to patent scope, validity, and/or infringement) and describe in detail each such investigation, including the date(s), the person(s) involved, the scope of the investigation, the results and conclusions of the investigation, and identify all documents used or created concerning the investigation.

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. TATUNG further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. TATUNG also objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure. Finally, TATUNG objects on the grounds that this Interrogatory seeks information which is not relevant to the claims or defenses of this lawsuit, and which is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the general and specific objections, TATUNG refers Plaintiff to the prior art that TATUNG has already produced and made available for inspection in this case. TATUNG further asserts that the burden of deriving or ascertaining the answer is substantially the same for both Plaintiff and TATUNG and, pursuant to Fed. R. Civ. P. Rule 33(d), will provide the following records from which the answer may be derived or ascertained: TDE-000095-000168. The remainder of this Interrogatory seeks information that is privileged and/or seeks a premature disclosure of expert testimony. TATUNG will disclose its expert reports in accordance with the directions and schedule set by the Court. Discovery is continuing and TATUNG reserves the right to supplement this response.

10

**Interrogatory No. 8.**

If you contend that any claim of the Patents-In-Suit is invalid for any reason (including, for example, under 35 U.S.C. §§ 101, 102, 103, and 112), then as to each such claim and patent, set forth in detail the entire basis for your contention, including stating all relevant facts, identifying all documents on which you rely to support your contention, and identifying all persons with information or knowledge relevant to your contention, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. TATUNG further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. TATUNG also objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure. Finally, TATUNG objects on the grounds that this Interrogatory seeks information which is not relevant to the claims or defenses of this lawsuit, and which is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the general and specific objections, TATUNG will provide a complete response to this Interrogatory as part of the disclosure of its expert reports in accordance with the directions and schedule set by the Court. TATUNG presently believes that the response to this Interrogatory includes the information contained in TATUNG's responses to Interrogatory Nos. 7, 10 and 11 and, at a minimum, the following:

Facts: TATUNG responds on information and belief that information responsive to this Interrogatory is in co-defendant ViewSonic's Opposition to Plaintiff's Motion for Preliminary Injunction, its Request to File Sur-Reply, and the supporting Declarations and Exhibits. Additional facts responsive to this Interrogatory are set forth in the deposition transcript of William Bohannon, taken August 6, 2004; the deposition transcript of Mark Brinkerhoff, taken

11

January 20, 2005; the witness statements of Nicholas Talesfore dated August 11, 2005 and September 14, 2005; the witness statements of Mark Brinkerhoff dated July 29, 2005 and September 6, 2005, the witness statement of Stuart Morgan dated July 20, 2005; the testimony of Nicholas Talesfore given on September 15 and 16, 2005 in the UK Patents County Court Case No. PAT04022; the testimony of Mark Brinkerhoff given on September 19, 2005 in the UK Patents County Court Case No. PAT04022; the testimony of Stuart Morgan given on September 20, 2005 in the UK Patents County Court Case No. PAT04022; the facts contained in the March 7, 2005 draft amended Particulars of Infringement in the UK Patents County Court Case No PAT04022. Facts contained in the March 22, 2005 - Amended Particulars of Infringement in the UK Patents County Court Case No. PAT04022. Facts contained in the August 11 2005 Re-Amended Particulars of Infringement in the UK Patents County Court Case No. PAT0402 The transcripts and exhibits from the trial held in the UK Patents County Court Case No. PAT04022 on September 15, 16, 19-22, 2005; and the Judgment rendered on November 28, 2005 in the UK Patents County Court Case No PAT04022.

Documents: The USPTO file history for the Patents-In-Suit. In addition to those prior art documents and products already produced in this case by ViewSonic, documents that support this contention include, documents produced by TATUNG in response to Plaintiff's Second Set of Requests for Production of Documents, Plaintiff's Motion for Preliminary Injunction, ViewSonic's Opposition to Plaintiff's Motion for Preliminary Injunction, Plaintiff's Reply, ViewSonic's Request to File Sur-Reply, the First and Fourth Declarations of William Bohannon, the Declaration and Supplemental Declaration of Mark Brinkerhoff, the Declaration of Mike Zapka, the Declaration of Alexandra Brodie, the Declaration of Tracy Roman, the deposition transcript of William Bohannon, the deposition transcript of Mark Brinkerhoff, the witness

