**EXHIBIT A**

**SUBJECT MATTERS FOR POST CLAIM CONSTRUCTION RULE**

**30(B)(6) DEPOSITIONS OF LPL**

## I.    Definitions

1.    "ViewSonic" means Defendant ViewSonic Corporation and includes any and all of its predecessors and successors-in-interest, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

2.    "Tatung" means Defendants Tatung Company and Tatung Company of America and include any and all of their predecessors and successors-in-interest, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

3.    "LPL" means Plaintiff LG. Philips LCD Co., Ltd. and includes any and all of its predecessors and successors-in-interest in its business, any and all parents, subsidiaries, divisions, affiliates and affiliated entities as well as the respective officers, directors, agents, employees, attorneys, accountants, consultants and representatives of the foregoing.

4.    "You," "Yours," and "Your" means LPL.

5.    The "'718 patent" shall mean and refer to United States Patent No. 6,498,718.

6.    The "'641 patent" shall mean and refer to United States Patent No. 6,501,641.

7.    The term "Asserted Patents" shall mean and refer to the '718

Patent and the '641 Patent, or any of them.

      8.    The term "Counterpart," when used in reference to any patent, means any parent, continuation, continuation in part, divisional or other application or patent, pending, issued or abandoned, that claims priority, directly or indirectly, on or though any of the Asserted Patents or any patent through which any of the Asserted Patents claim priority, whether it be pending, issued or abandoned.

      9.    The singular of a term includes the plural form and vice versa, except as the context may otherwise require; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any request for production; the word "any" means "any and all;" the word "including" means "including without limitation."

      10.    The term "document" is used in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical, digital, or electronic process, including electronic mail, computer tapes, disks, ROM, CD-ROM, DVD, videotape or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy:  agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopier; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily

planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; Things; foils; slides; negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium.  A draft or non-identical copy is a separate document within the meaning of this term.

11.    "Things" means any tangible item, including, without limitation, models, prototypes and samples of any device or apparatus.

12.    "Relate to" shall mean anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

13.    "Patent Holder" shall mean any inventor, licensee and all assignees of the rights of any invention in any of the Asserted Patents and/or any Counterpart thereof.

14.    "Communication" shall mean any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances.

15.    The term "prior art" shall have the same meaning as "prior art" used in 35 U.S.C. § 103, and shall also include all of the events set forth in

each and every subdivision of 35 U.S.C. § 102, including, without limitation, prior knowledge, prior publication, prior patenting, prior invention, public use, offer for sale and sale.

16.     "Flat Panel Display Products" shall mean any product that uses, contains, or incorporates one or more LCDs, PDPs or FEDs, and includes by way of example flat screen computer monitors, lap top screens and flat screen televisions.

17.     The term "LCD" shall mean any display which uses liquid crystals to form or create an image (regardless of the technology, *e.g.* active vs. passive matrix; MVA; IPS; TN, etc.).  The terms "PDP" and "FED" shall be interpreted as the terms PDP and FED are used in the specifications of the Asserted Patents and/or any Counterpart thereof.

18.     "Recent Discovery" shall mean the documents produced by LPL after June 29, 2007 including those bearing the Bates ranges of LPL 18927 – LPL 21540, and any supplemental or replacement production from LPL, including the replacement production identified in Mr. Auito's August 7, 2007 email and discussed during the August 7, 2007 hearing with the Special Master.

19.     "Prior Art LPL Product" shall mean the products disclosed in the Recent Discovery and that were conceived, made, marketed, sold, distributed, disclosed and/or offered for sale by LPL on or before December 31, 1998 that includes an LCD, PDP and/or FED.

20.     "Other LPL Product" shall mean the products disclosed in the Recent Discovery and that were conceived, made, marketed, sold, distributed and/or offered for sale by LPL on or after January 1, 1999 that includes an LCD, PDP and/or FED.

21.    "LPL Product" shall refer collectively to Prior Art LPL Products and Other LPL Products.

