# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

          Plaintiff/Counterclaim Defendant,

        v.

TATUNG CO.; TATUNG COMPANY OF
AMERICA, INC.; and VIEWSONIC
CORPORATION,

          Defendants/Counterclaim Plaintiffs.

Civil Action No. 04-343 (JJF)

**PLAINTIFF LG.PHILIPS LCD CO., LTD.'S OBJECTIONS TO SPECIAL
MASTER'S SEPTEMBER 5, 2007 REPORT AND RECOMMENDATIONS**

THE BAYARD FIRM

Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

September 17, 2007

670508-1

# TABLE OF CONTENTS

**Page**

I.  NATURE & STAGE OF THE PROCEEDINGS ................................................. 1

II.  SUMMARY OF ARGUMENT ............................................................. 2

III.  STATEMENT OF FACTS ............................................................... 3

    A.  Tatung Asserts Affirmative Defense of Inequitable Conduct.................. 3

    B.  Tatung Subpoenas Ms. Rudich Regarding Protective Order Issues
        and then Withdraws the Subpoena............................................ 4

    C.  Tatung Attempts to Revive the Subpoena Regarding Only the '079
        Application, Not Prosecution of the Patents-in-Suit................................ 4

    D.  Tatung Attempts to Shift Course and Seek a Deposition Regarding
        Asserted Prior Art Reflected in LPL's Supplemental Document
        Production ................................................................. 5

    E.  Tatung Shifts Course Again and Seeks a Broad Deposition from
        McKenna Regarding Patent Prosecution and Inequitable Conduct.......... 6

IV.  ARGUMENT .......................................................................... 8

    A.  Standards of Review .................................................... 9

    B.  Tatung's Attempt to Depose McKenna after the Deposition
        Deadline is Untimely and Improper........................................... 9

    C.  The Topics Noticed by Defendants are Overly Broad and Seek
        Privileged Communications and Proprietary Information...................... 13

    D.  Any Deposition of McKenna May be Unnecessary and, at a
        Minimum, Should be Postponed and Limited ......................................... 16

V.  CONCLUSION.......................................................................... 19

670508-1

# TABLE OF AUTHORITIES

<u>**Page**</u>

## <u>CASES</u>

*3M Co. v. Kanbar, MK Enter.,*
    No. C06-01225 JW (HRL), 2007 WL 1794936,
    at *1, *2 (N.D. Cal. June 19, 2007) ............................................................ 15

*Allergan, Inc v. Pharmacia Corp.,*
    No. Civ. A 01-141-SLR, 2002 WL 1268047 at *1 (D. Del. May 17, 2002) ....... passim

*Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.,*
    430 F. Supp. 2d 346 (D. Del. 2006) ........................................................... 15

*Gallas v. Supreme Court of Pennsylvania,*
    211 F.3d 760 (3d. Cir. 2000) ..................................................................... 9

*Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.,*
    Civ. A. Nos. 03-5550 (MLC), 04-1686 (MLC),
    2007 WL 188285, at * 1, *6 (D.N.J. Jan. 22, 2007) ................................... 17

*Novartis Pharm. Corp. v. Abbott Labs.,*
    203 F.R.D. 159 (D. Del. 2001) (J. Farnan) ................................................. 9

*In Re EchoStar Comm'ns Corp.,*
    448 F.3d 1294 (Fed. Cir. 2006) ................................................................. 14

*In re Seagate Tech., LLC,*
    No. 830, 2007 WL 2358677, at * 1, *6 (Fed. Cir. Aug. 20, 2007) .............. 14

*Resqnet.com, Inc. v. Lansa, Inc.,*
    No. 3578(RWS), 2004 WL 1627170, *1 (S.D.N.Y. July 21, 2004) ............. 14, 15, 18

## <u>RULES</u>

Fed. R. Civ. P. 26(b)(2)(c) ........................................................................ 17

Fed. R. Civ. P. 30(b)(6) ............................................................................ 13

Fed. R. Civ. P. 53 .................................................................................... 1

Fed. R. Civ. P. 53(g) ................................................................................ 9

Fed. R. Civ. P. 53(g)(1) ............................................................................ 9

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), through counsel and pursuant to Fed. R. Civ. P. 53, submits its Objections to the Special Master's September 5, 2007 Report and Recommendations on the Motion of Tatung Company and Tatung Company of America to Compel the 30(b)(6) Deposition of McKenna Long & Aldridge LLP (the "Report").[1]  (D.I. 783.) McKenna Long & Aldridge LLP ("McKenna") also objects to the Report.

## I.     NATURE & STAGE OF THE PROCEEDINGS

This is a patent infringement case.  LPL is the owner of U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting technology relevant to visual display products such as liquid crystal display ("LCD") and plasma televisions, computer monitors and laptop computers.

