# EXHIBIT 1

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


PHILLIPS, L.G., LCD CO., LTD,   )
                                )
          Plaintiffs,           )   C.A. No. 04-343(JJF)
                                )
v.                              )
                                )
TATUNG CO., TATUNG COMPANY OF   )
AMERICA, INC., and VIEWSONIC    )
CORPORATION,                    )
                                )
          Defendants.           )

          Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Friday, April 13, 2007, beginning at
approximately 11:45 a.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

          THE BAYARD FIRM
          MARY E. AUGUSTINE, ESQ.
            222 Delaware Avenue, Suite 900
            Wilmington, Delaware  19899
            for Plaintiffs




               CORBETT & WILCOX
          Registered Professional Reporters
     230 North Market Street     Wilmington, DE 19899
               (302) 571-0510
            www.corbettreporting.com
       Corbett & Wilcox is not affiliated
     with Wilcox & Fetzer, Court Reporters

Hearing

2 (Pages 2 to 5)

Page 2

1    APPEARANCES (Continued):
2         MCKENNA, LONG & ALDRIDGE, LLP
          CASS W. CHRISTENSON, ESQ.
3         REL S. AMBROZY, ESQ.
          CORMAC CONNOR, ESQ.
4          1900 K Street, N.W.
           Washington, D.C. 20006
5          for Plaintiffs
6         RICHARDS LAYTON & FINGER
          ANNE SHEA GAZA, ESQ
7          One Rodney Square
           Wilmington, Delaware 19801
8          for Defendant Tatung Co.
9         GREENBERG TRAURIG LLP
          FRANK MERIDETH, ESQ.
10        VALERIE HO, ESQ.
          AL JANSEN, ESQ.
11         2450 Colorado Avenue, Suite 400E
           Santa Monica, California 90404
12         for Defendant Tatung Company of America, Inc.
13        CONNOLLY BOVE LODGE & HUTZ LLP
          JAMES D. HEISMAN, ESQ.
14         1007 North Orange Street
           Wilmington, Delaware 19899
15         for Defendant ViewSonic Corporation
16        CONNOLLY BOVE LODGE & HUTZ LLP
          SCOTT R. MILLER, ESQ.
17         355 South Grand Avenue
           Los Angeles, California 90071-3106
18         for Defendant ViewSonic Corporation
19
20
21
22
23
24

Page 3

1         SPECIAL MASTER POPPITI: We can start.
2    I do apologize for hanging up on everyone.
3         MR. CHRISTENSON: One quick point, just
4    to let you know, I apologize in advance for the
5    interruption, but I think that Mr. Ambrozy is going to be
6    joining us in progress.
7         SPECIAL MASTER POPPITI: Okay.
8         MR. CHRISTENSON: He is not able to join
9    right this minute, but he is planning to join.
10        SPECIAL MASTER POPPITI: That's fine.
11        MR. CHRISTENSON: Thank you.
12        SPECIAL MASTER POPPITI: Before we
13   start, let me start by offering an apology. I expected
14   that when you all made the argument on the -- let me just
15   pull my file here -- on ViewSonic's February 16th, 2007,
16   motion dealing with mounting methods and structures and
17   LPL's response thereto, which was February the 23rd, I
18   now understand what occurred on this end.
19        You may remember, we had a hearing on
20   that application that I had indicated I would have hoped
21   I could have provided you with a decision on the record
22   the Monday after that hearing, and I realized that I
23   wasn't going to be getting the transcript that would
24   permit me to do that.

Page 4

1         Then we had a hearing on that following
2    Monday, I don't have the dates in mind, that Monday was
3    in advance of the Friday, March 9 -- somebody correct me
4    if my date is wrong -- when we had the hearing in the
5    courthouse that all of you participated in, and I
6    indicated, on Monday, that I would issue an oral decision
7    on that Friday.
8         Well, when we came to the end of the
9    business day and the question was: Is there anything
10   else for me to attend to today?, we all expected that
11   there wasn't, and, in fact, there was.
12        So, not having attended to it on that
13   day, quite frankly, it slipped below the radar screen and
14   it wound up on a sheet that I keep of the 34 applications
15   -- I think we are up to 34 -- that we have been --
16   actually, only up to 30 -- that I have been working on,
17   it wound up as being listed as "resolved."
18        So, it is squarely in my lap that that
19   fell through the cracks and I sincerely apologize.
20        So, what I want to do first is turn my
21   attention very briefly to that application.
22        From my perspective, I think it's fair
23   to say that the application, itself, seeks significant
24   discovery -- I won't adopt ViewSonic's, I am sorry, LPL's

