# EXHIBIT 6

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,    )
                                 )
        Plaintiffs,              )   C.A. No. 04-343(JJF)
                                 )
v.                               )
                                 )
TATUNG CO., TATUNG COMPANY OF    )
AMERICA, INC., and VIEWSONIC     )
CORPORATION,                     )
                                 )
        Defendants.              )

     Teleconference in above matter taken pursuant to notice before Renee A. Meyers, Registered Professional Reporter and Notary Public, in the law offices of BLANK ROME, LLP, 1201 North Market Street, Wilmington, Delaware, on Thursday, March 8, 2007, beginning at approximately 2:00 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

       THE BAYARD FIRM
       RICHARD D. KIRK, ESQ.
         222 Delaware Avenue, Suite 900
         Wilmington, Delaware  19899
         for Plaintiffs

CORBETT & WILCOX
Registered Professional Reporters
230 North Market Street     Wilmington, DE 19899
(302) 571-0510
www.corbettreporting.com
Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

Page 2

1  APPEARANCES (Continued):
2      MCKENNA, LONG & ALDRIDGE, LLP
       MATT BAILEY, ESQ.
3      LORA BRZEZYSKI, ESQ.
         1900 K Street, N.W.
4        Washington, D.C. 20006
         for Plaintiffs
5
       RICHARDS LAYTON & FINGER
6      FREDERICK L. COTTRELL, III, ESQ.
       ANNE SHEA GAZA, ESQ
7        One Rodney Square
         Wilmington, Delaware 19801
8        for Defendant Tatung Co.
9      GREENBERG TRAURIG LLP
       FRANK MERIDETH, ESQ.
10     MARK KREISMAN, ESQ.
         2450 Colorado Avenue, Suite 400E
11       Santa Monica, California 90404
         for Defendant Tatung Company of America, Inc.
12
       CONNOLLY BOVE LODGE & HUTZ LLP
13     TRACY ROMAN, ESQ.
       JAMES D. HEISMAN, ESQ.
14       1007 North Orange Street
         Wilmington, Delaware 19899
15       for Defendant Viewsonic Corporation
16
17
18
19
20
21
22
23
24

Page 3

1          SPECIAL MASTER POPPITI: Mr. Kirk, if
2  you would start, please.
3          MR. KIRK: Yes, Your Honor. Richard
4  Kirk from The Bayard Firm here in Wilmington for the
5  Plaintiff, L.G. Phillips, LCD Company Ltd, and with me on
6  the line, from Washington, are Lora, L-o-r-a, Brzezynski,
7  B-r-z-e-z-y-n-s-k-i, and Matt Bailey from McKenna, Long &
8  Aldridge.
9          SPECIAL MASTER POPPITI: Thank you.
10         MS. GAZA: Thank you, Your Honor. It's
11 Anne Gaza from Richards, Layton & Finger for the Tatung
12 defendants.
13         With me is Frank Merideth from Greenberg
14 Traurig and Mark Kreisman.
15         SPECIAL MASTER POPPITI: Thank you.
16         MR. HEISMAN: Good afternoon, Your
17 Honor. Jim Heisman from Connolly Bove on behalf of
18 ViewSonic Corporation. With me today is Tracy Roman.
19         SPECIAL MASTER POPPITI: Thank you.
20         Now, I hope I am correct in this, the
21 only issue that we have to deal with today are issues
22 covered by correspondence to me from Anne Gaza dated
23 February 20, 2007, and that deals with issues concerning
24 compliance with, I will just say generically, "protective

Page 4

1  orders," and the response to that from Mr. Kirk dated
2  March 6 of 2007; is that correct?
3          MS. BRZEZYNSKI: That's correct, Your
4  Honor.
5          MS. GAZA: Yes, Your Honor.
6          MR. KIRK: Yes, Your Honor.
7          SPECIAL MASTER POPPITI: Then, let's
8  start through that, please.
9          MR. MERIDETH: Your Honor, this is Frank
10 Merideth on behalf of the Tatung defendants.
11         SPECIAL MASTER POPPITI: Thank you,
12 Mr. Merideth.
13         MR. MERIDETH: If I could go ahead and
14 start.
15         SPECIAL MASTER POPPITI: Please.
16         MR. MERIDETH: Let me first indicate
17 what the relief is that we are seeking so that my
18 comments are put into perspective. You will recall that
19 one of the issues in this case related to the production
20 of documents related to unaccused products.
21         SPECIAL MASTER POPPITI: Yes, I am aware
22 of that.
23         MR. MERIDETH: In earlier session, the
24 issue of the protective order arose, and particularly in

