# EXHIBIT 19

Case 1:04-cv-00343-JJF    Document 785-20    Filed 09/17/2007    Page 1 of 4

# THE BAYARD FIRM
A T T O R N E Y S

222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE

www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395
WRITER'S DIRECT ACCESS
(302) 429-4208
rkirk@bayardfirm.com

FILED ELECTRONICALLY

August 23, 2007

The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE  19801

   Re: *LG.Philips LCD Co., Ltd. v. ViewSonic*, C.A. No. 04-343 JJF

Dear Special Master Poppiti:

 On August 15, 2007, the Tatung Defendants wrote to "bring to Your Honor's attention their recent proposal to LPL" regarding its motion to compel Ms. Rebecca Rudich's deposition. That proposal sought, *inter alia*, to depose a 30(b)(6) witness from LPL's law firm (McKenna Long & Aldridge LLP or "McKenna") regarding its practices and procedures relating to patent prosecution in general, and regarding a prior litigation (hereinafter "the NEC litigation") in which attorneys from McKenna or its predecessor firms may have been involved, in lieu of having Ms. Rudich testify as to those topics. These proposed topics were formalized by the Tatung Defendants on August 20, 2007. (See Ex. A.)

 Proposed topic 1 generally pertains to McKenna's policies and procedures relating to its patent prosecution practice for the time frame of April 1998 to December 2002, including how McKenna researches, obtains, investigates, evaluates and discloses prior art to the Patent Office. Proposed topic 2 pertains to every conceivable aspect of prosecuting the Patents-in-Suit, including "the disclosure or non-disclosure of prior art," "[a]ll details regarding the awareness of any of the inventors of the Patents-in-Suit, the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit . . . of any Prior Art LPL product", "[t]he understanding of the attorneys who prepared and/or prosecuted the applications for the Patents-in-Suit regarding the subject matter claimed in the Patents-in-Suit", etc. And proposed topic 3 generally pertains to McKenna's involvement in the NEC litigation. (Ex. A at pp. 3-5.)

 The Tatung Defendants suggest that they are being reasonable in not proceeding to take Ms. Rudich's deposition relating to the Patents-in-Suit <u>when she has very little information relating to the Patents-in-Suit in any event</u>. Her lack of knowledge regarding the prosecution of the Patents-in-Suit is outlined in her Declaration provided to Your Honor on August 20, 2007. (Ex. B.) Further, the Tatung Defendants are not entitled to a deposition from McKenna regarding its patent prosecution procedures and regarding a prior litigation because the Tatung Defendants request is untimely, unreasonable, and overbroad.

668213-1

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
August 23, 2007
Page 2

On February 27, 2007, the Tatung Defendants served a subpoena on Ms. Rudich for her personal deposition. (Ex. C.) This subpoena was the culmination of the Tatung Defendants' attempt to prove that McKenna's prosecuting attorneys had violated the Protective Order by reviewing the Tatung Defendants' technical specifications marked as Highly Sensitive Confidential. (See Ex. D.) In an effort to resolve that issue, on March 6, 2007, Ms. Rudich provided a Declaration regarding, *inter alia*, whether or not attorneys at McKenna had access to Defendants' documents designated as Highly Sensitive Confidential. (Ex. E.) Pursuant to that Declaration, Mr. Merideth stated on March 16, 2007 (before the March 30th close of fact discovery), that given LPL's "agreement to provide designated privileged documents to the Special Master, Tatung Company agreed to withdraw its subpoena of Ms. Rudich." (Ex. F.)

Mr. Merideth went on to state there was "one very limited issue, unrelated to the Protective Order, on which we need testimony from Ms. Rudich. The testimony will be limited to her responses to a specific PTO office action regarding the '079 [Application] related to an IBM product. In lieu of such testimony we would be willing to accept a declaration . . . ." (Ex. F.) The Tatung Defendants even provided LPL with a draft of the declaration they wanted Ms. Rudich to execute. Importantly, the draft declaration never even hints that the Tatung Defendants wanted to depose Ms. Rudich on any topic other than the prosecution of the '079 Application. (See generally Ex. G.)

The Tatung Defendants' recent attempt to convince this Court that they needed Ms. Rudich all along for all types of information, including McKenna's practices and procedures relating to patent prosecution in general, and regarding the NEC litigation in which attorneys from McKenna or its predecessor firms may have been involved, is simply belied by the facts. Indeed, as late as July 9, 2007, Mr. Meredith stated that the only issue for which he wanted to depose Ms. Rudich related to a specific issue in connection with the '079 Application. (Ex. H.)

