# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

Jeffrey B. Bove
Partner
TEL (302) 888-6241
EMAIL jbove@cblh.com

WILMINGTON, DE
The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

September 21, 2007

*Via Email and Hand-Delivery*
The Honorable Vincent J. Poppiti
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

    Re:    *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation, et al.*
              USDC Case No. 04-343 JJF

Dear Special Master Poppiti:

Defendants ViewSonic Corporation, Tatung Co., and Tatung Co. of America submit this brief seeking relief relating to the 30(b)(6) deposition of Plaintiff, LG.Philips LCD Co., Ltd. which commenced on September 19, 2007 per the Court's Order dated September 5, 2007 ("Order" D.I. 784).

Notwithstanding the Court's express directive that LPL produce a prepared witness, Mr. Cho arrived unprepared and unwilling to answer questions that fall squarely within the scope of the Court's Order. The transgression of the Court's Order to provide this discovery has been heightened by objections and obstruction during the testimony.

Expert discovery cannot be completed without resolution of the issues this deposition was ordered to cover. And with trial nearing, there simply is no time left. Thus, as a remedy for the extraordinary burden, inconvenience, expense, and irreparable delay this conduct has produced, Defendants respectfully request that the Special Master issue the following evidentiary sanctions pursuant to Federal Rules of Civil Procedure 37(b)(2):

    (1) An Order that the LPL Prior Art Products shall be deemed admitted prior art for all purposes in this case and that all documents associated therewith that were produced by LPL as part of the Recent Discovery, as well as the sample of the GoldStar LC056N1 product produced by Defendants and identified in their expert invalidity report, be deemed authentic and to satisfy the hearsay exceptions of the Federal Rules of Evidence;

    (2) An Order prohibiting LPL from introducing into evidence, through fact or expert witnesses, any facts or opinions that differ from or are beyond that already testified to by LPL regarding the location, structure, performance and/or function of any fastening parts located on any LPL Product as that term is defined in the Court's Order;

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
September 21, 2007
Page 2

(3) An Order requiring LPL to designate and prepare ▮▮▮▮▮▮▮▮▮ to testify as its representative for the completion of the 30(b)(6) deposition which shall resume as soon as practicable at the offices of Connolly Bove Lodge & Hutz; and,

(4) An Order under Federal Rules of Civil Procedure 37(d) that LPL reimburse Defendants their attorneys' fees, costs, and expenses incurred in relation to this deposition and the bringing of this motion.

### Specific Examples of Deposition Misconduct

I.  *Witness Unprepared*

When discussing a date for this deposition with the Court, LPL represented that it needed at least 3 weeks preparation in Korea and 1 week in the U.S. for a witness to be able to testify. This time was allowed despite the fact that the parties are pressed to complete expert discovery to meet the existing trial date. Yet, with all of this time to prepare, Mr. Cho is admittedly unprepared to testify on issues at the very heart of this case.

For instance, as already identified by Defendants during the September 20, 2007 hearing, Mr. Cho was unprepared to answer questions about the public disclosure and advertising of the LPL Products, which falls within Topic 3e of the Court's Order. *See* Volume II (9/20/2007), 29:10-32:25. He was not prepared to answer questions about whether any of the LPL Products were the subject of any advertisements or trade show disclosures, stating he had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 30:22-31:9.

Despite being given a month by the Court to prepare, Mr. Cho could not provide the simplest facts about the documents or products at issue. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Volume I (9/19/2007) at 17:19-18:2. Mr. Cho also could not answer any questions regarding LPL's product model numbers and whether those numbers convey any information about the products' mounting features, expressly at issue under Topics 1c, 1d, 2c, and 2d. Vol. II, 20:3-21:13; 21:15-23:1; 23:18-26:13.

