# EXHIBIT 1

HEARING

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,  )
                               )
        Plaintiffs,            )    C.A. No. 04-343(JJF)
                               )
v.                             )
                               )
TATUNG CO., TATUNG COMPANY OF  )
AMERICA, INC., and VIEWSONIC   )
CORPORATION,                   )
                               )
        Defendants.            )

        Hearing of above matter taken pursuant to
notice before Renee A. Meyers, Registered Professional
Reporter and Notary Public, in the law offices of BLANK
ROME, LLP, 1201 North Market Street, Wilmington,
Delaware, on Tuesday, March 13, 2007, beginning at
approximately 5:05 p.m., there being present:

BEFORE:  VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        RICHARD D. KIRK, ESQ.
          222 Delaware Avenue, Suite 900
          Wilmington, Delaware  19899
          for Plaintiffs

                CORBETT & WILCOX
        Registered Professional Reporters
    230 North Market Street    Wilmington, DE 19899
                (302) 571-0510
            www.corbettreporting.com
        Corbett & Wilcox is not affiliated
    with Wilcox & Fetzer, Court Reporters

HEARING

Page 2

```
1    APPEARANCES (Continued):

2            MCKENNA, LONG & ALDRIDGE, LLP
             CASS W. CHRISTENSON, ESQ.
3            REL S. AMBROZY, ESQ.
               1900 K Street, N.W.
4              Washington, D.C.  20006
               for Plaintiffs
5
             RICHARDS LAYTON & FINGER
6            ANNE SHEA GAZA, ESQ
               One Rodney Square
7              Wilmington, Delaware  19801
               for Defendant Tatung Co.
8
             GREENBERG TRAURIG LLP
9            FRANK MERIDETH, ESQ.
             MARK KREISMAN, ESQ.
10           VALERIE HO, ESQ.
               2450 Colorado Avenue, Suite 400E
11             Santa Monica, California  90404
               for Defendant Tatung Company of America, Inc.
12
             CONNOLLY BOVE LODGE & HUTZ LLP
13           JAMES D. HEISMAN, ESQ.
               1007 North Orange Street
14             Wilmington, Delaware  19899
               for Defendant Viewsonic Corporation
15
             CONNOLLY BOVE LODGE & HUTZ LLP
16           SCOTT R. MILLER, ESQ.
             MANUEL NELSON, ESQ.
17           TRACY ROMAN, ESQ.
               355 South Grand Avenue
18             Los Angeles, California  90071-3106
               for Defendant Viewsonic Corporation
19

20

21

22

23

24
```

HEARING

Page 20

1    going to be able to get resolution or get LPL to agree to

2    work these issues out with us even though we did follow

3    the procedure and they never filed their own motion.

4                    MR. CHRISTENSON:  Your Honor, we worked

5    out all of the topic issues with respect to LPL and we

6    have agreed to provide supplemental testimony on many of

7    those topics and we resolved the other topics.

8                    We had also proposed a two-way deal for

9    everybody to defer some topics that we felt were more

10   suitable for experts.  We offered that more than once and

11   the defendants would not agree with us on that.  I think

12   now they may be willing to agree and we are still trying

13   to work with them on those discrete issues.

14                   MR. MERIDETH:  We did agree to that

15   proposal.  I have sent you a couple of emails on that.

16   In fact, I sent you an email today reminding you that I

17   had sent you an email.

18                   SPECIAL MASTER POPPITI:  Counsel, what

19   you are doing for me is identifying the nature of the

20   problem that I have identified.

21                   It is difficult, at best, to -- well,

22   it's difficult to focus on the substance of it all,

23   having been through the substance of it all, without

24   knowing the path forward in an appropriate filing with

HEARING

Page 25

1   worked out or wouldn't be worked out.  It really wasn't

2   until we were on with Your Honor during the first week of

3   deposition of Mr. Kim, LPL's witness, that it was made

4   abundantly clear, to all the parties, that a motion for

5   protective order would be the only vehicle by which a

6   witness could seek protection from testifying as to any

7   category.  So, we proceeded immediately from there to try

8   to get the motion prepared and to make one additional

9   effort to meet and confer on these issues which is

10  reflected on that March 6th letter.

