# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| L.G. PHILLIPS LCD CO., LTD., | |
| Plaintiff, | C. A. No. 04-343-JJF |
| TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, | **REDACTED - PUBLIC VERSION** |
| Defendants | |

## DEFENDANTS TATUNG COMPANY'S AND TATUNG COMPANY OF AMERICA, INC.'S RESPONSE TO LG. PHILIPS LCD CO., LTD.'S OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 5, 2007 <u>REPORT AND RECOMMENDATIONS</u>

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan Jansen
Valerie W. Ho
Steve Hassid
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
(310) 586-7700

Dated: September 24, 2007

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
*Attorneys for Defendants Tatung Co. and Tatung Company of America, Inc.*

# TABLE OF CONTENTS

                                                                        **Page**

TABLE OF AUTHORITIES .............................................................................. iii

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................ 2

      A.  The Tatung Defendants Subpoenaed Rebecca Rudich, A
          Prosecuting Attorney At McKenna, Well Before The Discovery
          Cutoff ................................................................................................... 2

      B.  Ms. Rudich Stated That She Is The Senior Partner At McKenna
          In Charge Of All Patent Prosecution Activities, Including Those
          Relating To The Patents-In-Suit .......................................................... 3

      C.  Four Months After The Close Of Fact Discovery, LPL Produced
          Highly Damaging Documents That Raise New Issues Regarding
          Invalidity And Inequitable Conduct ..................................................... 4

      D.  The Tatung Defendants Informed The Special Master That They
          Intended To Depose Ms. Rudich Regarding Inequitable Conduct
          Issues ................................................................................................... 5

      E.  In View Of LPL's Representation That Ms. Rudich Played No
          Role In Prosecuting The Patents-In-Suit, The Tatung Defendants
          Moved For A Rule 30(b)(6) Deposition Of McKenna ......................... 6

      F.  LPL Admitted That It Made A Strategic Decision Not To Produce
          The Documents Earlier .......................................................................... 7

III.  ARGUMENT ............................................................................................... 9

      A.  Standard of Review ............................................................................... 9

      B.  The Special Master Correctly Granted The Tatung Defendants'
          Motion To Compel The Deposition Of McKenna In View Of The
          New Issues Raised By LPL's Late Document Production ..................... 9

      C.  Prosecuting Attorneys Are Regularly Deposed In Cases Where
          Inequitable Conduct Is At Issue ......................................................... 12

      D.  The Special Master Correctly Concluded That The Noticed Topics
          Are Proper ............................................................................................ 16

i

E. Any Further Delay Is Not Justified....................................................................... 18

IV. CONCLUSION............................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*3M Co. v. Kanbar,*
  2007 WL 1794936 (N.D. Cal. 2007) .................................................................18

*Alcon Laboratories, Inc. v. Pharmacia Corp.,*
  225 F. Supp. 2d 340 (S.D.N.Y. 2002)..............................................................14

*Allergan v. Pharmacia Corp.,*
  2002 WL 1268047 (D. Del. 2002) ..............................................................12, 13

*Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.,*
  267 F.3d 1370 (Fed. Cir. 2001)........................................................................12

*Computer Acceleration Corp. v. Microsoft Corp.,*
  Civil Action No. 9:06-CV-140, 2007 WL 2315223 (E.D. Tex. 2007) ..................18

*Dri Mark Products, Inc. v. Wilpak Industries, Inc.,*
  No. 04-CV-696 (JBW), 2006 WL 2882565 (E.D.N.Y. 2006)...........................14

*Environ Products, Inc. v. Total Containment, Inc.,*
  Civ. A. No. 95-4467, 1996 WL 494132 (E.D. Pa. 1996) .....................12, 13, 18

*eSpeed, Inc. v. Brokertec USA, LLC,*
  417 F. Supp. 2d 580 (D. Del. 2006)............................................................10, 14

*Gallas v. Supreme Court of Pennsylvania,*
  211 F.3d 760 (3d Cir. 2000)..............................................................................11

*Genal Strap, Inc. v. Dar,*
  No. CV2004-1691 (SJ)(MDG), 2006 WL 525794 (E.D.N.Y. 2006) ..............13, 14

*Martinez v. Cornell Correction of Texas, Inc.,*
  229 F.R.D. 194 (D. N.M. 2005).........................................................................10

*Novartis Pharm Corp. v. Abbott Labs,*
  203 F.R.D. 159 (D. Del. 2001) .....................................................................11, 12

*Resqnet com, Inc. v. Lansa Inc.,*
  No. 01 Civ. 3578 (RWS), 2004 WL 1627170 (S.D.N.Y. 2004).....................15, 16

*Standard v. Union Pacific Railroad Co.,*
  No. 98-7134, 1999 WL 992973 (10th Cir. 1999) ...............................................10

*Vita-Mix Corp. v. Basic Holdings, Inc.*,
No. 1:06 CV 2622, 2007 WL 2344750 (N.D. Ohio 2007) ............................................. 12

