IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | CIVIL ACTION NO. 04-343 |
| Plaintiff, | |
| v. | **REDACTED VERSION** |
| TATUNG CO.;<br>TATUNG COMPANY OF AMERICA, INC.; AND<br>VIEWSONIC CORPORATION | |
| Defendants. | |

## OPENING BRIEF OF DEFENDANT VIEWSONIC CORPORATION IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AMENDED ANSWER

CONNOLLY BOVE LODGE & HUTZ LLP
Jeffrey B. Bove (# 998)
James D. Heisman (# 2746)
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE  19899
(302) 658-9141

*Attorneys for ViewSonic Corporation*

OF COUNSEL:
CONNOLLY BOVE LODGE & HUTZ LLP
Scott R. Miller
333 South Grand Avenue, Suite 2300
Los Angeles, CA  90071
(213) 787-2500

RASKIN PETER RUBIN & SIMON, LLP
Tracy R. Roman
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 277-0010

Dated:  September 25, 2007

## TABLE OF CONTENTS

Page

I.  Introduction ...................................................................................................1

II. Statement of Compliance with Local Rule 7.1.1 ............................................1

III. Summary of Argument ....................................................................................1

IV. Statement of Facts .........................................................................................4

A.  Background.....................................................................................................4

B.  The Prosecution History of the '338 Application and the Inequitable Conduct ....................5

C.  Relevant Pleadings and Discovery In this Case ........................................6

V.  Argument......................................................................................................10

A.  Legal Standard Applicable to a Motion for Leave to Amend to Assert Inequitable
    Conduct........................................................................................................10

B.  ViewSonic Should Be Granted Leave To Amend To Assert Inequitable Conduct...........13

    1.  ViewSonic's Inequitable Conduct Claim Is Meritorious ..............................13

    2.  ViewSonic has not Unduly Delayed Seeking Leave to Amend ....................14

    3.  LPL Will Suffer No Prejudice .....................................................................16

C.  Good Cause Exists to Adjust the Scheduling Order to Allow ViewSonic To Amend
    its Answer....................................................................................................18

VI. Conclusion...................................................................................................18

## TABLE OF AUTHORITIES

Page

**Cases**

*ADCO Prods. Inc., v. Carlisle Syntec Inc.*,
    110 F. Supp. 2d 276 (D. Del. 2000) .........................................................................12

*Advance Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*,
    989 F. Supp. 1237 (N.D. Cal. 1997)..........................................................................12

*Burlington Indus., Inc. v Dayco Corp.*,
    849 F.2d 1418 (Fed. Cir. 1988) ................................................................................16

*Conley v. Gibson*,
    255 U.S. 41 (1957) ...................................................................................................11

*Cornell & Co. v. Occupational Safety & Health Review Comm'n*,
    573 F.2d 820 (3d Cir. 1978) ...............................................................................11, 17

*Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*,
    961 F. Supp. 676 (D. Del. 1997) ..............................................................................11

*Douglas Press, Inc. v. Tabco, Inc.*,
    No. 00 C 7338, 2003 WL 1144054 (N.D. Ill. May 17, 2004) ....................................12

*Enzo Life Sciences, Inc. v. Digene Corp.*,
    270 F. Supp. 2d 484 (D. Del. 2003) .....................................................................12, 13

*FilmTec Corp. v. Hydranautics*,
    67 F.3d 931 (Fed. Cir. 1995) ....................................................................................11

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................10, 11

*Heyl & Patterson Intern., Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*,
    663 F.2d 419 (3rd Cir. 1981) .................................................................................11

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) .......................................................................................11

*MercExchange, L.L.C. v. eBay, Inc.*,
    271 F. Supp. 2d 784 (E.D. Va. 2002) ........................................................................12

*Norian Corp. v. Stryker Corp.*,
    363 F.3d 1321 (Fed. Cir. 2004) ................................................................................13

ii

*Rhone-Poulenc Agro S.A. v. Monsanto Co.*,
  73 F. Supp. 2d 537 (M.D.N.C. 1999) ....................................................................... 11, 12

*Symbol Techs., Inc. v. Proxim, Inc.*,
  2003 WL 1905637 (D. Del. April 17, 2003) ............................................................. 12

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
  236 F.3d 684 (Fed. Cir. 2001) .................................................................................. 13

## Statutes

Fed. R. Civ. P. 15(a) ....................................................................................................... 10

Fed. R. Civ. P. 16(b) ....................................................................................................... 13

Fed. R. Civ. P. 9(b) ......................................................................................................... 12

