# EXHIBIT 1



# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

LOS ANGELES, CA

333 S. Grand Ave.
Suite 2300
Los Angeles, CA 90071-1504
TEL: (213) 787 2500
FAX: (213) 687 0498
WEB: www.cblh.com

Scott R. Miller
Partner

TEL (213) 787-2510
EMAIL smiller@cblh.com

*Via Email and U.S. Mail*

October 12, 2007

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006-1108

> **Re:**   *LG.Philips LCD Co., Ltd. v. ViewSonic Corp., et al.*
> **USDC Case No. 04-343 JJF**

Dear Cass:

I am in receipt of your letter of today seeking to follow up on yesterday's telephone conference with the Special Master.  We understand the current outstanding issues to be comprised of the following:

1.   ViewSonic's remedies associated with the September 19-20, 2007 deposition of LPL;

2.   ViewSonic's remedies associated with the October 10-12, 2007 deposition of LPL; and

3.   ViewSonic's right to recover its attorneys' fees under 35 U.S.C. § 285.

To the extent your letter intended to suggest that ViewSonic's rights and remedies under Items 1 or 2 is limited to fees or costs, that assertion is mistaken.  Likewise, we see at least two threshold subsidiary issues to Item 3 above, namely:  ViewSonic's pending motion to amend its answer and the entry of a dismissal with prejudice of the case as against ViewSonic.  With regard to these two subsidiary issues, we would ask that LPL advise us of its position on the following:

1.   Does LPL either contend or intend to argue that the failure of ViewSonic's original answer to expressly plead the defense of inequitable conduct has any bearing on the scope of the evidence and/or the issues the Court may consider in conjunction with a motion under 35 U.S.C. § 285 for attorneys' fees by ViewSonic?  If so, what impact does it have?

14003.1

**CONNOLLY BOVE LODGE & HUTZ LLP**
ATTORNEYS AT LAW

Cass W. Christenson, Esq.
October 12, 2007
Page 2

      2.     Is LPL willing to stipulate to a dismissal with prejudice of the instant case against ViewSonic, or will ViewSonic be required to file a motion for dismissal with prejudice in conjunction with its request for attorneys' fees under 35 U.S.C. § 285?

      Once we know your position with regard to these issues, we will be able to meaningfully consider the schedule you propose and/or discuss alternative schedules for these matters.

      I look forward to your early response.

                    Sincerely,

                    Scott R. Miller

cc:     All counsel of record (via email)

14003.1

# EXHIBIT 2

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

October 15, 2007

Via E-Mail and U.S. Mail

Scott Miller, Esq.
Connolly Bove Lodge & Hutz, LLP
333 South Grand Avenue, Suite 2300
Los Angeles, CA  90071

Re:   *LG.Philips LCD Co., Ltd. v. Tatung, et al.,*
        **Civil Action No. 04-343 (JJF)**

Dear Scott:

I write in response to your October 12, 2007 letter, responding to my letter proposing a briefing schedule.

Regarding your suggestion that ViewSonic may seek sanctions other than costs or fees regarding LPL's deposition, we disagree that such remedies are appropriate to seek or to recover. The Special Master previously and correctly declined ViewSonic's request for draconian sanctions. LPL opposes any award of sanctions, and objects to any request for sanctions in a form previously requested and declined. Further, we assume that ViewSonic will discuss with us in advance any sanctions issues that ViewSonic intends to raise that were not previously addressed at the September 21, 2007 teleconference.

Your letter also requests for LPL to state its position concerning "two subsidiary issues": (1) whether LPL may argue that ViewSonic's failure to assert an inequitable conduct defense impacts any motion by ViewSonic that this is an exceptional case, and (2) whether LPL is willing to stipulate to dismissal with prejudice as between LPL and ViewSonic. As stated in my October 12, 2007 letter, LPL continues to reserve any and all objections and arguments concerning any motions that ViewSonic may file in this case.

LPL responds as follows:

1. LPL is evaluating the significance of ViewSonic's failure to allege an inequitable conduct defense. To assist our consideration of that issue, please confirm the grounds for

Scott Miller, Esq.
October 15, 2007
Page 2

ViewSonic's anticipated argument regarding inequitable conduct and 35 U.S.C. § 285. ViewSonic apparently intends to argue that this is an exceptional case based on alleged inequitable conduct, the same issue recently asserted in ViewSonic's proposed inequitable conduct defense in the pending motion to amend. The scope and/or consideration of that argument may indeed be foreclosed or limited based on ViewSonic's failure to plead a proper and timely defense. In addition, the belated assertion of the defense in this case has prevented LPL from knowing or obtaining discovery regarding the defense, which would substantially prejudice LPL's ability to respond to an inequitable conduct argument. If other issues or facts are implicated by ViewSonic's position regarding 35 U.S.C. § 285, LPL needs that information now, which could impact any briefing schedule.

