Hearing

1    need to be filled one way or the other, and, at that

2    point, I am going to then adjourn the process, let you

3    pursue that discovery and come back to me with your

4    supplemental, in short order, come back to me with your

5    supplemental materials on those two -- one, two,

6    whatever it is, missing issues and then you can make a

7    decision based on the full record.

8            SPECIAL MASTER POPPITI:  Okay.  I sincerely

9    appreciate your clarification.  It's likely not to have

10   been something that you did or didn't say in your

11   submittal.  It's more likely to have been the Codeine

12   and cough medicine that I have been taking.

13           Now I do understand because I expected that

14   it was, to some extent, a start and stop with discrete

15   decisions being made along the way.  But I do understand

16   what you are proposing now.

17           Thank you for doing that, Mr. Miller.

18           MR. MILLER:  You are welcome.

19           SPECIAL MASTER POPPITI:  Who is going to

20   speak on behalf of --

21           MR. CHRISTENSON:  Cass Christenson for LPL.

22           SPECIAL MASTER POPPITI:  Yes, please.

23           MR. CHRISTENSON:  Thank you.  Our view is, I

24   think we all agree that there is a certain logical

Hearing

Page 12

1   impact and practical impact that could result on some of

2   these issues depending on how you rule on certain other

3   issues, so our proposal was to structure the process in

4   logical steps that recognized what impact certain early

5   rulings might have.  And some of those early rulings

6   then could moot or avoid the need for further briefing

7   or further hearing on other issues.

8         So that would allow Your Honor to make

9   decisions as necessary.  It would also avoid doing

10  unnecessary work for all of us, and that's consistent

11  with the principle that we cited in the cases that the

12  fee litigation is distinct from the merits litigation

13  and the fee litigation should be kept to an efficient

14  minimum process, if you will.

15        So, our hope was to first focus on work

16  related to exceptionality --

17        SPECIAL MASTER POPPITI:  Let me ask this

18  question in light of what you have said before you get

19  into any of the detail.  That does identify my concern

20  about start and stop because as soon as I put pen to

21  paper and call it a finding and report and

22  recommendation, then it seems to me, unless I do

23  something and you all agree that I do something with the

24  caption of that document, it is ripe for attention under

Hearing

1    the Rule 53.  And it could very well lead to a start and

2    stop and literally wait for the Court to turn its

3    attention to it.

4              And I am not convinced that there is -- that

5    whatever efficiency may be gained by doing it in that

6    fashion may be lost by virtue of the Rule 53 process.

7    And I could certainly envision, whether it's one, two,

8    or three discrete, up front issues, I could certainly

9    envision a circumstance where you have worked with me, I

10   provide you with my view of the matter, you then,

11   consistent with the rule, exercise your respective

12   rights to say yes or no, and your briefing schedule,

13   just the briefing schedule, itself, is going to take you

14   beyond the new year unless the Court agrees to some

15   different briefing schedule.

16             Because, I mean, I am not aware of a

17   circumstance in any of the Special Master work that I

18   have done -- and, local counsel, if you are, please tell

19   me -- where after a Special Master does his or her work,

20   the Court then entertains an application to alter the

21   briefing schedule that the Court uses traditionally in

22   all applications to the Court.

23             So I think I am correct in saying, Were you

24   to serve up discrete applications in, let's say, a week

Hearing

Page 14

1    or two, and even if I impose a deadline on myself after

2    you have closed submittals on those discrete issues,

3    once I meet my own deadline, if you throw it into the

4    traditional briefing schedule of the Court, you are into

5    the new year.

6          And I would have to -- I'd have to

7    anticipate, at least based on what I know now and how I

8    have seen both parties litigate this case up to this

9    point, I almost have to anticipate that whatever I do,

10   one side or the other is going to take an exception

11   because we are at a -- certainly a very different phase

12   of winding down this lawsuit to no activity.

13         I am just not sure -- and help me with this,

14   I'd like to hear your comments -- I am not sure that

15   doing it in the fashion that you are proposing results

16   in the ultimate efficient use of both your time and the

17   Court's time.

18         MR. CHRISTENSON:  From LPL's perspective, we

19   certainly agree that we should try to be efficient, and

20   I am not suggesting that, with every one of the issues

21   and submissions, that we should have a situation where

22   you issue a report and then any exceptions are taken and

23   fully resolved before you proceed to the next set of

24   submissions.

Hearing

1          I agree that that would not be an efficient

2     process.