statements of Nicholas Talesfore, the witness statements of Mark Brinkerhoff, the witness statement of Stuart Morgan, the transcripts and exhibits from the trial held in the UK Patents County Court Case No. PAT04022 on September 15, 16, 19-22, 2005; draft amended Particulars of Infringement in the UK Patents County Court Case No. PAT04022; Amended Particulars of Infringement March 22, 2005 in the UK Patents County Court Case No. PAT04022; Re-Amended Particulars of Infringement August 11 2005 in the UK Patents County Court Case No. PAT0402. and the Judgment rendered on November 28, 2005 in the UK Patents County Court Case No PAT04022. Tatung responds on information and belief that the records of, and pertaining to, the prosecution and subsequent appeal of the sibling Japanese patent application No. JP 2000132279.

People:  At least the following:

Jong Hwan Kim; Young Woo Cho; Nicholas Talesfore; William Bohannon; Song K. Jung; Rebecca Goldman Rudish; Matthew Bailey; John M Kelly; Eric Nuss; Kenneth D. Springer Mark Brinkerhoff, Stuart Morgan.

Discovery is ongoing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 9.**

For each claim of the Patents-In-Suit that you contend would have been obvious in response to the preceding interrogatory, identify each portion of each prior art item that provides an incentive, suggestion, and/or motivation to combine or modify the prior art to achieve the claimed invention, citing the document, page, column, line and/or figure reference numbers, as well as any testimony or statements supporting your contention.

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. TATUNG further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. TATUNG also objects to this Interrogatory to the extent it

13

seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure. Finally, TATUNG objects on the grounds that this Interrogatory seeks information which is not relevant to the claims or defenses of this lawsuit, and which is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the general and specific objections, TATUNG refers Plaintiff to the Response to Interrogatory No. 8.

**Interrogatory No. 10.**

Identify each prior art reference or item that you contend is relevant, including prior use and product(s).

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. TATUNG further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG states that the prior art includes at least the following:

Products

(a)    Pixelvision SGT15P

(b)    IBM 9052

(c)    IBM 9516

(d)    Tatung L4KAS

(e)    Hewlett-Packard S1010 and/or S1010a

(f)    ViewSonic VP140

14

(g)    ViewSonic VPA138

(h)    Sharp TFT-LCD module Model No. LQ4RA35

(i)    Sharp TFT-LCD module Model No. LQ4RA32

(j)    Sharp Backlight Unit Model No. Model No. LQ0B03

(k)    The Primary Display Units for the Boeing 777 aircraft including Honeywell Part
       No. 4073610 (31-61-04) and (31-31-26)

Patents/Publications

(l)    "Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE - The
       International Society for Optical Engineering.

(m)    F-16 retrofit application using a modular avionics system architecture and color
       active matrix liquid crystal displays"

(n)    Randall E. Orkis, May 1994, Vol. 2219 Cockpit Displays SPIE - The International
       Society for Optical Engineering.

(o)    "An improved Full Color F16A/B and F16C/D Multi-Function Display Using A
       Ruggedized COTS Active Matrix Color Liquid Display Crystal Display"

(p)    U.S. Pat. No. 5,041,965 – issued August 20, 1991

(q)    U.S. Pat. No. 5,119,204 – issued June 2, 1992

(r)    U.S. Pat. No. 5,570,267 – issued October 29, 1996

(s)    U.S. Pat. No. 5,831,816 – filed June 12, 1997

(t)    U.S. Pat. No. 6,068,227 filed March 11, 1997

(u)    JP 09-190156 – published July 1997

(v)    JP 09-171358 – published July 1997

(w)    JP Publication number 05-188810

(x)    Sharp Liquid Crystal Display Group Sharp Corporation SPECIFICATION TFT-
       LCD module MODEL No. 4LQRA35 - July 1993

(y)    Sharp Liquid Crystal Display Group Sharp Corporation SPECIFICATION TFT-
       LCD module MODEL No. 4LQRA31  4LQRA32 - May 1991

15

(z)     Sharp Liquid Crystal Display Group Sharp Corporation SPECIFICATION BACKLIGHT UNIT MODEL No. LQ0B01   - published July 31 1992