22.    "Mounting Technology" shall mean the structures, devices and/or methods used to affix, assemble or secure an LCD, PDP, FED and/or an LPL Product within, on or to another structure including, without limitation, a Flat Panel Display Product.

23.    "Accused Products" shall mean any product, including without limitation, all products sold, offered for sale, imported, used, or made, by or on behalf of, any defendant which LPL asserts infringes or may infringe any of the Asserted Patents or any Counterpart thereof and also including those products identified by LPL in response to ViewSonic's Interrogatory Nos. 1, 3 and 4.

24.    The terms "concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, pertaining to, describing, evidencing, constituting, comprising, supporting, refuting or contradicting the referenced subject.

25.    Regardless of the tense employed, all verbs shall be read as applying to past, present and future as is necessary to make the phrase more, rather than less inclusive.

**TOPICS FOR EXAMINATION**

 **Topic No. 1**

 b. The facts concerning whether the Prior Art LPL Products contain the structural components of a flat panel display device as defined by the Special Master in his June 15, 2007 Order regarding claim construction.

 c. The location, structure, performance and/or function associated with each design of any manner and/or method to affix, attach and/or secure a Prior Art LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product, and the relationship of any product model number and/or other product designation to those issues.

 d. The location, structure, performance and/or function of any Fastening Parts or Fastening Elements, including but not limited to holes, through holes or threaded holes or holes used as part of a fastening or locking mechanism, within or on any surface of a Prior Art LPL Product, (including fastening elements used to assemble the Product), and the relationship of any product model number and/or other product designation to those issues.

 e. The development of, the disclosure of, uses, offers to sell, and/or sales of each Prior Art LPL Product.

 **Topic No. 2**

 b. The facts concerning whether the Other LPL Products contain the structural components of a flat panel display device as defined by the Special Master in his June 15, 2007 Order regarding claim construction.

 c. The location, structure, performance and/or function associated with each design of any manner and/or method to affix, attach and/or secure

an Other LPL Product within, on or to another structure of any type including, without limitation, a Flat Panel Display Product, and the relationship of any product model number and/or other product designation to those issues.

   d. The location, structure, performance and/or function of any Fastening Parts or Fastening Elements, including but not limited to holes, through holes or threaded holes or holes used as part of a fastening or locking mechanism, within or on any surface of an Other LPL Product, (including fastening elements used to assemble the Product), and the relationship of any product model number and/or other product designation to those issues.

   e. The development of, disclosure of and/or the uses, offers to sell, and/or sales of each Other LPL Product.

   **Topic No. 3**

   c. The identity of any and all Flat Panel Display Products disclosed, marketed, shipped, imported, transferred, sold, and/or distributed to persons in or from the United States comprising or containing a Prior Art LPL Product and/or Other LPL Product, including without limitation the identity of the manufacturer, brand name, model number, and product description.

   d. The facts concerning distributors, suppliers, channels, and networks through which you have, directly by you, for you or on your behalf, marketed, shipped, imported, transferred, sold, and/or distributed Prior Art LPL Products and/or Other LPL Product, the relationship between or among you and all such entities, the identity of all such entities, any contracts, agreements, or contractual business arrangements between you and such entities, and the quantity and value of such products.

e.      The facts concerning the disclosure, importation, manufacture, distribution, promotion, marketing, advertising, purchases, or sales of any Prior Art LPL Products, Other LPL Products and/or Flat Panel Display Products comprising or containing an LPL Product, including without limitation the timing and content of any such disclosures, in order to ascertain whether the Products qualify as prior art and/or whether the products have or have not achieved commercial success.