The original fact discovery cut-off date in this case was June 30, 2006.  (D.I. 198.) Discovery in this case was extended, ultimately scheduled to close on March 30, 2007.  (D.I. 767.)  The deadline to complete non-expert depositions was also March 30, 2007.  (*Id.*) Supplemental discovery, including document production, has continued on a limited basis. Defendants have taken 14 days of deposition testimony from various LPL witnesses.  Defendants also have deposed several third parties.  The only other deposition that Defendants noticed during the discovery period was the deposition of Rebecca G. Rudich ("Ms. Rudich"), a patent attorney at McKenna, who was not actively involved in prosecuting the Patents-in-Suit. Defendants Tatung Company and Tatung Company of America, Inc. (collectively "Tatung") never served a deposition notice on McKenna during the discovery period.

On April 13, 2007, the Special Master determined that disputes regarding whether LPL should produce technical information about LPL's products would be resolved after the claim

---

[1] For the Court's convenience, a copy of the Special Master's Report is attached as Exhibit 25.

construction decision. (Ex. 1 at 5-7). On June 15, 2007, the Special Master issued his claim

construction decision. (D.I. 692.) Subsequently, the Special Master addressed the scope of

technical discovery to be produced by LPL, and LPL has produced supplemental discovery

regarding its products. The Special Master has also recommended that LPL should provide a

supplemental 30(b)(6) designee to testify on issues arising out of LPL's supplemental document

production. (D.I. 784.) LPL's supplemental deposition is scheduled for September 19-21, 2007.

The Special Master also has recommended that Ms. Rudich should provide a limited deposition.

(D.I. 779.)

Opening expert reports were served on August 31, 2007, and expert depositions are to be

completed in October. A jury trial is scheduled for March 10, 2008. (D.I. 767.) The Court has

determined that any inequitable conduct defenses will be tried thereafter. (July 10, 2007 Hearing

Tr., Ex. 2 at 3-5.)

## II.    SUMMARY OF ARGUMENT

McKenna should not be subjected to an untimely Rule 30(b)(6) deposition. Tatung has

waived its right to take McKenna's deposition because Tatung did not subpoena or seek to

depose McKenna before the close of discovery. On August 13, 2007, Tatung first requested a

deposition of McKenna, more than four months after the discovery deadline. Tatung previously

had sought only an individual deposition of Ms. Rudich, a prosecuting attorney at McKenna, but

not regarding her prosecution of the Patents-in-Suit or Tatung's inequitable conduct defense.

Ms. Rudich's deposition was limited to specific issues concerning the Protective Order in this

case and her prosecution of the 11/096,079 continuation patent application (the "'079

application"). If Tatung wanted to depose McKenna regarding prosecution of the Patents-in-Suit

and inequitable conduct issues, Tatung could have and should have sought a deposition before

-2-

the close of discovery. Because Tatung failed to seek McKenna's deposition until long after the discovery deadline, Tatung's request to depose McKenna should be denied.

Further, the proposed deposition topics are overly broad and improper. Some topics seek, for example, proprietary and privileged information about McKenna's firm policies and business practices and communications related to patent clients generally. (*See, e.g.,* Ex. 18 at topic 1.) In addition, McKenna's client communications related to identifying and disclosing prior art are protected by attorney-client privilege. These topics are improper.

LPL requests that this Court reject the findings in the Special Master's Report and preclude Tatung from deposing McKenna. Alternatively, at a minimum, LPL requests that any deposition of McKenna be deferred. The Special Master has allowed the Defendants an additional deposition of LPL currently scheduled for September 19-21, 2007, related to patent prosecution and other topics. Defendants also will depose LPL's expert. Because any deposition of McKenna is likely to be cumulative, the Special Master should require that Defendants make the case for a McKenna deposition after LPL and experts are deposed. In addition, the Court has determined that any inequitable conduct defense in this case will be tried separately to the Court after trial to the jury on the other issues. The deposition of McKenna relates to Tatung's inequitable conduct defense. The deposition of LPL, the deposition of LPL's expert, and the outcome at trial may obviate the need for further discovery regarding inequitable conduct. Therefore, any deposition of McKenna should be deferred until after trial on the merits and any deposition should be limited to necessary and non-privileged information.

### III.    STATEMENT OF FACTS

#### A.    Tatung Asserts Affirmative Defense of Inequitable Conduct

In April 2005, Tatung asserted affirmative defenses including inequitable conduct, unclean hands and patent misuse in its Answer. (D.I. 187.) Since 2005, Tatung also has known

that Song Jung (chair of the Intellectual Property Department at McKenna) and attorneys he

supervised prosecuted the Patents-in-Suit.  In Tatung's Initial Disclosures, dated July 29, 2005,

Tatung specifically identified Song Jung ("Mr. Jung"), and others including Kenneth D.

Springer, Scott J. Hawranek, Rebecca Rudich, and John M. Kelly, as individuals "likely to have

discoverable information" regarding the "Prosecution of the Patents-in-Suit."  (Ex. 3 at 2-3.)