Page 5

1    term "voluminous" discovery, it's significant, it could
2    be voluminous, I don't know what it would all involve --
3    that I don't think either party can disagree that
4    ViewSonic previously agreed that LPL did not have to
5    produce.
6         Secondly, I think it's fair to say that
7    the underpinning of the application was, in fact, LPL's
8    written advice on a status document that LPL did, in
9    fact, produce modules that had holes or mounting
10   structures, or whatever we ultimately are going to be
11   calling that equipment, if you will, in the rear of the
12   module that LPL said that others could use for purposes
13   of rear mounting. I think that's fair in terms of what
14   you all advised me of.
15        Then, in my view, the question became:
16   Did LPL misrepresent, in the December 28th, 2006,
17   hearing, did it misrepresent that it did not practice the
18   patents-in-suit?
19        Now, it seems to me that in light of the
20   fact that -- LPL's position is that ViewSonic is, through
21   its present argument, stating something different than it
22   argues in its initial brief for claim construction.
23        You can expect that I have started to
24   study the briefing and claim construction independent of

Hearing

Page 6

1  this application. You can also expect that short of
2  having full briefing and having your studied view of what
3  claim construction should be with respect to each claim
4  that's in dispute, each term that's in dispute, that I
5  have made no judgment, and I do not have any -- I have
6  made no judgment with respect to claim construction.
7          I am satisfied that because the
8  discovery is significant, perhaps voluminous, No. 1, and
9  I am satisfied, because I expect I need to make some
10 judgment as to whether ViewSonic was appropriately saying
11 that it did not practice the patents-in-suit, that it is
12 necessary for me to accomplish the claim construction
13 before I open the gates to discovery that was not
14 contemplated in December of 2006.
15         I fully understand that that may mean,
16 if the claim construction, if you will, goes ViewSonic's
17 way, and, by that, I mean if it goes ViewSonic's way as
18 articulated in its February 16 application, and if I
19 conclude, by virtue of that, that LPL misstated whether
20 or not they practiced the patent, that discovery, as
21 requested by ViewSonic, is likely, and I understand that
22 that may mean that we are back at a different square. I
23 understand that it may mean that there will be more
24 deposition discovery that will have to take place, and I

Page 7

1  understand the distraction that all of that may cause.
2          I am not satisfied, however, that that
3  is something that's appropriate to do before claim
4  construction is accomplished.
5          So, with that said, you have my
6  decision, if you will, with respect to the February 16
7  application, and if anyone needs further guidance with
8  respect to that, I can certainly respond to any request
9  for guidance.
10         MR. MILLER: This is Scott Miller.
11         SPECIAL MASTER POPPITI: I realize,
12 Mr. Miller, you didn't argue that application. I think
13 it was --
14         MR. MILLER: Mr. Nelson.
15         SPECIAL MASTER POPPITI: Thank you. I
16 drew a blank there for a moment. Mr. Nelson.
17         MR. MILLER: So I am not particularly
18 well versed on it. I guess the question I would have is:
19 How do we raise this issue once we get the preliminary
20 claim construction order in June?
21         SPECIAL MASTER POPPITI: Well, I think
22 the way that it gets -- that I raise it, I don't think --
23 well, let me step back from that.
24         It seems to me that the claim

Page 8

1  construction is consistent with what LPL says that it
2  should be, and I know that LPL is suggesting that
3  ViewSonic is either attempting to have it both ways or
4  attempting to argue on both sides of the claim, I
5  understand all that, but if it goes LPL's way, then it
6  seems to me that, by virtue of that, it may be that no
7  further discovery will be ordered.
8          If, in fact, claim construction goes
9  ViewSonic's way, then it seems to me all I need to know
10 is whether ViewSonic is still interested, once claim
11 construction occurs, and if it goes ViewSonic's way,
12 whether it is still interested in this discovery.
13         So, it's not a matter of anything other
14 than, say, Please turn your attention to what I refer to
15 in my house over here as "DM 24," which translates to
16 your application that I have just talked about.
17         Is that helpful?
18         MR. MILLER: It is, with one exception,
19 and because I am not particularly versed in it --
20         SPECIAL MASTER POPPITI: And I do
21 understand that.
22         MR. MILLER: The concern I have is that
23 my recollection, and it is pretty fuzzy on this, is that
24 you may have the results inverted. If the claim

Page 9

1  construction goes LPL's way, the discovery may be much
2  more relevant because it deals with issues where there
3  are mounting features both on the back and in some other
4  location; whereas, if -- in that sense, the discovery is
5  going to be potentially much more critical; whereas, if
6  the claim construction goes ViewSonic's way, it may be
7  less critical. That's just my sense of the motion. I
8  was concerned that there may be -- you may have the two
9  results mixed up in terms of --
10         SPECIAL MASTER POPPITI: I am not sure
11 that I do. But I can assure you that when the time
12 occurs, I will make every effort and attempt to get it
13 right.
14         Mr. Christenson, do you want to weigh in
15 on that?
16         MR. MILLER: I will be happy to review
17 it, too, Your Honor, I apologize.
18         SPECIAL MASTER POPPITI: No. That's
19 okay. You all didn't expect that I was going to be doing
20 this up at the front end, but I was very concerned that,
21 as I read these papers, there were certainly clear --
22 there were references to a ViewSonic motion that had yet
23 to be decided, although fully briefed, and I had to
24 figure out which one that was.