Page 5

1  December, and I believe it was the first session that I
2  attended with Your Honor, an issue came up that we had
3  redacted from work plans, related to unaccused products,
4  the name of the customer.
5          SPECIAL MASTER POPPITI: Yes.
6          MR. MERIDETH: And you were very clear
7  that the protective order was the guiding document and
8  that those work plans, regardless of the concern of our
9  client for their customers, would, nevertheless, be
10 produced without redaction, and, of course, we did that.
11         SPECIAL MASTER POPPITI: Yes.
12         MR. MERIDETH: In the course of working
13 on this case, we came across powers of attorney that were
14 filed with the PTO that indicated that certain of the
15 people who were identified as litigators on this case
16 also were prosecuting flat screen technology patents, and
17 it was our view that that was not consistent with the
18 protective order.
19         We raised questions about that. We were
20 told, from our viewpoint, some different things about why
21 that had occurred, that the protective orders were old or
22 they weren't accurate or whatever. We also came across
23 some filings that had been made that had been signed by
24 people who were litigators in this case with the Patent

Page 54

1  detriment. And that's all I am asking.
2           I am not accusing anybody of anything.
3  I am not saying anybody has been dishonest. I am not
4  saying anybody is in contempt. I am just saying, you
5  know, We need to get some independent corroboration
6  because there appears, to me, to be some question raised
7  by the privilege log and the other information that we
8  have talked about today.
9           SPECIAL MASTER POPPITI: Let's talk
10 about time frames here for a moment.
11          Do I need to provide any other
12 information in terms of the declarations that I'd like to
13 have supplementing the declarations that are already in
14 place?
15          MS. BRZEZYNSKI: I think I understand,
16 Your Honor.
17          SPECIAL MASTER POPPITI: Okay. And with
18 respect to the documents that have been identified in the
19 privilege log, have all of the entries in the privilege
20 log been identified for purposes of directing me to those
21 entries?
22          MR. MERIDETH: I believe so, Your Honor.
23          SPECIAL MASTER POPPITI: Then here is
24 what I would like to accomplish -- just a moment.

Page 55

1           Let me ask if the following schedule
2  makes sense: All of the documents that have been
3  identified from the privilege log, I'd like them to be
4  provided to me not later than midday Monday. Is that
5  doable?
6           MS. BRZEZYNSKI: Your Honor, is there
7  any way we could have until the end of the day?
8           SPECIAL MASTER POPPITI: Yes.
9           MS. BRZEZYNSKI: I leave this evening
10 for a deposition in Florida on another case.
11          SPECIAL MASTER POPPITI: Yes. I know
12 these are short time frames. I am doing it for, I hope,
13 a very good reason. I want to get this done because I
14 know what it means with respect to production.
15          Can the declarations that I am expecting
16 also then be filed by the end of business on Monday?
17          MS. BRZEZYNSKI: Yes, Your Honor.
18          SPECIAL MASTER POPPITI: Okay. Then
19 with that -- let me go off record for a moment.
20          (Discussion off the record.)
21          SPECIAL MASTER POPPITI: Counsel, what
22 I'd like to do is be in a position to give you a decision
23 close of business on Wednesday. If I see that I am going
24 to need a little more time than that, I will let you

Page 56

1  know, and I think the most efficient way to do it is not
2  with a lengthy written document. It may be much more
3  efficient for me to ask that we convene without the need
4  to disrupt anyone that is involved in the depositions in
5  the case and permit me to do something on the record late
6  in the business day on Wednesday. And I will have a
7  better sense of that once I get your submittals close of
8  business Monday.
9           MS. BRZEZYNSKI: That's fine, Your
10 Honor.
11          SPECIAL MASTER POPPITI: Now, with that
12 said, is there any need for there to be an actual stop
13 order between now and close of business Wednesday?
14          MR. MERIDETH: I don't think so, Your
15 Honor, because the issue of production of the documents
16 requested with respect to the non-accused products is
17 still pending.
18          SPECIAL MASTER POPPITI: Right.
19          MR. MERIDETH: So, I think, until that
20 is resolved and until this is resolved, we don't need a
21 formal order.
22          SPECIAL MASTER POPPITI: Right.
23          MS. BRZEZYNSKI: I will just alert you,
24 Your Honor, that we have depositions beginning, of