The Tatung Defendants now argue that they "believed the appropriate witness [for a 30(b)(6) deposition regarding patent prosecution] was Rebecca Rudich, whose declaration stated that she is involved in prosecution activities relating to the Patents-in-Suit and that she is the senior partner in charge of all prosecution work." (Ex. I.) But the Tatung Defendants exaggerated Ms. Rudich's supervisory capacity when they stated to this Court that "she is the senior partner in charge of all prosecution work." What Ms. Rudich actually stated in her Declaration is "<u>For the past several years</u>, I have been the Senior Partner in charge of day to day activities for all of the patent prosecution work. " (Ex. E at ¶ 4, emphasis added.) As Your Honor is aware, Ms. Rudich's patent prosecution activity <u>related to</u> the Patents-in-Suit pertains to the '079 Application, which is a continuation of the Patents-in-Suit.

Ms. Rudich's August 20th Declaration reinforces her lack of knowledge regarding McKenna's patent practice during the prosecution of the Patents-in-Suit. For example, she specifically states that "[d]uring the period from June 28, 2000, until the issuance of [the Patents-in-Suit], I was involved in patent prosecution activities for a variety of technologies under the supervision of Song K. Jung, a partner with" McKenna (Ex. B at ¶ 4); but that "[d]uring the period of time from June 28, 2000, until the issuance of the Patents-in-Suit in December of 2002, I performed very limited work related to the prosecution of the Patents-in-Suit, all of which was done under the supervision of Mr. Jung." (Ex. B at ¶ 5.)

THE BAYARD FIRM

The Honorable Vincent J. Poppiti
August 23, 2007
Page 3

Importantly, the Tatung Defendants have known from the earliest stages of this litigation that Mr. Song Jung prosecuted the Patents-in-Suit, and thus was the appropriate person to be deposed regarding McKenna's prosecution practice. For example, the Tatung Defendants' Initial Disclosures, dated July 29, 2005, specifically identify Mr. Jung as an individual with McKenna that is "likely to have discoverable information" regarding the "Prosecution of Patents-in-Suit." (Ex. J at pp. 2-3.) Similarly, in their Responses To LPL's Second Set Of Interrogatories, dated February 13, 2006, the Tatung Defendants again identified Mr. Jung as a person with information or knowledge relevant to the Tatung Defendants' contention that any claim of the Patents-in-Suit were invalid. (Ex. K at pp. 11-13.)

Thus, the Tatung Defendants' representations regarding Ms. Rudich's work are not only incorrect, but are an improper attempt to bootstrap a 30(b)(6) deposition of McKenna out of the singular reason that the Tatung Defendants stated they needed Ms. Rudich's deposition - "her responses to a specific PTO office action regarding the '079 [Application] related to an IBM product." (Ex. F.) Any attempt by the Tatung Defendants to seek a 30(b)(6) deposition of McKenna should be denied given the Tatung Defendants' failure to serve a 30(b)(6) deposition notice on Mr. Jung or McKenna before discovery closed almost five months ago.

Moreover, the proposed 30(b)(6) deposition topics are clearly topics that the Tatung Defendants should and could have pursued when fact discovery was still open, had they intended to do so. For example, proposed topic 1 generally pertains to McKenna's policies and procedures relating to its patent prosecution practice for the time frame of April 1998 to December 2002, including how McKenna researches, obtains, investigates, evaluates and discloses prior art to the Patent Office. And proposed topic 2, while it is partially couched in terms of the newly produced LPL documents, still seeks an open-ended deposition to explore grounds for supporting its affirmative defenses of unclean hands, patent misuse and inequitable conduct. These are clearly issues that could and should have been explored before the close of fact discovery. (See Ex. K, the Tatung Defendants' responses for Interrogatory Nos. 15, 17 and 18, respectively.)

The Tatung Defendants are therefore not entitled either to a deposition of McKenna or a deposition of any attorney who prosecuted the Patents-in-Suit. Moreover, the Tatung Defendants' proposed scope of a 30(b)(6) deposition is unreasonably broad, wholly inappropriate, and seeks proprietary and privileged information about McKenna's business practices. In addition, the Tatung Defendants appear to be seeking to discover privileged information, including communications between McKenna and LPL.

For at least all these reasons, this Court should not permit any deposition of McKenna Long & Aldridge or Ms. Rudich.

Respectfully submitted,

/s/ Richard D. Kirk
Richard D. Kirk (rk0922)

cc: Counsel as shown on the attached certificate

668213-1