Indeed, the depths of Mr. Cho's lack of preparedness extended to his inability to answer any questions aimed at establishing whether LPL's own product specifications were prepared in the ordinary or regular course of business in order to qualify them as business records, as noticed in Topic 8a. Vol. I, 96:7-101:20. This was quite surprising since earlier in the day, in response to an unrelated colloquy, LPL's counsel stated that for Topic 8a: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 25:25-26:4.[1]

---

[1] ViewSonic's counsel asked LPL to stipulate that Exhibit 80 is a business record and therefore admissible as evidence at trial. Vol. I, 101:22-25. LPL's counsel indicated that it believed the issue could be worked out but not

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
September 21, 2007
Page 3

Mr. Cho was likewise unable to testify about the meaning of several of LPL's product model designations contained in the Recent Discovery. *Id.* at 21:7-9; 28:22-29:6. In an effort to assist Mr. Cho's recollection on what the product designation "LV" meant, ViewSonic's counsel marked as Exhibit 77 a copy of a ███████████████. Mr. Cho said ███████. *Id.* at 29:21-22. The second page ██████████████████████████████. Emblematic of LPL's obstructionist discovery tactics, Mr. Cho would not answer a simple question about these facts. *Id.* at 30:23-32:25. Nor did Exhibit 77 enable him to explain what the designation "LV" represented, stating: ████████████████████████████. *Id.* at 35:11-21.

This part of the examination also provides a glaring example of how – very early on – Mr. Cho's answers seemed framed according to his counsel's objections. For example:

> *Q:* Let me ask it this way then. Does LPL know anything about the product designated LV56ND01A other than what is contained in Exhibit 77?
>
> Mr. Ambrozy: ***Object to the question. It's ambiguous*** in that it's unclear whether you're asking about this –
>
>> Mr. Miller: Counsel, please don't make a speaking objection. You can raise the objection that it's ambiguous if you want and leave it at that. You're not here to coach the witness.
>>
>> Mr. Ambrozy: I'm not coaching the witness.
>
> \*\*\*
>
> Q: So please answer the question.
>
> *A:* 

Vol. I, 33:17-34:25 (emphasis added).

Additional transcript citations where the witness indicated he was not prepared to answer the posed questions include: (1) Vol. I, 36:15-19; 36:20-37:17; 42:15-43:19; 52:3-55:6; 57:10; 86:4; 90:25; 91:9-96:20; 96:8-102:24; and (2) Vol. II, 37:6-17.

II.     *Witness Unwilling to Answer Fact Questions*

Mr. Cho obstructed ViewSonic's efforts to elicit the facts regarding the structure of any LPL Products, and in particular the mounting features of those products. Mr. Cho said ████████████████████████████████████████████████████ until the end of the deposition. Vol. II, 3:10-6:10. LPL's approach is unacceptable as it will leave Defendants no opportunity to establish the admissibility of the Recent Discovery.

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
September 21, 2007
Page 4

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The exchange found in Volume I at pages 44:17-45:25 is typical of Mr. Cho's unwillingness to testify about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Mr. Cho similarly refused to answer questions regarding the most basic and fundamental facts that gave rise to the need for this deposition, namely, what features, e.g. fastening elements, exist on LPL Products that enable the product to be affixed, attached, or secured within, on or to another structure (as set forth in Topics 1c, 1d, 2c, and 2d of the Order).

> Q: Did the LV56ND01A product include any structure that allowed it to be connected to anything else?
>
> Mr. Ambrozy: Object to the question to the extent it calls for a legal conclusion. You can answer.
>
> The Witness: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Vol. I, 46:19-47:18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Rather, he *was* asked whether the LCD product *when sold by LPL* has any feature or structure that enables it to be connected to another structure, such as a housing, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This refusal to respond occurred throughout the deposition in response to dozens of different questions trying to elicit this simple fact about the structure of LPL's Products, with Mr. Cho responding with a nearly verbatim evasive response. Vol. I, 47:19-58:17; 63:1-72:11, 74:7-79:25. The location of mounting holes is central to the core issues of this case, and LPL's refusal to answer proper questions directed to that issue in this Court Ordered deposition must be sanctioned.