11                SPECIAL MASTER POPPITI:  Any other

12  comments about that, then, please?  Let's turn to -- we

13  will turn to substance.

14                MS. ROMAN:  Thank you, Your Honor.

15                I think, perhaps, the easiest place to

16  start is with the topics that focus fundamentally on

17  invalidity and infringement contention and claim

18  construction, 10 and 11.

19                I will just state, for purposes of

20  Mr. Christenson, please feel free to chime in at any time

21  if you think that we have reached agreement on some of

22  these because I certainly don't want to waste anyone's

23  time.

24                But topics 10 and 11 would be the best

HEARING

Page 26

1    place to start.  As I understand it, these topics seek

2    the contentions concerning whether or not the

3    patents-in-suit are infringed by the products.  That's

4    topic 10.  Topic 11 seeks ViewSonic's position and

5    contention concerning whether the patents-in-suit are

6    unenforceable for any reason.  And I think that the

7    parties are in agreement that the contentions,

8    themselves, are areas that should not be explored with

9    fact witnesses but should be reserved for expert

10   deposition.  We have agreed to that limitation with

11   respect to not requiring LPL to produce a fact witness

12   for similar topics.

13                   SPECIAL MASTER POPPITI:  Okay.

14                   MS. ROMAN:  The continuation of topics

15   10 and 11 also states the factual basis responsive to

16   interrogatories and documents concerning those positions.

17   And I think that's where our last discussion has left off

18   as to whether or not we have to produce a fact witness

19   for that portion of the topic.  And our difficulty is

20   trying to figure out how we parse out what is expert

21   testimony versus what is a fact witness testimony on

22   infringement and invalidity contentions relative to the

23   factual phase of the interrogatory responses and document

24   responses.

HEARING

1              SPECIAL MASTER POPPITI:

2    Mr. Christenson.

3              MR. CHRISTENSON:  Yes, Your Honor.  It

4    sounds like ViewSonic -- until recently, ViewSonic was

5    reserving the right to elect whether they would defer to

6    experts on contentions concerning validity and

7    infringement and it sounds like they have made the

8    election to defer to experts.  Miss Roman stated

9    correctly that LPL had made that same election.  And, so,

10   it sounds like that issue --

11             SPECIAL MASTER POPPITI:  Doesn't that

12   resolve --

13             MR. CHRISTENSON:  -- is moot; in other

14   words, resolved.  As Ms. Roman said, however, the topics

15   go on to request information concerning the factual basis

16   and relevant documents, which I believe are appropriate

17   fact witness issues.

18             SPECIAL MASTER POPPITI:  And that's what

19   she is talking about.  She is saying that they are

20   having, correct me if I am wrong, you are having a

21   difficult time parsing, and I guess my -- I am having a

22   difficult time understanding why that's difficult.

23             It may not be the most efficient way to

24   do it, but you are not suggesting that the topic 10, if

HEARING

1    to be seeking the information regarding the conclusions

2    that are reached or the expert's testimony that's going

3    to come forth on those.

4              SPECIAL MASTER POPPITI:  I don't -- that

5    would be virtually -- I mean, that would be crazy,

6    wouldn't it?

7              MR. CHRISTENSON:  Yes, Your Honor.  It

8    sounds to me like they are trying to suggest it can't be

9    a separate factual basis for a contention.  We just

10   disagree with that fundamentally.

11             MS. ROMAN:  I am actually suggesting

12   that we wouldn't have a fact witness that would be

13   putting forth that factual basis.  But I understand, from

14   Mr. Ambrozy's point, I believe, that you are considering

15   that the factual basis can be as broad as what are the

16   components within our product and identifying those

17   components.  Hearing that, I understand the distinction

18   you are making.

19             SPECIAL MASTER POPPITI:  And with that

20   distinction, is it not going to depend, then, on what

21   questions are posed?