**STATUTES**

Fed. R. Civ. Pro. 53 ................................................................................................................... 9

iv

## I.    INTRODUCTION

In July 2007, almost four months after the close of fact discovery, LG. Philips LCD Co., Ltd. ("LPL") produced highly material and damaging documents demonstrating the existence of LG products that practice the claimed invention at issue and were on sale years before the applications leading to the Patents-in-Suit were filed. Not only did these documents reveal that LPL's own products were prior art to the Patents-in-Suit, they also strongly suggest that LPL and its counsel, McKenna, Long & Aldridge LLP ("McKenna"), knew about the prior art products and deliberately failed to disclose their existence to the Patent Office. The recent production revealed that during the time that McKenna was prosecuting the Patents-in-Suit for LPL, McKenna was also representing LPL in litigation against NEC Corporation. In that litigation, LPL and presumably McKenna had access to and produced some of the exact same documents that LPL produced in July of this year, including prior art documents that should have been but were not provided to the Patent Office. The recent discovery of this undisclosed prior art has raised a host of new issues regarding the Patents' validity and LPL's inequitable conduct.

When confronted by the Special Master, LPL admitted it could have produced the documents earlier and made a strategic decision not to do so. Because LPL's belated production raises serious new issues regarding enforceability of the Patents-in-Suit, the Special Master granted the Tatung Defendants' request to depose a Rule 30(b)(6) witness from McKenna regarding prosecution of the Patents-in-Suit and inequitable conduct.

In its Objections, LPL has the audacity to argue that the Tatung Defendants should not be permitted to depose McKenna because the discovery cutoff has passed. LPL cynically ignores that its document production came four months late. The Tatung Defendants simply could not have noticed any depositions regarding these documents because they did not know of their

existence prior to the close of fact discovery. The Special Master correctly granted the Tatung Defendants' motion to compel and his Recommendation should be adopted by this Court.

## II.    STATEMENT OF FACTS

**A.    The Tatung Defendants Subpoenaed Rebecca Rudich, A Prosecuting Attorney At McKenna, Well Before The Discovery Cutoff.**

On February 28, 2007, a month before the fact discovery cutoff on March 30, 2007, the Tatung Defendants subpoenaed Ms. Rudich, one of the attorneys at the McKenna law firm who they believed prosecuted the Patents-in-Suit based on documents submitted to the Patent Office. (*See* Notice of Deposition and Subpoena at Exh. A; Preliminary Amendments at Exhs B & C.) At the time, the Tatung Defendants sought to depose Ms. Rudich not about any alleged violation of the Protective Order as LPL falsely contends, but about a continuation application, Serial No. 11/096,079 (the '079 Application), which shares the same specification as the Patents-in-Suit. Ms. Rudich is intimately involved in the prosecution of the '079 Application and her involvement has never been disputed by LPL. In responses to office actions regarding the '079 Application, Ms. Rudich had attempted to distinguish a prior art reference cited by the examiner, the IBM 9516. Ms. Rudich argued that the IBM 9516, which is strikingly similar to some of the Tatung products accused of practicing the purported "rear mounting" invention at issue here, is distinguishable from the claimed invention because it practices the prior art of "front mounting" a flat panel display device. Because the statements made by Ms. Rudich further support the Tatung Defendants' position that their products practice "front mounting" and not "rear mounting" and therefore do not infringe the Patents-in-Suit, the Tatung Defendants sought to depose Ms. Rudich regarding the statements she made during prosecution of the '079 Application.

Ms. Rudich was identified in the Tatung Defendants' initial disclosures as one of the people with knowledge regarding prosecution of the Patents-in-Suit. (Initial Disclosures at Exh. D.)

As a courtesy to LPL, the Tatung Defendants agreed to consider accepting a declaration from Ms. Rudich in lieu of her deposition. Over the next few months, the parties exchanged drafts of the proposed declaration and negotiated over language. The parties ultimately were unable to reach agreement regarding Ms. Rudich's proposed declaration. The Tatung Defendants then moved to compel Ms. Rudich's deposition and LPL moved for a protective order. On September 5, 2007, the Special Master granted the Tatung Defendants' motion to compel Ms. Rudich's deposition regarding the '079 Application and LPL has not filed exceptions to that recommendation. (Special Master's Report and Recommendation on the Motion of Tatung Co. and Tatung Co. of America to Compel the Deposition of Rebecca Rudich at Exh. E.)

**B.    Ms. Rudich Stated That She Is The Senior Partner At McKenna In Charge Of All Patent Prosecution Activities, Including Those Relating To The Patents-In-Suit.**

On March 6, 2007, Ms. Rudich submitted a declaration regarding McKenna's compliance with the patent prosecution bar in the Protective Order, which prohibits attorneys who have access to confidential information produced in this case from prosecuting patents in the area of flat panel display technology. In that declaration, she stated that she "currently participate[s] in, direct[s], and supervise[s] patent prosecution activity related to the Patents-in-Suit and involving flat panel display technology." She further declared:

> For the past several years, I have been the Senior Partner in charge of day to day activities for all of the patent prosecution work. I have and continue to supervise the patent associates in our Intellectual Property Department who also prosecute patents involving flat panel display technology and who work on patent prosecution activity related to the Patents-in-Suit.