## I.    Introduction

Long after the expiration of the time to file amendments to the pleadings without leave of Court, ViewSonic first learned through discovery that it has a substantial basis to allege that the owners of the patents-in-suit[1] engaged in inequitable conduct during the prosecution of those patents.  ViewSonic has been diligent in seeking this discovery and has properly refrained from prematurely seeking to amend its Answer to facilitate pleading an assertion of inequitable conduct with particularity based on independently verifiable facts supporting that assertion.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure,[2] ViewSonic seeks leave to file a first Amended Answer that includes specific allegations of inequitable conduct that comport with the particularity pleading requirement of Rule 9(b).  *See* Exhibit A of ViewSonic's accompanying Motion for Leave to File Amended Answer.  For the reasons set forth below, ViewSonic respectfully requests that this Court grant ViewSonic leave to file the Amended Answer submitted herewith.

## II.    Statement of Compliance with Local Rule 7.1.1

ViewSonic's counsel made a reasonable effort to reach agreement with LPL's counsel on the matters set forth in this motion, but agreement was not reached.  Declaration of Scott R. Miller in Support of ViewSonic's Motion for Leave to Amend Answer ("Miller Decl.") at ¶¶ 1-4.

## III.    Summary of Argument

All parties have been on notice since at least April 2005 that the issue of inequitable conduct was an issue for discovery in this action, as it was generally pled by defendant Tatung

---

[1] LPL has asserted U.S. Patent 6,501,641 (the "'641 patent"), which issued on December 31, 2002 and U.S. Patent 6,498,718 (the "'718 patent", together "the patents in suit" or "Patents"), which issued on December 24, 2002.  The '641 patent issued from U.S. Patent Application Serial Number 09/285,338 (the "'338 application") and the '718 patent issued from U.S. Patent Appl. Ser. No. 09/444,376, which is a child, i.e., a continuation, of the '338 application.  [*See* D.I. 388, at Exs. A and B].

[2] Hereafter, all references to the Federal Rules of Civil Procedure will be to "Rule ___."

and LPL did not seek to strike the assertion during the pleading stages of the case. Rule 15 provides that leave to amend a party's pleadings should be freely given. Leave to add ViewSonic's inequitable conduct affirmative defense should be granted as it meets all of the criteria for a proper motion, namely: there has been no undue delay, bad faith, or dilatory motive on ViewSonic's part; there will be no undue prejudice to LPL; and, such an amendment would not be futile.

The facts on which ViewSonic bases its inequitable conduct defense first came to light and/or significance from discovery received from LPL beginning in late February 2007, which discovery is presently continuing under the guidance and Orders of the Special Master. [*See e.g.* D.I. 784.] ViewSonic has diligently sought the discovery necessary to independently verify an assertion of inequitable conduct despite obstruction and numerous delays by LPL. Moreover, ViewSonic's receipt of the discovery was also delayed when the Special Master deferred ruling on several ViewSonic Motions to Compel based on the limitation contained in the Scheduling Order, concluding that the discovery was directed to issues involving claim construction. Those motions having recently been granted, the newly produced discovery has yielded substantial evidence sufficient to support an allegation of inequitable conduct in conjunction with the prosecution of the Patents.

LPL cannot claim surprise nor will it be prejudiced by ViewSonic's proposed amendment to its Answer. Inequitable conduct is a defense is based on the conduct of LPL or its predecessor(s) in interest, the alleged inventors of the Patents, and the attorneys who prosecuted them. LPL presently is and has been in possession of all of the relevant facts about its conduct since before it filed this lawsuit.

2

Moreover, LPL's inequitable conduct has been at issue in this case since April 2005. The Tatung defendants asserted an inequitable conduct defense in their Answers [D.I. 186, at p.8; D.I. 187, at p.8], and have maintained the defense through their interrogatory responses. LPL has never sought to challenge the assertion of this defense through a timely filed motion. LPL has also had notice since the initial pleading stages of this case in June 2005 that ViewSonic was asserting an unclean hands defense. [D.I. 26, at ¶¶ 41, 44.]  ViewSonic has also provided discovery with interrogatory responses on its unclean hands defense also generally including inequitable conduct.

While defendants' discovery efforts on these issues are ongoing, LPL will not require any additional fact discovery to defend against ViewSonic's inequitable conduct defense.[3]  LPL attended and questioned the witnesses at each of the third party depositions in which facts were developed that evidence its inequitable conduct. ViewSonic has advised LPL that other than the facts it identifies in its interrogatory responses, it intends to rely on expert testimony regarding the content of the prior art that underlies its inequitable conduct defense. Expert discovery has not yet started. Thus, LPL can obtain whatever discovery it requires from ViewSonic's experts during the expert discovery phase. By this motion, ViewSonic merely seeks to conform the pleadings with the evidence it has recently obtained in discovery.