     2. Your letter proposes a stipulation for dismissal with prejudice of the "case against ViewSonic". We will respond to this issue under separate cover.

     3. If there is a settlement between LPL and ViewSonic, then scheduling issues or further motions by ViewSonic will be moot. Further, in cooperating as to a briefing schedule, we have proposed the schedule while reserving all of LPL's rights, and with the intent of obtaining a prompt determination in LPL's favor on any exceptional case motion. Thus, we anticipate that the proposed briefing schedule will avoid the need for further submissions and/or hearings. LPL reserves all of its rights, including the right to make a complete record and present evidence, in the unlikely event that further proceedings are warranted. *See, e.g., W.L. Gore & Assocs., Inc. v. Oak Materials Group, Inc.*, 424 F. Supp. 700 (D. Del. 1976) (rejecting exceptional case argument preliminarily, avoiding need for further proceedings that would otherwise be appropriate). Also, we reserve the right to seek fees and costs in opposing any exceptional case motion, as there is no basis for ViewSonic to allege any fraud on the PTO regarding these patents.

     We look forward to ViewSonic's position regarding the briefing schedule as soon as possible, so that we can advise the Special Master of the scheduling status tomorrow.

               Sincerely,

               Cass W. Christenson

CWC:ea

cc:     Counsel of Record (via e-mail)

# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

L. G. PHILIPS LCD CO., LTD.,    :
                                :
        Plaintiff,              :
                                :    Civil Action No.
        v.                      :    04-343-JJF
                                :
TATUNG CO.; TATUNG COMPANY OF   :
AMERICA, INC.; and VIEWSONIC    :
CORPORATION,                    :
                                :
        Defendants.             :


        Teleconference proceedings in the

above-captioned matter, before Adam D. Miller,

Registered Professional Reporter and Certified

Shorthand Reporter, on Thursday, June 28, 2007,

beginning at approximately 3:18 p.m.


BEFORE:    VINCENT J. POPPITI, SPECIAL MASTER


WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477
www.wilfet.com

**Page 38**

1  to speak to it yet. You'll get a chance to come back
2  to it, because it's certainly a critical issue. And it
3  seems to me that the representation isn't -- is either
4  not the same or it's certainly not as pure as it was.
5  And I'll let you speak to that in a moment.
6       MR. MILLER: With regard to the issue
7  regarding an inequitable conduct defense -- I mean, it
8  is an issue in the case. We're entitled to discovery
9  on issues in the case. We've had it in our discovery
10  responses for some time. We've been awaiting the
11  Markman ruling so that in making our application to the
12  Court for purposes of the inequitable conduct defense,
13  we would know exactly what the claim terms made. And
14  instead of going and having an application made that
15  could be no longer useful or changed, based on the
16  constructions that the Court -- that Your Honor was
17  going to propose in the report, we decided to wait for
18  that and are in the process of finalizing our
19  application for leave to file that.
20       But I don't believe that in any way
21  constricts the ability to take defenses -- take
22  discovery on an issue that's clearly joined in the case
23  by the parties. You know, there's no reason why we
24  couldn't take discovery relating to a Tatung product if

**Page 39**

1  we felt like that was appropriate for presentation; and
2  the mere fact that it's a Tatung product wouldn't
3  prohibit us for asking discovery about it.
4       Similarly, an allegation made by another
5  party -- an issue clearly joined in the case -- is not
6  beyond the scope of discovery that we're not entitled
7  to propound. It's that discovery, ultimately, that
8  gives the comfort of being prepared to make the
9  allegations of inequitable conduct.
10       As Your Honor may know, there is a spate of
11  cases that came out criticizing counsel for freely
12  filing it. And not that Tatung did here. I just think
13  it was a situation that, you know, cautioned counsel to
14  look at things through discovery and then approach the
15  inequitable conduct defense. And that's the path we
16  chose. I think Tatung chose a different path; and they
17  had better information than we had at the time to be
18  able to make the allegations.
19       SPECIAL MASTER POPPITI: Okay. Well, let
20  me suggest this before hearing the comment with respect
21  to the representation. There is little if any question
22  that the information that's being sought -- and I
23  haven't heard you address the specifics of the requests
24  themselves, though, Mr. Miller. Mr. Christenson talked