3          What our concern is that we don't want to be

4     in a position where we are briefing issues or conducting

5     discovery that you may determine is not necessary

6     depending on how you rule on certain other issues.  And

7     we certainly recognize that it may take -- this process

8     may take us into the next year depending on what

9     happens.  For example, if there is supplemental

10    discovery to be considered and completed, it's pretty

11    clear to me that that likely is going to take us into

12    the next year given the fact that the briefing hasn't

13    started yet.

14          SPECIAL MASTER POPPITI:  Right.

15          MR. CHRISTENSON:  And I don't think that's a

16    problem.  I don't think anyone is prejudiced by that.

17    But -- so I am not suggesting that we should do sort of

18    each separate set of issues to conclusion before we pick

19    up the next set.  I think there can be some overlap on

20    some of these issues.

21          But with respect to exceptionality, for

22    example, it seems to make sense to first look at that

23    issue as a threshold issue.  In fact, probably to first

24    look at the pavilion party issue under dismissals

Hearing

Page 16

1   because that could, you know, that could avoid the need

2   to even get into the merits under Section 285,

3   potentially.  But I think, for that issue, it makes

4   sense to do it in the logical progression, and I think

5   that's consistent with the approach that the cases that

6   both sides have cited to Your Honor contemplate.

7          SPECIAL MASTER POPPITI:  Mr. Miller, are

8   there up front issues that can be submitted, decided on

9   a fast track, and I guess it would almost have to be,

10  with some agreement, that if, by virtue of the early on

11  decisions, we could talk about what they would need to

12  be, the matter is poised to go forward, but there would

13  be an agreement not to take exception until the end of

14  the process.

15          On the other hand, if the determination is

16  to -- if, by virtue of the determination, everything

17  stops, for example, on the building motions to dismiss,

18  if I conclude and recommend that there should be a

19  dismissal without prejudice, I am assuming you would all

20  agree that if it's without prejudice, the matter stops;

21  do you all agree to that?

22          MR. CHRISTENSON:  LPL agrees.

23          MR. MILLER:  I don't think I have found a

24  case yet that tells me it has to stop.

Hearing

Page 17

1        SPECIAL MASTER POPPITI:  We have been

2   looking around.

3        MR. MILLER:  You know, so I am not sure I

4   can agree to that.

5        SPECIAL MASTER POPPITI:  And I understand

6   that.

7        MR. MILLER:  I don't see any case that tells

8   me it has to.  I recognize that the language of the case

9   certainly, you know, intimates that a dismissal without

10  prejudice is a barrier or some kind of a threshold you

11  would have to further climb over to get through

12  potentially.  But there is no -- I haven't found any

13  case law that requires that.

14        SPECIAL MASTER POPPITI:  And perhaps therein

15  lies my point.  I mean, if it's a matter of that I rule

16  that, and perhaps I should subsume in the ruling, if it

17  is with prejudice, then I don't think anyone would

18  disagree with me that that permits the -- that gets you

19  to the door and you open the door at least with respect

20  to the issue of prevailing party.

21        Mr. Christenson, do you disagree with that?

22        MR. CHRISTENSON:  As I sit here right now, I

23  think you are probably correct as a matter of law, Your

24  Honor.

Hearing

Page 18

1        SPECIAL MASTER POPPITI:  So if that occurs

2    and if there is an agreement that, by virtue of having

3    done that, it will proceed without taking exception to

4    that finding and recommendation, and, on the other hand,

5    if it is -- if the other results and even if there needs

6    to be some attention given to whether or not that does

7    close the door and I wrap that into whatever decision I

8    write, saying, It is without prejudice, then we can all

9    agree because it would otherwise stop, as the cases seem

10   to suggest that it should, you have the opportunity to

11   go to Judge Farnan to say, No, that's wrong, this

12   process should go forward.

13        I think what I am trying to do is look for

14   those key issues, if there are any, that can be done at

15   the front end shortly and quickly.

16        My thought is the dualing motions to

17   dismiss, the motion that has not been fully developed

18   yet, I don't believe, motion to amend, and, you know,

19   that may be it if it's me asking you to agree to at

20   least two.

21        MR. MILLER:  Your Honor, could I address

22   that?

23        SPECIAL MASTER POPPITI:  Yes, please.  And

24   if it's important to have additional conversation,

Hearing

1    because I realize we kind of pushed this ball forward

2    rather quickly since last week, then I am happy to

3    permit that if you all think it would be helpful.  Go

4    ahead, Mr. Miller.