TATUNG also relies on the references identified by codefendants ViewSonic.  Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 11.**

For each prior art reference or item on which you rely, describe in detail how the alleged prior art reference or item qualifies as prior art under every section of Title 35 of the United States Code on which you rely, including, for example: the first date, by whom, and how the alleged prior art was known or used in the U.S., patented or described in a printed publication in any country, and/or conceived and reduced to practice; the making, knowledge, use, or sale of the prior art; the authors and title of each patent, patent application, and article/publication; the date that each reference was issued, filed, or published; the number of each patent and patent application; and/or the country(ies) where each reference was issued, filed, or published.

**Response:**

Tatung specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery.   TATUNG further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG states that the prior art includes at least the following:

"F-16 retrofit application using a modular avionics system architecture and color active matrix liquid crystal displays" Published May 1994;

"An improved Full Color F16A/B and F16C/D Multi-Function Display Using A Ruggedized COTS Active Matrix Color Liquid Display Crystal Display" Published March 1995;

"Cockpit Displays III," Darryl G. Hopper, April 10-11, 1996, SPIE - The International

16

Society for Optical Engineering;

U.S. Pat. No. 5,041,965 (Chen) – issued August 20, 1991;
U.S. Pat. No. 5,119,204 (Hashimoto) – issued June 2, 1992;

U.S. Pat. No. 5,570,267 – (Ma) issued October 29, 1996;

U.S. Pat. No. 5,831,816 – (Johns) filed June 12, 1997;

U.S. Pat. No. 6,068,227 (Morgan) filed March 11, 1997;

JP 09-190156 – (Fujitsu) published July 1997;

JP 09-171358 – (Fujitsu) published July 1997;

JP 05-188810  (Sumitomo Wiring System Ltd. ) published January 1995;

Sharp Liquid Crystal Display Group Sharp Corporation SPECIFICATION TFT-LCD module MODEL No. 4LQRA35 - published July 1993;

Sharp Liquid Crystal Display Group Sharp Corporation SPECIFICATION TFT-LCD module MODEL No. 4LQRA31   4LQRA32 - published May 1991;

Sharp Liquid Crystal Display Group Sharp Corporation SPECIFICATION BACKLIGHT UNIT MODEL No. LQ0B01   - published July 31 1992;

On information and belief, TATUNG responds that co-defendant ViewSonic's VP140 product line was first manufactured and made available for sale in the United States in the first quarter of 1997 and was selling from   March 1997 through October 1998. ViewSonic sold 13,696 units of the VP140 LCD monitor in the United States.

On information and belief, TATUNG responds that co-defendant ViewSonic's VPA138 product line was first manufactured and made available for sale in the United States in the fourth quarter of 1997.  From November 1997 through October 1998, ViewSonic sold 3,183 units of the VP140 LCD monitor in the United States.

The IBM 9052 Monitor bears identification references 39H7116 JSR NC401 C-1030 1-3

17

and has a date stamp indicating 1/96 imprinted onto the interior metal tray.

According to the IBM website, the IBM 9516 monitors were announced on March 16, 1998 and had an expected product availability date of March 17, 1998. In addition, an article dated April 1998 reviewing the IBM 9516 monitor was published online at www.techweb.com. As to the particular monitor referenced in Mr. Brinkerhoff's Supplemental Declaration, it bears Serial No. 97-01887 and indicates it was manufactured by IBM Japan Ltd in 1997. TATUNG is informed and believes that that particular IBM 9516 monitor has been in use since before October 1998.

The TATUNG Monitor LK4AS product line was first manufactured and made available for sale in the United States in the third quarter of 1998.

TATUNG is informed and believes that that Sharp TFT-LCD module MODEL No. LQ4RA35 was available on or before July 1993.

TATUNG is informed and believes that that Sharp TFT-LCD module MODEL No. LQ4RA31 was available on or before May 1991.

TATUNG is informed and believes that that Sharp TFT-LCD module MODEL No. LQ4RA32 was available on or before May 1991.

TATUNG is informed and believes that that Sharp TFT-LCD backlight LQ0B03 was available on or before July 1993.

TATUNG is informed and believes that that Sharp TFT-LCD backlight LQ0B01 was available on or before July 1992.