**Topic No. 4**

a.      Facts concerning any reasonable royalty applicable to the Asserted Patents for the Accused Products based on the structure, function, sales, costs, profits, return on investment, lost sales, customer demand and/or any other relevant *Georgia Pacific* factor associated with the LPL Products and/or any Flat Panel Display Product using, employing and/or embodying any LPL Product..

b.      All actions you have taken to sell, distribute, market, promote, advertise any patent or right you hold, claim to hold and/or license which relates to any LPL Prior Art Product and/or LPL Other Product and/or any Flat Panel Display Product using, employing and/or embodying any LPL Product, including the marketing of any fastening elements or mounting features and any benefits or advantages thereof.

d.      All forecasts, projections or expectations, since January 1, 1996, regarding sales and/or profitability for any LPL Prior Art Product and/or LPL Other Product.

**Topic No. 5**

Facts underlying or relating to the presence or absence of any "commercial success" of the subject matter and/or inventions disclosed

and/or claimed in each of the Asserted Patents and/or any Counterpart thereof as evidenced by any LPL Prior Art Product and/or LPL Other Product.

**Topic No. 6**

a.      LPL's document, data, product and/or record retention policies and procedures and/or the adherence or suspension of such policies in connection with this litigation, as it relates to the Recent Discovery.

c.      The storage of, access to and searchability and/or retrieval of the Recent Discovery, including efforts You took to gather and search for the Recent Discovery, and any samples or other documents subsequently produced.

d.      LPL's possession, retention, storage, or archiving of any LPL Product, including without limitation, any LPL Prior Art Product and/or LPL Other Product.

e.      All specifications, drawings, manuals, instructions, or procedures relating to any Prior Art LPL Product and/or Other LPL Product.

g.      The access to, gathering of, retrieval, review, and production of documents in the following cases:  *LG.Philips LCD Co., Ltd. v. NEC Corporation, et al.*, District of Delaware, Case No. 1:99-cv-00726-RRM, and *LG.Philips LCD Co., Ltd. v. NEC Corporation, et al.*, District of Delaware, Case No. 1:99-cv-00680-RRM (the "NEC Litigation").

h.      The people who had access to, or who were involved in the gathering of, retrieval, review or production of, documents in the NEC Litigation and the nature of their job duties and responsibilities.

**Topic No. 7**

a.      The disclosure or nondisclosure of any Prior Art LPL Product or any feature thereof to any patent office or similar authority during prosecution of each of the Asserted Patents and/or any Counterpart thereof, including without limitation any Information Disclosure Statements and/or PTO-1449 Forms submitted to the U.S. Patent and Trademark Office.

b.      All facts and circumstances relating to the disclosure or nondisclosure of any LPL Prior Art Product, or any feature thereof, and/or any Flat Panel Display Product, including without limitation any LCD, PDP, or FED product that has a fastening part or element at its rear surface, to any patent office or similar authority during prosecution of each of the Asserted Patents and/or any Counterpart thereof, including without limitation any Information Disclosure Statements and/or PTO-1449 Forms submitted to the U.S. Patent and Trademark Office.

c.      All details regarding the awareness of any of the inventors of the Asserted Patents and/or any Counterpart thereof, the attorneys who prepared and/or prosecuted the applications that led to the Asserted Patents and/or any Counterpart thereof, and anybody substantively involved in the preparation and/or prosecution of the applications that led to the Asserted Patents and/or any Counterpart thereof of any Prior Art LPL Product and any feature thereof that may bear on patentability and/or any argument made by LPL to any Patent Office, including without limitation, the statements contained in the Amendment filed on or about January 17, 2001 in the prosecution of the application that led to the '641 patent.

h.      The facts known to anyone involved in the prosecution of the applications for the Asserted Patents and/or any Counterpart thereof, including without limitation, LPL and/or the inventors, or their attorneys

and/or agents, relating to the existence of and/or structure of Prior Art LPL Products, including without limitation the location of fastening parts or elements on the product used for any purpose, if at all.

       i.     Any facts or circumstances that support, evidence, contradict or negate the defense of inequitable conduct.

     **Topic No. 8**

       b.     The contents of the Recent Discovery and whether the documents produced therein meet the requirements of admissible evidence under the Federal Rules of Evidence.

       d.     Any samples of any LPL products produced before this deposition in response to the Special Master's Order during the hearing dated August 7, 2007.