Mr. Jung was primarily responsible for prosecuting the rearmount patents.  (Ex. 4 at 47-48.)

Tatung never issued a deposition notice for Mr. Jung or McKenna before the close of discovery

on March 30, 2007.

> **B.    Tatung Subpoenas Ms. Rudich Regarding Protective Order Issues and then Withdraws the Subpoena**

On February 27, 2007, the Tatung Defendants subpoenaed Ms. Rudich.  (*See* Ex. 5.)

This subpoena was issued by Tatung to explore Tatung's allegations regarding McKenna's

attorneys' compliance with the Protective Order in this case.  (*See* Ex. 6 at 57-58.)  In response

to the subpoena, Ms. Rudich provided a declaration on March 6, 2007, confirming McKenna's

compliance with the Protective Order.  (Ex. 7.)  Tatung then agreed to withdraw the subpoena for

Ms. Rudich's deposition.  (*See* Ex. 6 at 57-58.)  The Special Master rejected Tatung's allegations

regarding the Protective Order as unfounded, and this Court affirmed. (D.I. 601 & D.I. 698.)

> **C.    Tatung Attempts to Revive the Subpoena Regarding Only the '079 Application, Not Prosecution of the Patents-in-Suit**

In correspondence dated March 16, 2007, Tatung attempted to revive the subpoena by

asking that Ms. Rudich provide testimony or a declaration on the "unrelated" and  "very limited

issue" of a specific Patent and Trademark Office ("PTO") office action regarding the '079

application.  (Ex. 8.)  This narrow issue related to a specific IBM product, not prosecution of the

Patents-in-Suit.  Tatung sent LPL a draft declaration to resolve this issue on March 29, 2007.

(Ex. 9.)  The parties exchanged several drafts and discussed issues surrounding the declaration

such as Ms. Rudich's access to the IBM product and what Ms. Rudich meant by "rear tray" in her response to the PTO.  On April 27, 2007, LPL sent a revised declaration addressing the remainder of Tatung's stated concerns.  On July 9, 2007, Tatung stated that it intended to proceed with Ms. Rudich's deposition, but that "[t]he only subject will be in the office action in connection [with] the '079 application related to the IBM color display."  (Ex. 10.)  Tatung had not suggested that any other testimony or information was sought from Ms. Rudich.  In a July 17, 2007 letter to Tatung's counsel, LPL stated that Tatung should be prohibited from deposing Ms. Rudich months after LPL had sent a revised declaration concerning the '079 application.  (Ex. 11.)  Tatung again specifically confirmed that the "primary reason" for deposing Ms. Rudich was not related to inequitable conduct, but instead the "subject of Ms. Rudich's deposition is limited to her written representations to the Patent Office in connection with a continuation application related to the '641 Patent."  (Ex. 12 at 3.)

### D.    Tatung Attempts to Shift Course and Seek a Deposition Regarding Asserted Prior Art Reflected in LPL's Supplemental Document Production

On August 1, Tatung argued that additional prior art had surfaced in LPL's recent document productions and that Ms. Rudich should be deposed regarding these new asserted prior art products.  (Ex. 13.)  LPL objected to Tatung's attempt to expand the scope of Ms. Rudich's deposition to include asserted prior art LPL products.  (Ex. 4 at 43-48.)  Furthermore, Ms. Rudich was not the prosecutor for the Patents-in-Suit.  At the Special Master's request, Ms. Rudich submitted a declaration confirming that she was an associate during the relevant time frame and was not responsible for prosecuting the Patents-in-Suit.  (Ex. 14.)  In his August 31, 2007 report, the Special Master recommended that Tatung could depose Ms. Rudich on the limited issue of the '079 patent application and her representations to the Patent and Trademark office regarding the IBM prior art reference.  (D.I. 779.)

**E.    Tatung Shifts Course Again and Seeks a Broad Deposition from McKenna Regarding Patent Prosecution and Inequitable Conduct**

In an August 13, 2007 letter to LPL, Tatung proposed, for the first time, that McKenna should provide a 30(b)(6) witness to testify regarding patent prosecution generally and as to the Patents-in-Suit. (Ex. 15.)  In an August 14, 2007 letter, LPL and McKenna objected.  (Ex. 16.) In an August 15, 2007 submission, Tatung sought broad testimony from McKenna related to (1) McKenna's general policies and procedures for patent prosecution and prior art investigation, (2) McKenna's policies and procedures to ensure client and attorney compliance with the duty of candor; (3) McKenna's "custom and practice" regarding "obtaining, investigating, evaluating, and disclosing prior art"; (4) all aspects of the prosecution of the Patents-in-Suit, and (5) whether any McKenna attorneys were involved with prior litigation referred to as the *LG.Philips LCD Co., Ltd. v. NEC Corp.* litigation (the "NEC litigation").  (Ex. 17 at 2.)