Page 57

1  Tatung, I believe, in a week and a half, and Mr. Merideth
2  can provide the actual date, and that, certainly, LPL is
3  very, very concerned about receiving document production
4  so close to those depositions that we will not have time
5  to review those documents. And I put that out there
6  because that is a very serious concern of LPL's.
7           SPECIAL MASTER POPPITI: I understand.
8           MS. BRZEZYNSKI: I also want to raise
9  that there has been a subpoena that has been served on
10 one of my partners, Rebecca Rudich, and I'd like to know
11 whether it's going to be necessary for us to move to
12 quash that subpoena or whether you will cover that in
13 your order next Wednesday?
14          SPECIAL MASTER POPPITI: Is there any
15 need for Miss Rudich to be deposed in light of what I am
16 proposing that get done?
17          MR. MERIDETH: No, sir, not at this
18 time.
19          SPECIAL MASTER POPPITI: Thank you.
20          MR. MERIDETH: However, I do want to
21 have a situation -- I don't want to have a situation
22 where the discovery cutoff ends and then an issue is left
23 hanging.
24          SPECIAL MASTER POPPITI: No. I

16 (Pages 58 to 61)

Page 58

1  understand that. But for purposes of doing the work that
2  I am doing, do you agree to withdraw the subpoena?
3            MR. MERIDETH: Yes, sir.
4            SPECIAL MASTER POPPITI: Thank you.
5            MS. BRZEZYNSKI: Thank you, Your Honor.
6            SPECIAL MASTER POPPITI: Are there any
7  other matters, then, that I need to address today?
8            MS. BRZEZYNSKI: I don't think so, Your
9  Honor.
10           MR. MERIDETH: There is one matter, Your
11 Honor. I believe that, yesterday, Mr. Kirk and Miss Gaza
12 submitted an order with regard to the CAD CAM software.
13 We did that -- oh, I am sorry. Here is the -- we have a
14 problem.
15           Your Honor indicated a desire to see the
16 CAD CAM software demonstrated, and we have brought an
17 individual with a lap top to make that demonstration for
18 you as you had suggested.
19           SPECIAL MASTER POPPITI: Okay.
20           MR. MERIDETH: The problem is that we
21 have a license that limits the use of that software to
22 the country of Taiwan, and, technically, it is a
23 violation of that license for us to remove it from
24 Taiwan, and we would like a court order that says we have

Page 59

1  to do that -- or an order from you that says we have to
2  do that so we don't have a problem with the license
3  order. That's all.
4            SPECIAL MASTER POPPITI: And something
5  came over for me?
6            MR. MERIDETH: It has been sent to
7  Mr. Kirk but it hasn't yet arrived at your desk.
8            SPECIAL MASTER POPPITI: If you will
9  bring it -- I expect what you are telling me, it will do
10 if I sign that before we proceed tomorrow in the
11 courthouse; correct?
12           MR. MERIDETH: Yes, sir.
13           SPECIAL MASTER POPPITI: All right.
14 Let's do it in that fashion.
15           MR. MERIDETH: I just didn't want to
16 have an issue with the licensor and I think that's what
17 everyone expected.
18           SPECIAL MASTER POPPITI: I understand.
19           MS. BRZEZYNSKI: Your Honor, I fully
20 understand Mr. Merideth's concern. I think that
21 Mr. Ambrozy took a look at that order and indicated to me
22 that he had a concern with the in camera language. And
23 Mr. Ambrozy has raised with Tatung counsel that we expect
24 to be present when the CAD CAM files are shown to Your

Page 60

1  Honor as well, and we made that request to Tatung.
2            MR. MERIDETH: I think when Your Honor
3  indicated that you wanted to see the CAD CAM program that
4  you indicated that you would look at in camera, but we
5  can address that tomorrow, but I am telling you, we don't
6  want one of these patent prosecutors present. It's a
7  serious problem.
8            MS. BRZEZYNSKI: Again, that's a comment
9  that --
10           SPECIAL MASTER POPPITI: No comment. I
11 understood Mr. Merideth to be asking a question. Will
12 there be a patent prosecutor present?
13           MS. BRZEZYNSKI: Mr. Ambrozy will be
14 present tomorrow. I am not sure which colleagues he will
15 have with him. I know that Mr. Christenson will be there
16 for part of the time but hopes to leave right after his
17 argument. I believe that Mr. Auito will also be with
18 Mr. Ambrozy and that they are both in Delaware now.
19           SPECIAL MASTER POPPITI: Does that
20 answer the question?
21           MR. MERIDETH: Yes, sir.
22           SPECIAL MASTER POPPITI: Do I need to do
23 anything else, then?
24           MR. MERIDETH: No. But I think we need

Page 61

1  to discuss -- we can discuss the CAD CAM tomorrow.
2            SPECIAL MASTER POPPITI: We can. I
3  agree.
4            MR. MERIDETH: I don't think it's
5  necessary to burden the record on that now.
6            SPECIAL MASTER POPPITI: I agree.
7            MS. BRZEZYNSKI: Thank you.
8            MR. MERIDETH: Thank you.
9            SPECIAL MASTER POPPITI: Thank you all.
10           (The hearing was concluded at 4:11 p.m.)