The witness went to absurd lengths to refuse to provide this key information. For example, the LPL product specification for the LP064V1 product, marked as Exhibit 80 states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 80 at LPL-01170 (emphasis added). Vol. I, 85:11-86:11. This is a product specification which LPL provided to its "set maker" customers. Yet, when the term ▮▮▮▮▮▮▮▮▮▮▮▮ was used in an effort to elicit this fundamental factual information, the questions were met with an improper "legal conclusion/expert testimony" objection followed by Mr. Cho's refusal to answer because ▮

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
September 21, 2007
Page 5

████████████████████████████████████.[2]  *See*, Vol. I, 80:1-82:11, 85:1-96:20; Vol. II, 14:2-23:1.

Mr. Cho even extended what turned out to be a false invitation to testify about specific mounting holes. Vol. I, 81:25-82:11. Based on this offer, ViewSonic's counsel directed Mr. Cho to the product drawings contained in Exhibit 80 and asked him whether it shows ██████████ ██████████████ After lengthy improper speaking objections by LPL's counsel, Mr. Cho responded, ████████████████████████████████████████████████████████████████████████████████████████████████ Numerous attempts to elicit an answer to this simple question about facts contained in an LPL-produced document were made. *Id.* at 89:14-91:24. Each attempt was met with the same objection-framed mantra, ████████████████████████████████████████████████████████████████ *Id.* at 91:8-92:4; *see also* 92:6-94:17.

Indeed, LPL's counsel even stated that the "witness might be relying too strongly on objections," and wanted to "take a break" to talk to the witness to try to get past this problem. *Id.* at 92:9-12. Naturally, Defendants' counsel objected to any such conversation occurring off the record. *Id.* at 92:13-18. The only substantive information ViewSonic's counsel could elicit from Mr. Cho ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 95:19-96:6. Other examples of the witness' refusal to answer fact-eliciting questions include: (1) Vol. I, 14:3-20:2; 42:7-22; 43:8-17; and (2) Vol. II, 27:14-23.

The level of Mr. Cho's unpreparedness and refusal to answer fact questions within the scope of the Court's Order warrants the imposition of the requested sanctions under Rule 37. *See, e.g., Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 303-05 (3d Cir. 2000); *Transportes Aereos de Angola v. Ronair, Inc.*, 104 F.R.D. 482, 508 (D.C.Del. 1985).

III.   *Improper Objections*

Finally, throughout the deposition, LPL's counsel made either speaking objections or frivolous objections which impeded Defendants' ability to obtain testimony. Not only were the

---

[2] This gamesmanship is all the more remarkable when one compares this testimony to Mr. Cho's individual deposition testimony. For example, Mr. Cho testified that ██████████████████████████████████ ████████████████████████████████████. *See* Ex. A, Cho 3/5/2007 Depo. at 69:19-70:2. Mr. Cho similarly was able to testify that ████████████████████████████████████████████████████████ ████████████████████████. *See e.g.*, Ex. B, *Markman* hearing, at 24:9-25:7.

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

The Honorable Vincent J. Poppiti
September 21, 2007
Page 6

objections excessive, but the witness' responses often parroted back counsel's objections. *See, e.g.*: (1) Vol. I: 22:19-24:13; 25:1-27:1; 33:17-34:19; 38:2-40:17; 47:20-48:4; 49:6-16; 63:1-69:10; 78:14-79:25; 80:1-82:11; 86:21-95:6; 98:2; 98:20; 99:11-101:5; (2) Vol. II: 14:7-15:18; 17:18-21:13, 23:18-26:13; 29:10-20; 32:11-22; 34:9-36:2.[3]  This activity further warrants the imposition of Rule 37 sanctions.

Respectfully submitted,

/s/ *Jeffrey B. Bove*

Jeffrey B. Bove

cc:   All counsel

---

[3] In his individual deposition taken in March 2007, Mr. Cho often incorporated counsel's objections into his responses. *See* Ex. C, Cho 3/7/2007 Depo. at 222:1-225:2, 233:14-235:18, 237:9-22.