22             MS. ROMAN:  Yes, Your Honor.

23             SPECIAL MASTER POPPITI:  Okay.

24             MS. ROMAN:  So I think that we all have

Page 30

1    a clear understanding with regard to topics 10 and 11,

2    and to the extent we are dealing with just the beginning

3    half of it that deals with the contentions, the ultimate

4    contentions, that that will be areas that ViewSonic is

5    going to rely on expert testimony for, and then if a fact

6    basis is something that's within the scope and knowledge

7    of the fact witness, then that will be provided.

8            SPECIAL MASTER POPPITI:  Okay.  Thank

9    you.  Next, please.

10           MS. ROMAN:  Your Honor, I think I can

11   short us through a few of the other topics if I might

12   identify them first and then explain why I am grouping

13   them together because they flow from what we just

14   discussed with respect to topics 10 and 11.

15           SPECIAL MASTER POPPITI:  Yes, please.

16           MS. ROMAN:  This would be topics, four

17   eight, nine, and 23.

18           SPECIAL MASTER POPPITI:  Just a second.

19   Four, eight, nine, and 23, okay.

20           MS. ROMAN:  Yes, Your Honor.

21           SPECIAL MASTER POPPITI:  Thank you.

22           MS. ROMAN:  Each of these topics,

23   because of their breath, also raise concern to the extent

24   that the testimony sought would be seeking not only fact

HEARING

1    provide a witness.  I think we have the right to test and

2    find out if there are unfavorable investigations or

3    inspections or testing that would benefit our client and

4    that we would want to offer.

5              SPECIAL MASTER POPPITI:  You mean the

6    existence of them?

7              MR. CHRISTENSON:  Yes, Your Honor, the

8    existence and nature of them, for example.  So I don't

9    want to agree that they can just pick the ones that

10   should be discussed at the deposition.  I don't think

11   that's appropriate.  I think we should have the right to

12   explore that, and I would note, Your Honor, that the

13   topic is very similar to topic 24E that was noticed to

14   LPL and for which LPL provided a witness.

15             MS. ROMAN:  Perhaps, then, there is a

16   better way of going about each of these topics.

17             SPECIAL MASTER POPPITI:  Why don't you

18   propose that, then, please?

19             MS. ROMAN:  Fundamentally, our concern

20   is that we don't want to have to have fact witnesses

21   testifying as to those areas for which expert testimony

22   is the appropriate testimony in Delaware, specifically,

23   infringement contentions, invalidity contentions, and,

24   also, this would fall with regards to claim construction,

HEARING

Page 34

1   any of the topics that relate to claim construction

2   before the claim construction order has been issued.

3                    And to the extent that all of the topics

4   that I have identified might sweep in some of that, it

5   won't matter because the parties have agreed that

6   questioning regarding the contention is improper until

7   expert testimony.  And then we can provide the fact

8   witnesses and hope that, during the depositions, there is

9   no disagreement as to whether certain questioning goes to

10  the contentions or not.

11                   SPECIAL MASTER POPPITI:  Well, let me

12  suggest this:  If you are able to forge that agreement,

13  and certainly understanding that questioning a fact

14  witness as to the factual basis of contentions may be

15  fair -- you would agree with that; correct?

16                   MS. ROMAN:  Yes.  I understand that,

17  Your Honor.

18                   SPECIAL MASTER POPPITI:  If you forge

19  that agreement and you find yourself in a deposition

20  where the agreement is coming off track, in light of the

21  fact that I am dealing with a protective order and it is

22  not a function of my responding to an instruction not to

23  answer, it would be really to get you back on track with

24  your agreement, then I certainly would be available to do

HEARING

1    that.

2              But Mr. Christenson, what I am hearing,

3    it makes some sense, does it not?

4              MR. CHRISTENSON:  Your Honor, it makes

5    some sense, but I have a concern that I would like to

6    express.

7              SPECIAL MASTER POPPITI:  Sure.

8              MR. CHRISTENSON:  That is that the

9    contention topics are three specific topics in our

10   notice, and those are topics eight, 10, and 11.