3

(Rudich Declaration, ¶¶ 3-4, at Exh. F ) Ms. Rudich's own description of her responsibilities at McKenna further reinforced the Tatung Defendants' belief that she played a role in prosecuting the Patents-in-Suit.

## C.    Four Months After The Close Of Fact Discovery, LPL Produced Highly Damaging Documents That Raise New Issues Regarding Invalidity And Inequitable Conduct.

On July 11, 2007, almost four months after the fact discovery cutoff, LPL finally produced long awaited technical documents regarding its own flat panel display devices, including those that have "rear mounting" features. LPL produced these documents after the Special Master granted in part ViewSonic Corporation's motion to compel on June 28, 2007. (Special Master's Report and Recommendation Regarding Further Deposition of Plaintiff L.G. Phillips LCD Co., Ltd. at Exh. G.) ViewSonic had filed its motion before the close of fact discovery but LPL had argued that motion could not be resolved until after the Special Master issued his claim construction ruling. By putting the motion off until after claim construction, LPL was able to delay producing highly relevant and damaging documents for many months.

Among the documents belatedly produced by LPL was a drawing for the LG LC056N1 LCD module. The drawing is dated June 1, 1996 and depicts an LCD module with rear corner holes. (Drawing at Exh. H.) Even though ViewSonic had sought the production of sample products made by LPL, LPL did not produce a physical sample of the LC056N1 module. Notwithstanding LPL's failure to produce a sample of the LC056N1 module, the Tatung Defendants acted diligently to procure this product from an independent source. On August 2, 2007, the Tatung Defendants obtained an LC056N1 LCD module. Upon inspecting this module, the Tatung Defendants were able to confirm that it indeed is a "rear mountable flat panel display device" as claimed in the Patents-in-Suit. (Photographs of module at Exh. I.)

**REDACTED**

4

**REDACTED**                                    This module is therefore

highly material prior art and its existence should have been disclosed to the Patent Office during

prosecution of the Patents-in-Suit. Moreover, LPL could hardly claim ignorance with respect to

its own product.

What is even more troubling is that the drawing for the LC056N1 produced by LPL also

bears a bates number from the *LG. Philips LCD Co. v. NEC Corporation* litigation. Apparently,

there were two related cases filed by LPL against NEC in the District of Delaware, No. 1:99-cv-

00680-RRM and 1:99-cv-00726-RRM. A review of the dockets in those two cases shows that all

discovery in those cases occurred in 1999 and 2000. (Dockets at Exh. J.) It appears that the

cases were settled in early 2001. Thus, LPL knew about the LC056N1 and produced drawings

for this module sometime in 1999 or 2000, *the precise time frame when the Patents-in-Suit were*

*being prosecuted.* In addition, *the McKenna firm, which prosecuted the Patents-in-Suit, was also*

*involved in the NEC litigation and was actually counsel of record when the complaints in those*

*cases were filed.* (Complaints against NEC at Exh. K.) Based on the documents recently

produced by LPL, it appears highly likely that LPL and its prosecuting attorneys knew about the

LG LC056N1 module (among other prior art) and deliberately chose not to disclose it to the

Patent Office.

**D.     The Tatung Defendants Informed The Special Master That They Intended To Depose Ms. Rudich Regarding Inequitable Conduct Issues.**

On August 1, 2007, the Tatung Defendants submitted a letter brief to the Special Master

explaining their need to depose Ms. Rudich regarding the '079 Application and inequitable

conduct issues. (D.I. 745.) The Special Master conducted hearings on August 7 and 13, 2007

regarding the Tatung Defendants' request. At these hearings, LPL contended for the first time

that notwithstanding Ms. Rudich's signature on the preliminary amendments submitted to the

5

Patent Office during prosecution of the Patents-in-Suit and notwithstanding the statements in her declaration, she had no involvement with prosecution of the Patents-in-Suit. (Exh. L at 52:17-54:23; Exh. M at 9:12-12-24, 21:4-22:21.) Like the Special Master, the Tatung Defendants were surprised to hear this as Ms. Rudich had stated that she supervises patent prosecution activity related to the Patents-in-Suit. (Exh. L at 54:8-23; Exh. M at 18:22-20:15, 23:14-24:7.) In essence, LPL took the position that the Tatung Defendants were out of luck because they had subpoenaed the wrong witness.

**E.    In View Of LPL's Representation That Ms. Rudich Played No Role In Prosecuting The Patents-In-Suit, The Tatung Defendants Moved For A Rule 30(b)(6) Deposition Of McKenna.**

In light of the revelations at the August 7 and 13 hearings, the Tatung Defendants informed LPL that they were not interested in deposing a witness on a topic about which she has no knowledge. The Tatung Defendants, therefore, offered to limit Ms. Rudich's deposition to issues relating to the '079 Application and to depose the person at McKenna most knowledgeable about prosecution of the Patents-in-Suit, McKenna's policies and procedures relating to compliance with the duty of candor to the Patent Office, and McKenna's involvement in the NEC litigation. This offer was rejected by McKenna. On August 15, 2007, the Tatung Defendants submitted a written request to the Special Master. (D.I. 768.)