Finally, ViewSonic's proposed amendment will not be futile. Should ViewSonic prevail on this defense at trial, it is a complete defense to the claims being asserted by LPL. The recent discovery shows that the defense is not frivolous and, indeed, is quite strong. Good cause exists

---

[3] LPL has still not completed providing its supplemental production. ViewSonic has sought, and the Special Master has Ordered, additional deposition testimony from LPL regarding the new evidence LPL only recently produced. [*See e.g.,* D.I. 784.] This deposition commenced on September 19 and was adjourned by the Special Master on September 20. On September 21, 2007, the Special Master ordered that LPL produce a different witness who was prepared to testify on the issues included in the Order compelling the deposition go forward. [D.I. 784, and Transcript of September 21, 2007 hearing, attached to the Miller Decl. as Ex. E.]

to modify the Scheduling Order under Rule 16(b) to allow ViewSonic to file its Amended Answer, and the instant motion should be granted.[4]

## IV.    Statement of Facts

### A.    Background

LPL commenced this suit May 27, 2004, accusing ViewSonic of infringing U.S. Patent No. 6,498,718 and its parent U.S. Patent No. 6,501,641. These related Patents were filed by LPL's affiliate and predecessor, LG Electronics ("LGE") and are generally directed to a flat panel display device, such as a liquid crystal display (LCD) device. The claims of the Patents require that, a flat panel display device must be "rear mountable," that is it must have fastening "elements" or "parts" solely on the rear of the device and arranged so as to permit the device to be mounted in a manner that eliminates all side space used for mounting, as found in the prior art techniques of front mounting and side mounting. The fastening parts can encompass screws and/or screw holes on the rear of the flat panel display device used to mount the display device to the case or housing of a data processing device -- exclusively shown in the patents to be a laptop computer.

At the direction of the Court, the parties submitted a first joint proposed Scheduling Order on June 17, 2005. [D.I. 191, 192]. ViewSonic propounded written discovery seeking various documents, including those that are the subject of the recent Order by the Special Master compelling production by LPL, shortly after the Scheduling Conference. The Scheduling Order set a deadline for motions to amend the pleadings of January 17, 2006, nearly six months before the June 1, 2006 date on which deposition discovery could commence. [D.I. 198, at ¶ 4(e).]

---

[4] This will not be the first amendment to the Scheduling Order, which has been amended several times for the benefit of the parties, including as recently as August 14, 2007 [D.I. 767]. No modification of the dates for the pretrial conference or the trial is presently contemplated, although other dates will likely be changed due to the problems with the completion of the LPL deposition ordered by the Court.

566305

B.    The Prosecution History of the '338 Application and the Inequitable Conduct

The admitted prior art in the Patents describe a means for mounting flat panel display devices by using fasteners around the perimeter of the device to connect the device to the rear case.[5] During prosecution of the '338 application (from which both Patents in suit emanate), the Examiner rejected the then pending claims as obvious based on U.S. Patent No. 5,835,139 (hereinafter the "Yun '139 patent").[6] The Yun '139 patent discloses fastening parts (e.g., screws and holes) solely on the side of the flat panel display device to be used to mount the device.[7] The Examiner found, based on the prior art of record including the Yun '139 patent, that placing fastening parts on the back or rear of a flat panel display device would have been obvious.

LPL traversed this rejection, and argued that fastening parts on the back or rear of a flat panel display device were not well-known, and, relying on section 2144.03 of the Manual on Patent Examination and Procedure (MPEP), shifted the burden onto the Examiner to specifically find a reference that disclosed a fastening part on the back or rear of the flat panel display device.[8] To obtain allowance of the claims, LPL thereafter amended the claims of the Patents to require that the device be "rear mountable" to differentiate the prior art "front mounting" and "side mounting" structures and techniques.

The recent discovery strongly suggests that LPL made this argument while knowingly withholding from the Examiner prior art that specifically disclosed or suggested fastening parts on the rear of what LPL understood to be included in the definition of a flat panel display device as claimed by the Patents. For example, there are prior art LGE flat panel display devices having fastening elements directly on the rear surface of the device as well as instances where the

---

[5] This is commonly referred to as front mounting.
[6] Attached hereto as Exh. A. This reference, and the certified file history for the Patents, can also be found at D.I. 388, at p. JA00097 – JA00480 and D.I. 391, at p. JA00481 – JA00949.
[7] This is commonly referred to as side mounting.
[8] D.I. 388, at p. JA00363.