**Page 40**

1  about whether the requests were broad or whether they
2  were limited. Do you want to address that before I
3  make any comments?
4       MR. MILLER: Yes, Your Honor. I think the
5  request is intended to be broad, in the sense that it
6  asks for the parts of an LCD module. And, again, at
7  the end of this request, we put in a statement that
8  says we're not seeking every document referencing an
9  LCD module; rather we're looking for information
10  regarding the structure, function, and assemblage of
11  parts of an LCD module since January 1, 1997, to the
12  present.
13       So it's not about -- obviously, if it's the
14  same -- if they're using the same first -- what we
15  would call the first and second frames of the
16  flat-panel display device, they don't have to produce
17  it 25 times. But if they're using a different first
18  and second frame, having different mounting locations,
19  then obviously they do need to produce them for
20  different variations of that.
21       And our whole idea in these requests, by
22  having this -- the way they were framed was to try to
23  not have an overburdensome discovery request that would
24  seek every document related to every product they've

**Page 41**

1  ever made; but rather to get something targeted to show
2  how different products would be different as it relates
3  to the structure, function, and assembly of those
4  components.
5       (Discussion held off the record.)
6       MR. MILLER: The request seeks products and
7  information relating to products from January 1, 1997,
8  to the present. And so it's not about a single product
9  but about trying to be limited in the sense that -- not
10  trying to get every product they ever made that would
11  be the same, but products that would be different.
12       And so, to the extent a module has a
13  different -- has the same structure and assembly, we
14  wouldn't need multiple iterations of that same product.
15  All we would want would be where the structure,
16  function, or assemblage is different; then we would
17  obviously want those.
18       SPECIAL MASTER POPPITI: Okay. I do want
19  to hear some comments about the initial representation;
20  because I am satisfied that, certainly, the discovery
21  that is being sought goes to the issue involving
22  invalidity. I'm mindful that Viewsonic has not pled
23  inequitable conduct. I am not confident that -- I'm
24  rather confident that the fact that it has not been

11 (Pages 38 to 41)

Wilcox & Fetzer, Ltd. Registered Professional Reporters    302-655-0477

Page 42

1  pled by Viewsonic would not preclude Viewsonic from
2  taking discovery on the issue. It is in the case.
3      I understand the time for which
4  Viewsonic would have to amend its own pleadings is
5  past. I'm not convinced that if the discovery is --
6  points in the direction of inequitable conduct, I'm not
7  convinced that the Court wouldn't ultimately look to an
8  application to either conform the evidence to what is
9  presented -- conform the pleadings to what the evidence
10 has been or even an application at this juncture to
11 amend wouldn't be entertained by the Court.
12     I'm also confident that the discovery, as
13 propounded, would go to the damages issue.
14     What I do want some discussion on or
15 further comment on, Mr. Christenson, is a
16 representation that was made during the course of the
17 December 28th hearing and the comments that you made
18 today. It seems to me that you backed away from the
19 representation.
20     MR. CHRISTENSON: Your Honor, this is Cass
21 Christenson. I really need to address this -- and I
22 appreciate the opportunity -- because I think we're
23 getting a little bit away from what really happened.
24 And the reason we're doing that is that Mr. Miller has

Page 43

1  asserted, incorrectly, that the agreement that was made
2  to limit the scope had something to do with this
3  purported misrepresentation. And if we need to
4  revisit --
5      SPECIAL MASTER POPPITI: No, I don't think
6  he's saying that they are -- Mr. Miller didn't say
7  misrepresentation.
8      I don't think I heard you say that,
9  Mr. Miller. Did you?
10     MR. MILLER: No, I didn't say that, Your
11 Honor.
12     MR. CHRISTENSON: Your Honor, I may be
13 remembering what was in the papers. But, in any event,
14 Mr. Miller was asserting incorrectly that the
15 representation that was made in the hearing somehow
16 resulted in the agreement; when, in fact, that is not
17 true.
18     The agreement was made much earlier than
19 the representation that Mr. Miller was alluding to.
20 And we've shown that to you in the past in a transcript
21 of -- it's pages -- it's starts at page 120, the
22 discussion that led to the agreement. And that -- much
23 later in the transcript we were talking about the
24 specific document request --