5            MR. MILLER:  On the issue with regard to the

6    dismissal, I think if -- I guess there is sort of three

7    potential outcomes I could see.  One would be dismissal

8    ...with prejudice, the matter goes forward, dismissal

9    ...without prejudice, there is no case that says it can't

10    go forward and we are going forward, or dismissal

11    without prejudice, and either there is or is not a case

12    or the peachings of the law is such that the case -- the

13    matter should not go forward.  And only in the last of

14    those three potential outcomes would this issue about a

15    motion to dismiss serve any sort of gate keeping

16    function potentially.

17            SPECIAL MASTER POPPITI:  Right.  I don't

18    disagree with that.

19            MR. MILLER:  So I am not sure -- so I can

20    see, from a logic standpoint, a potential level of

21    efficiency that could be addressed by having that first

22    if, you know, if there is going to be a gate keeping

23    function as part of that, although, as I say, we have

24    looked for cases and haven't found any that say it is a

Hearing

Page 20

1    gatekeeper.  And we know, for example, in the Highway

2    Equipment case that was recently a CAFC case, that, you

3    know, the motion for the 285 motion was filed first,

4    later on, the motion to dismiss was filed and the Third

5    Circuit didn't indicate that that was an improper

6    juxtaposition of the issues for the Court to decide.

7    The Court decided them both simultaneously without any

8    adverse comment, I think, from the Federal Circuit.

9           SPECIAL MASTER POPPITI:  And I think,

10   though, what you may be saying and what I may be

11   proposing is if the decision, whether it's a decision

12   that says "with prejudice," and, therefore, you can

13   clearly proceed, or if it is a determination without

14   prejudice with the additional conclusion that you still

15   can proceed, then the agreement that I am asking you to

16   consider is, in any case, if there is a finding, a

17   report of recommendations that says "proceed," then you

18   all agree that you go, you do proceed.

19          And that the only -- the opportunity, if you

20   take an exception to Judge Farnan, would be in that

21   circumstance where I say, "It's over," and that would be

22   a finding, a recommendation and conclusion on the motion

23   to dismiss without prejudice, and saying that "without

24   prejudice" ends it.

Hearing

1        MR. MILLER:  Yes, Your Honor.

2        SPECIAL MASTER POPPITI:  You can brief that.

3        MR. MILLER:  You can brief the issue fairly

4   quickly and if we had a hearing fairly quickly, I think,

5   you know, the only downside is it would push the other

6   more into the end of the year holidays, but, you know,

7   we can work around that as well, I think.

8        SPECIAL MASTER POPPITI:  I think we could

9   and I am just concerned that if the process is

10   protracted when there is disagreement with something

11   that a Special Master does and it winds up going through

12   the Court's hands and standing in line or alongside of,

13   behind, or in front of, somebody else on the docket.

14        Mr. Christenson, is that something that you

15   think you can agree with in terms of whether it's the

16   motion to dismiss and the motion to amend, and if it's

17   only those two?

18        MR. CHRISTENSON:  Your Honor, that sounds

19   workable to me.  It sounds efficient.  We, obviously,

20   disagree with Mr. Miller's and ViewSonic's view of the

21   law regarding with prejudice and without prejudice

22   dismissals, but in terms of efficiency and how to

23   structure this process, I do think there would be a

24   significant gatekeeper issue involved if it's a without

Hearing

Page 22

1    prejudice dismissal, so I think that would be the

2    efficient way to proceed.

3              MR. MILLER:  On the issue of the motion to

4    amend, I don't think it serves the same function because

5    we have not found any cases that say that the 285

6    motion, for example, is in any way limited by defenses

7    that were or were not pled, and we asked LPL if they had

8    any authority to suggest that it should, you know, I am

9    not sure that that motion, really, is only -- if that

10   motion is moot because of the covenant not to sue, then,

11   obviously, the scope of the pleadings can't have an

12   impact on the evidence the Court can consider under the

13   285 motion.

14              SPECIAL MASTER POPPITI:  Right.

15              MR. MILLER:  If it's not moot, and LPL

16   argues strenuously it is moot, if it's not moot, the

17   only reason it's not moot is because it would have an

18   impact on this, but I don't think it serves the

19   gatekeeper function in any fashion similar to what the

20   motions to dismiss might serve.

21              We could brief it and do those two up front

22   if that's preferable, but I am not sure it's necessary.

23   You know, it is substantially briefed at this point so

24   we could finish that up and maybe it's efficient to just

Hearing

1    do that and tick off.