TATUNG is informed and believes that the PixelVision SGT15P was made publicly available in 1997. His Honour Judge Fysh QC has adjudged that the PixelVision monitor was publicly available before October 23, 1999. As to the particular monitor referenced in Mr. Brinkerhoff's Supplemental Declaration, its housing bears serial number PVN97 42074, its printed circuit board bears serial number 9742074 and a copyright date of 1997, and its rear housing is imprinted with a date stamp of 8/97.

18

See also the Answer of co-defendant ViewSonic to the Complaint. Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 12.**

If you contend that you previously conceived, reduced to practice, or otherwise invented the subject matter recited in the Patents-In-Suit, set forth in detail the entire basis for your contention, including stating all relevant facts, identifying all documents on which you rely for this contention, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure. TATUNG further objects to this Interrogatory as vague and ambiguous as the term "previously" has no reference to any point in time, thus making the Interrogatory unintelligible. In view of these objections, no further response is possible until further clarification is provided as to what the term "previously" means in the context of Interrogatory No. 12.

**Interrogatory No. 13.**

Regarding your ninth affirmative defense (laches), set forth in detail the entire basis for your defense, including stating all relevant facts, identifying all documents on which you rely for this defense, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

19

Subject to and without waiver of the general and specific objections, TATUNG states that L17AMTN has been offered for sale at least as early as January 17, 2003. By way of further response, TATUNG responds by stating that the additional information necessary to respond to this Interrogatory is in Plaintiff's possession. Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 14.**

Regarding your tenth affirmative defense (estoppel), set forth in detail the entire basis for your defense, including stating all relevant facts, identifying all documents on which you rely for this defense, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG responds by stating that the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for both Plaintiff and TATUNG and, pursuant to Fed. R. Civ. P. Rule 33(d), will rely upon the following records from which the answer may be derived or ascertained: the prosecution histories of the Patents-In-Suits. Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 15.**

Regarding your eleventh affirmative defense (unclean hands), set forth in detail the entire basis for your defense, including stating all relevant facts, identifying all documents on which you rely for this defense, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

20

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG responds by stating that the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for both Plaintiff and TATUNG and, pursuant to Fed. R. Civ. P. Rule 33(d), will provide the following records from which the answer may be derived or ascertained: TDE 000001-000090. TATUNG further states that the additional information necessary to respond to this Interrogatory is in Plaintiff's possession. TATUNG has conducted a reasonable inquiry and diligent search, but has not yet located additional information responsive to this Interrogatory. Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 16.**

Regarding your twelfth affirmative defense (marking), set forth in detail the entire basis for your defense, including stating all relevant facts, identifying all documents on which you rely for this defense, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. TATUNG further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG states that, on information and belief, it believes that Plaintiff has sold products which practice the

21

Patents-In-Suit but which have not been marked in accordance with 35 U.S.C. § 287. TATUNG further states that additional information necessary to respond further to this Interrogatory is in Plaintiff's possession, which TATUNG expects to discover as the case continues. TATUNG has conducted a reasonable inquiry and diligent search, but has not yet located additional information responsive to this Interrogatory. Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 17.**

> Regarding your thirteenth affirmative defense (patent misuse), set forth in detail the entire basis for your defense, including stating all relevant facts, identifying all documents on which you rely for this defense, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory on the grounds that it prematurely seeks expert discovery. TATUNG further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG states that LG has previously sued Tatung (UK) Ltd. before the UK Patents County Court Case No. PAT04022 for infringement of a UK counterpart patent (GB2346464) to the patents in-suit for LG's so-called "rear mount" technology. Initially, LG claimed infringement against the L17AMTN monitor and provided the court with a primary case on construction and infringement by such monitor. Eventually, after receiving TATUNG's various disclosures of prior art, LG amended its "Particulars of Infringement", sought to amend the claims, and withdrew its claim of infringement against the L17AMTN monitor.

RLF1-2980641-1

By the time the case came to trial in the UK, LG no longer claimed that the L17AMTN monitor infringed its patent, whether as granted or as sought to be amended. The UK court found the UK patent to be invalid and so revoked it pending any appeal by LG. The UK court also refused LG's application to amend the patent and dismissed all of its remaining assertions of infringement against other TATUNG's monitors.  TATUNG further states that pursuant to Fed. R. Civ. P. Rule 33(d), TATUNG will rely the following records from which the answer may be derived or ascertained:  TDE 000169-000183.