On August 20, 2007, Tatung provided 13 proposed deposition topics and sub-topics. (Ex. 18.)  The first category of topics generally pertains to McKenna's policies and procedures concerning its entire patent prosecution practice from April 1998 through 2002, including how McKenna researches, obtains, investigates, evaluates and discloses prior art to the Patent Office. The second category of topics pertains to the entire prosecution of the Patents-in-Suit, including the disclosure or non-disclosure of prior art; the awareness or knowledge of the inventors and attorneys who prosecuted the Patents-in-Suit regarding the LPL prior art products and their structure; the understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the subject matter claimed in the Patents-in-Suit, prior art LPL products, and the duty of disclosure; and any facts or circumstances regarding the defense of inequitable conduct.  The third category of topics generally pertains to McKenna's involvement in the NEC litigation, and McKenna's access to LPL documents produced in that case.

670508-1

In its August 23, 2007 submission, LPL objected to Tatung's proposed topics and argued that Tatung was improperly attempting to bootstrap a broad deposition of McKenna based on the subpoena for Ms. Rudich's deposition, which was limited solely to the '079 application. (Ex. 19.) Tatung argued that it had believed that Ms. Rudich was the appropriate witness to testify about prosecution of the Patents-in-Suit. (Ex. 23 at 1.) Tatung further argued hearing that LPL's recent supplemental production of technical documents justified its belated deposition request. (Ex. 20 at 61-63.) The Special Master noted, however, that Tatung had never sought a deposition of McKenna or a patent prosecution deposition. (*Id. at* 60-61.) The Special Master noted that he did not "see anything clearly enough to suggest to me that there was a focus on anyone as a 30(b)(6) deponent on the issue of inequitable conduct." (*Id.*) Tatung did not identify any timely deposition request within the discovery period. Instead, Tatung merely suggested that several topics were limited to products recently identified in LPL's supplemental production. (*Id. at* 67-68.) The Special Master then permitted the deposition as to all proposed topics, including as to topics not related to or limited to LPL's recent production. (*Id. at* 80.)

The Special Master also requested further briefing on whether a specific visual display product not made by LPL, the LG 500 LC, could be discussed in any McKenna deposition. (*Id. at* 84-85; Ex. 21.) In his September 5, 2007 Report, the Special Master denied Tatung's request to depose McKenna regarding the LG 500 LC. (Ex. 25, D.I. 783). The Special Master reasoned that "before fact discovery ended Tatung should have expected that the 500 LC could have potential relevance to issues of invalidity and/or inequitable conduct."[2] (Ex. 25, D.I. 783 at 4.)

---

[2] The Special Master also declined to grant LPL's request to depose the law firms of Greenberg Traurig LLP and Connolly Bove Lodge & Hutz LLP regarding their patent prosecution policies and procedures on the grounds that the issue was "not appropriately before [him]." (Ex. 25, D.I. 783 at 5.) Because the Special Master has not addressed LPL's request on the merits, this issue is not ripe for objection or appeal at this time. LPL reserves its

*(Footnote cont'd on next page.)*

670508-1

IV.    **ARGUMENT**

The Special Master erred by recommending a deposition that was first sought more than four months after the close of fact discovery. Many of the topics put forward by Tatung, such as inequitable conduct and patent prosecution, relate to defenses that Tatung has asserted since April 2005. Tatung opted not to seek a deposition on these topics before the deposition deadline. Tatung's request for a deposition should be denied as untimely.

Further, Tatung's proposed topics are both overbroad and improper. Many of Tatung's topics are not limited to LPL's recent supplemental document production or the Patents-in-Suit, but broadly seek information regarding McKenna's patent prosecution policies and Tatung's inequitable conduct defense. Tatung's topics also improperly seek proprietary information about McKenna's law firm practices, and seek testimony regarding McKenna's patent prosecution communications that is attorney-client privileged and/or work-product protected.

Moreover, any deposition of McKenna is premature and may not be necessary. The Defendants are scheduled to take a supplemental deposition of LPL starting September 19, 2007, including regarding inequitable conduct and the NEC litigation, which are subjects for which Tatung seeks to depose McKenna. Defendants also will depose LPL's expert. Further, any inequitable conduct issues will not be addressed until after the March 2008 trial.

Accordingly, the Court should preclude any deposition of McKenna because: (1) it is untimely, and Tatung could have and should have sought any deposition before the March 30, 2007 deposition deadline; (2) the deposition topics are improper and would intrude on

---

*(Footnote cont'd from previous page.)*

right to seek depositions of Defendants' law firms, and to seek relief from the Special Master regarding such depositions.