11             SPECIAL MASTER POPPITI:  Just a second.

12             MR. CHRISTENSON:  What I am

13   understanding Miss Roman to say is that they want to

14   treat, under some agreement that does not exist, as

15   covering contention issues, you know, the many, many

16   topics that they identified in the motion for protective

17   order.

18             MS. ROMAN:  What I really want to do is

19   make sure that the protection that's provided for topics

20   eight, 10, and 11 isn't circumvented by virtue of the

21   breath of another topic being brought on us to sweep in

22   that information.  That's all I am trying to make sure

23   of.

24             MR. CHRISTENSON:  I think it's, to the

HEARING

Page 36

1    extent we ask on a contention issue and we have agreed

2    that contention issue will be deferred to experts, we

3    can't, obviously, use a different topic number to get the

4    contention issue resolved by a fact witness.  So, I don't

5    think that's going to be a problem.

6              I am just trying to avoid a situation

7    where there is some suggestion that some of these topics,

8    other than eight, 10, and 11, are somehow part of an

9    agreement.

10             MS. ROMAN:  Perhaps also adding topic

11   nine to the extent it pertains to specific defenses of

12   non-infringement -- well, you are saying that's not a

13   specific contention?

14             MR. CHRISTENSON:  Right.  Fact nine is

15   the basis, so, again, I think that's seeking factual

16   information.

17             MR. AMBROZY:  If we were to ask the

18   witnesses about what they knew existed before the patents

19   were filed, what technology they knew before the patents

20   were filed, I think that's a totally proper factual

21   inquiry, although it might -- it might be swept under

22   invalidity, it still is not part of the invalidity

23   contention.  Even if it was, it still is the fact

24   witness' or ViewSonic's knowledge of a fact in existence,

HEARING

1    so I think that's a proper topic.

2                    MS. ROMAN:  Right.  I agree with that.

3    Whereas, the contrary, which would be:  Why do you

4    contend that this particular reference is prior art?

5                    SPECIAL MASTER POPPITI:  That's

6    different.

7                    MR. CHRISTENSON:  Right.  I agree, Your

8    Honor.

9                    SPECIAL MASTER POPPITI:  That's

10   completely different.  It sounds to me like you are both

11   on the same page.

12                   MS. ROMAN:  Yes.  I think that that

13   works, and if Mr. Christenson is willing to go with that

14   understanding as he just voiced it and we just voiced it,

15   then I will as well.  It would be the contentions are

16   topics -- what was it -- eight, 10, and 11?

17                   SPECIAL MASTER POPPITI:  Eight, 10, and

18   11.

19                   MS. ROMAN:  For which we could rely on

20   expert testimony except to the extent that 10 and 11

21   seeks factual basis as we discussed.

22                   SPECIAL MASTER POPPITI:  Yes.

23                   MS. ROMAN:  And that, to the extent that

24   there is any disagreement during the depositions as to

HEARING

Page 38

 1   whether or not questioning is going astray from this

 2   agreement, then we can seek Your Honor's assistance.

 3                 SPECIAL MASTER POPPITI:  Yes.

 4                 MR. CHRISTENSON:  That's fine, Your

 5   Honor.

 6                 SPECIAL MASTER POPPITI:  Okay.

 7                 MR. MERIDETH:  I would agree with that

 8   also as well on behalf of the Tatung defendants.

 9                 SPECIAL MASTER POPPITI:  Thanks,

10   Mr. Merideth.

11                 MS. ROMAN:  Sorry.  For the topics that

12   related to -- or what we believed required claim

13   construction in order to properly respond to questioning

14   of -- under them, that was topics, I believe, one, five,

15   27, and 29.

16                 SPECIAL MASTER POPPITI:  Okay.  Go

17   ahead, please.  By "one," that is the newly designated

18   one?

19                 MS. ROMAN:  Yes, Your Honor.

20                 SPECIAL MASTER POPPITI:  Okay.

21                 MS. ROMAN:  I believe that the terms

22   that are included in it are flat panel display, flat

23   panel display device, and housing, although flat panel

24   display, I think we might actually have an agreed

HEARING

Page 39

1    construction on, somebody can correct me if I am wrong.