The Special Master conducted a hearing on August 27, 2007. After exploring the issues in detail and studying the proposed deposition topics submitted by the Tatung Defendants, the Special Master concluded that a deposition of McKenna was warranted because the documents recently produced by LPL raised new issues regarding inequitable conduct and the Tatung Defendants were entitled to explore those issues. (Exh. N at 7:18-81:2.) The Special Master ruled:

SPECIAL MATER POPPITI: Here is where I think we are. There is no question that I expect that production may lead to the requirement for additional discovery of whatever that additional discovery was at the time that we had that conversation about the prospect of having additional discovery sometime ago, and I want to say it was in the March or April time frame.

Given the production of the lucky goldstar asserted prior art, and given the context of its production, namely, the reference to the NEC litigation, I am satisfied that Tatung should be able to explore all that means with a McKenna, Long attorney.

(Exh. N at 73:14-74:2.) In his Report and Recommendation, the Special Master concluded:

For the reasons stated on the record during the August 27, 2007 hearing, the Special Master concludes that the 30(b)(6) deposition of MLA is timely sought, narrowly focused and intended to explore issues raised by LPL's recent production. It should therefore be required. In particular, Tatung should be permitted to question MLA regarding prosecution of the patents-in-suit and Tatung's inequitable conduct defense. The topics about which MLA may be questioned are those which were either agreed to by the parties or those fashioned with the Special Master's guidance.

The Special Master also rejected LPL's request to postpone the deposition: "[T]the Special Master is not persuaded that the deposition of MLA should be delayed until after the Rule 30(b)(6) deposition of LPL at which time it should make 'another' case for the MLA deposition. The case has been made, the deposition should take place forthwith." (Special Master's Report and Recommendation on the Motion of Tatung Company and Tatung Company of America to Compel the 30(b)(6) deposition of McKenna, Long & Aldridge, LLP at Exh. O.)

F.    **LPL Admitted That It Made A Strategic Decision Not To Produce The Documents Earlier.**

On September 5, 2007, the Special Master also granted Defendants' request for a supplemental deposition of LPL regarding the recently produced documents and LPL products. The Special Master had granted the request after conducting several hearings regarding Defendants' proposed deposition topics. At the August 16, 2007 hearing, LPL admitted that it

7

knew about these documents and could have produced them earlier but deliberately chose not to do so.

> SPECIAL MASTER POPPITI: I am happy to have a hearing on each new document that was produced and make a determination as to whether it could have been produced earlier or whether there was a choice. If you want me to have that hearing, we will have it, we will have it next week, and we will have it live in the courtroom. Are you suggesting to me that these documents were unknown to you at the time when they would have been considered timely production?
>
> MR. CHRISTENSON: No, Your Honor, I am not suggesting that. What I am suggesting is we had objections that we asserted, there is motion practice --
>
> SPECIAL MASTER POPPITI: I understand motion practice. But I also understand choice. And what I am asking you is: Were these documents -- may be I should be more precise: Were these documents, each and every individual one of them, the subject of motion practice and the reason why you didn't produce any one or all of them because I ruled that they did not have to be produced at the time, and you had the umbrella of a court order?
>
> MR. CHRISTENSON: Your Honor, I want to make sure I understand what you are asking. If what you are asking is: Could we have produced these documents earlier than we did? Then the answer is yes.
>
> SPECIAL MASTER POPPITI: And there was no court order that said you had an umbrella?
>
> MR. CHRISTENSON: That is true, Your Honor.
>
> SPECIAL MASTER POPPITI: So it was choice. And if you will, and I don't mean to suggest this sound as pejorative, it was strategy. It's not that you couldn't get to it. I think you just told me you knew they existed.

(Exh. P at 36:24-38:10.)

Pursuant to the parties' agreement, LPL's supplemental deposition took place on September 19-21, 2007. Counsel for the Defendants traveled to Washington D.C., retained a Korean interpreter, and expended an extraordinary amount of time and resources to prepare for the deposition. LPL's witness, however, was shockingly unprepared and at various times was unable or refused to answer basic questions. On September 21, 2007, the Special Master ordered

8

LPL to submit to another deposition and to make a more knowledgeable witness available. The Special Master found "the conduct of this deposition to be game playing" and concluded that the witness "is not the appropriate witness to sit in that chair." (9/21/07 Transcript, 46:4-47:14 at Exh. Q.) The Special Master is also seriously entertaining a request for sanctions. (*Id.* at 60:3-62:5.)