fastening elements on the rear of the device are arranged so as to be usable for mounting the device.[9]  Similarly, in its supplemental interrogatory infringement assertions compelled by the Special Master, LPL has ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████  LPL's application of the Special Master's June 15, 2007 claim construction also makes the November 13, 1997 Video Electronics Standards Association (VESA) Flat Panel Monitor Physical Mounting Interface (FPMPMI) Standard, and its predecessor drafts, material prior art.  ViewSonic is informed and believes this prior art was, in whole or in relevant part, known to LGE prior to and during the prosecution of the Patents, yet none were disclosed to the PTO.  Each of these new prior art references disclose mounting structures on the back and/or having a structure which is the same as or similar to the structure of one or more of the ViewSonic devices LPL has accused of infringing the Patents.[10]

### C.    Relevant Pleadings and Discovery In this Case

In its Answer filed on June 30, 2004, ViewSonic asserted an unclean hands defense, of which inequitable conduct is a subset, and expressly reserved the right to add an inequitable conduct defense.  [D.I. 26, at ¶¶ 41 & 44.]  In their Answers filed on April 19, 2005, defendants Tatung Co. and Tatung Co. of America (collectively "Tatung") each pled inequitable conduct as an affirmative defense.  [D.I. 186, at p. 8; D.I. 187, at p. 8.]  LPL did not challenge the pleading

---

[9] *See* the accompanying declaration of Dr. Aris Silzars; *see also* the LC056N1 product drawing and photographs, attached to the Miller Decl. as Exs. F and G.
[10] As indicated above, LPL is an affiliate of LGE.  During the time the prior art products and publications relied upon by ViewSonic were made and/or distributed, LPL was either a part of, a division of or a wholly owned subsidiary of, LGE. Miller Decl. Exh. H (transcript of deposition of Jong Hwan Kim under Rule 30(b)(6) at 79:7-80:17.)

of the defense during the period allowed for challenges to pleadings, thus placing the issue squarely in the case and ripe for discovery by all parties.

Throughout this litigation, LPL has steadfastly resisted discovery directed to technical information from LPL, including information regarding LPL's own prior art conventional LCD devices, despite ViewSonic's position that such products represented critical evidence clearly within the proper scope of discovery. LPL was able to delay production of most of its technical information, however, by forcefully and repeatedly arguing that such discovery should be deferred until after claim construction. [*See, e.g.*, D.I. 306 and D.I. 696]. Deposition discovery was not permitted under the Scheduling Order until after June 1, 2006, nearly six months after the January 17, 2006 deadline to amend the pleadings contained in the Scheduling Order. D.I. 198, at ¶ 7.

Time and again, LPL delayed providing discovery to ViewSonic in this action. Though ViewSonic propounded written discovery requests in November 2005 covering the prior art, LPL did not produce any documents on them until July 2007, and only then after the Special Master ordered them produced. [D.I. 784]. Likewise, though ViewSonic served notices of depositions on LPL in November, 2006, LPL refused to produce a witness until the last week of February, 2007, again at the direction of the Special Master. When LPL finally produced Mr. Kim for deposition between February and March 2007 as a Rule 30(b)(6) witness, LPL ████████████████

████████████████████████████████████████████████████

████████████████████████████████████.[11]  It was not until the March 2007 depositions of the inventors of the patents-in-suit, Mr. Cho and Mr. Kim, that defendants were able to establish the date of conception of the supposed invention claimed in the patents-in-suit. Before this time, ViewSonic did not know the precise alleged conception date.

---

[11]  Miller Decl. at Ex. I (Tr. of Mar. 23, 2007 dep. of ████████ pursuant to Rule 30(b)(6), at 833:16-838:1).

Because of LPL's litigation tactics, ViewSonic was forced to initially pursue third party discovery to obtain additional material information regarding the invalidity of the patents in suit, and possible evidence of LPL's inequitable conduct. Through third party discovery, ViewSonic obtained information regarding a prior art flat panel monitor, the 500LC, made by LPL's parent and predecessor in interest, LGE. This information confirmed that the 500LC was prior art.[12] Moreover, in its first and only infringement contentions asserted *after* the Special Master's June 15, 2007 Opinion and Order regarding claim construction [D.I. 692], LPL applies the construed asserted claims of the patents in suit in a fashion that renders the LG 500LC highly material prior art for both invalidity and inequitable conduct. LPL has accused various ViewSonic products that use mounting structures that are the same or substantially similar to the mounting structure found in the prior art 500LC monitor. Notably, neither LPL nor its predecessor in interest disclosed the LG 500LC monitor to the PTO during the prosecution of the patents-in-suit.