Page 44

1      SPECIAL MASTER POPPITI: Just give me one
2  moment.
3      MR. CHRISTENSON: -- and whether we had
4  documents specific to that request --
5      SPECIAL MASTER POPPITI: Give me one
6  moment. What page, please.
7      MR. CHRISTENSON: In the transcript, Your
8  Honor. It starts at page 120.
9      SPECIAL MASTER POPPITI: Right.
10     MR. CHRISTENSON: And I'm just pulling it
11 up myself. But it was a -- it was early in the hearing
12 on Viewsonic motion for technical discovery. And we
13 were discussing one of the disputes. One of the points
14 of contention was that the discovery that Viewsonic was
15 seeking was overly broad because of the time -- there's
16 no time limit.
17     And at that time Viewsonic's purported
18 basis for the discovery was validity. And later, only
19 much later, did they decide to go much broader and try
20 to assert that this also relates to damages, which I'll
21 be happy to address.
22     But going back to page 120, we were talking
23 about Requests 82 and 83 and others in this area,
24 including the ones we're discussing now. And

Page 45

1  Mr. Miller acknowledged there was a fundamental issue
2  we have that relates to the requests generally.
3      And you suggested we should talk about a
4  date for a time period.
5      I had pointed out that for documents to be
6  relevant to validity, as a matter of law, they would
7  need to be for the appropriate time period, which would
8  have to predate the patents. They have to be prior.
9  You know, prior art, obviously, has to be prior.
10     So we went back and forth on what should be
11 an appropriate date. Mr. Miller suggested on page 121
12 maybe we should pick the patent issuance date; but then
13 he also agreed that we could pick another date that
14 would make sense.
15     So you allowed us on the record to discuss
16 what would be an appropriate date based on what
17 everyone knows, which is that validity discovery has to
18 be limited in the time. So we had that discussion.
19 And on page 122 I suggested the end of 1998.
20     And Mr. Miller stated on line 18, "That's
21 fine, Your Honor."
22     And then we agreed that that limitation
23 would apply to the entire set of discovery that was
24 being addressed, which is the same discovery we're

12 (Pages 42 to 45)

Page 138

1       CERTIFICATION
2
3
4       I, ADAM D. MILLER, Registered Professional
5    Reporter, certify that the foregoing is a true and
6    accurate transcript of the foregoing teleconference, at
7    the time, place and on the date herein before set
8    forth.
9       I further certify that I am neither
10   attorney nor counsel for, not related to nor employed
11   by any of the parties to the action; further, that I am
12   not a relative or employee of any attorney or counsel
13   employed in this case, nor am I financially interested
14   in this action.
15
16
17   _____
18   Adam D. Miller
     Registered Professional Reporter, Notary Public,
19   and Certified Shorthand Reporter of the State of
     Delaware #109-RPR (Exp. 01-31-2008)
20
21
22
23
24

Wilcox & Fetzer, Ltd.  Registered Professional Reporters          302-655-0477

# EXHIBIT 4

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD, )
                              )
        Plaintiffs,           )    C.A. No. 04-343(JJF)
                              )
v.                            )
                              )
TATUNG CO., TATUNG COMPANY OF )
AMERICA, INC., and VIEWSONIC  )
CORPORATION,                  )
                              )
        Defendants.           )

        Hearing of above matter taken pursuant to notice
before Renee A. Meyers, Registered Professional Reporter and
Notary Public, in the law offices of BLANK ROME, LLP,
1201 North Market Street, Wilmington, Delaware, on
Monday, October 8, 2007, beginning at approximately
6:00 p.m., there being present:

BEFORE: THE HONORABLE VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        RICHARD D. KIRK, ESQ.
          222 Delaware Avenue, Suite 900
          Wilmington, Delaware  19899
          for Plaintiffs

                CORBETT & WILCOX
          Registered Professional Reporters
    230 North Market Street      Wilmington, DE 19899
                  (302) 571-0510
              www.corbettreporting.com
        Corbett & Wilcox is not affiliated
        with Wilcox & Fetzer, Court Reporters

Hearing

1    infringement and the case for the defenses.

2        And we -- our understanding of the case law

3    is that the Court is divested of jurisdiction of those

4    issues but not necessarily of whether it's an

5    exceptional case.  But there ought to be a schedule for

6    that and a presentation of that issue to the Court.