2             SPECIAL MASTER POPPITI:  I am not certain it

3    is necessary but I think, for purposes of just putting

4    it on a plate and moving it on, there is some degree of

5    efficiency gained by that.

6             So, it seems to me that if you all can work

7    out that initial briefing schedule with a proposed

8    hearing date, whether we do that now or you do it

9    off-line, I would like us to at least proceed in that

10   fashion with respect to those two.

11            MS. ROMAN:  I also want to make certain that

12   both sides understand, then, that in conjunction with

13   the motion to dismiss, one issue that would be briefed

14   in there is whether or not without prejudice or with

15   prejudice affects the prevailing party status.

16            SPECIAL MASTER POPPITI:  Yes.  I agree that

17   that should be part of that.

18            Now, on the other ultimate matters, it seems

19   to me we should at least establish a schedule assuming,

20   without expecting, that the process is going to go

21   forward to completion.  And what I think I would like to

22   do there, based on your submittals, is I do not believe

23   that it is necessary, nor do I believe it's efficient,

24   for there to be some determination on my part that there

Hearing

Page 24

1    is a prima facie showing.

2              I think the cases that you have referenced

3    suggest to me that that is a discretionary decision on

4    the part of either a Special Master or the Court.  And I

5    think, given the posture of the case and even if there

6    is an expectation that there may be an application for

7    additional discovery, and I think what I am hearing from

8    Mr. Miller is that, in his first or second or third cut

9    at this from his own analysis, suggests that there is

10   sufficient evidence to move forward to a final hearing

11   even if there is an application for additional

12   discovery.

13             I believe and would conclude that it's going

14   to be more efficient to move right into the process full

15   board understanding that it would not make sense for

16   there to be a development of an application for

17   attorneys' fees until there has been a determination

18   that it is an exceptional case.

19             So, it seems to me the attorneys' fees piece

20   of it, in terms of the work that you would need to do to

21   bring that to my desk, should wait until there is a

22   determination that it is an exceptional case.

23             And, again, if there is a determination that

24   it is exceptional as opposed to a determination to the

Hearing

1   contrary, it seems to me the most efficient way to do it

2   is to agree that there be no exceptions taken to that

3   determination until after there is a determination on

4   the underlying application fee.  I think that just makes

5   sense even in light of the way all of the cases get

6   brought to my attention deal with it.

7            They certainly package the determination of

8   exceptional case and the determination of attorneys'

9   fees within the same document and considered it at the

10  same time.

11           So, I am accepting the view of ViewSonic

12  that we not proceed in the fashion where I would make a

13  prima facie -- require that there be a prima facie

14  showing.

15           MR. CHRISTENSON:  Cass Christenson for LPL.

16  I am just wondering, in terms of discovery, there, you

17  know, could be that, depending on what ViewSonic

18  submits, LPL and/or ViewSonic may request supplemental

19  discovery, and we had proposed that the discovery -- I

20  guess the discovery issues, it seems to me, tie into the

21  exceptionality considerations so that it sounds to me

22  like the process you are discussing would entail

23  briefing and consideration of any requests for

24  supplemental discovery before you make a determination

Hearing

Page 26

1    regarding exceptionality.

2              SPECIAL MASTER POPPITI:  That's correct.

3    And I think when Mr. Miller was suggesting how he viewed

4    the record, from his vantage point, on the issue of

5    discovery, I think you said, Mr. Miller, that you don't

6    anticipate it but you certainly want to make sure that

7    the process permits there to be a consideration of it

8    and it would be at that stage where briefing was either

9    occurring or had concluded.

10             MR. MILLER:  That's correct.  I mean, we

11   view the issue in terms of what discovery might be

12   necessary would really be responsive to an opposition of

13   LPL raising in terms of missing, for example, the

14   documents aren't admissible or could be -- I don't know

15   what it could be.

16             SPECIAL MASTER POPPITI:  There may be

17   something.

18             MR. MILLER:  There may be none.

19             SPECIAL MASTER POPPITI:  And there may be

20   none.

21             MR. MILLER:  Right.

22             SPECIAL MASTER POPPITI:  And that should be

23   built into whatever schedule you will ultimately propose

24   consistent with what you have agreed to with respect to

Hearing

1    the front end motions and the process as I have

2    identified it for the ultimate motion.

3              Now, I don't --

4              MR. MILLER:  Your Honor.

5              SPECIAL MASTER POPPITI:  Yes, Mr. Miller.

6              MR. MILLER:  I have one other question.  The

7    question of the attorneys' fees being held back, is that

8    on the attorneys' fees amount or the attorneys' fees

9    entirely?