By way of further response, TATUNG refers Plaintiff to the prior art that TATUNG has already produced and made available for inspection in this case and to TATUNG's responses to Interrogatory Nos. 10 and 11.  TATUNG also states that some of the information necessary to respond to this Interrogatory is in Plaintiff's possession.  Discovery is continuing and TATUNG reserves the right to supplement this response.

**Interrogatory No. 18.**

> Regarding your fourteenth affirmative defense (inequitable conduct), set forth in detail the entire basis for your defense (specifically including, but not limited to, the basis for your allegation that "The failure to disclose this information was knowing, willful, and done with an intent to deceive the PTO into issuing the patents-in-suit"), including stating all relevant facts, identifying all documents on which you rely for this defense, and identifying all persons with information or knowledge relevant to this defense, summarizing each person's knowledge.

**Response:**

TATUNG specifically objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege and/or the work product doctrine, or that is otherwise privileged and protected from disclosure.

Subject to and without waiver of the general and specific objections, TATUNG responds by stating that, at present, its inequitable conduct defense is based on conduct and information

23

including, but not limited to, the following: misrepresentations of or failures to disclose material information such as limitations of the foreign patent relied upon; failure to disclose prior art believed to be known to plaintiff, its employees and agents, due to the wide availability of various LCD monitors and devices sold, offered for sale, marketed and/or manufactured by others, including products sold by Pixelvision, such as the SGT 115; CTX, such as the Panoview 600; IBM, such as the 9052; Apple, such as the duo product line and flat panel display for the Apple II; Tatung, such as L4KAS; Hewlett-Packard, such as the s1010a; Sun, such as the Voyager; Compaq, such as the 640; ViewSonic, such as the 140; Advantech, such as the PPC-140T and, on information and belief, Sumitomo and LG Semicon; and failure to disclose publications and patents including "Cockpit Displays;" U.S. Pat. Nos. 5,041,965; 5,119,204; 5,570,267; 5,831,816; 5,844,772; and Japanese Patent Nos. 407020447A, 4091711358A, 4019190156A, 406214511A, and 410117313A. TATUNG further states that the persons with knowledge pertaining to TATUNG's defense are as follows; Song K. Jung, Rebecca Goldman Rudish; Matthew Bailey; John M Kelly; Eric Nuss; Kenneth D. Springer.

By way of further response, TATUNG states that additional information necessary to respond to this Interrogatory is in Plaintiff's possession. Discovery is continuing and TATUNG reserves the right to supplement this response.

24

As to Objections,

*Anne Shea Gaza /AMS #4351*

Of Counsel:                                    Frederick L. Cottrell, III (#2555)
Christopher Darrow                       Anne Shea Gaza (#4093)
Mark H. Krietzman                        Richards, Layton & Finger, P.A.
Andrews Eliseev                            One Rodney Square
Greenberg Traurig LLP                  P.O. Box 551
2450 Colorado Avenue, Suite 400E   Wilmington, Delaware 19899
Santa Monica, CA 90404               (302) 651-7700
Telephone: 310-586-7700              cottrell@rlf.com
                                                    gaza@rlf.com
Kathryn L. Clune                           Attorneys for Defendant Tatung Company of
Greenberg Traurig LLP                  America Inc
800 Connecticut Avenue, N.W., Suite 500
Washington, DC 20006

Dated: February 13, 2006

25

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2006, I caused to be served by hand delivery and

electronic mail the foregoing document to the following:

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
Wilmington, DE 19899

Richard L. Horwitz, Esquire
David E. Moore, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899

I hereby certify that on February 13, 2006, I have sent by Federal Express and electronic

mail the foregoing document to the following:

Daniel G. Jarcho, Esquire
Cass W. Christenson, Esquire
Lora A. Brzezynski, Esquire
Matthew T. Bailey, Esquire
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington D.C. 20006

Scott R. Miller, Esquire
Tracy R. Roman, Esquire
Bingham McCutchen
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

RLF1-2980626-1