670508-1

McKenna's proprietary business information and attorney-client relationships with LPL and other clients; and (3) the testimony sought is cumulative and premature given that additional depositions may resolve or moot the need for testimony from McKenna, and that inequitable conduct defenses will be tried separately after the trial on the merits scheduled for March 2008. The Court should sustain LPL's and McKenna's objections and reject the Special Master's Report recommending a deposition of McKenna. Alternatively, and at a minimum, the Court should limit the scope of any deposition to recently identified prior art in LPL's supplemental production, and defer the deposition until after the March 2008 trial, when it can be determined whether any deposition is necessary.

### A.     Standards of Review

The Federal Rules of Civil Procedure establish the standards for reviewing the Special Master's Report. Fed. R. Civ. P. 53(g). Pursuant to Fed. R. Civ. P. 53(g), a discovery master's findings of fact and conclusions of law are reviewed *de novo* by the District Court. The Court may wholly or partly adopt, modify or reject any of the master's recommendations. *See* Fed. R. Civ. P. 53(g)(1).

### B.     Tatung's Attempt to Depose McKenna after the Deposition Deadline is Untimely and Improper

Tatung should not be able to take a deposition that was first requested four months after the close of discovery, especially when the Defendants have long known about the subject matter of several proposed deposition topics. *See Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 778 (3d. Cir. 2000) (finding no abuse of discretion for prohibiting additional discovery after the close of discovery); *see also Novartis Pharm. Corp. v. Abbott Labs.,* 203 F.R.D. 159, 162 (D. Del. 2001) (J. Farnan) (denying motion to compel deposition after discovery period ended when party had ample opportunity to obtain the discovery). This Court has declined to address

untimely discovery motions filed after the close of discovery.  *See Allergan, Inc v. Pharmacia Corp.,* No. Civ. A. 01-141-SLR, 2002 WL 1268047 at *2 (D. Del. May 17, 2002).  In *Allergan,* the Court instructed that discovery-related motions "must be filed during fact discovery", especially when underlying facts were known within the discovery period.  *Id.*  Accordingly, the Court should reject Tatung's untimely request to depose McKenna.

Deposition topic 1, for example, concerns McKenna's policies and procedures relating to the firm's general patent prosecution practices and policies, as well as McKenna's practices in connection with researching, obtaining, investigating, evaluating and disclosing prior art to the Patent Office for April 1998 to December 2002.  While topic 2, which relates to every conceivable aspect of the prosecution of the Patents-in-Suit, is partially couched in terms of recently produced LPL documents, it still seeks an open-ended deposition to explore grounds for Tatung's affirmative defenses of inequitable conduct, unclean hands, and patent misuse.  For example, topic 2(i) asks for "[a]ny and all non-privileged facts or circumstances that support, evidence, contradict or negate the defense of inequitable conduct." (Ex. 18.)  This expansive topic goes far beyond issues implicated by LPL's recent document production.  Additionally, topic 2(f) refers to the "understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the duty of disclosure under 37 C.F.R. § 1.56." (*Id.*)  Again, this topic delves into the general knowledge of counsel, not new issues or information.

Issues regarding patent prosecution and inequitable conduct have long been on Tatung's radar but were never the subject of any deposition notice to McKenna.  In the August 27, 2007 hearing, the Special Master appeared to recognize that these topics were untimely:  "looking at topics . . . No. 1 and 2 and all the subtopics under that, isn't it fair to say that those subtopics could have been the subject of a 30(b)(6) notice before fact discovery concluded?"  (Ex. 20 at

61.) Indeed, Tatung had asserted affirmative defenses of inequitable conduct, unclean hands and patent misuse in their Answer served in April 2005. (D.I. 187.) Further, in Tatung's February 2006 response to LPL's Interrogatory No. 18, which requests the basis of an affirmative defense of inequitable conduct, Tatung identified a failure to disclose alleged prior art products. (Ex. 22 at 23-24.) Tatung clearly could and should have sought any testimony on general patent prosecution subjects before discovery closed. Yet, as the Special Master noted, Tatung failed to seek any inequitable conduct deposition in this case: "I don't see anything . . . to suggest to me that there was a focus on anyone as a 30(b)(6) deponent on the issue of inequitable conduct." (Ex. 20 at 60.)

Indeed, the Special Master employed this same reasoning when he rejected Tatung's request to depose McKenna regarding the LG 500 LC monitor. Tatung's list of deposition topics for McKenna included the LG 500 LC monitor in the defined term "Prior Art LPL Product." (Ex. 18.) LPL argued that Tatung should not be able to depose McKenna about this product because it was not a new issue and was addressed in previous depositions. (Ex. 20 at 81-85.) In his report, the Special Master agreed, stating that "before fact discovery ended Tatung should have expected that the 500 LC could have potential relevance to issues of invalidity and/or inequitable misconduct." (Ex. 25, D.I. 783 at 4.) The Special Master further concluded that while the recent document production of LPL "makes the 500 LC that much more of an attractive target for Tatung, the fact remains that it was on the radar screen before fact discovery ended." (*Id.*) Similarly, as described above, the defense of inequitable conduct and patent prosecution have long been identified by Tatung as potentially relevant issues and they should have been noticed for deposition before the close of fact discovery.