2                    MR. CHRISTENSON:  We do.

3                    MS. ROMAN:  So, flat panel display

4    device in topic No. 1.  I believe that's also in topic

5    No. 5.

6                    SPECIAL MASTER POPPITI:  Just one second

7    to make sure I am on the same page with you.  I

8    understand there is an agreement, but I am looking at --

9                    MR. CHRISTENSON:  Your Honor, I think

10    there was a little misunderstanding.  When you said "new

11    topic one," actually, that would be supplemental topic

12    31.

13                    SPECIAL MASTER POPPITI:  Thank you.

14                    MR. CHRISTENSON:  I think Ms. Roman is

15    working from the original ordering.

16                    SPECIAL MASTER POPPITI:  Thank you.

17    Then that's why I was not reading the right language.  Go

18    ahead, please.

19                    MS. ROMAN:  So, topic No. 1 includes the

20    language, quote, Seeking the structure of the visual

21    display products, the method of assembling visual display

22    products, including the structure and method of

23    assembling the flat panel display and flat panel display

24    device contained in each of those visual display

HEARING

Page 40

1    products.  The flat panel display device is one of the

2    terms that has been raised for construction.  And to the

3    extent that this topic would require a witness to respond

4    to questions that involve proposed construction, I think

5    it's premature, as Your Honor has previously indicated.

6                     Otherwise, other than that --

7                     SPECIAL MASTER POPPITI:  I am still

8    flipping through documents here to look at -- to look and

9    see where No. 1 is because it is not No. 1 -- what number

10   was used to -- in the re-numbering?

11                     MS. ROMAN:  I think it was 31.

12                     SPECIAL MASTER POPPITI:  And that's,

13   perhaps if you could tell me what submission and what

14   exhibit it's under?  I am looking at an LPL submission,

15   and I do not have --

16                     MS. ROMAN:  Your Honor, I believe the

17   topic No. 1 I am referring to is actually the original

18   topic No. 1.

19                     SPECIAL MASTER POPPITI:  Okay.  It is.

20   It begins, "The structure of the visual display product"?

21                     MS. ROMAN:  Yes, Your Honor.  I pointed

22   out flat panel display device is one of the terms that

23   has been breached for construction.  It also includes

24   fastening parts, fastening holes and frames involved in

HEARING

1    breach for construction.

2                          Separate and apart from --

3                          SPECIAL MASTER POPPITI:  Let me hear a

4    response with respect to topic No. 1.

5                          MR. AMBROZY:  Our position is as long as

6    the terms, if they are in the ordinary course of what one

7    ordinarily skilled would understand those terms and they

8    are proper, and also as the terms relate to products that

9    are sold by the defendants, we think the terms are proper

10   to be used, and in that -- they basically describe the

11   inventions, therefore, allows us to tie the inventions to

12   the accused products, there is no other way, Your Honor,

13   to really walk through an accused product without having

14   some sort of identification of the elements within that

15   product.

16                         SPECIAL MASTER POPPITI:  I don't see any

17   way that that can be done and I expect that the witness

18   is not being deposed for purposes of having that witness

19   do a -- or commit the party to a claim, a definition of a

20   claim or a view as to what your ultimate position with

21   respect to the construction of the claim is.

22                         MR. AMBROZY:  That's correct, Your

23   Honor.

24                         MS. ROMAN:  I appreciate that

HEARING

Page 42

```
 1   clarification, Your Honor, because that's precisely what
 2   I proposed last to Mr. Christenson.
 3                    SPECIAL MASTER POPPITI:  That's what
 4   should be going on, I would expect, because, otherwise,
 5   you are all going to be using sign language during the
 6   course of these depositions.
 7                    MS. ROMAN:  It could actually be more
 8   effective at times, perhaps.
 9                    SPECIAL MASTER POPPITI:  You may be
10   right.
11                    MS. ROMAN:  I simply wanted
12   clarification on that, and it sounds like we are all in
13   accord that as long as those topics aren't seeking a
14   witness to testify regarding the interpretation of those
15   claim terms or committing to an interpretation, then that
16   clarifies the concern.
17                    SPECIAL MASTER POPPITI:
18   Mr. Christenson?
19                    MR. CHRISTENSON:  Yes, Your Honor.  I
20   think that -- that, as Mr. Ambrozy said, that's not our
21   intent.  I am not sure what communication Ms. Roman was
22   referring to with me.
23                    MS. ROMAN:  It was the one I sent to you
24   yesterday, Cass, regarding topics 1, 27, and 29.
```

HEARING

Page 43

1                    MR. CHRISTENSON:  I don't think that

2    issue was raised.  We are not trying to make the fact

3    witness into an expert, Your Honor.