## III.    ARGUMENT

### A.    Standard Of Review.

When ruling on a party's objections to the Special Master's report and recommendation, the Court may "adopt or affirm; modify; wholly or partly reject or reverse; or resubmit to the master with instructions." Fed. R. Civ. Pro. 53(g)(1). The Court's review of findings of fact is de novo absent the parties' stipulation to the contrary. Fed. R. Civ. Pro. 53(g)(3). The Court's review of conclusions of law is de novo. Fed. R. Civ. Pro. 53(g)(4). The Court's review of rulings on a procedural matter is for abuse of discretion. Fed. R. Civ. Pro. 53(g)(5).

### B.    The Special Master Correctly Granted The Tatung Defendants' Motion To Compel The Deposition Of McKenna In View Of The New Issues Raised By LPL's Late Document Production.

In its Objections, LPL contends that notwithstanding its strategic production of highly relevant documents four months after the close of fact discovery, the Tatung Defendants should be precluded from exploring new issues raised by these documents because the discovery cutoff has passed. This position is disingenuous on its face. LPL intentionally waited until long after the close of fact discovery to produce documents it knew would significantly impact the validity and enforceability of the Patents-in-Suit. The Tatung Defendants simply did not know about the existence or materiality of the LC056N1 module or any of the other LPL products referenced in the recent production before the close of fact discovery.

9

Although the Tatung Defendants had alleged an inequitable conduct defense early on based on other prior art references, McKenna's role with respect to inequitable conduct did not fully come into focus until the Tatung Defendants finally connected the dots and discovered that the LC056N1 prior art documents were known to LPL *and its counsel* during to the NEC litigation, which took place at the same time that the Patents-in-Suit were being prosecuted. It appears at the time that McKenna was acting as litigation counsel for LPL in the NEC cases, and presumably knew about and possessed the LC056N1 prior art documents, it was also prosecuting the Patents-in-Suit on behalf of LPL. McKenna's knowledge, its custom and practice relating to patent prosecution, and the role it played in prosecuting the Patents-in-Suit and the NEC litigation could not be more relevant to the inequitable conduct analysis, and in particular, to the issues of knowledge, intent to mislead, and failure to disclose. *See eSpeed, Inc. v. Brokertec USA, LLC*, 417 F. Supp. 2d 580, 591 (D. Del. 2006) ("To prove inequitable conduct from a failure to disclose material prior art, a party 'must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO.'").

Moreover, courts regularly permit additional discovery past the cutoff period where the discovery is necessary in view of newly discovered evidence, the party requesting the discovery acted diligently and there is no prejudice to the opposing party. *See, e.g., Standard v. Union Pacific Railroad Co.*, No. 98-7134, 1999 WL 992973, at *3 (10th Cir. 1999); *Martinez v. Cornell Correction of Texas, Inc.*, 229 F.R.D. 194, 197 (D. N.M. 2005). Here, the need to depose McKenna arose directly as a result of LPL's recent production of long withheld documents and the revelation that Ms. Rudich was not the appropriate witness to testify regarding prosecution of

10

the Patents-in-Suit. There is no doubt that the Tatung Defendants acted diligently upon receiving LPL's recent production -- both in obtaining an LC056N1 module and in moving to compel McKenna's deposition. Nor is there any prejudice to LPL if a deposition is required, especially since trial is still five months away. LPL makes absolutely no showing of any prejudice, and simply elevates form over substance by seeking to impose an absolute bar on discovery solely because the cutoff has passed, while conveniently ignoring its own tardy production.

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 778 (3d Cir. 2000), cited by LPL, is obviously inapposite. There, the district court had refused to grant the plaintiff additional time to conduct discovery on his interference with employment claim because he had "sufficient time to conduct discovery." *Id.* at 778. There were no extenuating circumstances and the need for additional discovery was not triggered by new evidence produced by the opposing party.

LPL's reliance on *Novartis Pharm. Corp. v. Abbott Labs*, 203 F.R.D. 159, 162 (D. Del. 2001), is also misguided. In *Novartis*, this Court denied plaintiff's motion to compel Rule 30(b)(6) depositions not specifically because the discovery period had ended, but because the defendant had previously made 30(b)(6) witnesses available, those witnesses had appeared willing to testify, and the plaintiff had refused to go forward with the depositions. *Id.* at 162. This Court concluded that based on those facts, it would not allow another deposition. *Id.* The Court nevertheless granted the plaintiff's motion to compel production of foreign sales and marketing documents, although the plaintiff made the request five weeks *after* the discovery cutoff. The plaintiff argued, and the Court agreed, that the documents would facilitate damages calculations and determination of a reasonable royalty. The Court, over the defendant's objections of untimeliness, found that the requested documents were relevant, that the

11

defendant's production to date was inadequate, and therefore granted the motion to compel. *Id.* at 164.