Similarly, during the period March to May 2007, ViewSonic used third party discovery to obtain information from Ergotron, Inc. regarding structures, methods and techniques for mounting a flat panel display device, including an LCD device, to walls, stands, and movable arms. As a result of this discovery, ViewSonic obtained a 1997 published industry standard establishing mechanical and structural requirements for mounting flat panel display devices onto mechanical arms and stands: November 13, 1997 Video Electronics Standards Association ("VESA") Flat Panel Monitor Physical Mounting Interface ("FPMPMI") Standard. On July 16, 2007, LPL applied the patent claims as construed by the Special Master's June 15, 2007 Opinion and Order regarding claim construction (D.I. 692) in a fashion that renders the 1997 VESA

---

[12] Miller Decl. at Exh. J (Deposition of ███████████ at 39:20-40:23, and Ex. 4 thereto.)

566305

FPMPMI Standard highly material prior art.[13]  And again, LPL did not disclose the 1997 VESA

FPMPMI Standard to the PTO during the prosecution of the patents in suit.

It was not until LPL's belated July 2007 document productions, however, that ViewSonic

obtained information concerning LPL's own prior art products.  Beginning in early July 2007,

and solely as a result of the Special Master's Order compelling it to do so, LPL has recently

produced approximately 10,000 pages of technical documents (many of which were produced

more than once).  In this production, ViewSonic discovered drawings establishing that ▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  LPL did not disclose the existence of

any of its own prior art products to the PTO.

Moreover, ViewSonic discovered that the newly produced drawings of some of LPL's

prior art LCD devices reveal ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆the mounting structures used in today's LCD devices, and

certainly could be used for mounting.  Defendants have now acquired a specimen of one of these

LCD devices, an LC056B1.  The specimen confirms that the robust fastening parts on the rear of

the device are capable of being used in rear mounting applications.  LPL did not disclose the

existence of any of these highly material prior art products to the PTO.[14]

As ViewSonic and the Tatung defendants diligently pursued discovery regarding LPL's

inequitable conduct, the Defendants updated their written discovery responses to address the

---

[13] LPL's prior responses only made a general application of the claims, in conformance with the limitation of the Scheduling Order regarding discovery that involved claim construction.

[14] Further, LPL has not yet submitted to a 30(b)(6) deposition regarding these and other topics related to LPL's recent technical production that the Special Master has Ordered take place.  *See* fn. 9, *supra.*

566305

information being gathered regarding the inequitable conduct defense. For example, in response to LPL's Interrogatory 18, Tatung provided LPL with updated facts regarding the inequitable conduct defense in February 2006. Similarly, ViewSonic provided updated facts relevant to LPL's unclean hands, including inequitable conduct, in response to LPL's Interrogatory 16 on February 20, 2006, and further supplemented its response on March 31, 2007 and June 8, 2007 as new information came to light. In its June 2007 supplementation, ViewSonic listed various prior art items that it believed LPL should have disclosed to the PTO if known to LPL during the prosecution of the Patents and if relevant to the claim construction. ViewSonic kept LPL continuously apprised of its discoveries while simultaneously investigating the facts and gathering relevant information pursuant to Rule 9, including the highly relevant discovery it obtained from LPL itself in July 2007.

Based on the testimony of LPL and the inventors of the alleged invention, Mr. Kim and Mr. Cho obtained in February and March 2007, third party discovery obtained in March through May 2007, and the technical documents LPL produced in July 2007, ViewSonic has determined that there are more than sufficient facts to plead inequitable conduct.

## V.    Argument

### A.    Legal Standard Applicable to a Motion for Leave to Amend to Assert Inequitable Conduct

Under Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). An outright refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." *Id.* at 182.

The purpose of federal pleadings is to provide the parties with fair notice of the general nature of the pleader's defense. If the underlying facts or circumstances relied upon by a party

may be a proper basis for a claim for relief, the party ought to be afforded an opportunity to test the claim on the merits. *Id.* In liberally granting leave to amend, "a court must be guided by the underlying purpose of Rule 15 – to facilitate [a] decision on the merits rather than on the pleadings or technicalities." *FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995) (quotations omitted); *see also Dole Fresh Fruit Co. v. Delaware Cold Storage, Inc.*, 961 F. Supp. 676, 686 (D. Del. 1997) *Heyl & Patterson Intern., Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419 (3rd Cir. 1981).