7    Those are issues properly directed, I believe, to the

8    Court.  They are not discovery issues.

9        SPECIAL MASTER POPPITI:  Well, here is what

10   I think would be important for me to do, and maybe it

11   makes sense to confer further with your leads as well.

12   I have had some conversation with Judge Farnan, and I

13   had that conversation on Thursday of last week, I

14   believe, because at the time that I had the

15   conversation, I did not have the most recent submittal

16   from LPL advising of the covenant not to sue, so it -- I

17   don't have my notes in front of me, but I am fairly

18   certain it was on Thursday.

19        I think it's going to be important for me to

20   have some conversation with the Court sometime during

21   the course of the day tomorrow so I can learn from him

22   what he would want me to be doing with any of the

23   applications that are being -- that you have advised me

24   of today, including the exceptional case application.

Hearing

1                    C E R T I F I C A T E

2    STATE OF DELAWARE:

3                         :

4    NEW CASTLE COUNTY:

5          I, Renee A. Meyers, a Registered Professional

6    Reporter, within and for the County and State aforesaid,

7    do hereby certify that the foregoing teleconference was

8    taken before me, pursuant to notice, at the time and

9    place indicated; that the teleconference was correctly

10   recorded in machine shorthand by me and thereafter

11   transcribed under my supervision with computer-aided

12   transcription; that the foregoing teleconference is a

13   true record; and that I am neither of counsel nor kin to

14   any party in said action, nor interested in the outcome

15   thereof.

16         WITNESS my hand this 10th day of October A.D.

17   2007.

18

19         _____

20         RENEE A. MEYERS

21             REGISTERED PROFESSIONAL REPORTER

22             CERTIFICATION NO. 106-RPR

23         (Expires January 31, 2008)

24

EXHIBIT 5

Hearing

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHILLIPS, L.G., LCD CO., LTD,       )
                                    )
            Plaintiffs,             )    C.A. No. 04-343(JJF)
                                    )
v.                                  )
                                    )
TATUNG CO., TATUNG COMPANY OF       )
AMERICA, INC., and VIEWSONIC        )
CORPORATION,                        )
                                    )
            Defendants.             )

        Hearing of above matter taken pursuant to notice
before Renee A. Meyers, Registered Professional Reporter
and Notary Public, in the law offices of BLANK ROME,
LLP, 1201 North Market Street, Wilmington, Delaware, on
Wednesday, October 24, 2007, beginning at approximately
3:05 p.m., there being present:

BEFORE: THE HONORABLE VINCENT J. POPPITI, SPECIAL MASTER

APPEARANCES:

        THE BAYARD FIRM
        RICHARD D. KIRK, ESQ.
        222 Delaware Avenue, Suite 900
        Wilmington, Delaware  19899
        for Plaintiffs

                    CORBETT & WILCOX
              Registered Professional Reporters
        230 North Market Street      Wilmington, DE 19899
                    (302) 571-0510
                  www.corbettreporting.com
            Corbett & Wilcox is not affiliated
        with Wilcox & Fetzer, Court Reporters

Hearing

```
Page 2

 1   APPEARANCES (Continued):

 2        MCKENNA, LONG & ALDRIDGE, LLP
          CASS W. CHRISTENSON, ESQ.
 3            1900 K Street, N.W.
              Washington, D.C.  20006
 4            for Plaintiffs

 5        RICHARDS LAYTON & FINGER
          ANNE SHEA GAZA, ESQ.
 6            One Rodney Square
              Wilmington, Delaware  19801
 7            for Defendant Tatung Co.

 8
          CONNOLLY BOVE LODGE & HUTZ LLP
 9        KRISTEN HEALEY CRAMER, ESQ.
              1007 North Orange Street
10            Wilmington, Delaware  19899
              for Defendant Viewsonic Corporation
11
          BINGHAM McCUTCHEN LLP
12        SCOTT R. MILLER, ESQ.
          KEITH FRASER, ESQ.
13            355 South Grand Avenue
              Los Angeles, California  90071-3106
14             for Defendant ViewSonic Corporation

15        RASKIN PETER RUBIN & SIMON LLP
          TRACY ROMAN, ESQ.
16            1801 Century Park East, 23rd Floor
              Los Angeles, California  90071
17            For Defendant ViewSonic Corporation

18

19

20

21

22

23

24
```

Hearing

Page 3

1          SPECIAL MASTER POPPITI:  Let's go back

2   through that, Mr. Kirk, with a roll call, please, so

3   that we have everything for the court reporter.