10             I think originally we were contemplating

11   that the amount of the attorneys' fees and all the

12   evidence that would go into the math would not be part

13   of this original filing but that an award of attorneys'

14   fees would be an appropriate remedy, that legal issue

15   would be part of the motion.

16             SPECIAL MASTER POPPITI:  The issue should be

17   part of the motion.

18             MR. MILLER:  I was trying to get

19   clarification of whether or not that still is or is not?

20             SPECIAL MASTER POPPITI:  Let's talk about

21   it.  I mean, it seems to me that the briefing of that, I

22   don't see where it should not be in tandem with the

23   briefing on the issue of exceptionality.

24             I am not sure it makes a great deal of sense

Hearing

Page 28

1    because I don't anticipate that the brief with respect

2    to attorneys' fees in the context of what you will be

3    claiming to be an exceptional case is going to be

4    substantial in the sense of time expended, number of

5    pages developed.

6              MR. MILLER:  I agree with that.  The other

7    issue, all the other evidentiary issues underlying the

8    attorneys' fees bills and those sorts of things,

9    obviously if Your Honor decides not to grant attorneys'

10   fees, then you wouldn't have that process take place and

11   it seems to me that's a natural severing point.  But the

12   legal question of whether, that the Judge Jordan joined

13   in the E Speed case which is before you about whether

14   attorneys' fees legally should be recoverable as a

15.  result of the determination on the exceptional case, it

16   seems to me should all be there for Your Honor's

17   determination with the exceptionality issue.

18              SPECIAL MASTER POPPITI:  I certainly want to

19   hear what LPL says but I am inclined to agree.

20              MR. CHRISTENSON:  LPL agrees that it could

21   be done either of two ways.  It can be done all together

22   or it could be separated out.  The cases we have

23   supplied, including E Speed, speak to this, at least

24   the Federal Circuit speaks to this as a two-step process

Hearing

Page 29

1    analytically.

2                    SPECIAL MASTER POPPITI:  Right.

3                    MR. CHRISTENSON:  So we have proposed that

4    the briefing likewise be at a two-step process because,

5    again, if there is no exceptional case, then there is no

6    need to get into briefing and argument on the various

7    discretionary factors that come into play as to whether

8    attorneys' fees should or should not be granted.

9                    SPECIAL MASTER POPPITI:  I understand

10   exactly what you are saying, but my question just simply

11   goes -- rolls back to what I would anticipate in terms

12   of your briefing on that issue.  And then it just seems

13   to me that it may be more efficient when you are turning

14   your attention to this.  I don't know how much time and

15   effort is going to be wasted if I say no exceptionality,

16   and, therefore, don't work on that section that deals

17   with the attorneys' fees.

18                    MR. CHRISTENSON:  From LPL's perspective, I

19   think it could be fairly significant.  The reason is

20   that the discretionary factors are going to really open

21   this up into the conduct of all the parties in this case

22   and everything that's transpired that speaks to whether

23   or not it's appropriate to have some kind of shifting.

24                    And, so, I think there is a lot wrapped up

Hearing

Page 30

1    in that that I think -- and I think it's mutually

2    beneficial not to have to address all of that, but I

3    understand what you are saying in terms of trying to get

4    this to a conclusion.  So if we need to wrap it all up

5    together, we certainly can do that.

6            And then the question becomes:  At what

7    point do we have an argument, I guess, before you and at

8    what point do we then have any supplemental briefing

9    based on discovery and maybe this is not the point where

10   we need to finalize the scheduling on all those issues.

11           There could be further -- it sounds to me

12   like there could be further proceedings regardless.

13           MR. MILLER:  I think, if I might address

14   that?

15           SPECIAL MASTER POPPITI:  Please.

16           MR. MILLER:  I don't think it's going to be

17   inefficient because the underlying 285 motion is also

18   going to have issues about conduct during the course of

19   the litigation, so I think that's going to be largely,

20   you know, an issue that's going to be part and parcel of

21   the Court's determination on exceptionality.

22           SPECIAL MASTER POPPITI:  Yeah.

23           MR. MILLER:  I don't see how -- I, myself,

24   don't think there is a, as Your Honor suggested, if an

Hearing

1    answer comes out that this is not an exceptional case, I

2    don't think there is going to be a ton of effort wasted

3    in having briefed the question of whether attorneys'

4    fees was an appropriate remedy for Your Honor to have

5    granted had you gone the other way on that question.