Tatung's argument that it inadvertently subpoenaed the wrong attorney, Ms. Rudich, is unavailing.  Tatung always was aware that McKenna prosecuted the Patents-in-Suit.  Tatung also knew that Mr. Jung prosecuted the Patents-in-Suit.   Indeed, the Tatung Defendants' Initial Disclosures, dated July 29, 2005, specifically identify Mr. Jung as an individual with McKenna "likely to have discoverable information" regarding the "Prosecution of the Patents-in-Suit." (Ex. 3 at 2-3.)  Similarly, Tatung's February 13, 2006 Interrogatory Answers again identified Mr. Jung as a person with information or knowledge relevant to Tatung's invalidity contentions. (Ex. 22 at 11-13.)  Yet, Tatung never sought to subpoena Mr. Jung or McKenna before the March 30, 2007 deposition deadline.

Further, Tatung did not subpoena Ms. Rudich to testify regarding the prosecution of the Patents-in-Suit.  Instead, Tatung first subpoenaed Ms. Rudich regarding Tatung's unfounded allegations that McKenna's prosecuting attorneys had violated the Protective Order.  (*See* Ex. 6 at 57-58.)  Tatung then agreed to withdraw this subpoena during the March 8, 2007 hearing. (*Id*.)  In a March 16, 2007 letter, Tatung attempted to revive this subpoena and asked for Ms. Rudich's testimony or a declaration regarding a new issue related to the '079 application, not prosecution of the Patents-in-Suit or inequitable conduct.  (Ex. 8.)  Tatung did not seek a deposition of McKenna until August 13, 2007.  (Ex. 15.)  The recommended deposition topics are not limited to issues arising from LPL's supplemental document production.

The facts show, moreover, that Tatung did not rely on Ms. Rudich's declaration in failing to seek a deposition of McKenna, as they stated in their August 27, 2007 submission to the Special Master.  (Ex. 23 at 1.)  Until recently, Tatung has consistently asserted that Ms. Rudich's deposition would be limited to the '079 application.  Tatung was not seeking Ms. Rudich's testimony regarding an inequitable conduct defense or prosecution of the Patents-in-Suit.

-12-

Therefore, Tatung's argument that they relied on Ms. Rudich's declarations to seek an inequitable conduct defense from Ms. Rudich is misplaced.

### C.    The Topics Noticed by Defendants are Overly Broad and Seek Privileged Communications and Proprietary Information

Several topics that Defendants proposed are extremely broad, and not limited to recent document production from LPL.  For example, topic 1 includes "McKenna's policies and procedures relating to patent prosecution for the time frame of April 1998 to December 2002" and the "practice employed by McKenna prosecution attorneys during the time frame of April 1998 to December 2002 in connection with researching . . . and disclosing prior art to the Patent Office."  (Ex. 18 at topics 1(a) & 1(b).)    This topic is not limited to either the Patents-in-Suit or to the recent LPL document production.

Topic 2 is similarly overbroad.  Although some of the sub-topics refer to the recent production by LPL, sub-topic (a) asks for "All non-privileged facts and circumstances relating to the prosecution of the Patents-in-Suit."  (Ex. 18 at topic 2(a).)  Similarly Topic (2)(i) asks for "[a]ny and all non-privileged facts or circumstances that support, evidence, contradict or negate the defense of inequitable conduct."  (*Id*. at topic 2(i).)  These topics are overbroad and improper on their face, as they fail to set forth with reasonable particularity the "facts" or "circumstances" to be addressed, as required by Rule 30(b)(6).  Fed. R. Civ. P. 30(b)(6).  The Patents-in-Suit were prosecuted starting in April 1999 and issued in December 2002.  McKenna should not be required to prepare for a deposition concerning every meeting, communication, document, and "fact" or "circumstance" during that three and one-half year period.

Further, these deposition topics ask for information that is a wholesale violation of McKenna's internal policies and attorney-client relationships.  Topic 1(b), for example, seeks information regarding how McKenna obtains and discloses client information to the PTO.

-13-

McKenna prosecutes patents for many different clients and advises these clients about issues related to required disclosures to the PTO. McKenna's client communications are privileged and examples of those communications are on LPL's privilege log in this case. Likewise, McKenna should not be deposed regarding its policies and practices related to other clients and disclosure of material prior art. McKenna's policies and procedures and related communications relate generally to all patent clients and should not be discoverable.