4                    SPECIAL MASTER POPPITI:  Thank you.

5                    MS. ROMAN:  Can we resolve

6    clarification, perhaps, then, on topic five?

7                    SPECIAL MASTER POPPITI:  Yes.  Any and

8    all technical, economic, or other, etcetera?

9                    MS. ROMAN:  Yes, Your Honor, that's the

10   correct topic.

11                   SPECIAL MASTER POPPITI:  Okay.

12                   MS. ROMAN:  And perhaps this is just

13   different interpretations of it, but the way I read topic

14   five, it asks for any of that information concerning the

15   structures and methods of assembly claimed in the

16   patents-in-suit and any comparisons or analysis conducted

17   by you or for you concerning the mounting of flat panel

18   displays or flat panel display devices used in visual

19   display products, etcetera.

20                   We read the entire topic No. 5, or I

21   understood it to be seeking mounting structures and

22   methods of assembly and comparisons or analysis regarding

23   those mounting structures or assemblies that are claimed

24   in the patents-in-suit, and I think that goes directly to

HEARING

Page 44

1    the claim construction.

2                MR. AMBROZY:  Your Honor, for the same

3    reason that we believe the terms were proper in topic

4    one, they are proper in topic five.  Again, it's just to

5    point the defendants so they can properly prepare their

6    witnesses as to what the witness should be able to

7    testify on, which is the mounting structures and the

8    methods of assembly.

9                MR. CHRISTENSON:  I specifically

10   informed Ms. Roman of that, that that's our intent, and

11   the fact that there may be a reference in there to the

12   claimed invention in the patent wasn't -- was not

13   intended to be a result-oriented analysis.

14               There are topics in the ViewSonic's

15   notice that also refer to what's claimed in the patents;

16   for example, topic 23A.  But, in any event, I clarified

17   for Ms. Roman that our intent is to focus, as Mr. Ambrozy

18   said, on the relevant structures and methods of assembly.

19   There are many other structures and assembly-related

20   issues that are not at issue in this case, so we are not

21   trying to make it that broad.  We are trying to make it

22   relevant to the types of structures and assembly-related

23   facts that are relevant to these claims.

24               MS. ROMAN:  I guess my concern was that

HEARING

Page 45

1    it's speaking of technical, economic, or other advantages

2    or benefits or disadvantages concerning the inventions,

3    concerning the structure, the methods of assembly claimed

4    in the patents-in-suit.  Until we have got definition as

5    to what the invention as claimed in the patents-in-suit

6    are, how can our witnesses testify about the technical,

7    economic, or other advantages of those?

8                    MR. AMBROZY:  It's our opinion that

9    those witnesses would be able to testify because they are

10   the 30(b)(6) and/or fact witnesses that work at

11   ViewSonic.  They can testify about the structure used in

12   the various devices that they sell.

13                   MR. CHRISTENSON:  Your Honor, do you

14   have ViewSonic's deposition topics in front of you?

15                   SPECIAL MASTER POPPITI:  If you -- I

16   know that you referenced them, so if you point me to one

17   of your exhibits, that would be helpful.

18                   MR. CHRISTENSON:  Yes, Your Honor.  I

19   believe that in our -- I am just looking to see if I can

20   find the copy of the notices -- I think it was in our

21   March 2nd -- I am sorry, our March 12th letter, I believe

22   it was maybe Exhibits 5 and 6, perhaps -- I believe

23   Exhibits 3, 4, 5, and 6 to our March 12 letter include

24   the four deposition notices from ViewSonic.