*Allergan v. Pharmacia Corp.*, 2002 WL 1268047 (D. Del. 2002), also does not help LPL, and in fact, supports the Special Master's ruling. There, the court simply held that "motions that relate to fact discovery must be filed during fact discovery, *especially where, as here, the underlying facts relating to the motion were known to plaintiffs.*" *Id.* at *2. (Emphasis added.) Unlike in *Allergan*, the underlying facts revealed by LPL's recent production, including the nature and extent of McKenna's knowledge of highly material and undisclosed prior art, were not known to the Tatung Defendants before the close of fact discovery. The cases relied on by LPL do not support its position, and in fact, further confirm that the Special Master was correct in permitting a McKenna deposition in view of the damaging new evidence disclosed by LPL.

## C. Prosecuting Attorneys Are Regularly Deposed In Cases Where Inequitable Conduct Is At Issue.

LPL's desperate attempt to hide behind the attorney-client privilege is also unavailing. Prosecuting attorneys are regularly required to be deposed where inequitable conduct is at issue. *See, e.g., Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1379-83 (Fed. Cir. 2001) (stating that inventors and their attorneys are under duty of candor to disclose material information and attorney has duty to inquire if he is on notice "that specific, material information exists and should be disclosed."); *Vita-Mix Corp. v. Basic Holdings, Inc.*, No. 1:06 CV 2622, 2007 WL 2344750, at *2 (N.D. Ohio 2007) ("The mere fact that one is an attorney does not insulate him from being subject to a deposition. . . . In fact, depositions of attorneys in patent infringement and invalidity suits are not unusual."); *Environ Products, Inc. v. Total Containment, Inc.*, Civ. A. No. 95-4467, 1996 WL 494132, at *4-5 (E.D. Pa. 1996) (ordering attorney who was both trial and prosecution counsel to submit to deposition "[b]ecause a

12

deposition of [counsel] is the only way to conduct discovery into Environ's alleged inequitable conduct during the reexamination of the '896 patent" and the "affirmative defense of inequitable conduct makes [counsel's] mental impressions during the reexamination proceedings an issue in this litigation."); *Genal Strap, Inc. v. Dar*, No. CV2004-1691 (SJ)(MDG), 2006 WL 525794, at *2 (E.D.N.Y. 2006) (noting that the mental impressions of a prosecuting attorney may be the best and only source of information crucial to an inequitable conduct claim).[1]

Notably, courts have required even trial counsel to sit for deposition where counsel also played a role in prosecuting the patents at issue. *See Environ Products*, 1996 WL 494132, at *4-5. Here, the Tatung Defendants are not interested in deposing trial counsel but are merely seeking to depose the person at McKenna most knowledgeable about patent prosecution. In view of the Protective Order in this case, McKenna has represented that it has essentially erected a wall between prosecutors who work in the area of flat panel display technology and litigators involved in this case. Accordingly, there is no risk that litigation strategy will somehow be delved into or divulged.

Courts also regularly reject a wholesale claim of privilege as LPL attempts to assert here, electing instead to have specific objections to specific questions made on the record. *See Genal*

---

[1] LPL grossly misreads *Allergan*, 2002 WL 1268047, at * 1. Though LPL would have this Court believe that *Allergan* "rejected a request to depose counsel regarding inequitable conduct issues," that case involved the deposition of *trial counsel who had played no role in patent prosecution*. *Id.* The defendant's only basis for deposing the trial attorney was that he had filed an amendment declaring that the inventor of the patent was the sole inventor. *Id.* Based on that amendment alone, the plaintiff contended that the attorney knew or should have known of the existence of co-inventors. The court held that that factual issue (i.e., whether or not there were co-inventors) could be pursued independently of the trial lawyer's testimony. *Id.* *Allergan* is therefore completely inapposite: here, the Tatung Defendants seek to depose a *prosecuting attorney* regarding her factual knowledge and mental impressions. Such depositions are routine and entirely proper, particularly where, as here, the defense of inequitable conduct has been asserted.

13

*Strap*, 2006 WL 525794, at *3 ("'an attorney cannot avoid a deposition by asserting that he or she has no relevant nonprivileged information, . . . at a minimum, the attorney must submit to a deposition so that his lack of knowledge may be tested on any claimed privilege placed on the record.'"); *Dri Mark Products, Inc. v. Wilpak Industries, Inc.*, No. 04-CV-696 (JBW), 2006 WL 2882565, at *9 n.17 (E.D.N.Y. 2006) ("the court should wait until the privilege has been asserted and is ripe for decision; the assertion that counsel has no 'nonprivileged or non-protected information is not dispositive of the issue of whether he should be subject to a deposition.'"); *Alcon Laboratories, Inc. v Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002) (holding that "the prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct" and the prosecuting attorney must submit to a deposition even if he has no non-privileged information so that "his lack of knowledge may be tested and any claimed privilege placed on the record."). Permitting a blanket claim of privilege clearly is inappropriate because the Tatung Defendants are entitled to cross-examine McKenna and test whether the witness has non-privileged information so that they are not surprised at trial. Moreover, a McKenna deposition is imperative because the existing evidence strongly suggests that as litigation counsel in the NEC cases, McKenna knew about the recently disclosed prior art during the time frame that the Patents-in-Suit were being prosecuted, and as prosecution counsel it failed to disclose the prior art to the Patent Office. McKenna's knowledge of prior art is clearly relevant because that knowledge may be chargeable to the applicant. *See eSpeed*, 417 F. Supp. 2d at 591.