A trial court should not deny leave to amend "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment. . . ." *Foman*, 371 U.S. at 182. Delay alone, however, is insufficient to deny an amendment, as "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 537, 538 (M.D.N.C. 1999). An amendment is not futile, meanwhile, if it can withstand a Rule 12(b)(6) motion to dismiss. *See Enzo*, 270 F. Supp. 2d at 489-490 ("[T]he Court cannot conclude with certainty, at this juncture, that [the movant] can 'prove no set of facts in support of [its] claim which would entitle [it] to relief,' given that it has alleged misrepresentations about things such as the effective filing date and mischaracterizing and withholding prior art.") (quoting *Conley v. Gibson*, 255 U.S. 41, 45-46 (1957)).

566305

Motions for leave to amend under Rule 15 often arise in the context of Rule 9(b), which requires pleading an allegation of inequitable conduct with particularity and necessitates a thorough investigation of the facts. *See* Fed. R. Civ. P. 9(b). This Court, among others, has indicated that confirming factual allegations through discovery before pleading inequitable conduct in a patent case is "prudent" and even "possibly required." *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487-90 (D. Del. 2003); *see also, e.g., Douglas Press, Inc. v. Tabco, Inc.*, No. 00 C 7338, 2003 WL 1144054, *1-*2 (N.D. Ill. May 17, 2004) ("Allegations of inequitable conduct are serious and we cannot fault Tabco for waiting for further evidence before filing such an affirmative defense"); *Symbol Techs., Inc. v. Proxim, Inc.*, 2003 WL 1905637, *1 (D. Del. April 17, 2003) (granting leave to amend to add inequitable conduct defense after amended pleading deadline); *MercExchange, L.L.C. v. eBay, Inc.*, 271 F. Supp. 2d 784, 786-89 (E.D. Va. 2002) (granting leave to amend to add inequitable conduct defense); *ADCO Prods. Inc., v. Carlisle Syntec Inc.*, 110 F. Supp. 2d 276, 278 (D. Del. 2000) (noting that defendant's motion for leave to amend to add an inequitable conduct defense was granted on the same day as the Markman hearing); *Rhone-Poulenc*, 73 F. Supp. 2d at 539 (granting leave to add inequitable conduct defense after amended pleading deadline in view of Rule 9(b) where clarifying depositions did not occur until the end of discovery and very little new discovery would be required); *Advance Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1247 (N.D. Cal. 1997) (granting leave to amend pleadings to include a new theory of inequitable conduct based on a new set of recently confirmed facts and noting that the defendant "was entitled to confirm factual allegations before amending" in view of Rule 9(b)).

When determining whether to grant leave to amend a pleading, consideration may also be given to any needed modification of the Scheduling Order under Rule 16(b), which requires

good cause for any changes. *See* Fed. R. Civ. P. 16(b). In determining whether good cause exists to modify the Scheduling Order, this Court has considered whether the movant has met the standard to amend the pleadings under Rule 15, and whether the schedule has been previously modified to serve the interests of the parties. *See Enzo*, 270 F. Supp. 2d at 490.

**B.    ViewSonic Should Be Granted Leave To Amend To Assert Inequitable Conduct**

### 1. ViewSonic's Inequitable Conduct Claim Is Meritorious

ViewSonic's inequitable conduct claim is meritorious and will easily withstand any motion to dismiss. *See Enzo*, 270 F. Supp. 2d at 489-490.

A patent is unenforceable for inequitable conduct if an applicant fails to disclose material information or submits materially false information to the PTO during prosecution of a patent application, with intent to mislead or deceive the PTO. *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1330-1331 (Fed. Cir. 2004). For purposes of inequitable conduct allegations, an omitted reference is material if a reasonable examiner would have considered the omitted prior art important in determining whether to grant a patent. *Id.* at 1315. Whether inequitable conduct has occurred is determined by balancing the materiality and intent, "with a greater showing of one factor allowing a lesser showing of the other." *Id.* at 1313 (quoting *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001)).

Based on information that has recently come to light during discovery, ViewSonic believes that LPL engaged in inequitable conduct by, with the intent to deceive, intentionally misrepresenting and failing to disclose information to the PTO that is material to the patentability of the patents-in-suit, including but not limited to the following conduct:

- In response to the PTO's assertion that having fastening elements on the back or rear of a flat panel display device would be obvious, LPL argued that fastening parts on the back

or rear of a flat panel display device were not well-known, a fact that LPL knew to be false;