4          MR. KIRK:  Yes, Your Honor.  This is Richard

5   Kirk from the Bayard Firm here in Wilmington for the

6   plaintiff, LG Phillips, LCD Company, Ltd., and with me

7   on the line is my colleague, Cass Christenson, from

8   McKenna, Long & Aldridge in Washington.

9          MS. CRAMER:  Good afternoon, Your Honor.

10  It's Kristen Cramer with Connolly, Bove in Delaware.

11  Also on the phone with me is Scott Miller and Keith

12  Fraser from our L.A. office, and Tracy Roman from the

13  Raskin Peter firm also in L.A.

14         SPECIAL MASTER POPPITI:  Thank you.

15         MS. GAZA:  Good afternoon, Your Honor.  Anne

16  Gaza on behalf of the Tatung defendants.

17         SPECIAL MASTER POPPITI:  Thank you.  Will

18  anyone else be joining, Ms. Gaza?

19         MS. GAZA:  No, Your Honor.

20         SPECIAL MASTER POPPITI:  Thank you.

21         MS. GAZA:  Thank you.

22         SPECIAL MASTER POPPITI:  I have had the

23  opportunity, of course, to read your submittals and to

24  review case law that you have cited in those submittals.

Hearing

Page 4

1    And what I want to get a handle on first is the process

2    that you both described, whether it's in the post

3    briefing chronology that LPL has offered or in the event

4    chronology, if you will, with dates certain that

5    ViewSonic has offered.

6          The process that's being proposed is, if you

7    will, a stop and start process. And I am not sure that

8    that is the only way that we can move this matter along

9    efficiently and bring closure to all necessary issues

10   efficiently.

11         Let me pose the following question, and I

12   think I characterize it right, in the sense that however

13   you decide or however you propose that these issues get

14   teed up, if I were to accept a proposal that says tee

15   these up individually, expect after the tee up there is

16   going to be, or before, there is going to be a meet and

17   confer with respect to the issue of the number of days

18   to take exceptions to each discrete piece of work, and

19   even if you all land on the same date or if I am asked

20   to recommend something to Judge Farnan where you cannot

21   agree to the same number of days, it's self-evident that

22   I am in no position, nor would I think the Court, even

23   acting on his own, I don't expect that the Court is

24   going to commit to a date certain to issue a final.

Hearing

Page 5

1    determination of any findings and recommendations that I

2    make.

3              I mean, I don't expect anyone disagrees with

4    that.  Am I correct?

5              MR. CHRISTENSON:  LPL does not disagree with

6    you.

7              MR. MILLER:  ViewSonic does not disagree

8    with you either, Your Honor.

9              SPECIAL MASTER POPPITI:  So my proposal goes

10   something like this:  However we decide to serve these

11   up, I am wondering if it doesn't make more sense to

12   write them as preliminary findings and recommendations

13   so that there is an opportunity to finish it all or

14   finish important segments of it before moving onto the

15   next segment or finishing it all so that what we wind up

16   with is something that is either final from my desk for

17   purposes of having Judge Farnan look at the whole

18   process.  Otherwise, if you take each of the matters

19   that are before the Court and matters that can be

20   expected to be before the Court, you have six or seven,

21   maybe less, five or six discrete applications with five

22   or six different findings and recommendations and five

23   or six deadlines, not running in tandem, but running

24   chronologically after each other for Judge Farnan to

Hearing

Page 6

1    turn his attention to.

2                And given, you know, given the busyness of

3    the Court's docket, there is certainly no way that I am

4    going to be in a position to suggest a time frame when

5    everyone could expect seeing decisions from Judge

6    Farnan.  And I don't think he would -- I don't think he

7    would do anything different than do what he does, and,

8    that is, he turns to them when he turns to them and he

9    decides them when he decides them.

10                And I could see a process that would

11    protract the work that I may be called upon to do, and I

12    want to talk about that in a moment, through the

13    springtime.

14                But my first question is:  Talk to me a bit

15    about a process that handles this a little differently

16    for purposes of serving things up to -- or being ready

17    for you to take any action you choose to take before

18    Judge Farnan.

19                MR. MILLER:  Your Honor, perhaps I could

20    address that first.