6            So I think it's going to be most efficient

7    to have them there concurrent with each other for Your

8    Honor's consideration.

9            SPECIAL MASTER POPPITI:  And I do understand

10   that it is a two-step process, but I'd like to be in the

11   position to take one step and then the next step within

12   the same briefing so that the issue can ultimately be

13   put to rest one way or the other.

14           So, with that, is it important for you all

15   to talk about path forward in terms of deadlines and

16   dates, or should we work with the dates that have been

17   proposed by ViewSonic?

18           MR. CHRISTENSON:  We have -- the first time

19   we saw this was when ViewSonic submitted it.  Some of

20   these dates are agreed upon dates.  Some of the dates

21   are close to agreed upon dates, but there are some

22   differences still that I think we probably could iron

23   out with further discussion between counsel.  I would

24   prefer to have an opportunity in the first instance to

Hearing

Page 32

1    try to resolve these scheduling issues among counsel.

2              SPECIAL MASTER POPPITI:  Mr. Miller.

3              MR. MILLER:  Your Honor, I am happy to have

4    a conversation with Mr. Christenson.  What might be the

5    most efficient, I don't know what Your Honor's schedule

6    is like, but if we could put you on hold for five or ten

7    minutes and just talk about, perhaps, the briefing on,

8    if we are going to brief the dismissal and amendment and

9    see if we can get that --

10             SPECIAL MASTER POPPITI:  Moving.

11             MR. MILLER:  And you can check your schedule

12   and then we can work off-line on the remainder dates for

13   the remainder of the issues.

14             SPECIAL MASTER POPPITI:  Mr. Christenson.

15             MR. CHRISTENSON:  That's fine.

16             SPECIAL MASTER POPPITI:  Okay.  Then what I

17   will do is I will put you on hold, which means that you

18   will be able to continue to confer, and it is -- the

19   computer reads one way and the cell phone reads another

20   way -- 3:45.  Do you need 15 minutes or a little bit

21   more?

22             MR. CHRISTENSON:  Probably 10 minutes, I

23   would think.  Don't you think, Scott?

24             MR. MILLER:  Yeah, I agree.

Hearing

Page 33

1          SPECIAL MASTER POPPITI:  I will dial back in

2     or take you off of hold in 10 minutes.

3          MR. CHRISTENSON:  Thank you, Your Honor.

4          MR. KIRK:  Thank you, Your Honor.

5          (Recess taken.)

6          SPECIAL MASTER POPPITI:  What do you have in

7     terms of a proposal, please?  And then -- and we are

8     just looking at the dates for the first two; is that

9     correct?  And you will talk about the others later?

10          MR. MILLER:  Yes, Your Honor.  First, for

11    ViewSonic, we would like to file the motions promptly

12    and have them be briefed on a schedule that would be

13    akin to the schedule established for matters before the

14    Special Master, so rather than having ten court days for

15    an opposition and five days for a reply, we were

16    proposing filing these, the motion to dismiss.  The

17    motion to amend, obviously, is briefed with the

18    exception of the reply.  That will be -- can be filed.

19          We were suggesting filing opening motions on

20    motions to dismiss on Friday, November 2nd, and then a

21    response in five court days which would be the 9th of

22    November and a reply by the 13th, which would then allow

23    you to have a hearing either later that week, perhaps on

24    the 16th of November if you are available, or early that

Hearing

Page 34

1    week before Thanksgiving, the 19th or 20th or 21st,

2    depending on what your schedule looks like.

3           MR. CHRISTENSON:  Our view is a little bit

4    different.  Our view was that we should follow the

5    regular ten business day/five business day time frame

6    under the Local Rules, Your Honor.

7           And we were happy with the proposed start

8    date of filing on November 5th that ViewSonic had

9    proposed in their paper on October 23rd, and then I

10   guess the responses would be due ten business days

11   later, which I believe is November 20, and then five

12   business days after that would be the replies, which is

13   just the ordinary briefing schedule rather than an

14   expedited schedule.

15          MR. MILLER:  Which would then result we

16   would have a hearing, under that scenario, probably in

17   the first week of December probably.

18          SPECIAL MASTER POPPITI:  Let me think about

19   this for a moment.

20          Counsel, I would prefer the schedule using

21   the Special Master's due process.  I think it will get

22   the matter before me more quickly.  I do think that's

23   important.

24          If there is a need to expand the number of

Hearing

1    pages, then I am certainly happy to set that to be done.