The topics also seek information protected by attorney-client privilege and by the work product doctrine. The Federal Circuit repeatedly has recognized the importance of the attorney-client privilege and the work-product doctrine. *See In re Seagate Tech., LLC*, No. 830, 2007 WL 2358677, at * 1, *6 (Fed. Cir. Aug. 20, 2007) (stating that the privilege "also recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.") (internal quotations omitted); *In Re EchoStar Comm'ns Corp.*, 448 F.3d 1294, 1300-1301 (Fed. Cir. 2006) (recognizing that the privilege "promote[s] full and frank communication between and a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law."). Privileged information should be carefully protected during discovery, even when an inequitable conduct defense is asserted. *See Allergan, Inc.,* 2002 WL 1268047 at *1 (finding that an allegation of inequitable conduct does not vitiate the attorney-client privilege or the protections of the work-product doctrine). Nor does Tatung need this testimony from LPL's counsel.

Although certain topics purport to request "non-privileged" information, several topics inherently implicate privileged information. *Resqnet.com, Inc. v. Lansa, Inc.*, No. 3578(RWS), 2004 WL 1627170, at *1, *5 (S.D.N.Y. July 21, 2004) (although party seeking deposition "specifically indicated that it is not seeking privileged information," the deposition topics

identified create a risk that attorney-client privileged and attorney work-product issues will arise.) For example, topic 2(e) asks for "[t]he facts known to anyone involved in the prosecution of . . . the Patents-in-Suit, including LPL and/or the inventors, or their attorneys . . . relating to the existence and/or structure of Prior Art LPL Products[.]" (Ex. 18.) Similarly, topic 2(d) seeks "[a]ll details regarding the awareness of . . . the inventors [and] . . . the attorneys who . . . prosecuted . . . the Patents-in-Suit . . . of any Prior Art LPL product." (*Id.*) Further, Tatung's counsel has acknowledged that McKenna will be deposed regarding protected work-product information. For example, during the August 27, 2007 hearing, Tatung's counsel stated that Tatung will ask "why [recently produced products] weren't disclosed to us in discovery." (Ex. 20 at 63). Tatung also intends to ask, "[I]f you withheld that piece of prior art, what other prior art did you withhold?" (*Id. at* 70.) McKenna should not have to testify regarding what does or does not constitute prior art based on the Special Master's claim construction or LPL's litigation theories. *See Resqnet.com*, 2004 WL 1627170 at *5 ("any of [counsel's] conclusions regarding the effect of a particular prior art reference" or patent validity "would appear to be protected as attorney work-product"). This information inappropriately implicates both attorney-client privileged communications and work-product protections.

Furthermore, topic 2(f) asks for the understanding of the prosecuting attorneys for the Patents-in-Suit generally regarding the duty of disclosure under 37 C.F.R. § 1.56. (Ex. 18.) The scope of the legal duty under the regulations raises an issue of law, which is beyond the appropriate scope of Rule 30(b)(6) deposition testimony. *See 3M Co. v. Kanbar, MK Enter.*, No. C06-01225 JW (HRL), 2007 WL 1794936, at *1, *2 (N.D. Cal. June 19, 2007) (holding that deposition topics in trademark infringement case sought legal conclusions that "should not form the basis for 30(b)(6) deposition topics"); *see also Cryovac, Inc. v. Pechiney Plastic Packaging,*

-15-

*Inc.*, 430 F. Supp. 2d 346, 364 (D. Del. 2006) (stating that expert "testimony on substantive areas of . . . patent law is impermissible").  Similarly, topic 2(g) improperly asks for "[t]he understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the subject matter claimed in the Patents-in-Suit."  (Ex. 18.)  Tatung should not be able to question attorneys on this work-product protected information related to LPL's theories of infringement in this case.  Tatung can address LPL's positions and contentions regarding infringement, validity, and enforceability when deposing LPL's expert witness.  Indeed, the parties have specifically agreed to seek such testimony from expert witnesses, not from Rule 30(b)(6) depositions of the parties.  (Ex. 20 at 15-18.)

Defendants also should not be allowed to delve into proprietary information regarding the business practices of a competitive law firm.   The parties' law firms compete for similar clients in the intellectual property practice area in a nationwide market.  Defendants' topic 1 asks generally about McKenna's business practices related to all patent prosecutions during a three and one-half year period.  (Ex. 18.)  This inquiry goes far beyond what is necessary to determine inequitable conduct in isolated instances.  McKenna should not be forced to reveal its internal firm policies and practices, which is proprietary information.

### D.    Any Deposition of McKenna May be Unnecessary and, at a Minimum, Should be Postponed and Limited

Even if the deposition topics were limited and proper, any deposition of McKenna is premature.  The Special Master has ordered a further deposition of LPL on certain issues concerning products identified in LPL's supplemental document production.  The LPL deposition topics and the McKenna deposition topics both include issues relating to patent prosecution and the NEC litigation.  (*Compare* Ex. 18 at topics 2 & 3 and Ex. 24 at topics 6(g) & (h) & 7).  Additionally, the Defendants have already deposed the inventors of the Patents-in-Suit

-16-

for 11 days, individually and as Rule 30(b)(6) representatives.  Further, expert depositions will

occur in October 2007, and will likely further address issues relevant to inequitable conduct.