LPL contends that it is unnecessary to depose the prosecuting attorney because the Tatung Defendants have had an opportunity to depose the inventors. This argument similarly has been rejected. *See Genal Strap*, 2006 WL 525794, at *2 (holding that although plaintiff had

already deposed the alleged inventor, it could also depose the prosecuting attorney "concerning his knowledge of other inventors and his mental impressions concerning the ownership of the patents."). Moreover, pointing the Tatung Defendants to other witnesses is particularly disingenuous given that the witness LPL made available for the required supplemental deposition provided no useful information whatsoever and was found by the Special Master to be "not the appropriate witness to sit in that chair."

LPL's citation of *Resqnet.com, Inc. v. Lansa Inc.*, No. 01 Civ. 3578 (RWS), 2004 WL 1627170 (S.D.N.Y. 2004), is misleading. *Resqnet* in fact supports the Tatung Defendants' position that once inequitable conduct is asserted (as it has been here), the prosecuting attorney's mental impressions are directly at issue and are subject to deposition questioning. In *Resqnet*, applying Second Circuit law, the court denied the defendant's request to depose the plaintiff's prosecuting attorney, who also served as litigation counsel, in large part because inequitable conduct had not been asserted. *Id.* at *4-5. The principle underlying the court's decision was not that prosecuting attorneys may not be deposed (indeed, the court noted that depositions of prosecuting attorneys may be "routine"), but rather that "[Defendant] is not entitled to depose [the prosecuting attorney] on issues that have not been pled." *Id.* at *3 & 5. The court expressly noted that "the defense of inequitable conduct makes the attorney's mental impressions during the patent prosecution proceedings directly at issue in the litigation (internal quotes omitted). In the present case... no inequitable conduct defense was pled, rendering [the attorney's] importance as a fact witness relatively minimal." *Id.* at *6. Unlike in *Resqnet*, here, McKenna's testimony is critical to the Tatung Defendants' inequitable conduct affirmative defense. Moreover, LPL incorrectly cites *Resqnet* to support its argument that a McKenna deposition would "inappropriately implicate" the attorney client and work-product privileges. The court in

15

*Resqnet* specifically stated that privilege issues played no part in its decision to deny the deposition ("this [risk of encountering privilege and attorney work-product issues] does not weigh in favor of either [plaintiff or defendant]"). *Id. Resqnet* therefore does not help LPL.

**D.     The Special Master Correctly Concluded That The Noticed Topics Are Proper.**

In a desperate effort to avoid a potentially damaging deposition, LPL resorts to taking the deposition topics out of context, ignoring the parties' and the Special Master's detailed discussions on the record, and misconstruing the Special Master's Recommendation.

First, in his Recommendation, the Special Master drew a distinct line between asserted prior art that the Tatung Defendants previously knew about and prior art that was recently disclosed in LPL's late production. As a result, the Special Master ruled that the Tatung Defendants could question McKenna regarding the newly disclosed products but not the LG 500 LC monitor because it was previously known. (Special Master's Report and Recommendation on the Motion of Tatung Company and Tatung Company of America to Compel the 30(b)(6) deposition of McKenna, Long & Aldridge, LLP at Exh. O.)

Second, LPL takes Topic 1 out of context and argues that it is not limited to issues raised by the recent production. However, Topics 2 and 3 are clearly limited to prosecution of the Patents-in-Suit, facts relating to inequitable conduct, the NEC litigation, and the Prior Art LPL Products defined as "the products disclosed in the Recent Discovery and that were conceived, made, marketed, sold, distributed, disclosed and/or offered for sale by LPL on or before December 31, 1998 that includes an LCD, PDP and/or FED." (McKenna Deposition Topics at Exh. R.) Topic 1 seeks information regarding policies and procedures implemented by McKenna during the time frame that the Patents-in-Suit were being prosecuted to ensure compliance with the duty of candor set forth in 37 C.F.R. § 1.56 and McKenna's custom and practice in connection with obtaining, investigating and disclosing prior art during that same time

16

frame. As explained at the hearing, Topic 1 cannot be read in isolation and is related to Topics 2 and 3. If McKenna knew about the Prior Art LPL Products, then the Tatung Defendants obviously are entitled to question McKenna regarding its general policies and practice relating to disclosure or non-disclosure of prior art. If McKenna contends that it did not know about the Prior Art LPL Products, then the Tatung Defendants are entitled to question McKenna about its policies and practice with respect to obtaining prior art and ensuring that its clients complied with the duty of candor.

Although the Tatung Defendants could have served a deposition notice on McKenna regarding only Topic 1 before the close of fact discovery, without the benefit of the Prior Art LPL Products and without knowing the implications of the NEC litigation, it would not have been productive to merely question McKenna about its general policies and procedures.