- LPL knew of and, with the intent to deceive, failed to disclose material prior art that explicitly discloses a fastening element on the back of a flat panel display device, including, without limitation and solely by way of example:

  o LPL and/or its predecessor and affiliate, LGE made and sold prior art flat panel display devices which ViewSonic is informed and believes includes one or more of the following LCD devices, with fastening parts on the back or rear of the devices, including but not limited to LPL product model numbers LC056B1,



and, with the intent to deceive, failed to disclose any of these products to the PTO;[15]

  o LPL and/or its predecessor and affiliate, LGE, made and sold prior art flat panel display devices, specifically, LCD devices, with mounting parts on the back or rear of the devices, including but not limited to LPL product model numbers LC056B1 ▆▆▆▆▆▆▆▆ and, with the intent to deceive, failed to disclose any of these products to the PTO;

  o LPL's predecessor and affiliate LGE made and sold a prior art LCD monitor model 500LC LCD monitor that uses the same mounting structure found in several of the accused products, and, with the intent to deceive, both LPL and its affiliate, LGE, failed to disclose this product to the PTO;

  o LPL and/or its predecessor in interest, LGE, likely knew about the November 13, 1997 Video Electronics Standards Association (VESA) Flat Panel Monitor Physical Mounting Interface (FPMPMI) Standard, and, with the intent to deceive, failed to disclose this reference to the PTO.

### 2. ViewSonic has not Unduly Delayed Seeking Leave to Amend

The deadline to file amended pleadings in this case was January 17, 2006. [D.I. 198, at ¶

7.] Because the preliminary injunction proceedings lasted more than a year, written discovery

regarding the claims and defenses was in its early stages when this deadline passed. Deposition

discovery was not permitted to commence until June 1, 2006, almost six months after the

---

[15] Notably, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ which confirms that LPL, and perhaps its patent lawyers, knew about but intentionally withheld such material prior art from the PTO. The Special Master has Ordered depositions of LPL's counsel to address this issue. [D.I. 779 and 783.]

deadline to amend had passed. Moreover, due to LPL's resistance, depositions of LPL witnesses did not take commence until February 2007. LPL refused to provide technical discovery, forcing the defendants to seek relevant information via third party discovery and motion practice. Most significantly, LPL delayed discovery on crucial prior art by arguing that discovery on LPL conventional LCD devices that existed prior to the April 2, 1999 application filing date should be deferred until after claim construction, despite the fact that such products are clearly prior art and within the proper scope of discovery. LPL cannot be heard now to complain that ViewSonic should have been able to amend the pleading earlier in the absence of the highly material evidence from LPL and third parties that ViewSonic, only through its diligence, managed to obtain. Indeed, ViewSonic is pursuing deposition discovery from LPL based on these newly produced documents. In permitting this discovery at this time, the Special Master recognized:

> 3.    During a hearing on August 16, 2007 leading up to the present recommendation, LPL admitted that it could have produced the documents and things that are the subject of the June 28 Order at an earlier time. The Special Master concluded that it was LPL's choice not to do so.

* * *

> 9.    The Special Master concludes that the discovery sought by the deposition is appropriately directed to issues related to the present litigation. Defendants could not have adequately obtained this deposition testimony previously without the documents and products which the Special Master has ordered produced. LPL's decision not to produce these documents and materials prior to an order by the Special Master compelling same thus deprived Defendants of the right to obtain the deposition testimony during previous sessions of LPL's corporate deposition pursuant to Rule 30(b)(6).[16]

Throughout this litigation, ViewSonic has diligently pursued discovery from LPL, including discovery relating to its unclean hands defense, such as technical documents and prior art related to the invention claimed in the '641 patent. [*See e.g.,* D.I. 306 and 696.] ViewSonic also diligently supplemented its response to LPL's Interrogatory 16 when it discovered new

---

[16] D.I. 784.

15

information concerning LPL's unclean hands and inequitable conduct. In turn, LPL consistently resisted discovery and withheld highly material evidence. Indeed, it was not until long after the January 17, 2006 deadline to move to amend the pleadings that ViewSonic finally obtained key evidence that it had sought from LPL, virtually all of which had been in LPL's possession before the inception of this lawsuit.

LPL did not, for example, provide documents or testimony on the structure and U.S. sales of the LG 500LC monitor, despite the fact that the 500LC was made and sold by LPL's predecessor and parent, and instead forced ViewSonic to seek the information via third party discovery. LPL also did not produce technical documents on its own products until July 2007 by order of the Special Master, such as those demonstrating that numerous of LPL's prior art LCD devices have fastening elements on the rear, and some as far back as 1996 have mounting elements on the rear. LPL also resisted producing the inventors and prosecuting attorneys for deposition until February 2007, which prevented ViewSonic from discovering that LPL had no reasonable basis for withholding material information from the PTO.

ViewSonic prudently waited to file this motion until it gathered probative evidence, including documents and testimony LPL resisted producing until as recently as July 2007, before seeking leave to amend its Answer to assert an inequitable conduct defense against LPL. *See Burlington Indus., Inc. v Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (characterizing as a "plague" the practice of alleging inequitable conduct without having supporting underlying facts). If there was undue delay involved, it was on LPL's part for failing to cooperate in discovery. LPL's dilatory tactics should not be held against ViewSonic.