21                SPECIAL MASTER POPPITI:  Yes, please.

22                MR. MILLER:  If our -- I am not sure that

23    our letter was as clear as I hoped it was going to be

24    because I didn't envision the process that we were

Hearing

1    talking about in our proposed schedule as being a

2    piecemeal process, if you will.  It seemed to me that

3    there was one sort of issue that hopefully the parties

4    will agree to and won't be a dispute, and that would be

5    the time for taking exception to any ultimate report

6    that you would make, and that might be on a faster track

7    if there wasn't any resolution of that by agreement

8    between the parties.

9              But other than that, I mean, our proposal

10    was that while we would have a staggered period for

11    briefing to be done, they would all be completed and

12    heard at the same time so that Your Honor would have

13    before you the five or -- the four or five different

14    matters.  And while they are somewhat discrete, there is

15    a significant relationship between the number of those

16    issues and matters, even though they may be discrete

17    motions.

18              SPECIAL MASTER POPPITI:  Right.  There

19    certainly is a significant relationship enough so -- and

20    I perhaps should have said this at the front end of this

21    -- that Judge Farnan agrees that all of those matters,

22    including the dualing motions to dismiss, should be

23    before me in the first instance.

24              MR. MILLER:  I think, from our standpoint,

Hearing

Page 8

1   Your Honor, we did not envision that there would be

2   multiple hearings and decisions rendered by Your Honor

3   with the potential exception of this issue about if the

4   parties can't come to agreement as to the time to take

5   exception from any reports that will be issued at the

6   end of the process.

7            I know when we spoke on the phone the other

8   day, I was speaking off the top of my head about

9   possible meet and confers during the course of the

10  process, and I think, as we were going over the schedule

11  on our side and the schedule that we ultimately

12  submitted, did not have that in it because it did seem

13  like it was too much of a stop and go kind of process.

14  And that what would be better for efficiency would be to

15  have the motions briefed over the period of time and

16  submit it to Your Honor so that, at the end, you could

17  have all the motions in front of you and decide whether

18  you are going to have one hearing or if you want to

19  break it into pieces for a hearing for some reason, and

20  then make the decisions that would be available for you

21  to be able to make at that point in time.

22           The one sort of potential carryover would be

23  the issue about if there is some missing discovery that

24  needs to take place as a result of, once you have all

Hearing

1    the motions in front of you, and how that would -- how

2    that would happen.  And I think that, from our

3    standpoint, we believe the question of the entitlement

4    to additional discovery will be fully briefed by the

5    issues that are framed by the current matters that are

6    going to be before Your Honor.  And I think that none of

7    the cases that have been cited in any of the proceedings

8    have a circumstance like we have here where discovery

9    has been court ordered, it had not been presented as --

10   court ordered a second time as well as the deposition of

11   the MLA firm had been ordered on behalf of the

12   defendant.

13              And to the extent that the discovery issues

14   that would potentially surface at the hearing, and we

15   don't know if they are going to surface, we think there

16   is going to be enough evidence that they won't be

17   necessary to surface, but to the extent they are

18   surfacing and at issue at the time of the hearing, the

19   Court at that point in time would then either have to

20   direct the -- it would have the briefing about the

21   entitlement to discovery through the other motions

22   pending before you, you would be able to either decide

23   that you could resolve the discovery issues on the basis

24   of the pending motions or that additional discovery was

Hearing

Page 10

1    going to be required to address those issues to see

2    whether or not the motion can be granted or has to be

3    denied.

4              At that time, Your Honor could look at the

5    motion that would be pending just looking, for example,

6    at the attorneys' fee motion, you could look at it and

7    say, Based on the accumulation of evidence that's here,

8    we believe -- I believe that this is an exceptional

9    case, and having made that finding now, I will address

10   the issue of attorneys' fees.  Or, secondarily, Your

11   Honor could look at that and say, Looking at all of the

12   evidence, at any evidence that is missing, that could

13   have been obtained through the discovery that was

14   previously court ordered, and all of that accumulated

15   together doesn't tip the scale far enough, under my

16   understanding of the law, to make this an exceptional

17   case, and, therefore, I am going to deny the motion,

18   that subsequent discovery wouldn't be needed at that

19   point in time until Judge Farnan disagreed with that

20   conclusion, obviously.

21              SPECIAL MASTER POPPITI:  Right.

22              MR. MILLER:  Or you would say, There are

23   some pieces here that are missing which were within the

24   scope of the preexisting court ordered discovery that