2              The only question that I have is with

3    respect to the hearing date, and this may adjust the

4    number of days for purposes of filing all papers, I am

5    not available on the 16th, the Friday before

6    Thanksgiving, and I am not available on the 19th, which

7    means that we would have to look at a hearing date on

8    the 20th or 21st, and I don't want to be doing that to

9    anyone even if it's a telecon.  I don't know what your

10   respective travel plans are, but if you're moving about

11   on the 21st, I am just not sure you want to be

12   sandwiching a hearing on the 20th.

13             So, my thought is, unless that's not a

14   problem, my thought is to have the hearing on the 28th

15   of November.

16             MR. MILLER:  How far in advance of that

17   hearing would you like to have the replies?  I am just

18   trying to think backwards.

19             SPECIAL MASTER POPPITI:  My thought would be

20   that I'd like whatever schedule we come up with in terms

21   of adjusting the schedule to permit additional days, I

22   think I would like to have everything by close of

23   business my time on the 15th, so that's going to give

24   you a few more days, is it not?

Hearing

Page 36

1            MR. CHRISTENSON:  I am sorry, could you say

2    again, close of business on which day, Your Honor?

3            SPECIAL MASTER POPPITI:  Close of business

4    on the 15th.

5            MS. ROMAN:  It would allow for the filing of

6    the motion to be done on November 5th with opposition on

7    the 12th and then the replies on the 14th -- sorry,

8    November 13th because the 12th is a holiday, as Mr. Kirk

9    pointed out when we were off-line.

10           MR. MILLER:  And then replies on the 15th.

11           MS. ROMAN:  On the 15th.

12           SPECIAL MASTER POPPITI:  Well, if that works

13   for all of you, that's a schedule that would best suit

14   me, to have the hearing on the 28th.  And in terms of

15   that hearing on the 28th, what would be the best time to

16   begin that?  I am assuming we are doing it by telecon?

17           MR. CHRISTENSON:  That's fine with LPL, a

18   telephonic hearing.

19           MR. MILLER:  That would be fine with

20   ViewSonic, too, Your Honor.  I am generally open that

21   day and I could -- the 20th is also available as well.

22   You had asked about that.  But either of those would be

23   fine with me, and, generally, I am available either day.

24           MS. CRAMER:  This is Kristen Cramer.  I am

Hearing

1   available either day.

2             MR. CHRISTENSON:  LPL would prefer to do it

3   on the 28th and we can do it, I think, any time that

4   day.

5             MS. CRAMER:  Your Honor, did we lose you?

6             SPECIAL MASTER POPPITI:  I think, by virtue

7   of doing that, you just re-engaged me.  My question was,

8   whether, Ms. Roman, you were going to be participating

9   as well?

10            MS. ROMAN:  I am, Your Honor.  I am

11   available.

12            SPECIAL MASTER POPPITI:  The best time to do

13   that from your time zone would be when, please?

14            MR. MILLER:  From the West Coast, any time

15   from nine a.m., which is noon your time, on, is fine

16   with us.

17            SPECIAL MASTER POPPITI:  Then let's do it at

18   1:00 p.m. my time, please, on the 28th.  Is anyone

19   there?

20            MR. CHRISTENSON:  Yes, Your Honor.

21            MR. KIRK:  Yes, Your Honor.

22            MR. CHRISTENSON:  Just so we are all clear

23   on the briefing process, LPL understands your

24   instruction that we are going to do this on an

Hearing

Page 38

```
 1   abbreviated schedule, and the dates, I think, we were

 2   talking about are opening submissions on the 5th with

 3   responses or oppositions on the 13th and then replies on

 4   the 15th, if I understood correctly.

 5              MR. MILLER:  That's what we had done as

 6   well.

 7              SPECIAL MASTER POPPITI:  That's fine.  Then

 8   the hearing on the --

 9              MR. MILLER:  And in terms of the pages,

10   could you please clarify that as well?

11              SPECIAL MASTER POPPITI:  I suggested that if

12   you need to --

13              MS. ROMAN:  I lost you.

14              SPECIAL MASTER POPPITI:  I think what may be

15   happening is somebody may be using a computer close to

16   the phone or keyboard that may be interfering with the

17   transmission.

18              MS. ROMAN:  We have you now.

19              SPECIAL MASTER POPPITI:  Good.

20              MS. ROMAN:  We have lost you again.

21              SPECIAL MASTER POPPITI:  I think that if

22   there is a need to expand the number of pages, let's

23   just discuss that now.

24              MR. CHRISTENSON:  I think, from LPL's
```

Hearing

Page 39

1  standpoint, because there are some procedural issues

2  here that need to be, I think, addressed in some detail,

3  it would make sense to have briefing that looks like

4  regular briefing in the Delaware District and perhaps we

5  could say, as far as page limits, 20 for opening, ten

6  for opposition, and five for reply would be LPL's

7  proposal, double spaced, of course.