Accordingly, there is "no compelling need" for a deposition of McKenna.  *See Allergan*, 2002

WL 1268047 at *1 (party seeking attorney deposition failed to meet its burden "to demonstrate a

compelling need for the requested discovery").

       In *Allergan*, this Court rejected a request to depose counsel regarding inequitable conduct

issues.  The party seeking the deposition alleged that the attorney knew or should have known

information regarding inventorship and was obligated to disclose that information to the PTO.

2002 WL 1268047 at *1.  This Court declined to permit the deposition because the attorney's

knowledge was irrelevant until the party established that there were, in fact, co-inventors.

Further, the Court noted that the issue of inequitable conduct was for the Court to determine, and

that the "factual predicate" as to the inventorship allegations could be pursued from other

sources, including depositions of the inventors and access to document production.  *Id.*

Similarly, in this case, Tatung has not established that LPL products are prior art and Tatung can

obtain discovery regarding LPL's products and patent prosecution from other sources.

       A deposition of McKenna at this juncture also is unnecessarily cumulative.  For example,

testimony of LPL may provide any relevant, non-privileged information.[3]  Much of the same

ground regarding inequitable conduct will be covered in the LPL and expert depositions, and

Tatung does not need another bite at the apple by deposing McKenna.  *See* Fed. R. Civ. P.

26(b)(2)(c) (allowing court to limit discovery that is "unreasonably cumulative or duplicative" or

that "the party seeking discovery has had ample opportunity by discovery in the action to obtain

---

[3] During the supplemental deposition of LPL, the deponent will not be discussing any attorney-client privileged information, as confirmed and agreed during the August 27, 2007 hearing.  (Ex. 20 at 47-48.)

-17-

the information sought"); *Allergan, Inc*, 2002 WL 1268047, at *1 (not allowing deposition of attorney where inequitable conduct issues can be pursued through deposition of inventors); *Resqnet.com, Inc.,* 2004 WL 1627170, at *1 (denying request to depose prosecuting attorney when other expert and fact witnesses have been or will be deposed on issues regarding patent histories, prior art, and patents-in-suit).

Defendants, therefore, should make the case for a McKenna deposition at the appropriate time, after the completion of LPL's supplemental deposition in September 2007, and after deposing LPL's expert. In the unlikely event that a deposition of McKenna is not cumulative, then the topics should be limited to only necessary, non-privileged information related to LPL products recently asserted as prior art. The Court has determined that any inequitable conduct defenses in this case will be tried separately to the Court after trial to the jury. (*See* Ex. 2 at 3-5.) Because the deposition of McKenna relates to Tatung's inequitable conduct defense, any deposition of McKenna should occur after the March 2008 trial on the merits. Depending on the outcome of LPL's supplemental deposition, the deposition of LPL's expert, and the trial, any deposition of McKenna may be unnecessary. *See, e.g., Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.,* Civ. A. Nos. 03-5550 (MLC), 04-1686 (MLC), 2007 WL 188285, at * 1, *6 (D.N.J. Jan. 22, 2007) (deferring resolution of inequitable conduct defense until after trial on the merits, noting that the outcome of the liability trial could moot the need to address inequitable conduct). Further, because inequitable conduct issues will be tried separately after March 2008, there is no prejudice to Defendants in deferring any deposition of McKenna. McKenna, in contrast, faces substantial prejudice in providing testimony implicating proprietary, strategic, and privileged information before trial.

This Court recently recognized the importance of the attorney-client privilege when it overturned the Special Master's recommendation and ordered a bifurcation of discovery regarding the advice of counsel defense. (D.I. 717 at 15-16.) The Court postponed discovery related to advice of counsel to protect privileged information from unnecessary disclosure. Ultimately, the Defendants declined to assert the defense and preserved the privilege. Likewise, McKenna should be protected from having to disclose or divulge protected and privileged information. Deferring any deposition of McKenna would achieve that goal.

## V.    **CONCLUSION**

For the foregoing reasons, LPL requests that the Court reject the Special Master's determinations in the September 5, 2007 Report granting the deposition of McKenna. Alternatively, at a minimum, the Court should limit and postpone any deposition of McKenna. With regard to any deposition, the Court should uphold the Special Master's finding that Tatung should not be permitted to question McKenna about the 500 LC product and should further limit the scope of the deposition to LPL products recently asserted as prior art based on supplemental document production.

September 17, 2007

THE BAYARD FIRM, P.A.

Richard D. Kirk (#922)
Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-2306
(302) 655-5000
Attorneys For Plaintiff
LG.PHILIPS LCD CO., LTD.

670508-1

OF COUNSEL:
Gaspare J. Bono
Rel S. Ambrozy
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)

670508-1