In addition, asking McKenna about its general policies and procedures does not invade the attorney-client privilege and does not require disclosure of proprietary information. In any event, McKenna has not demonstrated that its policies and procedures constitute trade secret or proprietary information; such a suggestion is simply frivolous.

Third, LPL complains that Topic 2(i) broadly seeks "[a]ny and all non-privileged facts or circumstances that support, evidence, contradict or negate the defense of inequitable conduct." At the August 27 hearing, when discussing similar topics for the supplemental LPL deposition, Defendants explained that this subtopic was meant to be a "catchall," was not intended to seek legal conclusions, and is to be further informed by the other more detailed subtopics. (Exh. N at 9:6-14:23; 46:22-50:7.)

Fourth, LPL also complains that Topics 2(e) and 2(d) seek privileged information. However, these topics are essentially identical to the topics for LPL's supplemental deposition

17

and LPL did not object to the Special Master's recommendation that it be required to answer questions regarding those topics. Accordingly, LPL has waived its objections in this regard. (Special Master's Report and Recommendation Regarding Further Deposition of Plaintiff L.G. Phillips LCD Co., Ltd. at Exh. G.)

Finally, LPL argues that it is improper to question prosecuting attorneys about their understanding of the duty of candor set forth in 35 U.S.C. § 1.56. LPL is wrong. Prosecuting attorneys are regularly questioned about this issue. *See, e.g., Computer Acceleration Corp. v. Microsoft Corp.*, Civil Action No. 9:06-CV-140, 2007 WL 2315223, at *2 (E.D. Tex. 2007) (prosecuting attorney testified that inventors have continuing duty to disclose prior art).[2]

**E.    Any Further Delay Is Not Justified.**

LPL's request to further delay the McKenna deposition should be rejected, especially because it failed to provide the appropriate witness to testify regarding the recent production, as it was ordered to do by the Special Master. (9/21/07 Transcript, 46:4-47:14 at Exh. Q.) Moreover, waiting until expert discovery is completed, as LPL proposes, serves absolutely no purpose other than delay because experts cannot speak to LPL's and its counsel's knowledge and intent relating to the nondisclosure of prior art.

---

[2] LPL's citation to *3M Co. v. Kanbar*, 2007 WL 1794936 (N.D. Cal. 2007), is misinformed. That case held that in the context of trademark infringement, certain purely legal issues were not proper for a 30(b)(6) deposition. *Id.* at * 2. The defendant had sought testimony concerning the plaintiff's trademark claims, requesting information about whether products were "identical," "confusingly similar," and constituting "blurring, dilution and tarnishment." *See id.* The court found that those topics sought legal conclusions that would be better explored through contention interrogatories. *Id. 3M* favors using the vehicle of contention interrogatories to explore purely legal issues. That case, however, is inapposite here because the Tatung Defendants' noticed topics explore *McKenna's understanding* of its duty of disclosure, as well as the *prosecuting attorney's mental impressions* with respect to the inequitable conduct defense. These questions are fact-based and do not raise issues of law; indeed, such questions are routinely posed to prosecuting attorneys. *See, e.g., Environ Products*, 1996 WL 494132, at * 4.

The Tatung Defendants require sufficient time to prepare their case, especially because they have the burden of proving inequitable conduct by clear and convincing evidence. Pursuant to recent discussions with the Special Master, dispositive motions must be filed in November 2007. Delaying the McKenna deposition until after the jury trial, as proposed by LPL, would deprive the Tatung Defendants of the opportunity to move for summary judgment or partial summary judgment on the inequitable conduct defense. As the Special Master recognized, "the case has been made, the deposition should take place forthwith." (Special Master's Report and Recommendation on the Motion of Tatung Company and Tatung Company of America to Compel the 30(b)(6) deposition of McKenna, Long & Aldridge, LLP at Exh. O.)

## IV.    CONCLUSION

For the reasons stated above, the Tatung Defendants respectfully request that the Court affirm the Special Master's Report and Recommendation granting their motion to compel the deposition of McKenna, Long & Aldridge.

Of Counsel:
Frank E. Merideth, Jr.
Mark H. Krietzman
Allan W. Jansen
Valerie W. Ho
Greenberg Traurig LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
(310) 586-7700


Dated:  September 24, 2007

*Anne Shea Gaza*

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com

*Attorneys for Defendants Tatung Company
and Tatung Company of America*

19

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007 I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard D. Kirk, Esquire
The Bayard Firm
222 Delaware Avenue #900
Wilmington, DE 19899

Jeffrey B. Bove, Esquire
James Heisman, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on October 1, 2007 I caused to be sent the foregoing document by Federal Express to the following non-registered participants:

Gaspare J. Bono, Esquire
Rel S. Ambrozy, Esquire
Lora A. Brzezynski, Esquire
Cass W. Christenson, Esquire
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington D.C. 20006

Tracy R. Roman, Esquire
Raskin Peter Rubin & Simon LLP
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

Scott R. Miller, Esquire
Connolly Bove Lodge & Hutz LLP
333 South Grand Avenue
Suite 2300
Los Angeles, CA 90071

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com