### 3. <u>LPL Will Suffer No Prejudice</u>

Even if the Court determines that ViewSonic's could have moved to amend sooner, delay alone is not enough to deny leave to amend, particularly where LPL will suffer no cognizable

566305

legal prejudice by the addition of the allegations. *See Cornell*, 573 F.2d at 823. LPL has been on notice that the Defendants asserted inequitable conduct by the patentee since the beginning, as the Tatung defendants pled inequitable conduct in their Answers. LPL has been on notice of ViewSonic's unclean hands defense since ViewSonic's June 2004 Answer, and has had knowledge of its suspicions regarding inequitable conduct since ViewSonic responded to LPL's Interrogatory 16 in February 2006. Moreover, the facts relevant to ViewSonic's inequitable conduct allegations have always been in LPL's possession; it is only recently that these facts were discovered by ViewSonic. The witnesses who have relevant information include the inventors and other LPL employees, the prosecuting attorneys of the patents in suit, as well as employees of LPL's parent and predecessor LGE. Consequently, LPL has unfettered access to all of the witnesses who may have relevant information regarding LPL's inequitable conduct. Finally, no additional discovery requests will be required,[17] and no dates in the Scheduling Order other than the amended pleading deadline will need to modified. Trial does not commence until March 10, 2008; to the extent these claims can be defended, LPL has had and will have a full opportunity to do so. LPL attended and questioned the witnesses at each of the third party depositions in which facts were developed that evidence its inequitable conduct. ViewSonic has advised LPL that other than the facts it has identified in its interrogatory responses (and any supplement emanating from the recent discovery provided by LPL), it intends to rely on expert testimony regarding the content of the prior art that underlies its inequitable conduct defense. Expert discovery has not yet started. Thus, LPL can obtain whatever discovery it requires from ViewSonic's experts during the expert discovery phase. By this motion, ViewSonic merely

---

[17] ViewSonic is not aware of any additional previously unrequested discovery, but it still awaits production of certain LPL documents, and a 30(b)(6) deposition of LPL, which is scheduled to recommence October 10, 2007. It is possible that some additional third party discovery will be needed due to the failure to produce the LPL materials during the fact discovery period.

seeks to conform the pleadings with the evidence it has recently obtained in discovery. Therefore, LPL will suffer no prejudice from the proposed amendment.

### C.    Good Cause Exists to Adjust the Scheduling Order to Allow ViewSonic To Amend its Answer

For the reasons presented above, good cause to modify the Scheduling Order to permit ViewSonic to file its Amended Answer has been demonstrated. ViewSonic's inequitable conduct allegation has merit, ViewSonic did not unduly delay, and LPL will not be prejudiced by the amendment. Moreover, the schedule has been amended several times, including as recently as August 14, 2007, to serve the interests of the parties. The filing of ViewSonic's Amended Answer will not affect any dates in the Scheduling Order.

## VI.    Conclusion

For the reasons set forth above, and to permit full consideration of the relevant issues on their merits, ViewSonic respectfully requests that this Court grant its Motion for Leave to File the Amended Answer submitted herewith.

CONNOLLY BOVE LODGE & HUTZ LLP


/s/ James D. Heisman
Jeffrey B. Bove (# 998)
James D. Heisman (# 2746)
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE 19899
(302) 658-9141

OF COUNSEL:
CONNOLLY BOVE LODGE & HUTZ LLP
Scott R. Miller
333 South Grand Avenue, Suite 2300
Los Angeles, CA 90071
(213) 787-2500

RASKIN PETER RUBIN & SIMON, LLP
Tracy R. Roman
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 277-0010

*Attorneys for ViewSonic Corporation*

Dated:  September 25, 2007

566305

18

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2007, a true copy of the foregoing document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following and the document is

available for viewing and downloading from CM/ECF:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Anne Shea Gaza
Frederick L. Cottrell III
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

I hereby certify that on October 2, 2007, I have sent by email the foregoing document to

the following non-registered participants:

Cass W. Christenson
Lora A. Brzezynski
Rel S. Ambrozy
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Mark H. Krietzman
Valerie W. Ho
Frank E. Merideth, Jr.
Steve P. Hassid
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

Tracy R. Roman
Raskin Peter Rubin & Simon
1801 Century Park East 23rd Floor
Los Angeles, CA 90067

By: /s/ James D. Heisman
James D. Heisman (#2746)
jheisman@cblh.com