8          SPECIAL MASTER POPPITI:  Mr. Miller.

9          MR. MILLER:  I had 15, 15, and five, but I

10  don't know whether we need a little bit more in

11  opposition than ten, but I think we can do 15 on the

12  opening, I'd rather have 15 in the opposition, and then

13  reply of five would be fine, if that's okay, Cass?

14          MR. CHRISTENSON:  Well, I guess my thinking

15  is to do it more along the lines of a regular approach,

16  which I think is you get half the pages on the

17  opposition, that was my thinking.  If we are both filing

18  motions, it's going to be fairly voluminous as it is.

19  It seems to me it makes more sense to allow the parties

20  to develop their argument up front and then have ten

21  pages to respond.

22          MR. MILLER:  That's fine.

23          SPECIAL MASTER POPPITI:  Then that's the way

24  it will be.  And Mr. -- let's see.  Yeah.  That's fine.

Hearing

Page 40

1    We can do that that way.  If somebody will prepare a

2    form of order memorializing this, that would be --

3                MR. KIRK:  I will be happy to, Your Honor.

4                MS. ROMAN:  We lost communication again,

5    Your Honor.

6                SPECIAL MASTER POPPITI:  Okay.  I don't know

7    what's happening.  Is there anything else, then, we have

8    to deal with today, please?

9                MR. CHRISTENSON:  Not from LPL, Your Honor.

10   Thank you.

11               SPECIAL MASTER POPPITI:  Then what I expect

12   you need to do, then, is meet and confer on the rest of

13   the schedule, and if you need me to assist with any of

14   that, then simply call Mary LeVan back.  The only time I

15   know that I will be unavailable for the balance of the

16   week is Friday through about 3:00 only on Friday.

17   Otherwise, I am available to take a phone call this week

18   and you can call about next week's availability as well.

19               MR. CHRISTENSON:  One quick question from

20   LPL's standpoint:  Do you have any sense, Your Honor, of

21   how soon you would be in a position to issue a decision

22   on the dismissal motions because that may impact how we

23   structure the remaining schedule?

24               SPECIAL MASTER POPPITI:  Well, let's do

Hearing

1    this.  The hearing is going to be on the 28th.

2            MS. ROMAN:  Your Honor, we have lost you.

3            SPECIAL MASTER POPPITI:  The hearing is

4    going to be on the 28th.  If I am in a position to make

5    the determination on the record at the hearing, I will.

6    And what I would do is do it in a manner similar to the

7    way I have done it where I asked that the prevailing

8    party memorialize it for purposes of having the written

9    record just for efficiency purposes.

10           If I am unable to do it on the day of the

11   hearing, I will commit to doing it not later than

12   December 7.

13           MR. CHRISTENSON:  Thank you.  That's

14   helpful.

15           SPECIAL MASTER POPPITI:  So it would either

16   be on the 28th at the hearing and not later than

17   December 7.  And I certainly don't -- I would anticipate

18   that that deadline would be in the proposed form of

19   order.

20           MR. KIRK:  I will put it in, Your Honor.

21           MR. CHRISTENSON:  Thank you, Your Honor.

22           SPECIAL MASTER POPPITI:  Thank you all.

23           (The hearing was concluded at 4:15 p.m.)

24

Hearing

Page 42

```
 1                    C E R T I F I C A T E

 2    STATE OF DELAWARE:
                       :
 3    NEW CASTLE COUNTY:

 4         I, Renee A. Meyers, a Registered Professional

 5    Reporter, within and for the County and State aforesaid,

 6    do hereby certify that the foregoing teleconference was

 7    taken before me, pursuant to notice, at the time and

 8    place indicated; that the teleconference was correctly

 9    recorded in machine shorthand by me and thereafter

10    transcribed under my supervision with computer-aided

11    transcription; that the foregoing teleconference is a

12    true record; and that I am neither of counsel nor kin to

13    any party in said action, nor interested in the outcome

14    thereof.

15         WITNESS my hand this 25th day of October A.D.

16    2007.

17

18

19    _____
      RENEE A. MEYERS
20         REGISTERED PROFESSIONAL REPORTER
           CERTIFICATION NO. 106-RPR
21    (Expires January 31, 2008)

22

23

24
```

www.corbettreporting.com